1   LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
2   Zal K. Shroff, MJP 804620*
Elisa Della-Piana, SBN 226462
3   131 Steuart Street, Ste. 400
San Francisco, CA 94105
4   Telephone: (415) 543-9444
edellapiana@lccrsf.org
5   zshroff@lccrsf.org
6
7   *application pro hac vice pending

8   Attorneys for Plaintiffs

9   Additional Counsel below

10

11

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13   COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>             Plaintiffs.<br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; LONDON BREED, in her official capacity as Mayor; and SAM DODGE, in his official capacity as Director of the Healthy Streets Operation Center (HSOC),<br><br>             Defendants. | CASE NO. 3:22-cv-05502<br><br>**EXHIBIT 2<br>DECLARATIONS OF TORO CASTANO, SARAH CRONK, JOSHUA DONOHOE, MOLIQUE FRANK, DAVID MARTINEZ, TERESA SANDOVAL AND NATHANIEL VAUGHN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

EXHIBIT 2 INDIVIDUAL PLAINTIFF DECL. ISO MOT. FOR PRELIM. INJ.
CASE NO. 3:22-cv-05502

ACLU FOUNDATION OF
NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
jdo@aclunc.org
bgreene@aclunc.org

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
Wesley Tiu, SBN 336580
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com
wesley.tiu@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM & WATKINS LLP
Regina Wang, SBN 326262
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
regina.wang@lw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF TORO CASTAÑO**

I, Toro Castaño, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Toro Castaño, and I am 50 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have a Bachelors' Degree in the History of Art and Visual Culture from the University of California, Santa Cruz (2007-2011). I also have a Master of Arts Degree in Art and Curatorial Practices from the University of Southern California (2012-2014). I have worked as a curatorial assistant and guide at several museums including the Laguna Art Museum, Santa Monica Art Museum, and the California African American Museum. I have also worked as a research assistant for Semiotext(e)—which is an independent literary press committed to exposing American audiences to French philosophical, social, and political thought.

3.      I moved to San Francisco in 2017 to look for work and try to make ends meet after I was kicked out of my stepfather's home in Southern California. After staying with a friend who had been hospitalized and struggling financially for about a year and a half, I had nowhere to go.

4.      For two years from 2019 to 2021, I was homeless and living on the streets of San Francisco. In March 2021, I was finally able to secure housing through a private organization that has committed to provide support and resources to those in need during the pandemic. I currently work as an assistant at Allan Crawford's Studio in the San Francisco Bay Area—a position I began while I was still homeless.

**Law Enforcement Harassment While Homeless**

5.      I was harassed by San Francisco Police Department (SFPD) and Department of Public Works (DPW) staff several times a week for the entirety of the two years I was homeless. For the majority of that time, I stayed with 6 or 7 other homeless individuals near 16th Street and Market Street in the Castro District—just in front of the AIDS Memorial Mural. Nearly every morning, public works crews would come wake us up and tell us we had to move. We were just expected to break camp and leave. If we didn't move, police officers were called and we were threatened with arrest for illegal camping. I never recall anyone offering us services or shelter.

6.      This was a traumatic process. Often, crews would come wake us up at 4:30AM. They would spray large volumes of water and chemicals on us or near us that would damage our property. One time, they sprayed an extremely pungent deodorizer on the street that lasted for days and was extremely unpleasant—with the goal of making it so we could not return. We almost never got any notice from public works crews or the police before these daily sweeps.

7.      It is hard to articulate how battering this experience can be. I lived with the constant fear that I would lose the few possessions I had to survive. We were at the mercy of the individual crew members or officers who would show up on that day. Usually after all this commotion, they would just force us to move right across the street—only to do the exact same thing to us again the next day. It felt like this was just to punish us for being homeless.

8.      Certain instances stand out more than others. Around May 2020, I was repeatedly harassed by police officers from the Castro beat every day for 5 weeks. Officer Oropeza would drive by with a loudspeaker and call out to me. He would say things like: "Pack your bags we are going to be cleaning house" or "We're coming for you" or "You are going to be first on our list." At the time I was staying on Diamond Street by the post office. We believed the increased police attention was the result of a neighbor complaining about us. At one point while I was staying on 16th Street, an officer told us that another resident had called the police hundreds of times that month to try and have police kick us out of the neighborhood.

9.      The police officers from the Castro beat also regularly told me that they would arrest me if I did not move my tent or that they would seize my tent as evidence of a crime. They questioned me in a way that made me feel like I could not leave the interaction. I quickly learned that this was for intimidation purposes. I did not receive a citation for any offense following these threats. At no time did they offer me any services. Some officers were kinder than others. Those officers would apologize for making us move, but they would tell us they had no choice because residents called to complain.

2 - 2

**Targeting and Destroying Property Without Notice**

10.     I can only recall about three times in which the City of San Francisco has ever claimed that it was going to "bag and tag" my property and keep it for safekeeping for me to pick up. Each of those times, when I attempted to recover my property at the yard, it was nowhere to be found and there was no record of the property logged in any system. I am therefore highly skeptical that the City is in fact bagging and tagging property as it says it does.

11.     I personally witnessed my property being destroyed by the City of San Francisco at least 4 times in the two years I was homeless. Three of these times were earlier in the pandemic. I was staying at the corner of Noe and Market, Collingwood and Market, and Sanchez and Market, respectively. On each of these occasions, public works crews came and told us that we had too much stuff and that we needed to throw everything away. What we had was some small furniture and things we used to shelter ourselves from the wind. These items were useful and practical for us while we lived on the street, but the City arbitrarily deemed them excessive. The few times they tried to take my tent, I had an absolute meltdown. They would take whatever else they could grab from us and put it immediately in the back of their trucks to go to the dump. There was no posted or written notice at any of these sites before they seized and destroyed our property. Nor did they give us enough time to collect our belongings before they started to throw our lives in the trash.

12.     The fourth time my property was destroyed was on August 21, 2020 during a Healthy Streets Operation Center (HSOC) sweep of the encampment I was staying at, on 16th Street and Market Street. I had no notice that the City would be taking our belongings on that day. No written notices were posted anywhere and I had not received verbal notice. It was also the middle of the pandemic and we had been social distancing safely in our encampment. A vaccine was not available until months afterward.

13.     On that day, I was woken up at 6AM or 7AM by a Special Homeless Outreach Team (HOT) consisting of four individuals. The supervisor had salt and pepper hair and was clean-shaven, there was an older woman with reddish hair, a young blonde woman, and a young Latino man. I do not recall them offering me any specific services at that time.

14.     When SFPD and DPW teams arrived, they gave me two hours to pack all of my belongings. I spent the entire time packing. I was told by the City that I would be allowed to keep some of my items with me, but that the rest would either be "bagged and tagged" or disposed of. But as soon as those two hours were up, the incident commander in charge declared that all the property would be deemed a fire hazard. I watched as my property—which the crews

2 - 3

on site had seen me carefully pack for hours—was placed in a garbage truck.

15.     The things I lost that day were irreplaceable. Some of them were sentimental items that helped me feel connected to my family and helped me feel like I was living a more normal life. That included my mother's wedding kimono and my Macbook Pro with extensive research on it.  The complete list of property destroyed that day is listed below along with its replacement cost:

| Property/Item | Replacement Value |
|---|---|
| Wesco Boots (4 pairs at $638 per pair) | $2552 |
| Kodiak Tent | $600 |
| Handmade Crate and Sink | $400 |
| 2 Kodiak tarps ($40 each) | $80 |
| Macbook Pro | $1800 |
| Documents and Pictures on Macbook Pro | Priceless |
| 5 Jackets | $300 |
| Dewalt Battery Powered Heater | $60 |
| 3 Pairs of Shoes (Redwing work shoes, Adidas, New Balance) | $360 |
| Mother's Wedding Kimono | Priceless – but appraised for $3000 |
| Bicycle – Marin Longbard Roadbike | $1400 |
| **TOTAL:** | $9,552 |

16.     With the assistance of an attorney, I filed an administrative claim against the City of San Francisco for destroying my property. I still feel anxious recalling what it was like to lose everything during this HSOC operation.

**Detained and Cited for Illegal Camping**

17.     August 21, 2020 was also the first time that I was actually cited and detained by police for illegal camping. A copy of that citation is attached hereto as **Exhibit A**.

18.     The citation came after I vigorously protested the destruction of our encampment and my property without any notice. The citation was ultimately dismissed. At the time I was cited, I do recall that the HOT team offered me a congregate shelter bed. But it was the middle of the pandemic and I was afraid to enter a crowded environment where I was likely to get sick —or worse. I do not think it was fair to force me to make that difficult healthcare choice under the threat of citation. In any case, it was cruel for SFPD and DPW crews to have me collect my property— only to destroy it after they cited and detained me. It felt like they wanted to find a way to punish me no matter what.

19.     I have only ever seen one other homeless person actually offered services or shelter during the two years I was homeless. That occurrence is extremely rare given the limited number of housing spaces or shelter beds and how many sweeps SFPD and DPW conduct on a daily basis.

2 - 4

**Reflections on the City's Conduct**

20.     I am constantly dismayed by the way the City has pitted its housed residents against the homeless community. I feel that San Francisco has forgotten that we are its residents too and that we deserve our government's respect. Every night while I was homeless, I spent hours cleaning my living space to ensure that my tent and the surrounding area were immaculate for my neighbors. That was a physical imperative as much as a mental one for me—ensuring that I was creating a safe and secure environment to sleep in.  The City's sweeps were a dehumanizing disruption to the small ounce of stability that I was trying to build for myself during one of the hardest times of my life.

21.     I still wonder what we can do to make people see us and understand our experiences. Because my academic training was in public art, at one point I built a small altar and art installation where I slept to connect with passersby and our housed neighbors over our shared struggles during the pandemic. People really responded to that and found it comforting. Our neighbors—housed and unhoused—contributed to the project. But one night I fell asleep and in the morning I learned that my artwork had been destroyed by DPW crews. To me, that exemplifies what it is like to be homeless in San Francisco.

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: September 27, 2021

Toro Castano

2 - 5

5

# EXHIBIT A

## San Francisco Police Department
**Report Type: Initial**   **INCIDENT REPORT**   **200503480**

200503480

| I N C I D E N T | Incident Number 200-503-480 | Occurrence From Date / Time 08/21/2020    14:29 | Occurrence To Date / Time | Reported Date / Time 08/21/2020    14:29 | CAD Number 202341935 |
|---|---|---|---|---|---|

**Type of incident**
LODGING WITHOUT PERMISSION  27199   FIRE CODE VIOLATION (GENERAL)  30170

| Location of Occurrence: 16TH ST | At Intersection with/Premise Type POND ST / SIDEWALK | District MISSION |
|---|---|---|

| Confidential Report? ☐ | Arrest Made? ☑ | Suspect Known? ☐ | Suspect Unknown? ☐ | Non-Suspect Incident? ☐ | Domestic Violence? ☐ | (Type of Weapon Used) | Use of Force? ☐ | Reporting Unit 3L70 |
|---|---|---|---|---|---|---|---|---|

| Location Sent / On View: 16TH ST | At Intersection with POND ST | Reporting District MISSION |
|---|---|---|

| Crime and Clearance Status 6 | Reported to Bureau | Name | Star | Date/ Time | Elder Victim ☐ | Gang Related? ☐ | Juvenile Subject? ☐ | Prejudice Based? ☐ |
|---|---|---|---|---|---|---|---|---|

Have you reviewed the attached list of procedures required by Department General Order (DGO) 7.04? Yes

| O F F I C E R   D E C L A R A T I O N | I declare under penalty of perjury, this report of __4__ pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved. |
|---|---|

PROP 115 CERTIFIED        Post Training

| | Star | Station | Watch | Date |
|---|---|---|---|---|
| Reporting Officer CAMPOS, ALEJANDRO | 143 | FOB-Patrol Division | 0600-1600 | 08/21/20 20:15 |
| Reviewing Officer YOUNG, WAYMAN W | 100 | FOB-Patrol Division | 0600-1600 | 08/21/20 20:15 |
| OIC LEE, KIN YAU K | 522 | FOB-Patrol Division | 0600-1600 | 08/21/20 21:19 |

| Related Case -- | Related Case -- | Re-assigned to Copies to 3D300 3*300 5S200 | Assigned to 3D300 Add'l Copies | Assigned by AC 143 |
|---|---|---|---|---|

| R E P O R T E E   1 | Code R 1 | Name (Last, First Middle) SFPD, #1086, #143 | | Alias | Email |
|---|---|---|---|---|---|

| Day Phone | Type | Home Address | City | State | Zip Code |
|---|---|---|---|---|---|

| Night Phone | Type | Work Address | City | State | Zip Code |
|---|---|---|---|---|---|

| DOB    /  Age | DOB Unk. ☐ | or age between and | Race | Sex | Height | Weight | Hair Color | Eye Color | ID Type  Jurisd.  ID No. |
|---|---|---|---|---|---|---|---|---|---|

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | Follow-up Form YES ☐ | Statement YES ☐ | Relationship to Subject |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|

| Interpreter Needed ☐ | Language | Language Description(if Other) | Language Line Service/Interpreter ID# | Bilingual Ofc Star# |
|---|---|---|---|---|

SFPD CISU C0031616
2020 OCT 15 AM 10:01

2 - 7

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF SARAH CRONK**

I, Sarah Cronk, hereby declare pursuant to 28 U.S.C. § 1746:

1. My name is Sarah Cronk and I am 29 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2. I have lived in San Francisco for sixteen years and currently I am homeless and unsheltered. For the past four months, I have been living in a tent near 13th Street and Fulsome Street in SoMa with my partner Joshua Donoho. I have yet to be placed in affordable housing.

**<u>Law Enforcement Harassment and Property Destruction While Homeless.</u>**

3. Joshua and I have been harassed by the San Francisco Police Department (SFPD) and the Department of Public Works (DPW) repeatedly over the past four months while homeless. DPW has come to disturb us early in the morning at least 5 days every week. Sometimes there are days where they want to throw away everything we have. Other days, they will quietly grab anything they can while we are waking up and before we realize what is happening.

4. DPW tends to be intentionally cruel. We clean our campsite daily and make sure to have a designated trash bag where we throw all refuse so that it can be identified and picked up easily. Instead of collecting our bag of trash, they will often intentionally target the items we use to survive. For example, DPW has thrown away our neatly packed dishware, sponges, and brooms while leaving an obvious pile of trash unaddressed. DPW has seized our survival belongings on at least a weekly basis for the past several months. It is incredibly disheartening.

1

5.      Just over the past few weeks, we have lost the following belongings: a tent, our clothes, shoes, 3 backpacks, our phones, our pot and pan, groceries and various nonperishable food items, art supplies, a broom, our cooler, and our chairs.

6.      On September 12, 2022, DPW came once again to bother us. It was early in the morning when they came. DPW arrived with 4 different employees each coming with their own truck. There were two ordinary flatbed trucks, one washer truck, and one DPW supervisor vehicle. One vehicle bore the following truck number: #431454. I was a few steps away when I heard Joshua calling out to a DPW worker who was rustling the belongings we had neatly packed outside of our tent—including some of my clothes and nonperishable food that we had recently purchased and packed to feed ourselves. Joshua asked the DPW worker to leave us alone. The DPW worker responded: "Don't disrespect me, I should break your nose right here." I am confident the DPW worker threatened Joshua because he assumed no one else was there to witness. But I could hear what happened. The DPW worker took the clothes and our food— once again ignoring and leaving behind our trash bag that we had specifically laid out for DPW to carry away.

7.      DPW never told us that we could recover our property and never told us where they were taking our property. I know from past experience that these belongings are just thrown right into the trash. Or DPW workers will just take them for themselves.

8.      The Homeless Outreach Team (HOT) is almost never at the daily sweep operations Joshua and I have experienced. Joshua and I have rarely ever been able to be in contact with the HOT team to help us find housing and shelter. However, the HOT team was present at a sweep operation in June 2022. This was a formal Healthy Streets Operation Center (HSOC) sweep with SFPD, DPW, the HOT team, and San Francisco Fire Department (SFFD)..The sweep began early in the morning with DPW aggressively seizing tents and belongings off of the street while the SFFD Captain—whose name was Patrick—told us we needed to leave the area.

9.      The HOT team did approach us that day and pulled us aside so they could evaluate Joshua for housing. Joshua learned that he was "Priority 1" for housing and they said they would attempt to find us shelter. But while we were talking to the HOT team, DPW was already seizing our belongings and attempting to throw them into dumpsters. We asked a friend to guard our belongings, but HOT team's intake process was taking a long time and it was clear that DPW was going to throw away our belongings in the meantime if we did not return to safeguard them. It almost seemed like HOT team was trying to distract us.

10.      Ultimately, the HOT team told us they might have a tiny home for us to go to. The HOT team told us that we had to decide right away if we would accept shelter and that, if we said yes, we would have to leave behind many of our survival belongings. Under those circumstances—with both time pressure and facing the destruction of our property—and without having the opportunity to confirm that shelter was in fact available by going there in person to confirm, we told the HOT team that we needed more time to see if someone could watch our property. We have heard horror stories of people arriving at a shelter only to find out that it was at capacity. Meanwhile, all of their belongings had been confiscated and destroyed.

11.      The HOT team then left the site for hours without telling us they were leaving. We did not think they were coming back again. When they finally did come back, we expressed our concerns to the HOT team and the SFFD Captain that we might lose our survival belongings with no guarantee of shelter. The SFFD Captain responded: "You don't deserve housing." There were very few other people who received a shelter offer that day at all.  One of the other individuals who said she would take shelter if it was available had her stuff destroyed by DPW as soon as she left the area.  I have not interacted with the HOT team since. It feels wrong that we only see the HOT team when the City wants to move us and destroy all of our belongings.

12.      I have only interacted with the HOT team on one other occasion in the past year and a half. The HOT team had offered me a shelter at another formal HSOC sweep and told me I was a priority for housing. I was really glad that there was going to be a viable shelter or housing offer for me. But when the HOT team returned 30 minutes later, the same HOT team worker told me that I was not eligible for shelter. This did not make sense when they had just told me that I was eligible. When I questioned them, I never got any explanation. It was clear to me that they actually had no shelter to offer. In the meantime, DPW had destroyed many people's property and had taken several of my belongings.

13.      My recent experiences with the City's property destruction makes me afraid that I will once again be harassed by DPW or threatened with citation or arrest from SFPD just because I am homeless and unsheltered.

**Reflections on the City's Conduct**

14.      If the City does not have adequate shelter or housing for us, then it should not be harassing us. We are just trying to scrape by and build as much of a life for ourselves as possible—with both dignity and safety. The City makes that impossible for us.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: 9/13/2022

Sarah Cronk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF JOSHUA DONOHOE**

I, Joshua Donohoe, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Joshua Donohoe and I am 32 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have lived in San Francisco for eight years and currently I am homeless and unsheltered. For the past four months, I have been living in a tent near 13th Street and Fulsome Street in SoMa with my partner Sarah Cronk. Although the City has identified me as "Priority 1" for a housing placement, I have yet to be placed in affordable housing.

**<u>Law Enforcement Harassment and Property Destruction While Homeless.</u>**

3.      Sarah and I have been harassed by the San Francisco Police Department (SFPD) and the Department of Public Works (DPW) repeatedly over the past four months while homeless. DPW has come to disturb us early in the morning at least 5 days every week. Sometimes there are days where they want to throw away everything we have. Other days, they will quietly grab anything they can while we are waking up and before we realize what is happening.

4.      DPW tends to be intentionally cruel. We clean our campsite daily and make sure to have a designated trash bag where we throw all refuse so that it can be identified and picked up easily. Instead of collecting our bag of trash, they will often intentionally target the items we use to survive. For example, DPW has thrown away our neatly packed dishware, sponges, and brooms while leaving an obvious pile of trash unaddressed. DPW has seized our survival

1

belongings on at least a weekly basis for the past several months. It is incredibly disheartening.

5.      Just over the past few weeks, we have lost the following belongings: a tent, our clothes, shoes, 3 backpacks, our phones, our pot and pan, various nonperishable food items, art supplies, a broom, our cooler, and our chairs.

6.      On September 12, 2022, DPW came once again to bother us. It was early in the morning when I heard their trucks. DPW arrived with 4 different employees each coming with their own truck. There were two ordinary flatbed trucks, one washer truck, and one DPW supervisor vehicle. I heard one DPW worker rustling the belongings we had neatly packed outside of our tent—including some of Sarah's clothes and nonperishable food that we had recently purchased and packed to feed ourselves. I asked the DPW worker to leave us alone. He said: "Don't disrespect me, I should break your jaw right here." The DPW worker who threatened me was driving a vehicle with the following truck number: #431454. He took the clothes and our food—once again ignoring and leaving behind our trash bag that we had specifically laid out for DPW to carry away.

7.      DPW never told us that we could recover our property and never told us where they were taking our property. I know from past experience that these belongings are just thrown right into the trash.

8.      The Homeless Outreach Team (HOT) is almost never at the daily sweep operations Sarah and I have experienced. As such, Sarah and I have rarely ever been able to be in contact with the HOT team to help us find housing and shelter. However, the HOT team was present at a sweep operation on June 23, 2022. This was a formal Healthy Streets Operation Center (HSOC) sweep with SFPD, DPW, the HOT team, and San Francisco Fire Department (SFFD)..The sweep began early in the morning with DPW aggressively seizing tents and belongings off of the street while the SFFD Captain—whose name was Patrick—told us we needed to leave the area.

9.      The HOT team did approach us that day and pulled us aside so they could evaluate me for housing. I learned that I was "Priority 1" for housing and they said they would attempt to find us shelter. But while I was talking to the HOT team, DPW was already seizing our belongings and attempting to throw them into dumpsters. We asked a friend to guard our belongings, but HOT team's intake process was taking a long time and it was clear that DPW was going to throw away our belongings in the meantime if we did not return to safeguard them. It almost seemed like the HOT team was trying to distract us.

10.     Ultimately, the HOT team told us they might have a tiny home for us to go to. The HOT team told us that we had to decide right away if we would accept shelter and that, if we said yes, we would have to leave behind many of our survival belongings. Under those circumstances—with both time pressure and facing the destruction of our property—and without having the opportunity to confirm that shelter was in fact available by going there in person to confirm, we told the HOT team that we needed more time to see if someone could watch our property. We have heard horror stories of people arriving at a shelter only to find out that it was at capacity. Meanwhile, all of their belongings had been confiscated and destroyed.

11.     The HOT team then left the site for hours without telling us they were leaving. We did not think they were coming back again. When they finally did come back, we expressed our concerns to the HOT team and the SFFD Captain that we might lose our survival belongings with no guarantee of shelter. The SFFD Captain responded: "You don't deserve housing." There were very few other people who received a shelter offer that day at all.  One of the other individuals who said she would take shelter if it was available had her stuff destroyed by DPW as soon as she left the area.  I have not interacted with the HOT team since. It feels wrong that we only see the HOT team when the City wants to move us and destroy all of our belongings.

12.     My recent experiences with the City's property destruction makes me afraid that I will once again be harassed by DPW or threatened with citation or arrest from SFPD just because I am homeless and unsheltered.

**Reflections on the City's Conduct**

13.     If the City does not have adequate shelter or housing for us, then it should not be harassing us. We are just trying to scrape by and build as much of a life for ourselves as possible—with both dignity and safety. The City makes that impossible for us.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: 9/13/2022

Joshua Donohoe

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF MOLIQUE FRANK**

I, Molique Frank, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Molique Frank and I am 46 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I was born and raised in San Francisco and have been experiencing homelessness since I was 20 years old. I have never received the help that I needed to find permanent housing.

**Harassment by the City and Property Destruction While Homeless**

3.      I have been harassed by various City departments, including the Department of Public Works (DPW) and the San Francisco Police Department (SFPD), repeatedly over the years.  They come to sweep and take our belongings away on a regular basis.

4.      Because I am always afraid the City will destroy my property, I try to be present with my belongings as much as possible. But that makes it impossible to leave to run errands, to look for work, to find a public restroom, or to do any other necessary activities. Sometimes when I am not present, the City will conduct a sweep without warning and I will lose everything.

5.      I understand that the City is supposed to give us advance notice before they come to sweep our belongings. In my experience, that almost never happens. There have been a few times where the City has put up signs that say they are coming. Those days, I always make sure to be present onsite, as I have found that is the only way to save my belongings from being thrown away.

6.      It is also my understanding that the City is supposed to bag and tag people's

property for safekeeping and later pickup. I have never had my belongings bagged and tagged. Nor do I recall ever seeing the City bag and tag anyone's property.

7.      SFPD is usually present for the sweeps I have witnessed and experienced. They threaten people with arrest if they do not move fast enough to leave the area. That appears to be SFPD's function—to threaten us to abandon our property so that DPW can do whatever they want with our property.

8.      I clearly recall the most recent time the City destroyed my property. This occurred on January 26th, 2022, on 12th Street in San Francisco. SFPD, DPW, the San Francisco Fire Department (SFFD) and the Homeless Outreach Team (HOT) were all present at the sweep.

9.      The teams arrived at the same time. DPW came into our encampment threw our belongings around and started stomping on things. The City had posted a notice, but they did not come on the day the notice said that they would. We therefore did not receive prior notice that they were coming on this day. DPW took away everything I had over my objections.

10.     I lost my clothes, my X-Box, a very expensive bike frame, and backpacks with essential survival gear inside. I also lost some invaluable, irreplaceable items, including pictures and important paperwork. All of these belongings were thrown away by DPW workers. I did not receive any information regarding bagging and tagging, and I did not see the DPW workers sort or arrange any of my belongings for safekeeping. I saw one girl near me who was trying to hold onto a bag of her belongings. DPW workers grabbed the bag and dragged it—and her—into the street. They ended up throwing her belongings away too.

11.     I was also physically harassed by SFPD officers and DPW workers during this sweep. An SFPD officer grabbed me while I was asking that they not destroy my belongings. Then, a DPW worker grabbed me by the collar and shook me, hard. The DPW worker said, "You know what I would do to you??" in a very threatening manner.

12.     Although the HOT team was present, they did nothing. The HOT team did not offer or provide any services to me that day. I specifically asked an SFPD officer if I would be able to be housed that day. SFPD directed me to the HOT team leader. HOT said that there was no shelter available that day.

13.     Because there were no services offered, the other homeless individuals at the encampment and I were simply forced to move around the corner from where we were swept.

14.     On March 10, 2022, I filed an administrative claim against the City seeking recovery for my lost property.

**Reflections on the City's Conduct**

2 - 16

15.     These sweeps are traumatizing. It shakes people up. When a DPW worker put his hands on me, I was shocked that SFPD and HOT—who I had previously considered individuals who were supposed to be advocating for us—stood by and said nothing.

16.     Our belongings are critical for our survival. These are things that we paid for, or that friends and family gave to us. It is as if that means absolutely nothing to the City, destroying people's lives in this way.


I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: March 10, 2022

_____

Molique Frank

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF DAVID MARTINEZ**

I, David Martinez, hereby declare pursuant to 28 U.S.C. § 1746:

1.       My name is David Martinez and I am 55 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.       I have lived in San Francisco for most of my adult life. When I came to San Francisco, I was working various day labor and construction jobs through Labor Ready. But eventually the work dried up. I kept going to Labor Ready to find work, but I could not find enough work to keep making ends meet. For many years, I had lived in a high-rise apartment building in SoMa. When I could no longer afford rent, I became homeless. For all the years I have been homeless, I have been trying to find stable housing to get back on my feet. But I am still unhoused and living on the streets of San Francisco.

**Law Enforcement Harassment and Property Destruction While Homeless.**

3.       I have been harassed by the San Francisco Police Department (SFPD) and the Department of Public Works (DPW) repeatedly over the last several years. DPW or SFPD come to tell us to move along at least once every week. Sometimes, they do nothing. But many times, they have taken my belongings away from me. Usually, DPW is the agency that tells me I have to move from where I am sleeping. SFPD officers sometimes stand behind them and threaten me with citation and arrest if I do not comply. I would estimate that from September 2021 to September 2022, I have had my belongings seized and destroyed by the City on at least 4 occasions. I have been threatened with citation or arrest on dozens of other occasions.

2 - 18

4.      On approximately June 23, 2022, I was approached by DPW where I was sleeping on Fulsom Street and 13th Street. The night before, as is my practice, I carefully cleaned my area and neatly packed up my belongings. When DPW approached me, I told them that I had a doctor's appointment that I needed to leave for. I have right side congestive heart failure, so it is hard for me to breathe and I have to stay on top of my medical care to make sure I am healthy. DPW workers assured me that my belongings would not be disturbed. I also asked a friend to watch my belongings that day.

5.      While I was at my appointment, I learned that DPW had seized and placed all of my belongings in a dumpster truck despite their promises to me. My friend jumped into the dumpster truck in an attempt to safeguard my belongings. I learned that she was threatened with arrest by SFPD for failing to comply with DPW's sweep of the area. This is consistent with what I know about DPW. If you are not present onsite—even for a moment—they will destroy your survival belongings. I lost everything I had that day, including:

- A brand new pop-open tent from Coleman that I was living in;
- Clothes, including my jeans, shirts, shoes, socks, underwear, and one suit I owned and wore for important occasions;
- My laptop and two cell phones that I used to look for work and stay in contact with family members;
- Canned and boxed nonperishable food items I relied on to feed myself;
- My congestive heart failure medication, including 4 different prescribed blood thinners and painkillers; and
- My California government issued ID.

6.      When I heard the news, I was crying. I had finally collected everything I needed to get my life back on track. But the City took that from me. With no shelter to go to, and now with none of my belongings, I continued to sleep in the rough—without even blankets or a tent to keep warm—in the same spot where DPW had seized and destroyed my belongings.

7.      In early September 2022, DPW once again woke me up where I was sleeping on Fulsom Street and 13th Street. This time, I was present the whole time. I had found another tent and was starting to collect enough clothes over the couple months since I was swept in June. I pleaded with DPW not to take my tent and belongings, but they took them anyways. They told me to back away from my belongings and threatened me with citation or arrest if I resisted them as they took them away. The Homeless Outreach Team (HOT) was not present that day and I was not offered any shelter.

8.      Over the past few weeks, I have been living in a cardboard box. What is the point of constantly struggling to find a tent or new clothes if the City is going to keep taking them away from me? I have not even bothered to go replace my medication I lost months ago—because I am afraid to go through the hassle of replacing it if it is just going to be taken away again.

9.      The lack of notice makes things even worse. The City almost never posts a written notice or provides us with verbal notice that a sweep is going to be happening in our area. The last posted notice I saw was a few months ago and I have not seen one since. The HOT team usually has not been present for the sweeps I have experienced. That feels wrong to me. Why are those who are supposed to be helping us access shelter and housing nowhere to be seen?

10.     I have been to the DPW tow yard at least twice to attempt to retrieve property that was taken from me. I have never once gotten anything back that way. I know that this conduct is against City policy—and yet it keeps happening.

11.     My recent experiences with the City's property destruction makes me afraid that I will once again be harassed by DPW or threatened with citation or arrest from SFPD just because I am homeless and unsheltered.

**Reflections on the City's Conduct**

12.     The City's behavior feels fundamentally wrong. DPW workers are supposed to be garbage collectors. Why are they the ones who get decide what belongings we need? How can they throw away our survival belongings and our whole lives without accountability? These DPW workers come from the same backgrounds as us. They understand poverty and our experience. I do not understand why they behave this way.

13.     San Francisco is such a nice city, with so much money. There are plenty of buildings and lots lying vacant that have not been developed. The City should be turning its resources towards building affordable housing so no one else has to become homeless in the first place—rather than punishing us for something we cannot control.

I have reviewed the information contained in this declaration. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: 9/12/2022

_David Martinez_

David Martinez

2 - 20

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF TERESA SANDOVAL**

I, Teresa Sandoval, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Teresa Sandoval, and I am 40 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I am a resident of San Francisco and I am currently unhoused. I am disabled; I am a double amputee. I normally use a wheelchair or prosthetics. As a result, it is extremely difficult for me to find work and to secure housing that is accessible for me. I have been in and out of shelter for several years when it finally becomes available, but I am still searching for permanent housing.

**Law Enforcement Harassment by the City While Homeless**

3.      I have been harassed by San Francisco Police Department (SFPD) and the Department of Public Works (DPW) on a regular basis during the years that I have been homeless. SFPD regularly accompanies DPW. They tell you to get up and move. They have said things to me like, "I'm going to detain you if you don't move." Generally, the City comes very early in the morning. They have come at 5:30 AM or 6:00 AM to make me move. Lately they have been arriving later, at around 9:00 AM. Sometimes the City will come by beforehand and warn us, other times we receive no notice. I have only ever seen one paper notice.

4.      The Homeless Outreach Team (HOT) is sometimes present at a sweep, but often times they are not. The longest I have ever been allowed to stay in shelter is about three months, but otherwise shelter is hard to find. Usually when I am approached by the City and told to

move, I have not been offered any shelter.

5.      I have had my property taken by the City at least three or four times from March 2022 through August 2022. I specifically recall one sweep I experienced in June 2022, on 13th Street and Mission, the entire HSOC team arrived. This was early in the morning and I did not see any notice posted at the site. The City workers woke me up in my tent when they arrived.

6.      We were ordered to clear the area. I was in my wheelchair, and so I was moving slowly to collect my belongings. But as I did so, DPW workers seized my purse from me and took my tent and placed it in a dumpster truck. I told them I needed my belongings, but they refused to stop. During this sweep, they took my prosthetics. I had laid them to the side for safekeeping, but they were gone when the sweep was over. I have been unable to obtain new prosthetics since that time—which means I have no choice but to use my wheelchair.

7.      In August 2022, DPW approached me again where I was staying near 13th Street and Mission. I asked DPW if I could leave my property there while I went to my doctor's appointment. They said that if I left my property, they would take it. They threw away all my property that day.

8.      Around the beginning of September, 2022, I was swept yet again. DPW, SFPD, and the HOT team were present. Eventually, I did receive a shelter offer that day and I accepted it. But I was only able to take a small number of my belongings into shelter with me. I was forced to leave the majority of my survival belongings behind. That included my tent, sets of clothes, storage bags, and personal diaries. But the shelter I was offered was only temporary and now I am unhoused and on the street again. Despite asking DPW workers, I have not been able to retrieve anything I was forced to leave behind that day.

9.      These experiences make me fearful that the City will continue to destroy my property and threaten me with citation and arrest in the future just because I am homeless and living unsheltered.

**Reflections on the City's Conduct**

10.     I wish that the City would leave us alone. All I want is to be inside in a home. But the shelters are impermanent and I still have no housing in this City that I can afford because of my disability status.

I have reviewed the information contained in this declaration. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on September 12, 2022

Teresa Sandoval

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

## DECLARATION OF NATHANIEL VAUGHN

I, Nathaniel Vaughn, hereby declare pursuant to 28 U.S.C. § 1746:

1.　　My name is Nathaniel Vaughn, and I am 37 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.　　I was born and raised in San Francisco. I became homeless in 2019 when my family lost the home we were renting due to my mother's financial constraints. My mother secured a Single Room Occupancy bed in a hotel due to her medical conditions, but I ended up with nowhere to go. That is when I began living in tents, cars, and any place I could find. I was able to secure temporary supportive housing on January 21, 2020 and I now have a permanent place to live.

3.　　That time from 2019-2020 were harrowing due to the harassment I faced from the San Francisco Police Department (SFPD) and Department of Public Works (DPW). I am afraid that if I become homeless again, this pattern will repeat itself.

**Law Enforcement Harassment While Homeless**

4.　　From January 2019 to January 2020, SFPD and DPW forced me to move from where I was sleeping and threatened to take away my belongings at least once a month. They were highly disrespectful and made me feel like a criminal, just for not being housed. Sometimes they would bring a bulldozer. In those many months, I never once saw the City bag and tag anyone's property. I learned to have a bag of my belongings ready to go, but was always prepared that I might lose everything. The Homeless Outreach Team (HOT) was rarely present at these sweeps.

**Targeting and Destroying Property Without Notice**

5.      On January 8, 2020, my property was destroyed by law enforcement near Jerrold Avenue and Evans Avenue on Rankin Street. I had been staying there for about one month. I was not present when SFPD and DPW arrived because I had visited my mother at her SRO. But as usual, I had left my tent clean and had my belongings neatly packed inside. When I returned to the site that morning, nothing was left. SFPD and DPW had destroyed everything. There was no bag and tag. The HOT team was present that day and I begged for them to help me secure housing—because everything I owned had been taken from me. That day, the City destroyed the following:

| ITEM | VALUE |
|------|-------|
| REI 6-person tent | $299 |
| Subzero sleeping bag | $199 |
| Butane Stove | $20 |
| Butane | $10 |
| Wool Pants | $60 |
| Snowboarding pants | $70 |
| Jeans (multiple pairs) | $105 |
| Wool Sweaters (multiple) | $100 |
| Heavy Northface Jacket | $199 |
| Wool Socks (multiple) | $30 |
| Long Johns | $8 |
| Food | $150 |
| Toiletries | $10 |
| Bike Parts | $40 |
| Suitcase full of sports collector cards in good condition, including rare cards | Priceless |
| God Mother's Ashes | Priceless |
| **TOTAL** | $1,300 |

6.      With the assistance of an attorney, I successfully litigated an action in small claims court in San Francisco and was awarded $10,000 by a judge to compensate me for the property the City destroyed on January 8, 2020. **See Exhibit A, Notice of Entry of Judgment (CSM- 21-864077).** The City has appealed that decision.

**Reflections on the City's Conduct**

7.      I wish the City would empathize with unhoused people. If they put themselves in our shoes, we would never be treated this way. The police are intimidating. We do not deserve to be treated like criminals and to have our belongings thrown in the trash when we are at our most vulnerable.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: November 10, 2021

Nathaniel Vaughn

# EXHIBIT A

Name and Address of Court: SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO  **SC-130**

Small Claims Division
400 McAllister Street, Room 103
San Francisco, California 94102

SMALL CLAIMS CASE NO:  **CSM-21-864077**

| NOTICE TO ALL PLAINTIFFS AND DEFENDANTS: | *AVISO A TODOS LOS DEMANDANTES Y DEMANDADOS:* |
|---|---|
| Your small claims case has been decided. If you lost the case, and the court ordered you to pay money, your wages, money, and property may be taken without further warning from the court. Read the back of this sheet for important information about your rights. | *Su caso ha sido resuelto por la corte para reclarnos judiciales menores. Si la corte ha decidido en su contra y ha ordenado quo usted pague dinero, le pueden quitar su salario, su dinero, y otras cosas de su propiedad, sin aviso adicional por parte de esta corte. Lea el reverso de este formulario para obtener informacion de importancia acerca de sus derechos.* |

PLAINTIFF/DEMANDANTE *(Name, street address, and telephone number of each:)*
NATHANIEL VAUGHN
C/O VICTORIA LARSON
131 STEUART ST, SUITE 400
SAN FRANCISCO, CA  94105

Telephone No.:  (415) 724-2191

DEFENDANT/DEMANDADO   *(Name, street address, and telephone number of each:)*
SAN FRANCISCO PUBLIC WORKS
49 SOUTH VAN NESS AVENUE
SUITE 1600
SAN FRANCISCO, CA  94103

Telephone No.:  (628) 271-3160

Telephone No.:

Telephone No.:

### NOTICE OF ENTRY OF JUDGMENT

Judgment was entered as below on:  Sep-02-2021

Defendant        SAN FRANCISCO PUBLIC WORKS
shall pay plaintiff VAUGHN, NATHANIEL
$10,000.00 principal, $.00 costs, and $.00 interest on plaintiff's claim.
**SEE ATTACHED STATEMENT OF DECISION**

Enforcement of the judgment is automatically postponed for 30 days or, if an appeal is filed, until the appeal is decided.

### NOTICE OF DESTRUCTION OF EXHIBITS PURSUANT TO CCP 1952

Pursuant to Section 1952 of the Code of Civil Procedure of California, notice is hereby given that the exhibits introduced in the above-entitled proceedings shall be destroyed sixty (60) days after the mailing of the notice of entry of judgment or the final determination of an appeal. You may personally pick up your exhibits at the Small Claims Division or send someone with written authorization to pick them up. Exhibits will not be mailed. Upon written request, the court may preserve exhibits not to exceed one (1) year from the date of this notice.



CLERK'S CERTIFICATE OF MAILING -- I certify that I am not a party to this action. This Notice of Entry of Judgment and Notice of Destruction of Exhibits was mailed first class, postage prepaid, in a sealed envelope to the parties at the addresses shown above. The mailing and this certification occurred at the place and on the date shown below.

Place of mailing:  San Francisco, California

Date of mailing:  Sep-02-2021              Clerk, by    WTRUPEK                , Deputy

| -- The county provides small claims advisor services free of charge. Read the information sheet on the reverse. -- |
|---|

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SC-130 [Rev. July 1, 2007]

**NOTICE OF ENTRY OF JUDGMENT**
(Small Claims)

Code of Civil Procedure, 116.610
www.courtinfo.ca.gov

**Statement of Decision**

**Vaughn v. SF Public Works**
**Case number: CSM 21-864077**

The Defendant shall pay Plaintiff $10,000.00 plus costs.

## Plaintiff Vaughn

The Plaintiff was away from her site when the cleanup started on January 8, 2020. He was there the day before and when he returned, all his personal property was gone. He had lived in this area for a couple of months and he did not receive any notices of any sort about this clean up or how he could claim his personal property.

## Defendant's case

The Court heard from three Defense witnesses in CSM 21-864062; CSM 21-864066; CSM 21-864075; and CSM 21-864076. The evidence is applicable to this case CSM 21-864077. Their evidence is summarized as follows:

## Nichelle Flintroy – CCSF City Claims Adjuster

Ms. Flintroy represented the Defendant, SFDPW. She stated the plaintiffs were given notice of the resolution to occur at or near the Jerrold and Rankin area on January 8, 2020. Resolution is the term used to mean clean and clear an encampment. Outreach attempts were made beginning November 13, 2019. The HOT (Homeless Outreach Team) and the ERT (Encampment Resolution Team) reached out to the residents of this area 2-3 times per week starting in November 2019, the day before and the day of resolution to offer services to residents.

## Larry Stringer – Retired Deputy Director of Operations with DPW

Mr. Stringer stated on the day of the January 8, 2020 cleanup, he was the acting interim manager of Healthy Streets Operations Center. In November 2019, the Jerrold and Rankin encampment resolution was discussed with a target date of December 2019. It was pushed to January 8, 2020 because the PUC needed the area. Mr. Stringer was present on January 8, 2020 around 8:00 am and the HOT team arrived prior to cleanup, which is typical. Cleanup began at 10:00am and the bulldozer arrived between 11am to noon. Mr. Stringer left around 11:00am and returned around 1:00pm. Mr. Stinger said the usual protocol when a resolution occurs is that residents are allowed to take everything of value with them or they can return to retrieve the rest of their items within a reasonable amount of time – meaning within the course of the day. Items that residents express an interest in or seem to be of value are "bagged and tagged" and stored at 2323 Cesar Chavez Street and can be reclaimed. He said it would be unusual and not protocol for residents to not be allowed an opportunity to retrieve their items and he was unaware of that ever happening in a resolution.

1

**<u>Brenda Meskin – Encampment Resolution Team Lead</u>**

Ms. Meskin stated a Resolution Flyer notifying residents of the date and time of clean up was provided to Plaintiffs three weeks prior to January 8, 2020.  She did not have a copy of that flyer and she did not personally participate in handing out the notifications.

Copies of the actual notice of resolution distributed by the HOT team or DPW notices for bagging and tagging or of planned and actual removal were not provided to the Court by any of the Defense witnesses.  Resolution procedures and protocols also were not provided to the Court by any of the Defense witnesses.

Date: August 19, 2021

_____
Judge Michelle Tong
SF Superior Court

2

2 - 30

SC-130

| INFORMATION AFTER JUDGMENT | *INFORMACION DESPUES DEL FALLO DE LA CORTE* |
|---|---|

Your small claims case has been decided. The **judgment** or decision of the court appears on the front of this sheet. The court may have ordered one party to pay money to the other party. The person (or business) who won the case and who can collect the money is called the **judgment creditor**. The person (or business) who lost the case and who owes the money is called the **judgment debtor**. Enforcement of the judgment is postponed until the time for appeal ends or until the appeal is decided. This means that the judgment creditor cannot collect any money or take any action until this period is over. Generally, both parties may be represented by lawyers after judgment.

**IF YOU LOST THE CASE . . .**

1. If you lost the case on your own claim and the court did not award you any money, the court's decision on your claim is **FINAL**. You may not appeal your own claim.

2. If you lost the case and the court ordered you to pay money, your money and property may be taken to pay the claim unless you do one of the following things:

   a. **PAY THE JUDGMENT**
   The law requires you to pay the amount of the judgment. You may pay the judgment creditor directly, or pay the judgment to the court for an additional fee. You may also ask the court to order monthly payments you can afford. Ask the clerk for information about these procedures.

   b. **APPEAL**
   If you disagree with the court's decision, you may appeal the decision *on the other party's claim. You* may not appeal the decision on your own claim. However, if any party appeals, there will be a new trial on *all* the claims. If you appeared at the trial, you *must* begin your appeal by filing a form called a *Notice of Appeal* (form SC-140) and pay the required fees within 30 *days* after the date this *Notice of Entry of Judgment* was mailed or handed to you. Your appeal will be in the superior court. You will have a **new trial** and you must present your evidence again. You may be represented by a lawyer.

   c. **VACATE OR CANCEL THE JUDGMENT**
   If you did not go to the trial, you may ask the court to vacate or cancel the judgment. To make this request, you must file a *Motion to Vacate the Judgment* (form SC-135) and pay the required fee *within 30 days* after the date this *Notice of Entry of Judgment* was mailed. If your request is denied, you then have 10 *days* from the date the notice of denial was mailed to file an appeal. The period to file the *Motion to Vacate the Judgment is 180 days* if you were *not properly served* with the claim. The 180-day period begins on the date you found out or should have found out about the judgment against you.

**IF YOU WON THE CASE . . .**

1. If you were sued by the other party and you won the case, then the other party may not appeal the court's decision.

   If you won the case and the court awarded you money, here are some steps you may take to collect your money or get possession of your property:

   a. **COLLECTING FEES AND INTEREST**
   Sometimes fees are charged for filing court papers or for serving the judgment debtor. These extra costs can become part of your original judgment. To claim these fees, ask the clerk for a *Memorandum of Costs.*

   b. **VOLUNTARY PAYMENT**
   Ask the judgment debtor to pay the money. If your claim was for possession of property, ask the judgment debtor to return the property to you. **THE COURT WILL NOT COLLECT THE MONEY OR ENFORCE THE JUDGMENT FOR YOU.**

   c. **STATEMENT OF ASSETS**
   If the judgment debtor does not pay the money, the law requires the debtor to fill out a form called the *Judgment Debtor's Statement of Assets* (form SC-133). This form will tell you what property the judgment debtor has that may be available to pay your claim. If the judgment debtor willfully fails to send you the completed form, you may file an *Application and Order to Produce Statement of Assets and to Appear for Examination* (form SC-134) and ask the court to give you your attorney's fees and expenses and other appropriate relief, after proper notice, under Code of Civil Procedure section 708.170.

   d. **ORDER OF EXAMINATION**
   You may also make the debtor come to court to answer questions about income and property. To do this, ask the clerk for an *Application and Order for Appearance and Examination (Enforcement of Judgment)* (form EJ-125) and pay the required fee. There is a fee if a law officer serves the order on the judgment debtor. You may also obtain the judgment debtor's financial records. Ask the clerk for the *Small Claims Subpoena and Declaration* (form SC-107) or *Civil Subpoena Duces Tecum* (form SUBP-002).

   e. **WRIT OF EXECUTION**
   After you find out about the judgment debtor's property, you may ask the court for a *Writ of Execution* form EJ-1 30) and pay the required fee. A writ of execution is a court paper that tells a law officer to take property of the judgment debtor to pay your claim. Here are some examples of the kinds of property the officer may be able to take: **wages, bank account, automobile, business property, or rental income.** For some kinds of property, you may need to file other forms. See the law officer for information.

   f. **ABSTRACT OF JUDGMENT**
   The judgment debtor may own land or a house or other buildings. You may want to put a lien on the property so that you will be paid if the property is sold. You can get a lien by filing an *Abstract of Judgment* (form EJ-001) with the county recorder in the county where the property is located. The recorder will charge a fee for the *Abstract of Judgment.*

---

**NOTICE TO THE PARTY WHO WON:** As soon as you have been paid in full, you *must* fill out the form below and mail it to the court *immediately* or you may be fined. If an *Abstract of Judgment has* been recorded, you must use another form; see the clerk for the proper form.

SMALL CLAIMS CASE NO.: _____

ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT
*(Do not use this form if an Abstract of Judgment has been recorded.)*

**To the Clerk of the Court:**
I am the [ ] judgment creditor      [ ] assignee of record.
I agree that the judgment in this action has been paid in full or otherwise satisfied.
Date: _____

▶

| (TYPE OR PRINT NAME) | (SIGNATURE) |
|---|---|

**NOTICE OF ENTRY OF JUDGMENT**
**(Small Claims)**