1  LAWYERS' COMMITTEE FOR CIVIL
   RIGHTS OF THE SAN FRANCISCO BAY AREA
2  Zal K. Shroff, MJP 804620*
   Elisa Della-Piana, SBN 226462
3  131 Steuart Street, Ste. 400
   San Francisco, CA 94105
4  Telephone: (415) 543-9444
   edellapiana@lccrsf.org
5  zshroff@lccrsf.org
6
   *application pro hac vice pending
7
   Attorneys for Plaintiffs
8
   Additional Counsel below
9

10                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
11

12
   COALITION ON HOMELESSNESS; TORO          CASE NO. 3:22-cv-05502
13 CASTAÑO; SARAH CRONK; JOSHUA
   DONOHOE; MOLIQUE FRANK; DAVID            **EXHIBIT 4**
14 MARTINEZ; TERESA SANDOVAL;               **DECLARATIONS OF TODD BRYANT,**
   NATHANIEL VAUGHN,                        **SHYHYENE BROWN, JEFFEREY**
15                                          **CONNICK, HENRICK DELAMORA,**
                        Plaintiffs.         **PATRICK DUBOSE, HEATHER**
16                                          **FREEHOFFER, ROBERT HARRISON,**
              v.                            **JAYSON HILL, ANDREW HOWARD,**
17                                          **TRICIA HURD, TIMOTHY JONES,**
   CITY AND COUNTY OF SAN FRANCISCO;        **JEZZEILLE MURDOCK, SHANNA**
18 SAN FRANCISCO POLICE DEPARTMENT;         **COUPER ORONA, DEVON PARTEE,**
   SAN FRANCISCO DEPARTMENT OF              **AUDRA SPARKS, NICHELLE SOLIS,**
19 PUBLIC WORKS; SAN FRANCISCO              **VICTORIA SOLOMON AND VINCENT**
   DEPARTMENT OF HOMELESSNESS AND           **VETTER IN SUPPORT OF**
20 SUPPORTIVE HOUSING; SAN FRANCISCO        **PLAINTIFFS' MOTION FOR**
   FIRE DEPARTMENT; SAN FRANCISCO           **PRELIMINARY INJUNCTION**
21 DEPARTMENT OF EMERGENCY
   MANAGEMENT; LONDON BREED, in her
22 official capacity as Mayor; and SAM DODGE,
   in his official capacity as Director of the
23 Healthy Streets Operation Center (HSOC),
24              Defendants.
25

26

27

28

ACLU FOUNDATION OF
NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
jdo@aclunc.org
bgreene@aclunc.org

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
Wesley Tiu, SBN 336580
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com
wesley.tiu@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM & WATKINS LLP
Regina Wang, SBN 326262
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
regina.wang@lw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF TODD BRYANT**

I, Todd Bryant, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Todd Bryant and I am 49 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have lived in San Francisco for most of my adult life. For most of that time, I was employed as an automobile technician. But I was injured on the job. As a result of my injuries, I now have herniated disks in my neck and back and often walk with a cane. I lost my job after that. I became homeless after I could not find work.

3.      For all the years I have been homeless, I have been trying to find stable housing to get back on my feet. Finally, very recently, I was able to secure placement in a tiny home on Gough Street. I hope that I will be permitted to stay long-term, although this is by no means a guarantee.

**Law Enforcement Harassment While Homeless in Violation of City Policy**

4.      I have been harassed by the San Francisco Police Department (SFPD) and the Department of Public Works (DPW) repeatedly over the last several years. They have taken my belongings away from me many times. My story has been told in the documentary *Stolen Belonging*, after outreach volunteers recorded the City's seizure and destruction of my property.[1]

---

[1] *See Stolen Belonging*, Episode 2: City as Thief, *available at* https://www.stolenbelonging.org/episode-2.

5.        I know that the City is required to have a notice posted in advance of any sweep of homeless people or their property. But when I have talked to police officers about this, they say that requirement does not matter. I have almost never seen posted notice in advance of being approached by SFPD and DPW and told to move or that I could not have my property.

6.        It is also my understanding that the City is supposed to bag and tag people's property for safekeeping and later pickup if they confiscate it. I have gone down to the DPW yard in an attempt to retrieve my belongings many times. I have never once successfully gotten any of my property back—even when I have had a bag and tag slip identifying that my property should be there. I have only gotten a bag and tag slip about twice. Most of the time, I have not received a bag and tag slip and there has been no attempt to save or store any of my belongings for me to retrieve later.

7.        In my experience, when DPW work crews ask you to move, you can only move your belongings about twenty feet at a time. If you move farther than that, DPW crews will start taking whatever you momentarily left behind before you can come back for it.

8.        I have never been offered viable services or shelter during one of these sweeps. Sometimes, the Homeless Outreach Team (HOT) or DPW and SFPD will ask me something to the effect of, "Do you guys want to go to a Navigation Center or something?" But later, they will return and say they could not take us for some reason or another. Regardless, SFPD and DPW would force us to move along or leave the area—and would threaten to cite or arrest us if we refused to do so.

**Specific Episodes of Property Destruction and Arrest While Homeless**

9.        I can clearly recall four instances in the last few years in which my belongings have been taken. One particularly traumatic incident occurred several years ago, when I was staying in the parking lot between Gough Street and McCoppin Street, where they meet at Otis Street, with my girlfriend. We were in the process of moving our belongings up the street, when I left to go to Walgreens for supplies.

10.        SFPD officers approached me at Walgreens and said I fit the description of someone in an armed robbery. It was raining that day, and they made me lay down, face down in a puddle of water. They took everything from my pockets and threw it on the ground, so my phone and wallet were also getting wet. They held me there on the ground for a long time. After a while, they let me go.

11.        While I was being held at Walgreens, my girlfriend was still trying to push our belongings across the street. SFPD officers told her to go look for me so that I could help her

with moving our things. They promised her that they would not touch our belongings until we got back.

12.     When I  finally did get back to where our belongings had been, everything was gone. All that we had left were the soaking-wet clothes on our backs and a bike that I had ridden to and from Walgreens.

13.     It was pouring rain all day, and we had no shelter. We had to sleep under a freeway by a skate park that night. Luckily some of our friends gave us a blanket to sleep with, but other than that we had no way to shield ourselves from the rain.

14.     The second incident I vividly recall occurred when I was staying on South Van Ness near the freeway onramp. I was not blocking the sidewalk, as I had set up my tent up right where the sidewalk ended.

15.     One SFPD officer was present, as well as a DPW work crew. I did not receive any advance notice that they would be coming. The SFPD officer showed up to where I was staying around 7:00 PM. This was unusual. Usually, when the City made us move, it was early in the morning. I was staying at that location with my girlfriend and a few other friends, but they were away when SFPD arrived.

16.     The SFPD officer informed me I had twenty minutes to move all of my and my friends' belongings that were at the site, or else he was going to arrest me. It was impossible to move everything we owned in twenty minutes. As stated above, I have a back and neck injury from work including herniated disks, and I often walk with a cane. I informed the officer of this, but he did not grant me any extra time to move. This was an impossible task.

17.     Ultimately, the SFPD officer did arrest me. He put me in the back of a police car and I watched DPW workers tear my tent apart so that they could take all of my belongings. I was taken to the police station on Valencia for a few hours, and then released. By the time I got back, everything was gone.

18.     I lost a toolbox and all of my tools I had used for my work as an automobile technician. These tools alone cost thousands of dollars. DPW also took two brand-new generators I had purchased to keep warm: a Honda U 3000 generator and an EU 2000 generator. They took my expensive Alienware gaming laptop as well. I like to cook, and my set of Japanese kitchen knives was taken as well. I also lost irreplaceable items that had been passed down to me over the years, like a collection of antiques and a coin collection made up of coins my grandfather had given to me over the course of my entire life. I was not able to retrieve any of this property.

19.     The third incident I recall occurred on or around January 3, 2019, near the women's drop-in shelter at Division and 13th Street. This incident became the basis of the *Stolen Belonging* documentary and was recorded in that documentary.[2]

20.     I had been asked to move by City workers four times that day already. Earlier in the day, the City had taken my tent away without warning. As it was getting dark, I decided to put a tarp that I had recently purchased over my belongings to keep them safe for the night. But as soon as I put a tarp over my belongings to protect them, the City declared it to be a tent and they began removing my belongings as I tried to move them. I was able to save some things, but the City took almost everything from me. I also received a citation for illegal camping during this incident.

21.     Just a few months ago around December 2021— right before I was able to move to a safe sleep site—a DPW crew arrived at where I was staying on Division Street. I received no advance notice that they would be coming. Although I was not present during this sweep, a friend of mine was present and was watching my belongings. But DPW would not let my friend safeguard any of my property for me. They took everything. That day, I lost:  a large new toolbox I had just purchased to help me find work; $600 worth of clothes my girlfriend had purchased for us; my MacBook Pro; my Samsung LED TV; and my Xbox One along with several games for that console. These were devastating economic losses.

22.     A week later, when I had moved down the street, a DPW worker spoke with me about my belongings that had recently been taken. The DPW worker told me they had thrown my toolbox into their crusher truck. When I asked them about the $600 in clothes they had taken, the worker said, "We're DPW, baby, that's what we do!" I have never been able to recover any of this property.

**Prior Citations and Arrests for Illegal Camping**

23.     As described above, I have been cited and/or arrested for illegal lodging or camping twice in the past few years. I recall that my second citation was on January 3, 2019. That does not include all of the times when SFPD officers and DPW work crews have threatened me with citation and arrest if I did not move along from the area. I do not recall ever actually being offered shelter during these arrests or threatened arrests. Those threats persist to this day.

24.     Although I have finally been able to find a temporary housing option in a tiny home program, there is no guarantee that this living situation will be long-term. As a result, I live in constant fear that if I am forced to live back on the streets, I will again be subject to the City's

---

[2] *See Stolen Belonging, supra* note 1.

cruel citation, arrest, and property destruction practices.

**Reflections on the City's Conduct**

25.     I have been traumatized again and again by the City's sweeps. Some of these events were so traumatic to me that I have spent months trying to block them out. Every time I hear the "beep, beep" of a DPW truck, I get shivers. You would think that the DPW workers the City hires would be trained or skilled at interacting with unhoused folks. They are not.

26.     I have lived here in San Francisco for most of my adult life. To have the City treat me this way now just because I am homeless—it is heartbreaking.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: 4/26/22

Todd Bryant

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

### DECLARATION OF SHYHYENE BROWN

I, Shyhyene Brown, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Shyhyene Brown, and I am 40 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have lived in San Francisco for eleven years. For much of that time, I have been homeless or living in shelter or transitional housing. But I have never given up on moving forward in my life. In 2020, I graduated from UC Berkeley with a Bachelor of Science degree in Criminal Justice and Paralegal Studies. I also volunteer and do outreach work with homeless individuals with the Coalition on Homelessness.

**Law Enforcement Harassment While Homeless**

3.      In the time that I have been homeless, I have been harassed at least 20 times by San Francisco Police Department (SFPD) and Department of Public Works (DPW) staff members. But the majority of that harassment came from SFPD. I have been woken up at 3AM or 4AM repeatedly. I have had police beat my tent with a baton and cut it open while I was still inside. The officers would shine their bright lights in my face and threaten me. I was regularly told I would be taken to jail if I did not move all my belongings in a matter of minutes. There are days where I wake up crying—frightened that SFPD is coming to destroy the only property I have to my name. It gives me chills to think about it.

4.      SFPD belittled us. They made me feel that I was wrong for sleeping in public when that was the only option I had. I do not recall them ever offering me advance warning or offering me a shelter placement before forcing me to move. That is what first motivated me to take a

stand to talk about the treatment we receive. In March 2017, after SFPD and DPW made us pack up our belongings in the pouring rain at 5:30AM, I wrote a letter to the City. In it, I said that "we too are human and have feelings." The letter was later published in the San Francisco Examiner.[1]

5.          The Homeless Outreach Team (HOT) is not there half of the time. But even when they are, I do not agree with the way that the HOT team comes to talk to us. They give out false promises that they cannot keep in the name of camping enforcement. They will say they can get you in here or there at one shelter or another, but then they will leave and not come back. Or they will return but they never follow up with the person to let them know if shelter was in fact available. Some HOT team workers care more than others. But even they cannot control the number of shelter beds or services the City makes available to us. In the meantime, DPW and SFPD have already swept most people out of the area.

6.          It upset me to the fullest that the City continued conducting sweeps even during the COVID-19 state of emergency—which was against CDC guidance telling local governments not to displace homeless people during the pandemic. But DPW and SFPD have no heart for individuals who have nowhere else to go. DPW in particular continued sweeping us on a regular basis during the pandemic.

**Targeting and Destroying Property Without Notice**

7.          DPW would make us move or seize our belongings pretty much every day I was homeless and living on the street. This usually happened around 4AM. SFPD would be there standing back in case someone tried to argue with what was happening. Often times, the HOT team was not present and nor were advocates like the Coalition on Homelessness—who tend to supervise sweeps to make sure the City follows its own policies.

8.          I know my rights, and I have been an advocate for my community. But sometimes I would be targeted for that advocacy. If I ran to another person's tent to make sure that DPW crews were properly handling their property, I would return to find that in the meantime they had come to take my things and throw them away in a compactor truck—claiming that they had been abandoned merely because I stepped away for a moment.

9.          Some days I just want to hustle and get out there to find work and build my stability. But on those days, I have to ask friends of mine to watch my belongings just in case DPW comes and wants to take them away. I pray to God that my property is all still there every time I return.

---

[1] *See* Joe Fitzgerald Rodrguez, *Read this letter penned by homeless woman displaced in rainy weekend tent sweeps*, SAN FRANCISCO EXAMINER (Mar. 6, 2017), *available at* https://www.sfexaminer.com/news/read-this-letter-penned-by-homeless-woman-displaced-in-rainy-weekend-tent-sweeps/.

4 - 7

10.     I would estimate that my property has been seized or destroyed by the City of San Francisco approximately 30 times over the past decade. One of the most upsetting episodes occurred just a few years ago at 19th Street and Harrison Street. DPW had arrived at 2AM and started throwing all of our belongings into the back of their truck. This included my mom's wedding jewelry set. I was devastated. In my experience, the City also targets our larger essential items for destruction—such as bicycles we use to go to work or run errands.

11.     Notices are almost never posted before a sweep. In the entirety of the last decade, I have seen written notice posted before a sweep only three times. Each of those three times was for a major event where either the mayor or another high-ranking political authority was coming to the area. Those are the only times that written notices go up, and we almost never get verbal warnings either.

12.     I do not believe that bag and tag actually happens in San Francisco the way it is supposed to. Most of the time your property is gone and there is no documentation that it ever entered the City's possession. In my experience, DPW almost never bags and tags despite conducting daily sweep operations throughout the City. I have only once had my property bagged and tagged despite having lived through around 30 sweeps myself. The common understanding of homeless people in the community is that the only way you actually get your property bagged and tagged is if you get arrested by SFPD and your property is confiscated by them as evidence of a crime.

13.     I often reflect on the fact that DPW workers are actually very close to the experience of unhoused people in their life circumstances. It is hard to scrape by in a low-wage job in this City. I wonder if that makes them even more harsh as a way to distance themselves emotionally from an economic reality that hurts them too.

**Reflections on the City's Conduct**

14.     Being homeless is enough of a struggle already. Unlike some people who have a 9-to-5 work week and do not have to worry about where their next meal is coming from or where they will fall asleep—we do. It is a shame how San Francisco can spend all this money on building lavish apartments and playgrounds, but refuse to invest in decent, affordable housing for the long-time residents it is pricing out. Still, lawmakers have said that San Francisco has a "homeless epidemic." My question is: when are these government officials going to held accountable for the homeless epidemic they have contributed to? Destroying the only property we have to rebuild our lives is not the answer. It is just another part of the problem.

4 - 8

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: October 25, 2021

Shyhyene Brown

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF JEFFEREY CONNICK**

I, Jefferey Connick, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Jefferey Connick, and I am 56 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.       I have lived in San Francisco for a long time. But I have been homeless in San Francisco since 2016. Despite my best efforts, I have been unable to secure permanent housing since that time.

**Harassment by the City While Homeless**

3.      I have been harassed by staff from the Department of Public Works (DPW) at least weekly in the time that I have been homeless. It occurs so regularly; you can set your watch to it. Recently, I have also been harassed by the San Francisco Police Department (SFPD). This has occurred at least five nights a week.

4.      When DPW has taken my property, or when I have witnessed them taking others' property, DPW have threatened us with arrest, saying they will call the police if we try to touch or take back our property. Because I am still unhoused, I live in constant fear of future harassment by DPW and SFPD.

**Targeting and Destroying Property Without Notice**

1.      In my experience, DPW has never given me a receipt for my belongings, so I am never able to prove what they took.

2.      In addition to the weekly harassment I have experienced from DPW, I vividly recall two instances when they destroyed my property in Winter 2020.

3.      The first incident occurred when I was staying on Division Street, in front of Best Buy. DPW showed up without any prior notice. The Homeless Outreach Team (HOT) was not present to offer us services.

4.      At this time, DPW took a brand-new $4500 gasoline generator that my friends and I had just recently purchased. We used this generator for cooking, heating, and other essential daily needs. DPW ran with the generator to their truck. I tried to retrieve it from the truck, and DPW threatened to put me in jail for retrieving my own property. DPW did not provide us with any information on how to get our generator back, and I was never able to retrieve it.

5.      The second incident occurred when I was staying on Vermont and 17th Streets. Again, DPW showed up without prior notice and with no other City agencies present.

6.      DPW began clearing what they considered trash. One of the DPW workers, who had a gold tooth, kept trying to take a guitar amp I owned. I told him multiple times that this was not trash, but he kept trying to take it away from me. After some time, he reached behind me into my tent and grabbed a butter knife. He threatened seven of us who were present at the time with it until he was able to take the guitar amp. They also broke one of my other guitars by stepping on the neck of it. I never received it back.

7.      To my knowledge, the only punishment this DPW worker received was a few weeks' suspension for this incident. I am not aware that he was fired or otherwise reprimanded for threatening us.

**Reflections on the City's Conduct**

8.      What the City is doing—specifically DPW—is harmful. I would like to see DPW workers held accountable for their actions. I do not know what the solution is, but I can tell you that what is happening right now is not working. The City does not have enough services for the thousands of unhoused people in San Francisco. What does it solve to move people from one place to another?

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: February 24, 2022

Jefferey Connick

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF HENRICK DELAMORA**

I, Henrick Delamora, hereby declare pursuant to 28 U.S.C. § 1746:

1.　　　My name is Henrick Delamora, and I am 36 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.　　　I am in a unique position because I used to work for the Department of Public Works (DPW). But I am also someone who has been homeless and experienced the City's homeless sweeps firsthand—even while I worked for the very agency that destroyed my property. Fortunately, I secured a housing placement and am no longer living with the daily fear that my property will be taken away from me.

**Targeting and Destroying Property Without Notice**

3.　　　My property has been taken and destroyed by DPW and the San Francisco Police Department (SFPD) on two occasions. The first time was while I was still working for DPW. In July 2019, I was living under the bridge at Cesar Chavez Street near the on-ramp. I had gone to my shift at work and when I came back later that night, I found that all my belongings were gone. I received no notice before this sweep and I never received any record of my property being taken. Because I worked for DPW, I went to the DPW office to ask about my belongings. I had to wait for hours to get an answer.

4.　　　I ultimately learned that a DPW crew of three or four people were specifically assigned to sweep my area. But they said they did not know where my stuff had been taken. I

was distressed. They never found my property. That day, I lost the following:

| Property/Item | Replacement Value |
|---|---|
| Uniform | $20 |
| 6-person Tent | $200 |
| Gas scooter | $70 |
| Bike | $300 |
| Winter outfit | $50 |
| Backpack with tools | $100 |
| Duffle bag | $100 |
| Antique sword | Priceless |
| Pellet guns | $150 |
| Tactical vest | $150 |
| **TOTAL** | $1,140 |

5.      A supervisor at DPW at least bought me a new uniform for my second job as a bouncer at a club, which was lost in my tent that was never found. Imagine if I had not worked for DPW at the time how I would have been treated.

6.      The second time my belongings were destroyed was on January 8, 2020. At the time, I was homeless and living on Evans and Rankin Avenue by the railroad tracks. I arrived while the sweep was in progress—which was in the middle of the day. When I arrived, DPW told me to drop all my belongings and just leave because everything now belonged to the City and County of San Francisco. The crews told us that everything was going to be thrown away. I had received no notice that a sweep was going to occur that day, either verbally or in writing. The City had posted no notice at the site, and no City employee came to notify us.

7.      I asked if I could remove my belongings because my things were neatly packed. SFPD officers, including Officer Greene, said I could not and threatened me with jail if I tried to recover my belongings. Nothing that day was bagged and tagged. DPW did not separate out any items for safekeeping and they labelled nothing. They just heaped everything into large piles with their bulldozers. We were never advised whether or how to recover our property. I knew my property was destroyed because my former DPW Supervisor, Kareem, told me they threw it all away. That day, I lost the following:

| Property/Item | Replacement Value |
|---|---|
| 50 gallon air compressor | $500 |
| Dewalt drills | $300 |
| Work supplies | $50 |
| Laptops | $2000 |
| Phones | $1500 |
| Tools | $400 |
| Memory foam mattress | $600 |

| New clothes | $300 |
|---|---|
| Bike "fixie" | $600 |
| 50 gallon water tank | $1,150 |
| 3 camping stoves | $275 |
| Shoes | $300 |
| Bedding (4 pillows, blankets) | $600 |
| Power inverter | $250 |
| Pictures of late ex-girlfriend | Priceless |
| My two dogs and best friends | Priceless |
| Mother's jewelry | Priceless |
| **TOTAL** | $8,825 |

8.   I do not recall anyone offering us any shelter that day, even though the Homeless Outreach Team (HOT) was present. But after SFPD threatened me with going to jail if I did not leave, I was concerned and left immediately.

**9.**   With the assistance of an attorney, I successfully litigated an action in small claims court in San Francisco and was awarded $10,000 by a judge to compensate me for the property the City destroyed on January 8, 2020. **See Exhibit A, Notice of Entry of Judgment (CSM-21-864063).** The City has appealed that decision.

**Reflections on the City's Conduct**

10.   Both times I had my property taken were stressful and exhausting. It feels like DPW and SFPD enjoy seeing people like me suffer. It is painful. We collect our belongings to help us survive and they just snatch it up and take it. It feels like they are stealing from people.

11.   It is also just unreasonable for the City to take our belongings. The areas that homeless people sleep are chosen precisely because there is not a lot of traffic and people can keep these spaces clean. Why is the City punishing us just for being homeless?

12.   I am one of those people who goes to work every day and works really hard but just happens to be homeless. I know so many others who do the same. Why is the City destroying our property while we are at work? What do they expect us to do instead? It just feels like the City wants to keep punishing us for being homeless. I would like to see the City held accountable and understand that what they are doing is wrong.

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: October 25, 2021

Henrick Delamora

4 - 14

# EXHIBIT A

| Name and Address of Court: | |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
Small Claims Division
400 McAllister Street, Room 103
San Francisco, California  94102

**SC-130**

SMALL CLAIMS CASE NO:  **CSM-21-864063**

| **NOTICE TO ALL PLAINTIFFS AND DEFENDANTS:**<br><br>**Your small claims case has been decided.  If you lost the case, and the court ordered you to pay money, your wages, money, and property may be taken without further warning from the court.  Read the back of this sheet for important information about your rights.** | ***AVISO A TODOS LOS DEMANDANTES Y DEMANDADOS:***<br><br>**Su caso ha sido resuelto por la corte para reclarnos judiciales menores.  Si la corte ha decidido en su contra y ha ordenado quo usted pague dinero, le pueden quitar su salario, su dinero, y otras cosas de su propiedad, sin aviso adicional por parte de esta corte.  Lea el reverso de este formulario para obtener informacion de importancia acerca de sus derechos.** |
|---|---|

PLAINTIFF/DEMANDANTE  (Name, street address, and telephone number of each:)

HENRICK DELAMORA
1750 LA SALLE AVENUE
SAN FRANCISCO, CA  94124

Telephone No.:

Telephone No.:

DEFENDANT/DEMANDADO     (Name, street address, and telephone number of each:)

SAN FRANCISCO PUBLIC WORKS
49 SOUTH VAN NESS AVE.
SUITE 1600
SAN FRANCISCO, CA  94103

Telephone No.:  **(628) 271-3160**

Telephone No.:

### NOTICE OF ENTRY OF JUDGMENT

Judgment was entered as below on:  Sep-02-2021

Defendant          SAN FRANCISCO PUBLIC WORKS
shall pay plaintiff DELAMORA, HENRICK
$10,000.00 principal, $.00 costs, and $.00 interest on plaintiff's claim.
**\*\*SEE ATTCHED STATEMENT OF DECISION\*\***

Enforcement of the judgment is automatically postponed for 30 days or, if an appeal is filed, until the appeal is decided.

### NOTICE OF DESTRUCTION OF EXHIBITS PURSUANT TO CCP 1952

Pursuant to Section 1952 of the Code of Civil Procedure of California, notice is hereby given that the exhibits introduced in the above-entitled proceedings shall be destroyed sixty (60) days after the mailing of the notice of entry of judgment or the final determination of an appeal.  You may personally pick up your exhibits at the Small Claims Division or send someone with written authorization to pick them up.  Exhibits will not be mailed.  Upon written request, the court may preserve exhibits not to exceed one (1) year from the date of this notice.

CLERK'S CERTIFICATE OF MAILING -- I certify that I am not a party to this action.  This Notice of Entry of Judgment and Notice of Destruction of Exhibits was mailed first class, postage prepaid, in a sealed envelope to the parties at the addresses shown above.  The mailing and this certification occurred at the place and on the date shown below.

Place of mailing:  **San Francisco, California**

Date of mailing:  **Sep-02-2021**                              Clerk, by  **WTRUPEK**                              , Deputy

| **-- The county provides small claims advisor services free of charge.  Read the information sheet on the reverse. --** |
|---|

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SC-130 [Rev. July 1, 2007]

**NOTICE OF ENTRY OF JUDGMENT**
**(Small Claims)**

Code of Civil Procedure, 116.610
www.courtinfo.ca.gov

4 - 16

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF PATRICK DUBOSE**

I, Patrick Dubose, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Patrick Dubose and I am 53 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have been living in San Francisco since my divorce. I am currently injured, with two broken feet. Because of my serious injuries, I am unable to find work.

3.      I am currently in temporary, transitional housing. I am still looking for permanent housing.

## Harassment by Law Enforcement While Homeless

4.      I have had my property taken and been forced to move by the City multiple times. Often, the Department of Public Works (DPW) will have an officer from the San Francisco Police Department (SFPD) standing by while they take my things. During these sweeps, SFPD has bullied me and everyone around me to leave the area. I have been threatened with arrest in the past if I did not move quickly enough. SFPD would say I was violating the law by camping in public, citing a legal code section that I did not understand. It was confusing and intimidating.

5.      Because I have not yet secured permanent housing, I still have apprehension of future harassment and threats by SFPD.

## Property Destruction Without Notice While Homeless

6.      I have almost never received notice before the City has come to sweep and seize my property. Sometimes DPW or other City officers will drive by and give an informal verbal

warning, such as, "We'll be by in the next couple of days." But the City will often not specify a time. Sometimes, SFPD will drive by to give this verbal warning, but they will have a DPW clean-up crew with a garbage truck right behind them. I have almost never seen the City post a written notice in advance of a sweep. In fact, I have seen a posted notice only once.

7.        I understand that the City is supposed to "bag and tag" our personal property and store it for safekeeping if they take it from us during a sweep. But I have never gotten a receipt from the City to tell me my belongings were bagged and tagged. I also do not know anybody who has successfully retrieved their belongings from the City after a sweep.

8.        I vividly recall two sweeps where the City seized and destroyed my belongings. The first occurred in the summer of 2021, on Masonic and Geary. The City—I cannot recall which department—took some of us to get tested for COVID-19. They sent a van out to pick us up. While we were at the COVID-19 testing center, DPW took all of our belongings. The few unhoused people who had stayed behind at the site tried to keep DPW from taking everything. But I learned that DPW workers did not listen to them and seized our property anyway. I lost everything in this sweep—my tent, sleeping bags, a cooking stove, personal belongings, and my clothes, among other essential survival items.

9.        The second sweep I recall was in early February 2022, while I was staying near Masonic and Geary. This is the one time where the City had posted a sign informing us of the sweep.  But DPW came a day earlier than the notice said. They gave us ten minutes to pack up and move. I currently have two broken feet. The HOT team was also present, but they did not make us any service offers. All we heard from DPW and the HOT team was just, "You've got to go." Thankfully, the Coalition on Homelessness intervened on my behalf and the City workers left the area without forcing me to move. Now, the Coalition on Homelessness is assisting with connecting me to services. If it was not for them, I would have been displaced by the City yet again during this most recent sweep.

**Reflections on the City's Conduct**

10.        The City does not provide any assistance in navigating the systems that would help us get off the street. Especially as I am currently injured, it is impossible for me to pick up and go in ten minutes without any support or guidance on where to go or what to do. I feel that the City should not be putting people in this position. It is like being kicked when you are down.

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on March 11, 2022.

_____
Patrick Dubose

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF HEATHER FREEHOFFER**

I, Heather Freehoffer, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Heather Freehoffer, and I am 44 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I used to live in Stockton working as a truck driver for UPS—but had to go on medical leave to take care of my sister who had a healthcare crisis in San Francisco. I moved to San Francisco in January of 2019 to be with her. Unfortunately, I lost my job while I was on leave. I started living in my vehicle after that—until my car was towed by the City of San Francisco in 2020. That was when I started living in a tent. Fortunately, I am now stably housed again and getting back on my feet.

**Targeting and Destroying Property Without Notice**

3.      I have seen the Department of Public Works (DPW) destroy my property or the property of others on several occasions. Every time I had an encounter with DPW, I felt humiliated and worthless. I recall two of these occasions vividly.

4.      In April 2019, I was parked near the railroad tracks near Evans Avenue on Rankin Street. San Francisco Police Department (SFPD) and DPW suddenly appeared and told us that everyone had to pack up and leave—without any prior notice. That day, I saw a bulldozer aggressively lift someone's tent and destroy all that was inside. Nothing was bagged and tagged. I asked them why they were doing this and DPW and SFPD told me to back up. They threatened

1

me with arrest, without stating what law I was violating.

5.      Around September 15, 2020, I was staying at Evans Avenue near Selby Street. DPW came during the day and told everyone we had 15 minutes to pack up and leave—again without notice. I recall them taking all of our belongings away without bagging and tagging. They threw everything into a dumpster. I felt helpless and humiliated. DPW crews laughed as they walked away from the ruin of our homes. One DPW official even asked if he could give one of my plants to his wife because it was so beautiful. That plant also went into the trash. That day, DPW destroyed the following:

| ID | $50 |
|---|---|
| Tent | $150 |
| Clothes | $100 |
| Deceased grandmother's jewelry | Priceless |
| Plants | $20 |
| **TOTAL** | $320 |

## Reflections on the City's Conduct

6.      DPW and SFPD inflict unbearable pain and suffering when they come unannounced and take our life's worth and toss it out right from under us. Every time DPW destroys out property, they set us back on our path back to stability.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: November 8, 2021

Heather Freehoffer

2

4 - 21

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF ROBERT HARRISON**

I, Robert Harrison, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Robert Harrison, and I am 51 years old. I moved to San Francisco in 2007.  All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

**Law Enforcement Harassment While Homeless**

2.      When I became homeless, I was constantly harassed by law enforcement. San Francisco Police Department (SFPD) officers would tell us to move to another street almost every week. I always complied, but this was exhausting. I cannot remember all the times that this happened because it happened so often. But I do remember in November 2019 I was living at the intersection of 25th Street and Folsom Street when police told me to pack and move my tent. I moved just a couple blocks away to 25th Avenue and Harrison Street and they left us alone for the moment. But then just a week later, they forced us to move yet again. This shuffle was extremely common.

3.      All these times, and I do not ever recall being offered services or shelter by SFPD or anyone else. Most of the time SFPD was there alone. The Homeless Outreach Team (HOT) usually was not present.

**Targeting and Destroying Property Without Notice**

4.       Until this year, I managed to avoid the property destruction I hear about from so many other homeless people. But then it happened to me. On January 8, 2020, I was homeless

and living on Evans and Rankin Avenue by the railroad tracks. In the middle of the day, I suddenly saw SFPD and Department of Public Works (DPW) crews appear. I thought they were there looking for somebody, until they started taking our belongings. I had received no notice that a sweep was going to occur that day, either verbally or in writing. The City had posted no notice at the site, and no City employee came to notify us.

5.      If I would have known the City was coming, I would have had time to move, like I always did. Instead, they just barged right in and started trying to throw away my property. I asked and begged if I could take my stuff before they threw it away. They denied my request.

6.      Nothing was bagged and tagged that day. DPW did not separate out any items for safekeeping and they labelled nothing. They just heaped everything into large piles with their bulldozers. SFPD and DPW were using dumpsters and tractors to destroy my belongings. We were never advised whether or how to recover our property.

7.      I protested vigorously because I knew that this was wrong. The police grabbed me a couple times and were threatening to arrest me. They almost put handcuffs on me at one point. But they never told me what I was doing wrong.

8.      That day, DPW and SFPD destroyed the following personal property:

| Property/Item | Replacement Value |
|---|---|
| Nike Air Force 1 07 Men's Shoes | $153.25 |
| Fruit of the loom men's 6 pack socks | $18.99 |
| Fruit of the loom men's crew t-shirts | $23.49 |
| Tommy Hilfiger men's 3-pack shirts | $26.90 |
| Ruja Men's leather jacket | $99.99 |
| Perry Ellis Performance Pant | $25.99 |
| Segway Ninebot ES2 Electric Scooter | $557.59 |
| Coleman Brazos sleeping bag | $37.66 |
| 6-person Easy set up cabin tent | $129.97 |
| Portable backpacking stove | $84.95 |
| Rainer Portable Shower Station | $474.99 |
| Late father's watch | Priceless |
| Family photos | Priceless |
| **TOTAL** | $1,633.77 |

9.      SFPD and DPW then ordered us to leave the scene and not return. Returning would have been impossible anyways, since they barricaded the area. I do not recall being offered any shelter or services that day and I had nowhere to go.

10.     With the assistance of an attorney, I successfully litigated an action in small claims court in San Francisco and was awarded $10,000 by a judge to compensate me for the property

the City destroyed on January 8, 2020. **See Exhibit A, Notice of Entry of Judgment (CSM-21-864085).** The City has appealed that decision.

## Reflections on the City's Conduct

11.     I understand that homelessness is a complicated issue. But I believe that law enforcement should at least follow their own guidelines about how they are supposed to treat us. If our property was bagged and tagged like it should be, that would at least be better.


I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: October 29, 2021

Robert Harrison

# EXHIBIT A

Name and Address of Court:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
Small Claims Division
400 McAllister Street, Room 103
San Francisco, California  94102

SC-130

SMALL CLAIMS CASE NO:  **CSM-21-864085**

| NOTICE TO ALL PLAINTIFFS AND DEFENDANTS: | *AVISO A TODOS LOS DEMANDANTES Y DEMANDADOS:* |
|---|---|
| Your small claims case has been decided.  If you lost the case, and the court ordered you to pay money, your wages, money, and property may be taken without further warning from the court.  Read the back of this sheet for important information about your rights. | *Su caso ha sido resuelto por la corte para reclarnos judiciales menores.  Si la corte ha decidido en su contra y ha ordenado quo usted pague dinero, le pueden quitar su salario, su dinero, y otras cosas de su propiedad, sin aviso adicional por parte de esta corte.  Lea el reverso de este formulario para obtener informacion de importancia acerca de sus derechos.* |

PLAINTIFF/DEMANDANTE  (Name, street address, and telephone number of each:)

ROBERT HARRISON
C/O VICTORIA LARSON, ESQ
131 STEUART STREET SUITE 400
SAN FRANCISCO, CA  94105

Telephone No.:

Telephone No.:

DEFENDANT/DEMANDADO  (Name, street address, and telephone number of each:)

SAN FRANCISCO PUBLIC WORKS
49 SOUTH VAN NESS AVENUE
SUITE 1600
SAN FRANCISCO, CA  94103

Telephone No.:  (628) 271-3160

Telephone No.:

### NOTICE OF ENTRY OF JUDGMENT

Judgment was entered as below on:  Sep-02-2021

Defendant        SAN FRANCISCO PUBLIC WORKS
shall pay plaintiff HARRISON, ROBERT
$10,000.00 principal, $.00 costs, and $.00 interest on plaintiff's claim.

Enforcement of the judgment is automatically postponed for 30 days or, if an appeal is filed, until the appeal is decided.

### NOTICE OF DESTRUCTION OF EXHIBITS PURSUANT TO CCP 1952

Pursuant to Section 1952 of the Code of Civil Procedure of California, notice is hereby given that the exhibits introduced in the above-entitled proceedings shall be destroyed sixty (60) days after the mailing of the notice of entry of judgment or the final determination of an appeal.  You may personally pick up your exhibits at the Small Claims Division or send someone with written authorization to pick them up.  Exhibits will not be mailed.  Upon written request, the court may preserve exhibits not to exceed one (1) year from the date of this notice.



CLERK'S CERTIFICATE OF MAILING -- I certify that I am not a party to this action.  This Notice of Entry of Judgment and Notice of Destruction of Exhibits was mailed first class, postage prepaid, in a sealed envelope to the parties at the addresses shown above.  The mailing and this certification occurred at the place and on the date shown below.

Place of mailing:  San Francisco, California

Date of mailing:  Sep-02-2021

Clerk, by  WTRUPEK , Deputy

| -- The county provides small claims advisor services free of charge.  Read the information sheet on the reverse. -- |
|---|

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SC-130 [Rev. July 1, 2007]

**NOTICE OF ENTRY OF JUDGMENT**
(Small Claims)

Code of Civil Procedure, 116.610
www.courtinfo.ca.gov

**Statement of Decision**

**Harrison v. SF Public Works**
**Case number: CSM 21-864085**

The Defendant shall pay Plaintiff $10,000.00 plus costs.

## Plaintiff Harrison

The Plaintiff found out the morning of January 8, 2020 about the clearing. He saw police and thought they were looking for someone. Officer Green was rude to him and told him to clean up his things and was threatened with jail. Plaintiff was unable to grab anything and left many things behind. He saw the bulldozer and recalls it arriving earlier than what Defendant witness Stringer said. Plaintiff felt this was more of a raid. He had lived in this area for about four to five weeks and he did not receive any notices of any sort about this clean up or how he could claim his personal property.

## Defendant's case

The Court heard from three Defense witnesses in CSM 21-864062; CSM 21-864066; CSM 21-864075; and CSM 21-864076. The evidence is applicable to this case CSM 21-864085. Their evidence is summarized as follows:

## Nichelle Flintroy – CCSF City Claims Adjuster

Ms. Flintroy represented the Defendant, SFDPW. She stated the plaintiffs were given notice of the resolution to occur at or near the Jerrold and Rankin area on January 8, 2020. Resolution is the term used to mean clean and clear an encampment. Outreach attempts were made beginning November 13, 2019. The HOT (Homeless Outreach Team) and the ERT (Encampment Resolution Team) reached out to the residents of this area 2-3 times per week starting in November 2019, the day before and the day of resolution to offer services to residents.

## Larry Stringer – Retired Deputy Director of Operations with DPW

Mr. Stringer stated on the day of the January 8, 2020 cleanup, he was the acting interim manager of Healthy Streets Operations Center. In November 2019, the Jerrold and Rankin encampment resolution was discussed with a target date of December 2019. It was pushed to January 8, 2020 because the PUC needed the area. Mr. Stringer was present on January 8, 2020 around 8:00 am and the HOT team arrived prior to cleanup, which is typical. Cleanup began at 10:00am and the bulldozer arrived between 11am to noon. Mr. Stringer left around 11:00am and returned around 1:00pm. Mr. Stinger said the usual protocol when a resolution occurs is that residents are allowed to take everything of value with them or they can return to retrieve the rest of their items within a reasonable amount of time – meaning within the course of the day. Items that residents express an interest in or seem to be of value are "bagged and tagged" and stored at 2323 Cesar Chavez Street and can be reclaimed. He said it would be unusual and not protocol for residents

1

to not be allowed an opportunity to retrieve their items and he was unaware of that ever happening in a resolution.

**<u>Brenda Meskin – Encampment Resolution Team Lead</u>**

Ms. Meskin stated a Resolution Flyer notifying residents of the date and time of clean up was provided to Plaintiffs three weeks prior to January 8, 2020.  She did not have a copy of that flyer and she did not personally participate in handing out the notifications.

Copies of the actual notice of resolution distributed by the HOT team or DPW notices for bagging and tagging or of planned and actual removal were not provided to the Court by any of the Defense witnesses.  Resolution procedures and protocols also were not provided to the Court by any of the Defense witnesses.

Date: August 19, 2021

Judge Michelle Tong
SF Superior Court

2

4 - 28

SC-130

| INFORMATION AFTER JUDGMENT | *INFORMACION DESPUES DEL FALLO DE LA CORTE* |
|---|---|

Your small claims case has been decided. The **judgment** or decision of the court appears on the front of this sheet. The court may have ordered one party to pay money to the other party. The person (or business) who won the case and who can collect the money is called the **judgment creditor.** The person (or business) who lost the case and who owes the money is called the **judgment debtor.**

Enforcement of the judgment is postponed until the time for appeal ends or until the appeal is decided. This means that the judgment creditor cannot collect any money or take any action until this period is over. Generally, both parties may be represented by lawyers after judgment.

**IF YOU LOST THE CASE . . .**

1. If you lost the case on your own claim and the court did not award you any money, the court's decision on your claim is **FINAL.** You may not appeal your own claim.

2 . If you lost the case and the court ordered you to pay money, your money and property may be taken to pay the claim unless you do one of the following things:

   a. **PAY THE JUDGMENT**
   The law requires you to pay the amount of the judgment. You may pay the judgment creditor directly, or pay the judgment to the court for an additional fee. You may also ask the court to order monthly payments you can afford. Ask the clerk for information about these procedures.

   b. **APPEAL**
   If you disagree with the court's decision, you may appeal the decision *on the other party's claim. You* may not appeal the decision on your own claim. However, if any party appeals, there will be a new trial on *all* the claims. If you appeared at the trial, you *must* begin your appeal by filing a form called a *Notice of Appeal* (form SC-140) and pay the required fees within 30 *days* after the date this *Notice of Entry of Judgment* was mailed or handed to you. Your appeal will be in the superior court. You will have a **new trial** and you must present your evidence again. You may be represented by a lawyer.

   c. **VACATE OR CANCEL THE JUDGMENT**
   If you did not go to the trial, you may ask the court to vacate or cancel the judgment. To make this request, you must file a *Motion to Vacate the Judgment* (form SC-135) and pay the required fee *within 30 days* after the date this *Notice of Entry of Judgment* was mailed. If your request is denied, you then have 10 *days* from the date the notice of denial was mailed to file an appeal. The period to file the *Motion to Vacate the Judgment is 180 days* if you were *not properly served* with the claim. The 180-day period begins on the date you found out or should have found out about the judgment against you.

**IF YOU WON THE CASE . . .**

1. If you were sued by the other party and you won the case, then the other party may not appeal the court's decision.

   If you won the case and the court awarded you money, here are some steps you may take to collect your money or get possession of your property:

   a. **COLLECTING FEES AND INTEREST**
   Sometimes fees are charged for filing court papers or for serving the judgment debtor. These extra costs can become part of your original judgment. To claim these fees, ask the clerk for a *Memorandum of Costs.*

   b. **VOLUNTARY PAYMENT**
   Ask the judgment debtor to pay the money. If your claim was for possession of property, ask the judgment debtor to return the property to you. **THE COURT WILL NOT COLLECT THE MONEY OR ENFORCE THE JUDGMENT FOR YOU.**

   c. **STATEMENT OF ASSETS**
   If the judgment debtor does not pay the money, the law requires the debtor to fill out a form called the *Judgment Debtor's Statement of Assets* (form SC-133). This form will tell you what property the judgment debtor has that may be available to pay your claim. If the judgment debtor willfully fails to send you the completed form, you may file an *Application and Order to Produce Statement of Assets and to Appear for Examination* (form SC-134) and ask the court to give you your attorney's fees and expenses and other appropriate relief, after proper notice, under Code of Civil Procedure section 708.170.

   d. **ORDER OF EXAMINATION**
   You may also make the debtor come to court to answer questions about income and property. To do this, ask the clerk for an *Application and Order for Appearance and Examination (Enforcement of Judgment)* (form EJ-125) and pay the required fee. There is a fee if a law officer serves the order on the judgment debtor. You may also obtain the judgment debtor's financial records. Ask the clerk for the *Small Claims Subpoena and Declaration* (form SC-107) or *Civil Subpoena Duces Tecum* (form SUBP-002).

   e. **WRIT OF EXECUTION**
   After you find out about the judgment debtor's property, you may ask the court for a *Writ of Execution* form EJ-1 30) and pay the required fee. A writ of execution is a court paper that tells a law officer to take property of the judgment debtor to pay your claim. Here are some examples of the kinds of property the officer may be able to take: **wages, bank account, automobile, business property, or rental income.** For some kinds of property, you may need to file other forms. See the law officer for information.

   f. **ABSTRACT OF JUDGMENT**
   The judgment debtor may own land or a house or other buildings. You may want to put a lien on the property so that you will be paid if the property is sold. You can get a lien by filing an *Abstract of Judgment* (form EJ-001) with the county recorder in the county where the property is located. The recorder will charge a fee for the *Abstract of Judgment.*

**NOTICE TO THE PARTY WHO WON:** As soon as you have been paid in full, you *must* fill out the form below and mail it to the court *immediately* or you may be fined. If an *Abstract of Judgment has* been recorded, you must use another form; see the clerk for the proper form.

SMALL CLAIMS CASE NO.:

ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT
*(Do not use this form if an Abstract of Judgment has been recorded.)*

**To the Clerk of the Court:**
I am the ☐ judgment creditor     ☐ assignee of record.
I agree that the judgment in this action has been paid in full or otherwise satisfied.
Date: _____                              ▶

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE)

**NOTICE OF ENTRY OF JUDGMENT**
**(Small Claims)**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF JAYSON HILL**

I, Jayson Hill, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Jayson Hill, and I am 34 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.       I came to San Francisco for college about 13 years ago. I was living with a friend with whom I had a falling out. I purchased an RV because we were going through the housing crisis and it was impossible to find housing. I was still working at that time. Then I lost my RV and had to live on the streets.

3.      I met my partner, Nichelle Solis, in 2018. Since that time, we have lived everywhere from tents to under bridges—anywhere we could. Fortunately, we were able to secure housing and have been stably housed since October 2020. But from 2018-2020, we experienced the same pattern of harassment and destruction of property at the hands of the City.

**Law Enforcement Harassment While Homeless**

4.      I have been harassed many times by the San Francisco Police Department (SFPD) while homeless. Two officers in particular, Officers Carr and Green, knew Nichelle and I and have harassed us many times.

5.      Often, it would appear that Officers Carr and Green would know that we were staying in a certain location. They would park their car and wait for us to leave, then they would call the Department of Public Works (DPW) to take our belongings. It got to the point that only one of us would be able to leave the camp at a time.

1

6.          Some instances of police harassment stand out more than others. During a sweep in January 2020 described in detail below, I approached Officer Green while he was in the process of taking our belongings. I asked if I could retrieve my family bible and a blanket knitted by my grandmother. Officer Green would not let me retrieve either of these items, and they were thrown away. Losing these items had a profound impact on me. I have still not yet told my family that these items were thrown away. After Officer Green refused to allow me to retrieve my bible and blanket, I asked if I could at least retrieve my doctor-prescribed medication. Officer Green refused this request as well.

7.          In another instance, Nichelle and I witnessed a friend ask Officer Green if he could retrieve a backpack containing a large amount of cash in it before it was thrown away. Officer Green told our friend something to the effect of, "You shouldn't have chosen to live on the street, then." This backpack went into the crusher truck.

8.          During these and other interactions, officers were malicious when they harassed us and took our belongings. We were asked to move off public property by police many times, often under threat of citation or arrest for illegal camping. But we were never offered any services during these incidents, nor do I recall the Homeless Outreach Team (HOT) ever being present during these police encounters. Once, I repeatedly requested SFPD to connect us with HOT or transport us to a navigation center. In response, SFPD told us that they were not a taxi service and did not know the HOT number. In my experience, the police do not treat us like people. They treat us like animals. Eventually, that gets to you.

9.          Based on these interactions, I lived with the constant fear that I might be cited or arrested just for being homeless and having nowhere else to go.

**Targeting and Destroying Property Without Notice**

10.          Nichelle and I have lost our belongings at the hands of the City approximately five times in the last three years. Each time the City has taken our belongings, we did not receive notice that they were coming. They would pull us out of our tents and tell us we had fifteen minutes to pack. But before we could finish packing, they would begin taking our belongings. As we moved one cart of our belongings down the street and away from where a sweep was occurring, City employees would be taking as many items as possible before we could come back and retrieve them. We felt that these actions were malicious and personalized against us.

11.          I cannot recall a time when my property has been bagged and tagged within the last three years. To my recollection, I have never been told to go to the Department of Public Works (DPW) yard to retrieve my belongings, nor have I been given a slip stating that any of

2

my property has been bagged and tagged. In my experience, although official city policy is to bag and tag personal belongings, this is not what happens on the ground.

12.     One particularly traumatic incident occurred in the summer of 2019, when Nichelle and I were staying by the train tracks in Bayshore. I had refurbished a structure that had been built there several years prior. Though it was a dirt floor, it still provided us with shelter from the elements and storage for all of our belongings. One day, we had momentarily gone out. When we returned, the structure had been completely blocked off by industrial-strength chicken wire, secured with concrete screws. We were unable to access any of our belongings, and so we lost everything we had. We received no notice that this would be happening and came back to find all of our belongings and our home inaccessible. The chicken wire and concrete screws were the same material DPW used to seal off another individual's shelter a year before, so we suspected that the City was responsible. The night that our shelter was taken from us, we were forced to sleep under a large truck to protect ourselves from the elements.

13.     The most recent time my property was taken by the City occurred on January 8, 2020. Nichelle and I were staying at an encampment on Rankin Street, near the train tracks between Jerrold Avenue and Evans Avenue. SFPD and DPW were present.

14.     Crews arrived at around 9:00 AM. They did not give us any advance notice that they would be coming, nor did they give us any time to collect our belongings. Instead, they ordered us to come outside and told us not to worry about packing. We were then walked to the corner of the street and forced to wait for an hour until the bulldozers came. We were told that anyone who went back to try and retrieve their belongings would be arrested. We expected that the City would at least allow us to save as many items as we could carry, as that had been the norm in our past experiences. However, in this instance, they told us not to pack and destroyed everything.

15.     We then watched as all of our belongings were loaded into dumpsters by bulldozers. We had been staying at the encampment for approximately six months, so six months' worth of belongings were destroyed by the City on that day, as well as family heirlooms that were irreplaceable.

16.     The things I lost that day were priceless. I am an artist, and the City destroyed artwork I had created over the past several years. The City also destroyed my grandmother's family bible, which had been in my family for three generations. They destroyed my grandmother's handmade blanket that she had gifted to me before she passed away. They destroyed my coin collection, which included a rare 1943 Steel Penny. The City also destroyed

3

4 - 32

gifts I had received from my partner, Nichelle, over the past several years. Not only did the City take these things that had great sentimental value to me, but the City also did not allow me to take my medication from my tent before it was destroyed. All of our survival belongings were destroyed as well.

17.     The complete list of property destroyed that day is listed below along with its replacement cost:

| Property/Item | Replacement Value |
|---|---|
| 6-person tent | $150 |
| 20 x 20 tarp | $20 |
| Mountain bike | $485 |
| Clothing including coats | $1000 |
| Bedding including sleeping bags | $200 |
| Every color of Sharpie fine point set | $175 |
| Every color of Sharpie extra fine point set | $175 |
| Flashlights | $8 |
| Batteries | $12 |
| Toiletries | $20 |
| Large green cart | $75 |
| Jewelry | $200 |
| HTC Smartphone U11 Life 32 gb | $200 |
| 2 power banks | $130 |
| Cords and wall ports | $150 |
| My grandmother's family bible, in the family for three generations | priceless |
| Gifts from my partner from the previous 2.5 years | priceless |
| My artwork | priceless |
| My grandmother's handmade blanket | priceless |
| My coin collection | priceless |
| **TOTAL (excluding priceless sentimental items):** | $3,000 |

18.     With the assistance of an attorney, I successfully litigated an action in small claims court in San Francisco and was awarded $10,000 by a judge to compensate me for the property the City destroyed on January 8, 2020. **See Exhibit A, Notice of Entry of Judgment (CSM-21-864066).** The City has appealed that decision.

## Reflections on the City's Conduct

19.     Not having a place to shower, a place to use the restroom, or a place to lock up your belongings—it defeats a person. The City, rather than recognizing and combatting this, makes it worse. You would think that a police officer, who is supposed to protect and serve, would help you. This is not the case. The City treats you like a criminal just for being homeless.

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on Nov. 4, 2021

_____
Jayson Hill

4 - 34

# EXHIBIT A

| Name and Address of Court: | SC-130 |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
Small Claims Division
400 McAllister Street, Room 103
San Francisco, California 94102

SMALL CLAIMS CASE NO: **CSM-21-864066**

| NOTICE TO ALL PLAINTIFFS AND DEFENDANTS: | AVISO A TODOS LOS DEMANDANTES Y DEMANDADOS: |
|---|---|
| Your small claims case has been decided. If you lost the case, and the court ordered you to pay money, your wages, money, and property may be taken without further warning from the court. Read the back of this sheet for important information about your rights. | Su caso ha sido resuelto por la corte para reclarnos judiciales menores. Si la corte ha decidido en su contra y ha ordenado quo usted pague dinero, le pueden quitar su salario, su dinero, y otras cosas de su propiedad, sin aviso adicional por parte de esta corte. Lea el reverso de este formulario para obtener informacion de importancia acerca de sus derechos. |

| PLAINTIFF/DEMANDANTE (Name, street address, and telephone number of each:) | DEFENDANT/DEMANDADO (Name, street address, and telephone number of each:) |
|---|---|
| JAYSON HILL<br>C/O VICTORIA LARSON, ESQ<br>131 STUEART ST. SUITE 400<br>SAN FRANCISCO, CA 94105 | SAN FRANCISCO PUBLIC WORKS<br>49 SOUTH VAN NESS AVENUE<br>SUITE 1600<br>SAN FRANCISCO, CA 94103 |
| Telephone No.: (415) 559-7110 | Telephone No.: (628) 271-3160 |
| Telephone No.: | Telephone No.: |

NOTICE OF ENTRY OF JUDGMENT

Judgment was entered as below on: Aug-25-2021

Defendant     SAN FRANCISCO PUBLIC WORKS
shall pay plaintiff HILL, JAYSON
$10,000.00 principal, $.00 costs, and $.00 interest on plaintiff's claim.
**SEE ATTACHED STATEMENT OF DECISION**

Enforcement of the judgment is automatically postponed for 30 days or, if an appeal is filed, until
the appeal is decided.

NOTICE OF DESTRUCTION OF EXHIBITS PURSUANT TO CCP 1952

Pursuant to Section 1952 of the Code of Civil Procedure of California, notice is hereby given that
the exhibits introduced in the above-entitled proceedings shall be destroyed sixty (60) days after
the mailing of the notice of entry of judgment or the final determination of an appeal. You may
personally pick up your exhibits at the Small Claims Division or send someone with written
authorization to pick them up. Exhibits will not be mailed. Upon written request, the court may
preserve exhibits not to exceed one (1) year from the date of this notice.

RECEIVED
SEP 09 2021
BY

CLERK'S CERTIFICATE OF MAILING -- I certify that I am not a party to this action. This Notice of Entry of Judgment and Notice of
Destruction of Exhibits was mailed first class, postage prepaid, in a sealed envelope to the parties at the addresses shown above. The
mailing and this certification occurred at the place and on the date shown below.

Place of mailing: San Francisco, California

Date of mailing: Aug-25-2021        Clerk, by   WTRUPEK                    , Deputy

| -- The county provides small claims advisor services free of charge. Read the information sheet on the reverse. -- |
|---|

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SC-130 [Rev. July 1, 2007]

NOTICE OF ENTRY OF JUDGMENT
(Small Claims)

Code of Civil Procedure, 116.610
www.courtinfo.ca.gov

**Statement of Decision**

**Jayson Hill, Nichelle Solis v. SF Public Works**
**Case number: CSM 21-864066; CSM 21-864081**

The Defendant shall pay Plaintiff Hill $10,000.00 plus costs.
The Defendant shall pay Plaintiff Solis $10,000.00 plus costs.

## Plaintiff Jayson Hill and Nichelle Solis

The Plaintiffs are partners and lived in the Jerrold and Rankin area encampment for about 1.5 years. Plaintiffs stated they did not receive any notice the site was coming down. Without prior notice, on January 8, 2020, the police instructed them to vacate the premises and they were not given an opportunity to retrieve their belongings and left their tents with just the items on their backs. Within an hour of being told to vacate, bulldozers arrived and demolished their items. Plaintiffs did not receive notices of any sort about this clean up or how they could claim their personal property.

## Defendant's case

The Court heard from three Defense witnesses in CSM 21-864066. The evidence is applicable to CSM 21-864081. Their evidence is summarized as follows:

## Nichelle Flintroy – CCSF City Claims Adjuster

Ms. Flintroy represented the Defendant, SFDPW. She stated the plaintiffs were given notice of the resolution to occur at or near the Jerrold and Rankin area on January 8, 2020. Resolution is the term used to mean clean and clear an encampment. Outreach attempts were made beginning November 13, 2019. The HOT (Homeless Outreach Team) and the ERT (Encampment Resolution Team) reached out to the residents of this area 2-3 times per week starting in November 2019, the day before and the day of resolution to offer services to residents.

## Larry Stringer – Retired Deputy Director of Operations with DPW

Mr. Stringer stated on the day of the January 8, 2020 cleanup, he was the acting interim manager of Healthy Streets Operations Center. In November 2019, the Jerrold and Rankin encampment resolution was discussed with a target date of December 2019. It was pushed to January 8, 2020 because the PUC needed the area. Mr. Stringer was present on January 8, 2020 around 8:00 am and the HOT team arrived prior to cleanup, which is typical. Cleanup began at 10:00am and the bulldozer arrived between 11am to noon. Mr. Stringer left around 11:00am and returned around 1:00pm. Mr. Stinger said the usual protocol when a resolution occurs is that residents are allowed to take everything of value with them or they can return to retrieve the rest of their items within a reasonable amount of time – meaning within the course of the day. Items that residents express an interest in or seem to be of value are "bagged and tagged" and stored at 2323 Cesar Chavez Street and can be reclaimed. He said it would be unusual and not protocol for residents

1

to not be allowed an opportunity to retrieve their items and he was unaware of that ever happening in a resolution.

**Brenda Meskin – Encampment Resolution Team Lead**

Ms. Meskin stated a Resolution Flyer notifying residents of the date and time of clean up was provided to Plaintiffs three weeks prior to January 8, 2020.  She did not have a copy of that flyer and she did not personally participate in handing out the notifications.

Copies of the actual notice of resolution distributed by the HOT team or DPW notices for bagging and tagging or of planned and actual removal were not provided to the Court by any of the Defense witnesses.  Resolution procedures and protocols also were not provided to the Court by any of the Defense witnesses.

Date: August 18, 2021

Judge Michelle Tong
SF Superior Court

2

SC-130

| INFORMATION AFTER JUDGMENT | *INFORMACION DESPUES DEL FALLO DE LA CORTE* |
|---|---|

Your small claims case has been decided. The **judgment** or decision of the court appears on the front of this sheet. The court may have ordered one party to pay money to the other party. The person (or business) who won the case and who can collect the money is called the **judgment creditor.** The person (or business) who lost the case and who owes the money is called the **judgment debtor.** Enforcement of the judgment is postponed until the time for appeal ends or until the appeal is decided. This means that the judgment creditor cannot collect any money or take any action until this period is over. Generally, both parties may be represented by lawyers after judgment.

**IF YOU LOST THE CASE . . .**

1. If you lost the case on your own claim and the court did not award you any money, the court's decision on your claim is **FINAL.** You may not appeal your own claim.

2. If you lost the case and the court ordered you to pay money, your money and property may be taken to pay the claim unless you do one of the following things:

   a. **PAY THE JUDGMENT**
   The law requires you to pay the amount of the judgment. You may pay the judgment creditor directly, or pay the judgment to the court for an additional fee. You may also ask the court to order monthly payments you can afford. Ask the clerk for information about these procedures.

   b. **APPEAL**
   If you disagree with the court's decision, you may appeal the decision *on the other party's claim. You* may not appeal the decision on your own claim. However, if any party appeals, there will be a new trial on *all* the claims. If you appeared at the trial, you *must* begin your appeal by filing a form called a *Notice of Appeal* (form SC-140) and pay the required fees within 30 *days* after the date this *Notice of Entry of Judgment* was mailed or handed to you. Your appeal will be in the superior court. You will have a **new trial** and you must present your evidence again. You may be represented by a lawyer.

   c. **VACATE OR CANCEL THE JUDGMENT**
   If you did not go to the trial, you may ask the court to vacate or cancel the judgment. To make this request, you must file a *Motion to Vacate the Judgment* (form SC-135) and pay the required fee *within 30 days* after the date this *Notice of Entry of Judgment* was mailed. If your request is denied, you then have 10 *days* from the date the notice of denial was mailed to file an appeal. The period to file the *Motion to Vacate the Judgment is 180 days* if you were *not properly served* with the claim. The 180-day period begins on the date you found out or should have found out about the judgment against you.

**IF YOU WON THE CASE . . .**

1. If you were sued by the other party and you won the case, then the other party may not appeal the court's decision.

   If you won the case and the court awarded you money, here are some steps you may take to collect your money or get possession of your property:

   a. **COLLECTING FEES AND INTEREST**
   Sometimes fees are charged for filing court papers or for serving the judgment debtor. These extra costs can become part of your original judgment. To claim these fees, ask the clerk for a *Memorandum of Costs.*

   b. **VOLUNTARY PAYMENT**
   Ask the judgment debtor to pay the money. If your claim was for possession of property, ask the judgment debtor to return the property to you. **THE COURT WILL NOT COLLECT THE MONEY OR ENFORCE THE JUDGMENT FOR YOU.**

   c. **STATEMENT OF ASSETS**
   If the judgment debtor does not pay the money, the law requires the debtor to fill out a form called the *Judgment Debtor's Statement of Assets* (form SC-133). This form will tell you what property the judgment debtor has that may be available to pay your claim. If the judgment debtor willfully fails to send you the completed form, you may file an *Application and Order to Produce Statement of Assets and to Appear for Examination* (form SC-134) and ask the court to give your attorney's fees and expenses and other appropriate relief, after proper notice, under Code of Civil Procedure section 708.170.

   d. **ORDER OF EXAMINATION**
   You may also make the debtor come to court to answer questions about income and property. To do this, ask the clerk for an *Application and Order for Appearance and Examination (Enforcement of Judgment)* (form EJ-125) and pay the required fee. There is a fee if a law officer serves the order on the judgment debtor. You may also obtain the judgment debtor's financial records. Ask the clerk for the *Small Claims Subpoena and Declaration* (form SC-107) or *Civil Subpoena Duces Tecum* (form SUBP-002).

   e. **WRIT OF EXECUTION**
   After you find out about the judgment debtor's property, you may ask the court for a *Writ of Execution* form EJ-1 30) and pay the required fee. A writ of execution is a court paper that tells a law officer to take property of the judgment debtor to pay your claim. Here are some examples of the kinds of property the officer may be able to take: **wages, bank account, automobile, business property, or rental income.** For some kinds of property, you may need to file other forms. See the law officer for information.

   f. **ABSTRACT OF JUDGMENT**
   The judgment debtor may own land or a house or other buildings. You may want to put a lien on the property so that you will be paid if the property is sold. You can get a lien by filing an *Abstract of Judgment* (form EJ-001) with the county recorder in the county where the property is located. The recorder will charge a fee for the *Abstract of Judgment.*

**NOTICE TO THE PARTY WHO WON:** As soon as you have been paid in full, you *must* fill out the form below and mail it to the court *immediately* or you may be fined. If an *Abstract of Judgment has* been recorded, you must use another form; see the clerk for the proper form.

SMALL CLAIMS CASE NO.:

ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT
*(Do not use this form if an Abstract of Judgment has been recorded.)*

**To the Clerk of the Court:**

I am the ☐ judgment creditor ☐ assignee of record.

I agree that the judgment in this action has been paid in full or otherwise satisfied.

Date: _____

▶

_____                              _____
(TYPE OR PRINT NAME)                                  (SIGNATURE)

SC-130 [Rev. July 1, 2010]           **NOTICE OF ENTRY OF JUDGMENT**           Page 2 of 2
                                          (Small Claims)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF ANDREW HOWARD**

I, Andrew Howard, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Andrew Howard and I am 56 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I lived on the East Coast for about 25 years before moving to Southeast Asia for 20 years. I returned to the United States and moved to San Francisco in December 2019—with the express goal of publishing a book I had written while I was living overseas. But soon after I moved, the pandemic struck. My job prospects were no longer on the table, and I could not make ends meet. I ended up on the streets and have been unhoused since then.

3.      In the time I have been unhoused, I have diligently sought out permanent housing options. Fortunately, I was able to stay in a shelter for about a year and a half during the pandemic. But then I had to leave that temporary shelter—forcing me back out onto the streets. For the last several months, I have made almost daily trips to the Tenderloin's Linkage Center in an attempt to secure a housing placement. But there is no housing available to me.

**Harassment by the City and Property Destruction While Homeless**

4.      I have experienced constant harassment from the City while living unhoused. I have been harassed by various City agenices— but predominantly by the Department of Public Works (DPW) and the San Francisco Fire Department (SFFD). These City agencies have come to seize and destroy my property without notice on numerous occasions.

5.      I have never once received advance notice before the City has come to seize my

4 - 40

property. Nor have I ever received an offer of shelter or services from the City before City workers have seized and disposed of all of my survival belongings.

6.      In the several years that I have been homeless, the City has never bagged and tagged any of my property for storage or safekeeping. I have also never received notice of where I could go to retrieve any of my belongings after a sweep.

7.      I make sure that I am in compliance with local ordinances regarding sidewalk safety. I do not block the sidewalk with my belongings. I keep to a very small area, and I keep my space clean and passable for others to walk by. I do not believe the City has any justification to summarily take and destroy my property. Yet, the City has continuously done so.

8.      The City's targeted sweeps of my belongings make it extremely nerve-wracking to leave my belongings unattended. The sweeps make it hard to seek out work or housing. Because even If I leave my property for a matter of minutes, the City seizes on the opportunity to trash my belongings and leave me with nothing.

**Specific Instances of Property Destruction**

9.      From March 2022 to May 2022—in the months after I had to leave the temporary shelter I had for the pandemic— DPW has harassed me every single week. In that time period, DPW seized my tent and survival belongings about 5 times. Each time I struggled to secure a new tent to sleep in, DPW took it away in a matter of days. DPW has also taken my blankets and pillows, leaving me with absolutely no shelter even though it is so cold here at night.

10.     I can clearly recall three of the recent incidents where the City took and destroyed my belongings. The first incident occurred on March 8, 2022 at around 10AM. I was staying at 26th Street at the time. I received no notice that the City was coming that day until they arrived with their dump trucks. DPW, SFFD, and the San Francisco Police Department (SFPD) were all present. The City offered me no services or shelter that day. That day, DPW took my survival belongings—including my tent— and also threw away a journal containing a series of my writings that were meant for publication.

11.     The second incident occurred on April 6, 2022 at around 1PM while I was staying at 26th Street and Shotwell Street. I received no advance notice that the City would be coming to seize my property that day. Quite the opposite: the day before, I had spoken to DPW and they had assured me they would not take my things. I told DPW that I had to go to the Linkage Center in the Tenderloin to try and get housing. I informed them that in order to have the best chance of getting on a housing list, I would need to be there from early morning until late afternoon. DPW workers told me: "Good job keeping it clean, you're okay for another week. Go to your

meetings. Don't be foolish." I understood that I should take care of my housing needs and that DPW would not disturb my belongings.

12.     But the next morning—just ten minutes after I left for the Linkage Center to try to secure housing—the City came and took everything. I got a panicked text message from my friend that DPW was throwing away my belongings. I understand that the Sheriff's Department, SFFD, and the Homeless Outreach Team (HOT) were also present that day. Even though my friend told the City agencies that I wanted to keep my property, DPW seized it anyway. My friend was not even allowed to keep my backpack or any of the other items he attempted to safeguard for me.

13.      The City threw everything I owned in the trash. This included all of my survival gear, my valuable technology, and items that were deeply sentimental and personal to me. They threw out my tent and put it in the back of their garbage packer truck. They didn't even bother to look inside to know what was in there. I lost my laptop—which I had been trying to set up for online classes and to apply for grants for my work as a writer. I lost my mother's ashes. I lost new clothes that had been given to me just earlier that month. And I lost my shelter itself. I was never able to recover any of my belongings.

14.     The Coalition on Homelessness interviewed me the day after this sweep about my experience. A video recording of that interview is published online.[1] A complete list of items taken by the City during this sweep are as follows:

| Property/Items Seized |
| --- |
| Tent I was sleeping in |
| Clothes given by a friend |
| Lenovo Touchscreen Laptop Generation 8 |
| Mother's Ashes |
| Gold Chain |
| Hairdresser Scissors |
| 10 Tarp Covers |
| 2 Water-Resistant Dry Bags |
| Onkyo Stereo System, Amplifier, and Equalizer |
| 54" Sony TV |
| DVD Player |
| Alpine Tower Speakers; 2 Bluetooth speakers |
| 2 Bicycles; 2 1500 W bike motors; 3 bike dashboards |
| 2 Cordless drills: Milwaukee and Angle Grinder |
| 36 wrench and plier tools – Craftsman, Snap-On, Matco |

---

[1] *See* Twitter Feed of Jennifer Friedenbach from April 8, 2022, *available at* https://twitter.com/fbach4/status/1512550217433825281?s=21&t=4iNi5TIHpGES-D_UHWb_wQ.

15.     The third incident I remember occurred on or around April 26, 2022. I was staying on the opposite corner of 26th Street and Shotwell Street—across from the safe-sleeping facility. I again received no advance notice that the City would be coming. Only DPW was present during this sweep. I was not offered any shelter or services that day. What little survival belongings I managed to find or repurchase after the last sweep wwere taken from me. This included:

| Property/Items Seized |
|---|
| Portable shower system |
| Northface sleeping bag |
| 3 Pairs of shoes |
| Bushnell Binoculars |
| Multiple 16 X 20 tarps and 12 X 12 tarps |
| Gas grill |
| Clothes (SF Giants jackets, longsleeves, gloves, hat) |

16.     With the assistance of the Coalition on Homelessness, I am planning on filing a series of administrative claims against the City because of the loss and destruction of my personal property.

**Reflections on the City's Conduct**

17.     It has been a nightmare trying to get on my feet since the pandemic hit. The City's recent sweeps have caused me to become really depressed and upset. I cannot focus on finding work when I am stressed about the City taking away my basic necessities the moment I step away. It feels as though my options are becoming more and more limited—and so are my paths to exiting homelessness. How can you get back on your feet if you cannot even have a tent to sleep in? What is the City's objective, to harass people or to actually help people?

18.     The City needs to be more upfront and transparent about their process and their goals. I think the City needs to actually notify people that they are coming and needs to be up-front about where and how to retrieve bagged and tagged items. There also needs to be an attitude change in these departments. Instead of working with us to find solutions, it feels like City workers are trying to make us miserable to punish us. We are already miserable—we do not need any help there. I never dreamed I would be homeless. I do not think the City understands that anyone can end up in this position.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: May 10, 2022

_____

Andrew Howard

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

## DECLARATION OF TRICIA HURD

I, Tricia Hurd, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Tricia Hurd, and I am 35 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.       Between the years 2017 and 2019, I was homeless and living on the streets of San Francisco. In 2019, I was finally able to secure housing through my case manager with the San Francisco Homeless Outreach Team (SFHOT).

**<u>Law Enforcement Harassment While Homeless</u>**

3.      I was harassed by Department of Public Works (DPW) and San Francisco Police Department (SFPD) staff throughout the entirety of the roughly two years that I was homeless. I estimate that I had my belongings taken, damaged, or was told to move by the City around 30 times.

4.      The harassment occurred no matter where I was in the City: Austin Street, Fern Street, Willow Street, Myrtle Street, Cedar Street, Olive Street, and beyond.

5.      The harassment occurred no matter the time of day. As late at night as around 1:00am, and as early in the morning as around 4:00am, DPW and SFPD crews would come through, yelling at us, "You've been here too long", "Roll your shit up", "Whatever you can't get together in the next 10 minutes is going into the garbage," and other similar statements. This meant that our property was destroyed simply due to our inability to move it at that very moment. DPW would use push brooms, sprayer hoses, rakes, and garbage bags with urgency and force.

4 - 45

6.      Members of SFPD, including Officer Minkel, would threaten me and those around me with citation and arrest on a regular basis. I was told on numerous occasions and at numerous locations that I was in violation of the City's "Daytime Law"—which I understand to be a law that prohibits homeless people from sitting or lying down on public property during daytime hours. Specifically, I remember this being used to force me to leave when I was staying outside the Kron4 Building on Front Street, on Austin Street, and on Willow Street. When they threatened us, SFPD officers would also often take photos of us, our belongings, and our site. Despite these threats, I was never given a formal citation. I do not recall ever being given any offers of services or accommodations. I was just expected to get up and move along—just to have that happen all over again the next time officers approached me.

**Targeting and Destroying Property Without Notice**

7.      I do not recall ever being given advance notice either verbally or in writing before DPW crews showed up to take my property away. I was also never given notice about where my property was being taken, or how I could retrieve it later.

8.      I have never been told that my property was being "bagged and tagged." I am also not aware of anyone who has successfully retrieved belongings from the City after they had been "bagged and tagged." It is my understanding that the only time you can try to get your property back is when SFPD takes it from you as evidence of a crime after arresting you and taking you to jail.

9.      While I personally witnessed my property being destroyed by the City of San Francisco several times, sometimes my belongings were taken when I was not even present. They were simply gone when I returned to where I was staying, and I learned the City had taken them away after the fact. I believe that what the City took from me always ended up at the dump or in the garbage. Every time my property was taken, I was left to start over with nothing.

10.     One such seizure of my property was especially traumatic. In 2018 I was staying in my tent on Myrtle Street near Van Ness Avenue. I left my tent briefly for a medical appointment (I am living with HIV), and when I returned *every single thing* that I owned and used to survive, including my tent, was gone. I lost my birth certificate, Social Security card, and other extremely important government documents. Gone too, were irreplaceable photos of my daughter. I think about those photos to this day. Below is an itemized chart of all the property that was taken from my tent on Myrtle Street:

| Property/Item |
| --- |
| Important Documents [ID Card, Birth Certificate, Social Security Card, Direct Express Card] |
| Tent |
| All my clothes |
| My air mattress |
| My speaker |
| My skates |
| My bicycle |
| Photos of my daughter |
| All my clothes |

11.      No notice was posted at the site before my tent and all my property was taken away and, I believe, destroyed. When I returned to find everything had been taken from me, there was no information on where it went. Nor was I given any verbal notice at any time prior to the sweep. At that point, I was so demoralized by the City's actions that I just became used to starting over with nothing.

**Reflections on the City's Conduct**

12.      It is hard for me to put into words the impact that the City's sweeps had on my life while I was homeless. I wish that that those who participate in this infliction of stress understood what it is like to barely have anything. We do not have resources. We barely have the means to buy the limited possessions that we do own. Most of the time they are given to us, or we have to find it. Or it is simply irreplicable, like the photos of my daughter.

13.      Where I did camp, I kept it clean. The City did not have to do too much, but when they approached us, it was clear they did not have a care in the world for what happened to us. Every time I was swept, I felt void and empty—like a robot. I lived with the constant anxiety and sinking feeling that I would have to start over again every time. I had a miscarriage during that time; my relationships went haywire.  I attribute these difficulties to what the City has put us through.

14.      There are a lot of homeless people in San Francisco with medical conditions who are struggling to stay alive. When the City takes away the few possessions they do have, or forces them to move, they take a little piece of their energy or their health away from them. A piece that they may need to survive. It is unjust. The City continues to take everything away from those who have the least. What gives the City the right to do that to us?

4 - 47

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: December 2, 2021

Tricia Hurd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF TIMOTHY JONES**

I, Timothy Jones, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Timothy Jones, and I am 42 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I was homeless and living on the streets of San Francisco from 2018 until January 2021, when I was finally able to secure permanent housing through a private organization committed to providing support to those in need during the pandemic. Even with my current housing, I fear becoming homeless again every single day.

3.      In the three years that I was homeless, the City conducted sweeps of the areas in which I was staying at least 12 times. For most of that time, I stayed with six or seven other homeless individuals near 16th Street and Market Street in the Castro District—just in front of the AIDS Memorial Mural near the Harvey Milk Library.

**Targeting and Destroying Property Without Notice**

4.      I estimate that I have had my property destroyed by the City of San Francisco about five times in the three years I was homeless. There was almost never any posted or written notice prior to the City seizing and destroying our property. If notice was posted, there was still never enough time to collect all of our belongings before we were swept. Department of Public Works (DPW) staff took my driver's license, birth certificate, and epilepsy medication on each of these five occasions. I recall the specific details for at least three of these sweeps.

5.      On August 21, 2020, at around 9:30AM, without any prior verbal or written notice,

San Francisco Police Department (SFPD) officers, DPW staff, and the Homeless Outreach Team (HOT)—totaling about 28 city employees— arrived at our camp on 16th Street and Pond Street for a sweep. During the sweep, I watched DPW staff stomp on and break my personal laptop. I was extremely upset, but I still packed up what I could of my and my friends' belongings and tried to defend the rest of our property from being destroyed by the City. They "bagged and tagged" the rest of my belongings, including three tents, a generator, clothes, shoes, a wallet with my money and ID inside, and sentimental pictures of my daughter. Including the laptop, I estimate the value of these items to be about $3,000 total.

6.     On the day of the sweep, I suspected that I had COVID-19 because I was physically exhausted and coughing a lot. Recognizing that I was exhibiting COVID-19 symptoms, the HOT team called an ambulance to take me to the hospital for diagnosis and treatment. When I recovered enough from COVID-19 to walk the 6 miles to the DPW facility where my items from the sweep were supposedly stored—just 14 days after the sweep—the staff told me they could not find any of my belongings. I stayed there for four hours and explained to the staff the exact items that were taken, including the date, time, and location of the sweep. They told me they could not find my belongings, and instead tried to give me someone else's belongings, which I did not take. I was ultimately unable to recover any of my belongings from the August 21, 2020 sweep. I had to go to the DMV for a new license.

7.     In September 2020, I was able to secure shelter at Keene Hotel on 6th Street and Madison Street. At the time, I was using a wheelchair for mobility, as a peer had assaulted me because they thought that I had stolen their belongings that were in fact taken by DPW during the August 2020 sweep. In October 2020, however, I was kicked out of my apartment for having another homeless person with nowhere else to go living there with me. I pitched a tent on the street outside of the Keene Hotel for shelter. One morning, DPW staff came by and said that I was camping too close to the hotel and that I had six hours to move my belongings. I told them that I was in a wheelchair and that I had epilepsy, but they just reiterated that I needed to move. I had nowhere to go at the time, and because of my disability I could never have physically moved all of my belongings in six hours even if I tried. So I stayed.

8.     When two DPW staff returned six hours later, they began "bagging and tagging" everything. They took several nice pop-up tents, a lighting system, tools, three generators, jewelry, sentimental pictures, money, checks, and my wallet – again containing my new ID and birth certificate. Once again, when I went to the DPW yard to get my property back four days later, but they told me none of my property was there. I tried going back two more times, but

each time they told me my belongings were not there. I never recovered any of these items.

9.          The third sweep that stands out in my mind occurred in December 2020, right before I got my housing. I was staying with about 15 people off Church and Market Streets. The day of the sweep, SFPD drove by and told us that we had 1.5 hours to move our stuff. It was a rainy and cold day. When they returned at 5PM with DPW staff, we heard them say "This is the last one for the day! Let's get them and go. Take their shit. Even if they don't listen, just take it down."

10.          DPW staff took everything. At the time, I had set up a large tent for myself by connecting three tents together. In our common area, we had a cook stove, heater, two laptops, an Xbox, and a 40-inch television. They took all of those items, and they took my money, wallet, ID, and my epilepsy medicine, claiming that they thought the bottle was filled with illegal drugs. The officers knew I had a disability. I was wearing a bracelet showing that I was recently in the hospital, and they had found my epilepsy medicine in prior sweeps.

11.          I again tried to recover my belongings from the DPW facility, but I was told that they could not locate them. With the assistance of an attorney, I filed a claim against the City of San Francisco for destroying my property. Unfortunately, I never heard from the attorney again.

**Law Enforcement Harassment While Homeless**

12.          I estimate that I was harassed by SFPD and DPW staff at least 12 times between 2018 and January 2021. On these occasions, SFPD and DPW regularly threatened me with citation and arrest. Most of the time, we did not know why we were being threatened. We were rarely ever given a reason.

13.          During the December 2020 sweep at Church Street and Market Street, however, DPW claimed we were violating the law by blocking the sidewalk. But at that time our tents were 7 feet off the sidewalk. We knew the rules and picked places to sleep that would not be in violation of them. DPW asked us to leave, but we did not move because it was raining and cold outside and I do not recall the HOT team coming by to offer us any services that day. Despite not offering us shelter, police officers were called in to remove us.

14.          I remain afraid that police will threaten me with citation and arrest in the future if I lose my housing. It is something that I worry about every day.

**Reflections on the City's Conduct**

15.          I am still traumatized by the destruction of my property and the violence directed at me by SFPD. These experiences were dehumanizing. I will never be able to recover the pictures I lost of my daughter. I will never be able to recover my property. Because I take care

of the people around me, I was often responsible for watching over my friends' belongings while they were gone. However, any time the City showed up without warning and destroyed our property, I would be blamed by my peers whose belongings I was tasked with protecting.

16.     Through all of these experiences, I have come to believe that the City was targeting us solely because we were homeless and they did not want us to be there. Each time the DPW staff showed up in their orange vests, I felt like they were treating us like a disease. My friends and I always kept our tents and camping area nice and clean, and we were always seven feet off the sidewalk. We always tried to follow the rules with where we set up our tents. Nevertheless, it was never long before SFPD and DPW staff would show up, destroy our belongings, and force us to move to a new spot. It was a never-ending cycle.

17.     I wish the City would stop targeting unhoused folks who are just trying to make it. We are just trying to live. I would like to see the City show some compassion for people who struggle to stay in housing given the incredibly high costs of living here. Specifically, I would like to see more money invested in ensuring unhoused folks can find affordable housing. Until then, I would like the City to stop conducting unannounced sweeps and destroying our belongings.

I have reviewed the information contained in this declaration in person. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: January 25, 2022

_____
Timothy Jones

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Case No. 3:22-cv-05502

**DECLARATION OF JEZZEILLE MURDOCK**

I, Jezzeille Murdock, hereby declare pursuant to 28 U.S.C. § 1746:

1.       My name is Jezzeille Murdock, and I am 38 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

**Harassment by the City While Homeless**

2.       I have been harassed by the City regularly during my time being unhoused in San Francisco. Over the course of 2021 and 2022, I have been staying in the Mission and South of Market areas. I have been periodically staying in an RV whenever I can. But when I am not able to stay in an RV, I have been forced to sleep on public sidewalks in San Francisco. When I had to sleep outside, I was regularly harassed by San Francisco Police Department (SFPD) and the Department of Public Works (DPW). SFPD and DPW would harass me and tell me to move every one and a half to three weeks over the course of the past year. As a result, I have had to move from block to block on a regular basis. The Homeless Outreach Team (HOT) is not always present when DPW and SFPD approaches me and tells me to move. Even when HOT is present, they do not have viable services to offer.

3.       Approximately two and a half weeks ago, in early September 2022, I lost my belongings during a DPW sweep. I had a single-man tent, a blanket, emergency phone, a windup flashlight, and a care package I had made for myself that included items I need to stay calm while living outside. I had these items in the Mission Neighborhood near 16th Street. Because I was not present, I had asked my friends to watch my belongings for me that day. But my friends

notified me that DPW had thrown away all of these important survival belongings during a sweep of the area. I learned from my friends that DPW has taken all of their belongings as well as my own. The grass had been mowed, and all that remained were a few scraps scattered around the site.

4.       Over the past year, I have also witnessed more formal Healthy Streets Operation Center (HSOC) sweeps where SFPD and DPW are joined by the Homeless Outreach Team (HOT). These formal sweep operations are less common than the sweeps we experience every day where no one from the HOT team is present. I have fibromyalgia and PTSD, so most shelter is not accessible to me. Liz and Hector, HOT team workers, know this and interact with me regularly. I am on a priority list for housing through the Coordinated Entry System but--at this time—there is no housing available to me and I am currently unsheltered.

5.       Nonetheless, I have watched the HOT team operate. For a long period of time from Summer to Fall 2021, HOT did not have any services to offer unhoused individuals and they even said this to individuals at sweeps on a regular basis. That did not stop SFPD from threatening individual unhoused people with citation and arrest, whether HOT team was present or not. I sometimes act as an advocate for those around me in accessing services. Even when HOT does have services or shelter to offer, it is often left to me to approach them on behalf of individuals present at the site to ask about services available to them. I have also repeatedly tried to defend friends when SFPD has threatened them with citation or arrest but they have not been offered shelter and have nowhere else to go.

6.       These experiences make me fearful that the City will continue to destroy my property and threaten me with citation and arrest in the future just because I am homeless and living unsheltered.

**Reflections on the City's Conduct**

7.       Every time I hear the sound of City trucks, I wake up in a panic. I quickly move to pack my belongings in case I am going to be forced to move. I have significant triggers because of my past experiences with the City.

8.       The constant harassment by the City is extremely disheartening. I have lost vital survival belongings, as well as items that I use to earn money and maintain a livelihood. The City makes it impossible for me to get back on my feet and out of homelessness.

I have reviewed the information contained in this declaration. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed September 13, 2022

Jezzeille Murdock

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF SHANNA COUPER ORONA**

I, Shanna Couper Orona, hereby declare pursuant to 28 U.S.C. § 1746:

1.  My name is Shanna Couper Orona, and I am 48 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.  I am a disabled firefighter who was hurt while on the job. I worked in the Sacramento area.

3.  My ex-wife was an attorney at a big law firm. We used to live in the Diamond Heights neighborhood of San Francisco for about ten years. After years of struggling with my disability, we had a painful divorce. I lost everything—including my condominium and my car. Without a place to go and with no ability to pursue my profession, I crashed on friends' couches for months trying to find a place to land. When that became untenable, I used my disability checks to pay for hotels and motels to spend the night. That lasted only for a few weeks.

4.  I have been homeless in San Francisco for about five years. Up until fairly recently, I spent much of that time living in a small tent on Erie Street in the Mission District. After that, I became the test case for a pilot program to build tiny homes for homeless people.[1]  I saved up enough money to purchase an RV, which I did, where I continue to live now. I have been on every housing list I could think to get on. All this time, and I am still waiting to secure permanent housing.

---

[1] *See* Arash Malekzadeh, *New Program Pitches Tiny Homes as Solution to S.F. Homelessness*, KQED (Dec. 20, 2017), *available at* https://www.kqed.org/news/11637875/new-program-pitches-tiny-homes-as-solution-to-s-f-homelessness.

1

5.        But being homeless is only the beginning of my story. It has caused me to become the accidental advocate and activist that I am today.

6.        Over the past five years, I have used my skills I learned as a firefighter to serve as a street medic for those who are experiencing homelessness. I have become widely known for my work in the community. A documentary was produced to call attention to my story and the support I provide to countless homeless people each year who are struggling with medical emergencies.[2] As part of this work, I also volunteer with the Homeless Youth Alliance, the Coalition on Homelessness, the Lyon-Martin Women's Community Clinic, and the Mission Neighborhood Resource Center.

7.        People who are homeless in San Francisco know to call me when there is a problem. That includes when the San Francisco Police Department (SFPD) and Department of Public Works (DPW) are conducting sweeps, threatening people to move off public property, and destroying their belongings without giving them notice or offering them shelter. I have been present at many of these sweeps and watched SFPD and DPW destroy people's lives firsthand. I know how it feels. They tried to do that to me too.

8.        In May 2019, I joined with the Coalition on Homelessness to record the experiences of homeless people who have had their belongings destroyed by the City. Our project, entitled *Stolen Belonging*, resulted in a series of testimonials and video accounts that are available online.[3]

**Harassment by Law Enforcement While Homeless**

9.        I have witnessed police harass homeless people over a hundred times in the past several years. While I was living in a tent on Erie Street, I recall at least three times when I was woken up by police in the middle of the night and told I needed to leave. Officers provided me with no notice, and no one was there to offer me any services. On one occasion, an SFPD officer pushed my tent aggressively while I was inside it. When I told him I understood the law—and was not required to move without notice or a service offer—he told me that I had a "smart mouth." I was not cited or arrested for illegal camping. But for years, I lived with the fear and stress that law enforcement was going to take my tent away.

10.        I have regularly heard SFPD officers say some variation of: "You can go to jail or you can leave, but you're not taking your belongings with you." They usually scared people

---

[2] *See* Nicole Foley et al., *Couper Was Here*, *available at* https://vimeo.com/307594007/52393d3f99.
[3] *See* Leslie Dreyer et al., *Stolen Belonging*, *available at* https://www.stolenbelonging.org/ https://www.stolenbelonging.org/.

enough to get them to leave. The fear SFPD instilled in us was a tactic. If they could get us to leave, DPW crews could come to destroy our stuff. Then they would claim we had abandoned our property by leaving. This was how they avoided bagging and tagging our belongings. Most of the time when we were harassed, we got no notice from SFPD officers or DPW crews, and the Homeless Outreach Team (HOT) was often not present to offer services. The threats and the fear were how they got around having to follow their written policies and procedures.

11.     Because I am now living in an RV, much of this harassment is behind me. But in my time as a street medic over the last few years, I have also witnessed SFPD arrest homeless people at least six times in connection with a sweep. I know that on at least two of these occasions, officers specifically invoked Cal. Penal Code § 647(e)—which is the law that bans lodging on public property.

**Property Destruction and Enforcement Without Notice or Services.**

12.     I have seen the City of San Francisco seize or destroy the property of homeless individuals on countless occasions. Over the last couple of years, DPW seems to have gotten even more aggressive. In my role as a medic and volunteer, I get calls about three times a week from people who are having their belongings taken. Often, they call me to come and assist them. Those calls come at all hours of the night. But in my experience, DPW crews are usually starting to sweep between 4AM and 6AM. Although there are large-scale sweep operations  with multiple city agencies, at most of the calls I respond to DPW is there alone—destroying people's property with no notice and no HOT team present to offer any kind of services. When it is just DPW alone, they come at any time that they want.

13.     Sometimes it feels like DPW is just watching and waiting for people to leave their campsite for a moment before seizing their belongings. This happened to me once. In 2018—shortly after Mayor London Breed entered office—I was staying on Erie Street near the Rainbow Grocery. I had gone out to a nearby store briefly to fill a jug of water. But when I returned, DPW was onsite. They had gone through my belongings and had already taken my BMX bike and tossed it in the back of their truck. I built that bike with my dad, and it was one of the last things I had of his. He had passed away earlier that year.

14.     I was distraught. I dropped the water jug I was carrying and ran over to the DPW truck to get my bike back. A DPW worker told me the bike had been abandoned and tried to poke me with a broom. I told him that my items were neatly arranged and that my things clearly were not abandoned. Fortunately, I was able to get my bike back. Others are not so lucky.

15.     I get called to assist at dozens of sweeps every month. Every time I arrive at a

3

sweep, I always run up and down the street to see if there was any notice posted. There almost never is. When you do see a notice, it is one sheet of paper tucked away in a place where it is unlikely residents will see it. In the last three years, I can only recall three occasions out of more than a hundred where there was actually a posted written notice advising residents that a sweep was coming. I also regularly ask residents if they have been given written or oral notice before a sweep has begun. Almost always, they say no. I know that the City has not been giving the 72-hour written notice it claims to give.

16.     At most sweeps, I understand that "bag and tag" is supposed to happen to safeguard people's personal property. But I have almost never seen DPW bag and tag property. Where I have, it is only because advocates like myself have been present and have specifically requested it. When you ask homeless folks about bag and tag, they laugh like it is a joke.

17.     Last year, for example, I was called by a friend to come to 4th Street and King Street. When I arrived, I saw that DPW and the San Francisco Fire Department (SFFD) were present. When I approached, DPW and SFFD reported they were taking everything to the dump because it was garbage. My friend was crying and asking for help, while the city employees who were present continued to yank her belongings out of her fingertips, laughing and belittling her. I was particularly upset because as a firefighter, this is not the way we are supposed to behave. I explained to Captain Morgan of SFFD that these personal belongings were the only things my friend had left in this world. I asked him to direct the DPW crews to follow bag and tag protocols. I told them that if the goal was to clear the area, they could safeguard her belongings and then we could leave. But it was such a fight to get them to follow even these basic procedures. Ultimately, we got her property bagged and tagged.

18.     On another occasion, I was with a woman named Heather, who is featured in *Stolen Belonging*. Heather had a package with her birthday presents and a series of non-perishable, sealed food items that DPW dumped straight into the trash. Heather's tent, hand cart, and a few other larger items were also seized. Heather was arrested, taken to the station, and then released twenty minutes later. After she was released, she went back to her campsite and attempted to get her items back, but they told us that it was too late because they were already in the truck and threatened her with arrest again. When we went to the DPW yard the next day to try to retrieve those items, they were gone. Heather never got any of her stuff back. The next day it rained, and she had nowhere to shelter herself.

19.     I have seldom seen services or shelter offered during a sweep. Recently on Division Street between Van Ness Avenue and Fulsome Street, I rode my bike to a sweep that was taking

place there. My friend Theresa, who does not have legs below her knees and uses a wheelchair, was being asked to move along with several others at the site. When I asked about services, I was told by the HOT team onsite, "They don't really want any and we don't really have much to give." But Theresa did want services. She told me this, so I asked HOT what they had to offer, but the HOT team clearly did not know what to do. She did not get services that day, and ended up being forced to drag herself across the street to avoid the sweep. This was very upsetting to me. How can you force people to move and not have a place for them to go?

20.     A few months ago on 12th Street, I came upon a sweep where Jeff Kositsky of the Department of Emergency Management (DEM) was running the operation. I asked whether he had informed people where they could go after they were removed from the area. Mr. Kositsky told me he had only one shelter spot open and that it was for a couple. There were nineteen homeless people at the site that day. Mr. Kositsky asked me to use my influence to encourage people to move. When I questioned why Mr. Kositsky was conducting the sweep without available shelter, he said: "Look, there's nowhere to put them, but it's unsafe here. You gotta go." I interviewed each of the nineteen people at the site to ask if they were offered any services. Only two had been offered anything.

21.     Around the same time, I was at a sweep behind the Best Buy near Harrison Street and Bryant Street. There were six or seven homeless people staying there. Kim, who was a worker with the HOT team with blonde hair, told me that they had "no services to give." But DPW was there clearing and forcing people to move anyways. This is consistent with what I have observed to be the City's way of operating. They claim to offer services, but really all they want to do is get rid of tents so that people cannot see that we exist.

**No Accommodations for Disability.**

22.     On one occasion a few years ago, DPW was forcing my friend Crystal to move. Crystal has a spinal disability as a result of a serious car accident. Her disability seriously limits her mobility. But when we told DPW she needed more time to gather her belongings because of her disability, they refused. They told us they were helping her by taking all of her belongings to the trash. This kind of callousness in the face of our struggles was common. They would barrel ahead with their "clean up" at all costs.

**Reflections on the City's Conduct**

23.     The City knows that what it is doing is wrong. You can tell because sometimes when I show up at a sweep, the police or DPW will just leave. They do not want their actions to be publicized. Imagine if the City instead put resources towards building housing for us. My

federal disability income is just not enough to live anywhere in San Francisco—the place I have called home for years as a homeowner before I became homeless. The only difference between a housed and unhoused individual is that one of them has a roof over their heads. But, at the end of the day, we are all San Francisco residents, and should be treated as such.

24.     One of the hardest things about being homeless is the way people look at you. Our things not only help us survive, but they also help us feel like we are living a normal life. They help us build structure. We are all out here trying to make ends meet. But if the City comes and takes all your belongings while you go out to work or to the store, what is the point of even trying? People come to San Francisco to feel like they belong, but the City's cruel and heartless actions of destroying people's belongings makes it feel like we don't. This process destroys people from the inside out. We can only take so much.

I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: October 27, 2021

Shanna Couper Orona

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF DEVON PARTEE**

I, Devon Partee, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Devon Partee, and I am 36 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I was born in San Francisco and raised in different foster homes around the City. When I was 25 years old, I was no longer able to stay at youth centers. I began living in hotels and staying with friends and family. But after a few months, I could not afford housing and neither could my loved ones. I was homeless after that for almost a decade. In 2021, I was finally able to secure permanent housing.

3.      For more than ten years, I faced harassment by the San Francisco Police Department (SFPD) and Department of Public Works (DPW) because I was homeless.

## Law Enforcement Harassment/Property Destruction While Homeless

4.      From 2011 to 2021, SFPD and DPW came to force me to move or take my belongings approximately once every two weeks. Often, the Homeless Outreach Team (HOT) was not present at these sweeps. Maybe the HOT team came by later in the day. But I was too afraid to stick around to wait for that possibility. During these sweeps, my property was never bagged and tagged. DPW workers would tell me that I "need to get my shit out of here" and to "pack my shit up," sometimes while spraying my tent with a water hose.  These experiences have made me feel violated and disrespected.

5.      One morning between 7:00am and 8:00am in the summer of 2020, DPW and SFPD

suddenly arrived while I was living on Cedar Alley. They provided us with no notice that they were forcing us to leave. The HOT team was present that day, but I could not even pause to talk with them because I was scrambling to gather my belongings.

6.      We were told by SFPD that we had 20 minutes to "pack our shit up" or else they would throw it away. They had two DPW trucks and I saw DPW throw me and my friends' property into dumpster trucks—mixing everything together as if it was garbage. When I asked if I could retrieve them from the dumpster truck, DPW told me to go to the yard. However, in my past experience, I have never been able to successfully retrieve my property from the DPW yard.

7.      A police officer, meanwhile, told me "don't bother" and threatened to arrest me if I tried to retrieve my property. I never got my belongings back.

8.      That day, the City destroyed the following:

| ITEM | VALUE |
|------|-------|
| Brand Name Apparel (pants, jackets, shoes) | $1000 |
| Bikes | $1000 |
| JBL Bluetooth speaker | $300 |
| Tent | $200 |
| Air mattress | $60 |
| Art crafts and supplies | $100 |
| Tools | $300 |
| Artwork | Priceless |
| Signed photo of Carlos Santana | Priceless |
| **TOTAL** | $2960 |

9.      One month later—in late summer 2020—I was staying near GLIDE Church with a few other individuals. DPW was cleaning the sidewalk with 3-4 trucks. But then, without warning, DPW started grabbing people's belonging and throwing them away. I saw as one unhoused community member rushed to pack up their things, but a DPW worker took everything from them and threw it away.

10.     HOT team was not present that day. I did not see any posted notice or hear any prior announcement about this sweep. Nothing was bagged and tagged. It all felt wrong.

11.     That day, I lost:

| ITEM | VALUE |
|------|-------|
| 2 Silver rings that were gifts | Priceless |
| 2 silver chain necklaces | $160 |
| Tent | $200 |
| Air mattress | $60 |
| Family photos | Priceless |
| **TOTAL** | $420 |

**Reflections on the City's Conduct**

12.      I feel like less of a human being after what DPW and SFPD put me through. I would like to see those that lost their priceless valuables get compensated or just to see them smile again. The faces that you see when people get their stuff taken are devastating. It is their whole life.

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: February 1, 2022

Devon Partee

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF AUDRA SPARKS**

I, Audra Sparks, hereby declare pursuant to 28 U.S.C. § 1746:

1. My name is Audra Sparks, and I am above eighteen years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2. I have lived in San Francisco for approximately thirteen years, camping in  Golden  Gate Park.  Around May of 2020,  I moved  to a navigation  center for people with acute health needs due to my mental health conditions and I had my own room.

**Law Enforcement Harassment While Homeless**

3. For the entire time I lived in the park, the park's abatement team, which includes San Francisco Parks and Recreation employees and police, would come by about once a week to tell me to move.

4. But in 2018, the park's team became much more aggressive in their tactics. It used to be they would just ask us to move.  But they started taking our things whenever we left them unattended.  Then they started taking our things even when we were present.  After that they started coming in the middle of the night and taking our things.

5. I was forced to move from place to place all the time. I felt constant disruption and anxiety and powerless to do anything about it. I have anxiety and depression already related

to past trauma, so I had a really hard time feeling settled and getting adequate sleep. One of the reasons I was living in the park is that I have a very difficult time beingaround people, especially inside.

**Targeting and Destroying Property Without Notice**

6. It was really difficult to leave my camp in the park because even a short trip to the bathroom could result in losing all of my belongings, and it was exhausting and impossible to carry everything with me at all times. I'd go to the laundromat to wash my clothes only to have the park team take them when I got back. They took my dog's medication three times, for which I had to pay out of pocket. It felt like the park teamwas watching and waiting for me to walk away from my camp so they could swoop inand take my things.

7. I've tried to go to the park station to retrieve my belongings on multiple occasions. Usually what happens is that whoever is working there tells you to come back when someone else is working. They do this enough times that eventually they tell you too much time has passed and your belongings are gone. I've been told that they are storing my things when they clearly threw them away—I've seen my stuff in a garbage dumpster in the station yard.

8. In winter of 2019, I was sleeping in my tent next to some friends when the park team told us we had to get up and pack our belongings. It was raining and so early in the morning it was still dark. They told us to get out of our tents and pack up our stuff.

9. We thought they were giving us time to move, but once we packed our things, they took our tents and tarps and blankets, even the tarps we were using to keep our backpacks dry. They left us in the rain with no cover. We eventually made it to a drainage tunnel where we could get out of the rain but we were wet and very cold.

10. About three days later, the park team woke us up again in the park at about four in the morning. By that time, we had accumulated some blankets, but they told us we had to leave. We grabbed what we could but had to leave everything else behind.

11. A couple days before I moved to the Navigation Center, I was camping near some friends. I didn't have a tent but I had a hammock and some blankets, and my friends had a tent. The park team arrived early in the morning without notice. They said they were tired of telling us we couldn't be in the park. They didn't give us any time to get our things together and threatened us with arrest if we tried to gather our belongings. They took allof my belongings, put them in garbage bags, and threw them on their truck. They said they were going to throw it all away.

12. They took my hammock, tarps, tools, blankets, clothes, and a tattoo machine I had savedup $30 to buy that I hoped to use to earn some money. They also took a lap top case that had my poetry and drawings, and my purse that had my state ID, social security card, inhalers

for asthma and some cash. I was very upset and panicking about losing my purse, so the head of the park team took the bags off the back of the truck and let me look through them. But my purse wasn't in the bags. Neither was the laptop case with my poetry and drawings. I know I had my purse with me when they came and started gathering our things but I wasn't able to retrieve it. So I lost everything. At the same time the park team took my friends' blankets, clothes, bicycles, and tools. They ripped apart their tent.

13.     This was a common practice. I've had my tent ripped or slashed by the park team many times so that it is no longer usable. Once, when it was dark and I was camping by myself, the park team came by and told me to move. They slashed my tent while I was in it because they said I wasn't packing up fast enough. After that, I stopped camping alone because I didn't feel safe. I camped instead with two friends in the park who were a young couple.

14.     It took me months to get my state ID replaced after the park team threw it away. I needed an ID in order to qualify for a housing placement, but most days if I spend time inside with a large group of people, I have severe panic attacks and cannot tolerate it. I was very anxious about going to the DMV, but I finally managed to go in 2019. I spent an hour there to get a replacement ID and I threw up in the bathroom twice because I was so anxious.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2021.

Audra Sparks

Audra Sparks

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF NICHELLE SOLIS**

I, Nichelle Solis, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Nichelle Solis, and I am 37 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.      I have been homeless for a number of years. I met my partner, Jayson Hill, in 2018. Since that time, we have lived everywhere from tents to under bridges—anywhere we could. Fortunately, we were able to secure housing and have been stably housed since October 2020. But from 2018-2020, we experienced the same pattern of harassment and destruction of property at the hands of the City.

**3.      Law Enforcement Harassment While Homeless**

4.      I have been harassed many times by law enforcement while homeless. Two San Francisco Police Department (SFPD) officers in particular, Officers Carr and Green, knew Jayson and me and have harassed us many times.

5.      Often, it would appear that Officers Carr and Green would know that we were staying in a certain location. They would park their car and wait for us to leave to go to the store or to shower, and then when we would return all of our belongings—which had been neatly packed and included our tents, clothes, and all other personal property—would be gone. We believed that SFPD had called DPW to remove our belongings. We never got any word about where our property had gone, but we believed it had been destroyed. It got to the point that only one of us would be able to leave the camp at a time.

1

6.      Some instances of police harassment stand out more than others. During a sweep in January 2020 described in detail below, I witnessed Jayson approach Officer Green while he was in the process of taking our belongings. Jayson asked if he could retrieve his family bible and a blanket knitted by his grandmother. Officer Green would not let him retrieve either of these items, and they were thrown away. I know that this has still had an impact on Jayson. He has not yet told his family that these items were thrown away.

7.      In another instance, I witnessed a friend ask Officer Green if he could retrieve a backpack containing a large amount of cash in it before it was thrown away. Officer Green told our friend something to the effect of, "You shouldn't have chosen to live on the street, then." This backpack went into the crusher truck—which destroyed the backpack in front of us.

8.      One time when I was folding clothes outside, the police drove up and said that someone reported that I had a baseball bat and had been swinging it. This was entirely false. I did not even own a bat. It is my belief that the police made up this story on the spot in order to have an excuse to engage with me, harass me, and convince me to move.

9.      During these and other interactions, officers were malicious when they harassed us and took our belongings. We were asked to move off public property by police many times, often under threat of citation or arrest for illegal camping. But we were never offered any services during these incidents, nor do I recall the Homeless Outreach Team (HOT) being present during these police encounters. Once, Jayson repeatedly requested SFPD to connect us with HOT or transport us to a navigation center. In response, SFPD told us that they were not a taxi service and did not know the HOT number. In my experience, the police do not treat us like people. They treat us like animals. Eventually, that gets to you.

10.      Even though this happened so many times, it still hurts every time. Although we are housed now, seeing the police drive by still puts my stomach in knots and causes me anxiety.

**Targeting and Destroying Property Without Notice**

11.      Jayson and I have lost our belongings at the hands of the City approximately five times in the last three years. Each time the City has taken our belongings, we did not receive notice that they were coming. They would pull us out of our tents and tell us we had fifteen minutes to pack. But before we could finish packing, they would begin taking our belongings. As we moved one cart of our belongings down the street and away from where a sweep was occurring, City employees would be taking as many items as possible before we could come back and retrieve them.

2

12.      I cannot recall a time when my property has been bagged and tagged in the last three years. To my recollection, I have never been told to go to the Department of Public Works (DPW) yard to retrieve my belongings, nor have I been given a slip stating that any of my property has been bagged and tagged. In my experience, although official city policy is to bag and tag personal belongings, this is not what happens on the ground.

13.      One particularly traumatic incident occurred in the summer of 2019, when Jayson and I were staying by the train tracks in Bayshore. Jayson had refurbished a structure that had been built there several years prior. Though it was a dirt floor, it still provided us with shelter from the elements and storage for all of our belongings. One day, we had momentarily gone out. When we returned, the structure had been completely blocked off by industrial-strength chicken wire, secured with concrete screws. We were unable to access any of our belongings, and so we lost everything we had. We received no notice that this would be happening and came back to find all of our belongings and our home inaccessible. The chicken wire and concrete screws were the same material DPW used to seal off another individual's shelter a year before, so we suspected that the City was responsible. The night that our shelter was taken from us, we were forced to sleep under a large truck to protect ourselves from the elements.

14.      The most recent time my property was taken by the City was on January 8, 2020. Jayson and I were staying at an encampment on Rankin Street, near the train tracks between Jerrold Avenue and Evans Avenue. SFPD and DPW were present.

15.      Crews arrived at around 9:00 AM. They did not give us any advance notice that they would be coming, nor did they give us any time to collect our belongings. Instead, they ordered us to come outside and told us not to worry about packing. We were then walked to the corner of the street and forced to wait for an hour until the bulldozers came. We were told that anyone who went back to try and retrieve their belongings would be arrested. We expected that the City would at least allow us to save as many items as we could carry, as that had been the norm in our past experiences. However, in this instance, they told us not to pack and destroyed everything.

16.      We then watched as all of our belongings were loaded into dumpsters by bulldozers. We had been staying at the encampment for approximately six months, so six months' worth of belongings were destroyed by the City on that day.

17.      The things I lost were irreplaceable. This included my most prized possessions, a 24-karat gold scorpion pendant given to me by Jayson as an anniversary gift, and also a topaz pendant given to me by my 90-year-old great grandmother, who is like a second mother to me.

The City also destroyed a copy of the book Gone with the Wind, published in 1943, which was given to me by my Great Aunt, who had purchased the book in England. The City destroyed love notes and poems my partner had written to me over two and a half years, and a year's worth of diaries. I lost family photos as well as gifts that my partner, Jayson, had given to me for Christmas, anniversaries, birthdays, and Valentine's Days. These items reminded me of the love of my family and partner. As a homeless woman, they were sacred to me. All of these items could never be assigned a monetary value—they are priceless. All of our survival belongings were destroyed as well.

18.    The complete list of property the City destroyed that day is listed below along with its replacement cost:

| Property/Item | Replacement Value |
|---|---|
| 12-person tent | $240 |
| 10 x 12 tarp | $14 |
| 15 x 15 tarp | $14 |
| BMX bike | $120 |
| Louis Vuitton small purse with lion head clasp | $737 |
| Coach wristlet zipper pouch | $75 |
| Clothing including coats, lingerie, and dresses | $1000 |
| Bedding including sleeping bags | $200 |
| Hardcover books | $100 |
| Flashlights | $8 |
| Batteries | $12 |
| 1 week of groceries | $97 |
| Toiletries | $20 |
| Makeup | $50 |
| Pink metal shelves | $83 |
| Small blue cart | $30 |
| Jewelry | $100 |
| Portable DVD player | $100 |
| Family photos | priceless |
| Gifts from my partner from the previous 2.5 years | priceless |
| Love notes from my partner from the previous 2.5 years | priceless |
| Diaries | priceless |
| 24k gold scorpion necklace | priceless |
| Topaz pendant given to me by my great-grandmother | priceless |
| **TOTAL (excluding priceless sentimental items):** | $3,000 |

19.    With the assistance of an attorney, I successfully litigated an action in small claims court in San Francisco and was awarded $10,000 by a judge to compensate me for the property the City destroyed on January 8, 2020. **See Exhibit A, Notice of Entry of Judgment (CSM-21-864081).** The City has appealed that decision.

4

**Reflections on the City's Conduct**

20.      They take what little we have left. Those things that we use to connect ourselves and keep one foot in the real world, that remind us of our past when we felt more human. All those things get taken away. I would hope that police officers would realize, "There but for the grace of God go I." But they do not act this way at all.


I have reviewed the information contained in this declaration by telephone. I declare under the pains and penalties of perjury that the contents are true and correct to the best of my knowledge.


Executed on: November 4, 2021

Nichelle Solis

# EXHIBIT A

SC-130

Name and Address of Court:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
Small Claims Division
400 McAllister Street, Room 103
San Francisco, California  94102

SMALL CLAIMS CASE NO:  **CSM-21-864081**

| NOTICE TO ALL PLAINTIFFS AND DEFENDANTS: | AVISO A TODOS LOS DEMANDANTES Y DEMANDADOS: |
|---|---|
| Your small claims case has been decided.  If you lost the case, and the court ordered you to pay money, your wages, money, and property may be taken without further warning from the court.  Read the back of this sheet for important information about your rights. | Su caso ha sido resuelto por la corte para reclamos judiciales menores.  Si la corte ha decidido en su contra y ha ordenado quo usted pague dinero, le pueden quitar su salario, su dinero, y otras cosas de su propiedad, sin aviso adicional por parte de esta corte.  Lea el reverso de este formulario para obtener informacion de importancia acerca de sus derechos. |

| PLAINTIFF/DEMANDANTE  (Name, street address, and telephone number of each:) | DEFENDANT/DEMANDADO    (Name, street address, and telephone number of each:) |
|---|---|
| NICHELLE SOLIS<br>C/O VICTORIA LARSON, ESQ<br>131 STEUART ST. SUITE 400<br>SAN FRANCISCO, CA  94105 | SAN FRANCISCO PUBLIC WORKS<br>49 SOUTH VAN NESS AVENUE<br>SUITE 1600<br>SAN FRANCISCO, CA  94103 |
| Telephone No.:   (415) 240-9816 | Telephone No.:   (628) 271-3160 |
| Telephone No.: | Telephone No.: |

## NOTICE OF ENTRY OF JUDGMENT

Judgment was entered as below on:  Sep-02-2021

Defendant          SAN FRANCISCO PUBLIC WORKS
shall pay plaintiff SOLIS, NICHELLE
$10,000.00 principal, $.00 costs, and $.00 interest on plaintiff's claim.

Enforcement of the judgment is automatically postponed for 30 days or, if an appeal is filed, until the appeal is decided.

### NOTICE OF DESTRUCTION OF EXHIBITS PURSUANT TO CCP 1952

Pursuant to Section 1952 of the Code of Civil Procedure of California, notice is hereby given that the exhibits introduced in the above-entitled proceedings shall be destroyed sixty (60) days after the mailing of the notice of entry of judgment or the final determination of an appeal.  You may personally pick up your exhibits at the Small Claims Division or send someone with written authorization to pick them up.  Exhibits will not be mailed.  Upon written request, the court may preserve exhibits not to exceed one (1) year from the date of this notice.



RECEIVED
SEP 09 2021
BY:_____

CLERK'S CERTIFICATE OF MAILING -- I certify that I am not a party to this action.  This Notice of Entry of Judgment and Notice of Destruction of Exhibits was mailed first class, postage prepaid, in a sealed envelope to the parties at the addresses shown above.  The mailing and this certification occurred at the place and on the date shown below.

Place of mailing:  San Francisco, California

Date of mailing:  Sep-02-2021                    Clerk, by _____WTRUPEK_____ , Deputy

| -- The county provides small claims advisor services free of charge.  Read the information sheet on the reverse. -- |
|---|

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SC-130 [Rev. July 1, 2007]

**NOTICE OF ENTRY OF JUDGMENT**
(Small Claims)

Code of Civil Procedure, 116.610
www.courtinfo.ca.gov

**Statement of Decision**

**Jayson Hill, Nichelle Solis v. SF Public Works**
**Case number: CSM 21-864066; CSM 21-864081**

The Defendant shall pay Plaintiff Hill $10,000.00 plus costs.
The Defendant shall pay Plaintiff Solis $10,000.00 plus costs.

## Plaintiff Jayson Hill and Nichelle Solis

The Plaintiffs are partners and lived in the Jerrold and Rankin area encampment for about 1.5 years. Plaintiffs stated they did not receive any notice the site was coming down. Without prior notice, on January 8, 2020, the police instructed them to vacate the premises and they were not given an opportunity to retrieve their belongings and left their tents with just the items on their backs. Within an hour of being told to vacate, bulldozers arrived and demolished their items. Plaintiffs did not receive notices of any sort about this clean up or how they could claim their personal property.

## Defendant's case

The Court heard from three Defense witnesses in CSM 21-864066. The evidence is applicable to CSM 21-864081. Their evidence is summarized as follows:

## Nichelle Flintroy – CCSF City Claims Adjuster

Ms. Flintroy represented the Defendant, SFDPW. She stated the plaintiffs were given notice of the resolution to occur at or near the Jerrold and Rankin area on January 8, 2020. Resolution is the term used to mean clean and clear an encampment. Outreach attempts were made beginning November 13, 2019. The HOT (Homeless Outreach Team) and the ERT (Encampment Resolution Team) reached out to the residents of this area 2-3 times per week starting in November 2019, the day before and the day of resolution to offer services to residents.

## Larry Stringer – Retired Deputy Director of Operations with DPW

Mr. Stringer stated on the day of the January 8, 2020 cleanup, he was the acting interim manager of Healthy Streets Operations Center. In November 2019, the Jerrold and Rankin encampment resolution was discussed with a target date of December 2019. It was pushed to January 8, 2020 because the PUC needed the area. Mr. Stringer was present on January 8, 2020 around 8:00 am and the HOT team arrived prior to cleanup, which is typical. Cleanup began at 10:00am and the bulldozer arrived between 11am to noon. Mr. Stringer left around 11:00am and returned around 1:00pm. Mr. Stinger said the usual protocol when a resolution occurs is that residents are allowed to take everything of value with them or they can return to retrieve the rest of their items within a reasonable amount of time – meaning within the course of the day. Items that residents express an interest in or seem to be of value are "bagged and tagged" and stored at 2323 Cesar Chavez Street and can be reclaimed. He said it would be unusual and not protocol for residents

1

to not be allowed an opportunity to retrieve their items and he was unaware of that ever happening in a resolution.

**Brenda Meskin – Encampment Resolution Team Lead**

Ms. Meskin stated a Resolution Flyer notifying residents of the date and time of clean up was provided to Plaintiffs three weeks prior to January 8, 2020.  She did not have a copy of that flyer and she did not personally participate in handing out the notifications.

Copies of the actual notice of resolution distributed by the HOT team or DPW notices for bagging and tagging or of planned and actual removal were not provided to the Court by any of the Defense witnesses.  Resolution procedures and protocols also were not provided to the Court by any of the Defense witnesses.

Date: August 18, 2021

Judge Michelle Tong
SF Superior Court

2

SC-130

| INFORMATION AFTER JUDGMENT | *INFORMACION DESPUES DEL FALLO DE LA CORTE* |
|---|---|

Your small claims case has been decided. The **judgment** or decision of the court appears on the front of this sheet. The court may have ordered one party to pay money to the other party. The person (or business) who won the case and who can collect the money is called the **judgment creditor**. The person (or business) who lost the case and who owes the money is called the **judgment debtor**.

Enforcement of the judgment is postponed until the time for appeal ends or until the appeal is decided. This means that the judgment creditor cannot collect any money or take any action until this period is over. Generally, both parties may be represented by lawyers after judgment.

**IF YOU LOST THE CASE . . .**

1.  If you lost the case on your own claim and the court did not award you any money, the court's decision on your claim is **FINAL.** You may not appeal your own claim.

2 .  If you lost the case and the court ordered you to pay money, your money and property may be taken to pay the claim unless you do one of the following things:

    a.  **PAY THE JUDGMENT**
    The law requires you to pay the amount of the judgment. You may pay the judgment creditor directly, or pay the judgment to  the court for an additional fee. You may also ask the court to order monthly payments you can afford. Ask the clerk for information about these procedures.

    b.  **APPEAL**
    If you disagree with the court's decision, you may appeal the decision *on the other party's claim. You* may not appeal the decision on your own claim. However, if any party appeals, there will be a new trial on *all* the claims. If you appeared at the trial, you *must* begin your appeal by filing a form called a *Notice of Appeal* (form SC-140) and pay the required fees within 30 *days*  after the date this *Notice of Entry of Judgment* was mailed or handed to you. Your appeal will be in the superior court. You will have a **new trial** and you must present your evidence again. You may be represented by a lawyer.

    c.  **VACATE OR CANCEL THE JUDGMENT**
    If you did not go to the trial, you may ask the court to vacate or cancel the judgment. To make this request, you must file a *Motion to Vacate the Judgment* (form SC-135) and pay the required fee *within 30 days* after the date this *Notice of Entry of Judgment* was mailed. If your request is denied, you then have 10 *days* from the date the notice of denial was mailed to file an appeal. The period to file the *Motion to Vacate the Judgment is 180 days*  if you were *not properly served* with the claim. The 180-day period begins on the date you found out or  should have found out about the judgment against you.

**IF YOU WON THE CASE . . .**

1.  If you were sued by the other party and you won the case, then the other party may not appeal the court's decision.

If you won the case and the court awarded you money, here are some steps you may take to collect your money or get possession of your property:

    a.  **COLLECTING FEES AND INTEREST**
    Sometimes fees are charged for filing court papers or for serving the judgment debtor. These extra costs can become part of your original judgment. To claim these fees, ask the clerk for a *Memorandum of Costs.*

b.  **VOLUNTARY PAYMENT**
Ask the judgment debtor to pay the money. If your claim was for possession of property, ask the judgment debtor to return the property to you. **THE COURT WILL NOT COLLECT THE MONEY OR ENFORCE THE JUDGMENT FOR YOU.**

c.  **STATEMENT OF ASSETS**
If the judgment debtor does not pay the money, the law requires the debtor to fill out a form called the *Judgment Debtor's Statement of Assets* (form SC-133). This form will tell you what property the judgment debtor has that may be available to pay your claim. If the judgment debtor willfully fails  to send you the completed form, you may file an *Application and Order to Produce Statement of Assets and to Appear for  Examination* (form SC-134) and ask the court to give you your attorney's fees and expenses and other appropriate relief, after proper notice, under Code of Civil Procedure section 708.170.

d.  **ORDER OF EXAMINATION**
You may also make the debtor come to court to answer questions about income and property. To do this, ask the clerk for an *Application and Order for Appearance and Examination (Enforcement of Judgment)* (form EJ-125) and pay the required fee. There is a fee if a law officer serves the order on the judgment debtor. You may also obtain the judgment debtor's financial records. Ask the clerk for the *Small Claims Subpoena and Declaration* (form SC-107) or *Civil Subpoena Duces Tecum* (form SUBP-002).

e.  **WRIT OF EXECUTION**
After you find out about the judgment debtor's property, you may ask the court for a *Writ of Execution*  form EJ-1 30) and pay the required fee. A writ of execution is a court paper that tells a law officer to take property of the judgment debtor to pay your claim. Here are some examples of the kinds of property the officer may be able to take:  **wages, bank account, automobile, business property, or rental income.** For some kinds of property, you may need to file other forms. See the law officer for information.

f.  **ABSTRACT OF JUDGMENT**
The judgment debtor may own land or a house or other buildings. You may want to put a lien on the property so that you will be paid if the property is sold. You can get a lien by filing an *Abstract of Judgment*  (form EJ-001) with the county recorder in the county where the property is located. The recorder will charge a fee for the *Abstract of Judgment.*

**NOTICE TO THE PARTY WHO WON:** As soon as you have been paid in full, you *must* fill out the form below and mail it to the court *immediately* or you may be fined. If an *Abstract of Judgment has*  been recorded, you must use another form; see the clerk for the proper form.

SMALL CLAIMS CASE NO.: _____

ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT
*(Do not use this form if an Abstract of Judgment has been recorded.)*

**To the Clerk of the Court:**
I am the ☐ judgment creditor    ☐ assignee of record.
I agree that the judgment in this action has been paid in full or otherwise satisfied.
Date: _____

▶

| *(TYPE OR PRINT NAME)* | *(SIGNATURE)* |
|---|---|

SC-130 [Rev. July 1, 2010]            **NOTICE OF ENTRY OF JUDGMENT**          Page 2 of 2
                                **(Small Claims)**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF VICTORIA SOLOMON**

I, Victoria Solomon, hereby declare pursuant to 28 U.S.C. § 1746:

1.       My name is Victoria Solomon, and I am 34 years old. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

2.       I have been in San Francisco for almost 12 years. I am currently unsheltered and am actively seeking permanent housing.

**Harassment by the City and Property Destruction While Homeless**

3.       I have been harassed by the San Fracisco Police Department (SFPD) and the Department of Public Works (DPW) repeatedly while I have been unsheltered. Within the last 6 months, I have had my belongings taken about 5 times by the City. In addition, I am harassed by SFPD at least once a day. They come by where I am staying and tell me that we should not be in certain areas, or that if they see us here again, they will arrest us.

4.       I have not received any form of notice for any of the most recent sweeps where the City has taken my belongings.

5.       The sweeps always happen as early as 5:30 AM or 5:45 AM. DPW and SFPD wake us up and tell us we need to take our stuff and go. I know sweeps are not supposed to start until closer to 7:00 AM, but in my experience, the City arrives much earlier than that. I have insomnia, so being awoken by the City so early in the morning means that I sometimes only get an hour of sleep on days when there is a sweep.

1

6.      Sometimes DPW will take my belongings while I am trying to pack them. Other times they will take my property when I am trying to help someone else pack or move their belongings. I have never been able to retrieve any of my belongings once they have been taken by DPW. Even when I have gone to the DPW yard in an attempt to retrieve my belongings, I have been unsuccessful in doing so and the City appears to have no record of my belongings.

7.      Three recent sweeps stand out in particular. Most recently, in early August 2022, I was staying at 16th Street and Pond Street. We received no notice of the sweep, so I was away from my belongings temporarily. I was gone for maybe 45 minutes, and when I got back, everything was gone. They took my tent and everything that was in it. Specifically, DPW took the following items on that day: my tent, electronics, dog food, clothes, and sentimental items including a bracelet I got from my partner, stuffed animals, a notebook someone had given me, markers someone had given to me, and all of my jewelry. These items were irreplaceable to me, and I can never get them back. To have that taken away from me is extremely hurtful.

8.      The second sweep that stands out to me occurred on May 10, 2022, my birthday. I was staying at 16th Street and Dolores. I had stepped away from my belongings momentarily to celebrate my birthday with a friend. When I returned, DPW had taken everything. I asked some people at the church nearby if they had picked up my belongings, but they confirmed that they had not. It was a clean sweep, with nothing left behind; I knew that it had to be DPW that had taken my items. I lost the following on that day: 2 phones, a tablet, all my bedding, all my clothing, my dog food, and other items. This represented everything I had—after that I had to start over from scratch, again.

9.      Shortly before that time, in April 2022, I was present for a large-scale HSOC sweep. I was staying at an encampment on 16th Street and Pond Street, near the mural. We did not receive notice in advance of this sweep. SFPD, DPW, and the Homeless Outreach Team ("HOT") were present. HOT did not interact with us during the sweep; they just stood there and waited. I managed to keep my belongings until I stepped away momentarily to help another individual move their belongings down the street. When I came back, DPW was throwing all my property into the back of their truck. DPW took everything I had, including a tent, bedding, dog food, and my necessities. Once your items are in the back of the DPW truck, they will not allow you to retrieve them, even if you are there to claim your belongings.

10.     Since these most recent sweeps, I try not to leave anything behind anymore. The risk of DPW taking my belongings has impacted my ability to live my life and search for housing or employment, as I cannot leave my belongings for more than a few minutes at a time.

11.     These experiences make me fearful that the City will continue to destroy my property and threaten me with citation and arrest in the future just because I am homeless and living unsheltered.

**Reflections on the City's Conduct**

12.     Housing is the only real solution to homelessness. There are so many abandoned properties in the City, the City should be putting its resources toward converting these buildings into affordable housing. At the very least, they could build locker systems so we could leave our belongings somewhere safe without the risk that the City will take them.

13.     These experiences have made me feel like I have no trust in the City. The City is supposed to help us, but it does not help to take our belongings again and again—it forces us to have to start over all the time.

I have reviewed the information contained in this declaration. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

September 14, 2022

Victoria Solomon

3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Case No. 3:22-cv-05502

**DECLARATION OF VINCENT VETTER**

I, Vincent Vetter, hereby declare pursuant to 28 U.S.C. § 1746:

1.      My name is Vincent Vetter, and I am 51 years old. All facts set forth in this declaration are based upon my knowledge, and, if called upon to testify to the truth of these facts, I could and would competently do so.

2.      I am a resident of San Francisco, California and have been for all relevant times described in this declaration. I have been homeless for many years and usually sleep in Golden Gate Park. More recently, after April 2019, I started securing temporary placements in local shelters—which meant I did not have to sleep outside as much. After two years of being in and out of temporary shelters, I was finally able to secure a subsidized housing unit in San Francisco in April 2021.

**Law Enforcement Harassment and Property Destruction While Homeless**

3.      I have witnessed the City take my belongings or the belongings of others at least 30 times over the last several years. This was part of a pattern of law enforcement harassment against homeless people who lived in Golden Gate Park during the years that I slept there.

4.      Generally, the sweeps I witnessed in Golden Gate Park included staff from the Parks and Recreation Department ("PRD"), the Department of Public Works ("DPW"), and the San Francisco Police Department ("SFPD"). PRD Rangers would come to wake us up at 4 AM accompanied by SFPD. We almost never had notice—either verbally or in writing—that

1

they were coming that day. We were usually given no time to collect any of our belongings either. SFPD would detain us while the PRD staff, often joined by DPW, would confiscate all our belongings. I almost never saw property bagged and tagged during these sweeps. Instead, people's property would get mixed together carelessly in heaps.  They would just throw all our belongings into the DPW truck or whatever other vehicle they were using and drive off.

5.      On a couple of occasions—out of tens of sweeps—City agencies have told me to go to the DPW building on Caesar Chavez Avenue in San Francisco if I wanted to try to get my property back. Going to the DPW building is a hassle because no one wants to help you. Even then, I have never once been able to recover property. It just has not been there when I have gone to collect it.

6.      I have also been in Golden Gate Park when PRD, DPW, and SFPD have started confiscating the property of people who were not there at the time. Even when I and others who were present explained that the property owner had not abandoned the property and would only be gone for a short time, City agencies still confiscated their property. We were told that we couldn't watch other people's property for them. The property confiscated at these incidents was also not bagged and tagged. It was thrown into trucks, where everyone's property got mixed, and driven away.

7.       If we protested the destruction of our property or refused to leave the area, sometimes SFPD would start taking people to one side to issue citations. It happened enough times that I was constantly afraid of being cited or arrested just because I was homeless and had nowhere else to go. At most of these sweeps, there was no Homeless Outreach Team ("HOT") present to even offer services.

**Specific Instances of Citation and Property Destruction**

8.      I vividly recall at least two specific times when my property was seized and destroyed by the City and I was cited for illegal camping.

9.      In the summer of 2018, PRD, DPW, and SFPD approached me where I was staying in Golden Gate Park at 4 AM. I did not know anyone was coming that day as there was no notice posted. They woke me up, and SFPD sat me down and immediately issued me a citation for illegal camping. I do not recall being offered any services or shelter that day, and no representatives from the HOT team were present when my citation was issued.

2

10.     While SFPD was issuing me a citation, PRD and DPW crews were taking away all of my clothing, my sleeping bag, hammock, tarp, guitar, and a backpack full of bike tools. My property was not bagged and tagged—nor did anyone provide me with information about how to recover my property. They simply put it in the back of the DPW pick-up truck. Below is an itemized list of the property that was taken from me that day:

| ITEM | VALUE |
|------|-------|
| Clothes | $200 |
| Hammock | $300 |
| Bike tools | $100 |
| Sleeping bag | $150 |
| Guitar | $300 |
| Tarp | $20 |
| **TOTAL** | $1,070 |

11.     Even though no one told me how to recover my belongings, I had enough experience to know where to look for my property. I went to the Parks and Recreation dumpster at 9th Street and Lincoln and found my property there. When I started taking my belongings out of the dumpster, a PRD Ranger came out and told me to stop. He said he was calling the SFPD. I was stopped by SFPD at about 7th Avenue and Lincoln. I explained that I was only retrieving my property that had been taken earlier that day. The SFPD issued me yet another citation in response.

12.     The next sweep I specifically recall was in April or May of 2019. I was asleep in Golden Gate Park near Martin Luther King Jr. Drive and Crossover Drive when DPW and PRD approached me. It was between 5 and 6 AM, and I did not receive any notice that they were coming. Even though I was with my property, they did not ask me to move my possessions before they began the sweep. In fact, they did not wake me up at all; other people saw them take my property. They were evidently in a hurry because there were drag marks on the ground and some of my belongings had fallen as they rushed to dispose of them.

13.     Later, I approached the PRD ranger station in the park to ask if they had my property. They told me to talk to the DPW clean-up crew because they did not have it. I talked to the DPW clean-up crew, but they told me to go to the PRD station. I went back to the PRD

station, where I was told that nothing came in that day. I even went to the DPW yard to check for my property but was also told there that nothing had come in. That day, I lost the following property:

| ITEM | VALUE |
| --- | --- |
| Backpacks | $275 |
| Clothes (including a collection of valuable Nike shoes and member-only jackets) | $10,000 |
| Basic bike tools (new, in good condition) | $200 |
| Bikes (2) | $1,600 total |
| **TOTAL** | $12,075 |

14.    After these experiences, I was afraid to keep anything of value with me anywhere in public. One time, the City slashed my tent with a knife just because I was in Golden Gate Park and they said I was not allowed to be there. In about February 2019, my friend who was also sleeping in Golden Gate Park had a computer system with him. The City crews took the computer and just smashed it on the ground. One time, when I objected to the confiscation and destruction of our property, one of the PRD Rangers—named Carlo—told me that we were not entitled to have our property.

**Reflections on the City's Conduct**

15.    I have serious anxiety because of my experiences with the City. There were many times I did not sleep because I thought City crews would show up and take my belongings. I had to constantly keep one eye open. When the City takes tarps, tents, and sleeping gear and leaves us in 40-degree weather in the rain, it is especially cruel.

16.    Having our property taken away is also demoralizing. Even if it is very little, our property is everything we have. It is already a battle every day just to survive and figure out where to go. Taking our survival items out from under us makes things worse. The City should be helping people by offering them stable housing options instead of leaving them with nothing.

4

I have reviewed the information contained in this declaration by telephone. I declare under the penalties of perjury that the contents are true and correct to the best of my knowledge.

Executed on: November 29, 2021

Vincent Vetter

5