1 | DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4628 (Emery)
              (415) 554-3857 (Wang)
Facsimile:    (415) 554-4699
E-mail:       jim.emery@sfcityatty.org
              edmund.wang@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; LONDON BREED, in her official capacity as Mayor; and SAM DODGE, in his official capacity as Director of the Healthy Streets Operation Center (HSOC),<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF DAVID NAKANISHI, MPH, LCSW, IN SUPPORT OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  December 22, 2022<br>Time:          1:00 p.m.<br>Place:         Courtroom 4 – 3rd Floor<br><br>Trial Date:    None set. |

NAKANISHI DECL.
CASE NO. 4:22-cv-05502-DMR

1

I, David Nakanishi, MPH, LCSW, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am currently the Clinical Supervisor of the Encampment Resolution Team ("ERT") with the San Francisco Department of Homelessness and Supportive Housing ("HSH"). I have been the Clinical Supervisor of ERT since September 21, 2021.

3. I have been a Licensed Clinical Social Worker (LCSW) since July 20, 1995. I earned a Masters of Public Health and a Masters in Social Welfare, both in May 1991 from the University of California at Berkeley. I have worked in the City and County of San Francisco full time since 1991, beginning with Visiting Nurses and Hospice. I began working for the San Francisco Department of Public Health ("DPH") in June 1995 as a clinical social worker in a variety of positions and programs. My history with DPH includes being the Director of the San Francisco Homeless Outreach team starting in May 11, 2004, crisis response for DPH addressing critical incidents and disaster response, as well as working in the DPH supportive housing system for a total of 12 years. I've been employed with HSH since its inception on July 1, 2016, initially as the support services director in the permanent supportive housing division. I began working as the Clinical Supervisor for the Encampment Resolution Team as of September 21, 2021.

4. As the Clinical Supervisor, I provide clinical supervision for ERT outreach workers. The ERT consists of four San Francisco Homeless Outreach Team ("SFHOT") outreach workers who are assigned to engage with encampment residents during San Francisco's Healthy Streets Operations Center ("HSOC") encampment resolutions ("HSOC resolutions"). HSOC generally conducts between five to ten resolutions each week, one in the morning, and often one in the afternoon, Monday through Friday. There are always ERT outreach workers present at the HSOC resolutions. Given their schedule, there are two ERT outreach workers present on Mondays and Fridays, for the operations. On Tuesdays, Wednesdays, and Thursdays, all four ERT outreach workers are available for engagements during the resolutions. SFHOT will provide coverage should there be less than two ERT outreach workers available for HSOC operations. It has been general practice that I am present for the morning

resolutions, and the majority of afternoon resolutions, as my schedule allows.  Otherwise, I am available and involved via mobile phone and/or text messages.

5.  HSOC resolutions are scheduled for Mondays through Fridays. On the weekend before, SFHOT outreach workers visit the locations scheduled for a HSOC resolution in the following week to provide outreach, including assessing clients for housing, connecting clients to services, gauging interest in shelter, and to provide notice of the upcoming HSOC resolution. The SFHOT outreach workers provide verbal notice of the upcoming HSOC resolution, explain what to expect on the day of the resolution, as well as post written notices in and around the encampment. ERT outreach workers are often part of the weekend SFHOT notification team.

6.  On the morning of an HSOC resolution, the ERT outreach workers and I meet the rest of the HSOC field team at the site at 7:00 a.m. ERT begins engaging with clients and assessing what services they may be interested in being connected to, including shelter, and medical and behavioral health services. ERT also provides clients information about other resources, and how the shelter and housing systems work.  They will also inform the clients on the time frame and process of the HSOC resolution. The ERT uses trauma-informed and harm-reduction-oriented approach to engaging with clients. My primary role as the Clinical Supervisor during an HSOC resolution is threefold.  First, I provide clinical support for the ERT outreach workers—which includes addressing questions, providing advice, making recommendations, and providing crisis intervention.  Second, I assist from a clinical perspective, to facilitate ERT's engagement with the clients, and identify "specialty" placements for clients, that can include special issues such as couples, clients with special needs or circumstances.  My role includes assisting to identify and facilitate placements to shelter sites that are not traditional congregant shelter sites, such as safe sleep, vehicle triage center, mini cabins or non-congregant shelters.  Lastly, my role includes supporting the HSOC Incident Commander with respect to overall safety of staff, and engaging with other individuals who may present themselves, such as community members, business people, advocates, or others inquiring about the operation.

7.  HSH manages shelter resources. The expectation is at 8:30 a.m., HSH notifies HSOC of the available shelter allocated to HSOC.  While there can be a delay in notification due to the HSH placement team's process of obtaining shelter availability, HSOC is generally notified by 9:00 a.m. at

NAKANISHI DECL.  
CASE NO. 4:22-cv-05502-DMR

3

the latest. At that point, ERT reengages with clients to discuss with them the specific shelter resources available that day, which shelter(s) the clients prefer, and confirm their placement. Everyday, at 9:30 a.m., Monday through Friday, there is a meeting where HSOC can confirm its allocations with HSH placement and request additional or specific allocations. Note there is also the ability to contact and request additional shelter resources directly with the HSH placement team via text messages and email; based on need and availability, these additional requests can be met.

8. During the above process, it is not uncommon for clients to change their mind about wanting shelter at any/various times throughout the process. There are a variety of reasons clients seem to either decline the offer of shelter and/or change their mind about going to shelter once offered or accepted. Reasons include but are not limited to, shelter of their choice is not available, they have too many belongings to accept shelter, they express that they do not want to follow the rules of the shelter, they have heard bad things about shelters or a specific shelter, or often give no reason but simply decline. Throughout the operation, ERT is actively engaging with clients to determine if a preference is available, to educate clients of the options and/or what specific sites are like, as well as, confirming that they do or do not want to accept shelter options. ERT will communicate to other members of the HSOC team, including the HSH/HSOC Liaison and myself, any specific requests for shelter placements, including those not initially allocated to HSOC through the HSH placement team. With this additional communication, there are times a different allocation is obtained, and a client(s) may accept it. Other times, a specifically requested allocation is just not available, but every effort is made to match a preferred shelter when requested. There are additional efforts made to connect clients to the district SFHOT teams, as appropriate and available, again to enable clients to access services especially when there isn't availability during an HSOC operation.

9. Once ERT confirms a client is accepting a shelter placement, ERT sends the information to the HSOC-affiliated staff who are managing placements (this is done in a way to not break confidentiality), who check with HSH to see if the client is currently in housing or shelter, and if they are not currently in shelter or housing, sends a referral to the site and the HSH Guest Placement team. HSOC placement staff will then send a confirmation that the placement referral has been sent back to ERT. ERT then coordinate transportation to ensure there is a "warm hand off" for the client to

enter the shelter. Since the majority of sites do not open for intake until 10:00 a.m., transportation generally doesn't begin until 9:45 a.m.. ERT will also delay transportation to allow more time for clients to gather their belongings and be prepared to be transported and accept shelter.

10. ERT outreach workers (and SFHOT outreach workers, on days when they are filling in for ERT outreach workers) are the primary HSOC-affiliated staff that engage with clients at the encampment. They are the first arrive at an HSOC resolution at 7:00 a.m. and begin engaging clients by around 7:30 a.m. The San Francisco Department of Public Works ("DPW") typically does not arrive at an HSOC resolution until 8:00 a.m. or later, after ERT has begun its outreach. DPW does not begin its responsibilities until ERT has conducted its outreach. DPW relies on ERT to engage the clients to determine how much time the clients need to gather the move their belongings. During a resolution, ERT is in constant communication with the HSOC Incident Commander, as well as DPW staff, about who has left the encampment, who is interested in shelter, who has been placed in shelter, and who needs more time to collect their belongings, in order to help make sure that no one's belongings are improperly discarded inadvertently.

11. In addition to the ERT's duties and responsibilities during an HSOC resolution, there are occasions that ERT with my direction/supervision will follow up with clients previously engaged at a prior resolution. Often due to resources or shelter options not being available at the time of a resolution, but the circumstances are such that the provision of services would benefit the client(s), there is an effort to follow up between scheduled resolutions. For example, if a client requests a specific shelter that is unavailable at the time of the HSOC resolution, and refuses the other available shelter, there are occasions that ERT or SFHOT district staff will follow up with that client when that specific shelter becomes available. These encounters usually involve additional engagement and outreach with the goal to connect them to services, and occasionally shelter options. These additional outreach events include clients previously engaged, clients where there has been a report of significant need (by someone from the community, or other entities, that can include police, department of public works, or other agencies), or clients where the is some concern for their health and welfare. These encounters are specifically for services, connections and/or referrals, and do not involve law

enforcement or DPW. Clients are not moved during these encounters (unless they are going to a shelter).

12. I meet with ERT every other week to review, discuss, and reflect on clinical, administrative, and/or operational issues. During these meetings, we discuss how the HSOC resolutions went, and address any clinical issues or questions that arose during resolutions. I also check in with each ERT outreach worker individually each week informally to address the same. Check ins and/or full team meetings also occur on an "as needed" basis.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on November 14, 2022, at San Francisco, California.

*/s/ David Nakanishi*
David Nakanishi