DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4628 (Emery)
                      (415) 554-3857 (Wang)
Facsimile:      (415) 554-4699
E-mail:          jim.emery@sfcityatty.org
                      edmund.wang@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; LONDON BREED, in her official capacity as Mayor; and SAM DODGE, in his official capacity as Director of the Healthy Streets Operation Center (HSOC),<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br><br>Hearing Date:      January 12, 2023<br>Time:                   1:00 p.m.<br>Before:                Hon. Donna M. Ryu<br>Place:                 Courtroom 4 – 3rd floor<br>                           1301 Clay Street<br>                           Oakland CA 94612<br><br>Trial Date:          None set. |

CCSF's Reply ISO Mtn to Dismiss
CASE NO. 4:22-cv-05502-DMR
n:\govlit\li2022\230239\01641357.docx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................2

     I.      The Departmental Defendants Lack Capacity to Be Sued under California Law. ..2

     II.     The Intracorporate Conspiracy Doctrine Prohibits Plaintiffs' Thirteenth Cause of Action for Conspiracy. ........................................................................................5

     III.    The Individual Defendants Should be Dismissed. ..................................................6

CONCLUSION............................................................................................................................7

1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)..................................................................................6, 7

*Buschi v. Kirven*
   775 F.2d 1240 (4th Cir. 1985) ............................................................5

*Dickerson v. Alachua County Comm'n*
   200 F.3d 761 (11th Cir 2000) ............................................................5

*Fonda v. Gray*
   707 F.2d 435 (9th Cir. 1983) ............................................................6

*Garcia v. County of Los Angeles*
   588 F. Supp. 700 (C.D. Cal. 1984) ..................................................2, 3

*Hartman v. Board of Trustees*
   4 F.3d 465 (7th Cir. 1993) ................................................................5

*Jones v. Williams*
   297 F.3d 930 (9th Cir. 2002) ............................................................6

*Jones-Hamilton v. Beazer Materials & Srvs.*
   973 F.2d 688 (9th Cir. 1992) ............................................................3

*Karim-Panahi v. Los Angeles Police Dep't*
   839 F.2d 621 (9th Cir. 1998) ............................................................2, 3, 4

*Poublon v. C.H. Robinson Co.*
   846 F.3d 1251 (2017)........................................................................2, 5

*Shaw v. California Dep't of Alcoholic Beverage Control*
   788 F.2d 600 (9th Cir. 1986) ............................................................2, 3, 4

*Stathos v. Bowden*
   728 F.2d 15 (1st Cir. 1984)...............................................................5, 6

*Streit v. County of Los Angeles*
   236 F.3d 552 (9th Cir. 2001) ............................................................2, 3, 4

*Wright v. Illinois Dept. of Children & Family Servs.*
   40 F.3d 1492 (7th Cir. 1994) ............................................................5

**State Cases**

*Hagman v. Meher Mount Corp.*
   215 Cal. App. 4th 82 (2013) .............................................................2, 4

*Laidlaw Environmental Services, Inc. Local Assessment Committee v. County of Kern*
   44 Cal. App. 4th 346 (1996)..............................................................2, 3, 4

*Lawson v. Superior Court*
    180 Cal. App. 4th 1372 (2010) ......................................................................2, 3, 4

*Lejins v. City of Long Beach*
    72 Cal. App. 5th 303 (2021) ..............................................................................2, 4

*Peterson v. Long Beach*
    24 Cal.3d 238 (1979) ..............................................................................................4

*Vallas v. City of Chula Vista*
    56 Cal. App. 3d 382 (1976) ....................................................................................4

**Federal Statutes**
42 U.S.C.
    § 1983 ................................................................................................................1, 5, 6
    § 1988 .........................................................................................................................5

**State Statutes & Codes**
Cal. Civ. Code § 1007 ..................................................................................................4

Cal. Gov. Code § 811.2 ......................................................................................2, 3, 4, 5

**San Francisco Statutes, Codes & Ordinances**
S.F. Charter
    § 4.100 .......................................................................................................................3
    § 4.127 .......................................................................................................................3
    § 4.128 .......................................................................................................................3
    § 4.140 .......................................................................................................................3

**Rules**
Fed. R. Civ. P. 33(a)(1) ...............................................................................................2

**Other References**
Cal. Law Revision Comm. Com., 32 West's Ann. Gov. Code (1995 ed.) § 811.2 ....................2, 4

1

**INTRODUCTION**

2   This motion raises pure questions of law.  Plaintiffs' twelve substantive causes of action may

3 proceed against the City and County of San Francisco.  But the departmental defendants, the

4 individual defendants sued in their official capacities, and the thirteenth cause of action for conspiracy

5 are defective, because the departmental defendants lack capacity to be sued, the individual defendants

6 are redundant, and the intracorporate conspiracy doctrine prohibits a conspiracy claim against actors

7 within a single legal entity.

8   Plaintiffs do not, in their opposition, argue their official-capacity claims against Mayor Breed

9 and Mr. Dodge are proper.  The Court should therefore dismiss Mayor Breed and Mr. Dodge.  Instead,

10 plaintiffs seek leave to amend.  Before this Court grants leave to amend, plaintiffs must demonstrate

11 their proposed amendment is not futile.

12   As to the departmental defendants, plaintiffs urge this Court to adhere to a trio of Ninth Circuit

13 cases, decided between 1986 and 2001, interpreting California law, which *no* California court has

14 followed.  To the contrary, both California courts and the California legislature have confirmed over

15 the decades the Ninth Circuit wrongly predicted how California courts would resolve what in 1986

16 was a question of first impression – whether a municipal police department had capacity to be sued

17 under California's Government Code.  Today, California law is clear municipal departments lack

18 capacity to be sued.  Accordingly, this Court should dismiss all claims against the five municipal

19 departments plaintiffs have named in this action.

20   Plaintiffs acknowledge the split of authority whether the intracorporate conspiracy doctrine

21 prohibits their section 1983 conspiracy claim.  Plaintiffs further acknowledge the Ninth Circuit has yet

22 to weigh in on that split.  San Francisco urges this Court to adopt the majority rule, apply the

23 intracorporate conspiracy doctrine, and dismiss plaintiffs' thirteenth cause of action for conspiracy.

24   This motion presents the Court an opportunity to clarify the pleading rules for a section 1983

25 action against a municipality, and to streamline this case.  Granting this motion will not limit in any

26 way the substantive remedies available to plaintiffs, should they prove any of the alleged violations of

27 section 1983.  The purposes of the Constitution and the civil rights statutes will be fully vindicated if

28 plaintiffs proceed with their twelve substantive causes of action against San Francisco.  Yet denial of

this motion continues to expose the individual defendants to gratuitous reputational harm, and imposes an unreasonable burden on San Francisco, e.g., by multiplying by seven the number of interrogatories to which plaintiffs are presumptively entitled.  See Fed. R. Civ. Pro. 33(a)(1).

For these reasons, set forth more fully below and in San Francisco's opening brief, the Court should dismiss the departmental defendants, Mayor Breed and Mr. Dodge in their official capacities, and the thirteenth cause of action for conspiracy.

## ARGUMENT

**I.    The Departmental Defendants Lack Capacity to Be Sued under California Law.**

Plaintiffs urge this Court to follow *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001), *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621 (9th Cir. 1998), and *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986), to extend those cases beyond the municipal Police Department, and to ignore California authority demonstrating these decades-old cases wrongly predicted how California courts would construe Government Code section 811.2's definition of a "public entity" with capacity to be sued.  See Opp. at 5-9.

Plaintiffs acknowledge Ninth Circuit interpretations of California law are not binding on this Court if subsequent state authority demonstrates the federal courts' prior interpretation of California law was erroneous.  Opp. at 6.  This Court is "bound to apply" legal principles state courts have articulated in "closely similar" cases when the state rule departs from prior federal decisions.  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1267 (2017).

Plaintiffs attempt to avoid this rule by minimizing the significance of *Lejins v. City of Long Beach*, 72 Cal. App. 5th 303 (2021), *Hagman v. Meher Mount Corp.*, 215 Cal. App. 4th 82 (2013), *Lawson v. Superior Court*, 180 Cal. App. 4th 1372 (2010), and *Laidlaw Environmental Services, Inc. Local Assessment Committee v. County of Kern*, 44 Cal. App. 4th 346 (1996).  Opp. at 7-8.  In these "closely similar" cases, California courts recognize Government Code section 811.2 requires "public entities" to be "independent."

To support its holding the local assessment committee lacked capacity to sue under the Government Code, the Court of Appeal in *Laidlaw* relied on the Law Revision Committee comments to section 811.2 and *Garcia v. County of Los Angeles*, 588 F. Supp. 700, 707 (C.D. Cal. 1984).

*Laidlaw*, 44 Cal. App. 4th at 353 n.3.  Thus, the California Court of Appeal expressly followed *Garcia*

after the Ninth Circuit in *Shaw* expressly rejected *Garcia*.  Compare *Shaw*, 788 F.2d at 605 n.1.  When

it rejected *Garcia* and ignored the Law Revision Committee comments to section 811.2, *Shaw*

wrongly predicted "the courts of California would hold that the Police Department is a public entity

under section 811.2."  *Shaw*, 788 F.2d at 605.  To the contrary, the courts of California have embraced

*Garcia*'s holding the Los Angeles Sheriff's department lacked capacity to be sued because it "is not a

separate legal entity."  *Garcia*, 588 F. Supp. at 707.

     Plaintiffs urge this Court to ignore *Laidlaw*'s plain holding because it pre-dates *Streit*.  Opp. at

7.  *Streit*, though, simply followed *Shaw* and did not independently address *Laidlaw*'s contrary

holding.  *Laidlaw* post-dates *Shaw*, when the Ninth Circuit first articulated its erroneous interpretation

of Government Code section 811.2.  This Court need not perpetuate *Streit*'s, *Karim-Panahi*'s, and

*Shaw*'s erroneous interpretation of California law.  Plaintiffs even acknowledge *Laidlaw* imposes an

"'independence' test" to determine whether a government entity has capacity to be sued.  Opp. at 8

n.3.[1]

     Regardless, post-*Streit* California authorities reinforce *Laidlaw* and provide further "'indication

that [the Ninth Circuit's] interpretation of California law was incorrect.'"  See *Streit*, 236 F.3d at 566

(quoting *Jones-Hamilton v. Beazer Materials & Srvs.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992)).

Plaintiffs' effort to distinguish *Lawson v. Superior Court*, 180 Cal. App. 4th 1372 (2010) is

disingenuous.  See Opp. at 7.  Exactly on point, the Court of Appeal in *Lawson* held Government Code

section 811.2 requires a "public entity" to be "an independent political or governmental entity."

---

[1]  Plaintiffs further argue they have satisfied *Laidlaw*'s "independence" test.  Opp. at 7-8.  Plaintiffs, though, misunderstand *Laidlaw*.  *Laidlaw*'s two-part independence test ascertained whether the local assessment committee qualified as a "beneficially interested" party under Code of Civil Procedure section 1086 for standing to pursue a writ of mandate.  *Laidlaw*, 44 Cal. App. 4th at 351-53.  The 1086 standing analysis demonstrated *a fortiori* the local assessment committee *also* lacked capacity to sue or be sued because it was not a "separate legal entity" under *Garcia* and Government code section 811.2.  *Id.* at 353 n.3.  In any event, like the local assessment committee in *Laidlaw*, San Francisco's municipal departments do not exercise the requisite "sovereign function of government" to satisfy section 1086's standing requirement.  As constituent elements of San Francisco's executive branch, the municipal departments report to the Mayor and serve at her pleasure.  They do not exercise "decisionmaking" authority, see *id.*  S.F. Charter §§ 4.100, 4.127, 4.128, 4.140.

*Lawson*, 180 Cal. App. 4th at 1396-97 (citing Law Revision Commission comments to Government Code section 811.2).

*Hagman v. Meyer Mount Corp.*, 215 Cal. App. 4th 82 (2013) further reinforces *Lawson*'s holding that section 811.2 requires a "public entity" to be "an independent political or governmental entity."  The question in *Hagman* was whether a nonprofit religious organization qualified as a public entity immune from adverse possession under Civil Code section 1007.  *Id.* at 85.  Section 1007 did not define "public entity."  Id at 88.  *Hagman* therefore relied on Government Code section 811.2 and *Lawson* and *Vallas v. City of Chula Vista* (1976) 56 Cal. App. 3d 382 to support its conclusion a "public entity" under Civil Code section 1007 must be "vested with some degree of sovereignty." *Hagman*'s reliance of *Vallas* further undermines *Shaw* and its federal progeny, because *Shaw* had rejected *Vallas*.  See *Shaw*, 788 F.2d at 604.  Rather than perpetuating the Ninth Circuit's reliance on *Peterson v. Long Beach*, 24 Cal.3d 238 (1979), the Court of Appeal in *Hagman* recognized *Peterson* was legislatively overruled.  215 Cal. App. 4th at 88.  Attempting to predict how California courts would construe section 811.2, *Shaw* had chosen *Peterson* over *Vallas*.  California courts, when later faced with the same choice, did the exact opposite.  Plaintiffs' attempt to distinguish *Hagman* ignores *Hagman*'s express reliance on Government Code 811.2 to support its holding that a "public entity" under Civil Code section 1007 must be "vested with some degree of sovereignty."

Finally, *Lejins v. City of Long Beach*, 72 Cal. App. 5th 303 (2021) confirms the continuing significance under California law that a municipal department is "not a legal entity separate from the City" that creates it.  *Id.* at 309.  In *Lejins*, the water department's status as a municipal agency established the propriety of naming the city as the sole defendant in an action challenging the water department's conduct.

California authority, including *Lejins*, *Hagman*, *Lawson*, and *Laidlaw*, demonstrates the Ninth Circuit's construction of section 811.2 in *Streit*, *Karim-Panahi*, and *Shaw* was erroneous.  California courts have made clear a "public entity" with capacity to be sued must be an independent legal entity exercising sovereign powers.  This Court should not further perpetuate *Shaw*'s erroneous construction of California's Government Code.  This Court is "bound to apply" the legal principles the Court of Appeal has repeatedly articulated in the "closely similar" cases of *Lejins*, *Hagman*, *Lawson*, and

*Laidlaw*, because the state rule departs from prior federal decisions in *Shaw* and its federal progeny. See *Poublon*, 846 F.3d at 1267.  For these reasons, this Court should dismiss the departmental defendants.

## II. The Intracorporate Conspiracy Doctrine Prohibits Plaintiffs' Thirteenth Cause of Action for Conspiracy.

The extent to which the intracorporate conspiracy doctrine applies to federal civil rights claims under 42 U.S.C. sections 1983-1988 is a federal question independent of the capacity to be sued under California Government Code section 811.2.  San Francisco therefore disagrees with plaintiffs' suggestion "all separately suable public agencies are capable of conspiring with one another."  See Opp.at 10, 13.  The viability of a federal conspiracy cause of action does not depend on state capacity laws.

Plaintiffs acknowledge the Ninth Circuit has yet to weigh in on the circuit split whether the intracorporate conspiracy doctrine precludes a federal civil rights conspiracy within a single legal entity.  Plaintiffs urge the minority view among the federal Circuits, which recognizes an exception to the intracorporate conspiracy doctrine where defendants' alleged coordinated conduct extends "over a significant period of time."  Opp.at 12.  To support the minority view, plaintiffs cite *Dickerson v. Alachua County Comm'n*, 200 F.3d 761 (11th Cir 2000), *Hartman v. Board of Trustees*, 4 F.3d 465 (7th Cir. 1993), *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985), and *Stathos v. Bowden*, 728 F.2d 15 (1st Cir. 1984).  Opp.at 12.

The Eleventh Circuit in *Dickerson* recognized the existence of the minority view applying the "significant period of time" exception, but the Eleventh Circuit did not adopt or apply the minority view.  *Dickerson*, 200 F.3d at 768-70.  The Seventh Circuit in *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492 (7th Cir. 1994), which post-dates the *Hartman* case on which plaintiffs rely, confirmed the Seventh Circuit "rejected the notion that corporate managers become conspirators because they engaged in more than one discriminatory or retaliatory act."  *Wright*, 40 F.3d at 1508. The Fourth Circuit in *Buschi* neither discusses nor adopts the "significant period of time" exception. *Buschi*, 775 F.2d at 1251-53.  Accordingly, neither *Dickerson*, *Hartman*, nor *Buschi* supports plaintiffs.  San Francisco in its opening brief acknowledged the First Circuit's skepticism of the

intracorporate conspiracy doctrine in civil rights cases, reflecting the minority view of the Circuit split. MPA at 9 (citing *Stathos*, 728 F.2d at 20-21.)

Recognizing the intracorporate conspiracy doctrine to prohibit plaintiffs' thirteenth cause of action for conspiracy will fully preserve the purposes and objectives of section 1983. Recognizing conspiracies for violations of section 1983 extends section 1983's reach to separate private entities who conspire with the government to violate a person's civil rights under color of law. E.g., *Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983). Allowing a section 1983 conspiracy claim to proceed against actors within a single entity does not enhance section 1983's substantive reach or the available remedies, regardless whether the alleged acts extended over a significant period of time. The exception plaintiffs propose for conduct extending over a significant period of time would be arbitrary, problematic to apply, and no substantive use to plaintiffs. For these reasons, the Court should adopt the majority rule, apply the intracorporate conspiracy doctrine, and dismiss plaintiffs' thirteenth cause of action.

**III.     The Individual Defendants Should be Dismissed.**

Plaintiffs do not contend their claims against Mayor Breed and Mr. Dodge in their official capacity are proper. See Opp. at 13. For the reasons set forth in San Francisco's opening brief, MPA at 8, the claims against Mayor Breed and Mr. Dodge in their official capacity are redundant and should be dismissed.

Plaintiffs request leave to amend their complaint to name Mayor Breed and Mr. Dodge as defendants in their individual capacities. Opp. at 13-14. To state a claim against Mayor Breed or Mr. Dodge in their individual capacities, plaintiffs must show "personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jones*, 297 F.3d at 937. As the

1  Supreme Court explained in *Iqbal¸* allegations that government officials "knew of, condoned, and

2  willfully and maliciously agreed to" an allegedly unlawful policy and were the "principal architect[s]"

3  of the policy were mere conclusions that were insufficient to state a claim.  556 U.S. at 680-81.

4       The factual allegations in plaintiffs' complaint are insufficient to state a claim against Mayor

5  Breed or Mr. Dodge in their individual capacities.  Plaintiffs allege Mayor Breed requested city

6  employees to respond to a man sleeping on a bench on Hayes Street, or to address an encampment on

7  Willow Street.  These allegations fail to establish the Mayor's personal involvement in any alleged

8  unconstitutional conduct.  See Complaint ¶53 & nn.22-23.  Plaintiffs have not alleged the Mayor

9  directed city employees to enforce city laws against the man on Hayes Street or the campers on

10  Willow Street without first offering a shelter bed, or to summarily destroy their personal property, in

11  violation of San Francisco's official policies.  Likewise, a viable claim against Mr. Dodge personally

12  would need to allege: (1) he personally orders encampment resolutions with the knowledge there are

13  inadequate shelter beds for those who accept shelter; and (2) he personally orders destruction of

14  campers' belongings that are neither abandoned nor contaminated.  See Complaint ¶¶ 54, 55, 133

15  n.118.  Further, in this action for declaratory and injunctive relief, no effective remedy is available

16  from Mayor Breed or Mr. Dodge in their personal capacities.  Any relief would only bind them

17  personally, not their successors.  For these reasons, leave to amend is proper only if plaintiffs proffer

18  additional facts with evidentiary support, and if they articulate the relief they seek against these

19  individuals.

20       **CONCLUSION**

21       For the foregoing reasons, and for the reasons stated in San Francisco's opening brief, this

22  Court should dismiss all claims against the departmental defendants and against the individual

23  defendants.  Maintaining these extraneous defendants provides no substantive benefit to plaintiffs, yet

24  unjustifiably increases the burden of written discovery and distracts high-ranking government officials

25  from their public duties.  In addition, the Court should dismiss the thirteenth cause of action for

26  conspiracy against all defendants.  Leave to amend should be conditioned on plaintiffs' proffer of facts

27  to demonstrate their proposed amendment would not be futile.

28

Dated:  November 28, 2022

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
Deputy City Attorneys


By:   s/James M. Emery
       JAMES M. EMERY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT; MAYOR LONDON BREED; SAM
DODGE