1   LATHAM & WATKINS LLP
    Alfred C. Pfeiffer, Jr., SBN 120965
2   505 Montgomery Street, Ste 2000
    San Francisco, CA 94111
3   Telephone: (415) 391-0600
    al.pfeiffer@lw.com
4
    LAWYERS' COMMITTEE FOR CIVIL
5   RIGHTS OF THE SAN FRANCISCO BAY AREA
    Zal K. Shroff, MJP 804620, *pro hac vice*
6   131 Steuart Street, Ste. 400
    San Francisco, CA 94105
7   Telephone: (415) 543-9444
    zshroff@lccrsf.org
8
    ACLU FOUNDATION OF NORTHERN
9   CALIFORNIA
    John Thomas H. Do, SBN 285075
10  39 Drumm Street
    San Francisco, CA 94111
11  Telephone: (415) 293-6333
    jdo@aclunc.org
12
    *Attorneys for Plaintiffs*
13
14  *Additional Counsel Appear on Signature Page*

15              **UNITED STATES DISTRICT COURT**

16             **NORTHERN DISTRICT OF CALIFORNIA**

17                    **OAKLAND DIVISION**

18  COALITION ON HOMELESSNESS, et al.,        CASE NO. 4:22-cv-05502-DMR

19                        Plaintiffs,          **PLAINTIFFS' REPLY IN SUPPORT OF
                                               PLAINTIFFS' MOTION FOR
20           v.                                PRELIMINARY INJUNCTION**

21  CITY AND COUNTY OF SAN FRANCISCO,          **Judge:**       The Hon. Donna M. Ryu
    et al.,
22                                             **Hearing Date:** December 22, 2022
                          Defendants.          **Time:**        1:00 p.m.
23                                             **Place:**       Courtroom 4 – 3rd Floor
                                                                1301 Clay Street
24                                                              Oakland, CA 94612
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF UNCONTROVERTED FACTS ..............................................1

    A.     Defendants Fail to Rebut Plaintiffs' Factual Assertions Regarding
          Criminal Enforcement Without Shelter Offers. .......................................1

    B.     Defendants Present No Evidence Rebutting the Conclusion that the City
          Indiscriminately Destroys Unhoused People's Belongings. ....................3

    C.     Defendants Recount Their Written Policies Without Addressing Plaintiffs'
          Detailed Evidence Showing City Policies Are Rarely Followed...........................3

    D.     Defendants' Conduct Continues to Irreparably Harm Plaintiffs After the
          Preliminary Injunction Motion Was Filed. ...............................................5

III.   PLAINTIFFS' EVIDENCE IS NEITHER STALE NOR INADMISSABLE...................5

    A.     Plaintiffs' Declarations Are Not Stale as Defendants Have Shown No
          Change in Conduct or Circumstances. ......................................................5

    B.     Hearsay is No Basis to Exclude Relevant Evidence on Preliminary
          Injunction, and Plaintiffs' Declarants Offer Direct Observations. ..........6

    C.     Defendants' *Ad Hominem* Attack of the City's Ex-Employee is Meritless.............7

    D.     Dr. Herring's Expert Report Is Supported by the City's Own Records...................7

IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
      LEGAL ARGUMENTS........................................................................................9

    A.     Plaintiffs Demonstrate Defendants' Persistent Custom and Practice Of
          Unlawful Conduct Sufficient to Establish Municipal Liability Under
          *Monell*. ......................................................................................................10

    B.     Defendants Violate the Eighth Amendment Under Any Proper Reading of
          *Martin v. Boise*..........................................................................................11

    C.     Defendants' Indiscriminate Property Destruction Violates the Fourth
          Amendment—Whether or Not Unhoused Individuals Are Provided
          Notice........................................................................................................13

V.     THE REMAINING INJUNCTIVE RELIEF FACTORS WEIGH HEAVILY IN
      PLAINTIFFS' FAVOR ......................................................................................14

VI.    CONCLUSION...................................................................................................15

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

i

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Reverse Mortgage Solutions, Inc.*,
No. 16-cv-01411, 2016 WL 9175875 (N.D. Cal. Aug. 18, 2016) ............................................7

*Benda v. Grand Lodge of IAM*,
584 F.2d 308 (9th Cir. 1978) ...........................................................................................10

*Calvary Chapel Dayton Valley v. Sisolak*,
140 S. Ct. 2603 (2020) (J. Alito, dissenting) ......................................................................6

*Ginger R. v. Kijakazi*,
No. 20-cv-02524, 2022 WL 2713352 (S.D. Cal. July 13, 2022) ..........................................6

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022) ...........................................................................................11

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ..........................................................................................6

*Lavan v. City of Los Angeles*,
693 F.3d 1022 (9th Cir. 2012) ........................................................................................15

*Lawman v. City & County of San Francisco*,
159 F. Supp. 3d 1130 (N.D. Cal. 2016) ...........................................................................10

*Lo v. Cnty. of Siskiyou*,
558 F. Supp. 3d 850 (E.D. Cal. 2021)..............................................................................15

*Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) ......................................................................................11, 12

*Meggitt (San Juan Capistrano), Inc. v. Yongzhong*,
No. 13-cv-00239, 2013 WL 12120067 (C.D. Cal. Sept. 26, 2013) ....................................10

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ......................................................................................14, 15

*Miralle v. City of Oakland*,
No. 18-cv-06823, 2018 WL 6199929 (N.D. Cal. Nov. 28, 2018) ..................................13, 14

*Navarro v. Block*,
72 F.3d 712 (9th Cir. 1995) ...........................................................................................10

*Petrosyan v. Ali*,
No. 09-cv-00593, 2013 WL 5466572 (E.D. Cal. Sept. 30, 2013) ........................................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

*Redman v. County of San Diego,*
   942 F.2d 1435 (9th Cir. 1991) ........................................................................................10

*RG Abrams Insurance v. Law Offices of C.R. Abrams,*
   No. 21-cv-00194, 2022 WL 16641829 (C.D. Cal. Nov. 2, 2022) ...........................................7

*Rodriguez v. County of Los Angeles,*
   891 F.3d 776 (9th Cir. 2018) ........................................................................................11

*Shipp v. Schaaf,*
   379 F. Supp. 3d 1033 (N.D. Cal. 2019) ......................................................................12, 14

*Spark Industries, LLC v. Kretek International, Inc.,*
   No. 14-cv-05726, 2014 WL 4365736 (C.D. Cal. Aug. 28, 2014) ............................................7

*Stewart v. City and County of San Francisco,*
   No. 22-cv-01108, 2022 WL 2720734 (N.D. Cal. June 22, 2022)...........................................10

*Sullivan v. City of Berkeley,*
   383 F. Supp. 3d 976 (N.D. Cal. 2019) ...........................................................................14

*United States v. Dozier,*
   844 F.2d 701 (9th Cir. 1988) ..........................................................................................6

*University of Texas v. Camenisch,*
   451 U.S. 390 (1981)....................................................................................................10

*Warren v. City of Chico,*
   No. 21-cv-00640, 2021 WL 2894648 (E.D. Cal. July 8, 2021)............................................11

**STATUTES**

S.F. Police Code § 169(d)...................................................................................................2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1  **I.      INTRODUCTION**

2          Claims that San Francisco aspires to make progress to correct its own homelessness and

3  affordable housing failures do not absolve the City of responsibility for its flagrant and ongoing

4  violations of the Constitution.  Defendants tout their written and stated policies and offer bland,

5  generalized statements about adhering to them, but they do not rebut Plaintiffs' abundant contrary

6  evidence as to the City' unconstitutional *conduct*.  Rather than addressing the reality of the City's

7  rampant misconduct, Defendants baselessly reject Plaintiffs' *dozens* of supporting declarations and

8  years of underlying data while continuing to terrorize unhoused communities with impunity.

9  Defendants also concede or ignore the bulk of Plaintiffs' legal arguments under *Martin v. Boise*.

10  Even under Defendants' incorrect, myopic reading of *Martin*, the facts still demonstrate the City's

11  failure to meet its constitutional obligations.  Defendants lament that Plaintiffs' motion for relief

12  calls for an end to enforcement of all laws necessary for San Francisco to promote safe and clean

13  streets.  But that assertion is disingenuous.  Far from constitutionally enforcing legitimate safety

14  laws—which are not at issue here—Defendants continue to subject hundreds of unhoused San

15  Francisco residents to criminal enforcement and property destruction for the involuntary status of

16  being unhoused—in clear violation of their Eighth and Fourth Amendment rights.  Plaintiffs need

17  this Court's intervention to safeguard their constitutional rights and prevent Defendants from

18  irreparably harming them while this action is pending.

19  **II.     STATEMENT OF UNCONTROVERTED FACTS**

20          **A.      Defendants Fail to Rebut Plaintiffs' Factual Assertions Regarding Criminal
                Enforcement Without Shelter Offers.**

21

22          Defendants provide no evidence to disprove that San Francisco has insufficient shelter and

23  housing for all its unhoused residents and is at least thousands of temporary shelter beds short.

24  *Compare* Mot. at 3:1-4:10, *with* Opp'n at 2-4.  At this moment, the City maintains insufficient

25  shelter availability for the entirety of its unsheltered population—which the City estimates to be at

26  least 4,397 people.  Della-Piana Decl., Ex. 7 at 19.  Defendants do not dispute that shelters are

27  generally at capacity and that the most recent waitlist was 1000-person plus long.  *See* Mot. at 4

28  n.2; *see generally* Opp'n at 2-4.  That waitlist is now closed, and people can no longer meaningfully

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1   refer themselves to a shelter or even wait in line for one.  Mot. at 4:11-14.[1]

2          Defendants do not respond to the extensive public records that show the City has threatened

3   unhoused individuals with criminal enforcement and has cited or arrested unhoused San Francisco

4   residents purely for sleeping or lodging in public *thousands of times* over the past several years—

5   both at HSOC encampment resolutions and when SFPD is dispatched independently to respond to

6   homelessness complaints.  *Compare* Mot. at 9:24-10:27 (recounting extensive SFPD enforcement

7   operations), *with* Opp'n at 9:1-6 (acknowledging SFPD's practice of enforcing ordinances against

8   unhoused people for sitting, lodging, or sleeping in public).  Defendants also do not address

9   Plaintiffs' evidence that when SFPD is dispatched independently, officers make no effort to offer

10  shelter and are not accompanied by the HOT team.  Mot. at 8:22-9:23; Cutler Decl. ¶¶ 24-26.

11         Likewise, Defendants admit that the City routinely sets out to remove unhoused individuals

12  and their property even when the City knows it does not have enough shelter beds available to

13  offer to every individual targeted for enforcement that day, which violates San Francisco's own

14  City ordinances.  *Compare* Opp'n at 17:6-7 ("HSOC has learned that 40% of clients at an

15  encampment resolution accept offers of shelter, and has made the rational decision to proceed

16  accordingly"), *with* S.F. Police Code § 169(d) (the City is required to "offer Housing or Shelter *to*

17  *all residents of the Encampment who are present*" and "shall not enforce the prohibition . . . unless

18  there is available Housing or Shelter for the person or persons in the Encampment.") (emphasis

19  added).  The City admittedly does not know what shelter beds will be available—if any—at the

20  start of an encampment resolution.  *Compare* Mot. at 6:16-24, *with* Opp'n at 6:18-19.  Defendants'

21  own declarants concede that there are often not enough shelter resources at a given encampment

22  to place all individuals who actively want shelter.  *See, e.g.*, Nakanishi Decl. ¶ 11 (describing how

23  "due to resources or shelter options *not* being available at the time of a resolution," the HOT team

24  has to follow-up with unhoused individuals afterwards) (emphasis added).

25

26  [1] Current daily shelter availability records Defendants provided reveal that on any given day there
are as few as 10 shelter beds available across all of San Francisco for an unsheltered population of
more than 4,000 individuals.  *See, e.g.*, Shroff Decl. Ex. 16 at 136, 172, 192, 196.  Defendants'
27  opposition touts that 1,000 individuals were placed in temporary shelter in 2021.  Opp'n at 3:7-9;
see also Dkt. No. 45-17.  But that statistic, if accurate, ignores that shelters are at capacity almost
28  every day while thousands of San Franciscans are forced to live unsheltered.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

**B.      Defendants Present No Evidence Rebutting the Conclusion that the City Indiscriminately Destroys Unhoused People's Belongings.**

Defendants do not cite any authority beyond their own policy to support the claim that "DPW stores and discards items left behind pursuant to its policy and procedure." Opp'n at 7, *citing* Dilworth Decl. ¶¶ 4-8 (DPW supervisor stating the general "Public Works" policy). Even Defendants' bag and tag policy authorizes DPW staff to throw away tents and other bulky items in violation of the Fourth Amendment. *See* Mot. at 23:4-7, 23:26-28. On the other hand, dozens of Plaintiffs' declarations contain detailed and itemized lists of property Defendants seized and destroyed and never returned—which were valuable personal property, not trash nor intermingled with hazardous material, and not abandoned—in violation of the City's stated policies. *See* Mot. at 6:25-7:23, 12:8-25, 14:10-15:28. Defendants have not even attempted to explain why they destroy unhoused individuals' personal items such as laptops, medical devices, medications, family photos and other similar personal and survival belongings. *See* Mot. at 14:10-15:7.

**C.      Defendants Recount Their Written Policies Without Addressing Plaintiffs' Detailed Evidence Showing City Policies Are Rarely Followed.**

Plaintiffs' motion relies on aggregated public data over the past three years and declarations from thirty-one percipient witnesses who have witnessed *hundreds* of sweeps. All this evidence demonstrates that Defendants regularly criminalize unhoused people for involuntary homelessness and destroy their personal belongings—in direct violation of Defendants' own stated policies. *See* Mot. at 9:24-15:28 (expert review of San Francisco's data and the experiences of twenty-five unhoused individuals, five volunteers, and a former City staff member document dozens of episodes of unlawful criminal enforcement and property destruction).

Defendants' opposition relies on the declarations of City officials that restate San Francisco's written policies and assert that the City complies with those policies, without presenting any evidence rebutting direct observations to the contrary. *See* Opp'n at 4:20-9:11, *citing* Crist Decl. ¶¶ 3-4, 6 (SFPD Lieutenant describing SFPD's written policies); Cohen Decl. ¶¶ 2, 4-19 (HSH communications director touting HSH statistics unrelated to whether shelter offers are made before criminal enforcement); Dilworth Decl. ¶¶ 4-8 (DPW supervisor providing a

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

general explanation of "Public Works" procedures but nowhere indicating that he is typically present during DPW cleaning operations); Hardiman Decl. ¶¶ 2-5 (SFFD Commander describing his role leading encampment resolutions but not any specific circumstances at encampment resolutions); Horky Decl. ¶¶ 7-13 (DPH worker describing goals of public health work generally); Mazza Decl. ¶¶ 5-7 (describing HOT team practices without discussing availability of shelter beds at encampment resolutions or whether shelter offers are made prior to criminal enforcement). Plaintiffs do not dispute that Defendants have accurately recounted their own policies. The reality is that these policies are regularly ignored. *See* Mot. at 11:13-14:9; *supra* at II.A.

Only three of Defendants' supporting declarations even purport to address San Francisco's actual practices at HSOC encampment resolutions. But these brief, generalized statements without further support do not rebut Plaintiffs' detailed factual collection. Notably, Defendants submit declarations from two HOT team workers that take care *not* to suggest that all unhoused individuals will get shelter at an encampment resolution before being forced to move. Nakanishi Decl. ¶¶ 4-7, 11 (noting that shelter often cannot be provided "due to resources or shelter options not being available at the time of a resolution" and that requests might only be accommodated "based on need and availability"); Piastunovich Decl. ¶¶ 4-8 ("*[d]epending on the allocation of placements received that day*, we work . . . to place clients in suitable shelter") (emphasis added).

Further, Sam Dodge's declaration as the Director of HSOC largely reports only on his general understanding of the timeline for HSOC sweep operations. Dodge Decl. ¶¶ 7-10, 12-21. Mr. Dodge's only response to Plaintiffs' evidence of criminal enforcement absent shelter—including analysis of years of data and the direct observations of dozens of witnesses—is a single assertion that "[i]f adequate sheltering alternatives are not available, clients are not asked to relocate." Dodge Decl. ¶ 18. But Mr. Dodge does not substantiate that statement or account for the substantial contrary evidence presented by Plaintiffs. Thus, Defendants do not meaningfully rebut the detailed factual allegations in Plaintiffs' motion regarding systematic criminal enforcement absent shelter. Mot. at 9:24-12:7, 14:10-15:28.[2]

---

[2] The few instances from Plaintiffs' declarations that Defendants highlight do not demonstrate that the City offers shelter to unhoused individuals before enforcement. *See* Opp'n at 11:16-25. Mr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

**D.** **Defendants' Conduct Continues to Irreparably Harm Plaintiffs After the Preliminary Injunction Motion Was Filed.**

Defendants continue to engage in routine criminalization of involuntary homelessness and destruction of unhoused individuals' survival belongings—undeterred by Coalition volunteers who have been monitoring Defendants' sweep operations pursuant to Court-ordered notice.  *See* Verner-Crist Decl. ¶¶ 7-29; James Supp. Decl. ¶¶ 3-15; Evans Supp. Decl. ¶¶ 4-24; Friedenbach Supp. Decl. ¶¶ 3-6; *see also* Castaño Supp. Decl. ¶¶ 3-9; Reasor Decl. ¶¶ 3-12; Cobb Decl. ¶¶ 2-12; Williams Decl. ¶¶ 4-9.  Plaintiffs' counsel is also aware of additional planned sweep operations the City conducted without any notice to Plaintiffs' counsel, despite the Court's Order—resulting in serious and irreparable harm to the unhoused individuals present.  *See* Shroff Decl. Ex. 18.[3]

## III.   PLAINTIFFS' EVIDENCE IS NEITHER STALE NOR INADMISSABLE

As described above, Defendants do not meaningfully rebut *any* factual assertions made by Plaintiffs' declarants.  To no avail, Defendants instead resort to raising broad unfounded objections to Plaintiffs' witness declarations that have nothing to do with their substance.

**A.** **Plaintiffs' Declarations Are Not Stale as Defendants Have Shown No Change in Conduct or Circumstances.**

Defendants argue that this Court should decline to consider all evidence of Defendants' extensive and ongoing unconstitutional response to homelessness prior to 2022—suggesting that any evidence that is "more than a year old" must be considered "stale."  Opp'n at 15:9-21.  In

---

Frank says he was never offered shelter on January 26, 2022, and Defendants do not contend that he was offered shelter.  Frank Decl. ¶ 12 [2-16].  Mr. Dubose was spared criminal enforcement only after intervention by the Coalition on Homelessness.  Dubose Decl. ¶ 9 [4-18].  The other declarants clearly explain that the City's shelter offer to them on *one occasion* came under threat of property destruction—itself an unconstitutional practice—while noting that generally the City never offered them shelter at all despite constant displacement through sweep operations.  *See* Cronk Decl. ¶¶ 9-10 [2-9]; Donohoe Decl. ¶¶ 9-10 [2-13]; Sandoval Decl. ¶ 8 [2-22].

[3] In addition to not providing notice of planned sweep operations, Defendants have continued to stall in producing the SFPD reports that would aid Plaintiffs' counsel in effectively monitoring SFPD's interactions with unhoused individuals—both in scheduled HSOC sweeps and at more informal occasions.  *See* Shroff Decl. Ex. 18.  Plaintiffs' counsel has repeatedly requested additional information necessary to make the records intelligible and complete.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1     doing so, Defendants point to substantial evidence regarding Defendants' conduct *this year*. *Id*.[4]

2     Regardless, Defendants provide no explanation for this arbitrary rule.

3         The fact that Plaintiffs have documented a multi-year pattern of unconstitutional practices

4     from at least 2018 through 2022 is certainly no basis to disregard sworn declarations. Indeed, "the

5     mere lapse of substantial amounts of time is not controlling in a question of staleness." *United*

6     *States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). Rather, to "render an opinion stale, subsequent

7     evidence must be contradictory—or at least inconsistent—with the earlier opinion in some material

8     manner." *Ginger R. v. Kijakazi*, No. 20-cv-02524, 2022 WL 2713352, at *7 (S.D. Cal. July 13,

9     2022) (internal quotations omitted). Here, the exact opposite is true. Defendants have not argued

10    that they changed any of their relevant policies or conduct in 2022. In their opposition, Defendants

11    pride themselves on practices that have been in place from 2018 through 2022 that they defend as

12    constitutional. Opp'n at 1-4. Defendants have therefore failed to identify any intervening changes

13    in 2022 that could justify a determination that Plaintiffs' evidence is "stale."[5]

14        Defendants' sole argument for limiting relevant evidence on the motion to 2022 is a hollow

15    reference to the "shifting impact of Covid-19"—without further explanation. Opp'n at 15:11-13.

16    The COVID-19 pandemic does not excuse Defendants from their constitutional obligations—let

17    alone justify the exclusion of relevant and probative evidence. *See Calvary Chapel Dayton Valley*

18    *v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (J. Alito, dissenting) ("public health emergency does not

19    give . . . public officials *carte blanche* to disregard the Constitution").

20       **B.**      **Hearsay is No Basis to Exclude Relevant Evidence on Preliminary Injunction,**
21               **and Plaintiffs' Declarants Offer Direct Observations.**

22        Defendants suggest that Plaintiffs' witness declarations are "riddled with inadmissible

23    hearsay." Opp'n at 16:4-12. This argument has no merit. Hearsay and other evidence that may

24    be inadmissible at trial can support a preliminary injunction. *Johnson v. Couturier*, 572 F.3d 1067,

25

26   [4] *See also* Donohoe Decl.; Cronk Decl.; Martinez Decl.; Sandoval Decl.; Murdock Decl.; Solomon
27   Decl. (noting unconstitutional conduct as recent as weeks before this litigation was filed). This
    evidence alone sufficiently supports Plaintiffs' motion.

28   [5] Newly available evidence gathered from 2022 also confirms the same aggregate trends regarding
    San Francisco's criminalization and property destruction. *See* Herring Supp. Decl. ¶¶ 8-33.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1083 (9th Cir. 2009); *Anderson v. Reverse Mortg. Sols., Inc.*, No. 16-cv-01411, 2016 WL 9175875, at *1 (N.D. Cal. Aug. 18, 2016).  Regardless, dozens of unhoused individuals who have had their property destroyed and been under threat of citation and arrest—and witnesses to those and similar experiences—speak directly from their own personal observations, which is not hearsay.  *See* Mot. at 14-15 (summarizing thirty-one detailed declarations documenting property destruction and enforcement without services, based on direct observations and experience).[6]

**C.**    **Defendants' *Ad Hominem* Attack of the City's Ex-Employee is Meritless.**

Defendants also seek to discredit the direct observations of Mr. Bennett—a former City employee and HOT team supervisor charged with making shelter offers to unhoused individuals— on the sole basis that he is an allegedly disgruntled employee.  Opp'n at 15 n.5.  This *personal* attack does not address the substance of Mr. Bennett's statements.  Given the opportunity to rebut Mr. Bennett's specific testimony, Defendants declined to do so.  *See Spark Indus., LLC v. Kretek Intern., Inc.*, No. 14-cv-05726, 2014 WL 4365736, at *11 n.9 (C.D. Cal. Aug. 28, 2014) (rejecting defendant's assertion that "disgruntled, former [] employees" were unreliable when defendants did not "rebut[] the claims made by the disgruntled employees") (internal quotations omitted).  The content of Mr. Bennett's declaration is also further corroborated by statements of other former employees of the City.  *See* Marshall Decl. ¶¶ 11-23, 30-34; Malone Decl. ¶¶ 5-15.

**D.**    **Dr. Herring's Expert Report Is Supported by the City's Own Records.**

Defendants offer a superficial and defective critique of Dr. Herring's expert opinions.  They argue that Dr. Herring's conclusions "lack a factual basis."  Opp'n at 16:17-18:4.  But they ignore that Dr. Herring's conclusions relied on analysis of hundreds of pages of the City's own records, including the City's HSOC encampment resolution schedules and reports, DPW bag and tag logs,

---

[6] Defendants also claim, with no support, that declarations by Coalition staff and volunteers are "vague and conclusory."  Opp'n at 16:15-16; *see RG Abrams Ins. v. Law Offs. of C.R. Abrams*, No. 21-cv-00194, 2022 WL 16641829, at *7 (C.D. Cal. Nov. 2, 2022) ("Defendants fail to explain what matter within any of the declarations is vague.").  But Plaintiffs' declarations are detailed in documenting Defendants' misconduct.  *See generally* Mot. at 6-9, 14-15 (citing to detailed descriptions of City conduct at sweeps).  Defendants also vaguely assert that "characterizations of San Francisco's conduct" in the Friedenbach declaration are "improper opinion"—again without further explanation.  Opp'n at 16:13-15; *Petrosyan v. Ali*, No. 09-cv-00593, 2013 WL 5466572, at *5 (E.D. Cal. Sept. 30, 2013) (overruling improper opinion objection because Plaintiff "fail[ed] to explain the rationale behind his objections").  These objections are invalid.

7

SFPD citation and arrest logs, and HSH daily shelter bed availability. *See* Herring Decl. ¶ 20. His conclusions are further based on his prior experience working with the City and law enforcement, field research, and surveying hundreds of unhoused people in San Francisco. *Id.* ¶¶ 9-18.

**Opinion 1**. Dr. Herring's first opinion does not "conflate" aggregate shelter capacity with the offer of a bed for a specific encampment resolution. *See* Opp'n at 16:20-21. His opinion correctly observes *both* that the number of available shelter beds reported by the City is consistently less than the number of unhoused individuals in San Francisco, *and* that the City scarcely has any shelter beds available system-wide because of the shortage. Herring Decl. ¶¶ 24-35. He further points out that *no* beds are available to unhoused individual upon self-referral because the City's shelter waitlist is closed and there were one thousand people on the waitlist before it closed. *Id.* Defendants do not contest these conclusions. *See* Opp'n at 16:20-17:3.

**Opinion 2**. Defendants similarly do not challenge Dr. Herring's conclusion that HSOC planned and carried out encampment resolutions on days when there was a documented deficiency in shelter availability. *See generally* Opp'n at 16-17. In fact, they admit it. *Id.* at 17:6-7 ("HSOC has learned that 40% of clients at an encampment resolution accept offers of shelter, and has made the rational decision to proceed accordingly"). Defendants downplay this admission by asserting that "if HSOC's projection of shelter needs turns out to be insufficient on a particular day," Defendants' stated policy is to "shift gears" and stop the sweep operation. Opp'n at 17:8-12. However, voluminous accounts, eyewitness reports, and at least three former city employees demonstrate that, in practice, Defendants almost never follow this policy and continue to threaten individuals with citations and arrest and destroy property even in the absence of sufficient available shelter. *See* Mot. at 6-9, 14-15 (citing thirty-one declarations belying that Defendants' policy is actually followed). Defendants did not rebut the factual assertions underlying these declarations. *See supra* at II.A-C. Furthermore, Defendants do not challenge Dr. Herring's conclusion that institutional pressures and limited shelter availability can cause workers on the ground to fabricate compliance. *See* Herring Decl. ¶ 52; Marshall Decl. ¶¶ 14-23.

**Opinion 3**. Defendants take issue with Dr. Herring's decision not to specifically identify which of the approximately 3,000 arrests of unhoused individuals for lodging in public and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

refusing to obey a law enforcement order to "move along" pertained specifically to an HSOC sweep operation—even though Dr. Herring acknowledges that it is possible to do so. *See* Opp'n at 17:14-15. The point is irrelevant though, since criminal enforcement occurs both at HSOC resolutions and during daily SFPD actions without any pretense of offering shelter. Mot. at 6-9.[7]

**Opinion 4**. Defendants contend that Dr. Herring did not have a factual basis to conclude that DPW routinely fails to follow its bag and tag policies. But Dr. Herring analyzed the limited bag and tag logs provided by DPW and compared them to HSOC's encampment resolutions to reveal a dearth of bag and tag logs recorded during HSOC operations. *See* Herring Decl. ¶ 85 (concluding that no bag and tags were recorded during 89% of HSOC operations between January and February 2021). The lack of information in Defendants' own records, in conjunction with Dr. Herring's direct observations, field research, and published academic surveys of unhoused San Franciscans, provides a valid basis for Dr. Herring's conclusion that City employees confiscate and destroy unhoused individuals' belongings instead of bagging and tagging them.[8]

**Opinion 5**. Defendants do not challenge this opinion, merely claiming that it is "untethered to any unconstitutional standard." Opp'n at 17:27-18:4. But Dr. Herring does not purport to opine on the constitutionality of Defendants' practices. Dr. Herring simply explains how Defendants' practices have caused and will continue to cause harm to unhoused individuals. Defendants do not rebut these findings in any way.

## IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR LEGAL ARGUMENTS

Defendants' rebuttal of Plaintiffs' constitutional arguments fares no better—and in fact Defendants' authority reveals precisely why Plaintiffs are entitled to a preliminary injunction. To establish likelihood of success on the merits, Plaintiffs need only show that they have a fair chance

---

[7] Notwithstanding Defendants' baseless assertion that Dr. Herring's data analysis from 2018-2021 is stale (Opp'n at 17), SFPD provided Plaintiffs' counsel with citation and arrest data for 2022 after Plaintiffs' motion was filed. Shroff Decl. ¶ 14. Dr. Herring has confirmed that the more recent data shows the same enforcement trends. Herring Suppl. Decl. ¶¶ 18-23.

[8] Again notwithstanding that any claim of "stale" data is baseless, Dr. Herring's supplemental analysis of bag and tag data from 2022 reflects the same incongruity between San Francisco's enforcement actions and its bag and tag records. *See* Herring Supp. Decl. ¶¶ 8-33.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1  of success or present serious questions to require litigation, not conclusively prove their case or

2  show that they are more likely than not to prevail.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395

3  (1981); *Benda v. Grand Lodge of IAM*, 584 F.2d 308, 315 (9th Cir. 1978); *Stewart v. City and*

4  *Cnty. of San Francisco*, No. 22-cv-01108, 2022 WL 2720734, *4 (N.D. Cal. June 22, 2022).

5          **A.**      **Plaintiffs Demonstrate Defendants' Persistent Custom and Practice Of**
6                       **Unlawful Conduct Sufficient to Establish Municipal Liability Under *Monell*.**

7          Defendants assert that they cannot be held liable for their unconstitutional conduct because

8  the experiences of Plaintiffs' declarants "directly contravenes San Francisco's policies" or are "too

9  general" to establish municipal liability.  Opp'n at 2:2-3, 14:26.  But Defendants' actual conduct—

10  not mere lip service to their written policies—determines liability.  *See* Mot. at 23:24-24:3, *citing*

11  *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1445-46 (9th Cir. 1991) (holding Defendants liable

12  for "the routine failure (or claimed inability) to follow the general policy[, which] constitutes a

13  custom or policy which overrides, for *Monell* purposes, the general policy").  Plaintiffs' extensive

14  factual record in support of their motion for relief—including over thirty percipient witnesses with

15  direct knowledge of *hundreds* of sweeps, three former City workers from different agencies, an

16  expert review of Defendants' data, and San Francisco Superior Court opinions finding

17  constitutional violations—largely uncontroverted by Defendants—are more than sufficient to

18  establish municipal liability.  *See supra* at II.A-B; Mot. at 12:8-15:23; Herring Decl. ¶¶ 24-89;

19  Della-Piana Decl. Exs. 41-50; *see also*, *e.g.*, *Lawman v. City & Cnty. of San Francisco*, 159 F.

20  Supp. 3d 1130, 1144-45 (N.D. Cal. 2016) (finding 60 incidents over 5 years and former employee's

21  report sufficient to establish unconstitutional pattern despite written policy); *Meggitt (San Juan*

22  *Capistrano), Inc. v. Yongzhong*, No. 13-cv-00239, 2013 WL 12120067, at *4 (C.D. Cal. Sept. 26,

23  2013*)* (noting that plaintiffs' "uncontroverted version of the facts" supports a preliminary

24  injunction).  Nor can the sheer volume of these accounts be characterized as "random acts or

25  isolated events." *Cf. Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).[9]

26   

27  [9] Defendants vaguely assert that "San Francisco trains its employees on these policies and through
28  effective oversight ensures these policies are followed," and on that basis it should not be
  municipally liable absent "systemic training failures."  Opp'n at 2:9-11.  The assertion has no

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

**B.     Defendants Violate the Eighth Amendment Under Any Proper Reading of** ***Martin v. Boise.***

*Martin*'s central holding cannot be disputed: "so long as there is a greater number of homeless individuals in a jurisdiction than the number of available beds in shelters, the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying and sleeping in public." *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) (internal quotations omitted); *see, e.g*, *Warren v. City of Chico*, No. 21-cv-00640, 2021 WL 2894648, at *2 (E.D. Cal. July 8, 2021) ("this Circuit has previously held that ordinances such as this are not enforceable, unless there is *enough practically available shelter within the City for all unhoused individuals*" (emphasis added)).  The Ninth Circuit endorsed this holding again just days after Plaintiffs' motion was filed.  *See Johnson v. City of Grants Pass,* 50 F.4th 787, 795 (9th Cir. 2022) (citing "the formula established in *Martin*" and prohibiting punishment and criminal enforcement against the homeless for taking "rudimentary precautions to protect themselves from the elements").

Plaintiffs have established that Defendants flagrantly violate *Martin's* Eighth Amendment prohibitions in at least five ways.  Mot. at 17:13-22:19.  Defendants' opposition does not brook any genuine disagreement on the law.  Defendants do not rebut the fact that San Francisco is thousands of shelter beds short of its unhoused population.  The City's shelters are essentially at capacity on a daily basis and often there are as few as 10 shelter beds available for an unsheltered homeless population of 4,000.  *See supra* at II.A; Shroff Decl. Ex. 16 (showing shelter bed allocations since the filing of this case).  As to the few shelter beds available, Defendants fail to contest that unhoused individuals have no ability to voluntarily access them because the shelter waitlist is closed and no one is allowed to wait in line to receive shelter.  *See* Opp'n at 16:20-17:3; Herring Decl. ¶¶ 24-32.  In other words, San Francisco's thousands of unsheltered residents have no choice in the matter:  they are involuntarily homeless.  Defendants' own interpretation of *Martin* concedes as much—agreeing that shelter must be "realistically available" such that people can

---

supporting authority.  In fact, where municipal staff are repeatedly violating agency policies with impunity and without sufficient corrective action from supervisors, *Monell* liability is bolstered— not diminished.  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

"choose" to access it.  Opp'n at 10:19-22, *citing Martin*, 920 F.3d at 617 n.8.  In San Francisco, they cannot, which ends the Court's inquiry.

Nonetheless, Defendants admit to an enforcement model where the City supposedly withholds shelter beds so that it has just enough beds to offer everyone onsite at an encampment resolution as a way to enforce targeted displacement.  Opp'n at 4:25-5:2; *id.* at 16:21-22 (asserting that encampment resolutions are the "clear way to access shelter" in San Francisco); *see also* Marshall Decl. ¶¶ 10, 20-23, 29.   This enforcement-only approach also violates the Eighth Amendment.  Mot. at 19:13-20:4.  In any event, Defendants admit that they do not make written offers of shelter to every unhoused person at an encampment, violating San Francisco's own ordinance requiring written shelter offers for all individuals onsite 24-hours in advance. *See supra* II.A.  Defendants explain that they are only ever prepared to offer 40% of individuals shelter because only that many people really want it.  Opp'n at 17:6-7.  But Defendants cannot shirk their constitutional obligations to provide the homeless with the choice of shelter by simply assuming that a larger percentage of the unhoused would refuse an unmade offer of shelter.  Under *Martin*, this practice again can only be characterized as punishing the homeless on the "false premise" that they voluntarily chose to be homeless.  Such a contrived work-around also creates perverse incentives to fabricate shelter refusals to justify enforcement—and should not be credited.  Herring Decl. ¶ 52; Marshall Decl. ¶¶ 17-18, 36-37.

Defendants' opposition primarily relies on the bare assertion that San Francisco has a "policy of offering shelter before requiring any unhoused person to vacate public property."  Opp'n at 9:22-23.   But as described above, Defendants do not controvert Plaintiffs' evidence that unhoused individuals are threatened with citation and arrest and forcibly displaced from San Francisco streets without being offered shelter.  *See supra* II.A; *see also* Mot. at 8:8-19, 8:24-9:17.

Defendants' few references to cases other than *Martin* that predate *Johnson* lend them no support.  In *Shipp v. Schaaf*, the plaintiffs failed to show that any criminal enforcement occurred at encampment resolutions at all—thereby rendering the Eighth Amendment inapplicable.  379 F. Supp. 3d 1033, 1037 (N.D. Cal. 2019) ("Nothing . . . in the record suggests that the City intends to issue criminal sanctions").  Here, Defendants routinely issue "move-along" orders, citations,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

and arrests when conducting encampment resolutions and other displacement operations.  Mot. at 7:26-28; Herring Decl. ¶¶ 58-79; *see also* Castaño Decl. ¶¶ 17-18 [2-4]; Bryant Decl. ¶¶ 16-17, 23 [4-3].  This case is likewise distinguishable from *Miralle v. City of Oakland*, where the city actually committed to provide shelter to every member of a particular encampment prior to an encampment closure—which San Francisco routinely fails to do.  No. 18-cv-06823, 2018 WL 6199929, at *2 (N.D. Cal. Nov. 28, 2018).  Regardless, in *Miralle* there were no allegations that Oakland's broader shelter system lacked capacity or that it was law enforcement's daily practice to enforce criminal sanctions against dozens of unhoused individuals without first making genuine shelter offers.  In contrast, as Plaintiffs have shown, and Defendants do not rebut, there is "no safe harbor for unhoused individuals anywhere within the City."  *See* Mot. at 18:13.[10]

## C.    Defendants' Indiscriminate Property Destruction Violates the Fourth Amendment—Whether or Not Unhoused Individuals Are Provided Notice.

Defendants do not disagree with the basic tenet that the summary destruction of unhoused individuals' unabandoned personal property violates the Fourth Amendment and the City's own policies unless the property presents an obvious health and safety hazard.  Opp'n at 12:1-16, 13:20-28.  Defendants argue that those exceptions apply here—without support—notwithstanding Plaintiffs' detailed and voluminous evidence that Defendants engage in indiscriminate destruction of unhoused individuals' property even when it is demonstrably not trash or a safety hazard—and often over the direct objection and pleas of unhoused individuals.  *See* Mot. at 14:12-15:7 (documenting more than 30 such episodes of warrantless property destruction and providing an expert review of the City's data indicating extensive property destruction), 24:7-19 (noting that claims of abandoned or hazardous property are an insufficient defense to indiscriminate property destruction); *see also supra* II.B.; Malone Decl. ¶¶ 6, 10-15.

---

[10] Contrary to Defendants' contention, Plaintiffs' challenge does not target governmental conduct beyond the bounded holdings of *Martin* or *Johnson*.  *See* Opp'n at 10:11-15.  Plaintiffs do not seek in this action to compel the City to provide sufficient shelter to the homeless, nor do Plaintiffs deny the City's right to enforce laws prohibiting anyone from obstructing sidewalks or any other valid and lawful ordinance appropriately restricting the use of public property.  Plaintiffs' challenge is limited only to the unlawful enforcement of statutes that criminalize the involuntary status of being homeless.  *See* Dkt. No. 9-10 (Proposed Preliminary Injunction Order).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1   Because they cannot rebut the evidence of Fourth Amendment violations, Defendants

2   instead incorrectly argue that if they satisfy the notice requirements of the Fourteenth Amendment,

3   they can freely destroy unhoused people's survival belongings.   Opp'n at 12:17-13:19.   Yet

4   Defendants themselves cite cases that make clear that even where notice is provided, unhoused

5   individuals' property *must* be safeguarded and stored rather than summarily discarded.   *Sullivan*

6   *v. City of Berkeley*, 383 F. Supp. 3d 976, 980 (N.D. Cal. 2019) (noting that "unattended property

7   collected was stored for 14 or 90 days"); *Shipp*, 379 F. Supp. 3d at 1038 (removal acceptable when

8   property was stored for 90 days and notice "is posted at the encampment with information on how

9   to retrieve stored property"); *Miralle*, 2018 WL 6199929, at *3 (same).   Indeed, *Sullivan* only held

10   the destruction of property permissible in that case because "the record demonstrates . . . that the

11   property left behind . . . was wholly abandoned rather than temporarily unattended").   383 F. Supp.

12   3d at 985.   Plaintiffs demonstrate just the opposite took place here and therefore prior notice alone

13   does not justify Defendants' destruction of unhoused individuals' personal property.[11]

14   **V.     THE REMAINING INJUNCTIVE RELIEF FACTORS WEIGH HEAVILY IN
          PLAINTIFFS' FAVOR**

15

16   Defendants' opposition concedes that if Plaintiffs establish that they are likely to succeed

17   on their Fourth and Eighth Amendment Claims, irreparable harm is established.   *See* Opp'n at

18   18:6-7.   Indeed, "the deprivation of constitutional rights 'unquestionably constitutes irreparable

19   injury.'"   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).   Defendants also do not dispute

20   that when it comes to the civil rights of unhoused individuals, the balance of equities tips *sharply*

21   in their favor such that Plaintiffs may prevail on a preliminary injunction motion by demonstrating

22   even less than a likelihood of success on the merits.   *See* Mot. at 25:13-28.

---

23   [11] Even though the question of adequate notice under the Fourteenth Amendment is not before the

24   Court on this motion, Plaintiffs have presented ample evidence in this record to find that
     Defendants regularly fail to provide the kind of notice required by due process.  Castaño Decl. ¶

25   6, 11-12 [2-2]; Frank Decl. ¶¶ 5, 9 [2-15]; Martinez Decl. ¶ 9 [2-20]; Sandoval Decl. ¶¶ 3, 5 [2-
     21]; Bryant Decl. ¶¶ 5, 15, 21 [4-2]; Brown Decl. ¶ 11 [4-8]; Connick Decl. ¶¶ 3, 5 [4-11]; Dubose

26   Decl. ¶¶ 6, 9 [4-17]; Hill Decl. ¶ 10, 12, 14 [4-31]; Howard Decl. ¶¶ 4-6, 10-11, 15 [4-40]; Hurd
     Decl. ¶¶ 7, 11 [4-46]; Orona Decl. ¶¶ 9, 12 [4-57]; Partee Decl. ¶¶ 5, 9-10 [4-63]; Solis Decl. ¶¶

27   11, 13, 15 [4-69]; Solomon Decl. ¶¶ 4, 7, 9 [4-78]; Vetter Decl. ¶ 9, 12 [4-82]; Reasor Decl. ¶¶ 4,

28   9; Cobb Decl. ¶¶ 3, 9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

Instead, Defendants offer hollow assertions that San Francisco's policy choices and the City's need to promote public health and safety suggest that an injunction is against the public interest. *See Lavan v. City of Los Angeles*, 693 F.3d 1022, 1033 (9th Cir. 2012) (rejecting assertion that "the unattended property of homeless persons is uniquely beyond the reach of the Constitution" and noting that the case did not concern "constrain[ing] municipal governments from addressing . . . homelessness or . . . maintain[ing] public health and safety"). Plaintiffs do not challenge the lawful enforcement of *any* of a litany of laws promoting safe public right of access or protecting against road and sidewalk hazards. *See* Mot. at i:19-25 (identifying the specific ordinances to be enjoined); *Lo v. Cnty. of Siskiyou*, 558 F. Supp. 3d 850, 871-2 (E.D. Cal. 2021) (granting preliminary injunction when municipality has other tools to mitigate impacts on public health and safety). In fact, in many cases, Plaintiffs simply ask the Court to compel Defendants to follow their own policies. It is always in the public interest for the government to follow both its own policies and the Constitution. *Melendres*, 695 F.3d at 1002. That is precisely what Plaintiffs now request. Defendants simply fail to explain how criminal enforcement against unhoused individuals *purely because they are unhoused* legitimately supports the City's interest in promoting health and safety. *See* Opp'n at 18:12-18. The implication is that the mere presence of unhoused individuals is inherently contrary to the public interest. This is simply another example of Defendants unconstitutionally punishing the homeless for their involuntary status.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion for Preliminary Injunction.


Dated: December 1, 2022                           Respectfully submitted,


                                                  By: */s/ Alfred C. Pfeiffer, Jr.*

                                                  LATHAM & WATKINS LLP
                                                  Alfred C. Pfeiffer, Jr., SBN 120965
                                                  Wesley Tiu, SBN 336580
                                                  Kevin Wu, SBN 337101
                                                  Tulin Gurer, SBN 303077
                                                  505 Montgomery Street, Ste 2000
                                                  San Francisco, CA 94111

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1   Telephone: (415) 391-0600
al.pfeiffer@lw.com
2   wesley.tiu@lw.com
kevin.wu@lw.com
3   tulin.gurer@lw.com

4

5   LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
6   650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
7   Telephone: (714) 540-1235
joseph.lee@lw.com
8

9   LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
10   12670 High Bluff Drive
San Diego, CA 92130
11   Telephone: (858) 523-5400
rachel.mitchell@lw.com
12

13   By: */s/ Zal K. Shroff*

14

15   LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
16   Zal K. Shroff, MJP 804620, *pro hac vice*
Elisa Della-Piana, SBN 226462
17   131 Steuart Street, Ste. 400
San Francisco, CA 94105
18   Telephone: (415) 543-9444
zshroff@lccrsf.org
19   edellapiana@lccrsf.org

20

21   By: */s/ John Thomas H. Do*

22   ACLU FOUNDATION OF NORTHERN
CALIFORNIA
23   John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
24   39 Drumm Street
San Francisco, CA 94111
25   Telephone: (415) 293-6333
jdo@aclunc.org
26   bgreene@aclunc.org
27

28   *Attorneys for Plaintiffs*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Coalition on Homelessness, Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, Nathaniel Vaughn*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1

## __ATTESTATION__

2        I, Alfred C. Pfeiffer, Jr., am the ECF user whose user ID and password authorized the

3    filing of this document. Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document

4    have concurred in this filing.

5

6    Dated:  December 1, 2022                    */s/ Alfred C. Pfeiffer, Jr.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR