DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4628 (Emery)
              (415) 554-3857 (Wang)
Facsimile:    (415) 554-4699
E-mail:       jim.emery@sfcityatty.org
              edmund.wang@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; LONDON BREED, in her official capacity as Mayor; and SAM DODGE, in his official capacity as Director of the Healthy Streets Operation Center (HSOC),<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**SAN FRANCISCO'S OBJECTIONS TO EVIDENCE**<br><br>Hearing Date:  December 22, 2022<br>Time:          1:00 p.m.<br>Before:        Hon. Donna M. Ryu<br>Place:         Courtroom 4 – 3rd floor<br>               1301 Clay Street<br>               Oakland CA 94612<br><br>Trial Date:    None set.<br><br>Attachments:   Exhibit A |

# INTRODUCTION

Plaintiffs filed their preliminary injunction motion on September 27, 2022 after "dedicat[ing] the last three years" to assembling supporting evidence. Dkt #9, at 1. Presumably, Plaintiffs believed their evidence was sufficient for a preliminary injunction. Yet Plaintiffs now seek to supplement the record with additional evidence, much of which was available to Plaintiffs before they filed their motion. The Court should exclude Plaintiffs' reply evidence. In the alternative, the Court should continue the hearing and provide a reasonable date for San Francisco to submit responsive evidence.

# ARGUMENT

## I. The Court Should Exclude Additional Evidence on Reply.

Courts typically do not consider new evidence submitted on reply, because the opposing party has no opportunity to respond to it. E.g., *B. v. Morgan Hill Unified Sch. Dist.*, No. 21-CV-06611-VKD, 2022 WL 4371003, at *5 (N.D. Cal. Sept. 21, 2022) (attorney fee motion); *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1104 (N.D. Cal. 2017) (summary judgment); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 976 (N.D. Cal. 2006) (preliminary injunction).

Plaintiffs spent three years assembling evidence supporting their preliminary injunction. It is fundamentally unfair for plaintiffs to now supplement the record on reply with new evidence to which San Francisco has no opportunity to respond. Plaintiffs' reply papers included 10 percipient reply declarations, one supplemental expert declaration, and eight documentary exhibits. Dkt ##49-50. If plaintiffs believe the evidence they submitted with their original motion is insufficient, they should withdraw that motion and refile a new motion. In the alternative, the Court should continue the motion hearing and provide a reasonable date for San Francisco to submit responsive evidence.

If given the opportunity, San Francisco would establish that at each HSOC resolution identified in plaintiffs' reply declarations, HSOC engaged the individuals at the encampment, made multiple shelter placements, and for each HSOC resolution, the number of available shelter beds exceeded the number of individuals accepting offers of shelter. In other words, HSOC's shelter inventory each day exceeded the demand. See Attachment A.

Specifically in response to Ms. Evans's declaration, San Francisco would establish that on March 18, 2022, Mark Mazza took a phone call from Ms. Evans during which Ms. Evans requested a

couple's shelter space for the couple Ms. Evans describes in her reply declaration.  Mr. Mazza procured a couple's shelter space that day and informed Ms. Evans he was able to hold the couple's shelter space until 2 p.m., but the couple did not show up to accept the offered shelter space by 2 p.m., and San Francisco therefore reallocated the reserved couple's shelter space to other clients.  Mr. Mazza then daily sought an available couples shelter space for approximately five days, when he was able to secure another couple's spot in a Navigation Center for the couple Ms. Evans was advocating for, which they did take.  Mr. Mazza informed Ms. Evans of his daily efforts and the ultimately successful shelter placement.

Further, at the October 27 HSOC operation at Baker Street and Fell Street, four of the five individuals at the encampment were already sheltered.  And Mr. Castano accepted shelter from San Francisco on December 2, 2022.

This proffer demonstrates the unfairness of accepting plaintiffs' reply evidence without San Francisco having an opportunity to rebut or explain it.

**II.    The Court Should Exclude Evidence on Reply of Events Occurring Prior to September 28, 2022, When Plaintiffs Filed their Preliminary Injunction Motion.**

On reply, plaintiffs have submitted additional evidence of events occurring prior to September 28, 2022.  Ms. Evans describes events on March 14, 2022, March 18, 2022, and June 3, 2022.  Evans Reply Decl. (Dkt #50-1), ¶¶ 4-13.  The entirety of the Malone and Marshall declarations discuss events occurring long before plaintiffs commenced this action, since Ms. Malone retired from DPW in 2021, and Ms. Marshall terminated employment with HSH in August 2019.  See Malone Reply Decl. (Dkt #50-9) ¶ 2; Marshall Reply Decl. (Dkt #50-10) ¶ 1.  The bulk of Prof. Herring's reply declaration discusses data from Jan-Sept 2022.  Dkt #49.

There is no justification for plaintiffs to submit evidence now on reply that was available with reasonable diligence before plaintiffs commenced this action and before plaintiffs filed their preliminary injunction motion.  There is no justification for Ms. Evans's failure to describe the March 14, 2022, March 18, 2022, or June 3, 2022 events in her original declaration, filed September 28, 2022.  With reasonable diligence, during the three years they were preparing their motion, plaintiffs could have located Ms. Marshall and Ms. Malone, had they considered their testimony important to

1  consider on preliminary injunction. Data from 2022 would have been readily available to Dr. Herring through timely use of public record requests. Because of the obvious prejudice to San Francisco, the Court should disregard this late-submitted evidence.

**III.   The Court Should Exclude Stale Evidence of Events Occurring Prior to 2022.**

On reply, plaintiffs have submitted yet more stale evidence describing conditions that existed more than a year ago. Ms. Malone describes her observations "over several years" before she retired from DPW in 2021. Malone Reply Decl. (Dkt #50-9). And Ms. Marshall's observations all predate the termination of her employment with HSH in August 2019. Marshall Reply Decl. (Dkt #50-10).

Arguing this Court should consider their stale evidence, plaintiffs assert San Francisco made no relevant changes to its policies or practices since 2018. Ps' Reply(Dkt #48), at 6. But plaintiffs' assertion contradicts the evidence plaintiffs themselves submitted to support their preliminary injunction motion. Plaintiffs submitted a Policy Analysis Report from San Francisco's Budget and Legislative Analyst's Office, dated April 19, 2022. Della-Piana Decl., Exh. 14 (Dkt #9-7). The Report explains: "Over the first several years of HSOC operations, police officers were a highly visible and active presence when encampments were cleared and residents relocated." *Id.* The April 2022 Report continues:

> Over time HSOC began to respond less to calls received through 311 and to instead take a more pro-active approach to identifying encampments with the greatest needs for assistance. Higher needs were identified through regular counts of tents and inhabited vehicles by HSOC and identification of individuals residing in encampments who were frequent users of emergency medical and behavioral health services. HSOC also sought to increase the time encampment residents were given to relocate before encampments were cleared. While SFPD officers have continued to be present when residents are mandated to disperse, efforts have been made to de-emphasize the law enforcement nature of City policy towards homeless encampments, and to enhance service referrals and mental health and substance abuse outreach.

*Id.* HSOC has shifted its focus from 311 complaints to "locations where 6 or more tents and/or inhabited vehicles are present, and where there is evidence of problematic activities such as drug dealing or reports/incidents of violence." *Id.*

As described in this Policy Analysis Report that plaintiffs submitted and rely upon, San Francisco has improved its policies "over time" in significant ways that go to the heart of plaintiffs' allegations: San Francisco has de-emphasized its police presence at encampment resolutions, San

Francisco gives encampment residents more time to pack up, San Francisco focuses on high-need locations and has enhanced both services and outreach. Moreover, in response to the COVID-19 pandemic, San Francisco created its new shelter-in-place hotel program, safe sleep sites, and extended all shelter placements indefinitely. Cohen Decl. (Dkt #45-2) ¶¶ 18-19. In sum, plaintiffs' stale evidence is not probative of current conditions or practices.

**IV.     The Court Should Exclude Hearsay.**

Plaintiffs' evidence on reply continues to rely on hearsay, notwithstanding plaintiffs' assertion these declarations "document their direct observations." Shroff Reply Decl. (Dkt #50) ¶ 3. Hearsay in plaintiffs' reply declarations include: Evans Reply Decl. (Dkt #50-1), ¶¶ 4-6 ("I spoke with…"; "The individual reported…"); *Id.* ¶¶ 11-13 ("We learned that…"); *Id.* ¶¶ 22-24 ("two members of the public [ ] informed me…"); Williams Reply Decl. (Dkt #50-8), ¶ 8 ("When I came back, my tent was gone. I knew DPW had taken it, because there was nothing left….")

Defendants assert they may rely on hearsay to support their preliminary injunction motion. Ps' Reply (Dkt #48), at 6-7. It is true the trial court has discretion to give inadmissible hearsay some weight when necessary to serve the purpose of a preliminary injunction to avoid irreparable harm before trial. "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

In this case, however, plaintiffs "dedicated the last three years" to building their case and assembling the evidence supporting their preliminary injunction motion. Ps' MPA (Dkt #9), at 1. Without the exigency that surrounds a typical preliminary injunction motion, plaintiffs cannot justify their reliance on inadmissible hearsay in this case. Over three years, plaintiffs had every reasonable opportunity to collect admissible and reliable first-hand percipient testimony. In light of the circumstances of this motion, the Court should not consider plaintiffs' inadmissible hearsay.[1]

---

[1] If the Court nevertheless exercises its discretion to consider plaintiffs' hearsay declarations, the Court should give them little weight. See, e.g., *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017).

# CONCLUSION

For the foregoing reasons, the Court should exclude plaintiffs' reply evidence submitted to bolster their preliminary injunction motion.

Dated:  December 13, 2022

                              DAVID CHIU
                              City Attorney
                              YVONNE R. MERÉ
                              WAYNE SNODGRASS
                              MEREDITH B. OSBORN
                              JAMES M. EMERY
                              EDMUND T. WANG
                              Deputy City Attorneys


By: */s/ Edmund T. Wang*
     JAMES M. EMERY
     EDMUND T. WANG

     Attorneys for Defendants
     CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; MAYOR LONDON BREED; SAM DODGE