# EXHIBIT 1

2022 WL 17477009
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

LATOYLA YASHEEN COOPER-LEVY., et al., Plaintiffs,
v.
CITY OF MIAMI, Defendant.

Case No. 22-cv-21939-BLOOM/Otazo-Reyes
|
12/06/2022

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**ORDER ON MOTION TO DISMISS**

 **\*1** **THIS CAUSE** is before the Court upon Defendant City of Miami's ("City") Motion to Dismiss, ECF No. [16] (the "Motion"). Plaintiffs Latoyla Cooper-Levy ("Cooper-Levy"), Phillip Sylverin ("Sylverin"), Sherman Rivers ("Rivers"), and Joseph Simmons ("Simmons"), filed a Response, ECF No. [17], to which the City filed a Reply, ECF No. [22]. The Court has carefully reviewed the Motion, all supporting and opposing filings, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

This case arises as a result of the City's alleged violations of certain individuals' constitutional rights. Plaintiffs, all of whom are homeless individuals, filed their Complaint asserting two claims, pursuant to 42 U.SC. § 1983, for violating their Fourth and Fourteenth Amendment rights. *See generally* ECF No. [1]. Plaintiffs allege that the City engages in a practice and custom of unlawfully seizing and destroying personal property belonging to homeless individuals like Plaintiffs by conducting sweeps of homeless encampments with insufficient notice. *Id.*

This is not the first time the City of Miami has been sued for allegedly violating the Fourth Amendment rights of homeless individuals. In 1992, Michael A. Pottinger, as representative of a class of homeless persons, filed a lawsuit against the City of Miami under 42 U.S.C. § 1983, alleging that the City's police department had "a custom, practice and policy of arresting, harassing and otherwise interfering with homeless people for engaging in basic activities of daily life...in the public places where they are forced to live." *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1554 (S.D. Fla. 1992) ("*Pottinger I*"). The plaintiff in *Pottinger* sought to enjoin the City from arresting homeless individuals engaging in "life-sustaining conduct" in public spaces and from seizing or destroying their property in violation of the Fourth Amendment. *See id.* After the City and police were found to have violated the rights of homeless individuals, the parties ultimately reached a settlement and entered into a consent decree, which remained in effect from 1998 to 2019, and prohibited "the arrest of the homeless for being homeless and the seizure of their property." *Pottinger v. City of Miami*, 359 F. Supp. 3d 1177, 1179 (S.D. Fla. 2019) ("*Pottinger II*"). Three years ago, in *Pottinger II*, the district court granted the City's motion to terminate the consent decree, and the decision was affirmed by the Eleventh Circuit. *See id.*, *aff'd sub nom. Peery v. City of Miami*, 977 F.3d 1061 (11th Cir. 2020).

Against this backdrop, the Complaint alleges that in 2019, the City adopted Administrative Policy regarding the Treatment of Homeless Persons' Property (APM-1-19), which "establish[ed] a standard practice for the handling, temporary storage, and disposition of property belonging to homeless persons." ECF No. [1] at 17-21 ("Policy"). The Policy also requires City personnel to "attempt to secure personal items such as identification, medicines, and eyeglasses and other small items of importance...readily identifiable as intimate personal property." *Id.* at 18, section I.1. Even so, the Policy provides that homeless individuals' property may be disposed of by the City if the property is determined to be "contaminated" or otherwise poses a health or safety concern to City personnel or members of the public. *Id.*, section I.2.a.

 **\*2** According to the Complaint, in 2021, as a part of a continued effort to address homelessness in Miami, the City drafted a "Street Clean up and Encampment Resource Plan" in an attempt to facilitate the cleaning of homeless encampments by conducting ongoing "sweeps." ECF No. [1] ¶ 23. As Plaintiffs allege, City staff during these sweeps arrive at homeless encampments with dump trucks and instruct homeless individuals to move their belongings before the City removes and disposes of all remaining personal property at the encampment. *Id.* ¶ 31. Plaintiffs further allege that the City does not sort the personal property or attempt to secure important personal items before disposal. *Id.* ¶ 36.

According to the Complaint, the City conducted two such sweeps affecting Plaintiffs: the first occurring in May, 2021 at NW 17th Street and 7th Avenue; and the second in August, 2021 under the bridge on NW 11th Street between NW 5th Avenue and NW 3rd Avenue. *Id.* ¶¶ 45-46, 59, 61, 70, 82. Each of the four Plaintiffs alleges that during these incidents, the City disposed of personal property that was not abandoned or contaminated and failed to provide adequate notice of when and where the City's sweeps would occur. *Id.* ¶¶ 51, 66, 77, 87.

The incident in May, 2021 involved Cooper-Levy. The Complaint alleges that while away from the encampment attending a job orientation, the City removed and disposed of her "U.S. passport, birth certificate, Social Security card, identification, telephone, clothing, work uniform, shoes, sleeping tent, and an urn containing her mother's ashes." *Id.* ¶ 52. Cooper-Levy alleges that her personal property, was not abandoned, contaminated, and did not pose a health hazard or safety issue. *Id.* ¶ 51. According to the Complaint, upon her return to the encampment, Cooper-Levy discovered a notice left by the City under a brick which contained information about how to retrieve stored property. *Id.* ¶ 54. However, upon following the instructions on the notice, City staff told Cooper-Levy that they did not have any of her belongings. *Id.* ¶ 55. The City made no attempt to save items that belonged to her, made no attempt to determine if her property was contaminated or contained dangerous items, and made no offer to store her property. Instead, the City irrevocably seized and destroyed her property. *Id.* ¶ 56.

The second incident alleged involves Simmons, Sylverin, and Rivers. Plaintiffs allege that the City arrived to conduct a sweep on or about the morning of August 2. *Id.* ¶ 61. According to the Complaint, City personnel arrived at the encampment around 9:00 a.m. with a crane and dump truck, giving those present a few minutes to move their property before disposal. *Id.* ¶ 62. Sylverin alleges that the City disposed of his property that was not abandoned or contaminated, including his tent,[1] identification, furniture, and family photos. *Id.* ¶ 64. Rivers and Simmons similarly allege that the City disposed of their personal property that was not abandoned or contaminated, including tents, identification documents, prescription medication, new clothing, a bike, toiletries, and sixty dollars in change. *Id.* ¶ 76.

As a result, Plaintiffs seek damages, injunctive, and declaratory relief. In the Motion, the City requests dismissal of the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil of Procedure.

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

**\*3** When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III. DISCUSSION

In the Motion, the City urges the Court to take judicial notice of the procedure and relevant facts in the *Pottinger* litigation. The City argues that the allegations in the Complaint are insufficient to state a claim for municipal liability, that Plaintiffs lack standing for declaratory and injunctive relief, and that declaratory and injunctive relief is improper. The Court considers each argument in turn.

### A. Relevance of *Pottinger* Litigation

As a preliminary matter, the Court considers the significance of *Pottinger* since the parties devote a significant amount of the briefing to it. The City argues that the Court should take judicial notice of facts arising out of the *Pottinger* litigation. Plaintiffs respond that *Pottinger* was factually different from the allegations contained in Plaintiffs' Complaint, and

therefore *Pottinger* is not relevant other than to provide context. The Court agrees.

Significantly, both parties agree that, irrespective of *Pottinger*, homeless individuals remain entitled to "seek relief in an individual action" under § 1983 to vindicate violations of their constitutional rights. *Peery*, 977 F.3d at 1072. In addition, neither party is claiming that *Pottinger* is controlling; rather the City argues that the Court should take judicial notice of facts noted by the *Pottinger* court that it deems to be relevant. However, as Plaintiffs correctly point out, the Complaint is premised upon conduct occurring after the termination of the *Pottinger* consent decree and its attendant litigation. Even if the Court were to grant the City's request and take judicial notice of the *Pottinger* facts, *Pottinger* is not binding or particularly helpful in resolving the issues raised in the Motion. Accordingly, the Court turns to the merits of the Motion.

**B. Municipal Liability Under Section 1983**
In order to state a claim under 42 U.S.C. § 1983, a plaintiff must plead that he was (1) deprived of a right; (2) secured by the Constitution or laws of the United States; and (3) that the alleged deprivation was committed under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001). In addition, a plaintiff that seeks to establish liability against a municipality must show that the deprivation of his federal right was attributable to the enforcement of a municipal custom or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

Importantly, a municipality is not liable under § 1983 on the basis of *respondeat superior*. *See Monell*, 436 U.S. at 691; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."). Instead, as explained by the Supreme Court, a municipality is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. This requires that "a plaintiff seeking to impose liability on a municipality under § 1983...identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 403.

**\*4** Indeed, "the requirement of a municipal policy or custom constitutes an essential element of a § 1983 claim that a plaintiff must prove in order to establish municipal liability." *Buckner*, 116 F.3d at 453; *see Flowers v. Patrick*, 869 F. Supp. 2d 1331, 1334-35 (M.D. Ala. 2012) ("a plaintiff's complaint against a municipality [must] 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " (quoting *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010))). A policy or custom "can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and 'so permanent and well settled as to constitute a custom or use with the force of law.' " *Flowers*, 869 F. Supp. 2d at 1334-35 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

**i. Plaintiff's Custom or Practice Claim**
The City argues that Plaintiffs fail to plead sufficient facts of a widespread custom or practice necessary to establish municipal liability. Specifically, the City contends that the incidents alleged involving Cooper-Levy's property in May, 2021 and the property owned by Simmons, Rivers, and Sylverin in August, 2021 are insufficient to constitute a custom or practice. The City argues that four instances, three of which happened at the same clean-up location and date, are insufficient to be characterized as "widespread" or "persistent" in order to plausibly plead municipal liability. Plaintiffs respond that the incidents alleged are sufficient. The Court agrees with Plaintiffs.

Plaintiffs rely on *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016) in support of their argument. In *Hoefling*, the plaintiff asserted claims for violations of his Fourth and Fourteenth Amendment rights against the City after City's marine patrol officers seized his sailboat, on which he lived, and destroyed it. In determining that his claims were adequately pleaded, the Eleventh Circuit noted that

> [i]n addition to what he pled concerning the seizure and destruction of his own sailboat, Mr. Hoefling also alleged the following. First, on August 20, 2010, while out of town, Mr. Hoefling received a call from a friend "notifying him that the police were taking boats." And, in fact, on his return, he discovered that his own sailboat had been "unlawfully seized." Second, Mr. Hoefling alleged that "local mariners" told him, and that he was "independently aware, that others have fallen victim to similar conduct as a result of the City['s] and [the marine patrol officers'] failure to adhere to law and appropriate procedures regarding

the investigation and destruction of potentially derelict vessels." Third, Mr. Hoefling alleged that the City refers to this "systematic roundup and destruction of ugly boats in its waters" as a "cleanup" program. Based on these allegations, Mr. Hoefling alleged that the City had a "policy, custom, and/or practice" of "failing to abide by" the state laws, regulations, and procedures governing the "investigation and ...removal of derelict vessels located in state waters." Furthermore, he alleged that the defendants did "not follow established law and procedures intended to safeguard against the unlawful destruction of private property[,]...instead choosing to remove and destroy [his] property without due process. In sum, the City and its marine patrol officers, "as a matter of policy, custom, and/or practice, ignored [his] fundamental rights, as well as the fundamental rights of other vessel owners."

811 F.3d at 1280. The Eleventh Circuit determined that these allegations were not the sort of "naked allegations" which are insufficient to state a plausible claim for relief because the facts alleged permitted "the reasonable inference that [the City] is liable for the misconduct alleged." *Id.* at 1281. The City does not acknowledge or address *Hoefling* in either its Motion or Reply. Moreover, upon review, the cases the City relies upon to support its argument for dismissal are procedurally distinguishable and not helpful to the Court's analysis at this juncture. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (affirming summary judgment finding facts insufficient to establish widespread abuse on the part of county jail); *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1277-78 (11th Cir. 2000) (affirming entry of summary judgment in favor of school board because evidence was insufficient to create a genuine issue of fact as to "a pervasive and well-settled custom"); *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998) (setting aside judgment following jury verdict because plaintiff presented no evidence to establish municipal policy or custom); *Adams v. Custer*, No. 14-CV-80403-CIV-HURLEY, 2016 WL 155081, at *19 (S.D. Fla. Jan. 12, 2016) (finding upon summary judgment that evidence presented was insufficient to sustain a custom or practice claim); *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming summary judgment in favor of City of Orlando based upon the plaintiff's inability to show that previous incidents were substantially similar factually to his case); *Brooks v. Sheib*, 813 F.2d 1191, 1193-94 (11th Cir. 1987) (finding on appeal following jury verdict that evidence was insufficient to establish that deficient procedures were sufficient to establish municipal liability); *McDowell v. Brown*, 392 F.3d 1283, 1290-91 (11th Cir. 2004) (affirming determination upon summary judgment that evidence was insufficient to establish custom or policy).

**\*5** The only case at the dismissal stage relied upon by the City, *Lordeus v. Miami-Dade County*, 263 F. Supp. 3d 1307 (S.D. Fla. 2017), is also distinguishable. In *Lordeus*, the plaintiff alleged that police officers kicked him and yelled expletives at him during an arrest while he was handcuffed, and as a result, claimed § 1983 violations for excessive force against the county and the officers. 263 F. Supp. 3d at 1309. In concluding that his excessive force claim was insufficiently pleaded, the court noted that the plaintiff alleged in conclusory fashion only that the county "had a policy, custom or practice of allowing its police officers to use excessive force and was on notice of the propensity for excessive force and failed to properly investigate complaints." *Id.* at 1311. In contrast, Plaintiffs here allege four instances on two separate occasions during which the City seized and destroyed their personal property without providing adequate notice or an opportunity for the owners to recovery their property.[2] Although the City seeks to narrow the Complaint's allegations in arguing that they are insufficient to meet the requirement that a custom or practice be persistent and widespread, the Court finds the allegations to be sufficient. The specific sweeps alleged are separated in time by several months and they occurred at different geographical locations.

In addition, the Complaint alleges the City's practice and explains how that practice differs from the City's Policy. The Complaint describes how the City fails to sort or secure specific items and makes no attempt to determine whether unattended property belongs to a homeless individual. ECF No. [1] ¶¶ 36-37). The City's Policy, which is attached to the Complaint, requires City staff to complete a form and attempt to notify the owner when it stores property belonging to the homeless individual. *Id*. at 18, section I.1. Plaintiffs allege that between January 1, 2021 and April 2022, City staff completed only two inventory invoices and made just one attempt to notify someone that the City was holding their property while cleanup operations were taking place two or three times per week, giving rise to the reasonable inference that homeless individuals' due process rights to notice are not being observed. *Id*. ¶ 41. Plaintiffs allege further context to support the inference that there is a persistent and widespread practice that differs from the City's Policy by describing the City's plan to clear homeless encampments through sweeps. *Id*. ¶¶ 22-23.

The Complaint also sufficiently alleges that the City fails to provide adequate notice of sweeps, the City fails to sort or secure specific items, and fails to determine whether unattended property belongs to a particular homeless individual. *Id*. ¶ 33; ¶¶ 36-37. Each of the Plaintiffs allege he received no notice of an impending sweep occurring at the locations detailed in the Complaint. Plaintiffs also allege that they each had a clearly established possessory interest in his personal property, and that property was contained in their tents at the time of disposal. The City, as Plaintiffs allege, makes no effort to sort through the property (even if it is not abandoned or contaminated) and secure items such as identification, medicines, or other items identified by the homeless person or readily identifiable as vital or significant personal property. Plaintiffs allege that vital documents, including birth certificates, social security cards, public benefits cards, medication, and an urn containing Cooper-Levy's mother's ashes, were all destroyed with no attempt by City officials to adhere to the Policy. *See id*. ¶¶ 52, 64, 76, 84. Plaintiffs further allege that their property was not abandoned or contaminated. *Id*. ¶¶ 51, 66, 77, 87. And although the City argues that these allegations are merely conclusory, the Court disagrees. At the pleading stage, the Court accepts the allegations that Plaintiffs' property was not abandoned or contaminated. Moreover, whether or not the property was in fact abandoned or contaminated is an issue of fact, and is not appropriately resolved at the dismissal stage.

### C. Claims for Injunctive and Declaratory Relief

**\*6** Defendant argues next that Plaintiffs lack standing to seek claims for injunctive and declaratory relief because Plaintiffs have not sufficiently alleged a substantial likelihood of future injury, and declaratory and injunctive relief are inappropriate for past conduct. Plaintiffs respond that the Complaint sufficiently alleges an entitlement to injunctive and declaratory relief.

#### i. Standing

The City argues that Plaintiffs have not alleged more than a speculative threat of future injury, noting that they have not identified any violation since August, 2021 or harms of a continuing nature. However, to accept the City's contention, the Court would have to read the Complaint too narrowly and impose a heightened pleading standard that, as the Court previously notes, simply does not apply in this case. *See supra* at 10 n.2.

Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Similarly, injuries sustained from "past conduct" will not support a claim for declaratory relief absent a showing "that such conduct has continued or will be repeated in the future." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985); *see also Regency of Palm Beach, Inc. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at \*4 (S.D. Fla. 2009); *Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010) ("The Declaratory Judgment Act is inappropriate to adjudicate past conduct.").

As alleged, Plaintiffs are homeless individuals, and the reasonable inference to be drawn from the Complaint is that they continue to be exposed to the City's practice of conducting sweeps, and improperly depriving them of their personal property without notice. While the City attempts to characterize the alleged threat of future injury as a mere "fear" that the Plaintiffs' property will again be unconstitutionally seized and destroyed, the fear is more than speculative. Accepting the allegations as true, the challenged actions are a result of the City's custom or policy and Plaintiffs are involuntary members of a specific group subject to that custom or policy. As a result, Plaintiffs "cannot avoid exposure to [Defendant's] challenged conduct" and the alleged practice "presents a substantial likelihood that the alleged injury will occur." *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1338 (11th Cir. 1994) (noting that plaintiffs "are homeless involuntarily," and concluding that because of the "involuntary nature of their condition, the plaintiffs cannot avoid future exposure to the challenged course of conduct" (internal quotations omitted)). Moreover, it is reasonable to infer from the allegations that Plaintiffs will continue to be exposed to the City's cleanup sweeps of homeless encampments, such that the threat of future injury is more than "conjectural, hypothetical, or contingent" *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1347 (11th Cir. 1999).

#### ii. Suitability of Injunctive and Declaratory Relief

The City also argues that injunctive and declaratory relief are improper here. With respect to injunctive relief, the City contends that Plaintiffs cannot make the necessary showing because they allege prior injuries, their claimed anticipated injuries are not actual or imminent, and the requests for

injunctive relief and monetary damages are inconsistent as pleaded. Plaintiffs respond that the Complaint sufficiently alleges future injuries, and the availability of other remedies does not render the request for injunctive relief inconsistent with their request for damages.

***7** The City relies on *Lary v. Trinity Physician Financial and Insurance Services*, 780 F.3d 1101 (11th Cir. 2015) and *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) in support of it argument. However, both cases are procedurally and factually distinguishable, and does not support the outcome the City urges. In *Lary*, the plaintiff asserted violations of the Telephone Consumer Protection Act against the defendants, seeking statutory damages and a permanent injunction. 780 F.3d at 1104. The defendants did not defend the case and instead informed the court that they would accept a default judgment. *Id*. Under those circumstances, the Eleventh Circuit determined that the district court did not err in declining the request for a permanent injunction, because the plaintiff did not establish either a likelihood of future injury or the inadequacy of the legal remedy. *Id*. Here, there is no default, and § 1983 does not provide statutory damages. In *Swain*, the plaintiffs were a group of medically vulnerable inmates who sued the County and director of the correctional department for violating their constitutional rights for their inadequate response to the COVID-19 outbreak. 961 F.3d at 1280. Upon a motion for preliminary injunction, the district court enjoined the defendants to take precautionary measures to halt the spread of COVID and provide regular status reports. *Id*. On appeal, the Eleventh Circuit reversed the preliminary injunction, finding that the plaintiffs' showing as to their Fourteenth Amendment claim did not support a finding of deliberate indifference. *Id*. at 1289. Importantly, however, Plaintiffs here have not requested a preliminary injunction, and although the City invites the Court to engage in an analysis of the merits of an injunction, it would be improper to do so. As the Court previously explained, Plaintiffs sufficiently allege a threat of future harm, and Plaintiffs need do no more at this juncture for their claim for relief to stand. Plaintiffs are not required to prove their claims at the dismissal stage.

Regarding Plaintiffs' request for declaratory relief, the City argues that such relief is improper based upon the Complaint's allegations that seek a "[d]eclaratory judgment that Defendant's policies, practices and conduct *violated* Plaintiffs rights...." ECF No. [1] at 14 (emphasis added). Thus, the City contends that Plaintiffs improperly seek declaratory relief for past conduct only. Plaintiffs respond that the allegations in the Complaint support a continuing practice and conduct by the City, violating Plaintiffs' rights under the Fourth and Fourteenth Amendment, and supports their request for declaratory relief. Upon review, the Court agrees with Plaintiffs. Even though the request for relief contains the word "violated" instead of "violates," the Complaint alleges facts of a real and continuing dispute. *See Malowney*, 193 F.3d at 1347 ("The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.") (citation omitted). Thus, the Court will not dismiss the request under the circumstances.

**IV. CONCLUSION**

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, **ECF No. [16]**, is **DENIED**. The City shall file its Answer **no later than December 16, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 6, 2022.

**BETH BLOOM**

**UNITED STATES DISTRICT JUDGE**
Copies to:

Counsel of Record

**All Citations**

Slip Copy, 2022 WL 17477009

---

Footnotes

1 Sylverin further alleges that his pet cat was inside the tent when a crane was used to load it into the dump truck, presumably killing it. ECF No. [1] ¶ 64.

2 Rivers and Simmons also allege that the City improperly seized and destroyed their property on other additional occasions. *Id.* ¶¶ 79, 89. The City contends that these allegations are conclusory because the Complaint does not provide

dates, locations, or other details about what was destroyed, or how Plaintiffs know the City was ultimately responsible. However, it is well-settled that there is no heightened pleading standard in § 1983 case. *See Hoefling*, 811 F.3d at 1276 (acknowledging that the Eleventh Circuit has "got[ten] rid of heightened pleading altogether in § 1983 cases.").

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.