DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4628 (Emery)
              (415) 554-3857 (Wang)
Facsimile:    (415) 554-4699
E-mail:       jim.emery@sfcityatty.org
              edmund.wang@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; LONDON BREED, in her official capacity as Mayor; and SAM DODGE, in his official capacity as Director of the Healthy Streets Operation Center (HSOC),<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**ADMINISTRATIVE MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION ORDER, AND IN THE ALTERNATIVE FOR EXPEDITED BRIEFING**<br><br>Hearing Date:   N/A<br>Time:           N/A<br>Place:          Hon. Donna M. Ryu<br><br>Trial Date:     None set. |

## INTRODUCTION

San Francisco[1] finds itself in an untenable situation.  The City expends extraordinary efforts to reach and provide services and shelter to persons experiencing homelessness.  Now, two separate federal court orders impose potentially conflicting obligations on San Francisco.  In its December 23, 2022 Order, Dkt #65 ("the Order"), this Court restricted enforcement of sit/lie/sleep laws against the "involuntarily homeless."  By contrast, the stipulated federal injunction in *Hastings College of the Law v. City & County of San Francisco*, N.D. Cal. Case No. 4:20-cv-03033-JST, Dkt #71, mandates enhanced enforcement in the Tenderloin against individuals who have refused shelter offers, to prevent re-encampment.  Emery Decln., filed herewith, Exh. A §2 ("the *Hastings* Injunction").  If a person who refuses an adequate shelter offer is still "involuntarily homeless" within the meaning of the Order, then it is impossible for San Francisco to comply with both injunctions.

Plaintiffs maintain all unsheltered people experiencing homelessness (4,397 persons according to the 2022 Point-in-Time Count) are "involuntarily homeless" under the Order, regardless of whether they have received an adequate shelter offer, and therefore the City may not enforce sit/lie/sleep laws against any unhoused person anywhere in San Francisco.  But *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022), and *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) establish a person is not "involuntarily homeless" if the person has been offered adequate temporary shelter.  These cases require an individualized determination, allowing enforcement if a person has refused an adequate shelter offer.  San Francisco's interpretation of the Order follows controlling Ninth Circuit precedent, harmonizes San Francisco's obligations with the *Hastings* Injunction, recognizes the Eighth Amendment's role in protecting individual rights, and avoids unwarranted economic burdens, years of delay, and practical difficulties in verifying compliance.

For these reasons, set forth more fully below, San Francisco brings this motion for clarification under Local Civil Rules 6-3 and 7-11 asking this Court to clarify that a particular individual is not "involuntarily homeless" where San Francisco has offered that individual adequate temporary shelter.  In the alternative, should the Court wish amplified briefing on this question, San Francisco asks for an expedited briefing and hearing schedule for this motion for clarification.

---

[1] This motion refers to defendants collectively as "San Francisco" and/or the "City."

## BACKGROUND

The Order prohibits San Francisco from threatening to enforce sit/lie/sleep laws against "involuntarily homeless individuals," so long as the number of homeless people exceeds the number of available shelter beds.

> Defendants are preliminarily enjoined from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, the following laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property:
>
> • California Penal Code section 647(e)
> • California Penal Code section 370
> • California Penal Code section 372
> • San Francisco Police Code section 168
> • San Francisco Police Code section 169
>
> This preliminary injunction shall remain effective as long as there are more homeless individuals in San Francisco than there are shelter beds available.

Order at 50. The Order also requires San Francisco to comply with its bag and tag policy.

On May 4, 2020, Hastings Law School, business owners in the Tenderloin neighborhood, workers, and residents sued San Francisco, asserting the City's policies allowed proliferation of homeless encampments in the Tenderloin, violating the plaintiffs' constitutional and statutory rights. *Hastings*, Complaint, filed May 4, 2020, Dkt #1. As part of the settlement, San Francisco consented to a stipulated injunction, which the Court entered June 30, 2020. The *Hastings* Injunction requires San Francisco to resolve encampments and prevent re-encampments by individuals who decline shelter offers in the Tenderloin.

> The City agrees that it shall cause seventy percent (70%) of the number of tents as counted on June 5, 2020 to be removed along with all other encamping materials and related personal property, and their occupants relocated to a hotel room, safe sleeping site, off-street sites, or other placement by July 20, 2020. The City will take action to prevent re-encampment. After July 20, 2020, the City will make all reasonable efforts to achieve the shared goal of permanently reducing the number of tents, along with all other encamping materials and related personal property, to zero.

*Hastings* Injunction §2. Further, "[t]he City is hopeful that most people offered an alternative location will be willing to accept it, but *if necessary to comply with this stipulated injunction the City will employ enforcement measures for those who do not accept an offer of shelter or safe sleeping sites to prevent re-encampment*." *Id*. (emphasis supplied). The *Hastings* Injunction remains in force.

At a December 29 telephonic meet and confer session, Plaintiffs' counsel confirmed their interpretation that the Order prohibits all enforcement of sit/lie/sleep laws until San Francisco's available shelter beds exceed the total number of unsheltered homeless. San Francisco's counsel explained Ninth Circuit precedent does not support Plaintiffs' interpretation, and Plaintiffs' interpretation would conflict with San Francisco's obligations under the *Hastings* Injunction. Emery Decl., ¶ 2. San Francisco submits this motion to clarify its obligations under the Order and resolve the parties' conflicting interpretations.

## ARGUMENT

### I. San Francisco Cannot Comply with Its Court-Ordered Obligations Without Clarification.

As described above, the *Hastings* Injunction requires San Francisco to enforce sit/lie/sleep laws against individuals in the Tenderloin who refuse shelter offers. See *Hastings* Injunction § 2. If Plaintiffs' interpretation prevails, then the *Hastings* Injunction and the Order impose conflicting obligations on San Francisco. Simply put, one order would prevent San Francisco from enforcing sit/lie/sleeping laws "as long as there are more homeless individuals in San Francisco than there are shelter beds available," while the other mandates "enforcement measures for those who do not accept an offer of shelter or safe sleeping sites." The only way for San Francisco to comply with its obligations is for this Court to clarify the Order's definition of "involuntarily homeless."

### II. A Particular Individual is not "Involuntarily Homeless" if the Individual Refuses an Offer of Adequate Shelter.

The Ninth Circuit in *Martin* and *Johnson* defined "involuntarily homeless" as a person who lacks access to "adequate temporary shelter."

> Persons are involuntarily homeless if they do not "have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free."

*Johnson*, 50 F.4th at 793 n.2 (9th Cir. 2022) (quoting *Martin*, 920 F.3d at 617 n.8 (9th Cir. 2019); citations omitted). The Ninth Circuit specified *Martin* does not apply to individuals who have access to adequate temporary shelter, "but who choose not to use it." *Martin*, 920 F.3d at 617 n.8. Thus, whether a person is "involuntarily homeless" requires San Francisco to make individualized determinations when it attempts to resolve encampments. As the Ninth Circuit explained, "concerns regarding individualized determinations are best made when the City attempts to enforce its

ordinances. If it is determined at the enforcement stage that a homeless individual has access to shelter, then they do not benefit from the injunction and may be cited or prosecuted under the anti-camping ordinances." *Id.* at 805 n.23 (citation omitted). "A person with access to temporary shelter is not involuntarily homeless unless and until they no longer have access to shelter." *Id.* at 805 n.24.

A recent order from the federal District Court in Phoenix likewise recognizes the need for individualized determinations to assess whether a person is "involuntarily" homeless. Because "the unsheltered outnumber available beds," the court required the City of Phoenix to "inquir[e] as to whether individuals can practically obtain shelter" before enforcing Phoenix's camping and sleeping bans. *Fund for Empowerment v. City of Phoenix*, Case No. CV-22-02041-PHX-GMS (D. Ariz. Dec. 16, 2022), Slip Op., at 15. Plaintiffs submitted the *Phoenix* Order to the Court. See Dkt #57-1.

The requirement for individualized determinations follows necessarily here because the Eighth Amendment protects only individual rights. The Eighth Amendment provides a "constitutional guarantee[ ] of individual rights." *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974). Compliance with the Eighth Amendment must hinge on whether the *individual* has access to adequate shelter. But Plaintiffs' expansive definition of "involuntarily homeless" would mean San Francisco's compliance with one person's Eighth Amendment right would depend on availability of shelter beds for all other unhoused persons in the City, regardless of their interest or willingness to occupy those beds. Plaintiffs' interpretation would transform an individual Eighth Amendment right into a collective right.

San Francisco briefed and argued a narrower interpretation of *Martin* and *Johnson*. Yet, the Court did not decide whether San Francisco's "reading of *Martin* and *Johnson* is correct," because the Court determined Plaintiffs had shown a likelihood of success under either party's interpretation of the controlling Ninth Circuit case law. See Order at 41. San Francisco now needs this question answered so it may assure it complies with both the Order and the *Hastings* Injunction. It strains reality and reason to require that San Francisco have shelter for *all* persons experiencing homelessness in San Francisco before San Francisco may enforce sit/lie/sleep laws against any person, even after that individual has refused adequate shelter and even when San Francisco has sufficient shelter beds for all unhoused persons in a particular encampment. If this were the legal threshold, it would take years to

build the requisite shelter beds and cost City taxpayers at least $1.45 billion *more* than San Francisco has already appropriated for homeless services. Emery Decl., Exh. B at 17-18. It could sadly result in unused shelter beds going empty every night, to the extent individuals refuse shelter offers. Also, this interpretation could disrupt the housing first policies that San Francisco has previously championed, leaving the City with the difficult choice of prioritizing shelter over more permanent housing in order to comply with this Court's Order. And compliance would be uncertain and unverifiable, since a reliable real-time count of homeless individuals in a jurisdiction is not possible to maintain. E.g., *Johnson*, 50 F.4th at 796 n.7 ("PIT counts [performed only biennially] routinely undercount homeless persons").

### III.  Alternative Request for Expedited Briefing.

If the Court determines San Francisco's motion for clarification is not amenable to an administrative motion under Local Civil Rule 7-11, then San Francisco requests in the alternative an order shortening time and imposing page limits. San Francisco proposes Plaintiffs serve and file an opposition brief not exceeding five pages on or before January 9, 2023; and San Francisco file its Reply not exceeding two pages on January 10. Under this proposed schedule, this motion for clarification will be fully briefed in advance of the January 12, 2023 case management conference.

### CONCLUSION

For these reasons, San Francisco asks this Court to clarify that an individual is not "involuntarily homeless," within the meaning of the Order, if San Francisco makes an adequate, individual shelter offer.

Dated:  January 3, 2023

                DAVID CHIU
                City Attorney
                YVONNE R. MERÉ
                WAYNE SNODGRASS
                MEREDITH B. OSBORN
                JAMES M. EMERY
                EDMUND T. WANG
                Deputy City Attorneys

                By: /s/*James M. Emery*
                      JAMES M. EMERY

                Attorneys for Defendants
                CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; MAYOR LONDON BREED; SAM DODGE