LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

ACLU FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs*

*Additional Counsel Below*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., | CASE NO. 4:22-cv-05502-DMR |
| Plaintiffs. | **PLAINTIFFS' ADMINISTRATIVE MOTION FOR STATUS CONFERENCE ON PRELIMINARY INJUNCTION NONCOMPLIANCE AND NEED FOR MONITORING** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et. al., | |
| Defendants. | |

1  LATHAM & WATKINS LLP
   Wesley Tiu, SBN 336580
2  Kevin Wu, SBN 337101
   Tulin Gurer, SBN 303077
3  505 Montgomery Street, Ste 2000
4  San Francisco, CA 94111
   Telephone: (415) 391-0600
5  wesley.tiu@lw.com
   kevin.wu@lw.com
6  tulin.gurer@lw.com

7
   LATHAM & WATKINS LLP
8  Joseph H. Lee, SBN 248046
   650 Town Center Drive, 20th Floor
9  Costa Mesa, CA 92626
   Telephone: (714) 540-1235
10 joseph.lee@lw.com

11
   LATHAM & WATKINS LLP
12 Rachel Mitchell, SBN 344204
   12670 High Bluff Drive
13 San Diego, CA 92130
   Telephone: (858) 523-5400
14 rachel.mitchell@lw.com

15
   LAWYERS' COMMITTEE FOR CIVIL
16 RIGHTS OF THE SAN FRANCISCO BAY AREA
   Elisa Della-Piana, SBN 226462
17 131 Steuart Street, Ste. 400
   San Francisco, CA 94105
18 Telephone: (510) 847-3001
19 edellapiana@lccrsf.org

20 ACLU FOUNDATION OF NORTHERN CALIFORNIA
   Brandon L. Greene, SBN 293783
21 39 Drumm Street
   San Francisco, CA 94111
22 Telephone: (415) 293-6333
23 bgreene@aclunc.org

24

25

26

27

28

PLS' ADMIN. MOT. FOR STATUS CONFERENCE ON PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1

## I.     Introduction

2        San Francisco's unhoused residents are currently at great risk from the atmospheric river

3 pummeling Northern California. Yet Defendants continue to sweep encampments in violation of

4 this Court's injunction. Plaintiffs seek to address Defendants' noncompliance with the Preliminary

5 Injunction and the urgent need for monitoring at the January 12, 2023 status conference or at the

6 Court's earliest convenience.[1]

7

## II.     History and Likelihood of Noncompliance

8        On December 23, 2023, the Court enjoined Defendants "from enforcing or threatening to

9 enforce" enumerated "laws and ordinances to prohibit involuntarily homeless individuals from

10 sitting, lying, or sleeping on public property" and from violating Defendants' "bag and tag policy."

11 Order, Dkt. # 65, at 50. Despite this, Plaintiffs have witnessed Defendants' increasingly cavalier

12 treatment of the Order at four HSOC operations since then. Friedenbach 2nd Supp. Decl.

13 (describing Dec. 27, 2022 7am sweep); James 2nd Supp. Decl. (describing Dec. 27, 2022 1pm

14 sweep); Evans 2nd Supp. Decl. (describing Jan 3, 2023 sweep); Orona Supp. Decl. (describing

15 Jan. 4, 2023 sweep).

16        Defendants have continued engaging in sweep operations, ordering unhoused people to

17 move, and putting their belongings at risk. SFPD is still among the first to arrive. Friedenbach 2nd

18 Supp. Decl. ¶ 7; Evans 2nd Supp. Decl. ¶ 6; James 2nd Supp. Decl. ¶ 6; Orona Supp. Decl. ¶ 6.

19 Defendants are disturbing unhoused people, often as they sleep, and commanding them to pack up

20 and leave with heavy police presence. Friedenbach 2nd Supp. Decl. ¶ 8 ("you need to move!");

21 James 2nd Supp. Decl. ¶¶ 6-7; Evans 2nd Supp. Decl. ¶¶ 3-4; Orona Supp. Decl. ¶¶ 7-9. At one

22 recent sweep, an unhoused person noted "they are saying they are going to take all of our stuff and

23 make us move" and expressed, "until they have a decent place for us to live, tell them to leave us

24 alone." James 2nd Supp. Decl. ¶ 7. With SFPD present, the City has threatened unhoused people

25 with warrant checks unless they depart and warned that the City would discard their belongings in

26 violation of the bag and tag policy. Orona Supp. Decl. ¶ 9.  During one sweep between rainstorms,

27

28
---
[1] The parties have extensively met and conferred on compliance with the preliminary injunction and need for additional monitoring but have reached an impasse.  Do Decl. ¶¶ 3-7.

Defendants wrongly declared a usable tent abandoned and only intervention by one of Plaintiffs' volunteers prevented its destruction. Evans 2nd Supp. Decl. ¶¶ 10-11. Individuals also experienced other forms of hostility, including racist remarks from Defendants.  Orona Supp. Decl. ¶ 8 (SFFD telling Spanish speakers "I don't speak Mexican!").

These threats come without real shelter offers because the system is full and effectively closed. Evans 2nd Supp. Decl. ¶¶ 8; James 2nd Supp. Decl. ¶¶ 7, 9; Friedenbach 2nd Supp. Decl. ¶¶ 4, 8-10.  According to one unhoused person: "They always do the same thing, say they have something then it turns out to be nowhere for us to stay." Friedenbach 2nd Supp. Decl ¶ 9. By proceeding with business as usual, Defendants have failed to take reasonable steps to comply with the Order.

Defendants have refused to explain how they intend to comply with the Court's Order. Do Decl. Ex. 1, at 3-4 Do Decl. Ex. 3, at 4-5. Upon being confronted with Plaintiffs' concerns, Defendants largely did not contest the above descriptions. Do Decl. Ex. 1, at 4-5 (confirming that any Defendant, including SFPD, is free to make a request to move and that such requests occur before shelter availability is known). The City has ignored Plaintiffs' request that survival gear not be confiscated during this dangerous storm. Do Decl. ¶ 6, Ex. 4.  Changing, post hoc justifications of the operations are given.  Defendants first contended that there are "no threat[s] of enforcement of sit/lie/sleep laws, or of any other laws," but later asserted the City is addressing nuisance. *Compare* Do Decl. Ex. 2, at 2 *with* Do Decl. Ex. 1, at 5; *but see* Order, Dkt. # 65, at 31, 50 (enjoining two nuisance laws),[2]  And then at one sweep, people were told the streets needed to be power washed, despite the heavy rains.  Orona Supp. Decl. ¶ 6. Ultimately, Defendants argue that any orders given by City staff are merely voluntary and temporary requests. Do Decl. Ex. 1 at 4; Do Decl. Ex. 2, at 2.  The suggestion that forcibly waking people up, standing over them, and yelling at them to move, is not an enforcement threat, flies in the face of common sense and should be precluded. Nor is there any indication that moving is voluntary or temporary.  Friedenbach 2nd

---

[2] In meeting and conferring on Defendants' motion for "clarification," Defendants have also represented that they would treat the Court's Order as prohibiting threatened enforcement "as long as there are more homeless individuals in San Francisco than there are shelter beds available," but this is also inconsistent with Defendants actions.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Supp. Decl. ¶¶ 8-9; James 2nd Supp. Decl. ¶¶ 7-8; Evans 2nd Supp. Decl. ¶¶ 8-9; Orona Supp. Decl. ¶¶ 7-9. The City is still issuing notices that instruct people to not return, and unhoused people, who have been subject to past mandatory sweeps, reasonably understood these to be enforcement. Friedenbach 2nd Supp. Decl. ¶ 9; Evans 2nd Supp. Decl. ¶ 5.

The current violations during a period of life-threatening weather are consistent with Defendants' past noncompliance with constitutional strictures and other court orders. Plaintiffs have documented over a hundred instances of noncompliance with the Eighth and Fourth Amendments. Reply, Dkt. # 48, at 3:16-22. Even when Plaintiffs had notice and opportunity to observe HSOC operations during the pendency of the preliminary injunction briefing, violations persisted. *See* Reply, Dkt. # 48 at 5:1-10. Defendants have also resisted other court orders, like failing to provide required monitoring data to Plaintiffs. Do Decl. Ex. 5 (email thread containing Defendants' refusal to provide notice based on a tortured definition of "planned homeless encampment resolutions" and omitting critical time, and location information).

## III.   Categories of Monitoring Needed

In light of the above history and likelihood of noncompliance, the Court is empowered to mandate priority discovery, compliance reports, and a special master, without which it will be extremely difficult to verify Defendants' compliance with the Court's preliminary injunction.

### A. Disclosures

"Limited but regular document production is needed … to ensure that Defendants comply with the requirements of the Preliminary Injunction…[when] the Court... [has]...virtually no information beyond conclusory assurances." *Fraihat v. U.S. Immigr. & Customs Enf't*, No. EDCV191546JGBSHKX, 2020 WL 2758553, at *4 (C.D. Cal. May 15, 2020).[3] The advanced and routine disclosure of the following information, much of which Defendants already collect and have provided before, is necessary to promptly ensure compliance to Plaintiffs from unabated

---

[3] *See e.g., Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2017 WL 7512896, at *4 (D. Ariz. May 25, 2017) ("The parties shall meet and confer regarding Plaintiffs' ongoing video recording needs for monitoring compliance with the preliminary injunction); *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1121 (N.D. Cal. 1999) (in considering preliminary injunction, finding "the record more than ample to support periodic and targeted discovery").

ongoing harms.

1. ***72-Hour Notices.*** Although Defendants are willing to provide some "planned homeless encampment resolution" notices for HSOC operations, they are defining this in a way to exclude any informal sweeps by SFPD and DPW. As established by Plaintiffs' past monitoring, such notices are critical to mitigating the ongoing harms caused by many City actors of different agencies. Friedenbach 2nd Supp. Decl. ¶ 14; *NORML*, 112 F.R.D. at 121 ("wide-ranging character of [defendants'] activities" justifies additional monitoring).

2. ***HSOC Resolution Data***. Weekly HSOC encampment reports, encampment resolution schedules, and dispatch/progress logs are needed to confirm sweeps are not happening while shelter system is full and effectively closed, and investigate Defendants' representations regarding shelter offers, arrests, and displacement operations. Much, if not all, of these documents are already generated by the City and have been readily produced in the past. Do Decl. Exs. 6-7.

3. ***SFPD Data***. The City should produce SFPD dispatch logs and incident reports pertaining to interactions with unhoused people. SFPD is routinely dispatched to respond to homelessness complaints beyond HSOC operations. Without prompt data on these interactions, most potential non-compliance with the Court's order will remain without scrutiny. Plaintiffs have search terms and police codes to streamline production and can meet and confer on reducing any burden of producing select photo and bodycam footage. *See* Joint Letter, Dkt. # 36 (explaining how search terms were designed based on SFPD's previous proposal); *see also Parties*, 2017 WL 7512896, at *4 (ordering video productions for preliminary injunction).

4. ***DPW Data***. DPW conducts property removal beyond HSOC operations. Incident reports or logs identifying DPW cleaning or removal operations involving unhoused individuals are needed to ensure compliance with the bag and tag policy. Property logs and bag and tag logs are readily generated and were provided on a weekly basis during the pendency of the preliminary injunction. *See* Order, Dkt. # 34 (mandating weekly disclosures of DPW records). Photographs of disputed property and copies of any notices are provided for in the City's current bag and tag policy and can therefore be freely produced. *See* Def.'s Ex., Dkt. # 62.

5. ***HSH Data***. HSH daily shelter availability disclosures, outreach, and shelter placement reports from the HOT team are essential to determining what shelter opportunities exist, especially considering the Defendants' assertion that they should be allowed to continue with sweeps.

6. ***Information regarding compliance***.   Defendants' counsel merely notes that Defendants takes their obligations seriously, while simultaneously remarking that he cannot assure compliance. Do Decl. Ex. 1, at 3-5, Ex 3 at 5 (summarizing a meet and confer).   Neither generality instills confidence, so Plaintiffs must know what nonprivileged trainings or guidance, if any, have been given to City staff regarding the Preliminary Injunction.

**B. Compliance Reports**

4

Requiring compliance reports are similarly commonplace to ensure compliance with a preliminary injunction. *See e.g., Hernandez v. Barr*, No. EDCV160620JGBKKX, 2019 WL 13019923, at \*2 (C.D. Cal. Mar. 25, 2019); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. C 11-4991 CW, 2012 WL 2344081, at \*8 (N.D. Cal. June 20, 2012). Here, the Court can order Defendants to provide reoccurring status reports and certifications on compliance.

### C. Special Master

It is far from ideal that within days of the Court's Order, Defendants violated it. It is not promising that Defendants' violations of their own policies were so deeply entrenched before the order. Whether now or in the future, it may save the Court time to appoint a special master and mitigate Plaintiffs' burden in monitoring. Friedenbach 2nd Supp. Decl. ¶ 11-16; James 2nd Supp. Decl. ¶¶ 10-11. "The power of a federal court to appoint an agent to supervise the implementation of its decrees has long been established." *F.T.C. v. John Beck Amazing Profits, LLC*, No. 2:09-CV-4719-FMC-FFM, 2009 WL 7844076, at \*15–16 (C.D. Cal. Nov. 17, 2009).[4] Appointment is appropriate "where parties have failed to comply with court orders, displayed intransigence in the litigation, or required close supervision." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987).[5] Plaintiffs look forward to working with the Court to ensure that Defendants honor this Court's orders and the Constitution.

---

[4] *see Fraihat v. U.S. Immigr. & Customs Enf't*, No. EDCV191546JGBSHKX, 2021 WL 9696760, at \*6 (C.D. Cal. Mar. 10, 2021) (ordering parties meet and confer regarding appointment of Special Master for preliminary injunction); *Coleman v. Wilson*, 912 F. Supp. 1282, 1324 (E.D. Cal. 1995) (assign special master where "the constitutional violation … is the product of systemwide deficiencies [and] [m]onitoring compliance with the injunctive relief ordered herein will be a formidable task."); *see also* Fed. R. Civ. P. 53(a)(1).

[5] Past evidence of noncompliance "portends continuing violations, especially when viewed in light of the fast-paced and wide-ranging character of [defendants'] activities, the difficult legal issues involved, and the numerous affirmative measures that the Court has ordered defendants to undertake." *Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 112 F.R.D. 120, 121 (N.D. Cal. 1986)). The "seriousness and deliberate nature" of a parties' behavior may support a "substantial likelihood of continued unlawful practices" and need for a monitor. *Fed. Trade Comm'n v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, at \*8 (D. Ariz. Sept. 18, 2015). The degree of harm resulting from noncompliance is also a consideration. *Fraihat v. U.S. Immigr. & Customs Enf't*, No. EDCV191546JGBSHKX, 2021 WL 9696760, at \*6 (C.D. Cal. Mar. 10, 2021).

| 1 | Dated: January 6, 2022 | Respectfully submitted, |

2

By: */s/ Alfred C. Pfeiffer, Jr.*

3

LATHAM & WATKINS LLP
4       Alfred C. Pfeiffer, Jr., SBN 120965
        Wesley Tiu, SBN 336580
5       Kevin Wu, SBN 337101
        Tulin Gurer, SBN 303077
6       505 Montgomery Street, Ste. 2000
        San Francisco, CA 94111
7       Telephone: (415) 391-0600
        al.pfeiffer@lw.com
8       wesley.tiu@lw.com
        kevin.wu@lw.com
9       tulin.gurer@lw.com

10      LATHAM & WATKINS LLP
        Joseph H. Lee, SBN 248046
11      650 Town Center Drive, 20th Floor
        Costa Mesa, CA 92626
12      Telephone: (714) 540-1235
        joseph.lee@lw.com

13

14      LATHAM & WATKINS LLP
        Rachel Mitchell, SBN 344204
15      12670 High Bluff Drive
        San Diego, CA 92130
        Telephone: (858) 523-5400
16      rachel.mitchell@lw.com

17      By: /s/ Zal K. Shroff

18      LAWYERS' COMMITTEE FOR CIVIL
        RIGHTS OF THE SAN FRANCISCO BAY
19      AREA
        Zal K. Shroff, MJP 804620, *pro hac vice*
20      Elisa Della-Piana, SBN 226462
        131 Steuart Street, Ste. 400
21      San Francisco, CA 94105
        Telephone: (415) 543-9444
22      zshroff@lccrsf.org
        edellapiana@lccrsf.org

23

        By: */s/ John Thomas H. Do*
24

        ACLU FOUNDATION OF NORTHERN
25      CALIFORNIA
        John Thomas H. Do, SBN 285075
26      Brandon L. Greene, SBN 293783
        39 Drumm Street
27      San Francisco, CA 94111
        Telephone: (415) 293-6333
28      jdo@aclunc.org

6

1    bgreene@aclunc.org

2    *Attorneys for Plaintiffs*
     *Coalition on Homelessness, Toro Castaño, Sarah*
3    *Cronk, Joshua Donohoe, Molique Frank, David*
     *Martinez, Teresa Sandoval, Nathaniel Vaughn*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1

## **ATTESTATION**

2        I, John Thomas H. Do, am the ECF user whose user ID and password authorized the

3  filing of this document. Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document

4  have concurred in this filing.

5

6  Dated: January 6, 2022                    */s/ John Thomas H. Do.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO