LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

ACLU FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs*

*Additional Counsel Below*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs. <br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et. al., <br><br> Defendants. | CASE NO. 4:22-cv-05502-DMR <br><br> **SECOND SUPPLEMENTAL DECLARATION OF JENNIFER FRIEDENBACH** <br><br> **Judge:**  The Hon. Donna M. Ryu |

| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 | Wesley Tiu, SBN 336580 |
|   | Kevin Wu, SBN 337101 |
| 3 | Tulin Gurer, SBN 303077 |
|   | 505 Montgomery Street, Ste 2000 |
| 4 | San Francisco, CA 94111 |
|   | Telephone: (415) 391-0600 |
| 5 | wesley.tiu@lw.com |
|   | kevin.wu@lw.com |
| 6 | tulin.gurer@lw.com |
| 7 |   |
| 8 | LATHAM & WATKINS LLP |
|   | Joseph H. Lee, SBN 248046 |
| 9 | 650 Town Center Drive, 20th Floor |
|   | Costa Mesa, CA 92626 |
| 10 | Telephone: (714) 540-1235 |
|    | joseph.lee@lw.com |

LATHAM & WATKINS LLP
Wesley Tiu, SBN 336580
Kevin Wu, SBN 337101
Tulin Gurer, SBN 303077
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
wesley.tiu@lw.com
kevin.wu@lw.com
tulin.gurer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
rachel.mitchell@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Elisa Della-Piana, SBN 226462
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
edellapiana@lccrsf.org

ACLU FOUNDATION OF NORTHERN CALIFORNIA
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
bgreene@aclunc.org

**SECOND SUPPLEMENTAL DECLARATION OF JENNIFER FRIEDENBACH**

I, Jennifer Friedenbach, hereby declare pursuant to 28 U.S.C. § 1746:

1. I am the Executive Director of the Coalition on Homelessness ("COH" or "the Coalition"). This role includes intimate knowledge of the organization's mission, programmatic work, finances, and staffing. Additionally, whenever my schedule allows, I perform in-person field outreach and observe the City's encampment resolutions.

2. I previously provided a declaration in support of Plaintiffs' motion for preliminary injunction, Dkt. No 50-4. I submit this declaration regarding my observations at an HSOC encampment resolution that took place on the morning of December 27, 2022.

3. All facts set forth in this declaration are based upon my personal knowledge, and, if called upon to testify as to the truth of these facts, I could and would competently do so.

**Observations at HSOC Encampment Resolution December 27, 2022: 17th Street from Hampshire to Mariposa Streets**

4. To my knowledge, San Francisco has not reopened its shelter system, meaning that there are still around 1000 or more individuals waiting for shelter. Dozens of the Coalition's active members are seeking shelter or a place to stay but have been unable to obtain it. Because San Francisco's shelter system is closed, it is my understanding that no one HSOC approaches has access to shelter prior to a sweep operation.

5. Nonetheless, on December 27, 2022, I observed a sweep conducted by HSOC on 17th Street between Hampshire and Mariposa Streets. I arrived at the location at approximately 6:55 AM.

6. There were approximately 6 unhoused individuals present at this site at the time as well as at least one tent that was unattended but clearly not abandoned.

7. *Enforcement without shelter availability*: At this resolution, SFMTA was the first to arrive and set up cones to block off the area. An SFPD officer arrived at approximately 7:10 AM. ERT and HOT personnel arrived after, at approximately 7:13 AM. A second police officer arrived at approximately 7:21 AM, followed by DPW employees and two pickup trucks at approximately 7:42 AM.

8. Soon after HOT employees arrived, they began approaching individuals present at the encampment, shaking tents and waking individuals up, in the pouring rain. The City employees, with the SFPD present, said loudly, "This is a resolution! You need to move!" I heard no indication that this was just a temporary move or that people and their belongings could return. At the same time, although HOT employees generally asked if people wanted shelter, the HOT team admitted that they did not know what shelter spaces were actually available, and would not know for hours. When an unhoused individual asked what options were available for shelter, the HOT employees responded that they would not know until 11:00 AM.

9. I spoke with individuals at the site who expressed that they would be interested in an appropriate shelter if it was offered to them. However, they explained that they understood that because the City had ordered them to leave the area, they would need to move immediately. This meant that everyone was already packing up prior to any firm offer of shelter being provided by the City. For example, one individual noted that "They always do the same thing, say they have something then it turns out to be nowhere for us to stay. They get mad at me because I move across the street and come back, but I have nowhere else." In the end, most people at the site had already left the area before shelter bed availability was known, after they were told they would need to move while SFPD looked on.

10. One individual requested a private room because he had PTSD that was triggered due to a traumatic incident in a shelter. Although I specifically notified HOT of this, HOT had no shelter available to offer this person that would accommodate his needs. Nonetheless, he was also forced to pack up and leave the area.

**Continued Burden on Coalition on Homelessness**

11. It is a continual burden on the Coalition to monitor the City's conduct during these resolutions and track any noncompliance with both the Constitution and the Court's order. Prior to the filing of this case, monitoring the City's conduct meant diverting significant staff, volunteers, and funds to this reactive work of observing the City's operations and protecting the rights of unhoused community members. *See generally* Decl. of the Coalition on Homelessness, ¶¶ 11-22, Dkt. # 9-3 [1-3 – 1-6]. This burden has only increased since the filing of this case.

12. Since the filing of this case, we have diverted a tremendous amount of resources to monitoring the City's conduct. The City has been noticing us of 10 planned resolutions per week. We have sought to have staff members at as many of these resolutions as possible to protect the unhoused individuals onsite from the City's ongoing misconduct. But it has been a struggle for our organization to do this monitoring. About 5 staff members have had to collectively take approximately 24-25 hours per week to monitor these sweeps since we have begun receiving notice of their planned locations. That time should have been spent helping unhoused people improve their general quality of life while also advocating for permanent housing solutions in San Francisco, or working on our other proactive campaigns.

13. At sweep operations, our presence is critical to protect against more violations by the City and advocate on behalf of unhoused people and our members. Indeed, even with our presence, the City has persisted in blatant property destruction and criminalization of unhoused individuals. *See generally* Evans Supp. Decl., Dkt. # 50-1; James Supp. Decl., Dkt. # 50-2; Verner-Crist Decl., Dkt. # 50-3; Friedenbach Supp. Decl., Dkt. # 50-4.

14. No longer receiving 72-hour notice of planned sweep operations would make it much more difficult for us to monitor the City's operations and compliance. We would have to rely on our members seeing sweeps by chance, after they have already started early in the morning. This already happens on a regular basis, and it is impossible to keep up with the multiple sweep operations occurring across the City on any given day. Without more robust notice and reporting, we have no prayer of monitoring the City's conduct in a way that would actually protect unhoused individuals from the routine violations we have seen on a regular basis for years.

15. Monitoring is something the Coalition on Homelessness took on to address the immediate needs of our members. Working to report our observations in support of Plaintiffs' Motion for Preliminary Injunction, although essential to protecting our members, was extremely taxing on an organization that has already been asked to divert its resources to address a civil rights problem of San Francisco's own making. We are concerned that those violations will continue unabated, as they have now for years.

16. Although we will continue to conduct this monitoring if that is what we need to do, this model is simply not sustainable for us. It is draining our resources and defeating our ultimate mission to expend this much effort stopping the City's unlawful sweeps, rather than focusing on our critical affordable housing campaigns that are at the core of our mission.

I declare under penalty of perjury that the contents of this declaration are true and correct to the best of my knowledge, and that I executed this declaration on January 5, 2023 in San Francisco, California.

_____
Jennifer Friedenbach