# EXHIBIT 3

| | |
|---|---|
| **From:** | John Do |
| **To:** | Emery, Jim (CAT) |
| **Cc:** | "Joseph.Lee@lw.com"; "Al.Pfeiffer@lw.com"; "Zal Shroff"; Wang, Edmund (CAT); Snodgrass, Wayne (CAT); SF.PROBONO.UNHOUSED.PERSONS.LITIGATION@lw.com |
| **Bcc:** | Sweeps Litigation Team |
| **Subject:** | RE: COH v SF: m/c on ongoing productions and a motion for clarification |
| **Date:** | Wednesday, January 4, 2023 9:24:00 AM |
| **Attachments:** | image001.png<br>image005.png |

Hi Jim,

Thank you for responding below.  Given that HSOC operations are continuing at encampments, I write specifically regarding the scope of the 72 Hour Notices that the City has agreed to provide.  You have previously indicated that unhoused people may be asked to move on a voluntary and/or temporary basis by HSOC agencies.  Can you confirm that such instances are still considered a "planned homeless encampment resolution" for which you will provide notice?  For example, are the HSOC operations that happened on the Embarcadero and at Harrison/Merlin yesterday and the ones today at Erie St and by Best Buy the type of operations that you will provide notice of moving forward?  And I assume we can expect to receive notices starting now?  Please let me know.  Thank you.

Regards,
John



**JOHN THOMAS H. DO**
SENIOR STAFF ATTORNEY
RACIAL & ECONOMIC JUSTICE PROGRAM

39 DRUMM ST., SAN FRANCISCO, CA 94111
415-293-6333 | JDO@ACLUNC.ORG | HE/HIM

---

**From:** Emery, Jim (CAT) <Jim.Emery@sfcityatty.org>
**Sent:** Tuesday, January 3, 2023 8:27 PM
**To:** John Do <JDo@aclunc.org>
**Cc:** 'Joseph.Lee@lw.com' <Joseph.Lee@lw.com>; 'Al.Pfeiffer@lw.com' <Al.Pfeiffer@lw.com>; 'Zal Shroff' <zshroff@lccrsf.org>; Wang, Edmund (CAT) <Edmund.Wang@sfcityatty.org>; Snodgrass, Wayne (CAT) <Wayne.Snodgrass@sfcityatty.org>
**Subject:** RE: COH v SF: m/c on ongoing productions and a motion for clarification

Hi John,

You asked me to respond today to the request you transmitted last Thursday for weekly reporting of information relating to San Francisco's compliance with the preliminary injunction.

In October, the Court resolved plaintiffs' asserted need for interim disclosures.  What you requested on Thursday in your email below is significantly more extensive and more burdensome than what plaintiffs sought in October and what the Court at that time deemed relevant and appropriate while the PI motion was pending.  Now that the Court has decided the PI motion and discovery has opened, plaintiffs have less need for ongoing disclosures, not more.   The reasons you have offered for the six broad categories of information plaintiffs seek are generic, and do not explain why the particular information requested is necessary on an ongoing weekly basis, rather than through normal discovery.

1. San Francisco will agree to provide 72-hour notice of "planned homeless encampment resolution[s]," as the Court directed in its October 18 Order (Dkt #34).  San Francisco adheres to its understanding of the scope of this notice requirement, as explained in the parties' extensive meet-and-confer efforts on the topic.
2. It's not clear what plaintiffs mean by "weekly HSOC encampment reports" or "dispatch/progress logs."  I believe "encampment resolution schedules" are covered by item 1, above.  To generate additional reports on plaintiffs' proposed weekly schedule is burdensome on its face.  Plaintiffs should avail themselves of ordinary discovery tools to obtain the additional information they seek from HSOC.
3. Plaintiffs' expanded request for ongoing disclosure of SFPD data is significantly broader than the request the Court rejected in October (Dkt #38).  As San Francisco already explained (Dkt #37), searches of individualized records and the proposed key-word searches are impractical on a weekly basis.  Plaintiffs now in addition seek bodycam footage and photographs on a weekly basis.  Public disclosure of bodycam footage requires individualized review and redactions, and is not practical on an ongoing basis.  Plaintiffs should avail themselves of ordinary discovery tools to obtain the information they seek from SFPD.  The Court specifically contemplated plaintiffs could "seek[ ] production of different categories of records from SFPD once discovery is open."  (Dkt #38, at 2).
4. Plaintiffs' expanded request for ongoing disclosure of DPW documents and photos exceeds the scope of what plaintiffs requested and what the Court authorized while the PI motion was pending.  Collecting, processing, and producing the disparate records plaintiffs now seek from DPW on a weekly basis would be unduly burdensome and disruptive to staff.  The proposed 72-hour notice of planned encampment resolutions will provide ample opportunity for plaintiffs to verify DPW's adherence to its bag-tag policies.  Plaintiffs should avail themselves of ordinary discovery tools to obtain the information they seek from DPW.
5. The Court did not require weekly reporting of HSH data.  (Dkt #34 para 3.d).  Plaintiffs have not justified weekly reporting of that data now, which imposes an ongoing burden both on HSH and the City Attorney's office.  The information plaintiffs seek now from HSH is even broader than what it sought in October.  Because plaintiffs have not alleged any threat of criminal enforcement in connection with SFHOT outreach, the request for weekly reporting of SFHOT outreach data is entirely unjustified.  Plaintiffs should avail themselves of ordinary discovery tools to obtain the information they seek from HSH.
6. San Francisco proposes to provide promptly upon publication non-privileged departmental policy bulletins and directives addressing (1) enforcement of sit/lie/sleep laws against people experiencing homelessness; or (2) bag-and-tag.  Any additional documentation regarding compliance are available through ordinary discovery tools.

I expect to continue to receive from client departments more detailed descriptions of the burden arising from plaintiffs' request for ongoing weekly productions.

**Jim Emery**
Deputy City Attorney
Office of City Attorney David Chiu
(415) 554-4628 Direct
www.sfcityattorney.org

---

**From:** John Do <JDo@aclunc.org>
**Sent:** Thursday, December 29, 2022 4:25 PM
**To:** Emery, Jim (CAT) <Jim.Emery@sfcityatty.org>; Wang, Edmund (CAT) <Edmund.Wang@sfcityatty.org>
**Cc:** Joseph.Lee@lw.com; Al.Pfeiffer@lw.com; Zal Shroff <zshroff@lccrsf.org>
**Subject:** COH v SF: m/c on ongoing productions and a motion for clarification

Hi Jim:

As requested, this email covers our position on (1) ongoing productions to ensure compliance and (2) a motion for clarification you are considering in light of "operational questions" with the settlement in *Hastings College of the Law v. City & County of San Francisco,* Case No. 3:20-cv-03033-JST (N.D. Cal., filed May 4, 2020).

As described today, it is clear that Defendants are taking a position on "involuntary homelessness" that is fundamentally incompatible with the Court's order—which establishes that San Francisco's massive shelter/housing shortage, combined with the shelter system's closure, the 1000 people languishing on a shelter waitlist with no access to it, and the closure of same-day lines and all self-referral into shelter, precludes all enforcement/displacement operations of unhoused people—even where the City purports to provide some shelter incident to its enforcement/resolution process. *See e.g.,* Dkt. No. 65 at 4:8-9 ("It is undisputed that San Francisco does not have enough available shelter beds for all homeless San Franciscans"); Id at 25:15-16 ("At the hearing, they conceded that since April 2020, homeless individuals have not been able to access shelter"); Id. at 41:26-27 ("As previously noted, Defendants conceded at the hearing that '[v]oluntary access to shelter has been functionally inaccessible to unhoused people in San Francisco since the onset of the pandemic in April 2020'").  Indeed, you acknowledged that Defendants would treat the Court's order as precluding all enforcement/displacement operations. Moreover, you recognize the Court's order could be read consistent with that understanding.

Therefore, we would oppose a motion for clarification.  The Court's order is clear. We similarly do not read a conflict between the settlement in the UC Hastings lawsuit and the preliminary injunction.

We also discussed that Plaintiffs have no way of assessing or ensuring Defendants' compliance without ongoing notice and disclosure of relevant documents during the pendency of the preliminary injunction, and at suitable intervals such that Plaintiffs can ensure that unhoused individuals are not suffering constitutional injuries on an ongoing basis. These disclosures are informed in part based on what the Court has ordered previously, but all such documents are critical to assessing Defendants' compliance. As you yourself noted today, you would not be able to guarantee compliance and could not represent that there would be no errant behavior of different City officials in complying with the injunction. That is the very basis for these requests, which are as follows:

1. **Ongoing 72-Hour Notice.** We ask that Defendants agree to the same type of notice of any planned sweep operations (e.g., an operation where unhoused people are asked to move) as required by the Court's previous orders. *See* Dkt. No. 34.

    Reason: So that Plaintiffs have an opportunity to monitor ongoing sweep operations for compliance with the Court's order. This request did not prove burdensome. Per City practice/policy, such notices are already posted in advance and such operations are planned a week in advance. As raised on the call, we would also be willing to accept earlier notice, for example at the time Defendants decide where and when to conduct such operations, which Defendants have previously represented are determined the Wednesday before.

2. **HSOC Resolution Data.** All weekly HSOC encampment reports, encampment resolution schedules, and dispatch/progress logs.

    Reason: So that Plaintiffs have an opportunity to plan how to monitor ongoing sweep operations for compliance with the Court's order, and to identify Defendants' representations regarding shelter offers, arrests, and displacement operations across the City.

3. **SFPD Data.** All underlying SFPD dispatch logs and incident reports—both in summary report form and individualized records—pertaining to interactions, including all incident reports:
    • related to 915 (homeless complaints), 917 (suspicious person), 919 (person sitting/lying on a sidewalk), 920 (aggressive solicitor), and 800cr (mentally disturbed person) dispatches; and
    • responsive to the following search terms: "homeless" AND "encampment"; or "homeless" AND "tent"; or "homeless" AND "complaint"
    SFPD should also produce all bodycam or photographs related to any of the incident reports described above.

    Reason: This data regarding SFPD's interactions with unhoused people is critical to

assessing whether law enforcement is in fact honoring the prohibition on enforcement. SFPD is dispatched to respond to homelessness complaints thousands of times every month beyond HSOC operations and without the presence of the HOT team. Without data on these interactions, the vast majority of potential non-compliance with the Court's order will remain without scrutiny.

4.  **DPW Data.** All incident reports or logs identifying DPW cleaning or removal operations regarding unhoused individuals, any associated incident reports, property logs, or bag and tags, including photographs of disputed property (e.g. property not bagged and tagged) and copies of any notices posted prior to any property removal.

Reason: DPW is conducting daily cleaning and property removal operations beyond HSOC that all involve unhoused individuals. Without the DPW-specific data regarding time, place, location, factual circumstances, and removal data, Plaintiffs will be unable to monitor DPW's overall compliance with the preliminary injunction order.

5.  **HSH Data**. HSH daily shelter availability disclosures, outreach, and shelter placement reports from the HOT team regarding specific and individualized shelter offers and acceptances across San Francisco.

Reason: HSH's shelter bed availability, ways to access the shelter system, and the timing of shelter offers is critical to assessing if and when enforcement of anti-homeless ordinances are ever appropriate.

6.  **Information regarding PI Compliance**. All non-privileged information communicated by Defendants to staff regarding how to comply with the preliminary injunction order.

Reason: Plaintiffs have no insight into Defendants' conduct without understanding any trainings or guidance given to Defendants' staff regarding their understanding of how to comply with the Court's order. Plaintiffs must have that information to confirm that Defendants' staff are being appropriately advised regarding the Court's order.

Save for #1 72-Hour Notices, Plaintiffs request that all such document disclosures should continue on a weekly basis, or on a bi-weekly basis on a demonstration of a legitimate burden, to ensure ongoing compliance with the Court's order while safeguarding the rights of unhoused individuals through swift intervention in light of obvious non-compliance.  We note in this regard that Defendants have not yet provided information regarding any alleged burden by which Plaintiffs or the Court could fairly evaluate Defendants purported concerns.

We will await your response regarding whether Defendants will stipulate to an order requiring the disclosures described above. Given that the City continues with some sort of sweep operations, we appreciate your prompt attention to these urgent matters and ask that you please respond by Tuesday.

You have identified that it is Defendants' preference to address these issues with the Court as soon as possible. We certainly agree. We believe that the appropriate and most efficient mechanism to do so is via the parties' joint CMC statement and 26(f) report—which is due on Thursday, 1/5.

However, you have communicated a desire to instead file some request for relief on Tuesday, 1/3 in the form of an administrative motion. We note that it appears to be the judge's distinct preference that the parties seek to resolve any issues by the submission of joint statements. As such, Plaintiffs propose that the parties file a joint letter brief to the Court regarding the areas in dispute and requesting that the Court provide guidance to the parties either before or at the CMC on 1/12. Please advise if Defendants can agree to a joint submission, and we are happy to agree to a mutual restriction on page limits.

Regards and Happy New Year,
John



**JOHN THOMAS H. DO**
**SENIOR STAFF ATTORNEY**
**RACIAL & ECONOMIC JUSTICE PROGRAM**

39 DRUMM ST., SAN FRANCISCO, CA 94111
415-293-6333 | JDO@ACLUNC.ORG | HE/HIM