DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:       (415) 554-4675 (Snodgrass)
                 (415) 554-4628 (Emery)
                 (415) 554-3857 (Wang)
                 (415) 554-3975 (Stevens)
Facsimile:       (415) 554-4699
E-mail:          wayne.snodgrass@sfcityatty.org
                 jim.emery@sfcityatty.org
                 edmund.wang@sfcityatty.org
                 ryan.stevens@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION FOR STATUS CONFERENCE ON PRELIMINARY INJUNCTION NONCOMPLIANCE AND NEED FOR MONITORING**<br><br>Trial Date:          None set. |

**INTRODUCTION**

San Francisco[1] has complied with this Court's Preliminary Injunction Order ("Order") since its issuance.  San Francisco has not enforced or threatened to enforce any of the enumerated enjoined laws.  Plaintiffs' declarations confirm San Francisco's compliance.  Plaintiffs do not describe a single example of San Francisco threatening to enforce the sit/lie/sleep laws identified in the Order.  Plaintiffs do not describe a single instance of San Francisco departing from its own bag-and-tag policy.  Rather, Plaintiffs infer threatened enforcement of specific laws from the fact that SFPD officers are present during outreach to protect City workers, but the Order does not bar police from being present at encampment resolutions.  Instead, the Order enjoins specifc conduct, namely threats to enforce enumerated laws.  Plaintiffs offer no evidence the City has made any such threats.

What San Francisco has done, before and after the Court issued its Order, is to continue outreach to people experiencing homelessness, offering them shelter and services.  Since December 23, 2022, San Francisco has linked 410 persons voluntarily to shelter, 56 of those through HSOC. Piastunovich Decl., ¶¶9 & Exh. F; Simmons Decl., ¶¶5.[2]  Everyone who requested shelter at these recent resolutions was linked to shelter.  Morales Decl., ¶¶6-9; Nakanishi Decl., ¶¶8, 13, 17.  Absent San Francisco's outreach to these individuals, they would have remained outdoors.  Plaintiffs mischaracterize San Francisco's outreach operations as sweeps; they are not.

If Plaintiffs wish to pursue their allegations of noncompliance and seek remedies for those alleged violations, they should do so through a noticed motion for contempt.  For these reasons, set forth more fully below, San Francisco urges this Court to deny this motion and find that Plaintiffs have not demonstrated the appointment of a Special Master is necessary or appropriate in this case.  Nor have they made the showing necessary to justify imposing interim disclosure or reporting requirements on San Francisco.

---

[1]  This brief refers to defendants collectively as "San Francisco."

[2]  Through January 6, 2023.

**ARGUMENT**

**I.    San Francisco Is Complying with this Court's December 23 Order.**

In their motion, Plaintiffs claim that San Francisco has failed to comply with the Order at four recent HSOC encampment resolutions between December 27, 2022 and January 4, 2023.[3]  Plaintiffs argue that San Francisco has not complied with the Order because "SFPD is still among the first to arrive."  Dkt #75, at 1:17.  But this Court did not dictate order in which City agencies must arrive at HSOC resolutions.

Moreover, police officers do not accompany outreach workers during their initial engagements assessing interest in shelter, or at any time during an encampment resolution.  Police officers keep their distance from client engagements during HSOC resolutions, and they avoid threatening or intimidating behavior.  See, e.g., Hoang Decl., ¶¶3-5; Peralta Decl., ¶¶5, 11; Morales Decl., ¶¶6-9; Manitsoudis Decl., ¶¶6-7; Dodge Decl., ¶¶4, 6, 7.  There have been no arrests or threats of arrest. Hardiman Decl., ¶6; Hoang Decl., ¶4; Nazzareta Decl., ¶¶6, 9; Peralta Decl., ¶10.  Police officers are detailed to encampment resolutions for a specific and limited purpose: to ensure the safety of San Francisco's outreach workers, clients, and the public.  Hoang Decl., ¶3.  Police use the lights on their police vehicles for traffic control and to protect pedestrians, not to intimidate clients.  Hoang Decl., ¶3; Nakanishi Decl., ¶15; Peralta Decl., ¶3.

At HSOC resolutions, outreach workers – not the police – ask clients to move temporarily to allow the sidewalks and streets in the encampment area to be cleaned.  Nakanishi Decl., ¶¶7, 9, 12, 16. Clients who accept shelter are encouraged to collect their belongings so they can be transported to shelter.  Manitsoudis Decl., ¶¶ 8, 12.  There is no demand to "move along."  The Encampment Resolution Team specifically communicates to clients they are allowed back to the area after cleaning. Nakanishi Decl., ¶¶7, 9, 12, 16.  Demonstrating that clients understand they may return, clients who have declined shelter offers remain with their tents and other shelter structures after the resolution is concluded.  Nakanishi Decl., ¶14 & Exhs A, B; Nazzareta Decl., ¶¶8-9.

---

[3]  The parties met and conferred over Plaintiffs' concerns about compliance at the December 27, 2022 resolution at 17th Street near Hampshire Street and Mariposa Street.  Do Decl., Exh 2; Emery Decl., Exh A.  The City rebutted Plaintiffs' unfounded assertions of noncompliance at the December 27 resolution, and Plaintiffs have not repeated those assertions here.  Plaintiffs have not engaged in a comparable meet-and-confer effort regarding their allegations about the subsequent resolutions that are the subject of their motion; these new allegations are likewise unfounded.

San Francisco adheres to its bag-and-tag policy, as the Order requires.  Dilworth Decl., ¶¶4-6 & Exhs. A-D; Nazzareta Decl., ¶¶8, 9.  San Francisco even retrieved from an unattended and waterlogged tent personal belongings that were intermixed with used needles and discarded food. Dodge Decl., ¶5 & Exs. A, B; Nakanishi Decl., ¶6.

Plaintiffs' assertions that HSOC personnel have threatened warrant checks or have disparaged a client based on ethnicity or national origin are false, and in any event, they do not implicate the Order.  E.g. Hardiman Decl., ¶¶7, 9; Dodge Decl., ¶¶8-9; Manitsoudis Decl., ¶¶13, 14; Hoang Decl., ¶7; Morales Decl., ¶10; Nakanishi Decl., ¶18; Nazzareta Decl., ¶7; Peralta Decl., ¶8.

## II. Plaintiffs' Requested Relief is Unwarranted and Improvident.

Not only is Plaintiffs' motion unsupported by evidence.  It is procedurally deficient.  Plaintiffs' allegations and requested relief are not the appropriate subject of an administrative motion.  Local Civil Rule 7-11 specifies that motions for administrative relief are proper for "miscellaneous administrative matters, not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge."  A motion for contempt, or for a declaration of noncompliance with the December 23 Order, by contrast, should be brought under Local Civil Rule 7-2, with a minimum notice period of 35 days, and an evidentiary hearing.

Further, under Rule 53(a)(1)(C) of the Federal Rules of Civil Procedure, a court may appoint a special master to "address pretrial … matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  *Id.*  As the Advisory Committee Notes to Rule 53 make clear, a master "should be appointed only in limited circumstances," and "only when the need is clear."  Adv. Com. Notes, 2003 Amendment to Rule 53, subd. (a)(1).  "[T]he appointment of a Special Master is reserved for exceptional circumstances[.]"  *Fraihat v. U.S. Immgr. & Customs Enf't.*, 2021 WL 9696760 at *2 (C.D.Cal 2021).  Where "there is no history of Defendants failing to comply with Court orders, no difficult legal issues involved, and relatively few measures for Defendants to take" under a preliminary injunction order, appointment of a special master is inappropriate. *Richardson v. Trump*, 496 F. Supp. 3d 165, 190 (D.D.C. 2020).[4]

---

[4] Plaintiffs rely on cases where truly exceptional circumstances justified appointment of a special master.  Mot. at 5 (citing, *inter alia, Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987) (special master appointed to supervise discovery after defendant's "discovery

Plaintiffs have not demonstrated that a Special Master is necessary or appropriate in this case. Plaintiffs have failed to demonstrate that there are any exceptional circumstances here that justify the appointment of a master.  Indeed, the Order was issued scarcely two weeks ago, and Plaintiffs fail to show *any* serious question regarding San Francisco's compliance with it.  See Part I, *supra*.  Since Plaintiffs propose that San Francisco bear the entire cost of any Special Master, the appointment of such a master would impose a significant burden on San Francisco and would subtract from resources available to provide services to the population Plaintiffs wish to help.

**III.    The Record Does Not Support Plaintiffs' Demand for Interim Disclosures and Compliance Reports.**

To obtain the interim disclosures they seek, Plaintiffs must show there are significant, serious questions as to whether San Francisco has complied with this Court's injunction.  "If significant questions regarding noncompliance [with a court order or decree] have been raised, appropriate discovery should be granted."  *California Dept. of Social Services v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008); *Blackberry Limited v. Typo Products LLC*,  2014 WL 4136586 at *5 (N.D.Cal. 2014) (granting discovery request based on "serious questions … regarding … possible violations of the preliminary injunction."); *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018) ("appropriate discovery should be granted where significant questions regarding noncompliance with a court order have been raised.") (internal quotes, brackets omitted).

Here, Plaintiffs demand this increased disclosure and reporting in a summary administrative motion and without facts to support the request.  San Francisco has already voluntarily agreed to resume 72-hour notice of "planned homeless encampment resolution[s]," as the Court directed on an

---

abuses found by the court include destruction of documents [and] incorrect or false responses to discovery requests" and defendant had "demonstrated that it is either incapable or unwilling" to comply with discovery rules); *Nat'l Org. for Reform of Marijuana L. (NORML) v. Mullen*, 112 F.R.D. 120, 121 (N.D. Cal. 1986), *prior opinion*, 608 F. Supp. 945 (N.D. Cal. 1985) (special master appointed to oversee compliance with injunction issued almost a year earlier, which court had already clarified, in suit challenging constitutionality of joint federal/state law enforcement marijuana eradication program operating in 37 California counties); *Fraihat, supra*, 2021 WL 9696760 at *1, *2 (special master appointed to supervise compliance with preliminary injunction issued more than 10 months earlier, after court granted motion to enforce injunction, clarified injunction order, and issued enforcement order more than five months earlier); *Coleman v. Wilson*, 912 F.Supp.1282, 1324 (E.D. Cal. 1995) (special master appointed in class action challenging sufficiency of mental health services at nearly all state-run prisons in California).)  No remotely comparable exceptional circumstances are present here.

1   interim basis in its October 18 Order (Dkt #34).  Do Decl., Exh. 3.  San Francisco further agreed "to

2   provide promptly upon publication non-privileged departmental policy bulletins and directives

3   addressing (1) enforcement of sit/lie/sleep laws against people experiencing homelessness; or (2) bag-

4   and-tag."  *Id.*  The additional items plaintiffs demand on a weekly or periodic basis are unfairly

5   burdensome, and available to Plaintiffs through ordinary discovery tools.  Indeed, Plaintiffs have

6   served comprehensive requests for documents, directed to the same categories of documents, Emery

7   Decl., Exh. B, and Plaintiffs have made ready use of the Public Records Act.  E.g., Dkt ##50-11 thru

8   50-17.

9        Plaintiffs have not met and conferred over compliance reports, either their frequency or their

10   content.

## CONCLUSION

12        For the foregoing reasons, the Court should deny Plaintiffs' administrative motion.

13   Dated:  January 10, 2023

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
RYAN C. STEVENS
Deputy City Attorneys


By:  s/James M. Emery
JAMES M. EMERY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT; MAYOR LONDON BREED; SAM
DODGE