1  DAVID CHIU, State Bar #189542
   City Attorney
2  YVONNE R. MERÉ, State Bar #173594
   Chief Deputy City Attorney
3  WAYNE SNODGRASS, State Bar #148137
   Deputy City Attorney
4  MEREDITH B. OSBORN, State Bar # 250467
   Chief Trial Deputy
5  JAMES M. EMERY, State Bar #153630
   EDMUND T. WANG, State Bar #278755
6  RYAN C. STEVENS, State Bar #306409
   Deputy City Attorneys
7  City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
8  San Francisco, California 94102-4682
   Telephone:      (415) 554-4675 (Snodgrass)
9                  (415) 554-4628 (Emery)
                   (415) 554-3857 (Wang)
10                 (415) 554-3975 (Stevens)
   Facsimile:      (415) 554-4699
11 E-mail:         wayne.snodgrass@sfcityatty.org
                   jim.emery@sfcityatty.org
12                 edmund.wang@sfcityatty.org
                   ryan.stevens@sfcityatty.org
13
   Attorneys for Defendants
14 CITY AND COUNTY OF SAN FRANCISCO, et al.

15

                     UNITED STATES DISTRICT COURT
16
                    NORTHERN DISTRICT OF CALIFORNIA
17

18 | COALITION ON HOMELESSNESS; TORO | Case No. 4:22-cv-05502-DMR (LJC)
   | CASTAÑO; SARAH CRONK; JOSHUA
19 | DONOHOE; MOLIQUE FRANK; DAVID | **DECLARATION OF CHRISTOPHER
   | MARTINEZ; TERESA SANDOVAL; | MANITSOUDIS IN SUPPORT OF
20 | NATHANIEL VAUGHN, | DEFENDANTS' OPPOSITION TO
   | | PLAINTIFFS' ADMINISTRATIVE MOTION
21 |        Plaintiffs, | FOR STATUS CONFERENCE ON
   | | PRELIMINARY INJUNCTION
22 |        vs. | NONCOMPLIANCE AND NEED FOR
   | | MONITORING**
23 | CITY AND COUNTY OF SAN
   | FRANCISCO, et al., | Trial Date:            None set.
24 |
   |        Defendants.
25

26

27

28

1    I, Christopher Manitsoudis, hereby declare:

2    1.    I work as an investigator for the San Francisco City Attorney's Office.  I have worked

3 for the office for sixteen months.  Before working for the office, I worked as an asset protection

4 investigator for four years in San Francisco, California.  I submit this declaration in support of San

5 Francisco's Opposition to Plaintiffs' Administrative Motion for Status Conference on Preliminary

6 Injunction Noncompliance and Need for Monitoring.  If called as a witness, I could and would testify

7 competently to the matters set forth herein.

8    2.    I was present at and observed two of the four encampment resolutions that are the

9 subject of Plaintiffs' motion.  On January 3, 2023, I observed the encampment resolution at the

10 Embarcadero, between Washington Street and Don Chee Way.  On January 4, 2023, I observed the

11 encampment resolution at Erie Street.

12    **January 3, 2023 -- Embarcadero**

13    3.    I was present, observing this encampment resolution from 7:15am to 10:45am.

14    4.    Plaintiffs' observer Christin Evans introduced herself to me.  Ms. Evans was not

15 present for the entire time of the resolution.  She repeatedly returned to her car to tend to her dog and

16 to walk the dog.  Ms. Evans left the area in her car around 9:20 a.m.

17    5.    I have reviewed Ms. Evans declaration describing this encampment resolution.  In

18 paragraph 6 of her declaration, Ms. Evans states that "two SFPD officers arrived in an SFPD vehicle

19 with its lights on."  The police vehicle had its yellow lights on, not the blue lights or red lights.  The

20 police vehicles were parked along the Embarcadero north of the encampment, not near any of the

21 tents.

22    6.    In paragraph 7 of her declaration, Ms. Evans states that "two SFPD officers joined the

23 HOT team in contacting the individuals present at the site."  Throughout the entire morning, I never

24 observed any SFPD officer engage with any client present at the site.  At all times, the officers

25 maintained distance from the SFHOT workers when they were engaged in outreach.

26    7.    Ms. Evans describes Exhibit A to her declaration as "a photograph of the Park Ranger,

27 two SFPD officers, and members of the HOT team congregated around one individual's tent."  I am

28 the person on the right of the photograph, wearing the beanie, facing away from the camera.  The

Case 4:22-cv-05502-DMR   Document 82-14   Filed 01/10/23   Page 3 of 4

SFHOT outreach worker engaged the individual in the tent.  In the photograph, Officers Peralta and Huerta were greeting the Incident Commander, Captain Hardiman, who in the photograph is obscured behind me.  Park Ranger Brown is walking toward Officers Peralta and Huerta and Captain Hardiman. The uniformed employees spoke with each other briefly and continued on their ways.  Neither Brown, Peralta, nor Huerta engaged with the SFHOT outreach worker or with the individual in the tent.  The individual in the tent accepted a shelter offer that morning, and was later transported to shelter.

8.      In paragraph 8 of her declaration, Ms. Evans describes a conversation she had with a couple.  There was a couple in a tent adjacent to the single individual whose tent is depicted in Exhibit A to Ms. Evans's declaration.  After the couple expressed interest in shelter, SFHOT outreach workers advised them to begin organizing their belongings so they could later be transported to shelter.  The couple was later transported to shelter.

9.      In paragraphs 10-11 of her declaration, Ms. Evans describes a tent belonging to Gary. Gary was absent for the entire duration of the resolution.

**January 4, 2023 – Erie Street**

10.     I was present, observing this encampment resolution from 7:15am to 10:40am.

11.     I have reviewed the declaration of Shanna Couper Orona describing this resolution. There were never eight police vehicles at the resolution.  There was a maximum of five, for approximately three minutes, when a unit from Mission Station stopped by briefly.

12.     Just like at the Embarcadero resolution, SFHOT outreach workers advised clients, if they were interested in shelter, they should begin gathering their belongings so they could be transported later in the morning.  Just like at the Embarcadero resolution, I never observed police officers engage with clients. They kept their distance as SFHOT workers conducted outreach.

13.     I observed Captain Hardiman engage a client who spoke only Spanish, and I also observed Captain Hardiman engage a couple of passers-by who also appeared to speak Spanish. Captain Hardiman summoned the assistance of HOT team member Jorge Morales, who then engaged with them in Spanish.  I was within earshot of Captain Hardiman, and I did not hear him say "I don't speak Mexican," or anything similar or derogatory.

CASE NO. 4:22-cv-05502-DMR (LJC)                                    n:\govlit\li2023\230239\01649080.docx

1      14.      I did not hear Captain Hardiman or any other member of the resolution team threaten to

2   run names or conduct warrant checks.

3          I declare under penalty of perjury under the laws of the United States and the State of

4   California that the foregoing is true and correct.  Executed January 10, 2023 in San Francisco,

5   California.

6

7                                  s/ Christopher Manitsoudis
                                   CHRISTOPHER MANITSOUDIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28