DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4675 (Snodgrass)
               (415) 554-4628 (Emery)
               (415) 554-3857 (Wang)
               (415) 554-3975 (Stevens)
Facsimile:     (415) 554-4699
E-mail:        wayne.snodgrass@sfcityatty.org
               jim.emery@sfcityatty.org
               edmund.wang@sfcityatty.org
               ryan.stevens@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DECLARATION OF DAVID NAKANISHI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' ADMINISTRATIVE MOTION FOR STATUS CONFERENCE ON PRELIMINARY INJUNCTION NONCOMPLIANCE AND NEED FOR MONITORING**<br><br>Trial Date:             None set.<br><br>Attachments: Exhibits A - B |

I, David Nakanishi, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto. I submitted a previous declaration in this case on November 15, 2022.

2. Shortly after I submitted my previous declaration in this case, I was named Director of San Francisco's Healthy Streets Operations Center ("HSOC"). As HSOC Director, my duties include leading an interagency team of seven participating departments to address and resolve complex and unhealthy conditions by focusing on residential placements for people in crisis. HSOC's primary activity is conducting large encampment field operations.

3. I was present at HSOC resolutions on December 27, 2022, at 17th Street near Hampshire Street and Mariposa Street; on January 3, 2023, at the Embarcadero near Washington Street and Don Chee Way; and on January 4, 2023, at Erie Street, supervising the work of the ERT. I was not present at the December 27, 2022 resolution at Taylor Street and Eddy Street.

**December 27, 2022 – 17th Street**

4. I was present at 17th Street and Hampshire on the morning of December 27, 2022, for the entire resolution operation. I spoke with Ms. Friedenbach several times that morning.

5. HSOC records show there were ten individuals at that site, plus one tent that appeared abandoned, and one tent that appeared unoccupied. I confirmed with Ms. Friedenbach the abandoned tent belonged to a person who had died, and it should be removed. It had no personal belongings inside.

6. The unoccupied tent was littered inside with used syringes, exposed food, a waterlogged mattress and rug. Sam Dodge entered the tent and retrieved a laptop and some clothing from the tent, and those items were bagged and tagged. I spoke with Ms. Friedenbach about how this tent and its items were being addressed. She did not express any concerns.

7. During our initial briefing on December 27, 2022, before the resolution outreach had begun, I instructed the Incident Commander to inform clients they should move temporarily to allow cleaning, that they would be allowed back after the cleaning operation was complete, and when they resettled they should avoid blocking the sidewalk.

8. The ERT received its shelter allocation that morning at 8:43am. At that time, ERT outreach workers returned to clients who had expressed interest in shelter, and worked with them to make individual shelter linkages. All clients who requested shelter at this 17th Street resolution were linked to shelter. HSOC did not run out of shelter allocations that morning.

9. ERT outreach staff and the Incident Commander informed clients that day they should organize their belongings if they were accepting shelter, and that they would have to move temporarily to allow cleaning. In at least one conversation, ERT workers explained it was fine to move up the block and return after the cleaning was done. The transportation team took one client, who had refused shelter, to problem solving at 1138 Howard Street, then brought the client back to the block. I did not hear any ERT staff announce "You need to move" to the clients or any similar directive. That would be contrary to our approach and policy. Attached hereto as **Exhibit A** is a true and correct copy of a photograph of the same block the next day, on December 28, 2022, showing at least some of the clients who did not accept shelter had returned.

10. Ms. Friedenbach brought to my attention at least two individuals that morning. Ms. Friedenbach reported to me one person had not spoken to ERT. That person had in fact already been engaged, but I made sure that ERT followed up with that person after the shelter allocation was available. Ms. Friedenbach also brought a couple to my attention, and I made sure ERT followed up also with that couple, who were already known to ERT.

11. Michael O'Neil, the HSOC DPH social worker engaged with a third client who had behavioral health needs. Mr. O'Neil connected this client with follow-up services and developed a plan for further engagement.

**January 3, 2023 – Embarcadero**

12. During our initial briefing on January 3, 2023, before the resolution outreach had begun, I instructed the Incident Commander, the park ranger who was present, and the police detail to inform clients they should move temporarily to allow cleaning, that they would be allowed back after the cleaning operation was complete, and when they resettled they should avoid blocking the sidewalk.

13. All clients who requested shelter at this Embarcadero resolution were linked to shelter. HSOC did not run out of shelter allocations that morning.

14. When I left the Embarcadero resolution at approximately 10:00am, transportation was underway for those who had accepted shelter, Public Works was concluding its operations, and some tents remained undisturbed.

**January 4, 2023 – Erie Street**

15. At the Erie Street resolution, there were three SFPD vehicles present. There were four officers and one SFPD sergeant at the resolution. Initially, one of the vehicles had its emergency lights on when it was still dark out, to keep pedestrians safe in the narrow alley during the resolution.

16. During our initial briefing on January 4, 2023, before the resolution outreach had begun, I instructed the Incident Commander and the police detail that there was no goal to move people that day even temporarily for cleaning, but we would be offering shelter, asking clients to cooperate so we could clean as much as possible around them, and asking clients to avoid blocking the sidewalks as best they could, recognizing the space constraints on Erie Street. I also reviewed with the police detail they should ensure they don't intimidate clients and they don't cluster around clients.

17. SFHOT outreach workers explain that shelter allocations become available around 8:30am, and that individuals interested in shelter should organize their belongings so that they will be ready for transportation, which generally comes between 10:00am and 11:00am. All clients who requested shelter at this Erie Street resolution were linked to shelter. HSOC did not run out of shelter allocations that morning.

18. I did not hear Captain Hardiman threaten to run names or conduct warrant checks at the Erie Street resolution, or any other time.

19. Attached hereto as **Exhibit B** is a true and correct copy of an "after" photograph of the Erie Street resolution, from 10:51 a.m. on January 4, 2023. The photograph shows several tents and shelter structures remaining after the resolution was concluded.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed January 10, 2023 in San Francisco, California.

                                          s/David Nakanishi
                                      DAVID NAKANISHI