Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Donna M. Ryu, Magistrate Judge

COALITION ON HOMELESSNESS, et  )
al.,                            )
                                )
        Plaintiffs,     )
                                )
  VS.                      )   **NO. C 22-05502 DMR**
                                )
CITY AND COUNTY OF SAN       )
FRANCISCO, et al.,         )
                                )
        Defendants.     )
_____)

Oakland, California
Thursday, January 12, 2023

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS OF THE OFFICIAL
ELECTRONIC SOUND RECORDING 1:23 - 2:15 p.m.**

**APPEARANCES**:

For Plaintiffs:
               LATHAM & WATKINS LLP
               505 Montgomery Street - Suite 2000
               San Francisco, California  94111
       **BY:  KEVIN WU, ATTORNEY AT LAW**

               LATHAM & WATKINS LLP
               650 Town Center Drive - 20th Floor
               Costa Mesa, California  92626
       **BY:  JOSEPH H. LEE, ATTORNEY AT LAW**

               LATHAM & WATKINS LLP
               12670 High Bluff Drive
               San Diego, California  92130
       **BY:  RACHEL MITCHELL, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Transcribed By:    Marla F. Knox, RPR, CRR, RMR
                  United States Official Court Reporter

```
 1   APPEARANCES:   (via videoconference, cont'd)

 2                          LAWYERS COMMITTEE FOR CIVIL RIGHTS OF
                            THE SAN FRANCISCO BAY
 3                          131 Steuart Street - Suite 400
                            San Francisco, California  94105
 4                    BY:   ZAL K. SHROFF, ATTORNEY AT LAW
                            HADLEY ROOD, ATTORNEY AT LAW
 5
                            ACLU FOUNDATION OF NORTHERN CALIFORNIA
 6                          39 Drumm Street
                            San Francisco, California  94111
 7                    BY:   JOHN T. DO, ATTORNEY AT LAW

 8   For Defendants:
                            OFFICE OF THE CITY ATTORNEY
 9                          1 Dr. Carlton B. Goodlett Place
                            City Hall - Room 234
10                          San Francisco, California  94102
                      BY:   JAMES M. EMERY, ATTORNEY AT LAW
11                          WAYNE K. SNODGRASS, ATTORNEY AT LAW

12                          SAN FRANCISCO CITY ATTORNEY'S OFFICE
                            1390 Market Street - Sixth Floor
13                          San Francisco, California  94102
                      BY:   EDMUND T. WANG, ATTORNEY AT LAW
14                          RYAN C. STEVENS, ATTORNEY AT LAW

15

16

17

18

19

20

21

22

23

24

25
```

1   **Thursday - January 12, 2023**                              **1:23 p.m.**

2                        **P R O C E E D I N G S**

3                              **---oOo---**

4        **THE CLERK:**  The next matter I'm calling is the

5   Coalition on Homelessness, et al. versus City and County of San

6   Francisco, et al.

7        Participating counsel, please use the raise hand function.

8                      (Pause in proceedings.)

9        **THE CLERK:**  This is a gentle reminder.  Since there is

10  a lot of attorneys for this case, for the integrity of the

11  record if the attorney would like to speak, you have to state

12  your name each time.  That's just a reminder.  Thank you.

13       Calling civil case C-22-5502, DMR, Coalition on

14  Homelessness, et al. versus City and County of San Francisco,

15  et al.

16       Counsel, please state your appearances starting with the

17  Plaintiffs' attorneys first.

18       **MR. LEE:**  Thank you.  Good afternoon, Your Honor.

19  This is Joseph Lee from Latham & Watkins on behalf of

20  Plaintiffs.

21       With me I have a couple of Latham colleagues as well as

22  co-counsel from the Lawyers Committee on Civil Rights and ACLU,

23  who I will let them introduce themselves.

24       **THE COURT:**  Okay, good afternoon.

25       **MR. WU:**  Hello, Your Honor, this is Kevin Wu of Latham

1    & Watkins on behalf of the Plaintiffs.

2           **THE COURT:**  Good afternoon.

3           **MS. MITCHELL:**  Good afternoon, Your Honor, this is

4    Rachel Mitchell on behalf of Latham & Watkins with the

5    Plaintiffs.

6           **THE COURT:**  Good afternoon.

7                      (Pause in proceedings.)

8           **MR. DO:**  Good afternoon, Your Honor, this is John Do

9    with the ACLU for the Plaintiffs.

10          **THE COURT:**  Good afternoon.

11          **MR. SHROFF:**  Good afternoon, Your Honor, this is Zal

12   Shroff from the Lawyers Committee for Civil Rights of the San

13   Francisco Bay Area for the Plaintiffs.

14          **THE COURT:**  Good afternoon.

15          **MS. ROOD:**  Good afternoon, Your Honor, this is Hadley

16   Rood, also with LCCRSF appearing for Plaintiffs.

17       As I have been sworn in but I'm still awaiting receipt of

18   my bar number, I have not filed a formal appearance in this

19   case, but I'm appearing this afternoon with the permission of

20   the Court.  Thank you.

21          **THE COURT:**  Yes, good afternoon, and welcome to the

22   California Bar and to the Northern California -- Northern

23   District of California Bar.

24                      (Pause in proceedings.)

25          **MR. EMERY:**  Good afternoon, Your Honor, Deputy City

```
 1   Attorney Jim Emery for the City and County of San Francisco,
 2   and I will let the colleagues introduce themselves.
 3            THE COURT:  Good afternoon, Mr. Emery.
 4            MR. EMERY:  Good afternoon.
 5            MR. STEVENS:  Good afternoon, Your Honor, Ryan
 6   Stevens, Deputy City Attorney on behalf of Defendants.
 7            THE COURT:  Good afternoon.
 8            MR. SNODGRASS:  Good afternoon, Your Honor, Wayne
 9   Snodgrass Deputy City Attorney on behalf of Defendants.
10            THE COURT:  Good afternoon.
11            MR. WANG:  Good afternoon, Your Honor, Deputy City
12   Attorney Edmund Wang on behalf of the City and County of San
13   Francisco.
14            THE COURT:  Good afternoon.  Okay.  I think we have
15   everybody having made their appearance, so let's launch.
16       We have a few items today.  There is the motion to dismiss
17   certain Defendants and the conspiracy claim.  We also have a
18   case management conference, and you filed two administrative
19   motions.
20       So let me take all of them in the order that I just
21   announced starting with the motion to dismiss.
22       My understanding is Ms. Rood is going to argue that for
23   Plaintiffs.  Who will be arguing that on the Defense side?
24            MR. LEE:  Your Honor, if I may, Ms. Rood and
25   Ms. Mitchell will both be arguing portions of that motion.
```

1          **THE COURT:**  Okay.  Great.  And on the Defense?

2          **MR. SNODGRASS:**  Good afternoon, Your Honor, Wayne

3     Snodgrass for the Defendants, and I will be arguing that

4     motion.

5          **THE COURT:**  Great.  I will -- there is a high

6     probability I'm going to be ruling from the bench on this just

7     so you know in advance, but let me take -- take up this -- the

8     motion.

9          I want to start with the dismissal of Mayor Breed and

10    Mr. Dodge.  My understanding is that the Plaintiffs have agreed

11    to voluntarily dismiss those two parties but want leave to

12    amend potentially to add them as Defendants in their individual

13    capacities.

14         Ms. Mitchell, it looks like you are going to argue this

15    portion of it, so could you please give me a preview of what

16    those allegations are going to be.

17         **MS. MITCHELL:**  Yes, Your Honor, thank you.  This is

18    Rachel Mitchell on behalf of the Plaintiffs.

19         We have asked that the Court allow us to -- leave to amend

20    to potentially add individual claims against Mayor Breed and

21    Mr. Dodge.

22         We believe that our complaint already alleges direct and

23    personal involvement from both of these individuals and that we

24    would be able to expand upon those allegations if allowed to do

25    so.

1        I would like to direct your attention, for example, to the

2    declaration of Ms. Kaki Marshall, which was submitted at

3    docket 50, number 10.

4        In that declaration she declared that Mr. Dodge and the

5    Mayor were both using City resources for their personal and

6    political gain, and we -- and because discovery is ongoing, we

7    believe that there could be new additional information to add

8    as well.

9        **THE COURT:**  Okay.  I -- Mr. Snodgrass, you know,

10   amendment is liberally given here.  They are going to dismiss

11   these two parties, and they can try to amend -- to add in -- to

12   add them in in their individual capacities.

13       I don't -- I don't need argument from you on this one.

14   But what I would suggest is that the parties meet and confer so

15   I'm -- I know the parties agreed in their case management

16   conference statement that February 3rd would be the deadline to

17   amend the pleadings to add any parties, claims, or defenses.

18       I'm going to suggest we bump that out to February 28th.

19   That way Plaintiffs have an opportunity to promptly send a

20   draft over to the Defense showing them what the amendments

21   would be on this claim or these -- with respect to these two

22   potential individual Defendants, meet and confer and maybe we

23   avoid motion work.  Okay?

24       So any objection to that process?

25       **MR. SNODGRASS:**  No, Your Honor.  We realize that

1  amendment -- leave to amend is liberally granted.

2      I do disagree that the complaint, as currently pled,

3  contains anything sufficient to support personal liability, but

4  we will comply with the Court's instructions with regard to

5  meet and confer; and we will look very closely at whatever we

6  receive from the Plaintiffs.

7          **THE COURT:**  Great.  And I -- you know, don't -- since

8  they are going to be dismissing the current claims, I don't

9  know what's going to be pleaded exactly, so I will wait to see

10  what happens.

11      So, with respect to dismissal of the agencies, state law

12  governs that departmental defendants' capacity to be sued in

13  federal court.  And *Streit* is the Ninth Circuit law and that

14  came out in 2001.

15      California law has not changed significantly in this area

16  since *Streit* was decided in 2001, and I am bound by *Streit*.  So

17  we are not going to -- I am not going to not follow Ninth

18  Circuit law.

19      The cases cited by the Defense are very distinguishable on

20  their facts.  So you relied on *Lawson*.  That has to do with a

21  community based correctional facility that contracted with --

22  with governmental agency and that correctional facility that

23  was private was not -- you know, not surprisingly not a public

24  entity.

25      In *Hagman*, it involved a nonprofit religious organization

status as a public benefit corporation, and the court held that

that didn't make it a public entity.  Very different from the

situation here.

And *Legends* without any analysis said that the Long Beach

Water Department was not a legal entity that was separate from

the city.

So nothing in those cases causes me to find that the

agencies that are sued here should not be allowed to proceed as

currently pleaded because it's currently pleaded.

There is -- there are plausible allegations that those

departments are independent governmental entities with decision

making authority as separate from the City.

*Streit* mandates that I find that the police department is

a separate entity and the government -- sorry, the Defense made

an all or nothing argument.

So you didn't give me anything to distinguish between the

police department and the other departmental defendants.

So, I have -- you know, on that basis alone you lose.  So,

that would be my tentative but strongly held tentative.

Mr. Snodgrass, if there is any brief argument you want to make

on this, I will allow you.

**MR. SNODGRASS:**  Thank you, Your Honor.

Starting from the standpoint of Government Code 118.2, we

get to the fact that it says (as read:) "public entity includes

the state, the regions of the State of California, the

1  trustees, et cetera."

2          **THE COURT:**  Mr. Snodgrass, I read the briefs.  I have

3  read -- you heard my tentative.  You know, if there is

4  something that I got wrong in my reasoning around -- you know,

5  so -- I'm going to follow *Streit*.  It is the Ninth Circuit law.

6      I just talked about all the cases that you cited to tell

7  me not to file *Streit*, and I don't think they changed the law;

8  and I have pointed out that the City made no separate argument.

9  The City made the same argument on all departments.

10     So I have no basis for distinguishing between San

11 Francisco Police Department, which is required by *Streit*, and

12 any of the departmental other departmental defendants.

13     So -- and I talked about what the complaint alleges.  So

14 if there is something about that that you disagree with that

15 you can talk about specifically, then I will allow to do it

16 briefly; but I have plenty more to go over in today's session

17 on this case, and I have another case behind you and I have

18 limited time.  So, I don't need a whole full-blown argument of

19 the whole motion.

20          **MR. SNODGRASS:**  Understood, Your Honor, I appreciate

21 that.

22     I guess, I would just briefly suggest that in order to

23 find that these are public entities within the meaning of the

24 government code, the Court is of necessity concluding that they

25 are political subdivisions in and of themselves and -- because

1    that's the statutory language that's embedded in 811.2 and

2    which the notes of the Law Revision Commission construe as

3    requiring independence.

4          **THE COURT:**  Well, for example, *Lawson*, a case that you

5    rely on, says that -- you know, state law case, says (as read:)

6    "the department has to be an independent political or

7    governmental entity."  That's the language you cited to me.

8          **MR. SNODGRASS:**  That's correct, Your Honor.  And

9    that's construing and giving legislative intent, if you will,

10   or a variant of it, to the statutory language; but the

11   statutory language itself says that it has to be a political

12   subdivision.  And in our view there is only one political

13   subdivision here which is the City and County where --

14         **THE COURT:**  Okay.  Anything further?  Because police

15   department I have got to follow by Ninth Circuit law.  So, I

16   don't know how you distinguish -- and the City didn't make any

17   attempt to distinguish or give me judicially noticeable

18   documents to say these departments operate differently.

19         So on this record and on the arguments made by the City, I

20   don't have a basis to rule differently.

21         **MR. EMERY:**  Excuse me, Your Honor.  This is Jim Emery.

22   I just want to point out that footnote 1 of the brief on page 2

23   does say that *Streit* is limited to sheriffs and police

24   departments and cites a recent district court decision that

25   goes the other way with another department that is -- another

1   department of a city that is not the sheriff's department or

2   the police department.

3          **THE COURT:**  Well, we can -- there is nothing

4   specifically about -- that the City gave me about the

5   particular departments in this lawsuit that -- you know, you

6   could have done but I don't have a -- you know, you didn't make

7   anything other than maybe the footnote argument but, of course,

8   we have Judge Beeler, for example, making a ruling on the

9   Hayward Building Department.

10         I mean, there is -- each side could cite cases, but I can

11   only go on what the allegations are currently and what the

12   arguments are.

13         So, anything further, Mr. Snodgrass?

14         **MR. SNODGRASS:**  Nothing, Your Honor.

15         **THE COURT:**  Okay.  Who on the Plaintiffs' side is

16   addressing this.

17         **MS. ROOD:**  That would be me, Your Honor, Hadley Rood.

18         **THE COURT:**  Ms. Rood, anything you want to say in

19   response to Mr. Snodgrass?

20         **MS. ROOD:**  No, Your Honor.  The only thing that I

21   would point out is that none of the Ninth Circuit cases

22   analysis does differentiate between police and sheriff's

23   departments and other city departments as you noted.

24         **THE COURT:**  Okay.  Thank you.

25         Let's move onto the conspiracy claim.  The Defense invokes

1   the Intracorporate Conspiracy Doctrine.  Let me ask,

2   Mr. Snodgrass, if all agencies stay in the case because they

3   are adequately pleaded as separate public entities -- and I

4   have just ruled that -- then how does this doctrine apply?

5       I'm not -- so we have separate public entities.  Does the

6   Intracorporate Conspiracy Doctrine even -- I mean, I'm not sure

7   how that situation --

8       **MR. SNODGRASS:**  Your Honor in our view the issue

9   raised as to whether, for example, the Department of Public

10  Works can sue or be sued and qualify as a public entity under

11  California Government Code and the application of the

12  Intracorporate Doctrine are two separate issues.  And the

13  latter being an issue of federal law, we don't believe that

14  state law controls on that.

15      **THE COURT:**  Okay.  So, even though we currently have

16  all -- all of the agencies in, you know, we -- the individuals

17  are dismissed for now but all the agencies are in.  What is the

18  Intracorporate Conspiracy application?

19      **MR. SNODGRASS:**  Even with all of the agencies in,

20  Your Honor -- and I'm going to quote here from *Dickerson*, which

21  is an Eleventh Circuit case that the Plaintiffs have cited --

22  that is at page 768 of that case -- the court said in a, quote,

23  "Claim against actors who are part of a single public entity

24  and who allegedly conspired to interfere with civil rights" and

25  where the claim does not -- "does not involve even a single

conspirator from outside that public entity and does not

involve any criminal conduct, the county jail and its

employees" -- which were the Defendants in that case -- "are

considered to constitute a single legal entity that cannot

conspire with itself."

And our belief is that --

THE COURT:  Antitrust case; right?  Was that one --

MR. SNODGRASS:  That one, I believe, was not,

Your Honor.  Some of -- some of the other cases cited were.

That is a civil rights case.

THE COURT:  Okay.

MR. SNODGRASS:  And in our view, those words -- and

I -- you know, we can pull words out of the other cases outside

of the Ninth Circuit which have applied this doctrine to civil

rights cases.

In our view those words perfectly capture the situation

that this case presents.

We have the single public entity which is the City and

County.  There is nobody who is not a City and County official

or employee who is alleged to have played any role in the

alleged conspiracy that the Plaintiffs claim has occurred, and

there is no allegation of any criminal conduct.

And so in our view, the doctrine does apply here; and,

therefore, we urge the Court to follow the majority of the

circuits that have applied it to civil rights cases.

1    **THE COURT:**  Okay.  So Ninth Circuit has not ruled on

2    this, but we have many courts -- in fact, all courts, I think,

3    in this district who have ruled on it reject the application of

4    this doctrine in civil rights cases.

5    So, that's Judge Armstrong in *Rashdan*; Judge Spero, who

6    wrote a very long opinion in *O.H. versus Oakland Unified* and he

7    cited Judge Orrick, Sr.'s opinion in *Washington us Duty Free*

8    *Shoppers*.  We have Judge Corley's decision in *Bay versus City*

9    *of Oakland*; Judge Conte in *Brown versus Alexander*; Judge Chen

10   in *Rivers versus City of Marin*.

11   I couldn't find -- not that I'm bound by them, but I

12   couldn't find any of my colleagues going the other direction.

13   So certainly in this district so far it has been unanimous.

14   Are you saying, Mr. Snodgrass, that all of those cases are

15   wrong?

16   **MR. SNODGRASS:**  Your Honor, I'm not going to accuse a

17   district judge of being wrong, but this is an issue that the

18   Ninth Circuit has deliberately left open.  And in the face of

19   that, different judges -- obviously different district judges

20   are free to reach different opinions on the facts of their

21   individual cases.

22   I would point out that in our opening brief we cited *Welch*

23   *versus City and County of San Francisco*, which is, of course, a

24   Northern District case from 1995, which applied the doctrine to

25   a Section 1985 claim based on alleged sexual discrimination.

1      And I would also just point out that the Judge Spero

2  decision after discussing the doctrine at some length included

3  that the doctrine could not apply because in that instance the

4  claims against the defendant -- the individual defendants, they

5  were sued in their personal capacities.

6      And so this doctrine only applies when you have multiple

7  actors, to the extent they include individuals who are named in

8  their official capacities, which is what we have here.  We

9  didn't have that in the *Oakland Unified School District* case.

10         **THE COURT:**  Okay.  Who is going to argue for the

11 Plaintiffs?  Ms. Mitchell?

12         **MS. MITCHELL:**  Your Honor --

13         **THE COURT:**  Let me start by asking you something.

14     Do Plaintiffs concede that an entity or individual needs

15 to be named as a Defendant in order to have them as an actor in

16 the conspiracy claim?

17     For example, if you were -- if your clients were to

18 reassert Mayor Breed but -- but Defendants were successful in

19 dismissing her in her individual capacity, would you agree that

20 you could not include Mayor Breed in a conspiracy claim?

21         **MS. MITCHELL:**  Your Honor, I don't think that we would

22 concede that she would not be part of the conspiracy even if

23 she were --

24         **THE CLERK:**  I'm sorry, Counsel.  Can you please

25 identify yourself, please.

1        **MS. MITCHELL:**  Sorry, this is Rachel Mitchell for

2   Latham & Watkins.

3        **THE COURT:**  Okay.  Let me go ahead and have you

4   respond to Mr. Snodgrass' presentation.

5        **MS. MITCHELL:**  Yes, Your Honor.

6     So I think I would go back to the very basic question,

7   which is that the cases that we are discussing here are all in

8   the context of a single agency.

9        So, for example, some of the cases that the Defense cites

10  such as *Heartland* out of the Second Circuit or *Myers* out of the

11  Eighth Circuit.  Those cases are only about a single agency and

12  that employees within that agency cannot conspire as far as

13  intercorporate [sic] doctrine goes.

14    So it is our position that the intercorporate [sic]

15  doctrine doesn't even apply here where we have alleged that

16  multiple agencies are conspiring.

17    And I would like to point out that the Defendants by not

18  arguing that multiple agencies can't conspire have already

19  conceded that argument.

20       **THE COURT:**  Okay.  My ruling is that the conspiracy

21  claim can go forward.  I don't think that the Intracorporate

22  Conspiracy Doctrine applies here.

23    I am persuaded by the reasoning laid out in the cases that

24  I just referenced particularly Judge Spero and Judge Orrick,

25  Senior's discussion of how it came up in antitrust in the first

1   place and why it -- why it might apply in that setting that has

2   to do with price fixing but why it doesn't map on to civil

3   rights cases such as this one.

4        So, that's my ruling in the motion to dismiss.

5        Let's move onto the CMC.  Thank you, Counsel, for your

6   arguments on that motion.

7        Who will be --

8        **MR. LEE:**  Your Honor, I apologize, Your Honor, for

9   interrupting.

10        **THE COURT:**  Mr. Lee?

11        **MR. LEE:**  Yes, Your Honor.  I just wanted to add one

12   clarification with respect to the motion to dismiss.

13        Your Honor is correct that we are not taking the position

14   that we can sue -- that we will sue both, for example, the

15   Mayor in her official capacity as well as the City itself.

16        We understand that, you know, we will elect one of the

17   two.  However, Your Honor, what we request is that we, the

18   Plaintiffs, be allowed to make a decision as to which of the

19   two we would elect to sue, you know, in an official sense,

20   right, setting aside any -- any claims that apply in the

21   personal capacity.

22        We can meet and confer with the other side.  We can

23   provide them with a draft of the amended pleadings as

24   Your Honor has already laid out.

25        I just want to make sure that it is understood that we may

1   ultimately elect to sue the Mayor and/or Mr. Dodge in their

2   official capacity instead of the agencies that they are -- or

3   entities that they are representing.

4          THE COURT:  Okay.  Well, you know, I guess I will --

5   the Plaintiffs have agreed to voluntarily dismiss their current

6   claims against Dodge and Mayor Breed.

7          MR. LEE:  That was a point of clarification,

8   Your Honor, that I was making that what we had agreed to was

9   that we would only sue one or the other and not both.

10          THE COURT:  I see.

11          MR. LEE:  But as we said in our papers, we should be

12   the ones to decide which of the two we proceed with.

13          THE COURT:  Okay.  Well, meet and confer and see if

14   you can come to some agreement or at least narrow the issues

15   for motion practice and we will go from there.

16          MR. LEE:  Thank you, Your Honor.

17          THE COURT:  Who is handling the CMC on behalf of

18   Plaintiffs?

19          MR. LEE:  I am, Your Honor.

20          THE COURT:  Okay.  I assume, Mr. Emery, you will be

21   handling it for the Defense?

22          MR. EMERY:  That is correct, Your Honor.

23          THE COURT:  As I said before, I'm going to give you

24   February 28th as the last day to amend the pleading to say add

25   parties, claims or defenses.

1          With respect to ADR, you are already assigned to Judge

2     Cisneros, which is terrific.  I think she is the perfect

3     choice.  Given her very well-rounded experience, I think she is

4     uniquely position to really understand what everybody's

5     concerns are and to, you know, do her -- to work see to help

6     you see if you can find resolution.  And I saw on the docket

7     that you are already working -- you know, meeting with her and

8     have a date set.  So that's great.

9          With respect to motion work, there was something in your

10    CMC statement that made me think that you're contemplating more

11    than one summary judgment per side.

12         I only allow one Rule 56 motion per side unless you get

13    advance permission from me and you convince me that I should

14    allow more than one.

15         And I do occasionally -- in very specific circumstances

16    because they are a tremendous amount of work; okay.  So one per

17    side.

18         With respect to your case schedule and your trial, I'm

19    going to give you that schedule now.  I will tell you -- it is

20    going to be a bench trial, you-all told me.  I think you

21    predicted five to seven days.

22         I'm going to set it for eight days because sometimes in a

23    bench trial, you know, I want to make sure that I can fully

24    concentrate on the -- on the testimony and your arguments.

25    Sometimes I have to work in other cases or motion calendar.

1    So let me carve out eight days.  We can adjust it downward

2  or upward as the case progresses as I -- if I decide that you

3  need any more time or less time; okay.

4    So --

5         **MR. EMERY:**  I'm sorry, Your Honor.

6         **THE COURT:**  Go ahead.

7         **MR. EMERY:**  Jim Emery.

8         **THE COURT:**  Yes.

9         **MR. EMERY:**  Your comments prompted a question from me.

10  Do you do live direct for bench trial or written direct?

11         **THE COURT:**  Live.

12         **MR. EMERY:**  Thank you.

13       **THE COURT:**  I mean, I guess unless you are talking

14  about deposition testimony but that's -- okay, we are going to

15  have live testimony.

16         **MR. EMERY:**  That's what I would have preferred.

17       **THE COURT:**  Okay.  And let me say generally -- because

18  we are a little ways off from trial -- that's my default.

19    If for some reason the parties came up with some proposal

20  and that you wanted to make -- especially if the parties agreed

21  about it, I'm open, okay.  I don't mean to shut the door on

22  good ideas, but that is certainly -- my general expectation is

23  that it is live testimony; okay.

24    All right.  So here is your schedule starting with the

25  deadline that's closest in time, so I will be issuing an order

1   with these dates; but I will just lay them out for you now so

2   you have an idea.

3           The first date is July 28th, 2023.  That will be the close

4   of fact discovery.

5           August 25th will be your expert disclosure deadline.

6           September 22nd, rebuttal expert disclosure.

7           October 6th, close of expert discovery.

8           November 22nd, filing deadline for motions -- for

9   dispositive motions, so Rule 56 motions.

10          **MR. EMERY:**  Thank you for saving our Thanksgiving.

11          **THE COURT:**  December 21st is when your oppositions are

12  due.

13          January 11th is a reply deadline, and your dispositive

14  motions would be heard on January 25th, 2024.

15          Your pretrial conference will be on April 3rd, 2024, for

16  an eight-day bench trial commencing April 15th, 2024.

17          Any comments or concerns with that schedule?

18          **MR. EMERY:**  No, Your Honor, Jim Emery.

19          **THE COURT:**  Mr. Lee?

20          **MR. LEE:**  Yes, thank you, Your Honor.  Tentatively no,

21  Your Honor; however, I think we just need to confirm with

22  request our expert and potential trial witnesses' availability

23  if they are going to need --

24          **THE COURT:**  Well, you know, this is date.  I can't --

25  we try hard to -- to accommodate people; but no, we don't leave

1    it to sort of -- this is a year and two months out.  That's

2    plenty of time to get people lined up.

3              **MR. LEE:**  Fair enough.  Fair enough, Your Honor.

4         **THE COURT:**  And when we get to trial and we get in the

5    pretrial process, I really work hard with the parties to try to

6    figure out schedules, especially with a bench trial where we

7    are not having to worry about inconveniencing a jury.

8         You know, sometimes witnesses are taken out of turn

9    especially experts where there is conflicting schedules, and I

10   have never had a case where that did not work out; okay.

11        So I promise you we will be working together to iron that

12   out for both sides if we get to pretrial with those questions.

13             **MR. LEE:**  That's all I would expect, Your Honor.

14   Thank you.

15             **THE COURT:**  Okay.  Your next CMC is going to be

16   April 5th at 1:30 with your updated joint CMC statements due on

17   March 29th.

18        Let's turn to your administrative motions.

19        So the first one was the Defense motion for a

20   clarification of the preliminary injunction order because it

21   allegedly conflicts with an order issued by Judge Tigar in

22   another case.

23        So, this was not an administrative motion.  And, you know,

24   if you read Civil Local Rule 711, you know that it wasn't

25   because it's for things like asking for more pages.  It's for

1   truly administrative matters.

2       What the Defense was asking here was, you know,

3   substantive issues.  So, it's really inappropriate to ask the

4   Court or the other side to respond to clearly substantive

5   issues within an administrative motion.

6       So I'm denying it on that basis alone, but I will say if

7   the Defense decides that they want a ruling on the substantive

8   issues raised in the administrative motion, then you can file

9   an appropriate motion; but you would need to explain, first of

10  all, what is the conflict between the preliminary injunction

11  order and Judge Tigar's order in the *Hastings* case because that

12  simple question was not explained in your administrative

13  motion.  And when I read Judge Tigar's order, I didn't

14  understand what the conflict was.

15      So just, you know, put that out there for you to consider

16  if -- if you are going to file that motion.

17      You are also going to need to brief the law that applies

18  where there are two potentially conflicting judicial orders.

19  So none of that was done in your administrative motion.

20      You would also need to evaluate, depending on your

21  arguments, whether the motion is actually a motion for

22  reconsideration, which is governed by a different standard;

23  okay.

24      So, the administrative motion is denied; and I will leave

25  you to decide what you want to do moving forward on the issues

1    presented in that motion.

2        As to the Plaintiffs' administrative motion for a status

3    hearing on alleged noncompliance with the preliminary

4    injunction and for appointment of a monitor, this is also not

5    an administrative motion.

6        Now, I know you asked for a status hearing but you also

7    asked for a lot of relief on very substantive matters.

8        So let me just say to both sides, you know better.  We

9    have good lawyers, very experienced lawyers on this case.  You

10   know better.  Don't do that.

11       It's a misuse of the process.  And let's not get started

12   on the wrong foot with the Court but really with each other.

13   You know how to litigate these issues; okay.

14       So -- so, it's denied on that basis as well on the

15   Plaintiffs' side.

16       If Plaintiffs believe that there is grounds to move for

17   contempt, for violation or noncompliance with the preliminary

18   injunction order or for appointment of monitor, Plaintiffs need

19   to pursue those issues as a regularly noticed motion with a

20   full record.  And we will see how it goes; okay.

21       But you can't do it this way.  So, that motion is also

22   denied, but I will say that having reviewed the declarations

23   submitted by both sides, it -- they did raise some questions

24   and concerns that I want to talk to you about with our

25   remaining time here.

1    I will direct -- so on the Plaintiffs' side, I will direct

2  these to Mr. Emery but, of course, if another colleague can

3  better address that, just let me know.

4    So, the papers describe four different events and I think

5  the Defense called them resolutions.

6    What is purpose of these resolutions?  Were they to just

7  clean the sidewalk temporarily and then have people come back?

8  Were they to see if you could get people to move voluntarily?

9    It's entirely opaque.  Wasn't explained to me why they

10  were going forward.

11    For example, if they are for cleaning, then one of them

12  was on the day of our so-called cyclone bomb on January 3rd

13  where, you know, the picture shows the street is already wet

14  and it seems -- massive rains were coming, so it didn't seem

15  like cleaning was -- made sense.

16    But maybe, Mr. Emery, you can tell me generally, what is

17  the City doing with these resolutions at this point?  What's

18  the purpose?

19    **MR. EMERY:**  The purpose is to offer shelter and

20  services to these people who are on the street and to give them

21  the opportunity to get out from the weather.

22    **THE COURT:**  Is that the only purpose?

23    **MR. EMERY:**  That is the primary purpose and to clean.

24    **THE COURT:**  Okay.  So it's to offer services and to

25  clean, period.

1          **MR. EMERY:**  Yes.

2          **THE COURT:**  Okay.  So, Mr. Lee, I don't know if you --

3    you can also designate somebody on your side if it is somebody

4    else who should be answering -- but I assume that on the

5    Plaintiffs' side you don't see anything -- is there anything

6    wrong with the City having individuals move their things for a

7    few hours -- so, you know, very temporarily -- so that the City

8    can clean the area and also offer services?

9          **MR. LEE:**  Your Honor, I'm going to defer to my

10   colleague, Mr. Do, to answer that question.

11         **MR. DO:**  Yes, Your Honor.  No, absolutely not.

12      It is appropriate for the City to clean streets.  And,

13   indeed, I think many unhoused folks may appreciate that but if

14   done in a -- in an orderly and humane way.

15      But what we were wishing to raise with the Court was that

16   it appears business as usual.  It is the exact same notice that

17   is being used --

18         **THE COURT:**  Hold on.  My question was just:  Is there

19   anything wrong with that?  So can the City, in fact, require

20   people to move temporary -- for a little bit, for a few hours,

21   for example, so that they can clean?

22         **MR. DO:**  I don't think the City is taking the position

23   that they were forcing it.  They are saying it is temporary,

24   but --

25         **THE COURT:**  I'm asking --

1              **MR. DO:**  It's temporary but it's --

2              **THE COURT:**  I'm asking a substantive question.  I

3    mean --

4              **MR. DO:**  Yes.

5              **THE COURT:**  -- I think, yeah, that my order allows

6    that they can even enforce movement for cleaning.  They just

7    can't do it -- you know, it would just be a very temporary --

8    meaning, I assume a few hours -- to get done with what they are

9    supposed to get done, which is clean.

10             **MR. DO:**  Yes, Your Honor, that's correct.  We would

11   agree with that.

12             **THE COURT:**  Okay.  So, I think -- so let me share with

13   Mr. Emery some of the concerns that I saw in reading through

14   things and -- again, this -- this kind of goes more to what the

15   City isn't saying.  So there is some -- it's not clear to me

16   what's going on; okay.  So I'm focusing mostly really on the

17   City's declarations.

18        So my first concern is about what's actually being

19   communicated to the affected unhoused individuals, either in

20   advance by notice or verbally on the spot; okay, because you

21   have just told me the only reason these things are happening is

22   to offer services and to clean, period.  You told me those are

23   the two purposes.

24        So, in reading the declarations -- let me start with

25   Mr. Nakanishi.  He was there for three of the four events.  He

1   is now the head of HSOC.  He says (as read:) "here is what I
2   instructed people to do" -- so he instructs the incident
3   commander, the park ranger and others -- he instructs them to
4   tell affected individuals "just move temporarily for cleaning.
5   You can come back.  Just don't block the sidewalk when you come
6   back."
7        There is nothing in his declaration or anywhere else that
8   says what he instructed the HOT team workers, who are the
9   people who are directed to engage with the individuals, so that
10  was one glaring gap.
11       There is also a huge gap, which is that nobody, not a
12  single declarant for the City, talked about what was actually
13  communicated, so not what the instructions were to the team,
14  but what was actually communicated to the affected individuals.
15       So we have Nakanishi was on-site.  We had Mr. Dodge.  We
16  had the incident commander, Mr. Nazzareta.  We a DA
17  investigator.  We had police officers, lots of people on the
18  scene.  We had HOT team members.
19       Nobody said:  "Here is exactly what we tell an affected
20  individuals.  Here is what I told so-and-so or the folks who
21  were there on January 3rd or on December 27th."
22       It's a glaring gap.  So there is -- there is really
23  questions in my mind about what is -- what the intent -- what
24  the training or instruction is versus what actually is
25  happening.

1          So, there is -- there is some unrebutted evidence that the

2     same notice that's being used now as was used before the

3     preliminary injunction order, that preliminary -- so that

4     notice says "don't come back."  You know, "you need to leave

5     and don't come back."

6          That's completely contrary to the order and also to what,

7     you know, is being -- what the City is saying is its intent

8     here.

9          There is some unrebutted evidence that there is some

10    affected unhoused individuals who felt like they had to move

11    and that they couldn't come back which corroborates that things

12    are not really being clearly communicated.

13         So that's one -- one big set of questions in my mind about

14    how this is being done.

15         My other big concern has to do with the police presence.

16    So, do individuals understand that moving is voluntary in light

17    of the fact that there is a significant police presence?

18         And so, for example, on January 3rd, Sergeant Juan says

19    there is six police officers assigned that day.

20         On December 27th there were five assigned officers.  That

21    day five police officers and six unhoused individuals.  So we

22    have a near equal, you know, ratio of law enforcement to

23    unhoused individuals.

24         So, I know that the City has said the police have been

25    instructed not to cite and not to, you know, move people along;

but I think that there is a -- you know, the potential

perceived threat -- reasonably perceived threat if you have a

high level of law enforcement engagement, if people are being

told you need to move or just move, that -- under those

circumstances, a reasonable person might think "Gosh, I better

move or I'm going to get in trouble with the police."

So that's particularly the case where we don't have

affirmative evidence by the City saying "Here is what we

actually tell people."

"Here is what the notice says."  You know, "Here is what

we are doing to make sure people understand it is voluntary, it

is temporary" or, you know, whatever else you are trying to

communicate.

Your declarations raised some concerns that there is a

real miscommunication, a real gap, in understanding especially

with the police presence that was described in those

declarations.

I also -- on the bag and tag issue, we have no rebuttal by

the City declarants about the incident with the tent where --

and I think it was on January 3rd -- there is an unabandoned

but unattended tent that is in good shape.

A park ranger and incident commander say it's abandoned

even though it wasn't apparently and it was in good shape.  And

it -- it takes a Coalition volunteer to make sure that that

tent is not destroyed.

1      So that seems like it violates the bag and tag policy that

2    the City says it is following, and I didn't see any rebuttal on

3    that.

4      So that raised a concern about the level of oversight or

5    training and the like; okay.

6      I also -- there is some general statements about the

7    police training, but I don't know -- I don't know what the

8    police or any of the involved departments are being told about

9    the preliminary injunction order or about, you know, how to

10   communicate.

11     I know the City didn't need to tell me all of those things

12   in response to an administrative, you -- know, an improper

13   administrative motion; okay.

14     On the other hand, you know, both sides did give me papers

15   to describe what happened on those days; and I -- these are the

16   issues that I'm seeing.

17     So here is what I'm going to suggest:  You are all going

18   to be working with Judge Cisernos in the near future; and it

19   may be that in addition or maybe in working toward resolving

20   the entire case, one thing you can be working on is agreements

21   about what you can do to make sure that people feel confident

22   or maybe to -- to put it more bluntly, to prevent the -- giving

23   Plaintiffs reason to file a motion for noncompliance or for a

24   monitor; okay.

25     So, I don't -- I don't know if I would grant the -- such a

1  motion.  I mean, I don't know because right now I don't have a

2  full record; but these are the kinds of things you can be

3  working on; things like what actually can be done legally.

4      And I'm sure the Plaintiffs can agree there's lots of

5  things that can be done by the City to address various issues

6  that involve unhoused individuals, that do not run afoul of the

7  order.  But having clarity on what that is, would be useful to

8  everyone.

9      It would also be very helpful, I'm sure, to the Plaintiffs

10  and to the Court to understand what exactly is being done, how

11  are things being communicated, are there protocols you can come

12  up with about how they are done, what's being said, how you are

13  documenting things to make sure it's accountable.

14  Okay.  So, that seems to me to be a body of information

15  that you can work on with Judge Cisneros and that all builds

16  towards a potential settlement of the case.

17      I leave it to her good judgment on whether she thinks

18  those are things that you are ready to engage on, but I just

19  suggest that might be, you know, one fruitful area to work on.

20      Same with the documentation.  I know in the administrative

21  motion you are engaged in discussions about what documents

22  should be produced in discovery and how often they need to be

23  produced; right.

24      So we had protocols leading up to the preliminary

25  injunction.  There may still be some disputes about whether

1    things have to be produced weekly or quarterly, et cetera.

2        If you -- if you can't work that out between yourselves,

3    maybe that's something Judge Cisneros can help you work on.

4    And if not, of course I'm here and I can rule on it as a

5    discovery matter; okay.  But those are my suggestions.

6        On the question of accountability, let me just point out,

7    when I looked at the Piastunovich logs in that latest

8    declaration -- there are some logs that were so tiny, I

9    honestly could not read them even with my reading glasses, so I

10   don't know what those columns say.  There are a couple logs at

11   the back.  She says these are charts that capture some of the

12   information in those logs.

13       And I was really struck by the fact that those logs -- let

14   me just tell you exactly what I'm talking about so you can look

15   at them.  This is -- this is document 32-26 and 27.

16       So, they show a number of things like -- the number of

17   client engagements, the number of people who got shelter

18   placements.

19       What was really striking to me is there was nothing

20   capturing how many people asked for shelter.  That seems pretty

21   relevant.

22       Why isn't the City wanting to capture that?  Or maybe they

23   did but didn't want to show me.  I don't know.  I don't -- I

24   don't know what this information -- why this information was

25   compiled, but it really jumped out at me.  That's -- that's a

 1   critical question.

 2       I see from these documents that this -- the City is trying

 3   to show me -- and I understand the City is making efforts, as

 4   they should, to identify people who need shelter, to see if

 5   they can offer services as we nail down in the preliminary

 6   injunction and everybody agrees -- right now there is no way to

 7   access shelter except through that -- that engagement process.

 8       So it is good that's happening.  But the issue is, you

 9   know, are -- especially with respect to these resolutions, you

10   know, who's asking for shelter?  How many people are actually

11   asking and how many are getting placed?  It was really striking

12   that that was not included; okay.

13       So just trying to give you some feedback and food for

14   thought as you move forward in the case and perhaps with Judge

15   Cisneros on these issues, but that's what I wanted to share

16   with you with respect to the admin motions, both of which are

17   denied; okay.

18       Is there anything more?  I have one more case behind you,

19   so I can't give you much more time; but is there anything else

20   that either side wanted to raise briefly?

21           **MR. DO:**  If I may, Your Honor, I will be very brief.

22           **THE COURT:**  This is Mr. Do.

23           **MR. DO:**  Yes, Mr. Do speaking.

24       We also have concerns about these sweeps are happening

25   daily -- almost daily if not daily.  And we certainly didn't

```
 1   want to file an extended motion for contempt or for

 2   noncompliance.

 3        So we were asking for disclosures.  And my understanding

 4   of -- Your Honor, is that that could possibly be done through a

 5   meet-and-confer and discovery process that could promptly be

 6   raised before you if needed.

 7             THE COURT:  Correct.  I mean, these are all documents

 8   that are -- sound to me like they are discoverable; right?

 9             MR. DO:  Yes.

10             THE COURT:  The question is I think from the City is

11   they raised -- I saw in some e-mail exchange -- the question of

12   burden.  And, yeah, if I need to rule on that, fine.  I'm sure

13   you will queue it up for me; but I'm suggesting that there

14   should be things that you can meet and confer on and hopefully

15   reach agreement on; and I don't know if that's something that

16   Judge Cisneros can help you with.  Maybe she can.

17        But the first thing that we always expect is that

18   parties -- especially with, you know, the level of lawyering in

19   this case -- you-all are, you know, great lawyers and usually

20   people are able to work these things out; okay.

21        So without assistance.  So go there first.

22             MR. DO:  Of course, thank you, Your Honor.

23             THE COURT:  All right.  Anything more from Plaintiffs?

24             MR. LEE:  Nothing further, Your Honor.

25             THE COURT:  Mr. Emery, how about from the Defense?
```

1              **MR. EMERY:**  No.  Thank you for your insight,

2    Your Honor.  It was a fire drill getting the response to the

3    administrative motion, and we take all of your comments to

4    heart.

5         What the declarations did say is that the police never

6    spoke to any of the Plaintiffs.  What Mr. Nakanishi said was

7    that everyone who requested shelter got it.

8              **THE COURT:**  I read them.  You know, there is some

9    disputes.  I didn't want to get into the factual disputes --

10             **MR. EMERY:**  Yeah.

11             **THE COURT:**  -- because I don't know that we need to.

12   I'm not here to decide those factual disputes.

13             **MR. EMERY:**  Right.

14             **THE COURT:**  At the end of the day if this goes to

15   trial, I'm the fact-finder.

16        For purposes of the administrative motion, what stuck out

17   for me is what was not in the Defense declarations.  So there

18   are gaps about what's actually being communicated.

19             **MR. EMERY:**  Uh-huh.

20             **THE COURT:**  And so -- and putting the disputes of fact

21   aside, we don't have to get that far because there is lots --

22   lots of things that weren't said in those declarations that

23   raise concerns; okay.

24        Maybe there is good answers, maybe not but certainly there

25   is -- there is things that both sides can drill down on to see

1    if you can come to agreement on -- on some of these things and

2    maybe avoid further motion work on compliance; okay.

3              **MR. EMERY:**  Thank you.

4              **MR. LEE:**  Thank you, Your Honor.

5              **THE COURT:**  Thank you everyone.  Take care.

6              **MS. ROOD:**  Thank you, Your Honor.

7              **THE COURT:**  Thank you.

8                   (Proceedings adjourned at 2:15 p.m.)

9                        ---oOo---

1

2                    **<u>CERTIFICATE OF REPORTER</u>**

3           I certify that the foregoing is a true and correct

4    transcript, to the best of my ability, of the official

5    electronic sound recording provided to me by the U.S. District

6    Court, Northern District of California, of the proceedings

7    taken on the date and time previously stated in the

8    above-entitled matter.

9           I further certify that I am neither counsel for, related

10   to, nor employed by any of the parties to the action in which

11   this proceeding was taken; and, further, that I am not

12   financially nor otherwise interested in the outcome of the

13   action.

14

15   DATE:   Friday, January 20, 2023

16

17

18

19   _____

20          Marla F. Knox, RPR, CRR, RMR
            United States Court Reporter
21

22

23

24

25