1   DAVID CHIU, State Bar #189542
    City Attorney
2   YVONNE R. MERÉ, State Bar #173594
    Chief Deputy City Attorney
3   WAYNE SNODGRASS, State Bar #148137
    Deputy City Attorney
4   MEREDITH B. OSBORN, State Bar # 250467
    Chief Trial Deputy
5   JAMES M. EMERY, State Bar #153630
    EDMUND T. WANG, State Bar #278755
6   RYAN C. STEVENS, State Bar #306409
    KAITLYN MUPRHY, State Bar # 293309
7   Deputy City Attorneys
    City Hall, Room 234
8   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102-4682
9   Telephone:      (415) 554-4675 (Snodgrass)
                    (415) 554-4628 (Emery)
10                  (415) 554-3857 (Wang)
                    (415) 554-3975 (Stevens)
11                  (415) 554-6762 (Murphy)
    Facsimile:      (415) 554-4699
12  E-mail:         wayne.snodgrass@sfcityatty.org
                    jim.emery@sfcityatty.org
13                  edmund.wang@sfcityatty.org
                    ryan.stevens@sfcityatty.org
14                  kaitlyn.murphy@sfcityatty.org

15  Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO, et al.

16

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19

20  COALITION ON HOMELESSNESS; TORO          Case No. 4:22-cv-05502-DMR (LJC)
    CASTAÑO; SARAH CRONK; JOSHUA
21  DONOHOE; MOLIQUE FRANK; DAVID            **SAN FRANCISCO'S MOTION TO STAY A
    MARTINEZ; TERESA SANDOVAL;               PORTION OF THE COURT'S ORDER
22  NATHANIEL VAUGHN,                        PENDING APPEAL (ECF NO. 65)**

23          Plaintiffs,                      Hearing Date:    March 9, 2023
                                             Time:            1:00 p.m.
24          vs.                              Place:           Courtroom 4 – 3rd floor
                                                              1301 Clay Street
25  CITY AND COUNTY OF SAN                                    Oakland, CA 94612
    FRANCISCO, et al.,
26                                           Trial Date:      April 15, 2024
            Defendants.
27

28

1

## **TABLE OF CONTENTS**

2     TABLE OF AUTHORITIES ...................................................................................................... ii

3     NOTICE OF MOTION AND MOTION TO STAY ....................................................................1

4     MEMORANDUM OF POINTS AND AUTHORITIES .............................................................2

5          I.      Introduction............................................................................................................2

6          II.     Legal Standard .......................................................................................................2

7          III.    Facts And Procedural History................................................................................3

8                  A.      Preliminary Injunction Order And Administrative Motion For
9                          Clarification ..............................................................................................3

10         IV.     Argument ................................................................................................................5

11                 A.      San Francisco Is Likely To Succeed On Appeal Because The Injunction
                           Is Overbroad..............................................................................................5
12

13                 B.      Enjoining San Francisco From Enforcing The Relevant Codes, Before
                           Review On Appeal, Will Irreparably Injure the City And Is Not In The
14                         Public Interest. ..........................................................................................6

15                 C.      Granting the Stay Would Not Cause Plaintiffs Irreparable Harm ...............8

16         V.      Conclusion ..............................................................................................................8

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Apple, Inc. v. Samsung Elecs. Co.*
   No. 11-CV-01846-LHK, 2012 WL 3536800 (N.D. Cal. Aug. 15, 2012).....................................3

4

*Burford v. Sun Oil Co.*

5
   319 U.S. 315 (1943)...............................................................................................................7

6
*City of Oakland v. Holder*

7
   961 F. Supp. 2d 1005 (N.D. Cal. 2013) ................................................................................7

8
*Fund for Empowerment v. City of Phoenix*
   No. CV-22-02041-PHX-GMS, 2022 WL 18213522 (D. Ariz. Dec. 16, 2022)..........................5

9

*Golden Gate Rest. Ass'n v. City and County of San Francisco*

10
   512 F.3d 1112 (9th Cir. 2008) .............................................................................................7

11
*Haines v. Kerner*
   492 F.2d 937 (7th Cir. 1974) ................................................................................................5

12

13
*Hilton v. Braunskill*
   481 U.S. 770 (1987)............................................................................................................2, 3

14
*Hisp. Taco Vendors of Washington v. City of Pasco*

15
   994 F.2d 676 (9th Cir. 1993) ................................................................................................6

16
*Johnson v. City of Grants Pass*
   50 F.4th 787 (9th Cir. 2022) ..............................................................................................5, 6

17

18
*Martin v. City of Boise*
   920 F.3d 584 (9th Cir. 2019) ................................................................................................5

19
*Miralle v. City of Oakland*

20
   No. 18-CV-06823-HSG, 2018 WL 6199929 (N.D. Cal. Nov. 28, 2018)...................................7

21
*Standard Havens Prod., Inc. v. Gencor Indus., Inc.*
   897 F.2d 511 (Fed. Cir. 1990) ..............................................................................................3

22

23
**Rules**

24
Fed. R. Civ. Proc. 62(d) ........................................................................................................2

25

26

27

28

**NOTICE OF MOTION AND MOTION TO STAY**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT, on March 9, 2023 at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco") will and hereby do move this Court for an order staying a portion of its December 23, 2022 Order on Motion for Preliminary Injunction ("PI Order") (ECF No. 65), pending San Francisco's appeal to the United States Court of Appeals for the Ninth Circuit. Specifically, San Francisco seeks to stay the portion of the PI Order enjoining San Francisco from complying with its own policies regarding the enforcement or threatened enforcement of sit/lie/sleep laws when the total number of homeless individuals in San Francisco exceeds the total number of shelter beds.

The motion is based on the notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted, and any other matters the Court deems appropriate.

Dated:  February 2, 2023

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
RYAN C. STEVENS
KAITLYN MURPHY
Deputy City Attorneys


By:    */s/Kaitlyn Murphy*
         KAITLYN MURPHY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, ET AL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     Introduction

The Court issued a preliminary injunction regarding the enforcement of San Francisco's sit/lie/sleep laws against individuals who are involuntarily homeless. The order did not define "involuntarily homeless," and the parties dispute how to interpret that phrase. Plaintiffs' interpretation—which would prevent Defendants City and County of San Francisco ("City"), San Francisco Police Department ("SFPD"), San Francisco Department of Public Works ("DPW"), San Francisco Department of Homelessness and Supportive Housing ("HSOC"), San Francisco Fire Department ("SFFD"), and San Francisco Department of Emergency Management ("DEM", collectively "San Francisco" or "Defendants") from enforcing sit/lie/sleep laws against any homeless person until San Francisco has sufficient shelter beds to offer constitutionally adequate shelter to every homeless person in its jurisdiction—is overbroad. To the extent Plaintiffs' interpretation is correct, the Court should stay the portion of the injunction regarding enforcement of sit/lie/sleep laws pending San Francisco's appeal of the Preliminary Injunction Order (ECF No. 65 ("PI Order")) to the United States Court of Appeals for the Ninth Circuit. This holding is required because Plaintiffs' interpretation exceeds what controlling authority and the Eighth Amendment require, making San Francisco likely to succeed on the merits of its appeal. It is also the reason Plaintiffs would suffer no harm from the stay. A stay of this portion of the PI Order is in the public interest, and will prevent further harm to San Francisco by empowering San Francisco to direct its own policies regarding public health and safety within constitutional boundaries.

### II.    Legal Standard

The district court is empowered to suspend or modify an injunction on appeal. Fed. R. Civ. Proc. 62(d). A court should stay an injunction when a combination of the following four factors weigh in favor of the moving party: (1) whether the moving party has made a strong showing of likelihood of success on the merits; (2) whether the moving party will be irreparably injured absent the stay; (3) whether or not the stay will substantially injure other parties in the proceeding; and (4) whether the public interest supports the stay. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). "Deciding whether to grant a stay of an order pending appeal is an equitable remedy. Each factor in the analysis need not be

1   given equal weight." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3536800,

2   at *1 (N.D. Cal. Aug. 15, 2012); *Hilton,* 481 U.S. at 777 ("Since the traditional stay factors

3   contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid

4   rules."). Courts "adopt[] a flexible approach" in analyzing these factors "in the context of preliminary

5   injunctions." *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed. Cir. 1990).

6   Here, the Court should grant San Francisco's motion because each factor favors the stay.

7   **III.     Facts And Procedural History**

        **A.      Preliminary Injunction Order And Administrative Motion For Clarification**

8

9   Plaintiffs challenge aspects of San Francisco's response to the national homelessness crisis and

10  sought a preliminary injunction on September 27, 2020 (ECF No. 9), which the Court granted in part

11  through the PI Order on December 23, 2022. (ECF No. 65.) Plaintiffs specifically sought to enjoin San

12  Francisco's practices surrounding the issuance of citations to individuals who refuse to leave during an

13  encampment resolution and San Francisco's policies for handling unhoused individuals' property that

14  remains after an encampment resolution.

15  San Francisco's policies for implementing encampment resolutions are addressed in part

16  through SFPD Bulletin 19-080 ("Enforcement Bulletin"), dated April 16, 2019, which states

17  "[o]fficers must secure appropriate shelter before taking enforcement action" and "[i]f there is no

18  shelter or navigation center bed available, officers may not issue a citation or seize the

19  encampment/tent." (ECF No. 9-8, Della-Piana Decl. Ex. 27.)[1] The City's policy for handling an

20  individual's property during an encampment resolution, referred to as a "bag and tag policy," is set

21  forth in DPW's Procedure No. 16-05-08 REV 3." (ECF No. 62-1.)

22  The Court found the constitutionality of San Francisco's enforcement policies regarding

23  lodging and illegal encampments were "not at issue," and Plaintiffs admit "that the substance of the

24  Enforcement Bulletin is constitutional." (PI Order at 38.) The Court nevertheless entered an injunction

25  because it found evidence San Francisco's practices diverged from its policy. (*Id.*)  As a result, the

26  Court issued the following injunction:

27  _____
        [1] On January 25, 2023, to accommodate the uncertainty surrounding the scope of the PI Order,
    San Francisco's Police Department issued Department Notice 23-007. (Murphy Decl. Ex. A
28  [CCSF_COH_SFPD_000001-000003].)

1

2

> Defendants are preliminarily enjoined from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, the following laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property:

3

> • California Penal Code section 647(e)

> • California Penal Code section 370

4

> • California Penal Code section 372

5

> • San Francisco Police Code section 168

6

> • San Francisco Police Code section 169

7

> This preliminary injunction shall remain effective as long as there are more homeless individuals in San Francisco than there are shelter beds available.

8    (PI Order at 50.) The PI Order also required San Francisco to comply with its existing bag and tag

9    policy. (*Id.*)[2]

10    The PI Order does not define its phrase "involuntarily homeless." San Francisco filed an

11    administrative motion seeking to clarify "that a particular individual is not 'involuntarily homeless'

12    where San Francisco has offered that individual adequate temporary shelter," which the Court denied

13    on January 12, 2023, directing San Francisco to file a noticed motion if it required further clarification.

14    (ECF Nos. 70 at 2:23-24; 84).

15    In their opposition to San Francisco's motion for clarification, Plaintiffs confirmed their view

16    that the PI Order prohibits all enforcement of the enumerated sit/lie/sleep laws against all persons until

17    such time as the number of available shelter beds in the City exceeds the number of unhoused people

18    experiencing homelessness anywhere in the City, regardless of whether San Francisco has offered a

19    particular individual an adequate shelter bed. (ECF No. 81, at 1:2-4.)  Plaintiffs maintain all

20    unsheltered people experiencing homelessness (4,397 persons according to the 2022 Point-in-Time

21    Count) are "involuntarily homeless," and therefore they contend that San Francisco may not enforce

22    sit/lie/sleep laws against any homeless person until the number of total available shelter beds within

23    the City exceeds the total number of homeless individuals residing in the City. (*Id.*)

24    San Francisco filed a Notice of Appeal on January 23, 2023. (ECF No. 88.)

25

26

27    _____

> [2] San Francisco does not seek to stay the portion of the Court's order regarding bag and tag policies. San Francisco seeks to stay only the portion of the PI Order regarding the use and

28    enforcement of sit/lie/sleep laws.

IV.    **Argument**

      A.    **San Francisco Is Likely To Succeed On Appeal Because The Injunction Is Overbroad.**

The portion of the PI Order San Francisco seeks to stay exceeds the scope of Ninth Circuit precedent in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) and *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022). San Francisco is therefore likely to succeed on its appeal.

The Eighth Amendment prohibits the imposition of certain criminal penalties for sitting, sleeping, or lying outside on public property against a person who has nowhere else to go. *Martin*, 920 F.3d at 617 (prohibiting enforcement against "homeless individuals who cannot obtain shelter."). The Ninth Circuit has repeatedly held the category excludes those who either "have the means to pay" for shelter, or who have shelter offered "to them for free, but who chose not to use it." *Id.* at 617 n.8; *see also Johnson*, 50 F.4th at 793 n.2. *Johnson* and *Martin* establish that a person is not "involuntarily homeless" if, as in San Francisco's Enforcement Bulletin, that person is offered the opportunity for adequate temporary shelter for free before SFPD enforces or threatens to enforce any of the relevant code sections against that individual.

This is true regardless of whether the City has adequate shelter beds to offer every other homeless individual within its geographic boundaries, because Eight Amendment rights are held personally. The Eighth Amendment provides a "constitutional guarantee[ ] of individual rights." *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974). Compliance with the Eighth Amendment must hinge on whether the *individual* has access to adequate shelter. The Court transformed an individual's Eighth Amendment right into a collective right by keeping its preliminary injunction in effect until the number of available shelter beds in San Francisco exceeds the total number of homeless individuals residing in the City, rather than focusing on whether a shelter bed was offered to a particular individual. A recent order from the federal District Court in Arizona confirmed this interpretation. *Fund for Empowerment v. City of Phoenix*, No. CV-22-02041-PHX-GMS, 2022 WL 18213522 (D. Ariz. Dec. 16, 2022). The district court recognized the need for individualized determinations to assess whether a person is "involuntarily" homeless under the Eighth Amendment and found under similar circumstances to those present in San Francisco, where "the unsheltered outnumber available beds," the public entity must "inquir[e] as to whether individuals can practically obtain shelter" before

1    enforcing the criminal prohibitions. *Id.* at \*7. The question of availability, therefore, focused on the

2    individual, rather than on the community.

3         Unlike the Court in *Fund for Empowerment*, Plaintiffs' interpretation of the PI Order would

4    prohibit San Francisco from enforcing state or local sit/lie/sleep laws against an individual even after

5    San Francisco has offered that individual the opportunity for adequate temporary housing, so long as

6    the total number of homeless individuals within the City exceeds the total number of shelter beds. In

7    doing so, the Court required more of San Francisco than the Eighth Amendment demands. This is

8    especially true where Plaintiffs acknowledge San Francisco's Enforcement Bulletin complies with the

9    Eight Amendment (PI Order at 38), yet the Court fashioned a new and broader standard instead of

10   ordering San Francisco to comply with its own bulletin.

11        The Ninth Circuit vacated in part and remanded the district court's injunction in *Johnson* under

12   similar circumstances, determining "the district court must narrow its injunction to enjoin only those

13   portions of the anti-camping ordinances that prohibit conduct protected by *Martin* and this opinion."

14   *Johnson*, 50 F.4th at 813. The overbroad injunction was not permitted to stand.

15        The Court's PI Order, under Plaintiffs' interpretation, makes one person's Eighth Amendment

16   right depend on the availability of shelter beds for all other unhoused persons in the City, regardless of

17   their interest or willingness to occupy those beds. This is not the law.

18   **B.    Enjoining San Francisco From Enforcing The Relevant Codes, Before Review On Appeal, Will Irreparably Injure the City And Is Not In The Public Interest.**

19

20        The government and public interest merge in cases where the government is the moving party.

     Both weigh in favor of San Francisco's requested stay for two reasons. Encampment resolutions

21   promote public health and safety. Additionally, the questions on appeal concern legal issues not

22   squarely addressed by controlling precedent about which local governments have already made policy

23   determinations.

24        Encampment resolutions are part of San Francisco's multipronged, robust, and compassionate

25   policies to address the national homelessness crisis, which includes addressing issues of public health

26   and safety. Health and safety regulations are legitimate government interests. *Hisp. Taco Vendors of*

27   *Washington v. City of Pasco,* 994 F.2d 676, 680 (9th Cir. 1993). Encampment resolutions are a key

28

1  element in San Francisco's $672 million Homeless Response System. (ECF No. 45-2 (Cohen Decl.) ¶

2  4.) The resolutions are essential to keep public spaces clean and sanitary, and to allow safe access to

3  the public right of way on San Francisco's streets. San Francisco has made "difficult decisions it

4  judges to be in the best interests of all its residents by implementing a policy it believes appropriately

5  balances the important individual and community rights implicated by encampments on public land."

6  *See Miralle v. City of Oakland*, No. 18-CV-06823-HSG, 2018 WL 6199929, at *4 (N.D. Cal. Nov. 28,

7  2018) (holding public interest did not "weigh[] conclusively in favor of enjoining the City from

8  exercising its considered judgment as to how to best maintain public health and safety"). This Court

9  should not lightly upend San Francisco's balanced policy determinations while the appeal is pending.

10      San Francisco currently lacks sufficient shelter beds to house every homeless person in the

11  city. Thus, under the PI Order San Francisco cannot enforce its sit/lie/sleep laws against any homeless

12  individual until it spends hundreds of millions of dollars beyond its current funding allocations to

13  fund, build, and maintain thousands of additional shelter beds.

14      Granting a stay is also in the public interest because the legal questions presented by San

15  Francisco's appeal relate to the rights and responsibilities of state and local governments. *City of*

16  *Oakland v. Holder*, 961 F. Supp. 2d 1005, 1015 (N.D. Cal. 2013) (finding public interest weighed in

17  favor of municipality's requested stay where the core of the lawsuit was a "novel legal issue"

18  regarding a municipality's rights). This case implicates issues of federalism. "[R]esponsible public

19  officials in San Francisco have already considered" the appropriate process for managing the

20  homelessness crisis, which the injunction would modify. *Golden Gate Rest. Ass'n v. City and County*

21  *of San Francisco*, 512 F.3d 1112, at 1126 (9th Cir. 2008) (granting City's request for stay pending

22  appeal). The injunction allows a federal court to overrule local government officials regarding matters

23  otherwise vested in the local officials' authority. There is a specific harm to the public interest when

24  federal courts interfere with "the rightful independence of state governments in carrying out their

25  domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) ("for it is in the public interest that

26  federal courts of equity should exercise their discretionary power with proper regard for the rightful

27  independence of state governments in carrying out their domestic policy."). State and local

28  governments are bound by the federal constitution, but where genuine questions exist regarding

1   whether and under what circumstances the encampment resolutions conflict with the Eighth

2   Amendment, principles of federalism weigh in favor of staying the injunction while the appeal is

3   pending.

4   **C.      Granting the Stay Would Not Cause Plaintiffs Irreparable Harm**

5   Plaintiffs will suffer no irreparable harm from the limited stay San Francisco seeks because the

6   motion is confined to the portion of the injunction that requires the City to do more than the Ninth

7   Circuit and the Eighth Amendment require. The Court identified two irreparable harms to Plaintiffs as

8   grounds for ordering the injunction: the irreparable harm that accompanies a constitutional injury and

9   the negative physical and mental health impacts that accompany "encampment closures *without offers*

10  *of shelter*." (PI Order at 45 (emphasis added).) San Francisco's requested stay would resurrect neither.

11  There can be no constitutional injury from the requested stay because Plaintiffs agree the

12  Enforcement Bulletin complies with the Eight Amendment, (PI Order at 38), yet, unlike its order

13  regarding San Francisco's bag and tag policy, the Court did not simply enjoin San Francisco from

14  violating the Enforcement Bulletin, but instead re-wrote the policy itself, creating an overbroad

15  injunction.

16  The requested stay also presents no risk Plaintiffs would be subject to the physical or mental

17  harms identified by the Court that attend encampment resolutions without offers of shelter because the

18  Enforcement Bulletin only permits threatened or actual enforcement of the sit/lie/sleep laws after

19  SFPD officers "secure appropriate shelter" and expressly prohibits officers from using enforcement

20  "[i]f there is no shelter or navigation center bed available." (ECF No. 9-8, Della-Piana Decl. Ex. 27.)

21  **V.      Conclusion**

22  San Francisco respects the PI Order and has already found solutions to come into compliance

23  with the injunction. However, the record and controlling case law show San Francisco has

24  demonstrated a limited stay of the provisions which enjoin it from enforcing the city's encampment

25  resolution policies is appropriate pending appeal. For the foregoing reasons, the Court should grant

26  San Francisco's motion.

27

28

Dated:  February 2, 2023

1

2                                                     DAVID CHIU
                                                      City Attorney
3                                                     YVONNE R. MERÉ
                                                      WAYNE SNODGRASS
4                                                     MEREDITH B. OSBORN
                                                      JAMES M. EMERY
5                                                     EDMUND T. WANG
                                                      RYAN C. STEVENS
6                                                     KAITLYN MURPHY
                                                      Deputy City Attorneys
7

8                                            By:_____/s/*Kaitlyn Murphy*_____
                                                      KAITLYN MURPHY
9
                                                      Attorneys for Defendants
10                                                    CITY AND COUNTY OF SAN FRANCISCO; SAN
                                                      FRANCISCO POLICE DEPARTMENT; SAN
11                                                    FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                                                      SAN FRANCISCO DEPARTMENT OF
12                                                    HOMELESSNESS AND SUPPORTIVE HOUSING;
                                                      SAN FRANCISCO FIRE DEPARTMENT; SAN
13                                                    FRANCISCO DEPARTMENT OF EMERGENCY
                                                      MANAGEMENT; MAYOR LONDON BREED; SAM
14                                                    DODGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Stay                                9                    n:\govlit\li2022\230239\01654040.docx
CASE NO. 4:22-cv-05502-DMR (LJC)