# EXHIBIT A to

**Declaration of Kaitlyn Murphy in Support of Motion to Stay a Portion of the Court's Order Pending Appeal (ECF No. 65)**



# DEPARTMENT NOTICE

23-007
Published: 01/25/23
Expires: 01/25/26

## Enforcement of Laws and Ordinances for Homeless Individuals Sitting, Lying, or Sleeping on Public Property
(Supersedes DB 19-080 & DN 20-100)

On December 23, 2022, the United States District Court, Northern District of California, partially granted a preliminary injunction ("injunction") regarding the enforcement of some laws pertaining to homeless encampments, (Case No. 22-cv-05502-DMR).

The injunction states that Department members may "NOT use, enforce, or threaten to enforce" the following laws and ordinances to prohibit *homeless* individuals from sitting, lying, or sleeping on public property:

> Cal. Penal Code § 148(a) [authorizes law enforcement against "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician… in the discharge or attempt to discharge any duty of his or her office or employment…."]
>
> Cal. Penal Code § 647(e) [public lodging]
>
> Cal. Penal Code § 370 [public nuisance]
>
> Cal. Penal Code § 372 [public nuisance]
>
> San Francisco Police Code §168 [prohibition against sitting and lying down on public sidewalks except for lawful conduct consistent with permit requirements]
>
> San Francisco Police Code § 169 [Proposition Q, prohibition of encampments without permits on public sidewalks]

The injunction's use of the word "threat" should be interpreted as any statement of an intention regarding the possibility of enforcement and should not rise to the level of a criminal threat under California Penal Code section 422. Under the injunction, Members may still ask individuals who are experiencing homelessness to relocate voluntarily, so long as the City's request is not accompanied with a threat of enforcement, or any language mentioning those statutes that could reasonably be interpreted as a threat to enforce any of the above listed laws. This also includes any conduct that could be reasonably seen as forcing a particular action without an explicit threat. The circumstances of any such request must make it clear there is no possibility of enforcement of the enumerated laws if the individual declines to move. If members ask individuals experiencing homelessness to move, that request must have a legal basis besides those listed above. Examples of what may still be enforced are listed below.

*Page 1 of 3*

*Safety with Respect*

The injunction does not restrict enforcement for conduct other than sitting, lying, or sleeping. For example, if an individual is obstructing access to a public facility or not allowing a 48" wide path of travel on a public sidewalk, the injunction still allows members to require the individual abate the obstruction. Members should avoid requiring the individual to relocate any further than is necessary to abate the obstruction.

If the sole basis for asking someone to move is for temporary cleaning, members should make it clear that once the cleaning is completed that individual may return.

**What can Officers Enforce?**

Members can also continue to enforce nuisance laws, as long as they are separate and distinct from sitting, lying, or sleeping on public property, such as when there is a need to clean accumulated trash and debris around an encampment that creates a health hazard. If it is necessary for an individual to remove their tent to accomplish the task, the injunction allows for members to require the individual move personal property, including their tent, to allow effective nuisance abatement. Members may temporarily move individuals but individuals are not required to leave the general area.

The injunction explicitly states it **does not** restrict the City's enforcement of any of the following laws:

> Cal. Penal Code § 647c prohibiting "willfully and maliciously obstruct[ing] the free movement of any person on any street, sidewalk, or other public place or on or in any place open to the public";
>
> S.F. Police Code §§ 22-24 prohibiting "willfully and substantially obstruct[ing] the free passage of any person or persons on any street, sidewalk, passageway or other public place";
>
> S.F. Police Code §§ 25-27 prohibiting "willfully remain[ing] upon any private property or business premises after being notified by the owner, lessee, or other person in charge thereof to leave" or entering upon private property or business premises "without permission, expressed or implied, of the owner, lessee, or other person in charge of private property or business premises … after having been notified by the owner, lessee, or other person in charge thereof to keep off or to keep away therefrom"); or
>
> S.F. Municipal Health Code §§ 581, 596 prohibiting "public nuisance" on real property "owned, occupied, or controlled by him/her," including "Any accumulation of filth, garbage, decayed or spoiled food, unsanitary debris or waste material, or decaying animal or vegetable matter" and "Any buildings, structures, or portion thereof found to be unsanitary" and "Any matter or material which constitutes, or is contaminated by, animal or human excrement, urine, or other biological fluids").

## ENFORCEMENT PROCEDURES

Officers may encourage individuals to abate the violation by voluntarily removing their encampment, without the need for an admonishment, citation, or arrest. Officers may encounter individuals who respond to the officer's request to abate the violation by merely dismantling the encampment and then reinstalling it as soon as the officer leaves, or by moving it across the street or around the corner. Officers shall exercise their judgment in determining whether an individual has fully abated the violation. For example, if the encampment was initially in violation of the criminal laws that prohibit obstructing sidewalks, and is moved across the street to a location where it continues to obstruct sidewalks, the violation has not been abated. Regardless of whether there is or is not an enforcement action being taken, if there is a health and safety concern due to garbage, rubbish, waste or any other items that give rise to a public health concern or any other violation, officers may ask the individual to pack up the tent and facilitate having DPW clean up the area in order to abate the violation.

**If the officer provides an admonishment, the officer should:**
1. Document the admonishment in the CAD or
2. Take a photograph of the encampment and
3. Prepare an incident report regarding the admonishment and attach the photograph.

**OR if the officer issues a citation or makes a custodial arrest, the officer shall:**
1. Take a photograph of the encampment.
2. If the person is arrested, request the DPW to "bag and tag" the encampment as evidence of a crime and issue the individual a property receipt in duplicate. (Refer to DN 20-167 Bag and Tag and DGO 6.15 Property Processing).
3. Prepare an incident report that articulates the factual circumstances surrounding the encampment, including documenting the securing of shelter and attach the photograph of the encampment.

Members shall document in an incident report any enforcement or threat of enforcement of the above listed penal codes, to demonstrate the enforcement was conducted for reasons separate from simply sitting, lying, or sleeping on public property.

Members should activate their body worn cameras during enforcement efforts and preserve them in accordance with the DGO 10.11, Body Worn Camera Policy.

For contact information and additional resources, members should refer to the Homeless Resources Guide (SFPD 507).

*William Scott*
WILLIAM SCOTT
Chief of Police

*Per DN 20-150, all sworn & non-sworn members shall electronically acknowledge this Department document in PowerDMS. Members whose duties are relevant to this document shall be held responsible for compliance. Any questions regarding this policy should be made to sfpd.writtendirectives@sfgov.org who will provide additional information.*