DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:   (415) 554-4675 (Snodgrass)
             (415) 554-4628 (Emery)
             (415) 554-3857 (Wang)
             (415) 554-3975 (Stevens)
             (415) 554-6762 (Murphy)
             (415) 554-3870 (Gradilla)
Facsimile:   (415) 554-4699
E-mail:      wayne.snodgrass@sfcityatty.org
             jim.emery@sfcityatty.org
             edmund.wang@sfcityatty.org
             ryan.stevens@sfcityatty.org
             kaitlyn.murphy@sfcityatty.org
             miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**SAN FRANCISCO'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY A PORTION OF THE COURT'S ORDER PENDING APPEAL (ECF NO. 97)**<br><br>Hearing Date:  March 23, 2023<br>Time:          1:00 p.m.<br>Place:         Courtroom 4—3rd Floor<br>               1301 Clay Street<br>               Oakland, CA 94612<br><br>Trial Date:    April 15, 2024 |

Plaintiffs acknowledge the parties have differing interpretations of the phrase "involuntarily homeless" in the Court's preliminary injunction order. They also do not dispute that under Plaintiffs' reading, an individual is involuntarily homeless until San Francisco has sufficient shelter beds available through a self-referral system. In other words, Plaintiffs do not credit an offer of shelter made through any other measure, including offers made by City employees in the context of an encampment resolution. As a practical matter, Plaintiffs' interpretation leads to a result where each person experiencing homelessness in the City is "involuntarily homeless" unless or until the City has sufficient shelter beds to house *all* persons experiencing homelessness and makes those beds available through a self-referral system. It would cost San Francisco an additional $1.4 billion to provide shelter to every person experiencing homelessness above and beyond the hundreds of millions of dollars San Francisco currently spends supporting its homeless programs. As a legal matter, neither the Eighth Amendment nor the Ninth Circuit's precedent supports an injunction as broad as Plaintiffs' interpretation. Indeed, Plaintiffs' Opposition is based on the incorrect legal standard because the Ninth Circuit reviews the legal basis for a preliminary injunction de novo, not for an abuse of discretion.

Plaintiffs' overreading of the injunction extends them to a place where the conduct enjoined is unmoored to any constitutional violation. The overbroad portion of the injunction prevents City officials and administrators from determining where encampments will be located in the City and managing the public right of way. This is an irreparable harm to San Francisco and against the public interest. A stay of the overbroad portions of the injunction also does not substantially harm the Plaintiffs, because it lacks any connection to a constitutionally protected right and because Plaintiffs have not identified any case establishing substantial harm under similar circumstances. Accordingly, to the extent Plaintiffs' have correctly construed the injunction, it is overbroad and should be stayed pending San Francisco's appeal.

**I.  San Francisco Has Shown A Fair Prospect Of Its Success On The Merits Of Its Underlying Claim**

**A.  Plaintiffs Misstate The Legal Standards Applicable To San Francisco's Motion**

As an initial matter, Plaintiffs' Opposition misstates the applicable legal standard by stating that San Francisco's appeal will be considered under the abuse of discretion standard and by stating

that San Francisco must show it is likely to succeed on the merits of its underlying claim to justify a stay. Both overstate San Francisco's burden.

Although appeals of a preliminary injunction arguing the district court misapplied the facts are reviewed for an abuse of discretion, appeals based on "the legal premises underlying a preliminary injunction" are reviewed de novo. *Federal Trade Comm'n v. Enforma Nat. Prods., Inc.,* 362 F.3d 1204, 1211 (9th Cir. 2004). San Francisco's motion to stay is based on the application of *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) and its progeny, which is a question of law, not fact. (Mot. at 5:3-5.) Therefore, the Ninth Circuit will review the strength of San Francisco's arguments de novo.

San Francisco has shown it is likely to succeed on the merits of its appeal. However, it was not required to do so in order to demonstrate that a stay is appropriate. The Ninth Circuit is clear that with the standard for a stay "does not require the petitioner to show that it is more likely than not that they will win on the merits," and instead only requires the showing of a "fair prospect" of success. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). Here, San Francisco need only show a fair prospect of success on appeal, arguing that the injunction is overbroad because of a misapplication of *Martin*. Plaintiffs' argument is of little utility because they argue under the incorrect standard.

**B.     San Francisco Has Demonstrated A Fair Prospect Of Success**

Despite their contention that the injunction was "narrowly drawn," (Opp. at 3:28), Plaintiffs continue to advocate for an overbroad reading of the injunction. Plaintiffs state in their Opposition, "the preliminary injunction here recognizes that enforcement would be permissible against individuals that are in fact voluntarily homeless, considered on an individual basis, but that as a factual matter unsheltered San Franciscans clearly lack that access *because San Francisco's shelter system is fully at capacity and closed for self-referral*." (*Id*. at 6:10-23 (emphasis added).) This is consistent with Plaintiffs' prior statements that "homeless individuals in San Francisco are involuntarily homeless because the shelter system is short thousands of beds, essentially full, and effectively closed." (ECF No. 81 at 1:3-4.) In other words, Plaintiffs argue that a person experiencing homelessness is "involuntarily homeless" unless or until they can access shelter through a self-referral system. This is incorrect because self-referral is not the only way San Francisco can make an offer of shelter. San Francisco can and does offer shelter beds through encampment resolutions and through outreach with

the SF HOT team. (ECF No. 45-2 (Cohen Decl.) ¶ 9.) As a concrete example, if San Francisco has 10 shelter beds available, and it offers those beds to persons experiencing homelessness in a particular encampment, each of whom rejects the shelter offer, it makes no sense to say—as Plaintiffs do—that those ten individuals are "involuntarily homeless" because San Francisco made the offer through an encampment resolution (rather than through self-referral) or because San Francisco does not have additional shelter beds to offer every other person experiencing homelessness in the City.

Plaintiffs' reading of the phrase "involuntarily homeless" means that any offer of shelter is inadequate until San Francisco has sufficient shelter beds to house every resident experiencing homelessness through a self-referral system. That is not what the Ninth Circuit requires. *Martin*, 920 F.3d at 616-617 (prohibiting enforcement against "homeless individuals who cannot obtain shelter"); *Johnson v. City of Grants Pass*, 50 F.4th 787, 792 (9th Cir. 2022) (affirming *Martin*). The rights protected by the Eighth Amendment are held individually, not collectively. *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974) (stating the Eighth Amendment provides a "constitutional guarantee[] of individual rights"); *Jones v. City of Los Angeles*, 444 F.3d 1118, 1148 (9th Cir. 2006) vacated, 505 F.3d 1006 (9th Cir. 2007) ("Here, there is no evidence of Eighth Amendment harm to any of the six homeless persons who prosecute this action and equitable relief cannot be based on alleged injuries to others") (Rymer, J., dissenting); *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (applying the Eighth Amendment only to individuals convicted of crimes, not at the communal level). Plaintiffs' interpretation of the Eighth Amendment would turn that simple and well-established legal principle on its head.

Accordingly, the injunction as Plaintiffs read it goes too far because injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-329 (2006) ("When confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem" and "enjoin only the unconstitutional applications of a statute while leaving the other applications in force."); *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("A district court abuses its discretion by issuing an 'overbroad' injunction.").

San Francisco has not waived this argument. Plaintiffs acknowledge that the same argument San Francisco makes here was discussed at the preliminary injunction hearing. (Opp. at 10:2-3.) San Francisco also argued the narrow scope of both *Martin* and *Grants Pass* in its opposition to the preliminary injunction. (ECF No. 45 at 10-11.) It is the overbroad reading of that narrow case law that San Francisco seeks to challenge on appeal. The parties collectively submitted more than a dozen declarations and hundreds of pages of supporting documents with their motion, opposition, and reply. (ECF Nos. 9, 45, 50.) The record on this issue was adequately presented to the court prior to the preliminary injunction order.

But even if San Francisco had failed to do so, that would not result in waiver. Plaintiffs acknowledge, as they must, that even if San Francisco had not adequately briefed this issue at the district court level, the Ninth Circuit could still properly consider the argument because it is one of law, based on the reading of the district court's injunction and Ninth Circuit precedent. (Opp. at 10 (citing *A-1 Ambulance Serv., Inc. v. Cnty. of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996), as amended on denial of reh'g and reh'g en banc (July 31, 1996) (holding "an issue not raised below might still be heard on appeal if the issue 'is purely one of law and either does not depend on the factual records developed below, or the pertinent record has been fully developed'")); *see also Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985) (holding the Ninth Circuit has the power to consider an issue raised for the first time on appeal).)

In light of the controlling case law, and Plaintiffs' overbroad reading of the preliminary injunction order, San Francisco has shown a fair prospect of its success on appeal.

## II. A Failure To Stay The Challenged Portion Of The Injunction Harms The Public And San Francisco

Both the public interest and the risk of irreparable harm to San Francisco from the injunction as ordered weigh in favor of a stay. The injunction's all-or-nothing rule is not in the public interest because it undercuts San Francisco's ability to regulate health and safety in its public spaces despite San Francisco's interest in "reasonable regulations" to "protect the public health and the public safety." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905); *see also Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913) (recognizing there is nothing "to justify a court in

interfering with so salutary a power and one so necessary to the public health"). "Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated" while at the same time respecting "the constitutional liberty of one rightfully upon the street." *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 160-161 (1939). The injunction limits San Francisco's ability to do so because it allows people experiencing homelessness—and not City officials and agencies charged with the duty to maintain the public right of way in the interest of all San Franciscans—to unilaterally determine where homeless encampments will be located in San Francisco and which sidewalks will be useable to the public. Plaintiffs' footnote seeking to distinguish the cases cited by San Francisco is not persuasive because it provides the facts of the underlying cases without explaining why the legal theories in those cases should not apply here. (Opp. at 13 n. 3.)

Plaintiffs incorrectly assert San Francisco has not submitted any evidence of the injury it will suffer absent a stay. (Opp. at 10:21-22.) They do so by ignoring the harm San Francisco experienced when it was required to revise its SFPD Enforcement Bulletin in light of the Court's order. (ECF No. 97-2.) The revised Enforcement Bulletin directs the SFPD to comply with the overbroad portion of the Court's injunction, quoting and incorporating the relevant portion of the order. *Id*. This revision is the harm San Francisco suffered. To the extent the injunction is overbroad and San Francisco's new policy tracks the language of the injunction, both the City and the public are irreparably harmed by the limitation on the City's ability to enforce validly enacted laws. All San Francisco residents, visitors, and businesses suffer harm when validly enacted laws intended to promote the public welfare are taken off the table and made unenforceable. This includes both those who are and are not experiencing homelessness. Plaintiffs' argument that San Francisco suffered no irreparable harm because of the timing of its motion fails both because Plaintiffs cite no case law showing that a delay between an injunction and a motion to stay undermines a showing of an irreparable harm, and because Plaintiffs fail to consider that San Francisco filed its Motion to Stay one week after the SFPD published the Enforcement Bulletin revision. (*Compare* ECF No. 97 with ECF No. 97-2.) Accordingly, both the public interest and the irreparable harm to San Francisco weigh in favor of the limited stay requested.

### III. Plaintiffs' Substantial Harm Argument Does Not Address The Arguments San Francisco Actually Presented

Plaintiffs' argument regarding the substantial harm they face in the event of a stay misses the mark. The case Plaintiffs cite stands for the uncontroversial position that a constitutional injury is a substantial injury. That is true, as far as it goes. But Plaintiffs do not engage with San Francisco's actual argument, which seeks a stay of the *overbroad* portion of the injunction that prohibits San Francisco from complying with its own policies regarding encampment resolutions. San Francisco argues that the overbroad portion of the injunction, which exceeds what the Eighth Amendment requires, is by definition not tied to a constitutional injury. Plaintiffs' sole citation in this section of the Opposition does not address, let alone find in their favor, on this issue because it found a substantial injury to the nonmoving party only after finding that the moving party had not "established that they are likely to succeed on the merits of their appeal." (*See* Opp. at 13 citing *Norsworthy v. Beard*, No. 14-CV-00695-JST, 2015 WL 1907518 (N.D. Cal. Apr. 27, 2015).)

Plaintiffs argue they would be required to "divert even more resources to monitor Defendants' misconduct if the injunction is stayed," but this is not a substantial harm for two reasons. First it is not "misconduct" for San Francisco to use its discretion within the bounds of the Eighth Amendment even if Plaintiffs themselves prefer different policy choices. Second, Plaintiffs cite no case law showing that a voluntary diversion of their organizational resources would constitute a substantial harm even if true, or that any such harm would weigh sufficiently heavily in favor of denying the stay to overcome San Francisco's showing of success on its underlying claim, irreparable injury, and public interest. *See e.g., Sifuentes v. Brazelton*, No. C 09-2902 PJH, 2014 WL 186867, at *2 (N.D. Cal. Jan. 16, 2014) (granting motion to stay even where nonmoving party showed substantial harm "weighs against granting a stay, but not heavily so").

### IV. Conclusion

Based on the foregoing, San Francisco respectfully requests the Court grant its motion to stay.

Dated: February 23, 2023

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
RYAN C. STEVENS
KAITLYN MURPHY
MIGUEL GRADILLA
Deputy City Attorneys

By:  */s/ Kaitlyn Murphy*
    KAITLYN MURPHY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT; MAYOR LONDON BREED; SAM DODGE