LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs Coalition on Homelessness,*
*Toro Castaño, Sarah Cronk, Joshua Donohoe,*
*Molique Frank, David Martinez, Teresa Sandoval,*
*Nathaniel Vaughn*

*Additional Counsel Appear on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | CASE NO. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> **Judge:** The Hon. Donna M. Ryu <br><br> Hearing Date: April 27, 2023 <br> Time: 1:00 p.m. <br> Place: Courtroom 4 – 3rd floor <br> 1301 Clay Street Oakland, CA 94612 <br><br> Trial Date: April 15, 2024 |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF RELEVANT ALLEGATIONS...............................................2

    A.      Individual Plaintiffs Molique Frank, Toro Castaño, And Nathaniel Vaughn Are Homeless Or At Imminent Risk Of Homelessness............................................2

    B.      Individual Plaintiffs Teresa Sandoval, David Martinez, Sarah Cronk, And Joshua Donohoe Have Specifically Alleged Prior Criminal Enforcement Against Them Just Because They Are Homeless. ...................................................3

    C.      Mayor Breed Participates In The City's Unlawful Criminalization Scheme........................................................................................................................4

III.    LEGAL STANDARD.............................................................................................5

IV.     ARGUMENT ..........................................................................................................6

    A.      This Court Should Reject Defendants' Meritless Standing Challenge. ..................6

        1.      Defendants Do Not Challenge Plaintiff Coalition On Homelessness's Standing, And Therefore The Court Need Not Consider Defendants' Arguments Regarding Individual Plaintiffs' Standing. ..................................................................................................6

        2.      Individual Plaintiffs Teresa Sandoval, David Martinez, Sarah Cronk, And Joshua Donohoe Allege A Risk of Future Harm Sufficient To Establish Standing On Their Eighth Amendment Claims. ..................................................................................................7

        3.      Plaintiffs Nathaniel Vaughn, Toro Castaño, and Molique Frank Are At Imminent Risk of Future Harm Sufficient To Confer Injunctive Relief Standing. ........................................................................11

    B.      Defendants Have No Basis To Strike Plaintiffs' Allegations Describing the Mayor's Direct Role In The City's Eighth Amendment Violations. ...............16

        1.      Plaintiffs' Amendments Were Not Prohibited By The Court's January 12 Order ...........................................................................................16

        2.      Plaintiffs' Allegations Are Not "Redundant, Immaterial, Impertinent, Or Scandalous".....................................................................18

V.      CONCLUSION......................................................................................................21

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aid for Women v. Foulston,*
    441 F.3d 1101 (10th Cir. 2006) ...............................................................................9

*Amadei v. Nielsen,*
    348 F. Supp. 3d 145 (E.D.N.Y. 2018) ...................................................................15

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by Johnson v.*
    *California*, 543 U.S. 499 (2005) ...........................................................................10

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ............................................................................................7, 8

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program,*
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ...............................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................5

*Blake v. City of Grants Pass,*
    No. 1:18-CV-01823-CL, 2019 WL 3717800 (D. Or. Aug. 7, 2019) ......................13

*Bollard v. California Province of the Society of Jesus,*
    196 F.3d 940 (9th Cir. 1999) ..................................................................................5

*Budget Charters, Inc. v. Pitts,*
    2018 WL 1745780 (M.D. Tenn. Apr. 11, 2018) .....................................................15

*Christie v. Iopa,*
    176 F.3d 1231 (9th Cir. 1999) .........................................................................18, 20

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ............................................................................................9, 14

*Colaprico v. Sun Microsystems, Inc.,*
    758 F. Supp. 1335 (N.D. Cal. 1991) ..................................................................6, 19

*Davis v. Federal Elec. Comm'n,*
    554 U.S. 724 (2008) ..............................................................................................14

*In re Facebook PPC Advertising Litig.,*
    709 F. Supp. 2d 762 (N.D. Cal. 2010) .................................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
   2016 WL 3162203 (N.D. Cal. Jun. 7, 2016) ......................................................................19

*Hightower v. City & County of San Francisco*,
   77 F. Supp. 3d 867 (N.D. Cal. 2014) ...............................................................................14

*Honig v. Doe*,
   484 U.S. 305 (1988).........................................................................................11, 12, 14

*Index Newspapers LLC v. City of Portland*,
   474 F. Supp. 3d 1113 (D. Or. 2020) .................................................................................11

*Joe Hand Promotions, Inc. v. Dorsett*,
   No. 12–CV–1715–JAM–EFB, 2013 WL 1339231 (E.D. Cal. April 3, 2013).......................20

*Jones v. City of Los Angeles*,
   444 F.3d 1118 (9th Cir. 2006), *vacated by settlement* ............................................................9

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) .....................................................................................9, 15

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ..................................................................................5, 8, 13

*Leonard v. Clark*,
   12 F.3d 885 (9th Cir. 1993) ..............................................................................................6

*Levine v. Johanns*,
   No. C 05-04764 MHP, 2006 WL 8441742 (N.D. Cal. Sept. 6, 2006)....................................12

*Maneely v. City of Newburgh*,
   208 F.R.D. 69 (S.D.N.Y. 2002) .......................................................................................10

*Martin v. Boise*,
   920 F.3d 584 (9th Cir. 2019) ............................................................................................7

*Maryland State Conference of NAACP Branches v. Maryland Dep't of State Police*,
   72 F. Supp. 2d 560 (D. Md. 1999) ...................................................................................15

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)........................................................................................................11

*Mecinas v. Hobbs*,
   30 F.4th 890 (9th Cir. 2022) .................................................................................5, 6, 7, 11

*Moyle v. Cnty. of Contra Costa*,
   No. C-05-02324 JCS, 2007 WL 4287315 (N.D. Cal. Dec. 5, 2007) .....................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFFS' OPP. TO DEFS.'
MOT. FOR STAY PENDING APPEAL
CASE NO. 4:22-CV-05502-DMR

*N.Y. City Emps.' Ret. Sys. v. Berry*,
   667 F. Supp. 2d 1121 (N.D. Cal. 2009) ...........................................................6, 19, 20

*Nat. Res. Def. Council v. U.S. E.P.A.*,
   735 F.3d 873 (9th Cir. 2013) .......................................................................11, 14

*Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*,
   567 F.3d 521 (9th Cir. 2009) ...................................................................................6

*In re Navy Chaplaincy*,
   697 F.3d 1171 (D.C. Cir. 2012) ............................................................................11

*Neveu v. City of Fresno*,
   392 F. Supp. 2d 1159 (E.D. Cal. 2005).................................................................6

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)...........................................................................................9, 14

Ocean Advocates v. U.S. Army Corps of Eng'rs, 361 F.3d 1108 (9th Cir. 2004),
   amended on other grounds, 402 F.3d 846 (2005) ...............................................12

*Ortega-Melendres v. Arpaio*,
   836 F. Supp. 2d 959 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695
   F.3d 990 (9th Cir. 2012) .................................................................................12, 15

*N.B. ex rel. Peacock v. District of Columbia*,
   682 F.3d 77 (D.C. Cir. 2012) ................................................................................11

*Phillips v. City of Cincinnati*,
   479 F. Supp. 3d 611 (S.D. Oh. 2020) ...........................................................8, 11, 14

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D. Cal. 2004) ............................................................6, 18

*Roe v. City of New York*,
   151. F. Supp. 2d 495 (S.D.N.Y. 2001).............................................................11, 13

*Rosales v. Citibank, Fed. Sav. Bank*,
   133 F. Supp. 2d 1177 (N.D. Cal. 2001) ............................................................6, 18

*Rosenbaum v. City & Cnty. of San Francisco*,
   8 Fed. App'x 687 (9th Cir. 2001) ..........................................................................10

*Safari Club International v. Rudolph*,
   862 F.3d 1113 (9th Cir. 2017)..................................................................................6

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

PLAINTIFFS' OPP. TO DEFS.'
MOT. FOR STAY PENDING APPEAL
CASE NO. 4:22-CV-05502-DMR

*Shaw v. Jones*,
   No. 19-1343-KHV, 2020 WL 2101298 (D. Kan. May 1, 2020) ............................................15

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..................................................................................................................11

*Thomas v. County of Los Angeles*,
   978 F.2d 504 (9th Cir. 1992) ..............................................................................................14, 15

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021) ..............................................................................................................12

*Uroza v. Salt Lake Cnty.*,
   No. 2:11CV713DAK, 2014 WL 4457300 (D. Utah Sept. 10, 2014).......................................15

*Western Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) .....................................................................................................6

*Wills v. City of Monterey*,
   No. 21-cv-01998-EMC, --- F.Supp.3d ----, 2022 WL 3030528 (N.D. Cal. Aug.
   1, 2022) .......................................................................................................................................9

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) .....................................................................................................5

**RULES**

Fed. R. Civ. P.
   12(b)(6) .......................................................................................................................................5
   12(f).................................................................................................................................5, 6, 18
   15(a) ..........................................................................................................................................17
   15(a)(2) .....................................................................................................................................16

**REGULATIONS**

24 C.F.R. 91.5 ....................................................................................................................................2

**OTHER AUTHORITIES**

Joaquin Palomino & Trisha Thadani, *'Makes absolutely no sense': S.F.
   supervisors question evictions from supportive housing*, S.F. Chronicle
   (Mar. 20, 2023), https://www.sfchronicle.com/sf/article/sf-homeless-eviction-
   sro-breed-oversight-17849572.php ...........................................................................................3

Joe Kukura, *Supes Hold Hearing on Evictions of Formerly Homeless From SROs,
   Which Just Makes Them Homeless Again*, SFist (Mar. 21, 2023),
   https://sfist.com/2023/03/21/sf-spends-millions-evicting-formerly-homeless-
   from-sros-just-making-the-homeless-again/ ..............................................................................3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

PLAINTIFFS' OPP. TO DEFS.'
MOT. FOR STAY PENDING APPEAL
CASE NO. 4:22-CV-05502-DMR

## I.      INTRODUCTION

With this second Motion to Dismiss (the "Motion"), Defendants once again do not challenge any of Plaintiffs' substantive causes of action. Rather, the Motion presents a facial challenge to the standing of individual Plaintiffs. Those challenges are baseless. *First*, Defendants' standing challenge is irrelevant because they do not contest that Plaintiff Coalition on Homelessness has both associational and organizational standing with respect to each and every claim in the First Amended Complaint. As a result, this Court need not even consider this motion. *Second*, as this Court has already held, each individual Plaintiff has not only merely *alleged* a risk of future injury—they have even presented sufficient evidence that the risk of future injury is imminent such that a preliminary injunction is warranted. This heightened showing far exceeds Plaintiffs' pleading requirements.

Defendants assert that individual Plaintiffs have never "been the subject of any criminal enforcement" or that they suffer no imminent risk of street homelessness. But Defendants are wrong on both the facts and the law. Each individual Plaintiff clearly alleges that they are presently unsheltered or at risk of becoming unsheltered—and each individual Plaintiff has alleged specific instances of prior criminal enforcement against them simply because they are homeless. Regardless, the Ninth Circuit has already made clear that these allegations are unnecessary. Plaintiffs need not wait until they have already been harmed to enjoin Defendants' obviously unconstitutional custom and practice of criminalizing involuntary homelessness.

Finally, Defendants purport that the ministerial changes in Plaintiffs' First Amended Complaint are somehow "impertinent or "scandalous" and must be stricken. But in reality, Plaintiffs' minimal revisions are taken directly from the original complaint or other facts already in the record, and Defendants do not offer any reason why such changes would prejudice them. There is nothing scandalous in alleging the facts of Mayor London Breed's specific involvement in the City's criminalization of involuntary homelessness, which are directly relevant to Defendants' Eighth Amendment liability.

Defendants' Motion is yet another attempt to delay or avoid liability for the City's ongoing civil rights violations that necessitated this Court's preliminary injunction in the first place.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1   Plaintiffs respectfully request that the Court deny Defendants' Motion.

2   **II.    STATEMENT OF RELEVANT ALLEGATIONS**

3      **A.    Individual Plaintiffs Molique Frank, Toro Castaño, And Nathaniel Vaughn
           Are Homeless Or At Imminent Risk Of Homelessness.**
4

5          Plaintiff Molique Frank meets the U.S. Department of Housing and Urban Development

6   ("HUD") definition of homelessness, as he is currently residing in temporary shelter. First

7   Amended Complaint ("FAC"), Dkt. No. 111, ¶ 31; *see also* 24 CFR 91.5. Mr. Frank fears that if

8   he loses this temporary placement, he will become unsheltered again and be subject to the City's

9   regular criminalization threats and property destruction. Dkt. No. 111, ¶ 31. In fact, in August

10  2022, Mr. Frank learned that every unhoused person living in his shelter was to be evicted because

11  his shelter program was closing. *Id.*, at ¶ 30.

12         Plaintiff Toro Castaño is still at imminent risk of homelessness. Dkt. No. 111, ¶ 27.

13  Although at the time of the Complaint he had secured housing at a cooperative in San Francisco,

14  he did not know how he would afford to pay his rent from month to month. *Id.* He therefore meets

15  the U.S. Department of Housing and Urban Development (HUD) definition of being at risk of

16  homelessness, as he was one paycheck away from becoming homeless again. *Id.* Mr. Castaño

17  feared that if he was unable to secure permanent housing he could afford, he would become

18  unsheltered again and would once again be subject to the City's regular criminalization threats and

19  property destruction.[1] *Id.*

20         Plaintiff Nathaniel Vaughn remains at imminent risk of homelessness. He resides in a

21  Single Room Occupancy ("SRO") unit and faces the threat of eviction from that unit as the City

22  continues to carry out massive SRO evictions. Dkt. No. 111, ¶ 25 & n. 19 (listing various sources

23  documenting frequent SRO evictions). Mr. Vaughn will be unsheltered if he is evicted from his

24  SRO because he has no way of finding housing he can afford. *Id.* Mr. Vaughn fears that if he is

25  evicted and becomes unsheltered again, he will once again be subject to the City's regular

26

27  _____

28  [1] During the pendency of this litigation, as feared, Mr. Castaño lost his housing and is once again
    homeless. *See* Castaño Supp. Decl., Dkt. No. 50-5, ¶ 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

criminalization threats and property destruction.[2] *Id.*

Plaintiffs Frank, Castaño, and Vaughn each allege that they have been subject to Defendants' unconstitutional criminal enforcement in the past because they are involuntarily homeless. Dkt. No. 111, ¶¶ 24, 26, 29, 247-252. Mr. Castaño has been cited for illegal camping in the past (*id.* ¶ 249), Mr. Frank has been "repeatedly harassed" and physically assaulted by police simply for being unhoused and attempting to safeguard his survival belongings (*id.* ¶ 29), and Mr. Vaughn was forced to move by police under threat of citation or arrest for being unhoused at least once a month. *Id.* ¶ 24; *see also* Dkt. No. 65, at 17-18, 20, 23 (preliminary injunction order recounting the same based on uncontested declarations).

**B.     Individual Plaintiffs Teresa Sandoval, David Martinez, Sarah Cronk, And Joshua Donohoe Have Specifically Alleged Prior Criminal Enforcement Against Them Just Because They Are Homeless.**

Plaintiffs Teresa Sandoval, David Martinez, Sarah Cronk, and Joshua Donohoe are all currently unhoused and unsheltered. Dkt. No. 111, ¶¶ 33, 36, 38, 40. All four of these individual Plaintiffs have specifically alleged incidents of Defendants' past criminal enforcement against them merely because they are unhoused. Ms. Sandoval has been forcibly displaced on a regular basis for being unhoused, with SFPD officers saying "I'm going to detain you if you don't move." *Id.* at ¶ 254. These threats and move-along orders from law enforcement have not been accompanied by any offer of shelter or services. *Id.* Similarly, Mr. Martinez has regularly been threatened with citation or arrest if he did not comply with orders to move from where he was sleeping. *Id.* at ¶ 256. Ms. Cronk and Mr. Donohoe have been repeatedly disturbed by Defendants

---

[2] These threats and fears are not just speculative. Just last week, for example, "San Francisco supervisors pressed city officials […] to find solutions for the concerning number of formerly homeless people who have been evicted from the same supportive housing programs that pulled them off the streets — a pattern that one supervisor said 'defies logic.'" Joaquin Palomino & Trisha Thadani, *'Makes absolutely no sense': S.F. supervisors question evictions from supportive housing*, S.F. Chronicle (Mar. 20, 2023), https://www.sfchronicle.com/sf/article/sf-homeless-eviction-sro-breed-oversight-17849572.php; Joe Kukura, *Supes Hold Hearing on Evictions of Formerly Homeless From SROs, Which Just Makes Them Homeless Again*, SFist (Mar. 21, 2023), https://sfist.com/2023/03/21/sf-spends-millions-evicting-formerly-homeless-from-sros-just-making-the-homeless-again/ ("The SF Board of Supervisors Land Use Committee held a hearing Monday on the seemingly counterintuitive practice of putting people into supportive housing, only to evict them a short time later").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

early in the morning five times a week and have suffered regular SFPD and DPW harassment for being unhoused. *Id.* at ¶¶ 37, 39, 257.

In addition to their specific prior experiences with Defendants' unlawful criminal enforcement, each individual Plaintiff has also specifically alleged that they face an imminent risk of future harm in light of Defendants' ongoing pattern and practice of threatening, citing, and arresting unhoused people for sleeping in public despite having no access to shelter. *Id.* at ¶ 162 ("[O]ver the three-year period from July 2018 to October 2021, SFPD cited or arrested unhoused people for illegal lodging under California Penal Code § 647(e) at least 360 times."), ¶ 163 ("During the same three-year period, SFPD cited or arrested unhoused people under California Penal Code § 148(a) for refusal to obey a law enforcement order to vacate or 'move along' at least 2,652 times."), ¶ 165 ("SFPD has cited or arrested at least 3,000 unhoused individuals for sleeping or residing in public over the last three years during a time when San Francisco had insufficient and inadequate shelter to provide to its unhoused residents. It has threatened to enforce these laws against thousands more."), ¶ 270 ("Defendants have arrested, cited, and fined hundreds of unhoused residents for lodging, sitting, or sleeping in public over the past several years—and have arrested, cited, and fined thousands more for refusal to cease those activities in response to a 'move along' order."), ¶ 218 (summarizing SFPD's pattern and practice of criminalizing unhoused individuals).[3]

## C.    Mayor Breed Participates In The City's Unlawful Criminalization Scheme.

Mayor Breed has continued to permit the City and its various agencies to carry out constitutional violations—and she has celebrated the HSOC program, praised its supposed success, and sought additional funding for it. Dkt. No. 111, ¶¶ 44, 224. Mayor Breed has also expressly called for law enforcement to remove unhoused individuals from public property despite making public statements that demonstrate the Mayor's awareness that Defendants lack sufficient

---

[3] Beyond these detailed allegations, the Court has already determined that each of the individual Plaintiffs "have demonstrated that they will likely suffer irreparable harm in the absence of preliminary relief." Dkt. No. 65, 45:25-26. These findings were supported by largely uncontested declarations from the individual plaintiffs that tracked the allegations in the First Amended Complaint. *See*, *e.g.*, Dkt No. 9-4, ¶¶ 8-13.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

affordable housing or shelter to care for thousands of the City's unhoused residents. *Id.* at ¶ 224. Mayor Breed has used her office to lead unconstitutional sweep operations that improperly diverted City resources—including requests to unlawfully displace unhoused individuals to avoid the Mayor being seen around them. *Id.* at ¶ 45 & nn. 22-23. Mayor Breed also has had knowledge of and has participated in planning at least two large-scale sweep operations that unlawfully displaced unhoused individuals. *Id.* at ¶ 45.

## III.   LEGAL STANDARD

Defendants' 12(b)(1) motion is a *facial attack* on this Court's jurisdiction—meaning that Defendants rely exclusively on the allegations in the complaint itself to support the motion. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (a facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction").[4] As such, the Court applies the same legal standards as on a motion to dismiss under Rule 12(b)(6)—taking all of "plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999) ("a dismissal for lack of subject matter jurisdiction under Rule 12 (b)(1) […] is the same standard under which we review a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). "[D]etailed factual allegations" are unnecessary as long as the plaintiff's allegations could "plausibly" state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see id.* (complaint need only contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim).

Motions to strike under Rule 12(f) "are generally disfavored because they are often used

---

[4] A factual attack, by contrast, requires that Defendants "dispute[] the truth of the allegations" by relying on extrinsic evidence and declarations disproving the truth of Plaintiffs' allegations. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Defendants have declined to do so. Furthermore, any factual attack would be premature because where jurisdictional issues and substantive issues "are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1   as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales*

2   *v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); *see also Neveu v. City*

3   *of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) ("Motions to strike are disfavored and

4   infrequently granted"). Such motions "should not be granted unless it is clear that the matter to be

5   stricken could have *no possible bearing* on the subject matter of the litigation." *Colaprico v. Sun*

6   *Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (emphasis added). If the Court has

7   "any doubt whether the portion to be stricken might bear on an issue in the litigation, the court

8   should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D.

9   Cal. 2004). Furthermore, a Rule 12(f) motion will only be granted if a defendant can demonstrate

10  actual prejudice. *N.Y. City Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121 (N.D. Cal. 2009) ("Such

11  motions should only be granted if the matter has no logical connection to the controversy at issue

12  *and* may prejudice one or more of the parties to the suit") (emphasis in original).

13  **IV.   ARGUMENT**

14      **A.   This Court Should Reject Defendants' Meritless Standing Challenge.**

15         1.   <u>Defendants Do Not Challenge Plaintiff Coalition On Homelessness's</u>

16            <u>Standing, And Therefore The Court Need Not Consider Defendants'</u>
          <u>Arguments Regarding Individual Plaintiffs' Standing.</u>

17      In the Ninth Circuit, a court "need not address standing of each plaintiff if it concludes that

18  one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*,

19  567 F.3d 521, 523 (9th Cir. 2009), *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The

20  general rule applicable to federal court suits with multiple plaintiffs is that once the court

21  determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

22      Here, Defendants do not challenge the Coalition on Homelessness's standing to bring each

23  and every one of the claims in this action.. Thus, the Court need not consider Defendants' various

24  arguments as to standing for the individual plaintiffs—and should dismiss the instant motion

25  outright. *See Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) (holding that because one

26  organizational plaintiff had sufficiently established standing, the court did not need to address the

27  standing of other organizational and individual plaintiffs); *Safari Club International v. Rudolph*,

28  862 F.3d 1113, 1117 n. 1 (9th Cir. 2017) (same); *Western Watersheds Project v. Kraayenbrink*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

632 F.3d 472, 484 n.7 (9th Cir. 2011) (same).

        2.    <u>Individual Plaintiffs Teresa Sandoval, David Martinez, Sarah Cronk, And Joshua Donohoe Allege A Risk of Future Harm Sufficient To Establish Standing On Their Eighth Amendment Claims.[5]</u>

      Even if the Court chooses to consider the merits of Defendants motion, it should still be denied. Defendants assert that a subset of individual plaintiffs lack standing as to their Eighth Amendment claims because they fail to allege that they have been "cited, arrested, or prosecuted for being unhoused," but that is a misstatement of binding law.[6] Mot. at 8. In *Martin v. Boise*, the Ninth Circuit held that plaintiffs "need not . . . await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." 920 F.3d 584, 609 (9th Cir. 2019), *citing Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (noting that a plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief"). Instead, standing is established when there is a "credible threat of prosecution." *Martin*, 920 F.3d at 609, *citing Babbitt*, 442 U.S. at 298.

      The *Martin* court held that a "credible threat" of receiving a citation in the future was sufficient to establish Eighth Amendment standing. *Id.* at 610. In fact, in *Martin*, the court held that plaintiffs had established a "credible threat" for standing purposes based on a finding that the City of Boise had issued 175 citations in a three-month period—even where the unhoused plaintiff did not live in the jurisdiction and only visited a few times a year. *See id.* at 609-11.

      By contrast, Plaintiffs have alleged that Defendants engage in a pattern and practice of citing and arresting *hundreds of involuntarily homeless individuals* each year—and that the City has issued at least *3,000* such citations over the past three years. Dkt. No. 112, ¶ 165. Plaintiffs have also alleged that Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe are all unhoused people who reside full-time in San Francisco and are therefore subject to the City's

---

[5] Defendants do not challenge this subset of Plaintiffs' standing to assert Causes of Action 3-12.

[6] The point is regardless academic, as in addition to the Coalition on Homelessness's standing, it is clear from the record that other individual Plaintiffs also establish standing as to the Eighth Amendment claims. For example, Toro Castaño is in fact presently homeless and has in fact been cited for illegal lodging in the past. Castaño Supp. Decl., Dkt. No. 50-5, ¶ 2; Dkt. No. 111, ¶¶ 26, 249. The Ninth Circuit makes clear that this Court need look no further to conclude that "standing to proceed beyond the pleading stage" has been established. *See Mecinas*, 30 F.4th at 897.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

unconstitutional enforcement. *Id.*, at ¶¶ 32-34, 367-40. These allegations alone are more than sufficient to assert standing under *Martin*—and far surpass what the plaintiffs demonstrated in that seminal case. Furthermore, the individual Plaintiffs have also specifically alleged ongoing, repeated law enforcement harassment and threats of citation and arrest for being unhoused— lending further credibility to the risk of future enforcement. *Id.*, at ¶ 37 ("Ms. Cronk faces regular harassment by the City, including SFPD and DPW."), ¶ 39 ("Mr. Donohoe has faced regular harassment by the City while homeless—including from SFPD and DPW."), ¶ 254 ("Ms. Sandoval has been harassed and threatened by SFPD regularly over the past several years, with SFPD saying things like, "I'm going to detain you if you don't move."), ¶ 256 ("Mr. Martinez has been threatened by SFPD repeatedly over the past several years. SFPD will threaten to cite or arrest him if he does not comply with orders to move from where he is sleeping. These threats often take the form of move-along orders, with no offer of shelter or services."). Based on these detailed allegations of prior enforcement both in the aggregate and specifically against the individual Plaintiffs, which must be taken as true, this Court should draw the reasonable inference that the Plaintiffs were threatened or enforced against because of their involuntary status and face a "credible threat" that such enforcement will continue. *See Leite* 749 F.3d at 1121; *Babbitt*, 442 U.S. at 298.

In fact, beyond a mere "credible threat" of future enforcement, this Court has found that Plaintiffs have *already demonstrated* that the individual Plaintiffs are likely to suffer immediate future harm from the City's unconstitutional criminalization scheme. Dkt. No. 65, at 42 ("Having carefully considered the evidence submitted by both sides, the court concludes that Plaintiffs are likely to succeed on the merits of their claim that Defendants violate the Eighth Amendment […]. Plaintiffs have demonstrated that they will likely suffer irreparable harm in the absence of preliminary relief").

Indeed, other courts have also found that plaintiffs have standing to pursue prospective injunctive relief even where they have not yet been cited or arrested—as long as they can articulate a credible threat of future enforcement. *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 654-55 (S.D. Oh. 2020) (rejecting "the City's contention that Plaintiffs lack standing to bring an Eighth

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1    Amendment claim because they have not been cited, arrested, or convicted" in part based on the

2    "City's history of enforcing the policies against Plaintiffs and other homeless residents); *see also*

3    *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006) ("a person suffers

4    constitutionally cognizable harm *as soon as he is subjected to the criminal process*" which can

5    begin "even earlier" than citation or arrest), *vacated by settlement*) (emphasis added); *Aid for*

6    *Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006) (finding plaintiffs alleged realistic threat

7    of a future constitutional injury despite no previous enforcement against them).

8        In fact, this Court has rejected Defendants' contention in a recent decision. *See Wills v.*

9    *City of Monterey*, No. 21-cv-01998-EMC, --- F.Supp.3d ----, 2022 WL 3030528, at *4 (N.D. Cal.

10   Aug. 1, 2022) ("The City […] argue[s] that in the Ninth Circuit a plaintiff must have been

11   convicted, arrested, or cited under an anti-camping ordinance in order to confer standing. This is

12   not an accurate characterization […]. Martin did not suggest—much less hold—that a conviction

13   or citation is necessary to have standing."). The district court went on to note that the pro se

14   unhoused plaintiff who had not been cited or arrested in the past could have articulated prospective

15   injunctive relief standing if she had alleged that she was still without permanent housing, lived in

16   the area, and was likely to be subject to the same unlawful practices in the future. *Wills*, 2022 WL

17   3030528, at *5.

18       Defendants' sole authorities for their insistence that plaintiffs must demonstrate a prior

19   citation or arrest to assert standing is *Lyons* and *O'Shea*. Dkt. No. 112, at 8-9. But neither case

20   supports Defendants' arbitrary rule because *Lyons* and *O'Shea* both merely assert the ordinary test

21   for standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 109 (1983) (plaintiff must merely

22   make a "showing that he is realistically threatened by a repetition of his experience"); *O'Shea v.*

23   *Littleton*, 414 U.S. 488, 496 (1974) (standing rests on whether "any perceived threat […] is

24   sufficiently real and immediate to show an existing controversy").

25       Furthermore, the Ninth Circuit has clearly held that *Lyons* and *O'Shea* do not apply in

26   pattern and practice cases—where the existence of an alleged pattern or practice is itself sufficient

27   to establish standing for the purposes of injunctive relief. *See*, *e.g.*, *LaDuke v. Nelson*, 762 F.2d

28   1318, 1324 (9th Cir. 1985) (distinguishing *Lyons* and noting that "[t]he Supreme Court has

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

repeatedly upheld the appropriateness of federal injunctive relief to combat a 'pattern' of illicit law enforcement behavior"); *Rosenbaum v. City & Cnty. of San Francisco*, 8 Fed. App'x 687, 690 (9th Cir. 2001) (past pattern and practice of police misconduct was distinguishable from *Lyons* and *O'Shea* and sufficient to confer injunctive relief standing); *Armstrong v. Davis*, 275 F.3d 849, 861-66 (9th Cir. 2001) ("[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement"), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *Moyle v. Cnty. of Contra Costa*, No. C-05-02324 JCS, 2007 WL 4287315, at *14 (N.D. Cal. Dec. 5, 2007) (distinguishing *Lyons* and holding that plaintiff had standing for injunctive relief because strip searches of juveniles was an "established practice"); *see also Maneely v. City of Newburgh*, 208 F.R.D. 69, 73 (S.D.N.Y. 2002) ("Following the standard set forth in *Lyons*, the Second Circuit has held that a plaintiff may have standing to seek injunctive relief against a police department if the alleged improper actions were conducted pursuant to a uniform practice").

Here, Plaintiffs amply allege that Defendants have a custom or practice of violating the Eighth Amendment in law enforcement interactions with hundreds of unhoused individuals each year. Dkt. No. 111, ¶ 162 ("over the three-year period from July 2018 to October 2021, SFPD cited or arrested unhoused people for illegal lodging under California Penal Code § 647(e) at least 360 times."), ¶ 163 ("During the same three-year period, SFPD cited or arrested unhoused people under California Penal Code § 148(a) for refusal to obey a law enforcement order to vacate or "move along" at least 2,652 times.), ¶ 165 ("SFPD has cited or arrested at least 3,000 unhoused individuals for sleeping or residing in public over the last three years during a time when San Francisco had insufficient and inadequate shelter to provide to its unhoused residents. It has threatened to enforce these laws against thousands more."), ¶ 270 ("Defendants have arrested, cited, and fined hundreds of unhoused residents for lodging, sitting, or sleeping in public over the past several years—and have arrested, cited, and fined thousands more for refusal to cease those activities in response to a 'move along' order."); *see also id.* at ¶ 218 (summarizing SFPD's pattern and practice of criminalizing unhoused individuals). The specific data that Plaintiffs have amassed and alleged in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

their complaint is, thus, sufficient to confer standing on the individual plaintiffs. *See, e.g.*, *In re Navy Chaplaincy,* 697 F.3d 1171, 1177 (D.C. Cir. 2012) (finding standing if there are sufficient allegations of a pattern and practice rendering any future injury "sufficiently non-speculative" even if policies did not "directly authorize the allegedly illegal conduct"); *N.B. ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 85 (D.C. Cir. 2012) (crediting "statistical evidence" to establish such a pattern and practice); *Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1121 (D. Or. 2020) ("documented incidents of violence, threats, or intimidation" and "Defendants' repeated past conduct" established a "real and immediate threat of repeated injury sufficient to create standing"), *Roe v. City of New York*, 151 F. Supp. 2d 495, 506 (S.D.N.Y. 2001) ("plaintiffs' fear of arrest is reasonable because it is grounded in both prior arrests and an allegedly ongoing NYPD practice […] Such a claim is not too attenuated to preclude standing).

3.     <u>Plaintiffs Nathaniel Vaughn, Toro Castaño, and Molique Frank Are At Imminent Risk of Future Harm Sufficient To Confer Injunctive Relief Standing.</u>

As to the remaining individual Plaintiffs, as discussed *supra*, the Court need not address standing because standing is not even challenged for at least the Coalition on Homeless on all Causes of Action and for Teresa Sandoval, David Martinez, Sarah Cronk, and Joshua Donohoe for Causes of Action 3-12 (and as explained above, these four individuals have standing on the remaining Causes of Action as well). *Mecinas*, 30 F.4th at 897, *see supra*, Sections IV.A.1-2. Even so, Plaintiffs Nathaniel Vaughn, Toro Castaño, and Molique Frank do plainly allege standing to pursue prospective injunctive relief in this action.

The requirements to satisfy standing are not onerous, particularly at the pleading stage. Indeed, "[e]ven a small probability of injury is sufficient" to create standing. *Massachusetts v. EPA*, 549 U.S. 497, 525 n. 23 (2007) (internal citations and quotations omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (future harm need not be certain, there must simply be a "substantial risk that the harm will occur"). Asserting standing is even more relaxed when the risk of future harm is the result of an involuntary status. *See Honig v. Doe*, 484 U.S. 305, 320 (1988) (finding *Lyons* inapplicable when handicapped plaintiff could not "conform his conduct to socially acceptable norms"); *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878-

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

79 (9th Cir. 2013) (finding inability to control exposure to risk of harm sufficient to establish standing); *see also Phillips*, 479 F. Supp. 3d at 651 (holding that "where it is difficult or impossible for a plaintiff to conform his behavior to comply with the challenged law, there is a greater likelihood the law will be enforced against him in the future"). Standing is established "if each step in the causal chain is plausible, even if the chain of events leading from defendant's conduct to plaintiff's injury is not immediate." *Levine v. Johanns*, No. C 05-04764 MHP, 2006 WL 8441742, at *8 (N.D. Cal. Sept. 6, 2006) (*citing Ocean Advocates v. U.S. Army Corps of Eng'rs*, 361 F.3d 1108, 1119–20 (9th Cir. 2004), *amended on other grounds*, 402 F.3d 846 (2005)); *see also Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) (Even when "[t]he likelihood that any particular named Plaintiff will again be stopped in the same way may not be high…exposure to th[e] policy is both itself an ongoing harm and evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated again").

Mr. Castaño, Mr. Frank, and Mr. Vaughn are only one credible step away from being on the streets and subject to Defendants' pattern of unconstitutional enforcement practices yet again; there is no extended or improbable "chain of events" that must occur. *See Levine v. Johanns*, 2006 WL 8441742, at *8. This is more than enough to assert Article III standing.

As described in the FAC, Mr. Castaño's housing situation was temporary and he did "not know how he [would] afford to pay his rent from month to month"—putting him at imminent risk of homelessness and meeting HUD's definition of the same. Dkt. No. 111, ¶ 25. And indeed, during the pendency of this case, Mr. Castaño lost his housing, rendering him involuntarily homeless and subject to the same threats and harassment he had experienced from Defendants in the past. Castaño Supp. Decl., Dkt. No. 50-5, ¶¶ 2-9; *see Honig*, 484 U.S. at 320 (noting that involuntary circumstances bolsters injunctive relief standing).

Mr. Frank pleads that he is in fact homeless and is currently staying in a temporary shelter, meaning that he meets the HUD definition of homelessness and is at imminent risk of sleeping on the street. Dkt. No. 111, ¶ 31; *see TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2210 (2021) (holding that persons exposed to "risk of future harm" may pursue "injunctive relief to prevent the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

harm from occurring, at least as long as the risk is sufficiently imminent and substantial").

Lastly, Mr. Vaughn resides in an SRO facility but pleads that he "now faces the potential threat of eviction at a time when the City is carrying out massive SRO evictions"—which is substantiated with allegations regarding individuals being evicted out of their SRO units in large numbers over the past several months. Dkt. No. 111, ¶ 25 & n. 19; *see also supra* note 2 (describing recent municipal hearing investigating mass SRO evictions).

Plaintiffs Castaño, Frank, and Vaughn each plead that they fear they will become unsheltered again. *Id.*, at ¶¶ 25, 27, 31. These allegations are buttressed by Plaintiffs' pleadings that unhoused people regularly cycle through "different streets, jails, hospitals, and temporary shelters." *Id.*, at ¶ 75. As Mr. Castaño's experience after the filing of this case shows, this fear is well-founded and far from remote. *See* Castaño Supp. Decl., Dkt. No. 50-5, ¶ 2. The fact that a person currently possesses some form of temporary shelter does not mean that the person is not at extreme and substantial risk of losing that shelter and being forced to live on the streets. *See, e.g.,* Dkt. No. 111, ¶ 83 ("The present shelter inventory includes 2,263 *temporary* Shelter-in-Place hotel rooms for COVID-19 that will be phased out entirely by the end of FY21-22."). Mr. Frank lived this experience when he was evicted from his SIP hotel and transferred to another temporary shelter space. *See id.* at ¶¶ 30-31. As the First Amended Complaint notes, this is why HUD defines "literally homeless" to include "people living in shelters and similar temporary arrangements," such as the individual Plaintiffs described here. *Id.* at ¶ 1, n. 1.

No one can credibly doubt that these housing situations are precarious or that escaping homelessness is difficult. At a minimum the Court must "draw[] all reasonable inferences" in Plaintiffs' favor and conclude—as Plaintiffs allege—that they may readily find themselves on the street again and subject to Defendants' enforcement. *Leite v. Crane Co.*, 749 F.3d at 1121. Under similar circumstances, the district court in *Grants Pass* held that unhoused individuals in temporary shelter or housing programs had injunctive relief standing. *See Blake v. City of Grants Pass*, No. 1:18-CV-01823-CL, 2019 WL 3717800, at *5 (D. Or. Aug. 7, 2019) (standing properly asserted because "each of Plaintiffs' alleged situations falls under the definition of homelessness set forth by HUD […] Ms. Blake is beyond her allotted stay in a transitional housing program and

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

may soon be on the street again […] Ms. Johnson and Mr. Logan have no permanent residence"); *see also Roe v. City of New York*, 151. F. Supp. 2d 495, 504 (S.D.N.Y. 2001) (noting that shared past and future experience creates "an identifiable class of targeted individuals" and confers standing to seek an injunction (*citing Thomas*, 978 F.2d at 508)); *c.f. Lyons*, 461 U.S. at 11 (holding premised on Mr. Lyons being unable to distinguish himself from "any other citizen" of Los Angeles).

Defendants fail to point to a single case that requires all Plaintiffs to allege that they are presently unsheltered to establish standing. Mot. at 5-7. Rather, Plaintiffs merely must show that there is a substantial risk of the harm occurring. *See Davis v. Federal Elec. Comm'n*, 554 U.S. 724, 734 (2008) ("The injury required for standing need not be actualized."). Defendants point to just three cases in support of their arguments: *Hightower v. City & County of San Francisco, O'Shea*, and *Lyons*. But again, each of these cases are inapposite to the situation here.

*Hightower* found that "there was no likelihood of further First Amendment violations" because "Plaintiffs have not alleged that there is any threat that their […] conduct will be restrained again." 77 F. Supp. 3d 867, 886 (N.D. Cal. 2014). In contrast here, Defendants ignore the fact that, were Plaintiffs to lose their temporary shelter, they specifically allege that they would be immediately subject to ongoing violations of their constitutional rights. Indeed, this Court has already found that there is a substantial likelihood that Plaintiffs would prevail on these claims because of the likelihood of future harm in light of Defendants' custom and practice of Eighth Amendment violations. Dkt. No. 65, 35-45.

Meanwhile, the *O'Shea* plaintiffs could not allege standing on the basis of any future potential injury because the Court assumed that the plaintiffs could simply "conduct their activities within the law and so avoid […] exposure to the challenged course of conduct." 414 U.S. 488, 495-97 (1974). But that is simply not possible in the context of an involuntary status—such as being homeless—where standing is conferred precisely because plaintiffs are unable to avoid the offending conduct that puts them in the government's crosshairs. *See Honig*, 484 U.S. at 320; *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d at 879; *Phillips*, 479 F. Supp. 3d at 651.

Finally, *Lyons* is inapposite because Plaintiffs' Amended Complaint is replete with pattern

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

and practice allegations demonstrating that if Mr. Castaño, Mr. Frank, and Mr. Vaughn become

unsheltered again, they will immediately be subject to Defendants' unconstitutional enforcement

conduct. *See* Dkt. No. 111 ¶¶ 263-338 (detailed pattern and practice allegations); *id.*, at ¶¶ 24, 26,

29 (past threats of enforcement including threats of citations and arrest, and actual arrest). *See*

*LaDuke,* 762 F.2d at 1324 (distinguishing *Lyons* and refusing to apply it in a pattern and practice

case).  In sum, Defendants have not introduced a single authority to support their position that all

individual plaintiffs must be presently unsheltered in order to pursue injunctive relief.

As stated above, courts have routinely rejected the application of *Lyons* in pattern and

practice cases and held that plaintiffs who are just one step away from a government's unlawful

pattern and practice have standing to pursue injunctive relief. *See, e.g., Uroza v. Salt Lake Cnty.*,

No. 2:11CV713DAK, 2014 WL 4457300, at *5 (D. Utah Sept. 10, 2014) ("victim of an established

government policy can sue to enjoin that policy even if he would not again be subject to it unless

he be arrested once more"); *Shaw v. Jones*, No. 19-1343-KHV, 2020 WL 2101298, at *7-8 (D.

Kan. May 1, 2020) ("plaintiffs have established a real and immediate threat of future harm […]

Unlike in *Lyons*, plaintiffs have plausibly alleged that […] they will have another encounter with

KHP troopers"); *Amadei v. Nielsen*, 348 F. Supp. 3d 145 (E.D.N.Y. 2018) (frequent travelers at

JFK Airport have standing to enjoin routine unlawful searches); *Budget Charters, Inc. v. Pitts*,

2018 WL 1745780, at *6 (M.D. Tenn. Apr. 11, 2018) ("This is not a case, like *Lyons,* where the

constitutional violation could be visited upon anyone […] the potential for a future injury to the

plaintiffs arises out of their allegation of an ongoing pattern of abuse directed at a particular,

limited class of targets of which they are members"); *Ortega-Melendres v. Arpaio*, 836 F. Supp.

2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)

(Even when "[t]he likelihood that any particular named Plaintiff will again be stopped in the same

way may not be high…exposure to th[e] policy is both itself an ongoing harm and evidence that

there is 'sufficient likelihood' that Plaintiffs' rights will be violated again"); *Maryland State*

*Conference of NAACP Branches v. Maryland Dep't of State Police*, 72 F. Supp. 2d 560, 564-65

(D. Md. 1999) ("This combination of alleged past injury, an earlier pattern and practice finding,

and the plaintiffs' likely future travel is sufficient to confer standing"); *see also Thomas v. County*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

*of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) (Black and Latino residents within a geographic

area have standing to challenge racially discriminatory law enforcement practice despite *Lyons*).[7]

**B.     Defendants Have No Basis To Strike Plaintiffs' Allegations Describing the Mayor's Direct Role In The City's Eighth Amendment Violations.**

1.     Plaintiffs' Amendments Were Not Prohibited By The Court's January 12 Order

Plaintiffs' amendments did not violate the Court's January 12, 2023 order because the

amendments are substantively identical to allegations that Plaintiffs included in their original

Complaint. On January 12, 2023, Plaintiffs raised new facts that had come to light regarding Mayor

Breed's and Sam Dodge's personal liability for the deprivation of Plaintiffs' constitutional rights.

*See* Trans. Jan. 12, 2023, 6:22-7:8. In response, the Court "granted leave to amend the complaint

to voluntarily dismiss either San Francisco or Breed/Dodge in their official capacities and may add

claims against Breed and/or Dodge in their individual capacities" by February 28, 2023. Dkt. No.

84, at 1. But Plaintiffs have been unable to assess the extent of any wrongdoing on the part of

Mayor Breed in her personal capacity because Defendants have not yet provided substantive

discovery relating to Mayor Breed's role in response to Plaintiffs' outstanding discovery requests.

*See* Notice of Am. Compl., Dkt. No. 110 at 1. Accordingly, Plaintiffs chose not to bring any

individual claims against Mayor Breed in her personal capacity at this time. *Id.* As such, the

Amended Complaint is substantively similar to the original complaint in all relevant respects.

Nonetheless, Defendants claim that Plaintiffs exceed the scope of this Court's order by

---

[7] To the extent that the Court finds Defendants' arguments persuasive, Plaintiffs should be permitted to amend the First Amended Complaint. Fed. R. Civ. P. 15(a)(2). Such amendment would not be futile given the abundant record before the Court thus far. *See, e.g.*, Mot. for Prelim. Inj., Dkt. No. 9, at 9-11 (discussing expert analysis of three years' worth of City data showing that Defendants "cited or arrested unhoused people for illegal lodging under Cal. Penal Code § 647(e) at least 360 times" and "under Cal. Penal Code § 148(a) for refusal to obey a law enforcement order to vacate or 'move along' at least 2,652 times," while likely subjecting thousands of unhoused residents to move-along orders under threat of citation or arrest), 14-15 (summarizing declarations submitted by thirty-one sworn declarants discussing their direct experiences with and observation of criminalization without shelter offers; *see also* Herring Decl., Dkt. No. 9-1, ¶¶ 40-57 (analyzing data from HSOC encampment clearance operations and forced removals without adequate shelter), ¶¶ 58-79 (analyzing SFPD enforcement data, including dispatch logs and arrest and citation records, evidencing widespread enforcement without shelter).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

adding entirely "new factual allegations" to the Amended Complaint at Paragraphs 10, 43-46, 241, and 243-44. *See* Mot. at 10. But this mischaracterizes Plaintiffs' Amended Complaint. *First*, Paragraphs 43, 44, and 46 are word-for-word allegations that *were* part of Plaintiff's original Complaint. Dkt. No. 111-1 (comparing Paragraphs 43, 44, and 46 with the deleted paragraphs at 52, 53, 54). *Second*, Paragraph 241 is also an almost-identical allegation that was part of Plaintiff's original complaint. Dkt. No. 111-1 (comparing Paragraph 241 to deleted paragraph 55). The only addition to Paragraph 241 was the allegation that "Defendants have also admitted this fact in their Opposition to Plaintiffs' Motion for a Preliminary Injunction." *Id.* Given that Defendants have *admitted to this fact in their own briefing*, it seems hardly necessary for Defendants to complain as to the inclusion of this fact. *Third*, Paragraphs 10, 45, 243, and 244 merely fleshed out allegations that were previously included in the original Complaint's footnote number 22. Indeed, the only few additional factual details incorporated into the Amended Complaint come directly from evidence already in the record—namely, Kaki Marshall's declaration in support of Plaintiffs' preliminary injunction motion. *See* Dkt. No. 111, ¶¶ 10, 45, 243-44. Not only was this evidence already in the record, but Plaintiffs previewed these allegations for both Defendants and the Court at the January 12 hearing. Trans. Jan. 12, 2023, 7:1-8.

Plaintiff, then, did not add "new factual allegations" so much as provide additional color and context of allegations that already existed in the original complaint. To the extent that Defendants complain about citations to declarations submitted in support of Plaintiff's motion for preliminary injunction, those declarations have been a part of the factual record for months—and were the basis of Plaintiffs' request for leave to amend as granted by the Court. *See id.* As such, none of the revisions to Plaintiff's Amended Complaint exceeded the scope of the Court's order, and indeed, Plaintiffs' revisions were based solely on allegations made in the original Complaint or already in the factual record. In any event, leave to amend—which is "freely" given—would support inclusion of these few extremely limited factual elaborations contained in the First Amended Complaint.  *See* Fed. R. Civ. P. 15(a).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

2.    Plaintiffs' Allegations Are Not "Redundant, Immaterial, Impertinent, Or Scandalous"

Even assuming that Plaintiffs' revisions could be considered "factually new allegations," they are not "redundant, immaterial, impertinent, or scandalous." None of Defendants' arguments satisfy the high bar required to strike pleadings under Rule 12(f). *See* Mot.  11. If the Court has "*any doubt* whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (emphasis added), *see In re Facebook PPC Advertising Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010) (holding that motions to strike may only be granted if the matter to be stricken "could not have *any possible bearing* on the subject matter of the litigation," but that "allegations which contribute to a full understanding of the complaint as a whole need not be stricken") (emphasis added). Indeed, motions to strike are "generally disfavored" and are "generally not granted." *Rosales*, 133 F. Supp. 2d at 1180.

*First*, Defendants are incorrect that Plaintiffs' revisions "serve no legitimate pleading purpose." *See* Mot. at 11. Plaintiffs' revisions document multiple instances of unconstitutional violations directed by Defendants' leadership, including Mayor Breed. Dkt. No. 111, ¶¶ 43-46, 241-44. These allegations are not only relevant to Plaintiffs' claims insofar as they establish specific instances of unconstitutional conduct, but they also "contribute to a full understanding of the complaint." *In re Facebook PPC Advertising Litig.*, 709 F. Supp. 2d. at 773.

Whether or not Mayor Breed and Mr. Dodge are named defendants is irrelevant to whether their actions "might bear on an issue in the litigation" (*Platte Anchor Bolt, Inc.*, 352 F. Supp. 2d at 1057)—especially here, where Plaintiffs could establish Defendants' liability through ratification. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (discussing "ratification" by a final policymaker as one way of proving liability); *see also* Dkt. No. 111, ¶ 224 ("Mayor Breed has also expressly called for law enforcement to remove unhoused individuals from public property despite making public statements that plainly demonstrate the Mayor's awareness that the City does not have enough affordable housing or shelter to care for thousands of the City's unhoused residents."); *see id.* at ¶¶ 45, 242 (describing two large-scale sweeps that

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

18

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

Mayor Breed's office helped to plan or initiated through social media).[8] Because of this bearing on the subject matter of the litigation, the motion to strike should be denied. *See Colaprico*, 758 F. Supp. at 1339 (emphasizing that "motions to strike should not be granted unless it is clear that the matter to be stricken could have *no possible bearing* on the subject matter of the litigation") (emphasis added).

*Second*, Defendants claim that the revisions are "scandalous" because they "impute to city officials an animus and lack of compassion." Mot. at 11. However, Plaintiffs' factual allegations merely report upon Mayor Breed's and Mr. Dodge's actual conduct. Defendants' own case law demonstrates that this factual reporting is insufficient to establish that allegations are "scandalous." In *Gallegos v. Roman Catholic Archbishop of San Francisco*, the court refused to strike allegations concerning a "long history of sexually harassing conduct at [diocesan] high schools . . . perpetrated by students, teachers, and high-level administrators." 2016 WL 3162203, at *3 (N.D. Cal. Jun. 7, 2016). While the defendant contended that the "sole purpose of . . . these salacious allegations is to scandalize [the Archbishop] before a fact finder," the district court disagreed, holding that the "challenged allegations themselves do not go into 'salacious' or 'needless detail.'" *Id.* Here, Plaintiffs' revisions regarding City officials are several short paragraphs that cannot possibly be construed as "salacious," nor do they go into any "needless detail." *Id.*; *see also N.Y. City Emps.' Ret. Sys.*, 667 F. Supp. 2d at 1128 (motion to strike failed when defendant did not "contend that any of the allegations she wishe[d] to strike [we]re untrue or obtained through illicit means").

*Third*, Defendants claim that these allegations "fail to support Plaintiff's *Monell* claims" and that "the Mayor's direction of City resources to a particular location at a particular time in no way suggests she ordered city employees to violate department policies." Mot. at 11. First, a motion to strike subsumed within a motion to dismiss is the improper forum to litigate whether

---

[8] In any case, Defendants paint with a broad stroke, since Plaintiffs' "revisions" include other facts further explaining the extent of Defendants' constitutional violations beyond allegations against Mayor Breed. *See, e.g.,* Dkt. No. 111-1 at ¶ 241 (discussing the fact that Defendants do not have enough shelter to accommodate all unhoused individuals that it conducts enforcement against on any given day), ¶ 243 ("HSH's former Director of Outreach and Temporary Shelter confirmed that there was frequently no shelter to offer the individuals identified in these texts.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

Plaintiffs' allegations are sufficient to support a *Monell* claim. But, in any case, these allegations are indeed relevant as final policymaker and ratification evidence and provide a "full understanding" of Plaintiffs' *Monell* claims. The fact that Mayor Breed and Mr. Dodge are explicitly involved in directing City workers and establishing an informal practice of engaging in enforcement operations despite a lack of available shelter clearly is related both to Defendants' non-compliance with City's own policies and a blatant disregard for constitutional requirements— each which are both theories upon which *Monell* liability can be based. *See Christie*, 176 F.3d at 1238-9, 1240. Therefore, these allegations far exceed what is required to show some "logical connection to the controversy at issue." *See N.Y. City Emps.' Ret. Sys.*, 667 F. Supp. 2d at 1128.

### 3.   Defendants Cannot Establish Prejudice As To The Revisions In The Amended Complaint, Defeating Their Motion To Strike.

Despite acknowledging the need to show prejudice on a motion to strike, Defendants offer *no reason whatsoever* why the revisions in the Amended Complaint would prejudice Defendants. *See* Mot. at 4 ("Courts grant motions to strike when prejudice is shown"), *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) (requiring moving party to demonstrate prejudice when seeking to strike allegations on the basis that they are "redundant, immaterial, impertinent, or scandalous"); *see also N.Y. City Emps.' Ret. Sys.*, 667 F. Supp. 2d at 1128 (holding that courts "frequently deny motions to strike" when no prejudice is demonstrated even if the offending matter was redundant, immaterial, impertinent, or scandalous).

This is presumably because Defendants have suffered no cognizable prejudice. Plaintiffs' revisions fleshed out and re-organized allegations that already existed within Plaintiffs' original complaint. Defendants cannot claim that they were not on notice as to these allegations, or that their inclusion within the First Amended Complaint somehow prevents Defendants from fully litigating this case in any way. *See id.* (finding that defendant did not show prejudice just because additional allegations were based "on information obtained through discovery"); *see also Joe Hand Promotions, Inc. v. Dorsett*, No. 12–CV–1715–JAM–EFB, 2013 WL 1339231, at *3 (E.D. Cal. April 3, 2013) (denying motion to strike because  "generally and vaguely claim[ed]" assertions of prejudice are insufficient). Defendants' motion to strike the revisions in the First

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
SAN FRANCISCO

20

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1    Amended Complaint should therefore be denied.

2    **V.     CONCLUSION**

3          For the reasons above, the Court should deny Defendants' combined motion to dismiss and

4    motion to strike in its entirety.[9]

5

6    Dated:  March 28, 2023                    Respectfully submitted,

7                                              By: */s/ Alfred C. Pfeiffer, Jr.*

8
                                              LATHAM & WATKINS LLP
9                                             Alfred C. Pfeiffer, Jr., SBN 120965
                                              Wesley Tiu, SBN 336580
10                                            Kevin Wu, SBN 337101
                                              Tulin Gurer, SBN 303077
11                                            505 Montgomery Street, Ste 2000
                                              San Francisco, CA 94111
12                                            Telephone: (415) 391-0600
                                              al.pfeiffer@lw.com
13                                            wesley.tiu@lw.com
                                              kevin.wu@lw.com
14                                            tulin.gurer@lw.com

15
                                              LATHAM & WATKINS LLP
16                                            Joseph H. Lee, SBN 248046
17                                            650 Town Center Drive, 20th Floor
                                              Costa Mesa, CA 92626
18                                            Telephone: (714) 540-1235
                                              joseph.lee@lw.com
19

20                                            LATHAM & WATKINS LLP
                                              Rachel Mitchell, SBN 344204
21                                            12670 High Bluff Drive
                                              San Diego, CA 92130
22                                            Telephone: (858) 523-5400
                                              rachel.mitchell@lw.com
23

24                                            By: */s/ Zal K. Shroff*

25                                            LAWYERS' COMMITTEE FOR CIVIL
                                              RIGHTS OF THE SAN FRANCISCO BAY
26                                            AREA
                                              Zal K. Shroff, MJP 804620, *pro hac vice*
27
_____
28   [9] If the Court does not deny the Motion in its entirety, Plaintiffs should be given leave to amend.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org
edellapiana@lccrsf.org
hrood@lccrsf.org

By: */s/ John Thomas H. Do*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
bgreene@aclunc.org

*Attorneys for Plaintiffs*
*Coalition on Homelessness, Toro Castaño, Sarah*
*Cronk, Joshua Donohoe, Molique Frank, David*
*Martinez, Teresa Sandoval, Nathaniel Vaughn*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR

1

## **ATTESTATION**

2        I, Alfred C. Pfeiffer, Jr., am the ECF user whose user ID and password authorized the

3   filing of this document. Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document

4   have concurred in this filing.

5

6   Dated:  March 28, 2023                    */s/ Alfred C. Pfeiffer, Jr.*

7                                          Alfred C. Pfeiffer, Jr.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

PLAINTIFFS' OPP. TO DEFS.'
MOTION TO DISMISS FAC
CASE NO. 4:22-CV-05502-DMR