

| CITY AND COUNTY OF SAN FRANCISCO | OFFICE OF THE CITY ATTORNEY |
|---|---|
| DAVID CHIU<br>City Attorney | JAMES M. EMERY<br>Deputy City Attorney |
| | Direct Dial: (415) 554-4628<br>Email: jim.emery@sfcityatty.org |

March 31, 2023

**VIA ECF**

Magistrate Judge Donna M. Ryu
United States District Court, Northern District
Oakland Courthouse
Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

    Re:  *Coalition on Homelessness, et al. v. City and County of San Francisco, et al.*
           United States District Court Case No. 4:22-cv-05502-DMR

Dear Judge Ryu,

    Responding to Plaintiffs' March 29 letter to the Court, Dkt. No. 117, San Francisco regrets that plaintiffs once again have submitted a unilateral discovery letter brief to the Court in violation of the Court's standing order, without exhausting their meet-and-confer obligations. Moreover, Plaintiffs' unilateral discovery letter, Dkt. No. 117-1, exceeds this Court's length limits for such a letter. San Francisco suggests the Court deny plaintiffs' unilateral letter without prejudice, and direct the parties to exhaust their meet-and-confer obligations.

    Plaintiffs' recitation of the parties' meet and confer history is incomplete and misleading. San Francisco has met and conferred with plaintiffs in good faith.[1] Two circumstances explain the parties' inability to submit a joint letter on March 29, and these circumstances demonstrate plaintiffs' failure to exhaust their meet-and-confer obligations.

    *First*, San Francisco only received plaintiffs' portion of the joint letter brief on March 27. Shortly after 5:00pm on March 21, plaintiffs provided to San Francisco an out-of-date letter brief they had first circulated on March 16. Over the next several days, San Francisco repeatedly urged plaintiffs to update their letter brief to "accurately reflect[ ] the parties' current positions." Plaintiffs refused until March 27, when plaintiffs provided a revised letter brief reflecting the parties' March 17 agreement on a production schedule for body worn camera footage. Plaintiffs confirmed their adherence to all other positions set forth in their letter brief. Having received plaintiffs' revised discovery letter brief on March 27, San Francisco promptly provided its portions of the joint letter brief at 9:41am on March 29.

    *Second*, at 3:37pm on March 29, *after* plaintiffs had received San Francisco's portions of the joint letter brief, San Francisco received a redlined letter brief from plaintiffs, containing significant new arguments, and altering the substance of plaintiffs' "final compromise." Plaintiffs' redlined letter brief states:

> Plaintiffs' final compromise is that planned encampment ~~resolutions~~operations should be defined as any pre- planned ~~sweep operations~~ encampment operation that ~~involve~~involves two or more

---

[1] A 35-page e-mail string memorializes the parties' meet and confer activities on these discovery issues and confirms this summary.

CITY HALL · 1 DR. CARLTON B. GOODLETT PLACE · ROOM 234 · SAN FRANCISCO, CALIFORNIA 94102
RECEPTION: (415) 554-4700 · FACSIMILE: (415) 554-4699

n:\govlit\li2022\230239\01667216.docx

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Magistrate Judge Donna M. Ryu
Page 2
November 16, 2022

        participating ~~HSOC~~City agencies—or the language of the Court's prior discovery order, which was more inclusive.

Exhibit A, attached hereto.

    Plaintiffs' March 29 changes from their March 27 letter are not just semantic wordsmithing. Plaintiffs' changes went to the heart of San Francisco's longstanding objections to plaintiffs' prior iteration of their "final compromise." San Francisco repeatedly objected to plaintiffs' proposal to require notices of "sweeps" or "resolutions." For example, on March 8, San Francisco explained to plaintiffs: "Plaintiffs' formulation for advance notice is vague and simply an invitation for future disputes as to what events fall within San Francisco's advance notice obligations." San Francisco (in its view) does not conduct "sweeps" or "resolutions." San Francisco no longer requires campers to remove themselves or their belongings from the area of an HSOC or JFO operation. San Francisco does not "force[ ] … the removal of both unhoused individuals and their property from that area." See https://www.aclu-wa.org/story/encampment-sweeps-what-they-are-and-harm-they-cause%C2%A0 (ACLU's definition of "sweep"). San Francisco's homeless engagements offer shelter and services, and they clean the area. They do not "resolve" an encampment. For these reasons, San Francisco had objected repeatedly to an order using these imprecise, disputed terms to define San Francisco's advance notice obligations.

    Finally, at 3:37pm on March 29, plaintiffs agreed to reframe the scope of San Francisco's advance notice obligations, as San Francisco had been urging them to do. Given that shift, and other new positions in plaintiffs' redlined joint letter, San Francisco proposed the parties explore these new opportunities for agreement. Instead of allowing San Francisco to respond to plaintiffs' new discovery positions, plaintiffs proceeded with their unilateral filing that same evening.

    For these reasons, San Francisco urges the Court to deny plaintiffs' unilateral discovery letter brief, Dkt. No. 117, without prejudice, and direct the parties to exhaust their meet-and-confer obligations. In the event the Court is inclined to address the merits of the parties' dispute on the current record, Exhibit A includes San Francisco's most recent positions, though they do not address the new material in plaintiffs' redlines.

                                              Very truly yours,

                                              DAVID CHIU
                                              City Attorney

                                              */s/James M. Emery*
                                              James M. Emery
                                              Deputy City Attorney

cc: All counsel (via ECF)

# Exhibit A

March 29, 2023

**VIA ECF**

Hon. Donna M. Ryu, United States Magistrate Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

   Re: *Coalition on Homelessness, et. al. v. City and County of San Francisco, et. al.*,
   No. 4:22-cv-05502-DMR (N.D. Cal.)

Dear Judge Ryu,

  The parties submit this letter regarding a discovery dispute concerning Plaintiffs' request for recurring disclosures of certain records to assess Defendants' compliance with the Preliminary Injunction. Over the past three months since the preliminary injunction, counsel met and conferred multiple times, most recently on February 17, 2023 and February 27, 2023. While the parties have reached agreement on the vast majority of issues, despite months of discussions, the parties are unable to resolve certain remaining disputes that are outlined in this letter. The parties attach a proposed order identifying the few areas of disagreement and each side's proposed redlines to the otherwise agreed-to discovery order. *See* Ex. A. Upcoming case management deadlines are the case management conference (May 17, 2023), close of fact and expert discovery (July 28, 2023 and October 6, 2023, respectively), final day to hear dispositive motions (January 25, 2024), pretrial conference (April 3, 2024), and start of trial (April 15, 2024).

  **Plaintiffs' separate statement**: San Francisco has continued to intentionally delay Plaintiffs' ability to review its non-compliance with the Court's injunction. Each time Plaintiffs have prepared a joint letter after stonewalling by San Francisco, the City has made a minor concession on a discrete issue and then purported that the entire meet and confer process must begin again anew. This is intentionally obstructionist behavior. It is also simply false that the City has suggested Magistrate Judge Cisneros' assistance with the final issues presented here in this letter—indeed, the City has made clear they do not intend further settlement negotiations whatsoever at this juncture. Appellate Docket, No. 25, at 2 ("San Francisco believes the parties' fundamental disagreements over the propriety and scope of the preliminary injunction require guidance from the Ninth Circuit before further settlement progress is possible"). This letter presents very straightforward issues that the City attempts to complicate. At bottom, the City refuses to provide all agreed-to disclosures for the time period since the preliminary injunction was entered. And the City refuses to inform Plaintiffs about all future planned displacement operations against unhoused people. The City has refused to budge from its position on these issues for months. Further delay will only prejudice Plaintiffs' urgent need to assess Defendants' compliance with this Court's injunction. This is the City's very goal: to delay this process as long as possible while hoping they succeed in challenging this Court's injunction.

  **San Francisco's separate statement**: Plaintiffs' recitation of the meet-and-confer history is inaccurate. The parties' February 17 telephonic meeting addressed separate topics, namely San Francisco's written responses to plaintiffs' first set of document requests. The parties have met and conferred on the subject matter of this joint letter by telephone on December 29, 2022, January 27, 2023, and February 27, 2023. Also, since December 29, the parties have exchanged multiple counterproposals by email, which, as plaintiffs recognize, led to "agreement on the vast majority of issues." Indeed, as recently as March 17, the parties reached a new agreement on the schedule for delivering body-worn camera footage. In view of the recent success of continuing negotiations, plaintiffs' noncompliance with this Court's Standing Order, which requires a telephonic meet-and-confer within five days of submitting a joint letter, is significant. It seems likely further efforts to resolve the few remaining disagreements would continue to be productive. San Francisco suggested the parties seek Magistrate Judge Cisneros's assistance on the few remaining issues that continue to divide them, but plaintiffs have declined. For these reasons, San Francisco suggests the Court deny plaintiffs' request for a discovery order without prejudice and direct the parties to exhaust their meet-and-confer efforts.

## I. NOTICE OF PLANNED ~~ENCAMPMENT RESOLUTIONS~~HOMELESS ENGAGEMENTS

**Plaintiffs' Position:** Plaintiffs seek advance notice of any planned sweep operation conducted by Defendants to allow Plaintiffs to investigate compliance with the ~~preliminary injunction.~~order. While Defendants agreed to provide Plaintiffs with advance notice of certain "planned homeless encampment ~~resolutions~~operations," they have now rejected any meaningful definition for that term.

LATHAM&WATKINS LLP

Plaintiffs' final compromise is that planned encampment ~~resolutions~~operations should be defined as any pre- planned ~~sweep~~encampment operations that involve two or more participating HSOC agencies, a definition they previously agreed to. Defendants wish the definition to be limited only to formal HSOC and Tenderloin Joint Field Operation ("JFO") ~~sweeps~~operations. But such a definition would be unduly narrow, since Plaintiffs know there are many other planned ~~encampment resolutions involving other City agencies~~operations across San Francisco ~~and~~ for which Defendants have not been providing notice, even though Plaintiffs have provided evidence to Defendants regarding those operations~~.~~ and the unlawful conduct that has taken place there (usually by DPW and SFPD coordinating unlawful operations without the presence of other agencies). Plaintiffs can provide supporting documents to the Court if desired.~~¹~~.[1] Indeed, Defendants only disclosed to Plaintiffs, after ~~repeated questioning and~~ months of meet-and-confer efforts, the existence ~~and occurrence~~ of JFO operations—which ~~Plaintiffs still have never received notice of and~~ Defendants claim are not part of HSOC~~. In fact, the~~. The Court's pre- preliminary injunction discovery order was drafted to solve this problem. It required Defendants to disclose "any planned homeless encampment resolution scheduled by or involving HSOC, DPW, SFPD, or any other City agency." *See* Dkt. No. 34. But Defendants did not fulfill these ~~notice~~ obligations ~~under the Court's prior order~~ and planned ~~resolutions~~operations occurred without notice ~~to Plaintiffs~~—because ~~they~~the City purported, for example, that ~~resolutions~~operations coordinated only by SFPD and DPW were not "formal HSOC ~~resolutions~~operations" as they conveniently defined them. *See, e.g.*, Dkt. No. 50-18 at 13-14 (discussing pre- planned sweep operations by DPW and SFPD where Plaintiffs were not provided notice).

This information is crucial to Plaintiffs' monitoring efforts since the preliminary injunction applies to Defendants' conduct at encampments generally, regardless of the label applied to such conduct. Formal HSOC operations only comprise a limited subset of Defendants' enjoined activities. *See* Dkt. No. 9 at 8-9. Permitting Defendants to make this arbitrary distinction— allowing them to conduct planned ~~sweep~~encampment operations coordinated between City agencies beyond the formal "HSOC" banner— allows them to circumvent any advance notice obligation. Again, Plaintiffs' final compromise is that planned encampment ~~resolutions~~operations should be defined as any pre- planned ~~sweep operations~~ encampment operation that ~~involve~~involves two or more participating ~~HSOC~~City agencies—or the language of the Court's prior discovery order, which was more inclusive. Plaintiffs also dispute the City's claim that only 10% of operations are monitored, but that is irrelevant to the need to know the full scope of planned operations.

Plaintiffs agree with Defendants that the term "operation," rather than "sweep" or "resolution," is the appropriately clear term for the Court to apply in its order, rendering Defendants' discussion of these terms irrelevant. The sole import is that notice is actually provided prior to all operations. Contrary to Defendants' assertions, that Plaintiffs are using their limited monitoring resources to ascertain non-compliance at a *subset* of the City's operations should not permit Defendants to obscure their obviously planned operations conducted in the shadow of the City's formal HSOC operations.

Plaintiffs also propose that the Court's order explicitly require prior notice of DPW's property removal operations whenever the City's own bag and tag policy requires notice. Ex. A, ¶

---

[1] Plaintiffs are cognizant of the Court's Standing Order limiting the exhibits permitted in a discovery dispute letter, and therefore have not filed this supporting material along with this letter. Plaintiffs stand ready to do so with the Court's permission and to the extent necessary.

LATHAM&WATKINS LLP

1. Defendants' iteration of the proposed order would exclude this language—suggesting that Defendants' will provide notice less often than actually required under Defendants' own bag and tag policy. Plaintiffs have reason to believe that without language expressly connected to the requirements of the bag and tag policy, Defendants will not properly fulfill their notice obligations. *See*, *e.g.*, Dkt. No. 50-18, at 13-14 (identifying DPW sweeps that were not properly noticed).

**San Francisco's Position:** Since December 23, at plaintiffs' request, San Francisco has continued to provide voluntarily to plaintiffs 72-hour advance notice of all HSOC operations, typically 10 per week over the past 13 weeks. San Francisco objects to plaintiffs' articulation of San Francisco's advance notice obligation, because plaintiffs insist on using imprecise and disputed terms ("resolution" and "sweep"). Plaintiffs' proposal guarantees future compliance disputes interpreting and applying these vague terms.

Plaintiffs' continued insistence that San Francisco violated its pre-injunction notice obligations demonstrates the genuine risk of ongoing compliance disputes. Since December 23, San Francisco no longer requires campers to remove themselves or their belongings from the area of an HSOC or JFO operation. These operations offer shelter and services, and they clean the area. Accordingly, none of these operations since December 23 are "resolutions." These operations do not "resolve" an encampment. The encampment remains after the operation concludes. Accordingly, none of these HSOC operations would be subject to plaintiffs' proposed advance notice requirements, but would provoke compliance disputes.

The pejorative term "sweep" is even more prone to dispute than "resolution." According to the ACLU, a "sweep" is "the forced disbanding of encampments on public property and the removal of both unhoused individuals and their property from that area." See https://www.aclu-wa.org/story/encampment-sweeps-what-they-are-and-harm-they-cause%C2%A0. San Francisco does not do that. Plaintiffs, though, label a DPW sidewalk cleanup, which does not require anyone to move their tent or surrender their belongings, as a "sweep." Because of the parties' divergent understanding of the undefined term "sweep," it would be imprudent to embed "sweep" into the definition of San Francisco's advance notice obligations, as plaintiffs propose.

To avoid these predictable future controversies, and to fulfill the purpose of monitoring compliance, San Francisco proposed objectively verifiable criteria to define its advance notice obligations. On March 8, San Francisco presented to plaintiffs its final proposed compromise:

1. Defendants shall provide to Plaintiffs' counsel 72-hour advance notice of the date, time, and cross street location of pre-planned homeless encampment operations by the Healthy Streets Operation Center ("HSOC"), by Tenderloin Joint Field Operation ("JFO"), and when Public Works posts a 72-hour notice of planned removal of property. In addition,

2. Defendants shall provide to Plaintiffs' counsel 24-hour advance notice of the date, time, and cross street location of any regular encampment cleanings conducted by Hot Spot crews, as described in Section 4 of Public Works' current Bag and Tag policy.

3. Updated notice shall be provided if the City's schedule changes within the designated notice period.

Also on March 8, San Francisco explained its reasoning to plaintiffs: "Plaintiffs' formulation for advance notice is vague and simply an invitation for future disputes as to what events fall within San Francisco's advance notice obligations. Plaintiffs have availed themselves of the opportunity to observe only a small fraction of the HSOC operations they've been receiving advance notice of. It would serve no purpose

**LATHAM&WATKINS**LLP

to provide advance notice of additional vaguely defined operations that plaintiffs will not choose to observe anyway."

Plaintiffs' position, above, misrepresents San Francisco's proposal, articulated 3 weeks ago, notwithstanding San Francisco's repeated requests that plaintiffs correct this error. Plaintiffs make a strawman argument that San Francisco's proposal is narrower than DPW's bag/tag policy. Plaintiffs' assertion is false. Furthermore, plaintiffs acknowledge they have actually sent observers to just a tiny sampling (fewer than 10%) of the HSOC operations for which they now receive advance notice voluntarily. Given plaintiffs' demonstrated monitoring frequency, San Francisco's proposal fully meets the monitoring purpose of this expedited discovery, while sidestepping unnecessary future disputes over which operations constitute "sweeps" or "resolutions."

## II. DISCLOSURES FOR PERIOD SINCE ISSUANCE OF THE PRELIMINARY INJUNCTION

**Plaintiffs' Position:** The parties agree that Defendants will provide the required disclosures every 3 weeks. But Defendants refuse to commit to providing the requested disclosures retrospectively on an expedited basis as part of the preliminary injunction compliance disclosure process outlined by the proposed order—preventing Plaintiffs from assessing Defendants' past non-compliance in a timely fashion. *See* Dkt. Nos 76-79. Under Defendants' proposal, Plaintiffs will be unable fully to examine Defendants' potential violations to date. A small fraction of the disclosures have been provided in ordinary discovery—but by no means have the required compliance disclosures been even close to fully produced. In fact, Defendants have intentionally failed to produce the list of SFPD incident reports responsive to homeless encampment search terms, and have failed to produce any random sampling of these SFPD incident reports for the past three months. Instead, Defendants have provided a sanitized disclosure of 4 SFPD incident reports for the entire period since the injunction was entered—obscuring the very data that will show the true extent of the City's non-compliance with the Court's order regarding "move alongs" and threats of enforcement. That is why Defendants oppose these disclosures here. Seeking these disclosures through ordinary discovery is hampered by extensive and ongoing disputes as to ordinary merits discovery that may persist for months. These delays defeat the very purpose of the injunction and disclosures thereunder: acting to identify and protect San Francisco's unhoused community from daily and ongoing irreparable harms. Plaintiffs' last compromise is that Defendants must produce or identify all preliminary injunction document disclosures for each 3-week time period from the issuance of the preliminary injunction to date within 30 days of the Court's entry of the proposed order—unless all disclosures have already been produced through ordinary discovery. The current proposed order reflects Plaintiffs' original position, which is that these disclosures should be provided within 21 days—along with Defendants' first agreed-to periodic production.

**San Francisco's Position:** Plaintiffs present two simultaneous and irreconcilable positions regarding production of retrospective information. Plaintiffs' final proposed compromise does not align with their demand for relief from the Court. Plaintiffs' propose in this joint letter that retrospective production occur within 30 days of the Court's Order. Yet plaintiffs demand in their Proposed Order that retrospective production occur within 21 days. Plaintiffs' dual positioning undermines the meet-and-confer process.

In any event, San Francisco believes the Court should order no retrospective expedited discovery, because San Francisco has already produced the bulk of retrospective information plaintiffs seek, because the remaining categories of retrospective information are unreasonably burdensome to produce on an expedited basis, and because retrospective information does not advance the stated purpose of this expedited discovery, namely, to monitor ongoing compliance with the December 23 injunction.

In its March 10 proposal to plaintiffs, San Francisco explained it would provide on an expedited basis and had already commenced production of the following categories of information and documents from mid-December to the present:

LATHAM&WATKINS LLP

- Spreadsheet of Weekly Lodging Without Permission; Maintaining a Public Nuisance; Public Nuisance, Maintaining After Notification; Public Nuisance, Committing report of incidents, from SFPD

- Spreadsheet of Weekly report of 915 - Homeless-related Computer Aided Dispatch Calls, from SFPD

- Daily Allocation Summaries from HSH

- Bag & Tag Intake Forms from DPW

- Bag & Tag Spreadsheets from DPW

San Francisco explained to plaintiffs on March 10 that expedited production of retrospective bodycam footage would be unreasonably burdensome given the unique time- intensive review process necessary to protect privacy rights of third parties. Plaintiffs agreed to San Francisco's proposed production schedule for prospective bodycam footage in recognition of the burdens involved in processing bodycam footage for production. Because retrospective production of bodycam footage does not advance the monitoring purpose of this expedited discovery, and because San Francisco has already voluntarily agreed to provide promptly all the categories of information enumerated above, San Francisco's final proposed compromise is that any order resulting from plaintiffs' motion contains no provision for expedited production of retrospective information, and that Plaintiffs instead seek retrospective information through normal discovery channels, to the extent San Francsico has not already produced it.

## III. DETAILED DISPATCH INFORMATION

**Plaintiffs' Position:** Plaintiffs insist on a definitional correction with respect to the information to be included in Defendants' dispatch data. *See* Ex. A, ¶ 8. This clarification is necessary because Defendants previously provided dispatch data that did not include the information needed to assess it. Plaintiffs can provide examples to the Court of such deficiencies upon request. Without the date, time, location, and description information requested—if and when available— the dispatch data is useless to any meaningful evaluation of Defendants' compliance. Furthermore, culling the relevant underlying information pertaining to just 10 dispatch records every 3 weeks belies any suggestion of burden—and Plaintiffs' proposed language merely requests that this information be produced by Defendants if it is actually available to them.

**San Francisco's Position:** This request concerns Computer Aided Dispatch ("CAD") reports from the Department of Emergency Management ("DEM"). San Francisco has offered to provide plaintiffs the requested DEM CAD reports as they exist. However, San Francisco has repeatedly explained to plaintiffs that the DEM CAD reports they seek do not contain the categories of information plaintiffs enumerate in their proposed order. Therefore, San Francisco would have to perform additional individualized research and investigation into each DEM CAD report plaintiffs identify to gather the requested information. The parties agreed to a recurring expedited production every three weeks. Given that timeframe, San Francisco is able to collect the relevant DEM CAD reports, but would not also have time to use those reports as a springboard for additional investigation and research on top of its ordinary discovery obligations. Conventional discovery provides plaintiffs the tools to explore further into events of interest that are identified in the DEM CAD reports. For these reasons, San Francisco's final proposed compromise is that paragraph 8 of any Order the Court issues on this motion read as follows:

> 8. On the same periodic basis, Defendants shall produce a random sampling of 10 individual DEM CAD reports, responsive to the following dispatch codes: Code 915 (homeless complaints), Code 919 (person sitting/lying on a sidewalk). The Parties will meet and confer and agree to adjust the randomization protocol if necessary. This stipulation expressly does not

LATHAM&WATKINS LLP

prohibit Plaintiffs from requesting dispatch reports for additional dispatches beyond the random sampling set forth in this paragraph through ordinary fact discovery.

**LATHAM & WATKINS**LLP

Respectfully submitted,

By: */s/ ~~DRAFT~~Alfred C. Pfeiffer, Jr.*

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
Wesley Tiu, SBN 336580
Kevin Wu, SBN 337101
Tulin Gurer, SBN 303077
505 Montgomery Street, Ste. 2000
San Francisco, CA 94111
Telephone: (415) 391-0600 ~~al.pfeiffer@lw.com wesley.tiu@lw.com kevin.wu@lw.com tulin.gurer@lw.com~~
al.pfeiffer@lw.com
wesley.tiu@lw.com
kevin.wu@lw.com
tulin.gurer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235 ~~joseph.lee@lw.com~~
joseph.lee@lw.com

LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400 ~~rachel.mitchell@lw.com~~
rachel.mitchell@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444 ~~zshroff@lccrsf.org edellapiana@lccrsf.org hrood@lccrsf.org~~
zshroff@lccrsf.org
edellapiana@lccrsf.org
hrood@lccrsf.org

ACLU FOUNDATION OF NORTHERN CALIFORNIA

**March 29~~15~~, 2023**
**Page 9**

**LATHAM&WATKINS**LLP

John Thomas H. Do, SBN 285075

LATHAM & WATKINS LLP

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone:   (415)   293-6333 ~~jdo@aclunc.org bgreene@aclunc.org~~

jdo@aclunc.org
bgreene@aclunc.org

*Attorneys for Plaintiffs Coalition on Homelessness, Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, Nathaniel Vaughn*

DAVID CHIU
City Attorney

*s/James M. ~~Emery~~ Emery*~~James M. Emery Deputy City Attorney~~
James M. Emery
Deputy City Attorney
*Attorney for Defendants City & County of San Francisco, et al.*