UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 22-cv-05502-DMR<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY**<br><br>Re: Dkt. No. 97 |

Plaintiffs are a group of current and formerly homeless residents of the City and County of San Francisco ("San Francisco"), along with the Coalition on Homelessness, a non-profit advocacy organization. They filed a lawsuit challenging certain aspects of San Francisco's official response to homelessness, including its coordinated five-agency effort to address homeless encampments. On December 23, 2022, the court partially granted Plaintiff's motion for a preliminary injunction. Defendants subsequently filed a notice of appeal of that order to the United States Court of Appeals for the Ninth Circuit. They now move to stay a portion of the preliminary injunction pending the outcome of their appeal. [Docket No. 97.] Plaintiffs oppose the motion.

This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion to stay is denied.

I.   **BACKGROUND**

The preliminary injunction order contains a detailed discussion of Plaintiffs' Fourth and Eighth Amendment claims against Defendants and the evidence relevant to those claims. *See Coal. on Homelessness v. City & Cnty. of San Francisco*, No. 22-CV-05502-DMR, 2022 WL 17905114 (N.D. Cal. Dec. 23, 2022). Plaintiffs' Eighth Amendment claim is based on the

1 contention that "San Francisco criminalizes involuntary homelessness in violation of homeless

2 individuals' Eighth Amendment rights" under *Martin v. City of Boise*, 920 F.3d 584, 618 (9th Cir.

3 2019). *Id*. at *20. In the preliminary injunction order, the court discussed *Martin*, in which the

4 Ninth Circuit held that "the Eighth Amendment prohibits the imposition of criminal penalties for

5 sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain

6 shelter." *Id*. (quoting *Martin*, 920 F.3d at 616, 617). The order quoted the following passage from

7 *Martin*:

8
> We hold only that so long as there is a greater number of homeless
> individuals in [a jurisdiction] than the number of available beds [in
9
> shelters], the jurisdiction cannot prosecute homeless individuals for
> involuntarily sitting, lying, and sleeping in public. That is, as long as
10
> there is no option of sleeping indoors, the government cannot
> criminalize indigent, homeless people for sleeping outdoors, on
11
> public property, on the false premise they had a choice in the matter.

12 *Id*. at *20-21 (citation and quotation marks omitted) (quoting *Martin*, 920 F.3d at 617). The Ninth

13 Circuit further explained "that its holding 'does not cover individuals who *do* have access to

14 adequate temporary shelter, whether because they have the means to pay for it or because it is

15 realistically available to them for free, but who choose not to use it . . .'" *Id*. at *21 (emphasis in

16 original) (quoting *Martin*, 920 F.3d at 617 n.8).

17 The preliminary injunction order discussed an SFPD Enforcement Bulletin that describes

18 various laws and ordinances available to "address lodging or encampments, including criminal

19 laws prohibiting sitting, lying, and lodging." *Id*. at *4 (quotation marks and citation omitted). The

20 Enforcement Bulletin sets forth restrictions of SFPD's enforcement of the same, including

21 requiring officers to "secure appropriate shelter before taking" specified enforcement actions and

22 prohibiting officers from issuing citations or ordering the removal of tents and encampments "[i]f

23 there is no shelter or navigation center bed available." *Id*.

24 As noted in the order, the policy reflected in the Enforcement Bulletin "is not at issue" in

25 this case; in fact, "Plaintiffs [have] confirmed that the substance of the Enforcement Bulletin is

26 constitutional." *Id*. at *22. However, the court found that Plaintiffs had submitted "detailed

27 evidence demonstrating significant failures to comply with the policy," and that the evidence was

28 "largely unchallenged" by Defendants. *Id*. The court ultimately concluded that Plaintiffs had

United States District Court
Northern District of California

2

1   shown that they "are likely to succeed on the merits of their claim that Defendants violate the
2   Eighth Amendment by imposing or threatening to impose criminal penalties against homeless
3   individuals for 'sitting, sleeping, or lying outside on public property' without giving them the
4   option of sleeping indoors" under *Martin*, 920 F.3d at 617, and *Johnson v. Grants Pass*, 50 F.4th
5   787, 795 (9th Cir. 2022). *Id*. at *24. Finding that Plaintiffs had established the remaining
6   preliminary injunction factors, *id*. at *25-26, the court entered the following preliminary injunction
7   corresponding to the Eighth Amendment claim:

> Defendants are preliminar[il]y enjoined from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, the following laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property:
>
> • California Penal Code section 647(e)
>
> • California Penal Code section 370
>
> • California Penal Code section 372
>
> • San Francisco Police Code section 168
>
> • San Francisco Police Code section 169

*Id*. at *28.[1] The court ordered that the preliminary injunction "shall remain effective as long as there are more homeless individuals in San Francisco than there are shelter beds available." *Id*.

On January 3, 2023, Defendants inappropriately filed an "Administrative Motion for Clarification of Preliminary Injunction Order" pursuant to Civil Local Rule 7-11. [Docket No. 70.] In the motion, Defendants asked the court "to clarify that a particular individual is not 'involuntarily homeless'" within the meaning of the preliminary injunction pertaining to the Eighth Amendment claim "where San Francisco has offered that individual adequate temporary shelter." *Id*. at 2. According to Defendants, "Plaintiffs maintain all unsheltered people experiencing homelessness . . . are 'involuntarily homeless' under the [preliminary injunction order], regardless of whether they have received an adequate shelter offer, and therefore the City

---

[1] The court also granted injunctive relief pertaining to the Fourth Amendment claim. *See Coalition*, 2022 WL 17905114, at *28. That portion of the preliminary injunction order is not at issue in this motion.

3

may not enforce sit/lie/sleep laws against any unhoused person anywhere in San Francisco." *Id*. Defendants dispute this interpretation and argue that under *Martin*, 920 F.3d at 617 n.8, and *Johnson*, 50 F.4th at 793 n.2, "a particular individual is not 'involuntarily homeless' if the individual refuses an offer of adequate shelter." *Id*. at 4. According to Defendants' administrative motion, without the requested "clarification," San Francisco is subject to conflicting obligations in this case and in a different case, *Hastings College of the Law v. City & County of San Francisco*, Case No. 4:20-cv-03033-JST (N.D. Cal. filed May 4, 2020, closed Oct. 7, 2020), in which the court entered a stipulated injunction regarding encampments in the Tenderloin neighborhood of San Francisco. *Id*. at 2. In the alternative, Defendants requested expedited briefing on the motion for clarification. *Id*. at 6.

On January 6, 2023, Plaintiffs filed an administrative motion for a status conference, arguing that Defendants were not complying with the preliminary injunction and asking for certain discovery, compliance reports, and appointment of a special master to monitor Defendants' compliance. [Docket No. 75.] Defendants filed an opposition to Plaintiffs' motion shortly thereafter and submitted declarations by 11 percipient witnesses purportedly rebutting Plaintiffs' claims of noncompliance. [Docket No. 82.]

The court held an initial case management conference (CMC) on January 12, 2023 in which it addressed the parties' administrative motions, among other things. [*See* Docket Nos. 84 (Minute Order), 91 (Jan. 12, 2023 Hr'g Tr.).] The court denied Defendants' administrative motion on procedural grounds. It explained that Defendants' motion sought substantive relief; Local Rule 7-11 is for "truly administrative matters," such as requesting permission to go beyond page limits; and the truncated procedures governing an administrative motion clearly made it an improper vehicle for the requested relief. Tr. 23-24. The court noted that if Defendants wanted "a ruling on the substantive issues raised in the administrative motion" they would need to "file an appropriate motion" explaining any purported conflicting obligations and addressing the applicable standard. The court also instructed Defendants "to evaluate . . . whether [such a] motion is actually a motion for reconsideration [of the preliminary injunction order], which is governed by a different

4

1  standard." *Id*. at 24.[2]

2  Defendants did not file a motion for reconsideration or otherwise move for a ruling on the substantive issues they raised in their administrative motion. Instead, on January 23, 2023, Defendants filed a notice of appeal of the preliminary injunction order. [Docket No. 88.]

On February 2, 2023, Defendants filed the instant motion to stay a portion of the preliminary injunction order pending appeal. In particular, Defendants ask the court to stay "the portion of the [preliminary injunction order] regarding the use and enforcement of sit/lie/sleep laws." Mot. to Stay 4 n.2.

## II.  LEGAL STANDARD

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation marks omitted). "It is instead 'an exercise of judicial discretion'" that "'is dependent upon the circumstances of the particular case.'" *Id*. (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672-73 (1926)).

"The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation marks omitted). "The first two *Nken* factors 'are the most critical.'" *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (quoting *Nken*, 556 U.S. at 434). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433-34.

## III.  DISCUSSION

Defendants seek to stay the portion of the preliminary injunction order that enjoins San Francisco from enforcing or threatening to enforce, or using California Penal Code section 148(a)

---

[2] The court also denied Plaintiffs' administrative motion on the ground that it sought substantive relief that was not appropriate for resolution on a Local Rule 7-11 motion. Tr. 25.

to enforce or threaten to enforce, laws and ordinances regarding sitting, lying, and sleeping on public property.

As to the first *Nken* factor, Defendants contend that they are likely to succeed on the merits of their appeal because the challenged portion of the preliminary injunction order is "overbroad" and exceeds the scope of *Martin* and *Johnson*. Mot. 5. Here, Defendants essentially renew the argument they made in their inappropriate administrative motion for clarification; that is, under Plaintiffs' interpretation of the term "involuntarily homeless," the preliminary injunction order prohibits San Francisco from enforcing sit/lie/sleep laws against any individual "so long as the total number of homeless individuals within the City exceeds the total number of shelter beds" even if the City has offered that individual "adequate temporary housing." Mot. to Stay 2, 5. Defendants argue that if Plaintiffs' interpretation is correct, the preliminary injunction order "require[s] more of San Francisco than the Eighth Amendment demands." *Id*. According to Defendants, under *Martin* and *Johnson*, an individual is not "involuntarily homeless" if they are "offered the opportunity for adequate temporary shelter for free before SFPD enforces or threatens to enforce any of the relevant code sections against that individual," regardless of whether San Francisco has enough shelter beds to offer every homeless individual in the city. *Id*. at 5.

The court concludes that Defendants are unlikely to succeed on the merits of their appeal because (1) they never properly raised this argument before the undersigned, and (2) in granting the preliminary injunction, the court made factual findings that undercut Defendants' position.

As to the first reason, Defendants' opposition brief in the preliminary injunction motion did not make the argument they now assert. *See Coalition*, 2022 WL 17905114, at *27. In fact, it was not until the hearing that Defendants attempted to address the scope of *Martin* and *Johnson* and explain how those cases apply to the facts of this case. The court pointed this out in the preliminary injunction order. It observed that "[t]he formula established in *Martin* is that the government cannot prosecute homeless people for sleeping in public if there 'is a greater number of homeless individuals in [a jurisdiction] than the number of available' shelter spaces." *Id*. at *23 (quoting *Johnson*, 50 F.4th at 795 (alteration in original) (citing *Martin*, 920 F.3d at 617)). It then noted that "[a]t the hearing, Defendants argued for the first time that the formula announced in

6

1  *Martin* and *Johnson* for demonstrating an 8th Amendment violation should be interpreted
2  differently when applied to this case." *Id*. Specifically, despite Defendants' concession "that
3  there are thousands more homeless individuals living in San Francisco than there are available
4  shelter beds," they argued at the hearing that San Francisco "does not violate the 8th Amendment .
5  . . because it is the City's practice to provide homeless individuals with an option for sleeping
6  indoors, as all are offered shelter beds before they are displaced." *Id*.

7  The court went on to hold that it "need not decide whether Defendants' reading of *Martin*
8  and *Johnson* is correct" because it expressly found that "their position lacks factual support." *Id*.
9  at *24. In particular, the court made factual findings that "San Francisco does not have enough
10 available shelter beds for all homeless San Franciscans," falling short "by thousands of beds," and
11 that "homeless San Franciscans have not been able to voluntarily access shelter beds since April
12 2020" because waitlists and same-day lines are closed. *Id*. at *2, 3, 21-22. Therefore, "the only
13 clear way to access shelter is via an encampment resolution while under threat from law
14 enforcement." *Id*. at *14 (quotation omitted). The court also found that Defendants had not
15 "meaningfully rebut[ted] evidence that San Francisco initiates encampment closures without
16 actually knowing whether any shelter beds will be available to encampment residents" and that
17 there was "ample evidence that encampment closures have been carried out even when [City]
18 representatives said there was no available bed space." *Id*. at *22. Ultimately, the court found that
19 Defendants had provided "thin" evidence supporting their assertion "that every homeless person is
20 offered shelter before being displaced by the City," even though San Francisco "controls the
21 relevant evidence." *Id*. at *24. By contrast, "Plaintiffs submitted ample evidence that homeless
22 individuals routinely are displaced without a firm offer (or in many instances, any offer) of a
23 shelter bed," contradicting Defendants' position. *Id*.

24 After the court issued the preliminary injunction order, Defendants filed a procedurally
25 improper administrative motion for "clarification" that included argument about the application of
26 *Martin* and *Johnson* that had not been made in their opposition brief. In admonishing Defendants
27 for the maneuver, the court explained what Defendants would need to address in any future motion
28 seeking a ruling on the substantive issues, including potentially satisfying the standard for

1  reconsideration. Defendants instead chose to file a notice of appeal. As a result, the court – and
2  Plaintiffs – never had the opportunity to consider Defendants' arguments regarding the scope of
3  *Martin* and *Johnson* as applied to the factual record in this case, despite the court having invited
4  Defendants to raise it properly. At best, Defendants raised it on the fly in oral argument, thereby
5  depriving Plaintiffs of a meaningful chance to respond.

6  As to the second reason, Defendants have not established a factual record supporting their
7  newly proposed application of *Martin* and *Johnson*. The court made factual findings in the
8  preliminary injunction proceedings as described above and concluded that Defendants' position
9  "lacks factual support." *Coalition*, 2022 WL 17905114, at *24. Later, in opposing Plaintiffs'
10 administrative motion challenging Defendants' compliance with the preliminary injunction order,
11 Defendants submitted a significant amount of evidence. This included declarations by Sam
12 Dodge, current Director of the Department of Emergency Management's Division of Street
13 Response Coordination and former Director of the Healthy Streets Operation Center ("HSOC"),
14 and David Nakanishi, current HSOC Director. Defendants' evidence also included a declaration
15 by an investigator with the San Francisco City Attorney's office. [*See* Docket Nos. 82-6, 82-12,
16 82-14.] All three witnesses presumably have detailed personal knowledge of the circumstances in
17 which encampment closures take place. Despite the opportunity to finally substantiate
18 Defendants' position that "every homeless person is offered shelter before being displaced by the
19 City," none of Defendants' witnesses stated that San Francisco officials offer shelter to every
20 homeless individual before telling them to vacate public property.

21 In sum, Defendants have never properly raised the issue of how Ninth Circuit precedent
22 should be applied to the facts of this case and have not established a factual record supporting their
23 interpretation of that precedent. Accordingly, the court concludes that Defendants are unlikely to
24 prevail on the merits of their appeal of the preliminary injunction order.

25 Defendants have not shown that the remaining "critical" factor of irreparable harm
26 supports a stay. As the moving party, Defendants have "the burden of showing that irreparable
27 injury is *likely to occur* during the period before the appeal is decided." *Doe #1 v. Trump*, 957
28 F.3d 1050, 1059 (9th Cir. 2020) (emphasis added) (citing *Leiva-Perez v. Holder*, 640 F.3d 962,

United States District Court
Northern District of California

968 (9th Cir. 2011)).  "[S]imply showing some possibility of irreparable injury is insufficient," *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018) (cleaned up), and a party "cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60.  Defendants identify no concrete harms that are "probable if the stay is not granted," *Leiva-Perez*, 640 F.3d at 968, instead arguing generally that "[e]ncampment resolutions promote public health and safety." Mot. 6.  But they do not cite any evidence regarding their inability to address public health and safety under the restrictions imposed by the preliminary injunction order.  In fact, defense counsel stated at the January 12, 2023 CMC that Defendants have offered "shelter and services" to individuals at homeless encampments since the issuance of the preliminary injunction order and have been able to clean areas where encampments are located, suggesting that Defendants have found ways to accomplish their public health and safety goals despite the preliminary injunction order.  *See* Tr. 26-27.

Defendants also claim that their appeal raises "issues of federalism" because the preliminary injunction order "allows a federal court to overrule local government officials regarding matters otherwise vested in the local officials' authority." Mot. 7.  However, "claims that the Government has suffered an institutional injury by erosion of the separation of powers do not alone amount to an injury that is irreparable, because the Government may pursue and vindicate its interests in the full course of this litigation." *E. Bay Sanctuary Covenant*, 932 F.3d at 778 (cleaned up).

As noted, the first two *Nken* factors are "the most critical." *Nken*, 556 U.S. at 434.  Given Defendants failure to satisfy those factors, the court declines to stay its preliminary injunction order pending Defendants' appeal.  *See Washington*, 847 F.3d at 1164 (noting that "the last two steps are reached '[o]nce an applicant [for a stay] satisfies the first two factors'" (quoting *Nken*, 556 U.S. at 435)).

//

//

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay is denied.

**IT IS SO ORDERED.**

Dated: April 3, 2023



Donna M. Ryu
Chief Magistrate Judge

10