DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-4675 (Snodgrass)
                (415) 554-4628 (Emery)
                (415) 554-3857 (Wang)
                (415) 554-3975 (Stevens)
                (415) 554-6762 (Murphy)
                (415) 554-3870 (Gradilla)
Facsimile:      (415) 554-4699
E-mail:         wayne.snodgrass@sfcityatty.org
                jim.emery@sfcityatty.org
                edmund.wang@sfcityatty.org
                ryan.stevens@sfcityatty.org
                kaitlyn.murphy@sfcityatty.org
                miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date:      April 27, 2023<br>Time:              1:00 p.m.<br>Before:            Hon. Donna M. Ryu<br>Place:             Courtroom 4 – 3rd floor<br>                   1301 Clay Street<br>                   Oakland CA 94612<br>Trial Date:        April 15, 2024 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

     I.     The FAC Fails to Sufficiently Allege the Individual Plaintiffs' Standing to Sue. ..1

          A.     The Court Can And Should Consider the Individual Plaintiffs' Standing to Bring Suit. ............................................................................................1

          B.     Plaintiffs Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe Do Not Sufficiently Allege Standing. ..............................................................2

          C.     Individual Plaintiffs Mr. Vaughn, Mr. Castaño, and Mr. Frank Also Fail to Allege Standing. ...............................................................................5

     II.     The Court Should Strike the New Unauthorized Allegations from Plaintiffs' First Amended Complaint. ............................................................................7

CONCLUSION ...................................................................................................................9

1

## **<u>TABLE OF AUTHORITIES</u>**

**Federal Cases**

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ..................................................................5

*Babbitt v. United Farm Workers Nat'l Union*
    442 U.S. 289 (1979)..................................................................................3

*Christie v. Iopa*
    176 F.3d 1231 (9th Cir. 1999) ................................................................8

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983)................................................................................4, 5

*Ctr. for Envtl. Health v. Perdue*
    No. 18-cv-01763-RS, 2018 WL 9662437 (N.D. Cal. Aug. 21, 2018)....................1, 2

*De Gonzalez v. City of Richmond*
    No. C–14–00386 DMR, 2014 WL 2194816 (N.D. Cal. May 23, 2014) ...................2

*Fitzpatrick v. Little*
    No. 1:22-cv-00165-DCN, 2023 WL 129815 (D. Id. Jan. 9, 2023)....................3, 5, 6

*Gallegos v. Roman Catholic Archbishop of San Francisco*
    2016 WL 3162203 (N.D. Cal. June 7, 2016) ..................................................9

*Harris v. Board of Supervisors, Los Angeles County*
    366 F.3d 754 (9th Cir. 2004) ..................................................................6

*Johnson v. City of Grants Pass*
    50 F.4th 787 (2022) ................................................................................8

*LaDuke v. Nelson*
    762 F.2d 1318 (9th Cir. 1985),
    amended, 796 F.2d 309 (9th Cir. 1986)..................................................5

*Leeson v. Transamerica Disability Income Plan*
    671 F.3d 969 (9th Cir. 2012) ..................................................................2

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014) ................................................................5

*Martin v. Boise*
    920 F.3d 584 (9th Cir. 2019) ..................................................................3

*Monell v. Department of Soc. Svcs.*
    436 U.S. 658 (1978)................................................................................8

*Moyle v. Cnty. of Contra Costa*
    No. C-05-02324 JCS, 2007 WL 4287315 (N.D. Cal. Dec. 5, 2007) ...................4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Muller v. Morgan*
   No. 12 C 1815, 2013 WL 2422737 (N.D. Ill. June 3, 2013) ......................................7

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
   567 F.3d 521 (9th Cir. 2009) ...........................................................................1

*People of Los Angeles Cty. Who Are Being Penally Confined v. Villanueva*
   No. CV 22-2538-DMG (JEMx), 2022 WL 2189647 (C.D. Cal. May 27, 2022) .....................2

*Porto v. City of Laguna Beach*
   720 F. App'x 853 (9th Cir. 2018) ..............................................................4, 6

*Rosenbaum v. City & Cnty. of San Francisco*
   8 F. App'x 687 (9th Cir. 2001) ......................................................................5

*Shea v. Littleton*
   414 U.S. 488 (1974) ...............................................................................4, 5

*We Are America/Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*
   809 F.Supp.2d 1084 (D. Ariz. 2011) ..........................................................1, 2

*White v. Lee*
   227 F.3d 1214 (9th Cir. 2000) ...................................................................3, 5

*Wills v. City of Monterey*
   No. 21-CV-01998-EMC, 2022 WL 3030528 (N.D. Cal. Aug. 1, 2022) .......................3, 6

**Federal Statutes**
Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq. [Title VII] ..............................9

**Rules**
Fed. R. Civ. P.
   Rule 12(b)(1).......................................................................................3, 5
   Rule 12(b)(6).......................................................................................3, 5

# INTRODUCTION

Although Plaintiffs' opposition is almost twice as long as Defendants' motion, it cannot change the fact that the First Amended Complaint ("FAC") alleges that three individual Plaintiffs are housed, that the unhoused individual Plaintiffs do not allege criminal enforcement against them, and that the FAC contains allegations well beyond what this Court authorized in its order granting Plaintiffs leave to amend. In resisting this critique of the FAC's allegations, which is evident from the face of the FAC, Plaintiffs impermissibly invite the Court to consider material outside the FAC to resolve the motion, and overstate applicable law regarding the Court's ability to consider the individual Plaintiffs' standing. The Court should decline the Plaintiffs' invitations, grant Defendants' motion, and grant Plaintiffs leave to file an amended complaint to cure these deficiencies.

# ARGUMENT

## I.   The FAC Fails to Sufficiently Allege the Individual Plaintiffs' Standing to Sue.

### A.   The Court Can And Should Consider the Individual Plaintiffs' Standing to Bring Suit.

Plaintiffs' assertion that this Court need not consider whether the individual Plaintiffs have standing to bring this challenge overstates relevant law. Dkt. 116 at 12-13. The Ninth Circuit has explained that it is the *appellate court* that need not consider the standing of more than one plaintiff in cases seeking injunctive relief once one plaintiff has established standing. *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("As a general rule, in an injunctive case *this court* need not address standing of each plaintiff if it concludes that one plaintiff has standing.") (emphasis added). While district courts have sometimes followed suit and declined to consider subsequent plaintiffs' standing once one plaintiff established it in multi-plaintiff cases, *see, e.g.*, *Ctr. for Envtl. Health v. Perdue*, No. 18-cv-01763-RS, 2018 WL 9662437, at *4 (N.D. Cal. Aug. 21, 2018), that does not mean that district courts cannot consider whether more than one plaintiff has standing in such cases. *We Are America/Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*, 809 F.Supp.2d 1084, 1092 (D. Ariz. 2011) (holding that the court could address the standing of a group of plaintiffs even though a separate plaintiff had standing).

Here, the Court should determine whether the FAC sufficiently alleges facts giving the individual Plaintiffs standing. As in *We Are America/Somos America*, the City's motion to dismiss is

narrow and seeks to clarify which Plaintiffs adequately allege standing. *Id.*; Dkt. 112 at 4-7. If the Court does not address the individual Plaintiffs' standing it will "not fully address defendants' motion." *Id.* Further, since Plaintiffs here do not bring a class action complaint yet seek relief that would apply to many more people than just the named Plaintiffs, the standing inquiry regarding the individual Plaintiffs is particularly appropriate because Plaintiffs "must demonstrate standing 'separately for each form of relief sought.'" *De Gonzalez v. City of Richmond*, No. C–14–00386 DMR, 2014 WL 2194816, at *2 (N.D. Cal. May 23, 2014); *compare to People of Los Angeles Cty. Who Are Being Penally Confined v. Villanueva*, No. CV 22-2538-DMG (JEMx), 2022 WL 2189647, at *4 (C.D. Cal. May 27, 2022) (declining to address individual plaintiff's standing where another plaintiff had standing in case seeking injunctive relief on *behalf of a class*). Further, unlike in *Perdue* where only organizational plaintiffs brought suit (*Perdue*, 2018 WL 9662437, at *2),  here, as in *We Are America/Somos America*, 809 F.Supp.2d at 1087, there is a mix of organizational and individual plaintiffs whose alleged injuries might differ. And it is also appropriate for the Court to consider the individual Plaintiffs' standing because courts must continuously ensure that they have jurisdiction over a matter throughout the life of the litigation. *See, e.g.*, *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) ("Subject matter jurisdiction 'can never be forfeited or waived' and federal courts have a continuing 'independent obligation to determine whether subject-matter jurisdiction exists. . . .'")

Accordingly, the Court should reject Plaintiffs' invitation to disregard consideration of the individual Plaintiffs' standing.

### B.   Plaintiffs Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe Do Not Sufficiently Allege Standing.

Plaintiffs' Opposition misstates Defendants' argument concerning Plaintiffs Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe's deficient allegations regarding their standing, claiming that Defendants assert a lack of standing based solely on the lack of any history of prosecution against these individual Plaintiffs. In fact, the parties agree on the applicable legal test, namely, whether these four Plaintiffs have sufficiently alleged a "credible threat of prosecution." Defendants further highlight that given the amount of time these Plaintiffs allege they have spent on the street, the lack of any

history of prosecution indicates they face no credible threat of future prosecution. Plaintiffs'

Opposition relies heavily on data from their expert's declaration to attempt to establish such a threat.

But this data is not contained in Plaintiffs' FAC and therefore cannot be relied upon in a Rule 12(b)(1)

motion. *See, e.g.*, *Fitzpatrick v. Little*, No. 1:22-cv-00165-DCN, 2023 WL 129815, at *2 (D. Id. Jan. 9,

2023) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)) (courts apply the same legal standard

in considering 12(b)(6) motions to facial challenges under 12(b)(1)). Additionally, that data does not

contain a single statistic related to actual *prosecutions* of persons experiencing homelessness. Nor does

Plaintiffs' FAC. Indeed, the only places where the word "prosecute" appears in the FAC is where the it

cites to the opinion in *Martin v. Boise*, 920 F.3d 584 (9th Cir. 2019). (*See, e.g.*, Dkt. 111 at 97, 131,

265).

Plaintiffs' argument also omits significant portions of the Court's holding in *Martin* regarding

standing. *Martin*, 920 F.3d at 610. Although Plaintiffs correctly point out that standing does not

require the injury to have already occurred, they must demonstrate "that the injury is *certainly*

*impending*." *Martin*, 920 F.3d at 608-609 (9th Cir. 2019) (citation omitted) (emphasis in original). In

*Martin*, the Court relied heavily on language from *Babbitt v. United Farm Workers Nat'l Union* stating

"[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of

seeking relief." 442 U.S. 289, 298 (1979). Additionally, all plaintiffs in *Martin* were "*convicted at*

*least once* of violating the Camping Ordinance, the Camping Ordinance, the Disorderly Conduct

Ordinance, or both." *Martin*, 920 F.3d at 606 (emphasis added). With the exception of one plaintiff,

"plaintiffs were sentenced to time served for all convictions; on two occasions, [plaintiff] Hawkes was

sentenced to one additional day in jail." *Martin*, 920 F.3d at 606. This is in stark contrast to the

Plaintiffs in this litigation, where not a single Plaintiff alleges a conviction, jail time, or sentencing.

Plaintiffs' allegations in this matter are woefully short of those made by Plaintiffs in *Martin*.

Further, and contrary to Plaintiffs' arguments, the court in *Wills v. City of Monterey*, held that

the plaintiff lacked standing to bring a claim for injunctive relief. No. 21-CV-01998-EMC, 2022 WL

3030528, at *5 (N.D. Cal. Aug. 1, 2022).  The plaintiffs there alleged that "Defendants still cited,

1    threatened and harassed the Plaintiff for sleeping in public." *Id.* at 5. The court held that "it is not clear

2    that [plaintiff] faces imminent injury," noting that the plaintiff did not allege she was "still homeless or

3    that she continues to reside in the City." *Id*. On that basis, the court held "it does not appear that

4    [plaintiff] has standing for prospective relief. . ." *Id*. The *Wills* court also examined the holding *in*

5    *Porto v. City of Laguna Beach*, 720 F. App'x 853, 854 (9th Cir. 2018), which held that "[b]ecause the

6    plaintiff was no longer homeless, he lacked standing for his claims for prospective relief". *Id.* at 854.

7         *Porto* closely mirrors the allegations made by Plaintiffs here. In *Porto*, plaintiff "argue[d] that

8    he ha[d] standing to challenge the Anti-Camping Ordinance even though he was never arrested,

9    charged, or convicted under that ordinance." *Porto*, 720 F. App'x at 854. Plaintiff Porto alleged he had

10   such standing because police officers sometimes shone lights at him, which woke him up and

11   disturbed him. *Id.* He also alleged he was awoken by an officer and issued a "form marked

12   Administrative Citation which stated that Porto had violated the Anti-Camping Ordinance. . ." *Id*. The

13   Ninth Circuit held that Porto lacked standing because there was no "injury in fact which is fairly

14   traceable to" the challenged ordinance. *Id*. at 855. The same is true here: Plaintiffs Ms. Sandoval, Mr.

15   Martinez, Ms. Cronk, and Mr. Donohoe failed to allege that they have ever been cited, arrested, or

16   prosecuted for being unhoused, and their alleged harms thus are not traceable to the FAC's first and

17   second causes of action.

18        Nor are Plaintiffs correct that *Lyons* and *O'Shea* do not control if Plaintiff alleges "pattern and

19   practice." Dkt. 116 at 15-16. Plaintiffs rely on *Moyle v. Cnty. of Contra Costa*, No. C-05-02324 JCS,

20   2007 WL 4287315, at *12 (N.D. Cal. Dec. 5, 2007) to support this argument, but in that case the court

21   specifically looked to the law as articulated by the Supreme Court in *Lyons*. The *Moyle* court noted

22   that Lyons could have potentially articulated standing if he was able to allege that "the police always

23   used choke holds during traffic stops. . .", but as was plain in plaintiffs' pleadings, the interactions

24   between the police and the plaintiffs never resulted in actual citations or prosecutions. *Id.* at 12. As

25   reflected in the FAC, Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe failed to allege that

26   they have been cited or faced prosecution. Furthermore, these Plaintiffs admit that the City's official

27   policy is facially constitutional, unlike the plaintiffs in *Moyle* who alleged that the official policy of

28   strip-searching minors in custody was unconstitutional.

Plaintiffs also rely on *LaDuke v. Nelson* for the proposition that *Lyons* does not apply under these circumstances, but *LaDuke* was a class action, a fact that, as the court held, "distinguishes this case from *Lyons* and *O'Shea*," because the court's inquiry must focus on "the standing of the class." 762 F.2d 1318, 1325 (9th Cir. 1985), amended, 796 F.2d 309 (9th Cir. 1986). Similarly, Plaintiffs rely on *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), another class action that explicitly cites to *Lyons* and holds that plaintiff must have suffered an "actual injury" and must be "realistically threatened by a repetition of the violation" to have standing. *Id.* Nor does *Rosenbaum v. City & Cnty. of San Francisco*, 8 F. App'x 687, 690 (9th Cir. 2001), which Plaintiffs also rely upon, state that *Lyons* or *O'Shea* do not apply. Rather, in *Rosenbaum*, the Court identified *Lyons* as the controlling authority, and merely distinguished the facts of that case from those in *Lyons*.

Plaintiffs Ms. Sandoval, Mr. Martinez, Ms. Cronk, and Mr. Donohoe have failed to allege that they face a credible threat of future harm. They thus fail to adequately allege standing to pursue the first two causes of action.

### C. Individual Plaintiffs Mr. Vaughn, Mr. Castaño, and Mr. Frank Also Fail to Allege Standing.

In opposing Defendants' challenge to Mr. Vaughn, Mr. Castaño, and Mr. Frank's standing to sue, Plaintiffs muddy the applicable legal standard. Where, as here, Defendants bring a facial challenge under Rule 12(b)(1), "the court confines its inquiry to allegations in the complaint." *Fitzpatrick v. Little*, No. 1:22-cv-00162-DCN, 2023 WL 129815, at *2 (D. Id. Jan. 9, 2023) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Although Plaintiffs acknowledge that Defendants raise a facial attack, *see* Dkt. 116 at 7, 11, they nevertheless again impermissibly invite the Court to rely on materials beyond the pleadings to resolve this motion, *id.* at 18. The Court should reject Plaintiffs' arguments that rely on materials outside the complaint, and should instead apply the correct legal standard—the familiar standard courts apply when considering motions to dismiss under Rule 12(b)(6). *See, e.g.*, *id.*; *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining that the standard applied in the Rule 12(b)(1) and 12(b)(6) contexts is the same).

On the merits, Defendants do not dispute that at this stage of the litigation the relevant question is whether Mr. Vaughn, Mr. Castaño, and Mr. Frank have each adequately alleged that they face an

imminent threat of future harm. *See, e.g.*, *Harris v. Board of Supervisors, Los Angeles County*, 366 F.3d 754, 760 (9th Cir. 2004) ("To satisfy the 'injury in fact' requirement, plaintiffs must allege an imminent threat of concrete injury. . ."); Dkt. 116 at 11-12. Defendants' challenge, therefore, concerns whether Mr. Vaughn, Mr. Castaño, and Mr. Frank have adequately alleged within the four corners of the FAC that each of them are at imminent threat of future harm.

Those Plaintiffs have not done so. The FAC alleges that Mr. Vaughn, Mr. Castaño, and Mr. Frank are housed. Plaintiffs' attempts to introduce materials outside of the FAC related to Mr. Castaño should not be considered. *Fitzpatrick*, 2023 WL 129815, at *6. Plaintiffs fault Defendants for failing to point to a case requiring plaintiffs to allege they are presently unsheltered to establish standing. Dkt. 116 at 20. But as discussed above, Plaintiffs themselves cite to *Wills*, a case that relies on *Porto*, which says precisely that. *Porto*, 720 F. App'x at 854 (holding that "[b]ecause the plaintiff was no longer homeless, he lacked standing for his claims for prospective relief."). At least one other court has found that where plaintiffs challenged anti-camping statutes, the fact that a plaintiff became housed meant that that plaintiff is unlikely to suffer imminent harm and lacked standing. *Fitzpatrick*, 2023 WL 129815, at *6 ("[Plaintiff], who was homeless at the time of the demonstration, is now housed. [] Because of this, she is not likely to face imminent harm from the anti-camping statute and thus has no standing.") Further, the FAC's allegations concerning Mr. Frank buttress the fact that once an individual is placed in shelter, he or she does not typically subsequently become unhoused; instead, the City typically keeps that individual housed. FAC ¶¶ 30, 31. And as to the HUD definition of homelessness Plaintiffs rely on, that definition could arguably apply to such a large population of people as to effectively render the requirement of standing meaningless and does not sufficiently differentiate the housed Plaintiffs' alleged injuries from the public such that they could allege standing. *See Harris v. Board of Supervisors, Los Angeles County,* 366 F.3d 754, 761 (9th Cir. 2004).

The housed individual Plaintiffs have failed to allege facts showing they face a credible threat of future harm.

**II.    The Court Should Strike the New Unauthorized Allegations from Plaintiffs' First Amended Complaint.**

This Court gave Plaintiffs leave to amend for two specific and limited purposes: (1) "to voluntarily dismiss either San Francisco or Breed/Dodge in their official capacities," and (2) to "add claims against Breed and/or Dodge in their individual capacities." Dkt. No. 84. The Court authorized no other amendments. The Court evidently did not contemplate that Plaintiffs would conduct discovery to develop a factual basis for personal-capacity claims against the individual defendants. To the contrary, the Court directed plaintiffs to "promptly provide a draft of their amended complaint." *Id.*

Lacking any supporting authority, and disregarding the language of this Court's order, Plaintiffs engage in semantic gymnastics to assert their FAC "d[oes] not violate the Court's January 12, 2023 order." Dkt. No. 116 at 16. Plaintiffs ignore San Francisco's overwhelming authority holding that "amended pleadings may not exceed the scope of leave granted by the district court. When leave is granted to amend certain claims against specific parties, the Court may dismiss and strike any portions of the amended pleadings not expressly permitted. The rule applies even if the court did not expressly bar amendments other than the one(s) it did allow." Dkt. No. 112 at 10 (citing cases).

Plaintiffs acknowledge the FAC includes new factual allegations, but try to downplay those new allegations' significance. Plaintiffs describe their amendments as a "few additional factual details" that "fleshed out [existing] allegations," "additional color and context," and a "few extremely limited factual elaborations." Dkt. No. 116 at 23. Plaintiffs thus characterize the FAC's new factual allegations as trivial, in an apparent bid to have the Court approve these amendments retroactively. Plaintiffs removed paragraphs 52-56 from their original complaint to comply with the Court's directive to "dismiss … Breed/Dodge in their official capacities." Resuscitating these now-extraneous allegations and expanding upon them is improper and unjustifiable. That Plaintiffs raised some of these new factual allegations in their preliminary injunction motion briefing, *see* Dkt. No. 111 ¶¶ 10, 45, 243-244, does not justify inserting them into the FAC. *See Muller v. Morgan,* No. 12 C 1815, 2013 WL 2422737, at *6 (N.D. Ill. June 3, 2013) (striking scandalous paragraphs from a complaint because they were "more appropriate for an argumentative brief than a pleading.").

Moreover, notwithstanding Plaintiffs' claims that their amendments merely add "color and context," Dkt. No. 116 at 17, Plaintiffs assert that those amendments "document" that Mayor Breed "directed" "multiple instances of unconstitutional violations," and support a ratification theory of municipal liability under *Monell*. Dkt. No. 116 at 24-26. "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it. Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citations and internal quotations omitted). Plaintiffs' new factual allegations wholly fail to show such knowledge. Plaintiffs' new allegations concerning Mayor Breed merely purport to show that she directed city resources to a particular location at a particular time. Dkt. No. 111 ¶¶ 10, 43-45, 243, 244. The new allegations concerning Mr. Dodge purport to show that he directs encampment engagements when there is insufficient shelter available for *every* person present at an encampment. *Id.* ¶¶ 46, 241. None of these new allegations show, or even suggest, that Mayor Breed or Mr. Dodge directed or approved unconstitutional conduct. Instead, Plaintiffs frame these allegations in a manner calculated to stoke maximum outrage and disapproval against Mayor Breed and Mr. Dodge. *See, e.g.*, *id.* ¶¶ 10 (attributing to Mayor Breed a callous motivation to avoid embarrassment and enjoy her lunch), 45 (alleging bare legal conclusion that Mayor Breed "directed City officials to order unconstitutional sweeps"), 244 (attributing Mayor Breed's directions to her "aesthetic preferences").

Plaintiffs' theory of unconstitutionality explicitly relies on the untenable argument that if San Francisco lacks sufficient shelter for *every* person experiencing homelessness, then the Constitution prohibits San Francisco from enforcing its laws against *any* individual, regardless of that individual's access to shelter.[1] The Ninth Circuit expressly repudiated Plaintiffs' view. *Johnson v. City of Grants Pass*, 50 F.4th 787, 805 n.23 ("If it is determined at the enforcement stage that a homeless individual has access to shelter, then they do not benefit from the injunction and may be cited or prosecuted under the anti-camping ordinances."). Because insufficient shelter beds for the entire population of

---

[1] Dkt. 116 at 24 ("the City does not have enough affordable housing or shelter to care for thousands of the City's unhoused residents"), 26 (the City "engag[es] in enforcement operations despite a lack of available shelter).

people experiencing homelessness does not establish a constitutional violation, Mayor Breed and Mr. Dodge directing homeless engagements cannot be probative of illegality.

Plaintiffs rely on *Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203 (N.D. Cal. June 7, 2016), to justify their gratuitous disparagement of Mayor Breed and Mr. Dodge, but that reliance is misplaced. In *Gallegos* the challenged factual allegations of "inappropriate, sexually themed behavior in the workplace" were "sensitive and unseemly," but the allegations were relevant to the plaintiff's Title VII retaliation claims, and the plaintiff refrained from salacious and needless detail. *Id.* at *3. In this case, by contrast, the new factual allegations do not suggest or support Plaintiffs' argument that Mayor Breed and Mr. Dodge directed or ratified any unconstitutional conduct. Yet they gratuitously place both Mayor Breed and Mr. Dodge in a derogatory light, causing prejudice to them and to San Francisco.

For these reasons, the Court should strike Plaintiffs FAC, and direct Plaintiffs to file an amended complaint that complies with its January 12, 2023 order.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint, with leave to file a Second Amended Complaint in compliance with this Court's January 12, 2023 Order, and leave to plead additional facts to establish the individual Plaintiffs' standing.

Dated:  April 4, 2023

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
RYAN C. STEVENS
KAITLYN MURPHY
MIGUEL A. GRADILLA
Deputy City Attorneys

By:  s/James M. Emery
　　　JAMES M. EMERY

Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO, et al.