LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

ACLU FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., | CASE NO. 4:22-cv-05502-DMR |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | *[Declarations and Proposed Order Filed Concurrently]* |
| Defendants. | |
| | **Judge:** The Hon. Donna M. Ryu |
| | **Date:** July 13, 2023 |
| | **Time:** 1:00 PM |
| | **Place:** Courtroom 4 – 3rd Floor |
| | 1301 Clay Street |
| | Oakland, CA 94612 |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

# TABLE OF CONTENTS

**Page**

I.     Introduction ........................................................................................................1

II.    Procedural History .............................................................................................1

     A.     Issuance of the Court's Preliminary Injunction ....................................1

     B.     The City Attempts to Evade the Court's Injunction. .............................2

     C.     The Court Immediately Identifies Concerns with the City's Compliance. ..............3

III.   Statement of Facts ..............................................................................................4

     A.     Displacement of Unhoused Individuals Under Threat of Enforcement Despite No Shelter. ...............................................................4

     B.     Ongoing and Indiscriminate Property Destruction. ..............................9

     C.     Public Data Shows That Enforcement is on the Rise Despite the Injunction. ...........................................................................11

     D.     Pretextual Enforcement Pursuant to Non-Existent "Accessibility" Laws. ..........11

     E.     The City Has Withheld Essentially All Disclosures Necessary for Monitoring. ..............................................................................12

IV.   Legal Standard ................................................................................................13

V.    Argument .........................................................................................................14

     A.     The City Repeatedly Violated the Injunction, Warranting a Compliance Order. .......................................................................14

     B.     Without Additional Monitoring, Violations Will Continue to Evade Review, Subjecting Plaintiffs to Ongoing Irreparable Harm. ..............15

         1.     The City Has Stonewalled Plaintiffs on Advanced Notice and Recurring Disclosures for Months—Exposing Plaintiffs to Irreparable Harm. ...............................................16

         2.     The Complexity and Numerosity of the City's Interactions with Unhoused Individuals Makes Monitoring Unusually Challenging. ..........17

         3.     Plaintiffs Do Not Have the Resources to Effectively Monitor the City's Ongoing Non-Compliance with the Court's Order. ........................18

     C.     A Special Master is Warranted by the City's History of Malfeasance and Intransigence in Litigation, and the Complexity of Monitoring Compliance. ......................19

     D.     Periodic Reports Are Customary and Necessary to Help Ensure Compliance with the Court's Preliminary Injunction. ..........................22

VI.   Conclusion ......................................................................................................23

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Records Inc. v. Napster*, Inc.,
284 F.3d 1091 (9th Cir. 2002) ...............................................................................14, 20

*Armstrong v. Brown*,
857 F. Supp. 2d 919 (N.D. Cal. 2012) .........................................................................v, 15

*Burdett v. Reynoso*,
No. 06-cv-00720, 2007 WL 2429426 (N.D. Cal. Aug. 23, 2007) ...........................12

*Calvillo Manriquez v. Devos*,
411 F. Supp. 3d 535 (N.D. Cal. 2019) .......................................................................22

*Coleman v. Wilson*,
912 F. Supp. 1282 (E.D. Cal. 1995)............................................................................21

*Fed. Trade Comm'n v. Vemma Nutrition Co.*,
No. 15-cv-01578, 2015 WL 11118111 (D. Ariz. Sept. 18, 2015) ...........................21

*Flores v. Sessions*,
No. 85-cv-04544, 2018 WL 6133665 (C.D. Cal. Nov. 11, 2018) ...........................20

*Fed. Trade Comm'n v. John Beck Amazing Profits, LLC*,
No. 09-cv-04719, 2009 WL 7844076 (C.D. Cal. Nov. 17, 2009) ...........................20

*GTE Sylvania v. Consumers Union of United States*,
445 U.S. 375 (1980)............................................................................................14

*Hernandez v. Barr*,
No. 16-cv-00620, 2019 WL 13019923 (C.D. Cal. Mar. 25, 2019)..........................22

*Hook v. State of Ariz.*,
120 F.3d 921 (9th Cir. 1997) ...........................................................................19, 21

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
No. 05-cv-01532, 2008 WL 2699701 (D. Nev. July 2, 2008), *aff'd*, 347 F. App'x 275 (9th
Cir. 2009)............................................................................................................22

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
478 U.S. 421 (1986)...............................................................................15, 19, 21

*Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) .............................................................................2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

*Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*,
    No. 11-cv-03471, 2015 WL 10939711 (E.D. Cal. July 2, 2015).............................................22

*N.A. of Radiation Survivors v. Turnage*,
    115 F.R.D. 543 (N.D. Cal. 1987)..............................................................................15, 19, 20

*Nat'l Org. For the Reform of Marijuana Laws v. Mullen*,
    828 F.2d 536 (9th Cir. 1987) ...........................................................................14, 15, 20, 22

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*,
    No. 16-cv-01702, 2018 WL 2416242 (N.D. Cal. May 29, 2018)..........................................22

*Roman v. Wolf*,
    No. 20-cv-00768, ECF No. 726 (C.D. Cal. Apr. 13, 2020) .................................................20

*Shenzhenshi Haitiecheng Science and Technology Co., LTD. v. Rearden LCC*,
    No. 15-cv-00797, 2019 WL 1560449 (N.D. Cal. Apr. 10, 2019)..........................................20

*Shillitani v. United States*,
    384 U.S. 364 (1966)............................................................................................................13

*Stone v. City & Cnty. Of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ..............................................................................................15

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    No. 11-cv-04991, 2012 WL 2344081 (N.D. Cal. June 20, 2012).........................................22

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977)..................................................................................................v, 13, 15

*United States v. Suquamish Indian Tribe*,
    901 F.2d 772 (9th Cir. 1990) ..................................................................................... *passim*

**STATUTES**

28 U.S.C. § 1651(a) ............................................................................................... vi, 13, 15

Cal. Penal Code 148(a) .................................................................................................13, 14

Cal. Penal Code § 647c ..........................................................................................................12

S.F. Police Code §§ 22-24 .....................................................................................................12

S.F. Pub. Works Code § 810B .................................................................................................12

**RULES**

Fed. R. Civ. P. 53...................................................................................................... v, iv, 19

Fed. R. Civ. P. 53, 2003 Advisory Committee Notes ...............................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

Fed. R. Civ. P. 53(b) ...................................................................................................................20

Fed. R. Civ. P. 62(c) ...........................................................................................................14, 20

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. IV ...................................................................................................................v

U.S. Const., amend. VIII ........................................................................................................v, 2, 15

U.S. Const., amend. XIV ...........................................................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

## NOTICE OF MOTION & MOTION TO ENFORCE PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that on **July 13, 2023 at 1:00 PM**, or as soon thereafter as Plaintiffs may be heard, Plaintiffs Coalition on Homelessness ("Coalition"), Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn (collectively, "Plaintiffs") will and respectfully do move the Court for an enforcement order to effectively monitor compliance with the Court's preliminary injunction pursuant to the Court's inherent authority to enforce its orders and for the appointment of a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure.

Plaintiffs' Motion is brought pursuant to this Court's inherent authority to enforce and monitor compliance with its orders. *United States v. New York Tel. Co.,* 434 U.S. 159, 172 (1977) (federal courts can issue all orders that "may be necessary or appropriate to effectuate and prevent the frustration of orders"); *Armstrong v. Brown*, 857 F. Supp. 2d 919, 951 (N.D. Cal. 2012) (court concluding that "a further enforcement order is necessary to ensure compliance"); *see also* 28 U.S.C. § 1651(a). Plaintiffs' Motion is also brought pursuant to Rule 53 of the Federal Rules of Civil Procedure, on the grounds that the complexity of this litigation and the current problems related to Defendants' compliance with the preliminary injunction warrant appointment of a special master. *See United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990) ("Masters may also be appointed because of the complexity of litigation and problems associated with compliance with the district court order.").

Plaintiffs' Motion is based upon this Notice of Motion and Motion to Enforce the Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the Declarations in Support of the Motion and all exhibits and attachments thereto, upon all the pleadings and papers on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs respectfully request the Court grant their Motion to Enforce the Preliminary Injunction as follows:

i.     To declare that additional monitoring is necessary to assess Defendants'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1  compliance with the preliminary injunction due to the complexity of this litigation and the

2  problems associated with monitoring Defendants' compliance, including the Court's limited

3  resources to effectively monitor Defendants' interactions with hundreds of unhoused individuals

4  each month for compliance with the preliminary injunction;

5           ii.     To declare that Defendants' non-compliance with the Fourth and Eighth

6  Amendments and Defendants' own policies prior to issuance of the injunction and Defendants'

7  intransigence in demonstrating compliance with the preliminary injunction over the past five

8  months support additional monitoring to protect Plaintiffs from irreparable harm;

9           iii.    To require Defendants to produce periodic reports under oath regarding

10 Defendants' compliance with the Court's preliminary injunction at all dispatch, enforcement,

11 displacement, property removal/destruction, or other operations involving interfacing with

12 unhoused individuals and their property;

13          iv.     To appoint a Special Master at Defendants' expense to assist with the

14 implementation of the Court's preliminary injunction, to monitor compliance with the terms of

15 this injunction, to review compliance reports and the underlying data and certifications, and to

16 address ongoing compliance disputes before they are raised with this Court; and

17          v.      To require the parties to submit a joint letter brief, no more than 10 pages, otherwise

18 pursuant to the Court's standing order, within seven days, setting forth the parties' positions

19 regarding the scope of authority for the Special Master, appropriate candidates for the position, the

20 scope and frequency of compliance reports, and any underlying data necessary and sworn

21 certifications to be included in those reports.

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

## I.     INTRODUCTION

San Francisco is not complying with this Court's preliminary injunction.  While attempting to stay and ultimately terminate the Court's injunction, the City has persisted in routinely criminalizing homeless individuals who have no access to shelter and has indiscriminately destroyed their personal belongings.  Plaintiffs have diverted their extremely limited resources to uncover and document these ongoing and numerous violations whenever possible.  But the City has made it impossible for Plaintiffs or this Court to assess the extent of the City's non-compliance by failing to provide the thousands of dispatch reports, incident reports, and other enforcement and property logs that would show how many law enforcement interactions have violated the Court's injunction to date.

The preliminary injunction has been in place for almost five months.  Though the City's appeal attempts to relitigate a largely uncontested factual record of prior constitutional violations, the City is not entitled to violate this Court's injunction pending appeal.  Plaintiffs respectfully request that the Court issue an order to monitor compliance with its injunction, under the Court's inherent authority to enforce its orders.  The preliminary injunction cannot serve its purpose of protecting Plaintiffs from the City's unconstitutional conduct while such unlawful conduct persistently evades this Court's review.

Given the complexity of the thousands of enforcement, displacement, and property removal interactions the City has with unhoused individuals every month—all occurring without meaningful oversight—Plaintiffs request that the City be required to issue detailed reports under oath addressing compliance with the Court's preliminary injunction, and that a Special Master with limited powers of inquiry be appointed to appropriately assess how the City is complying with the Court's injunction during the pendency of this action.  These necessary prophylactic steps to enforce the Court's injunction reflect a measured solution to monitor and safeguard compliance with the Court's order without the need to initiate contempt proceedings.

## II.     PROCEDURAL HISTORY

### A.     Issuance of the Court's Preliminary Injunction

On December 23, 2022, the Court granted Plaintiffs' motion for preliminary injunction.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1    The injunction only prevents the City "from enforcing or threatening to enforce" enumerated "laws

2    and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on

3    public property." Dkt. No. 65 at 50. The Court's preliminary injunction order was replete with

4    factual findings that establish that unsheltered San Franciscans have had no practically available

5    access to appropriate shelter in the City—both at hundreds of SFPD enforcement operations and

6    even at formal HSOC resolutions where shelter is purportedly supposed to be made available. Dkt.

7    No. 65 at 41-42. As such, the Court found that unsheltered residents are involuntarily homeless

8    consistent with the Ninth Circuit's holding in *Martin*. *See Martin v. City of Boise*, 920 F.3d 584,

9    618 (9th Cir. 2019) (enforcement is impermissible whenever shelter is not "practically available").

10   The Court specifically found that the City fails to make shelter available to unhoused residents

11   prior to criminal enforcement for sleeping or lodging in public. Dkt. No. 65 at 38-39. Its injunction

12   prohibits these enforcement interactions. *Id.* at 50.

13        The Court also enjoined the City from violating its Bag and Tag policy, which requires the

14   City to store personal property collected from the street that has not been abandoned and that does

15   not represent an immediate health or safety risk. Dkt. No. 62-1 at 1-3. That policy also requires

16   the City to provide advance notice prior to pre-planned encampment resolutions. Dkt. No. 62-1 at

17   2. The Court's injunction relied on years of aggregate data and individual accounts showing that

18   the City has engaged in widespread destruction of property. Dkt. No. 65 at 28-29; 37; 44-45.

19   Those property destruction practices are prohibited under the preliminary injunction. *Id.* at 50.

20        **B.    The City Attempts to Evade the Court's Injunction.**

21        Immediately after this Court issued its injunction, the City sought to be excused from its

22   compliance obligations. On January 3, 2023, Defendants filed an administrative motion asking

23   the Court to "clarify" its order to authorize ongoing HSOC encampment resolutions, despite the

24   Court's unambiguous findings that the City's conduct at those operations violated the Eighth

25   Amendment by threatening, citing, and arresting unhoused individuals without a concrete shelter

26   offer. Dkt. No. 70. On January 12, 2023, the Court rejected this motion as procedurally improper,

27   and invited the City to file an appropriate motion for reconsideration. Dkt. No. 91 at 24:20-23.

28        Instead, the City appealed the Court's order to the Ninth Circuit and moved to "stay the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

portion of the injunction regarding enforcement of sit/lie/sleep laws"—purporting that the terms of the injunction are somehow unclear. Dkt. No. 97 at 2. This Court denied Defendants' motion to stay. Dkt. No. 119 at 6. The Court reasoned that Defendants' appellate arguments were never properly raised before the Court, and that those arguments are undermined by the Court's factual findings made in granting the preliminary injunction. *Id.* The City then renewed its stay motion before the Ninth Circuit—continuing to purport not to understand the scope and meaning of the Court's preliminary injunction. *See* Appellate Case No. 23-15087, Dkt. No. 51. Pending resolution of these motions, Plaintiffs have spent months seeking the necessary documents in discovery to at least estimate the extent of the City's non-compliance with the Court's injunction to date—to no avail. Shroff Decl. ¶¶ 3-10.

**C.    The Court Immediately Identifies Concerns with the City's Compliance.**

On January 12, 2023—just weeks after the Court's injunction came into effect—this Court noted a series of "questions and concerns" regarding Defendants' compliance with the Court's order. Dkt. No. 91 at 25:21-25. The Court also inquired whether Defendants were appropriately training or instructing staff that threatening displacement of unhoused individuals at encampment resolutions violates the Court's preliminary injunction. *Id.* at 29:22-25 ("[T]here is really questions in my mind about . . . what the training or instruction is versus what actually is happening"); *id.* at 30:1-8 ("There is some unrebutted evidence that the same notice that's being used now as was used before the preliminary injunction order . . . . That's completely contrary to the order."); *id.* at 30:15-17; 31:14-15 ("My other big concern has to do with the police presence. So, do individuals understand that moving is voluntary[?] . . . Your declarations raised some concerns that there is a real miscommunication, a real gap, in understanding especially with the police presence that was described in those declarations"). The Court specifically noted that "nobody, not a single declarant for the City, talked about . . . what was actually communicated to the affected individuals." *Id.* at 29. The Court expressed further concern at unchallenged instances of attempted property destruction. *Id.* at 30-32 ("on the bag and tag issue, we have no rebuttal by the City declarants").

In light of these concerns, the Court instructed the parties to meet and confer regarding

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

sufficient disclosures and information Plaintiffs needed to verify compliance with the Court's Order. *Id.* at 35:24-36:21. Now five months later, Plaintiffs have received none of these documents. Shroff Decl. ¶¶ 3-10. As such, the extent of the City's non-compliance with the Court's injunction at thousands of interactions with unhoused individuals has largely been hidden. Meanwhile, Plaintiffs have used their extremely limited resources to uncover serious instances of non-compliance across the City whenever possible. Coalition on Homelessness Decl. ¶¶ 3-17.

## III.   STATEMENT OF FACTS

Despite Defendants' efforts to circumvent the plain terms of the injunction and to avoid monitoring of their conduct, Plaintiffs have still observed and documented numerous, clear violations of the preliminary injunction. This is likely only a small fraction of the City's non-compliance at thousands of enforcement and displacement interactions each month—and for which Plaintiffs have virtually no insight. Shroff Decl. ¶¶ 7-9; 14-16. Publicly available data also demonstrates that the City's police enforcement against unhoused individuals merely for existing in public without shelter is on the rise despite the Court's injunction.

Plaintiffs submit additional declarations from 26 percipient witnesses regarding dozens of separate enforcement actions in violation of the Court's preliminary injunction. These witnesses include an ACLU investigator who has regularly observed weekly HSOC operations for months, Coalition on Homelessness staff and volunteers who also directly observed the City's interactions with unhoused individuals at formal sweep operations, a San Francisco public defender who happened on an unlawful enforcement interaction on his way to work, and documented accounts from more than 22 impacted unhoused individuals identifying recent criminalization and property destruction in violation of the Court's preliminary injunction.

### A.   Displacement of Unhoused Individuals Under Threat of Enforcement Despite No Shelter.

The City has continued to forcibly displace unhoused individuals at encampment resolutions by the police or with police support, ordering that people move away without any statement that those requests are voluntary or temporary. Verner-Crist Supp. Decl. ¶ 8-9 (describing general observations of the City's practices); ¶ 20 (describing sweep at 7:00 AM on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

January 27, 2023 at Leavenworth & Ellis Streets); ¶ 38-47 (describing sweep at 7:00 AM on February 9, 2023 at Leavenworth Street between Eddy Street and O'Farrell Street); ¶ 73 (describing sweep at 9:00 AM on March 1, 2023 of O'Farrell Street between Jones Street and Taylor Street); ¶ 101 (describing sweep at 1:00 PM on March 23, 2023 on Geary Street between Masonic Avenue and Presidio Avenue); Dkt. No. 76, Friedenbach 2nd Supp. Decl., ¶ 5 (describing sweep at 7:00 AM on December 27, 2022 at 17th Street); Dkt. No. 77, James 2nd Supp. Decl., ¶ 5 (describing sweep at 1:00 PM on December 27, 2022 at Taylor and Eddy Streets); Dkt. No. 78, Evans 2nd Supp. Decl., ¶ 5 (describing January 3, 2023 sweep at the Embarcadero); Dkt. No. 79, Orona Supp. Decl., ¶ 5 (describing January 4, 2023 sweep at Erie Street); Murdock Supp. Decl. ¶ 4 (describing January 17, 2023 sweep at Mission Street); Adams Decl. ¶ 4, 7 (describing January 23, 2023 and January 27, 2023 sweeps at Leavenworth Street); Harding Decl. ¶ 3, 4-5, 7 (same); Melendez Decl. ¶ 5-7 (describing January 27, 2023 sweep at Leavenworth Street); Donohoe Supp. Decl. ¶ 5-6 (describing January 31, 2023 sweep at Willow Street); Berger Decl. ¶ 6-8 (describing January 27, 2023 and February 9, 2023 sweeps at Leavenworth Street); Bagley-Adams Decl. ¶ 4 (describing February 9, 2023 sweep at Leavenworth Street); Hoffman Decl. ¶ 7 (same); Harding Supp. Decl. ¶ 3 (same); Jones Decl. ¶ 3, 9 (describing February 6, 2023 and February 14, 2023 sweeps at Sherman Street); Donohoe 2d Supp. Decl. ¶ 4 (describing March 1, 2023 sweep at O'Farrell Street); Barkley Decl. ¶¶ 8, 10 (describing February 2023 and March 23, 2023 sweep); Draper Decl. ¶¶ 3, 7 (describing March 30, 2023 sweep); Hawthorne Decl. ¶¶ 8-9 (describing April 6, 2023 sweep); Erickson Decl. ¶ 4 (describing a sweep that occurred after the new year); van Harin Decl. ¶ 3 (describing February 2023 sweep); Garcia Decl. ¶¶ 3-6 (describing sweeps, including one in February 2023); Myers Decl. ¶¶ 4, 6-7 (describing no change in sweep practices in 2023); Wise Decl. ¶¶ 2, 5 (describing two sweeps in February 2023); Myers Decl. ¶ 4; Calloway Decl. ¶ 3 (describing April 21, 2023 move-along).

At least three declarants attest to being forced by the City to move on multiple occasions since the injunction was issued, ranging from at least six to twenty times. Martin Decl. ¶ 6 ("Since January 2023 I have been swept at least 20 times."); Myers Decl. ¶ 6 ("I have been swept at least 10 times since the beginning of the year."); Barkley Decl. ¶ 4 ("I have been swept approximately

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

six times since December 24, 2022."). All of the declarations describe various interactions with the City, ranging from formal HSOC resolutions to informal and ad-hoc police or single-department sweeps. *E.g.*, Murdock Supp. Decl. ¶ 4; van Harin Decl. ¶ 5.

Even at formal HSOC resolutions—the only operations it has been possible for Plaintiffs to monitor—Defendants still order unhoused people to move. SFPD arrives at encampment clearances along with other City agencies, including SFFD, HOT, SFMTA, DEM, and DPW. Verner-Crist Supp. Decl. ¶¶ 23; 30; 36; 54; 63; 71; 79; 95; 120; 127; Dkt. No. 76, Friedenbach 2nd Supp. Decl., ¶ 7; Dkt. No. 78, Evans 2nd Supp. Decl., ¶ 6; Dkt. No. 77, James 2nd Supp. Decl., ¶ 6; Dkt. No. 79, Orona Supp. Decl., ¶ 6; Adams Decl. ¶ 4; Harding Decl. ¶ 6; Melendez Decl. ¶ 7; Harding Supp. Decl. ¶ 3; Donohoe Supp. Decl. ¶ 5; Berger Decl. ¶ 7; Murdock Supp. Decl. ¶ 4; Jones Decl. ¶ 3, 5, 6; Bagley-Adams Decl. ¶ 6; Hoffman Decl. ¶ 7; Donohoe 2nd Supp. Decl. ¶ 4; Myers Decl. ¶ 4; Barkley Decl. ¶ 8; Draper Decl. ¶ 4; Hawthorne Decl. ¶ 8-9. Upon arriving, Defendants immediately instruct unhoused individuals to pack up their belongings and leave. Verner-Crist Supp. Decl. ¶¶ 8-9; Dkt. No. 76, Friedenbach 2nd Supp. Decl., ¶ 8; Dkt. No. 77, James 2nd Supp. Decl., ¶¶ 6-7; Dkt. No. 78, Evans 2nd Supp. Decl., ¶¶ 3-4; Dkt. No. 79, Orona Supp. Decl., ¶¶ 7-9; Adams Decl. ¶¶ 5, 7, 9-10; Harding Decl. ¶¶ 3-5, 9-10; Melendez Decl. ¶¶ 5-6; Harding Supp. Decl. ¶ 3; Berger Decl. ¶ 6; Murdock Supp. Decl. ¶ 6; Jones Decl. ¶¶ 3-4; Bagley-Adams ¶ 7; Hoffman Decl. ¶¶ 6-7; Donohoe Supp. Decl. ¶ 6; Donohoe 2d Supp. Decl. ¶¶ 5, 8; Myers Decl. ¶ 7; Martin Decl. ¶¶ 7-8; Barkley Decl. ¶¶ 3, 8; Draper Decl. ¶¶ 6-7; Hawthorne Decl. ¶ 9.

The City continues to threaten unhoused individuals—both explicitly and implicitly—to force them to move. While notice is routinely not given, posted signage remains that threatens ongoing enforcement. Waltier Decl. ¶ 8, Ex. A ("no lodging" sign, citing enjoined ordinance); Verner-Crist Supp. Decl. ¶ 128, Ex. M (same); *see also* Bagley-Adams Decl. ¶ 4, Ex. A ("Notice stating SFPD 'may enforce San Francisco and California laws as needed; and a desire to ensure streets are "free of tents, structures, and belongings."). If individuals refuse to comply with these unlawful orders to move, the City threatens them with arrest, warrant checks, jailing, and the destruction of their property. *See, e.g.* Verner-Crist Supp. Decl. ¶ 42 (SFPD incident commander

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1   telling individuals to move "or we're going to start throwing [belongings] into that machine," and

2   to move "now" or the police will come over).  On multiple instances, the City has even told

3   individuals that if they do not comply and vacate encampments, they will be arrested or jailed.

4   Adams Decl. ¶ 9; Myers Decl. ¶ 8; Martin Decl. ¶ 8; Donohoe Supp. Decl. ¶ 6.  In one instance,

5   an SFPD officer ordered unhoused individuals to move along, explicitly citing sit/lie laws.

6   Calloway Decl. ¶¶ 5-7.  In another episode, video evidence shows an officer stomp on the ground

7   by an individual's head to wake him up as three others assist in forcibly removing the unhoused

8   person from the area.  Shroff Decl. ¶ 26.  As an intimidation tactic, the City has also threatened

9   unhoused individuals with warrant checks unless they depart the area, despite having no particular

10  suspicion of genuine criminal activity.  Dkt. No. 79, Orona Supp. Decl., ¶ 9; Myers Decl. ¶ 8.  City

11  employees also threaten individuals with seizure and destruction of their belongings if they do not

12  move.  Verner-Crist Supp. Decl. ¶¶ 41-49; Berger Decl. ¶ 6, Jones Decl. ¶ 3; Bagley-Adams Decl.

13  ¶ 7; Hoffman Decl. ¶ 7; Myers Decl. ¶ 7; Adams Decl. ¶ 9.

14      Unhoused individuals report unheeded attempts at self-advocacy.  For instance, when

15  unhoused individuals assert the protection of the Court's order, City employees have responded

16  that "they did not care about the court order."  Jones Decl. ¶ 4.  City employees have stated that

17  the Court order and monitoring do not matter.  Verner-Crist Decl. ¶¶ 47-48.  Even when City

18  employees were told that they cannot displace people for being unhoused, Defendants simply

19  "shrugged" and reasserted their demand that the individuals move.  Bagley-Adams Decl. ¶ 5.  One

20  person was even wrongly informed that the Court's injunction "order was gone" after being

21  ordered to leave.  Melendez Decl. ¶ 6.

22      The City has previously contended that any orders to move given by City staff are merely

23  voluntary or temporary requests.  Dkt. No 82 at 3; Dkt. No. 80-1 at 4; Dkt. No. 80-2 at 2.  But, as

24  the Court recognized, this is not communicated to the individuals subjected to displacement.  *See*

25  Dkt. No. 91 at 29.  City employees tell unhoused individuals they have to move without explaining

26  what will happen if they do not comply.  Verner-Crist Supp. Decl. ¶¶ 56, 97, 111; Myers Decl. ¶

27  15; Draper Decl. ¶ 6; Harding Supp. Decl. ¶ 3; Donohoe 2d Supp. Decl. ¶ 5; Berger Decl. ¶ 8;

28  Jones Decl. ¶ 9.  Defendants show no indication that their requests to move are temporary or

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

voluntary.  Dkt. No. 76, Friedenbach 2nd Supp. Decl., ¶¶ 8-9; Dkt. No. 77, James 2nd Supp. Decl., ¶¶ 7-8; Dkt. No. 78, Evans 2nd Supp. Decl., ¶¶ 8-9; Dkt. No. 79, Orona Supp. Decl., ¶¶ 7-9; Murdock Supp. Decl. ¶ 6.  Nor do City employees explain to individuals that they are not obligated to move.  Donohoe 2nd Supp. Decl. ¶ 8.  Individuals are simply told they cannot stay.  Hoffman Decl. ¶ 9.  In some cases, SFPD officers make vague threats to move or "suffer the consequences."  Verner-Crist Supp. Decl. ¶ 38; Myers Decl. ¶ 7.  Even when SFPD does not make the initial request for an individual to move, the police become involved to support requests to move from other City officials.  Verner-Crist Supp. Decl. ¶ 42; Harding Decl. ¶¶ 4-5.  As a result, individuals come to understand that they are not supposed to return to the area after being asked to move.  Donohoe Supp. Decl. ¶ 6.

The City's orders to move continue to occur prior to genuine shelter offers because the shelter system still remains full and closed and shelter continues to be offered only rarely and insufficiently during enforcement operations.  Dkt. No. 78, Evans 2nd Supp. Decl., ¶ 8; Dkt. No. 77, James 2nd Supp. Decl., ¶¶ 7, 9; Dkt. No. 76, Friedenbach 2nd Supp. Decl., ¶¶ 4, 8-10.  For instance, one sweep resulted in the removal of 30-40 unhoused individuals even though only two people received transport to shelter.  Donohoe Supp. Decl. ¶ 9.

Even when the HOT team is present, they do not know whether they have available shelter to offer.  Verner-Crist Supp. Decl. ¶ 22; Berger Decl. ¶ 9; Hoffman Decl. ¶ 8.  At times, City workers will vaguely ask whether unhoused individuals would like to "go inside," without clearly providing a firm offer of shelter.  Verner-Crist Supp. Decl. ¶ 8; Barkley Decl. ¶ 12.  On other occasions, HOT team workers approach unhoused individuals as they are being moved, but do not offer shelter or services.  Myers Decl. ¶ 16; Draper Decl. ¶ 7.  They simply inform people present at the site that the City *might* have shelter without any further detail while they are being asked to move as City workers clear the area.  Melendez Decl. ¶ 4.  While the unhoused are engaged in these discussions about uncertain promises of shelter, they are simultaneously instructed to move while the area is being cleaned and cleared.  Myers Decl. ¶ 4.  In the rare instances where shelter is offered, it does not materialize and the City makes no accommodation for disabilities or to allow families to stay together.  *See, e.g.*, Barkley Decl. ¶¶ 6, 8, 10, 15; Adams Decl. ¶¶ 4, 7; Hawthorne

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

8

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

Decl. ¶¶ 8-9; Murdock Supp. Decl. ¶ 4.

Additionally, sweeps where individuals are told to move often occur without the presence of the HOT team to offer shelter.  Myers Decl. ¶ 10; Martin Decl. ¶ 7, 8; Barkley Decl. ¶ 8; van Harin Decl. ¶ 5; Calloway Decl. ¶¶ 5-7; *see also* Myers Decl. ¶¶ 7-10 (describing a sweep where SFPD told the declarant to move under threat of property destruction and warrant checks, when the HOT team was not present to offer shelter); Hawthorne Decl. ¶ 7 (describing SFPD telling the declarant he would have to move "nearly every morning at 6:30 AM," without HOT's presence); Barkley Decl. ¶ 8 (describing an SFPD and DPW joint operation where HOT was not present).

At sweep operations, Defendants have mocked unhoused people and treated them as disposable trash, leaving them traumatized and dehumanized.  *See, e.g.,* Adams Decl. ¶ 15; Harding Decl. ¶ 5; Harding Supp. Decl. ¶ 4; Garrett Decl. ¶ 10; Verner-Crist Supp. Decl. ¶ 67; Hoffman Decl. ¶ 11; Jones Decl. ¶¶ 8, 11; Murdock Supp. Decl. ¶¶ 7, 11; Myers Decl. ¶ 19; Wise ¶ 6.

## B.   Ongoing and Indiscriminate Property Destruction.

While removing individuals from encampments, the City has also continued to indiscriminately destroy their personal property, violating the express, central terms of their bag and tag policy, which the Court's injunction incorporates by reference.  Verner-Crist Supp. Decl. ¶ 12; Adams Decl. ¶ 4; Murdock Supp. Decl. ¶ 8; Jones Decl. ¶ 5; Harding Supp. Decl. ¶ 4; Garrett Decl. ¶¶ 4-10; Garcia Decl. ¶¶ 3-6; Cannon Decl. ¶¶ 3-4; Wise Decl. ¶¶ 2-5.  Personal items that are not trash or hazardous materials are routinely destroyed during sweeps.  Murdock Supp. Decl. ¶ 9 (listing loss of catering equipment, electric bike, batteries, solar panels, ring, and earrings); Erickson Decl. ¶ 7 (listing loss of cooking equipment, dishes, camping gear, and a suitcase full of clothes); Moran Decl. ¶ 4 (describing loss of SSI card, ID, and other personal property in a backpack); Garrett Decl. ¶¶ 4-10 (describing loss of work tools, phone charger, a cooler for food, inflatable sleeping pad, bedding, and clothes); Garcia Decl. ¶¶ 4-10 (describing loss of tents, hygiene products, cell phones); Cannon Decl. ¶¶ 3-4 (describing loss of work necessities and electronics like phone, tablet, and laptop); Wise Decl. ¶¶ 2-5 (describing loss of gift cards, guitar, tent, sentimental jewelry, a guitar, and phone); Verner-Crist Supp. Decl. ¶ 50 (describing neatly

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

packed blanket and suitcases thrown into dump truck); Dkt. No. 78, Evans 2nd Supp. Decl. ¶¶ 10-11 (describing that Defendants wrongly declared a usable tent abandoned and only intervention by declarant prevented its destruction).  In fact, Defendants regularly discard or declare momentarily unattended tents (and their content) abandoned, even when clearly not the case.  Erickson Decl. ¶¶ 8-9 (describing the City taking down four tents or tarps, even though the campsites were neatly arranged and clearly not abandoned, and even though individuals at the site shouted that the tents were not abandoned or trash); Verner-Crist Supp. Decl. ¶ 49 (describing the City destroying an intact tent); Ex. D; Waltier Decl. ¶ 9 (describing tent confiscation).  Defendants likewise destroy bedding and survival gear, often simply to force unhoused individuals to move along.  Verner-Crist Supp. Decl. ¶¶ 46, 105, 115; Exs. C, L.  These belongings facilitated work, helped maintain communication with loved ones, were necessary survival gear, or possessed deep sentimental value.

Defendants need not violate their own policies and the injunction to ensure clean streets, which unhoused people also want.  Erickson Decl. ¶ 8; Garcia Decl. ¶ 3; Hoffman Decl. ¶ 11. DPW workers destroy whatever items unhoused individuals are unable to immediately take with them while being asked to move.  Berger Decl. ¶ 10; van Harin Decl. ¶ 6; Garrett Decl. ¶¶ 6-10; Garcia Decl. ¶¶ 3-4.  While being forced to move, unhoused individuals are not permitted to collect all their belongings or are not given enough time to collect their property before it is destroyed. Verner-Crist Supp. Decl. ¶¶ 42-46 (SFFD Incident Commander told one individual to move immediately and then destroyed his property shortly thereafter); Jones Decl. ¶ 5 (DPW began throwing away the declarant's belongings after only 5-10 minutes); *see also* Myers Decl. ¶¶ 9, 17; Garrett Decl. ¶¶ 6-10; Garcia Decl. ¶ 3.  The City makes no accommodation for individuals with disabilities during these sweeps.  Verner-Crist Supp. Decl. ¶ 123; Martin Decl. ¶¶ 3, 9; Hawthorne Decl. ¶ 9.  Defendants discard people's property in dump trucks without asking whether any items are personal belongings that individuals would like to keep.  Donohoe Supp. Decl. ¶¶ 7-8; Harding Decl. ¶ 3; Moran Decl. ¶ 4.  Once items are discarded into trucks, City workers refuse to return any of those items despite pleas.  Jones Decl. ¶ 5 ("Once it's on the truck, it's on the truck."); van Harin Decl. ¶ 7 (DPW worker refusing to allow declarant to retrieve his guitar case out of the DPW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

truck); Barkley Decl. ¶ 18 (SFPD officer preventing declarant from retrieving his property from a truck); Garrett Decl. ¶ 7 (request denied); Wise Decl. ¶ 4 ("They belong to the City now").  Nor do they offer to store any of this property for later retrieval, as legally required, even when explicitly asked to do so.  Barkley Decl. ¶¶ 9, 17; Martin Decl. ¶ 9; Erickson Decl. ¶ 8; van Harin Decl. ¶ 8; Garrett Decl. ¶ 7.

### C.      Public Data Shows That Enforcement is on the Rise Despite the Injunction.

The City's own public dispatch data shows that it is still sending police—instead of outreach workers who can offer services—to respond to complaints about homelessness about 600 times per month.  Shroff Decl. ¶¶ 14-16.  The City also reports dispatching police *specifically* for "919 Sit/Lie Enforcement" hundreds of times each month—with more than 1,000 police dispatches to enforce sit/lie prohibitions since this Court's injunction was issued.  Shroff Decl. ¶¶ 14-15.  Despite a modest decline immediately after the injunction was issued, police dispatches for sit/lie enforcement are on the rise again over the last several months.  Shroff Decl. ¶ 19.



Meanwhile, the City has still not re-opened its shelter system for self-referral and voluntary access through 311.  Shroff Decl. ¶¶ 28-29.

### D.      Pretextual Enforcement Pursuant to Non-Existent "Accessibility" Laws.

The City's scorn for the preliminary injunction is apparent in regular discussions between SFPD officers strategizing on how to remove homeless individuals from public space notwithstanding that unhoused individuals have no meaningful access to shelter.  Shroff Decl. ¶ 27; Ex. D ("The homeless community has been made aware of this injunction and know all our limitations and are taking advantage of it").  To circumvent the injunction, SFPD determined to

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

11

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

ramp up purported "accessibility" enforcement—stating as a matter of policy that unhoused people will be forcibly displaced, cited, or even arrested whenever they violate a 4-foot clearance rule on public sidewalks.   Shroff Decl. ¶ 27; Ex. D; Dkt. No. 97-2 at 2.   Unhoused individuals can effectively be forced off of any sidewalk in San Francisco under this pretext.

California law and the San Francisco charter include important accessibility laws that criminalize the willful, malicious, intentional, and substantial obstruction of pedestrian and wheelchair access on a public right of way.   *See, e.g.*, Cal. Penal Code § 647c; S.F. Police Code §§ 22-24 (prohibiting "willfully and substantially obstructing the free passage of any person or persons").   But the mere existence of an unhoused person on a sidewalk is not a valid basis for criminal enforcement—nor do any of these laws impose a bright line 4-foot clearance rule.   *See Burdett v. Reynoso*, No. 06-cv-00720, 2007 WL 2429426, at *9 (N.D. Cal. Aug. 23, 2007) ("[c]ausing a slight deviation in a pedestrian's path does not necessarily constitute an illegal obstruction, nor does the mere presence of a person on a sidewalk.   A street or sidewalk cannot be obstructed, only a person").   Contractors building a sidewalk in San Francisco must make sure that the sidewalk has 4 feet of usable space.   S.F. Public Works Code § 810B.   Accessibility is vital, particularly for individuals with disabilities, and the unhoused population is comprised of a disproportionate number of individuals with disabilities who the City fails to serve.   But that does not make it a crime for the public to make use of the sidewalk.   It is unclear how many SFPD enforcement operations have proceeded to displace unhoused individuals in violation of the Court's order under the pretense of enforcing this non-existent rule.[1]

**E.    The City Has Withheld Essentially All Disclosures Necessary for Monitoring.**

Plaintiffs still have virtually no insight into the thousands of law enforcement interactions that the City has conducted against unhoused individuals.   Shroff Decl. ¶¶ 5-9.   The City has failed

---

[1] There is further evidence to suggest that sit/lie enforcement will again become institutional policy, even though enforcing sit/lie laws against unhoused individuals would obviously violate the injunction.   Mayor Breed's administration has informed Supervisor Dean Preston that it will enforce "illegal squatting" laws—purportedly as a way to prohibit public intoxication.   *See* Shroff Decl. ¶ 30; Ex. F.   The City can enforce its public intoxication laws, but it cannot arrest people purely because they have no choice but to sleep outside, pretending to carry out drug enforcement. The development of this new "tough on crime" program warrants close attention from this Court.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

to share what specific instructions, training, or other guidance have been given to staff regarding the Court's injunction.  Shroff Decl. ¶ 10; *see also* Dkt No. 80-1 at 3-4; Dkt. No. 80-3 at 4-5.  Nor has the City provided any advance notice of displacement operations other than formal HSOC operations that only constitute a small fraction of the City's enforcement interactions with unhoused individuals.  Shroff Decl. ¶ 4.  As such, it has been impossible to effectively monitor the City's compliance with the injunction over the past five months.  Plaintiffs sought expedited discovery and recurring document disclosures in an attempt to identify the extent of the City's non-compliance with the Court's injunction as soon as December 29, 2022.  Shroff Decl. ¶ 3.  But the City initially refused to provide the requested disclosures, stalled the meet-and-confer process for months despite dozens of emails and conversations, and declined to engage in a joint discovery dispute letter process to allow Plaintiffs to seek resolution from the Court.  Dkt. Nos. 117, 118, 121, 123.

To date, Plaintiffs have received effectively no information—not even a representative sample—that would provide insight into whether the City has taken any meaningful steps to comply with the Court's injunction.  Shroff Decl. ¶ 6-9.  For example, Plaintiffs have only seen 71 SFPD incident reports addressing interactions with unhoused individuals at homeless encampments despite thousands of reported law enforcement interactions, have seen no citation and arrest data for Cal. Penal Code 148(a) (failure to move along), and have seen only 53 CAD detailed dispatch reports where law enforcement responded to a homelessness complaint— comprising less than 3% of the relevant police dispatches since the injunction took effect.  Shroff Decl. ¶¶ 7-9.

## IV.    LEGAL STANDARD

Courts have inherent authority to monitor and enforce their prior orders.  *Shillitani v. United States*, 384 U.S. 364, 370 (1966); 28 U.S.C. § 1651(a); *see also United States v. New York Tel. Co.,* 434 U.S. 159, 172 (1977) (federal courts can issue all orders that "may be necessary or appropriate to effectuate and prevent the frustration of orders").  These inherent powers include the ability to issue enforcement orders that impose additional monitoring and reporting requirements—including compliance reports and the appointment of a special master.  *See*, *e.g.*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1    *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990).  These inherent

2    powers can be exercised even without a finding of intentional non-compliance with a court's prior

3    orders.  *Nat'l Org. For the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987)

4    ("no circuit authority that requires a determination of intentional disregard of court orders before

5    a special master may be appointed").

6           This Court also retains jurisdiction to enforce its preliminary injunction even during the

7    pendency of any interlocutory appeal.  Fed. R. Civ. P. 62(c); *A&M Records Inc. v. Napster*, Inc.,

8    284 F.3d 1091, 1099 (9th Cir. 2002); *GTE Sylvania v. Consumers Union of United States*, 445

9    U.S. 375, 386 (1980) ("persons subject to an injunctive order issued by a court with jurisdiction

10   are expected to obey that decree until it is modified or reversed, even if they have proper grounds

11   to object to the order.")

12   **V.      ARGUMENT**

13          **A.      The City Repeatedly Violated the Injunction, Warranting a Compliance**

14                 **Order.**

15          Defendants' years-long history of non-compliance with the Constitution and their own

16   policies formed the basis of this Court's preliminary injunction and Plaintiffs' initial request for a

17   special master to be appointed.  Dkt. No. 65 at 37-40; 42-45; Dkt. No. 75 at 1-3; 5.  Now, the City

18   has displayed the same intransigence in failing to comply with this Court's preliminary injunction.

19   *See supra* Section III.  The City cannot be "enforcing or threatening to enforce, or using California

20   Penal Code section 148(a) to enforce or threaten to enforce," laws that criminalize the status of

21   being homeless against involuntarily unhoused individuals.  Dkt. No. 65 at 50.  SFPD's new

22   enforcement bulletin confirms the City's understanding of the injunction's requirements.  *See* Dkt.

23   No. 97-2.  But Plaintiffs have now identified numerous instances of non-compliance with the

24   Court's preliminary injunction prohibiting criminalization of involuntary homelessness and the

25   summary destruction of property.  *See supra* Section III.  And those instances of noncompliance

26   occur when the City is being monitored, presumably while on its best behavior.  The City's refusal

27   to properly provide the information necessary to ascertain its compliance with the injunction at

28   thousands of unmonitored enforcement operations since the injunction was issued suggests that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

there are likely countless other ongoing violations of the injunction that have been impossible for Plaintiffs to uncover.  *See supra* Section III.E.

Although past failure to adhere to a court order is unnecessary for the Court to exercise its inherent authority, *see Mullen*, 828 F.2d at 543, the City's consistent non-compliance—before and after the injunction was issued—warrants application of the Court's power to monitor and enforce its preliminary injunction order.[2]  *See, e.g.*, *Armstrong v. Brown*, 857 F. Supp. 2d 919, 951 (N.D. Cal. 2012) (in light of demonstrated non-compliance, "the Court concludes that a further enforcement order is necessary to ensure compliance with the terms of the Amended Order and GRANTS Plaintiffs' motion to enforce it"); *N.A. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987) (courts have approved the appointment of special masters where parties have "failed to comply with court orders, displayed intransigence in the litigation, or required close supervision"); *see also Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986) (noting "the difficulties inherent in monitoring compliance with the court's orders" and the parties' "established record of resistance to prior state and federal court orders").  The Court is empowered to fashion the terms of any enforcement order in its broad discretion so long as it "effectuate[s] and prevent[s] the frustration of [its] orders[.]"  *New York Tel. Co.,* 434 U.S. at 172; 28 U.S.C. § 1651(a).

**B.    Without Additional Monitoring, Violations Will Continue to Evade Review, Subjecting Plaintiffs to Ongoing Irreparable Harm.**

---

[2] The instant motion is relatively modest given the extent of the non-compliance Plaintiffs have documented and observed over the last several months, the tremendous resources and efforts expended to do so, Defendants' refusal to provide information necessary to assess their compliance for months, and Defendants' statements both to this Court and to the Ninth Circuit regarding its intention to continue its unlawful practices at encampment displacement operations as it seeks to dissolve this Court's orders.  *See supra* Sections II.B-III.E.  Plaintiffs only seek relief here to assist Defendants with satisfying their compliance obligations, even though these circumstances easily rise to the level of civil contempt.  *See, e.g.*, *Stone v. City & Cnty. Of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) ("The City argues that its good faith efforts to comply with the provisions of the consent decree should excuse its noncompliance.  The City, however, confuses the liability standards for Eighth and Fourteenth Amendment violations with applicable standards of review for contempt orders.  Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1.   <u>The City Has Stonewalled Plaintiffs on Advanced Notice and Recurring
Disclosures for Months—Exposing Plaintiffs to Irreparable Harm</u>.

Plaintiffs have sought advanced notice and recurring disclosures about sweeps operations since the preliminary injunction was entered more than five months ago.  *See* Dkt. Nos. 75; 121; 123.   While Plaintiffs negotiated in good-faith with Defendants regarding such disclosures, Defendants have consistently obstructed progress.   To date, Defendants still have not even provided the narrow agreed-upon disclosures the parties have argued over for months, supposedly pending this Court's review of an unrelated issue in the parties' joint discovery dispute.   Shroff Decl. ¶ 5.

These disclosure issues have been accompanied by Defendants' refusal to provide advance notice of certain planned encampment operations *for months*.  Plaintiffs requested advanced notice of all pre-planned encampment operations but Defendants refused to provide that information based on semantic quibbles regarding what constitutes a pre-planned encampment operation.  *See e.g.* Dkt. No. 80-5 (email thread containing Defendants' refusal to provide notice based on tortured definitions of "planned homeless encampment resolutions").  Defendants have used this dispute as an excuse to provide notice only for encampment resolution operations planned by HSOC— without providing advanced notice for *a single* planned operation originating through SFPD or DPW even though both agencies routinely target encampments and individual unhoused persons with planned operations that result in displacement and property destruction independently of coordinated HSOC resolutions.  *See* Dkt. No. 123.

The lack of monitoring disclosures is particularly galling where SFPD has promulgated a bulletin demonstrating that Defendants perfectly understand what the injunction requires of them, despite repeatedly claiming the injunction is unclear and suggesting they cannot comply with the order in public filings.  *See* Dkt. No. 97-2; Dkt. No. 104 at 3 ("Defendants . . . face the choice of either enforcing the injunction in a way that exceeds Ninth Circuit precedent or risking accusations from the Plaintiffs of contempt.").  The SFPD enforcement bulletin, which Defendants have suggested they cannot follow, is the only information Defendants have provided in response to Plaintiffs repeated requests to know what steps Defendants are taking to comply with the Court's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

order.  Defendants have otherwise refused to disclose any information about how they are ensuring compliance with the injunction.  Shroff Decl. ¶¶ 9-10.  This is particularly concerning given Defendants' poor track record of failing to follow even their own policies—which necessitated the Court's issuance of the preliminary injunction to protect Plaintiffs from further harm.  Meanwhile, the City's personnel has been engaging in enforcement activity while purporting not to know what the injunction requires.  *See supra* Section III.A.

> ### 2.   The Complexity and Numerosity of the City's Interactions with Unhoused Individuals Makes Monitoring Unusually Challenging.

Even if Plaintiffs ultimately begin receiving all the disclosures Defendants have agreed to provide on a recurring basis—and finally get appropriate advance notice of all pre-planned encampment operations which Defendants have failed to provide in the past (Dkt. No. 123-1), this would provide little visibility into the City's conduct at the huge number of ad hoc enforcement operations the City engages in and that are on the rise.  The City has engaged in approximately 200 formal HSOC sweeps since the beginning of the year.  Shroff Decl. ¶ 4.  On top of this already large number, Defendants have not provided any information about the innumerable other planned encampment operations by SFPD, DPW, and other agencies.  See Dkt. No. 80-5.  The City has dispatched SFPD officers to respond to unhoused individuals at least 4,286 times since the injunction was issued in response to 915 (Homeless Complaint) and 919 (Sit/Lie Enforcement) calls, without providing any notice, even after the fact, to Plaintiffs to permit compliance monitoring during these thousands of law enforcement interactions covered by the Court's injunction.  Shroff Decl. ¶¶ 14-16.  The extremely limited data sampling to which Defendants have agreed—and still failed to provide—would scarcely permit Plaintiffs to examine the documentation for even a tiny fraction of these thousands of enforcement interactions.  See Dkt. No. 123-1 (permitting review of only 40 SFPD incident reports for each three week period while almost 1,000 SFPD dispatches occur during the same period); *see also* Dkt. No. 123 (agreeing to provide only ten out of a thousand dispatch log records for each period, citing purported burden concerns).

Meanwhile, the City has sought to prevent unhoused individuals from "taking advantage"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1   of the injunction by enforcing non-existent "accessibility" rules to force individuals to relocate

2   from sidewalks.  *See supra* Section III.D; Shroff Decl. ¶ 27; Ex. D.  The stipulation and proposed

3   order the parties negotiated around disclosures would only allow Plaintiffs to see a sample of, at

4   most, 3-4% of the law enforcement interactions happening across the City every month.  Dkt. No.

5   123-1.  The City has not produced even this limited information.  But these disclosures the City

6   has agreed to provide will not meaningfully allow Plaintiffs or this Court to assess compliance

7   with the injunction.

8          The City has never done a full accounting of the extent of its plan for compliance with the

9   injunction, what protocols are in place, how staff have been trained, and whether the City is even

10  measuring the extent of its compliance or non-compliance with the injunction.  Dkt. No. 91 at

11  25:21-25; 29:22-25; 30:15-17; 31:14-15.  Plaintiffs never received any summary reports stating

12  how many SFPD dispatches have been conducted involving unhoused individuals, or how many

13  times DPW has interacted with unhoused individuals.  Shroff Decl ¶¶ 5-9.  This raises substantial

14  concerns that the City is engaged in rampant violations of the injunction given the numerous police

15  dispatches occurring every month for individuals this Court has already found do not have access

16  to shelter.  Shroff Decl. ¶¶ 15-16.  Without more detailed and regular compliance reports and close

17  monitoring, the City's misconduct  and non-compliance will likely continue undetected, causing

18  Plaintiffs to suffer ongoing harms, undermining the very purpose of the injunction.

19              3.    <u>Plaintiffs Do Not Have the Resources to Effectively Monitor the City's</u>

20                    <u>Ongoing Non-Compliance with the Court's Order.</u>

21          In the months that have passed since the Court issued its injunction, Plaintiffs have only

22  been able to meaningfully monitor planned HSOC operations for which they were provided

23  timely notice—a tiny fraction of the City's enforcement operations involving the homeless.

24  Even so, Plaintiffs have exhausted their resources to monitor the City's non-compliance with the

25  injunction even at these formal sweeps alone.  The Coalition has used about 21 hours a week on

26  monitoring, devoting two organizers and about 10 volunteers to this task—diverting them from

27  the Coalition's core mission to address the City's constitutional violations.  Coalition Decl. ¶¶ 6-

28  7. Plaintiffs have also enlisted the help of an ACLU investigator who has spent another seventy-

1    five hours conducting monitoring for this case but does not have the capacity to continue

2    monitoring at the level he has for the past 5 months.  Shroff Decl. ¶ 11.  Plaintiffs' counsel are in

3    no position to hire a third-party investigator to conduct further monitoring given that they are not

4    charging their clients for their services and not receiving any fees for their services to defray the

5    costs of such monitoring.  Shroff Decl. ¶ 12.

6         Without more oversight, Plaintiffs are essentially in the same position as before the

7    injunction was entered.  Coalition Decl. ¶¶ 10-16.  If Coalition volunteers are present to monitor

8    the City's engagements with the unhoused, unhoused individuals are protected from only the

9    most blatant violations of their rights.  But Plaintiffs have no assurance that individuals' rights

10   are being protected in the thousands of unobserved interactions between the City and the

11   unhoused.  Thus, at this stage, the Court's assistance will be invaluable to ensure that the

12   injunction serves its purpose of protecting individuals from irreparable harm caused by violations

13   of their constitutional rights.

14        **C.      A Special Master is Warranted by the City's History of Malfeasance and**

15        **Intransigence in Litigation, and the Complexity of Monitoring Compliance.**

16        Courts have the inherent ability to appoint a monitor and the Ninth Circuit has made clear

17   that the "exceptional circumstances" requirement under Fed. R. Civ. Procedure Rule 53 is satisfied

18   where there is either a history of persistent non-compliance or where the difficulty of assessing

19   compliance alone is substantial enough to warrant appointment of a special master.  *Suquamish*

20   *Indian Tribe*, 901 F.2d at 775 ("Masters may also be appointed because of the complexity of

21   litigation and problems associated with compliance with the district court order"); *Hook v. State*

22   *of Ariz.*, 120 F.3d 921, 926 (9th Cir. 1997) (appointment of special master where there was

23   noncompliance with consent decree and the court lacked the resources to constantly monitor

24   compliance); *Turnage*, 115 F.R.D. at 560 (Courts have approved the appointment of special

25   masters where parties have "failed to comply with court orders, displayed intransigence in the

26   litigation, or required close supervision."); *see also Local 28 of Sheet Metal Workers' Int'l Ass'n*,

27   478 U.S. at 482 (noting "the difficulties inherent in monitoring compliance with the court's orders"

28   and the parties' "established record of resistance to prior state and federal court orders").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1       A history of noncompliance weighs in favor of appointing a special master, but it is not a

2 requirement where there are complex compliance questions and significant resources are needed

3 to verify compliance. *See Shenzhenshi Haitiecheng Science and Technology Co., LTD. v. Rearden*

4 *LCC*, No. 15-cv-00797, 2019 WL 1560449, at *6-7 (N.D. Cal. Apr. 10, 2019) ("[t]hough a history

5 of noncompliance weighs in favor of reference to a special master, the Ninth Circuit has rejected

6 a requirement that a court must find 'intentional disregard of court orders before a special master

7 may be appointed'"), *quoting Mullen*, 828 F.2d at 543; *Suquamish Indian Tribe*, 901 F.2d at 775;

8 *see also Flores v. Sessions*, No. 85-cv-04544, 2018 WL 6133665, at *2 (C.D. Cal. Nov. 11, 2018)

9 ("Defendants entirely misapprehend the purpose of the Monitor's appointment and the scope of

10 the Court's authority for doing so . . . the appointment of a special master [is]

11 to *monitor* compliance with a court's orders, and not to *coerce* that compliance or *punish* a

12 defendant for non-compliance") (emphasis in original).

13       It is also clear in the Ninth Circuit that a special master is appropriate to oversee compliance

14 with a preliminary injunction—even when the injunction is subject to an interlocutory appeal. *See*,

15 *e.g. Mullen*, 828 F.2d at 543 ("There are no judicial decisions requiring a final determination of

16 constitutional violation before an "exceptional condition" justifying reference to a master can arise

17 under Rule 53(b)"); *Roman v. Wolf*, No. 20-cv-00768, ECF No. 726 (C.D. Cal. Apr. 13, 2020)

18 (court appointing a special master to oversee a preliminary injunction *sua sponte* given "the

19 Government's inability to provide the Court with timely and accurate information"); *Fed. Trade*

20 *Comm'n v. John Beck Amazing Profits, LLC,* No. 09-cv-04719, 2009 WL 7844076, at *16 (C.D.

21 Cal. Nov. 17, 2009) ("the appointed monitor would be charged with . . . ensur[ing] that the

22 corporate Defendants are complying with the preliminary injunction"); *see also A&M Records*

23 *Inc.*, 284 F.3d at 1099 (district court permitted to "continue supervising compliance with the

24 injunction" via an enforcement order notwithstanding a pending appeal of the original injunction),

25 *citing* Fed. R. Civ. P. 62(c).

26       Here, both factors squarely apply in favor of a special master.  First, the City has "failed to

27 comply with court orders, displayed intransigence in the litigation, or require[s] close supervision."

28 *Turnage*, 115 F.R.D. at 560.  In litigation, the City has repeatedly and unsuccessfully sought to be

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

excused from the terms of the injunction.  *See supra* Section II.B.  The "seriousness and deliberate nature" of a parties' behavior supports a "substantial likelihood of continued unlawful practices" and need for a monitor.  *Fed. Trade Comm'n v. Vemma Nutrition Co.*, No. 15-cv-01578, 2015 WL 11118111, at *8 (D. Ariz. Sept. 18, 2015); *Hook*, 120 F.3d at 926; *Local 28 of Sheet Metal Workers' Int'l Ass'n*, 478 U.S. at 482.  The City has been observed conducting enforcement operations that violate the constitutional rights of unhoused individuals in blatant defiance of the injunction and the City's own policies—all while refusing to provide any disclosures or information that would allow Plaintiffs to properly assess the extent of Defendants' non-compliance with the Court's order.  *See supra* Sections II.C; III.

Second, even if this Court does not find that Defendants have violated the Court's injunction, the frequency and complexity of the City's ongoing enforcement, displacement, and property removal interactions with hundreds of unhoused individuals every month makes it impossible for Plaintiffs to effectively monitor the City's compliance with the preliminary injunction.  *See supra* Section V.B.2.  Problems with the City's compliance and the complexity and size of the City's enforcement operations necessitate the appointment of a special master.  *See Hook*, 120 F.3d at 926 (holding district court did not abuse discretion in determining the need for a special master due to the complexity of the underlying litigation); *Suquamish*, 901 F.2d at 775 (concluding court may appoint special master "because of the complexity of litigation and problems associated with compliance with the district court order"); *Coleman v. Wilson*, 912 F. Supp. 1282, 1324 (E.D. Cal. 1995) (assigning special master where "the constitutional violation . . . is the product of systemwide deficiencies [and] [m]onitoring compliance with the injunctive relief ordered herein will be a formidable task.").  This is particularly so when Plaintiffs do not have adequate resources to effectively monitor the City's non-compliance with the Court's order.  *See supra* Section V.B.3; *see also* Dkt 9-3, Friedenbach Decl., ¶¶ 11-22; Coalition Decl. ¶¶ 3-9.

Furthermore, in light of Defendants' historic non-compliance with even their own policies for years prior to this litigation, Defendants' attempts to evade responsibility under the Court's injunction to date, and Plaintiffs' status as indigent individuals and a non-profit organization with extremely limited resources, this Court should assign all costs of the any special master to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

Defendants. *See* Fed. R. Civ. P. 53, 2003 Advisory Committee Notes ("[a] party whose unreasonable conduct has occasioned the need to appoint a master ... may properly be charged with all or a major portion of the masters' fees"); *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 11-cv-03471, 2015 WL 10939711, at *2 (E.D. Cal. July 2, 2015) ("the court finds defendant should bear the responsibility for special master's fees . . . it cannot be disputed that plaintiffs are nonprofit associations that pursue a matter of public interest . . . Second, plaintiffs' counsel . . . are presently receiving no compensation for their time or reimbursement of costs"); *see also Mullen*, 828 F.2d at 546 (upholding that the government defendants must pay all special master fees regarding preliminary injunction compliance).

> **D.      Periodic Reports Are Customary and Necessary to Help Ensure Compliance with the Court's Preliminary Injunction.**

Compliance reports are also appropriate to assist the special master, Plaintiffs, and the Court in understanding whether Defendants' operations are consistent with the preliminary injunction. Compliance reports under oath are regularly ordered to ensure compliance during the pendency of a preliminary injunction.  *See*, *e.g.*, *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 538 (N.D. Cal. 2019) (defendants required to "file a report regarding the status of compliance with the preliminary injunction"); *Hernandez v. Barr*, No. 16-cv-00620, 2019 WL 13019923, at *2 (C.D. Cal. Mar. 25, 2019) (detailing contents of compliance report); *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702, 2018 WL 2416242, at *17 (N.D. Cal. May 29, 2018) (in response to noncompliance with a preliminary injunction, requiring "a compliance report . . . within thirty (30) days"); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. 11-cv-04991, 2012 WL 2344081, at *8 (N.D. Cal. June 20, 2012) (requiring a "report in writing and under oath" on compliance with preliminary injunction); *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No. 05-cv-01532, 2008 WL 2699701, at *3 (D. Nev. July 2, 2008) (noting prior order for defendants to "file sworn reports" "setting forth in detail the manner and form in which the compliance" with a preliminary injunction), *aff'd*, 347 F. App'x 275 (9th Cir. 2009).  Such reports are crucial in this case given the repeated and numerous enforcement and property removal interactions Defendants continue to initiate against hundreds of unhoused individuals every month.  *See supra* Sections

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

III.A-D.  The periodic disclosures Defendants have agreed to provide do not even approach a representative sampling of data regarding the City's enforcement interactions.  *See supra* Sections III.C; III.E; V.B.  Mandated reporting is also necessary to force Defendants to inform Plaintiffs and the Court what steps they have taken to comply with this Court's preliminary injunction.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue an Order to enforce the preliminary injunction and ensure the City's compliance with the preliminary injunction by appointing a special master and requiring the City to submit regular compliance reports.

Dated:  May 25, 2023                    Respectfully submitted,

By: */s/ Alfred C. Pfeiffer, Jr.*

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
Wesley Tiu, SBN 336580
Kevin Wu, SBN 337101
Tulin Gurer, SBN 303077
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com
wesley.tiu@lw.com
kevin.wu@lw.com
tulin.gurer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
rachel.mitchell@lw.com

By: */s/ Zal K. Shroff* _____

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org
edellapiana@lccrsf.org

By: */s/ John Thomas H. Do* _____

ACLU FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
bgreene@aclunc.org

*Attorneys for Plaintiffs*
*Coalition on Homelessness, Toro Castaño, Sarah*
*Cronk, Joshua Donohoe, Molique Frank, David*
*Martinez, Teresa Sandoval, Nathaniel Vaughn*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR

1

**ATTESTATION**

2          I, Alfred C. Pfeiffer, Jr., am the ECF user whose user ID and password authorized the

3   filing of this document.  Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document

4   have concurred in this filing.

5

6   Dated:  May 25, 2023                          */s/ Alfred C. Pfeiffer, Jr.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

PLAINTIFFS' MOTION TO ENFORCE
PRELIMINARY INJUNCTION
CASE NO. 4:22-CV-05502-DMR