LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620, *pro hac vice*
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

ACLU FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs*

*Additional Counsel Below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

COALITION ON HOMELESSNESS, et al.,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 4:22-cv-05502-DMR

**DECLARATION OF ZAL K. SHROFF IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION TO ENFORCE PRELIMINARY INJUNCTION**

**Judge:** The Hon. Donna M. Ryu

**Hearing Date:** July 13, 2023
**Time:** 1:00 p.m.
**Place:** Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

LATHAM & WATKINS LLP
Wesley Tiu, SBN 336580
Kevin Wu, SBN 337101
Tulin Gurer, SBN 303077
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
wesley.tiu@lw.com
kevin.wu@lw.com
tulin.gurer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

LATHAM & WATKINS LLP
Rachel Mitchell, SBN 344204
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
rachel.mitchell@lw.com

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
Elisa Della-Piana, SBN 226462
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
edellapiana@lccrsf.org

ACLU FOUNDATION OF NORTHERN CALIFORNIA
Brandon L. Greene, SBN 293783
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
bgreene@aclunc.org

**DECLARATION OF ZAL K. SHROFF**

I, Zal K. Shroff, hereby declare as follows:

1. I am a Senior Staff Attorney with the Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCRSF"). I am also counsel of record for the Coalition on Homelessness (the "Coalition"), Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn in the above-captioned action. I am admitted to practice before this Court *pro hac vice* in the above-captioned matter.

2. I submit this Declaration in support of Plaintiffs' Motion to Enforce Preliminary Injunction ("Motion to Enforce"). I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently to them.

**I. For Almost Five Months, Defendants Prevented Plaintiffs From Receiving Documents Necessary To Assess Compliance With The Preliminary Injunction.**

3. On December 29, 2022, Counsel for Plaintiffs requested that Defendants provide recurring disclosures of certain categories of City records in order to assess Defendants' compliance with the preliminary injunction. At a high level, these categories of disclosures included: (1) ongoing 72-hour notice of planned homeless encampment operations; (2) Healthy Streets Operations Center ("HSOC") data; (3) San Francisco Police Department ("SFPD") dispatch logs, incident reports, and bodycam footage; (4) Department of Public Works ("DPW") incident reports or logs related to DPW cleaning or removal operations; (5) Department of Homelessness and Supportive Housing daily shelter availability disclosures, outreach, and shelter placement reports; and (6) non-privileged communications regarding preliminary injunction compliance.

4. But for nearly five months, Defendants failed to provide effectively any of these documents necessary to assess preliminary injunction compliance. Defendants have only provided 72-hour notices of formal HSOC encampment resolutions, which have still occurred twice a day, 5 times a week, since the injunction was ordered. But Plaintiffs have not received any meaningful data Plaintiffs requested to assess Defendants' compliance with the Court's injunction at the

thousands of regular law enforcement interactions that were also the subject of Plaintiffs' preliminary injunction motion.

5. The parties reached agreement on some limited categories of disclosures in April 2023 only after the Court ordered an in-person meet and confer between the parties. But the City has stated that it will not provide the majority of these disclosures until the joint discovery dispute letter filed on April 18, 2023 (Dkt. 123) has been resolved. As such, Plaintiffs have still not received any of the limited recurring document disclosures Plaintiffs negotiated and expect to receive from Defendants regarding preliminary injunction compliance.

6. In addition, Defendants' ordinary discovery document productions to date have been insufficient to verify compliance with the preliminary injunction.

7. As of May 22, 2023, Defendants have produced a total of approximately 71 SFPD incident reports addressing interactions with unhoused individuals.

8. As of May 22, 2023, Defendants have produced a total of 53 computer-aided dispatch ("CAD') reports pertaining to law enforcement dispatches in response to complaints about homelessness.

9. As of May 22, 2023, Defendants have failed to produce *any* documents, summary or otherwise, containing citation and arrest data related to California Penal Code § 148(a) (previously used to enforce move-along orders)—which citations and arrests formed a basis for the Court's preliminary injunction.

10. Other than a single SFPD police bulletin issued to police officers after the injunction, Defendants have not provided Plaintiffs with any specific instructions, training materials, or other guidance documents sent to staff regarding the preliminary injunction.

11. Due in part to Defendants' limited disclosures to date, Plaintiffs have had to engage an ACLU investigator, Dylan Verner-Crist, to conduct monitoring of Defendants' compliance on a temporary basis. Mr. Verner-Crist has spent approximately four hours at each sweep operation he has attended, for approximately forty-four hours of direct fieldwork in total. Including travel time and time spent reviewing field notes and records, Mr. Verner-Crist reports that he has spent approximately seventy-five hours conducting monitoring for this case. This monitoring is not

sustainable for Mr. Verner-Crist given the demands of his existing job duties and we have been advised that we will not be able to rely on his services at the same level as the past 5 months.

12. Plaintiffs' counsel are not in a position to hire a third-party investigator to conduct further monitoring given that we are not charging our clients for our services and are not receiving any fees that could defray the costs of such monitoring.

## II. Publicly Available Documents Suggest That Defendants Are Not Complying With The Preliminary Injunction.

13. The City and County of San Francisco's Office of the Chief Data Officer publishes citywide information datasets at https://datasf.org. Two of the relevant publicly available and regularly updated datasets are the *Law Enforcement Dispatched Calls for Service: Closed* and *Police Department Incident Reports: 2018 to Present.*

14. The *Law Enforcement Dispatched Calls for Service: Closed* dataset includes "all calls for service which generate a record in the Department of Emergency Management's Computer Aided Dispatch (CAD) System, and typically have a law enforcement unit dispatched to the location."[1] The dataset includes "only calls for service that have been closed, and is updated every 24 hours, to include the initial call type, final call type, and call disposition."[2]

15. This dataset shows that between December 24, 2022, the day after the preliminary injunction was issued, and May 22, 2023, SFPD officers were dispatched 1,120 times to a 919 call for "Sit/Lie Enforcement." A true and correct copy of an excel file listing aggregate data for each of those 1,120 Sit/Lie Enforcement dispatch calls is attached as **Exhibit A**.

16. The dataset further shows that between December 24, 2022, the day after the preliminary injunction was issued, and May 22, 2023, SFPD officers were dispatched 3,166 times to a 915 call for "Homeless Complaint." A true and correct copy of an excel file listing aggregate data for each of those 3,166 Homeless Complaint dispatch call is attached as **Exhibit B**.

---

[1] Law Enforcement Dispatched Calls for Service: Closed, DataSF, last updated May 22, 2023, https://data.sfgov.org/Public-Safety/Law-Enforcement-Dispatched-Calls-for-Service-Close/2zdj-bwza.

[2] *Id.*

17. Given that Defendants have only produced 53 detailed CAD reports relating to a wide variety of dispatch codes, including 915 (Homeless Complaint) and 919 (Sit/Lie Enforcement), Defendants have produced virtually none of the detailed CAD reports associated with each of these 4,286 police dispatches.

18. *[Intentionally left blank]*

19. Below is a graphical representation of the data extracted from the *Law Enforcement Dispatched Calls for Served: Closed* dataset showing the number of SFPD dispatches for 915 (Homeless Complaint) and 919 (Sit/Lie Enforcement) between December 2022 and April 2023. I created this graph using the online tools available on DataSF's website.




20. The *Police Department Incident Reports: 2018 to Present* dataset includes "incident reports that have been filed as of January 1, 2018."[3] The dataset is automatically updated daily at 10:00 AM PT. The dataset only includes aggregate high-level information regarding each incident report and does not contain any summary or narrative regarding each incident.

21. On February 2, 2023, Defendants provided Plaintiffs with a San Francisco Police Document titled "CDW Incident Report Titles and Incodes." Defendants explained that each Incident Report is identified by a specific code number.

22. The CDW Incident Report Titles and Manuals identifies, at a minimum, the following relevant codes: (1) **19060** – Obstruction Public Throughfare (or 647(c) PC) (2) **19062** –

[3] Police Department Incident Reports: 2018 to Present, DataSF, last updated May 22, 2023, available at https://data.sfgov.org/Public-Safety/Police-Department-Incident-Reports-2018-to-Present/wg3w-h783.

Lodging In Park (3) **19075** – Loitering, Obstructing (4) **27199** – Lodging without Permission (5) **30080** – Obstructions on Streets, Sidewalks (6) **30206** – Lodging, Registering w/ False Name (7) **64000** – Civil Sidewalks, Violation (8) **64001** – Civil Sidewalks, Warning (9) **64002** – Civil Sidewalks, Citation (10) **64003** – Civil Sidewalks – Booking.

23. The dataset shows that between December 24, 2022, the day after the preliminary injunction was issued, and May 22, 2023, 11 incident reports have been generated that hits on one of those ten relevant Incident Codes. A true and accurate copy of an excel file containing aggregate data regarding each of those 11 Incident Reports is attached as **Exhibit C**. At least eight of these incident reports listed a resolution of "Cite or Arrest Adult."

24. Defendants have not yet provided the incident reports for each of these 11 identified incidents, but this publicly available data demonstrates that Defendants are continuing to cite and/or arrest individuals for offenses that may be implicated by the preliminary injunction.

25. It is unclear to Plaintiffs what explains the gap between the thousands of law enforcement dispatches in response to homelessness complaints reported each month—including **specifically for sit/lie enforcement** (*supra* ¶ 16), and the only handful of incident reports ultimately filed by police on the scene as reflected by the SFPD's public incident report database.

26. On May 11, 2023, Jesse Rogala of the SF Standard publication recorded an unhoused individual sleeping on the ground and a police officer stomping on the ground by the individual's head to wake him up as three other police officers assist in forcibly removing the unhoused person from the area of U.N. Plaza. Plaintiffs obtained a copy of this video footage. The video of this incident is publicly available and has been posted at this URL, among other locations: https://drive.google.com/file/d/1vqN4f0N_bkfjZEZuBUb8ZF8Iw6VEOSom/view?usp=drive_web&usp=embed_facebook.

27. Attached as **Exhibit D** is a true and accuracy copy of email correspondence dating between January 3, 2023 to January 20, 2023 between Luke Martin, Mahanaz Ebadi, Leo Alfaro, and Matt Dorsey that was released in response to a Public Records Request.

28. Internal City emails released as part of Public Records Requests also show that as early as January 30, 2023, City employees began to consider a process to "prepare for calls from

self-referred shelter-seekers." Attached as **Exhibit E** is a true and accurate copy of email correspondence dating to January 30, 2023 from Tiana Wertheim that was released in response to a Public Records Request.

29. However, to date, the City's self-referral shelter hotline has not reopened for individuals to seek shelter.

30. Attached as **Exhibit F** is a true and correct copy of an article published on May 24, 2023 in the San Francisco Chronicle. The article reports that police will begin enforcing "illegal squatting" laws, without specifying whether unhoused individuals will be prosecuted for illegal squatting even when they do not have access to shelter.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this declaration on May 25, 2023 in San Francisco, California.

*/s/ Zal K. Shroff*
Zal K. Shroff

*Attorney for Plaintiffs Coalition on Homelessness, Toro Castaño, Sarah Cronk, Josh Donohoe, Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn*

**ATTESTATION**

I, Alfred C. Pfeiffer, Jr. am the ECF user whose user ID and password authorized the filing of this document. Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document have concurred in this filing.

Dated: May 25, 2023

*/s/ Alfred C. Pfeiffer, Jr.*

Alfred C. Pfeiffer, Jr.