DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-4628 (Emery)
              (415) 554-3857 (Wang)
              (415) 554-3975 (Stevens)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              jim.emery@sfcityatty.org
              edmund.wang@sfcityatty.org
              ryan.stevens@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF JAMES BAIRD, MPP, IN SUPPORT OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Hearing Date:　August 10 , 2023<br>Time:　　　　1:00 p.m.<br>Place:　　　Courtroom 4 – 3 Floor<br><br>Trial Date:　April 15, 2024<br><br>Attachments: Exhibits A - B |

I, James Baird, MPP, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I work for the San Francisco Department of Emergency Services (DEM). I currently serve as Data Manager for DEM in the Operations Division. In that capacity, I am responsible for analyzing and reporting on data related to all of the databases and systems we utilize, including the Computer-Aided Dispatch (CAD) system. I have been a Data Manager at DEM since May 28, 2022.

3. I hold a Master's Degree in Public Policy from the Goldman School of Public Policy at the University of California, Berkeley, which I earned in 2011. My Public Policy degree coursework included training in quantitative statistical analysis.

4. Before my current role, I worked in various policy and data roles for the City and County of San Francisco for over a decade, including: Analyst at the Department of Children, Youth, and Their Families from 2012 to 2014, Senior Analyst and later Manager at the Juvenile Probation Department from 2014 to 2017, and Principal Analyst at the Human Services Agency from 2018 to 2022. My entire 11-year career with the City has included policy analysis, program evaluation, and statistical analysis.

5. Prior to my master's program, I was a sworn police officer at the University of California, Berkeley for four and one-half years.

6. San Francisco's DEM uses a CAD system to document calls for services from the public as well as "on-view" calls from members of San Francisco's Police Department (SFPD), Fire and Emergency Medical Services (SFFD, EMS), and contracted Emergency Medical Services agencies (AMR and King America). An "on view" call is a CAD incident not created at a call-taking position, typically from members of one of the above-referenced departments/agencies where an employee is addressing a situation they see in the field. The data from these calls includes multiple date/time stamps, the Service (Police/Fire), Original Call Type (type of incident at the beginning of the call), and a Final Call Type (the type of incident can change based on new information – the Final Call Type is solidified when the call is closed). These two call types explain what type of incident was

originally reported and what type of incident was documented at the conclusion of the call. There is also the "Disposition" of the call which categorically describes how the call ended.

7. I was asked to review and analyze data related to two police call types, 915: Homeless Related Call for Service and 919: Person sitting/lying on a public sidewalk. These calls can be called into our dispatch center, called into 311 (or done via the 311 app), or "on-viewed" by employees of the SFPD, SFFD, EMS, or contracted agencies in the field. Many of these calls are handled through the Healthy Streets Operations Center (HSOC) in a separate queue and if they originated from 311 are documented as "on-view" when HSOC police units handle the call even though they were initiated from the public.

8. Additionally, some calls have been reclassified from police calls to medical calls and given to the Street Crisis Response Teams (SCRT), depending on the exact nature of the call. As of earlier this month, the recently implemented Homeless Engagement Assistance Response Team (HEART) are taking on many of the 915 and 919 calls.

9. Attached to my declaration as Exhibits A and B, respectively, are two graphs showing the 915 and 919 calls dispatched over time. Exhibit A shows the long-term reduction of both call types from 2019 to 2023. Exhibit B shows two bar graphs that include 915 and 919 calls from December of 2022 through May of this year. The Total Number of Calls and Dispositions table show only December 24th through May 22nd (the Plaintiff's time period). While DEM typically defaults to Final Call Type in reporting, Original Call Type was used to match the Plaintiff's data. Additionally, there may be calls filtered out of the public data set for privacy reasons that are included in my analysis so my numbers might be slightly higher.

10. While I have not reviewed the details of each and every individual call, I can provide the following context to the data shown in the graphs included in Exhibits A and B:

    a. When looking at the graph in Exhibit A, a large reduction in both call types can be seen over time. In addition, a large amount of variability is seen from month to month as well.

    b. As seen in the graphs, a majority of the 919 calls are generated by the public through 311 or calls to our dispatch center (listed as not on-viewed). While the


915s show a lot of "on-view" calls, as explained above, based on prior internal analysis, most of these came from 311. Due to starting outside of our normal system, they are labeled as "on-view" when handled and therefore a majority were initiated by the public.

    c. As shown by the dispositions chart in Exhibit B, for the 6-month period between December 2022 and May 2023, approximately 70% had a disposition of "Handled (HAN)" or "Advised (ADV)" meaning someone was contacted but no explicit enforcement action was taken. Another 25% were "Gone on Arrival (GOA)" or "Unable to Locate (UTL)." For the Plaintiff's time period of December 24th through May 22nd, there were only 26 citations and 4 arrests for a total of less than 1% of 915/919 calls. Those citations and arrests could be for any violation and were not necessarily for the call types listed.

    d. While there was a spike of 915s in March 2023, as seen in Exhibit B, there have been no policy or practice changes that would explain the spike and the number of calls has resolved back down to levels from earlier in the year. This indicates that the spike could have been normal fluctuation, seasonal variation, or come from external factors such as increased media attention generating more public calls for service. As for the 919s, there has been an increase in April and May, however, as explained above, the number of calls is based almost entirely on calls from the public, not self-initiated action from SFPD.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on June 23, 2023, at San Francisco, California.

*James Baird* (signature)

James Baird