DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4675 (Snodgrass)
               (415) 554-4628 (Emery)
               (415) 554-3857 (Wang)
               (415) 554-3975 (Stevens)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
Facsimile:     (415) 554-4699
E-mail:        wayne.snodgrass@sfcityatty.org
               jim.emery@sfcityatty.org
               edmund.wang@sfcityatty.org
               ryan.stevens@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>         Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>         Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF DARRYL DILWORTH IN SUPPORT OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**<br><br>Hearing Date:    August 10, 2023<br>Time:            1:00 p.m.<br>Place:           Courtroom 4—3rd Floor<br><br>Trial Date:      April 15, 2024<br><br>Attachments:  Exhibits A - D |

DILWORTH DECL.
CASE NO. 4:22-cv-05502-DMR

n:\govlit\li2022\230239\01685138.docx

I, Darryl Dilworth, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

**Background and Job Responsibilities**

2. I have worked for the San Francisco Department of Public Works ("DPW") since 1999.

3. I am currently an operations Supervisor II assigned to manage the Hot Spots Team. I have been in that role since May 28, 2022. I also previously held the role from 2018 to 2019.

**The Hot Spots Team**

4. DPW provides many services throughout San Francisco including street construction and resurfacing, planting and maintaining city-owned street trees, inspecting sidewalks and roadways, and cleaning street and public spaces.

5. The Bureau of Street Environmental Services ("BSES") is the division of DPW that keeps streets, sidewalks and other public spaces clean with mechanical street sweepers, manual cleaning work crews, graffiti abatement, and power washing.

6. The Hot Spots Team is the group within BSES that works with HSOC resolutions.

7. I am currently the supervisor of the Hot Spots Team. As a Supervisor for the Hot Spots Team I am on the ground with my team during many HSOC resolutions.

8. During an HSOC resolution, Hot Spots Team members clean in and around homeless encampments. However, HSOC resolutions are not my team's only role in BSES. Outside of HSOC resolutions, the Hot Spots Team also cleans illegal dumping sites, picks up garbage, loads/unloads debris, and removes litter from City streets, sidewalks and plazas.

**The Role Of The Hot Spots Team During An HSOC Resolution**

9. The role of the Hot Spots Team during HSOC resolutions is primarily to remove debris and clean the sidewalks and roadways where necessary. This is done after other City agencies like the Homeless Outreach Team and Department of Public Health offer services and temporary housing to those at the encampment.

10.     Notice of HSOC resolutions is posted in advance. That gives those living at the encampment who do not wish to interact with HSOC time to pack and move their belongings before the day of the resolution.

11.     Those who choose not to move also receive verbal notice before the resolution starts. Those living at the encampment are then given time to move before DPW begins our work.

12.     Under the bag and tag policy, individuals at an HSOC resolution need only receive "a reasonable amount of time (approximately 30 minutes) to collect and move their belongings out of the public right of way, taking into account the special needs that individuals may have and the volume of belongings." In practice, individuals typically receive much longer to move their belongings. DPW does not set time limits on removals. Any requests for more time to pack personal belongings are offered by HSOC team members, such as SFHOT outreach workers.

13.     I have personally observed those living at an encampment move deliberately slowly in this process—sometimes making no progress in an hour or more—as a form of protest.

14.     When the Hot Spots Team arrives on the day of a resolution, our team waits for the go-ahead from HSOC before we begin cleaning. Cleaning at a resolution involves removing garbage and debris and also disinfecting and steam cleaning the sidewalks.

15.     While waiting for the go-ahead to start cleaning at an encampment, the Hot Spots Team may perform other duties around the area like disinfecting and steam cleaning sidewalks around the perimeter, clearing catch basins, removing vegetation, cleaning City litter receptacles, or going to other nearby locations until called back to the resolution.

16.     The Hot Spots Team also proactively offers to discard unwanted items for those living at the encampment and hands out large black trash bags. Those living at the encampment can put whatever trash or debris they want to discard into the bags for DPW to haul out. Each encampment is different, but it is not uncommon for the Hot Spots Team to receive back more than a dozen bags.

17.     When cleaning an encampment, the Hot Spots Team only removes items consistent with DPW policy. The bag and tag policy is available on the DPW website at:

1   https://sfpublicworks.org/services/bag-and-tag-process. A true and correct copy of the policy is also

2   attached as **Exhibit A.**

3       18.    Section 3 of the policy lists items that DPW can immediately discard. This includes: (1)

4   items that present an immediate health or safety risk, (2) perishable items including food; (3)

5   contraband or illegal items; (4) trash, garbage or debris, and (5) abandoned property.

6       19.    If a pile of belongings is co-mingled or littered with needles, human waste, or other

7   health risks, the bag and tag policy allows DPW staff to discard the entire pile. Under those

8   circumstances, the policy does not require the Hot Spots Team to sort through and attempt to remove

9   the health or safety risks from the pile.

10      20.    The Hot Spots Team is trained to be polite, courteous and to have compassion when

11  working and interacting with the individuals at the encampment. We rely on other participating

12  agencies to engage individuals in the encampment. It is not DPW's role to offer services or housing.

13      21.    After abandoned, discarded, and hazardous items are removed, the Hot Spots Team can

14  either leave the remaining items where they are and clean around the items or they can bag and tag the

15  items.

16      22.    When the Hot Spots Team bags and tags items from an HSOC resolution, they fill out a

17  homeless property information slip and bring the items back to a secured storage yard. The Hot Spots

18  Team either provides the property owner information about when and where to pick up their items or,

19  if no one is present, my team tapes a Notice of Removal of Property slip to a pole, wall, or safety cone

20  in the area. The Notice includes the date, time, and location of removal; general description of items

21  removed; and the name and vehicle number of the staff member who bagged and tagged the items.

22  The Notice also includes instructions on where to retrieve the items and a phone number to call with

23  questions.

24      **Tents**

25      23.    Unsoiled tents are bagged and tagged if the owner is not present. Occasionally,

26  circumstances will require that an entire tent be discarded under the bag and tag policy. For example,

27  if the inside of the tent has dangerous or hazardous items such as needles, or drugs, Hot Spots Team

28

DILWORTH DECL.                                    4
CASE NO. 4:22-cv-05502-DMR (LJC

1  members are not expected to sift item by item through the contents of the tent. There are also

2  occasions where the tent itself smells strongly of urine or has visible feces inside it. I have personally

3  experienced this.

4       24.     As an example, attached as **Exhibit B** is a call I received regarding unattended items on

5  December 27, 2022. The photographs show the inside of the tent when I arrived. It smelled of feces

6  and was filled with debris and open perishable food. The items also had obvious water damage. While

7  I was able to bag and tag three suitcases and/or bags from inside the tent, the tent itself needed to be

8  discarded. Exhibit B also includes the notice I posted after disposing and/or bagging and tagging the

9  items from this location.

10       **Presence of Police**

11       25.     The Hot Spots Team has no law enforcement training and does not carry weapons. We

12  do not enforce the Penal Code and rely on the SFPD to keep the peace and de-escalate any issues that

13  arise during an encampment resolution.

14       26.     I am aware that the Court's injunction prevented the SFPD from enforcing the City's

15  sit/lie laws against some individuals. Since the Court issue the preliminary injunction in December

16  2022, I have not observed any SFPD officer at a resolution threaten to enforce or actually enforce a

17  sit/lie law against someone living at the encampment.

18       27.     Our work is not risk free. Occasionally, DPW employees are threatened or assaulted

19  and rely on SFPD for assistance. As an example, on May 20, 2023 an DPW employee saw a trashcan

20  that had been knocked over and when he went to put it right side up, an unhoused individual started

21  cursing at him and threw a glass bottle at him. The employee was not part of an HSOC resolution and

22  there were no SFPD officers present. While the employee was trying to leave, the same individual

23  approached him with another glass bottle and tried to hit the DPW worker with it. When the DPW

24  worker fled, the individual chased him for a full block. Attached as **Exhibit C** is a true and correct

25  copy of the Incident Report from this encounter.

26       28.     On January 13, 2023, another DPW employee who was cleaning the exterior of a

27  homeless encampment at Cesar Chavez and Vermont Street was approached by an unhoused resident

28

1  who yelled profanity at the employee and waived a weapon at him. Attached as **Exhibit D** is a true

2  and correct copy of an email regarding that incident I received in my role as a DPW supervisor.

3    29.    In my personal experience, the presence of SFPD officers at an HSOC resolution

4  benefits both the City staff and those living at the encampment.

5  **Taking Belongings Off The Truck**

6    30.    DPW employees at an HSOC resolution will almost always have vehicles with them to

7  transport debris or garbage. Depending on needs and availability, those can be flatbed trucks or

8  crushers.

9    31.    Once materials are put into the DPW vehicle, our policy is not to allow anyone from the

10  encampment to jump in or reach into the vehicle. This is for safety and liability concerns.

11  **Presence of Observers**

12    32.    I am informed and believe that the City Attorney's Office provides Plaintiffs' counsel

13  advance notice of HSOC operations. I am also aware that observers occasionally attend an HSOC

14  resolution. This includes, for example, observers from the City Attorney's Office, observers from the

15  ACLU or Coalition on Homelessness, observers from the press, and observers from the general public.

16    33.    I am informed and believe that Plaintiffs have suggested my team behaves differently

17  when observers from the ACLU or Coalition on Homelessness has observers at a resolution and/or that

18  my team has abandoned an HSOC resolution when an observer from the ACLU or Coalition on

19  Homelessness is there. This does not match my experience.

20    34.    I have not observed my team act differently at a resolution based on the presence of

21  observers regardless of whether they work for the ACLU, the Coalition on Homelessness, or any other

22  organization. Nor have I observed my team leave a resolution based on the presence of observers. I

23  have never instructed my team to act differently at a resolution because there were observers there or

24  to leave a resolution because of observers.

25    35.    There are occasions when I will instruct my team to leave during an HSOC resolution

26  and then later return based on timing and staffing issues. Hot Spots Team members work on shifts.

27  The daytime shift starts at 4:00 a.m. and typically arrives at an HSOC resolution around 8:00 a.m. If I

28

DILWORTH DECL.
CASE NO. 4:22-cv-05502-DMR (LJC                    6

1  or another supervisor anticipate that the resolution will run late and my team will not be able complete

2  the resolution in addition to their remaining duties outside of HOSC before the end of their shift at

3  approximately 11am, I will instruct my team to leave the resolution and instead have the afternoon

4  team return to the encampment later in the day. This gives those at the encampment more time to

5  move or discard any items before DPW employees on the next shift come by to complete the clean-up.

6  This decision has nothing to do with the presence or absence of observers at the resolution.

7      **The Preliminary Injunction**

8      36.    I am aware of the Preliminary Injunction in this case that requires my team to comply

9  with DPW's bag and tag policy and have worked hard to ensure my team knows and complies with the

10  policy.

11     37.    Members of my Hot Spots Team have been trained on the current DPW Bag and Tag

12  Policy. I and other supervisors also raise the bag and tag policy informally with Hot Spots Team

13  members during tailgate meetings. Tailgate meetings are daily meetings early on in a shift to discuss

14  our work for that day. Tailgate meetings frequently include reminders to employees about complying

15  with the bag and tag policy.

16     38.    I encourage Hot Spots Team members to ask questions if they are unsure how to apply

17  the bag and tag policy and in a particular situation and since the injunction have provided guidance to

18  team members on how to treat items at an HSOC resolution consistent with the policy.

19     39.    I take the Court's injunction seriously and am doing my best to ensure that the Hot

20  Spots Team remains in compliance with the Court's instructions.

21

22     I declare under penalty of perjury under the laws of the United States and the State of

23  California that the foregoing is true and correct.

24     Executed on June 29, 2023, at San Francisco, California.

25

26                                          _Darryl Dilworth signature_  6/29/23

27                                          _____
                                            Darryl Dilworth

28  DILWORTH DECL.                              7
    CASE NO. 4:22-cv-05502-DMR (LJC