DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-4628 (Emery)
              (415) 554-3857 (Wang)
              (415) 554-3975 (Stevens)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              jim.emery@sfcityatty.org
              edmund.wang@sfcityatty.org
              ryan.stevens@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF SAM DODGE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Hearing Date: August 10, 2023<br>Time: 1:00 p.m.<br>Place: Courtroom 4—3rd Floor<br><br>Trial Date: April 15, 2024 |

I, Sam Dodge, declare as follows:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness I could and would competently testify thereto. I previously submitted a declaration in this matter on November 15, 2022 (Dkt 45-4).

2. I am employed by the City and County of San Francisco ("the City") as Director of Street Response Coordination within the City's Department of Department of Emergency Management ("DEM"). I have held that position since November 2022. As Director of Street Response Coordination, my duties and responsibilities include supervising the Director of the Healthy Streets Operations Center ("HSOC"), the interagency team of seven participating departments that works to address and resolve unhealthy street conditions, primarily by conducting large encampment field operations. I also supervise other DEM employees who work as part of the City's interdepartmental street response efforts.

3. Before becoming Director of Street Response Coordination, I served as Director of HSOC from September 2021 to November 2022. As Director of HSOC, my duties and responsibilities included overseeing HSOC-related operations of the various City departments that participate in HSOC, facilitating the HSOC managers' group, and supporting the teams of HSOC workers in the street, dispatchers, and other aspects of HSOC operations.

4. HSOC conducts homeless encampment resolutions primarily to provide outreach to the City's homeless population, in order to place unhoused persons in housing, treatment, and residential programs, as well as to clean the public right-of-way in and around encampments and to ensure that there is an adequate path of travel on the public right-of-way in the area of encampments.

5. From the date this Court issued its preliminary injunction on December 23, 2022 to June 27, 2023, HSOC engaged 2,126 people. During that same period, HSOC made placed 957 formerly unhoused persons into hotels, navigation centers, shelters, safe sleep sites, and safe parking programs. It did so through 233 operations, each of which included multiple rounds of outreach and noticing.

6. Managers from DEM, as well as from other City departments (the Department of Public Health, Department of Homelessness and Supportive Housing, Department of Public Works,

and San Francisco Police Department) participate in the development of HSOC's schedule of encampment resolutions. Using information from a Citywide census of homeless encampments that HSOC performs every three months, those managers choose which encampments HSOC will address. They do so on the basis of factors such as the size and density of particular encampments, with larger and more dense encampments more likely to be prioritized; the volume and nature of complaints about particular encampments that members of the public have reported using the City's 311 system, often accompanied by photos showing encampment conditions; and information that HSOC or its participating departments have gathered from repeated visits to particular encampments which reveal where more work is needed to address a particular encampment.

7. I understand that the Plaintiffs' motion to enforce this Court's preliminary injunction includes two photographs of signs, one posted on a wall and another attached to a chain link fence, bearing the phrase "NO LODGING ZONE" (among other things). (Dkts 130-22, 130-50.) Signs such as these were commonly used before I became HSOC Director in September 2021, when they were sometimes put up by property owners who had obtained them from the City and other times were put up by City workers at a property owners' request. However, such signs are not commonly used now. I believe the signs depicted in these two photographs were likely put up before the beginning of the COVID-19 pandemic, because the signs state "If you need shelter … please contact 311," and the City ceased using its 311 system as a means for unhoused persons to seek or obtain shelter space very early in the pandemic.

8. When I was HSOC Director from September 2021 through November 2022, I was commonly present at HSOC encampment resolutions. In my current position as Director of Street Response Coordination, I still am present at some such resolutions.

9. In my experience, HSOC personnel participating in encampment resolutions frequently face significant risks of violence or physical harm. Homeless encampments often have high levels of tension, and frequently fights or other violence break out between encampment residents. Knives and other weapons are often present at encampments, and many female encampment residents report being the victims of sexual violence or assault. There also are significant amounts of drug use at encampments, including drugs such as methamphetamines that can cause psychosis among their users.

10. HSOC has had a number of experiences that led our outreach workers to request that SFPD officers be present at encampment resolutions in order to help ensure that such resolutions proceed safely. For example, at one resolution an encampment resident had a handgun visible in his pocket during the resolution. As another example, at another resolution one of the encampment residents agreed to placement in a shelter, and while being transported to the shelter revealed that he had a handgun on his person, which made it necessary to transport him back to the encampment to leave his handgun there, because weapons are not allowed within the shelters.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this __28__ day of June, 2023, in San Francisco, California.

_____
SAM DODGE