**REDACTED**

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4675 (Snodgrass)
               (415) 554-4628 (Emery)
               (415) 554-3857 (Wang)
               (415) 554-3975 (Stevens)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
Facsimile:     (415) 554-4699
E-mail:        wayne.snodgrass@sfcityatty.org
               jim.emery@sfcityatty.org
               edmund.wang@sfcityatty.org
               ryan.stevens@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF PETE RINCON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Date:       August 10, 2023<br>Time:       1:00 PM<br>Judge:      Hon. Donna M. Ryu<br>Place:      Courtroom 4 – 3rd Floor<br>            1301 Clay Street<br>            Oakland, CA 94612<br><br>Trial Date:    April 15, 2024 |

I, Pete Rincon, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am an Outreach Specialist II with the San Francisco Homeless Outreach Team ("SFHOT") and a member of the Encampment Resolution Team ("ERT"), who are SFHOT outreach workers who are assigned to San Francisco's Healthy Streets Operations Center ("HSOC") encampment resolutions. I have worked for the ERT for 2 years. I have been a SFHOT outreach worker for over 2 and a half years.

3. My job responsibilities include performing outreach to clients during HSOC resolutions. The ERT are first to engage clients. No other City personnel talk to clients until the ERT has tried to engage them. The San Francisco Police Department ("SFPD") keeps their distance while I am engaging clients. When I engage clients, I announce myself and explain who I am. I tell clients that I am here to offer shelter. I explain that while I may not at that moment know exactly what specific shelter is available, there will be shelter available, and I will come back once I know the specific shelter available, and to let me know if they are interested in shelter so that I can come back to go over what I have to offer. I also tell clients who are not interested in shelter at that time that if they change their mind, find a member of the ERT and we will offer them shelter. I also offer other services to clients, such as conducting a housing assessments, as well as water, food, hygiene products, and clothing (e.g., socks, jackets, ponchos, etc.).

4. There are clients who do not want to engage with the ERT. Some clients will leave the encampment as soon as they see us approach, before we can engage them. Some clients will remain but refuse to speak to us and/or refuse to provide any information about them, even their name, to us. As I am performing outreach with a client, I am entering information related to that client and engagement into a "client log." I have access to the "client log" on my phone. Clients who remain but refuse to speak with us or refuse to provide their information are entered into the client log. Clients who leave before we can try to speak with them are not entered into the client log. I also look up the housing status of clients who engage with me. I have access to this information on my phone. I also check with Arielle Piastunovich and Eric Lei to confirm whether the client is already housed or

sheltered. When a client is already sheltered or housed, I enter that information into the client log. Sometimes a client, even one who refused to give us their name, will tell us they are already sheltered or housed. This information is also entered into the client log.

5. When I know what specific shelters are available, I first reengage the clients who expressed interest in shelter. I go through what is available with them and try to meet their preferences. I then also reengage those clients who were not interested in shelter to see if they might change their mind once the available shelter is known. With respect to clients who are already sheltered, I will work with them to try to get a transfer to a different available shelter, if that is what they want. When a client accepts an offer of shelter, I connect them with the transport team, who will transport the client to the shelter. The shelter referral is also entered into the client log. Sometimes clients will accept an offer of shelter but then change their mind before they can be transported. This information is also entered into the client log.

6. When I am performing outreach at an HSOC resolution, I also explain to clients that they will be asked to move temporarily to allow for street cleaning. I do not tell clients that they cannot return. I tell clients that they can return the area after cleaning but that they need to leave 4 feet of space on the sidewalk. I tell clients that they can set aside anything that they do not want and the San Francisco Department of Public Works ("DPW") will discard it for them. I help communicate to the HSOC incident commander what items are being left by clients as trash or abandoned. I do not enforce or threaten to enforce any laws. I do not threaten any client with the destruction of their property if they do not move.

7. The presence of the Coalition on Homelessness or other observers at HSOC resolutions does not change how I conduct myself.

**January 10, 2023 PM at or near 7th St. and Mission St.**

8. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did

not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

9. At this HSOC resolution, I engaged ▉▉▉▉. ▉▉▉▉ was already sheltered. ▉▉▉▉ was active at MSC South, a homeless shelter. I explained to ▉▉▉▉ that he will be asked to move his property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel in the public right of way. I did not tell him that he needed to move permanently. I did not tell him that he could not return. I did not threaten him with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance while I was engaging ▉▉▉▉. The officers never spoke to ▉▉▉▉ while I was engaging him. DPW did not begin cleaning in the encampment until I had performed outreach to ▉▉▉▉. I did not threaten ▉▉▉▉ with the destruction of his property if he did not move.

**January 17, 2023 PM at or near 15th St./16th St. and Mission St.**

10. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

11. At this HSOC resolution, I engaged ▉▉▉▉. I asked ▉▉▉▉ whether she was interested shelter. I made an offer of a specific shelter to ▉▉▉▉. ▉▉▉▉ rejected the specific shelter offered to her. There was no non-congregate shelter available that day. I tried to

1  meet her preferences. I offered ▮▮▮ a lower bunk that did not require her to use any stairs to
2  access, which I believed would have addressed her concerns.

3      12.    I explained to ▮▮▮ that she will be asked to move her property to allow DPW
4  to perform street cleaning, and to provide a 4-foot path of travel in the public right of way. I did not
5  tell her that she needed to move permanently. I did not tell her that she could not return. I did not
6  threaten her with citation or arrest for any law. The SFPD officers who were at the resolution kept
7  their distance while I was engaging ▮▮▮. The officers never spoke to ▮▮▮ while I
8  was engaging her. DPW did not begin cleaning in the encampment until I had performed outreach to
9  ▮▮▮. I did not threaten ▮▮▮ with the destruction of her property if she did not move.

10 **January 31, 2023 AM & PM at or near Polk St. and Willow St. and Van Ness Ave.**

11     13.    I performed outreach services during this HSOC resolution. I asked every client that I
12 engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter
13 to every client who was interested in shelter and was not already sheltered. I explained to clients that
14 they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-
15 foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did
16 not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law.
17 The SFPD officers who were at the resolution kept their distance when I was engaging with clients.
18 The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning
19 in the encampment until after ERT, including myself, had performed our outreach to the clients. I did
20 not threaten anyone with the destruction of their property if they did not move.

21 **February 9, 2023 AM at or near Ellis St. and Leavenworth St. and Eddy St.**

22     14.    I performed outreach services during this HSOC resolution. I asked every client that I
23 engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter
24 to every client who was interested in shelter and was not already sheltered. I explained to clients that
25 they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-
26 foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did
27 not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law.
28 The SFPD officers who were at the resolution kept their distance when I was engaging with clients.

The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

15. At this HSOC resolution, I engaged an individual named ▓▓▓▓. I asked ▓▓▓▓ whether he was interested shelter. ▓▓▓▓ indicated that he was interested in a couple bed. I do not recall whether any couple beds were available. ▓▓▓▓ rejected the specific shelter available to him that day. I explained to ▓▓▓▓ that he will be asked to move his property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel in the public right of way. I did not tell him that he needed to move permanently. I did not tell him that he could not return. I did not threaten him with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance while I was engaging ▓▓▓▓. The officers never spoke to ▓▓▓▓ while I was engaging him. DPW did not begin cleaning in the encampment until I had performed outreach to ▓▓▓▓. I did not threaten ▓▓▓▓ with the destruction of his property if he did not move.

**February 16, 2023 AM & PM at or near 14th St. and Stevenson St. and Woodward St.**

16. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**March 23, 2023 PM at or near Geary St. and Masonic St.**

17. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that

they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**March 30, 2023 AM at or near Fern St. and Larkin St. and Polk St. and Willow St.**

18.  I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**April 6, 2023 AM at or near King St. and Berry St.**

19.  I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning

in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**April 21, 2023 AM & PM at or near 7th St. and Mission St. and Natoma St.**

20. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**April 25, 2023 AM at or near Erie St. between South Van Ness Ave. and Folsom St.**

21. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**May 3, 2023 PM at or near Octavia St. and Market St.**

22. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that

they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

**May 18, 2023 AM & PM at or near San Bruno Ave. and Alameda St.**

23. I performed outreach services during this HSOC resolution. I asked every client that I engaged at the resolution whether they were interested in shelter. I made an offer of a specific shelter to every client who was interested in shelter and was not already sheltered. I explained to clients that they will be asked to move their property to allow DPW to perform street cleaning, and to provide a 4-foot path of travel on the sidewalk. I did not tell anyone that they needed to move permanently. I did not tell anyone that they could not return. I did not threaten anyone with citation or arrest for any law. The SFPD officers who were at the resolution kept their distance when I was engaging with clients. The officers never spoke to any of the clients while I was engaging them. DPW did not begin cleaning in the encampment until after ERT, including myself, had performed our outreach to the clients. I did not threaten anyone with the destruction of their property if they did not move.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed June 30, 2023 in San Francisco, California.

*/s/ Pedro R*

PETE RINCON