DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
MEREDITH B. OSBORN, State Bar # 250467
Chief Trial Deputy
JAMES M. EMERY, State Bar #153630
EDMUND T. WANG, State Bar #278755
RYAN C. STEVENS, State Bar #306409
KAITLYN MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4675 (Snodgrass)
               (415) 554-4628 (Emery)
               (415) 554-3857 (Wang)
               (415) 554-3975 (Stevens)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
Facsimile:     (415) 554-4699
E-mail:        wayne.snodgrass@sfcityatty.org
               jim.emery@sfcityatty.org
               edmund.wang@sfcityatty.org
               ryan.stevens@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF KHALED SHEHADEH IN SUPPORT OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**<br><br>Hearing Date:  August 10, 2023<br>Time:          1:00 p.m.<br>Place:         Courtroom 4—3rd Floor<br><br>Trial Date:    April 15, 2024<br><br>Attachment: Exhibit A |

SHEHADEH DECL.
CASE NO. 4:22-cv-05502-DMR

I, Khaled Shehadeh, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

**Background and Job Responsibilities**

2. I am an operations Supervisor II of the San Francisco Department of Public Works ("DPW"). I have been employed by DPW since 2004 and have held my current title as Supervisor II for more than 10 years.

**Zone Work and General Maintenance**

3. DPW provides many services throughout San Francisco. The Bureau of Street Environmental Services ("BSES") is a division of DPW that keeps streets, sidewalks and other public spaces clean with mechanical street sweepers, manual cleaning work crews, graffiti abatement and power washing.

4. Zone is the complaint-driven part of BSES. Zone laborers are assigned to one of six geographic "zones" in the City, designated as A-F. These laborers respond to complaints about the streets and sidewalks within their zone. These complaints come from City employees and members of the public.

5. Zone B includes the Tenderloin and surrounding neighborhoods where Joint Field Operations ("JFO") is conducted.

6. Zone work is not limited to complaints about homeless encampments. However, occasionally, Zone work will bring laborers into contact with unhoused persons. When that happens, Zone laborers respond to the location, sweep around the tents for debris, garbage, needles, etc. and offer large black trash bags.

**Zone Team's Role in JFO**

7. In addition to their complaint-driven work, Zone laborers who work Zone B in the Tenderloin can also be assigned to support Joint Field Operations ("JFO").

8. JFO is a multi-agency effort to address street conditions in the Tenderloin and surrounding neighborhoods that can be staffed with employees from DPW, SFPD, SFFD, DPH, HSH, SFMTA, and/or DEM. JFO is led by the Healthy Street and Operations Center ("HSOC").

9. When a JFO event occurs, DPW typically sends two laborers and one steamer to support. A steamer is a vehicle with a boiler in the back attached to a water tank and a hose. Steamers combine a pinesol-like liquid and hot water before spraying to eliminate germs and/or bacteria on the sidewalk or roadway. In my experience, steamers are more effective than rain water or standard hoses at eliminating certain smells, such as urine or feces and hot water is better at sanitizing the right of way.

10. I became the supervisor responsible for Zone, including JFO in April 2023.

11. JFO typically runs from 9 a.m. to 1 p.m. Zone laborers assigned to support JFO primarily remove debris and clean the sidewalks. Specifically, Zone laborers perform a variety of street cleaning duties, including disinfecting and steam cleaning sidewalks, clearing catch basins, removing vegetation, and cleaning City litter receptacles.

12. DPW's role at JFO is to help clean and sanitize. Employees offer large black garbage bags to anybody who wants them and the people at the encampment have the opportunity to give those bags back to DPW to throw away. On several occasions unhoused persons have asked DPW to discard a tent, often when the owner has obtained a newer tent. Members of my team have found hazardous materials such as needles when performing their work. They also encounter perishable food, soiled mattresses, and other discardable items.

13. Only after individuals have had the opportunity to collect the property they would like to keep and put out anything they want DPW to discard does DPW use the steamer to clean the sidewalks at the encampment.

**Trucks**

14. DPW laborers often move abandoned, discarded, or hazardous materials from JFO using trucks or flat racks. Occasionally, an individual will ask to go into DPW's truck to look around for a specific item of property. It is DPW's policy not to allow individuals into City vehicles. This is

for safety and liability reasons. The trucks often contain hazardous items, such as needles, bottles of urine, or human feces.

**Bag and Tag Policy**

15. I am familiar with DPW's bag and tag policy as written and DPW's practices regarding bagging and tagging items at JFO.

16. When cleaning an encampment as part of JFO, Zone laborers remove garbage, discarded debris, and other hazardous materials. Abandoned items includes trash, garbage, debris, broken furniture and appliances that have been discarded by its owner. This may also include items that the owner has asked DPW to remove for them.

17. DPW also removes items that present an immediate health or safety risk, such as: hazardous sharps, such as needles, scissors and knives; chemicals, such as bleach, paint and oils; items (including bedding and clothing) soiled by infectious or hazardous materials, including human waste, body fluids, mold and mildew, as well as items infested by rodents and insects, such as rats, mice, fleas, lice and bed bugs.

18. If a pile of belongings is co-mingled or littered with needles, human waste, or other health risks, the bag and tag policy allows DPW staff to discard the entire pile. Under those circumstances, the policy does not require Zone laborers to sort through and attempt to remove the health or safety risks from the pile.

19. After abandoned, discarded, and hazardous items are removed, DPW employees either leave the remaining items where they are and clean around the items or they can bag and tag the items.

20. When Zone laborers do bag and tag items from JFO, they fill out a homeless property information slip and bring the items back to a secured storage yard. The Zone laborers either provide the property owner information about when and where to pick up their items or, if no one is present, tape a Notice of Removal of Property slip to a pole, wall, or safety cone in the area. The Notice includes the date, time, and location of removal; general description of items removed; and the name and vehicle number of the staff member who bagged and tagged the items. The Notice also includes instructions on where to retrieve the items and a phone number to call with questions.

21. Zone laborers are trained on DPW's bag and tag policy. We also informally raise bag and tag issues at tailgate meetings, which are all-hands meetings that typically happen at the beginning of each shift.

22. DPW performed trainings on the bag and tag policy in November 2022. Attached as **Exhibit A** is a true and correct copy of the sign-in sheet for a bag and tag training given to the team I supervised at the time. Supervisors also give informal periodic reminders of the bag and tag policy at our tailgate meetings.

**Presence of Police**

23. Zone laborers have no law enforcement training and do not carry any weapons. Instead, during JFO events they rely on SFPD to keep the peace and de-escalate any issues. Based on experience, SFPD presence benefits both JFO staff and those living at the encampment.

**Presence of Observers**

24. I am informed and believe that the Coalition on Homelessness is provided advance notice of JFO efforts and that observers occasionally attend JFO efforts. I am also informed and believe Plaintiffs have suggested my team behaves differently when observers from the ACLU or Coalition on Homelessness are present at JFO. That does not match my experience.

25. I have not observed my team acting differently based on the presence of observers. I have never instructed my team to act differently based on the presence of observers. I have also never heard members of my team state that they act differently based on the presence of observers.

**Court Injunction**

26. I am aware of the Court's injunction requiring DPW to comply with the bag and tag policy and take my responsibility to comply with the Court's order seriously. I have worked hard to ensure my team is in compliance with the bag and tag policy.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on June 28, 2023 at San Francisco, California.

/s/
Khaled Shehadeh