1  DAVID CHIU, State Bar #189542
   City Attorney
2  YVONNE R. MERÉ, State Bar #173594
   Chief Deputy City Attorney
3  WAYNE SNODGRASS, State Bar #148137
   Deputy City Attorney
4  MEREDITH B. OSBORN, State Bar # 250467
   Chief Trial Deputy
5  JAMES M. EMERY, State Bar #153630
   EDMUND T. WANG, State Bar #278755
6  RYAN C. STEVENS, State Bar #306409
   KAITLYN MURPHY, State Bar #293309
7  MIGUEL A. GRADILLA, State Bar #304125
   Deputy City Attorneys
8  City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
9  San Francisco, California 94102-4682
   Telephone:    (415) 554-4675 (Snodgrass)
10                (415) 554-4628 (Emery)
                  (415) 554-3857 (Wang)
11                (415) 554-3975 (Stevens)
                  (415) 554-6762 (Murphy)
12                (415) 554-3870 (Gradilla)
   Facsimile:    (415) 554-4699
13 E-mail:       wayne.snodgrass@sfcityatty.org
                 jim.emery@sfcityatty.org
14               edmund.wang@sfcityatty.org
                 ryan.stevens@sfcityatty.org
15               kaitlyn.murphy@sfcityatty.org
                 miguel.gradilla@sfcityatty.org
16
   Attorneys for Defendants
17 CITY AND COUNTY OF SAN FRANCISCO, et al.

18                           UNITED STATES DISTRICT COURT

19                          NORTHERN DISTRICT OF CALIFORNIA

20 | COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN, | Case No. 4:22-cv-05502-DMR |
|---|---|
| Plaintiffs, | **DECLARATION OF LT. WAYMAN YOUNG IN SUPPORT OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION** |
| vs. | Hearing Date: August 10, 2023<br>Time: 1:00 p.m.<br>Place: Courtroom 4 – 3 Floor |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | Trial Date: April 15, 2024 |
| Defendants. | Attachments: Exhibits A - F |

YOUNG DECL
CASE NO. 4:22-cv-05502-DMR

n:\govlit\li2022\230239\01685595.docx

I, Wayman Young, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am a Lieutenant in the San Francisco Police Department ("SFPD"). I have worked at SFPD for 19 years. When San Francisco's Healthy Streets Operations Center ("HSOC") was created in January 2018, I joined HSOC as the field Supervisor Sergeant. Once HSOC reformed after being disbanded for 10 months, I rejoined in August 2022 as a Sergeant. In November 2022, I was promoted to Lieutenant and left HSOC. I returned to HSOC as the Lieutenant on February 27th, 2023. Currently I supervise one sergeant and seven SFPD officers providing support to HSOC.

3. When calls come in relating to homeless encampments or similar complaints, they are typically coded by dispatchers as 915 or 919 calls. These calls typically come in from members of the public and dispatching posts them to the "HOM board," which is an electronic system that enables officers to respond to calls for service. Although any officer can respond to a 915 or 919 call for service, HSOC officers respond to many of these calls. Very few 915 or 919 calls result in any enforcement action being taken and only in a minority are citations issued.

4. When responding to 915 or 919 calls for service, Officers adhere to all aspects of SFPD Department Bulletin 23-007 "Enforcement of Laws and Ordinances for Homeless Individuals Sitting, Lying, or Sleeping on Public Property". A true and correct copy of SFPD Bulletin 23-007 is attached to this declaration as Exhibit A. In addition, I have trained all HSOC Officers on this Bulletin and I have had specific discussions with the officers under my command about this bulletin. Further, every SFPD Officer has received a copy of the bulletin and was required to sign an electronic form attesting receipt of the Department Bulletin 23-007.

5. SFPD Officers assigned to HSOC support HSOC outreach works for three general reasons. First, we are there to protect the safety of the City's outreach workers. During the course of these resolutions our officers have regularly observed people in crisis who can and have been aggressive towards outreach workers. Workers have been physically threatened and on least one occasion physically battered by an encampment resident. We have found weapons, stolen property, and drugs at a significant portion of encampment resolutions. For example weapons such as hand

guns, air powered guns, machetes, samurai swords, all types of kitchen knives, brass knuckles, dirk, dagger, foldable pocket knives, metal pipes, and axes.  The second reason for SFPD support is that regularly, there are individuals with open felony warrants (including for violent crimes) residing in the location where encampment resolutions take place.  If individuals have open felony warrants, SFPD policy dictates that they be booked. Officers will run the names for open warrants if the subject is detained or under arrest and confirm the warrant by calling the Central Warrant Bureau (CWB).  If the subject is not detained or under arrest, and the subject voluntarily provides their name when asked by the officer, some officers will routinely run the subject for warrants.  Officers will also run the subject for warrant if the officer knows the subject, and from prior knowledge, knows the subject has had previous warrants.  Finally, there are still circumstances where individuals may be cited for various offenses that are not prohibited by the injunction.  For example, it is often the case that individuals will obstruct the sidewalk entirely, block entrances to buildings, block ingress and egress from fire escapes, block garages, and occupy private property.  Although SFPD does not seek to cite these individuals— indeed, issuing a citation to unhoused individuals is a last resort—if they refuse to cooperate, they can be cited for ordinance violations not enjoined by the preliminary injunction in this case.

6. Further, if SFPD Officers encounter minors experiencing homelessness, they are instructed to follow Department General Order No. 7.01 "Juvenile Policies and Procedures" and Department Notice 22-043 "Reminder of Requirement When Members Interrogate or Question Youth 17-Years Old or Younger."  A true and correct copy of these are attached as exhibits B and C.  In nearly all circumstances, if a minor is residing in an encampment, SFPD Officer's will contact Child Protective Services ("CPS") and request guidance and assistance from CPS.  SFPD does not separate a minor from their legal guardian unless there is a court order so instructing or there is an exigency and probable cause to support such action pursuant to DGO 7.01, 7.02 "Psychological Evaluation of Juvenile", and 7.04 "Children of Arrested Parents", and Department Notice 22-043.

7. I am regularly present at HSOC resolutions and am in constant contact with the Officers under my command who attend HSOC resolutions.  Members of the public are able to observe virtually all action we take during the resolutions.  To my knowledge, SFPD officers act no differently when Coalition on Homelessness or ACLU observers are present at resolutions.  Often, we

do not know whether someone is associated with those organizations or is simply an interested member of the public. Resolutions are regularly and frequently observed by members of the public as they occur in public spaces.

8. San Francisco's police officers are well-trained professionals, aware of the acute and complex issues presented by persons experiencing homelessness in the City.  San Francisco's police officers are dedicated to public safety and equitable enforcement of the laws.  They are trained to adhere to SFPD policies, and specifically Department Bulletin 23-007.  Consistent with Department Notice 23-045 "Activation of Body Worn Cameras", officers activate their bodycams and prepare an incident report when they issue a citation or engage in any enforcement action.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on June 27, 2023, at San Francisco, California.

/s/ Wayman Young
Wayman Young