**EXHIBIT B**

**TO**

**DECLARATION OF LT. WAYMAN YOUNG IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**

| | |
|---|---:|
| **San Francisco Police Department** | **7.01** |
| **GENERAL ORDER** | Rev. 05/07/08 |

POLICIES AND PROCEDURES FOR JUVENILES DETENTION, ARREST, AND CUSTODY

The purpose of this order is to set policy and procedures regarding arrest, detention, shelter bookings, and diversion of juveniles.

## I. POLICY:

It is the policy of the San Francisco Police Department that all members shall treat individuals with respect and courtesy regardless of age or social status, and shall comply with all relevant General Orders, including but not limited to General Order 5.15 (Enforcement of Immigration Laws), General Order 5.17 (Policy Prohibiting Biased Policing) and General Order 5.20 (Language Access Services for Limited English Speaking Persons).  Members of the San Francisco Police Department have a unique opportunity to influence the lives of children and youth. Members shall seek partnerships with families, schools and juvenile-centered groups to prevent and solve problems affecting children and youth. When detaining, arresting or taking a juvenile into temporary custody members shall choose the alternative that least restricts the juvenile's freedom of movement, provided that alternative is compatible with the best interests of the child and the community.

Members shall protect the constitutional rights of all individuals with whom they come into contact regardless of age.  Every juvenile shall be treated in accordance with all applicable laws.  Airport Bureau members will comply with the contents of this order, however, since the Airport Bureau utilizes San Mateo County Juvenile Facilities, these members will comply with exceptions to this order defined in Airport Bureau General Order 97-013.

## II. DEFINITIONS:

- A. JUVENILE:   Any person under 18 years of age.

- B. CHILD:   Any person under 14 years of age.

- C. INFANT:   Any person under 2 years of age.

- D. DEPENDENT:   Any person under the age of 21 who is under the jurisdiction of the Juvenile court because of parental abuse, neglect, or abandonment.

- E. GUARDIAN:   Adult responsible in the absence of a parent.

- F. MINOR:   Any person under 21 years of age

DGO 7.01
Rev. 05/07/08

    G. EXIGENT CIRCUMSTANCES:
Exigent circumstances are defined as situations that require deviation from procedures, such as a threat to life, safety, or property, a fleeing suspect, or the potential loss or destruction of evidence. (e.g., physical loss of property, witness or victim.)

**III. PROCEDURES:** Members should avoid bringing juveniles into any police facility (including district stations) that contain a lockup for adults. Members should make reasonable efforts to investigate, facilitate release, or arrange transfer of the juvenile from the field or from juvenile facilities such as Huckleberry House, Community Assessment and Referral Center (CARC), and Juvenile Justice Center (JJC- formerly YGC). Only after a member has made reasonable efforts from the field or from juvenile-centered facilities such as Huckleberry House, CARC, and JJC to investigate, facilitate release, or arrange for transfer of the juvenile, may a member bring a juvenile to a police facility that contains a lockup for adults. In the extraordinary circumstance that requires a member to bring a juvenile to a police facility containing a lockup for adults, the member shall strictly comply with the following procedures:

    A. EMERGENCY OR TEMPORARY SHELTER (300 W&I). Members shall take all juveniles detained for emergency or temporary shelter to the Child Protective Services (CPS) for medical screening and placement. Detention for emergency or temporary shelter is appropriate when any of the following conditions exist:

        1. The juvenile is in immediate need of medical care.

        2. The juvenile's physical environment poses an immediate threat to the juvenile's health or safety.

        3. A juvenile left unattended poses an immediate threat to the juvenile's health or safety. Prior to detaining the juvenile, members shall attempt to contact the juvenile's parent or guardian to determine if the parent or guardian is able to take custody of the juvenile.

        4. The juvenile is in immediate danger of physical or sexual abuse.

        5. The juvenile has been ordered by juvenile court to be temporarily removed from the custody of his or her parents and a member has reason to believe that the juvenile has violated an order of the juvenile court or has left any placement ordered by the juvenile court.

        6. WRITTEN STATEMENT: When the juvenile has been taken into temporary custody pursuant to Section 305 W&I, officers shall take reasonable steps to inform the parent, guardian, or responsible person, that the juvenile has been taken into protective custody. Further, the parent, guardian, or responsible person shall be advised that a written statement is

DGO 7.01
Rev. 05/07/08

available which explains the parent's or guardian's procedural rights and the preliminary stages of the dependency investigation and hearing. The written statement is available through all public schools, probation offices, and welfare offices.

B. TEMPORARY DETENTION: When taking a juvenile into temporary detention under Section 601 W&I (runaway, beyond parental control) or 602 W&I (violation of criminal law), members shall follow these procedures:

1. SEARCHES: Search the juvenile for weapons, evidence or contraband, refer to Section H.

2. MIRANDA: Read the juvenile the Miranda advisement (625 W&I Code). Members shall take reasonable steps to read the advisement as soon as practical, but with-in a half-hour of taking the juvenile into custody. The name of the member reading the Miranda advisement shall be included in the police report. If the juvenile was taken to a police facility, the arresting officer shall document on the Secure or Non-Secured Detention of Juvenile Log Forms (SFPD 473/472) their name, star and who provided the Miranda advisement to the juvenile.

3. PARENTAL NOTIFICATION: Take immediate steps to notify the juvenile's parent, guardian, or a responsible person that the juvenile is in custody and the place where he or she is being held.

4. JUVENILE FACILITY: After a member has made reasonable efforts from the field or from appropriate juvenile-centered facilities (e.g. Huckleberry House, CARC, or JJC) to investigate, arrange release, or transfer, may a member bring a juvenile to a police facility containing an adult lockup.

5. DETENTION LOGS: Prior to the end of each watch, the platoon commander shall ensure that the Secure or Non-Secured Detention of Juvenile Log Forms (SFPD 473/472) have been properly completed.

6. TELEPHONE CALLS: Immediately after taking the juvenile to a place of confinement and, except where physically impossible, no later than one hour after he/she has been taken into custody, members shall allow the juvenile to make at least two telephone calls: one call completed to his/her parent or guardian, a responsible person or his/her employer, and another call completed to an attorney.

7. ACCESS TO BASIC AMENITIES. In secure and non-secure detention, members shall ensure that the following amenities are made available to juveniles:

    a. Reasonable access to toilets and washing facilities,

DGO 7.01
Rev. 05/07/08

      b. A snack if the juvenile has not eaten within 4 hours,

      c. Reasonable access to drinking water,

      d. Privacy during visits with family, guardian, and/or lawyer,

      e. Reasonable access to a telephone.

8. **WELL-BEING:** Members are responsible for the security, safety, and well-being of detained juveniles.

9. **SUICIDE RISK AND PREVENTION:** Members shall keep any juvenile who appears suicidal under constant personal observation while in their temporary custody. Members shall, as soon as practical, contact a supervisor who shall then be responsible for having the juvenile appropriately evaluated for psychiatric services. Members shall notify the juvenile's parent, legal guardian, or responsible person (foster parent, boarding school, etc.), in the event of a suicide attempt. (See DGO 7.02, Psychological Evaluation of Juveniles).

10. **MEDICAL ASSISTANCE AND SERVICES:** Members shall ensure that juveniles who are obviously injured or ill are examined at SFGH prior to being booked. In the event of an emergency medical situation, an ambulance should be summoned immediately. Members shall make notification to the juvenile's parent, legal guardian, or responsible person (foster parent, boarding school, etc.), in the event of a serious illness or injury. (Also see DGO 5.09, Absentia Bookings and Prisoner Security.)

C. **JUVENILE DETAINED FOR 601 W&I OFFENSES:** A juvenile held in non-secure custody for any violation of 601 W&I may not be securely detained unless the juvenile commits separate criminal violations which would violate 602 W&I (criminal offense) while in custody. If a juvenile commits a separate criminal violation, members shall refer to Section D and follow procedures for a 602 W&I or a 5150 W&I detention. When detaining for 601 W&I, members shall strictly comply with the following policies:

1. Members shall not hold a juvenile in a locked room.

2. Members shall not handcuff juveniles to themselves or any fixed object.

3. Members shall ensure that juveniles do not have any contact with any adult or other juvenile prisoners.

4. Members shall maintain direct visual supervision of the juvenile at all times to prevent any communication between adult prisoners and juveniles and to ensure the safety of the unsecured juvenile.

4

DGO 7.01
Rev. 05/07/08

5. Members shall not use video equipment as a substitute for constant personal observation.

6. No juvenile shall be detained at a district station more than six hours.

7. If a member is unable to reach the juvenile's parent(s), guardian, or responsible person or if the parent/guardian cannot or will not respond, members shall take the juvenile to Huckleberry House or other agency contracted by the City and County to receive juveniles for any violation of 601 W&I.

8. Members shall make an entry into the Non-Secure Detention Log (SFPD 472) indicating the reasons and circumstances for the non-secure detention, starting time and ending time of the detention, and the officer's name and star.

D. JUVENILE DETAINED FOR 602 W&I OFFENSES:

1. NON-SECURE CUSTODY. Juveniles detained for 602 W&I offense, under the age of 14 (regardless of the offense), and juveniles age 14 and over, who do not reasonably present a serious security risk of harm to themselves or others, shall be held in non-secure custody. These juveniles shall be held in accordance with section C.1 through C.8 of this general order.

2. SECURE DETENTION: A juvenile age 14 and over, who the detaining members reasonably believe present a serious security risk of harm to self or others, may be held in secure detention.

   a. Members shall take reasonable steps and consider the following factors before placing a juvenile in secure detention:

      1) The juvenile's physical and emotional age, maturity, and history of delinquency and criminal contacts,

      2) The seriousness of the offense,

      3) The juvenile's behavior,

      4) Availability of staff to adequately supervise a juvenile, and

      5) The age, type and number of other subjects being held at the facility.

   b. Members shall adhere to the following policies when holding a juvenile in **secure detention:**

5

DGO 7.01
Rev. 05/07/08

1) Members shall inform the juvenile of the purpose for his or her detention, the expected detention time and of the 6 hour maximum.

2) Members may handcuff the juvenile to a stationary object for a maximum of 30 minutes. After 30 minutes, members shall either remove the juvenile from secure detention or obtain approval from a supervisor to extend the secure detention. Each 30 minute extension shall be approved and recorded by a supervisor on the detention log.

3) If an adult prisoner is present with the juvenile in the same room or area, members shall maintain constant direct visual supervision of the juvenile at all times to prevent any communication between adult prisoners and juveniles and to ensure the safety of the juvenile.

4) Members shall make an entry in the Secure Detention log (SFPD 473) indicating the offense, reasons and circumstances for the secure detention, the starting and ending time of the detention, and the names of the member and the supervisor who approved the detention.

5) A juvenile shall be permitted to retain and wear his/her personal clothing unless the clothing is inadequate, presents a health or safety problem, or is required to be utilized as evidence of an offense.

6) When a juvenile is released from secure detention but remains at the police facility, the non-secure detention log (SFPD 472) shall also be completed.

3. INTERROGATIONS:

  a. Immediately prior to questioning a juvenile, members shall again advise the juvenile of the Miranda admonishment. Such admonition shall be given in language appropriate to the age and the sophistication of the juvenile and in accordance with General Order 5.20. In addition to the Miranda admonishment, the officer shall tell the juvenile that he or she may have a parent/guardian present before and during an interrogation.

  b. Immediately after taking the juvenile to a place of confinement and, except where physically impossible, no later than one hour after he/she has been taken into custody, allow the juvenile to make as least two telephone calls: one call completed to his/her parent or guardian, a responsible person or his/her employer, and another call completed to an attorney

DGO 7.01
Rev. 05/07/08

  c. If a juvenile expresses a wish to have a parent/guardian present during the interrogation, this will be allowed unless the parent/guardian is a witness or suspect to the crime for which the juvenile is being interrogated or exigent circumstances exist (e.g., unduly hampered by the delay or if an emergency exists).

  d. The number of officers interrogating a juvenile shall be limited to two at any given time.

  e. Interrogations shall be audio recorded absent exigent circumstances.

  f. Members shall take reasonable steps to notify parents or guardians as described in Section III.G, below.

**E.** 601 & 602 W&I CODE OPTIONS: When determining which disposition of the juvenile to choose, the officer shall elect the alternative which least restricts the juvenile's freedom of movement, provided that alternative is compatible with the best interests of the minor and the community. If circumstances do not warrant admonishing, diverting or citing, members shall phone a juvenile probation officer assigned to the Community Assessment Referral Center (CARC) or other designated receiving facility

F. PROCEDURES FOR ADMONISHMENT, DIVERSION, CITATION AND BOOKING:

  1. ADMONISHMENT: If circumstances do not warrant diverting, citing, or booking, members may admonish the juvenile at the scene, or in the presence of a parent or guardian. Members should only admonish juveniles who have no prior 602 W&I contacts and whose involvement in the crime was minimal. Notification may be made by telephone, in person, by leaving a note, or by going to the juvenile's home, as appropriate.

  Upon admonishment and release of a detained juvenile, the officer shall issue an 849(b)(1) PC form and prepare an incident report as required by DGO 5.03.

  Upon admonishment of a juvenile who was free to leave at any time during the contact (i.e. not detained) or briefly detained, members need not issue a certificate of release or complete an incident report (DGO 5.03).

  2. DIVERSION: When admonishment is insufficient, but circumstances do not warrant citing or booking, members may divert the juvenile as follows:

    a. 601 W&I VIOLATION: A juvenile may be diverted for 601 W&I violation (runaway, beyond parental control) to the Huckleberry House or other agency contracted by the City and County to receive juveniles held for any violation of 601 W&I. A member of the Juvenile

7

DGO 7.01
Rev. 05/07/08

>
> Probation Department will be on duty to process the offender. Members shall prepare an incident report and an admission form and shall attach a copy of the form to the report.
>
> b. 602 W&I VIOLATION: If a juvenile has been arrested for a non-violent offense and has little or no criminal record, the juvenile may be eligible for diversion. **ALL** of the criteria on the Diversion Form shall be met. When diverting a juvenile for a criminal offense (602 W&I), members shall follow these procedures:
>
>    1) Members shall obtain parental consent to divert the juvenile from the juvenile's parent or guardian and inform the parent or guardian that a diversion officer will contact him or her.
>
>    2) Complete the Juvenile Diversion Checklist (SFPD 245) and fax it with a copy of the incident report to the Juvenile Division.
>
>    3) When completing SFPD 245 members shall enter an "X" in the subject code and list the offense(s) committed. Members shall title the report by naming the incident followed by the phrase "Juvenile Diverted" (e.g. Vandalism/Juvenile Diverted). A juvenile may be diverted in the same incident where others are cited or booked.
>
>    4) Members shall forward a photo of any evidence to the Juvenile Division.
>
>    5) Members shall not process or obtain "J" numbers for diverted juveniles.
>
>    6) Members shall attach a copy of SFPD 245 to the incident report.
>
> 3. CITATIONS: Whenever possible, members should cite juveniles and release them to their parent, guardian or responsible person. Members who believe that a violation should be brought to the attention of the Courts, but believe booking the juvenile is not necessary, shall cite the juvenile.
>
>    a. CRIMINAL CITATION (602 W&I)
>       See DGO 5.06, Citation Release.
>
>    b. TRAFFIC INFRACTION CITATION
>       See DGO 9.01, Traffic Enforcement.
>
> 4. BOOKING: Members shall book when any of the following exists.
>
>    a. The seriousness of the offense is such that the release of the juvenile would prove dangerous to the public, as determined by the

8

        Risk Assessment Instrument and in consultation with a Juvenile Probation Officer.

    b. The juvenile is arrested pursuant to a warrant.

    c. The juvenile is in possession of a firearm.

        i. Pursuant to a Memorandum of Understanding between the Department of Social Services and the Juvenile Probation Department, members shall book any child under the age of eleven who is being booked for 602 W&I offenses at the Child Protection Center (CPC) not the Juvenile Justice Center (JJC).

        ii. Before booking a juvenile, the arresting officer shall complete an admission form summarizing the circumstances of the offense and declaring the probable cause for arrest.

        iii. The officer shall phone a juvenile probation officer assigned to the Community Assessment Referral Center (CARC) or other designated receiving facility. Members shall not transfer the juvenile to other members, JJC, CARC or other receiving facilities unless an admission form has been completed by the arresting officer.

5. Members shall follow juvenile procedures established through "A" Priority Department Bulletins.

**G. NOTIFICATION OF PARENT OR GUARDIAN:** When a juvenile has been detained, brought into a police or juvenile facility, or has been transported by a member, that member shall take immediate steps to notify the juvenile's parent, guardian, or a responsible person that the juvenile is in custody and the place where he/she is being held, was transported or temporarily detained.

1. NOTIFICATION: Notification may be made by telephone, in person, by leaving a note, or by going to the juvenile's home, as appropriate.

    a. When a parent, guardian or responsible person is contacted, he/she shall be notified where the juvenile is in custody, the violation or the reason for the detention and/or transportation. Further, he/she shall be informed of the Miranda Rights of the juvenile and that such admonishments have been given to the juvenile. Parent and juvenile will be allowed to speak with one another (at this point) if either party so desires.

    b. Should an initial attempt to contact a parent, guardian or responsible person fail, renewed attempts shall be made by phone every thirty minutes until the processing and investigation has been completed.

9

DGO 7.01
Rev. 05/07/08

> > The time of all calls shall be entered on the Non-Secured or Secured Detention Logs.
> >
> > c. If a parent, guardian or responsible person has not been contacted at the conclusion of the investigation and processing, the assigned officer shall be responsible for arranging for delivery of the written notification to the parent, guardian, or responsible person (providing information about the juvenile's detention, his/her present whereabouts, and the name of the assigned officer or responsible contact officer).
>
> 2. OUT OF TOWN: If the juvenile resides outside of the city, members shall make a telephone call to the parent, guardian or responsible person. When possible, members should attempt to make this call collect. If notification cannot be made by telephone, members shall arrange for notification through the local law enforcement agency.
>
> 3. JUVENILE VICTIMS: When a member takes a report from a juvenile who is a victim of a crime, the member shall notify the juvenile's parent, legal guardian, or responsible person as soon as reasonable. This notification is not to be made in the event that the suspect is the parent, guardian or responsible person. If the report is being taken at a school, the member may request school personnel make the notification.
>
> 4. DOCUMENTING NOTIFICATION: Members shall include in their incident report how notification was made or what actions the member took in attempting to notify parents or guardians.
>
> H. SEARCHING JUVENILES: Members shall search juvenile arrestees immediately for weapons, contraband and items of evidence. Juvenile searches shall be conducted only by a member of the same gender as the juvenile.
>
> > 1. EXIGENT CIRCUMSTANCES: If a member has knowledge or reasonably believes that a juvenile of the opposite sex has a dangerous weapon concealed upon him or her, the juvenile may be restrained (handcuffed) until a search can be made by a member of the same gender as the juvenile. If there is a life-threatening situation, a member may search a juvenile of the opposite gender.
>
> I. TRANSPORTING JUVENILES: Members may only transport a juvenile for a lawful police purpose. Members shall make parental notification as per Section III. G.
>
> > 1. WITH ADULTS: Members shall not knowingly transport juveniles with adult arrestees.

10

DGO 7.01<br>Rev. 05/07/08

2. FEMALE JUVENILES:  Female juveniles shall, when possible, be transported by female officers.  If a female officer is unavailable, then two male members shall transport female juveniles with a supervisor's approval.

3. DOCUMENTING THE TRANSPORT OF JUVENILES:  Prior to the transport of any juvenile, officers shall broadcast to Department of Emergency Management (DEM) his or her destination and the police vehicle's starting mileage.  Upon arrival, officers shall inform DEM of their ending mileage.  In both instances, dispatch shall broadcast and record in CAD a starting time and ending time for the transport.

4. USE OF SEATBELTS:
   (See DGO 9.04) Seat Belt Policy

## J. JUVENILE NUMBERS AND PROCESSING

1. JUVENILE NUMBERS:  Members shall obtain a juvenile number (J number) when formal action is taken against a juvenile under Section 601 or 602 W&I Code.

2. PROCESSING:  Members shall process a juvenile when:

   a. The juvenile is arrested for any felony offense, or

   b. The juvenile is arrested for any firearm or weapon related offense, or

   c. The juvenile is arrested for sex/prostitution related offenses, or

   d. The juvenile has a failure to appear on his/her record, or

   e. The juvenile's identity cannot be confirmed.

   When booking a juvenile for 601 or 602 W&I Code and processing is not necessary, members shall affix the juvenile's right thumb print on the back of the police liaison copy (goldenrod) of the admission form.  Members shall document in the incident report the method used to confirm the juvenile's identity.

## K. CHANGES OF CUSTODY

1. If a subject is taken into custody for an adult warrant and prior to booking it is discovered that the subject is a juvenile, members shall process the subject as a juvenile and book him or her at JJC.  Members shall notify CJ #9 and request that a booking form be completed with a notation that the subject is a juvenile and is being held at JJC.

DGO 7.01
Rev. 05/07/08

    2. If a subject booked at CJ #9 is found to be a juvenile, a unit from Southern Station, shall process and transport the juvenile to JJC. If the juvenile is violent, members may use a patrol wagon to transport the juvenile.

    3. If a subject over 18 years of age is arrested for a juvenile warrant, members shall book the subject at County Jail #9. If the subject has additional charges, members shall notify JJC, book the subject at County Jail #9 and place a hold on the subject for Juvenile Court.

**L. UNDER THE INFLUENCE OF ALCOHOL, DRUGS OR NARCOTICS:**
Members shall have juveniles who are under the influence of alcohol or drugs taken by paramedics to SFGH for medical examination prior to being booked at JJC. If the juvenile must remain in the hospital and booking is required, members shall complete an admission form and deliver it to JJC. Members shall place a police hold on the juvenile and request that a counselor be dispatched to the hospital for the purpose of taking custody of the juvenile.

Members shall remain with the juvenile until medically cleared or relieved by the counselor from JJC. If released by medical staff while still in police custody, members shall transport the juvenile to JJC. If the juvenile is violent, members may request the patrol wagon from Mission Police Station.

**M. JUVENILE JUSTICE CENTER ADMISSIONS AND REPORT REQUIREMENTS.**

    1. Members shall complete Section (A) of the Juvenile Detention Disposition Report Form (#JUS 8716) for any arrest of a juvenile for any criminal offense except 647(f) P.C. and Vehicle Code Violations that are categorized as infractions.

    2. When a juvenile is being admitted to Juvenile Justice Center (JJC) for a criminal offense, the member shall provide the incident report to JJC as soon as possible.

    3. When a juvenile is being admitted to (JJC) for a criminal offense, members shall complete Section (A) of the Juvenile Detention Disposition Report Form (#JUS 8716) and submit this form to the on-duty probation officer along with the admission form, San Francisco Juvenile Court, Form #1202-03. Members shall also attach a photocopy of the face sheet of the Juvenile Detention Disposition Report Form (#JUS 8716) to the original incident report to be forwarded to the Report Management Section.

    4. When completing the admission form, in addition to providing a probable cause statement, members shall provide, when available, aggravating and mitigating information about the juvenile and offense. For example, relevant information may include the seriousness and extent of injury to a victim, value of property stolen or damaged, degree of juvenile's

12

DGO 7.01
Rev. 05/07/08

    involvement in an offense, prior offense history or lack thereof, ability of family member to supervise juvenile, flight risk, juvenile's school and employment record.

5. When members are instructed by the probation officer assigned to the Community Assessment Referral Center (CARC) or other designated receiving facility to transport the juvenile to the Center for citing and release, the member shall complete Section (A) the Juvenile Detention Disposition Report Form (#JUS 8716). Members shall also attach a photocopy of the face sheet of the Juvenile Detention Disposition Report Form (#JUS 8716) to the original incident report to be forwarded to the Report Management Section.

6. If CARC or other designated receiving facility is closed or declines to receive a juvenile and the juvenile is not going to be referred to JJC, members shall issue a citation to the juvenile and release the juvenile to a responsible person.

   Members shall complete Section (A) of the Juvenile Detention Disposition Report Form (#JUS 8716) and submit the original form along with an attached photocopy of the incident report through inter-department mail to the Juvenile Division, attention JJC liaison officer. A photocopy of the face sheet of the Juvenile Detention Disposition Report Form (#JUS 8716) shall be attached to the original report to be forward to the Report Management Section.

N. RELEASING A JUVENILE:  Members are required to ensure the safety of the juvenile in their care or custody. Members shall document the name of the responsible person to whom the juvenile was released in the police report or in the CAD history. Members shall consider factors such as time of day, location of release, and the age and known vulnerability of the juvenile in determining the best circumstances for releasing that juvenile.

O. PSYCHIATRIC CASES:
   (See DGO 7.02, Psychological Evaluation of Juveniles.)

P. MISSING JUVENILES:
   (See DGO 6.10, Missing Persons)

Q. SEXUAL ASSAULTS:
   (See DGO 6.16, Sexual Assaults)

R. IN-CUSTODY DEATH
   (California Code of Regulations (CCR) Title 15, Section 1046; See DM 12, Booking and Detention Manual, Section 12, Emergency Procedures)

S. REVIEW OF DEPARTMENT BULLETINS CONCERNING JUVENILE PROCEDURES.

DGO 7.01
Rev. 05/07/08

> All Department Bulletins concerning Juveniles will be reviewed 90 days before their expiration date in accordance with department policy.

**Reference:**
DGO 5.03, II A (1) and (2), Brief Detentions & Prolonged Detentions.
DGO 5.06, Citation Release.
DGO 5.20, Language Access Services for Limited English Proficient Persons.
DGO 6.10, Missing Persons.
DGO 6.16, Sexual Assaults.
DGO 7.02, Psychological Evaluation of Juveniles.
DGO 9.01, Traffic Enforcement.
DGO 9.04, Seat Belt Policy.
DM 12, Booking and Detention Manual.