DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-3857 (Wang)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
              (415) 554-4223 (George)
              (415) 355-3307 (Ikels)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              edmund.wang@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org
              john.george@sfcityatty.org
              zuzana.ikels@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF CARLA SHORT IN SUPPORT OF DEFENDANTS' RESPONSE TO COURT ORDER (ECF NO. 180)**<br><br>Trial Date:    April 15, 2024 |

Short Decl. ISO Defs. Resp. to Ct. Order
CASE NO. 4:22-cv-05502-DMR

c:\users\kamurphy\desktop\2023-09-18 short decl.docx

I, Carla Short, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness I could and would competently testify thereto.

2. I have worked for the Department of Public Works ("DPW") since 2004. My current role is Interim Director of DPW. I have been the Interim Director since August 2021. I was previously the Superintendent of the Bureau of Urban Forestry within DPW, a position I held from 2015 to 2021 and during 2019 through 2020 I was also the Acting Deputy Director for the Operations Division.

**Court's Request**

3. I am informed and believe that the Court has required San Francisco to provide information regarding (1) how many DPW employees interact with homeless individuals with respect to cleaning; (2) the context in which they interact with homeless individuals with respect to cleaning; and (3) the training they receive on the bag and tag policy, including the frequency, length, and format of the training and details of any training materials.

4. I am informed and believe that the Bureau of Street and Environmental Services ("BSES") Assistant Superintendent Jonathan Vaing is submitting a declaration regarding the first and second questions as they related to BSES and the third topic, DPW's training on the bag and tag policy. I am submitting this declaration to respond to the first and second topics in the Court's request to the extent it relates to any portions of DPW beyond BSES as well as to provide general information about DPW's organizational structure.

5. Attached as **Exhibit A** is a true and correct copy of DPW's organizational chart.

6. In brief, the employees at DPW whose primary job responsibilities involve interactions with homeless individuals with respect to cleaning working in the Bureau of Environmental Services ("BSES"). BSES is the bureau responsible for cleaning the public right-of-way, including sidewalks, curbs, and roadways both manually and using mechanical equipment. No other Bureau or Division within DPW has a direct job responsibility that involves interactions with homeless individuals with respect to cleaning.

7. DPW has approximately 1,800 budgeted positions. These employees manage a diverse set of responsibilities. My staff designs and manages construction of civic buildings and city streets,

the public uses the facility. A staff person overseeing the Pit Stop public toilet program is equipped with limited cleaning equipment such as brooms, trash pickers, and a wheeled trash can.

13. **The Bureau of Street and Environmental Services ("BSES")** is responsible for cleaning streets, sidewalks and curbs, removing graffiti, managing litter receptacles, and overseeing manual cleaning work crews. DPW employees who participate in Healthy Street Operations Center ("HSOC") resolutions and Joint Field Operations ("JFO") are part of BSES. BSES is the portion of the Operations Division whose work involves interactions with homeless individuals with respect to cleaning.

14. **The Bureau of Urban Forestry** is responsible for median maintenance, tree planting, and maintenance of all street trees. Additionally, the Bureau operates a cement shop that repairs sidewalks and medians that may have been impacted by tree roots. Except in the ancillary ways described below in Paragraph 15, their work does not involve cleaning and does not involve interactions with homeless individuals with respect to cleaning.

15. Not all employees within the Operations Division have roles that substantially involve interacting with persons experiencing homelessness. For example, employees in DPW's Bureau of Urban Forestry are primarily concerned with the planting, upkeep, and management of City trees. Although the health and welfare of these trees are the Bureau of Urban Forestry's primary responsibility, if there were discarded items or trash on the median in the vicinity of a City tree that the Bureau of Urban Forestry had sent someone to maintain, I would expect that gardener or arborist sent to that area would clean and green the area surrounding the tree. However, this work would not involve "interactions with homeless individuals with respect to cleaning," because to the extent there was a person present with that property—homeless or not—the Bureau of Urban Forestry would not discard it as trash.

16. Because most of the Operations Division employees work in public spaces such as sidewalks, streets, buildings, and other rights-of-way, it is not uncommon for employees to encounter members of the public during their day-to-day work. This includes members of the public who are both housed and unhoused. Indeed, because DPW employees are not engaged in the business of

the public uses the facility. A staff person overseeing the Pit Stop public toilet program is equipped with limited cleaning equipment such as brooms, trash pickers, and a wheeled trash can.

13. **The Bureau of Street and Environmental Services ("BSES")** is responsible for cleaning streets, sidewalks and curbs, removing graffiti, managing litter receptacles, and overseeing manual cleaning work crews. DPW employees who participate in Healthy Street Operations Center ("HSOC") resolutions and Joint Field Operations ("JFO") are part of BSES. BSES is the portion of the Operations Division whose work involves interactions with homeless individuals with respect to cleaning.

14. **The Bureau of Urban Forestry** is responsible for median maintenance, tree planting, and maintenance of all street trees. Additionally, the Bureau operates a cement shop that repairs sidewalks and medians that may have been impacted by tree roots. Except in the ancillary ways described below in Paragraph 15, their work does not involve cleaning and does not involve interactions with homeless individuals with respect to cleaning.

15. Not all employees within the Operations Division have roles that substantially involve interacting with persons experiencing homelessness. For example, employees in DPW's Bureau of Urban Forestry are primarily concerned with the planting, upkeep, and management of City trees. Although the health and welfare of these trees are the Bureau of Urban Forestry's primary responsibility, if there were discarded items or trash on the median in the vicinity of a City tree that the Bureau of Urban Forestry had sent someone to maintain, I would expect that gardener or arborist sent to that area would clean and green the area surrounding the tree. However, this work would not involve "interactions with homeless individuals with respect to cleaning," because to the extent there was a person present with that property—homeless or not—the Bureau of Urban Forestry would not discard it as trash.

16. Because most of the Operations Division employees work in public spaces such as sidewalks, streets, buildings, and other rights-of-way, it is not uncommon for employees to encounter members of the public during their day-to-day work. This includes members of the public who are both housed and unhoused. Indeed, because DPW employees are not engaged in the business of

offering shelter or supportive housing services, the DPW employees do not need to determine whether a person they encounter is housed or unhoused in order to complete their work.

17. I am informed and believe that the declaration of Jonathan Vaing will address in more granular detail the subunits or teams within BSES that most directly deal with interactions with homeless individuals with respect to cleaning.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed September 19, 2023 in San Francisco, California.

_____
CARLA SHORT