DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-3857 (Wang)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
              (415) 554-4223 (George)
              (415) 355-3307 (Ikels)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              edmund.wang@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org
              john.george@sfcityatty.org
              zuzana.ikels@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF JONATHAN VAING IN SUPPORT OF DEFENDANTS' RESPONSE TO COURT ORDER (ECF NO. 180)**<br><br>Trial Date:        April 15, 2024 |

I, Jonathan Vaing, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I have been employed by the City and County of San Francisco since 1996. I work within the Department of Public Works ("DPW") as part of the Bureau of Street and Environmental Services ("BSES"), which is one of four bureaus in DPW underneath the Operations Division. My title is the Assistant Superintendent of BSES Operations.

3. BSES is the DPW Bureau primarily concerned with cleaning streets, curbs, and other right-of-ways in the City. We do this by using mechanical street sweepers, removing graffiti, managing litter receptacles, and utilizing manual cleaning crews. Our manual cleaning crews sweep and clean sidewalks in heavily used commercial corridors. DPW employees who work with Healthy Streets Operation Center ("HSOC") operations and Joint Field Operations ("JFO") are all part of BSES.

**Court's Request**

4. I am informed and believe that the Court has required San Francisco to provide information regarding (1) how many DPW employees interact with homeless individuals with respect to cleaning; (2) the context in which they interact with homeless individuals with respect to cleaning; and (3) the training they receive on the bag and tag policy, including the frequency, length, and format of the training and details of any training materials. I am informed and believe that Interim DPW Director Carla Short is submitting a declaration to respond to the first and second topics in the Court's request to the extent it relates to any portions of DPW beyond BSES. My declaration will address the first and second questions as they relate to BSES and the third topic, DPW training on the bag and tag policy.

**Structure of BSES**

5. BSES has approximately 400 employees. Of those approximately 400 employees, around a quarter have roles that involve interacting with homeless individuals with respect to cleaning. Those individuals work on the Zone, Hot Spot and Special Projects teams as described below.

6. BSES is divided into eight teams each headed by one or two employees with the title Supervisor II. Those teams are: (1) Block Sweeping Group; (2) Alley Crews; (3) Mechanical Sweeping; (4) Zone; (5) Outreach and Enforcement; (6) HOT Spot Team; (7) Graffiti Unit; and (8) Special Projects.

7. Only the Zone Crew, Hot Spot Team, and Special Projects Crew have jobs that DPW anticipates will require them to interact with homeless individuals with respect to cleaning.

8. Below I provide more information about the number of employees assigned to, and the job responsibilities of, each of the eight BSES teams.

9. **Block Sweeping** has approximately 122 DPW employees, with an additional approximately 60 employees who are paid for out of the San Francisco Human Services Agency's budget. Their staff do not engage with persons experiencing homelessness. The Block Sweeping team's responsibilities require sweeping around designated sidewalks carrying a garbage bag, trash picker, and broom. Employees on the Block Sweeping team do not ask anyone to move for purposes of cleaning and their work does not involve engaging with members of the public.

10. **Alley Crew** has approximately 8 employees. This is a newly reconstituted group whose work is similar to the work that the Block Sweeping crew described above in Paragraph 9 does, but instead of sweeping sidewalks, the Alley Crew sweeps City alleyways. Employees on the Alley Crew team do not ask anyone to move for purposes of cleaning and their work does not involve engaging with members of the public.

11. **Mechanical Sweeping** has approximately 38 employees. Employees on the Mechanical Sweeping team do their work from specialized vehicles that sweep and clean City streets. These are the vehicles that perform the type street cleaning for which street parking in prohibited at certain dates and times as shown in the video here: https://sfpublicworks.org/services/mechanical-street-sweeping-and-street-cleaning-schedule. The Mechanical Sweeping team does not ask anyone to move for purposes of cleaning and their work does not involve engaging with members of the public.

12. **Zone** has approximately 84 employees. Zone is the complaint-driven part of BSES, responding to complaints raised through 311 or other channels. Zone laborers are assigned to one of six geographic "zones" in the City, designated as A-F. The Tenderloin, where Joint Field Operations

("JFO") occurs is part of Zone B and the Zone B team supports the JFO operation's needs from DPW. Zone laborers are dispatched to respond to complaints about the streets and sidewalks within their zone based on a number of factors including the severity or safety risk that the complaint presents. Both City employees and members of the public can call in complaints. Zone work does involve interactions with homeless individuals with respect to cleaning and laborers on the Zone team are trained on the City's bag and tag policy.

13. **Outreach and Enforcement** has approximately 6 employees. Laborers on the Outreach and Enforcement team do not have responsibilities that involve cleaning the sidewalk directly and instead work with local businesses to educate and as necessary issue citations to business owners who do not have sufficient garbage services or who leave their trash and/or recycling out on the street in violation of the Public Works Code. Laborers on the Outreach and Enforcement do not ask anyone to move for purposes of their cleaning and their work does not involve any engagement with members of the public who are not property owners.

14. **Hot Spot Team** has approximately 6 employees. Laborers on the Hot Spot Team are responsible for providing DPW support to HSOC resolutions. Their work involves interactions with homeless individuals with respect to cleaning and the Hot Spot Team is trained on the City's bag and tag policy.

15. **Graffiti Unit** has approximately 23 employees. Laborers in the Graffiti Unit respond to complaints and/or reports of graffiti in the City. Although the job responsibilities for laborers in the Graffiti Unit do not involve interactions with homeless individuals with respect to cleaning, laborers in this unit may be eligible for overtime with the Zone Crew, whose work does involve interactions with homeless individuals with respect to cleaning and those individuals are trained on the City's bag and tag policy through Tailgate meetings described below.

16. **Special Projects** has approximately 10 of employees. Laborers on the Special Projects team manage property that other BSES teams have bagged and tagged and staff the property storage area at the DPW Yard. The Special Projects team also manages DPW's work with parades and other celebrations or special events in the City, such as Bay to Breakers and the Pride Parade. Their work

may involve interactions with homeless individuals with respect to the DPW Storage Yard and would be expected to know and follow the bag and tag policy.

17. The numbers described above in Paragraphs 9-16 include only current active laborers. They do not include currently employed staff who may be on approved leave, such as FMLA, worker's compensation, or parental leave, etc.

### Training on the Bag and Tag Policy

18. DPW's official bag and tag policy as set forth in the Public Works Procedures Manual is attached hereto as **Exhibit A.** There is a less formal and more reader-friendly recitation of the policy available on DPW's website at: https://sfpublicworks.org/services/bag-and-tag-process.

19. Generally, BSES's training regarding the bag and tag policy falls into three categories: (1) PowerPoint presentation trainings, (2) weekly refreshers and reminders, and (3) on-the-job training.

20. These trainings are provided to BSES employees who interact with homeless individuals as part of their work, including those working with: Zone, Hot Spot Team, and Special Projects. I discuss each category of training more fully below.

#### (1) PowerPoint Presentation Trainings

21. I personally drafted training materials to train DPW employees on the bag and tag policy. The current version of those training materials, which contains 14 PowerPoint slides, is attached as **Exhibit B.** This presentation covers:

    a. Circumstances in which personal items may be collected and stored (Slide 1);

    b. Pre-Removal Notices (Slide 2);

    c. Procedures for Retrieval of Personal Items (Slide 3);

    d. Flowchart of the bag and tag process as it relates to unattended items (Slide 4);

    e. Flowchart of scheduled encampment outreach and clean up (Slide 5);

    f. Explanation of items that will be discarded and not stored (Slide 6);

    g. Notice used in advance of HSOC resolution (Slide 7);

    h. Paperwork to fill out for bagged and tagged property (Slides 8-9)

    i. Photographs documenting the bag and tag policy (Slides 10-13); and

j.  Log of items bagged and tagged (Slide 14).

22. I have led trainings using these PowerPoint materials to BSES employees at least three times since January 2023. The training using my PowerPoint materials takes approximately 30 minutes.

### (2) Weekly Refreshers And Reminders

23. In addition to my PowerPoint training, BSES regularly reminds employees of their obligations under the bag and tag policy at weekly meetings. BSES generally has a two-tier structure for its weekly meeting based on whether or not an individual has obtained the rank of Supervisor II. The two-tiers of meetings are referred to as "Sup II" meetings and "Tailgate Meetings" as described below.

24. Generally, one a week on Tuesday mornings at 7:30 AM, all Supervisor II's in BSES except those who work on the swing shift attend a meeting, referred to as a "Sup II" meeting. This meeting includes supervisors from each of the eight BSES teams. Supervisors on the swing shift, who are not working at 7:30 AM review the Sup II meeting minutes during their shift.

25. Sup II meetings typically last 30 minutes and we keep meeting minutes.

26. Sup II meetings address current issues relevant to BSES's work, ongoing issues, and upcoming events. I personally frequently review the same content from the PowerPoint presentation orally during the Sup II meetings.

27. Attached as **Exhibit C** are true and correct copies of the Sup II meeting minutes for the time period April 18, 2023 through September 5, 2023. These meeting minutes show that various operations-related issues including the bag and tag policy were addressed repeatedly at Sup II meeting during that period. Training on DPW's bag and tag policy is specifically called out in the majority of Sup II meeting minutes during this period:

   a. On April 18, 2023, there was a refresher on the bag and tag policy, including the associated paperwork when items are bagged and tagged;
   b. On April 24, 2023, there was a reminder regarding the bag and tag policy including a reminder about training;

      c. On May 2, 2023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      d. On May 16, 2023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed, as well as the training requirement on the bag and tag policy;

      e. On May 23, 2023 there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      f. On May 30, 2023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      g. On June 6, 6023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      h. On June 13, 2023, there was a discussion of bag and tag policy, including the request to photograph the area before and after a bag and tag is performed, and a reminder for supervisors to inspect notes and photos from their subordinates and to take action when a team member does bag and tag property correctly;

      i. On June 20, 2023, there was a discussion of the bag and tag policy and a reminder for supervisors to inspect notes and photos from their subordinates and to take action when a team member does bag and tag property correctly;

      j. On July 5, 2023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      k. On July 11, 2023, there was a discussion of the bag and tag policy and a reminder for supervisors to inspect notes and photos from their subordinates and to take action when a team member does bag and tag property correctly, and a reminder that supervisors are responsible for the work of their team members;

      l. On August 6, 2023, there was a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed;

      m. On August 22, 2023, there a discussion of the bag and tag policy, including the request to photograph the area before and after a bag and tag is performed; and

        n. On September 5, 2023, there was a discussion of the bag and tag policy, including a reminder that staff who do not follow the policy must be written-up.

28. Following the Sup II meeting, supervisors are dispatched to their team and lead a second weekly meeting disseminating information from the Sup II meeting. We refer to these as "Tailgate Meetings." Tailgate Meetings last between 30 minutes to an hour. There are no meeting minutes for Tailgate Meetings since there are no shifts that do not have in-person Tailgate Meetings.

29. Although Tailgate meetings do not have meeting minutes, they may require a sign-in sheet. Attached as **Exhibit D** are true and correct copies of Tailgate Meeting sign-in sheets from April through August 2023. At these Tailgate Meetings, the team supervisor would have relayed the same information he or she learned during the previous Sup II meeting, including reminders and training regarding DPW's bag and tag policy.

30. There are also some Tailgate Meeting sign-in sheets specifically showing bag and tag issues were raised at the meeting for some subgroups or teams who engage with bagging and tagging regardless of whether bag and tag issues came up at that week's Sup II meeting. Attached as **Exhibit E** are true and correct copies of sign-in sheets specifically showing a Bag and Tag training.

        a. On October 25, 2022 there was a bag and tag training given to eight Zone A crew members and on January 12, 2023 there was a bag and tag training given to 11 Zone A crew members;

        b. On December 1, 2022 there was a bag and tag training given to 13 people working on the Zone B and Graffiti Abatement teams; and on August 30, 2023 there was a tag and tag training given to 15 people working with the Graffiti Unit;

        c. On January 12, 2023, there was a bag and tag training given to eight people working on Zone C;

        d. On August 29, 2023, there was a bag and tag training given to nine people working on Zone D;

        e. On January 10, 2023 there was a bag and tag training given to nine Zone E crew members;

      f.  On November 9, 2022 there was a bag and tag training given to five Zone F crew members and on December 29, 2022 there was an additional bag and tag training given to five Zone F crew members; and

      g.  On November 5, 2022 there was a bag and tag training given to six Hot Spot Crew members.

### (3) On-The-Job Training

31. BSES employees also receive on-the-job training related to DPW's bag and tag policy.

32. For example, when materials are bagged and tagged from an HSOC resolution or a JFO engagement, a Supervisor is typically on-scene to help crew members determine whether materials should be bagged and tagged or whether they are discardable under the policy. For Zone workers who are responding to 311 calls, a supervisor can be reached for any questions through the radio room. These interactions provide opportunities for BSES crew members to ask questions of their supervisors in real time and get guidance on how to apply the bag and tag policy.

33. There is also a review process for materials that have been bagged and tagged. When DPW bags and tags items for storage at the DPW Yard, the DPW laborer who bags and tags the property fill out two forms: (1) one Notice of Removal of Property, which is posted at the location where the property was bagged and tagged and (2) one Homeless Property Information intake form, which is an internal document DPW uses to track and store bagged and tagged property. Attached as **Exhibits F and G** are true and correct copies of both forms.

///
///
///
///
///
///
///
///
///

34. Supervisors for the employees who bag and tag property review these forms. To the extent a supervisor notices anything missing from the paperwork, they have an opportunity to address the issue with the employee and provide guidance on the bag and tag policy.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed September 20, 2023 in San Francisco, California.

_____  9/21/23
JONATHAN VAING