```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3      Before The Honorable Donna M. Ryu, Magistrate Judge
 4
 5  COALITION OF HOMELESSNESS,   )
    et al.,                      )
 6                               )
             Plaintiffs,         )
 7                               )
    vs.                          )  No. C 22-05502-DMR
 8                               )
    CITY AND COUNTY OF SAN       )
 9  FRANCISCO, et al.,           )
                                 )
10           Defendants.         )
    _____)
11
12                                    Oakland, California
                                      Wednesday, September 20, 2023
13
14   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 1:33 - 1:57 = 24 MINUTES
15
    APPEARANCES:
16
    For Plaintiffs:
17                            Latham & Watkins, LLP
                              505 Montgomery Street
18                            Suite 2000
                              San Francisco, California
19                               94111
                          BY: KEVIN WU, LLP
20                            WESLEY TIU, ESQ.
21                            Latham & Watkins
                              650 Town Center Drive
22                            20th Floor
                              Costa Mesa, California 92626
23                        BY: JOSEPH HYUK LEE, ESQ.
24
              (APPEARANCES CONTINUED ON NEXT PAGE)
25
```

*Echo Reporting, Inc.*

```
 1  APPEARANCES:  (Cont'd.)

 2  For Plaintiffs:
                                ACLU Foundation of Northern
 3                                California
                                39 Drumm Street
 4                              San Francisco, California
                                  94111
 5                         BY:  WILLIAM S. FREEMAN, ESQ.

 6  For Defendants:
                                San Francisco City Attorney's
 7                                Office
                                Fox Plaza
 8                              1390 Market Street
                                Sixth Floor
 9                              San Francisco, California
                                  94102
10                         BY:  JOHN GEORGE, ESQ.

11  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
12                              Transcriber
                                echoreporting@yahoo.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  Wednesday, September 20, 2023                    1:33 p.m.
2                    P-R-O-C-E-E-D-I-N-G-S
3                            --oOo--
4           THE CLERK:  Calling civil case C-22-5502-DMR,
5  Coalition on Homelessness, et al., versus City and County of
6  San Francisco, et al.
7      Counsel, please state your appearances, starting with
8  the Plaintiffs' attorneys first.
9           MR. LEE (via Zoom):  Good afternoon.  This is
10 Joseph Lee from Latham and Watkins for Plaintiffs.
11          THE COURT:  Good afternoon.
12          MR. FREEMAN (via Zoom):  Good afternoon, your
13 Honor.  William Freeman, ACLU of Northern California, for
14 the Plaintiffs.
15          THE COURT:  Good afternoon.
16          MR. WU (via Zoom):  Good afternoon.  This is Kevin
17 Wu of Latham and Watkins, on behalf of Plaintiffs.
18          THE COURT:  Good afternoon.
19          MR. TIU (via Zoom):  Good afternoon, your Honor.
20 Wesley Tiu of Latham and Watkins, also for Plaintiffs.
21          THE COURT:  Good afternoon.
22          MR. GEORGE (via Zoom):  Good afternoon, your
23 Honor.  John George from the San Francisco City Attorney's
24 Office for Defendants.
25          THE COURT:  Good afternoon, Mr. George.

1       All right.  Well, this is our case management
2  conference, and the main thing on today's agenda is the
3  parties' request to move the schedule.  So, I want to give a
4  little background so that I can, you know, set forth my
5  reasoning here and tell you what I want to do.
6       So, in late July, the parties filed a stipulation
7  asking to extend some discovery dates but without a showing
8  of good cause that's required other than to say, Well, good
9  cause exists because we're diligently talking about changing
10 the schedule, which was a little circular.
11      So, what I did was a couple of days later, I -- I
12 issued an order saying we're going to move some of the fact
13 and expert deadlines to give you a little breathing room to
14 actually put something together and present a comprehensive,
15 you know, joint proposal with -- showing good cause for
16 whatever it is that you're asking.
17      Late August, the parties filed a new stipulation and
18 proposed order, and this time you asked to move the entire
19 schedule out a whole year, and the good cause was based
20 solely on the Defendants' representation that the Defense
21 needed more time to complete discovery, including what was
22 described as the need to review 133,000 custodial documents
23 plus some unspecified number of -- you know, thousands more
24 noncustodial documents, unless the parties came up with a
25 way to limit ESI and the Defendants said, "We don't have

5

dedicated document review attorneys," and Defense suggested that their four assigned lawyers would have to do the work and it just would be too much to accomplish in the time that was given.

So, my view, I'm going to focus solely on what I -- what the parties told me, and it was really about the Defense, and in looking at what I was told, it's not good cause to bump things out a whole year because that would mean two winter seasons, which is very significant given that the core of this case addresses homeless encampments.

And, as I've told the parties before, San Franciscans, both housed and unhoused, have demonstrated very high interest in the resolution of this case for good reason, because these issues are impacting many of them every day.

So, we all need to work diligently to get toward -- to the finish line, myself included.

So, I -- I think some adjustment to the schedule is appropriate in light of the discovery needs of the case, but pushing it out an entire year is simply not justified. So, I know from my years of experience on this bench that the San Francisco City Attorney's Office is well resourced. It attracts talented, highly capable lawyers, and it regularly engages in high-profile complex litigation before this Court and other courts. The Office also has paralegals and other skilled staff to support the litigation. So -- which --

1 which that kind of staffing wasn't mentioned in the
2 stipulation at all, but I know it exists.
3     The number of documents identified in the stipulation
4 is not exceptional in the least.  There's many cases in this
5 District that involve significantly higher numbers of
6 documents and more -- have far more complex discovery plans
7 and needs.
8     So, I feel confident that the City Attorney's Office
9 and the City and County of San Francisco can work out
10 staffing solutions to meet the needs of the case.  I'm not
11 talking about the -- the Plaintiffs' team, because that
12 wasn't part of the good cause showing.  But, look, on the
13 Plaintiffs' side, you have many firms and many, you know,
14 lawyers involved here.  And, so -- and it wasn't an issue
15 raised in your -- in what was before me, but I also am
16 expecting that you're using those resources to move the case
17 through promptly because a lot of people need to have an
18 answer here.
19     So, I'm -- in light of all that, I am ordering a six-
20 month adjustment to this -- to the case management schedule.
21 So, here is your new case schedule.  We already know it's
22 going to be an eight-day bench trial.  It will start October
23 1st, 2024.  I'm going to give you the following dates, just
24 so you have them, but I'll issue an order that puts them in
25 -- in the docket.

1        So, that means your non-expert discovery deadline and
2   your expert disclosure deadline are May 14th, 2024; rebuttal
3   expert disclosure May 28th, close of expert discovery June
4   11th, 2024.  Your pretrial will be September 18th, 2024, for
5   an eight-day bench trial commencing October 1st of 2024.
6        So, looking at that schedule and -- and what you told
7   me about the discovery needs, I think that gives you plenty
8   of time to get done what you need to get done to prepare
9   this for trial.
10       Now, as to the question of ESI raised in the
11  stipulation, I want to say that I expect the parties to
12  follow the Northern District of California ESI guidelines
13  and checklist which requires a collaborative process.  I'm
14  sure you're all familiar with it.  So, for example, the
15  Defense raised the concern that this should not be an ESI
16  heavy case.  They don't think a lot of things are in
17  custodial files.
18       Now, you know, I -- I'm not sure -- I can -- I'm not
19  creating your discovery plans, of course.  But I can imagine
20  that there may be custodial documents that are ESI that are
21  asking things -- searching for things like, you know, the
22  creation of the Hot teams and the purpose and the strategy
23  around when offers of housing are being made or how it's
24  being determined.  I don't know.  But there may be some ESI.
25  So, I can't say as a matter of -- you know, of just off the

top of my head that ESI is likely to be irrelevant.  I don't really know, but you all can find out.  And the way to do that and the way that I require that it be done before you raise anything before me for adjudication on a discovery dispute on ESI, is that you come up with some search terms together, you come up with some sample custodians to run them on, you generate a, you know, modest but meaningful sample of return documents, and you look at them together. You can come up with some kind of stipulation -- people do this all the time -- to protect that process so if it generates, you know, irrelevant documents that -- you know, they've got to be handed back to the Defense, but it's really meant to be quality control that you do together.

    What -- what was the quality of those search terms? Did it pull in too much?  What kinds of things did it pull in?  Did it potentially leave good stuff out, and that sample gives you feedback.  Then you can refine your search terms before running them across many custodians, and it may well turn out that you don't need to do anything close to this number of documents.

    I don't want to prejudge it.  I don't know what the answer is, but that's the work you'll have to do so that if there's disputes about this, you can give me very detailed presentations about what you've done to narrow down the problem and how it's impacting the returns.  Okay.  So,

1  that's the ESI.
2      I want to move on to -- when I was reading your CMC
3  statement, in the part about motions, there was a statement
4  that the parties may file one or more summary judgment
5  motions, and I don't know if that means, you know, per side
6  or you mean each side may file when.
7      I want to tell you what my rule is just so you're well
8  aware of it.  I only allow one Rule 56 motion per side
9  because they're a tremendous amount of work, and they're --
10 they generally don't pay off to have multiple Rule 56
11 motions in -- in terms of handling the case in an efficient
12 way.  So, one per side.
13     You have the deadline for a hearing.  Actually, I don't
14 think I gave you that.  July 11th, 2024 will be the last day
15 to hear dispositive motions.  So, you can wait until the
16 last period of time after discovery to -- to file or if you
17 think you have something sooner than that, it's your
18 decision.  But you only get one.  Okay.
19     And then the last thing on my agenda is ADR check-in.
20 I know you're working with Judge Cisneros, that the parties
21 indicated in their joint CMC statement that they're both
22 open to continuing those discussions.  That's great.  I
23 appreciate that. I'm sure everybody does.  But in our last
24 hearing on motion for enforcement, I had asked the Defense
25 specifically about their willingness to work with Judge

1 Cisneros to develop simple uniform clear communications to
2 be used by the San Francisco Police Department officers in
3 their interactions with homeless individuals regarding the
4 -- the bulletin and the issues in this case, and I said
5 wouldn't everybody in San Francisco and the parties benefit
6 from just having some clear uniform statements that are made
7 so everybody understands what their rights are isn't
8 confusion about that; and the City indicated, Yes, we're --
9 we'd like to work on that with Judge Cisneros.
10       And, so, just without giving me the details, I'd like
11 to know how is that going?  Are those -- is that process
12 proceeding?  Mr. George?
13           MR. GEORGE:  Yes.  This is John George, your
14 Honor.  That process is proceeding.  We began that process
15 shortly after your order came down, have engaged with Judge
16 Cisneros on that.  We haven't completed that process yet.
17 And, so, we are having -- without disclosing too much, I
18 would say that we're -- we're in regular communication on
19 that as recently as this week.  So, you can look forward, I
20 imagine, at some point where we do conclude that to a report
21 from her Honor on that, a minute order or some type of
22 memorialization of -- of the completion of that process.
23           THE COURT:  Okay.  And -- and I -- that's -- the
24 clear communication point is -- is something that should be
25 -- shouldn't be delayed.  I mean, the whole idea is to have

1  -- to assist San Franciscans by having officers, you know,
2  have just a clear simple thing that's being said so -- so
3  that there isn't confusion because, from what I've seen,
4  there appears to be some confusion.
5         So, I don't want to see that drag out.  I'd like to see
6  those -- that discussion take place and development of those
7  -- those communications get solidified sooner rather than
8  later.  That's my expectation.  Okay.
9              MR. GEORGE:  Understood.
10             THE COURT:  Okay.  So, that's what I wanted to
11 cover.  I have a number of cases behind you on today's
12 calendar.  Are there other things that need to be talked
13 about today from the Plaintiffs' side?
14             MR. LEE:  Nothing from Plaintiffs, your Honor.
15 This is Joe Lee, by the way.
16             THE COURT:  Okay.  Mr. Lee.  Thank you.
17     Mr. George, anything from the Defense?
18             MR. GEORGE:  If I could be heard for just a
19 moment, your Honor, on the schedule.  If you would entertain
20 me on that.  I don't know that I will --
21             THE COURT:  Hold on.  And I -- this is what I'll
22 say about that.
23             MR. GEORGE:  Okay.
24             THE COURT:  I -- you know, I -- there were three
25 opportunities to provide really, you know, why this was

1 needed.  There was the first stipulation where there was
2 really no attempt to show good cause as required by the law.
3      So, I said, well, I'm going to give you a break on some
4 -- you know, give you some breathing room on these deadlines
5 so that you can give me something that lays out the good
6 cause because I -- you know, that's going to -- that's
7 important for me to understand the needs of the case, so I
8 can figure out case management.  So, that's what I focused
9 on.
10      And then there's a third attempt, which is the joint
11 case management conference statement.  These are case
12 management issues.  It would be the place that I would
13 expect to see anything that the Court needs to know that's
14 affecting case management.
15      So, I just want to say that there's, you know, three
16 chances.  And, so, I expect that if lawyers need to make
17 their case, they don't normally get three chances in writing
18 to do that, but that was provided.
19      So, Mr. George, you know, I'll let you speak very
20 briefly, but my expectation is that things don't happen
21 after the fact if you -- and if the City hears something
22 that they, you know, are -- are disappointed in.
23           MR. GEORGE:  Understood, your Honor.  I just -- I
24 -- I wanted to address something that you mentioned because
25 I think that you are -- you're proceeding on some --

1 potentially some assumptions about what our office can and
2 cannot do, and that's what I was trying to make clear in my
3 declaration.  And, so, I -- I apologize that it wasn't maybe
4 fulsome enough about what are -- what the limitations are in
5 terms of staffing or (Zoom glitch).
6         THE COURT:  What I'm basing it on is, you know, I
7 don't -- I'm not taking issue with your declaration, but I
8 know -- I mean, I've been on the bench almost 14 years.  I
9 have many cases that have involved City of San Francisco
10 attorneys, and I know you all are an excellent team, and I
11 know what -- you know, basically what staffing can be where
12 it's needed, and there've been some cases that involved not
13 just the lawyers but skilled support staff, and this is a
14 case that's important to San Francisco.  And San Francisco
15 is not a small town.  And, so, that's why I'm saying I feel
16 confident that, although certain people may feel stretched
17 or there may have to be some reallocation of how the case is
18 being handled, I know that San Francisco can handle it, can
19 -- can do what it needs to take to litigate, and I also, in
20 seeing the level of needs that were expressed, it's really -
21 - it's not an exceptional case in the least.  I mean, it
22 really is, you know, slightly -- it's not, for example, an
23 individual case.  It's obviously bigger than that, but we
24 see cases with, you know, trilobites or, you know, just a
25 huge -- millions of documents, things that are far more

14

1 challenging than what the City outlined.  And I'm not
2 surprised by that.  I mean, that's -- this -- what you
3 outlined is what I would expect to see, but we don't bump
4 cases out for a year when these are the needs, especially
5 where people are being impacted every day.  That means we
6 all need to dig in harder and get what we need to get the
7 case done.  Okay.
8          MR. GEORGE:  Understood, your Honor.  I just -- I
9 didn't want to leave you with the impression that -- that we
10 -- well, I'll leave it at that.  I will -- we will endeavor
11 to -- we appreciate your vote of confidence in our
12 abilities.  I think that we may view our abilities a little
13 differently, but we will certainly endeavor to get it done
14 in that time period, absolutely.
15          THE COURT:  I understand, Mr. -- Mr. George, and I
16 appreciate that it will be a -- you'll have to stretch, you
17 know, that your office will need to maybe pull some
18 different things together that you wouldn't normally do to
19 staff something, but I also think this is a case that  calls
20 out for those measures.  So -- and I -- you know, I've given
21 everybody a generous extension in light of the needs, but I
22 think it -- I -- I can't ever remember pushing out a case
23 for a year, and especially not one like this.
24          MR. GEORGE:  Certainly, your Honor.  And I do want
25 to note two things on the documents.  It's -- I came from

1  the world of 10 million document cases.  They were obviously
2  resourced very differently in terms of the ability of, you
3  know, the -- the parties to finance the document reviewers
4  on that end.  And there are also -- they have an end date.
5  I mean, I think one thing that is difficult for us in this
6  case is the ongoing discovery obligations, including the
7  order about the ongoing discovery obligations pursuant or
8  that are meant to provide insight into the, you know,
9  enforcement of the preliminary injunction or the ongoing
10 compliance with that.  And those -- that takes up a really
11 enormous amount of time to collect and review documents on
12 an ongoing basis every three weeks, every couple of weeks,
13 then provide them over.
14     And, so, there's just -- there are -- there are aspects
15 of this case that are different than your document heavy
16 case that has a beginning and end date where you can focus
17 within that time period and you're not regularly going back
18 to the -- really to the well to go and pull more documents
19 for the proceeding week that were created relevant to the
20 litigation.
21     So, this has aspects to it that I think are a little
22 different than -- you know, than your kind of run-of-the-
23 mill complex case with a lot of documents.  And, so, that
24 was -- that was part of the reason why we -- you know, why
25 we did request that year.

1    Additionally, we've had such intense motion practice
2 already in this case.  I mean, I would compare it to my
3 experiences in summary judgment in prior cases, and we did
4 that right on the heels of agreeing to terms and custodians
5 and starting the discovery in earnest.  And, so, we were,
6 unfortunately, you know, taken off that for a period of time
7 and have picked it back up.
8    One thing that is a little concerning to me is that the
9 Plaintiffs have indicated that they intend to renew their
10 motion to enforce, and I'm just looking down the road
11 knowing what it took to -- to have our team be able to
12 respond to that and the effort that it did take and how much
13 resource it took away from -- from the discovery of the
14 case.
15    And, so, it's -- it's just -- it's -- it's hard to look
16 down the road on this case and see periods of time where
17 we're not going to have rather active motion practice that
18 we can focus entirely on discovery on.
19    So, this -- this case just has aspects I think that are
20 different than your other complex cases that I just wanted
21 to highlight.  So --
22         THE COURT:  Okay.  Well, let me speak to those --
23 those points.
24         MR. GEORGE:  Sure.
25         THE COURT:  With respect to the ongoing

1  collection, this is exactly the kind of place where I would
2  -- I think, you know, the excellent problem solving that
3  I've seen, you know, the City Attorney's Office handle in
4  other cases would be put to work here.  Just if you -- if
5  you know there's a collection that's going to happen over,
6  you know, the period of time for a little over a year, right
7  -- we now have trial October 2024 -- you know it's regular.
8  Putting things into place with those agencies to say, All
9  right, let's make this easier by putting procedures -- you
10 know, setting them up so that you don't have to go back to
11 collect.  You -- you already have something that's being
12 collected along the way.  Those are perfect for -- this
13 situation is perfect for those kinds of procedures, right.
14 So, we should be building in efficiencies, not dealing with
15 the same problems every time.  We don't have to reinvent the
16 wheel every time.  So, that's one.
17      On the motion work, I -- I hope the Plaintiffs got my
18 feedback, which is that, you know, sort of I didn't put it
19 in these terms but shock and awe, right, throwing big
20 motions together to -- to put before the Court will not be
21 effective if -- if you don't lay out the analysis, if you
22 don't give me the actual -- you know, if you are not laying
23 down what the law is and applying the facts to the law.
24      So, any further motion work on this, you're -- you are
25 within your rights to do it, but I don't want to see that

1  kind of briefing again.  It's got to be, you know,
2  addressing what it is that you want me to do in -- in -- in
3  a substantive -- I guess what am I really trying to say?  I
4  didn't fully understand what it was that the -- the
5  inferences you wanted me to make, what the legal analysis
6  was.  You left that all open to interpretation.  It was not
7  useful.  So, I don't know if there's enforcement problems or
8  not.  There may be.  I didn't throw that possibility out.
9  That's why I denied it without prejudice, but you got to do
10 better.  Okay.
11      So, I hope -- you know, I will not look well -- will
12 not look well upon the Plaintiffs if I get another large
13 motion with a lot of evidence that's, you know, very
14 resource demanding that is of the same type, that doesn't
15 really lay out the substantive analysis.
16      Okay.  So, all right.  Is there anything further we
17 need to cover today?  Mr. George?
18          MR. GEORGE:  Nothing here, your Honor.
19          THE COURT:  Mr. Lee?
20          MR. LEE:  Nothing from me, your Honor.
21          THE COURT:  Okay.  Thank you very much.  We're
22 concluded -- oh, actually, I'm sorry.  We need to give you
23 your next CMC.  That's going to be January 17th, 2024 at
24 1:30 with your joint updated CMC statements due January
25 10th.

1      Now, I don't know whether it will be by Zoom or in
2 person because we are getting -- I think policies are being
3 set by Judicial Council of the Ninth Circuit and our
4 Judicial Conference of the United States.  We will have
5 further feedback on that soon.
6      So, I -- for now I'm setting it by Zoom, but that might
7 well have to change.  Okay.  All right.  Thank you all.
8           ALL:  Thank you, your Honor.
9      (Proceedings adjourned at 1:57 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

20

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct
4  transcript, to the best of my ability, of the above pages of
5  the official electronic sound recording provided to me by
6  the U.S. District Court, Northern District of California, of
7  the proceedings taken on the date and time previously stated
8  in the above matter.
9       I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14

15                          *[signature]*

16

17              Echo Reporting, Inc., Transcriber

18                   Monday, September 25, 2023

19

20

21

22

23

24

25