1   DAVID CHIU, State Bar #189542
    City Attorney
2   YVONNE R. MERÉ, State Bar #173594
    Chief Deputy City Attorney
3   WAYNE SNODGRASS, State Bar #148137
    Deputy City Attorney
4   EDMUND T. WANG, State Bar #278755
    KAITLYN M. MURPHY, State Bar #293309
5   MIGUEL A. GRADILLA, State Bar #304125
    JOHN H. GEORGE, State Bar #292332
6   ZUZANA S. IKELS, State Bar #208671
    STEVEN A. MILLS, State Bar #328016
7   Deputy City Attorneys
    City Hall, Room 234
8   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102-4682
9   Telephone:      (415) 554-4675 (Snodgrass)
                    (415) 554-3857 (Wang)
10                  (415) 554-6762 (Murphy)
                    (415) 554-3870 (Gradilla)
11                  (415) 554-4223 (George)
                    (415) 355-3307 (Ikels)
12                  (415) 355-3304 (Mills)
    Facsimile:      (415) 554-4699
13  E-mail:         wayne.snodgrass@sfcityatty.org
                    edmund.wang@sfcityatty.org
14                  kaitlyn.murphy@sfcityatty.org
                    miguel.gradilla@sfcityatty.org
15                  john.george@sfcityatty.org
                    zuzana.ikels@sfcityatty.org
16                  steven.mills@sfcityatty.org

17  Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO, et al.

18              UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20

21  COALITION ON HOMELESSNESS; TORO          Case No. 4:22-cv-05502-DMR (LJC)
    CASTAÑO; SARAH CRONK; JOSHUA
22  DONOHOE; MOLIQUE FRANK; DAVID            **NOTICE OF MOTION AND MOTION TO
    MARTINEZ; TERESA SANDOVAL;               STAY ALL PROCEEDINGS PENDING THE
23  NATHANIEL VAUGHN,                        SUPREME COURT'S DECISION IN *GRANTS
                                             PASS V JOHNSON*; MEMORANDUM OF
24          Plaintiffs,                      POINTS AND AUTHORITIES**

25          vs.                              Hearing Date:   February 21, 2024
                                             Time:           10:00 a.m.
26  CITY AND COUNTY OF SAN                   Place:          Courtroom 4 – 3rd floor
    FRANCISCO, et al.,                                       1301 Clay Street
27                                                           Oakland, CA 94612
            Defendants.
28                                           Trial Date:     October 1, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION TO STAY ........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................3

INTRODUCTION ...........................................................................................................3

RELEVANT BACKGROUND AND PROCEDURAL HISTORY..................................4

        A.     Plaintiffs' Complaint and Initial Disclosures................................4

        B.     *Johnson* I...........................................................................................5

        C.     Plaintiffs' Preliminary Injunction ..................................................5

        D.     SCOTUS Grant of Certiorari ...........................................................6

LEGAL STANDARD.......................................................................................................7

ARGUMENT ...................................................................................................................8

    I.     Plaintiffs Will Not be Harmed by a Several-Month Stay .........................8

    I.     San Francisco Will Suffer Hardship If Required to Litigate While *Johnson* Is Pending Before the Supreme Court ...................................................12

        A.     Continuing to Litigate Without Clarity on the Central Legal Issue Risks Wasting Enormous Public Resources ......................................12

        B.     The Court Cannot Avoid or Limit San Francisco's Hardship Through Bifurcation .................................................................................14

    II.    The Supreme Court's Decision in *Johnson* Will Address the Central Issue in This Litigation and a Stay Will Conserve the Court's Resources .........................16

CONCLUSION................................................................................................................19

1

2

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Alderman v. U. S.*
  394 U.S. 165 (1969)..................................................................................................11

*City of Grants Pass v. Gloria Johnson, et al.*
  U.S. Case No. 23-175 ....................................................................... *passim*

*CMAX, Inc. v. Hall*
  300 F.2d 265 (9th Cir. 1962) .............................................................................7, 16

*Coalition on Homelessness v. City and Cnty of S.F.*
  No. 23-15087, 2024 WL 125340 (9th Cir. Jan. 11, 2024)....................................9, 17

*Compare Am. Diabetes Ass'n v. United States Dep't of the Army*
  938 F.3d 1147 (9th Cir. 2019) ................................................................................10

*East Bay Sanctuary Covenant v. Trump*
  No. 18-CV-06810-JST, 2019 WL 1048238 (N.D. Cal. Mar. 5, 2019) ......................9

*Facebook, Inc. v. Duguid*
  141 S.Ct. 1163 (2021)..............................................................................................18

*Fed. Trade Comm'n v. Lending Club Corp.*
  No. 18-CV-02454-JSC, 2020 WL 4898136 (N.D. Cal. Aug. 20, 2020) ...........7, 12, 14, 16

*Grundstrom v. Wilco Life Ins. Co.*
  No. 20-CV-03445-MMC, 2023 WL 8429789 (N.D. Cal. Dec. 4, 2023).....................12, 14, 18

*Hilton v. Braunskill*
  481 U.S. 770 (1987)....................................................................................................7

*Hunt v. Wash. State Apple Advert. Comm'n*
  432 U.S. 333 (1977).................................................................................................11

*Johnson v. City of Dallas*
  61 F.3d 442 (5th Cir. 1995) .....................................................................................14

*Johnson v. City of Grants Pass*
  50 F.4th 787 (9th Cir. 2022) ..................................................................................5, 6

*Johnson v. City of Grants Pass*
  72 F.4th 868 (9th Cir. 2023) .....................................................................................6

*Knife Rights, Inc. v. Vance*
  802 F.3d 377 (2d Cir. 2015) ....................................................................................11

*Lal v. Capital One Financial Corp.*
  No. 16-6674-BLF, 2016 WL 282895 (N.D. Cal. Jan. 23, 2017) ................................................7

*Landis v. N. Am. Co.*
  299 U.S. 248 (1936) .......................................................................................... *passim*

*Larroque v. First Advantage Lns Screening Sols., Inc.*
  No. 15-CV-04684-JSC, 2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ......................................7, 16

*Lavan v. City of L.A.*
  693 F.3d 1022 (9th Cir. 2012) ............................................................................................11

*Lotus Vaping Techs., LLC v. U.S. FDA*
  73 F.4th 657 (9th Cir. 2023) ...............................................................................................10

*Martin v. City of Boise*
  920 F.3d 584 (9th Cir. 2019) ............................................................................... *passim*

*Matera v. Google Inc.*
  No. 15-CV-04062-LHK, 2016 WL 454130 (N.D. Cal. Feb. 5, 2016) ......................................18

*McElrath v. Uber Techs., Inc.*
  No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ...............................7, 9

*Meijer, Inc. v. Abbott Labs.*
  No. C 07-5985 CW, 2009 WL 723882 (N.D. Cal. Mar. 18, 2009) .........................................12

*Meras Eng'g, Inc. v. CH2O, Inc.*
  No. C-11-0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .........................................12

*Miller v. Alabama*
  567 U.S. 460 (2012) ...........................................................................................................11

*Nguyen v. Marketsource, Inc.*
  No. 17-CV-02063-AJB-JLB, 2018 WL 2182633 (S.D. Cal. May 11, 2018) ....................12, 14

*Nicholson v. City of L.A.*
  935 F.3d 685 (9th Cir. 2019) ..............................................................................................11

*Phan v. Transamerica Premier Life Ins. Co.*
  No. 20-CV-03665-BLF, 2023 WL 7597464 (N.D. Cal. Nov. 13, 2023) ...........................16, 18

*Rakas v. Illinois*
  439 U.S. 128 (1978) ...........................................................................................................11

*Ramirez v. Trans Union, LLC*
  No. 12-CV-00632-JSC, 2015 WL 6159942 (N.D. Cal. June 22, 2015) ....................................9

*Robledo v. Randstad US, L.P.*
  No. 17-CV-01003-BLF, 2017 WL 4934205 (N.D. Cal. Nov. 1, 2017) ................................7, 14

*Saunders v. Sunrun, Inc.*
   No. 19-CV-04548-HSG, 2020 WL 6342937 (N.D. Cal. Oct. 29, 2020) ................................18

*U.S. v. Baker*
   58 F.4th 1109 (9th Cir. 2023) .............................................................................................11

*Whitmore v. Arkansas*
   495 U.S. 149 (1990) ............................................................................................................11

**Constitutional Provisions**
U.S. Const., article III ................................................................................................8, 10, 18

U.S. Const., amend. IV .....................................................................................5, 10, 11, 14

U.S. Const., amend. VIII.................................................................................... *passim*

**Federal Statutes**
42 U.S.C. § 1983 .......................................................................................................11

42 U.S.C. §§ 12101, et seq. (Americans with Disabilities Act) ................................5, 15

42 U.S.C. §§ 12131, et seq. (Title II of the Americans with Disabilities Act) ...........................15

**State Statutes & Codes**
Cal. Gov. Code § 11135 ...........................................................................................15

**Other References**
Bob Egelko, *S.F. still restricted in sweeps of homeless encampments, court rules*,
   S.F. Chronicle (Jan. 11, 2024) https://www.sfchronicle.com/politics/article/ninth
   -circuit-homeless-sweeps-18602996.php ...............................................................10

Bob Egelko, *With homelessness case, SCOTUS could make broader changes to 'cruel and
   unusual' standard*, S.F. Chronicle (Jan. 14, 2024) https://www.sfchronicle.com/politics
   /article/scotus-eighth-amendment-18605733.php...................................................13

**NOTICE OF MOTION AND MOTION TO STAY**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT, on Wednesday, February 21, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco" or the "City") will and hereby do move this Court for an order staying proceedings, pending the U.S. Supreme Court's issuance of its ruling in the matter entitled, *City of Grants Pass v. Gloria Johnson, et al.*, U.S. Case No. 23-175.

This motion is based on the critical role *Johnson* and its predecessor opinion *Martin v. Boise* play in supporting Plaintiffs' claims and theories of liability against San Francisco. As a result, the requested stay poses no harm to Plaintiffs, avoids substantial harm to San Francisco, and conserves both Court and taxpayer resources. San Francisco therefore requests the Court stay all deadlines in the scheduling order until no fewer than 30 days after the Supreme Court issues an opinion in *Johnson*.

/ / /

/ / /

/ / /

1      The motion is based on the notice of motion and motion, the memorandum of points and

2 authorities in support thereof, the declarations, papers and other evidence submitted, and any other

3 matters the Court deems appropriate.

4

5 Dated:  January 17, 2024

6                                  DAVID CHIU

7                                  City Attorney
                                 YVONNE R. MERÉ

8                                  WAYNE SNODGRASS
                                 EDMUND T. WANG

9                                  KAITLYN MURPHY
                                 MIGUEL A. GRADILLA

10                                  JOHN H. GEORGE
                                 ZUZANA S. IKELS

11                                  STEVEN A. MILLS
                                 Deputy City Attorneys

12

13                          By:  s/John H. George

14                             JOHN H. GEORGE

15                          Attorneys for Defendants

16                          CITY AND COUNTY OF SAN FRANCISCO; SAN
                         FRANCISCO POLICE DEPARTMENT; SAN

17                          FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                         SAN FRANCISCO DEPARTMENT OF

18                          HOMELESSNESS AND SUPPORTIVE HOUSING;
                         SAN FRANCISCO FIRE DEPARTMENT; SAN

19                          FRANCISCO DEPARTMENT OF EMERGENCY
                         MANAGEMENT

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Since Plaintiffs filed their complaint, the central issue animating this litigation has been whether San Francisco's enforcement of laws prohibiting sitting, sleeping, lying, and/or camping in public violates Plaintiffs' right to be free from cruel and unusual punishment. The City's enforcement of those laws, usually during encampment resolutions conducted by its HSOC teams, was at the heart of Plaintiffs' preliminary injunction motion, the Court's Preliminary Injunction Order, the City's appeal of that Order, Plaintiffs' motion to enforce the Preliminary Injunction, and the parties' discovery to date. Now, through its grant of certiorari in *Grants Pass v. Johnson*, the Supreme Court will decide the central issue in this case—that is, whether or under what circumstances enforcement of such laws constitutes cruel and unusual punishment. The Court should stay this case pending the Supreme Court's *Johnson* decision to ensure that neither the parties nor the Court spend the next several months—which are going to be the most intensive period in the case—litigating under an uncertain legal framework and potentially wasting a huge amount of public resources chasing issues that may turn out to be wholly irrelevant. Under the circumstances, the prudent approach is to pause and wait further instruction from the high court.

Each stay factor—harm to the non-moving party, hardship to the moving party, and the preservation of judicial resources—strongly supports a stay of all proceedings in this case. First, Plaintiffs will not be harmed by a stay through the date of the Supreme Court's *Johnson* decision, which is expected by June of this year. Plaintiffs previously asked this Court to enter a schedule setting trial in April 2025—more than six months after the current trial date, a time frame commensurate with the requested stay. Plaintiffs can also rely on the preliminary injunction, which remains in force and protects Plaintiffs from any alleged misconduct for the requested stay's duration. Plaintiffs face no personal harm from a stay because five of the seven individual Plaintiffs are currently housed.

Second, although San Francisco is not required to show hardship given the lack of harm to Plaintiffs, without a stay the City will be forced to waste enormous public resources. Fact discovery

ends May 14, expert discovery ends June 11, and dispositive motions must be filed by no later than June 6—all before the date the Supreme Court is likely to issue an opinion in *Johnson*. Unless the case is stayed, San Francisco will have to review and produce hundreds of thousands of potentially irrelevant pages of records; take and defend more than two-dozen depositions, without knowing which deponents are likely to possess legally relevant information or what questions and answers may be useful; obtain and pay for expert reports from experts whose opinions may be useless; and draft and defend against possibly futile dispositive motions. The Supreme Court's term typically ends in June. A brief stay until the Supreme Court rules on *Johnson* avoids this costly and vain adventure. It also avoids the risk that San Francisco may have to undertake the burden and expense of completing discovery and dispositive briefing twice if the Supreme Court changes the underlying standards via their review of *Johnson*.

Finally, because the Supreme Court is set to decide the key question in this case, the decision will, without a doubt, clarify the issues, proof, and legal questions relevant here. The decision will shape every aspect of the case, including the relevance of demanded documents, the experts' opinions and testimony (if even necessary), the law governing dispositive motions, the parties' proof at trial, and whether and what relief is available.

This Court should stay all proceedings pending the Supreme Court's *Johnson* decision.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiffs' Complaint and Initial Disclosures

On Sept. 27, 2022, Plaintiffs filed a complaint against San Francisco alleging, among other things, that the City's enforcement of its ordinances restricting aspects of sleeping, lodging, and camping on public property was in violation of the Eighth Amendment's prohibition on cruel and unusual punishments. ECF No. 1.

Although Plaintiffs include 13 causes of action in their complaint, the through line and thrust of their allegations is that San Francisco conspired to criminalize homelessness in violation of the Eighth Amendment as interpreted by *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019*)* and its progeny. *See* ECF No. 1 (claims 1-2). Plaintiffs contend San Francisco cannot enforce generally applicable laws against persons sitting, sleeping, or lying in public spaces in the course of conducting

encampment resolutions unless San Francisco could provide housing for all persons experiencing homelessness in San Francisco pulling this requirement from Ninth Circuit case law. They then allege Fourth Amendment property seizure and destruction claims, claims under the Americans with Disabilities Act ("ADA"), claims under the state-created danger doctrine, and conspiracy claims predicated on those allegedly unlawful law enforcement efforts. *See* ECF No. 1 (claims 3-6, 9, 11-13).

Plaintiffs initial disclosures indicate they expect the same witnesses to testify about both their Eighth Amendment cruel and unusual punishment claims and their remaining claims, including their Fourth Amendment property claims. George Decl. ¶ 8 Ex. G (identifying witnesses as having information relevant to "property destruction and criminalization of involuntary homelessness"). Plaintiffs' discovery requests follow the same course and seek documents related to San Francisco's policies regarding homelessness generally, without distinguishing between alleged Eighth Amendment criminalization and Fourth Amendment property destruction. George Decl. ¶¶ 6-4 Exs. E-F.

**B.      *Johnson* I**

The day after Plaintiffs filed suit, the Ninth Circuit entered the original panel decision in *Johnson*, which, applying *Martin*, affirmed both the certification of a class of all "involuntarily homeless persons" and a permanent injunction against the City of Grants Pass's enforcement of ordinances relating to sitting, sleeping, and lying. *Johnson v. City of Grants Pass*, 50 F.4th 787, 798 (9th Cir. 2022) (*Johnson I*).

**C.      Plaintiffs' Preliminary Injunction**

Along with their initial complaint, Plaintiffs sought a preliminary injunction asking the Court to enjoin the City from enforcing or threatening to enforce state and local sit, lie, and sleep laws against the involuntarily homeless. Plaintiffs cited *Johnson* as reaffirming *Martin*, together serving as a central basis for any entry of an injunction against San Francisco. *See* ECF No. 48 at 13 n.10 ("Plaintiffs' challenge does not target governmental conduct beyond the bounded holdings of *Martin* or *Johnson*" and "is limited only to the unlawful enforcement of statutes that criminalize the involuntary status of being homeless."). After briefing and a hearing during which the applicability of *Johnson* was a central focus, this Court issued a preliminary injunction against San Francisco on December 23, 2022, prohibiting it from enforcing six state and local laws. The Court held Plaintiffs

were likely to prevail on their Eighth Amendment claim relying extensively on the reasoning in *Johnson* and *Martin*. ECF No. 65 at 42 ("Plaintiffs are likely to succeed on the merits of their claim that Defendants violate the Eighth Amendment by imposing or threatening to impose criminal penalties against homeless individuals for 'sitting, sleeping, or lying outside on public property' without giving them the option of sleeping indoors. *See Martin*, 920 F.3d at 617; *Johnson*, 50 F.4th at 794." *Id.* at 42.

As Plaintiffs recognize, much of the language in the Court's preliminary injunction order quotes *Johnson* verbatim. *See e.g.,* ECF No. 105, 9:5-7 ("In fact, the injunction is precisely and narrowly tailored to the exact language most recently endorsed by the Ninth Circuit in *Johnson.*").

### D.    SCOTUS Grant of Certiorari

Since the Court issued the preliminary injunction, the legal authority underpinning it and the legal crux of Plaintiffs' entire case has been called into question. First, the Ninth Circuit, in denying rehearing en banc of *Johnson* by a vote of 14 to 13, amended and superseded the original *Grants Pass* decision cited by this Court in its preliminary injunction, *Johnson v. City of Grants Pass*, 72 F.4th 868, 938 (9th Cir. 2023) (*Johnson II*) (Smith, J., dissenting from the denial of rehearing en banc). Second, and critically, on January 12, 2024, the United States Supreme Court agreed to hear a challenge to the Ninth Circuit's decision in *Johnson*. George Decl. ¶ 2. Specifically, the Court agreed to consider whether enforcement of laws prohibiting sitting, sleeping, lying, or camping in public constitutes cruel and unusual punishment under the Eighth Amendment—the very proposition for which Plaintiffs cite *Johnson* here. *Id.* ¶ 2, Ex. A at i. The question presented in *Johnson* squarely calls into question the holdings of not only *Johnson*, but also *Martin*:

> In *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), the Ninth Circuit held that the Cruel and Unusual Punishments Clause prevents cities from enforcing criminal restrictions on public camping unless the person has 'access to adequate temporary shelter.' *Id.* at 617 & n.8. In this case, the Ninth Circuit extended *Martin* to a classwide injunction prohibiting the City of Grants Pass from enforcing its public-camping ordinance even though civil citations. That decision cemented a conflict with the California Supreme Court and the Eleventh Circuit, which have upheld similar ordinances, and entrenched a broader split on the application of the Eighth Amendment to purportedly involuntary conduct. The Ninth Circuit nevertheless denied rehearing en banc by a 14-to-13 vote.

> The question presented is:

Does the enforcement of generally applicable laws regulating camping on public property constitute 'cruel and unusual punishment' prohibited by the Eighth Amendment?

*Id*.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In determining whether to grant a stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  To weigh the competing interests, courts examine three factors: "[1] the possible damage which may result from the granting of a stay; [2] the hardship or inequity which a party may suffer in being required to go forward; and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[1]  *Id.* at 268.

"[W]here the question presented before the Supreme Court is squarely implicated in a case, a stay is warranted."  *Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-CV-02454-JSC, 2020 WL 4898136, at *4 (N.D. Cal. Aug. 20, 2020) (internal quotation marks and citation omitted).  Accordingly, where an issue significant to the litigation could be affected by a pending Supreme Court case, courts in this District regularly stay all proceedings pending resolution.  *See, e.g.*, *Lending Club Corp.*, 2020 WL 4898136, at *4; *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, at *6 (N.D. Cal. Nov. 1, 2017); *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *7 (N.D. Cal. Mar. 30, 2017); *Larroque v. First Advantage Lns Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 39787, at *3 (N.D. Cal. Jan. 4, 2016).

---

[1] Where "a party seeks to stay . . . pending the resolution of another action," as here, the *Landis* factors govern.  *Lal v. Capital One Financial Corp.*, No. 16-6674-BLF, 2016 WL 282895, at *2-3 (N.D. Cal. Jan. 23, 2017) (rejecting application of factors set out in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017).

**ARGUMENT**

**I.     Plaintiffs Will Not be Harmed by a Several-Month Stay**

Here, the first factor—possible damage from a stay to the non-moving party—weighs heavily in favor of a stay.  Plaintiffs will not be harmed by a stay pending the Supreme Court's disposition of *Johnson*, which is expected to be argued and decided this Term, for four reasons.  George Decl. ¶ 2.  First, Plaintiffs have already *requested* a trial in late April 2025—six months after the present trial date—and have therefore foreclosed any argument that they will be harmed by a potentially shorter stay.  ECF No. 188 at 8-9.  Second, Plaintiffs have the benefit of a preliminary injunction that will remain in place during any stay, and beyond, that prohibits the alleged harmful conduct, and that provides much of the relief Plaintiffs pray for if successful at trial.  Third, five of the seven individual plaintiffs are housed, and have been for months or years, and there is no evidence that they will be subject to any of Defendants' alleged misconduct (which is prohibited by the preliminary injunction in any event) during the pendency of a stay or after.  Fourth, this is not a class action, and because none of the Plaintiffs have established an Article III injury-in-fact, they cannot demonstrate they will be harmed by a pause in the litigation—especially one that may be shorter than what they have already requested and one made in anticipation of obtaining the Supreme Court's critical guidance on dispositive issues of law in this matter.

The Supreme Court set all briefing and arguments in *Johnson* for this term and is very likely to issue a decision by the end of the term in June 2024, approximately six months from now.  George Decl. ¶ 2.  Plaintiffs have already asked this Court to *grant* a delay of six months, and cannot now claim that the same or shorter extension will harm them.  On August 28, 2023, the parties jointly requested this Court grant a stipulated schedule extension and set trial for April 21, 2025, over six months after the October 1, 2024 trial date the Court ultimately imposed.  ECF Nos. 182 at 2-3; 183; 191 at 1.  Plaintiffs were represented by well-qualified counsel in executing the stipulation, indicating that the stipulation was in their clients' interests.  Plaintiffs further disclaimed any harm from a several-month stay when, in the course of the parties' January 17, 2024 meet and confer, they offered a 90-day extension of all deadlines to allow for the Supreme Court's decision in *Johnson*.  George Decl. ¶ 15.  Not only have Plaintiffs disclaimed any harm of a several-month stay through their

request, but the likely stay here is less than half the length that courts in this district regularly find will not harm plaintiffs. *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015) (granting stay where "the [relevant] decision will likely be issued within a year per the Supreme Court's customary practice"); *McElrath*, 2017 WL 1175591, at *6 (granting stay where "it does not appear that a decision on the merits is more than a year away").

Even if Plaintiffs had not disclaimed any harm from a stay—which they have—the current preliminary injunction provides more than adequate protection through trial, regardless of the requested stay, and secures the majority of the relief Plaintiffs seek. As the court held when granting a stay pending appeal of a preliminary injunction in *East Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2019 WL 1048238, at *2 (N.D. Cal. Mar. 5, 2019), "Plaintiffs are unlikely to suffer harm if the Court stays these proceedings because the preliminary injunction preventing Defendants from enforcing the Rule will remain in place." The same is true here. San Francisco is enjoined from threatening to enforce or enforcing the laws identified in the injunction to prohibit involuntarily homeless people from sitting, lying, or sleeping on public property, and is also enjoined from violating the DPW bag and tag policy. ECF Nos. 65 at 50; 135 at 100-101 (Second Amended Complaint praying for substantially similar injunctive relief). One plaintiff, Toro Castaño, has said the injunction makes him feel his "personal safety and property are protected by law." ECF No. 168-18 at 12. And, in its decision affirming in part and remanding in part, the Ninth Circuit held that "[t]o prevent harm to Plaintiffs, the current preliminary injunction remains intact while the district court reconsiders its scope and makes any necessary clarifications." *Coalition on Homelessness v. City and Cnty of S.F.*, No. 23-15087, 2024 WL 125340, at *1 (9th Cir. Jan. 11, 2024.) The City intends to request the Ninth Circuit stay the mandate and extend the time to file a petition for rehearing en banc until after the Supreme Court decides *Johnson.* George Decl. ¶ 13. A stay at the Ninth Circuit would prevent any modification to the preliminary injunction while the stay is in place. As in *East Bay Sanctuary Covenant*, Plaintiffs will not be harmed by a stay. In fact, Plaintiffs' comments to the press indicate that they believe the City has been abiding by the injunction and therefore that the injunction is providing Plaintiffs the relief they seek. *See* George Decl. ¶ 4, Ex. C, Bob Egelko, *S.F. still restricted in sweeps of homeless encampments, court rules*, S.F. Chronicle (Jan. 11, 2024)

https://www.sfchronicle.com/politics/article/ninth-circuit-homeless-sweeps-18602996.php ("John Do . . . noted that the ruling was issued on the same day that the city reported increasing shelter placements and an overall reduction in encampments. 'It shows that San Francisco can do both,' Do said. 'It can respect the rights of unhoused individuals, not criminalize them, while at the same time addressing encampments.'").[2]

Plaintiffs are even further removed from any chance of harm due to a stay because five of the seven individual plaintiffs in this case are housed, and therefore are not even exposed to the risk of harm from the alleged unlawful conduct, absent the preliminary injunction. George Decl. ¶ 14. There is no evidence that any of these five Plaintiffs will be involuntarily homeless during the pendency of a stay or before trial. Of course, even if there was, the preliminary injunction prevents San Francisco from enforcing sit, sleep, and lie laws against *all* involuntarily homeless people and requires the City to follow the DPW bag and tag policy whenever it applies.[3]  And although the Coalition on Homelessness ("Coalition") has refused to identify its members in response to San Francisco's discovery requests, including the identify of those members on which it relies to assert associational standing, those members' rights are protected by the preliminary injunction, thereby eliminating any harm to the Coalition from a stay based on association with those members. George Decl. ¶ 6.

The lack of harm to Plaintiffs from a stay is further confirmed by the speculative nature of any constitutionally-sufficient injury required to support Article III standing. As explained in Defendants' motion to dismiss (ECF No. 112 at 4-8), the individual plaintiffs lack standing because they have not shown they are at immediate risk of the alleged unconstitutional conduct and only one, Castaño, even alleges he was cited for violating a law at issue—after refusing a shelter offer (ECF No. 9-4 at 6). The Court did not address these arguments. *See* ECF No. 128 at 5. The Coalition, which claims organizational and associational standing, can establish neither.[4]  "To establish standing to challenge

---

[2] The Court may take judicial notice of Plaintiffs' counsel's public statements. *See Lotus Vaping Techs., LLC v. U.S. FDA*, 73 F.4th 657, 677 (9th Cir. 2023) (taking notice of press release).

[3] Homeless individuals who claim the City improperly seized their property in violation of the Fourth Amendment are also free to pursue, as they already do in small claims court, their own individual actions during the pendency of any stay.

[4] Organizational standing and associational standing are distinct concepts. *Compare Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) (setting out the parameters of organizational standing) with *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333,

governmental intrusions under the Fourth Amendment, an individual must demonstrate their reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized." *U.S. v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (citing *Lavan v. City of L.A.*, 693 F.3d 1022, 1027-1029 (9th Cir. 2012)). The Coalition has no cognizable Fourth Amendment interest at stake in this case, because there is no dispute that the Coalition as an organization has not been searched or seized. Since the Coalition has no standing for an individual claim, it must demonstrate associational standing to sue on behalf of its members as a matter of law. But that claim to associational standing fails outright because the Supreme Court has repeatedly held that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978) (quoting *Alderman v. U. S.*, 394 U.S. 165, 174 (1969)) (collecting cases); *see also Nicholson v. City of L.A.*, 935 F.3d 685, 695-696 (9th Cir. 2019) (recognizing that friends of a shooting victim "would not have standing to raise a Fourth Amendment claim on his behalf"); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) ("[I]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983" (citation omitted)).

A claim by the Coalition premised on the Eighth Amendment fares no better. "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees *individuals* the right not to be subjected to excessive sanctions.'" *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (emphasis added); *see also Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990). The Coalition cannot demonstrate that it has any cognizable legal right to challenge the City's laws under the Eighth Amendment. Setting aside that no identified member of the Coalition has standing for the reasons San Francisco previously raised, the individual nature of the claim at issue strongly compels prudential limits to associational standing as well for a novel Eighth Amendment claim. To the extent the Plaintiffs lack standing to pursue their claims, they cannot show they will be harmed by the requested stay.

---

343 (1977) (setting out the parameters for associational standing and underscoring a prudential limit where individual participation is required in the lawsuit).

In short, Plaintiffs have already told this Court that they will not be harmed during the time period that a stay pending the Supreme Court's decision in *Johnson* would be in place and, even if they had not made their position clear, a brief stay will not harm them.

## I.   San Francisco Will Suffer Hardship If Required to Litigate While *Johnson* Is Pending Before the Supreme Court

"Under *Landis*, a party seeking a stay need make such a showing of hardship and inequity only if the party opposing the stay first demonstrates that there is a fair possibility that a stay will cause it injury." *Lending Club*, 2020 WL 4898136, at *2 (cleaned up); *see Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at *4 (N.D. Cal. Jan. 14, 2013) ("Before Defendant is obligated to show a clear case of hardship . . . Plaintiffs must first make out a fair possibility that they will be harmed by the stay."). As set out above, Plaintiffs cannot demonstrate that staying the proceedings until the Supreme Court decides *Johnson*—likely no later than June 2024—will injure them. The City therefore need not make a showing of hardship or inequity. Even so, such hardship is plainly present because "both parties, in the absence of a stay, may be required to unnecessarily expend time and resources." *Grundstrom v. Wilco Life Ins. Co.*, No. 20-CV-03445-MMC, 2023 WL 8429789, at *4 (N.D. Cal. Dec. 4, 2023). "[C]ourts have recognized such 'wasted' effort constitutes hardship under *Landis*." *Id.*; *see Nguyen v. Marketsource, Inc.*, No. 17-CV-02063-AJB-JLB, 2018 WL 2182633, at *7 (S.D. Cal. May 11, 2018) (granting stay because "it would prove to be 'an extraordinary waste of time and money' to continue litigating this case 'only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply") (quoting *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009)).

### A.   Continuing to Litigate Without Clarity on the Central Legal Issue Risks Wasting Enormous Public Resources

Under the current schedule, all key discovery and dispositive briefing deadlines will pass while *Johnson* is pending before the Supreme Court. Between now and the end of the expert discovery period in June 2024, which coincides with the end the Supreme Court's October 2023 Term and thus the last expected date of a decision, the parties will engage in significant and costly litigation. San Francisco is still in the process of reviewing tens of thousands of custodial and non-custodial

documents and has recently served document requests on some of the non-parties who have supported Plaintiffs' allegations of unconstitutional activity, which may become moot. George Decl. ¶ 10. The parties have not taken any depositions, so all must be taken in the coming months before the May 14, 2024 fact discovery cutoff. George Decl. ¶ 11. Expert reports and rebuttals to initial reports must also be prepared, paid for, and disclosed in May 2024 and all experts must be deposed by June 11, 2024, again all without certainty about what legal standard will be applicable after the Supreme Court's review of *Johnson* and therefore no clear indication of which deponents, experts, or opinions will be necessary or relevant. And because the last day to hear dispositive motions is July 11, the parties must draft and file the motions by, at the latest, early June to ensure they are heard by that date, which would require drafting and briefing while *Johnson* is pending. George Decl. ¶ 2. As Plaintiffs' counsel agreed on the parties' January 17, 2024 meet and confer, it makes no sense to brief dispositive issues before the Supreme Court's decision. George Decl. ¶ 15.

The scope and necessity of all of this litigation activity depends heavily on the Ninth Circuit's interpretation of the Eighth Amendment and the *Martin* and *Johnson* holdings, which are now squarely before the Supreme Court and will be upended, if not outright reversed. Until the Supreme Court rules, the parties cannot be sure of the applicable legal standard and therefore cannot know what information will be relevant or what theory of the case to pursue. For example, if the Court agrees with the Ninth Circuit judges who dissented from the en banc denials in *Martin* and *Johnson* and holds that the "Cruel and Unusual Punishments Clause of the Eighth Amendment does not impose substantive limits on what conduct a state may criminalize," *Martin*, 920 F.3d at 599, then the documents and testimony (fact and expert) related to shelter offers, shelter capacity, enforcement policies, incident reports, CADs, SFPD training, and many other categories of information demanded in this case will be irrelevant.[5] This information remains irrelevant even if the Court adopts the Fifth Circuit's holding that a criminal conviction is required before an Eighth Amendment challenge

---

[5] Plaintiffs agree. *See* George Decl. ¶ 5, Ex. D, Bob Egelko, *With homelessness case, SCOTUS could make broader changes to 'cruel and unusual' standard*, S.F. Chronicle (Jan. 14, 2024) https://www.sfchronicle.com/politics/article/scotus-eighth-amendment-18605733.php ("'One of the potential questions the Supreme Court will be reconsidering is whether or not the Eighth Amendment has substantive limitations on what can be criminalized,' attorney John Do of the American Civil Liberties Union of Northern California said Friday.").

because there is no evidence that any of the Plaintiffs (or anyone else for that matter) has been convicted of sitting, lying, or sleeping on public property in San Francisco.  George Decl. ¶ 2, Ex. A. at 17-18 (citing *Johnson v. City of Dallas*, 61 F.3d 442 (5th Cir. 1995)).  The same is true of depositions.  If the entire action is not stayed, these efforts will almost certainly have to be duplicated because, as Plaintiffs' initial disclosures state, the majority of disclosed witness are expected to testify about "property destruction and criminalization of involuntarily homelessness."  George Decl. ¶ 8, Ex. G.

If San Francisco is required to continue expensive and burdensome litigation despite the uncertain legal standard central to the case, it will have to spend thousands of hours and huge sums of public funds reviewing and producing potentially irrelevant documents, taking and defending depositions without knowing which deponents have relevant knowledge or what questions and answers may be useful, working with experts whose expensive testimony may be needless, and drafting and defending against dispositive motions that may well be rendered obsolete by the end of June 2024.  Without a stay, San Francisco in practice risks paying for its own *and* Plaintiffs' unnecessary litigation costs, or waste further effort deciphering and challenging which costs were necessary, because Plaintiffs seek fees for the three law firms representing them.  ECF No. 135 at 102.

If the Supreme Court rules as described above, all of this effort and taxpayer money will be wasted.  As many courts have held, this waste "constitutes hardship under *Landis*" and warrants a stay. *Grundstrom*, 2023 WL 8429789 at *4; *see, e.g.*, *Lending Club*, 2020 WL 4898136 at *3 (finding "many cases emphasize the expenditure of party and judicial resources as grounds for granting a stay" and collecting cases); *Robledo*, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017) ("Denying the stay at this juncture risks forcing the parties to expend resources that could have been avoided."); *Nguyen*, 2018 WL 2182633 at *7 "granting a stay will conserve judicial resources that would otherwise be unnecessarily expended").

### B.    The Court Cannot Avoid or Limit San Francisco's Hardship Through Bifurcation

Bifurcating the case and staying only the Eighth Amendment portion is not possible because Plaintiffs' pleading and discovery strategy inexorably link each of their claims, such as their Fourth Amendment property claims.  The clearest example is Plaintiffs' conspiracy claim.  Plaintiffs plead a

conspiracy claim alleging the defendant City departments agreed with each other "to violate the constitutional rights of unhoused people by arresting, citing, fining, and destroying the property of unhoused persons," which combines Plaintiffs' Fourth and Eighth Amendment theories of liability. ECF No. 135 ¶ 333.  It would be impossible to continue with Plaintiffs' conspiracy claims while the Eight Amendment questions are pending.  Plaintiffs' ADA claims also do not neatly cleave on Fourth and Eighth Amendment grounds, and instead mix allegations based on Fourth Amendment property seizure and Eighth Amendment code enforcement.  *See id.,* ¶324 (ADA claim alleging the City discriminates against the unhoused with disabilities "by arresting, citing, fining, and seizing the property of unhoused person" without shelter capacity); *id.* ¶ 328 (state law ADA analog claim alleging "Cal. Gov. Code § 11135 is intended to prohibit all forms of discrimination prohibited under Title II of the Americans with Disabilities Act, and where possible, to be more protective. . .").  Even Plaintiffs' Fourth Amendment claim for unreasonable search and seizure itself assumes that the City's seizure of an unhoused person's property was unreasonable because it was part of the unlawful enforcement of one of the suspect civil and criminal statutes.  *See id*., ¶ 281 (Fourth amendment claim alleging the City has a policy of "conducting . . . property seizures . . . pursuant to anti-lodging and sleeping laws that are unconstitutional as applied to unhoused individuals because Defendants do not provide adequate shelter resources"); *id* ¶ 285 (California analog to Fourth Amendment claim alleging the City "have a custom and practice of conducting . . . property seizures . . . pursuant to anti-lodging and sleeping laws that are unconstitutional as applied to unhoused individuals because Defendants do not provide adequate shelter resources").  In short, Plaintiffs interwove their Fourth and Eighth Amendment theories of liability too closely to separate them now and seek a bifurcated stay without inviting unnecessary waste and duplication.

Plaintiffs' discovery requests proceed in much the same way.  Plaintiffs' document requests overlap with both their Fourth and Eighth Amendment theories of liability.  Many of the 68 document requests implicate both Plaintiffs' Fourth and Eighth Amendment theories of liability in a single request.  For example, Plaintiffs seek all documents:

- "relating to your coordination, planning, preparation, conduct at, and execution of your response to a homeless encampment," (RFP 4);

- "relating to any encounters, interactions, or incidents involving your employees and one or more homeless persons or a homeless encampment," (RFP 5);

- "relating to the Healthy Street Operations Center ("HSOC")" (RFP 6);

- "relating to sweep operations or HSOC encampment resolutions," (RFP 7); and

- "relating to your formal or informal policies, practices, and procedures for responding to or addressing homeless encampments in the City and county of San Francisco" (RFP 9)

George Decl. ¶ 6, Ex. E. Plaintiffs' requests cannot be neatly separated into those that relate to the Eighth Amendment and those that do not. Allowing discovery as to any of the claims to go forward while *Johnson* is pending will cause the City hardship and likely lead to discovery disputes, both of which are properly avoided with a stay.

Although not required to establish any hardship, San Francisco face a very high risk of wasting limited public resources without a stay. This factor weighs strongly in favor of staying the case pending the Supreme Court's decision in *Johnson*.

## II.     The Supreme Court's Decision in *Johnson* Will Address the Central Issue in This Litigation and a Stay Will Conserve the Court's Resources

"Where a Supreme Court decision is 'squarely on point, the orderly course of justice [under *Landis*] likewise weighs in favor of a stay.'" *Lending Club Corp.*, 2020 WL 4898136 at *4 (citing *Larroque*, 2016 WL 39787 at *2). Here, the question at issue in *Johnson* – whether enforcement of laws prohibiting sitting, sleeping, lying, or camping in public constitutes cruel and unusual punishment under the Eighth Amendment – is central to this litigation and its resolution will undoubtedly impact "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law. . ." *CMAX, Inc.*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-255). The "Supreme Court decision" in *Johnson* is "squarely on point" to this case and staying the action to avoid potentially unnecessary rulings will conserve judicial resources. *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-CV-03665-BLF, 2023 WL 7597464, at *4 (N.D. Cal. Nov. 13, 2023) ("In determining whether the third factor weighs in favor of a stay, considerations of judicial economy are highly relevant.").

1    The primary focus of this litigation since the very start has been Plaintiffs' assertion that

2    Defendants, "through HSOC," have engaged in a City-wide conspiracy to "driv[e] unsheltered

3    residents out of town—or at least out of sight—in violation of their constitutional rights" by engaging

4    in "a custom and practice of citing, fining, and arresting—as well as threatening to cite, fine, and

5    arrest—unsheltered persons to force them to 'move along' from public sidewalks and parks." ECF

6    No. 1 at ¶ 5; *see id.* ¶6 (claiming this is all in violation of the Eighth Amendment, citing *Martin*); *see*

7    ECF No 135 ¶¶ 5, 6 (same allegations in SAC). The majority of Plaintiffs' motion for a preliminary

8    injunction and the resulting Order were dedicated to this allegation and each relied extensively on

9    Ninth Circuit precedent. *See* ECF Nos. 9 at 17-21; 65 at 35-42. Likewise, discovery has been

10   disproportionately focused on issues related to the alleged "conspiracy" to unconstitutionally displace,

11   cite, and arrest homeless people. For example, most of the ongoing discovery order (ECF No. 129)

12   addresses information related to this allegation (SFPD incident reports, DEM CADs, HSH shelter data,

13   and HSOC information) and many of Plaintiffs' requests for production and interrogatories have been

14   directed at HSOC operations and enforcement. George Decl. ¶¶ 6-7, Exs. E-F. Although the parties

15   have not yet provided expert reports, they too will likely focus extensively on issues related to

16   Plaintiffs' allegations of unconstitutional citations, arrests, and "move along" orders. In fact, four of

17   Dr. Herring's five opinions address the allegations of "criminalization" without adequate shelter. ECF

18   No. 9-1 at 9.

19   The Ninth Circuit also recognized the centrality of *Martin* and *Johnson* in ruling on the City's

20   appeal of the preliminary injunction. *See Coalition on Homelessness v. City and Cnty. of S.F.*, Case

21   No. 23-15087 (9th Cir. Jan. 11, 2024) ECF No. 89 (Opinion). The panel's reasoning rested squarely on

22   Johnson and Martin being controlling precedent. In its opinion, a majority of the Ninth Circuit panel

23   noted that the Court's decision in *Johnson* and *Martin* were binding precedent that the panel was not

24   free to reconsider, *id*. at 12, and concluding that the enjoined laws are "no narrower in scope than the

25   laws at issue in *Martin* and *Johnson*." *Id*. at 9. Indeed, the panel majority recognized that while a

26   grant of certiorari in *Johnson* could determine whether "both *Martin* and *Johnson* were wrongly

27   decided," in the meantime, the panel "remain[s] bound by *Martin* and *Johnson*, as does the District

28   Court." *Id*. at 12.

The Supreme Court's decision in *Johnson* will, without question, bear directly on the main issue in this litigation. As set out above, the decision will determine when the Eighth Amendment is implicated, if at all, when enforcing the laws at issue against homeless persons. The decision will shape every aspect of this case, including the scope and nature of discovery, the opinions and testimony offered by experts, the standard applicable to dispositive and other motions, the proof the parties will present at trial, and the availability and scope of the requested relief. As many other courts have ruled, the "orderly course of justice" factor strongly supports staying all proceedings when the Supreme Court is considering a question whose answer will impact the case—even when the decision will not dispose of the entire action or resolve every issue. *See Grundstrom*, 2023 WL 8429789 at *5 (cleaned up) (finding factor supported stay over plaintiff's objection that "no pending matter will eliminate the need for this matter to be resolved on its own" because the other decision would "provide binding, or at least instructive analysis on several points relevant to this Court's assessment of class certification"); *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-CV-03665-BLF, 2023 WL 7597464, at *4 (N.D. Cal. Nov. 13, 2023) ("this factor weighs heavily in favor of a stay" because "[e]ven if the class certification issues will not be automatically won or lost after the resolution [of the Ninth Circuit cases], major issues in this case will be clarified by a ruling"); *Saunders v. Sunrun, Inc.*, No. 19-CV-04548-HSG, 2020 WL 6342937, at *2 (N.D. Cal. Oct. 29, 2020) (third *Landis* factor supports stay because "a decision in *Duguid* will likely simplify the matter and inform the parameters of discovery"); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (third *Landis* factor supports stay because "regardless of which path the U.S. Supreme Court ultimately takes, [the decision] may provide substantial guidance as to what statutory violations (if any) confer Article III standing").

Here, each of the relevant factors weighs heavily in favor of staying this case until the Supreme Court provides its decision in *Johnson*. Plaintiffs have already told this Court a similar schedule will not harm them and, regardless, they have the protections of the preliminary injunction and are mostly housed and not subject to any of the challenged conduct. San Francisco, despite not needing to establish hardship, will have to expend significant time and public resources if the case is not stayed and face a significant risk that they will be wasted. Finally, this case could hardly be more impacted

1  by the decision in *Johnson* and staying the case will avoid the need to waste judicial resources

2  considering issues under legal precedent that may significantly change.

3  **CONCLUSION**

4        For the reasons stated above, the Court should stay all proceedings until 30 days after the

5  Supreme Court issues a decision in *Johnson*, order the parties to notify the Court within 10 days of a

6  decision, and set a case management conference within a reasonable time after being notified.

7

8

9  Dated:  January 17, 2024

10                                      DAVID CHIU
                                      City Attorney

11                                      YVONNE R. MERÉ
                                      WAYNE SNODGRASS

12                                      EDMUND T. WANG
                                      KAITLYN MURPHY

13                                      MIGUEL A. GRADILLA
                                      JOHN H. GEORGE

14                                      ZUZANA S. IKELS
                                      STEVEN A. MILLS

15                                      Deputy City Attorneys

16

17                            By:  s/John H. George

18                                  JOHN H. GEORGE

19                                  Attorneys for Defendants

20                                  CITY AND COUNTY OF SAN FRANCISCO; SAN
                                  FRANCISCO POLICE DEPARTMENT; SAN

21                                  FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                                  SAN FRANCISCO DEPARTMENT OF

22                                  HOMELESSNESS AND SUPPORTIVE HOUSING;
                                  SAN FRANCISCO FIRE DEPARTMENT; SAN

23                                  FRANCISCO DEPARTMENT OF EMERGENCY
                                  MANAGEMENT

24

25

26

27

28