1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3     Before The Honorable Donna M. Ryu, Magistrate Judge

4

5   COALITION OF HOMELESSNESS,      )
    et al.,                         )
6                                   )
                                    )
            Plaintiffs,             )
7                                   )
    vs.                             )   No. C 22-05502-DMR
8                                   )
    CITY AND COUNTY OF SAN          )
9   FRANCISCO, et al.,              )
                                    )
10          Defendants.             )
    _____)

11

12                                  Oakland, California
                                    Wednesday, January 17, 2024
13

14   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 1:48 - 2:21 = 33 MINUTES
15

APPEARANCES:
16

For Plaintiffs:
17                                  ACLU Foundation of Northern
                                      California
18                                  39 Drumm Street
                                    San Francisco, California
19                                    94111
                               BY:  JOHN THOMAS H. DO, ESQ.
20                                  WILLIAM S. FREEMAN, ESQ.

21                                  Lawyers' Committee for Civil
                                      Rights for San Francisco
22                                    Bay Area
                                    131 Steuart Street, Suite 400
23                                  San Francisco, California
                                      94105
24                             BY:  NISHA KASHYAP, ESQ.

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

```
 1   APPEARANCES:  (Cont'd.)

 2   For Defendants:
                             San Francisco City Attorney's
 3                              Office
                             Fox Plaza
 4                           1390 Market Street
                             Sixth Floor
 5                           San Francisco, California
                               94102
 6                      BY:  JOHN H. GEORGE, ESQ.
                             STEVEN A. MILLS, ESQ.
 7
     Transcribed by:          Echo Reporting, Inc.
 8                           Contracted Court Reporter/
                             Transcriber
 9                           echoreporting@yahoo.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    <u>Wednesday, January 17, 2024</u>                                      <u>1:48 p.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                                --oOo--

4          THE CLERK:  Calling civil case C-22-5502-DMR,

5    Coalition of Homelessness, et al., versus City and County of

6    San Francisco, et al.

7       Counsel, please state your appearances starting with

8    the Plaintiffs' attorneys first.

9          MR. DO (via Zoom):  (Inaudible).

10          THE COURT:  Mr. Do, I see that you're speaking,

11   but I can't hear you.  Okay.

12          MR. FREEMAN (via Zoom):  I can get us rolling,

13   your Honor.  John Do and William Freeman, ACLU Foundation of

14   Northern California, for the Plaintiffs.

15          THE COURT:  Good afternoon, Mr. Do and Mr.

16   Freeman.

17          MS. KASHYAP (via Zoom):  Nisha Kashyap with

18   Lawyers' Committee for the Plaintiffs.

19          THE COURT:  Ms. Kashyap.

20          MR. DO:  And if I may test this?  Are you able to

21   hear me now, your Honor?

22          THE COURT:  I can hear you now.  Thank you, Mr.

23   Do.

24          MR. DO:  All right.

25          MR. GEORGE (via Zoom):  Good afternoon, your

4

1  Honor.  John George from the San Francisco City Attorney's

2  Office on behalf of Defendants.

3          THE COURT:  Mr. George.

4          MR. MILLS (via Zoom):  Good afternoon, your Honor.

5  Steven Mills on behalf of the Defendants, with the San

6  Francisco City Attorney's Office.

7          THE COURT:  Mr. Mills.  Good afternoon to all of

8  you.

9      Well, things sure were busy last week, so let's go over

10  those events.  I want to start by talking about the Ninth

11  Circuit's memorandum disposition, that issued on January

12  11th, that remanded the matter, at least for three issues,

13  for clarification on the preliminary injunction, but

14  otherwise affirmed it.  Have the parties been able to meet

15  and confer about these three issues, between the time it --

16  well, since it was issued until now?  Mr. -- Mr. Do?

17          MR. DO:  Your Honor, we unfortunately have not,

18  but Plaintiffs are certainly very much willing to meet and

19  confer with Defendants to see if we can maybe agree to any

20  language, with regards to -- and process, with regards to

21  dealing with the remand on those three issues.

22          THE COURT:  It seems like, at least one and

23  possibly two of these, are really wording -- just, you know,

24  clarifying some language.  I don't know about police section

25  169 and what you -- what your positions will be, but I'm

5

1  hoping that the parties can meet and confer just to see if

2  they can stipulate.  If not, then I'd issue a briefing

3  schedule.  Of course, all of that has to -- I guess really,

4  I can't do anything until the remand issues, but I want to

5  at least get the conversation going.

6      Mr. George and Mr. Mills, what do you think?

7          MR. GEORGE:  Yes, your Honor.  I'll give you a few

8  updates on that.  So we haven't yet had a meet and confer,

9  as Mr. Do indicated.  We are certainly willing to -- to go

10 that route.  I do want to give you some preview of what is

11 going to be happening, since we had so many events happen

12 before -- or I should say after the CMC statement was filed

13 and before today.

14     On the Ninth Circuit, so as you know, which I'm sure

15 we're getting to, the Supreme Court granted cert in <u>Grants</u>

16 <u>Pass</u> the day after, and so we intend to request that the

17 Ninth Circuit give an extension of time to the en banc

18 petition that we may file in that case, in order to allow us

19 to file it after the conclusion of the decision, or the

20 issuance of the decision in <u>Grants Pass</u>.  We believe that we

21 should also stay the mandate in that case so that everything

22 is stopped, as far as the Ninth Circuit is concerned, which

23 then would mean that it would be until sometime in the

24 summer, early summer, I imagine, when the -- when the

25 mandate would actually come down and then we would be -- you

6

1  know, we would be putting this issue back before your Honor.

2       But, as far as a meet and confer, you know, we see no

3  reason to delay that so long. We're happy to have that

4  discussion and ensure that the parties positions are

5  understood. This is all in the understanding that the law

6  may change dramatically between today and June. And so, it

7  may be a little difficult for us to have a completely

8  informed discussion of where things will go, but we can

9  certainly at least discuss what the Ninth Circuit has

10  written its order.

11       THE COURT: Right. At least for the here and now.

12  And thank you for filling me in on the city's intentions on

13  that. Can I ask the parties to meet and confer about all of

14  what we've just talked about and let me know what your plan

15  is? Maybe there will be some stipulations in there, I don't

16  know. What would be a good deadline to give you to file

17  something in this case to notify me of your intentions?

18       MR. DO: Your Honor, may I recommend maybe we use

19  your -- your default discovery procedures, in terms of meet

20  and conferring? If we don't come to a resolution, we can

21  draft a letter proposal to you, perhaps more than just the

22  five pages that you traditionally offer folks.

23       THE COURT: Well I think it's going to depend. It

24  sounds -- Mr. George has just kind of put another item on

25  the table to think about, about what the city is going to be

1 doing.  So I just really am asking you to meet and confer

2 about whether there will be potential process items that

3 you'll agree to.

4     As to the actual change on remand, or the substance of

5 that, I -- I think it's -- I don't think I want briefing on

6 that.  We don't have the mandate yet.  I -- depending on

7 what you're considering, I might ask for briefing instead of

8 a joint letter, but I think it's too early for me to know

9 what the best process is until you work through some of

10 these overarching issues about where we think the case will

11 be, at least certain parts of the case.

12     So, can you just have those discussions and file a

13 brief joint letter, meaning one page, like one paragraph

14 each, perhaps, just telling me, "Here's what we think,"

15 "Here's what we think," and based on that, if there's

16 briefing that I'll need, then I can ask you to do that.

17         MR. GEORGE:  Your Honor, may I just -- a point of

18 clarification on that.  I want to be sure we understand

19 exactly what it is, because I also -- we contacted

20 Plaintiffs yesterday about a stipulation that would stay the

21 case until our proceeding -- until the Ninth Circuit rules.

22 We have also notified them that we intend to file a motion

23 to that -- to that effect, if they're unwilling to stipulate

24 to it.

25     And so, I want to be sure that we -- I'm very

8

1 comfortable having a discussion with Plaintiffs and ensuring

2 that we get to this joint letter, with respect to the -- to

3 the Ninth Circuit issues.  On the stay, we see that as

4 needing to move with a little bit more alacrity so that we

5 don't spend the money that we are now spending for

6 discovery, depositions, experts, all of those issues, as we

7 move forward.  And so we want to be sure that we're

8 preserving public resources.

9 So, to the extent that this is going to rope in more of

10 the stay issues at the Ninth Circuit and here, obviously we

11 are happy to meet and confer, but we do need to file the

12 Ninth Circuit brief tomorrow, per our -- per the rules in

13 that court, and we do intend to file the motion to stay, as

14 soon as today, so that we can get that -- that relief if

15 necessary.

16 THE COURT:  Okay.  So let me back off the

17 statement about the joint letter.  Let's talk about Grants

18 Pass and once we get through the discussion, I'll figure out

19 what makes sense.

20 So, Grants Pass certiorari was granted last Friday,

21 January 12th.  Word on SCOTUSblog, at least, seems to say

22 this will be briefed and heard and decided by the end of

23 this term.  So by the end of June, 2024.  Is that anyone's

24 working understanding?

25 MR. GEORGE:  Yes, your Honor, and I can --

9

1          THE COURT:  (Indiscernible) depends.

2          MR. GEORGE:  I can speak to that, as well.  We

3    have been in contact with counsel in that case, and it's

4    their understanding, which I don't want to put words in

5    their mouth, but I believe from their contact with the court

6    itself, that it will be heard and then therefore decided in

7    this term.

8          THE COURT:  Okay.  Now, as to -- you know we've

9    got two -- two issues in this case, right?  So, for the

10   Fourth Amendment issues is not affected by Grants Pass, I

11   believe, but as to the Eighth Amendment case (sic) -- or

12   claim, let me hear from each side.  Do -- I know there will

13   be -- it sounds like there's going to be a motion to stay,

14   but is there some basic agreement that whatever the Supreme

15   Court rules in Grants Pass on the Fourth Amendment issue, is

16   going to directly affect the issues in this case?  Mr.

17   George, let me start with you, since your mic is on.

18         MR. GEORGE:  Yes, your Honor.  We believe that

19   these issues are very intertwined.  The Plaintiffs have pled

20   this as a conspiracy.  The basis for their conspiracy is the

21   HSOC resolutions, and they say at those there are -- there's

22   both a failure to offer shelter and enforcement of the

23   various provisions that they've outlined, plus destruction

24   of property.

25       If you look at their claims, as well, and I --

1         THE COURT:  Hold on one second.  I'm not asking --
2   I really want you to put aside the Fourth Amendment for now.
3         MR. GEORGE:  Oh, okay.
4         THE COURT:  I just want to make sure that -- are
5   people in agreement that whatever happens in our high court
6   on <u>Grants Pass</u> is going to have a direct affect on the
7   Eighth Amendment claim in this case?
8         MR. GEORGE:  That is a very a simple, yes, your
9   Honor, for us.
10        THE COURT:  And let me hear on the Plaintiffs'
11  side.  Do you disagree with that?
12        MR. DO:  On the Eighth Amendment issues, there
13  would be an impact, yes.  That is one of our 13 claims.
14  Correct.
15        THE COURT:  Okay.  So I -- you haven't yet had a
16  chance to talk to each other about potential stay of certain
17  claims, and whether that's going to make sense.  So I think
18  that that conversation should happen and Mr. George, perhaps
19  what makes sense is, for that conversation to happen soon so
20  that you don't file a motion until -- you know there may be
21  some agreement on parts of it.  Right?
22        MR. GEORGE:  I'm available this afternoon, your
23  Honor.  I'm happy to speak at anytime on this with
24  Plaintiffs so that we can attempt to come to a resolution.
25        THE COURT:  Okay.  Any problem with talking soon

11

1  to Defense about their proposed stay to see if there's

2  anything you all agree on, so that the motion, if there is

3  one, can be narrow.

4      MR. DO:  Your Honor, we are certainly available

5  this afternoon.  We are happy to discuss.  I do just want to

6  add, this would be -- a stay of this case would be a fairly

7  large decision and we certainly would want to confer with

8  our clients appropriately so.  We just heard of the reasons

9  from Defendants just earlier today.  But we are available

10  later today.  Of course, in addition, tomorrow.  And we

11  think it makes a lot of sense, your Honor, to have a meet

12  and confer with all of these issues, with the stay of the

13  mandate, to the potential scheduling of this case, and the

14  process for the remand.  All in -- we'd be available to talk

15  about that.

16      THE COURT:  Okay.  Well --

17      MR. GEORGE:  Your Honor, may I just raise one --

18  one scheduling point, with respect to the -- the speed at

19  with which we're trying to file the motion?  We -- based on

20  your calendar, you do your hearings every -- I believe it's

21  every other Thursday, and so if we file later than today, it

22  will put us into, I believe, March before it could be heard.

23  We intend to file a motion to shorten time, and that's

24  something that we plan to discuss with the Plaintiffs in any

25  event.  However, I just want to note that the -- we'd prefer

12

1  to file today and have these discussions today so that then

2  we can have, at the latest, February 21st, as the hearing.

3  You've moved your calendar from Thursday to Wednesday in

4  that event.

5         THE COURT:  Right.  Well, with respect to whatever

6  you do before the Ninth Circuit, obviously I don't control

7  that, right.  So the timing on that, if you've got a

8  deadline that you've got to meet, then you should do that.

9  But I would like you to meet with alacrity in this case

10  about all of the issues.

11      I don't -- you know, Mr. George, I on the one hand,

12  understand your concern about scheduling before me, but

13  you're also going to be filing an order to shorten time.  So

14  I think that's less of an issue than seeing if there can be

15  some agreement that narrows the scope of the motion.  The

16  answer may be no, but it's worth checking that out.

17      Mr. Do, I hear on your side that there's a lot of

18  people you may need to confer with, but you've got a whole

19  lot of lawyers, so I would expect that that would not be an

20  extended process.  Okay?

21         MR. DO:  It would not be, your Honor, no.

22         THE COURT:  Okay.  So I wouldn't want things to be

23  unduly held up, especially, you know, we -- if there's going

24  to be stay of some kind, we're talking about resources, and

25  if we're -- we want to be very, I guess, cognizant of that.

13

1  So I take back my earlier order about filing a statement.  I

2  think what makes sense is, you all talk and what's going to

3  happen is, I'll see -- I'll see the results of those

4  discussions either through motion work or some kind of

5  stipulation, or both.  Okay.

6      Any -- any argument with that, for going -- as a way to

7  go forward, Mr. George?

8          MR. GEORGE:  That works.  As I say, I'm -- my

9  phone line is open.  Ready to talk.

10          THE COURT:  Mr. Do?

11          MR. DO:  No, same here, your Honor.  I can see a

12  situation where maybe we would want a proposed statement,

13  but as of right now, it sounds like the process you laid out

14  works for us.

15          THE COURT:  What kind of proposed statement do you

16  mean?

17          MR. DO:  Well rather than just having hopeful

18  motion practice, I can see a situation where maybe we have

19  competing thoughts that perhaps would be best -- better

20  presented in a joint statement.  But we can do that, only in

21  agreement with everybody.

22          THE COURT:  Okay.  Well, I mean if you have things

23  you can stipulate to, then obviously you'll be presenting

24  that.  If you have competing proposals, I think that that

25  can happen through motion and opposition.

14

1        MR. DO:  That's correct.  Yes.

2        THE COURT:  If there's something else that you're

3 thinking of, let me know, because I'm not understanding it

4 completely and I want to make sure I do.

5        MR. DO:  No worries, your Honor.  I withdraw my

6 prior comments.  The process you've laid out should work,

7 and if some reason it doesn't and we come up with a

8 different situation, we'll appropriately raise it before

9 you.

10        THE COURT:  Okay.  Well I -- I think I'm going to

11 set another CMC for -- currently, just for May 15th at 1:30

12 by Zoom with your updated papers due May 8th.  That's really

13 to have a control date on the books.  That may change,

14 depending on what happens in the -- in the motion work or

15 stipulations.  I just want to make sure we have something on

16 the books in this case.

17    I -- I think I'm going to leave it at that.  I'm not

18 sure that there are other things to talk about today, given

19 all of the changes that happened last week, but let me just

20 open the floor to anything the parties want to raise with me

21 at this point.  Let me start with the Plaintiffs.

22        MR. DO:  There are a couple of items that we named

23 in our -- our joint statement that I wanted to follow up on,

24 and also name one that was not on there.  One is, in light

25 of the cert grants in <u>Grants Pass</u>, it is possible that we

15

1 may seek to amend our complaint to reflect that.  And so we

2 informed Defendants of that possibility earlier today.

3         THE COURT:  I'm sorry, what kind of amendment are

4 you thinking about?

5         MR. DO:  Sure, your Honor.  It would be to clarify

6 or to add additional claims that will focus on the same

7 nucleus of facts in this -- at issue here -- we don't

8 anticipate any expansion of the scope of the case -- that

9 reflect the possibility that the Supreme Court may rule in a

10 way that would impact our Eighth Amendment claim as

11 currently pled.

12         THE COURT:  I see.  Okay.  Well, you should

13 certainly talk to the other side about that and take a look

14 at my case management order and I'll see what to do on that.

15         MR. DO:  Of course.  It would be -- we'd move to

16 leave it it as just merely providing notice to everyone

17 here, including your Honor, about that possibility.

18         THE COURT:  I appreciate it.

19         MR. DO:  On -- and to give notice to the other

20 side as soon as possible.

21      In addition to that, we note that the -- the motion to

22 enforce on the Fourth Amendment is still -- is still

23 pending, and so we --

24         THE COURT:  (Indiscernible).

25         MR. DO:  We wanted to just offer to the Court, if

16

1  there is any additional information that would be helpful to

2  the Court, we can certainly provide that.  We want to flag

3  that we, as we on occasion raised with the other side, are

4  aware of other potential violations, which we have not

5  raised to the Court, given the fact that there is already a

6  fully briefed motion on that.  We can certainly raise those

7  additional incidents, if desired.

8      And we'd also want to raise the fact that there is a

9  recent decision, just this past Friday, <u>Tyson v. City of San</u>

10 <u>Bernardino</u>, which is another case that dealt with the

11 property destruction of unhoused people, to provide

12 additional support with regards to the relief that we're

13 seeking there.

14     And then, lastly, we just want to note that --

15         THE COURT:  So, hold -- are you still talking

16 about the Fourth Amendment, or are you moving --

17         MR. DO:  I am.  Yes, your Honor.  Yes.

18         THE COURT:  Go ahead.  Okay.

19         MR. DO:  And lastly, on the Fourth Amendment

20 issues, we -- we are just confirming our understanding that

21 we don't believe there's been any additional training since

22 the Defendants last representations to the Court.  And we

23 haven't received any notice of that, so I think that remains

24 as is, which we, of course, believe to be deficient.

25         THE COURT:  Okay.  With respect to your offer to

17

supplement the briefing, or to supplement with evidence, I
don't need that, but I will certainly ask if there's more
that we need.  As to the new decision in <u>Tyson</u>, if you want
the Court to consider it, and if it's appropriate to file it
as a notice of recent decision under our rules, you are free
to do that.

And then the last piece is about training.  I did
receive the information that I ordered the city to provide
about training.  So I'm not sure -- so, that's part of the
record.  I don't recall ordering them to -- that there was
an outstanding order about training itself.  Am I missing
something, Mr. Do?

MR. DO:  No, your Honor.  I just wanted to merely
reflect what our understanding of the record is, with
regards to the training that has been provided.  We don't
believe there's been anymore.  That's all.

THE COURT:  Okay.  Thank you.

MR. DO:  And I have one more issue, your Honor.

THE COURT:  Okay.

MR. DO:  Is -- is just with regards to -- we
raised the issue that it's been about five months since your
Honor inquired whether -- the city's willingness to provide
scripts.  We just merely note that we don't believe there
have been any scripts provided thus far, and the importance
of those scripts, given the fact of the confusion that folks

18

1  have, both housed and unhoused, with regards to the city's

2  responsibilities and people's rights.

3          THE COURT:  Okay.  With respect to that last

4  point, I did -- you know, it seemed to me, based on the

5  record that I reviewed at the motion to enforce, that

6  there's just some fundamental miscommunications that

7  everyone would benefit from, within the -- you know,

8  citizens of the City of San Francisco, both housed and

9  unhoused, would benefit from just some clear statements to

10  people about what's going on and what their rights are.

11  Nothing long, nothing fancy, but, you know, nevertheless,

12  meaningful.  And whether that was coming from officers or

13  people from -- on behalf of the city who are engaging with

14  unhoused people, it seemed like that would be a good thing.

15  My recollection is that the city said they were willing to

16  consider doing that, and -- which I was glad to hear,

17  because it seems like it would benefit everyone to have

18  clear communication.  And so, based on that, I arranged to

19  have the city work directly with Judge Cisneros.  My

20  understanding is that the city has been working with Judge

21  Cisneros on this.  Perhaps not as -- in a way that the

22  Plaintiffs are happy with, but I purposefully set it up so

23  that it was -- I thought it would probably be more

24  productive, given that this was something that -- it's

25  separate from the settlement discussions that she's handling

19

1  to see if the case or any parts of it could be resolved.

2      So, my understanding is those talks are going forward.

3  I have had discussions with Judge Cisneros about them,

4  although they're limited, because she is acting in the

5  capacity, as a settlement judge, so she's not to reveal the

6  contents of those things to me.  And I make sure not to ask

7  her about them.  But I have some notion about how that's

8  been progressing.

9      I guess I'd ask -- you know, I want to say, again, to

10 the city, you certainly put a lot of effort into the case,

11 as you should, but what the city has been telling the world,

12 through its press, to the extent that I'm seeing it, is how

13 much they care about homeless people.  And I would hope that

14 part of that is just being clear that -- taking simple

15 measures to be clear.  And I think that helps everybody.  So

16 I'm hoping that the city takes that to heart and puts in

17 some significant effort and seeing whether they can relieve

18 the miscommunication gap through some simple measures.

19     Okay.  So I'm not talking about long speeches or

20 scripts.  You know, I don't think those are workable.  I'm

21 also not talking about minimal effort.  I'm talking about

22 something that's simple and meaningful that can be used on

23 the street.  But -- that actually advanced the ball of

24 communication in a real way.  I hope the city would be

25 willing to do that.  It seems like not a big ask.

1      So I leave you to that work with Judge Cisneros and I

2  hope that something comes of it.  Okay.  I would certainly -

3  - I not only hope, I expect that something will come of it.

4  Okay.  Because a willingness to consider is sort of a wishy

5  washy way to put it.  If the city really cares about this,

6  then they ought to make it a priority.

7      Okay.  So, Mr. Do, anything more from Plaintiffs?

8          MR. DO:  No, your Honor.  Thank you.

9          THE COURT:  Mr. George, Mr. Mills, anything from

10 the Defense?

11         MR. GEORGE:  Very briefly, your Honor.  Your

12 understanding is correct.  We're continuing to work with

13 Judge Cisteros on the scripts issues and we will continue

14 that.

15     As far as training, I just want to make clear that the

16 declaration set out --

17         THE COURT:  Mr. George, before you move on to the

18 next thing that --

19         MR. GEORGE:  Sure.

20         THE COURT:  What is the city thinking about -- you

21 know, it has been some time, and I was -- you know, Mr. Do

22 is right.  It's been five months since we've talked about

23 it.  It does not seem like a big undertaking to have simple

24 communications that are, you know, standard.  Whether people

25 carry them around in their pockets, so they can either hand

21

1  out information or recite the information.  I'm -- I'm not

2  understanding why it's taking so long.

3           MR. GEORGE:  I -- I hesitate to get into too much

4  detail, your Honor, given that these discussions are with

5  Judge Cisneros, and as you mentioned in her settlement

6  capacity.  So I prefer not to discuss the details in open

7  court, however, I can tell you that there are -- there are

8  factors that are -- that complicate these discussions and

9  make it what appear to be a simple process from the outside,

10  much more complicated when you actually look at it from --

11  and just to name, but a few -- labor considerations and

12  discipline and what is -- what is required of particular

13  employees of the city.  And if they are required to do that,

14  then what is required when they do not do that.  So there

15  are a lot of complications here.

16      I'll also note that the -- in the midst of our

17  discussions, the department notice, the one that is the

18  operative notice for how SFPD officers are supposed to

19  enforce the laws that your Honor highlighted in her

20  preliminary injunction, that changed based on the Ninth

21  Circuit's decision in our motion to stay in early September.

22  And so that guidance came down in, I want to say, October 18

23  is when that -- when that came down.  And there's been -- I

24  was going to mention, the training, the ongoing training on

25  that.  And so not -- the training is working its way out to

22

1 the role call process that Lieutenant Wayman Young

2 highlighted, and it's -- it is -- there's been a shifting

3 standard and now we have <u>Grants Pass</u> coming down to

4 potentially change the law, yet again, and make this all

5 very different.

6      And so, this is a -- it's a very dynamic situation that

7 we're trying to operate in, both from a legal perspective,

8 as well as an on the ground perspective.  And so one size

9 fits all statements and categories are difficult to

10 implement, sort of legally and factually.

11          THE COURT:  Well I appreciate the statement, and

12 having been a settlement judge for 14 years, I understand

13 that things are not always completely simple.  On the other

14 hand, this does not strike me -- and the statements that you

15 made do not strike me, as these are unsurmountable problems

16 if the will is there.  And so this comes down to, does the

17 City of San Francisco have the will to provide simple

18 information to its citizens to make every -- communication

19 go a little smoother.  And I believe that that benefits

20 everybody.  But San Francisco has got to decide that that's

21 something they want to do.  And I will say on the record,

22 I'm troubled by the fact that it's taken awhile to do

23 something that should -- should be workable.

24      San Francisco is wonderful, sophisticated city with

25 lots of resources.  It's worked through many many difficult

23

1  problems in many different areas, and this is -- this is a

2  relatively small ask that could help a lot of people.  So I

3  hope San Francisco takes that to heart.

4          MR. GEORGE:  We hear you, your Honor.

5          THE COURT:  All right.  Mr. George, anything

6  further?

7          MR. GEORGE:  Yeah, I just want to highlight the

8  training.  As I mentioned, the -- sorry -- the declarations

9  that we put in under your order that we submitted on

10 September 22nd, they lay out ongoing processes.  And so, I

11 don't think that Mr. Do's statement that training hasn't

12 happened since then is correct.  It highlights an ongoing

13 process both at DPW and at SFPD as both ongoing processes,

14 including shift training and things of that nature.

15     So it's -- we've laid out the -- we submitted power

16 points and other types of documents about the type of

17 training, and those processes continue.  You know, when

18 people are hired, there is training.  Things -- it's not as

19 though that was a static -- everyone was trained by this

20 point in time and nothing has happened since.  I just want

21 to make that clear.

22         THE COURT:  Okay.

23         MR. DO:  If I may, your Honor?

24         THE COURT:  Okay.  Mr. Do?

25         MR. DO:  I appreciate Mr. George's

24

1  representations.  My comment earlier just reflected the fact

2  that in discovery, our ongoing discovery, we are to receive

3  information with regard to training, and therefore that is

4  why that had some initial doubts, with regards to whether

5  there is any additional training, because it's not reflected

6  in the ongoing disclosures that we're required to receive

7  under this Court's order.

8          THE COURT:  Oh --

9          MR. GEORGE:  I'll briefly respond to that, your

10 Honor.  So we have been providing updated sign in sheets and

11 other information that shows that people are attending the

12 trainings.

13         THE COURT:  When did that happen?

14         MR. GEORGE:  It's ongoing, so this is part of the

15 three-week ongoing disclosures.  There was -- I don't have

16 the exact sort of specifics on each one, however, I believe

17 that in December we provided sign in sheets showing that

18 HSOC officers were trained and we provided, I believe, a

19 further one in -- and I don't want to give the date -- but

20 sometime in either late this past year, or early this year,

21 showing that the HSOC officers were training the sergeants

22 at the various stations so that then training could

23 disseminate out into the field.

24         THE COURT:  Okay.  Mr. Do, anymore on that?

25         MR. DO:  Sure.  I don't want to turn this into a

25

1   discovery dispute, but I will just note that, again, I

2   believe we received maybe one or two sign in sheets, but no

3   information with regards to the content of those trainings.

4   So our -- which again, leads us to believe the -- to the

5   extent there is ongoing training, we don't have much

6   confirmation of that.

7               THE COURT:  Okay.  Well, I guess that you know --

8   I don't -- I can't -- I don't know that I can tell from what

9   each side told me, but if there's a problem, I'm sure I'll

10  hear about it.  I know -- I know that much.

11      Okay.  So, if there's nothing further, I've given you

12  your next date, but I suspect I'll see you far earlier than

13  that -- far sooner than that -- but in the meantime, please

14  do talk this afternoon about all of the developments of last

15  week.  See if you can come to some agreements.  If not, I

16  will be looking forward to reviewing your motion materials.

17  Okay.

18              MR. DO:  Thank you, your Honor.

19              MR. GEORGE:  Thank you.

20              THE COURT:  Thank you, everyone.

21              MR. FREEMAN:  Thank you, your Honor.

22              THE COURT:  Thank you.

23      (Proceedings adjourned at 2:21 p.m.)

24

25

26

1                    CERTIFICATE OF TRANSCRIBER

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17          Echo Reporting, Inc., Transcriber

18             Monday, January 22, 2024

19

20

21

22

23

24

25