ACLU FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

COALITION ON HOMELESSNESS, et al.,

               Plaintiffs,

   v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

               Defendants.

Case No. 4:22-cv-05502-DMR

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS PENDING THE SUPREME COURT'S DECISION IN *GRANTS PASS V. JOHNSON***

**Judge:**       The Hon. Donna M. Ryu

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................4

II.   BACKGROUND ...................................................................................................5

III.  LEGAL STANDARD ...........................................................................................6

IV.   ARGUMENT .........................................................................................................6

     A.    The central issues remain the same, regardless of decision in
          *Grants Pass* ...................................................................................................7

     B.    Plaintiffs will be harmed if the case is stayed......................................13

     C.    Defendants will not suffer hardship or inequity ..................................17

     D.    Extending the pre-trial schedule is more reasonable ..........................19

V.    CONCLUSION.....................................................................................................19

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4
*In re Alva*,
   33 Cal. 4th 254 (2004) ..................................................................................................9

5

*Bernstein v. Virgin America, Inc.*,
6   2018 WL 3349183 (N.D. Cal. July 9, 2018) ................................................................8

7
*Bloom v. City of San Diego*,
   2018 WL 9539238 (S.D. Cal. June 8, 2018) ..............................................................11

8
*California v. Carmony*,
9   127 Cal. App. 4th 1066 (2005) ......................................................................................9

10
*Carl Zeiss A.G. v. Nikon Corp.*,
   2018 WL 1855525 (C.D. Cal. Feb. 8, 2018) ................................................................9

11
*City of Grants Pass v. Gloria Johnson, et al.*,
12   U.S. Case No. 23-175 ....................................................................................................4

13
*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................................6, 14

14
*CMAX, Inc. v. Hall*,
15   300 F.2d 265 (9th Cir. 1962) ...................................................................................6, 12

16
*Cooley v. City of Los Angeles*,
   2019 WL 3766554 (C.D. Cal. Aug. 5, 2019) ..............................................................11

17
*Coppernoll v. Hamcor, Inc.*
18   2017 WL 446315 (N.D. Cal. Jan. 17, 2017) ................................................................12

19
*Federal Trade Comm. v. Lending Club Corp.*,
   2020 WL 4898136 (N.D. Cal. Aug. 20, 2020) ............................................................11

20
*Grundstrom v. Wilco Life Ins. Co.*,
21   2023 WL 8429789 (N.D. Cal. Dec. 4, 2023)..........................................................12, 17

22
*Johnson v. Starbucks Corp.*,
   2019 WL 4034479 (E.D. Cal. Aug. 27, 2019)................................................................8

23
*Jones v. Travelers Cas. Ins. Co.*,
24   2013 WL 4511648 (N.D. Cal. Aug. 22, 2013) ...........................................................8, 9

25
*Landis v. North American Co.*,
   299 U.S. 248 (1936)................................................................................................6, 14

26
*Larroque v. First Advantage Lns Screening Solutions, Inc.*,
27   2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ...................................................................12

28

ii

*LG Elecs. Inc. v. Eastman Kodak, Co.*,
  2009 WL 1468703 (S.D. Cal. May 26, 2009) ...........................................................14

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ...........................................................................6, 17

*Matera v. Google Inc.*,
  2016 WL 454130 (N.D. Cal. Feb. 5, 2016) .................................................................12

*McElrath v. Uber Tech.*,
  2017 WL 1175591 (N.D. Cal. March 30, 2017)........................................................12, 15

*Nationwide Biweekly Admin., Inc. v. Owen*,
  873 F.3d 716 (9th Cir. 2017) ...............................................................................17

*Newirth v. Aegis Senior Comm. LLC*,
  2017 WL 11551313 (N.D. Cal. Nov. 21, 2017) .............................................................15

*Phan v. Transamerica Premier Life Ins. Co.*,
  2023 WL 7597464 (N.D. Cal. Nov. 13, 2023) ..............................................................12

*Ramirez v. Trans Union, LLC*,
  2015 WL 6159942 (N.D. Cal. June 22, 2015) ..............................................................15

*Rivera v. Saul Chevrolet, Inc.*,
  2017 WL 1862509 (N.D. Cal. May 9, 2017) ...............................................................12

*Robledo v. Randstad US, L.P.*,
  2017 WL 4934206 (N.d. Cal. Nov. 1, 2017) ...............................................................12

*Roule v. Petraeus*,
  2012 WL 2367873 (N.D. Cal. June 21, 2012) ..............................................................14

*Sanchez v. City of Fresno*,
  914 F. Supp. 2d 1079 (E.D. Cal. 2012) ...................................................................10

*Santa Cruz Homeless Union v. Bernal*,
  514 F. Supp. 3d 1136 (N.D. Cal. 2021) ...................................................................10

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  2014 WL 12705057 (N.D. Cal. Oct. 22, 2014) .............................................................14

*Whitworth v. SolarCity Corp.*,
  2017 WL 2081155 (N.D. Cal. May 15, 2017)...............................................................15

*Yong v. I.N.S.*,
  208 F.3d 1116 (9th Cir. 2000) ............................................................................12

**STATUTES**

Cal. Gov. Code § 11135 .........................................................................................10

**CONSTITUTIONAL PROVISIONS**

Cal. Const., Article I, § 17 .....................................................................................9

iii

## I.    INTRODUCTION

Defendants seek a seven-month stay of all proceedings in this case based on a false premise—that the U.S. Supreme Court's resolution of *City of Grants Pass v. Gloria Johnson, et al.*, U.S. Case No. 23-175, will largely resolve this case.  In fact, as Defendants try to sidestep, only ***one*** of the thirteen claims Plaintiffs have brought relies solely on the Eighth Amendment's prohibition on cruel and unusual punishment.  Irrespective of the Supreme Court's ruling in *Grants Pass*, Plaintiffs' remaining twelve federal and state claims challenging San Francisco's harmful displacement of unhoused people without adequate alternatives, discrimination against those with disabilities, and indiscriminate destruction of vital belongings, will need to be resolved.  Thus, Defendants' proposed stay needlessly delays the inevitable—and necessary— resolution of these important issues.

Not only that, Defendants would deny Plaintiffs the ongoing disclosures and discovery necessary to monitor and ensure compliance with the preliminary injunction order.  There are already serious concerns regarding the City's compliance with the preliminary injunction to date, particularly regarding the injunction's prohibitions and restrictions regarding property destruction, which are unrelated to *Grants Pass*.  Depriving Plaintiffs of this information during a stay would allow the Defendants to run roughshod over the preliminary injunction without any oversight.

Defendants repeatedly concede that the scope of discovery over all of the claims overlaps, meaning the scope of discovery will not change and the discovery sought will remain relevant regardless of the Supreme Court's ruling.  And while Plaintiffs are confident that the Supreme Court will uphold *Grants Pass*, the Court can continue—not stay—case deadlines for ninety days to allow the parties to address any potential impact without prejudicing any party, as that would place the close of fact discovery and expert discovery to months after the Supreme Court's anticipated decision.  Plaintiffs' proposal allows the parties the opportunity to make any adjustments after the ruling, while permitting needed discovery to continue in the interim.

Defendants have refused this reasonable approach, and while they concede that the preliminary injunction would remain in effect during their requested stay, they refuse to

1

1    acknowledge that they should be required to continue to provide discovery and disclosures to aid

2    Plaintiffs' monitoring of Defendants' (non-)compliance.  Defendants' motion is simply another

3    attempt to delay or avoid accountability and should be denied.

4    **II.    BACKGROUND**

5        Plaintiffs filed the instant suit on September 27, 2022 to challenge the Defendants' prior and

6    ongoing unlawful conduct that harms the unhoused residents of San Francisco, much of which

7    persists to this day.  ECF 1.  The challenged conduct includes Defendants' pattern and practice of

8    punishing mere homelessness (ECF 135 at 1-9, 34-36, and ¶¶ 331-35), violating substantive due

9    process by placing unhoused people in danger (*id.* at 4, 31-34,  68-70, and ¶¶ 306-17),

10   unreasonable seizure and destruction of property without due process (*id.* at 36, 45-47, 49-51,

11   and ¶¶ 276-301), and discriminating against individuals with disabilities and failing to provide

12   accommodations (*id.* at 66-68, and ¶¶ 318-330), among other allegations under both federal and

13   state law.  ECF 135.

14       Plaintiffs alleged thirteen claims, only one of which is solely dependent on the Eighth

15   Amendment.  *Id.*  This court granted a preliminary injunction against Defendants (the "City") to

16   prevent them from continuing to punish homelessness, and from seizing and destroying personal

17   property in violation of the Fourth Amendment, the basis of Plaintiffs' third cause of action.

18   ECF 65.  Among other prescriptions, the City is to abide by its own "Bag and Tag" policy

19   regarding unhoused people's property. *Id.* at 50.  The litigation has been ongoing and is currently

20   in the middle of intensive discovery.  Among other things, to ensure compliance with the

21   preliminary injunction, Defendants provide Plaintiffs ongoing disclosures of formal encampment

22   resolutions and street cleanings where unhoused people are subject to displacement and property

23   seizures.  ECF 65 at 6-7 ("bag and tag" policy tied to encampment resolutions); ECF 129 at 1.

24   Defendants also are required to give Plaintiffs certain categories of documents every three weeks

25   including incident reports, dispatches, bag and tag logs, and training documents. ECF 129 at 2-3.

26       Defendants appealed this court's grant of the preliminary injunction to the Ninth Circuit,

27   which largely affirmed the court's order, and granted remand only to clarify certain language

28   contained therein, on January 11, 2024.  On January 12, 2024, the U.S. Supreme Court granted

2

certiorari in *Grants Pass*.  *Grants Pass* involves whether a jurisdiction's prohibition on using bedding material (e.g., a blanket) constitutes cruel and unusual punishment under the Eighth Amendment.

## III.    LEGAL STANDARD

In deciding whether a stay is warranted, the court must exercise its sound discretion.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  It must consider "the competing interests which will be affected by the granting or refusal to grant a stay" including, "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id.; see also Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

It is the moving party's burden to prove these factors support a stay.  *Clinton v. Jones,* 520 U.S. 681, 708 (1997).  Indeed, if there is even a "fair possibility" that the stay will "work damage to someone else," the moving party "must make out a clear case of hardship or inequity in being required to go forward … ."  *Landis*, 299 U.S. at 255.  Even in cases where, as here, the Supreme Court has granted certiorari in another case touching upon certain similar issues, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Id.*  "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

## IV.    ARGUMENT

Defendants' motion to stay is predicated on the mistaken assumption that the Supreme Court's resolution of *Grants Pass* will practically eliminate or drastically narrow this litigation. Nothing could be further from the truth.  Although certainly important to one claim, Plaintiffs' Complaint is comprehensive and alleges twelve other claims that do not rely on, and will be

1    unaffected by, any decision in *Grants Pass*.[1]  Irrespective of how *Grants Pass* is decided, these

2    twelve claims will remain and will still need to be resolved.

3        While Plaintiffs are confident the Supreme Court will affirm *Grants Pass* in its entirety, even

4    if the Court reversed Eighth Amendment precedent or otherwise modified the scope of *Grants*

5    *Pass*, the only claim that would be affected is Plaintiffs' First claim, the Eighth Amendment

6    claim.  Moreover, the discovery and evidence relevant for Plaintiffs to prove their other twelve

7    claims significantly overlap with discovery relevant to the Eighth Amendment claim such that

8    any resolution of *Grants Pass* will have little effect on the scope of discovery in this litigation.

9    Defendants concede this.  *See e.g.* Mot. at 16:8-9 ("Plaintiffs' requests cannot be neatly separated

10   into those that relate to the Eighth Amendment and those that do not.")  Defendants will not be

11   harmed merely because they are required to continue litigating a case that will still need the very

12   discovery they are trying to avoid producing, irrespective of *Grants Pass*.  In contrast, Plaintiffs

13   will be harmed if they are prevented from receiving discovery that is relevant to pursuing all of

14   their other claims, and the loss of periodic disclosures will severely restrict Plaintiffs' ability to

15   monitor the City's compliance with the preliminary injunction.  Staying all discovery for the next

16   seven months will also delay the trial on the merits far beyond anything contemplated by the

17   parties, which will further harm Plaintiffs who are entitled to have their claims adjudicated at the

18   soonest possible time.

19       As such, Defendants fail to carry their burden to a show a "clear case of hardship" if they are

20   required to continue litigating this action during the pendency of the Supreme Court's review.

21   For the following reasons, the court should deny Defendants' motion to stay.

22       **A.    <u>The central issues remain the same, regardless of decision in *Grants Pass*</u>**

23       The orderly course of justice will not be served by a stay.  Defendants primarily argue that

24   this litigation should be stayed in its entirety because the Supreme Court granted certiorari in

25   *Grants Pass* and ***may*** overturn or modify current Ninth Circuit precedent with respect to ***only*** the

26   Eighth Amendment claim at issue in this litigation.  However, this argument does not promote

27   ───────────────────

28   [1] As discussed further below, while the conspiracy claim does implicate Eighth Amendment
     rights, that claim stands regardless of the resolution of *Grants Pass*.

the "orderly course of justice" for at least two reasons: (1) the discovery and evidence Plaintiffs need to prove their other twelve claims substantially overlaps with the discovery relevant to the Eighth Amendment claim and thus, the issues, discovery, and evidence will not materially change irrespective of the outcome in *Grants Pass*; and (2) speculation regarding whether the Supreme Court will overturn or modify precedent in the Ninth Circuit is not itself a basis for the district court to forego applying it.

*First*, even if the Supreme Court were to overturn or modify *Grants Pass*, its effect in this litigation would be limited only to Plaintiffs' claims insofar as they rely on the Eighth Amendment's cruel and unusual punishment clause.[2]  The Supreme Court's decision in *Grants Pass* will not affect claims that do not rely on the Eighth Amendment.  Thus, **only** Plaintiffs' First claim is principally reliant upon the outcome in the Supreme Court's decision because it is the only claim relying on Eighth Amendment precedent as articulated in *Martin* and *Grants Pass*.  ECF 65 at 36.  Plaintiffs' **twelve** other claims will be undisturbed by any decision the Supreme Court makes because none of them depend on a theory of liability under the Eighth Amendment.  When, as here, a stay pending Supreme Court review would "not aid in streamlining the case or helping the Court manage its docket," such a stay is inappropriate. *Jones v. Travelers Cas. Ins. Co.*, 2013 WL 4511648, at * 2 (N.D. Cal. Aug. 22, 2013) (denying stay when evidence necessary for plaintiff's other claims overlapped with the single claim pending before the Supreme Court in another matter.); *see also Bernstein v. Virgin America, Inc.*, 2018 WL 3349183, at *2 (N.D. Cal. July 9, 2018) (denying stay where "there is undeniably some overlap" with the case under appellate review but "the cases are far from identical."); *Johnson v. Starbucks Corp.*, 2019 WL 4034479, at * 2 (E.D. Cal. Aug. 27, 2019) (denying stay where defendant would suffer prejudice because "the [other] claim remains regardless of the outcome

---

[2] Defendants mischaracterize the public statements of John Do regarding the potential scope of the Supreme Court's decision in *Grants Pass*.  Mot. at 13 n.5.  As Mr. Do's statement made clear, the Supreme Court's ruling is limited to the Eighth Amendment, and certainly is not an admission that there are no other laws, including but not limited to California's constitution, that would also independently place substantive limitations on what can be criminalized.  Do. Decl. at ¶  5. And he certainly does not agree that the documents and testimony requested in this case are irrelevant to any of the other claims in this case.  *Id.*

5

1   of the cases pending appeal, [and] the parties are still tasked with conducting discovery on that

2   claim."); *cf. Carl Zeiss A.G. v. Nikon Corp.*, 2018 WL 1855525, at * 3 (C.D. Cal. Feb. 8, 2018)

3   (denying stay where inter partes review "only pertains to two of the four patents at issue ... and

4   only addresses about half the claims at issue.")

5       *Jones* is particularly illustrative.  There, the plaintiff brought four discrimination claims,

6   including disparate impact and direct discrimination theories under both the Federal Housing Act

7   ("FHA") and the Federal Employment and Housing Act ("FEHA").  The Supreme Court granted

8   certiorari in an unrelated case to determine whether disparate impact would remain a viable

9   cause of action under the FHA, and defendant moved to stay the entire case pending the decision.

10  *Id.* at *2.  Judge Koh found a stay would "not aid in streamlining the case" because "even if the

11  Supreme Court ultimately determines that disparate impact is not cognizable ... Plaintiffs still

12  have three other theories to pursue in this Court."  *Id.*  Moreover, the "discovery between the two

13  [disparate impact] claims likely overlaps and even may be identical."  *Id.* at *3.

14      Compared to *Jones*, Plaintiffs' argument are even stronger.  Many other claims and legal

15  theories have relevant overlapping, even identical, discovery with the Eighth Amendment claim.

16  Plaintiff's Second claim is for cruel and unusual punishment under the California Constitution,

17  which, unlike the federal Eighth Amendment, protects against cruel *or* unusual punishments.  *See*

18  Cal. Const., art I, § 17; ECF 135 at 1-9, 34-36, and ¶¶ 271-75.  This protection is broader than

19  the Eighth Amendment.  *See California v. Carmony*, 127 Cal. App. 4th 1066, 1085 (2005)

20  (recognizing this distinction is "purposeful and substantive rather than merely semantic"); *In re*

21  *Alva*, 33 Cal. 4th 254, 291 n. 20 (2004) (collecting cases).  Critical to the difference in analysis is

22  whether the government is "treat[ing] its [residents] with respect for their intrinsic worth as

23  human beings."  *Carmony*, 127 Cal. App. 4th at 1085 (citations omitted).  While the parties will

24  be free to argue that any ruling in *Grants Pass* may be persuasive to their respective theories, any

25  such ruling will have ***no*** binding effect as to this state law claim.  And Plaintiffs will continue to

26  be entitled to discovery relevant to proving this claim, including by seeking any discovery that

27  may directly overlap with discovery relevant to proving the Eighth Amendment claim.  *See*

28  *Jones*, 2013 WL 4511648, at *3.

The Third, Fourth, Fifth, Sixth, Seventh, and Eighth claims concern property rights, and whether the City can summarily destroy property or take unhoused people's belongings without due process under both federal and state law.  ECF 135 at  36, 45-47, 49-51, and ¶¶ 276-301.  Although such rights are independent of one's housing status, the violations often occur at the same sweeps, encampment resolutions, and police dispatches as the alleged Eight Amendment violations.  ECF 65 at 6-7.  Discovery on these property-related claims are unaffected by *Grants Pass* and overlap with the Eighth Amendment claim.  For example, DPW, the City entity responsible for handling the property of unhoused people, is part of HSOC, which coordinates encampment resolutions, and often is called upon by the police in the course of SFPD's interactions with unhoused individuals. ECF 9-8 at 18 (enforcement bulletin naming DPW involvement to address property).  Even the purported notices of property removal and street cleanings by DPW are contained in the same announcements regarding HSOC encampment resolutions.  ECF 45-13.

Likewise, Plaintiffs' Ninth and Tenth claims rely on a theory of state-created-danger under federal and state law, respectively.  ECF 135 at 4, 31-34,  68-70, and ¶¶ 306-17.  Defendants' conduct when they displace an unhoused person from public space—through arrest, citation, or threatened enforcement—without adequate alternative shelter or housing, or seize or destroy their personal property, including survival belongings, affirmatively places a person in a position of danger that deprives that person of substantive due process.  *See e.g. Santa Cruz Homeless Union v. Bernal,* 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021)*; Sanchez v. City of Fresno,* 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012). (citation omitted).  The discovery sought here is co-extensive with, if not more expansive than, the discovery relevant to the Eighth Amendment claim.

The Eleventh and Twelfth claims rely on a theory that Defendants' conduct violates the rights of persons with disabilities under federal and state law, respectively.  ECF 135 at 66-68 and ¶¶ 318-330. Defendants' encampment resolutions violate the ADA and Cal. Gov. Code § 11135 for several reasons, including because Defendants routinely fail to offer appropriate shelter to individuals with disabilities and because they do not afford individuals with disabilities

7

1    adequate time to move or gather their belongings before they are seized.  *See e.g. Bloom v. City*

2    *of San Diego,* 2018 WL 9539238, at *3 (S.D. Cal. June 8, 2018) ("[B]ecause of plaintiffs'

3    disabilities, they cannot seek housing in a homeless shelter because the shelters cannot

4    accommodate their disabilities; . . . the shelters are 'functionally unavailable' to them"); *See*

5    *Cooley v. City of Los Angeles*, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) ("Cooley […]

6    told LAPD officers that she needed help to carry her property because of her disability and that

7    she lost most of her essential property because her needs were not accommodated […] the City's

8    practices, even if [] facially neutral, violate the ADA by unduly burdening people with

9    disabilities such as Cooley").  The discovery sought in this action with respect to encampment

10   resolutions, enforcement, and displacement is therefore still relevant to these claims, regardless

11   of whether the Supreme Court changes the law as articulated in *Grants Pass*.

12        The City contends that Plaintiffs' Thirteenth claim, for conspiracy, is inexorably linked to

13   their Eighth Amendment claim.  ECF 204 at 14-15.  Not so.  Although the Eight Amendment

14   violations are included, Plaintiffs' conspiracy claim also encompasses all constitutional claims,

15   including under the Fourth and Fourteenth Amendments (procedural and substantive due

16   process) and the California Constitution.  Thus, although the discovery of evidence relevant to

17   Plaintiffs' conspiracy claim will overlap with the discovery of evidence relevant to the Eighth

18   Amendment claim—counseling against a stay—Plaintiffs' conspiracy claim can proceed

19   irrespective of a future decision in *Grants Pass*.

20        In short, not only will almost all of Plaintiffs' claims remain viable and require resolution

21   even assuming *Grants Pass* is changed in some way, the scope of discovery related to these

22   claims is essentially the same.  Accordingly, a stay of all discovery will simply serve to

23   unnecessarily delay proceedings that will be unaffected by *Grants Pass*.

24        Defendants' case law in support of a stay is inapposite.  In all of the cases Defendants cite,

25   courts did so because the Supreme Court's review had either the potential to moot the entire case

26   or because it would resolve or simplify "major issues."  *See e.g. Federal Trade Comm. v.*

27   *Lending Club Corp.*, 2020 WL 4898136, at *3 (N.D. Cal. Aug. 20, 2020) (Supreme Court

28   decision may render "the **entire enterprise mooted** by FTC's inability to seek any monetary

relief under Section 13(b). … At stake is…the viability of the remedy motivating the case.") (emphasis added); *Larroque v. First Advantage Lns Screening Solutions, Inc.*, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016) (The "Supreme Court's decision may deprive Plaintiff of standing, eliminating the Court's jurisdiction over this action.").[3]  Here, a stay will not simplify the case in any significant way and, indeed, is more likely to complicate it by denying Plaintiffs the ability to move forward with necessary discovery and to monitor compliance with the preliminary injunction.  Because there will be no dispositive changes in "issues, proof, and questions of law" with respect to the entirety of the litigation, the "orderly course of justice" weighs against a stay. *CMAX, Inc. v. Hall*, 300 at 268.

*Second*, with respect to the single Eighth Amendment claim, unless and until the Supreme Court changes the law, the precedent in this circuit is clear and the court should proceed to apply it.  "[T]he Ninth Circuit has held that 'once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.'"  *Rivera v. Saul Chevrolet, Inc.*, 2017 WL 1862509, at *5 (N.D. Cal. May 9, 2017) (denying motion to stay case pending outcome of Supreme Court review), *quoting Yong v. I.N.S.*, 208 F.3d 1116, 1119 n. 2 (9th Cir. 2000).  While the "day may come (or not come) when the Supreme Court goes against the law in our circuit [] until then we must respect the holdings of our court of appeals …" *Coppernoll v. Hamcor, Inc.* 2017 WL 446315, at *2 (N.D. Cal. Jan. 17, 2017) (denying stay

---

[3] *See also e.g. McElrath v. Uber Tech.*, 2017 WL 1175591, at *6 (N.D. Cal. March 30, 2017) ("Whether this case can proceed as a class action turns squarely on the outcome of the Supreme Court's review of *Morris*," thus, "the issues before the court will be simplified."); *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017) (Absent stay, the court "will have to 'consider the same issue [regarding motion to compel arbitration] twice.'"); *Grundstrom v. Wilco Life Ins. Co.*, 2023 WL 8429789, at *5 (N.D. Cal. Dec. 4, 2023) (same issues regarding the threshold question of class certification were at issue, and although plaintiff "argues that 'no pending matter … will eliminate the need for this matter' to be resolved on its own, she does not dispute the likelihood that the Ninth Circuit will provide binding, or at least instructive analysis on several points relevant to this Court's assessment of a class certification.") (alternations in original); *Matera v. Google Inc.*, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (Supreme Court decision would provide "substantial guidance" regarding whether Article III standing existed.); *Phan v. Transamerica Premier Life Ins. Co.*, 2023 WL 7597464, at * 4 (N.D. Cal. Nov. 13, 2023) (If the court's decision "conflicts with the decisions in *Farely* or *Small*, the Court would need to reconsider its ruling [on class certification] in light of decisions in those cases.")

pending outcome of Supreme Court review).  Accordingly, this factor weighs heavily against a stay.

       **B.**      **<u>Plaintiffs will be harmed if the case is stayed</u>**

    Plaintiffs will be harmed by a stay for at least two reasons: (1) without ongoing disclosures, Plaintiffs' ability to monitor compliance with the preliminary injunction will be restricted; and (2) discovery in this matter is not complete and a delay in receiving it is prejudicial.

    *First*, a stay would adversely impact Plaintiffs' ability to monitor compliance with the existing preliminary injunction, which Defendants concede would remain in effect, pending a stay.  Mot., at 9:6-8.  Defendants' proposed stay of all proceedings would suspend the ongoing disclosures and document productions regarding the preliminary injunction compliance.  ECF 129.  During the January 17, 2024 meet and confer regarding the instant motion, Defendants confirmed their requested stay was intended to stop these disclosures and document productions necessary to aid Plaintiffs in monitoring compliance during any such stay.  Do Decl. at ¶ 8.  It is essential that Plaintiffs continue both receiving this recurring discovery and be able to take additional discovery to protect their right to ongoing compliance with the injunction.  For example, without continued notices of HSOC sweeps, it would be much harder for Plaintiffs to monitor them at all.  The opportunity to take other discovery as needed is also vital, particularly when the Defendants take action for which they gave Plaintiffs and the public no notice.  For example, during APEC, the Defendants removed encampments and destroyed property; their conduct during APEC is now the subject of some of Plaintiffs' outstanding discovery requests.  Do Decl. at ¶ 6.

    Continued discovery is needed not just because of the egregious nature of Defendants' conduct toward its unhoused residents, but also because the injunction extends beyond the Eighth Amendment concerns.  For example, at resolutions, Defendants also seize and destroy personal property of the Plaintiffs in violation of their Fourth Amendment rights.  The preliminary injunction requires compliance with the Fourth Amendment.  ECF 65 at 49:9-15.  A stay would impair Plaintiffs' ability to monitor compliance with all aspects of the preliminary injunction,

including with the Fourth Amendment violations that are not at issue in *Grants Pass*.[4]  ECF 129 ¶¶ 1, 3, and 10 (requiring disclosure of planned clean ups and street cleanings and "bag and tag" records); *see, e.g.,* ECF 130-9 (declaration from enforcement motion based on noticed encampment resolutions.)

*Second,* there is more than a "fair possibility," that Plaintiffs will be harmed if discovery halts.  *Landis*, 299 U.S. at 255.   Courts have recognized that a complete stay of all proceedings "increase[s] the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts … ." *Clinton*, 520 U.S. at 708; *see also Roule v. Petraeus*, 2012 WL 2367873, at *5 (N.D. Cal. June 21, 2012) (stay would be harmful due to "persuasive common-sense argument that memories fade and witnesses become unavailable over time," especially "[g]iven the glacial pace of the case so far, further delays would likely harm [plaintiff].");  *True Health Chiropractic, Inc. v. McKesson Corp.*, 2014 WL 12705057, at *4 (N.D. Cal. Oct. 22, 2014) ("Some evidence, such as memory of percipient witnesses, will diminish or weaken during the pendency of a stay. Other evidence could be lost or damaged.") Indeed, the governmental Defendants, like companies, "naturally experience turnover in workforces during a stay, they may lose their ability to compel … trial testimony from employees who leave… ."  *LG Elecs. Inc. v. Eastman Kodak, Co.*, 2009 WL 1468703, at *2 (S.D. Cal. May 26, 2009).  This is also true of the Plaintiff Coalition which has had staff turnover.  Do Decl. at ¶ 7.

Discovery in this matter is ongoing, and despite discovery requests being outstanding for more than a year, Defendants have been unable to commit to producing the bulk of discovery under the current schedule.  Do Decl. at ¶ 2.  There is more than a fair possibility that evidence will be lost or that witnesses may forget or become unavailable over the course of a stay, even a

---

[4] In its motion, Defendants have again mischaracterized the public statements of John Do regarding the City's actions with respect to the preliminary injunction.  Mot. at 9-10.  Far from agreeing that Defendants have been abiding by the injunction, his comment is simply an observation that the only thing preventing the City from serving unhoused San Franciscans without violating their rights or the law is the City itself.  Do Decl. at ¶ 4.  As Plaintiffs' counsel's noted at the last case management conference, Plaintiffs have evidence of ongoing violations of the preliminary injunction.  *See* Jan. 17, 2023 Hr'g Transcript, at 16:2-7.

short one, particularly for witnesses who are housing insecure.  Other key events, such as

depositions, expert reports, and dispositive motion practice cannot proceed without the

Defendants' substantial completion of their document productions.   Thus, a stay preventing any

discovery from occurring over the next seven months will likely push the trial out even further

than April 2025.  A lengthy delay in reaching trial on the merits would prejudice Plaintiffs

because "justice delayed is justice denied."  *Newirth v. Aegis Senior Comm. LLC*, 2017 WL

11551313, at * 2 (N.D. Cal. Nov. 21, 2017) (denying motion to stay where stay would frustrate

or deny Plaintiff's opportunity to see claims adjudicated.)  This harm is exacerbated where, as

here, similar discovery relevant to the claims unaffected by *Grants Pass* will necessarily

proceed, irrespective of the Supreme Court's decision.  *See Whitworth v. SolarCity Corp.*, 2017

WL 2081155, at *4 (N.D. Cal. May 15, 2017) (partially denying stay as to discovery where

plaintiffs had claims that would proceed regardless of the intervening Supreme Court decision).

    The cases Defendants rely on are not to the contrary.  In *McElrath v. Uber Tech., Inc.*, where

a stay was granted, the Court found prejudice was minimal because "the case is in its early

stages," which is not true here.  2017 WL 1175591, at * 6 (N.D. Cal. March 30, 2017).  And in

*Ramirez v. Trans Union, LLC*, the court found prejudice would not occur because the defendant

"modified the conduct about which Plaintiff complains," and "has agreed to bear the costs of

further notice to the class advising them of the stay."  2015 WL 6159942, at * 2 (N.D. Cal. June

22, 2015).  Here, in contrast, Plaintiffs have repeatedly raised their concerns that Defendants are

not complying even with the preliminary injunction, and have resisted or delayed any

modification to their conduct.  *See generally,* ECF 130*; see also* ECF 119; Jan. 17, 2023 Hr'g

Transcript, at 16:2-7; Do Decl. at ¶¶ 2-3.[5]  Moreover, both *McElrath* and *Ramirez* were

proceeding as class actions, and the Supreme Court review at issue directly impacted whether

class certification, an effectively determinative issue, would even remain viable.  As explained

above, *Grants Pass*'s impact on this litigation is minimal.

---

[5] Defendants have also slow-walked the process of developing scripts for use during
encampment resolutions that would provide information to citizens.  Jan. 17, 2023 Hr'g
Transcript, at 20-22.

Defendants should be just as eager to proceed and resolve this case as Plaintiffs. As this court noted, the "city has been telling the world, through its press, to the extent that I'm seeing it, [] how much they care about homeless people." Jan. 17, 2023 Hr'g Transcript, at 19:11-13. The issues raised in this litigation regarding Defendants' conduct seriously challenge whether that is true. The harms alleged in this action are immediate and risk irreparable harm, as this court found in granting the preliminary injunction. ECF 65 at 45:25-26 ("Plaintiffs have demonstrated that they will likely suffer irreparable harm in the absence of preliminary relief.") A stay that freezes all proceedings, including discovery, will necessarily mean that all deadlines will be pushed out even further, harming the unhoused individuals Defendants profess to care about by delaying the entire case.

Furthermore, Defendants mischaracterize Plaintiffs' agreement to a proposed schedule that would have set trial for April 2025. Not only would discovery have continued apace and not been stayed, but the schedule also explicitly called for discovery to be completed by August 2024, which is consistent with Plaintiffs' proposed continuance, which would place the close of fact discovery on or about August 14, 2024. ECF 188, at 8. And in any case, the Court rejected this schedule specifically because "San Franciscans, both housed and unhoused, have demonstrated very high interest in the resolution of this case for good reason, because these issues are impacting many of them every day. So, we all need to work diligently to get toward -- to the finish line, myself included." Sept. 20, 2023 Hr'g Tr. at 5:11-16. Defendants' extended stay would frustrate that goal. In contrast, Plaintiffs' proposal to modestly continue the deadlines will continue to push to that goal while giving Defendants' what they have sought: more time to complete discovery.

Finally, Defendants have attempted to insert a lack of standing as a reason Plaintiffs will not be harmed because they allege at least five of seven individual plaintiffs are housed[6] and because the Coalition does not have appropriate associational standing. The instant motion to stay is an

---

[6] It is not unusual for individuals experiencing homelessness to cycle in and out of housing or shelter. Housing is often unsecure and individuals may still be at imminent risk of homelessness. *See e.g.* ECF 116, at 2-3.

13

1    improper vehicle for Defendants to make yet another meritless standing argument.  Defendants

2    have previously raised standing in a motion to dismiss, which this court denied.  ECF 128 at 6:2-

3    3.  Defendants could have, but chose not to, raise associational standing in that motion.[7]  While

4    Plaintiffs disagree with Defendants' assertions, any issue as to standing is more properly brought

5    in a motion to dismiss—something Defendants cannot do if this court grants a motion to stay.

6                **C.**      **Defendants will not suffer hardship or inequity**

7          Defendants complain that the key reason they will suffer hardship is because they will have

8    to "engage in significant and costly litigation."  Mot. at 12:26-27.  But, "being required to defend

9    a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning

10   of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d at 1112; *cf. Nationwide Biweekly Admin., Inc. v.*

11   *Owen*, 873 F.3d 716, 735 n. 20 (9th Cir. 2017) (Mere "litigation expense, even substantial and

12   unrecoupable cost, does not constitute irreparable injury.")  Indeed, the cases Defendants rely on

13   say exactly this and stays in those cases were granted because of facts not present here.  *See*

14   *supra* fn. 3.  For example, in *Grundstrom,* a stay was granted because the appellate decision

15   effecting whether the case could proceed as a class action would impact the entire case.  2023

16   WL 8429789, at *4-5 (stay granted in light of potential "wasted" resources when appellate

17   review might cause the need to "re-brief class certification" and "re-open discovery.")  In

18   contrast, in the present case, there will be no "wasted resources" because there is no case-wide

19   issue like class certification that would cause the parties or the court to "waste" resources by

20   relitigating it entirely, and Plaintiffs' proposed continuance would both allow discovery relevant

21   to the case post-*Grants Pass* to continue while also pushing any potentially impacted briefing to

22   after *Grants Pass* is decided.

23         Defendants' assertion that the "scope and necessity" of the litigation depends heavily on the

24   outcome of *Grants Pass* ignores the realities of Plaintiffs' claims.  Plaintiffs have only **one** claim

25   that relies upon the Ninth Circuit's interpretation of the Eighth Amendment in *Grants Pass*, but

26   have multiple other claims that relate to displacement of unhoused individuals through

27   ───────────────

28   [7] The court also found that "The Coalition on Homelessness unquestionably has standing to
     pursue all forms of relief sought through this lawsuit."  ECF 128 at 5:22-23.

                                                    14

enforcement and other discovery that is independent of it.  Accordingly, this case will not go away regardless of the outcome of *Grants Pass*.  Similarly, the assertion that "documents and testimony (fact and expert) related to shelter offers, shelter capacity, enforcement policies, incident reports, CADs, SFPD training, and many other categories will be irrelevant," is incorrect.  Mot. at 13:20-23.  Evidence about Defendants' offer of shelters, capacity, enforcement, and related materials will still be ***directly*** relevant to Plaintiffs' other claims, regardless of whether the Supreme Court overturns or modifies *Grants Pass*.  As explained above, *supra* IV.A, this exact type of evidence is relevant to Plaintiffs' claims for state-created danger, for property rights, and violation of federal and state disability law, and Plaintiffs will continue to seek it.  For example, whether Defendants offer, or even have, shelter that accommodates the needs of persons with disabilities will continue to be at issue.  This evidence is relevant even to the Fourth Amendment because such evidence is relevant to whether Defendants deprived Plaintiffs of due process prior to seizing and destroying Plaintiffs' property when Defendants displace them from public spaces.  For example, it is relevant to Plaintiffs' Fourth Amendment claims whether Defendants' offer of shelter requires unhoused people to forego their property or whether Defendants' conduct forced unhoused people to leave their property behind in order to avoid citation or arrest by vacating quickly.  Defendants even agree with this, noting that many of Plaintiffs' claims are "interwoven."  ECF at 204 at 15:20-22.  What Defendants intentionally ignore or fail to recognize is that the same discovery that is relevant to the single Eighth Amendment claim is also relevant to Plaintiffs' twelve other, non-Eighth Amendment claims.  In other words, Defendants will not be harmed by having to produce documents or witnesses that will be relevant regardless of the outcome in *Grants Pass*.

Indeed, Defendants' position ***now***—that it is wasted effort to respond to discovery they unilaterally deem singular to the single Eighth Amendment claim—conflicts with Defendants' position in responding to Plaintiffs' discovery requests.  Plaintiffs served requests specifically requesting policies, practices, and procedures regarding Defendants' provision of disability accommodations or handling of medical devices and medication during encampment resolutions, but Defendants refused to respond on the basis that the requests were duplicative of Plaintiffs'

15

1  prior requests related to planning for encampment resolutions.  Do Decl. at ¶ 3.  It is simply not

2  credible for Defendants to refuse to answer requests targeted to Plaintiffs' disability and state-

3  created danger claims because Defendants viewed them as encompassed in broader requests

4  regarding their conduct at resolutions, and then turn around and tell this court that a stay is

5  necessary because they will otherwise be forced to engage in "wasted effort."

6        **D.       Extending the pre-trial schedule is more reasonable**

7        Moreover, the ***minimal***, entirely speculative harm that might be caused to Defendants "***if*** the

8  Supreme Court rules as described"[8] by them after Defendants have spent some portion of a

9  dispositive motion or expert testimony addressing the single Eighth Amendment claim under the

10  current *Martin* and *Grants Pass* framework would be obviated if, rather than a stay, the case

11  proceeds with a reasonable continuance of current deadlines by ninety days, setting the close of

12  fact discovery to well after the expected Supreme Court ruling date of June 2024.  Upon any

13  decision on *Grants Pass*, the parties can amend the pleadings if necessary.  This sensible

14  approach would alleviate the need to prepare dispositive motion briefing (if any) and expert

15  reports prior to the ruling in *Grants Pass*.  As the parties agree, the scope of discovery will be

16  unchanged by any ruling in *Grants Pass*.  The stipulated number of depositions incentivizes the

17  parties to use their time efficiently and avoid duplication.  Since Plaintiffs will have every reason

18  to conserve their discovery resources, there is no reason to limit the parties' ability to conduct

19  depositions prior to a ruling by the Supreme Court.  Importantly, Plaintiffs' approach would

20  allow crucial discovery, including discovery necessary to monitor compliance with the

21  preliminary injunction, to continue in this case, which would prevent the harm to Plaintiffs a stay

22  would cause.  It would benefit all parties, as well as San Franciscans and the public more

23  generally, by keeping any delay to reach trial on the merits as short as possible.

24  **V.      CONCLUSION**

25

26

27  [8] ECF 204 at 14:17. The Supreme Court may do any number of things with their review in
*Grants Pass*, including affirm in its entirety, dismiss as being improvidently granted or other
28  vehicle problems, or modify to some lesser degree.  Defendants' ***what if*** scenarios are not a basis
for staying all proceedings in this case.

1    For the reasons articulated herein, Plaintiffs respectfully request the court deny Defendants'

2    motion to stay and instead enter a continuance of current case deadlines by ninety days.

3

4    Dated: January 29, 2024                    Respectfully submitted,

5                                               By: */s/ John Thomas H. Do*

6                                               ACLU FOUNDATION OF NORTHERN
                                                CALIFORNIA
7                                               John Thomas H. Do, SBN 285075
                                                William S. Freeman SBN 82002
8                                               39 Drumm Street
                                                San Francisco, CA 94111
9                                               Telephone: (415) 293-6333
                                                jdo@aclunc.org
10

11                                              *Attorney for Plaintiffs*
                                                *Coalition on Homelessness, Toro Castaño, Sarah*
12                                              *Cronk, Joshua Donohoe, Molique Frank, David*
                                                *Martinez, Teresa Sandoval, Nathaniel Vaughn*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17