# Exhibit A

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| JAMES TYSON, et al., | EDCV 23-01539 TJH (KKx) |
| Plaintiffs, | |
| v. | Order<br>and<br>Preliminary Injunction |
| CITY OF SAN BERNARDINO, | |
| Defendant. | |

The Court has considered Plaintiffs' motion for a preliminary injunction [dkt. # 13] and motion for leave to file supplemental evidence in support of their motion for a preliminary injunction [dkt. # 57], together with the moving and opposing papers.

Plaintiffs Noel Harner, Lenka John, and James Tyson were experiencing homelessness in May, 2023, and June, 2023, when they were evicted, and their personal property was seized, by the City of San Bernardino ["the City"] from encampments at Perris Hill Park and Meadowbrook Park in the City. Harner, John, and Tyson have mobility related disabilities that cause them to use wheelchairs. Plaintiff SoCal Trash Army is a volunteer-run, non-profit, unincorporated association that focuses on, *inter alia*, people experiencing homelessness in the Inland Empire.

On November 8, 2023, Plaintiffs filed their First Amended Complaint alleging,

*inter alia*, that the City improperly seizes and destroys personal property belonging to people experiencing homelessness, and that the City fails to provide reasonable accommodations to people with disabilities who are experiencing homelessness during the cleanup and removal of homeless encampments. This case was not filed as a class action.

All Plaintiffs alleged claims against the City for: (1) Discrimination, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ["ADA"]; (2) Failure to provide reasonable accommodations, in violation of the ADA; (3) Violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794; (4) Unreasonable search and seizure, in violation of the Fourth Amendment to the United States Constitution and Article I, § 13 of the California Constitution; and (5) Violation of due process guaranteed by the Fifth Amendment to the United States Constitution and Article I, § 7 of the California Constitution. Additionally, Plaintiffs Harner, John, and Tyson alleged a claim against the City for deliberate indifference, in violation of the ADA, and Plaintiffs Tyson and John alleged a claim against the City for improperly destroying personal property that belongs to people experiencing homelessness, in violation of Cal. Civ. Code § 2080, *et seq.*, and Cal. Gov't Code § 815.6.

The individual Plaintiffs' claims for unreasonable seizure and due process are premised on the broader fact that they are experiencing homelessness, and not specifically because they have disabilities. Likewise, SoCal Trash Army's claims for unreasonable seizure and due process are based on the fact that they work with people experiencing homelessness.

An organization can assert an ADA and/or Rehabilitation Act claim if it can demonstrate: (1) Frustration of its organizational mission; and (2) Diversion of its resources to combat the particular conduct in question. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). SoCal Trash Army was founded in July, 2020, to clean up trash around the City. Thereafter, it expanded its mission to include work with people experiencing homelessness. In November, 2020,

it held its first event focused on food distribution. Then, in January, 2021, SoCal Trash Army began providing, on a regular basis, food to people experiencing homelessness. Shortly thereafter, SoCal Trash Army learned that the City was destroying personal property that belonged to people experiencing homelessness, and was failing to provide reasonable accommodations to people with disabilities who were, also, experiencing homelessness and were evicted from encampments. SoCal Trash Army, then, began replacing personal property that was destroyed by the City, and began assisting people who were not able to move themselves or their personal property after being evicted from encampments. Thus, for purposes of the instant motion, SoCal Trash Army has established that it has standing to assert its ADA and Rehabilitation Act claims, here.

In September, 2022, the City implemented its Citywide Policy on Encampment Cleanups ["the Policy"]. This case was filed because, allegedly, the City is not complying with the Policy.

The Policy mandates that the personal property of people experiencing homelessness must not be treated differently than the property of other members of the public, and that Public Works personnel are not permitted to destroy or dispose of property belonging to people experiencing homelessness except in accordance with the Policy. The Policy requires Public Works personnel to post, at least 72 hours before a cleanup, a Notice of Cleanup stating the date and a three hour window during which the cleanup will start at each targeted encampment. The Policy distinguishes between attended and unattended property. The Policy defines unattended property as personal property left at the site following the 72-hour notice period, where the property owner is not present when City personnel arrive at a cleanup.

At the end of the 72-hour notice period, the Policy requires Public Works personnel to, *inter alia*: (1) Tag unattended property with a 24-Hour Notice of Intent to Store, which states that the City may seize and store the property if it is not removed within the following 24 hours; (2) Post a Notice of Storage with the date and time that

the property was seized, the case number, the phone number that the owner can call to obtain more information and to arrange retrieval of the seized property, and the time during which the property can be retrieved free of charge and without identification; and (3) Store the seized unattended property for 90 days.

The Policy, further, requires the City to provide reasonable accommodations in the form of additional time and/or resources to people experiencing homelessness who are unable to relocate during the cleanup of their encampment.

Since June, 2022, the City's Public Works Department has engaged Burrtec Industries, Inc. ["Burrtec"], a private waste management company under contract with the City, to clean up and remove homeless encampments within the City.

Since September, 2022, the City and/or Burrtec have, allegedly, cleaned up and evicted the occupants of over 2,000 encampments, and intend to continue those cleanups and evictions. Further, the alleged Policy violations during those cleanups have, allegedly, hindered SoCal Trash Army's work distributing food to people experiencing homelessness.

Plaintiffs, now, move for a preliminary injunction.

**Requested Preliminary Injunction**

Plaintiffs seek a preliminary injunction that enjoins the City and its contractors from removing individuals experiencing homelessness, and their attended and unattended personal property, from encampments within the City until the City submits, and the Court approves, a plan that:

(1) Requires the City to post adequate pre-seizure and post-seizure notices, and to implement lawful storage and documentation practices so that seized items are properly tagged and stored for post-seizure retrieval; and

(2) Requires the City to provide – in connection with park closures, encampment clearing, and related property seizure, disposal, and/or destruction – reasonable accommodations to people with disabilities who are, also, experiencing homelessness, including:

|   |     |                                                                           |
|---|-----|---------------------------------------------------------------------------|
|   | (A) | A process that provides for the investigation of reasonable accommodation requests; |
|   | (B) | Modifications to the City's programs and activities;                      |
|   | (C) | Training for City employees and contractors who interact with people with disabilities; and |
|   | (D) | A self-evaluation of the City's programs and activities within one year.  |

**Standard for Injunctive Relief**

Generally, to obtain a preliminary injunction, Plaintiffs must establish that: (1) They are likely to succeed on the merits; (2) They are likely to suffer irreparable harm in the absence of a preliminary injunction; (3) The balance of equities tips in their favor; and (4) An injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is an extraordinary remedy that may be awarded only upon a clear showing that Plaintiffs are entitled to relief. *Winter*, 555 U.S. at 22.

**Likelihood of Success on the Merits**

**1.    Unreasonable Seizure of Personal Property**

Plaintiffs seek an injunction to prohibit, *inter alia*, the illegal seizure of property. The Fourth Amendment's prohibition against unreasonable seizures of property applies to the City through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643 (1961).

The Fourth Amendment prohibits the unreasonable seizure of personal property, even if the property is located in a public area. *See Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553, 558 (9th Cir. 2018). The destruction of personal property is a seizure. *United States v. Jacobsen*, 466 U.S. 109, 124-25 (1984). Further, because a warrantless seizure is *per se* unreasonable, the City bears the burden of showing that a warrantless seizure falls within an exception to the Fourth Amendment's warrant requirement. *See Garcia v. City of L.A.*, 11 F.4th 1113, 1118

(9th Cir. 2021). In *Lavan v. City of L.A.*, the Ninth Circuit Court of Appeals concluded that a municipality's immediate destruction of personal property that belonged to people experiencing homelessness is an unreasonable seizure in violation of the Fourth Amendment. 693 F.3d 1022, 1031 (9th Cir. 2012).

Because private contractors engaged by a municipality are subject to the same Fourth Amendment prohibitions that limit the actions of the municipality, the Court will collectively consider the actions of the City and Burrtec. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

The City acknowledged, here, that its encampment clean ups were done pursuant to neither a warrant nor a warrant exception. In recognition of *Lavan*, the City did not argue that it is reasonable, under the Fourth Amendment, to immediately destroy publicly stored personal property that belongs to people experiencing homelessness. Instead, the City's opposition was premised upon on its asserted practice of not immediately destroying personal property at clean up locations.

In support of the instant motion, Plaintiffs submitted twenty-two declarations from people who witnessed the City's recent encampment clearings. Some of the declarants described instances where the City seized and, then, immediately destroyed personal property that belonged to people experiencing homelessness, including some people who had disabilities.

As an example, Plaintiff John declared that, on May 18, 2023, a City employee informed her that she needed to vacate Meadowbrook Park. She, further, declared that, because she is disabled and relies on a wheelchair and service dog, she could not carry away all of her personal property; that she took two backpacks and a small suitcase with her and planned to return for the rest of her property; and that as she was leaving Meadowbrook Park, she saw a clean up crew throw the rest of her personal property, including her walker, a first-aid kit, a suitcase, and her medical records, into a trash truck.

As another example, Plaintiff Tyson declared that, in early June, 2023, a clean

up crew seized and discarded – without prior notice – his personal property, including, *inter alia*, clothes and hygiene supplies. In sum, Tyson declared that the City seized and immediately destroyed his personal property on five or six different occasions.

Plaintiffs, also, submitted a declaration from Kristen Malaby, the founder of SoCal Trash Army, who declared that SoCal Trash Army replaced hundreds of tents, tarps, and items of clothing that belonged to people experiencing homelessness in the City but were destroyed by the City during encampment clearings.

Declarations may form the basis for a preliminary injunction, unless the facts set forth in them consist largely of general assertions that are substantially controverted by counter-declarations. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1089–90 (9th Cir. 1972). When considering declarations, the Court can give more or less weight to each declaration based on the declarant's personal knowledge and credibility. *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

In opposition, the City submitted eight declarations from its employees to challenge the veracity of the declarations submitted by Plaintiffs. The Court takes note that the City did not submit any declarations from Burrtec employees.

To challenge the veracity of the declarations of John and Tyson, the City submitted a declaration from David Miller, a City Public Works supervisor. Miller declared that the City does not discard personal property that belongs to people experiencing homelessness during encampment clean ups, and that the City discards only trash. However, Miller did not declare that he was present at all of the clean ups identified in the declarations submitted by Plaintiffs, or at all of the 2,406 encampment clean ups conducted by the City and/or Burrtec between September, 2022, and June 30, 2023. Consequently, the Court does not give great weight to Miller's declaration regarding what actually happened at clean ups that he did not specifically declare that he personally supervised from beginning to end. *See Flynt Distributing Co., Inc.*, 734 F.2d at 1394.

After considering all of the declarations submitted by the parties, here, Plaintiffs'

declarations clearly established a *prima facie* case that the City and Burrtec, as the City's agent, seized and immediately destroyed personal property that belonged to people experiencing homelessness, including Plaintiffs John and Tyson. The Court finds that Plaintiffs' declarations were not substantially controverted by the declarations submitted by the City. *See K-2 Ski Co.*, 467 F.2d at 1089–90; *Flynt Distributing Co., Inc.*, 734 F.2d at 1394.

Thus, Plaintiffs have established a strong likelihood of success on the merits for their Fourth Amendment unreasonable seizure claim. *See Winter*, 555 U.S. at 20. Consequently, at this juncture, the Court need not, also, consider Plaintiffs' unreasonable seizure claim in the context of Article I, § 13 of the California Constitution, Cal. Civ. Code § 2080, *et seq.*, or Cal. Gov't Code § 815.6.

**2. Due Process**

Plaintiffs, here, seek, *inter alia*, an injunction to prohibit the illegal taking of property without due process. The Fourteenth Amendment to the United States Constitution prohibits a municipality from depriving a person of life, liberty, or property without due process; any significant taking of property by a municipality falls within the purview of the Fourteenth Amendment. *See Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

In *Lavan*, the Ninth Circuit set forth the due process rights of people experiencing homelessness related to the seizure of personal property. 693 F.3d at 1031–33. Specifically, due process requires the City to provide notice and an opportunity to be heard before *and* after it seizes personal property that belongs to people experiencing homelessness. *See Lavan*, 693 F.3d at 1033.

The City, here, did not dispute the due process rights of people experiencing homelessness. Instead, it argued that the Policy provides sufficient due process and that it acted in accordance with the Policy.

Based on the declarations submitted by Plaintiffs, there were at least several instances where the City failed to provide people experiencing homelessness with an

opportunity to be heard before the City seized their personal property. Further, the Policy, on its face, does not provide for an opportunity for people experiencing homelessness to be heard post-seizure.

Thus, Plaintiffs have established a likelihood of success on the merits for their due process claim based on the Fourteenth Amendment. *See Winter*, 555 U.S. at 22. Consequently, at this juncture, the Court need not, also, consider Plaintiffs' due process claim in the context of Article I, § 7 of the California Constitution, Cal. Civ. Code § 2080, *et seq.*, or Cal. Gov't Code § 815.6.

### 3. ADA and Rehabilitation Act

To assert a claim against the City under § 504 of the Rehabilitation Act, Plaintiffs must, first, show that the City received federal financial assistance. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). To meet that burden, Plaintiffs submitted the City's adopted budget for the 2023 - 2024 fiscal year, which shows the receipt of federal funds from the Corona Virus State and Local Fiscal Recovery Fund, the Community Development Block Grant, the Emergency Solutions Grant, and the HOME Investment Partnership Program.

The ADA prohibits municipalities from discriminating against qualified individuals on account of their disabilities. 42 U.S.C. § 12132. The ADA requires the City to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless [it] can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004). The failure of the City to provide such reasonable accommodations may constitute discrimination under Title II of the ADA and § 504 of the Rehabilitation Act. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

Because Title II of the ADA was modeled after § 504 of the Rehabilitation Act, and their elements do not differ in any relevant respect, the Court can, and will, address those two claims together. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d

1041, 1045 (9th Cir. 1999).

To establish that the City violated Title II of the ADA and § 504 of the Rehabilitation Act, Plaintiffs, here, must satisfy the following four elements: (1) They have disabilities; (2) They were otherwise qualified to participate in or receive the benefit of the City's services, programs, or activities; (3) They were excluded from participation in, or denied the benefits of, the City's services, programs, or activities, or were otherwise discriminated against by the City; and (4) The exclusion, denial of benefits, or discrimination was by reason of their disabilities. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Duvall*, 260 F.3d at 1135–36.

Plaintiffs Harner, John, and Tyson appear to be qualified individuals with disabilities. Harner, John, and Tyson have mobility related disabilities that cause them to use wheelchairs. All of the individual Plaintiffs are qualified and entitled to receive the benefits of the City's programs, activities, and services. *See McGary*, 386 F.3d at 1269–70. Thus, Plaintiffs satisfied the first and second elements of their ADA and Rehabilitation Act claims.

Plaintiffs can satisfy the third element by showing that they were denied a reasonable accommodation needed to enjoy meaningful access to the benefits of the City's services. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). Generally, a person with disabilities must, first, make a request for a reasonable accommodation. *See Duvall*, 260 F.3d at 1139. A reasonable accommodation may, also, be required, without a request, if the accommodation was: (1) Obvious, or should have been obvious, to a public entity; or (2) Required by a statute or regulation. *See Duvall*.

The City's Policy does not set forth a process by which a person experiencing homelessness can make a request for a reasonable accommodation. Regardless, the City acknowledged that the American Civil Liberties Union, which represents Plaintiffs, here, provided Plaintiffs Harner, John, and Tyson with forms to request reasonable accommodations during the clean ups at Perris Hill Park and Meadowbrook

Park. Those Plaintiffs declared that they submitted requests for reasonable accommodations to the City but that the City never responded.

After a person submits a request for a reasonable accommodation based on a disability, or if the accommodation was obvious or required by a statute or regulation, the City is ***mandated*** to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation for the situation. *See Duvall*. For a fact-specific investigation to be adequate, the City must have gathered sufficient information from the person with disabilities who made the accommodation request, as well as from qualified experts, so that it was able to determine whether the requested accommodation was reasonable. *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). When evaluating whether a requested accommodation is reasonable, the City is obligated to consider the particular needs of the person who made the request. *See Duvall*, 260 F.3d at 1139–40. Further, the City could not have summarily concluded, without undertaking the required investigation, that a requested accommodation was neither reasonable nor feasible. *See Duvall*.

The declarations submitted by Plaintiffs describe several instances where the City failed to provide reasonable accommodations to people experiencing homelessness who were, also, disabled. By way of example, John and Tyson both declared that the City did not provide them with the requested assistance to pack and transport their personal property during the cleanup of Meadowbrook Park. Further, Harner declared that the City did not respond to her request to be relocated to a location where she could be with her service dog. Regardless of whether the City received requests, because Plaintiffs Harner, John, and Tyson have mobility related disabilities and use wheelchairs, it should have been obvious to the City that they needed reasonable accommodations to relocate. *See Duvall*, 260 F.3d at 1139.

Consequently, the Court finds that Plaintiffs have established that the City failed to provide people with disabilities, including Harner, John, and Tyson, with reasonable accommodations during the clean up and removal of homeless encampments in the

City. *See Duvall*.

Plaintiffs can satisfy the fourth element of their ADA and Rehabilitation Act claims by showing that the City's denial of access to benefits or services was based on the fact, or perception, that they have disabilities. *See Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997).

To show that the discrimination was based on the fact, or perception, of Plaintiffs' disabilities, they may show that a facially neutral and consistently enforced policy burdened them in a manner different from, and greater than, non-disabled people experiencing homelessness. *See McGary*, 386 F.3d at 1265. To prevent undue burdens on people with disabilities, the ADA imposes an affirmative duty to provide special or preferred treatment as a reasonable accommodation. *McGary*, 386 F.3d at 1266.

Here, Harner, John, and Tyson declared that the City's actions burdened them in a manner different from, and greater than, people without disabilities. *See McGary*, 386 F.3d at 1265. Harner declared that, after the City evicted her from Perris Hill Park, she moved to the side of Perris Hill Park Road where there is no sidewalk. To get out of the dirt, Harner declared that she relies on a friend to push her wheelchair, or she crawls out and pulls her wheelchair behind her, to get to the sidewalk across the street. John declared that, after the City destroyed her walker, she struggles to move in situations where she cannot use her wheelchair. Finally, Tyson declared that, after the City seized his personal property from the parking lot near Meadowbrook Park, he moved to the adjacent ravine, and to get down to the ravine he has to throw his wheelchair down to the ravine and then slide down on his body.

Consequently, the Court finds that Plaintiffs have established a *prima facie* case that the City discriminates against people with disabilities, including Harner, John, and Tyson, based on the fact, or perception, of their disabilities. *See Weinreich*, 114 F.3d at 979.

Thus, Plaintiffs have established a likelihood of success on the merits for their

ADA and Rehabilitation Act claims. *See Winter*, 555 U.S. at 22.

**Irreparable Harm**

Generally, Plaintiffs must show that irreparable harm will continue in the absence of a preliminary injunction. *See Winter*, 555 U.S. at 2021. Plaintiffs seek an injunction based on both their constitutional and statutory claims, here.

A preliminarily established constitutional violation, as is the situation, here, constitutes irreparable harm in support of the issuance of a preliminary injunction. *See Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 140, 1412 (9th Cir. 1991).

In support of a preliminary injunction based on their ADA and Rehabilitation Act claims, Plaintiffs Harner, John, and Tyson declared that they submitted requests for reasonable accommodations to the City but that the City never responded. Further, Harner and Tyson declared that they are currently experiencing homelessness, and live in locations that are not wheelchair accessible after the City evicted them from Perris Hill Park and Meadowbrook Park. Because the City has plans to continue cleaning up and evicting the occupants of homeless encampments, Harner and Tyson are immediately threatened by additional discrimination based on the City's failure to provide reasonable accommodations. Consequently, if a preliminary injunction is not issued, Harner and Tyson are likely to continue to suffer irreparable harm before a decision on the merits is rendered. *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

Accordingly, Plaintiffs have demonstrated that irreparable harm will continue in the absence of a preliminary injunction. *See Winter*, 555 U.S. at 2021.

**Balance of Equities and the Public Interest**

When considering a motion for a preliminary injunction, the Court must balance the equities by identifying the harm that an injunction may cause to the Defendant and weighing that against the risk of continuing injury to the Plaintiffs. *See Armstrong v. Mazurek*, 94 F.3d 566, 568 (9th Cir. 1996).

The Court must, also, consider whether the public interest would be furthered by the issuance of a preliminary injunction. *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940 (9th Cir. 2013). Because a municipality's actions are, presumably, in the public's interest, the balance of equities analysis merges into the public interest analysis. *See Drakes Bay Oyster Co.*, 747 F.3d 1073, 1092 (2014).

Here, the City argued that a preliminary injunction would hamper its efforts to regulate public spaces. Thus, the Court must balance the City's interest in keeping public spaces clean against the constitutional rights of individuals experiencing homelessness to retain their personal belongings and their right to reasonable accommodations if they, also, have disabilities. However, the Court cannot give weight to the Policy, as it has preliminarily found the Policy to be unconstitutional and violative of the ADA. *See Garcia*, 481 F. Supp. 3d at 1050–51.

Further, the Court is, and should be, cognizant of the fact that people experiencing homelessness are members of the community, and their interests, too, must be included in assessing the public interest. *See Le Van Hung v. Schaff*, No. 19-cv-10436-CRB, 2019 WL 1779584 at 7 (N.D. Cal. 2019). Indeed, "[o]ur society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

In sum, the balance of equities, here, tips in the favor of Plaintiffs and the issuance of a preliminary injunction. Likewise, the public interest favors the issuance of a preliminary injunction.

**Waiver of Bond**

Usually, a bond is a condition precedent to the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c). However, the Court may waive the bond when the Plaintiffs are unable to afford its cost or when there is little, or no, harm to the party being enjoined. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003);

*Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

Plaintiffs failed to provide the Court with evidence of their current financial conditions, so the Court cannot consider whether any of them can afford the cost of a bond, though the Court presumes that the individual Plaintiffs who are currently experiencing homelessness cannot afford the cost of a bond. Regardless, the Court finds, here, that the City will not be harmed by the injunction, and that its lack of harm justifies the waiver of the bond requirement, as it did in *Lavan v. City of Los Angeles*, No. 11-cv-2874-PSG, 2011 WL 1533070 at 6 (C.D. Cal. 2011), where a similar injunction was issued.

**Preliminary Injunction**

Plaintiffs have established their entitlement to a preliminary injunction that enjoins the City, its contractors and agents, from removing individuals experiencing homelessness and/or their attended and/or unattended personal property from encampments within the City pending a final resolution of this case or further order of the Court.

The Court will consider vacating the preliminary injunction if the City crafts and presents a lawful revised Policy regarding homeless encampment clean up operations, and if that revised Policy is approved by the Court.

**Plaintiffs' Request for Leave to File Supplemental Evidence**

After Plaintiffs filed their motion for a preliminary injunction, they moved, pursuant to Fed. R. Civ. Proc. 65(a), for leave to file supplemental evidence in support of their motion for a preliminary injunction. The motion for leave to file supplemental evidence is, now, moot.

Accordingly,

𝔈𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Plaintiffs' motion for a preliminary injunction be, and hereby is, 𝔊𝔯𝔞𝔫𝔱𝔢𝔡.

**It is further Ordered** that, pending a final resolution of this case or further order of the Court, the City of San Bernardino, and its employees, agents and contractors, be, and hereby are, **Preliminarily Enjoined**, forthwith, from conducting any operations involving or related to the removal of unhoused people and/or their attended and/or unattended personal property from parks and other publicly accessible locations in the City; the Court will consider vacating this Preliminary Injunction if the City crafts and presents a lawful revised Policy regarding homeless encampment clean up operations and that revised Policy is approved by the Court.

**It is Further Ordered** that the City shall, forthwith, deliver a copy of this Order and Preliminary Injunction to Burrtec and any other contractors and agents it may have.

**It is Further Ordered** that the bond for this Preliminary Injunction be, and hereby is, Waived.

**It is further Ordered** that this Order will serve as the findings of fact and conclusions of law in support of the issuance of this Preliminary Injunction.

**It is Further Ordered** that Plaintiffs' motion for leave to file supplemental evidence in support of their motion for a preliminary injunction be, and hereby is, Denied as moot.

Date: January 12, 2024

_____
**Terry J. Hatter, Jr.**
**Senior United States District Judge**