1   DAVID CHIU, State Bar #189542
    City Attorney
2   YVONNE R. MERÉ, State Bar #173594
    Chief Deputy City Attorney
3   WAYNE SNODGRASS, State Bar #148137
    Deputy City Attorney
4   EDMUND T. WANG, State Bar #278755
    KAITLYN M. MURPHY, State Bar #293309
5   MIGUEL A. GRADILLA, State Bar #304125
    JOHN H. GEORGE, State Bar #292332
6   ZUZANA S. IKELS, State Bar #208671
    STEVEN A. MILLS, State Bar #328016
7   Deputy City Attorneys
    City Hall, Room 234
8   1 Dr. Carlton B. Goodlett Place
    San Francisco, California 94102-4682
9   Telephone:     (415) 554-4675 (Snodgrass)
                   (415) 554-3857 (Wang)
10                 (415) 554-6762 (Murphy)
                   (415) 554-3870 (Gradilla)
11                 (415) 554-4223 (George)
                   (415) 355-3307 (Ikels)
12                 (415) 355-3304 (Mills)
    Facsimile:     (415) 554-4699
13  E-mail:        wayne.snodgrass@sfcityatty.org
                   edmund.wang@sfcityatty.org
14                 kaitlyn.murphy@sfcityatty.org
                   miguel.gradilla@sfcityatty.org
15                 john.george@sfcityatty.org
                   zuzana.ikels@sfcityatty.org
16                 steven.mills@sfcityatty.org

17  Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO, et al.

18                  UNITED STATES DISTRICT COURT

19                 NORTHERN DISTRICT OF CALIFORNIA

20
    COALITION ON HOMELESSNESS; TORO          Case No. 4:22-cv-05502-DMR (LJC)
21  CASTAÑO; SARAH CRONK; JOSHUA
    DONOHOE; MOLIQUE FRANK; DAVID            **REPLY IN SUPPORT OF DEFENDANTS'**
22  MARTINEZ; TERESA SANDOVAL;               **MOTION TO STAY ALL PROCEEDINGS**
    NATHANIEL VAUGHN,                        **PENDING THE SUPREME COURT'S**
23                                           **DECISION IN *GRANTS PASS V JOHNSON***

24          Plaintiffs,                      Hearing Date:    February 8, 2024
                                             Time:            1:00 p.m.
25      vs.                                  Place:           Courtroom 4 – 3rd floor
                                                              1301 Clay Street
26  CITY AND COUNTY OF SAN                                    Oakland, CA 94612
    FRANCISCO, et al.,
27                                           Trial Date:      October 1, 2024
            Defendants.
28

REPLY ISO MOT. TO STAY                                      n:\govlit\li2024\230239\01734059.docx
CASE NO. 4:22-cv-05502-DMR (LJC)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ....................................................................................................................2

    I.      Plaintiffs Failed To Show That The Requested Stay Will Harm Them .................2

          A.      General Assertions Of Impaired Evidence Are Insufficient To Show Harm ...................................................................................................2

          B.      Plaintiffs Disclaimed Any Harm From The Stay........................................4

          C.      Plaintiffs Speculative Harm Can Be Mitigated...........................................4

    II.     San Francisco Risks Wasting Significant, Limited Public Resources Without A Stay ..............................................................................................................5

          A.      *Johnson* Will Dramatically Change The Scope Of Discovery ...................6

          B.      Continuing To Litigate Will Lead To Needless Expenses, Disputes, And Burdens On Non-Parties ..................................................................9

          C.      The Non-Eighth Amendment Claims Do Not Justify The Scope Of Discovery ...............................................................................................11

    III.    The Orderly Course of Justice Weighs In Favor Of A Stay ................................14

CONCLUSION ................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. City of Sacramento*
    234 Cal. App. 4th 41 (2015) ................................................................11

*Arris Sols., Inc. v. Sony Interactive Ent. LLC*
    2017 WL 4536415 (N.D. Cal. Oct. 10, 2017) ...........................................2

*Bernstein v. Virgin America, Inc.*
    2018 WL 3349183 (N.D. Cal. July 9, 2018)............................................15

*Beste v. Lewin*
    488 B.R. 663 (N.D. Cal. 2012) .............................................................13

*Canady v. Bridgecrest Acceptance Corp.*
    2020 WL 5249263 (D. Ariz. Sept. 3, 2020) .............................................9

*Carl Zeiss A.G. v. Nikon Corp.*
    2018 WL 1855525 (C.D. Cal. Feb. 9, 2018) ...........................................15

*Clinton v. Jones*
    520 U.S. 681 (1997)..............................................................................3

*Coppernoll v. Hamcor, Inc.*
    2017 WL 446315 (N.D. Cal. Jan. 17, 2017)...........................................15

*Fed. Trade Comm'n v. Lending Club Corp.*
    2020 WL 4898136 (N.D. Cal. Aug. 20, 2020) ...............................2, 9, 14

*Franklin v. Fox*
    312 F.3d 423 (9th Cir. 2002) ...............................................................13

*Gatekeeper Sys., Inc. v. Rocateq USA, LLC*
    2023 WL 6190883 (C.D. Cal. May 17, 2023) ...........................................3

*Grundstrom v. Wilco Life Ins. Co.*
    2023 WL 8429789 (N.D. Cal. Dec. 4, 2023)...........................................15

*In re Alva*
    33 Cal. 4th 254 (2004) .........................................................................11

*Johnson v. Starbucks Corp.*
    2019 WL 4034479 (E.D. Cal. Aug. 27, 2019) ........................................15

*Jones v. Travelers Cas. Ins. Co.*
    2013 WL 4511648 (N.D. Cal. Aug. 22, 2013) ........................................15

*LG Electronics Inc. v. Eastman Kodak, Co.*
    2009 WL 1468703 (S.D. Cal. May 26, 2009)............................................4

*Lockyer v. Mirant Corp.*
    398 F.3d 1098 (9th Cir. 2005) .................................................................6

*M.H. v. City of San Bernardino*
    2020 WL 3833602 (C.D. Cal. July 8, 2020) ...........................................9

*McAdory v. TTM Techs., Inc.*
    2017 WL 8186697 (C.D. Cal. June 26, 2017) .......................................14

*McElrath v. Uber Technologies, Inc.*
    2017 WL 1175591 (N.D. Cal. Mar. 30, 2017).............................3, 4, 6, 14

*Meras Eng'g, Inc. v. CH2O, Inc.*
    2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ............................................6

*N.K. Collins, LLC v. William Grant & Sons, Inc.*
    2019 WL 10476360 (D. Haw. Dec. 19, 2019)..........................................9

*Nationwide Biweekly Admin., Inc. v. Owen*
    873 F.3d 716 (9th Cir. 2017) ..................................................................6

*Newirth v. Aegis Senior Communities LLC*
    2017 WL 11551313 (N.D. Cal. Nov. 21, 2017) .......................................3

*Phan v. Transamerica Premier Life Ins. Co*
    2020 WL 5576358 (N.D. Cal. Sept. 17, 2020) ......................................14

*Ramirez v. Trans Union, LLC*
    2015 WL 6159942 (N.D. Cal. June 22, 2015) .........................................3

*Rivera v. Saul Chevrolet, Inc.*
    2017 WL 1862509 (N.D. Cal. May 9, 2017) ..........................................15

*Robinson v. California*
    370 U.S. 660 (1962).............................................................................11

*Roule v. Petraeus*
    2012 WL 2367873 (N.D. Cal. June 21, 2012) .........................................3

*Sanchez v. City of Fresno*
    2014 WL 2042058 (E.D. Cal. May 16, 2014) ........................................12

*Sanchez v. City of Fresno*
    914 F. Supp. 2d 1079 (E.D. Cal. 2012) .................................................12

*Santa Cruz Homeless Union v. Bernal*
    2021 WL 1256888 (N.D. Cal. Apr. 1, 2021) .........................................12

*Santa Cruz Homeless Union v. Bernal*
    514 F. Supp. 3d 1136 (N.D. Cal. 2021) ................................................12

*Skulevold v. SD&A Teleservices, Inc.*
  2020 WL 7711834 (C.D. Cal. Nov. 18, 2020)................................................................8, 14

*Tobe v. City of Santa Ana*
  9 Cal. 4th 1069 (1995) .................................................................................................11

*True Health Chiropractic Inc. v. McKesson Corp.*
  2014 WL 12705057 (N.D. Cal. Oct. 22, 2014) ...............................................................3

*Weinreich v. Los Angeles Cty. Metropolitan Transp. Authority*
  114 F.3d 976 (9th Cir. 1997) .......................................................................................13

*Whitworth v. SolarCity Corp.*
  2017 WL 2081155 (N.D. Cal. May 15, 2017)..................................................................3

**Rules**
Fed. R. App. P. 41(b) ......................................................................................................2

Fed. R. Civ. P. 26(b) ......................................................................................................8

Fed. R. Civ. P. 26(b)(1)................................................................................................12

Federal Rules of Evidence 201(b)(2)............................................................................14

N.D. Cal. Civ. L.R. 37-2 .................................................................................................9

**Other References**
*City of San Francisco & Mayor Breed Sued for Harassing Unhoused San Franciscans, Violating Civil Rights to Cover Up the City's Affordable Housing Failures*
  ACLU Northern California (Sept. 28, 2022)
  https://www.aclunc.org/news/city-san-francisco-mayor-london-breed-sued-harassing-unhoused-san-franciscans-violating-civil [https://perma.cc/79BT-RZRB] ......................................................1

*Civil Rights, Law Enforcement, and Legal Services Groups Invite San Francisco City Attorney to Discuss Settlement, Refocus City's Efforts to Improve Homelessness Crisis*
  ACLU Northern California (Aug. 10, 2023)
  https://www.aclunc.org/news/civil-rights-law-enforcement-and-legal-services-groups-invite-san-francisco-city-attorney [https://perma.cc/5G5F-RMP5]............................................................14

Will Jarrett, *Advocates Sue City over Treatment of Homeless People*
  Mission Local (Sept. 27, 2023)
  [https://perma.cc/2EYG-NAEU] ......................................................................................5

The day after this lawsuit was filed, Plaintiffs declared, in the very first sentence of their press release, that they sued "the City and County of San Francisco and Mayor London Breed for their efforts to *criminalize homelessness* through an array of brutal policing practices."[1]  That phrase is no accident.  It comes directly from *Martin v. Boise* and *Johnson v. Grants Pass*.  That precedent – the linchpin of Plaintiffs' case – is under review at the Supreme Court.  With that precedent under scrutiny, Plaintiffs now try to deny the central premise of their case and force San Francisco to waste limited public resources.  The Court should reject this revisionist history and stay the case.

Paradoxically, Plaintiffs claim that they will be gravely injured by staying the case for as few as four or five months, but simultaneously advocate a three-month extension of all deadlines, and previously asked this Court for a case schedule nearly identical to the requested stay.  The Court should look to what Plaintiffs said when they did not face this motion.  Their late-breaking, generic, and self-serving claims of harm are disingenuous and not tethered to the complaint, their claims in their motion for preliminary injunction, or their public statements.  This Court should ignore them.

Plaintiffs concede that producing expert reports, conducting expert discovery, and engaging in dispositive motion practice without the Supreme Court's decision in *Johnson* is a waste of time.  But they nonetheless insist on rushing ahead with discovery based on the meritless assertion that the current discovery will have to happen regardless.  This could hardly be more wrong.  Consistent with the primary focus of this lawsuit – alleged criminalization of homelessness – the overwhelming majority of discovery is only relevant to that claim.  San Francisco risks wasting enormous public resources if required to continue litigating only to have the Supreme Court determine all that litigation was for naught.  A partial stay of a single claim does not mitigate the significant harm imposed on San Francisco and would create wasteful duplication for the parties, Court, and non-party witnesses.  The Court should stay all proceedings pending a decision in *Johnson* that will undoubtedly clarify the scope of this case.

---

[1] *City of San Francisco & Mayor Breed Sued for Harassing Unhoused San Franciscans, Violating Civil Rights to Cover Up the City's Affordable Housing Failures*, ACLU Northern California (Sept. 28, 2022), https://www.aclunc.org/news/city-san-francisco-mayor-london-breed-sued-harassing-unhoused-san-franciscans-violating-civil [https://perma.cc/79BT-RZRB] (Emphasis Added).

**ARGUMENT**

**I.    Plaintiffs Failed To Show That The Requested Stay Will Harm Them**

San Francisco requested a stay of this action until *Johnson* is decided, which will likely occur in fewer than six months.  Plaintiffs, who ask this Court to continue all deadlines for three months, fail to establish a "fair possibility" that a stay of up to three additional months "will cause [them] injury." *Fed. Trade Comm'n v. Lending Club Corp.*, 2020 WL 4898136, at *2 (N.D. Cal. Aug. 20, 2020).

San Francisco identified four reasons why a brief stay would not harm Plaintiffs:  (1) Plaintiffs have foreclosed any argument that they will be harmed by asking for an April 2025 trial; (2) the preliminary injunction already provides much of the relief Plaintiffs pray for at trial and prohibits the alleged harmful conduct during a stay; (3) five of the seven individual plaintiffs are housed and not subject to any of Defendants' alleged misconduct; and (4) Plaintiffs' lack of Article III injury-in-fact shows they will suffer no harm at all, let alone harm from a stay.  *See* Defendants' Motion To Stay All Proceedings Pending The Supreme Court's Decision In *Grants Pass v Johnson,* ("Mot.") at 8. Plaintiffs do not dispute that the existing preliminary injunction prevents any harm they claim a stay will cause, nor do they explain why, given that most of them are housed, they will suffer any harm from a brief pause.[2]  They also make no effort to detail how the Coalition on Homelessness, which is not an unhoused person, will be injured by the requested stay.  Instead, they respond with vague assertions of speculative harm, and fail to describe in any detail why pausing the case for just three months longer than their requested continuance would prejudice them.

**A.    General Assertions Of Impaired Evidence Are Insufficient To Show Harm**

Plaintiffs, without specifying what evidence or which witnesses, assert that between now and June, it is *possible* "evidence will be lost or that witnesses may forget or become unavailable." Plaintiffs' Opposition To Motion To Stay All Proceedings Pending The Supreme Court's Decision In *Grants Pass v Johnson* ("Opp.") at 11.  These general, speculative claims are insufficient to establish harm.  *Arris Sols., Inc. v. Sony Interactive Ent. LLC*, 2017 WL 4536415, at *2 (N.D. Cal. Oct. 10, 2017) (finding no harm where "Plaintiffs' nebulous contention about the loss of evidence is not

---

[2] The preliminary injunction will not change during a stay.  On January 25, 2024, the Ninth Circuit granted the City's motion to extend the time to file a petition for rehearing until 21 days after *Johnson* is decided.  This stays the mandate until 28 days after that decision. Fed. R. App. P. 41(b).

specific enough to be persuasive; exactly what evidence is at risk and how it could possibly be lost is a mystery"); *Gatekeeper Sys., Inc. v. Rocateq USA, LLC*, 2023 WL 6190883, at *2 (C.D. Cal. May 17, 2023) (general assertions of lost testimony and evidence do not show harm because they "are speculative and flow from consequences incidental to any delay in litigation").  Here, the requested stay is finite and brief – nothing like the years-long or indefinite stays in each case Plaintiffs rely on.  *See Clinton v. Jones*, 520 U.S. 681, 707-708 (1997) (staying proceedings for over six years "would increase the danger of prejudice resulting from the loss of evidence"); *Roule v. Petraeus*, 2012 WL 2367873, at *4-5 (N.D. Cal. June 21, 2012) (denying *indefinite* stay); *True Health Chiropractic Inc. v. McKesson Corp.*, 2014 WL 12705057, at *4 (N.D. Cal. Oct. 22, 2014) (same).

Plaintiffs, without explanation or support, contend that trial may be pushed past April 2025 (the date they previously requested), invoking the maxim that "justice delayed is justice denied" (Opp. at 12), but neither case they cite shows they will be harmed.  In *Newirth v. Aegis Senior Communities LLC*, 2017 WL 11551313, at * 2 (N.D. Cal. Nov. 21, 2017), the court denied the defendant's motion to stay because elderly plaintiffs living in defendant's memory care facility "could either pass away or have their memories deteriorate."  Plaintiffs have made no showing of a similar risk here.  Nor is this case like *Whitworth v. SolarCity Corp.*, 2017 WL 2081155 (N.D. Cal. May 15, 2017), in which the court found that, during a stay, absent class members, who had evidence of their uncompensated expenses, "may inadvertently destroy evidence because they are unaware of the litigation."  *Id.* at *1, 3.[3]  Here, there is no such concern.  This is not a class action and Defendants are well aware of their obligations.  A brief stay will not jeopardize the evidence.

Plaintiffs also fail to distinguish *Ramirez v. Trans Union, LLC*, 2015 WL 6159942 (N.D. Cal. June 22, 2015), and *McElrath v. Uber Technologies, Inc.*, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017), each of which granted stays of nearly a year.  Plaintiffs, who have the benefit of an enforceable preliminary injunction, are in a better position than those in *Ramirez,* 2015 WL 6159942, at *2, who had to trust that the defendant would not revert to its harmful conduct during the year-long stay.  And

---

[3] Even so, the court only denied the stay as to the plaintiffs whose claims would continue unchanged in *some* forum – arbitration or court – regardless of the Supreme Court's decision.  *Id.* at *4.  Here, the substance of the law may change, not the forum, so no such partial stay will avoid wasting public resources.

in *McElrath*, 2017 WL 1175591, at *6, there was no reason for a stay because regardless of the Supreme Court's decision, the claims would continue unchanged in either court or arbitration.

San Francisco agrees with Plaintiffs that this case is not a class action (a point they stress in distinguishing Defendants' authority), which is exactly why the Court must examine possible harm to *Plaintiffs* alone, rather than to all "San Franciscans, both housed and unhoused." Opp. at 13. Plaintiffs are the only relevant parties to consider here – and, as they do not dispute, nearly all of them are housed, and each is protected by the preliminary injunction regardless of the stay.[4]

### B.    Plaintiffs Disclaimed Any Harm From The Stay

Plaintiffs previously asked this Court to enter a case schedule with trial starting April 21, 2025 – over six and a half months after the current October 1, 2024 trial date. Plaintiffs now attempt to walk back their request (Opp. at 13), but their previous concession that there was good cause to ask for such a trial date belies their claim that they will now be gravely harmed by a stay reinstating a schedule *they* requested. The fact that the Court rejected the schedule does nothing to undo Plaintiffs' representations that the schedule warranted adoption and would not prejudice them.

For the same reason, Plaintiffs' reliance on *LG Electronics Inc. v. Eastman Kodak, Co.*, 2009 WL 1468703 (S.D. Cal. May 26, 2009), a patent case, is misplaced. Plaintiffs speculate that, as in *LG,* a stay will lead to potential trial witnesses leaving their City positions and being unavailable for trial. Opp. at 11. This possibility posed no problem for Plaintiffs when they asked for an April 2025 trial. In any event, this is a municipal liability case concerning municipal policies and practices, which are routinely addressed through a 30(b)(6) deposition. San Francisco will not cease to exist in 2025.

### C.    Plaintiffs Speculative Harm Can Be Mitigated

Plaintiffs' concerns that they will be harmed without ongoing discovery productions can be easily mitigated. San Francisco has always been committed to litigating this case efficiently and collaboratively and has offered to provide 72-hour notice emails concerning resolutions in addition to three-week productions of the information in paragraphs 5, 9, 10, and 11 of the Ongoing Discovery

---

[4] Plaintiffs' opposition also failed to address the substance of San Francisco's motion underscoring that Fourth Amendment rights are independent rights that cannot be vicariously asserted. Their failure to address this argument concedes that Coalition has no standing and that each Plaintiff is limited to asserting his or her own claim.

Order.  ECF No. 129; Declaration of John George in Support of Reply ("George Decl.") ¶ 3, Ex. I.

While San Francisco does not concede that this discovery is necessary, San Francisco's good faith

proposal ensures Plaintiffs the benefit of their injunction and continued transparency.  By the time this

reply was filed, Plaintiffs have not accepted San Francisco's proposal.

Despite San Francisco's good faith proposal, Plaintiffs concerns about insight into San

Francisco's practices are also divorced from the record.  The Coalition on Homelessness bragged that

prior to this lawsuit, Plaintiffs amassed "a massive body of evidence, collected over three years, that

the city is violating homeless people's rights."[5]  And even during the lawsuit, Plaintiffs gathered what

they continue to characterize as a significant amount of evidence concerning compliance with the

preliminary injunction without the materials subject to the Ongoing Discovery Order (ECF No. 129).

*See* ECF No. 130 (Motion to Enforce, filed the same day).  Their reconstructionist assertion that they

will be unable to "protect their right to ongoing compliance with the injunction" rings hollow. Opp. at

10.  Further, Plaintiffs concede that San Francisco is "addressing encampments" while simultaneously

"respect[ing] the rights of unhoused individuals" and "not criminaliz[ing] them."  *See* ECF No. 204-4

at 5.

Nor are Plaintiffs prevented from the "opportunity to take other discovery as needed."  Opp. at

10.  They can serve any discovery they want, they will just need to wait until the stay is lifted to

receive a response.  This is for good reason.  The discovery they highlight – documents related to the

City's conduct during APEC – is overwhelmingly focused on shelter offers, availability, and other

evidence that is only relevant because of the Ninth Circuit's opinion in *Johnson*.  *See, e.g.*, ECF. No.

204-6 (RFP Nos. 25-26, 28-29, 32-34, 36).[6]

## II.    San Francisco Risks Wasting Significant, Limited Public Resources Without A Stay

"Before Defendant is obligated to show a clear case of hardship . . . Plaintiffs must first make

out a fair possibility that they will be harmed by the stay."  *Meras Eng'g, Inc. v. CH2O, Inc.*, 2013 WL

---

[5] Will Jarrett, *Advocates Sue City over Treatment of Homeless People*, Mission Local (Sept. 27, 2023) [https://perma.cc/2EYG-NAEU].

[6] Since San Francisco began producing the ongoing discovery, Plaintiffs have not relied on that evidence for any credible claims of injunction violations and have not provided a shred of evidence of violations during APEC.  Tellingly, Plaintiffs stop short of accusing the City of violating the injunction during APEC in their Opposition.  Opp. at 14.

146341, at *4 (N.D. Cal. Jan. 14, 2013).  Because Plaintiffs failed to show a stay will harm them, San Francisco need not show hardship.  Regardless, it has done so.  *See* Mot. at 12-16.  Plaintiffs' opposition does not undermine this showing.

Plaintiffs claim San Francisco's "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  Opp. at 14 (quoting *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n. 20 (9th Cir. 2017)).  First, this is the wrong legal standard.  Where, as here, the stay is sought pending resolution of another action, the test requiring "irreparable injury" does not apply.  *McElrath*, 2017 WL 1175591, at *5 (rejecting application of four-part test requiring irreparable injury).  Second, San Francisco is not merely "being required to defend a suit" if a stay is not granted.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).  Instead, it faces a high risk of wasting limited public resources litigating a case that could substantially change.  Plaintiffs acknowledge that there is a significant risk of wasted effort and resources if the parties must disclose expert reports and brief dispositive motions before a ruling in *Johnson*.  Opp. at 16.  The same is true of discovery – if the Supreme Court reverses *Johnson* or significantly changes the law, the entire scope of discovery will change and San Francisco will have been required to review and produce, or extensively litigate whether it is required to review and produce, tens of thousands of documents with no relevance to any surviving claim.  Forging ahead will also needlessly burden many third parties who have filed declarations specifically supporting Plaintiffs' claims of enforcement against the involuntarily homeless, and whom San Francisco has subpoenaed to get information supporting those allegations.  It will also leave San Francisco unable to identify which of Plaintiffs' dozens of witnesses have the most relevant information and which claims to focus on in the limited deposition time.

A.    ***Johnson* Will Dramatically Change The Scope Of Discovery**

Plaintiffs are incorrect that the scope of discovery will remain regardless of the Supreme Court's decision in *Johnson*.  *See* Opp. at 6-8.  The vast majority of requested information is discoverable only because of the Ninth Circuit's current reading of the Eighth Amendment; if that law changes, it will be either irrelevant, or so minimally relevant that it will not meet the proportionality requirements of Federal Rule of Civil Procedure 26.

As San Francisco has shown here, discovery is overwhelmingly tied to alleged enforcement of the laws at issue against involuntarily homeless and the availability of shelter offerings – the linchpin of *Johnson*.  Mot. at 15-16.  The agreed upon search terms used to identify documents responsive to Plaintiffs' requests for production demonstrate just how much of the discovery is tied to enforcement of the laws at issue and shelter offers prior to enforcement.  Of the 59 agreed terms, 41 – nearly 70% – are specific to the Eighth Amendment issue as framed by *Johnson*.  *See* George Decl. Ex. H (highlighting terms specific to the Eighth Amendment claims).  Many terms use keywords reflecting enforcement, shelter offers, shelter availability, and other key issues derived from *Johnson*'s and *Martin*'s interpretation of the Eighth Amendment: *e.g.*, "enforce," "arrest," "cite," "shelter," "bed," "allocate," "647(e)," "168," "sit," and "lie."  *Id.*  The Ongoing Discovery Order is similarly keyed to documents specifically relevant to the Eighth Amendment issues.  *See* ECF No. 129.  Only one category (DPW bag and tag logs) addresses a non-*Johnson* issue, while the remainder – SFPD reports, DEM CADs, daily shelter bed availability, HSOC reports, and training documents – are either exclusively or primarily targeted at alleged Eighth Amendment violations.

The search terms and categories of non-custodial documents generate enormous volumes of information only potentially relevant to the issues in *Johnson*.  For example, the agreed upon search terms, which are heavily-weighted to enforcement and shelter, have been applied to about one year's worth of emails from 22 custodians and have returned more than 130,000 unique documents.[7]  Plaintiffs' requests required the production of more than 80,000 CADs and seek thousands of SFPD incident reports from 2022 and 2023 alone.  San Francisco also faces the massive burden of watching and producing thousands of hours of SFPD body-worn camera (BWC) footage associated with enforcement incidents, and of producing information from HSH's proprietary data-system that tracks shelter offers, referrals, and placements.  The HSH system, which was not designed to create exported reports and contains reams of highly-confidential information about thousands who receive public services, is extremely time-consuming and cumbersome to query.  Because the events in this litigation

---

[7] Plaintiffs demand the City produce all documents from 2018 to the present, which massively increases the volume of documents needing review and production.  Plaintiffs have also repeatedly stated they may demand even more custodians than the current 22.

are ongoing, the City will have to continue collecting, reviewing, and producing huge amounts of footage and thousands more CADs, incident reports, HSH records, and related documents if discovery continues.

The Supreme Court's decision in *Johnson* could render nearly all of this information irrelevant, or so minimally relevant that producing it would no longer be proportional to the needs of the case. For example, HSH's data reflecting shelter offers and every CAD, SFPD incident report, citation, and all associated body-camera footage reflecting enforcement of the enjoined provisions is potentially relevant to Plaintiffs' allegations of enforcement in violation of the Eighth Amendment. If *Johnson* is reversed or significantly curtailed, these documents will no longer be categorically relevant because enforcement will not implicate the Eighth Amendment and there will be no need to prove offers or shelter availability. Even if some small portion could be relevant to Plaintiffs other claims – for example, an incident report showing that SFPD called DPW to bag and tag the items of an arrestee – they can be identified through targeted searches and will not require the wholesale collection, review, and production of broad categories of irrelevant documents. The same is true for the custodial documents and emails collected through search terms. If *Johnson* is reversed or changed, the current terms and custodians (*e.g.*, HSH, SFPD, and DEM employees) will have to significantly change to eliminate the many references to keywords associated with enforcement and involuntary homelessness. This will lead to a completely different, and far less costly, scope of review, with likely tens of thousands fewer documents. Such a narrowed scope of discovery strongly supports a stay. *Skulevold v. SD&A Teleservices, Inc.*, 2020 WL 7711834, at *4 (C.D. Cal. Nov. 18, 2020) ("[T]he parties will need to engage in discovery regardless of the *Duguid* decision, but Defendant has shown that *Duguid* has potential to significantly narrow the issues and thus refine the scope of discovery.").

Even if the information relating to enforcement, shelter offers, bed capacity, and involuntary homelessness, would have some tangential relevance if *Johnson* is reversed, the current scope of discovery is wildly disproportionate to the remaining claims. Plaintiffs are only entitled to documents to the extent their collection and production is "proportional to the needs of the case," which includes considering "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b); *M.H. v. City of*

*San Bernardino*, 2020 WL 3833602, at *3 (C.D. Cal. July 8, 2020) ("Relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case.").  The proportionality calculation remains uncertain while *Johnson* is pending, and if the Supreme Court upends the Ninth Circuit's Eighth Amendment precedent, the burden of producing the current scope of discovery will far outweigh the needs of the case.

The parties cannot work out among themselves – or present to the Court in the form of a discovery letter – any discovery dispute without being able to conduct the proportionality analysis. N.D. Cal. Civ. L.R. 37-2 (discovery disputes must "show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied").  This alone is reason to stay discovery until all of the proportionality factors have settled out, and the parties and Court can correctly determine the metes and bounds of what the parties must produce consistent with Rule 26.  *See e.g., N.K. Collins, LLC v. William Grant & Sons, Inc.*, 2019 WL 10476360, at *3 (D. Haw. Dec. 19, 2019) (denying reconsideration of discovery stay on the basis of proportionality because the pending legal issues which justified the stay "have the potential of limiting the scope of discovery").

## B.    Continuing To Litigate Will Lead To Needless Expenses, Disputes, And Burdens On Non-Parties

The time and money that would be wasted reviewing and producing irrelevant documents is a quintessential harm that numerous courts have held justifies a stay.  *See Lending Club*, 2020 WL 4898136 at *3 ("many cases emphasize the expenditure of party and judicial resources as grounds *for* granting a stay").  Although Plaintiffs acknowledge their discovery requests overlap with multiple claims, they do not, and cannot, parse out which requests should go forward if discovery continues on non-Eighth Amendment claims.  Untangling this overlap, particularly in light of the shifting proportionality analysis, will lead to needless disputes if some portion of discovery is permitted to go forward as Plaintiffs' propose.  *See Canady v. Bridgecrest Acceptance Corp.*, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) (granting stay instead of allowing partial discovery to continue because "[d]etermining exactly which motions and discovery requests would be 'superfluous' has the potential to result in inefficient satellite litigation").

Pressing on, as Plaintiffs want, would also unnecessarily burden dozens of non-parties. Plaintiffs' initial disclosures, identifying 66 trial witnesses, includes 23 non-parties whose anticipated area of testimony is "lived experience of property destruction and criminalization while homeless." ECF No. 204-8.  Under any circumstances, San Francisco will need to serve each of these individuals with one document subpoena, and possibly another for deposition after reviewing documents.  San Francisco cannot efficiently complete this third-party discovery until the Supreme Court's resolves *Johnson* because Plaintiffs proffer them for their lived experience with respect to the alleged criminalization of homelessness – the issue all agree *Johnson* will address.  Practically then, Plaintiffs' proposal risks doubling the number of subpoenas served because San Francisco would need to update its discovery based on the Supreme Court's decision.  Not only does this create extensive duplication for the parties, it doubles the number of opportunities for discovery motions and the burden on non-parties, the majority of whom are not represented by counsel.  And these are only the subpoenas to the persons experiencing homelessness.

Without a stay, San Francisco also faces the task of deciding which of Plaintiffs' dozens of declarants and witnesses it should depose without knowing whether their testimony will even be relevant after the Supreme Court's opinion in *Johnson*.  The 14-deposition limit means San Francisco must choose deponents wisely, but not all witnesses make allegations about each claim.  Without knowing the applicable legal standard at the center of this case, San Francisco cannot intelligently determine which witnesses to depose, which documents to introduce in depositions, or how much of the seven-hour deposition should be dedicated to each claim.  For example, if the Supreme Court reverses *Johnson*, there will be little reason to spend significant time questioning a witness about shelter offers or their financial ability to obtain housing, and San Francisco will be free to use that time to gather information to defend itself from Plaintiffs' remaining claims, an opportunity it loses permanently if forced to take those depositions before *Johnson* is decided.

Plaintiffs clearly recognize, by suggesting a schedule extension, the risk of wasting time and money on experts and dispositive motions – there is no reason to also waste limited public resources on useless discovery and avoidable disputes.

### C.    The Non-Eighth Amendment Claims Do Not Justify The Scope Of Discovery

Plaintiffs contend their claims under the California Constitution, the Fourth and Fourteenth Amendments, and the ADA will require production of exactly the same information as their Eighth Amendment claim.  They are wrong.

Plaintiffs wrongly assert their claim under California's "cruel or unusual" punishments clause will require "identical" discovery as their federal Eighth Amendment claim and, therefore, can support their discovery requests, even if Plaintiffs' Eighth Amendment claim disappears.  But the California Supreme Court has explicitly rejected Plaintiffs' claim.  In *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1104-1106 (1995), the Court rejected the argument that an ordinance prohibiting camping and the storage of personal property in public places "permits punishment for the status of being indigent or homeless," or otherwise violates either the federal Eighth Amendment or its California Constitution equivalent, article I, section 17.  Relying entirely on United States Supreme Court decisions interpreting the Eighth Amendment, California's high court held that article I, section 17 affords no greater protections than the Eighth Amendment to homeless persons with respect to camping on public property.  *Id.* at 1105.  The court questioned "whether 'homelessness' is a status at all" within the meaning of U.S. Supreme Court decisions such as *Robinson v. California*, 370 U.S. 660 (1962), and held that in any event, the ordinance at issue punishes conduct, not status.  *Tobe*, 9 Cal. 4th at 1104-05.  Relying on *Tobe*, the California Court of Appeal has similarly held a local ordinance prohibiting camping on public or private property "punishes the act[] of camping … not homelessness."  *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 60 (2015) (rejecting as-applied challenge alleging cruel and unusual punishment like this case).[8]

Plaintiffs are also wrong that their property claims (Claims 3-8) entitle them to "identical" or even "overlapping" discovery with their Eighth Amendment claim.  Plaintiffs highlight DPW's role in handling the property of homeless people (Opp. at 6-7) but do not explain why the other records Plaintiffs seek – including *every* police incident report, CAD, citation, BWC video, or HSH record

---

[8] Plaintiffs reliance on *In re Alva*, 33 Cal. 4th 254, 291 n. 20 (2004), to suggest California's "cruel *or* unusual" clause offers broader protections than the federal "cruel *and* unusual" clause is inapposite.  The California Supreme Court has "never suggested that article I, section 17 employs a different or broader definition of 'punishment' itself than applies under the Eighth Amendment."  *Id.* at 291.  If the Supreme Courts rejects *Johnson* and *Martin*, then any state law claim fails too.

related to enforcement or a shelter offer (let alone, tens of thousands of emails) will prove or disprove Plaintiffs' property claims. Nor can they. These records, which Plaintiffs want to pursue during the Supreme Court's review in *Johnson,* will not show whether DPW abided by its policy. Even if some tangentially relate to a property seizure (like an incident report stating SFPD called DPW following an arrest), the rule of proportionality requires they be selectively produced and certainly does not justify production of thousands of documents with no or only marginal relevance to Plaintiffs' property claims. Fed. R. Civ. Proc. 26(b)(1).

The same is true of Plaintiffs' state-created danger claims (Claims 9-10), which are based on the alleged danger homeless people face after the City seizes their property. ECF No. 135 at ¶ 308. As with Plaintiffs' property claims, there is no basis for sprawling discovery into tens of thousands of emails or every single police report, CAD, citation, BWC video, or HSH record related to enforcement or a shelter offer. Plaintiffs' unsupported claim that the discovery relevant to their state-created danger claims is "co-extensive with, if not more expansive than, the discovery relevant to the Eighth Amendment claim" (Opp. at 7) is entirely baseless. The two cases Plaintiffs miscite for their contention that merely displacing a homeless person "affirmatively places a person in a position of danger," and thus violates the Fourteenth Amendment, are of no help. In *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012), the claim was not based on a person being moved; instead the court determined the plaintiff stated a state-created danger claim based on seized property.[9] *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1145-46 (N.D. Cal. 2021), is limited to the facts of the case – closing an encampment during the pandemic before vaccines were generally available – and did not find that displacement absent a pandemic would amount to a state-created danger. The court allowed the encampment's closure just a few months later. *Santa Cruz Homeless Union v. Bernal*, 2021 WL 1256888, at *1 (N.D. Cal. Apr. 1, 2021). Without any basis to support the assertion that every request for a homeless person to move amounts to a state-created danger, Plaintiffs

---

[9] The same court granted summary judgment for defendant because the plaintiffs, as here, never showed any injury from the alleged increased risk of danger. *Sanchez v. City of Fresno*, 2014 WL 2042058, at *12 (E.D. Cal. May 16, 2014).

cannot claim the tens of thousands of documents potentially relevant to their Eighth Amendment claim are identically relevant to their state-created danger claims.

Nor can Plaintiffs use their ADA claims to seek Eighth Amendment discovery. To establish an ADA claim, a plaintiff must prove "(1) [they are] a 'qualified individual with a disability'; (2) [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Weinreich v. Los Angeles Cty. Metropolitan Transp. Authority*, 114 F.3d 976, 978 (9th Cir. 1997). Only one plaintiff, Teresa Sandoval, alleges any disability, and the Second Amended Complaint does not allege any relationship or association between Sandoval and the Coalition (let alone any other member of Coalition) that would give the Coalition standing. ECF No. 135, ¶¶ 31-32, 250-251, 318-320. Given the nature of the claim before the Court, discovery related to Plaintiffs' ADA claim would not justify expansive discovery into every interaction between any unhoused person and San Francisco, but instead would be limited to what alleged discrimination, if any, Sandoval has experienced. Police incident reports, CADs, citations, BWC videos, HSH records, and other records concerning enforcement or shelter offers relating to third parties would be irrelevant.[10]

Finally, Plaintiffs' Section 1983 conspiracy claim does not justify the expansive scope of discovery. Plaintiffs cannot, as they claim (Opp. at 8), base their conspiracy claim on a violation of state law. *Beste v. Lewin*, 488 B.R. 663, 671 (N.D. Cal. 2012), adhered to on denial of reconsideration, 2012 WL 6021318 (N.D. Cal. Dec. 3, 2012), and aff'd, 586 F. App'x 352 (9th Cir. 2014) ("Section 1983 claims can only be brought to enforce rights of the United States Constitution and not those of the California Constitution"). Instead, they must establish "an agreement or 'meeting of the minds' to violate" their federal rights. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Because the conspiracy claim necessarily depends on Plaintiffs' underlying federal claims, it cannot support the continued discovery Plaintiffs seek for the reasons described above and, as with their other

---

[10] San Francisco also notes that General Order 56 stays discovery and motion practice in the ordinary course of ADA litigation. Plaintiffs have made no showing to justify expansive discovery.

1 claims, Plaintiffs make no attempt to describe how their conspiracy claim entitles them to the Eighth

2 Amendment discovery they seek, or what discovery, specifically, is relevant to their conspiracy claim.

3 **III.     The Orderly Course of Justice Weighs In Favor Of A Stay**

4 *Johnson* will determine when, if at all, enforcing anti-camping laws against homeless persons

5 implicates the Eighth Amendment.  Plaintiffs put that issue at the front of their litigation more than a

6 year ago.  It was the focus of the preliminary injunction (which relied extensively on *Johnson* and

7 *Martin*), the appeal of that order, the motion to enforce, the vast majority of discovery, and Plaintiffs'

8 public settlement demand.[11]  And, as set out above, the decision has the potential to significantly shape

9 the evidence, proof, burdens, and relief in this case.  This weighs heavily in favor of a stay.  *Lending*

10 *Club*, 2020 WL 4898136, at *4 ("where the question presented before the Supreme Court is 'squarely

11 implicated' in a case, a stay is warranted").  Plaintiffs' two arguments are unpersuasive.  *See* Opp. at 5.

12 Plaintiffs, like many parties who have tried to avoid stays, incorrectly claim a stay is

13 inappropriate unless the case pending in another court will entirely dispose of the action.  *Id.*  As many

14 courts have found, this is not so.  *See Phan v. Transamerica Premier Life Ins. Co*, 2020 WL 5576358,

15 at *3 (N.D. Cal. Sept. 17, 2020) ("Ms. Phan's argument that the pending cases with the appellate

16 courts won't *completely* dispose of every single merits issue in this case, …, is also not a reason to

17 deny the stay."); *McAdory v. TTM Techs., Inc*., 2017 WL 8186697, at *2 (C.D. Cal. June 26, 2017)

18 ("Although the potential resolution of any clash between the NLRA and the FAA won't resolve every

19 issue in this case, it may end up significantly simplifying the proceedings."); *Skulevold*, 2020 WL

20 7711834, at *4 ("courts have stayed proceedings where a pending decision may not settle every issue

21 but nonetheless has the potential to settle many").  Courts have granted stays where another case

22 would provide clarity on even a single procedural issue, and would not affect the merits at all.  *See,*

23 *e.g.*, *Phan*, 2020 WL 5576358, at *3 (staying case for a year to benefit from guidance on class

24 certification); *McElrath*, 2017 WL 1175591, at *7 (same); *Grundstrom v. Wilco Life Ins. Co.*, 2023

---

25 [11] *Civil Rights, Law Enforcement, and Legal Services Groups Invite San Francisco City*

26 *Attorney to Discuss Settlement, Refocus City's Efforts to Improve Homelessness Crisis*, ACLU
Northern California (Aug. 10, 2023) https://www.aclunc.org/news/civil-rights-law-enforcement-and-

27 legal-services-groups-invite-san-francisco-city-attorney [https://perma.cc/5G5F-RMP5].  Five of the
seven substantive demands are shelter or housing related and stem directly from the requirements in

28 *Johnson*.  Judicial notice of the demand is appropriate under Federal Rules of Evidence 201(b)(2).

WL 8429789, at *5 (N.D. Cal. Dec. 4, 2023) (same).  As set out above, Plaintiffs' argument that all discovery relevant to the Eighth Amendment claim is directly relevant to every other claim, and therefore must occur regardless of *Johnson*, also fails.

None of Plaintiffs' authority demonstrates otherwise.  *See Jones v. Travelers Cas. Ins. Co.*, 2013 WL 4511648, at * 2 (N.D. Cal. Aug. 22, 2013) (denying stay where disparate impact claims based on same underlying facts were brought under two statutes, but only one statute could be affected by pending decision); *Bernstein v. Virgin America, Inc.*, 2018 WL 3349183, at *3-4 (N.D. Cal. July 9, 2018) (denying stay where defendant waited months to bring the motion, the pending decisions would not affect the case, and summary judgment was already decided); *Johnson v. Starbucks Corp.*, 2019 WL 4034479, at * 2 (E.D. Cal. Aug. 27, 2019) (denying plaintiff's stay motion where it could lead to a double recovery and, regardless of the pending decisions, all discovery and issues would remain); *Carl Zeiss A.G. v. Nikon Corp.*, 2018 WL 1855525, at *2 (C.D. Cal. Feb. 9, 2018) (denying stay where nearly all the discovery was completed and the other proceeding affected only half the patents).

Plaintiffs also cite the uncontroversial rule that the Court must apply binding precedent until it is changed.  Opp. at 9.  San Francisco does not ask this Court to ignore *Johnson* and apply some other standard.  Plaintiffs' authority is irrelevant because unlike here, each court was asked to ignore binding precedent on the assumption the Supreme Court would modify it.  *Coppernoll v. Hamcor, Inc*. 2017 WL 446315, at *2 (N.D. Cal. Jan. 17, 2017) ("[Defendant] nonetheless contends this court should . . . ignore the [Ninth Circuit's] *Morris* decision as wrongly decided"); *Rivera v. Saul Chevrolet, Inc*., 2017 WL 1862509, at *4 (N.D. Cal. May 9, 2017) ("the Court is bound by the Ninth Circuit's *Morris* decision").  This is no basis to deny a stay.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in San Francisco's motion to stay, this Court should grant the motion to stay.

1   Dated:  February 2, 2024

2                                              DAVID CHIU
                                               City Attorney
3                                              YVONNE R. MERÉ
                                               WAYNE SNODGRASS
4                                              EDMUND T. WANG
                                               KAITLYN MURPHY
5                                              MIGUEL A. GRADILLA
                                               JOHN H. GEORGE
6                                              ZUZANA S. IKELS
                                               STEVEN A. MILLS
7                                              Deputy City Attorneys

8
                                        By:_____ /s/*John H. George*_____
9                                              JOHN H. GEORGE

10                                             Attorneys for Defendants
                                               CITY AND COUNTY OF SAN FRANCISCO; SAN
11                                             FRANCISCO POLICE DEPARTMENT; SAN
                                               FRANCISCO DEPARTMENT OF PUBLIC WORKS;
12                                             SAN FRANCISCO DEPARTMENT OF
                                               HOMELESSNESS AND SUPPORTIVE HOUSING;
13                                             SAN FRANCISCO FIRE DEPARTMENT; SAN
                                               FRANCISCO DEPARTMENT OF EMERGENCY
14                                             MANAGEMENT

15

16

17

18

19

20

21

22

23

24

25

26

27

28