<div align="right">

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

</div>

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., | Case No. 22-cv-05502-DMR |
| Plaintiffs, | |
| v. | **ORDER ON DEFENDANT'S MOTION TO STAY** |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | Re: Dkt. No. 204 |
| Defendants. | |

Plaintiffs are a group of current and formerly homeless residents of the City and County of San Francisco and the Coalition on Homelessness, a non-profit advocacy organization. Plaintiffs challenge certain aspects of San Francisco's official response to homelessness, including its effort to address homeless encampments. Defendants now move to stay the case pending the United States Supreme Court's ruling in *City of Grants Pass v. Gloria Johnson*, Case No. 23-175. [Docket No. 204.] Plaintiffs oppose the motion. [Docket No. 211.] The court held a hearing on February 8, 2024. For the following reasons, the motion to stay is granted in part.

## I.      BACKGROUND

In September 2022, Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 and state law against the City and County of San Francisco ("San Francisco" or "the City") and five San Francisco agencies, challenging the City's alleged "custom and practice of violating the constitutional rights of unhoused people" in San Francisco. [Docket No. 135 (Second Amended Complaint, "SAC") ¶ 2).] The conduct includes Defendants' "enforce[ment of] a series of laws that prevent unhoused residents from sheltering in the City's open spaces when there is no other shelter available" and "campaign to seize and destroy the property of unhoused people with the express purpose of removing visible signs of homelessness from San Francisco's streets." *Id.*

1  Specifically, Plaintiffs challenge San Francisco's alleged "custom and practice of citing, fining,

2  and arresting—as well as threatening to cite, fine, and arrest—unsheltered persons to force them to

3  'move along' from public sidewalks and parks" even though it lacks adequate shelter to offer these

4  individuals, thus "punishing residents who have nowhere to go." *Id*. at ¶¶ 5, 6.  They allege that

5  these enforcement policies violate the Eighth Amendment and the California Constitution's

6  prohibition on cruel and unusual punishment, citing *Martin v. City of Boise*, 920 F.3d 584, 618

7  (9th Cir. 2019). *Id*. at ¶ 6.  Among other claims, Plaintiffs also challenge San Francisco's alleged

8  summary seizure and destruction of homeless individuals' personal property and survival

9  belongings without notice or opportunities to recover their property as violating the Fourth and

10  Fourteenth Amendments and corollary provisions of the California Constitution.  *Id*. at ¶ 8.

11      The SAC, which is the operative complaint, asserts thirteen claims for relief: 1) violation

12  of the Eighth Amendment's prohibition against cruel and unusual punishment; 2) violation of the

13  California Constitution's prohibition against cruel or unusual punishment (Article I, § 17); 3)

14  violation of the Fourth Amendment's prohibition against unreasonable searches and seizures

15  without probable cause; 4) violation of the California Constitution's prohibition against

16  unreasonable searches and seizures without probable cause (Article I, § 13); 5) violation of the

17  Fourth Amendment's prohibition against unreasonable searches and seizures based on destruction

18  of property; 6) violation of the California Constitution's prohibition against unreasonable searches

19  and seizures based on destruction of property (Article I, § 13); 7) violation of the Fourteenth

20  Amendment's guarantee of procedural due process; 8) violation of the California Constitution's

21  guarantee of procedural due process (Article I, §§ 7(a), 15); 9) exposure to state-created danger in

22  violation of the Fourteenth Amendment; 10) exposure to state-created danger in violation of the

23  California Constitution (Article I, § 7(a)); 11) disability discrimination in violation of the

24  Americans With Disabilities Act ("ADA"); 12) disability discrimination in violation of California

25  Government Code section 11135; and 13) conspiracy to deprive Plaintiffs of their federal and state

26  constitutional rights.

27      Shortly after filing the lawsuit, Plaintiffs moved for a preliminary injunction on their

28  Eighth and Fourth Amendment claims.  The court granted the motion in part in December 2022.

United States District Court
Northern District of California

*See Coal. on Homelessness v. City & Cnty. of San Francisco* ("*Coalition*"), 647 F. Supp. 3d 806, 841-42 (N.D. Cal. 2022).  In that motion, Plaintiffs argued that "San Francisco criminalizes involuntary homelessness in violation of homeless individuals' Eighth Amendment rights" under *Martin*.  *Id*. at 832; *see also* SAC ¶ 6.  In *Martin,* the Ninth Circuit held that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter."  *Coalition*, 647 F. Supp. 3d at 832 (quoting *Martin*, 920 F.3d at 616).  *Martin* described such conduct as "an unavoidable consequence of being homeless" and concluded that "so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters], the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying, and sleeping in public."  *Id*. (quotation marks and citation omitted).  Following *Martin*, the Ninth Circuit held in *Johnson v. City of Grants Pass* ("*Johnson I*"), 50 F.4th 787, 813 (9th Cir. 2022), that "'sleeping' in the context of *Martin* includes sleeping with rudimentary forms of protection from the elements, and that *Martin* applies to civil citations where . . . civil and criminal punishments are closely intertwined."  *Johnson I* affirmed certification of a class of all "involuntarily homeless persons living in Grants Pass, Oregon" and a permanent injunction against the municipality's enforcement of anti-camping ordinances against class members.  *Id*. at 795, 797, 806, 812.

Against this legal backdrop, the court issued a preliminary injunction, concluding that Plaintiffs had shown they "are likely to succeed on the merits of their claim that Defendants violate the Eighth Amendment by imposing or threatening to impose criminal penalties against homeless individuals for 'sitting, sleeping, or lying outside on public property' without giving them the option of sleeping indoors" under *Martin*, 920 F.3d at 617, and *Johnson I*, 50 F.4th at 795.  *See Coalition*, 647 F. Supp. 3d at 837.  The court entered the following preliminary injunction corresponding to the Eighth Amendment claim: "Defendants are preliminar[il]y enjoined from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, [five enumerated] laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property[.]"  *Id*. at 841.  The court also granted Plaintiffs' motion for a preliminary injunction with respect to their Fourth

Amendment claim and "preliminarily enjoined [Defendants] from violating San Francisco's bag and tag policy," which requires City employees to store unabandoned personal property rather than discarding or destroying it. *Id*. at 839, 841-42. Defendants appealed the preliminary injunction order.

In July 2023, the Ninth Circuit amended its opinion in *Johnson I* and denied rehearing en banc. *Johnson v. City of Grants Pass*, 72 F.4th 868, 874 (9th Cir. 2023) ("*Johnson II*").

On January 11, 2024, the Ninth Circuit decided San Francisco's appeal of the preliminary injunction, which was affirmed in part and vacated and remanded in part. *Coal. on Homelessness v. City & Cnty. of San Francisco* ("*Coalition II*"), No. 23-15087, 2024 WL 125340, at *1 (9th Cir. Jan. 11, 2024). The Ninth Circuit held that under *Martin* and *Johnson II*, "a person who has refused a specific offer of available shelter is not involuntarily homeless" and remanded "for the district court to clarify that the preliminary injunction applies only to the City's enforcement of the enjoined laws as to the involuntarily homeless." *Id*. (citations omitted). The court kept the preliminary injunction intact "[t]o prevent harm to Plaintiffs . . . while the district court reconsiders its scope and makes any necessary clarifications." *Id*. In a concurrent opinion, the Ninth Circuit addressed Defendants' contention "that the limited geographic scope of the encampment resolutions at issue in this case and the time-limited nature of one of the enjoined ordinances distinguish this case from" *Martin* and *Johnson II* and affirmed on this issue. *Coal. on Homelessness v. City & Cnty. of San Francisco* ("*Coalition III*"), 90 F.4th 975, 977 (9th Cir. 2024).

On January 12, 2024, the Supreme Court granted the City of Grants Pass's petition for a writ of certiorari of *Johnson II* on the following question:

> In *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), the Ninth Circuit held that the Cruel and Unusual Punishments Clause prevents cities from enforcing criminal restrictions on public camping unless the person has "access to adequate temporary shelter." *Id*. at 617 & n.8. In this case, the Ninth Circuit extended *Martin* to a classwide injunction prohibiting the City of Grants Pass from enforcing its public-camping ordinance even though [sic] civil citations. That decision cemented a conflict with the California Supreme Court and the Eleventh Circuit, which have upheld similar ordinances, and entrenched a broader split on the application of the Eighth Amendment to purportedly involuntary conduct. The Ninth Circuit

United States District Court
Northern District of California

nevertheless denied rehearing en banc by a 14-to-13 vote.

The question presented is:

Does the enforcement of generally applicable laws regulating camping on public property constitute "cruel and unusual punishment" prohibited by the Eighth Amendment?

*Grants Pass, OR v. Johnson*, No. 23-175, 2024 WL 133820, at *1 (U.S. Jan. 12, 2024), [Docket No. 204-1 (George Decl. Jan. 17, 2024) ¶ 2, Ex. A (Certiorari Petition).] The California Supreme Court decision cited in the Certiorari Petition as conflicting with *Martin* and *Johnson II* is *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995). *See id*. at 17.

On January 17, 2024, Defendants moved to stay this case, arguing that "[t]he question presented in *Johnson* squarely calls into question the holdings of not only *Johnson*, but also *Martin*." Mot. 6. They ask the court to stay all deadlines in the scheduling order until 30 days after the Supreme Court issues an opinion in *Johnson*, which they assert is expected by late June 2024. *Id*. at 1, 3. Under the existing scheduling order, the deadline to complete fact discovery and disclose experts is May 14, 2024. Rebuttal experts must be disclosed by May 28, 2024 and all expert discovery must be completed by June 11, 2024. The last day for hearing dispositive motions is July 11, 2024 and a bench trial is scheduled to begin on October 1, 2024. [*See* Docket No. 191.]

Plaintiffs oppose the motion to stay; instead, they propose that the case go forward with all case deadlines extended by 90 days to allow the parties time to address the impact of the Supreme Court's ruling in *Johnson*. Opp'n 1. Plaintiffs request that the deadlines for fact discovery and expert disclosure be moved out to August 12, 2024, with rebuttal experts disclosed by August 26, 2024 and all expert discovery due by September 9, 2024. Plaintiffs also ask the court to vacate the dispositive motions deadline and pretrial and trial dates, to be re-set at a future case management conference. [*See* Docket No. 211-4 (Pls.' Prop. Order).]

On January 25, 2024, the Ninth Circuit granted Defendants' motion to extend the time to file a petition for rehearing in *Coalition III* until 21 days after the Supreme Court decides *Johnson*. *See* Reply 2 n.2; Fed. R. App. P. 41(b). Accordingly, the December 2022 preliminary injunction

United States District Court
Northern District of California

1    remains in place.[1]

2    **II.    LEGAL STANDARD**

3         Pursuant to the court's power "to control the disposition of the causes on its docket with

4    economy of time and effort for itself, for counsel, and for litigants," *Landis v. N. Am. Co.*, 299

5    U.S. 248, 254 (1936), a court may "enter a stay of an action before it, pending resolution of

6    independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593

7    F.2d 857, 863 (9th Cir. 1979).[2]  "This rule applies whether the separate proceedings are judicial,

8    administrative, or arbitral in character, and does not require that the issues in such proceedings are

9    necessarily controlling of the action before the court." *Id.* at 863-64.  However, "[o]nly in rare

10   circumstances will a litigant in one case be compelled to stand aside while a litigant in another

11   settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

12        In deciding whether to issue a *Landis* stay, courts consider three factors: (1) "the possible

13   damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party

14   may suffer in being required to go forward"; and (3) "the orderly course of justice measured in

15   terms of the simplifying or complicating of issues, proof, and questions of law which could be

16   expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  "The

17   proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708

18   (1997).  Whether to enter a stay pursuant to a court's inherent powers is a matter entrusted to the

19   court's discretion.  *See Landis*, 299 U.S. at 254 ("[h]ow this can best be done calls for the exercise

20   of judgment, which must weigh competing interests and maintain an even balance.").

21   **III.   DISCUSSION**

22        The parties agree that the Supreme Court is expected to decide *Johnson* by the end of June

23   2024.  Defendants ask the court to stay this case until 30 days after the Supreme Court issues its

---

25   [1] Plaintiffs previously moved to enforce the preliminary injunction.  [Docket No. 130.]  The court
26   denied the motion as to the portion of the preliminary injunction under the Eighth Amendment
     without prejudice and ordered Defendants to submit supplemental evidence with respect to the
27   Fourth Amendment claim.  [Docket No. 180.]  That portion of the motion remains pending.

28   [2] The parties agree that *Landis* controls the issue of whether the court should grant a stay in this
     case.  *See* Mot. 7 & n.7; Opp'n 3.

opinion (i.e., until approximately late July 2024).  Defense counsel represented at the hearing that it is "highly unlikely" that Defendants will seek a further stay.  [Docket No. 220 (Feb. 8, 2024 Hr'g Tr.) 6.]  As such, the question is whether this case should be stayed for the next five months pending *Johnson*.  Defendants seek a full stop; Plaintiffs argue that discovery should go forward.  Both sides ask the court to vacate the dispositive motion deadline, as well as the pretrial and trial schedule.

The parties' arguments center largely on the third *Landis* factor, which examines the "orderly course of justice."  The court will address that factor first.

### A.      Orderly Course of Justice

The third *Landis* factor considers whether a stay would simplify or complicate the "issues, proof, and questions of law."  *CMAX*, 300 F.2d at 268.

Defendants argue that a stay is warranted because "the central issue animating this litigation has been whether San Francisco's enforcement of laws prohibiting sitting, sleeping, lying, and/or camping in public violates Plaintiffs' right to be free from cruel and unusual punishment."  They assert that the Supreme Court's decision in *Johnson* will "bear directly" on this question and will shape "the scope and nature of discovery, the opinions and testimony offered by experts, the standard applicable to dispositive and other motions, the proof that the parties will present at trial, and the availability and scope of the requested relief."  Mot. at 3, 18.

According to Defendants, until the Supreme Court rules, the parties cannot know whether many of the categories of information demanded by Plaintiffs are relevant, including documents and testimony related to shelter offers, shelter capacity, enforcement policies, incident reports, San Francisco Department of Emergency Management dispatch records ("CADs"), and San Francisco Police Department ("SFPD") training.  Defendants argue that if the Court reverses *Johnson II*, those large categories of information "will be irrelevant."  Mot. 13; Reply 7.  They also describe the difficulty the parties face in proceeding with depositions without clarity from the Supreme Court on the Eighth Amendment claim because they will be going forward "without knowing which deponents have relevant knowledge or what questions and answers may be useful" and "working with experts whose expensive testimony may be needless."  Mot. 14.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

Plaintiffs respond that their Eighth Amendment claim is the only one that may be impacted by the Supreme Court's decision in *Johnson*. They argue that *Johnson* will have "little effect on the scope of discovery in this litigation" because the discovery and evidence relevant to their other 12 claims "significantly overlap with discovery relevant to the Eighth Amendment claim." Opp'n 4. In other words, Plaintiffs contend that they will have to conduct essentially the same discovery regardless of what happens to their Eighth Amendment claim. Plaintiffs also assert that at this juncture, Ninth Circuit precedent on the Eighth Amendment "is clear and the court should proceed to apply it" "unless and until the Supreme Court changes the law." Opp'n 4, 9.

Plaintiffs' opposition brief gives a general and somewhat conclusory overview of how discovery related to the Eighth Amendment claim is relevant to and overlaps with discovery on the other 12 claims. *See id*. at 6-8. For example, with respect to claims 3-8, which are based on property rights under the U.S. and California Constitutions, Plaintiffs assert that "the violations often occur at the same sweeps, encampment resolutions, and police dispatches as the alleged Eighth Amendment violations" and that discovery related to the property rights claims therefore overlaps with the Eighth Amendment claim. Their brief does not go into specifics or explain whether there are any differences in the scope of discovery relevant to each claim. *Id*. at 7.

At the hearing, the court asked Plaintiffs to explain in more detail how discovery relevant to their Eighth Amendment claim is "substantially the same" as discovery relevant to the other 12 claims. *See* Tr. 10. Plaintiffs first discussed the substantive due process claims, which are based on a theory of state-created danger. This occurs "where a state actor 'affirmatively place[s] an individual in danger' by acting with 'deliberate indifference to [a] known or obvious danger in subjecting the plaintiff to it.'" *See Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 658 (N.D. Cal. 2021) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006)). Plaintiffs' theory is that Defendants affirmatively place unhoused individuals in danger by closing encampments without offering shelter and destroying their property and survival belongings. *See* Opp'n 7; Tr. 10-11. Accordingly, they argue, evidence of shelter offers, shelter availability, and SFPD records are relevant to those claims. Tr. 11.

8

United States District Court
Northern District of California

The cases cited by Plaintiffs involve circumstances different from those in this case.  In *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021), the court found in January 2021 that residents of an encampment had shown a likelihood of success on the merits of their state-created danger due process claim if the city closed the encampment while "the COVID-19 pandemic [was] surging" and homeless shelters were full.  At the time of the planned closure, a state agency had issued a Regional Stay at Home Order due to surging COVID-19 cases and the CDC had issued guidelines advising local officials to "allow people who are living unsheltered or in encampments to remain where they are" due to the risk of infectious disease spread.  514 F. Supp. 3d at 1138, 1141, 1143.  In granting a preliminary injunction that prohibited the closure of the encampment, the court concluded that "[a]s the COVID-19 crises recedes, the preliminary injunction will need to be revisited."  *Id*. at 1146.  The court later modified the preliminary injunction to allow the city to relocate the encampment.  *See Santa Cruz Homeless Union v. Bernal*, No. 20-CV-09425-SVK, 2021 WL 1256888, at *1 (N.D. Cal. Apr. 1, 2021); *see also Sausalito*, 522 F. Supp. 3d at 658-59 (holding plaintiffs raised serious questions on the merits of state-created danger due process claim based on planned encampment closure and ban on day camping despite CDC COVID-19 guidance to allow people in encampments "to remain where they are" where the defendants "offered no good reason" justifying their actions) and *Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito*, No. 21-CV-01143-EMC, 2021 WL 2141323, at *4 (N.D. Cal. May 26, 2021) (modifying preliminary injunction to allow city to relocate encampment).

Plaintiffs also cite *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012), which was one of more than 30 cases brought by homeless individuals challenging closure of encampments in Fresno in the winter of 2011 and 2012.  *Sanchez* held that a plaintiff stated a substantive due process claim where he alleged that "Defendants timed the demolitions of 'plaintiff's shelter and property essential to protection from the elements' to occur 'at the onset of the winter months that would bring cold and freezing temperatures, rain, and other difficult

1   physical conditions.'"  *Id*. at 1091.[3]  Here, Plaintiffs make no attempt to explain how their claims

2   fit into the relatively narrow boundaries of the state-created danger doctrine.

3          At the hearing, Plaintiffs next discussed their parallel claim under the California

4   Constitution.  Tr. 11-12.  Unlike the Eighth Amendment, the California Constitution is stated in

5   the disjunctive; it prohibits cruel or unusual punishment.  Plaintiffs broadly argue that therefore,

6   the Supreme Court's ruling in *Johnson* will have "no binding effect" on the state law claim.  *See*

7   Opp'n 6 (emphasis removed) (citing *People v. Carmony*, 127 Cal. App. 4th 1066, 1085 (2005)

8   ("[u]nlike its federal counterpart, this provision forbids cruel *or* unusual punishment, a distinction

9   that is purposeful and substantive rather than merely semantic.")).  However, the California

10  Supreme Court has "never suggested that article I, section 17 [of the California Constitution]

11  employs a different or broader definition of 'punishment' itself than applies under the Eighth

12  Amendment."  *In re Alva*, 33 Cal. 4th 254, 291 (2004).  Moreover, in *Tobe*, which the City of

13  Grants Pass cited as conflicting with *Martin* and *Johnson II*, *see* Certiorari Petition 17, the

14  California Supreme Court considered a challenge to an anti-camping and anti-storage ordinance.  9

15  Cal. 4th at 1080.  The lower court had "invalidated the ordinance for the . . . reason that it imposed

16  punishment for the 'involuntary status of being homeless.'"  The California Supreme Court

17  reversed, holding that "[t]he ordinance permits punishment for proscribed conduct, not

18  punishment for status."  *Id*. at 1104.  While *Tobe* is distinguishable because it involved a facial

19  challenge to the ordinance, Plaintiffs admit that their "as applied" theory under the California

20  Constitution is "untested."  Tr. 12.

21         In sum, Plaintiffs' claims for state-created danger and violation of the California

22  Constitution's prohibition on cruel or unusual punishment are, as yet, undeveloped.  The court

23  expresses no opinion about their strength or viability; it merely notes that they have not been

24  fleshed out at all in this litigation.  There is also no clear roadmap for those claims based on

25

26  _____

27  [3] The court later granted summary judgment on the state-created danger claims because plaintiffs "had failed to submit evidence of "serious harm" caused by the defendants' conduct; and did not submit "competent evidence connecting any claimed injury to" exposure to the elements.  *Sanchez*

28  *v. City of Fresno*, No. 1:12-CV-00428-LJO, 2014 WL 2042058, at *11-12 (E.D. Cal. May 16, 2014).

1   existing case law.  At the hearing, Plaintiffs emphasized that the relevant question for this motion

2   is "the scope of permissible discovery," not the merits of their non-Eighth Amendment claims.

3   *See* Tr. 12.  The problem is that Plaintiffs paint their position with a very broad brush.  They have

4   not provided a clear delineation of their non-Eighth Amendment claims, and as such, they have

5   not convinced the court that those claims require substantially the same breadth and scope of

6   discovery relevant to the Eighth Amendment claim.  That discovery involves the review and/or

7   production of more than 80,000 CADs, thousands of SFPD incident reports over a two-year

8   period, thousands of hours of SFPD body-worn camera footage, and over 130,000 documents.  *See*

9   Reply 7.

10           This stands in stark contrast to the primary case relied upon by Plaintiffs.  In *Jones v.*

11   *Travelers Casualty Ins. Co. of Am.*, No. 13-CV-02390-LHK, 2013 WL 4511648, at *2 (N.D. Cal.

12   Aug. 22, 2013), the court found that a stay would not "aid in streamlining the case or helping the

13   Court manage its docket" where a pending Supreme Court decision would impact one of the

14   plaintiffs' theories of liability while the plaintiffs "still ha[d] three other theories to pursue."  *See*

15   Opp'n 6.  In *Jones*, the plaintiffs' claims were for violations of the federal Fair Housing Act

16   ("FHA") and California's Fair Employment and Housing Act ("FEHA").  They alleged direct

17   discrimination and disparate treatment under both the FHA and the FEHA; the sole question

18   before the Supreme Court was whether disparate impact claims are cognizable under the FHA.  *Id*.

19   The court concluded that "[e]ven if the Supreme Court ultimately determines that disparate impact

20   is not a cognizable claim under the FHA," the plaintiffs had three other theories to pursue,

21   including disparate impact under the FEHA.  *Id*.  Unlike this case, the remaining claims in *Jones*

22   were well-defined by existing case law and clearly required the same scope of discovery as the

23   claim impacted by the Supreme Court's decision.

24           It is also not practical or efficient to bifurcate the case and allow discovery to proceed with

25   respect to the property rights claims.  Plaintiffs' Fourth Amendment claims are based on

26   allegations that overlap with their Eighth Amendment claim.  For example, the SAC alleges that

27   Defendants have a "custom and practice of investigatory stops, searches, [and] property seizures . .

28   . pursuant to anti-lodging and sleeping laws that are unconstitutional as applied to unhoused

1    individuals because Defendants do not provide adequate shelter resources" and that these activities

2    are "conducted without reasonable suspicion or probable cause in violation of the Fourth

3    Amendment. *See* SAC ¶¶ 281, 282. Plaintiffs have disclosed witnesses with knowledge of both

4    "property destruction and criminalization of involuntary homelessness," George Decl. ¶ 8, Ex. G,

5    which means that Defendants would have to depose Plaintiffs' witnesses twice if discovery solely

6    on the property rights issues goes forward at this time. Based on the court's understanding of the

7    factual record to date, the same would likely be true for many defense witnesses.

8        The court concludes that the third *Landis* factor weighs in favor of granting a stay.

9        **B.    Harm to Plaintiffs**

10       The parties dispute whether a five-month stay will harm Plaintiffs. Defendants argue that

11   the preliminary injunction "provides more than adequate protection through trial" and that five of

12   the seven individual Plaintiffs in this case are housed and therefore not at risk of harm even absent

13   the preliminary injunction. Mot. 9; George Decl. ¶ 14. Defendants also argue that Plaintiffs will

14   not be harmed because they previously requested a trial in late April 2025, six months after the

15   existing trial date and "therefore foreclosed any argument that they will be harmed by a potentially

16   shorter stay." Mot. 8 (citing Docket No. 188).[4]

17       Plaintiffs respond that they will be harmed by a stay for at least two reasons: first, they

18   contend that their ability to monitor Defendants' compliance with the preliminary injunction will

19   be restricted. Second, Plaintiffs assert that discovery is ongoing, and evidence may be lost or

20   become unavailable during the course of a stay. Opp'n 10-12.

21       With respect to Plaintiffs' monitoring activities, in May 2023 the court ordered Defendants

22   to provide recurring disclosures following a discovery dispute. [Docket No. 129 (May 25, 2023

23   Order).] These included providing 72-hour advance notice of any planned encampment closures,

24

25   _____

26   [4] Defendants also argue that the individual Plaintiffs cannot show harm from a stay because they
     lack Article III standing to pursue their Fourth and Eighth Amendment claims, Mot. 10-11,
     renewing arguments they made in their motion to dismiss the first amended complaint. They also
27   add a new argument regarding whether the Coalition on Homelessness has organizational and
     associational standing. The court previously denied Defendants' motion to dismiss based on the
     individual Plaintiffs' standing. [Docket No. 128 (May 23, 2023 Order) at 5-6.] It declines to
28   address these arguments in the context of the present motion to stay.

United States District Court
Northern District of California

1  24-hour notice of regular encampment cleanings, and ongoing periodic document disclosures,

2  such as San Francisco Police Department ("SFPD") arrest data and incident reports, San Francisco

3  Department of Emergency Management dispatch records ("CADs"), and bag and tag logs.  *Id.*

4  Plaintiffs contend that these court-ordered disclosures are "essential" to enable them to monitor

5  encampment closures and compliance with all aspects of the preliminary injunction, including the

6  alleged Fourth Amendment violations that are not at issue in *Johnson*.  Opp'n 10-11.

7  The court finds that Plaintiffs' concerns about monitoring the preliminary injunction

8  during a stay are valid, but they largely can be mitigated by requiring ongoing disclosures.  In their

9  reply, Defendants offered to provide at least some of the previously ordered disclosure categories,

10  including 72-hour notice of encampment closures, and to produce SFPD incident reports, CADs,

11  bag and tag logs, and daily shelter bed records every three weeks.  Reply 4-5.  This is insufficient.

12  To mitigate the potential harm, Defendants must continue to provide all disclosures as previously

13  ordered.  At the hearing, Plaintiffs asserted that if the court is inclined to grant a stay, Plaintiffs are

14  entitled to both the disclosures previously ordered by the court as well as "any other discovery that

15  would be necessary to monitor preliminary injunction compliance."  However, when pressed by

16  the court, they were unable to provide a list of other discovery they need for that purpose.  *See* Tr.

17  34-36.  The parties will need to work through what additional monitoring material, if any, should

18  be provided by the City to mitigate the potential harm.

19  Plaintiffs also argue that there is more than a "fair possibility" that they will be harmed by

20  a pause in discovery.  They contend that evidence may be lost and "witnesses may forget or

21  become unavailable over the course of a stay, even a short one"; this is a particular concern for

22  "witnesses who are housing insecure."  Opp'n 11-12.  In addition, Defendants may lose their

23  ability to compel trial testimony from employees who leave their employment with the City.

24  Plaintiffs note that this is also true of the Coalition on Homelessness, which has had staff turnover.

25  *Id.* at 11 (citing Do Decl. Jan. 29, 2024, ¶ 7 (noting that Plaintiffs' initial disclosures include

26  individuals who are no longer employed by the Coalition)).

27  The court acknowledges Plaintiffs' justifiable concerns about delaying resolution of this

28  case and the potential loss of evidence during a stay, particularly with respect to the possibility of

13

United States District Court
Northern District of California

1    losing contact with witnesses who are unhoused.  *See* Opp'n 13.  This harm is partly mitigated by

2    the relatively short duration of the requested stay.  The Supreme Court's decision in *Johnson* "is

3    not a 'speculative future event involving multiple contingencies[;]' certiorari has been granted,

4    and 'the only event that the [parties] and the Court are waiting for is the decision itself.'" *Fed.*

5    *Trade Comm'n v. Lending Club Corp.*, No. 18-CV-02454-JSC, 2020 WL 4898136, at *2 (N.D.

6    Cal. Aug. 20, 2020) (quoting *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL

7    4934205, at *3 (N.D. Cal. Nov. 1, 2017)).  Defendants represent it is "highly unlikely" they will

8    request a further stay of this case.

9        In addition, the court can mitigate the potential loss of evidence by issuing a new case

10   management order.  The stay will last approximately five months.  The case has been pending

11   since 2022.  The court has already granted an earlier request to extend the discovery deadline.

12   There is no reason why the case should not move at a brisk pace toward trial following the stay.

13   The court will issue a new case schedule with a November 26, 2024 fact discovery deadline,

14   December 24, 2024 expert discovery deadline, January 23, 2005 deadline to hear dispositive

15   motions, and May 1, 2025 trial date.

16       On balance, after accounting for mitigation, the court concludes that this factor weighs

17   slightly against granting a stay.

18       **C.      Defendants' Hardship and Iniquity**

19       Defendants contend that they would suffer hardship if they are "required to unnecessarily

20   expend time and resources" on litigating the case while the Supreme Court considers *Johnson*.

21   Mot. 12 (citation omitted).  Specifically, Defendants point to "significant and costly litigation,"

22   including their continuing review of documents, depositions, expert discovery, and dispositive

23   motions.  Mot. 12-13.  Defendants argue that the scope of these activities "depends heavily" on

24   *Martin* and *Johnson* and assert that if they are required to go forward despite the "uncertain legal

25   standard central to the case," they will be forced to spend thousands of hours and significant

26   public funds litigating a case that could substantially change.  *Id*. at 14; Reply 6.

27       The court agrees that going forward with discovery could cause appreciable hardship for

28   Defendants, for the reasons set forth above in its discussion of the third *Landis* factor.  "Denying

14

the stay at this juncture risks forcing the parties to expend resources that could have been avoided," *Robledo*, 2017 WL 4934205, at *4, including undergoing discovery which could be significantly affected by *Johnson*. See *Fed. Trade Comm'n*, 2020 WL 4898136, at *3 ("many cases emphasize the expenditure of party and judicial resources as grounds *for* granting a stay," collecting cases (emphasis in original)). This factor weighs in favor of a stay.

* * *

After reviewing the *Landis* factors, the court concludes that Defendants have satisfied their burden to justify a stay, with the following exceptions. As noted, some of the harm to Plaintiffs will be mitigated by Defendants' ongoing disclosures related to monitoring compliance with the preliminary injunction. Defendants shall continue to provide all disclosures as previously ordered. To the extent Plaintiffs believe they need additional discovery to monitor compliance with the preliminary injunction, the parties shall meet and confer and queue up any disputes for adjudication through the joint discovery letter process.

In addition, the court will issue a ruling on the pending motion to enforce the preliminary injunction with respect to the Fourth Amendment claim and will determine if further litigation activity is warranted with respect to that part of the case during the stay.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay is granted in part. The case is stayed until 30 days after the Supreme Court issues an opinion in *Johnson*. During the stay, Defendants shall continue to provide all disclosures as ordered in the May 25, 2023 Order. The court will hold a further case management conference on August 7, 2024 at 1:30 p.m. The parties shall file an updated joint case management conference statement by July 31, 2024.

**IT IS SO ORDERED.**

Dated: February 23, 2024



Donna M. Ryu
Chief Magistrate Judge

*United States District Court*
*Northern District of California*