DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4675 (Snodgrass)
(415) 554-3857 (Wang)
(415) 554-6762 (Murphy)
(415) 554-3870 (Gradilla)
(415) 554-4223 (George)
(415) 355-3307 (Ikels)
(415) 355-3304 (Mills)
Facsimile: (415) 554-4699
E-mail: wayne.snodgrass@sfcityatty.org
edmund.wang@sfcityatty.org
kaitlyn.murphy@sfcityatty.org
miguel.gradilla@sfcityatty.org
john.george@sfcityatty.org
zuzana.ikels@sfcityatty.org
steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 4:22-cv-05502-DMR (LJC)

**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S ADMINISTRATIVE MOTION TO RELATE**

Trial Date: May 1, 2025

The City and County of San Francisco moves to relate two cases filed in the Northern District of California: (1) *Coalition on Homelessness et al. v. City and County of San Francisco et al.*, N.D. Cal. Civil Case No. 4:22-cv-05502-DMR (LJC) and *Jane Roe et al. v. City and County of San Francisco*, N.D. Cal. Civil Case No. 3:24-cv-01562-AMO pursuant to Civil Local Rules 3-12 and 7-11.[1] These lawsuits are dueling sides of the same coin. Both challenge San Francisco's policies and practices around policing public spaces and the unhoused residents who camp there. *Coalition* Plaintiffs argue the City's policies are too draconian and injure San Francisco's unhoused residents. *Roe* Plaintiffs argue San Francisco's policies are too lenient and injure San Francisco's businesses and housed residents. Both sets of plaintiffs pray for injunctive relief and the tension between their prayers is plain. It is therefore likely conducting these cases before different judges will cause an unduly burdensome duplication of labor and expense or a risk of conflicting results.

## I. FACTUAL BACKGROUND

*Coalition* Plaintiffs—seven individuals who experienced homelessness and one non-profit—advocate for San Francisco's homeless community and take the position that San Francisco's current policies go too far. Specifically, they allege San Francisco "pour[s] money into law enforcement operations so that the City can clear evidence of homelessness from City streets" and "seize[s] and destroy[s] the property of unhoused people with the express purpose of removing visible signs of homelessness." *Coalition* ECF No. 135 at ¶¶ 2, 4. Plaintiffs allege San Francisco "cracks down with criminal penalties," has the express goal "to erase any trace of unhoused people from public space[s]," and campaigns "to seek out and summarily destroy the survival belongings of unhoused San Franciscans" living in encampments on public property. *Id*. at ¶¶ 67, 99.

*Roe* Plaintiffs—five housed residents and three businesses who operate in San Francisco's Tenderloin neighborhood—filed their complaint on March 14, 2024. Contrary to the allegations in the *Coalition* case, *Roe* Plaintiffs argue that San Francisco's policies and enforcement do not go far

[1] The *Coalition* action is stayed pending resolution of the Supreme Court's decision in *City of Grants Pass v. Gloria Johnson*, Case No. 23-175. *Coalition* ECF No. 222. San Francisco files this administrative motion during the stay because Civil Local Rule 3-12(b) requires a party to file an Administrative Motion to Consider Whether Cases Should Be Related "promptly," "[w]henever a party knows or learns" of another related action in this district.

enough. Specifically, *Roe* Plaintiffs allege the City's policy decisions led to "an existential crisis" in the Tenderloin because of San Francisco's *refusal* to criminalize drug use and the homelessness Plaintiffs allege flows from it. *Roe* ECF No. 1 at ¶ 6. They allege San Francisco's leniency led to "public sidewalks and spaces" becoming "dangerous, impassable and unsanitary," specifically referencing "sidewalk encampments" where residents "discard[] garbage on the sidewalk around them" and "defacat[e] in public." *Id.* ¶¶ at 7, 10-11, 72, 112. *Roe* Plaintiffs claim San Francisco "allows [persons with substance use disorders] to live on the sidewalks" and that these individuals "block passage of the sidewalks with encampments, bulky items and illegal street vending," and "produce garbage, used drug paraphernalia, and human waste that will befoul the area." *Id.* at ¶¶ 12-15.

Their Complaint make multiple references to the effects of encampments on the Tenderloin neighborhood. *See e.g., id.* at ¶ 39 ("The sidewalks and public spaces in Susan Roe's neighborhood are impassable and inaccessible to her. Encampments and bulky items, such as duffle bags, shopping carts and disassembled bicycles, obstruct the sidewalks.") ¶ 43 ("Encampments . . . disassembled bicycles, and other bulky items also obstruct passage.") ¶ 51 ("Encampments and stolen goods displayed for sale also make the sidewalks impassable.") ¶ 67 ("Encampments, garbage and biological hazards make it difficult or impossible for even able-bodied guests and patrons to navigate on the public walkways around the hotel.") ¶ 72 ("Addicts live in unsanitary sidewalk encampments next to the hotel.").

Both sets of plaintiffs seek declaratory and injunctive relief and allege claims against San Francisco for (1) violation of the 14th Amendment's Due Process rights (*Coalition* claim seven; *Roe* claim six); (2) violation of the State Created Danger Doctrine (*Coalition* claim nine; *Roe* claim eight); and (3) violation of the Americans With Disabilities Act (*Coalition* claim eleven; *Roe* claim one).

## II. LEGAL STANDARD

When a newly filed action is related to an earlier action which "is or was pending in this District," an administrative motion to relate must be filed "in the lowest-numbered case pursuant to Civil L.R. 7-11." N.D. Cal. Civ. R. 3-12(b).[2] Under Civil Local Rule 3-12(a), "[a]n action is related to

[2] Plaintiffs in a third case, *College of the Law, San Francisco, et al. v. City and County of San Francisco*, N.D. Cal. Civil Case No. 4:20-cv-03033-JST, moved to have their lawsuit related to *Roe*. San Francisco takes no position on that motion, which is pending before Judge Tigar, *College of Law*

another when (1) [t]he actions concern substantially the same parties, property, transaction, or event; and (2) [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges." "[T]he second prong of the definition, which emphasizes judicial economy and the risk of inconsistent results, is by far the more important of the two." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715-SC, 2012 WL 3757486, at *4 n.10 (N.D. Cal. July 5, 2012).

## III. ARGUMENT

San Francisco is the defendant in each of these lawsuits. Both cases relate to the same issues of fact and law – the City's policies and practices in response to the homelessness, drug abuse, and mental health crises, including how to deal with the property that accompanies homelessness encampments in the city. The *Coalition* Plaintiffs argue the City's policies go too far while the *Roe* Plaintiffs argue the City does not go far enough.

Even the claims in the lawsuits overlap, but reach opposite conclusions. *Coalition* Plaintiffs allege San Francisco violated the ADA rights of the City's unhoused residents with disabilities by requiring them to move from sidewalk encampments, *Coalition* ECF No. 135 at ¶¶ 320-325, while the *Roe* Plaintiffs allege San Francisco violated the ADA by not requiring encampments residents to move from the sidewalks, thereby rendering the sidewalks impassable to residents with mobility issues, *Roe* ECF No. 1 at ¶ 85. *Coalition* Plaintiffs also allege San Francisco violated the state created danger doctrine by confiscating property from encampment residents, *Coalition* ECF No. 135 at ¶¶ 308-310, while *Roe* Plaintiffs allege San Francisco violated the same doctrine by failing to manage the property at encampments, which put residents who live or work in buildings around the encampments at risk, *Roe* ECF No. 1 at ¶ 116.

The overlaps in parties, facts, and law make these cases ideal for relation because they have "at a minimum, sufficient overlap to create duplication of effort." *Fin. Fusion, Inc. v. Ablaise Ltd.,* No. C-06-2451 PVT, 2006 WL 3734292, at *3 (N.D. Cal. Dec. 18, 2006); *see also Our Children's Earth*

---

ECF No. 127, and files its motion to relate in this case because *College of the Law* Plaintiffs do not seek to relate the *Coalition* action. *Compare Levitte v. Google, Inc.*, No. 08-03369 JW, 2008 WL 4367551 (N.D. Cal. Sept. 19, 2008) (declining to rule on motion to relate while there was a pending motion to relate the same cases before another judge).

*Found. v. Nat'l Marine Fisheries Serv.,* Nos. 14-1130 SC, 14-4365 SC, 2015 WL 4452136, at *12 (N.D. Cal. July 20, 2015) (relating cases involving "substantially the same matter" despite "slightly differing parties"); *In re Leapfrog Enters., Inc. Sec. Litig.,* No. C-03-5421-RMW, 2005 WL 5327775 at *1 (N.D. Cal. July 5, 2005) (relating cases involving different plaintiffs that "name the same defendants, make similar factual allegations, and seek redress for violation of the same sections" of the securities laws).

The benefit of consolidation here is especially high because both actions—to the extent they are not resolved by motion practice—will proceed as bench trials where the judge will have the additional responsibility of serving as the fact finder. If the cases are not related, two courts will have to familiarize themselves with the same facts and law. The inefficiency of asking two courts to master the relevant facts in these cases is significant given that the lawsuits are fact-intensive challenges to broad policies and practices. The parties submitted more than 100 declarations in connection with *Coalition* Plaintiffs' motion for a preliminary injunction and subsequent motion to enforce. *Coalition* ECF Nos. 9, 45, 48, 130, 143, 157. The marginal cost of requesting an additional judge spend time digesting this universe of relevant information is high.

It is also likely that the Court will risk conflicting results (and potentially conflicting injunctions) if the cases are conducted before different judges because both lawsuits seek declaratory and injunctive relief. *Our Children's Earth Found*, 2015 WL 4452136, at *12 (noting lawsuit seeking "declaratory relief and injunctive relief alleging an ongoing pattern and practice" counseled in favor of relating two actions). That risk is reasonably managed by putting both cases before the same judge who is less likely to reach conflicting or inconsistent rulings.

San Francisco faces significant prejudice if the cases proceed before different judges who produce orders that are arguably in conflict. This risk is not hypothetical. The parties and the Court already dealt with the inefficiency tension between conflicting rulings around homelessness can create between the Court's preliminary injunction in the *Coalition* case and the stipulated injunction in a third case challenging the City's homelessness policies—*College of the Law, San Francisco et al. v. City and County of San Francisco*, N.D. Cal. Civ. Case No. 4:20-cv-3033-JST. *College of the Law* ECF No. 98. The *College of Law* Plaintiffs—who are represented by the same counsel as the *Roe*

Plaintiffs—recently filed a motion to enforce the stipulated injunction, which discusses the preliminary injunction in the *Coalition* case at length. *College of Law* ECF No. 126. They assert Judge Tigar, who is presiding over *College of Law*, "would not be bound by" the preliminary injunction, *id*. at 7:19-22, quoting Judge Bumatay's dissent that the injunction's "legal rulings are not the law of our court and they should be disregarded by other judges in this circuit." *Id*. at 7:21-24; *see also id*. at 8:7-9 ("Thus, to the extent the Stipulated Injunction and Judge Ryu's Order conflict, the Court can and should enforce the terms of the prior-in-time Stipulated Injunction."). The *College of Law* Plaintiffs also argue Judge Tigar can require San Francisco to enforce the enjoined laws against individuals without first making them an offer of shelter so long as those individuals can relocate to other public areas, "such as parks, beaches, or plazas," again relying on Judge Bumatay's dissent. *Id*. at 3:3-11; 4:3-5; *id*. at 7:8-11 ("While the City waived this argument in Coalition on Homelessness, [Judge Tigar] is free to consider it here and to conclude that the City must comply with the Stipulated Injunction regardless of the availability of unused shelter spaces."). The risk that Plaintiffs' counsel in *Roe* will make similar arguments is considerable since both parties are represented by the same counsel. Relating the *Coalition* and *Roe* cases manages the burden of conflicting rulings on the Court and parties, and decreases the risk of other plaintiffs charting a similar course as the *College of Law* Plaintiffs.

## IV. CONCLUSION

The two lawsuits include substantially the same parties—San Francisco and its residents—and substantially the same events—San Francisco's policies and response to the homelessness, drug abuse, and mental health crises. They also involve substantially the same legal questions—purported constitutional, disability, and property rights claims. It is not surprising that different groups of stakeholders have different ideas on how San Francisco should respond to these issues. But their differing opinions increase the risk for inconsistent results if these lawsuits go forward before different judges. The danger of conflicting results is especially concerning when lawsuits seek injunctive relief on matters of public interest, as both the *Coalition* and *Roe* cases do. San Francisco therefore respectfully requests the Court relate the *Coalition* and *Roe* cases.

Dated: March 21, 2024

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
ZUZANA S. IKELS
STEVEN A. MILLS
Deputy City Attorneys

By: */s/ Kaitlyn Murphy*
KAITLYN MURPHY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT