ACLU FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 8202
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al.,<br>    Plaintiffs,<br>v.<br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br>    Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION TO RELATE CASE TO ROE ET AL., CASE NO. 3:24-CV-01562** |

1    Plaintiffs in this matter ("*COH*") submit that this Court reject Defendants' second attempt to transfer this case away from this Court. On October 3, 2023, the Defendants moved to relate this case to *College of the Law, San Francisco, et al. v. City and County of San Francisco*, N.D. Cal. Civil Case No. 4:20-cv-03033-JST ("*UC Law*"). Judge Tigar correctly determined the two cases were not related. *UC Law* Dkt. Nos. 119 and 121. Months later, the same *UC Law* lawyers have filed a similar case concerning the Tenderloin, *Jane Roe et al. v. City and County of San Francisco*, N.D. Cal. Civil Case No. 3:24-cv-01562 ("*Roe*"). That *Roe* was found to be related to *UC Law*, *Roe* Dkt. No. 20, only emphasizes that *COH* is not related to either, as was already determined when Defendants' first motion was denied. As before, Defendants' legal maneuvering to avoid unfavorable rulings in *COH* is inappropriately timed, concerns distinct cases, would waste resources, encourage "judge shopping," and otherwise prejudice Plaintiffs, who have been litigating in this Court for close to a year and a half.

**I.   THE CITY'S MOTION IS BOTH INAPPROPRIATELY TIMED AND MOOT**

Save for matters related to the preliminary injunction, this case is stayed. *See COH* Dkt. No. 222. But Defendants now ask this Court to suspend the stay to relate this case to *Roe* and force Plaintiffs to respond. And relating the cases may require the parties to coordinate while the *COH* stay remains in effect (with an appeal where the mandate has not even been issued). The motion should be denied on this basis. *See Carlyle Fortran Trust v. NVIDIA Corp.*, Nos. C 05-00427 JW, C 08-04634 RMW, 2008 WL 4717467, at *1 (N.D. Cal. Oct. 24, 2008) (noting "current inactive or on-appeal status of the allegedly related cases"); *Cf. Pepper v. Apple, Inc.*, No. 11-cv-06714-YGR, 2019 WL 4783951, at *2 (N.D. Cal. Aug. 22, 2019) (noting cases had same early posture).

Further, the *Roe* parties have previously declined the opportunity for this matter to be heard by this Court along with the *COH* case. *Roe* Dkt. No. 12. Given this clear indication that at least one *Roe* party would divest this Court of jurisdiction over the fully consented *COH* matter, the motion should be denied as moot. *See, e.g.*, *Par Pharm., Inc. v. Takeda Pharm. Co.*, No. 13-CV-01927-LHK, 2013 WL 12221673, at *2 (N.D. Cal. Oct. 28, 2013) (finding motion to relate moot where a nonmoving party previously declined to proceed before a Magistrate Judge).

**II.   ROE FOCUSES ON NARCOTICS ACTIVITY IN THE TENDERLOIN WHILE**

**COH CONCERNS THE INTERESTS OF UNHOUSED PEOPLE CITYWIDE**

With Judge Tigar already determining that *UC Law* is unrelated to *COH*, this Court need not revisit the question as to whether *COH* is related to a lawsuit with different parties, scope, and claims about narcotics activity in the Tenderloin neighborhood. *UC Law* Dkt. No. 121. The cases involve different individual and organizational plaintiffs, City departments, scope and geography, factual allegations, and substantive claims. And even when "there may be some overlap in issues, that is not the test for relating cases." *Allen v. City of Oakland*, No. 00-cv-4599-TEH, 2011 U.S. Dist. LEXIS 135556, at *6 (N.D. Cal. Nov. 23, 2011).

Even more so than *UC Law,* the main thrust of the *Roe* concerns alleged public drug use, "open drug market," the sale of stolen goods, violence in public spaces, and unspecified "large crowds" in the Tenderloin. *Roe* Dkt. No. 1, ¶¶ 1-19 (introduction to *Roe* complaint) and 27-29, 33, 40, and 45-46 (discussing same without regard to homelessness); *see also* UC Law Dkt. No. 127. (same *UC Law* and *Roe* counsel describing cases as challenging a "'containment zone' for illegal narcotics activity and associated harms[,]" the confining of "illicit drug dealing and usage, illegal open-air markets, loitering, and injurious behaviors associated with those activities to the Tenderloin"). *Roe* was brought by business interests and unnamed homeowners, housed residents, or workers arguing that the City has created a nuisance which deprives them access to safe, clean streets in the Tenderloin. *Roe* Dkt. No. 1, ¶¶ 25-79, 97-107, and 119-127. Notably, the *Roe* plaintiffs do not even allege that the perpetrators of the alleged drug sales and violence are unhoused people. In stark contrast, *COH* is brought on behalf of a nonprofit organization and seven unhoused individuals who challenge different city departments' coordinated response to homelessness, which criminalize homelessness, dispose of unhoused people's belongings without due process, discriminates against unhoused people with disabilities, and puts unhoused people in harm across the entire city. *COH* Dkt. No. 211 at 1-2, 4-9 (summarizing *COH* claims).

Attempting to connect the two matters, Defendants mischaracterize Plaintiffs' claims. For example, Plaintiffs do not argue the City violates the ADA merely by asking them "to move from sidewalk encampments." COH Dkt. No. 224 at 3. Rather the *COH* ADA claim concerns what accommodations are provided and whether any offered shelter/housing is appropriate. *COH* Dkt.

No. 135 at ¶¶ 320-325. The *COH* ADA claim does not preclude enforcement of laws related to disability access. Defendants similarly misstate the state-created danger claims. Plaintiffs' claim arises from Defendants' unlawful destruction of unhoused individuals' survival belongings and failure to offer shelter, in violation of Defendants' own policies, while the *Roe* state-created danger claim is based on an alleged exposure to "dangerous conditions," i.e., the issues of narcotics and violence that are the thrust of that complaint. *Compare COH* Dkt. No. 135 at ¶¶ 309-310 *with Roe* Dkt. 1 at ¶ 116. These claims do not overlap let alone require reaching opposite conclusions.[1]

"[I]mplicit in Civil Local Rule 3-12(a) is the principle that single judges of this Court do not become responsible for all cases arising in one area of law, even when some of the same parties are involved." *Allen*, 2011 U.S. Dist. LEXIS 135556, at *6. So even if both cases substantially concern homelessness (which *Roe* does not), neither this Court nor Juge Tigar should be solely responsible for all matters that touch upon homelessness.

### III.   RELATION WOULD NOT IMPROVE EFFICIENCY, WASTING RESOURCES

Because *Roe* and *COH* concern wholly different factual circumstances, events, and issues, no efficiencies are gained by relating the cases. The Court in *Roe* will have to evaluate the *Roe* plaintiffs' allegations about the City's response to public drug use, "open drug market[s]," the sale of stolen goods, and street violence—conduct that cannot be conflated with homelessness and is not attributed in the *Roe* complaint to individuals who are homeless. The Court in *COH* will have to evaluate different factual allegations regarding the City's adherence to its own policies on shelter offers to individuals who are involuntarily homeless and removal and storage of unhoused individuals' survival belongings. Forcing a single fact-finder or judge to address such disparate issues does not save labor or expense, and there is little to no risk of duplication of efforts.

---

[1] Moreover, Defendants cite inapposite case law where the cases were for more interrelated. *See COH* Dkt. No. 224 at 3-4, citing *Fin. Fusion, Inc. v. Ablaise Ltd.*, No. C- 06-2451 PVT, 2006 WL 3734292, at *3 (N.D. Cal. Dec. 18, 2006) (related cases involving different vendors who had the same contractual relationship with the same defendant about the same intellectual property and same claim); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, Nos. 14-1130 SC, 14-4365 SC, 2015 WL 4452136, at *12 (N.D. Cal. July 20, 2015) (relating cases with only "slightly differing parties"); *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-5421-RMW, 2005 WL 5327775 at *1 (N.D. Cal. July 5, 2005) (relating cases seeking redress for violation of the exact same sections of the securities laws for similar investor losses).

Relating *Roe* and *COH* at this stage in the *COH* litigation also would disrupt the ongoing proceedings and potentially interfere with the trial date. Although the case is stayed pending the Supreme Court's decision in *Johnson v. Grants Pass*, the Court has set trial to begin May 1, 2024—nine months after the conclusion of the stay—and has reiterated the need for timely resolution, given the importance of the issues. *See, e.g.*, Sept. 20, 2023 Hr'g Tr. at 5:11-16. By contrast, *Roe* is newly-filed. The procedural challenges of relating a case that has been heavily litigated, but stayed, with a factually distinct case that is just beginning further counsel against relation. *See Carlyle Fortran Trust*, 2008 WL 4717467 *1; *Cf. Pepper*, 2019 WL 4783951, at *2.

Additionally, relating the cases may divest this Court of jurisdiction over the matter by (1) giving the *Roe* parties the opportunity to decline consent (again) to proceed before a Magistrate Judge or (2) transferring this matter to Judge Tigar as Defendants originally sought just last year. Civ. L. R. 3-12. This case has been extensively litigated before this Court: In December 2022, based on an extensive factual record involving over 50 declarations from the parties, this Court issued a 50-page preliminary injunction order, which has since been affirmed by the Ninth Circuit. *COH* Dkt. No. 65. Pending before the Court is Plaintiffs' motion to enforce the preliminary injunction, which itself is based on an extensive factual record involving dozens of additional declarations from the parties and supplemental briefing. *See, e.g.*, *COH* Dkt. Nos. 130, 143, 157, 193, 196. The parties have been engaged in discovery prior to the issuance of the stay, and the Court has ruled on numerous discovery issues. *See, e.g., COH* Dkt. Nos. 44, 113, 122, 127, 129, 163. Substituting a judicial officer who would have to get up to speed on the complex details of the existing factual and procedural record for one who is already immersed in that record is inefficient and a waste of judicial resources. Where discovery is well underway and the Court has already issued a lengthy substantive order, judicial economy is "better served" by declining to relate the cases. *Rezner v. Bayerische HyperUnd Vereinsbank AG*, No. 06-cv-02064, 2009 WL 3458704, at *1 (N.D. Cal. Oct. 23, 2009).

## IV. THE PROSPECT OF "CONFLICTING RULINGS" IS DUBIOUS AT BEST

The COH litigation does not prevent the City from addressing the fentanyl epidemic or ensuring safe, clean, and accessible streets. Preliminary Injunction, *COH* Dkt. No. 65 at 47. There

is no reason why the two matters cannot continue without significant conflict, particularly given the many factual differences. The City speculates about potential conflicting rulings based on the prior *UC Law* stipulated injunction, but no such conflicts exist. Rulings in *COH* may spells out how to enforce certain laws against unhoused people, but the City is still free to enforce all other laws regarding narcotics, sale of stolen goods, street cleaning, and disability access. *Id.*

The City unsuccessfully raised the "conflicting rulings" argument over a year *ago*, with the Court noting no apparent conflict. *See* Admin. Motion for Clarification of PI Order, *COH* Dkt. No. 70, at 4:12-13; Hr'g Tr., *COH* Dkt. No. 91 at 24:9-14. Even the *UC Law* plaintiffs *agree* that there is no conflict. *See* UC College of Law, Amicus Br., at 6-9, (Ninth Cir. No. 23-15087, Dkt. No. 17-2 at 10-12. As for potential enforcement of the *UC Law* stipulated injunction, the *only* portion that may survive is the vague promise that "[a]fter the COVID-19 emergency … [t]he parties agree to work together to improve living conditions in the Tenderloin." *UC Law* Dkt. No. 71 at 5:1-5. This aspiration hardly foretells any real conflicting rulings.

## V.   THIS MOTION STILL ENCOURAGES "JUDGE SHOPPING"

Far from concealing their frustration with this Court's rulings, Defendants have complained loudly and often; Defendants have even criticized this Court's encouragement of transparency and cooperation concerning the Court's rulings and the homelessness crisis, claiming this month that it has been "subjected to this unjustified and ongoing judicial overreach". Brief of *Amicus Curiae* on Writ of Certiorari, *City of Grants Pass v. Oregon,* No. 23-175, at p. 30-31. It is not surprising that the City might wish to effectively divest this Court of jurisdiction through this motion to relate. And while claiming promptness, Defendants waited until after the response deadline for the *UC Law* motion to relate had passed before informing Plaintiffs of their instant motion to relate. *COH* Dkt. No. 224-1 ¶3; *UC Law* Dkt. No. 127. Regardless of intent, even the *appearance* of judge-shopping weighs against relating cases. *Rezner,* 2009 WL 3458704, at *2.

## VI.   CONCLUSION

Defendants' arguments have been rejected before and should be rejected again here.

Dated: March 25, 2024                          Respectfully submitted,

1                                            By: */s/ John Thomas H. Do*

ACLU FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman, SBN 82002

*Counsel for Plaintiffs*