DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-3857 (Wang)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
              (415) 554-4223 (George)
              (415) 355-3307 (Ikels)
              (415) 355-3304 (Mills)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              edmund.wang@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org
              john.george@sfcityatty.org
              zuzana.ikels@sfcityatty.org
              steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DECLARATION OF CARLA SHORT PURSUANT TO ORDER ON MOTION TO ENFORCE THE PRLIMINARY INJUNCTION RE: FOURTH AMENDMENT CLAIM (ECF NO. 231)**<br><br>Trial Date:　　　　May 1, 2025 |

SHORT DECL. PURSUANT TO ORDER
CASE NO. 4:22-cv-05502-DMR (LJC)

n:\govlit\li2022\230239\01779902.docx

I, Carla Short, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am the Director of the San Francisco Department of Public Works. I have been Director since November 2023. I was the Interim Director of DPW from August 2021 until I was appointed Director. I was previously the Superintendent of the Bureau of Urban Forestry within DPW, a position I held from 2015 to 2021. For approximately eight months in 2019 and 2020, I was also Acting Deputy Director of DPW.

3. I understand that the Court requested further information regarding the training DPW employees receive on the Department's bag and tag policy and the bag and tag training that has taken place since September 22, 2023, the date Jonathan Vaing's and my declarations were submitted to the Court. I provide this declaration in response to the Court's request.

**Awareness of the Court's Preliminary Injunction Order**

4. DPW employees who work on bag and tag issues are familiar with the Court's December 23, 2022 Preliminary Injunction Order. I know this because I am familiar with the substance of the Injunction and have discussed it with DPW staff on many occasions.

5. I first became aware of the Injunction to comply with the bag and tag policy the day it was issued just before Christmas 2022 and read all of the Court's decision in the following days.

6. Following the 2022 winter holidays, I discussed the Court's decision with DPW's Deputy Director and the Bureau of Street and Environmental Services' ("BSES") leadership. In those discussions, I emphasized the importance of adhering to the bag and tag policy and the Court's Injunction. I did this as the start of an ongoing conversation. Since the 2022 winter holidays, I have had conversations on a weekly or nearly weekly basis with DPW staff, including BSES leadership, about the Court's Injunction, including the importance of complying with the bag and tag policy.

**Efforts To Ensure DPW Employees' Understand the Importance Of Complying With The Injunction And The Bag And Tag Policy**

7. In my role as Director, I oversee each DPW Division, including BSES. Included in that oversight is reinforcing the importance of compliance with the Injunction and bag and tag policy to all

Supervisors and reminding them to regularly discuss the policy with staff and ensure they understand the policy and know how to apply it. I take the City's obligations under the Injunction seriously and work to ensure my staff understands that the messaging from the top is to ensure compliance with the bag and tag policy.

8. Beginning in 2024, I have had monthly meetings with all DPW operations staff, including BSES staff. BSES is the Bureau that implements the bag and tag policy. At these monthly meetings, I continue to stress the importance of complying with the Injunction and the bag and tag policy and explain the reasons why compliance is with the policy and Injunction is important.

9. As one example, to demonstrate in a very literal way the importance of compliance with the bag and tag policy, during my meetings with staff I have temporarily taken the belongings of someone in the room, prompting a reaction, and then used that reaction as a way to build compassion and empathy between my staff and the unhoused San Franciscans we serve by asking my staff to imagine how they would feel if someone took their belongings. I use this as an example of why DPW cannot just take someone's property on the street without following the bag and tag policy. I communicate to staff that despite the additional scrutiny they are under and the difficulty of the work, they should continue to work with compassion, patience, and empathy because they are interacting with people who deserve respect.

10. During these meetings I explain that compliance with our bag and tag policy is also important because people's Constitutional rights are at issue and that because the Court found our written policy complies with the Constitutional requirements this is a further reason to ensure we comply with our policy as written. For example, in a recent meeting I explained to staff that although the Supreme Court's *Grants Pass* decision relieved the City of some obligations, it did not address the Fourth Amendment and has not changed DPW's need to comply with the bag and tag policy or the Court's Injunction related to the bag and tag policy.

11. In addition to the above reasons, I emphasize to my staff that compliance with the Injunction and bag and tag policy is important because: people's personal property and Constitutional rights are at stake and those rights needs to respected; compliance ensures fairness and consistency in DPW's actions; compliance serves the goals of clean and unobstructed public spaces and rights-of-

way for all; and abiding by the rules is important to ensure the policy's purposes are achieved. In the meetings I described above, as well many other informal interactions with DPW staff, I communicate all of these reasons and stress the need to ensure compliance.

**Opportunities To Ask Questions**

12. Another way DPW ensures compliance with the bag and tag policy is to invite employees to ask questions when they are unsure how to implement the policy. During the monthly meetings I have with BSES, staff can and do ask questions about the Injunction and the bag and tag policy and I provide answers.

13. For example, staff have asked me whether they should always defer to a non-DPW City employee's determination that an item is disposable under the bag and tag policy. I made clear that they should make their own assessment of whether the item is abandoned, co-mingled with hazards, or disposable as trash under the policy based on their training. I have used these questions to talk about how to determine whether something is abandoned, co-mingled, or hazardous and reiterate that if the employee is unsure, they should err on the side of bagging and tagging the item or check with their supervisor.

14. Employees have also asked what can happen if the Injunction is violated and I explain that DPW could be held in contempt as a result and that we need to avoid any violations.

15. I am aware that DPW employees who have questions about the bag and policy when they are in the field and need immediate responses can and do raise them to their supervisors, and that those supervisors respond to their questions in real time. I know this because those supervisors occasionally escalate questions to their own superiors, including me as Director.

16. For example, on August 6, 2024, the Deputy Director of Operations called me to ask how to address an ongoing issue at that morning's HSOC encampment resolution. As it was described to me, DPW staff at the resolution encountered a tent that was soiled with feces and contained hypodermic needles. DPW staff, pursuant to the bag and tag policy, intended to dispose of soiled tent and hazardous items contained in it, but the tent's owner was determined to keep the tent. The Supervisor contacted the Deputy Director, who contacted me, and I instructed the Deputy Director to tell the Supervisor to not dispose of the tent to avoid a conflict with the tent's owner even though the

tent could have been properly discarded under the bag and tag policy. I understand that the Supervisor received this instruction and staff did not dispose of the tent. I regularly inform DPW staff that, just as was done in the example I provided, they should immediately raise any questions about how to handle property or apply the bag and tag policy to their immediate supervisor. I stress that if a DPW worker is in doubt, they should ask their supervisor, who in turn will raise the question to their supervisor if necessary.

### New Employee Orientation

17. DPW also ensures that new hires who may be responsible for bag and tag operations receive training on the policy at their mandatory new employee orientation.

18. I also worked with Jonathan Vaing to develop the bag and tag training that each employee who is in a position to apply the bag and tag policy receives and I attend portions of the orientation and use that as an opportunity to stress to new operations employees the importance of following the bag and tag policy, and in particular the importance of calling on their supervisor if they have any doubts or questions. This is also another opportunity for staff to ask any questions about the bag and tag policy.

### Praise For Those Who Go Above And Beyond

19. As a public entity DPW is not in a position to provide financial incentives or bonuses for compliance or positive outcomes like a private company might be able to offer, but I and DPW Supervisors regularly praise employees who have go above and beyond in connection with the bag and tag policy, and hold up their actions as positive examples for others to follow.

20. During the monthly meetings, I also regularly praise employees for displaying compassion, patience, and empathy in the course of their work in resolutions and other interactions and encourage them to continue doing so. These are some of the ways we ensure compliance with the Injunction and the bag and tag policy beyond formal training.  I also make a point of thanking employees who raise questions and issues to their supervisors to reinforce to others the proper way to act when they are unsure of what to do.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed August 23, 2024 in San Francisco, California.

*[signature]*

CARLA SHORT