DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4675 (Snodgrass)
              (415) 554-3857 (Wang)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
              (415) 554-4223 (George)
              (415) 355-3307 (Ikels)
Facsimile:    (415) 554-4699
E-mail:       wayne.snodgrass@sfcityatty.org
              edmund.wang@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org
              john.george@sfcityatty.org
              zuzana.ikels@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DECLARATION OF JONATHAN VAING PURSUANT TO ORDER ON MOTION TO ENFORCE THE PRELIMINARY INJUNCTION RE: FOURTH AMENDMENT CLAIM (ECF NO. 231)**<br><br>Trial Date:    May 1, 2025 |

I, Jonathan Vaing, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I have been employed by the City and County of San Francisco since 1996. I work within the Department of Public Works ("DPW") as part of the Bureau of Street and Environmental Services ("BSES"), which is one of four bureaus in DPW underneath the Operations Division. My title is the Assistant Superintendent of BSES Operations.

3. BSES is the DPW Bureau primarily concerned with cleaning streets, curbs, and other rights-of-way in the City. We do this by using mechanical street sweepers, removing graffiti, managing litter receptacles, and utilizing manual cleaning crews. Our manual cleaning crews sweep and clean sidewalks in heavily used commercial corridors. DPW employees who work with Healthy Streets Operation Center ("HSOC") operations are part of BSES.

4. I submitted a declaration to the Court regarding DPW training on the bag and tag policy last September. I am informed and believe that the Court requested further information regarding the training DPW had done on the policy since the City filed my declaration with the Court on September 22, 2023. I provide this further declaration in response to the Court's request.

**Preliminary Injunction**

5. I understand it is important for public works employees to follow our bag and tag policy even without a Court injunction.

6. I became aware of the Court's injunction shortly after it was issued approximately one and a half years ago. I understand that the Court approved of our bag and tag policy and required DPW to follow the policy. I understand that the Court order requiring us to comply with the bag and tag policy is still in place.

7. One of my responsibilities is to train other BSES employees on the bag and tag policy. In my trainings I emphasize the importance of complying with our policy.

**Full Bag and Tag Training**

8. I drafted DPW's full bag and tag training, which includes the powerpoint presentation. The powerpoint slides may be displayed on-screen or participants may be given the slides as a handout

Vaing Decl. In Response to Ct. Order    1
CASE NO. 4:22-cv-05502-DMR

depending on the format for the training. When I refer to the full bag and tag training, I am distinguishing it from shorter "refresher" trainings DPW offers.

9. I presented the full bag and tag training to BSES employees multiple times since September 2023. During those trainings I talk about how to distinguish abandoned from unattended items, how to tell if items are co-mingled with hazardous materials, and what it means to give individuals a reasonable amount of time to move their belongings.

10. I also ask whether trainees have questions multiple times during the presentation. Trainees can and do ask questions. As one example, in a recent training I received a question about how to respond if employees encounter a fully operable wheelchair with nothing in it. I responded that the employee should bag and tag the wheelchair under those circumstances.

**Supervisor II Meetings**

11. I attend the weekly Supervisor II ("Sup II") meetings, which generally occur on Tuesday mornings. Supervisors from each of the BSES teams attend these meetings. Supervisors on the swing shift, who are not working in the morning hours review meeting minutes for the Sup II meetings during their shift.

12. I often led the Sup II meetings during the last year and at many of these meetings I offered refresher trainings on the bag and tag policy. I routinely asked questions as part of my presentation. On occasions where it appeared a supervisor was less engaged or distracted, I directed a question to that individual, calling them back into the conversation and making sure they were paying attention.

13. All BSES employees in the Supervisor II job title are expected to attend the Sup II meetings that occur during their shift.

14. In these trainings I emphasized the importance of complying with the department's bag and tag policy.

15. At Sup II meetings, I also offered opportunities for the participants to ask questions when there was an area that was confusing or when a supervisor wanted to discuss a situation that had occurred on-the-ground. Participants regularly took the opportunity to ask questions. At the most recent Sup II meeting, one of the participants created a list of five questions regarding implementation

Vaing Decl. In Response to Ct. Order    2
CASE NO. 4:22-cv-05502-DMR

of the bag and tag policy that came up during the meeting. Attached as **Exhibit A** is the list of questions.

16.    Attached as **Exhibit B** are the Supervisor II meting minutes since September 5, 2023 through August 13, 2024. These minutes show discussion of the bag and tag policy as well as the related CMMS policy.

17.    CMMS is the database where DPW stores information related to its service orders, including service orders coded as "Encampment" or "Bag and Tag." This includes links to any photographs DPW took when responding to the service order. Reviewing records in the CMMS database records is one way DPW ensures our staff comply with the bag and tag policy, and so ensuring our staff correctly use the CMMS database is one way DPW can ensure our staff follow the bag and tag policy itself.

18.    The same is true of reminders for staff to take photographs. The photographs DPW takes show the before and after when employees arrive at the location for a service order which also can be used to show compliance with the policy and evaluate allegations of noncompliance.

19.    An additional way DPW ensures employee comply with the bag and tag policy is by praising employees when they perform well. For example, the Sup II meeting minutes for November 21, 2023 and April 2, 2024 show praise for employees who correctly documented their work in the CMMS database including photographs of the work performed.

**Tailgate Meetings**

20.    Following the Sup II meeting, supervisors are dispatched to their team and lead a second weekly meeting disseminating information from the Sup II meeting. We refer to these as "Tailgate Meetings." Although Tailgate meetings do not have meeting minutes, they often include sign-in sheets. All employees on each of the BSES teams are expected to attend the Tailgate meetings for their team on days they are working.

21.    Typically, the Supervisor II who is leading each Tailgate meeting is responsible for providing bag and tag training to their team. However, several times in the past year I have attended a Tailgate meeting to provide bag and tag training. I recall doing so for at least the Reactionary crew and the Alley crew, which are both part of BSES. When I have led bag and tag trainings at a Tailgate

meeting I cover the same content as when I lead bag and tag trainings as part of the Sup II meetings and also offer opportunities for employees to ask any questions along the way.

22. Attached as **Exhibit C** are Attendance Sheets from BSES Tailgates where the title of the training or subject line indicates that the Supervisor discussed the bag and tag policy. These sign-in records cover the time period from September 2023 through August 14, 2024.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed August 23, 2024 in San Francisco, California.

_____
JONATHAN VAING

Vaing Decl. In Response to Ct. Order    4
CASE NO. 4:22-cv-05502-DMR