DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
ZUZANA S. IKELS, State Bar #208671
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:   (415) 554-4675 (Snodgrass)
             (415) 554-3857 (Wang)
             (415) 554-6762 (Murphy)
             (415) 554-3870 (Gradilla)
             (415) 554-4223 (George)
             (415) 355-3307 (Ikels)
             (415) 355-3304 (Mills)
Facsimile:   (415) 554-4699
E-mail:      wayne.snodgrass@sfcityatty.org
             edmund.wang@sfcityatty.org
             kaitlyn.murphy@sfcityatty.org
             miguel.gradilla@sfcityatty.org
             john.george@sfcityatty.org
             zuzana.ikels@sfcityatty.org
             steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN, <br><br>Plaintiffs, <br><br>vs. <br><br>CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC) <br><br>**DECLARATION OF EDGAR GARCIA PURSUANT TO ORDER ON MOTION TO ENFORCE THE PRLIMINARY INJUNCTION RE: FOURTH AMENDMENT CLAIM (ECF NO. 231)** <br><br>Trial Date: May 1, 2025 |
|---|---|

I, Edgar Garcia, hereby declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am the Operations Supervisor for Special Projects at the San Francisco Department of Public Works. I have been Operations Supervisor for Special Projects since January 2023. Prior to my current position, I was Acting Operations Supervisor for Street Cleaning from 2022 until January 2023. I have been employed by DPW since 2015.

3. In my position as Operations Supervisor for Special Projects, I am responsible for overseeing the logging, storing, maintaining, and returning of property stored by DPW under the bag and tag policy. I supervise approximately 20 employees, including two DPW employees who work at the DPW Operations Yard where bagged and tagged items are stored for their owners to collect them and eight employees who participate in resolutions.

4. I understand that the Court requested further information regarding the training DPW employees receive on the Department's bag and tag policy and training that has taken place since September 22, 2023, the date Jonathan Vaing's and Carla Short's declarations were submitted to the Court. I provide this declaration in response to the Court's request.

5. When DPW employees bag and tag property under the bag and tag policy, they fill out a "Homeless Property Information" intake form and bring the items to the DPW Storage Yard. A blank template of that form is attached as **Exhibit A.**

6. The DPW Operations Yard is located at 2323 Cesar Chavez Street in San Francisco. This is where items that have been bagged and tagged are stored for owners to collect them.

7. Most items are stored in several locked shipping containers at the Yard and are stored for at least 90 days. Bulky items, such as couches or mattresses, are also stored at the Yard in their own container for at least 14 days.

8. I or one of the employees I supervise is scheduled to work at the Yard every day of the week from 6 a.m. to 3 p.m. If a person whose items are stored at the Yard comes to retrieve their items between 6 a.m. and 3 p.m., the DPW radio room will contact me or one the employees I supervise with a description of the items, the location where they were collected, and the owner's name. I or one of

the employees I supervise will then search for the items in the storage containers and, if we locate them, take them to the owner.

9. I have been trained on the bag and tag policy and am involved in training others on it. I received the PowerPoint bag and tag training from Jonathan Vaing for the first time in January 2023. I received refresher PowerPoint trainings approximately four times per year since then during the quarterly training sessions.

10. I also participate in the weekly Supervisor II meetings. Jonathan Vaing and my immediate supervisor, Mark Roumbanis, also participate in the weekly Supervisor II meetings. During the weekly meetings, we discuss the bag and tag policy and everyone is encouraged to ask questions, including questions about how to distinguish abandoned from unattended items and how to treat co-mingled items. As examples, some recent questions that have come up are whether DPW will bag and tag burnt items, whether there is a limit to how many items DPW will bag and tag, and whether DPW will bag and tag a couch. The answers to these questions are that DPW does not bag and tag burned items, there is no limit on the amount of items DPW will bag and tag, and DPW does bag and tag couches, which fall under the bulky items category.

11. The Supervisor II meetings are not the only opportunity to ask questions about the bag and tag policy. Jonathan Vaing and Mark Roumbanis have made clear to me and other DPW Supervisors that we can ask them questions about the bag and tag policy or process anytime, not just at Supervisor II meetings, and I have done so. For example, I called Jonathan Vaing when a person showed up at the Yard and said he was there to pick up someone else's belongings. I was not sure what to do, so I called Jonathan. Based on our conversation, I let the person know that because he did not have any proof that the owner had given him permission to collect the items, he needed to have the owner contact the Yard to provide permission, and that if the owner did so I would be able to release the items to him for the owner.

12. I am involved in training other DPW staff on the bag and tag policy in several ways. First, I trained the two employees I supervise on how to manage the DPW Yard and return items to their owners. I train them by using the PowerPoint used in the quarterly trainings and by walking them through the process of an actual retrieval and answering any questions they have.

13. I am also involved in training the approximately 20 employees I supervise on how to fill out the intake forms. I train them on how to fill out the intake forms by filling out a form and explaining why each section is important. For example, I explain that the location where something was collected is very important for connecting the items to their owner if they were not present when DPW collected the items; that the CMMS number is important because it links the item to a particular location and time and allows us to view the pictures taken of the item when it was collected; and that the DPW employee number is important for following up with staff if more information is needed. In addition to this more formal training, I provide guidance to DPW employees when they have questions about how to fill out intake forms. For example, before submitting an intake form, a DPW employee asked what to write in the "Name" section of the form when the owner's name is not known because no person was present with the property when it was collected. I explained that he should put "N/A" in that section under those circumstances.

14. Since I started in my current position in January 2023, I and the employees I supervise at the Yard also review intake forms filled out by DPW employees after they are brought to the Yard and provide feedback to ensure complete and detailed forms. When intake forms come in from the field, I or members of my team input the information into an Excel spreadsheet and in the process review the forms for missing or deficient information – for example, an empty "location" section or an item description that would benefit from more detail, like "black Schwinn bicycle without seat" instead of "black bike." My team notifies me of incomplete forms and I also spot check forms to ensure they are complete. If the form is missing information, I notify my immediate Supervisor so they can inform the person who oversees the employee who completed the form and use it as an example to teach the employee how to better complete the forms. I have followed this process of notifying Supervisors of deficiencies at least four times. This is an example of how DPW ensures compliance with the bag and tag procedures and ensures that employees know complying with the bag and tag policy is a priority.

15. I recall being aware of the Court's Injunction since the time I became Operations Supervisor for Special Projects in January 2023 and have been aware of the need to strictly comply with the bag and tag policy since before I was Acting Operations Supervisor for Street Cleaning. The

GARCIA DECL. PURSUANT TO ORDER
CASE NO. 4:22-cv-05502-DMR (LJC)

3

need to comply with the Injunction and bag and tag policy has also been discussed at the quarterly trainings and the weekly Supervisor II meetings I attended.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed August 23, 2024 in San Francisco, California.

_____
EDGAR GARCIA