DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-3857 (Wang)
                (415) 554-6762 (Murphy)
                (415) 554-3870 (Gradilla)
                (415) 554-4223 (George)
                (415) 355-3304 (Mills)
Facsimile:      (415) 554-4699
E-mail:         edmund.wang@sfcityatty.org
                kaitlyn.murphy@sfcityatty.org
                miguel.gradilla@sfcityatty.org
                john.george@sfcityatty.org
                steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:    October 10, 2024<br>Time:            1:00 p.m.<br>Place:           Courtroom 4 – 3rd floor<br>                 1301 Clay Street<br>                 Oakland, CA 94612<br><br>Trial Date:      May 1, 2025 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

    I.       INTRODUCTION ................................................................................. 3

    II.      BACKGROUND .................................................................................. 4

    III.    LEGAL STANDARDS ......................................................................... 5

        A.     Motion To Dismiss For Lack Of Subject Matter Jurisdiction. ................... 5

        B.     Motion For Judgment On The Pleadings. ................................................ 5

    IV.    ARGUMENT ........................................................................................ 6

        A.     Plaintiffs Do Not Meet The Demanding Requirements For Standing. ........ 6

             1.    Coalition Does Not Allege Any Cognizable Injury Capable of Resolution In Its Own Right As A Named Plaintiff. ...................... 7

                 a.    Coalition Has No Standing For Its Own Claims................ 7

                 b.    Alleged Resource Diversion Does Not Create Standing. .... 8

             2.    Coalition Does Not Have Associational Standing. .......................... 9

                 a.    Coalition Does Not Identify Any Member With Standing. 10

                 b.    Prudential Limits Preclude Coalition's Standing............... 12

                 c.    The Lack of Concrete Harm Precludes Associational Standing. ...................................................................... 14

             3.    No Individual Plaintiff Has Standing Or A Live Claim. ............... 15

        B.     Plaintiffs Fail To State A Claim............................................................ 17

             1.    *Grants Pass* Disposes of Plaintiffs' Claims................................ 17

             2.    Plaintiffs' Constitutional Claims Fail. ...................................... 18

                 a.    Plaintiffs Fail to State State-Created Danger Claims (9 and 10). .............................................................................. 18

                 b.    Plaintiffs Fail to State A Due Process Claim. .................... 20

                 c.    Adequate Legal Remedies And Claim-Splitting Bar Injunctive Relief............................................................. 21

                 d.    Plaintiffs Castaño And Vaughn Do Not Plead Timely Claims. ...................................................................... 21

                 e.    Plaintiffs Fail To Plausibly Plead Any *Monell* Liability. .. 22

                     i.    No Failure to Train Claim Is Stated. ..................... 23

                     ii.    No Long-Standing Custom Claim Is Stated........... 24

                 f.    Plaintiffs' Conspiracy Claim Fails (Claim 13). ................. 24

3.      Plaintiffs Fail to State ADA and Section 11135 Claims (11 and 12). .............................................................................................25

V.      CONCLUSION...................................................................................................27

1

## **TABLE OF AUTHORITIES**

**Federal Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare*
   666 F.3d 631 (9th Cir. 2012) ...................................................................................22

*Aguayo v. Richardson*
   473 F.2d 1090 (2d Cir. 1973) ..................................................................................13

*Associated Gen. Contrs. of Am. v. Cal. Dep't of Transp.*
   713 F.3d 1187 (9th Cir. 2013) .................................................................................10

*Avalos v. Baca*
   596 F.3d 583 (9th Cir. 2010) ...................................................................................24

*Bank of Am. Corp. v. City of Miami*
   581 U.S. 189 (2017) .................................................................................................26

*Barnett v. Centoni*
   31 F.3d 813 (9th Cir. 1994) .....................................................................................20

*Bautista v. Los Angeles Cnty.*
   216 F.3d 837 (9th Cir. 2000) ...................................................................................17

*Bayer v. Neiman Marcus Grp., Inc.*
   861 F.3d 853 (9th Cir. 2017) ...................................................................................16

*Beacon Theatres, Inc. v. Westover*
   359 U.S. 500 (1959) .................................................................................................21

*Bell v. Williams*
   108 F.4th 809 (9th Cir. 2024) ..................................................................................23

*Berry v. Hennepin Cnty.*
   No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797 (D. Minn. July 22, 2024) .............11

*Blunt v. Lower Merion Sch. Dist.*
   767 F.3d 247 (3d Cir. 2014) ....................................................................................12

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*
   637 F.3d 104 (9th Cir. 2011) .....................................................................................5

*Campbell v. Miller*
   373 F.3d 834 (7th Cir. 2004) ...................................................................................21

*City of Canton, Ohio v. Harris*
   489 U.S. 378 (1989).................................................................................................23

*City of Grants Pass v. Johnson*
   144 S.Ct. 2202 (2024)................................................................1, 3, 4, 5, 17, 26

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ................................................................................................................12

*City of Palm Springs*
    No. CV 14-1553 PSG (MANx), 2014 WL 12703286 (C.D. Cal. Oct. 6, 2014) ......................22

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) .........................................................................................................6, 12

*Cobine v. City of Eureka*
    250 F. Supp. 3d 423 (N.D. Cal. 2017) ...........................................................................18, 19

*Cohen v. City of Culver City*
    754 F.3d 690 (9th Cir. 2014). .............................................................................................25

*Connick v. Thompson*
    563 U.S. 51 (2011) ..............................................................................................................23

*Cooley v. City of Los Angeles*
    No. 2:18-cv-09053-CAS-PLA, 2019 WL 3766554 (C.D. Cal. Aug. 5, 2019) .........................26

*Cooley v. City of Los Angeles*
    No. 2:18-cv-09053-CAS-PLAx, 2019 WL 1936437 (C.D. Cal. May 1, 2019) ......................26

*County of Tulare v. Murguia*
    S.Ct. No. 23-270, cert denied ..............................................................................................18

*Creech v. Tewalt*
    84 F.4th 777 (9th Cir. 2023) ...............................................................................................17

*Crowder v. Kitagawa*
    81 F.3d 1480 (9th Cir. 1996) ..............................................................................................14

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*
    489 U.S. 189 (1989) ............................................................................................................18

*Dougherty v. City of Covina*
    654 F.3d 892 (9th Cir. 2011) ..............................................................................................22

*F.D.A. v. All. for Hippocratic Med.*
    602 U.S. 367 (2024) .........................................................................................................8, 9

*Fleck & Assocs., Inc. v. City of Phoenix*
    471 F.3d 1100 (9th Cir. 2006) ..............................................................................................7

*Franklin v. Fox*
    312 F.3d 423 (9th Cir. 2002) ..............................................................................................25

*Gibson v. United States*
    781 F.2d 1334 (9th Cir. 1986) ............................................................................................22

*Havens Realty Corporation v. Coleman*
    455 U.S. 363 (1982)................................................................................9

*Henry A. v. Willden*
    678 F.3d 991 (9th Cir. 2012) ...................................................................7

*Hernandez v. City of San Jose*
    241 F. Supp. 3d 959 (N.D. Cal. 2017),
    aff'd in part, dismissed in part, 897 F.3d 1125 (9th Cir. 2018) ...............22

*Hodgers-Durgin v. De La Vina*
    199 F.3d 1037 (9th Cir. 1999) ...............................................................12

*Hoeft v. Tucson Unified Sch. Dist.*
    967 F.2d 1298 (9th Cir. 1992) .................................................................6

*Holohan v. Massanari*
    246 F.3d 1195 (9th Cir. 2001) .................................................................7

*Hudson v. Palmer*
    468 U.S. 517 (1984)...............................................................................20

*Hunt v. Wash. State Apple Adver. Comm'n*
    432 U.S. 333 (1977).......................................................10, 12, 14, 15

*In re Scott K.*
    24 Cal. 3d 395 (1979) .............................................................................8

*J.P. by & through Villanueva v. Cnty. of Alameda*
    803 F.App'x 106 (9th Cir. 2020) ...........................................................19

*Jennings v. Rodriguez*
    583 U.S. 281 (2018)...............................................................................27

*Jett v. Dallas Indep. Sch. Dist.*
    491 U.S. 701 (1989)...............................................................................24

*Joshua v. Newell*
    871 F.2d 884 (9th Cir. 1989) ...........................................................3, 20

*Kennedy v. City of Ridgefield*
    439 F.3d 1055 (9th Cir. 2006) ...............................................................19

*Kirola v. City & Cnty. of San Francisco*
    860 F.3d 1164 (9th Cir. 2017) .................................................................8

*Klein v. City of Beverly Hills*
    865 F.3d 1276 (9th Cir. 2017) ...............................................................22

*Knife Rights, Inc. v. Vance*
    802 F.3d 377 (2d Cir. 2015) ............................................................................................... 13

*LA All. for Human Rts. v. Cnty. of L.A.*
    14 F.4th 947 (9th Cir. 2021) ................................................................................................. 7

*Lacey v. Maricopa Cnty.*
    693 F.3d 896 (9th Cir. 2012) ................................................................................................ 7

*Lavan v. City of Los Angeles*
    693 F.3d 1022 (9th Cir. 2012) ......................................................................................... 7, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014) ............................................................................................... 12, 26, 27

*Libman v. United States*
    No. 23-55417, 2024 WL 2269271 (9th Cir. May 20, 2024) ................................................. 21

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ................................................................................................ 6, 11, 12, 16

*Lukovsky v. City & Cnty. of San Francisco*
    535 F.3d 1044 (9th Cir. 2008) ............................................................................................ 21

*M.S. v. Cnty. of Ventura*
    No. CV 16-03084-BRO, 2016 WL 11506613 (C.D. Cal. Oct. 24, 2016) ............................. 27

*Martinez v. City of Clovis*
    943 F.3d 1260 (9th Cir. 2019) ....................................................................................... 7, 18

*Moeller v. Taco Bell Corp.*
    No. C 02-5849 MJJ, 2005 WL 1910925 (N.D. Cal. Aug. 10, 2005) ...................................... 8

*Monell v. Department of Social Services*
    436 U.S. 658 (1978) ....................................................................................... 2, 4, 18, 22, 24

*Morales v. Trans World Airlines, Inc.*
    504 U.S. 374 (1992) ............................................................................................................ 21

*Morgan v. Komers*
    151 F. App'x 546 (9th Cir. 2005) ....................................................................................... 22

*NAACP v. State of Alabama, ex rel. Patterson*
    357 U.S. 449 (1958) ..................................................................................................... 13, 15

*Nat'l Wildlife Fed'n v. Burford*
    871 F.2d 849 (9th Cir. 1989) .............................................................................................. 13

*Newman v. Sathyavaglswaran*
    287 F.3d 786 (9th Cir. 2002) .............................................................................................. 20

*Nieves v. Cnty. of Trinity*
No. 2:21-CV-02248-KJM-AC, 2022 WL 17994367 (E.D. Cal. Dec. 29, 2022)......................19

*Nnebe v. Daus*
644 F.3d 147 (2d Cir. 2011) ...........................................................................................13

*Olsen v. Idaho State Bd. of Med.*
363 F.3d 916 (9th Cir. 2004) ..........................................................................................25

*Patel v. Kent Sch. Dist.*
648 F.3d 965 (9th Cir. 2011) ................................................................................14, 18, 19

*Penilla v. City of Huntington Park*
115 F.3d 707 (9th Cir. 1997) ..........................................................................................19

*Pitts v. Terrible Herbst, Inc.*
653 F.3d 1081 (9th Cir. 2011) ........................................................................................16

*Powers v. Ohio*
499 U.S. 400 (1991).......................................................................................................13

*Price v. Sery*
513 F.3d 962 (9th Cir. 2008) ..........................................................................................23

*Proctor v. District of Columbia*
531 F. Supp. 3d 49 (D.D.C. 2021) ...................................................................................11

*Rakas v. Illinois*
439 U.S. 128 (1978)...................................................................................................7, 14

*Reed v. City of Emeryville*
568 F. Supp. 3d 1029 (N.D. Cal. 2021) .......................................................................18, 19

*Rios v. Cnty. of Sacramento*
562 F. Supp. 3d 999 (E.D. Cal. 2021) ..............................................................................11

*Rodriguez v. Cnty. of Los Angeles*
891 F.3d 776 (9th Cir. 2018) ..........................................................................................22

*Rucker v. City of Oakland*
39 F.3d 1188 (9th Cir. 1994) ..........................................................................................21

*Ruckleshaus v. Monsanto Co.*
467 U.S. 986 (1984).......................................................................................................21

*Sacramento Homeless Union v. Cnty. of Sacramento*
No. 2:22-cv-1095-TLN-KJN, 2024 WL 2785378 (E.D. Cal. May 29, 2024) .........................20

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004). .........................................................................................5

*Sanchez v. City of Fresno*
914 F. Supp. 2d 1079 (E.D. Cal. 2012) ...................................................................19

*Santa Cruz Homeless Union v. Bernal*
514 F. Supp. 3d 1136 (N.D. Cal. 2021) ..................................................................19

*Shen v. Albany Unified Sch. Dist.*
436 F. Supp. 3d 1305 (N.D. Cal. 2020) .................................................................20

*Sinclair v. City of Seattle*
61 F.4th 674 (9th Cir. 2023) ..................................................................................18

*Skaff v. Meridien N. Am. Beverly Hills, LLC*
506 F.3d 832 (9th Cir. 2007) .................................................................................10

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020) .................................................................................21

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ................................................................................................6

*Stavrianoudakis v. United States Fish & Wildlife Serv.*
108 F.4th 1128 (9th Cir. 2024) ..............................................................................11

*Stone v. Agnos*
960 F.2d 893 (9th Cir. 1992) .................................................................................20

*Sullivan v. City of Berkeley*
No. C 17-06051 WHA, 2018 WL 489011 (N.D. Cal. Jan. 19, 2018) ....................26

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009)..........................................................................................10, 11

*Tanner-Brown v. Haaland*
105 F.4th 437 (D.C. Cir. 2024) .............................................................................12

*Thole v. U.S. Bank N.A.*
590 U.S. 538 (2020)...............................................................................................14

*Townsend v. Quasim*
328 F.3d 511 (9th Cir. 2003) .................................................................................25

*Trafficante v. Metro. Life Ins. Co.*
409 U.S. 205 (1972)..................................................................................................9

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021)....................................................................................6, 8, 14, 27

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) ...................................................................................24

*United Food & Com. Workers Union Loc. 751 v. Brown Group, Inc.*
  517 U.S. 544 (1996) .................................................................................10, 12

*United States Parole Comm'n v. Geraghty*
  445 U.S. 388 (1980) .......................................................................................16

*United States v. Baker*
  58 F.4th 1109 (9th Cir. 2023) .....................................................................7, 14

*United States v. Mitchell*
  915 F.2d 521 (9th Cir. 1990) ..........................................................................14

*United States v. Texas*
   599 U.S. 670 (2023) .........................................................................................6

*Vanegas v. City of Pasadena*
  46 F.4th 1159 (9th Cir. 2022) ...................................................................23, 24

*Vote.Org v. Callanen*
  39 F.4th 297 (5th Cir. 2022) ...........................................................................13

*Warth v. Seldin*
  422 U.S. 490 (1975) .........................................................................................9

*Wheeler v. City of Santa Clara*
  894 F.3d 1046 (9th Cir. 2018) ........................................................................21

*Wills v. City of Monterey*
  617 F. Supp. 3d 1107 (N.D. Cal. 2022) ....................................................18, 19

*Wixon v. Wyndham Resort Dev. Co.*
  No. C 07-02361 JSW, 2008 WL 2873326 (N.D. Cal. July 23, 2008) .....................17

*Wolf Designs LLC v. Five 18 Designs LLC*
  635 F. Supp. 3d 787 (D. Ariz. 2022) ..............................................................17

*Wood v. Ostrander*
  879 F.2d 583 (9th Cir. 1989) ..........................................................................19

*Young v. City of Los Angeles*
  No. CV2000709, 2020 WL 616363 (C.D. Cal. Feb. 10, 2020) .................................18

*Young v. City of Menifee*
  No. EDCV 17-1630 JGB (SPx), 2019 WL 3037926 (C.D. Cal. Apr. 5, 2019) ........................23

**Constitutional Provisions**
Cal. Const., article I, § 7 .................................................................................20

U.S. Const., amend. IV .............................................................................3, 7, 13

U.S. Const., art. III .................................................................................1, 6, 9, 27

**Federal Statutes**

42 U.S.C.
  § 1983 ...................................................................................................... *passim*
  §§ 3601, et seq. (Fair Housing Act).................................................................9
  §§ 12101, et seq. (Americans with Disabilities Act) ............................ *passim*
  § 12133 ............................................................................................................27

Pub. L. 88–352, 78 Stat. 241 (Civil Rights Act of 1964) ...............................13

**State Statutes & Codes**

Cal. Gov. Code § 11135...................................................................17, 25, 27

**Rules**

Fed. R. Civ. P.
  Rule 12(b)(1)......................................................................................1, 5
  Rule 12(b)(6)...............................................................................................5
  Rule 12(c) .....................................................................................1, 5

**Regulations**

28 C.F.R. § 35.130(b)(7)) ...........................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on October 10, 2024, at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco," the "City," or "Defendants") will and hereby do move this Court for judgment on the pleadings dismissing all claims brought by Plaintiffs Coalition on Homelessness, Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn against Defendants pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure.

Defendants bring a motion challenging subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because each Plaintiff lacks Article III standing for all causes of action. Alternatively, all claims are moot because each and every Individual Plaintiff is housed such that there is no longer a live controversy before the Court to redress.

Defendants also challenge the complaint under Rule 12(c) on several bases. Claims one through four and nine through thirteen must be dismissed with prejudice as to all Plaintiffs following the United States Supreme Court's decision in *City of Grants Pass v. Johnson*, 144 S. Ct. 2202 (2024) to the extent these claims are premised on theories that have been overruled.

No Plaintiff states a claim for state-created danger under federal law because Plaintiffs fail to sufficiently allege any cognizable particularized danger, a foreseeable injury, or deliberate indifference. To the extent Plaintiffs are proceeding on a state-created danger theory under state law, the claim fails because state law has not recognized a claim for state-created danger.

Plaintiffs' due process claim fails because the face of the complaint makes plain that Plaintiffs have adequate post-deprivation remedies for any property destruction. Plaintiffs' failure to allege the absence of adequate remedies at law also bars Plaintiffs' claims for injunctive relief. Plaintiffs' improper claim splitting further proves the point.

1    Plaintiffs Castaño and Vaughn have not alleged a timely claim because all property destruction

2    alleged by these Plaintiffs occurred outside of the controlling two-year statute of limitations.

3    All Plaintiffs fail to sufficiently allege *Monell* liability for any of their constitutional claims

4    because they fail to plausibly plead ratification, a failure to train, or a long-standing custom. Since

5    Plaintiffs fail to state any constitutional violation, their conspiracy claim fails.

6    Finally, Plaintiffs Coalition and Sandoval, the only Plaintiffs who make disability claims, fail

7    to state either an ADA claim or its California equivalent.

8    The City bases its motion on this Notice of Motion and Motion, the Memorandum of Points

9    and Authorities in support, the Declarations in support, its Request for Judicial Notice, the pleadings

10   and papers submitted in this action, and such other argument or evidence that may be presented to the

11   Court.

12

13   Dated:  September 5, 2024

14                                                    DAVID CHIU
                                                      City Attorney
15                                                    YVONNE R. MERÉ
                                                      EDMUND T. WANG
16                                                    KAITLYN MURPHY
                                                      MIGUEL A. GRADILLA
17                                                    JOHN H. GEORGE
                                                      STEVEN A. MILLS
18                                                    Deputy City Attorneys

19

20                                              By:  s/Steven A. Mills
                                                      STEVEN A. MILLS
21

22                                                    Attorneys for Defendants
                                                      CITY AND COUNTY OF SAN FRANCISCO; SAN
23                                                    FRANCISCO POLICE DEPARTMENT; SAN
                                                      FRANCISCO DEPARTMENT OF PUBLIC WORKS;
24                                                    SAN FRANCISCO DEPARTMENT OF
                                                      HOMELESSNESS AND SUPPORTIVE HOUSING;
25                                                    SAN FRANCISCO FIRE DEPARTMENT; SAN
                                                      FRANCISCO DEPARTMENT OF EMERGENCY
26                                                    MANAGEMENT

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs Toro Castaño, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn ("Individual Plaintiffs") experienced homelessness in San Francisco. Plaintiff Coalition on Homelessness ("Coalition") is an advocacy organization. Plaintiffs sued the City and County of San Francisco and five of its departments (the "City") alleging that the City's enforcement of anti-camping ordinances criminalized homeless individuals in violation of the Eighth Amendment. In addition, they allege Fourth Amendment and Due Process property seizure and destruction claims (with related state law claims), state-created danger claims under federal and state law, violations of the Americans with Disabilities Act ("ADA") and state disability law, and a conspiracy to deprive homeless individuals of their constitutional rights predicated on allegedly unlawful law enforcement efforts. Because no Plaintiff has standing for any of the claims, and no claim has been sufficiently alleged, the Court should grant the City's motion to dismiss and motion for judgment on the pleadings.

Coalition's claim to standing as a Plaintiff in its own right fails because Coalition has not had its property seized and does not contend it is a disabled person who suffered discrimination. Instead, it wrongly contends that spending money to observe and advocate against the City's actions, most of which are unquestionably legal following *City of Grants Pass v. Johnson*, 144 S.Ct. 2202 (2024) ("*Grants Pass*"), gives it standing. But, as the Supreme Court recently reiterated, a party cannot spend its way into standing. Coalition's bid for associational standing also fails. The Second Amended Complaint ("SAC") identifies no Coalition member with their own standing, the individual inquiries necessary to resolve any member's potential claims preclude associational standing, and Coalition lacks a redressable concrete injury.

The Individual Plaintiffs fare no better because they lacked standing when Plaintiffs commenced this suit and none have a live controversy now. Castaño, Frank, Vaughn, and Sandoval were housed when they commenced this suit. Further, Castaño, Frank, and Vaughn base their claims on alleged property destruction that was the subject of prior lawsuits they settled. They and every other Individual Plaintiff also fail to allege facts sufficient to establish an imminent impending injury

resulting from the City's alleged misconduct. Every Individual Plaintiff is now housed. This not only underscores the speculative nature of the SAC's allegations of future harm, it renders their claims moot. Since standing strikes at the core of the Court's jurisdiction, and no Plaintiff has it, this case must be dismissed.

Plaintiffs' claims also fail on the merits. *Grants Pass* requires that claims 1-4 and most of claims 9-13 be dismissed with prejudice because each relies on law overturned by the Supreme Court. Plaintiffs' state-created danger claim, which the Court already called into question (ECF No. 222 at 9-10), fails to meet a single element. Plaintiffs do not sufficiently allege any particularized danger, foreseeable injury, or deliberate indifference. Because Plaintiffs have adequate post-deprivation remedies for any unconstitutional property destruction, their due process claims are barred. These adequate legal remedies also bar Plaintiffs' claim for injunctive relief. Castaño and Vaughn rely on alleged property destruction that happened more than two years before the case was initiated, thus barring their claims. Plaintiffs also fail to allege *Monell v. Department of Social Services*, 436 U.S. 658 (1978) liability for any of their constitutional claims because they fail to plausibly plead ratification, a failure to train, or a long-standing custom. Finally, with no constitutional violation stated and no alleged agreement, there can be no conspiracy.

Coalition and Sandoval, the only Plaintiffs who make disability claims, fail to state either an ADA claim or its California equivalent. Sandoval never alleges she requested any accommodation and Coalition does not identify a single disabled member who the City allegedly discriminated against. Coalition is too far beyond the ADA's zone-of-interest to assert an ADA claim.  For all these reasons, the Court should grant the City's motion and dismiss Plaintiffs' claims without leave to amend.

## II.     BACKGROUND

Plaintiffs commenced this lawsuit and moved for a preliminary injunction on September 27, 2022. ECF No. 1, 9. By December 23, 2022, the Court enjoined the City's anti-camping ordinances and required compliance with the City's Bag and Tag Policy. ECF No. 65. No determinations were made as to Plaintiffs' standing. The City appealed the preliminary injunction. ECF No. 88. During the appeal, the City moved to dismiss Individual Plaintiffs for lack of standing. ECF No. 112. Rather than address the merits of the motion, the Court found that "[t]he Coalition on Homelessness

1  unquestionably has standing to pursue all forms of relief sought through this lawsuit" without analysis

2  of the claims or the elements of associational standing (including the standing of individual members).

3  ECF No. 128. Since Plaintiffs exceeded the scope of leave in their First Amended Complaint, they

4  were ordered to file a SAC. The operative SAC was filed on June 6, 2023. ECF No. 135.

5      Relevant to this motion, Defendants promptly moved for a stay pending resolution of *Grants*

6  *Pass*, arguing in part that the stay did not harm the Plaintiffs because none had standing to sue, and

7  that the claims were so interwoven that they could not be divorced from the Eighth Amendment issues.

8  ECF. No. 204. While the Court granted the stay, it declined to address standing arguments. ECF No.

9  222. As the parties and Court know, the Supreme Court affirmed the validity of enforcement actions

10  against people experiencing homelessness who lack access to shelter. Once the stay was lifted, the

11  Court invited Plaintiffs to seek leave amend. They declined the invitation. ECF No. 236. This motion

12  follows to dispose of all claims.

13  **III.   LEGAL STANDARDS**

14      **A.   Motion To Dismiss For Lack Of Subject Matter Jurisdiction.**

15      A defendant may seek dismissal for lack of subject matter jurisdiction pursuant to Federal Rule

16  of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air*

17  *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a facial attack, the challenger

18  asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

19  jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

20  themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on

21  jurisdiction, the district court may review evidence beyond the complaint without converting the

22  motion to dismiss into a motion for summary judgment." *Id.*

23      **B.   Motion For Judgment On The Pleadings.**

24      "After the pleadings are closed—but early enough not to delay trial—a party may move for

25  judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing Rules 12(c) and 12(b)(6)

26  are "functionally identical." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054

27  n.4 (9th Cir. 2011) (citation omitted). Judgment on the pleadings is appropriate when factual

28

allegations, accepted as true and viewed favorably to plaintiffs, entitle the defendant to a judgment as a matter of law. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992).

## IV.     ARGUMENT

### A.     Plaintiffs Do Not Meet The Demanding Requirements For Standing.

Article III "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing *for each claim that they press and for each form of relief that they seek* (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). To meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).  Injury in fact requires a showing of "'an invasion of *a legally protected interest*' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 559-560) (emphasis added). For equitable relief, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

To ensure that injuries are concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424. The Supreme Court has "stressed that the alleged injury must be legally and judicially cognizable" which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (cleaned up). Courts are not free to "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 424-25. This case is no exception. All Plaintiffs lack standing in their own right and the Coalition cannot remedy that deficiency by resorting to organizational or associational standing.

1

### 1. Coalition Does Not Allege Any Cognizable Injury Capable of Resolution In Its Own Right As A Named Plaintiff.

2

Coalition cannot carry its burden to show that it has standing for any claim because Coalition

3

4

has no cognizable injury that is redressable. A close review of the claims proves the point.

5

#### a. Coalition Has No Standing For Its Own Claims.

6

Coalition has no cognizable Fourth Amendment interest at stake since it alleges no seizure of

7

its own property. By its terms, the Fourth Amendment guarantees "[t]he right of the people to be

8

secure in *their* persons, houses, papers, and effects." (emphasis added). "Fourth Amendment rights are

9

personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v.*

10

*Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted). "To establish standing to challenge

11

governmental intrusions under the Fourth Amendment, an individual must demonstrate their

12

reasonable expectation of privacy in a place searched, or meaningful interference with their possessory

13

interest in property seized." *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (citing *Lavan*

14

*v. City of Los Angeles*, 693 F.3d 1022, 1027-29 (9th Cir. 2012)); *see also Fleck & Assocs., Inc. v. City*

15

*of Phoenix*, 471 F.3d 1100, 1104-05 (9th Cir. 2006) (recognizing that corporation had no standing).

16

Similarly, Coalition must have an injury resulting from a deprivation of its rights to support a

17

due process claim. *See Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (holding plaintiff

18

lacked standing for due process claim because she failed to allege injury resulting from the due

19

process violation). State-created danger is no different. "[B]y its very nature, the doctrine only applies

20

in situations in which the plaintiff was directly harmed *by a third party*[.]" *Henry A. v. Willden*, 678

21

F.3d 991, 1002 (9th Cir. 2012). Coalition must establish that officers' affirmative actions created or

22

exposed it to an actual, particularized danger that it would not otherwise have faced. *Martinez v. City*

23

*of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019);  *cf. LA All. for Human Rts. v. Cnty. of L.A.*, 14 F.4th

24

947, 959 (9th Cir. 2021) (considering associational standing as opposed to organizational standing for

25

state-created danger claim). But again, Coalition has not alleged any redressable deprivation or danger

26

to itself. With no cognizable and redressable constitutional injury to itself, Coalition does not have any

27

conspiracy standing either. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy

28

is not itself a constitutional tort under § 1983" and does not "enlarge the nature of the claims asserted

by the plaintiff, as there must always be an underlying constitutional violation"). All constitutional claims fail in Coalition's individual capacity.[1]

Coalition's disability claims fare no better. "The standard for injury in fact is whether [the plaintiff] has encountered at least one barrier that interfered with her access to the particular public [service] and whether she intends to return or is deterred from returning to that [service]." *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017). Furthermore, "[a]n individual with a disability has 'standing to seek relief for any ADA violations . . . affecting his specific disability,' and does not have standing to pursue claims that do not affect his disability." *Moeller v. Taco Bell Corp.*, No. C 02-5849 MJJ, 2005 WL 1910925, at * 4 (N.D. Cal. Aug. 10, 2005) (citation omitted). As an organization, Coalition cannot establish that it is a qualified individual with a disability that has encountered any barrier. It has no injury that is redressable.

### b.      Alleged Resource Diversion Does Not Create Standing.

Recognizing that it lacks standing as a result of any cognizable injury to itself, Coalition claims standing under a diversion of resources theory because it diverted its resources to combat the City's allegedly unlawful activity at encampment resolutions, most of which is now unquestionably lawful. This diversion is not directed at any other practice and is not incorporated in the allegations for any disability claim. *See* SAC ¶¶ 173-83, 291, 301, 331. There is no basis in law for a manufactured diversion of resources to justify standing for equitable relief.

The Supreme Court has rejected Coalition's diversion of resources theory. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). The Supreme Court cautioned that a cognizable concrete injury is "'traditionally' [one] recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 414 (citation omitted). But looking at the myriad claims at issue, tradition

---

[1] Coalition similarly lacks standing for its state law claims. While federal standards apply, state courts reject claims on similar standing grounds. *See, e.g., In re Scott K.*, 24 Cal. 3d 395, 405 (1979) (holding that a parent did not have standing to challenge search absent sufficient interest in property).

shows that Coalition has no cognizable legal right to justify the causes of action that it seeks to invoke in its own right. Any diversion of its resources is the product of its own doing. This manufactured standing is not traceable to Defendants or redressable by any claim. Proving the point, Coalition does not allege that it would stop monitoring the City's practices in the future to redress any self-imposed diversion of resources. That turns traceability and redressability on its head.

*Havens Realty Corporation v. Coleman*, 455 U.S. 363, 379 (1982), provides no basis for standing here. The Supreme Court recently admonished that "*Havens* was an *unusual* case, and this Court has been careful not to extend *Havens* holding beyond its context." *F.D.A.*, 602 U.S. at 395 (emphasis added). That context involved "whether a housing counseling organization . . . had standing to bring a claim under the Fair Housing Act ["FHA"] against Havens Realty, which owned and operated apartment complexes" and provided false information to the plaintiff that impaired its ability to provide counseling services. *Id*. The claim was solely for *damages* under the FHA—*not* injunctive relief. *Havens*, 455 U.S. at 377. The FHA conferred "on all 'persons' a legal right to truthful information about available housing"—meaning the organization had a redressable statutory cause of action. *Id*. at 373; *see also Trafficante v. Metro. Life Ins. Co*., 409 U.S. 205 (1972) (finding persons aggrieved by discriminatory housing practice had standing for an FHA claim). Unlike *Havens*—where the plaintiff was like "a retailer who sues a manufacturer for selling defective goods to the retailer" and who had a recognized statutory right providing damages as redress—Coalition has no recognized statutory right, has no such direct concrete injury, and the injunction it seeks does not redress the claimed harm. *F.D.A.*, 602 U.S. at 395. There is no authority to extend *Havens*' specific context to the facts here and Coalition has no basis to support its claims without such an extension.

### 2. Coalition Does Not Have Associational Standing.

The Constitution does not establish any rule—let alone a bright line rule—that an association can always sue on behalf of its members. As a default, Article III "normally bars litigants from asserting the rights or legal interests of others[.]" *Warth v. Seldin*, 422 U.S. 490, 509 (1975). In *Warth*, the Court recognized that "[e]ven in the absence of injury to itself, an association *may* have standing solely as the *representative* of its members." *Id*. at 511 (emphasis added). Organizations may sue on behalf of members "when: (a) its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Coalition fails to establish the first and third prongs. It also lacks a redressable concrete injury.

### a.    Coalition Does Not Identify Any Member With Standing.

Coalition must show "that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit . . . ." *United Food & Com. Workers Union Loc. 751 v. Brown Group, Inc*., 517 U.S. 544, 552 (1996) (cleaned up). Accordingly, Coalition must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst*., 555 U.S. 488, 498 (2009). Coalition fails to identify such a member in the SAC and therefore lacks standing. *Associated Gen. Contrs. of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194-95 (9th Cir. 2013) (finding no standing since a member with standing was not identified in the complaint).

Coalition only alleges that "Couper Orona, Shyhyene Brown, and Toro Castaño are unhoused people who *have been* active members in the Coalition." SAC ¶ 186 (emphasis added). No member with a disability is identified to support standing on that basis and the cursory allegation regarding Orona, Brown, and Castaño does not allege they are active members or can plausibly obtain the extraordinary remedies sought for all claims. It is apparent that they cannot.

"The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007). Based on the face of the SAC, Castaño was housed—meaning he was not subject to the City's practices when the case was commenced—and he settled a claim with the City prior to commencing his suit for the predicate property deprivation of which he complains. SAC ¶ 26.[2] In addition to the fact that his claim is time-barred (*infra* § IV.B.2.d), the settlement defeats his standing. The Supreme Court has

---

[2] Declaration of Steven Mills ISO Defs. Mot. to Dismiss & Mot. For Judgment on the Pleadings ("Mills Decl.") ¶ 2, Ex. A.

recognized, "[w]e know of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action." *Summers*, 555 U.S. at 494.[3] Further, the alleged destruction of his property occurred more than two years before this case was filed. SAC ¶ 246. Conduct "that occurred several years ago" does not "establish that the threat of future injury is 'actual and imminent,' as opposed to 'conjectural or hypothetical.'" *Stavrianoudakis v. United States Fish & Wildlife Serv.*, 108 F.4th 1128, 1144 (9th Cir. 2024) (citation omitted). And the fear of being homeless again and possibly subjected to a hypothetical deprivation of rights in an unlawful encampment is insufficient to confer standing. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021); *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *5-6 (D. Minn. July 22, 2024); *Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021). That result reached by multiple courts is sound because a "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2.

Castaño's potential future injury is wholly speculative and depends on numerous contingencies within his own control, including him leaving his current shelter (where he is permitted to reside indefinitely),[4] moving to the public right of way, placing his property in the right of way, organizing it such that it cannot objectively be considered abandoned, and having it destroyed by DPW without the property meeting one of the several constitutional bases for reasonable destruction (trash, co-mingled with hazards, etc.) without any sufficient notice under the circumstances that he may or may not have ignored. Arriving at that conclusion requires a series of inferential leaps that are impermissibly speculative. And as to a state-created danger claim, he would have to allege that he will then be subject to an imminent, actual, and particularized danger for whatever results from that long line of

---

[3] While the allegations dispense of the claim, the Court can consider the release to the extent it disproves Castaño's entitlement to standing on a factual attack. The release shows that he agreed to "release and discharge the City, all . . . departments, commissioners, and officers thereof, of and from claims or causes of action for property damages heretofore sustained, suspected or unsuspected, in law or in equity. . . resulting from an incident occurring on or about August 21, 2020 at or near 16th St., SF." Mills Decl. ¶ 2, Ex. A; Defs. Request for Judicial Notice ("RJN") Ex. A. Accordingly, his injury was redressed, including with respect to equitable recovery, and he has no standing.

[4] Declaration of Lisa Rachowicz ISO Defs. Mot. to Dismiss & Mot. For Judgment on the Pleadings ("Rachowicz Decl.") ¶¶ 4-5.

contingencies. These speculative and hypothetical contingencies cannot state a claim for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983); *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *Clapper*, 568 U.S. at 410 (relying "on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending"); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999) (finding *Lyons* precludes standing where there is a "string of contingencies necessary to produce an injury"). Castaño simply cannot meet his burden.

As for Orona and Brown, the SAC alleges no facts supporting an injury that confers standing for the requested injunctive relief. *See* SAC ¶ 186. Thus, no identified member had standing when the case commenced. In turn, Coalition lacks associational standing.

### b.   Prudential Limits Preclude Coalition's Standing.

The third prong is prudential and dictates that associations have standing only when "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. This inquiry "is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food*, 517 U.S. at 557.[5]

To the extent that the Court finds that Castaño, as the only Individual Plaintiff identified by Coalition as a member in the SAC, does have standing, allowing Coalition to proceed as an associational Plaintiff does not add "'administrative convenience and efficiency' to permit the association to litigate on behalf of its members 'when those members are already parties to the lawsuit in their own right.'" *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014) (citation omitted)). Instead, it unnecessarily prolongs the litigation, disproportionally increases the burdens of discovery, and detracts from the core issues impacting Individual Plaintiffs. Indeed, third party standing, of which

---

[5] In a unanimous decision, the Supreme Court has questioned whether limits on third-party standing, of which associational standing is derivative, can truly be classified as prudential as opposed to constitutional. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014).

associational standing is derivative, requires "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991) (citation omitted). There is no hinderance where individuals have already demonstrated that they are capable of presenting issues themselves based on the face of the complaint. Coalition should be dismissed on that basis alone.

Disposing of Coalition's claim to associational standing for Section 1983 claims is also straight forward as a matter of law. As the Ninth Circuit has acknowledged, "the statute at issue will preclude standing if it expresses a 'fairly discernible' congressional intent to forestall a suit at the plaintiff's behest." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 852 (9th Cir. 1989)s (citation omitted). By its plain terms, Section 1983 only provides a remedy "to the party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Based on the text, an "organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973) ("Neither [the] language nor the history . . . [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members."); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (citation omitted) ("[A]n organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983."); *Vote.Org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022). Permitting an organization to sue on behalf of its members runs contrary to the express remedy provided by Congress finding that individual participation is necessary to raise constitutional claims.[6] Accordingly, Coalition cannot raise these claims.

Each claim also requires participation of individual members in the lawsuit to prove underlying constitutional or statutory violations because the Fourth Amendment, Due Process, state-created

---

[6] The Supreme Court did not develop any associational standing test until nearly a century after Section 1983 became law. Rather, the historical standing doctrine "generally insisted that parties rely only on constitutional rights which are personal to themselves." *NAACP v. State of Alabama, ex rel. Patterson*, 357 U.S. 449, 459 (1958). As the Ninth Circuit has acknowledged, "case law has not defined standing with complete consistency. . . . A leading commentator has remarked that 'such a word as 'irrational' would be strictly accurate' to describe the development of standing law since 1970." *Nat'l Wildlife Fed'n*, 871 F.2d at 851 (citations omitted). Congress was not legislating against the backdrop of a non-existent associational standing doctrine when it only provided a remedy to individuals.

danger, and ADA claims require inquiries into the facts and circumstances particular to each allegedly affected individual. *Baker*, 58 F.4th at 1116 n.1 (recognizing that the Fourth Amendment standing and merits inquiries are the same, meaning plaintiffs must have possessory interests); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975 (9th Cir. 2011) (describing state-created danger claims as "by their nature highly fact-specific"); *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) ("determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry" under the ADA). For example, to determine whether a particular hypothetical Coalition member's rights were violated (and that the member has standing), they would have to be involved (through depositions, document subpoenas, and trial testimony) so the parties could inquire into such questions as whether they abandoned their property and its condition, whether they received notice or sufficient time to move, whether they are disabled, and if so, what accommodations they requested and were provided or denied. Since Plaintiffs do not challenge any policy on its face and have admitted that the Bag and Tag policy Coalition negotiated is constitutional, their assertion that the City has a practice of destroying belongings in violation of its written policy, and a practice of failing to accommodate disabilities, means individual involvement is required to determine these personal rights. *See* SAC ¶ 242; ECF No. 65 at 47; *Rakas*, 439 U.S. at 133-34 ("Fourth Amendment rights are personal rights"); *United States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (due process rights are personal). Ultimately, these individualized inquiries are far removed from a facial challenge to a statute contemplated in *Hunt* to justify associational standing. Prudence dictates that Coalition be dismissed.

### c.     The Lack of Concrete Harm Precludes Associational Standing.

Recently, the Supreme Court has instructed that "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020) (cleaned up). This is consistent with the Supreme Court's emphasis that plaintiffs must have a "personal stake" in litigation. *TransUnion*, 594 U.S. at 423. Put simply, "[n]o concrete harm, no standing." *Id.* at 417. Coalition must allege a redressable concrete harm to itself in order to have associational standing.

Requiring a concrete harm is consistent with Supreme Court jurisprudence finding associational standing in the first place. For instance, in *NAACP v. Alabama ex rel. Patterson*, the Supreme Court allowed an association to raise the First Amendment rights of its members to prevent the disclosure of its membership lists. However, the Court acknowledged that the NAACP faced an injury of its own since the NAACP and "its members are in every practical sense identical" and its "membership may be adversely affected if production is compelled." *NAACP*, 357 U.S. at 459-60. Similarly, in *Hunt*, the Supreme Court recognized that the state commission had a "financial nexus" with the trade association members to assure that concreteness was satisfied in that commerce clause challenge. 432 U.S. at 345. Since Coalition cannot claim a redressable concrete injury for the reasons previously stated, associational standing should fail.

### 3.    No Individual Plaintiff Has Standing Or A Live Claim.

As explained above, Castaño does not have standing. (*See supra*, § IV.A.2.a.) Nor do any of the other Individual Plaintiffs. Like Castaño, Vaughn was housed when the case commenced and premised his claim to injury on a time-barred claim that has been settled. SAC ¶¶ 23-24, 244; Declaration of Sarah Locher ISO Defs. Mot. to Dismiss & Mot. For Judgment on the Pleadings ["Locher Decl."] ¶ 6c.[7] Frank was similarly housed and admits he also settled a claim for the underlying deprivation of which he complains. SAC ¶¶ 27-29, 248-49.[8] Sandoval was also housed. Locher Decl. ¶ 6g. Since these individuals were housed when they commenced the case and are not subject to any length of stay requirements (*see* Rachowicz Decl. ¶ 4), it is pure conjecture that they were immediately at risk of unconstitutional conduct for all the contingencies that have already been underscored with respect to Castaño. (S*ee supra*, § IV.A.2.a.)

While Cronk, Donohoe, and Martinez were unhoused when they commenced the suit, there are no plausible allegations that they would be harmed with the high degree of immediacy necessary given their control over their injury. *See* SAC ¶¶ 32, 37, 39; Locher Decl. ¶¶ 6d-f. For all of the reasons

---

[7] Vaughn signed a binding release on April 14, 2022, that fully released the City and its departments of all claims arising from the City's alleged destruction of his property between January 8, 2020 and January 30, 2020. Mills Decl. ¶ 3, Ex. B; RJN Ex. B

[8] Frank signed a binding release on August 25, 2022 that released the City of all claims related to the January 26, 2022 incident that he complains of. SAC ¶ 248; Mills Decl. ¶ 4, Ex. C; RJN Ex. C.

1   discussed with respect to Castaño, the speculative and contingent nature of possible harm does not

2   satisfy the requirements to have standing. Accordingly, no Individual Plaintiff had standing when the

3   case was commenced.

4         Even if an Individual Plaintiff did have standing at the time of filing, which Defendants no way

5   conceded, all of their claims are moot since each is now housed and does not face any concrete harm

6   with respect to the practices complained of. "[M]ootness [is] 'the doctrine of standing set in a time

7   frame: The requisite personal interest that must exist at the commencement of the litigation (standing)

8   must continue throughout its existence (mootness).'" *United States Parole Comm'n v. Geraghty*, 445

9   U.S. 388, 397 (1980) (citation omitted). "A case becomes moot 'when the issues presented are no

10  longer 'live' or the parties lack a legally cognizable interest in the outcome' of the litigation." *Pitts v.*

11  *Terrible Herbst, Inc*., 653 F.3d 1081, 1086 (9th Cir. 2011) (citation omitted). "In other words, if events

12  subsequent to the filing of the case resolve the parties' dispute, [the court] must dismiss the case as

13  moot." *Id*. at 1087. "A request for injunctive relief remains live only so long as there is some present

14  harm left to enjoin." *Bayer v. Neiman Marcus Grp*., *Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation

15  omitted).

16        Each Individual Plaintiff is housed. Vaughn has been in permanent housing since August 20,

17  2020. Locher Decl. ¶ 6c. Frank has been sheltered since March 25, 2022. *Id*. ¶ 6b. Cronk and Donohoe

18  are in permanent housing following a transfer from transitional housing. *Id*. ¶¶ 6d-e. Martinez has been

19  in permanent housing since January 17, 2023. *Id*. ¶ 6f. Sandoval was sheltered when the lawsuit was

20  commenced and is presently sheltered. *Id*. ¶ 6g. Castaño was housed when the lawsuit commenced and

21  has been sheltered since August 22, 2023. *Id*. ¶ 6a. And each may stay in their respective housing as

22  long as they like or until permanent housing is found. Rachowicz Decl. ¶¶ 4-7. None of the individuals

23  can concretely establish that they are going to be harmed in the same way by San Francisco's

24  constitutional Bag and Tag policy given the long line of contingencies that must be satisfied. Notably,

25  "absent any indicia of concreteness" there can be no "finding that an actual or imminent injury exists."

26  *Bayer*, 861 F.3d at 864 (citing *Lujan*, 504 U.S. at 564). Plaintiffs therefore lack standing for all claims

27  and must be dismissed without leave.

28

1

2

**B.      Plaintiffs Fail To State A Claim.**

  **1.      *Grants Pass* Disposes of Plaintiffs' Claims.**

3

*Grants Pass* held the enforcement of generally applicable laws regulating camping on public

4

property does not constitute cruel and unusual punishment. *Grants Pass* requires the Court to dismiss

5

with prejudice claims 1-4 and claims 9-13, to the extent they rely on a theory of liability predicated on

6

the removal, arrest, citation, or fining of individuals.

7

Claims 1 through 4 are futile as each depends on the now reversed proposition that

8

enforcement of anti-camping laws is unconstitutional without adequate available shelter. SAC ¶¶ 262-

9

63. As the Court knows, Plaintiffs admitted that these claims are no longer viable and declined the

10

opportunity to amend. *See* ECF No. 230 at 2; ECF No. 236. These claims should be dismissed with

11

prejudice. *See Creech v. Tewalt*, 84 F.4th 777, 796 (9th Cir. 2023) (dismissing futile claim without

12

leave); *Wixon v. Wyndham Resort Dev. Co.*, No. C 07-02361 JSW, 2008 WL 2873326, at *7 (N.D.

13

Cal. July 23, 2008) ("If Plaintiffs choose not to amend, the Court shall dismiss. . . with prejudice.").

14

Plaintiffs' Claims 9 through 13 depend on the reversed proposition that enforcement of several

15

laws violates the Constitution unless adequate shelter is available. SAC ¶¶ 309, 316 (state-created

16

danger claims premised on allegation of "removing unhoused people from public spaces . . . without

17

ensuring that shelter and/or housing options are available"); *id.* ¶ 324 (claiming Defendants

18

"discriminate against unhoused individuals with disabilities by arresting, citing, fining, and seizing the

19

property of unhoused people for sleeping or lodging in public without first identifying their

20

individualized needs and whether Defendants' shelter options . . . can actually meet those needs"); *id.*

21

¶ 327 (incorporating same allegations into Section 11135 claim); *id.* ¶ 334 (basing conspiracy claim on

22

Defendants alleged agreement "to violate the constitutional rights of unhoused people by arresting,

23

citing, fining, and destroying the property of unhoused people without providing adequate notice or

24

adequate shelter"). Claims 9 through 13 must therefore be dismissed with prejudice to the extent they

25

rely on allegations of enforcement without available shelter. *See Bautista v. Los Angeles Cnty.*, 216

26

F.3d 837, 840 (9th Cir. 2000) (treating different theories in single count as different counts); *Wolf*

27

*Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 794-95 (D. Ariz. 2022) (dismissing

28

"entirely independent" theories in cause of action).

1

2

          **2.**      **Plaintiffs' Constitutional Claims Fail.**

                  **a.**       **Plaintiffs Fail to State State-Created Danger Claims (9 and 10).**

3

Even accepting the allegations, Plaintiffs fail to state a state-created danger claim.[9] The state-

4

created danger doctrine is a limited exception to the general rule that the Due Process Clause does not

5

"confer any affirmative right to governmental aid," *Patel*, 648 F.3d at 971, or obligate governments to

6

"protect the life, liberty, and property of its citizens against invasion by private actors," *DeShaney v.*

7

*Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).[10] To state a state-created danger

8

claim, the plaintiff must establish: (1) "the officers' affirmative actions created or exposed her to an

9

actual, particularized danger that she would not otherwise have faced;" (2) "the injury she suffered

10

was foreseeable;" and (3) "the officers were deliberately indifferent to the known danger." *Martinez*,

11

943 F.3d at 1271. Plaintiffs sufficiently allege none of these.

12

The Court has previously recognized "Plaintiffs' theory is that Defendants affirmatively place

13

unhoused individuals in danger by closing encampments without offering shelter and destroying their

14

property and survival belongings." ECF No. 222 at 8. This generic claim of danger is insufficient to

15

allege "an actual, particularized danger that [Plaintiffs] would not otherwise have faced." *Martinez*,

16

943 F.3d at 1271; *see Sinclair v. City of Seattle*, 61 F.4th 674, 682-83 (9th Cir. 2023) ("A danger is

17

'particularized' if it is directed at a specific victim," and must be "particularized to the plaintiffs").

18

Several courts in this Circuit have dismissed state-created danger claims based on similar allegations

19

of generalized "danger" to homeless people affected by resolutions. *See, e.g.*, *Cobine v. City of*

20

*Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017); *Young v. City of Los Angeles*, No. CV2000709,

21

2020 WL 616363, at *7 (C.D. Cal. Feb. 10, 2020); *Reed v. City of Emeryville*, 568 F. Supp. 3d 1029,

22

1039-41 (N.D. Cal. 2021); *Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1124 (N.D. Cal. 2022). As

23

in those cases, "the generalized dangers of living on the street preexisted" any relocation, and

24

25

[9] This failure is in addition to Plaintiffs' failure to state municipal liability under *Monell* for any of their constitutional claims. (*See infra*, § IV.B.2.e.)

26

[10] The doctrine is not without its critics. One of Plaintiffs' law firms, Latham & Watkins,

27

recently invited the Supreme Court to abolish the doctrine. *See County of Tulare v. Murguia*, No. 23-270, cert. denied; *see also Murguia v. Langdon*, 73 F.4th 1103, 1104 (9th Cir. 2023) (Bumatay, J., dissenting) (criticizing the doctrine as having "no support in the text of the Constitution, the historical

28

understanding of the 'due process of law,' or even Supreme Court precedent").

Plaintiffs have failed to allege Defendants intentionally exposed them to a specific danger they would not have otherwise faced. *Cobine*, 250 F. Supp. 3d at 433; *see id.* (dismissing claim for failure to allege specific dangerous conditions that the plaintiffs did not already face from being homeless); *Wills*, 617 F. Supp. 3d at 1124 (same); *Reed*, 568 F. Supp. 3d at 1041 (same). As the Court aptly explained, Plaintiffs' generalized allegations of indeterminate future harm differ significantly from the cases that have found a state-created danger claim was pleaded. ECF No. 222 at 9-10 (distinguishing *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1145 (N.D. Cal. 2021) and *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012)).

For an injury to be foreseeable, there must first be an injury. Plaintiffs' claim also fails because they have not identified any injury they suffered as a result of Defendants' actions. *Nieves v. Cnty. of Trinity*, No. 2:21-CV-02248-KJM-AC, 2022 WL 17994367, at *4 (E.D. Cal. Dec. 29, 2022) ("Because plaintiffs have not pled any cognizable injury, the court need not consider other elements of a state-created danger claim."). This case is nothing like those where the Ninth Circuit has recognized a state-created danger claim, all of which involved death or grievous injury. *See, e.g.*, *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (shooting); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (death); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (rape). And Plaintiffs' general allegations of mental health risks (*e.g.*, SAC, ¶¶ 9, 211-12)—even if they were specifically alleged as to the Plaintiffs—are insufficient. *J.P. by & through Villanueva v. Cnty. of Alameda*, 803 F.App'x 106, 108 (9th Cir. 2020) ("Our cases have not recognized a Fourteenth Amendment violation under [the state-created danger doctrine] for emotional distress alone"); *Reed*, 568 F. Supp. 3d at 1040 (plaintiffs were not in a more dangerous position even where city actions allegedly "exacerbated the plaintiffs' mental health impairments").

Plaintiffs also fail to allege deliberate indifference to a known particular danger to them. Deliberate indifference is not established unless "the defendant knows that something *is* going to happen but ignores the risk and exposes [the plaintiff] to it." *Patel*, 648 F.3d at 974 (cleaned up). Deliberate indifference is "a stringent standard of fault" that is only satisfied when the state actor recognizes the unreasonable risk and "actually intends to expose the plaintiff to such risk without regard to the consequences to the plaintiff." *Id.* (citation omitted). The SAC falls short, making only

conclusory allegations that "Defendants know or should know that their actions endanger the health and safety of unhoused individuals." SAC ¶ 311. This recitation of a legal conclusion is insufficient.

Plaintiffs' state law claim also fails. There are not "any cases that have recognized a state-created danger claim under Article I, § 7 [of the California Constitution]" and "district courts have declined to recognize such a claim in the absence of California law on the issue." *Sacramento Homeless Union v. Cnty. of Sacramento*, No. 2:22-cv-1095-TLN-KJN, 2024 WL 2785378, at *3 (E.D. Cal. May 29, 2024) (collecting cases); *Shen v. Albany Unified Sch. Dist.*, 436 F. Supp. 3d 1305, 1315 (N.D. Cal. 2020) ("[I]t is emphatically not the role of this federal court to create new doctrines under the California state constitution.").

**b.      Plaintiffs Fail to State A Due Process Claim.**

Plaintiffs' concessions concerning the validity of the City's Bag and Tag policy and state remedies bar their due process claims. A claim under Section 1983 for an unconstitutional deprivation of property must allege (1) a deprivation (2) of property (3) under color of state law. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 789 (9th Cir. 2002). "If these elements are met, the question becomes whether the state afforded constitutionally adequate process for the deprivation." *Id.* Notably, an unauthorized intentional deprivation of property by an employee does not constitute a procedural due process violation if a post deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Stone v. Agnos*, 960 F.2d 893, 895-96 (9th Cir. 1992) (finding no due process violation where homeless property was destroyed in violation of City policy). The SAC fails to allege the absence of an adequate post-deprivation remedy. Fatal to the claim, the SAC admits (and records subject to judicial notice confirm) that Plaintiffs filed small claims actions and government claims. (SAC ¶¶ 25, 28, 182; RJN Exs. A-C.) Under controlling law, state proceedings and the government claim is "an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994); *Joshua v. Newell*, 871 F.2d 884, 887 (9th Cir. 1989) ("To satisfy due process, the state remedy need not provide the [plaintiffs] with all the relief available under section 1983, so long as it would fully compensate their property loss."). Their due process claims in this federal action are therefore barred.

1

**c.      Adequate Legal Remedies And Claim-Splitting Bar Injunctive Relief.**

2

3        One "basic doctrine of equity jurisprudence [is] that courts of equity should not act when the

4    moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374,

5    381 (1992) (cleaned up). The doctrine exists because fashioning an injunction "implicates the well-

6    established federal policy of safeguarding the constitutional right to a trial by jury in federal court."

7    *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020). Typically, facts common to

8    legal and equitable claims must be adjudicated by a jury. *Beacon Theatres, Inc. v. Westover*, 359 U.S.

9    500, 510-11 (1959). As the Seventh Circuit has held, it "is incorrect" to "suppose[] that money never

10   is an adequate remedy for a constitutional wrong." *Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir.

11   2004). "Damages are a normal, and adequate, response to an improper search or seizure, which as a

12   constitutional tort often is analogized to (other) personal-injury litigation." *Id.*; *Libman v. United*

13   *States*, No. 23-55417, 2024 WL 2269271, at *2 (9th Cir. May 20, 2024) (dismissing injunctive relief

14   claim for unlawful seizure because compensation was available); *see also Ruckleshaus v. Monsanto*

     *Co.*, 467 U.S. 986, 1016 (1984) (recognizing that equitable relief is not available for a taking).

15       Since the face of the SAC confirms the existence of adequate remedies at law, rather than deny

16   their existence consistent with Plaintiffs' pleading obligations, injunctive relief should fail. SAC ¶¶ 25,

17   28, 182. It is of no significance that Plaintiffs failed to seek an injunction in prior proceedings. These

18   claims are barred by the general rule precluding claim splitting, which applies to "a plaintiff who

19   chooses to bring his claim to a limited court of jurisdiction [when] he could have brought the same

20   claim in a court of broader jurisdiction in the same state." *Rucker v. City of Oakland*, 39 F.3d 1188, at

21   *2 (9th Cir. 1994). Accordingly, claims five and six fail.

22       **d.      Plaintiffs Castaño And Vaughn Do Not Plead Timely Claims.**

23       The statute of limitations for a section 1983 claim is two years from accrual. *Wheeler v. City of*

24   *Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). Under federal law, a claim accrues "when the

25   plaintiff knows or has reason to know of the actual injury" as opposed to a legal "wrongdoing."

26   *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). All claims accrued

27   when Plaintiffs experienced a deprivation or seizure. *Klein v. City of Beverly Hills*, 865 F.3d 1276,

28

1279 (9th Cir. 2017) (accruing based on seizure); *Morgan v. Komers*, 151 F. App'x 546, 548 (9th Cir. 2005) (accruing based on the deprivation); *Nichols v. City of Palm Springs*, No. CV 14-1553 PSG (MANx), 2014 WL 12703286, at *3 (C.D. Cal. Oct. 6, 2014) (same); *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) (accruing with last overt act of conspiracy). Here, Castaño identifies four instances of alleged property destruction. It is clear that the final instance occurred on August 21, 2020, based on the face of the SAC. SAC ¶ 46. Thus, Castaño needed to file a complaint no later than August 21, 2022. Vaughn also alleges his property was destroyed on January 8, 2020—meaning any claim needed to be filed by September 8, 2022. They filed on September 27, 2022, and their untimely claims must be dismissed with prejudice.

### e. Plaintiffs Fail To Plausibly Plead Any *Monell* Liability.

Plaintiffs fail to adequately allege municipal liability for their constitutional claims (claims 5, 7, and 9). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, Plaintiffs must allege "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 90 (9th Cir. 2011) (citation omitted). Municipalities may be liable where they act according to an express official policy or custom, fail to train, or officials with policy-making authority ratify the acts. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The plausibility standard controls. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

The SAC contains *no* allegations concerning ratification or the existence of an unconstitutional express policy. Judgment on the pleadings is appropriate as to those theories. *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 980 (N.D. Cal. 2017), aff'd in part, dismissed in part, 897 F.3d 1125 (9th Cir. 2018) (separately analyzing and dismissing particular *Monell* theories). Plaintiffs fail to state that the City has failed to adequately train employees, or that that the City has an unconstitutional practice or custom of destroying homeless individuals' property.

i.      **No Failure to Train Claim Is Stated.**

A failure to train claim must demonstrate a deliberate indifference to the particular risk that was the moving force behind the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989). It is not enough to assert that a particular officer "may be unsatisfactorily trained," or that "an injury or accident could have been avoided if an officer had better or more training." *Id.* at 390-91. Instead, "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). To prevail, Plaintiffs must demonstrate that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, . . . [and] the policymakers choose to retain that program." *Id.* (citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Furthermore, training on constitutional policies defeats a claim. *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008); *see also Bell v. Williams*, 108 F.4th 809, 825 (9th Cir. 2024)  (holding that "the lack of [] a distinct training module does not demonstrate deliberate indifference" where a municipality does train). And the fact that a right is not "well-established" does too. *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022).

In light of the foregoing, the SAC fails to state a cognizable failure-to-train claim because the shotgun pleading says *nothing* about the individual Defendants' training programs. Instead, the SAC admits that "PD/DPW [was] working to clarify and train the bag/tag . . . policy." SAC ¶ 231. "Without identifying the particular deficiencies, the Court cannot infer any alleged training failure was the 'moving force' behind Plaintiff's injuries." *Young v. City of Menifee*, No. EDCV 17-1630 JGB (SPx), 2019 WL 3037926, at *5 (C.D. Cal. Apr. 5, 2019). Further, Plaintiffs do not allege any facts suggesting any failure of the training program amounted to deliberate indifference, especially since the constitutional rights that Plaintiffs have invoked are not "well-established," *Vanegas*, 46 F.4th at 1167, and the City did train as alleged. Any failure to train claim must be dismissed.

1

### ii.    No Long-Standing Custom Claim Is Stated.

Generally, a "practice or custom" theory requires showing that the decisions of "those officials who have the power to make official policy on a particular issue . . . caused the deprivation of rights at issue . . . by *acquiescence* in a longstanding practice or custom." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis added). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs fail to allege officials' deliberate acquiescence in any ill-defined custom.

First, Plaintiffs do not allege that official policy makers acquiesced in a clearly defined practice or had knowledge of it. Second, Plaintiffs conceded that the City crafted its Bag and Tag policy "to better safeguard the property of unhoused individuals"—evincing a clear intent to avoid constitutional violations—not deliberate acquiescence into deprivations of civil rights.  SAC ¶ 135. Third, Plaintiffs' novel claims are not based on well-established rights. *Vanegas*, 46 F.4th at 1167 (absent a showing of "well-established" rights, there can be no deliberate indifference). Plaintiffs invoke *Lavan*, 693 F.3d at 1024 (SAC ¶ 297), but while *Lavan* found that homeless residents who "occup[ied] the sidewalks of Skid Row pursuant to a settlement agreement" had protected interests in their admittedly unabandoned property in *mobile shelters and carts*, it did not create a right to store property on the street and provided no standard to discern protected property from unprotected property (*e.g.* trash, hazards, abandoned property). San Francisco had no comparable limitation until this litigation and *Lavan* does not create the well-established right Plaintiffs rely on. Nor does any controlling law clearly articulate a test for appropriate "survival gear" that may be protected by the state-created danger doctrine. Plaintiffs' *Monell* allegations fail.

### f.    Plaintiffs' Conspiracy Claim Fails (Claim 13).

Conspiracy requires a showing of "(1) the existence of an express or implied agreement among the defendant[s] to deprive [them] of [their] constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (cleaned up). "[T]he plaintiff must state specific facts to support the existence of a claimed conspiracy." *Olsen v.*

*Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (cleaned up). Each participant in the conspiracy must "share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (cleaned up).

Because Plaintiffs have failed to state an actual deprivation of rights, they have also failed to state a conspiracy to deprive them of those rights. The SAC also fails to allege any facts from which an agreement to unlawfully destroy Plaintiffs' property can plausibly be inferred. This cursory pleading does not nudge their claims across the line from conceivable to plausible to state a valid claim.[11] The claim must be dismissed.

### 3. Plaintiffs Fail to State ADA and Section 11135 Claims (11 and 12).

Only Coalition and Sandoval allege a disability claim. Both fail. "Title II is the portion of the ADA that applies to state and local governments." *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014). To state a claim, plaintiffs must allege: "(1) [they are] a qualified individual with a disability; (2) [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity; and (3) this exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Id.* at 695. Ultimately, "[a] public entity must make reasonable modifications to avoid discrimination against persons with disabilities, unless it can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity it provides." *Id.* (citing 28 C.F.R. § 35.130(b)(7)). Public entities "are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003).

Coalition's and Sandoval's disability claims are based on two general allegations, neither of which states a viable claim. First, they allege Defendants discriminate against disabled homeless persons by failing to "provide proper assistance, additional time, or other supports to disabled individuals when demanding that unhoused people remove themselves or their belongings from public space." SAC ¶ 321. But the very case Plaintiffs cite for this proposition shows why dismissal is required. *See id.* (citing *Cooley v. City of Los Angeles*, No. 2:18-cv-09053-CAS-PLA, 2019 WL

---

[11] To avoid waiver, Defendants maintain that the intracorporate conspiracy doctrine bars the claim.

3766554, at *6 (C.D. Cal. Aug. 5, 2019) (*Cooley II*)). Before issuing the decision Plaintiffs cite, the *Cooley* court dismissed the plaintiff's ADA claim because she failed to allege a request for the allegedly denied accommodation. *Cooley v. City of Los Angeles*, No. 2:18-cv-09053-CAS-PLAx, 2019 WL 1936437, at *6 (C.D. Cal. May 1, 2019) (*Cooley I*); *compare Cooley II*, 2019 WL 3766554, at *5 (upholding ADA claim only after "Cooley allege[d] that she told LAPD officers that she needed help to carry her property because of her disability"). In *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018), the court dismissed the plaintiff's ADA claim because, although he was in a wheelchair, he never requested the accommodation at issue. Just as in *Cooley I* and *Sullivan*, Sandoval fails to allege she requested the "proper assistance, additional time, or other [undefined] supports" she claims were denied (SAC ¶ 324), and she fails to "clearly allege how the destruction of [her] property constitutes a violation of the ADA," *Cooley I*, 2019 WL 1936437 at *6; *see* SAC ¶¶ 31-32, 250-251. Coalition, in addition to failing to identify a disabled member discriminated against for standing, similarly fails to allege any requests for accommodation.

Second, Coalition and Sandoval allege Defendants "discriminate against unhoused individuals with disabilities by arresting, citing, fining, and seizing the property of unhoused people for sleeping or lodging in public without first identifying their individualized needs and whether Defendants' shelter options, if any exist, can actually meet those needs." SAC ¶ 324. This claim is deficient because neither Sandoval nor Coalition (or a member) allege they were denied shelter at all, let alone because of their disability. In fact, Sandoval concedes the City provided her shelter multiple times. SAC ¶ 31. This allegation is also based on the legal standard overturned by *Grants Pass* and should be dismissed for the reasons above (*see supra*, § IV.B.1).

In addition to failing to state an ADA claim, Coalition is not within the ADA's zone-of-interest. Coalition must establish that "the statute grants [it] the cause of action that [it] asserts." *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 196-97 (2017). "Whether a plaintiff comes within 'the zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127 (cleaned up). This inquiry also requires a plaintiff invoking a statute to establish proximate cause, *i.e.* "whether the harm alleged has a sufficiently close connection to the

conduct the statute prohibits." *Id.* at 133. "If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." *Id.* at 134 n.6. Coalition is far outside of the zones-of-interest of the ADA.

An ADA remedy exists for "any person alleging discrimination on the basis of disability," 42 U.S.C. § 12133, but this does not mean an action is available to anyone that can conceivably allege discrimination on the basis of disability to someone else. *Lexmark*, 572 U.S. at 129 ("[T]he 'unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that [the statute] should not get such an expansive reading.'" (citation omitted)). Such a reading would run afoul of Article III and must be avoided. *TransUnion*, 594 U.S. at 427 ("Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."). The ADA bars discrimination against qualified individuals with a disability, but Coalition has not alleged any discrimination to itself based on a disability. Nor has it alleged any injury derivate of disability discrimination. That is fatal to its claim. *Lexmark*, 572 U.S. at 132 ("[A] statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.").

Since Plaintiffs "failed to sufficiently plead a violation of the ADA . . . , [they have] failed to plead a sufficient claim under section 11135," which alleges no more than their ADA claim. *M.S. v. Cnty. of Ventura*, No. CV 16-03084-BRO, 2016 WL 11506613, at *14 (C.D. Cal. Oct. 24, 2016).

## V.   CONCLUSION

The City requests that the Court grant its motion without leave to amend.

1

Dated:  September 5, 2024

2
                                        DAVID CHIU
                                        City Attorney
3                                       YVONNE R. MERÉ
                                        EDMUND T. WANG
4                                       KAITLYN MURPHY
                                        MIGUEL A. GRADILLA
5                                       JOHN H. GEORGE
                                        STEVEN A. MILLS
6                                       Deputy City Attorneys

7
                                    By:  s/Steven A. Mills
8                                       STEVEN A. MILLS

9                                       Attorneys for Defendants CITY AND COUNTY OF
                                        SAN FRANCISCO; SAN FRANCISCO POLICE
10                                      DEPARTMENT; SAN FRANCISCO DEPARTMENT
                                        OF PUBLIC WORKS; SAN FRANCISCO
11                                      DEPARTMENT OF HOMELESSNESS AND
                                        SUPPORTIVE HOUSING; SAN FRANCISCO FIRE
12                                      DEPARTMENT; SAN FRANCISCO DEPARTMENT
                                        OF EMERGENCY MANAGEMENT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28