JOHN THOMAS H. DO (SBN 285075)
jdo@aclunc.org
WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
Facsimile: (415) 255-8437

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | CASE NO. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> **Judge:** The Hon. Donna M. Ryu <br><br> **Hearing Date:** October 10, 2024 <br> **Time:** 1:00 p.m. <br> **Courtroom:** 1301 Clay Street <br> Oakland, CA 94612 <br><br> **Trial Date:** May 1, 2025 |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND ................................................................................................2

III.    LEGAL STANDARDS .......................................................................................2

IV.     ARGUMENT .....................................................................................................3

        A.      The Court Should Reject Defendants' Standing Challenge.....................3

                1.      The Coalition Has Both Associational and Organizational Standing..........4

                        (a)     Associational Standing........................................................4

                        (b)     Organizational Standing......................................................8

                2.      Individual Plaintiffs have Standing.............................................11

                        (a)     Toro Castaño, Nathaniel Vaughn, Molique Frank, and
                                Teresa Sandoval.................................................................13

                        (b)     Sarah Cronk, Joshua Donohoe, and David Martinez....................15

        B.      The Plaintiffs have Sufficiently Pled Claims.........................................16

                1.      The Court should Dismiss Claims 1-4 without prejudice.........................16

                2.      Plaintiffs Sufficiently Plead State Created Danger....................................17

                3.      Due Process........................................................................18

                4.      Adequate Remedies/Claims-Splitting.........................................19

                5.      Mr. Castaño's and Mr. Vaughn's Claims are Timely.................................20

                6.      Monell Liability ................................................................21

                7.      ADA and Section 11135.......................................................23

V.      CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Cal. Dep't of Health Servs.*,
  487 F.3d 684 (9th Cir.2007) ...................................................................20

*Alaska Fish & Wildlife Fe'n & Outdoor Council, Inc. v. Dunkle*,
  829 F.2d 933 (9th Cir. 1987) ...................................................................7

*Am. Fed'n of Gov't Emps. Local 1 v. Stone*,
  502 F.3d 1027 (9th Cir. 2007) .................................................................8

*Anderson v. Ghaly*,
  No. 15-CV-05120-HSG, 2022 WL 717842 (N.D. Cal. Mar. 10, 2022) ...................................7

*ARC of California v. Douglas*,
  2018 WL 1535511 (E.D. Cal. Mar. 29, 2018) ...............................................8

*Arizona All. For Retired Americans v. Mayes*,
  No. 22-16490, slip op. (9th Cir. Sept. 20, 2024) .......................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................1

*Associated Gen. Contractors. of Am. v. Cal. Dep't of Transp.*,
  713 F.3d 1187 (9th Cir. 2013) .................................................................5

*Ayeni-Aarons v. Best Buy Credit Card Servs./CBNA*,
  2023 WL 7092295 (E.D. Cal. Oct. 26, 2023) ..............................................20

*Barden v. City of Sacramento*,
  292 F.3d 1073 (9th Cir. 2002) ...............................................................24

*Barnett v. Centoni*,
  31 F.3d 813 (9th Cir. 1994) ...................................................................19

*Bassilios v. City of Torrance, CA*,
  166 F. Supp. 3d 1061 (C.D. Cal. 2015) ...................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................3, 16

*Berry v. Hennepin Cty*,
  2024 WL 3495797 (D. Minn. July 22, 2024) ............................................13

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014).....................................................................6

*Boyd v. City of San Rafael*,
   2023 WL 6960368 (N.D. Cal. Oct. 19, 2023)................................................................24

*Campbell v. Miller*,
   373 F.3d 834 (7th Cir. 2004) ........................................................................................20

*Carter v. HealthPort Tech., LLC*,
   822 F.3d 47 (2nd Cir. 2016)........................................................................................3, 4

*City of Canton, Ohio v. Harris*,
   489 U.S. 378 (1989)......................................................................................................21

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1982)........................................................................................................12

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)......................................................................................................22

*Cobine v. City of Eureka*,
   250 F. Supp. 3d 423 (N.D. Cal. 2017) .........................................................................17

*Columbia Basin Apartment Ass'n v. City of Pasco*,
   268 F.3d 791 (9th Cir. 2001) ..........................................................................................7

*Connick v. Thompson*,
   563 U.S. 51 (2011)........................................................................................................23

*Cooley v. City of Los Angeles*,
   2019 WL 3766554 (C.D. Cal. Aug. 5, 2019)................................................................24

*Daskalea v. District of Columbia*,
   227 F.3d 433 (D.C. Cir. 2000) .....................................................................................22

*Disability Rts. California v. Cnty. of Alameda*,
   2021 WL 212900 (N.D. Cal. Jan. 21, 2021) ..................................................................5

*Disability Rts. Pennsylvania v. Pennsylvania Dep't of Hum. Servs.*,
   No. 1:19-CV-737, 2020 WL 1491186 (M.D. Pa. Mar. 27, 2020) ................................25

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) .......................................................................................21

*FDA. v. All for Hippocratic Med.*,
   602 U.S. 367 (2024)......................................................................................................10

*Fund for Empowerment et al. v. City of Phoenix*,
   2:22-cv-02041-GM (D. Ariz.)......................................................................................16

*Garcia v. City of Los Angeles*,
   No. CV 12-6182 DSF, 2020 WL 6586303 (C.D. Cal. Sept. 15, 2020) .......................7, 8

*Gay-Straight All. Network v. Visalia Unified Sch. Dist.*,
  262 F. Supp. 2d 1088 (E.D. Cal. 2001)...................................................................8

*Gibson v. United States*,
  781 F.2d 1334 (9th Cir. 1986) ........................................................................20

*Glover v. City of Laguna Beach*,
  2017 WL 4457507 (C.D. Cal. June 23, 2017) .................................................13

*Gutowsky v. County of Placer*,
  108 F.3d 256 (9th Cir. 1997) ..........................................................................20

*Henderson v. Bonaventura*,
  649 F. App'x 639 (9th Cir. 2016)....................................................................20

*Henry A. v. Willden*,
  678 F.3d 991 (9th Cir. 2012) ..........................................................................10

*Hernandez v. City of San Jose*,
  241 F. Supp. 3d 959 (N.D. Cal. 2017), *aff'd in part, dismissed in part*, 897 F.3d
  1125 (9th Cir. 2018).........................................................................................22

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) ........................................................................17

*Herrera v. Zumiez, Inc.*,
  953 F.3d 1063 (9th Cir. 2020) ......................................................................2, 3

*Honig v. Doe*,
  484 U.S. 305 (1988).........................................................................................14

*Hudson v. Palmer*,
  468 U.S. 517 (1984).........................................................................................18

*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1977).......................................................................................4, 6

*In re Navy Chaplaincy*,
  697 F.3d 1171 (D.C. Cir. 2012) ......................................................................12

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ........................................................................12

*Index Newspapers LLC v. City of Portland*,
  474 F. Supp. 3d 1113 (D. Or. 2020) ...............................................................13

*Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am. v. Brock*,
  477 U.S. 274 (1986)...........................................................................................4

*Joshua v. Newell*,
    871 F.2d 884 (9th Cir. 1989) ................................................................19

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006) ..............................................................17

*Klein v. City of Beverly Hills*,
    865 F.3d 1276 (9th Cir. 2017) ..............................................................20

*Kunzi v. Arizona Bd. of Regents*,
    2013 WL 6178210 (D. Ariz. Nov. 25, 2013).........................................21

*LA Alliance for Human Rights v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) ............................................................10, 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ................................................................8

*La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*,
    No. SACV07250DOCANX, 2008 WL 11411732 (C.D. Cal. Aug. 18, 2008),
    *aff'd sub nom. La Asociacion de Trabajadores de Lake Forest v. City of Lake
    Forest*, 624 F.3d 1083 (9th Cir. 2010) ...................................................6

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) ................................................................11

*Langley v. City of San Luis Obispo*,
    2022 WL 18585987 (C.D. Cal. Feb. 7, 2022)........................................18

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ..................................................................3

*Levine v. Johanns*,
    2006 WL 8441742 (N.D. Cal. Sept. 6, 2006) ....................................4, 14

*Libman v. United States*,
    2024 WL 2269271 (9th Cir. May 20, 2024) ..........................................20

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ..............................................25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................3

*Mansourian v. Regents of Univ. of Cal.*,
    602 F.3d 957 (9th Cir. 2010) ................................................................20

*Mar. for our Lives Idaho v. McGrane*,
    697 F.Supp.3d 1029 (D. Idaho 2023) ......................................................7

*Martin v. City of Los Angeles*,
  2023 WL 1785776 (C.D. Cal. Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 1784735 (C.D. Cal. Feb. 3, 2023)...........................................................24

*Martinez v. City of Clovis*,
  943 F.3d 1260 (9th Cir. 2019) ...........................................................10

*Mary's Kitchen v. City of Orange*,
  No. 821CV01483DOCJDE, 2021 WL 6103368 (C.D. Cal. Nov. 2, 2021) ...........................18

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)...........................................................4

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ...........................................................24

*Mecinas v. Hobbs*,
  30 F.4th 890 (9th Cir. 2022) ...........................................................11

*Menotti v. City of Seattle*,
  409 F.3d 1113 (9th Cir. 2005) ...........................................................22

*Milburn v. City of Lebanon*,
  221 F. Supp. 3d 1217 (D. Or. 2016) ...........................................................18

*Monell v Department of Social Services*,
  436 US 658 (1978)...........................................................21

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)...........................................................19

*Morgan v. Komers*,
  151 F. App'x 546 (9th Cir. 2005)...........................................................20

*Murguia v. Langdon*,
  61 F.4th 1096 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024)...........................................................17

*N.B. ex rel. Peacock v. District of Columbia*,
  682 F.3d 77 (D.C. Cir. 2012)...........................................................12

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) ...........................................................11

*Nichols v. City of Palm Springs*,
  2014 WL 12703286 (C.D. Cal. Oct. 6, 2014)...........................................................21

*Nnebe v. Daus*,
  644 F.3d 147 (2d. Cir. 2011)...........................................................7

*Patel v. Kent Sch. Dist.*,
  648 F.3d 965 (9th Cir. 2011) ................................................................17

*Paugh v. Uintah Cnty.*,
  No. 2:17-CV-01249 JNP-CMR, 2020 WL 4597062, at *37 (D. Utah Aug. 11,
  2020), *aff'd in part, appeal dismissed in part*, 47 F.4th 1139 (10th Cir. 2022) ...................22

*Polanco v. Diaz*,
  76 F. 4th 918 (9th Cir. 2023) ................................................................17

*Prado v. City of Berkeley*,
  No. 23-cv-04537-EMC, 2024 WL 3697037 (N.D. Cal. Aug. 6, 2024) ...................10

*Proctor v. District of Columbia*,
  531 F. Supp. 3d 49 (D.D.C. 2021) ................................................................13

*Rakas v. Illinois*,
  439 U.S. 128 (1978)................................................................8, 11

*Redman v. Cnty. of San Diego*,
  942 F.2d 1435 (9th Cir. 1991), *abrogated on other grounds by Farmer v.
  Brennan*, 511 U.S. 825 (1994) ................................................................22

*Rios v. Cnty. of Sacramento*,
  562 F. Supp. 3d 999 (E.D. Cal. 2021) ................................................................13

*Rodriguez v. City of Los Angeles*,
  2015 WL 13260395 (C.D. Cal. May 8, 2015) ...................21

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ................................................................9

*Roe v. City of New York*,
  151 F. Supp. 2d 495 (S.D.N.Y. 2001)................................................................13

*Sacramento Homeless Union v. Cnty. of Sacramento*,
  617 F. Supp. 3d 1179 (E.D. Cal. 2022)................................................................18

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ................................................................3, 4

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ................................................................3

*Sinclair v. City of Seattle*,
  61 F.4th 674 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 88 (2023)................................17

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................19

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ......................................................................................16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).........................................................................................................3

*Stone v. Agnos,*
    960 F.2d 893 (9th Cir. 1992) ......................................................................................19

*Sullivan v. City of Berkeley,*
    No. C 17-06051 WHA, 2018 WL 489011 (N.D. Cal. Jan. 19, 2018)....................................25

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009).........................................................................................................5

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014).........................................................................................................4

*Tanner-Brown v. Haaland,*
    105 F.4th 437 (D.C. Cir. 2024) ......................................................................................6

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021).......................................................................................................14

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980).......................................................................................................13

*Unan v. Lyon,*
    853 F.3d 279 (6th Cir. 2017) ......................................................................................13

*Webb v. Sloan,*
    330 F.3d 1158 (9th Cir. 2003) ......................................................................................21

*Where Do We Go Berkeley v. California Dep't of Transportation (Caltrans),*
    32 F.4th 852 (9th Cir. 2022) ......................................................................................23

*Where Do We Go Berkeley v. California Dep't of Transportation (Caltrans),*
    No. 21-CV-04435-EMC, 2021 WL 5964594 (N.D. Cal. Dec. 16, 2021)..............................18

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) .......................................................................................3

*Wixon v. Wyndham Resort Dev. Co.,*
    No. C 07-02361 JSW, 2008 WL 2873326 (N.D. Cal. July 23, 2008) ....................................16

*Yesue et al. v. City of Sebastopol,*
    4:22-cv-06474-KAW (N.D. Cal) ......................................................................................16

*Zimmerman v. City of Oakland,*
    255 F.3d 734 (9th Cir. 2001) ......................................................................................19

*Zinermon v. Burch*,
    494 U.S. 113 (1990)......................................................................................................18, 19

**RULES**

Fed. R. Civ. P. 8(a)(2)......................................................................................................16

Fed. R. Civ. P. 12(b)(1)......................................................................................................3

Fed. R. Civ. P 15(a)(2)......................................................................................................17

## I.     INTRODUCTION

Defendants once again fail to meet their burden to show that Plaintiffs lack standing or that their claims are not plausible.  Defendants' extreme, sweeping arguments would preclude the vindication of civil rights for society's most vulnerable people and should be rejected.

With respect to standing, Defendants' Motion conflates facial and factual attacks.  The Motion actually presents a facial challenge to the Coalition's standing,[1] and a narrow factual challenge to *only* the element of injury-in-fact with respect to individual plaintiffs' standing.  These attacks fail for three reasons.  *First*, as this Court has already found, the Coalition "unquestionably" has standing to seek all relief sought in this litigation and so "need not address Defendants' standing arguments as to individual plaintiffs."  *See* ECF Dkt. No. 128 at 5.  Defendants' facial attack does not undermine that ruling.  *Second*, even if the Court were to examine the Defendants' scant factual evidence on individual plaintiffs, Defendants' evidence *supports* the likelihood of Plaintiffs being subject to the Defendants' unconstitutional practices.  And *third,* Plaintiffs' fear and risk of being subject to enforcement are well founded due to the transitory nature of homelessness.

The motion for judgment on the pleadings also fails because Defendants seek to impose stricter pleading standards that go beyond the plausibility standard.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Defendants unquestionably have sufficient notice of the allegations against them as their vigorous defense shows.  Regardless, Plaintiffs' allegations sufficiently state the causes of action.  Indeed, as to the Fourth and Fourteenth Amendment claims, this Court has already found, and the Ninth Circuit upheld, that "Plaintiffs have presented significant evidence of a practice of seizing and destroying of homeless individuals' unabandoned personal property." Dkt. 65 at 49.

---

[1] To the extent that Defendants later assert that it is presenting a factual challenge to the Coalition's standing, it has failed to present any evidence in support and so should be denied on the same basis as any facial challenge.  Plaintiffs stand ready to proffer evidence that amendment would not be futile should the Court find the allegations are not sufficient.

## II.   BACKGROUND

Plaintiffs, the Coalition on Homelessness ("Coalition") and seven individuals seek to enjoin Defendants' pattern and practice of misconduct, which includes (i) unlawfully seizing and destroying the personal property of unhoused persons, (ii) affirmatively placing unhoused persons in danger by displacing them and destroying necessary survival gear, including medications, and (iii) routinely discriminating against unhoused individuals with disabilities by denying them access to additional support when requiring them to move their persons or property and by failing to offer adequate shelter.  *See, e.g.*, ECF No. 135 (the "Complaint" or "SAC") at ¶¶ 8, 9, 41, 50, 110.

Plaintiffs also sought a preliminary injunction to enjoin the Defendants from destroying property.[2]  On December 23, 2022, the Court agreed that Plaintiffs were likely to succeed on the merits of their property destruction claims and ordered Defendants to comply with their "bag and tag" policy.  ECF No. 65 at 49; *see also id.* at 44-45.  Since the preliminary injunction was issued, Plaintiffs have raised concern throughout the litigation that Defendants were failing to comply. Plaintiffs brought a motion to enforce (ECF No. 130), which the Court ultimately granted as to the property claims because the City fell "short of demonstrating meaningful training of City workers on the bag and tag policy as of September 2023. . . ."  ECF No. 231 at 10.

On January 12, 2023, the Court denied Defendants' first motion to dismiss the complaint. ECF No. 84.  On May 23, 2023, the Court denied Defendants' second motion to dismiss, which included a facial attack on the standing of the individual plaintiffs.  The Court determined the Coalition "unquestionably has standing to pursue all forms of relief sought through this lawsuit" and so did not need to address standing for the remaining plaintiffs.  ECF No. 128 at 5.  The Court granted a narrow motion to strike, resulting in Plaintiffs filing a 101-page Second Amended Complaint on June 6, 2023 (the "Complaint" or "SAC").

## III.   LEGAL STANDARDS

A Rule 12(c) motion for judgment on the pleadings is the functional equivalent of a 12(b)(6) motion to dismiss.  *See, e.g.*, *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).  As such,

---

[2] The preliminary injunction also included Plaintiffs' claims under the Eighth Amendment, but that portion has been subsequently vacated following the Supreme Court's decision in *Grants Pass*.

1    the court must "accept all factual allegations in the complaint as true and construe them in the light

2    most favorable to the non-moving party." *Id.*   "[D]etailed factual allegations" are unnecessary as

3    long as the plaintiff's allegations could "plausibly" state a claim.  *Bell Atl. Corp. v. Twombly*, 550

4    U.S. 544, 545 (2007); *see id.* (complaint need only contain enough factual content "to raise a

5    reasonable expectation that discovery will reveal evidence" of the claim).   The court can neither

6    consider evidence outside of the pleadings nor "take judicial notice of a fact that is 'subject to

7    reasonable dispute.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).   A court will

8    dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial,

9    implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid

10   of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

11   83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).

12          The challenging party may make either a facial or factual attack on subject matter

13   jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge "asserts that the

14   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

15   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  But "in a factual attack, the

16   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

17   jurisdiction."  *Id.*   "'In resolving a factual attack on jurisdiction, the district court may review

18   evidence beyond the complaint without converting the motion to dismiss into a motion for summary

19   judgment.'"  *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.

20   2003)).   The moving party "convert[s] the motion to dismiss to a factual motion by presenting

21   affidavits or other evidence."  *Id.*   But when Defendants fail to present evidence controverting the

22   allegations in the complaint, "plaintiffs [are] entitled to rely on the allegations of the Complaint in

23   opposition to the motions to dismiss for lack of standing."  *Carter v. HealthPort Tech., LLC*, 822

24   F.3d 47, 58 (2nd Cir. 2016).

25   **IV.     ARGUMENT**

26          **A.     The Court Should Reject Defendants' Standing Challenge**

27          Article III standing requires showing an (1) "injury in fact," (2) that is fairly traceable to the

28   challenged conduct, and (3) will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560-1 (1992) (citation omitted).  These requirements are not onerous.  "Even a small probability of injury is sufficient" to create standing.  *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (internal citations and quotations omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (future harm need not be certain, there must simply be a "substantial risk that the harm will occur").  Standing is established "if each step in the causal chain is plausible, even if the chain of events leading from defendant's conduct to plaintiff's injury is not immediate." *Levine v. Johanns*, 2006 WL 8441742, at *8 (N.D. Cal. Sept. 6, 2006).

### 1.  The Coalition Has Both Associational and Organizational Standing

Defendants present **no** evidence to dispute the Coalition's allegations that support standing, whether associational or organizational, meaning that Defendants' attack on the Coalition's standing is a ***facial*** one and the Court must accept all relevant allegations as true.  *See Safe Air for Everyone,* 373 F.3d at 1039 (moving party converts motion to factual attack by presenting affidavits or other evidence); *Carter*, 822 F.3d at 59 (plaintiff entitled to rely on allegations when defendants' evidence does not controvert allegations).  The Court has already found on the face of the pleadings that the "Coalition on Homelessness unquestionably has standing to pursue all forms of relief sought through this lawsuit," (ECF No. 128 at 5), and the Court need not revisit its prior determination.  Regardless, as discussed below, the Coalition has amply pled facts supporting standing under either basis.

### (a)  Associational Standing

An organization possesses associational standing on behalf of its members when three factors are met: (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  Associational standing "recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."  *Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986).

The Defendants argue that the Coalition has not identified a member with standing.  *See* ECF No. 242 at 10.  First, the Coalition is not required to identify a specific member because the question

is "whether [the Coalition] has established that 'at least one' of its Constituents 'would have had standing.'"  *Disability Rts. California v. Cnty. of Alameda*, 2021 WL 212900 at \*7 (N.D. Cal. Jan. 21, 2021).  Because the SAC is clear that its members would be harmed, identification is only necessary if "Defendants could not otherwise 'understand []and respond to'" the claims.  *Id.*  Here, Defendants did not argue they do not understand the claims.  Second, Defendants' case law did not concern a motion to dismiss.  *Associated Gen. Contractors. of Am. v. Cal. Dep't of Transp.*, on which Defendants rely, was on a motion for summary judgment where "ACG was required to submit competent evidence, not mere allegations, to demonstrate that at least one of its members had standing."  713 F.3d 1187, 1194 (9th Cir. 2013).[3]  That is not the case here, where the Court must accept the allegations as true and discovery is ongoing.

In any event, Defendants admit that the Coalition names members in the SAC.  Defendants mistakenly argue that Mr. Castaño was the only individual plaintiff identified by the Coalition as a member in the SAC,[4] but later acknowledge the Coalition names others, including Couper Orona and Shyhyene Brown, as members.  SAC ¶ 185.  Indeed, it is wrong to assume that the only Coalition members are the named Plaintiffs in the lawsuit; Defendants appear to not make such an argument, nor cite any case law to suggest that the presence of just one member eliminates the need for an associational Plaintiff.  SAC ¶ 184 (Coalition has "hundreds of active members over the years").

After detailing the wrongful practices of the Defendants, the Coalition alleges that "[s]ome of the Coalition's most active members have been particularly impacted.  For example, Couper Orona, Shyhyene Brown, and Toro Castaño are unhoused people who have been active members in the Coalition and help lead the Coalition's human rights working group.  But each of these individuals has also lived through threats of arrest and have lost their valuable personal property in

---

[3] Similarly, *Summers v. Earth Island Institute* reversed a permanent injunction after determining plaintiffs had not proven standing and could not supplement evidence of standing "*after the trial [was] over, judgment has been entered and a notice of appeal has been filed*."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 501 (2009) (emphasis original).

[4] For Mr. Castaño, Defendants also contest he has standing sufficient to provide the Coalition with associational standing.  The arguments regarding his alleged lack of in-injury-in fact are addressed related to his individual standing at *infra* IV(A)(2)(a).  Defendants also allege his claims are time-barred; but they are not and thus do not also bar the Coalition.  *See infra* IV(B)(5).

Defendants' sweeps over the last several years."  SAC ¶ 186. [5]  Defendants **do not** offer any evidence to rebut the allegation.  ECF No. 242 at 10.  Likewise, Coalition alleges that "several" of the individual plaintiffs "are active members" of the Coalition.  SAC ¶ 243.  For example, Ms. Sandoval, an individual plaintiff, has alleged her "prosthetics were taken" resulting in her "mobility [becoming] substantially impaired."  SAC ¶ 250.  And Mr. Martinez alleges the City has taken his survival gear, his heart medication for congestive heart failure, and interfered with his ability to go to doctor appointments.  SAC ¶ 34, 252; *see also* ¶¶ 318-330.  The Coalition further alleges that its membership is made up of primarily unhoused individuals, including those with disabilities, making it difficult to stay in contact with them.  SAC ¶¶ 22, 177, 184, 200. 204. [6]  When drawing all inferences in the light most favorable to it, the Coalition clearly alleges it has members with standing.

For the third consideration, the Coalition has associational standing because "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt*, 432 U.S. at 343.  Defendants argue that Mr. Castano's status as a plaintiff eliminates the need for the Coalition to proceed as an associational plaintiff, arguing that *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) and *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014) hold that there is no added administrative convenience or efficiency when "those members are already parties to the lawsuit."  ECF No. 242 at 12.  But both cases are readily distinguishable.  In *Tanner*, the organization identified the co-Plaintiff as its "sole named member" making it "redundant" to have both.  105 F.3d 437 at 447.  And in *Blunt*, the individual plaintiffs were already present in the case.  767 F.3d 247 at 290.  Not so here.

---

[5] Because Defendants have not presented evidence rebutting these allegations, this Court should accept them as true.  However, if the Court believes evidence outside the Complaint is necessary to rebut the Defendants' argument, Couper Orona and Shyhyene Brown are members who submitted declarations outlining experiences similar to those alleged in the SAC that would confer standing or Plaintiffs can readily amend.  *See* ECF No. 9-6.

[6] "The fact that the meetings are informal, or that the membership could change frequently, does not preclude a finding that the organization has associational standing." *La Asociacion De Trabajadores De Lake Forest ("ATLF") v. City of Lake Forest*, No. SACV07250DOCANX, 2008 WL 11411732 (C.D. Cal. Aug. 18, 2008) at *5, *aff'd sub nom. La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010).

1    The City also claims—without any support—that the presence of the Coalition
2    "unnecessarily prolongs the litigation, disproportionately increases the burdens of discovery, and
3    detracts from the core issues impacting Individuals Plaintiffs." ECF No. 242 at 12.  Defendants offer
4    no support for this assertion, which is belied by the fact that the Coalition does not seek any
5    compensatory damages, but rather only seeks declaratory and injunctive relief.  *See* SAC ¶¶ 97-9.
6    When a plaintiff seeks declaratory and injunctive relief, but not monetary damages, the Ninth Circuit
7    has held that "its members need not participate directly in the litigation." *Columbia Basin Apartment*
8    *Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001), *see also Alaska Fish & Wildlife Fe'n &*
9    *Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987).  Defendants' argument that each
10   claim *requires* the participation to prove underlying constitutional or statutory violations (Mot. at
11   13-14) is, therefore, plainly incorrect.  This case is a pattern and practice case (*see* TAC ¶¶ 215-224),
12   and it is not necessary for each individual member of the Coalition to act as an individual plaintiff
13   for Plaintiffs to prevail on claims that do not seek any monetary damages, but only declaratory and
14   injunctive relief.  Additionally, it would be more administratively convenient to litigate this matter
15   with the Coalition organizing  and representing its members—many of whom are unhoused and face
16   great difficulties in participating in litigation. *See, e.g.*, SAC ¶¶ 21, 189, 254.

17   Defendants' expansive argument that organizations lack standing for claims under section
18   1983 should also be rejected.  ECF No. 242 at 13.  Defendants rely solely on non-binding case law
19   from other circuits for this argument and tellingly do not cite a single Ninth Circuit case on this
20   issue.  Courts within the Ninth Circuit have refused to adopt *Nnebe v. Daus*, 644 F.3d 147 (2d. Cir.
21   2011) as persuasive law.  *See Garcia v. City of Los Angeles*, No. CV 12-6182 DSF (PLAx), 2020
22   WL 6586303, at *3 (C.D. Cal. Sept. 15, 2020) (concluding that it did not appear that the Ninth
23   Circuit would agree with *Nnebe* as persuasive).  Instead, courts within the Ninth Circuit regularly
24   permit organizations with associational standing to assert section 1983 claims.  *See Anderson v.*
25   *Ghaly*, No. 15-CV-05120-HSG, 2022 WL 717842, at *8 (N.D. Cal. Mar. 10, 2022) (permitting
26   organization with associational standing to proceed to assert a section 1983 claim), *Mar. for our*
27   *Lives Idaho v. McGrane*, 697 F.Supp.3d 1029, 1041-2 (D. Idaho 2023) (finding that organization

28

1   with associational standing could proceed with a section 1983 claim), *Gay-Straight All. Network v.*

2   *Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1105 (E.D. Cal. 2001) (same).

3           Defendants' arguments on standing also rely on a misinterpretation of *Rakas v. Illinois*, a

4   criminal case concerning suppression of evidence that did not involve or question organizational

5   standing in a civil case. *See generally Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978). *Rakas*

6   prohibited an individual from vicariously asserting another's Fourth Amendment rights to suppress

7   evidence against him. 439 U.S. at 133-134. That is not the case here. The Central District of

8   California recently analyzed *Rakas* in the context of associational standing for an organization

9   representing unhoused individuals and found it inapplicable because an association is *not* asserting

10  a right vicariously, but rather, is *directly* asserting the right. *Garcia*, 2020 WL 6586303, at *2 (C.D.

11  Cal. Sept. 15, 2020) ("'members join an organization to have its rights represented directly, not

12  vicariously'") (citation omitted). As such, the court held that "like a successor-in-interest, an

13  organization with associational standing may bring claims on its members' behalf. Therefore [the

14  organization] may bring a section 1983 claim asserting violations of its members' Fourth

15  Amendment rights." *Id.* Similarly, Plaintiffs "need only show that there has been one violation of

16  any of their members' civil rights under the ADA" to establish associational standing. *ARC of*

17  *California v. Douglas*, 2018 WL 1535511, at *4 (E.D. Cal. Mar. 29, 2018).

18                          **(b)      Organizational Standing**

19          Independently, the Coalition also possesses standing "in its own right" to seek "judicial relief

20  from injury to itself and to vindicate whatever rights and immunities the association itself may

21  enjoy." *Am. Fed'n of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1032 (9th Cir. 2007) (citation

22  omitted). The Ninth Circuit has held "an organization suing on its own behalf" can establish an

23  injury when it suffered "both a diversion of its resources and a frustration of its mission." *La*

24  *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.

25  2010) (citation omitted). The organization must "show that the defendant's actions run counter to

26  the organization's purpose, that the organization seeks broad relief against the defendant's actions,

27  and that granting relief would allow the organization to redirect resources currently spent combating

28

the specific challenged conduct to other activities that would advance that would advance its mission." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).

The Coalition has made this showing, and Defendants fail to present any evidence undermining Coalition's allegations. The Coalition's mission is "to find permanent solutions to homelessness" and to help "prevent[] people from becoming homeless, press[] for affordable housing in San Francisco, and advocate[] to expand resources available to unhoused people including mental health treatment, emergency shelter, and basic necessities." SAC ¶ 19. It accomplishes this mission through a membership, organizing, and outreach model. *Id.* ¶ 19-22. The Coalition has had to focus on protecting unhoused people from the Defendants' ongoing property destruction practices, including by spending limited resources to "replace survival gear for unhoused people that the City of San Francisco has destroyed." *Id.* ¶ 22. Indeed, in 2020 alone, the Coalition spent at least $28,000 on tents and survival belongings that otherwise would have been spent on "payment to unhoused people for conducting and participating in surveys, and meeting staffing needs." *Id.* ¶ 181. Defendants ignore this entirely. As another example, in 2021, the Coalition "was forced to engage staff from all program areas to help monitor and stop Defendant's sweeps— including producing a report on sweeps, monitoring police activities at sweeps, setting up a volunteer network, and setting up administrative clinics to file claims related to property confiscation at sweeps." *Id.* ¶ 182. Instead of advocating for affordable housing and improved shelter, Coalition has now been forced to divert "staff and volunteers to monitor daily large-scale sweep operations, train[] staff and volunteers to approach City workers and stop them from violating their own policies and the law, and . . . advocate on behalf of unhoused people who are having their survival belongings seized . . . or who are not being offered appropriate shelter." *Id.* at ¶ 176. And the City's sweeps make sustaining its membership more difficult and onerous. SAC ¶¶ 22, 177, 189, 254 (lost communication and phone access).

The Supreme Court's recent decision in *FDA v. All. For Hippocratic Med.* did not overrule *Havens* and does not prohibit organizational standing when a plaintiff shows "that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action." *Arizona All. For Retired Americans v.*

PLFS' OPPO. TO DEF'S MOT. MTD/MJOP
CASE NO. 4:22-CV-05502-DMR

1  *Mayes,* No. 22-16490, slip op. at 7 (9th Cir. Sept. 20, 2024).   In *Hippocratic*, the plaintiffs had

2  alleged merely that the FDA caused "the associations to conduct their own studies on mifepristone

3  so that the associations can better inform their members and the public about mifepristone's risks."

4  *FDA. v. All for Hippocratic Med.*, 602 U.S. 367, 394 (2024).   The Court found that insufficient for

5  standing because the organization could not "spend its way into standing simply by expending

6  money to gather information and advocate against the defendant's action*." Id.*   But the Supreme

7  Court affirmed that under *Havens*, when a defendant's actions "directly affected and interfered with

8  [the organization's] core business activities—not dissimilar to a retailer who sues a manufacturer for

9  selling defective goods," the organization has standing.  *Id.* at 395.

10         The Coalition easily meets this standard.  As stated above, Defendants' actions frustrate its

11  ability to carry out its pre-existing core business activities of proactive housing and homelessness

12  prevention, organizing, and membership building.   Since *Hippocratic*, the Northern District has

13  found organizational standing in contexts similar to this case.  In *Prado v. City of Berkeley*, the court

14  found an organization **had** standing to bring property and due process claims where the organization

15  alleged that it diverted resources from advocating that transitional shelter residents address disabled

16  unhoused persons' needs, including because "its unhoused disabled members would be without

17  survival gear and service providers after the City's sweeps, which [the organization] counteracted

18  by diverting its resource allocation."  *Prado v. City of Berkeley*, No. 23-cv-04537-EMC, 2024 WL

19  3697037 at *12 (N.D. Cal. Aug. 6, 2024).   The Coalition's allegations are similar, and it has not only

20  diverted money to counteract the Defendants' unlawful practices, *see* SAC ¶ 173-183, it has also

21  been impaired in its ability to maintain contact with members or secure new ones.  SAC  ¶¶ 22, 177.

22  "[D]estruction of survival property fundamentally disrupt[s] the ability of unhoused people to

23  rebuild their lives and must be addressed before the Coalition can focus on its ultimate goal of

24  securing proactive solutions to San Francisco's homelessness crisis."  *Id.* ¶ 175.

25         Defendants' other caselaw fares no better.  Neither *Henry A. v. Willden*, 678 F.3d 991 (9th

26  Cir. 2012), nor *Martinez v. City of Clovis,* 943 F.3d 1260 (9th Cir. 2019) address organizational

27  standing and stand for the unremarkable proposition that the state-created danger involves third

28  parties.  ECF No. 242 at 7.  Similarly, *LA Alliance for Human Rights v. County of Los Angeles* does

1   not hold that an association cannot assert a state-created danger claim; rather, the Court found no

2   standing because the organization conceded a gap in the record where there was "no evidence" its

3   members had particular characteristics necessary to support the claims.  14 F.4th 947, 959, 960 (9th

4   Cir. 2021).  *Lacey* also does not hold an organization cannot assert a conspiracy claim.  *Lacey v.*

5   *Maricopa Cnty.,* 693 F.3d 896, 935 (9th Cir. 2012).[7]

6          Thus, as explained above, the Coalition alleged its own injury in accordance with *La*

7   *Asociacion de Trabajadores de Lake Forest* and *Havens*.  *See, e.g.*, SAC ¶¶ 9, 22, 173-83.  Further,

8   Defendants contend only that the Coalition "has no cognizable injury that is redressable" (ECF No.

9   242 at 7), but do not present any meaningful argument as to causation or redressability, effectively

10  conceding that the allegations are sufficient as to these elements.  ECF No. 242 at 7.  The Coalition

11  has pleaded that the cause of injury is Defendants' conduct.  *See, e.g.*, SAC ¶¶ 173-83.  Injunctive

12  and declaratory relief is appropriate to redress the injuries, as the Coalition would then not be forced

13  to spend money to replace the property of unhoused people, assist unhoused people with disabilities,

14  and monitor sweeps, and instead be able to better develop and sustain its membership.

15                          2.      Individual Plaintiffs have Standing

16         In the Ninth Circuit, a court "need not address standing of each plaintiff if it concludes one

17  plaintiff has standing."  *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567

18  F.3d 521, 523 (9th Cir. 2009); *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022).  Indeed, the

19  Court previously determined that it did not need to address the standing of the individual plaintiffs

20  because the Coalition had standing.  ECF No. 128.

21

22

23

---

24  [7] Similarly, Defendants wrongly contend that the Coalition is *de jure* barred from bringing a claim
    under the Fourth Amendment because such a right cannot be vicariously asserted.  *See* ECF No. 242

25  at 7.  But this argument is premised on the Defendants' misunderstanding and misapplication of
    *Rakas*, which, as discussed *supra* at IV(A)(1)(a), did not involve organizational standing and merely

26  stands for the proposition that a criminal defendant cannot assert another individual's Fourth
    Amendment rights in order to suppress evidence.  *Rakas*, 439 U.S. at 133-34.  *Rakas*, to the extent

27  that case has any bearing on a civil matter, is inapplicable where, as here, the Coalition is asserting
    its own injury, not a vicarious Fourth Amendment claim.

28

1    However, the individual Plaintiffs do each have standing for the claims they assert.  First,

2    the Defendants incorrectly allege that any Plaintiff who was sheltered[8] at the time the lawsuit was

3    filed lacks standing for any of the claims that Plaintiff asserts.  *See* ECF No. 242 at 15.  Tellingly,

4    the Defendants do not cite to any authority for this sweeping proposition.  While housing status may

5    be relevant to the injuries alleged, a specific housing status is not required to establish standing for

6    a claim.[9]  Second, Defendants admit through their declarations that the individual Plaintiffs are

7    collectively housing insecure, confirming various periods where particular Plaintiffs did not have

8    shelter during this litigation.  This evidence does not undermine the Plaintiffs' standing, rather it

9    affirms Plaintiffs' contention that they are likely to be unhoused again and thus, subject to the

10   Defendants' unlawful property destruction, conduct affirmatively placing them in danger, and

11   unlawful discrimination based on disability.

12   A plaintiff seeking injunctive relief must demonstrate a "real or immediate threat that [they]

13   will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los*

14   *Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted).  "A plaintiff threatened with future

15   injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial

16   risk the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citation

17   omitted).  Here, the complaint is replete with allegations supporting the inference that Defendants

18   have a custom and practice of taking and destroying property and displacing individuals throughout

19   the City, daily.  *See, e.g.*, SAC ¶¶ 8, 9, 41, 45, 97-110, 147-51, 243-255.

20   As set forth below, these allegations are sufficient because each Plaintiff has experienced the

21   alleged conduct and the conduct is likely to reoccur.  *See, e.g.*, *In re Navy Chaplaincy*, 697 F.3d

22   1171, 1177 (D.C. Cir. 2012) (finding standing if there are sufficient allegations of a pattern and

23   ───────────────

24   [8] Plaintiffs who are staying in emergency shelter are "still defined as 'homeless' according to the Department of Housing and Urban Development (HUD) guidelines, as well as the city and county of San Francisco and typically spend significant amounts of time in public spaces." Herring 2nd

25   Supp. Decl. at ¶ 42.

26   [9] For example, there is nothing in the Defendants' bag and tag policy that purports to apply the policy only to individuals without housing.  *See* ECF No. 62-1.  Nor does the Fourth Amendment.

27   Therefore, seizing and destroying property is a violation irrespective of housing status.  Herring 2nd

28   Supp. Decl. at ¶ 42 (those in shelter are also subject to enforcement).

1    practice rendering any future injury "sufficiently non-speculative" even if policies did not "directly

2    authorize the allegedly illegal conduct"); *N.B. ex rel. Peacock v. District of Columbia*, 682 F.3d 77,

3    85 (D.C. Cir. 2012) (crediting "statistical evidence" to establish such a pattern and practice); *Index*

4    *Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1121-22 (D. Or. 2020) ("documented

5    incidents of violence, threats, or intimidation" and "Defendants' repeated past conduct" established

6    a "'real and immediate threat of repeated injury' sufficient to create standing"); *Roe v. City of New*

7    *York*, 151 F. Supp. 2d 495, 506 (S.D.N.Y. 2001) ("plaintiffs' fear of arrest is reasonable because it

8    is grounded in both prior arrests and an allegedly ongoing NYPD practice […] Such a claim is not

9    too attenuated to preclude standing").  These harms are redressable through injunctive relief.  Indeed,

10   this Court agreed Plaintiffs were likely to succeed on the merits of their Fourth and Fourteenth

11   Amendment claims when it granted a preliminary injunction ordering Defendants to comply with

12   their bag and tag policy.  ECF No. 65 at 49

13         Further, these individuals have standing because their injuries are "capable of repetition, yet

14   evading review." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398–99 (1980); *see also Unan v.*

15   *Lyon*, 853 F.3d 279, 287 (6th Cir. 2017) (recognizing transitory nature of injury confers standing

16   even if temporarily resolved, since it tends to evade review); *Glover v. City of Laguna Beach*, 2017

17   WL 4457507, at *2 (C.D. Cal. June 23, 2017) (finding plaintiff's claims surrounding the city's

18   homelessness policy not moot even though he was no longer homeless because the claims were

19   capable of repetition yet evading review).[10]  Herring 2nd Supp. Decl. ¶ 26 (plaintiffs "will likely

20   experience involuntary unsheltered homelessness again in the short to medium term")

21                    **(a) Toro Castaño, Nathaniel Vaughn, Molique Frank, and Teresa Sandoval**

22         Defendants primarily challenge whether Plaintiffs have injury-in-fact by attacking their

23   housing status.  But Mr. Castaño, Mr. Frank, Mr. Vaughn, and Ms. Sandoval are only one step away

24

25   ───────────────

     [10] Defendants' cases suggesting mootness or lack of injury are unavailing.  *See Rios v. Cnty. of*
26   *Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021) (plaintiffs failed to allege imminent risk
     of another clean-up action); *Berry v. Hennepin Cty*, 2024 WL 3495797, at *5-6 (D. Minn. July 22,
27   2024) (not addressing whether cyclical nature of homelessness could confer standing); *Proctor v.*
     *District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021) (on motion for summary judgment,
28   plaintiffs did not prove likelihood of being injured under county's newer policy).

from being on the streets and subject to Defendants' pattern of unconstitutional property destruction and endangerment practices yet again; there is no extended or improbable "chain of events" that must occur. *See Levine v. Johanns*, 2006 WL 8441742, at *8 (N.D. Cal. Sept. 6, 2006). Mr. Castaño's housing situation was temporary at the time the complaint was filed and he did "not know how he [would] afford to pay his rent from month to month"—putting him at imminent risk of homelessness and meeting HUD's definition of the same. SAC ¶¶ 25-26. And indeed, during the pendency of this case, Mr. Castaño in fact lost his housing, rendering him involuntarily homeless and subject to the same conduct he had experienced from Defendants in the past. Castaño Supp. Decl., Dkt. 50-5, ¶¶ 2-9; *see Honig v. Doe*, 484 U.S. 305, 320 (1988) (noting that involuntary circumstances bolsters injunctive relief standing). Mr. Frank pled that he was homeless and was staying in a temporary shelter, meaning that he meets the HUD definition of homelessness and is at imminent risk of sleeping on the street. SAC ¶ 29; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (holding that persons exposed to "risk of future harm" may pursue "injunctive relief to prevent the harm from occurring, at least as long as the risk is sufficiently imminent and substantial"). Mr. Vaughn resides in an SRO facility but pled that he "now faces the potential threat of eviction at a time when the City is carrying out massive SRO evictions"—which is substantiated with allegations regarding individuals being evicted out of their SRO units in large numbers over the past several months. SAC ¶ 24 & n.18. Ms. Sandoval pled she was "currently unsheltered and living on the streets of San Francisco." *Id.* ¶ 32.[11]

Rather than rebut Plaintiffs' allegations, Defendants' evidence *confirms* Plaintiffs' housing insecurity, and the substantial risk Plaintiffs face of being subjected to Defendants' unconstitutional practices. Ms. Locher's declaration substantiates that Mr. Castaño and Mr. Frank were in emergency shelter at the time the complaint was filed. *Compare* Locher Decl. ¶¶ 6.a, 6.b *with* SAC ¶¶ 26, 29. Defendants' evidence also demonstrates that Mr. Castaño, Mr. Frank, and Ms. Sandoval are

---

[11] Ms. Locher's declaration asserts that Ms. Sandoval was in emergency shelter on September 27, 2022 when this litigation was filed on September 28, 2022; however, Ms. Locher's declaration also confirms Ms. Sandoval was then unsheltered once more on September 29, demonstrating Ms. Sandoval is housing insecure. Locher Decl. ¶ 6.g.

currently in Emergency Shelter, and that Mr. Castaño and Ms. Sandoval have been routinely in and out of shelter throughout this litigation.  *See* Locher Decl. at ¶¶ 6.a, 6.g. In fact, Defendants' "data shows that in only two of the past 21 months examined have all the plaintiffs been housed or sheltered simultaneously." Herring 2nd Supp. Decl. ¶ 27.

These plaintiffs continue to face the real, non-speculative risk of future injury from Defendants' unconstitutional practices.  Even while in Emergency Shelter, Plaintiffs "may still be subject to the city's encampment clearances and enforcement efforts." Herring 2nd Supp. Decl. ¶ 42. And they face a substantial risk of experiencing unsheltered homelessness again.  *See, e.g.*, Castaño Supp. Decl. ¶ 3, 6 (describing the "significant possibility" of becoming unsheltered again because he previously has been forced from shelter to the streets due to issues such as lice, bedbugs, safety risks, and benefits terminations and does not have sufficient income for housing); Vaughn Supp. Decl. at ¶ 4 (describing large, recent rent increase and being "currently one paycheck away from being on the street again"); SAC ¶ 30 (loss of Mr. Frank's prior shelter); Locher Decl. ¶ 6.g (showing that Ms. Sandoval has been in Emergency Shelter for only approximately three months, her fourth such placement in two years).  This is characteristic of unhoused people's experience of shelter in San Francisco.  Herring 2nd Supp. Decl. at ¶ 31 (describing data showing that "[r]ather than a stepping-stone out of homelessness, shelters in San Francisco are more often a temporary rest-stop with bridges to nowhere and an eventual return to the street"),  ¶ 32 (describing Castaño).

### (b)      Sarah Cronk, Joshua Donohoe, and David Martinez

Defendants concede that Ms. Cronk, Mr. Donohoe, and Mr. Martinez were unsheltered at the time the complaint was filed.  ECF No. 242 at 15.  These individual Plaintiffs also meet Article III standing because they are at substantial risk of being subjected to the same harms.  Ms. Cronk and Mr. Donohoe, who live together in transitional housing, face the loss of their subsidy and their housing if Mr. Donohoe is injured, loses his job, or has his hours cut.  Cronk Decl. ¶¶ 2, 5, 7-10; Donohoe Decl. ¶¶ 2, 5, 7-9.  Based on their experiences of homelessness, as well as recent financial challenges, they remain at substantial risk of being evicted to the streets in the future.  Cronk Decl. ¶¶ 3-4, 11; Donohoe Decl. ¶¶ 3-4, 10.  Mr. Martinez similarly faces a real risk of future homelessness driven in part by the frequent changes to the public benefits that pay for his housing.  Martinez Supp.

Decl. ¶¶ 5-7.  Having previously lost housing due to unaffordability, Mr. Martinez is well aware that "[h]aving housing is no guarantee" against future homelessness.  Martinez Supp. Decl. ¶ 8; *see also id.* ¶ 4 (describing others forced to move from placement); Herring 2nd Supp. Decl. ¶¶ 36-37, 41 (describing Plaintiffs and rates of exit from supportive housing to homelessness).

Plaintiffs' experiences are confirmed by empirical evidence supporting the unfortunate conclusion that plaintiffs are likely to return to unsheltered homelessness "in the short to medium term (1 month -5 years)" or "over the course of this case, or shortly thereafter."  Herring 2nd Supp. Decl. ¶¶ 26, 41.  Particularly when unsheltered, Plaintiffs will again have no place to put their belongings except on the street, and therefore, subject to Defendants' unlawful conduct.  *See, e.g.*, Herring 2nd Supp. Decl. ¶ 26, 42; Martinez Supp. Decl. ¶¶ 9-11.

**B.     The Plaintiffs have Sufficiently Pled Claims**

Defendants argue incorrectly that the Plaintiffs are required to make stringent, particularized and detailed allegations to survive a motion for judgment on the pleadings.  *See generally* ECF No. 242 at 18-19.  Not so.  A claim for relief need only contain a "short and plain statement of the claim" to show plausibility.  Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 545; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (pleading need be sufficient to put defendants on notice).

1.     The Court should Dismiss Claims 1-4 without prejudice

Following *Grants* Pass, Plaintiffs concede that claims 1-4 should be dismissed from this federal lawsuit, but the dismissal should not be a ruling on the merits that would prejudice Plaintiffs' ability to bring them in state court or in federal court if the law changes.  Contrary to Defendants' assertion, Plaintiffs have not refused to amend their complaint, but rather sought a stipulation to avoid dueling motions, per the Court's instructions, ECF. No. 256.  Other post-*Grants Pass* cases have dismissed related claims without prejudice under Federal Rule of Civil Procedure 41 or allowed for claims to be dropped via amendment.[12]  *See, e.g.,* ECF No. 66, *Yesue et al. v. City of Sebastopol,*

_____

[12] The City's own cited case law contemplates such process.  *Cf. Wixon v. Wyndham Resort Dev. Co.*, No. C 07-02361 JSW, 2008 WL 2873326, at *7 (N.D. Cal. July 23, 2008) ("*If Plaintiffs choose not to amend*, the Court shall dismiss. . . with prejudice.") (emphasis added).  Although unlikely in the near future, the law on the Eighth Amendment (claim 1) and derivative Fourth Amendment claim (claim 3) could change.  The state law claims remain viable (claims 2 and 4), and plaintiffs should

4:22-cv-06474-KAW, (N.D. Cal); ECF No. 145, *Fund for Empowerment et al. v. City of Phoenix*, 2:22-cv-02041-GM, (D. Ariz.).  The Court can readily allow Plaintiffs to do so now as "justice so requires." Fed. R. Civ. P 15(a)(2).  Defendants face no real prejudice, and Plaintiffs did not delay following a Supreme Court decision.

### 2.   Plaintiffs Sufficiently Plead State Created Danger

To prevail on a state created danger claim, Plaintiffs must show first, "affirmative conduct on the part of the state that exposed [them] to an actual, particularized danger" and second, "that the state official acted with deliberate indifference to that known or obvious danger." *Polanco v. Diaz*, 76 F. 4th 918, 926 (9th Cir. 2023) (citations omitted).  When examining the government's conduct, "a court does not look solely to the agency of the individual, nor should it rest its opinion on what options may or may not have been available to the individual," but instead "[the court must] examine whether the state actor left the person in a situation that was more dangerous than the one in which they found him." *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 432 (N.D. Cal. 2017) (brackets and citation omitted).  Further, the state actor need only have created the particularized risk that plaintiff might suffer such injury.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 n.2 (9th Cir. 2006); *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018).  A danger can be "particularized" even if it is directed toward a group rather than an individual.  *Polanco*, 76 F.4th at 927; *Hernandez*, 897 F.3d at 1133-34.  Deliberate indifference also exists where the defendant "disregard[s] a known or obvious consequence of [its] action."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  "Ultimately, a state actor needs to know that something is going to happen but ignore the risk and expose the plaintiff to it."  *Sinclair v. City of Seattle,* 61 F.4th 674, 681 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 88 (2023); *Murguia v. Langdon*, 61 F.4th 1096, 1117 n.16 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024) (state actor "need not know with certainty that the risk will materialize or intend for the plaintiff to face the risk.")

---

not be prejudiced from seeking relief on them in state court.  ECF No. 222 at 10 (noting differences between the state and federal constitution).  To the extent they are novel and have no federal companion, then a federal court can abstain from ruling on it first.

Here, the Plaintiffs have alleged at least two forms of affirmative conduct: (1) the Defendants' displacement of individuals while knowing there is no shelter to accommodate the individuals (*e.g.*, SAC ¶¶ 239-240, 309-317); and (2) the Defendants' ongoing confiscation and destruction of survival equipment (such as tents and medicine) (*e.g.*, SAC ¶¶ 289-290), both of which leave unhoused individuals exposed to harms.  *See* SAC ¶ 209 (studies show impact of camping and shelter bans make 45% of unhoused people more likely to suffer from weather-related health impacts); *see also* SAC ¶¶ 206-214.  These allegations are sufficient.  *See Langley v. City of San Luis Obispo*, 2022 WL 18585987, at *5 (C.D. Cal. Feb. 7, 2022) (the city's sweeps and property seizures force homeless people "to live exposed to the elements, without protection from cold, wind, and rain, jeopardizing their physical and mental health"); *Sacramento Homeless Union v. Cnty. of Sacramento*, 617 F. Supp. 3d 1179, 1193 (E.D. Cal. 2022) (citing "stress, extreme fatigue" from heat exposure); *Where Do We Go Berkeley v. California Dep't of Transportation (Caltrans)*, No. 21-CV-04435-EMC, 2021 WL 5964594, at *13 (N.D. Cal. Dec. 16, 2021) ("if Defendants are moving forward with the closure of the encampments with knowledge that available housing options may not be viable and without sufficient attempt to address alternatives," defendants may be "deliberately indifferent"); *Mary's Kitchen v. City of Orange*, No. 821CV01483DOCJDE, 2021 WL 6103368, at *11 (C.D. Cal. Nov. 2, 2021) ("Removal of critical services coupled with a lack of adequate alternatives supports an inference that the City has acted with deliberate indifference").

### 3. Due Process

Plaintiffs plausibly plead a due process claim, alleging that, pursuant to an unwritten policy, custom, and practice, Defendants seize and destroy their property without adequate notice or a meaningful opportunity to reclaim it.  *See* SAC ¶¶ 23, 25, 28, 31, 34, 36, 38, 140, 145, 169-172, 227-231, 296-305.  Defendants incorrectly argue that this claim is barred by the existence of adequate post-deprivation remedies.  But the very case they rely on for this proposition, *Hudson v. Palmer*, makes clear that where, as here, "property deprivation is effected pursuant to an established state procedure," as opposed to a "random, unauthorized act by a state employee," a post-deprivation state remedy does not satisfy due process.  468 U.S. 517, 534, 532 (1984); *see also Milburn v. City of Lebanon*, 221 F. Supp. 3d 1217, 1221 (D. Or. 2016).  "[P]ostdeprivation process is all that is due"

only in the "special instance" where "no predeprivation safeguards would be of use in preventing the kind of deprivation alleged." *Zinermon v. Burch*, 494 U.S. 113, 139 (1990) (finding post-deprivation remedies insufficient where defendants "disregarded their duty to ensure that the proper procedures were followed"). The existence of the City's Bag and Tag policy demonstrates its own recognition that pre-deprivation safeguards are both possible and valuable, foreclosing their argument under *Hudson*. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 739 (9th Cir. 2001).[13]

#### 4.   Adequate Remedies/Claims-Splitting

Similarly, no adequate remedy at law exists that would require dismissal of plaintiffs' due process claims. "[Section] 1983 was intended not only to . . . provide a remedy for violations of civil rights 'where state law was inadequate,' but also to provide a federal remedy 'where the state remedy, though adequate in theory, was not available in practice.'" *Zinermon*, 494 U.S. at 124 (citation omitted). The SAC's allegations demonstrate that existing remedies at law have proven woefully inadequate. Only a small percentage of unhoused individuals whose property is destroyed manage to file administrative or legal claims. *See* SAC ¶¶ 169-172. And while these claims have resulted in over $100,000 in settlements from the City, they have done little to stop Defendants' unconstitutional behavior. *See* SAC ¶¶ 170-211. Indeed, the City continued to violate Plaintiffs' due process rights even after this Court's preliminary injunction requiring it to follow its own Bag and Tag policy. *See* ECF No. 231. Defendants suggest that because Plaintiffs Castaño, Frank, and Vaughn each settled a claim against the City for one of the many instances of unconstitutional property deprivation they have experienced, an adequate remedy at law exists and bars all federal injunctive relief sought for an ongoing practice. Such a broad rule is unsupported, and indeed contradicted, by Defendants' cited cases. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374,

---

[13] The other cases cited by Defendants are not to the contrary. *See Stone v. Agnos*, 960 F.2d 893, 895–96 (9th Cir. 1992) (no due process violation because plaintiff failed to show seizure was unreasonable); *Joshua v. Newell*, 871 F.2d 884, 886–87 (9th Cir. 1989) (due process claim barred by post-deprivation remedy where deprivation resulted from the unauthorized acts of state agent and no pre-deprivation hearing was practicable); *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (finding post-deprivation remedy would be adequate if plaintiff claimed "a negligent or intentional deprivation of a prisoner's property" that he was entitled to under prison rules, where no state policy or practice was alleged).

381 (1992) ("When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses—there is no adequate remedy at law."); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020) (equitable claims for restitution barred where plaintiff could recover same amount in damages at law and where "[i]njunctive relief is not at issue"); *Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir. 2004) (affirming denial of preliminary injunction where plaintiff alleged single incidence of Fourth Amendment violation and nothing in record suggested likelihood of reoccurrence); *Libman v. United States*, 2024 WL 2269271, at *2 (9th Cir. May 20, 2024) (dismissing claim seeking injunction ordering compensation for alleged unconstitutional seizure).

Defendants' claim-splitting arguments are also misplaced. "The anti-claim-splitting doctrine prevents a party from maintaining 'two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Henderson v. Bonaventura*, 649 F. App'x 639, 641 (9th Cir. 2016) (citing *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007)). None of that is true here. *See Ayeni-Aarons v. Best Buy Credit Card Servs./CBNA*, 2023 WL 7092295, at *2 (E.D. Cal. Oct. 26, 2023).

### 5.   Mr. Castaño's and Mr. Vaughn's Claims are Timely

Plaintiffs Castaño and Vaughn's claims are not time-barred because they have pled an ongoing claim by showing a systemic practice that operated within the limitations period. *See Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 973-94 (9th Cir. 2010) ("A plaintiff has adequately pled an ongoing claim if she can how a systematic policy or practice that operated, in part, within the limitations period—a systematic violation.") (citation omitted); *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997) (applying continuing violations doctrine to section 1983 claims asserting ongoing pattern or practice). Plaintiffs have sufficiently pleaded a claim that the instances of property destruction occurred pursuant to a systematic practice by Defendants of destroying the property, which continued within the limitation period, including times during which Plaintiffs Castaño and Vaughn were unhoused. *See, e.g.*, SAC ¶¶ 165-172.

1   The cases cited by Defendants are readily distinguishable because they do not involve

2   allegations of a systematic pattern or practice. *See Klein v. City of Beverly Hills*, 865 F.3d 1276 (9th

3   Cir. 2017) (unlawful search of home and computer); *Morgan v. Komers*, 151 F. App'x 546 (9th Cir.

4   2005) (being placed on administrative pay without leave); *Gibson v. United States*, 781 F.2d 1334,

5   1340 (9th Cir. 1986) (retaliatory helicopter flights).  And in *Nichols v. City of Palm Springs*, the

6   Ninth Circuit acknowledged the systematic pattern or practice doctrine, but concluded it was

7   inapplicable to the particular facts because plaintiffs had merely alleged "continual ill effects from

8   an original violation," instead of continuing unlawful acts.  *Nichols v. City of Palm Springs*, 2014

9   WL 12703286, at *4 (C.D. Cal. Oct. 6, 2014) (citation omitted).  The Ninth Circuit declined to

10  consider acts outside the two-year limitations period because "any affirmative act [prior to the

11  limitations period] was independently actionable without the need to rely on other acts."  *Id.* at *5.

12  By contrast, here, Plaintiffs have asserted "an ongoing unconstitutional policy or practice," and thus

13  the continuing violations doctrine applies.  *Rodriguez v. City of Los Angeles*, 2015 WL 13260395,

14  at *19 (C.D. Cal. May 8, 2015) (distinguishing claims based on discrete acts from those based on

15  systemic practices).[14]

16  A "court may grant a motion under Rule 12(c) based on the statute of limitations period only

17  if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to

18  prove a systemic violation."  *Kunzi v. Arizona Bd. of Regents*, 2013 WL 6178210, at *4 (D. Ariz.

19  Nov. 25, 2013).  Defendants have failed to meet the rigorous standard for judgment on the pleadings.

20  ### 6.    Monell Liability

21  Defendants may be sued under 42 U.S.C. section 1983 when a plaintiff shows "a policy,

22  practice, or custom of the entity" is "a moving force behind a violation of constitutional rights,"

23  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v Dep.t of Soc. Servcs.*,

24  436 US 658, 694 (1978)).  *Monell* liability under section 1983 can be established even where the

25  municipality does not expressly adopt the alleged policy, (1) "if an employee commits a

26

27  ---

[14] Defendants also flatly assert that "all claims accrued when Plaintiffs experienced a deprivation or seizure," but offer no further explanation as to why property destruction constitutes the "last overt act" of conspiracy or other claims.  ECF No. 242 at 21-22.

constitutional violation pursuant to a longstanding practice or custom;" (2) "when the person causing the violation has final policymaking authority," *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003), or (3) "where the failure to train amounts to deliberate indifference," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Defendants attack the *Monell* claims largely by arguing that Plaintiffs have no allegations concerning the ratification or the existence of an express policy. ECF No. 242 at 22. Similarly, Defendants argue Plaintiffs did not "allege officials' deliberate acquiesce[nce] in any ill-defined custom." ECF No. 242 at 24. In fact, Plaintiffs have made many such allegations, including, for example, that the Defendants have a custom and practice of "destroying the property of hundreds of unhoused people each year" and named specific senior leaders from the Mayor to the agency heads in overseeing that practice. SAC ¶¶ 40, 43-45, 231. As the City's own citations confirm, these allegations, when taken as true, are sufficient to establish a *Monell* claim. *See Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 979 (N.D. Cal. 2017) (allegation that police chief was aware of the police officers' actions and then made statements tending to show he endorsed the actions was sufficient to allege *Monell* liability), *aff'd in part*, *dismissed in part*, 897 F.3d 1125 (9th Cir. 2018).

Defendants claim not to know what "custom" Plaintiffs have alleged. ECF No. 242 at 24. But a "custom" for purposes of establishing municipal liability under *Monell* is defined as a "widespread practice" that, although "not authorized by written law or express municipal policy" "constitute[s] a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996); *see Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (widespread practice can be inferred from four incidents). "[W]hen the plaintiff alleges that widespread or well-settled customs amount to informal policies, it is of no moment that the alleged customs are contrary to written policies" because "a paper policy cannot insulate a municipality from liability." *Paugh v. Uintah Cnty.*, No. 2:17-CV-01249 JNP-CMR, 2020 WL 4597062, at *37 (D. Utah Aug. 11, 2020), *aff'd in part, appeal dismissed in part*, 47 F.4th 1139 (10th Cir. 2022) (citing *Daskalea v. District of Columbia*, 227 F.3d 433, 442 (D.C. Cir. 2000)); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1445-46 (9th Cir. 1991) ("the routine failure (or claimed inability) to follow the general policy . . . constitutes a custom or policy"),

*abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).  Here, Plaintiffs have sufficiently alleged that Defendants have a policy or custom of confiscating and destroying property irrespective of their official bag and tag policy, endangering people's lives, and discriminating based on disability.  *See, e.g.,* SAC ¶¶ 187-99, 200-05, 206-14, 215-44.  Indeed, this Court has already ruled that "Plaintiffs have presented significant evidence of a practice of seizing and destroying of homeless individuals' unabandoned personal property in violation of the Fourth Amendment," which was affirmed by the Ninth Circuit.  ECF No. 65 at 49.

The City's arguments that the complaint does not specify anything about Defendants' training programs fair no better.  ECF No. 242 at 23.  Defendants fail to recognize that pleadings allege there were very few, if any, trainings to speak of, despite the City being well aware of policy violations of the policies or inflicting obvious harm.  *See, e.g.*, SAC ¶¶ 119, 135, 189, 202, 224-242. The *dearth* of training coupled with the Defendants' continued unlawful conduct is itself sufficient to establish a claim for failure to train, including that there is an inference of deliberate indifference. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action'").  Plaintiffs' allegation that DPW was "working to clarify and train the bag/tag" policy does not contradict the fact training did not exist or was not sufficient.  It merely acknowledges that the DPW aspired to implement a training—an aspiration it clearly did not achieve.  Indeed, this Court recently ordered additional training on the Defendants' bag and tag policy because it was apparent that the Defendants were not complying with the preliminary injunction.  ECF No. 231.[15]

### 7. ADA and Section 11135

Under the ADA, a plaintiff can show discrimination (i) if a reasonable modification request is denied or (ii) if the government does not meaningfully offer access to the intended benefit of a

---

[15] Defendants fail to challenge Plaintiffs' conspiracy claim except on the basis that Plaintiffs failed to "state an actual deprivation of rights."  Mot. at 25.  Because Plaintiffs have in fact shown they sufficiently pled claims for property destruction, state-created danger, and disability discrimination, the Court should deny the motion for judgement on the pleadings as to conspiracy.

1    program.  *Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061, 1077 (C.D. Cal. 2015).  The

2    Defendants' removal of unhoused individuals and their possessions from public property—as well

3    as the provision of services or shelter to unhoused individuals—are programs, services, and/or

4    activities covered by Title II of the ADA.  *Where Do We Go Berkeley v. California Dep't of*

5    *Transportation (Caltrans)*, 32 F.4th 852 (9th Cir. 2022); *Barden v. City of Sacramento*, 292 F.3d

6    1073, 1076 (9th Cir. 2002); *Boyd v. City of San Rafael*, 2023 WL 6960368, at *23 (N.D. Cal. Oct.

7    19, 2023).  The Ninth Circuit has "repeatedly recognized that facially neutral policies may violate

8    the ADA when such policies unduly burden disabled persons, even when such policies are

9    consistently enforced."  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

10          Failure to provide appropriate shelter, adequate notice, proper assistance, additional time, or

11    other supports to disabled individuals when demanding that they remove themselves or their

12    belongings from public space is a violation of the ADA.  *See Cooley v. City of Los Angeles*, 2019

13    WL 3766554, at *5 (C.D. Cal. Aug. 5, 2019) ("Cooley […] told LAPD officers that she needed help

14    to carry her property because of her disability and that she lost most of her essential property because

15    her needs were not accommodated […] the City's practices, even if it facially neutral, violate the

16    ADA by unduly burdening people with disabilities such as Cooley"); *cf. McGary*, 386 F.3d at 1269

17    (denying disabled plaintiff additional time to clean his yard following a nuisance order was violation

18    of ADA).  Even having to travel to pick up items the Defendants have confiscated can constitute a

19    violation of the ADA.  *Martin v. City of Los Angeles*, 2023 WL 1785776 (C.D. Cal. Jan. 5, 2023),

20    *report and recommendation adopted*, 2023 WL 1784735 (C.D. Cal. Feb. 3, 2023) (plaintiff with

21    mobility and cardiovascular issues stated claim when the towing location was too far to access.)

22          Plaintiffs' allegations make out an ADA violation.  The Defendants regularly fail to provide

23    notice, let alone give disabled persons additional time or other accommodations.  *E.g.*, SAC ¶¶ 226-

24    229.  Ms. Sandoval alleged she uses a wheelchair and her belongings were seized when she could

25    not move fast enough, and that her mobility has been further impaired due to Defendants' wrongful

26    confiscation of her prosthetics.  SAC ¶ 250.  As relevant to the Coalition, "thousands of unhoused

27    individuals in San Francisco are living with a physical or mental disability" (SAC ¶ 200), the

28    Coalition is "composed of and regularly works with many disabled unhoused people" and

documented specific instances of conduct violating the ADA (SAC ¶ 204), Defendants "regularly fail[] to provide . . . enough time for unhoused people with disabilities to move their belongings during sweeps and the City fails to provide adequate, accessible shelter to unhoused people with disabilities" (SAC ¶ 201), and "DPW and SFPD [commonly] confiscate medication and medical devices, including mobility aids, that unhoused disabled people rely on for daily life.  The City has also summarily thrown away the belongings of disabled individuals with back and spinal injuries, among other disabilities, before these individuals have had sufficient time to remove their belongings—even when individuals have clearly stated that they needed more time because of their disabilities" (SAC ¶ 202).

*Sullivan v. City of Berkeley* does not require only that a person affirmatively request an accommodation, as the Defendants imply.  ECF No. 242 at 26.  It is sufficient if "a public entity's failure to provide a reasonable accommodation [is] despite knowledge that an individual needed it in order to enjoy meaningful access to a benefit." *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018).  Defendants' zone-of-interests arguments fail because the Coalition has shown it has associational standing to assert the claims. *See supra* IV(A)(1)(a); *Disability Rts. Pennsylvania v. Pennsylvania Dep't of Hum. Servs.*, No. 1:19-CV-737, 2020 WL 1491186, at *9 (M.D. Pa. Mar. 27, 2020) (finding organizational plaintiff stated a claim for violation of the ADA and rejecting zone-of-interests argument because "a plaintiff is within the zone of interests if they have Article III standing").  These allegations, when taken in the light most favorable to Plaintiffs, establish the Defendants know disabled persons needed accommodation but are failing to reasonably accommodate those with disabilities who need more time and do not offer meaningful access to shelter, an intended benefit.

## V.        CONCLUSION

For the reasons stated, the Court should deny the Defendants' motion which would otherwise preclude those most disenfranchised from having their day in court.  In the alternative, Plaintiffs should be granted leave to amend because "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

1

2   Dated:  September 26, 2024                    Respectfully submitted,

3                                                By: */s/* John Thomas H. Do

4                                                JOHN THOMAS H. DO
5                                                WILLIAM S. FREEMAN

6                                                AMERICAN CIVIL LIBERTIES UNION
                                                 FOUNDATION OF NORTHERN CALIFORNIA
7
                                                 *Attorneys for Plaintiffs*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28