# REDACTED

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-3857 (Wang)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
               (415) 554-4223 (George)
               (415) 355-3304 (Mills)
Facsimile:     (415) 554-4699
E-mail:        edmund.wang@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org
               john.george@sfcityatty.org
               steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:   October 24, 2024<br>Time:           1:00 p.m.<br>Place:          Courtroom 4 – 3rd floor<br>                1301 Clay Street<br>                Oakland, CA 94612<br>                [Via Zoom]<br><br>Trial Date:     May 1, 2025 |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ............................................................................................. 1

II.    ARGUMENT ..................................................................................................... 1

    A.    The Opposition Confirms That No Plaintiff Has Standing .......................... 1

        1.    Coalition's Organizational Standing Is Premised On Overruled Law. .................................................................................................. 1

        2.    Associational Standing Fails As A Matter Of Law. ....................... 2

        3.    No Identified Member or Individual Plaintiff Has Standing. .......... 5

    B.    Plaintiffs' Claims Fail As A Matter Of Law .............................................. 9

        1.    Plaintiffs Concede *Grants Pass* Disposes Of Their Claims ............. 9

        2.    Plaintiffs' State-Created Danger Claims Fail. ................................ 9

        3.    Castaño And Vaughn Do Not Have Timely Claims. ...................... 10

        4.    Post-Deprivation Remedies Bar Plaintiffs' Due Process Claim. ... 10

        5.    Adequate Legal Remedies Bar Plaintiffs' Claim For Injunctive Relief. ............................................................................................ 11

        6.    Plaintiffs Disregard Essential Deficiencies With Their *Monell* Claims. ........................................................................................... 11

            a.    Plaintiffs' Failure to Train Claims Fail. ............................ 12

            b.    Plaintiffs' Long-Standing Custom Claims Fail ................... 12

        7.    Sandoval and Coalition Fail To State Disability Claims. .............. 14

        8.    Plaintiffs' Conspiracy Claim Fails. ............................................... 15

III.    CONCLUSION ............................................................................................... 15

1

## **TABLE OF AUTHORITIES**

**Federal Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare*
    666 F.3d 631 (9th Cir. 2012) ...............................................................................12

*Aguayo v. Richardson*
    473 F.2d 1090 (2d Cir. 1973) ..............................................................................3

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*
    829 F.2d 933 (9th Cir. 1987) ...............................................................................5

*Anderson v. Ghaly*
    No. 15-CV-05120-HSG, 2022 WL 717842 (N.D. Cal. Mar. 10, 2022) ....................................3

*Ariz. All. for Retired Ams. v. Mayes*
    No. 22-16490, 2024 WL 4246721 (9th Cir. 2024) ...............................................1, 2

*Bayer v. Neiman Marcus Grp., Inc.*
    861 F.3d 853 (9th Cir. 2017) ...............................................................................7

*Bell v. Williams*
    108 F.4th 809 (9th Cir. 2024) ..............................................................................12

*Berry v. Hennepin Cnty.*
    No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797 (D. Minn. July 22, 2024) ..........................5, 8

*Bird v. Dep't of Hum. Servs.*
    935 F.3d 738 (9th Cir. 2019) ...............................................................................10

*Black Lives Matter Los Angeles v. Los Angeles*
    113 F.4th 1249 (9th. Cir. 2024) ...........................................................................13

*Blunt v. Lower Merion Sch. Dist.*
    767 F.3d 247 (3d Cir. 2014) ................................................................................5

*Campbell v. Miller*
    373 F.3d 834 (7th Cir. 2004) ...............................................................................11

*City of Grants Pass v. Johnson*
    144 S.Ct. 2202 (2024).................................................................................2, 6, 7, 8, 9

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983)..............................................................................................5, 7

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)............................................................................................5

*Coleman v. Quaker Oats Co.*
    232 F.3d 1271 (9th Cir. 2000) .............................................................................8

*Columbia Basin Apt. Ass'n v. City of Pasco*
  268 F.3d 791 (9th Cir. 2001) ...............................................................................4

*Connick v. Thompson*
  563 U.S. 51 (2011).............................................................................................12

*Cooley v. City of Los Angeles*
  No. 2:18-cv-09053-CAS-PLA, 2019 WL 1936437 (C.D. Cal. May 1, 2019)..........................14

*Cooley v. City of Los Angeles*
  No. 2:18-cv-09053-CAS-PLA, 2019 WL 3766554 (C.D. Cal. Aug. 5, 2019) ........................14

*Crowder v. Kitagawa*
  81 F.3d 1480 (9th Cir. 1996) ...............................................................................4

*Disability Rts. Cal.  v. Cnty. of Alameda*
  No. 20-CV-05256-CRB, 2021 WL 212900 (N.D. Cal. Jan. 21, 2021) ......................................9

*Disability Rts. Penn. v. Penn. Dep't of Hum. Servs.*
  No. 1:19-CV-737, 2020 WL 1491186 (M.D. Pa. Mar. 27, 2020) .............................................15

*F.D.A. v. All. for Hippocratic Med.*
  602 U.S. 367 (2024)............................................................................................1

*Garcia v. City of Los Angeles*
  No. CV 12-6182 DSF (PLAx), 2020 WL 6586303 (C.D. Cal. Sept. 15, 2020) .....................3, 4

*Gay Straight All. Network v. Visalia Unified Sch. Dist.*
  262 F. Supp. 2d 1088 (E.D. Cal. 2001) ...............................................................3

*Glover v. City of Laguna Beach*
  2017 WL 4457507 (C.D. Cal. June 23, 2017) .....................................................8

*Gutowsky v. Cnty. of Placer*
  108 F.3d 256 (9th Cir. 1997) ...............................................................................10

*Guzman v. Polaris Indus.*
  49 F.4th 1308 (9th Cir. 2022) ...............................................................................11

*Havens Realty Corp. v. Coleman*
  455 U.S. 363 (1982)............................................................................................2

*Hodgers-Durgin v. De La Vina*
  199 F.3d 1037 (9th Cir. 1999) ...............................................................................5

*Honig v. Doe*
  484 U.S. 305 (1988)............................................................................................7

*Hubbard v. Google LLC*
  No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024)..........................11

*Hunt v. Wash. State Apple Adver. Comm'n*
    432 U.S. 333 (1977) ........................................................................................................4

*In re Navy Chaplaincy*
    697 F.3d 1171 (D.C. Cir. 2012) ....................................................................................7

*In re Zappos.com, Inc.*
    888 F.3d 1020 (9th Cir. 2018) .......................................................................................7

*Index Newspapers LLC v. City of Portland*
    474 F. Supp. 3d 1113 (D. Ore. 2020) ............................................................................7

*Jarvis v. Regan*
    833 F.2d 149 (9th Cir. 1987) .........................................................................................7

*Jett v. Dallas Indep. Sch. Dist.*
    491 U.S. 701 (1989) .....................................................................................................12

*Knife Rights, Inc. v. Vance*
    802 F.3d 377 (2d Cir. 2015) ..........................................................................................3

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) .......................................................................................2

*Langley v. City of San Luis Obispo*
    No. CV2107479CJCADSX, 2022 WL 18585987 (C.D. Cal. Feb. 7, 2022) ...................10

*Lavan v. City of Los Angeles*
    693 F.3d 1022 (9th Cir. 2012) .....................................................................................13

*Lee v. Schmidt-Wenzel*
    766 F.2d 1387 (9th Cir. 1985) .......................................................................................7

*Levine v. Johanns*
    No. C 05-04764 MHP, 2006 WL 8441742 (N.D. Cal. Sept. 6, 2006) ...........................7

*Libman v. United States*
    No. 23-55417, 2024 WL 2269271 (9th Cir. May 20, 2024) .........................................11

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) .......................................................................................................5

*Mansourian v. Regents of Univ. of Cal.*
    602 F.3d 957 (9th Cir. 2010) .......................................................................................10

*Mar. for our Lives Idaho v. McGrane*
    697 F. Supp. 3d 1029 (D. Idaho 2023) ..........................................................................3

*Mary's Kitchen v. City of Orange*
    No. 821CV01483DOCJDE, 2021 WL 6103368 (C.D. Cal. Nov. 2, 2021) .................10

*Monell v. Department of Social Services*
    436 U.S. 658 (1978) ................................................................................................. 11, 13

*Moreland v. Las Vegas Metro. Police Dep't*
    159 F.3d 365 (9th Cir. 1998) ............................................................................................ 4

*Murthy v. Missouri*
    144 S.Ct. 1972 (2024) ...................................................................................................... 2

*N.B. ex rel. Peacock v. District of Columbia*
    682 F.3d 77 (D.C. Cir. 2012) ........................................................................................... 7

*Native Vill. of Nuiqsut v. BLM*
    9 F.4th 1201 (9th Cir. 2021) ............................................................................................ 7

*Nicholson v. City of Los Angeles*
    935 F.3d 685 (9th Cir. 2019) ........................................................................................... 4

*Nigro v. Sears Roebuck & Co.*
    784 F.3d 495 (9th Cir. 2015) ........................................................................................... 6

*Nnebe v. Daus*
    644 F.3d 147 (2d Cir. 2011) ............................................................................................ 3

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ....................................................................................................... 11

*Patel v. Kent Sch. Dist.*
    648 F.3d 965 (9th Cir. 2011) ........................................................................................... 4

*Payan v. Los Angeles Comm. College District*
    11 F.4th 729 (9th Cir. 2021) .......................................................................................... 14

*Plumhoff v. Rickhard*
    572 U.S. 765 (2014) ......................................................................................................... 3

*Prado v. City of Berkeley*
    No. 23-cv-04537-EMC, 2024 WL 3697037 (N.D. Cal. Aug. 6, 2024) ...................... 2

*Price v. Sery*
    513 F.3d 962 (9th Cir. 2008) ......................................................................................... 12

*Proctor v. District of Columbia*
    531 F. Supp. 3d 49 (D.D.C. 2021) ................................................................................. 5

*Ramirez v. U.S. Citizenship & Immig. Servs.*
    338 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................ 1, 7

*Rios v. Cnty. of Sacramento*
    562 F. Supp. 3d 999 (E.D. Cal. 2021) ........................................................................... 5

*Rodriguez v. City of Los Angeles*
   No. CV 11-01135 DMG (JEMx), 2015 WL 13260395 (C.D. Cal. May 8, 2015)....................10

*Rodriguez v. City of San Jose*
   930 F.3d 1123 (9th Cir. 2019) .................................................................................................2

*Roe v. City of New York*
   151 F. Supp. 2d 495 (S.D.N.Y. 2001) .....................................................................................7

*Sacramento Homeless Union v. Cnty. of Sacramento*
   617 F. Supp. 3d 1179 (E.D. Cal. 2022) ..................................................................................10

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020) .................................................................................................11

*Stone v. Agnos*
   960 F.2d 893 (9th Cir. 1992) .................................................................................................11

*Sullivan v. City of Berkeley*
   No. C 17-06051 WHA, 2018 WL 489011 (N.D. Cal. Jan. 19, 2018) ......................................14

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009).............................................................................................................5, 9

*Tanner-Brown v. Haaland*
   105 F.4th 437 (D.C. Cir. 2024)................................................................................................5

*TransUnion LLC v. Ramirez*
   594 U.S. 413 (2021)...........................................................................................................1, 15

*Trevino v. Gates*
   99 F.3d 911 (9th Cir. 1996) ...................................................................................................12

*U.S. Parole Comm'n v. Geraghty*
   445 U.S. 388 (1980)................................................................................................................8

*Unan v. Lyon*
   853 F.3d 279 (6th Cir. 2017) ..................................................................................................8

*United States v. Sanchez Gomez*
   584 U.S. 381 (2018)................................................................................................................7

*Vanegas v. City of Pasadena*
   46 F.4th 1159 (9th Cir. 2022) ...............................................................................................12

*Vote.Org v. Callanen*
   39 F.4th 297 (5th Cir. 2022) ...................................................................................................3

*Where Do We Go Berkeley v. California Dep't of Transp.*
   No. 21-CV-04435-EMC, 2021 WL 5964594 (N.D. Cal. Dec. 16, 2021)..................................10

*Zinermon v. Burch*
   494 U.S. 113 (1990)...................................................................................11

**State Cases**
*Allen v. City of Sacramento*
   234 Cal. App. 4th 41 (2015) ....................................................................9

*Tobe v. City of Santa Ana*
   9 Cal. 4th 1069 (1995) ............................................................................9

**Constitutional Provisions**
U.S. Const., art. III ...............................................................................1, 2, 15

**Federal Statutes**
42 U.S.C.
   §§ 12101, et seq. (Americans with Disabilities Act) ....................4, 14, 15
   § 1983 ................................................................................................2, 3

**Rules**
Fed. R. Civ. Proc. 8(a) .................................................................................8

Fed. R. Evid. 702 .........................................................................................8

**Other References**
Vicarious.  Black's Law Dict. (12th ed. 2024) ............................................4

Vicarious.  Mirriam-Webster's Online Dict. (2024)....................................4

## I.    INTRODUCTION

The law is clear, "*plaintiffs* must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings (ECF No. 247, "Opposition" or "Opp."), wrongly shifts this burden to Defendants from the first sentence. Beginning with this fundamental misunderstanding, the Opposition fails to sustain Plaintiffs' burdens to establish standing. Specifically, Coalition doubles-down on overruled law and fails to justify associational standing. The Individual Plaintiffs premise their claims on speculative and hypothetical injuries that fail to establish the heightened immediacy required by controlling law. Their appeal to emotion cannot compel a different result: courts are not free to "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion LLC*, 594 U.S. at 424-25. Plaintiffs' claims fare no better on the merits. Each fails as a matter of law.

## II.    ARGUMENT

### A.    The Opposition Confirms That No Plaintiff Has Standing.

#### 1.    Coalition's Organizational Standing Is Premised On Overruled Law.

Instead of identifying an injury tethered to a legal right that has traditionally been recognized as providing a basis for a redressable lawsuit, Coalition bases its organizational standing argument on the now-overruled diversion of resources theory. *See* ECF No. 242 ("Motion" or "Mot.") at 7-8; Opp. at 9-10. This argument provides no basis for standing. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). Since the City filed its motion, the Ninth Circuit foreclosed the viability of the diversion of resources theory Coalition exclusively relies on: "[o]ur organizational standing precedent is clearly irreconcilable with *Hippocratic Medicine*" and is "thus overruled." *Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, 2024 WL 4246721, at*22-25 (9th Cir. 2024). Although Plaintiffs cite *Arizona Alliance* for other points of law, they do not disclose that the opinion overruled each case they rely on

for organizational standing. *See* Opp. at 8-10 (citing *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (diversion pre-*FDA* and *Arizona Alliance*); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) (same); *Prado v. City of Berkeley*, No. 23-cv-04537-EMC, 2024 WL 3697037, at *12 (N.D. Cal. Aug. 6, 2024) (same)). As explained in the Motion and unanswered by Plaintiffs, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), does not confer standing here because this case for equitable relief is far removed from the unusual circumstances of *Havens* where the organization had a statutory right to recover damages to remedy the discrimination it directly faced. Mot. at 9. Coalition's reliance on a single, conclusory allegation that its members are more difficult to contact and that its membership numbers are impacted by the alleged misconduct is equally insufficient to establish standing. Opp. at 10 (citing SAC ¶¶ 22, 177). Those injuries are not tethered to a cognizable right that can be redressed consistent with *Havens*, let alone sufficient to demonstrate injury to "pre-existing core activities."[1] *Ariz. All. for Retired Ams.*, 2024 WL 4246721 at *10. And, given that the City challenged Coalition's claim to associational standing based on its membership, Coalition must do more to justify its standing. *Murthy v. Missouri*, 144 S.Ct. 1972, 1986 (2024) (recognizing "[w]here, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations', but must instead point to factual evidence" to establish standing). The Court should reject Coalition's invitation to stretch Article III far beyond its limits.

### 2.    Associational Standing Fails As A Matter Of Law.

Associational standing fails at the prudential prong[2] because each claim requires participation from the individuals deprived of the rights at issue as a matter of law. It is undisputed that statutes can preclude standing. Section 1983 precludes Coalition's standing here because it only makes a defendant liable to the party it deprived of a constitutional right. Nothing in the text or legislative history of Section 1983 suggests that organizations may sue on behalf of their members. 42 U.S.C. § 1983; *Knife*

---

[1] This allegation is based on "displacement" as a result of the enforcement actions that are lawful following *City of Grants Pass v. Johnson*, 144 S.Ct. 2202 (2024)—not a failure to follow the Bag and Tag policy or accommodate disabilities. SAC ¶¶ 22, 177. The Opposition makes no attempt to demonstrate how the surviving claims impact communications or Coalition's membership.

[2] Coalition does not address the City's argument that associational standing is inconsistent with recent Supreme Court jurisprudence, including whether "prudential" limits survive and whether Coalition must independently have a redressable concrete harm. *See* Mot. 9, 12-15.

*Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015); *Vote.Org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973). This makes sense. Associational standing did not develop until nearly a century *after* Section 1983 became law. Congress was not legislating against the backdrop of a doctrine that did not exist. Rather than grapple with the substance of the City's arguments, Coalition criticizes the City for relying "on non-binding case law from other circuits," without citing any contradictory Ninth Circuit authority. Opp. at 7. There is none. The Second and Fifth Circuits' reasoning is persuasive because it is consistent with the text and legislative history of Section 1983. Coalition also overstates the proposition that "Courts within the Ninth Circuit have refused to adopt *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011)." Opp. at 7. <u>One</u> district court has reached that result and it did so without analyzing Section 1983's text or explaining how the Second Circuit's text- and legislative-history-based reasoning was in error. *See Garcia v. City of Los Angeles*, No. CV 12-6182 DSF (PLAx), 2020 WL 6586303, at *3 (C.D. Cal. Sept. 15, 2020). Reliance on *Anderson v. Ghaly*, No. 15-CV-05120-HSG, 2022 WL 717842, at *8 (N.D. Cal. Mar. 10, 2022), *Mar. for our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1041-2 (D. Idaho 2023), and *Gay Straight All. Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1055 (E.D. Cal. 2001), for the generic proposition that courts permit associational standing for Section 1983 claims misses the mark. None of these cases address the dispositive legal issue presented here—whether Section 1983 permits an organization to sue on behalf of its members.

In any event, Coalition fails to overcome the fact that each claim requires its member's participation because each claim requires individualized inquires to prove standing as well as the underlying violations. Take for example the Fourth Amendment claim, which is the claim the Opposition selectively focuses on. Fourth Amendment standing requires a possessory interest in the property seized and would require testimony from the Coalition member who alleges their property was wrongfully seized in order to state a claim as a matter of law. Mot. at 7 & 14. Deviating from this controlling law, Coalition argues that the Supreme Court's holding that Fourth Amendment rights cannot be vicariously asserted is limited to application of the exclusionary rule. But that is wrong. It applies to Section 1983 claims. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) ("Our cases make it clear that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'");

*Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 (9th Cir. 2019) (same); *cf. Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (recognizing narrow statutory exception if state law authorizes survival action). Coalition's only support for its contention is *Garcia*, a district court case which incorrectly concluded an association asserts its member's right directly, not vicariously. *Garcia* contravenes the controlling authority from the U.S. Constitution, Congress, the Supreme Court, the Ninth Circuit, and common understanding of direct and vicarious representation. Invoking a member's right necessarily means an association is vicariously asserting that right.[3]

Plaintiffs' ADA claim fares no better. Coalition has no credible response that it can somehow satisfy its burden for the sweeping relief it seeks, which spans accommodations for any and every disability imaginable, without individual members. The Opposition fails to grapple with law that individuals only have standing to seek relief that affects their own disability (Mot. at 8) and that determining "what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996). To satisfy its burden, Coalition *must* identify a member with each disability it seeks to raise and proffer medical evidence and testimony to prove each one. The same applies to the "highly fact-specific" state-created danger claims. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975 (9th Cir. 2011). In turn, due process requires that the City be able to challenge the veracity of those claims by cross-examining individuals and advancing its own evidence. Coalition offers no solution to this problem because one does not exist.

Moreover, Plaintiffs claim that equitable relief does not require individual participation misses the mark. The proper test focuses on whether "the claim asserted" *and* "the relief requested requires the participation of individual members in the lawsuit," not just one or the other. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Establishing the predicate standing, violations, and pattern and practice in this case would require such participation.[4] Associational standing also fails to

---

[3] Common usage of the word vicarious proves the point. Vicarious, Black's Law Dictionary (12th ed. 2024) ("[p]erformed or suffered by one person as substitute for another; indirect; surrogate"); Vicarious, Merriam-Webster's Online Dictionary (2024) ("performed or suffered by one person as a substitute for another or to the benefit or advantage of another").

[4] Plaintiffs caselaw is inapposite because each case involved purely legal questions that did not turn on the individual facts and circumstances of any members. *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 797-99 (9th Cir. 2001) (challenging ordinance as unconstitutional); *Alaska Fish*

the extent the Court finds that Castaño or any unhoused plaintiff has standing since Coalition's presence does not add administrative efficiency. *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014)). Plaintiffs' effort to distinguish *Tanner-Brown* and *Blunt* is incomprehensible since the argument concedes that individual plaintiffs made the association redundant. And none of the allegations Plaintiffs cite to for the proposition that unhoused people face difficulties litigating on their own stand for that proposition. *See* SAC ¶¶ 21, 189, 254. Coalition must be dismissed.

### 3.   No Identified Member or Individual Plaintiff Has Standing.

Standing for equitable relief is demanding because possible future injuries based on contingencies or speculation are insufficient as a matter of law. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999). Where, as here, "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," a "high degree of immediacy" is required to establish standing. *Lujan*, 504 U.S. at 564 n.2. Plaintiffs fail to meet their burden to establish a high degree of immediate harm for the Individual Plaintiffs or a Coalition member based on their allegations or evidence.

No Individual Plaintiff has shown standing. The Opposition admits that Castaño, Vaughn, and Frank settled their predicate claims and there is "no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). That bars their claims outright. Nor do Plaintiffs dispute that Castaño, Vaughn, Frank, and Sandoval were housed when this case commenced and that all Plaintiffs are now housed and not subject to any practice at issue. Courts routinely find that the fear of being unsheltered is insufficient to establish standing. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021); *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *5-6 (D. Minn. July 22, 2024); *Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021). The future injuries

---

*& Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) (challenging agency actions as procedurally improper).

Plaintiffs claim they will be subjected to are speculative and depend on numerous contingencies, including those within their own control. For instance, Plaintiffs' future injuries are contingent upon Plaintiffs leaving their shelters, rejecting resources available to them to avoid homelessness,[5] moving to the right of way in violation of valid anti-camping laws following *Grants Pass* (a shift in this case that unsettled the entire premise of the SAC that any interaction was unlawful), keeping property in the right of way such that the need for an encampment resolution arises, organizing their property such that it cannot be abandoned,[6] and having it destroyed by DPW (as opposed to someone else) without a reasonable constitutional basis to do so without sufficient notice that may or may not be ignored. As to any state-created danger, Plaintiffs would have to be subject to some unknown, imminent, actual, and particularized danger. But these conclusions require countless impermissibly speculative leaps.

Rather than grapple with these contingencies which underscore that Plaintiffs lack the heightened immediacy required for standing, Plaintiffs place substantial emphasis on shelter status, which is not enough, and fail to offer any evidence articulating what their hypothetical injury will be. Setting aside that Martinez actually concedes he has "more stability and hope" (Martinez Decl. ¶ 11), and that Frank and Sandoval filed no declarations about their fear of losing their housing, all of Plaintiffs inadmissible evidence[7] shows that housing insecurity is speculative and inadequate to support standing. And "the reasons why someone will go without shelter on a given night vary widely by the person and by the day." *City of Grants Pass v. Johnson*, 144 S.Ct. 2202, 2209 (2024). This

---

[5] Martinez and Castaño admit that they receive benefits through the County Adult Assistance Program ("CAAP"). Through CAAP, the City provides eligible unhoused recipients guaranteed access to a shelter. *See* Declaration of Jason Adamek ¶¶ 3-7. These individuals can work with HSH to identify a preferred shelter. There are multiple steps in place before a recipient is denied benefits. Generally, recipients can reapply to be reinstated.

[6] No Plaintiff alleges or declares that they are going to store property on the public right away while they are housed. Doing so only adds to the hypothetical contingency concerning abandonment.

[7] The City objects to the Castaño and Vaughn Declarations as irrelevant and prejudicial because they settled their claims. The City objects to Paragraphs 6 of the Donohoe and Cronk Declarations, Paragraph 5 of the Castaño Declaration, and Paragraph 8 of the Martinez Declaration to the extent they are based on speculation, lack personal knowledge concerning future hypothetical events, and offer a legal opinion concerning the possibility of future harm. The Court "can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears Roebuck & Co*., 784 F.3d 495, 497 (9th Cir. 2015).

speculation cannot support standing. Since Plaintiffs' fail to carry their burden, their claims must be dismissed.[8]

In passing, Plaintiffs argue they have standing because their injuries are capable of repetition, yet evade review. By doing so, "Plaintiffs implicitly acknowledge that the case is moot by arguing . . . an *exception* to mootness." *Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). "The capable-of-repetition doctrine applies only in *exceptional* situations." *Lyons*, 461 U.S. at 109 (emphasis added). Plaintiffs "have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity. . . . Specifically, the plaintiff must establish a demonstrated probability that the same controversy will recur involving the same litigants. . . . Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (quoting *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985)); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). For all of the contingent and speculative reasons that the City already highlighted, and Plaintiffs ignored, Plaintiffs fail to overcome mootness.

Plaintiffs' reliance on the "inherently transitory" nature of homelessness also misses the mark. "[T]he 'inherently transitory' exception does not apply outside of the class action context." *Ramirez v. U.S. Citizenship & Immig. Servs.*, 338 F. Supp. 3d 1, 35 (D.D.C. 2018) (citing *United States v. Sanchez Gomez*, 584 U.S. 381, 387 (2018)). All three cases Plaintiffs relied upon concerned class actions, which this is not. *See generally U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-99

---

[8] This case is distinguishable from those Plaintiffs cite outside of the homeless context where there were no hypothetical contingencies related to a plaintiff's prohibited conduct. *See generally Levine v. Johanns*, No. C 05-04764 MHP, 2006 WL 8441742 (N.D. Cal. Sept. 6, 2006) (intent to consume food that was likely to be contaminated under regulation); *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) (third parties were already using stolen information of others); *In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) (undisputed plaintiffs were going to be subject to discriminatory selection process based on procedures); *N.B. ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012) (Medicaid recipient continued to submit monthly prescriptions for coverage and evidence showed between 30-50% denial to make financial harm imminent); *Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113 (D. Ore. 2020) (law enforcement continued to disperse reporters and plaintiffs sought temporary order to observe protests); *Roe v. City of New York*, 151 F. Supp. 2d 495, 506 (S.D.N.Y. 2001) (participation in needle exchange was lawful, which distinguished the case from *Lyons*, and police conduct was targeted at plaintiffs in known drug areas where arrests were made); *Honig v. Doe*, 484 U.S. 305 (1988) (acknowledging reluctance for injunction where party has to engage in misconduct to be injured).

(1980); *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017); *Glover v. City of Laguna Beach*, 2017 WL 4457507, at *2 (C.D. Cal. June 23, 2017). And opinions from Plaintiffs' expert Christopher Herring concerning the transitory nature of homelessness have been excluded as irrelevant under the same circumstances here, where there is no class action. *Berry*, 2024 WL 3495797, at *23.[9] Thus, to the extent Plaintiffs concede mootness, no exception applies and the claims must be dismissed.

To try to satisfy its associational standing burden, Coalition points to three alleged members—Brown, Orona, and Castaño—who "would otherwise have standing to sue in their own right." Opp. at 4-6. As the Motion makes clear, none allege facts (let alone provide evidence) sufficient to establish an imminent impending injury (even assuming they are current members). Mot. at 10-12. The SAC does not allege, and the Opposition does not argue that Brown or Orona are at risk of certainly impending injury, thus conceding the point. Nor could it—neither claims to be unsheltered or subject to the alleged misconduct. ECF No. 9-6 at 8, 58; Mills Supp. Decl., Ex. A at 127:15-19. As explained above, Castaño—who has never claimed that he is a member (ECF Nos. 9-4 at 3-7; 50-5; 157-3; 247-6)—lacks standing and cannot support Coalition's standing. Plaintiffs' new contention that Plaintiffs Sandoval and Martinez *may* be Coalition members goes beyond the allegations in the SAC[10] to now manufacture standing and is insufficient to establish Coalition's standing, particularly where neither Sandoval or Martinez, despite submitting declarations, have ever claimed to be a member.[11]

---

[9] Federal Rule of Evidence 702 permits expert opinion testimony by a witness who is qualified and offers a relevant and reliable opinion. The City objects to Dr. Herring's opinions concerning Plaintiffs' housing insecurity to the extent his opinions are based on speculation, unreliable methodology, proffer speculative legal conclusions concerning Plaintiffs' likely exposure to encampments clearances and homelessness, and are irrelevant. His report includes no reliable way to determine what Plaintiffs will do in the future. His report concedes that reasons "for leaving shelter var[y]" and that not all individuals return to the street. ECF No. 247-1 ¶ 32. And as the Supreme Court has found "Homelessness is complex. Its causes are many." *Grants Pass*, 144 S.Ct. at 2226. His report has no reliable methodology to determine, if and when, Plaintiffs will be homeless or unsheltered. Manufacturing standing through an opinion with no measurable reliability or relevance is improper.

[10] Courts cannot consider theories not alleged in a complaint. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); Fed. R. Civ. Proc. 8(a).

[11] The City objects to Paragraphs 12 and 13 of the Cronk Declaration as irrelevant and prejudicial to the extent Plaintiffs' opposition does not rely on them, Coalition did not identify Cronk as a member so the theory is outside of the complaint, and Cronk testified ███Redacted███ ███Redacted███. Mills Supp. Decl., Ex. A at 96:14-97:9; 98:24-101:6; 101:25-103:6; 103:17-20.) New records show Castaño ███Redacted███. Mills Supp. Decl., Ex. B. Membership aside, Castaño, Cronk, Sandoval, and Martinez lack standing.

Coalition erroneously contends (Opp. at 5) that it does not need to identify an injured member to establish associational standing despite the Supreme Court's requirement in *Summers*, 555 U.S. at 499, to do exactly that, as well as the basic requirements of notice pleading. The case Plaintiffs rely on does not help them. In *Disability Rts. Cal.  v. Cnty. of Alameda*, No. 20-CV-05256-CRB, 2021 WL 212900, at *1 (N.D. Cal. Jan. 21, 2021), the organization was designated by law to represent the interests of the disabled individuals affected by the allegedly unlawful policy that applied only to disabled people. Here, Coalition does not identify a legal right to represent the homeless and fails to demonstrate that every member is injured or that every homeless person is a member. Even if *Disability Rights* permits this Court to disregard *Summers* (and it does not), there is no basis to plausibly infer (and certainly no evidence) that a theoretical Coalition member will suffer an actual and imminent future injury. Associational standing cannot save this case.

### B.    Plaintiffs' Claims Fail As A Matter Of Law.

#### 1.    Plaintiffs Concede *Grants Pass* Disposes Of Their Claims.

Plaintiffs admit that Claims 1-4 and 9-13 fail to the extent they are based on theories incompatible with *Grants Pass*. Instead, Plaintiffs ask the Court to dismiss Claims 1-4 without prejudice in the "unlikely" event the law changes. Opp. at 16. *Grants Pass* put the federal questions beyond debate and the Court already acknowledged California has never applied a different standard. ECF No. 222 at 10. In fact, California rejected Plaintiffs' claims. *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 60 (2015). Any assertion Plaintiffs did not refuse to amend strains credulity. The Court invited them to do so, and they declined. Mills Supp. Decl. Ex. C, Aug. 7, 2024, Hrg. Tr. 4:23-8:8. Presented with the merits, the Court must dismiss the futile claims with prejudice.

#### 2.    Plaintiffs' State-Created Danger Claims Fail.

Plaintiffs largely ignore the City's arguments and authority as to their state-created danger claims and identify no allegations that they or a current Coalition member was exposed to, or harmed by, a particularized danger as a result of the City's deliberate indifference. Nor do they address the Court's prior order identifying their claim's shortcomings. Instead, they rely on four inapposite cases, a study about weather impacts in Denver (not San Francisco), and conclusory allegations. Opp. at 18.

Each case Plaintiffs cite involved particularized dangers that are absent here. *See Sacramento Homeless Union v. Cnty. of Sacramento*, 617 F. Supp. 3d 1179, 1184, 1193-94 (E.D. Cal. 2022) ("triple-digit heat wave" where relocation would be to 120 degree lot); *Where Do We Go Berkeley v. California Dep't of Transp.*, No. 21-CV-04435-EMC, 2021 WL 5964594, at *12 (N.D. Cal. Dec. 16, 2021) (claim based on COVID risk); *Mary's Kitchen v. City of Orange*, No. 821CV01483DOCJDE, 2021 WL 6103368, at *1 (C.D. Cal. Nov. 2, 2021) (claim based on COVID and "upcoming strong winds and harsh winter rains"); *Langley v. City of San Luis Obispo*, No. CV2107479CJCADSX, 2022 WL 18585987, at *2 (C.D. Cal. Feb. 7, 2022) (COVID risk). None of these cases recognized a state-created danger claim in the absence of current or imminent extreme weather, an ongoing global pandemic, or both. *See Where Do We Go Berkeley*, 2021 WL 5964594 at *12 (declining to "rule on the broader theory" of displacement as a particularized danger). Plaintiffs' claims fail.

### 3.   Castaño And Vaughn Do Not Have Timely Claims.

Castaño and Vaughn (both of whom settled their claims before this case commenced) argue their claims are not time-barred because they concern ongoing violations. But these "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed [complaints] because [e]ach discrete . . . act starts a new clock for filing [a complaint] alleging that act." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (quotation omitted). Plaintiffs' authority is in accord.[12] Since Castaño and Vaughn's discrete predicate injuries are outside of the two-year statute of limitations, their claims are time-barred and must be dismissed with prejudice.

### 4.   Post-Deprivation Remedies Bar Plaintiffs' Due Process Claim.

The government and small claims processes highlighted in the SAC are adequate post-deprivation remedies that bar an unauthorized deprivation of property claim. Plaintiffs circumvent those processes by arguing that the deprivation was the product of an intentional widespread unwritten policy. As the City explains *infra*, this argument fails because Plaintiffs have not plausibly alleged that official policymakers acquiesced in an unlawful custom. Nor are there any facts that official

---

[12] *See Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 973-94 (9th Cir. 2010) (including acts *within* the statute of limitations); *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 260 (9th Cir. 1997) (same); *Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG (JEMx), 2015 WL 13260395, at *19 (C.D. Cal. May 8, 2015) (same).

policymakers acquiesced in the deprivations of Plaintiffs' property that allegedly violated City policy as would be required to state a claim. There is no due process violation where destruction of a homeless person's property violated City policy. *Stone v. Agnos*, 960 F.2d 893, 895-96 (9th Cir. 1992).

### 5. Adequate Legal Remedies Bar Plaintiffs' Claim For Injunctive Relief.

Injunctive relief is barred where plaintiffs fail to plead the absence of an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020); *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). Plaintiffs' tacit suggestion that *Sonner* does not apply to injunctive relief fails. "'[N]umerous' district courts in the Ninth Circuit disagree." *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *5 (N.D. Cal. July 1, 2024). And Plaintiffs fail to seriously grapple with the fact that appellate courts have barred injunctive relief for unlawful seizures, including unlawful practices, because compensation is available. *Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir. 2004) (declining to reach practice); *Libman v. United States*, No. 23-55417, 2024 WL 2269271, at *2 (9th Cir. May 20, 2024) (dismissing declaratory and injunctive relief where compensation was available). The only case Plaintiffs invoke concerns the adequacy of post-deprivation remedies for due process—not equitable claims. *See generally Zinermon v. Burch*, 494 U.S. 113 (1990). Plaintiffs also misconstrue the City's claim splitting argument. Claim splitting raises the inference that Plaintiffs have circumvented jury scrutiny by attempting to seek damages in small claims, where there is no right to a jury (or lawyer), even though they could have sought relief in a court without limited jurisdiction. But the equitable bar applies "regardless of . . . gamesmanship." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022). While the Opposition suggests that the SAC alleges inadequate remedies, the SAC does no such thing. Instead, it alleges that the City once received 30 claims and that a small claims judge found the City destroyed the property of 10 individuals during *one* resolution for an incident that was settled. (SAC ¶¶ 170-71.) There are no other allegations that the process is inadequate as a matter of law. Nor are there any allegations that the damages available under 1983 are inadequate. Their failure to seek adequate remedies is dispositive.

### 6. Plaintiffs Disregard Essential Deficiencies With Their *Monell* Claims.

All constitutional claims fail because Plaintiffs do not state a *Monell* claim. The applicable standards are not in dispute. Because Plaintiffs concede they are not asserting ratification or claiming

the City has an express unconstitutional policy, those theories of liability should be dismissed. The Court only needs to consider whether Plaintiffs state unlawful seizure and due process claims based on a failure to train or widespread custom. Each fails.

### a.     Plaintiffs' Failure to Train Claims Fail.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The City explained that the SAC fails to state a cognizable failure to train claim because the shotgun pleading says *nothing* about the City's training program to justify any of the constitutional claims—especially given that Plaintiffs have sued multiple departments individually. Speculation about the City's training cannot state a claim. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). Notably, the Opposition goes beyond the SAC to confirm that Plaintiffs' Fourth Amendment failure to train claim is futile. Plaintiffs' invoke this Court's order requiring *additional* training. ECF No. 231. But that order acknowledged that the City *did* have a training program on the Bag and Tag policy even though the Court found that it was not sufficiently robust to account for the preliminary injunction. *Id*. This only confirms the City's position that no claim is stated: Plaintiffs do not deny that training on constitutional policies defeats a claim, *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008), that the lack of a distinct training module cannot demonstrate deliberate indifference, *Bell v. Williams*, 108 F.4th 809, 825 (9th Cir. 2024), and that the fact that the rights at issue are not "well-established" does too. *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022). Given these controlling requirements, Plaintiffs' cursory and speculative allegations fail as a matter of law.

### b.     Plaintiffs' Long-Standing Custom Claims Fail.

The parties agree that a "practice or custom" theory requires showing that the decisions of "those officials who have the power to make official policy on a particular issue . . . caused the deprivation of rights at issue . . . by *acquiescence* in a longstanding practice or custom." *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737 (1989) (emphasis added). Nor is it disputed that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Contemporaneous

with the City's filing of this Motion, the Ninth Circuit reversed a *Monell* class action concerning Fourth Amendment claims and held that "[c]ustoms or policies. . . do not include officers' independent choices." *Black Lives Matter Los Angeles v. Los Angeles*, 113 F.4th 1249, 1259 (9th. Cir. 2024). It also confirmed, "if the [City] did not know that a violation occurred, it could not have condoned the violation." *Id*. at 1265 (citing *Trevino*, 99 F.3d at 918).

The SAC says nothing about the final policymakers, let alone those final policymakers' knowledge of a frequent and consistent custom of: (1) confiscating and destroying property in violation of the constitution, or (2) exposing the unhoused to a state created danger. Instead, Plaintiffs premise their theory of liability on individual officers violating City policy, which is insufficient as a matter of law. The Opposition points to conclusory allegations concerning "senior leaders from the Mayor to the agency heads" to suggest that they acquiesced in constitutional violations. Opp. at 22, citing SAC ¶¶ 40, 43-45, 231. All of those fail. Paragraph 40 solely identifies the City as a defendant and provides no facts. Paragraphs 43 and 44 allege that Mayor Breed has "celebrated" the "indiscriminate" (*i.e.*, random) "seizure and removal of tents, and has recently called for the increased criminalization of unhoused individuals." But these allegations say nothing about those sporadic instances let alone acquiescence in constitutional violations concerning property destruction or inclement weather (including with respect to Plaintiffs). Paragraph 45 alleges that HSOC's Director directs the seizure of property without sufficient shelter and training. However, the citation to Paragraph 231 belies the conclusory allegation. It asserts that DPW is the one working to train on a "long time practice" of destroying unhoused people's tents without going as far to allege that a relevant final policymaker had knowledge of constitutional violations or the Bag and Tag policy.

Again, Plaintiffs ignore dispositive arguments. The City argued that Plaintiffs' SAC admits that the City crafted its policy "to better safeguard the property of unhoused individuals"—evincing a clear intent to avoid constitutional violations—not deliberate indifference to the rights of the unhoused. SAC ¶ 242. The City also argued that Plaintiffs' novel claims are not based on well-established rights and that the legal uncertainty of those rights defeats a *Monell* claim. Indeed, the City argued that *Lavan* does not establish a bright-line rule, let alone any clear test, to discern protected property from unprotected property, and that no law from the Ninth Circuit establishes an appropriate

1    test to protect survival gear under a cognizable state-created danger claim. The Opposition is silent on

2    these points, thus conceding the SAC states no deliberate indifference.

3                           **7.       Sandoval and Coalition Fail To State Disability Claims.**

4            Plaintiffs argue someone, somewhere must have an ADA claim, but fail to identify a *Plaintiff*

5    with a viable claim.[13] Sandoval, the only Individual Plaintiff alleging disability claims, has no

6    meaningful response to the City's arguments that her claim must be dismissed because the SAC fails

7    to allege that she requested the allegedly denied accommodation. Plaintiffs cite *Cooley v. City of Los*

8    *Angeles*, No. 2:18-cv-09053-CAS-PLA, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) (*Cooley*

9    *II*), but ignore that the court dismissed an ADA claim nearly identical to Sandoval's for failure to

10   allege a requested accomodation. *Cooley v. City of Los Angeles*, No. 2:18-cv-09053-CAS-PLA, 2019

11   WL 1936437, at *6 (C.D. Cal. May 1, 2019) (*Cooley I*). Plaintiffs also fail to distinguish *Sullivan v.*

12   *City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018), which

13   plainly requires Plaintiffs to allege the City knew Sandoval needed the particular accommodation (an

14   allegation nowhere in the SAC): "while the amended complaint alleges that Sullivan is in a wheelchair

15   . . . it fails to allege whether Berkeley knew that Sullivan needed these particular accommodations."

16   *Id.*

17           Coalition does not dispute that it is not disabled and instead claims it is "composed of" and

18   "works with many disabled unhoused people." Opp. at 24. But neither the SAC nor Opposition

19   identify any person (let alone a member) who has been discriminated against. And the supposed

20   "specific instances of conduct violating the ADA" are not alleged to involve Coalition members and,

21   even if they did, do not show ADA violations or allege requests for accommodation based on those

22   disabilities. Opp. at 25 (citing SAC ¶ 204 without explaining how any of the alleged conduct violates

23   the ADA). Finally, Plaintiffs fail to identify any allegations stating an ADA claim based on a failure to

24   provide adequate shelter and therefore abandon this argument.

25

---

26           [13] Plaintiffs base ADA liability on the alleged "fail[ure] to reasonably accommodate those with
     disabilities" (Opp. at 25) and do not contend they state a claim based on disparate impact or treatment.

27   *See Payan v. Los Angeles Comm. College District*, 11 F.4th 729, 738 (9th Cir. 2021) ("A disability
     discrimination claim may be based on 'one of three theories of liability: disparate treatment, disparate

28   impact, or failure to make a reasonable accommodation.'").

Coalition falls outside of the ADA's zone-of-interest because it does not allege its own injury related to a qualifying disability, and instead argues that "Coalition has shown it has associational standing to assert the claims." Opp. at 25. That is false since Coalition does not seriously deny that it failed to identify a member with a disability. Reliance on *Disability Rts. Penn. v. Penn. Dep't of Hum. Servs.*, No. 1:19-CV-737, 2020 WL 1491186, at *9 (M.D. Pa. Mar. 27, 2020), without any analysis is inapposite. That court found the organization was within the zone-of-interest because it had Article III standing based on the now overruled diversion of resources theory. It also pre-dated *TransUnion*'s narrowing of statutory claims. Regardless, Coalition ignored the City's argument that it did not allege a diversion to resources theory for any disability claim.

### 8.   Plaintiffs' Conspiracy Claim Fails.

Plaintiffs relegate their conspiracy claim to a footnote and argue "Defendants fail to challenge Plaintiffs' conspiracy claim except on the basis that Plaintiffs failed to 'state an actual deprivation of rights.'" Opp. at 23 n.15. That mischaracterization ignores the City's argument that the SAC fails to allege any facts from which an agreement to unlawfully destroy each Plaintiff's property can plausibly be inferred and that the cursory pleading falls flat. Thus, Plaintiffs have conceded that their claim is not plausibly stated. Alternatively, it fails to the extent they do not state an underlying violation.

## III.   CONCLUSION

The City requests that the Court grant its motion without leave to amend. This is Plaintiffs' Second Amended Complaint. Faced with the Court's invitation to amend the merits of their complaint one more time, Plaintiffs declined. Dismissal without leave to amend is necessary since their Opposition does not overcome the myriad deficiencies that make their claims futile.

/ / /

/ / /

/ / /

Dated:  October 9, 2024

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By: _s/Steven A. Mills_____
STEVEN A. MILLS

Attorneys for Defendants CITY AND COUNTY OF
SAN FRANCISCO; SAN FRANCISCO POLICE
DEPARTMENT; SAN FRANCISCO DEPARTMENT
OF PUBLIC WORKS; SAN FRANCISCO
DEPARTMENT OF HOMELESSNESS AND
SUPPORTIVE HOUSING; SAN FRANCISCO FIRE
DEPARTMENT; SAN FRANCISCO DEPARTMENT
OF EMERGENCY MANAGEMENT