# EXHIBIT A

2024 WL 4529358
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

Republican National Committee, et al., Plaintiffs
v.
Francisco Aguilar, et al., Defendants

Case No. 2:24-cv-00518-CDS-MDC
|
Filed 10/18/2024

[ECF Nos. 101, 104]

**Order Granting Defendants' Motions to Dismiss**

Cristina D. Silva United States District Judge

*1 Plaintiffs Republican National Committee ("RNC"); Nevada Republican Party; and Scott Johnston (collectively "plaintiffs") bring this action against defendants Francisco Aguilar, in his official capacity as Nevada Secretary of State; Lorena Portillo, in her official capacity as the Registrar of Voters for Clark County; and William "Scott" Hoen, Amy Burgans, Staci Lindberg, and Jim Hindle in their official capacities as county clerks (collectively "defendants") alleging that defendants violated section 8 of the National Voter Registration Act of 1993 ("NVRA") 52 U.S.C. §§ 20501–20511.

Plaintiffs filed their original complaint on March 18, 2024. Pls.' compl., ECF No. 1. On March 21, 2024, Rise Action Fund, Institute for a Progressive Nevada, and Nevada Alliance for Retired Americans (collectively "intervenor-defendants") filed a motion to intervene. Mot. to. intervene, ECF No. 7. Plaintiffs filed a response to the motion to intervene on April 4, 2024. Pls.' resp. to mot. to intervene, ECF No. 18. Intervenor-defendants filled a reply to the response on April 11, 2024. Intervenor-defs.' reply, ECF No. 20. Subsequently, on April 15, 2024, both defendants and intervenor-defendants filed motions to dismiss. Intervenor-defs.' mot. to dismiss, ECF No, 21, Def. Aguilar mot. to dismiss, ECF No. 26. See ECF Nos. 27, 28, 30, 31 (Defs. Portillo, Hoen, Lindberg, and Hindle's joinder to Def. Aguilar's mot. to dismiss). RNC and Nevada Republican Party filed separate responses to the motion to dismiss on April 29, 2024. Pls.' resps., ECF Nos. 40, 41. This motion is fully briefed. ECF No. 60 (Def. Aguilar's reply); ECF Nos. 61, 62, 63, 64, 65 (Defs. Portillo, Hoen, Lindberg, and Hindle's joinder to Def. Aguilar's reply).

I held a hearing on defendants' motion to dismiss on June 18, 2024, and granted the motion to dismiss without prejudice and with leave to amend. ECF Nos. 96, 97. Plaintiffs filed an amended complaint on July 2, 2024. Pls.' am. compl., ECF No. 98. On July 12, 2024, intervenor-defendants' motion to intervene was granted. ECF No. 99. On July 16, 2024, defendants and intervenor-defendants filed motions to dismiss the amended complaint. Def. Aguilar's mot. to dismiss, ECF No. 101; Def.-intervenor's mot. to dismiss, ECF No. 104. See ECF Nos. 102, 103, 105, 106, 107 (Defs. Portillo, Hoen, Lindberg, and Hindle's joinder to Def. Aguilar's mot. to dismiss). Plaintiffs filed their opposition to the dismissal motions on July 30, 2024. Pls.' resp. to mot. to dismiss, ECF No. 101, 104. This motion is fully briefed. ECF No. 101 (Def. Aguilar's reply); ECF Nos. 61, 62, 63, 64, 65 (Defs. Portillo, Hoen, Lindberg, and Hindle's joinder to Def. Aguilar's reply); ECF No. 113 (Intervenor-defs.' reply).

On September 20, 2024, after briefing on the dismissal motions was completed, the Ninth Circuit published an opinion in *Arizona Alliance for Retired Americans v. Mayes*, that addressed the requirements for organizational standing in this circuit. 2024 WL 4246721 (9th Cir. Sept. 20, 2024). Defendants filed a motion for leave to supplement their authorities to reflect the holding in *Arizona Alliance for Retired Americans* in their motion to dismiss. ECF No. 118. Plaintiffs filed a response to that motion on October 7, 2024. ECF No. 120. [1]

**I. Allegations in the amended complaint**

*2 Plaintiffs allege that defendants have violated Section 8 of the NVRA by failing to make reasonable efforts to conduct voter-list maintenance as required by 52 U.S.C. § 20507(a)(4) that mandates states to " 'conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters' due to death or change of residence." See ECF No. 98 at ¶ 38. Plaintiffs seek relief in the form of (1) a declaratory judgment that defendants are violating section 8 of the NVRA; (2) a permanent injunction barring defendants from violating section 8 of the NVRA; (3) an order instructing defendants to develop and implement a reasonable and effective registration list-maintenance program to cure their failure to comply with section 8; (4) plaintiffs' reasonable costs and expenses,

including attorneys' fees; and (5) any further relief plaintiffs may be entitled to. *Id.* at 21–22.

Defendants' and intervenor-defendants' motions both argue that plaintiffs' claim should be dismissed because (1) plaintiffs have not adequately alleged that they have standing under Article III of the United States Constitution and (2) plaintiffs failed to state a claim upon which relief can be granted. ECF No. 101 at 6, 11; ECF No. 104 at 8, 15. Because I find that plaintiffs have not adequately alleged standing under Article III, I do not reach the merits of whether plaintiffs have failed to state a claim. For the reasons below, I grant defendants' and intervenor-defendants' motions to dismiss as to plaintiff Johnston with prejudice and I grant defendants' and intervenor-defendants' motions to dismiss as to RNC and the Nevada Republican Party without prejudice and with leave to amend.

## II. Legal standards

### A. Article III standing

Those seeking to have their case heard in federal court "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). To satisfy Article III, "a plaintiff must show it has (1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3)[t]he injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). When there are multiple plaintiffs who all seek the same relief, "the Article III injury requirement is met if only one plaintiff has suffered concrete harm." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).

A recent decision clarified the requirements of organizational standing in this circuit. In *Arizona Alliance for Retired Americans v. Mayes*, the court held that "[o]rganizations can no longer spend their way into standing based on vague claims that a policy hampers their mission." 2024 WL 4246721, at *2. It further clarified that "the distinctive theory of organizational standing reflected in *Havens Realty*[2] extends only to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so apart from the plaintiffs' response to that governmental action. *Id.* at *5–6 (citing *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024)). That decision cautioned that the *Hippocratic Medicine* case "squarely rejected the sort of 'expansive theory' of *Havens Realty* standing that [had] long been the hallmark of [this Circuit's] jurisprudence." *Id.* at *6.

### B. The National Voter Registration Act

Congress enacted the NVRA in 1993 to "(1) establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to ... enhanc[e] the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501. Section 8 of the NVRA[3] prescribes requirements that states must follow in respect to administration of voter registration. *Id.* at § 20507. Among other things, Section 8 states that state officials may only remove registrants from the eligible voter list (1) at the registrant's request; (2) as provided by State law, by reason of criminal conviction or mental incapacity; (3) because of death of the registrant; or (4) because of the registrant's change of address. *Id.* at § 20507(a)(3)–(4). Section 8 also requires states to conduct a general program that makes a "reasonable effort" to remove names of voters who have become ineligible due to death or change of address. *Id.* at § 20507(a)(4). Any general program designed to remove names of voters who have become ineligible due to change of address must be completed no later than ninety days prior to the date of a federal primary or general election. *Id.* at § 20507(c)(2)(A). The ninety-day requirement does not apply to the other three categories. *Id.* at § 20507(c)(2)(B)(i), (ii).

**\*3** The NVRA provides a private right of action to file a lawsuit for those who are "aggrieved by a violation of [the] Act." *Id.* at § 20510(b)(1). To exercise the right, a person allegedly aggrieved by a violation of the Act must provide written notice of the violation to the chief election official of the state involved.[4] *Id.* If the violation is not corrected within ninety days after the chief election official receives notice, or within twenty days after receipt of notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person is permitted to bring a civil action in an appropriate district court for declaratory or injunctive relief. *Id.* at § 20510(b)(2).

## III. Discussion

Recognizing that the election is less than thirty days away, the court resolves the pending motions to dismiss on an expedited basis.[5] As the plaintiffs are not similarly situated, the court first addresses the individual plaintiff Scott Johnston ("Johnston"), and then addresses plaintiffs Republican National Committee ("RNC") and Nevada Republican Party.

**A. Johnston does not have standing under Article III.**
To have standing under Article III, a plaintiff must allege an injury in fact that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc.*, 528 U.S. at 180. Johnston first alleges that "because Defendants do not maintain accurate voter rolls, [he] reasonably fears that ineligible voters can and do vote in Nevada elections." ECF No. 98 at ¶ 28. As such, those extra votes will dilute his "legitimate vote." *Id.* To provide factual support for this belief, plaintiffs reference various instances of voter fraud in Nevada. ECF No. 98 at ¶¶ 47–49. Both defendants and intervenor-defendants argue that Johnston's alleged concern of vote dilution is generalized and speculative and does not satisfy the injury-in-fact requirement. ECF No. 101 at 6; ECF No. 104 at 11, 13. In response, Johnston first argues that vote dilution is particularized, and not a generalized grievance, because the allegation is that *his* vote is being diluted, not just that votes in general are being diluted. ECF No. 108 at 14 (citing *Green v. Bell*, 2023 WL 2572210, at *4 (W.D.N.C. Mar. 20, 2023)). Johnston further argues that the vote dilution claim is not speculative because the link between bloated rolls and ineligible voting is not speculative. *Id.*

During the hearing on defendants' motion to dismiss the original complaint, I found that Johnston's injury of voter dilution was "impermissibly generalized and speculative." ECF No. 96, June 18, 2024 Hr'g tr. at 24:3–4. The allegations in the amended complaint have not changed that conclusion.

First, Johnston's vote dilution claim is nothing more than a generalized grievance. Under Article III, a "particularized" injury must be personal, not a "generalized grievance." *Iten v. Cnty. of Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (citation omitted). A plaintiff asserts a generalized grievance when they assert "only the right, possessed by every citizen, to require that the Government be administered according to law[.]" *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922). And a generalized grievance is "undifferentiated and common to all members of the public." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992) (quoting *United States v. Richardson*, 418 U.S. 166, 176–77 (1974)). "[N]o matter how sincere" a generalized grievance cannot support standing. *Wood v. Raffensperger*, 981 F. 3d 1307, 1314 (11th Cir. 2020) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

**\*4** Johnston's fear of vote dilution can be raised by every and any voter in the State of Nevada. *See, e.g.*, *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) ("[p]laintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."). Any reduction in individual voting power due to independent acts of voter fraud are felt equally by all voters in Nevada and do not present "an individual and personal injury of the kind required for Article III standing." *Republican Nat'l Comm. v. Burgess*, 2024 U.S. Dist. LEXIS 126371, at *19–20 (D. Nev. July 17, 2024) (quoting *Gill v. Whitford*, 585 U.S. 48, 68 (2018)). Johnston never describes how his vote will be harmed by vote dilution in a manner that other eligible voters' votes will not. *Donald J. Trump for President, Inc. v. Cegavske.*, 488 F. Supp. 3d 993, 1000 (D. Nev. 2020). Further, participation in the democratic process in elections that comply with statutes is a general right applicable to **all** voters. Voters who have no greater stake in a lawsuit than any other citizen cannot establish a particularized injury. *See Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011) (holding that because plaintiff "has no greater stake in this lawsuit than any other United States citizen [t]he harm he alleges is ... too generalized to confer standing"); *Martel v. Condos*, 487 F. Supp. 3d 247, 252–53 (D. Vt. 2020) (referencing *Gill,* 585 U.S. 48, that declined to extend standing to plaintiffs asserting generalized grievances to state election laws.).

Second, plaintiffs' vote dilution claim is too speculative. Under Article III, the "threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitemore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis added by quoting authority). At most, the amended complaint merely insinuates that voter fraud could happen, not that it is "certainly impending" or that there is a "substantial risk" that it would happen due to inaccurate voter rolls. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper,* 568 U.S. at 409, 414 n.5). To support the argument that Nevada's failure to reasonably maintain its voter lists creates a substantial risk of fraud, plaintiffs' amended complaint cites to the fact that (1) the Nevada Secretary of State's office has referred fourteen cases of potential election fraud for possible criminal prosecution, and

Case 4:22-cv-05502-DMR   Document 256-1   Filed 10/23/24   Page 5 of 11
Republican National Committee, et al., Plaintiffs v. Francisco..., Slip Copy (2024)
2024 WL 4529358

(2) four people in Nevada have pled guilty to engaging in voter fraud (two in 2014, one in 2016, and one in 2020). ECF No. 98 at ¶¶ 47, 48, 49. Plaintiffs do not provide any additional information regarding the underlying allegations of those cases, or whether any of those fourteen cases referred by the Secretary of State's Office for possible criminal prosecution have culminated in convictions. As such, I am left to consider only four convictions of voter fraud. Four recorded convictions of voter fraud in the span of ten years does not support that voter dilution is "certainly impending" due to Nevada's alleged improper maintenance of the voter lists. *See Susan B. Anthony List*, 573 U.S. at 158.

Johnston attempts to avoid the conclusion that his voter dilution claim is barred under Article III by arguing that Congress's creation of a private right of action under the NVRA requires me to find that Johnston has standing. ECF No. 108 at 14–15. Generally, "[c]ourts must afford due respect to Congress's decision to ... grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). However, "under Article III, an injury in law is not an injury in fact." *Id.* at 427. The Supreme Court has squarely rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm[.]" *TransUnion LLC*, 594 U.S. at 426. "Only those ... *concretely harmed* by a defendant's statutory violation may sue that ... defendant over that violation in federal court." *Id.* at 427 (emphasis in original).

*5 Plaintiffs cite to one non-binding, out-of-circuit district court case, *Green v. Bell*, where the Western District of North Carolina judge held that a claim of vote dilution was a concrete injury under the NVRA. 2023 WL 2572210, at *4. I do not find this case persuasive. The harm Johnston alleges requires three uncertain intervening events: (1) an ineligible voter must be afforded the opportunity to commit fraud; (2) the ineligible voter will in fact commit fraud; and (3) the fraud will not be prevented. This harm is too speculative, even under the NVRA. *Clapper*, 568 U.S. at 414 (holding that a person's "speculative chain of possibilities" cannot establish that injury is certainly impending). Further, the existence of the NVRA does not turn Johnston's vote dilution claim from a generalized grievance into a "particular injury." *Iten*, 81 F.4th at 984. As explained above, Johnston lacks constitutional standing. The existence of a private right of action in the NVRA does not unilaterally confer standing upon him. *TransUnion LLC*, 594 U.S. at 426.

Johnston also alleges that he is injured because he has lost confidence in the integrity of the Nevada elections. *Id.* Both defendants and intervenor-defendants argue that these concerns are generalized and speculative and do not satisfy the injury-in-fact requirement. ECF No. 101 at 6–8; ECF No. 104 at 10, 13–14. In response, Johnston argues that an undermined confidence in the electoral system is not generalized because "there is no indication that undermined confidence and discouraged participation are 'common to all members of the public,'" and that the injury is not speculative because their "confidence is undermined now." ECF No. 108 at 15 (internal citations omitted). He cites to three non-binding cases that have recognized undermined confidence as a basis for standing in section 8 cases. *See Green,* 2023 WL 2572210, at *4, *Jud. Watch, Inc. v. Griswold,* 554 F. Supp. 3d 1091, 1103–04 (D. Colo. 2021), *Jud. Watch, Inc. v. King,* 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012). Again, I am not persuaded by these decisions.

First, Johnston's undermined confidence in the integrity of Nevada's elections is not an injury that is distinct from that of any other registered voter. He claims he is different from other members of the public because he is a "registered voter in Nevada who votes in the very local and statewide elections that are suffering from bloated rolls." ECF No. 108 at 15. However, this still does not answer how Johnston's undermined confidence in electoral systems is "distinct or different from the alleged injury" of other registered voters in Nevada. *O'Rourke v. Dominion Voting Sys. Inc.*, 2022 U.S. App. LEXIS 14625, at *2 (10th Cir. May 27, 2022); *see Wood, 981 F.3d at 1314* (affirming district court's dismissal of claim for lack of standing where plaintiff challenged the results of the general election because his alleged injury was not particularized, and finding that the plaintiff "cannot explain how his interest in compliance with state election laws is different from that of any other person"). Maintaining the integrity and confidence in elections is consistent sentiment [6] and is reflected as an issue in cases filed across the country. *See Am. Civ. Rts. Union v. Martinez-Rivera,* 166 F. Supp. 3d

779, 795 (W.D. Tex. 2015) (plaintiff alleging injury based on undermined confidence in elections); *Thielman v. Fagan*, 2023 U.S. Dist. LEXIS 112236, at *6 (D. Or. June 29, 2023) (plaintiff alleging injury based on lack of confidence in Oregon's elections); *Wisconsin Voters Alliance v. City of Racine*, 2021 U.S. Dist. LEXIS 9046, at *1 (E.D. Wis. Jan. 19, 2021) (plaintiff alleging that defendant's actions "undermined integrity of election process"); Martel, 487 F. Supp. 3d at 253 (dismissing for lack of standing because voters who suffer the same incremental dilution caused by some fraudulent vote or administrative process have experienced a generalized injury unreviewable by the courts). This just further demonstrates how Johnston's allegations are too generalized and therefore insufficient for standing.

 **\*6** Undermined confidence in the integrity of Nevada elections is too speculative. Courts have widely concluded that an alleged injury related to a lack of confidence in a voting system is "too speculative to establish an injury in fact, and therefore standing.*"* Lake v. Hobbs, 623 F. Supp. 3d 1015, 1028–29 (D. Ariz. 2022) (finding that plaintiffs lacked standing because, inter alia, their alleged injury of potential voter fraud was too speculative because "a long chain of hypothetical contingencies must take place for any harm to occur"), a'ffd sub nom, Lake v. Fontes, 83 F.4th 1199 (9th Cir. 2023); *see also* Donald J. Trump for President, Inc. v. Boockvar, 493 F. Supp. 3d 331, 376 (W.D. Pa. 2020) (dismissing claims related to state's mail-in voting system as "too speculative to be concrete" where the plaintiffs claimed they were afraid that "absent implementation of the security measures that they seek, there [was] a risk of voter fraud by other voters"); Crist v. Comm'n on Presidential Debates, 262 F.3d 193, 195 (2d Cir. 2001) (finding that the plaintiffs' alleged injury that "[t]hey were unable to know that their votes were accurately counted" was "not the kind of 'informational injury' that has previously been found to establish standing and concluding that "a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared"). For those reasons, I find that Johnston's claims are too generalized and speculative to confer standing under Article III so defendants' motions to dismiss as it relates to him are granted.

### B. RNC and Nevada Republican Party Fail to Allege Organizational Standing.

Plaintiffs next argue that Johnston's lack of standing is not fatal to his case because both RNC and Nevada Republican Party (collectively, "the organizational plaintiffs") have standing and "[b]ecause all three plaintiffs seek the same relief under the same claim, and at least one has standing, 'the Article III injury requirement is met.' " ECF No. 108 at 15–16 (quoting Juliana, 947 F.3d at 1168). I agree with plaintiffs to the extent that Johnston's lack of standing has no impact on this court's analysis as to whether the RNC or the Nevada Republican Party has standing. However, in applying both Supreme Court and Ninth Circuit precedent, I find that neither RNC nor the Nevada Republican Party adequately allege organizational standing under Article III.

The Supreme Court's ruling in FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367 and the Ninth Circuit's Arizona Alliance for Retired Americans v. Mayes, 2024 WL 4246721, has clarified the requirements for organizational standing. In *Hippocratic Medicine*, the Supreme Court stated:

> "[A]n organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct, Valley Forge, 454 U.S. at 486, 'no matter how longstanding the interest and no matter how qualified the organization,' Sierra Club v. Morton, 405 U.S. 727, 739 (1972). A plaintiff must show 'far more than simply a setback to the organization's abstract social interests.' Havens, 455 U.S. at 379."

602 U.S. at 394.

Following that case, the Ninth Circuit explained in *Mayes* that this "circuit's organizational standing case law has been conflicting and confusing .... Rather than require organizations to show actual injury, we have sometimes allowed organizations to sue when they have alleged little more than that they have diverted resources in response to the defendant's actions to avoid frustrating the organization's loosely defined mission." 2024 WL 4246721, at *4. Further, the court identified circuit precedent that were "irreconcilable" with *Alliance for Hippocratic Medicine* and overruled the following cases: Nielsen v. Thornell, 101 F. 4th 1164 (9th Cir. 2024); Sabra v. Maricopa Cnty. Cmty. College, 44 F.4th 867 (9th Cir. 2022); National Council of La Raza v. Cegavske, 800 F.3d 1032 (9th Cir. 2015); Fair Housing Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216 (9th Cir. 2012). Before the ruling in *Mayes*, plaintiffs relied on *Cegavske* in their briefings. *See* ECF No. 108 at 7, 10; ECF No. 109 at 1, 2. *Mayes* went on to clarify that an organization asserting it has standing based on its own alleged injures must meet "the traditional Article III standing requirements—meaning it must show (1) that it has been injured or will imminently be injured, (2) that the injury

Case 4:22-cv-05502-DMR   Document 256-1   Filed 10/23/24   Page 7 of 11
Republican National Committee, et al., Plaintiffs v. Francisco..., Slip Copy (2024)
2024 WL 4529358

was caused or will be caused by the defendant's conduct, and (3) that the injury is redressable. *Mayes*, 2024 WL 4246721, at *4. Following the principles set forth in *Hippocratic Medicine* and applying *Mayes*, I find that the organizational plaintiffs fail to allege an injury-in-fact.

### 1. The amended complaint fails to allege an injury-in-fact.

**\*7** *Mayes* makes clear that to successfully assert organizational standing under *Alliance for Hippocratic Medicine*, an organization must allege more than "a frustrated mission and diverted resources." 2024 WL 4246721, at *8. The challenged actions must directly harm the organization's "pre-existing core activities." *Id.* at *9. Defendants argue that the organizational plaintiffs have merely alleged harm in the form of a frustrated mission and diverted resources. *See* ECF No. 118 at 2 (citing First am. compl., ECF No. 98 at ¶¶ 14, 16). In response, the organizational plaintiffs argue that they have asserted direct harm to their organizations because "they allege that Defendants' NVRA violations harm the [organizational] Plaintiffs' organizational activities *right now*" and that "[t]hose violations make it more difficult to register voters, turn out Republicans to vote, and elect Republican candidates, which are 'already-existing core activities.' " ECF No. 120 at 2 (quoting *Mayes*, 2024 WL 4246721, at *11) (emphasis in original). The organizational plaintiffs further allege that *Mayes* tracks plaintiffs' standing argument because this case is similar to *Havens Realty Corp. v. Coleman*, in which the Supreme Court held that the respondent nonprofit had standing to challenge a landlord's racial steering practices because the practices "frustrated" the nonprofit's "efforts to assist equal access to housing through counseling and other referral services" and required the nonprofit to "devote significant resources to identify and counteract the defendant's racially discriminatory practices." *See* ECF No. 120 (discussing 455 U.S. at 379).

Specifically, the organizational plaintiffs allege that they "have suffered the same kind of direct injury at issue in [*Havens Realty Corp.*]—inaccurate information that impairs their ability to engage in their core activities of turning out Republican voters and election [sic] Republican candidates." ECF No. 120 at 4. However, the Supreme Court has consistently referred to *Havens Realty Corp.* as an "unusual case" that the Court has been "careful not to extend ... beyond its context." *All. For Hippocratic Med.*, 602 U.S. at 396. As the Ninth Circuit points out in *Mayes*, the *Havens Realty Corp.* nonprofit's organizational standing was largely predicated on the fact that it operated a housing counseling service. 2024 WL 4246721, at *8. *Mayes* emphasizes that the nonprofit "would not have had standing, however, if the racial steering practice only affected its 'public advocacy' and 'public education' functions—the injury *depended* on HOME's counseling services. *Id.* (quoting *Havens Realty Corp.*, 455 U.S. at 394) (emphasis added).

The amended complaint asserts harms in the form of a frustrated mission and diverted resources.[7] The amended complaint states that voter lists containing ineligible voters will force the RNC to (1) "divert resources away from ... voter registration and get-out-the-vote efforts," and (2) divert resources to ensure it is chasing mail ballots of eligible voters, rather than ballots mailed to voters who are no longer eligible to vote. ECF No. 98 at ¶¶ 14, 16. The amended complaint further alleges that defendants' alleged lack of accurate maintenance of voter rolls requires the RNC to "spend more of its time and resources monitoring Nevada elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to improve list maintenance:" *Id.* at ¶ 19. They also allege that "[t]he RNC has diverted substantial time and resources to mitigate these injuries caused by defendants' NVRA violations" and, had they not made those expenditures, "plaintiffs would have expended those resources on other activities critical to their mission, such as voter-turnout and voter-registration efforts." *Id.* at ¶ 20.

But these allegations relate to the RNC's public education function, a frustrated mission, and diversion of resources. Precedent has made clear that these claims do not meet the injury-in-fact requirement. *See Mayes*, 2024 WL 4246721, at *8. Indeed, *Mayes* overrules two recent Ninth Circuit cases that found an organization had standing because plaintiffs had established "the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Nielsen*, 101 F.4th at 1170 (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021)). In *Havens Realty Corp.* there was concrete evidence that the nonprofit had, in fact, received false information about available housing, which meant that it could not counsel its clients on what housing was available. 455 U.S. at 368–69. Although the court is accepting the allegations in the amended complaint as true, the allegations therein are unlike *Havens Realty Corp.* because there are no allegations explaining how the organizational plaintiffs are currently unable to register voters, turn out Republican voters, or elect candidates. The

only way that the alleged failure to maintain voter lists affects the organizational plaintiffs' "core activities" is by causing the organizational plaintiffs, in response to the failure to maintain the voter lists, to decide to shift some resources from "one set of pre-existing activities in support of their overall mission to another, new set of such activities." *Mayes*, 2024 WL 4246721, at *10. These vague allegations of shifting resources fail to provide the court any information regarding what or which resources the organizational plaintiffs have needed to shift. As alleged, it is unclear what resources would need to be shifted. If such resources are money, which is a reasonable inference, [8] it is now clear that "[o]rganizations can no longer spend their way into standing based on vague claims that a policy hampers their mission," *Mayes*, 2024 U.S. App. 23963, at *5, making the alleged "shifting resources" irreconcilable with *Hippocratic Medicine*.

**\*8** The amended complaint further alleges that "inaccurate [voter list] information impairs the RNC's ability to form wining strategies around voter turnout, voter registration, mail-voting campaigns, and in-person efforts," and "[i]naccurate voter rolls provide a false picture of a candidates' electorate, which impedes the RNC's ability to help Republican candidates run their campaigns and win their elections." ECF No. 98 at ¶¶ 15, 17. These allegations do not provide any evidence or examples of *how* voter lists have actually impaired RNC's ability to get voters to register and vote or elect candidates. The organizational plaintiffs merely provide general assertions of what has happened, without any concrete specifics. Even assuming, arguendo, that there has not been proper voter list maintenance, RNC can still carry on its mission and continue to register voters. *See Mayes*, 2024 WL 4246721, at *9 ("[w]ith or without the Cancellation Provision, the plaintiffs can still register and educate voters —in other words, continue their core activities that they have always engaged in"). Again, like the plaintiffs in *Mayes*, as alleged it appears the organizational plaintiffs are attempting to "spend their way into Article III standing." *Id.* Thus, I find that plaintiffs have not adequately alleged an injury-in-fact to confer organizational standing. Because I make this finding, I do not address the issue of causation on the merits.

### C. Part of plaintiffs' claim cannot be redressed.

To satisfy Article III, plaintiffs must demonstrate that their injury is redressable. *Friends of the Earth, Inc.*, 528 U.S. at 180. Redressability demands that plaintiffs show that they "would benefit in a tangible way from the court's intervention." *Defazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1072 (E.D. Cal. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Courts have an obligation to make sure that parties have Article III standing—which includes demonstrating that the injury is redressable—"at the outset of the litigation." *Friends of the Earth, Inc.*, 528 U.S. at 180. Thus, even though I am evaluating the plaintiffs' amended complaint, I must determine whether plaintiffs' claims were redressable at the time the original complaint was filed.

Under the NVRA, "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official list of voters." 52 U.S.C. § 20507(c)(2)(A). This provision essentially prohibits states from engaging in any systematic voter registration list purging in the months leading up to a federal election. *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). However, this provision has a caveat: the ninety-day prohibition of removing names of ineligible voters from the official lists of voters does not apply to voters that are being removed (1) at the registrant's request; (2) provided by state law, by reason of criminal conviction or mental capacity; or (3) due to the registrant's death. 52 U.S.C. § 20507(c)(2)(B)(i). It follows, then, that the ninety-day prohibition from removing names of ineligible voters from official lists applies only to those voters who are being removed due to a change of address. *Id.*

Plaintiffs chose to file their original complaint on March 18, 2024, which was during one of the NVRA's required blackout periods. ECF No. 1. I take judicial notice of the fact that Nevada had a federal primary election on June 11, 2024. [9] *See 2024 Election Information*, Nev. Sec'y of State, https://www.nvsos.gov/sos/elections/election-information/2024-election-information (last updated Sept. 27, 2024). Accordingly, pursuant to the NVRA, the Secretary of State's office was forbidden from touching the voter lists ninety days prior to June 11, 2024, which was March 13, 2024. Thus, on March 18, 2024, when plaintiffs chose to file their original complaint, the Secretary of State's office could not remove any voters due to a change of address as it was within the 90-day blackout window due to upcoming the primary election. Plaintiffs' complaint alleges that defendants "have failed to make reasonable efforts to conduct voter-list maintenance as required by 52 U.S.C. § 20507(a)(4)." ECF No. 98 at ¶ 108. I assume that some of the "reasonable efforts" to conduct voter-list maintenance would necessarily include removing ineligible voters due to a registrant's changed address. Put differently, at the time plaintiffs initiated this

action, they were asking, in part, for this court to order the Secretary of State's office to do something in violation of [52 U.S.C. § 20507(c)(2)(A)](#) [10](#). Consequently, at the time plaintiffs initiated this action, I could not provide them with any tangible relief as to any requests that the Secretary of State's office remove any voters from the voter lists that were ineligible because they changed addresses. Because of this, I find that any part of plaintiffs' request that defendants make reasonable efforts to conduct voter-list maintenance that involves removing voters ineligible due to their change in address is barred under [Article III](#) because it lacks redressability.

### D. Plaintiffs' claims are prudentially ripe.

*9 Although I need not address the Secretary of State's argument regarding lack of prudential ripeness because I find plaintiffs lack standing to bring this action, I nonetheless address it because I grant organizational plaintiffs leave to amend and for clarity of the record. The doctrine of prudential ripeness was created to acknowledge that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the [c]ourt's jurisdiction, even though that jurisdiction is technically present" *[Socialist Lab. Party v. Gilligan](#)*, [406 U.S. 583, 588 (1972)](#) (quoting *[Rescue Army v. Municipal Court of Los Angeles](#)*, [331 U.S. 549, 574 (1947)](#). To determine whether an action is prudentially ripe, courts look at (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *[Abbot Labs. v. Gardner](#)*, [387 U.S. 136, 149 (1967)](#), *abrogated on other grounds by [Califano v. Sanders](#)*, [430 U.S. 99 (1977)](#). I find that both prongs weigh in favor of prudential ripeness here.

First, the issue at hand is fit for judicial decision. The Ninth Circuit has held that a "claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *[U.S. West Commc'ns v. MFS Intelenet, Inc.](#)*, [193 F.3d 1112, 1118 (9th Cir. 1999)](#) (quoting *[Standard Alaska Prod. Co. v. Schaible](#)*, [874 F.2d 624, 627 (9th Cir. 1989)](#). Defendants argue that this issue is not fit for judicial decision because the issues are "highly fact intensive" and, due to the NVRA's prohibition on removing voters who have changed addresses within ninety days of an election, "Nevada has not been offered an adequate opportunity to take any final action in response to the issues Plaintiffs have raised." ECF No. 101 at 23. Thus, the defendants contend, the numbers in the complaint are bloated. ECF No. 96, June 18, 2024 Hr'g tr. at 55:1–3. In response, plaintiffs argue that the case presents a "detailed factual account of the underlying disputes in the case." ECF No. 108 at 24. I agree. At the motion to dismiss stage, facts stated in the complaint are "taken as true." *[Bell Atlantic Corp. v. Twombly](#)*, [550 U.S. 544, 556 (2007)](#). Whether the numbers presented in the complaint are bloated is a question of fact not appropriately decided on a motion to dismiss. *[Alvantor Indsutry v. Shenzhen](#)*, [2021 WL 3913171, at *6 (C.D. Cal. Aug. 30, 2021)](#).

Second, if I had found that plaintiffs adequately alleged an injury-in-fact, plaintiffs would experience hardship if the court decided to withhold consideration. To demonstrate that plaintiffs would experience hardship if the court decided to withhold consideration, plaintiffs must show that "postponing review imposes a hardship on them that is 'immediate, direct and significant.' " *[Colwell v. Dep't of Health and Hum. Servs.](#)*, [558 F.3d 1112, 1128 (9th Cir. 2009)](#) (quoting *[Anchorage v. United States](#)*, [980 F.2d 1320, 1326 (9th Cir. 1992)](#)). Defendants argue that "[p]laintiffs' alleged injuries relate to electoral activities, but the relief they request would be impossible to implement before the upcoming November 5, 2024, general election." ECF No. 101 at 24. Consequently, defendants assert that any hardship would not be immediate. *Id.* Indeed, as noted above, plaintiffs previously made very clear that they are "not trying to speed up the case for the sake of obtaining discovery before the November election." ECF No. 96, Hr'g tr. at 36:23–25. Plaintiffs instead allege a systematic violation by defendants through their failure to abide by their "ongoing" obligation to conduct routine maintenance of voter lists. ECF No. 108 at 25. However, because plaintiffs have admitted that they are not requesting relief for the upcoming election, but instead are alleging harm by the continued, ongoing failure to conduct maintenance on voter lists, I find that, if I had found an injury-in-fact, any decision to withhold consideration would have caused them to experience hardship.

### IV. Conclusion

*10 IT IS THEREFORE ORDERED that the motions to dismiss **[ECF Nos. 101, 104] are granted as to plaintiff Johnston. Scott Johnston is dismissed with prejudice.**

IT IS FURTHER ORDERED that the motions to dismiss **[ECF Nos. 101, 104] are granted as to plaintiffs the Republican National Committee and the Nevada Republican Party.** However, because these defendants did not have the benefit of the *Mayes* case at the time it filed its amended complaint, it is not wholly clear if amendment

would be futile, so I dismiss the amended complaint without prejudice.

If the organizational plaintiffs choose to file another complaint, they must file a motion to do so that complies with Local Rule 15-1 by November 1, 2024.

**All Citations**

Slip Copy, 2024 WL 4529358

---

## Footnotes

1     Because I find the additional briefing from the parties regarding the *Mayes* case helpful in resolving the motions to dismiss, I grant defendant Aguilar's motion for leave [ECF No. 118].

2     *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 395–96 (1982).

3     Under the NVRA, references to "Section 8" refer to violations of 52 U.S.C. § 20507. The Section 8 terminology is derived from the section of the public law originally enacting the statute, Pub. L. No. 103–31, § 8, May 20, 1993, 107 Stat. 77 (1993). *See Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 n.14 (3d Cir. 2017).

4     Defendants do not raise the issue of notice sufficiency in their motion to dismiss, so I do not address it. *See* ECF No. 101 at 11 n.1. The court notes that plaintiffs attached a copy of the notice they sent to the Nevada Secretary of State on December 4, 2023, to their amended complaint. Letter, ECF No. 98-1.

5     Plaintiffs indicated during oral argument on the first motion to dismiss that they had no objection to resolving this action after November 5, 2024. H'rg tr., ECF No. 96 at 36.

6     *See* Gabriel R. Sanchez & Keesha Middlemass, *Misinformation is Eroding the Public's Confidence in Democracy*, Brookings (July 26, 2022), https://www.brookings.edu/articles/misinformation-is-eroding-the-publics-confidence-in-democracy/ (citing an ABC News/Washington Post Survey that found only twenty percent felt "very confident" in the integrity of the U.S. election system); *see also* Christine Todd Whitman, *Election Integrity: A Pathway to Democracy*, Kettering Found. (April 18, 2024), https://kettering.org/election-integrity-a-pathway-to-democracy/.

7     What constitutes the alleged "diverted resources" is not identified, defined, or explained in the amended complaint.

8     The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

9     *See* Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice"); *In re Amgen Inc. Secs. Litig.*, 544 F. Supp. 2d 1009, 1023–24 (C.D. Cal. 2008) (taking judicial notice of drug labels taken from the FDA's website).

10   *See Ala. Coalition for Immigrant Just. v. Allen*, no. 2:24-cv-1254-AMM, (N.D. Ala. Oct. 16, 2024) (finding that the Alabama Secretary of State violated the NVRA when he began a purge program eighty-four days before the 2024 general election).

---

**End of Document**                                                                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.