**REDACTED VERSION OF DOCUMENT PROVISIONALLY FILED UNDER SEAL**

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-3857 (Wang)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
               (415) 554-4223 (George)
               (415) 355-3304 (Mills)
Facsimile:     (415) 554-4699
E-mail:        edmund.wang@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org
               john.george@sfcityatty.org
               steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>      Plaintiffs,<br><br>      vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>      Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Hearing Date:   February 13, 2025<br>Time:             1:00 p.m.<br>Place:            Courtroom 4 – 3rd floor<br>                   1301 Clay Street<br>                   Oakland, CA 94612<br><br>Trial Date:     July 28, 2025 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION .............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................3

    I.       INTRODUCTION ..................................................................................3

    II.      PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS ..........................3

    III.    LEGAL STANDARDS ..........................................................................4

    IV.    THE INDIVIDUAL PLAINTIFFS DO NOT HAVE STANDING CONSISTENT WITH THE COURT'S PRIOR ORDER. .....................................5

    V.     COALITION LACKS STANDING. .........................................................8

          A.     Coalition Has No Standing As A Plaintiff In Its Own Capacity. ...............8

               1.     Coalition Did Not Lose Any Property Because Of The City's Conduct. ...............................................................................8

               2.     Coalition's New Allegations Do Not Support Organizational Standing. .............................................................................9

               3.     Evidence Contradicts The Organizational Standing Allegations...11

          B.     Coalition Has No Associational Standing .................................................13

               1.     Coalition Cannot Carry Its Burden At The First Prong. ...............14

                     a.     Coalition Lacks The Necessary Indicia Of Membership...14

                     b.     Coalition's Identified Members Lack Standing. ................16

               2.     Coalition Cannot Carry Its Burden At The Third Prong...............19

                     a.     Coalition Does Not Add Efficiency Or Convenience........19

                     b.     Individual Member Participation Is Required...................21

                         i.     The Associational Claims Fail As A Matter Of Law. ...................................................................23

    VI.    CONCLUSION...................................................................................27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Federal Cases**

*3C, LLC v. Rokita*
  No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) ....................... 17

*A.B. v. Haw. State Dep't of Educ.*
  30 F.4th 828 (9th Cir. 2022) ..................................................................................... 24

*Aguayo v. Richardson*
  473 F.2d 1090 (2d Cir. 1973) ..................................................................................... 25

*Am. Fed's of State, Cnty. & Mun. Emps. Council  v. Scott*
  857 F. Supp. 2d 1322 (S.D. Fla. 2012). ...................................................................... 26

*Am. Fed's of State, Cnty. & Mun. Emps. Council 79 v. Scott*
  717 F.3d 851 (11th Cir. 2013) ..................................................................................... 26

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*
  821 F.3d 352 (2d Cir. 2016) ..................................................................................... 24

*Am. Unites for Kids v. Rousseau*
  985 F.3d 1075 (9th Cir. 2021) ..................................................................................... 14

*Ariz. All. for Retired Ams. v. Mayes*
  117 F.4th 1165 (9th Cir. 2024) ..................................................................... 8, 9, 10, 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..................................................................................... 19

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*
  713 F.3d 1187 (9th Cir. 2013) ..................................................................... 16, 17, 19

*Bank of Am. Corp. v. City of Miami*
  581 U.S. 189 (2017) ..................................................................................... 24

*Bayer v. Neiman Marcus Grp., Inc.*
  861 F.3d 853 (9th Cir. 2017) ..................................................................................... 7

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ..................................................................................... 19

*Berry v. Hennepin Cnty.*
  No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797 (D. Minn. July 22, 2024) ............................... 6

*Bone v. Univ. of N.C. Health Care Sys.*
  678 F. Supp. 3d 660 (M.D.N.C. 2023) ..................................................................... 18, 22

*Cal. Rest. Ass'n v. City of Berkeley*
  89 F.4th 1094 (9th Cir. 2024) ..................................................................................... 19

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) ................................................................................22

*City of Grants Pass v. Johnson*
    603 U.S. 520 (2024) .............................................................................3, 6, 10

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) .........................................................................................5, 8

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ....................................................................................5, 6, 7

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC*
    No. 14-cv-953 (GK), 2016 WL 7376847 (D.D.C. Dec. 19, 2016) ....................22, 23

*Coleman v. Quaker Oats Co.*
    232 F.3d 1271 (9th Cir. 2000) .......................................................................9, 17

*Connick v. Thompson*
    563 U.S. 51 (2011) ..........................................................................................22

*Dayton Area Chamber of Commerce v. Becerra*
    Case No. 3:23-cv-156, 2024 WL 3741510 (S.D. Ohio Aug. 8, 2024) ....................23

*F.D.A. v. Alliance for Hippocratic Med.*
    602 U.S. 367 (2024) ..................................................................................10, 23

*Fleck & Assocs., Inc. v. City of Phoenix*
    471 F.3d 1100 (9th Cir. 2006) .............................................................................8

*Freedom From Religion Found., Inc. v. Weber*
    951 F. Supp. 2d 1123 (D. Mont. June 25, 2013) ................................................17

*Friends for American Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*
    284 F.3d 575 (5th Cir. 2002) ...............................................................................22

*Havens Realty Corporation v. Coleman*
    455 U.S. 363 (1982) .....................................................................................9, 10

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*
    599 U.S. 166 (2023) ..........................................................................................24

*Heartland Acad. Cmty. Church v. Waddle*
    427 F.3d 525 (8th Cir. 2005) ..............................................................................26

*Hills v. Gautreaux*
    425 U.S. 284 (1976) ..........................................................................................22

*Hindu Am. Found, Inc. v. Kish*
    No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296 (E.D. Cal. Aug. 30, 2023) ........15

*Hodgers-Durgin v. De La Vina*
    199 F.3d 1037 (9th Cir. 1999) ................................................................5

*Holohan v. Massanari*
    246 F.3d 1195 (9th Cir. 2001) ...............................................................8

*Hunt v. Wash. State Apple Advert. Comm'n*
    432 U.S. 333 (1977) ................................................................... *passim*

*Jarvis v. Regan*
    833 F.2d 149 (9th Cir. 1987) .................................................................7

*Jones v. L.A. Cent. Plaza LLC*
    74 F.4th 1053 (9th Cir. 2023) ..............................................................19

*Jones v. Las Vegas Metro. Police Dep't*
    873 F.3d 1123 (9th Cir. 2017) .............................................................26

*Kansas Health Care Ass'n v. Kansas Dep't of Soc. and Rehab. Servs.*
    958 F.2d 1018 (10th Cir. 1992) ...........................................................22

*Keepers, Inc. v. City of Milford*
    807 F.3d 24 (2d Cir. 2015) ..................................................................19

*Knife Rights, Inc. v. Vance*
    802 F.3d 377 (2d Cir. 2015) ................................................................25

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ........................................................................4, 27

*Lavan v. City of Los Angeles*
    693 F.3d 1022 (9th Cir. 2012) ...............................................................8

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014) ...............................................................5

*Lexmark Int'l Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014) ................................................................23, 24, 25

*Longoria v. Pinal Cnty.*
    873 F.3d 699 (9th Cir. 2017) ...............................................................26

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ........................................................5, 6, 10, 19

*Mabe v. San Bernadino Cnty.*
    237 F.3d 1101 (9th Cir. 2001) .............................................................26

*Maya v. Centex Corp.*
    658 F.3d 1060 (9th Cir. 2011) .........................................................18, 19

*Moreland v. Las Vegas Metro. Police Dep't*
   159 F.3d 365 (9th Cir. 1998) ...................................................................................26

*Murthy v. Missouri*
   603 U.S. 43 (2024) ...........................................................................................................5

*Nā Po'e Kōkua v. Bank of Am. Corp.*
   No. 22-00238-JMS-WRP, 2023 WL 2042923 (D. Haw. Feb. 16, 2023) ...........................23

*Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*
   No. 24-2356 (JDB), 2024 WL 4817122 (D.D.C. Nov. 18, 2024) ...........................15

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*
   414 U.S. 453 (1974) .......................................................................................................25

*National Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015) ...........................................................................18, 19

*Nicholson v. City of Los Angeles*
   935 F.3d 685 (9th Cir. 2019) ...................................................................................26

*Nnebe v. Daus*
   644 F.3d 147 (2d Cir. 2011) ...................................................................................25

*Or. Advoc. Ctr. v. Mink*
   322 F.3d 1101 (9th Cir. 2003) ...................................................................................14

*Or. Moms Union v. Brown*
   540 F. Supp. 3d 1008 (D. Ore. 2021) ...................................................................14

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
   861 F. Supp. 2d 1170 (D. Haw. 2012) ...........................................................................21

*Plumhoff v. Rickhard*
   572 U.S. 765 (2014) ...................................................................................................21, 26

*Proctor v. District of Columbia*
   531 F. Supp. 3d 49 (D.D.C. 2021) ...........................................................................6

*Rakas v. Illinois*
   439 U.S.128 (1978) ...................................................................................................26

*Rent Stabilization Ass'n v. Dinkins*
   5 F.3d 591 (2d Cir. 1993) ...................................................................................22

*Rios v. Cnty. of Sacramento*
   562 F. Supp. 3d 999 (E.D. Cal. 2021) ...........................................................................6, 9

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004) ...................................................................................5

*Sherwin-Williams Co. v. Spitzer*
No. 1:04CV185 (DNH/RFT), 2005 WL 2128938 (N.D.N.Y. Aug. 24, 2005)..........................20

*Skaff v. Meridien N. Am. Beverly Hills, LLC*
506 F.3d 832 (9th Cir. 2007) .....................................................................................17

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*
770 F.3d 1282 (9th Cir. 2014) ..............................................................................19, 21

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016)........................................................................................................5

*Stavrianoudakis v. United States Fish & Wildlife Serv.*
108 F.4th 1128 (9th Cir. 2024) .....................................................................................6

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998)..........................................................................................................9

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009)................................................................................................16, 18

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
368 F.3d 1053 (9th Cir. 2004) ....................................................................................14

*Thole v. U.S. Bank N.A.*
590 U.S. 538 (2020).....................................................................................................23

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021)...........................................................................................6, 9, 20

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) ........................................................................................23

*United Food & Com. Workers Union Loc  751 v. Brown Group, Inc.*
517 U.S. 544, (1996)...............................................................................16, 19, 23, 24

*United States v. Baker*
58 F.4th 1109 (9th Cir. 2023) ...........................................................................8, 19, 21

*United States v. Mitchell*
915 F.2d 521 (9th Cir. 1990) ......................................................................................21

*United States v. Texas*
599 U.S. 670 (2023)..................................................................................................9, 10

*Vote.Org v. Callanen*
39 F.4th 297 (5th Cir. 2022) .......................................................................................25

*Warth v. Seldin*
422 U.S. 490 (1975)...............................................................................8, 13, 14, 24

*Weiser v. Benson*
    48 F.4th 617 (6th Cir. 2022) ...........................................................................17

**Constitutional Provisions**
U.S. Const.
    Article III ...........................................................................1, 13, 23, 26
    Amend. IV .........................................................................4, 8, 21, 26
    Amend. XIV ...............................................................................9

Cal. Const.
    Article I, § 7(a) ...........................................................................4
    Article I, § 13 ...........................................................................4
    Article I, § 15 ...........................................................................4

**Federal Statutes**
42 U.S.C.
    § 1983 ...........................................................................1, 21, 24, 25
    § 1988 ...........................................................................26

**Rules**
Fed. R. Civ. P.
    Rule 12(b)(1)...........................................................................1, 4, 14, 27
    Rule 12(b)(6)...........................................................................1, 14, 27
    Rule 17(a)(1)...........................................................................25, 26

**Other References**

15 James William Moore, et al., Moore's Federal Practice § 101.60 (3d. 2024) .........................15

Charles A. Wright et al., Federal Practice & Procedure § 1552 (3d. 2024) ................................25

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on February 13, 2025, at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco," the "City," or "Defendants") will and hereby do move this Court to dismiss all claims brought by Plaintiffs Coalition on Homelessness ("Coalition"), Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, and Teresa Sandoval, against the City pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, the City moves the Court to dismiss the claims brought by the Coalition for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The City brings a motion challenging subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as to Plaintiffs Cronk, Donohoe, Martinez, Frank, and Sandoval because each Plaintiff lacks Article III standing for all causes of action. Alternatively, all claims are moot because Plaintiffs Cronk, Donohoe, Martinez, Frank, and Sandoval are housed such that there is no longer a live controversy before the Court to redress.

The City also brings a motion challenging subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) as to Coalition because Coalition fails to establish organizational standing and associational standing. Alternatively, the City moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) since Coalition fails to state any claim as to itself and cannot bring any associational claims pursuant to 42 U.S.C. § 1983 as a matter of law.

The City bases its motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declarations in support, the pleadings and papers submitted in this action, and such other argument or evidence that may be presented to the Court.

1

2  Dated:  January 2, 2025

3                                        DAVID CHIU
                                         City Attorney
4                                        YVONNE R. MERÉ
                                         EDMUND T. WANG
5                                        KAITLYN MURPHY
                                         MIGUEL A. GRADILLA
6                                        JOHN H. GEORGE
                                         STEVEN A. MILLS
7                                        Deputy City Attorneys

8

9                                  By:  s/Steven A. Mills
                                         STEVEN A. MILLS
10
                                         Attorneys for Defendants
11                                       CITY AND COUNTY OF SAN FRANCISCO; SAN
                                         FRANCISCO POLICE DEPARTMENT; SAN
12                                       FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                                         SAN FRANCISCO DEPARTMENT OF
13                                       HOMELESSNESS AND SUPPORTIVE HOUSING;
                                         SAN FRANCISCO FIRE DEPARTMENT; SAN
14                                       FRANCISCO DEPARTMENT OF EMERGENCY
                                         MANAGEMENT
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Court's Order granting in part and denying in part the City's[1] motion to dismiss the Second Amended Complaint found that the Coalition on Homelessness ("Coalition") lacked organizational standing and sufficiently alleged associational standing on behalf of its members as to the property-based claims. Relying on Coalition's associational standing, the Court declined to consider the City's factual argument that Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, and Teresa Sandoval ("Individual Plaintiffs") lacked standing to bring their property-based claims. Plaintiffs amended their Complaint to add allegations directed toward Coalition's organizational standing. These allegations create more problems than they solve. Not only do the allegations not save the Coalition's previously dismissed theory of organizational standing, they undercut the theory of associational standing that the Court previously identified. This conclusion is also supported by facts obtained in discovery since the City filed its last motion. Because Coalition lacks standing to pursue the narrowed set of property-based claims it alleges in the Third Amended Complaint ("TAC," ECF No. 289), the Court must also consider whether the remaining Individual Plaintiffs have standing. They do not because each and every one of them is housed. Accordingly, the Court should grant the City's motion and dismiss all claims.

## II.    PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS

On September 27, 2022, Plaintiffs commenced this lawsuit and moved for a preliminary injunction. ECF Nos. 1, 9. Following *Grants Pass*, the City filed a motion to dismiss, arguing the allegations in the complaint combined with the evidence developed through discovery demonstrate that the identified individuals in the case do not have standing, that Coalition's organizational standing relied upon overruled law, and that associational standing failed because no identified member had standing. ECF No. 242. On December 4, 2024, the Court acknowledged that it "has not previously analyzed the merits of San Francisco's arguments challenging the standing of any Plaintiff." ECF No. 250 at 3. It found that Castaño (the only member with a specific injury articulated in the complaint)

---

[1] Plaintiffs sued the City and County of San Francisco and five of its departments (collectively referred to as the "City").

and Vaughn did not have standing for any claims, that Sandoval lacked standing for her disability

claims, and that all Plaintiffs failed to establish standing for state-created danger claims. The Court

declined to address the City's arguments to dismiss the Individual Plaintiffs' property claims on

standing grounds because it found that Coalition had associational standing to bring those claims

based on its allegation that Coalition has thousands of members such that it "is relatively clear" there

are members that were injured. The Court granted the City's motion to dismiss with leave to amend

and instructed Plaintiffs to "**plead their best case**." *Id.* at 38.

Plaintiffs filed their TAC on December 18, 2024. ECF No. 289. The complaint now contains

only four property-based claims: violation of the Fourth Amendment and state law corollary under

Article I, Section 13 of the California Constitution (1-2) and violation of the Due Process clause and

corollary under Article I, Sections 7(a) and 15 of the California Constitution (3-4). Only five

Individual Plaintiffs remain: Cronk, Donohoe, Frank, Martinez, and Sandoval. Plaintiffs did not seek

to re-allege the dismissed claims for Castaño and Vaughn. ECF No. 288. As to Coalition, Plaintiffs

added new allegations concerning activities it claims the City interfered with, including its ability to

retain and recruit members, as well as allegations concerning the scope of its membership. TAC ¶¶ 22-

24. Two days after Plaintiffs filed the TAC, Coalition responded to the City's discovery requests and

identified ten members that it plans to rely upon: Castaño, Cronk, Donohoe, Martinez, Shyhyene

Brown, Shanna Couper Orona, Sarah Stephenson, James Reem, "Melodie," and Todd Bryant.

(Declaration of Steven Mills ("Mills Decl."), Ex. A at 9-10.)[2] Coalition has also confirmed that it is

not representing other witnesses that have experienced homelessness in meet and confers. (Mills Decl.

¶ 3, Exs. B-D.) Since none of these individuals can establish standing, the City moves to dismiss.

## III.    LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction" whose power "is not to be expanded by

judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations

omitted). A defendant may seek dismissal for lack of subject matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe*

---

[2] All exhibit references are to the Mills Declaration.

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The City raises facial and factual

attacks on Plaintiffs' allegations of standing in the TAC.

"[I]n a facial attack, the challenger asserts that the allegations . . . are insufficient on their face

to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the

allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. The court "may

review evidence beyond the complaint without converting" a factual attack "into a motion for

summary judgment." *Id.* "The plaintiff bears the burden of proving by a preponderance of the evidence

that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co*., 749

F.3d 1117, 1121-22 (9th Cir. 2014). "Where, as here, the parties have taken discovery, the plaintiff

cannot rest on 'mere allegations,' but must instead point to factual evidence," to survive. *Murthy v.*

*Missouri*, 603 U.S. 43, 58 (2024).

To meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1)

suffered an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be

redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation

omitted). Injury in fact requires a showing of "'*an invasion of a legally protected interest*' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 339 (2016) (citation omitted) (emphasis added). For equitable relief, the

"threatened injury must be *certainly* impending to constitute injury in fact" and "allegations of

*possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)

(cleaned up) (emphasis added). All Plaintiffs lack standing in their own right and the Coalition cannot

remedy that deficiency by resorting to organizational or associational standing.

## IV.   THE INDIVIDUAL PLAINTIFFS DO NOT HAVE STANDING CONSISTENT WITH THE COURT'S PRIOR ORDER.

Standing for equitable relief is demanding because possible future injuries based on

contingencies or speculation are insufficient as a matter of law. *City of Los Angeles v. Lyons*, 461 U.S.

95, 108 (1983); *Clapper*, 568 U.S. at 410; *Lujan*, 504 U.S. at 564; *Hodgers-Durgin v. De La Vina*, 199

F.3d 1037, 1041-42 (9th Cir. 1999). As the Court already correctly recognized,

> "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," *TransUnion*, 594 U.S. at 435 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013)), but "allegations of possible future injury" or an "objectively reasonable likelihood" of future injury are insufficient to confer standing for injunctive relief. *Clapper*, 568 U.S. at 409-10 (emphasis in original). Instead, there must be a "substantial" risk of harm or a "threatened injury must be certainly impending to constitute injury in fact." *Id.* at 409, 414 n.5 (emphasis in original) (cleaned up).

ECF No. 281 at 22. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. And conduct "that occurred several years ago" does not "establish that the threat of future injury is 'actual and imminent,' as opposed to 'conjectural or hypothetical.'" *Stavrianoudakis v. United States Fish & Wildlife Serv.*, 108 F.4th 1128, 1144 (9th Cir. 2024) (citation omitted). In light of the controlling standard, courts find that the fear of being homeless and possibly subjected to a hypothetical deprivation of rights in an unlawful encampment is insufficient. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021); *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *5-6 (D. Minn. July 22, 2024); *Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021). That approach is sound because of the "high degree of immediacy" required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2.

Each of the five remaining Individual Plaintiffs are housed and not subject to active term limits where they reside. (Declaration of Sarah Locher ¶¶ 6b-6f; Declaration of Lisa Rachowicz ¶¶ 4-6.) Furthermore, to the extent individuals receive County Adult Assistance Program ("CAAP") benefits, they have guaranteed access to shelter or can leverage other programs to avoid homelessness. (Declaration of Jason Adamek ¶¶ 2-7.) As such, there is no question that their fears of future injuries are contingent upon acts within their own control. This includes Plaintiffs leaving their housing, rejecting resources available to them to avoid homelessness, declining to live with family or friends, moving to the right of way in violation of valid anti-camping laws following *Grants Pass* (a shift in this case that unsettled the entire premise of the lawsuit), unlawfully keeping property in the right of way, organizing their property such that it cannot be deemed abandoned, and having it destroyed by DPW (as opposed to someone else) without a reasonable constitutional basis to do so and without

1   sufficient notice under the circumstances. The Individual Plaintiffs also have disclaimed any intent to

2   be homeless in the future and disclaim that they are storing property on the street. (Ex. E, Cronk Depo.

3   Tr. at 158:3-159:6, 239:9-14; Ex. F, Martinez Depo. Tr. at 55:20-25, 56:8-9, 100:25-101:16; Ex. G,

4   Vol. I, Frank Depo Tr. at 53:18-54:18, 56:16-57:2; Ex. H, Donohoe Depo. Tr. at 43:21-44:13, 45:11-

5   13, 58: 23-59:1, 59:13-22; Ex. I, Castaño Depo. Tr. at 315:15-317:24).

6        The Court underscored these same contingencies in dismissing Sandoval's ADA claim, finding

7   that "her future injuries are contingent on numerous events, including her leaving her current shelter;

8   moving to the public right of way in violation of anti-camping laws such that the City forces her to

9   move; and being forced to move without the City giving her "adequate notice, time, and

10  assistance" . . . and having her property seized by the City . . . ." ECF No. 281 at 23. The same logic

11  applies here. Since every Individual Plaintiff is housed, their "theory of standing for injunctive relief is

12  based on a 'speculative chain of possibilities.'" *See Clapper*, 568 U.S. at 414 & n.5 (noting that

13  respondents fell short of even the "substantial risk" standard for future injury "in light of the

14  attenuated chain of inferences necessary to find harm")). The Individual Plaintiffs cannot support this

15  Court's jurisdiction and should be dismissed.[3]

16       Even if an Individual Plaintiff had standing (they do not), their claims are moot for the same

17  reasons and must therefore be dismissed. They do not face any concrete harm with respect to the

18  practices complained of because they are housed and have an indoor location to store their property.

19  "A request for injunctive relief remains live only so long as there is some present harm left to enjoin."

20  *Bayer v. Neiman Marcus Grp*., *Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation omitted). "Speculative

21  contingencies afford no basis for finding the existence of a continuing controversy between the

22  litigants as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (quoting *Lee v.

23  Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985)); *Bayer*, 861 F.3d at 864. For all of the

24

25

26  ────────────────

27       [3] The Court separately dismissed each of Castaño and Vaughn's claims because they settled
     and released their claims through earlier small claims actions against the City. (ECF No. 281 at 24.)
28   Frank lacks standing for the same reason since he also settled his claims. (Exs. J-K.)

────────────────

contingent and speculative reasons that the City already highlighted, Plaintiffs fail to overcome mootness.[4]

## V.    COALITION LACKS STANDING.

As the Court's prior order on standing recognized, Coalition can invoke this Court's jurisdiction through either organizational standing for injuries that it experienced in its own capacity or associational standing on behalf of its members. Based on new allegations in the TAC and new facts developed through discovery, Coalition's standing fails under both theories.

### A.    Coalition Has No Standing As A Plaintiff In Its Own Capacity.

#### 1.    Coalition Did Not Lose Any Property Because Of The City's Conduct.

Standing requires a cognizable legal right that can be redressed by the Court. "It often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Coalition admits that the City has not unlawfully seized or destroyed any of its property. (Ex. L at 28:14-4 ["Plaintiff Coalition . . . has not had its property destroyed by Defendants."].) Under traditional Fourth Amendment and Due Process standards, Coalition has no standing as an individual plaintiff. *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (standing for Fourth Amendment claims exists where there is a "reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized") (citing *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027-29 (9th Cir. 2012)); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1104-05 (9th Cir. 2006) (recognizing that corporation had no standing because it did not have a cognizable privacy interest at issue); *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (holding plaintiff lacked standing for due process claim absent injury resulting from the due process violation); *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1173, n.2 (9th Cir. 2024) (recognizing the "standing analysis is the same for organizations as it is for individuals").

Coalition's attempt to allege injuries to "the organization's preexisting core activities" fails as a matter of law because none of Coalition's newly alleged "injuries" are traditionally cognizable in a

---

[4] The availability of adequate legal remedies also obviates the capable of repetition evading review exception in a case like this where damages for an alleged loss are available. *See Lyons*, 461 U.S. at 109 (finding damages claim is an "adequate remedy at law" and does not "evade" review).

Fourth Amendment or Due Process claim for injunctive relief. A cognizable concrete injury is "'traditionally' [one] recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (citation omitted). And the Supreme Court has "stressed that the alleged injury must be legally and judicially cognizable" which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (cleaned up). The failure to allege any cognizable Fourth Amendment or Due Process injury that can be redressed underscores that Coalition's claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction," and therefore must be dismissed for lack of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted); *Rios*, 562 F. Supp. 3d. at 1010, 1013, 1015 (dismissing Fourth and Fourteenth Amendment claims with warning since organization's property was not taken and process was no denied).

### 2. Coalition's New Allegations Do Not Support Organizational Standing.

Lacking any property destruction on its own behalf, Coalition alleges a new conclusory theory that the City has harmed Coalition's pre-existing core activities.[5] Specifically, the TAC alleges that the City injures Coalition by "[p]reventing the Coalition from helping unhoused people and members navigate the homeless services system"; "[d]epleting the Coalition's supply of basic necessities more quickly"; "making it harder for the Coalition to do its public education work"; "[h]arming the Coalition's core activities of building coalitions of unhoused people . . . by causing a reduction in participation of homeless people in Coalition's sponsored events"; and "[u]ndermining the Coalition's ability to provide leadership and advocacy training services to unhoused people so they can effectively participate in coalition-building and advocacy." (TAC ¶¶ 22-24.) This fails for two reasons.

First, the failure to allege any traditionally-recognized injury as described above renders *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), as well as *Arizona Alliance*'s "pre-existing core activities" standard derived from *Havens*, inapplicable. *Havens* is "an *unusual* case" that

---

[5] Despite the Court's prior order finding that Coalition's diversion of resource allegations were insufficient as a matter of law (ECF No. 281 at 18-19), Coalition still alleges the theory. (TAC ¶¶ 168-178). To the extent Coalition intended to re-new this theory, it fails for the same reasons.

should not be extended "beyond its context." *F.D.A. v. Alliance for Hippocratic Med.*, 602 U.S. 367,395 (2024) (emphasis added). That context involved "whether a housing counseling organization . . . had standing to bring a [statutory] claim under the Fair Housing Act against" a business that provided false information to the counseling organization that directly impaired its ability to provide counseling services. *Id.* The claim was for statutory damages—not the systemic injunctive relief Coalition seeks here on constitutional claims. *Havens*, 455 U.S. at 377. Notably, the FHA conferred "on all 'persons' a legal right to truthful information about available housing"—meaning the organization had a redressable statutory cause of action for a cognizable injury directly caused by false information. *Id.* at 373. Unlike *Havens*, Coalition has no applicable statutory or constitutional right and has no direct injury related to that right that is redressable. "A 'telling indication of the severe constitutional problem' with [Coalition's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." *Texas*, 599 U.S. at 677 (citations omitted).

Second, even assuming some injury to pre-existing core activities can be sufficient outside of *Havens*' unusual statutory context, the TAC's allegations fail to sufficiently allege organizational standing. Three of the five alleged activities—"public education," "advocat[ing] and lobby[ing] for legislation," and "advocacy training" to engage in "advocacy" (TAC ¶ 24(c)-(e))—are precisely the type of functions that do not count as "activities" as a matter of law. *Ariz. All.,* 117 F.4th at 1177 (explaining "public advocacy" and "public education" do not support organizational standing).

As to the remaining activities, the TAC does not sufficiently allege traceability or redressability. Taken to its logical conclusion, Coalition is requesting that the City stop dispersing encampments so that Coalition can leverage unlawful encampments to build its base and provide more services (including passing out tents). (*See, e.g.*, TAC ¶ 24.) But displacement is legal under valid anti-camping laws following *Grants Pass*, and there is no authority suggesting that Coalition's continued resistance confers standing. Moreover, traceability and redressability are also "substantially more difficult to establish" in cases like this where Coalition suggests that it may obtain more members and provide more services where that "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," to become a member or accept services in the first place. *Lujan*, 504

U.S. at 562 (citations omitted); *Hippocratic Med.*, 602 U.S. at 383 (recognizing that plaintiffs may not rely upon "distant (even if predictable) ripple effects"). Nor can injuries supposedly caused by the seizure of other peoples' property satisfy Coalition's burden because the Bag & Tag policy contemplates the City temporarily taking the same items lawfully. Plaintiffs agree that the Bag & Tag policy is constitutional and permits the seizure and removal of property (such as phones and computers) so long as the property is appropriately handled (*i.e.* bagged and tagged or disposed of if it meets certain criteria). Coalition's conclusory allegations do not plausibly establish that the requested relief (compliance with the Bag & Tag policy) will redress the alleged harms since even if devices were properly bagged and tagged, Coalition would still face the same alleged injury if members did not have access to those devices while they were bagged and tagged.

Finally, the TAC fails to "plead *facts* showing that [Coalition's] core activities are directly affected by the [City's] conduct." *Ariz. All*, 117 F.4th at 1172 (emphasis added). Instead, it rests on conclusory and unsupported allegations, most of which rely on the actions or responses of hypothetical third parties. For example, Coalition's alleges, without any supporting facts or examples, that people's fear of losing property and shifted priorities have caused them to stop engaging with Coalition's advocacy and education activities (TAC ¶ 24(c)-(d)) and that after losing property, they come to Coalition to get supplies (*Id.* ¶ 24(b)). Nor does the TAC provide a single example of a "Homeless Verification" form being unlawfully destroyed (or even allege that occurred), a Coordinated Entry application delayed or affected by the City's unlawful conduct, or a single "basic necessity" that has been prematurely depleted. This is insufficient to satisfy plausibility. Organizational standing fails.

### 3.  Evidence Contradicts The Organizational Standing Allegations.

In addition to the pleading deficiencies, the TAC's allegations are undermined by the record. Coalition publicly holds itself out as an advocacy organization fighting for human rights of the homeless for decades. (Exs. M-O; Cronk Depo. Tr. at 93:7-17.) As to their diversion of resources, Coalition represents that it diverted resources from its core mission in 2021 to combat the City's practices and that the City's practices prevented Coalition from building up its membership. (TAC ¶¶ 24, 168-178.) To the contrary, the evidence shows the City financially supported Coalition's efforts to monitor and document Bag & Tag operations well before 2021 and that the Coalition gained

members by messaging around the City's conduct. Coalition was *already* monitoring the City's

alleged property destruction as early as 2016 according to Coalition's own annual report. (Ex. M at 2,

4, 6; Ex. N at 2, 6; Cronk Depo. Tr. at 103:21-104:5.) The City financially sponsored Coalition's

Stolen Belonging project through an art grant, with the goal of monitoring "sweeps" and having "50%

of participants get more involved in" Coalition's campaigns. (Ex. P at 1, B-1.) By 2019, Coalition's

Board of Directors voted to ███████████████████████████████████████

██████████████████████████████████ (Ex. Q.) It is apparent Coalition's central mission

has always been advocacy against the City, including monitoring property destruction and litigation.

Coalition's own strategy document ████████████████████████ from 2021 also

underscores that the organization ████████████████████████████████████████

████████████████ (Exs. R-S.) That strategic focus belies a suggestion that the City interfered

with any core activity.[6]

Furthermore, Coalition's allegations that the City "make[s] it much more difficult for the

Coalition to stay in contact with or to maintain and secure new active members" (TAC ¶¶ 24, 24a) is

unsupported by the record, which shows Coalition's own strategic decision-making and lack of

documentation has led to the variability of its membership. Coalition's Executive Director admitted in

2021 that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ (Ex. U, COH00873981-

82.) And dialogue in 2020 among Coalition's Human Rights Workgroup made clear that homeless

people ██████████████████████████████████████████████████

██████████████████████████████████ (Ex. V, COH00897441 at 441.) Internal and external factors

are also divisive. An evaluation of Coalition's work in 2022 shows ██████████████████

████████████████████████████████████████████████████

_____

[6] Coalition's claim that the City has affected the Street Sheet newspaper by decreasing participation and submission (TAC ¶ 24(c)) is directly contradicted by Coalition's 2022 draft annual report boasting that Coalition experienced an ████████████████████████████████ ██████████████████ (Ex. T, COH00738209.)

1  ██████████████████████████████████████████████████████████

2  ███████ (Ex. W, COH00742780-86, 742800-841.) Records also underscore myriad organizational

3  challenges, including ████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████ (Ex. X, COH00714800-801.)

6          The suggestion that Coalition cannot connect with individuals on the street because of City-

7  sponsored displacement ignores that there has been a reduction in homelessness ███████████

8  ███████ (Ex. Y, COH01262155.) Coalition's claimed members were not invisible on the streets

9  either. Take Castaño for instance. He illegally camped in the open for weeks with a market and self-

10  created safe needle exchange. (Castaño Depo. Tr. at 205:11-25; Exs. Z, AA.) A public Google search

11  identified Cronk and Donohoe's encampment, authenticated by Cronk as demonstrating where she

12  lived for months, and where Coalition found them to make a declaration. (Cronk Depo. Tr. at 221: 9-

13  223:23, 225:8-11, 225:25-226, 230:8-10, 241:17-243:5, 244:7-9; Ex. BB-CC; Donohoe Depo. Tr. at

14  29:14-23, 30:21-31:1.) While the TAC revolves around the contention that phone and emails are the

15  primary means of communication with members (TAC ¶ 24) Coalition's own documents refute this.

16  Again, Coalition ████████████████████████████████████████████

17  ███████████████████ (Ex. W, COH00742780-86.) Coalition's allegations also ignore the realities of

18  third parties not before the court being able to pay for, keep, and charge a phone, none of which is the

19  result of the challenged conduct. Depositions show that homeless individuals often obtain more than

20  one phone from federal programs and often cycle through them because they break, get disconnected,

21  or get stolen. (Castaño Depo. Tr. at 125:24-126:18, 127:2-14; Vol. I, Frank Depo Tr. at 62:3-63:9,

22  64:16-18; Martinez Depo. Tr. at 27: 12-19, 28:6-23, 35:11-36:5, 36:12-16, 198:18-199:8.) Given the

23  record, Coalition simply cannot carry its standing burden.

24          **B.      Coalition Has No Associational Standing.**

25          Coalition cannot save its claims through associational standing having failed to demonstrate

26  organizational standing. The Constitution does not establish any rule—let alone a bright line rule—

27  that an association can *always* sue on behalf of its members. Article III standing "normally bars

28  litigants from asserting the rights or legal interests of others[.]" *Warth*, 422 U.S. at 509. This rule

ensures that "plaintiffs possess such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional [or statutory] questions." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004) (cleaned up). In *Warth*, the Court recognized that "[e]ven in the absence of injury to itself, an association *may* have standing solely as the representative of its members." 422 U.S. at 511 (emphasis added). To have associational standing, an organization must have members. And even then, organizations *may* sue on behalf of members only "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Coalition lacks a sufficient membership to assert associational standing. It also fails at the first and third prongs of the *Hunt* test. It also cannot state these claims as a matter of law under Rules 12(b)(1) or 12(b)(6).

### 1. Coalition Cannot Carry Its Burden At The First Prong.
#### a. Coalition Lacks The Necessary Indicia Of Membership.

"Implicit in the first prong of this test is the requirement that an organization must generally have 'members' to bring suit on their behalf." *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Ore. 2021). Although formal membership is not required, the organization must be "sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1098 (9th Cir. 2021) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)). To establish the requisite indicia of membership, courts evaluate whether purported members: (i) elect the organization's leadership, (ii) serve as the organization's leadership, and (iii) finance the organization's activities, including the costs of litigation. *Hunt*, 432 U.S. at 344-45.

In the TAC, Coalition alleges that it has had "thousands" of members that include "front line service providers, staff, and other advocates" *in addition to* the "unhoused people or people with lived experience of homelessness who supervise, direct, and lead the Coalition's work." (TAC ¶ 22.) However, Coalition's Executive Director has admitted that Coalition does not █████████████

1    █████████████████████████████████████████████████████████ (Ex.

2   U.) Thus, Coalition must satisfy *Hunt*'s indicia of membership test. It fails to do so because its

3   interrogatory responses fail to identify any facts in support of its contention that it can represent

4   individuals. (Ex. A at 10-11.) Instead, Coalition's ████████████████████████████

5   ████████████████████████████████████████████████████████████

6   (Ex. DD, COH01508327.) Furthermore, Coalition's ███████████████████████

7   ████████████████████████████████████████████████████████████.

8   (Ex. EE, COH00733808.) ████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████ (*Id.*) It even obtained grant funding from the City to develop foundation for this lawsuit,

11  including obtaining declarants. (Ex. P; *see, e.g.*, ECF No. 9-6 at 3.) On-and-off-again "members" such

12  as Cronk, Martinez, and Donohoe only provided volunteer services to the organization, have never

13  participated in any meetings with the Coalition, have not voted on its activities, and are unaware of

14  any rights they have. (Cronk Depo. Tr., 94:15-17, 96:18-97, 98:9-15, 98:24-103:6; Donohoe Depo. Tr.

15  at 198:24-200:12, 201:7-202:12; Martinez Depo. Tr. at 115:2-25, 116:20-119:16). This passive

16  involvement cannot support standing. *See, e.g.*, *Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*, No.

17  24-2356 (JDB), 2024 WL 4817122, at *2 (D.D.C. Nov. 18, 2024) (recognizing that "a platitude like a

18  claim to serve as a 'voice' for [the member group] falls far short of showing that any particular

19  [member] can actually influence . . . activities, and the invitation to share stories . . . [is] not enough

20  for membership"); *Hindu Am. Found, Inc. v. Kish*, No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296,

21  at *5-7 (E.D. Cal. Aug. 30, 2023) (dismissing complaint where constituency was large and influence

22  of constituency was not clear); *see also* 15 James William Moore, et al., *Moore's Federal Practice* §

23  101.60 (3d ed. 2024) ("[A]n organization . . . may not claim associational standing merely by virtue of

24  the fact that it represents, or claims to represent, the interests of a group of people.").

25       Coalition's bid for associational standing is also troubling. In a public██████████████

26  ████████████, Coalition ███████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1   ▓▓▓▓▓▓▓▓▓ (Ex. FF, COH00974421.) This strongly suggests an intent to manufacture standing

2   where membership does not exist. Records show that LCCR and the ACLU ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4   ▓▓▓▓▓▓▓▓▓. (Exs. FF-GG) In 2021, LCCR ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Exs. HH-II.) Coalition fails

6   to establish the indicia of membership required under *Hunt* and its bid for standing fails.

**b.      Coalition's Identified Members Lack Standing.**

7

8           Even if Coalition is a qualifying membership organization for purposes of associational

9   standing, Coalition must show "that its members, or any one of them, are suffering immediate or

10  threatened injury as a result of the challenged action of the sort that would make out a justiciable case

11  had the members themselves brought suit[.]" *United Food & Com. Workers Union Loc. 751 v. Brown*

12  *Group, Inc.*, 517 U.S. 544, 552 (1996) (cleaned up). Coalition "must show that a member suffers an

13  injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision."

14  *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187,

15  1194 (9th Cir. 2013) (citations omitted). An organization must make "*specific* allegations establishing

16  that at least one identified member had suffered or would suffer harm." *Id.* (emphasis added) (quoting

17  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). The "requirement of naming the affected

18  members has never been dispensed with in light of statistical probabilities, but only where *all* the

19  members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498-99

20  (emphasis in original). Coalition cannot carry this burden.

21          New evidence produced following the Court's prior ruling proves that the Coalition's

22  identified members lack standing. Coalition responded to jurisdictional discovery identifying the

23  members that it claims support standing in the case. (Ex. A at 9-10.) Remarkably, despite Coalition's

24  allegation that it has had thousands of members and dozens of active members, it now identifies a

25  mere ten, each of whom lack standing or are irrelevant to the standing inquiry: Castaño, Cronk,

26  Donohoe, Martinez, Brown, Couper Orona, Stephenson, Reem, "Melodie," and Bryant.

27          Focusing first on individuals identified as members in the TAC, the Court already held that

28  Castaño does not have standing because he released his claims, so Coalition cannot base standing on

him. As for Couper Orona and Brown, the TAC alleges no plausible facts supporting an injury that confers standing for the requested injunctive relief to satisfy the heightened degree of immediacy for conduct within their control. (*See* TAC ¶ 181). Nor could they. Neither has claimed to be unsheltered or presently subject to the City's alleged practices in sworn declarations. ECF No. 9-6 at 8-11, 58-63. Indeed, Brown was ███████████████████████████████████████████████████████████
███████████████████████████████████████████████ Couper Orona has also been housed. (Cronk Depo. Tr. at 127:15-24.) Brown and Couper Orona do not have standing. Since the members identified by Coalition lack standing, its claim fails. *Associated Gen. Contractors*, 713 F.3d at 1194; *Weiser v. Benson*, 48 F.4th 617, 623-24, n.4 (6th Cir. 2022).

Coalition erroneously goes beyond its pleading to establish standing through new "members." *See supra*, IV. Setting aside that these individuals are outside of the TAC, Cronk, Donohoe, and Martinez[7] do not have standing because they are housed and cannot establish that their injuries are certainly impending to justify systemic injunctive relief. (*See supra*, IV.) Coalition also cites to depositions asserting they are members without pointing to any other justification within Coalition's control, including that those individuals were members when this case was commenced, given that this is Coalition's burden. (Ex. A at 9-10.) Stephenson (who is housed) and Reem (who is unhoused) became members *after* this case was commenced and are therefore irrelevant to the standing inquiry since Coalition needed to have standing when it filed suit.  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007); *3C, LLC v. Rokita*, No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) (holding that entity that was not a member when the case commenced could not support associational standing); *Freedom From Religion Found., Inc. v. Weber*, 951 F. Supp. 2d 1123, 1131 (D. Mont. June 25, 2013) (rejecting information of members that postdate filing of the lawsuit). Bryant—who provided testimonials in connection with the Stolen Belonging

---

[7] Courts cannot consider theories not raised in a complaint. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."). Donohoe was not a member in connection with the last motion and counsel represented Sandoval was. These inconsistencies suggest an intention to manufacture standing where none exists. (*Compare* ECF Nos. 247 at 4:27-6:10, 247-5 ¶ 12, 247-3 *with* Ex. A at 9-10; *see also* Exs. FF, COH00974421, GG, II.) They also make mounting a fair defense needlessly more difficult.

project (ECF No. 9-6 at 3)—was ███████████████████████████ is not

subject to an injury that is certainly impending, and is not presently accessible based upon a meet and

confer with his *outside* counsel. ██████████ Mills Decl. ¶ 40.) The final member "Melodie"

does not have a full name and is not on Coalition's disclosure and likely trial witness list. (Ex. A at 9;

Ex. JJ.) Notably, Coalition passively verifies that she "has been unhoused" which does not go as far as

saying she *is* unhoused—a dispositive distinction given that Coalition *did* identify James Reem as

being unhoused. (Ex. A at 9-10.) The claimed injuries for Stephenson, Reem, and Melodie have not

been disclosed in written discovery and are no basis for a claim. (Ex. L at 18-22.) Unable to satisfy its

burden to identify a member with standing, the Court should reject Coalition's claim.

      The City anticipates that Coalition will argue that its allegation that it has had thousands of

members is enough given the Court's prior order relying upon that allegation. However, Coalition

plead its way out of doing so. For the first time in the TAC, Coalition alleges that its members include

"front line service providers, staff, and other advocates" in addition to the "unhoused people or people

with lived experience of homelessness who supervise, direct, and lead the Coalition's work." (TAC ¶

22.) This new allegation confirms that Coalition consists of myriad housed individuals who are not all

subject to the City's practices. Since not *all* of Coalition's members are equally injured, *Summers*

requires that Coalition allege and identify a specific injury to a member. *Summers*, 555 U.S at 498-49.

The TAC's request for systemic relief does not change the result. Associations "do not have standing

to seek systematic relief extending far beyond the injuries actually incurred by those members. . . . To

hold otherwise would also seemingly allow [associational plaintiffs] to end-run the requirements of

Federal Rule of Civil Procedure 23 through which Congress has already set-forth the prerequisites for

those seeking broad based, class-wide relief." *Bone v. Univ. of N.C. Health Care Sys.*, 678 F. Supp. 3d

660, 704 (M.D.N.C. 2023). Understanding its burden, Coalition *did* identify members in the complaint

and now through jurisdictional discovery. Those members lack standing compelling that this case be

dismissed.

      Reliance on *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) and

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) where a factual attack has been made would be

error. *See Associated Gen. Contractors*, 713 F.3d at 1194 (requiring identification).[8] The failure to identify a member with standing through facts and allegations is dispositive.

### 2.      Coalition Cannot Carry Its Burden At The Third Prong.

The third prong dictates that associations have standing only when "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. It also concerns "matters of administrative convenience and efficiency." *United Food*, 517 U.S. at 557. "The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing . . . ." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (citing *Lujan*, 504 U.S. at 561). Dismissal is required here because Coalition's attempt to raise the constitutional claims of its members cannot be squared with the substance of those causes of action and the limits of separation of powers. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (dismissing claim where association "cannot satisfy the third requirement").

#### a.      Coalition Does Not Add Efficiency Or Convenience.

New facts confirm that Coalition's presence in this case does not add administrative efficiency and convenience and that dismissal is justified. In denying the City's last motion to dismiss, the Court relied upon Coalition's representation that "Coalition's participation likely increases litigation efficiency due to its ability to assist in organizing discovery and facilitating participation of witnesses, many of whom are unhoused or marginally housed and may be more difficult to contact." (ECF No. 281 at 12.) Mere hours later, Coalition shifted direction before the Court. Specifically, when the City clarified that it may move for substituted service since it has had limited success serving non-party members and witnesses, counsel for Coalition confirmed that they do not represent those non-party members and witnesses. (Ex. KK at 13:1-14:17.) In an unsuccessful attempt to save the case by

---

[8] The viability of those two cases has also been questioned. *Maya* declined to apply *Twombly* and *Iqbal*'s plausibility requirement. *Maya*, 658 F.3d at 1068. But *Maya* has been disavowed in a precedential opinion in favor of the plausibility requirement. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n.1 (9th Cir. 2023) (holding that *Maya* "is . . . no longer good law"). Because *Cegavske* relies upon *Maya* for the legal standard, it employed a liberal "relatively clear" standard rather than the controlling plausibility standard. In light of the standing and pleading requirements, the "continuing vitality of *Cegavske* is an open question." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1116 (9th Cir. 2024) (Baker, J., concurring).

manufacturing prudential standing where it did not exist, Coalition claimed that they *may* now be able to *try* to facilitate service with no guarantee that they can do so just months away from the fact discovery cut-off after more than two years of litigation. In good faith, the City has attempted to confer with Coalition following the hearing and Coalition's counsel accepted service for three of the 50 witnesses they have identified in this case that have experienced homelessness: Stephenson, Reem, and Shelsey Wiley (who is not a stated member or likely trial witness). (Exs. B-D.) Notably, Couper Orona—one of the three members identified in the TAC—posted a photograph with counsel during the pendency of the City's last motion yet neither Coalition nor its counsel has represented her or facilitated service on her. (Exs. LL; Exs. B-D.) Coalition cannot use membership as a "sword and shield." *Sherwin-Williams Co. v. Spitzer*, No. 1:04CV185 (DNH/RFT), 2005 WL 2128938, at *10 (N.D.N.Y. Aug. 24, 2005). Facilitating service on six percent of the persons identified on their initial disclosures is a far cry from efficient and convenient. (*See* Ex. JJ at 3-6.)

Given the conceded lack of representation, it is readily apparent that Coalition had no authority to represent those members and witnesses when this case commenced. The law is clear, "*plaintiffs*" and not defendants "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC*, 594 U.S. at 431 (emphasis added). Coalition has failed its burden and its claims about the scope of its representation has cost the City considerable time and effort. It also risks substantial prejudice if the City cannot challenge the veracity of the accusations against it. This need is imperative because Coalition recently produced guidance materials used to ████████████████ that expressly counseled against ███████████████████████████████ ████████████████████ (Ex. MM.) And one Plaintiff pleaded the fifth as to fraud in connection with a government loan application, undermining his declaration (Ex. NN, Volume II, Frank Depo. Tr. at 202:19-208:24, 216:23-217:5, 218:5-20, 226:11-21), another withdrew a declaration pending before the Court following deposition (ECF No. 257), a third disclaimed that his declaration was even prepared for this litigation (Castaño Depo Tr. at 187:1:191:15, 281:10, 281:14-25, 291:7-292:8), and a fourth ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ Prudence compels dismissal.

**b.    Individual Member Participation Is Required.**

Each of the remaining claims requires participation of individual members to prove underlying constitutional violations. The Bag & Tag policy permits the City to discard an item under certain circumstances, for example when it is abandoned, when it is co-mingled with hazardous material, or when it is soiled. (ECF No. 65 at 9.) For Coalition to satisfy its burden whether a particular member's rights were actually violated (and that the member has standing), members must be involved (through depositions, document subpoenas, and trial testimony) so the parties can inquire into what property they claim was destroyed and its condition, whether they abandoned their property or consented to it being discarded, any health and safety hazards that would factor into items being bagged and tagged, and whether they received notice or sufficient time to move under the particular circumstances they experienced. Since Plaintiffs do not challenge any policy on its face and have admitted that the Bag & Tag policy is constitutional (TAC ¶ 237; ECF No. 65 at 42:27-28), their assertion that the City has a practice of destroying belongings in violation of its written policy means individual involvement is required to determine these personal rights where items can be lawfully disposed of. *Plumhoff v. Rickhard*, 572 U.S. 765, 778 (2014) (recognizing that Fourth Amendment rights are personal rights for 1983 claims); *Baker*, 58 F.4th at 1116 n.1 (standing looks at the possessory interest); *United States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (recognizing due process rights are personal). These types of inquiries are not tangential; they are at the heart of Plaintiffs' claims. And "multiple variations, specific to individual members" of this kind are "not susceptible to judicial treatment as 'systematic policy violations that . . . make extensive individual participation unnecessary.'" *Spinedex Physical Therapy USA Inc.*, 770 F.3d at 1293; *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 861 F. Supp. 2d 1170, 1192 (D. Haw. 2012) (evaluating due process violations required individual participation).

Ultimately, these individualized inquiries are far removed from a pure facial legal challenge to a statute contemplated in *Hunt* to justify associational standing. The fact that this litigation only seeks injunctive relief does not change the result. *See Spinedex Physical Therapy USA Inc.*, 770 F.3d at

1293. "The relief sought is only half of the story. . . we also must examine the claims asserted to determine whether they require individual participation." *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993). "Indeed, such a rule [allowing associational standing to exist in all cases seeking injunctive relief] is plainly precluded by the Court's holding in *Hunt*, which requires the Court to look not only at the type of relief requested but also at the nature of 'the claim asserted' to determine whether member participation is required . . . ." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, No. 14-cv-953 (GK), 2016 WL 7376847, at *6 (D.D.C. Dec. 19, 2016); *see also Friends for American Free Enterprise Ass'n v. Wal-Mart Stores, Inc*., 284 F.3d 575, 577 (5th Cir. 2002) (finding that fact-specific tort claims required participation of members even though the case sought injunctive relief); *Kansas Health Care Ass'n v. Kansas Dep't of Soc. and Rehab. Servs*., 958 F.2d 1018, 1022 (10th Cir. 1992) (reversing associational standing premised on the injunctive relief sought because it ignored the factual inquiries necessary to establish the claim). Because Coalition is seeking systemic relief, it does not have standing "beyond the injuries actually incurred by those members." *Bone*, 678 F. Supp. 3d at 704; *California v. Azar*, 911 F.3d 558, 582-83 (9th Cir. 2018) ("Injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." (alterations and quotation omitted)); *see also Hills v. Gautreaux*, 425 U.S. 284, 293-94 (1976)  ("Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." (citations and internal quotation marks omitted)). Establishing the scope of the members' genuine constitutional injuries to support systemic relief is unavoidable to satisfy due process for the City's defense. If individual members do not testify to establish their own injuries, the Court will not be able to rule out that the destruction of their property was consistent with the Bag & Tag policy.

This case's status as a pattern and practice case further confirms the individual members' participation is required. To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). With pattern and practice claims, such as the one at issue here, "[l]iability . . . may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out

policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). To show the alleged

pattern and practice, Coalition has identified that it plans to rely on its claimed members—each of

whom must necessarily participate in discovery and trial.

           i.        **The Associational Claims Fail As A Matter Of Law.**

The Supreme Court has acknowledged that its jurisprudence has complicated standing inquiries

making it difficult for courts and litigants. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020)

("Courts sometimes make standing law more complicated than it needs to be."). Prudential labels and

their impact on standing limits are one of those areas that has not been defined with precision. In a

unanimous opinion, the Supreme Court highlighted the areas where prudential doctrine has been

litigated. "[W]e have adverted to a 'prudential' branch of standing, a doctrine not derived from Article

III and 'not exhaustively defined' but encompassing (we have said) at least three broad principles:

"'the general prohibition on a litigant's raising another person's legal rights, the rule barring

adjudication of generalized grievances more appropriately addressed in the representative branches,

and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law

invoked.'" *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citation

omitted). The Court went on to hold that "upon closer inspection," prudential labels have been "inapt,"

and noted that while "limitations on third-party standing are harder to classify," "consideration of t[he]

doctrine's proper place in the standing firmament can await another day." *Id.* at 127, n.3. This is

relevant to the pending motion because associational standing is a "strand" of representative standing.

*United Food*, 517 U.S. at 557; *see also Hippocratic Med.*, 602 U.S. at 398 (Thomas, J., concurring)

("Associational standing, however, is simply another form of third-party standing."); *Nā Po'e Kōkua

v. Bank of Am. Corp.*, CIV. No. 22-00238-JMS-WRP, 2023 WL 2042923, at *3 (D. Haw. Feb. 16,

2023) (same); *Cmty. Fin. Servs. Ass'n of Am.,* 2016 WL 7376847 at *14 (recognizing "the fact that

both associational and third party standing have been labelled prudential in the past, does not establish

what will happen in the future, post-*Lexmark*"); *Dayton Area Chamber of Commerce v. Becerra*, Case

No. 3:23-cv-156, 2024 WL 3741510, at *6-7 (S.D. Ohio Aug. 8, 2024) (finding changes in the already

"scarce" case law support individual participation being required).

Since *Lexmark*, the Ninth Circuit has interpreted it as "suggesting that, in many cases, 'third-party standing' is really an issue of whether the party has a cause of action under a statute, which in turn depends in part on the zone-of-interests test." *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 841 (9th Cir. 2022)  (citing to *Lexmark*, 572 U.S. at 127 & n.3); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 360 (2d Cir. 2016) ("*Lexmark* teaches that we cannot expand the congressionally-created statutory list of those who may bring a cause of action by importing third-party prudential considerations."). The "background presumption (in the statutory context, about Congress's intent)" is "that litigants may not assert the rights of absent third parties." *United Food*, 517 U.S. at 557; *Warth*, 422 U.S. at 501 (recognizing that "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others"). The foregoing demonstrates that courts analyze the specific cause of action that Congress fashioned to see if it authorizes a representational suit as a matter of law. That result is consistent with the leading associational standing cases setting forth associational standing. For instance, in *United Food* the union was "ostensibly authorized to sue" on behalf of the union workers under the WARN Act. *United Food*, 517 U.S. at 546 (citation omitted). Similarly, in *Hunt*, the Washington State Apple Advertising Commission was created by statute and "charged with the statutory duty of promoting and protecting the State's apple industry." *Hunt*, 432 U.S. at 336-37.

Thus, in order to invoke associational standing following *Lexmark*, Coalition must establish that "the statute grants [it] the cause of action that [it] asserts." *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 196-97 (2017).  "Whether a plaintiff comes within 'the zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127 (cleaned up). By its plain terms, Section 1983 only provides a remedy and makes a defendant "liable to the party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. As the Supreme Court has recognized, "we have consistently refused to read § 1983's 'plain language' to mean anything other than what it says." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 177 (2023) (citation omitted). Based on the plain text, an "organization does not have standing to assert the rights of its members in a case

brought under 42 U.S.C. § 1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973) ("Neither [the] language nor the history . . . [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members."); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (citation omitted) ("[A]n organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983."); *Vote.Org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022) (rejecting organization's attempt to raise the rights of third parties under Section 1983 and holding that the "textual argument is powerful and [] response weak"). Indeed, Coalition is the plaintiff, not its members, meaning the City will be liable to Coalition despite the statute's unambiguous command creating liability against the individual deprived of a constitutional right. Under those circumstances, the parties deprived of constitutional rights that the City "shall be liable to" are also not the proper real parties in interest to satisfy Federal Rule of Civil Procedure 17(a)(1). *See* Fed. R. Civ. Proc. 17(a)(1) (establishing that "[a]n action must be prosecuted in the name of the real party in interest" absent enumerated exceptions in the rule); Charles A. Wright et al., Federal Practice & Procedure, § 1552 (3d ed. 2024) ("Absent statutory authority, however, an association is not the appropriate party for bringing suit to assert the personal rights of its members."). Based on traditional statutory interpretation of the plain language, Coalition's claim fails.

Barring associational claims in the context of Section 1983 conforms to historical practice. The Supreme Court did not develop the modern associational standing test until nearly a century after Section 1983 became law. Congress was not legislating against the backdrop of a doctrine that did not exist when it provided an exclusive cause of action to the person injured. Coalition will have no text and history-based argument to prevail because one does not exist. Since the associational claims are barred by statute, Coalition cannot state associational standing as a matter of law. *Lexmark*, 572 U.S. at 128 (recognizing that "a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied"); *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) (acknowledging "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute").

The Fourth Amendment claim also underscores additional tension. The City understands that the Court rejected the City's argument that Fourth Amendment rights are personal rights that cannot be vicariously asserted by Coalition. To avoid any waiver for appeal, the City renews its argument. By its terms, the Fourth Amendment guarantees "[t]he right of the people to be secure in *their* persons, houses, papers, and effects." (emphasis added). In turn, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S.128, 133-34 (1978) (citation omitted); *Plumhoff*, 572 U.S. at 778 (applying the same rule in 1983 actions). A litigant cannot raise the Fourth Amendment violations of an absent individual who is not a party to the proceedings. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 (9th Cir. 2019); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017) (holding that the wrong party was named where Fourth Amendment rights are personal rights). There are narrow rule and statutory based exceptions. *See, e.g.*, Fed. R. Civ. Proc. 17(a)(1) (enumerating exceptions to the real party in interest requirement); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (acknowledging that survivors of a decedent may assert claims on the decedent's behalf under 42 U.S.C. § 1988 and recognizing that the suing party bears the burden showing it applies). Coalition's efforts to litigate the claims of its members leads to inconsistent constitutional result. A family member cannot bring a claim on behalf of someone as a matter of law because Fourth Amendment rights are personal rights, *see, e.g.*, *Longoria v. Pinal Cnty.*, 873 F.3d 699, 711 (9th Cir. 2017); *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1111 (9th Cir. 2001); however, an advocacy organization can for the same claim. Coalition has not squared that result with the Fourth Amendment or constitutional limits of Article III rooted in separation of powers.[9]

---

[9] The City addresses two cases that were not briefed. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005) based its determination that Fourth Amendment claims can be raised by associations on the grounds that Fourth Amendment rights are personal rights that cannot be raised vicariously within the context of the exclusionary rule and not in civil cases. However, the Supreme Court has disagreed. *Plumhoff*, 572 U.S. at 778. *Am. Fed's of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, n.1 (11th Cir. 2013) did not question the determination that a Union had standing. The district court below found that the Union had standing in its own right for the now rejected diversion of resources theory and rejected the argument the City raises concerning personal rights in the context of that theory. *AFSCME v. Scott*, 857 F. Supp. 2d 1322, 1327-39 (S.D. Fla. 2012).

Because there is ambiguity concerning the viability of prudential considerations in a 12(b)(1) standing analysis, the City alternatively requests dismissal of Coalition's associational claim for failure to state claim under 12(b)(6). There is no prejudice to Coalition since it carries the burden. *Kokkonen*, 511 U.S. at 378 ("It is to be presumed that a cause lies outside this limited jurisdiction. . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)).

## VI.    CONCLUSION

The City requests that the Court grant its motion without leave to amend. Plaintiffs were already given leave to plead their best case. Having failed to do so, further amendment is futile.

Dated:  January 2, 2025

> DAVID CHIU
> City Attorney
> YVONNE R. MERÉ
> EDMUND T. WANG
> KAITLYN MURPHY
> MIGUEL A. GRADILLA
> JOHN H. GEORGE
> STEVEN A. MILLS
> Deputy City Attorneys
>
>
> By:  s/Steven A. Mills
> STEVEN A. MILLS
>
> Attorneys for Defendants
> CITY AND COUNTY OF SAN FRANCISCO; SAN
> FRANCISCO POLICE DEPARTMENT; SAN
> FRANCISCO DEPARTMENT OF PUBLIC WORKS;
> SAN FRANCISCO DEPARTMENT OF
> HOMELESSNESS AND SUPPORTIVE HOUSING;
> SAN FRANCISCO FIRE DEPARTMENT; SAN
> FRANCISCO DEPARTMENT OF EMERGENCY
> MANAGEMENT