# EXHIBIT G

# TO

# DECLARATION OF STEVEN A. MILLS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - -

COALITION ON HOMELESSNESS, et al., Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants.

CASE NO. 4:22-cv-05502-DMR

- - - - - - - - - - - - - - - - -

VIDEOTAPED DEPOSITION OF MOLIQUE R. FRANK

WEDNESDAY, SEPTEMBER 25, 2024

PAGES 1 - 125; VOLUME 1

BEHMKE REPORTING AND VIDEO SERVICES, INC.
BY: SUZANNE I. ANDRADE, CSR NO. 10682
550 CALIFORNIA STREET, SUITE 820
SAN FRANCISCO, CALIFORNIA 94104
(415) 597-5600

Videotaped deposition of MOLIQUE R. FRANK, VOLUME 1, taken on behalf of Defendants, at the American Civil Liberties Union of Northern California 39 Drumm Street, San Francisco, California, commencing at 10:02 A.M., WEDNESDAY, SEPTEMBER 25, 2024, before Suzanne I. Andrade, Certified Shorthand Reporter No. 10682, pursuant to Notice.

APPEARANCES OF COUNSEL:

FOR PLAINTIFFS:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION NORTHERN CALIFORNIA

BY: LARISSA GRIJALVA, ATTORNEY AT LAW

WILLIAM S. FREEMAN, ATTORNEY AT LAW

39 Drumm Street

San Francisco, California 94111

Telephone: (415) 293-6393

Email: lgrijalva@aclunc.org

wfreeman@aclunc.org

FOR DEFENDANTS:

CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE CITY ATTORNEY

BY: KAITLYN M. MURPHY, DEPUTY CITY ATTORNEY

City Hall, Room 234

1 Dr. Carlton B. Goodlett Place

San Francisco, California 94102

Telephone: (415) 554-6762

Email: kaitlyn.murphy@sfcityatty.org

APPEARANCES OF COUNSEL - CONTINUED:

FOR DEFENDANTS:

CITY AND COUNTY OF SAN FRANCISCO
OFFICE OF THE CITY ATTORNEY
BY: STEVEN MILLS, DEPUTY CITY ATTORNEY
1390 Market Street, Sixth Floor
San Francisco, California 94102
Telephone: (415) 355-3304
Email: steven.mills@sfcityatty.org

ALSO PRESENT:

KYLE FRIEND, VIDEOGRAPHER

A. Yeah.
Q. Do you think you lived with her between 2018 and today?
A. Yeah.
Q. Do you remember when?
A. No.
Q. Okay. Why did you stop living with your mom between 2018 and today?
A. I just need my own space.
Q. Okay. And why did you stop living with your grandma?
A. Same.
Q. Any other reasons besides wanting your own space that you stopped living with your mom --
A. No.
Q. -- between 2018 and today?
A. No.
Q. Do you currently think of yourself as a person who's homeless?
A. Yes.
Q. Okay. And what does that mean to you?
A. Not having a permanent residence.
Q. I think you said -- was it that you've been living at 1015 Geary since 2021?
A. Mm-hmm.

Q. Is that a yes?
A. Yes.
Q. So you've been living at 1015 Geary for about three years --
A. Mm-hmm.
Q. -- is that right?
Is that a yes?
A. Yes.
Q. If you've been housed in the same place for the past three years, why do you still consider yourself homeless?
A. I know it's not permanent.
Q. Okay. But you don't -- do you know whether you'll have to leave 1015 Geary?
A. I don't know.
Q. Has anybody ever told you that you'll have to leave 1015 Geary?
A. No.
Q. Do you have any understanding of whether there are any, like, qualifications to live in 1015 Geary?
A. No.
Q. Do you know if you have to pay any money to live at 1015 Geary?
A. No.
Q. Sorry. I should ask a better question.

Is that a yes?

A. Yes.

Q. Can you describe for me, like, what -- what the size of it, what's in it?

A. It's kind of small, but it has a bathroom, a TV, some dresser drawers. That's it.

Q. Does it have a kitchen? Is there a communal kitchen?

A. No.

Q. If you are -- if you want to use fentanyl currently, do you do it inside the hotel, or would you go outside?

A. Have to go outside.

MS. GRIJALVA: Objection; relevance.

BY MS. MURPHY:

Q. Do you currently store any of your stuff outside of 1015 Geary?

A. No.

Q. Okay. So all of your stuff is inside 1015 Geary?

A. Yes.

Q. Since you moved in in 2021 to today, have you ever stored any of your stuff outside 1015 Geary?

A. No.

Q. Do you have any plans to store your stuff

outside 1015 Geary in the future?

A. I hope not.

Q. Do you know what a Navigation Center is?

A. Yes.

Q. Have you ever spent a night in a Navigation Center?

A. Yes.

Q. Between 2018 and today, did you ever spend the night in a Navigation Center?

A. No.

Q. When's the last time you remember being in a -- is it sometimes called a Nav Center?

A. Yes.

Q. When's the last time you remember being in a Nav Center?

A. I think it was 2016 maybe.

Q. Do you remember, like, how many nights you were there?

A. No.

Q. Do you have a best estimate?

A. No.

Q. Do you think it would have been less than 30?

A. No.

Q. So you were in a Navigation Center for more than 30 days --

A. What do you mean, "previously"? I don't understand.
Q. What's your best estimate of the number of phone numbers you've had between 2018 and today?
A. I can't remember. A lot.
Q. Is it, like, more than ten?
A. No.
Q. Okay. So somewhere between one and ten phone numbers --
A. Yeah.
Q. -- you've had?
Okay. Is -- your current phone number is (415) 789-3625?
A. No.
Q. Okay. What's your current phone number?
A. (628) 415 -- I mean (628) 789-3014.
(Reporter clarification.)
Sorry. (628) 789-3014.
Q. Got it.
Sometimes I know people change a phone, but they keep the same phone number.
What's your best estimate of the number of phone numbers you've had between 2018 and today?
A. I can't guess.
Q. Okay. For the most part, when you change

phones, do you get a new number or do you keep it?
A. Keep the -- get a new number.
Q. Okay. So if the number of cell phones you've had is somewhere between one and ten, is it fair to say the number of phone numbers is probably the same, somewhere between one and ten?
A. Possibly.
Q. But you're not sure either way?
A. No.
Q. Okay. How long have you had your current phone number?
A. I'm not sure. I don't know.
Q. Would you say it's more than a year?
A. No.
Q. Would you say it's, like, more than a month?
A. Yes.
Q. Do you think you had it at the beginning of 2014?
A. No, I didn't have it 2014.
Q. Okay. So sometime between January of this year and August of this year, you got this phone, right?
A. Yeah.
Q. Okay. Do you know what kind of phone it is?
A. Um...
Q. Do you know, is it like an Apple, an Android

phone?

A. Android.

Q. Is it, like, one of the smart phones with, like, the big screen?

A. Yes.

Q. Does it take pictures?

A. Yes.

Q. Does it have, like, access to the Internet?

A. Yes.

Q. Okay. Do you remember how you got the phone?

A. No.

Q. Okay. Do you remember, like, if you bought it or if it was a gift? Or, like, sometimes people have said they've gotten, like, phones from the government.

A. I can't remember.

Q. Okay. Why did you get a new phone sometime this year?

A. The old number got shut off for some reason.

Q. Okay. Do you have a best estimate of, like, the gap between when the last phone got cut off and when you got the new one?

A. No.

Q. Would you say it was, like, more than a month?

A. I can't remember.

Q. Okay. I want to ask a question about kind of

an extreme weather condition by taking your -- your stuff?

A. No.

Q. Okay. This is a dumb question, but I've got to ask it: Do you intend to be homeless at any point in the future?

A. No.

Q. And what's your best estimate of the number of times you feel like the City wrongfully threw out your property as opposed to you seeing them throw out somebody else's stuff?

A. I can't remember.

Q. Okay. Do you think it was more than a thousand?

A. No.

Q. Do you think it was more than a hundred?

A. No.

Q. Do you think it was more than 10?

A. Yes.

Q. Do you think it was more than 50?

A. I...

(Reporter clarification.)

No.

Q. More than 20?

A. Not sure.

WEDNESDAY, SEPTEMBER 25, 2024; 1:38 P.M.

P.M. PROCEEDINGS

THE VIDEO OPERATOR: This marks the beginning of Media No. 3. We are back on the record. The time is 1:38 p.m.

MS. MURPHY: I think after the last session, we agreed to take a break until 1:00 p.m. We waited until 1:38. Mr. Frank hasn't made it back. And so the parties have agreed to end the deposition for today but to hold it open to finish on a second day.

Is that Plaintiffs' understanding as well?

MR. FREEMAN: That's our understanding as well.

And just so the record is clear, we do not know where Mr. Frank is right now. Ms. Grijalva and I have both searched for him, and we have not been successful.

MS. MURPHY: Okay. Agree to go off?

MR. FREEMAN: Yes.

THE VIDEO OPERATOR: Okay. This concludes the deposition of Molique Frank. The number of media files used was three. The original media will be retained at Behmke Reporting and Video Services, Inc., 550 California Street, Suite 820, San Francisco, California.

Going off the record. The time is 1:39 p.m.



(At 1:39 p.m. the deposition proceedings adjourned.)

______________________________

MOLIQUE R. FRANK

**EXHIBIT G**

**TO**

**DECLARATION OF STEVEN A. MILLS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN FRANCISCO )

I hereby certify that the witness in the foregoing deposition, MOLIQUE R. FRANK, was by me duly sworn to testify to the truth, the whole truth and nothing but the truth, in the within-entitled cause; that said deposition was taken at the time and place herein named; and that the deposition is a true record of the witness's testimony as reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting by computer.

I further certify that I am not interested in the outcome of the said action, nor connected with nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 7th day of October, 2024.

Reading and Signing was:

___ requested ___ waived _x_ not requested

SUZANNE I. ANDRADE, CSR NO. 10682