# EXHIBIT P

## TO

## DECLARATION OF STEVEN A. MILLS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

**CITY AND COUNTY OF SAN FRANCISCO**
**SAN FRANCISCO ARTS COMMISSION**

### GRANT AGREEMENT

between

CITY AND COUNTY OF SAN FRANCISCO

and
**COALITION ON HOMELESSNESS**

**GRANT WINDOW: JULY 1, 2018 – JUNE 30, 2019**

**THIS GRANT AGREEMENT** (this "Agreement") is made this **JUNE 15, 2018** in the City and County of San Francisco, State of California, by and between **COALITION ON HOMELESSNESS** ("Grantee") and the **CITY AND COUNTY OF SAN FRANCISCO**, a municipal corporation ("City") acting by and through the Agency (as hereinafter defined),

### WITNESSETH:

**WHEREAS**, Grantee has submitted to the Agency the Application Documents (as hereinafter defined) seeking an **ARTISTS AND COMMUNITIES IN PARTNERSHIP - SOCIAL JUSTICE** grant for the purpose of funding the matters set forth in the Grant Plan (as hereinafter defined); and summarized briefly as follows:

San Francisco Arts Commission funds will support a collaboration between artist/organizer Leslie Dreyer and the Coalition on Homelessness to develop a visual and story-based archive of the belongings stolen from homeless residents during the City's sweeps, documenting the loss of cherished personal items alongside articles necessary for survival. She will design workshops with homeless residents to help them develop stories and artwork contextualizing the objects within the archive. Participants will develop documentary, artistic and advocacy skills to steer right to rest and right to personal belongings campaigns.; and

**WHEREAS**, City desires to provide such a grant on the terms and conditions set forth herein:

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained in this Agreement and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

### ARTICLE 1
### DEFINITIONS

1.1    **Specific Terms**. Unless the context otherwise requires, the following capitalized terms (whether singular or plural) shall have the meanings set forth below:

(a)        "ADA" shall mean the Americans with Disabilities Act (including all rules and regulations thereunder) and all other applicable federal, state and local disability rights legislation, as the same may be amended, modified or supplemented from time to time.

CCSF-COH_309166

(b)  "**Agency**" shall mean the **SAN FRANCISCO ARTS COMMISSION**.

(c)  "**Application Documents**" shall mean collectively: (i) the grant application submitted by Grantee, including all exhibits, schedules, appendices and attachments thereto; (ii) all documents, correspondence and other written materials submitted in respect of such grant application; and (iii) all amendments, modifications or supplements to any of the foregoing approved in writing by City.

(d)  "**Budget**" shall mean either the budget attached hereto as part of Appendix C Budget and Budget Narrative, if any, or the budget included in the Application Documents, to the extent expressly approved by the Agency.

(e)  "**Charter**" shall mean the Charter of City.

(f)  "**Controller**" shall mean the Controller of City.

(g)  "**Eligible Expenses**" shall have the meaning set forth in Appendix A.

(h)  "**Event of Default**" shall have the meaning set forth in Section 11.1.

(i)  "**Fiscal Quarter**" shall mean each period of three (3) calendar months commencing on July 1, October 1, January 1 and April 1, respectively.

(j)  "**Fiscal Year**" shall mean each period of twelve (12) calendar months commencing on July 1 and ending on June 30 during all or any portion of which this Agreement is in effect.

(k)  "**Funding Request**" shall have the meaning set forth in Section 5.3(a).

(l)  "**Grant Funds**" shall mean any and all funds allocated or disbursed to Grantee under this Agreement.

(m)  "**Grant Plan**" shall have the meaning set forth in Appendix B

(n)  "**Grant Window**" shall have the meaning set forth in the heading on page 1.

(o)  "**HRC**" shall mean the Human Rights Commission of City, or, in light of legal changes in the governing structure, shall mean "**CMD**" or the Contract Monitoring Division of the City.

(p)  "**Indemnified Parties**" shall mean:  (i) City, including the Agency and all commissions, departments, agencies and other subdivisions of City; (ii) City's elected officials, directors, officers, employees, agents, successors and assigns; and (iii) all persons or entities acting on behalf of any of the foregoing.

(q)  "**Losses**" shall mean any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, judgments, fees, expenses and costs of whatsoever kind and nature (including legal fees and expenses and costs of investigation, of prosecuting or defending any Loss described above) whether or not such Loss be founded or unfounded, of whatsoever kind and nature.

(r)  "**Publication**" shall mean any report, article, educational material, handbook, brochure, pamphlet, press release, public service announcement, web page, audio or visual material or other

CCSF-COH_309167

communication for public dissemination, which relates to all or any portion of the Grant Plan or is paid for in whole or in part using Grant Funds.

(s)   **"Contractor"** shall mean "Grantee" as certain City Contracting requirements also apply to Grants of the City of San Francisco.

**1.2   Additional Terms.** The terms "as directed," "as required" or "as permitted" and similar terms shall refer to the direction, requirement, or permission of the Agency. The terms "sufficient," "necessary" or "proper" and similar terms shall mean sufficient, necessary or proper in the sole judgment of the Agency. The terms "approval," "acceptable" or "satisfactory" or similar terms shall mean approved by, or acceptable to, or satisfactory to the Agency. The terms "include," "included" or "including" and similar terms shall be deemed to be followed by the words "without limitation". The use of the term "subcontractor," "successor" or "assign" herein refers only to a subcontractor ("subgrantee"), successor or assign expressly permitted under Article 13.

**1.3   References to this Agreement.** References to this Agreement include: (a) any and all appendices, exhibits, schedules, attachments hereto; (b) any and all statutes, ordinances, regulations or other documents expressly incorporated by reference herein; and (c) any and all amendments, modifications or supplements hereto made in accordance with Section 17.2. References to articles, sections, subsections or appendices refer to articles, sections or subsections of or appendices to this Agreement, unless otherwise expressly stated. Terms such as "hereunder," herein or "hereto" refer to this Agreement as a whole.

## ARTICLE 2
## APPROPRIATION AND CERTIFICATION OF GRANT FUNDS;
## LIMITATIONS ON CITY'S OBLIGATIONS

**2.1   Risk of Non-Appropriation of Grant Funds.** This Agreement is subject to the budget and fiscal provisions of the Charter. City shall have no obligation to make appropriations for this Agreement in lieu of appropriations for new or other agreements. Grantee acknowledges that City budget decisions are subject to the discretion of its Mayor and Board of Supervisors. Grantee assumes all risk of possible non-appropriation or non-certification of funds, and such assumption is part of the consideration for this Agreement.

**2.2   Certification of Controller; Guaranteed Maximum Costs.** No funds shall be available under this Agreement until prior written authorization certified by the Controller. In addition, as set forth in Section 21.19 of the San Francisco Administrative Code: City's obligations hereunder shall not at any time exceed the amount certified by the Controller for the purpose and period stated in such certification. Except as may be provided by City ordinances governing emergency conditions, City and its employees and officers are not authorized to request Grantee to perform services or to provide materials, equipment and supplies that would result in Grantee performing services or providing materials, equipment and supplies that are beyond the scope of the services, materials, equipment and supplies specified in this Agreement unless this Agreement is amended in writing and approved as required by law to authorize the additional services, materials, equipment or supplies. City is not required to pay Grantee for services, materials, equipment or supplies that are provided by Grantee which are beyond the scope of the services, materials, equipment and supplies agreed upon herein and which were not approved by a written amendment to this Agreement having been lawfully executed by City. City and its employees and officers are not authorized to offer or promise to Grantee additional funding for this Agreement which would exceed the maximum amount of funding provided for herein. Additional funding for this Agreement in excess of the maximum provided herein shall require lawful approval and certification by the Controller. City is not required to honor any offered or promised additional funding which exceeds the maximum provided in this Agreement which requires lawful approval and certification of the Controller

CCSF-COH_309168

when the lawful approval and certification by the Controller has not been obtained. The Controller is not authorized to make payments on any agreement for which funds have not been certified as available in the budget or by supplemental appropriation.

**2.3    Automatic Termination for Nonappropriation of Funds.** This Agreement shall automatically terminate, without penalty, liability or expense of any kind to City, at the end of any Fiscal Year if funds are not appropriated for the next succeeding Fiscal Year. If funds are appropriated for a portion of any Fiscal Year, this Agreement shall terminate, without penalty, liability or expense of any kind to City, at the end of such portion of the Fiscal Year.

**2.4    SUPERSEDURE OF CONFLICTING PROVISIONS.** IN THE EVENT OF ANY CONFLICT BETWEEN ANY OF THE PROVISIONS OF THIS ARTICLE 2 AND ANY OTHER PROVISION OF THIS AGREEMENT, THE APPLICATION DOCUMENTS OR ANY OTHER DOCUMENT OR COMMUNICATION RELATING TO THIS AGREEMENT, THE TERMS OF THIS ARTICLE 2 SHALL GOVERN.

## ARTICLE 3
## TERM

**3.1    Effective Date.** This Agreement shall become effective when the Controller has certified to the availability of funds as set forth in Section 2.2 and the Agency has notified Grantee thereof in writing.

**3.2    Duration of Term.** The term of this Agreement shall commence on the later of (a) the start of the Grant Window, and (b) the effective date specified in Section 3.1. Such term shall end on the later of (a) when the Grantee submits to the Agency a satisfactory final report (due 30 days after the end of the Grant Window) and the Agency notifies the Grantee of its approval in writing, and (b) 11:59 p.m. San Francisco time on **June 30, 2019**.

## ARTICLE 4
## IMPLEMENTATION OF GRANT PLAN

**4.1    Implementation of Grant Plan; Cooperation with Monitoring.** Grantee shall, in good faith and with diligence, implement the Grant Plan on the terms and conditions set forth in this Agreement and the Appendix B Grant Plan. Grantee shall not materially change the nature or scope of the Grant Plan during the term of this Agreement without the prior written consent of City. Grantee shall promptly comply with all standards, specifications and formats of City, as they may from time to time exist, related to evaluation, planning and monitoring of the Grant Plan and shall cooperate in good faith with City in any evaluation, planning or monitoring activities conducted or authorized by City.

**4.2    Grantee's Personnel.** The Grant Plan shall be implemented only by competent personnel under the direction and supervision of Grantee.

**4.3    Grantee's Board of Directors.** Grantee shall at all times be governed by a legally constituted and fiscally responsible board of directors. Such board of directors shall meet regularly and maintain appropriate membership, as established in Grantee's bylaws and other governing documents and shall adhere to applicable provisions of federal, state and local laws governing nonprofit corporations. Grantee's board of directors shall exercise such oversight responsibility with regard to this Agreement as is necessary to ensure full and prompt performance by Grantee of its obligations under this Agreement.

**4.4    Publications and Work Product.**

CCSF-COH_309169

(a)   Grantee understands and agrees that City has the right to review, approve, disapprove or conditionally approve, in its sole discretion, the work and property funded in whole or part with the Grant Funds, whether those elements are written, oral or in any other medium. Grantee has the burden of demonstrating to City that each element of work or property funded in whole or part with the Grant Funds is directly and integrally related to the Grant Plan as approved by City. City shall have the sole and final discretion to determine whether Grantee has met this burden.

(b)   Without limiting the obligations of Grantee set forth in subsection (a) above, Grantee shall submit to City for City's prior written approval any Publication, and Grantee shall not disseminate any such Publication unless and until it receives City's consent. In addition, Grantee shall submit to City for approval, if City so requests, any other program material or form that Grantee uses or proposes to use in furtherance of the Grant Plan, and Grantee shall promptly provide to City one copy of all such materials or forms within two (2) days following City's request. The City's approval of any material hereunder shall not be deemed an endorsement of, or agreement with, the contents of such material, and the City shall have no liability or responsibility for any such contents. The City reserves the right to disapprove any material covered by this section at any time, notwithstanding a prior approval by the City of such material. Grantee shall not charge for the use or distribution of any Publication funded all or in part with the Grant Funds, without first obtaining City's written consent, which City may give or withhold in its sole discretion.

(c)   Grantee shall distribute any Publication solely within San Francisco, unless City otherwise gives its prior written consent, which City may give or withhold in its sole discretion. In addition, Grantee shall furnish any services funded in whole or part with the Grant Funds under this Agreement solely within San Francisco, unless City otherwise gives its prior written consent, which City may give or withhold in its sole discretion.

(d)   City may disapprove any element of work or property funded in whole or part by the Grant Funds that City determines, in its sole discretion, has any of the following characteristics: is divisive or discriminatory; undermines the purpose of the Grant Plan; discourages otherwise qualified potential employees or volunteers or any clients from participating in activities covered under the Grant Plan; undermines the effective delivery of services to clients of Grantee; hinders the achievement of any other purpose of City in making the Grant under this Agreement; or violates any other provision of this Agreement or applicable law. If City disapproves any element of the Grant Plan as implemented, or requires any change to it, Grantee shall immediately eliminate the disapproved portions and make the required changes. If City disapproves any materials, activities or services provided by third parties, Grantee shall immediately cease using the materials and terminate the activities or services and shall, at City's request, require that Grantee obtain the return of materials from recipients or deliver such materials to City or destroy them.

(e)   City has the right to monitor from time to time the administration by Grantee or any of its subcontractors of any programs or other work, including, without limitation, educational programs or trainings, funded in whole or part by the Grant Funds, to ensure that Grantee is performing such element of the Grant Plan, or causing such element of the Grant Plan to be performed, consistent with the terms and conditions of this Agreement.

(f)   Grantee shall acknowledge City's funding under this Agreement in all Publications **or other printed materials using the following or similar language: "Supported by the San Francisco Arts Commission."** Such acknowledgment shall conspicuously state that the activities are sponsored in whole or in part through a grant from the Agency. Except as set forth in this Section, Grantee shall not use the

CCSF-COH_309170

name of the Agency or City (as a reference to the municipal corporation as opposed to location) in any Publication without prior written approval of City.

## ARTICLE 5
## USE AND DISBURSEMENT OF GRANT FUNDS

**5.1    Maximum Amount of Grant Funds.**  In no event shall the amount of Grant Funds disbursed hereunder exceed **TWENTY THOUSAND DOLLARS ($20,000).**

**5.2    Use of Grant Funds.** Grantee shall use the Grant Funds only for Eligible Expenses as set forth in Appendix A and for no other purpose.  Grantee shall expend the Grant Funds in accordance with the Budget, if any, and shall obtain the prior approval of City before transferring expenditures from one line item to another within the Budget.

**5.3    Disbursement Procedures.**  Grant Funds shall be disbursed to Grantee as follows:

(a)    Grantee shall submit to the Agency, in the manner specified for notices pursuant to Article 15, a document (a "Invoice") substantially in the form attached as Appendix D Invoice and Appendix E Expense Report.  Any Invoice and Expense Report that is submitted and is not approved by the Agency shall be returned by the Agency to Grantee with a brief statement of the reason for the Agency's rejection of such Invoice and Expense Report.  If any such rejection relates only to a portion of Eligible Expenses itemized in such Expense Report, the Agency shall have no obligation to disburse any Grant Funds for any other Eligible Expenses itemized in such Invoice and Expense Report unless and until Grantee submits a Invoice and Expense Report that is in all respects acceptable to the Agency.

(b)    The Agency shall make all disbursements of Grant Funds pursuant to this Section by check payable to Grantee, sent via U.S. mail in accordance with Article 15, unless the Agency otherwise agrees in writing, in its sole discretion. **The Agency shall make an initial disbursement of Grant Funds upon execution of this Agreement and satisfactory submission of all necessary compliance documentation, contracts, and prior grant reports.  Subsequent disbursements shall be made on Agency approval of required reporting documentation.**

**5.4    Disallowance.**  With respect to Grant Funds, if any, which are ultimately provided by the state or federal government, Grantee agrees that if Grantee claims or receives payment from City for an Eligible Expense, payment or reimbursement of which is later disallowed by the state or federal government, Grantee shall promptly refund the disallowed amount to City upon City's request.  At its option, City may offset all or any portion of the disallowed amount against any other payment due to Grantee hereunder or under any other Agreement.  Any such offset with respect to a portion of the disallowed amount shall not release Grantee from Grantee's obligation hereunder to refund the remainder of the disallowed amount.

## ARTICLE 6
## REPORTING REQUIREMENTS; AUDITS;
## PENALTIES FOR FALSE CLAIMS

**6.1    Regular Reports.**  Grantee shall provide, in a prompt and timely manner, financial, operational and other reports, as requested by the Agency, in form and substance satisfactory to the Agency.  Such reports, including any copies, shall be submitted electronically or on recycled paper and printed on double-sided pages, to the maximum extent possible.

**6.2    Organizational Documents.**  If requested by City, on or before the date of this Agreement, Grantee shall provide to City the names of its current officers and directors and certified copies of its

CCSF-COH_309171

Articles of Incorporation and Bylaws as well as satisfactory evidence of the valid nonprofit status described in Section 8.1.

**6.3    Notification of Defaults or Changes in Circumstances.** Grantee shall notify City immediately of (a) any Event of Default or event that, with the passage of time, would constitute an Event of Default; and (b) any change of circumstances that would cause any of the representations and warranties contained in Article 8 to be false or misleading at any time during the term of this Agreement.

**6.4    Financial Statements.** , Within sixty (60) days following the end of each Fiscal Year, as requested by the Agency, Grantee shall deliver to City an unaudited balance sheet and the related statement of income and cash flows for such Fiscal Year, all in reasonable detail acceptable to City, certified by an appropriate financial officer of Grantee as accurately presenting the financial position of Grantee. If requested by City, Grantee shall also deliver to City, no later than one hundred twenty (120) days following the end of any Fiscal Year, an audited balance sheet and the related statement of income and cash flows for such Fiscal Year, certified by a reputable accounting firm as accurately presenting the financial position of Grantee.

**6.5    Books and Records.** Grantee shall establish and maintain accurate files and records of all aspects of the Grant Plan and the matters funded in whole or in part with Grant Funds during the term of this Agreement. Without limiting the scope of the foregoing, Grantee shall establish and maintain accurate financial books and accounting records relating to Eligible Expenses incurred and Grant Funds received and expended under this Agreement, together with all invoices, documents, payrolls, time records and other data related to the matters covered by this Agreement, whether funded in whole or in part with Grant Funds. Grantee shall maintain all of the files, records, books, invoices, documents, payrolls and other data required to be maintained under this Section in a readily accessible location and condition for a period of not less than five (5) years after final payment under this Agreement or until any final audit has been fully completed, whichever is later.

**6.6    Inspection and Audit.** Grantee shall make available to City, its employees and authorized representatives, during regular business hours all of the files, records, books, invoices, documents, payrolls and other data required to be established and maintained by Grantee under Section 6.5. Grantee shall permit City, its employees and authorized representatives to inspect, audit, examine and make excerpts and transcripts from any of the foregoing. The rights of City pursuant to this Section shall remain in effect so long as Grantee has the obligation to maintain such files, records, books, invoices, documents, payrolls and other data under this Article 6.

**6.7    Submitting False Claims; Monetary Penalties.** Any contractor, subcontractor or consultant who submits a false claim shall be liable to the City for the statutory penalties set forth in that section. A contractor, subcontractor or consultant will be deemed to have submitted a false claim to the City if the contractor, subcontractor or consultant: (a) knowingly presents or causes to be presented to an officer or employee of the City a false claim or request for payment or approval; (b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the City; (c) conspires to defraud the City by getting a false claim allowed or paid by the City; (d) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the City; or (e) is a beneficiary of an inadvertent submission of a false claim to the City, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the City within a reasonable time after discovery of the false claim

**6.8    Ownership of Results.** Any interest of Grantee or any subgrantee, in drawings, plans, specifications, studies, reports, memoranda, computation sheets, the contents of computer diskettes, or other documents or Publications prepared by Grantee or any subgrantee in connection with this

CCSF-COH_309172

Agreement or the implementation of the Grant Plan or the services to be performed under this Agreement, shall remain the property of Grantee. Notwithstanding the foregoing, the City is entitled to a perpetual license to use and may request copies or documentation of the funded project for publicity, reporting, and archival purposes.

**6.9    Intellectual Property and License.** Subject to usage rights and licenses granted to City hereunder, Grantee shall retain all 17 U.S.C. §106 copyrights in all original works of authorship produced under this Agreement. Grantee grants to City, and to City's agents, authorized contractors and assigns, an unlimited, non-exclusive, royalty-free, perpetual, worldwide, and irrevocable license to use, publicly display, reproduce and distribute limited documentation of the artistic work funded herein. City may use such material for any City-related purpose, including advertising, educational and promotional materials, brochures, books, flyers, postcards, print, broadcast, film, electronic and multimedia publicity, gifts for the Commission benefactors, documentation of projects funded by the Arts Commission, and catalogues or similar publications. City shall ensure that such reproductions are made in a professional and tasteful manner, in the sole and reasonable judgment of the Commission. The license granted hereunder does not include the right to include the reproductions on three-dimensional merchandise, such as tote-bags, T-shirts, coffee mugs and similar merchandise. Such reproductions may only be created pursuant to Grantee's separate permission.

**ARTICLE 7**
**TAXES**

**7.1    Grantee to Pay All Taxes.** Grantee shall pay to the appropriate governmental authority, as and when due, any and all taxes, fees, assessments or other governmental charges, including possessory interest taxes and California sales and use taxes, levied upon or in connection with this Agreement, the Grant Plan, the Grant Funds or any of the activities contemplated by this Agreement.

**7.2    Use of City Real Property.** If at any time this Agreement entitles Grantee to the possession, occupancy or use of City real property for private gain, the following provisions shall apply:

(a)    Grantee, on behalf of itself and any subgrantees, successors and assigns, recognizes and understands that this Agreement may create a possessory interest subject to property taxation and Grantee, and any subgrantee, successor or assign, may be subject to the payment of such taxes.

(b)    Grantee, on behalf of itself and any subgrantees, successors and assigns, further recognizes and understands that any assignment permitted hereunder and any exercise of any option to renew or other extension of this Agreement may constitute a change in ownership for purposes of property taxation and therefore may result in a revaluation of any possessory interest created hereunder. Grantee shall report any assignment or other transfer of any interest in this Agreement or any renewal or extension thereof to the County Assessor within sixty (60) days after such assignment, transfer, renewal or extension.

(c)    Grantee shall provide such other information as may be requested by City to enable City to comply with any reporting requirements under applicable law with respect to possessory interests.

**7.3.    RESERVED. (Earned Income Credit (EIC) Forms.)**

CCSF-COH_309173

## ARTICLE 8
## REPRESENTATIONS AND WARRANTIES

Grantee represents and warrants each of the following as of the date of this Agreement and at all times throughout the term of this Agreement:

**8.1    Organization; Authorization.** Grantee is a nonprofit corporation, duly organized and validly existing and in good standing under the laws of the jurisdiction in which it was formed. Grantee has established and maintains valid nonprofit status under Section 501(c)(3) of the United States Internal Revenue Code of 1986, as amended, and all rules and regulations promulgated under such Section. Grantee has duly authorized by all necessary action the execution, delivery and performance of this Agreement. Grantee has duly executed and delivered this Agreement and this Agreement constitutes a legal, valid and binding obligation of Grantee, enforceable against Grantee in accordance with the terms hereof.

**8.2    Location.** Grantee's operations, offices and headquarters are located at the address for notices set forth in Section 15. All aspects of the Grant Plan will be implemented at the geographic location(s), if any, specified in the Grant Plan.

**8.3    No Misstatements.** No document furnished or to be furnished by Grantee to City or City in connection with the Application Documents, this Agreement, any Funding Request or any other document relating to any of the foregoing, contains or will contain any untrue statement of material fact or omits or will omit a material fact necessary to make the statements contained therein not misleading, under the circumstances under which any such statement shall have been made.

**8.4    Conflict of Interest.**

(a)    Through its execution of this Agreement, Grantee acknowledges that it is familiar with the provision of Section 15.103 of the City's Charter, Article III, Chapter 2 of the City's Campaign and Governmental Conduct Code, and Section 87100 et seq. and Section 1090 et seq. of the Government Code of the State of California, and certifies that it does not know of any facts which constitutes a violation of said provisions and agrees that it will immediately notify the City if it becomes aware of any such fact during the term of this Agreement.

**8.5    No Other Agreements with City.** Except as expressly itemized in Appendix H, neither Grantee nor any of Grantee's affiliates, officers, directors or employees has any interest, however remote, in any other agreement with City including any commission, department or other subdivision thereof).

**8.6    Subcontracts.** Except as may be permitted under Section 13.3, Grantee has not entered into any agreement, arrangement or understanding with any other person or entity pursuant to which such person or entity will implement or assist in implementing all or any portion of the Grant Plan

**8.7    Eligibility to Receive Federal Funds.** By executing this Agreement, Grantee certifies that Grantee is not suspended, debarred or otherwise excluded from participation in federal assistance programs. Grantee acknowledges that this certification of eligibility to receive federal funds is a material term of the Agreement.

CCSF-COH_309174

## ARTICLE 9
## INDEMNIFICATION AND GENERAL LIABILITY

**9.1    Indemnification.** Grantee shall indemnify, protect, defend and hold harmless each of the Indemnified Parties from and against any and all Losses arising from, in connection with or caused by: (a) a material breach of this Agreement by Grantee; (b) a material breach of any representation or warranty of Grantee contained in this Agreement; (c) any personal injury caused, directly or indirectly, by any act or omission of Grantee or its employees, subgrantees or agents; (d) any property damage caused, directly or indirectly by any act or omission of Grantee or its employees, subgrantees or agents; (e) the use, misuse or failure of any equipment or facility used by Grantee, or by any of its employees, subgrantees or agents, regardless of whether such equipment or facility is furnished, rented or loaned to Grantee by an Indemnified Party; (f) any tax, fee, assessment or other charge for which Grantee is responsible under Article 7; or (g) any infringement of patent rights, copyright, trade secret or any other proprietary right or trademark of any person or entity in consequence of the use by any Indemnified Party of any goods or services furnished to such Indemnified Party in connection with this Agreement. Grantee's obligations under the immediately preceding sentence shall apply to any Loss that is caused in whole or in part by the active or passive negligence of any Indemnified Party, but shall exclude any Loss caused solely by the willful misconduct of the Indemnified Party. The foregoing indemnity shall include, without limitation, consultants and experts and related costs and City's costs of investigating any claims against the City.

**9.2    Duty to Defend; Notice of Loss.** Grantee acknowledges and agrees that its obligation to defend the Indemnified Parties under Section 9.1: (a) is an immediate obligation, independent of its other obligations hereunder; (b) applies to any Loss which actually or potentially falls within the scope of Section 9.1, regardless of whether the allegations asserted in connection with such Loss are or may be groundless, false or fraudulent; and (c) arises at the time the Loss is tendered to Grantee by the Indemnified Party and continues at all times thereafter. The Indemnified Party shall give Grantee prompt notice of any Loss under Section 9.1 and Grantee shall have the right to defend, settle and compromise any such Loss; provided, however, that the Indemnified Party shall have the right to retain its own counsel at the expense of Grantee if representation of such Indemnified Party by the counsel retained by Grantee would be inappropriate due to conflicts of interest between such Indemnified Party and Grantee. An Indemnified Party's failure to notify Grantee promptly of any Loss shall not relieve Grantee of any liability to such Indemnified Party pursuant to Section 9.1, unless such failure materially impairs Grantee's ability to defend such Loss. Grantee shall seek the Indemnified Party's prior written consent to settle or compromise any Loss if Grantee contends that such Indemnified Party shares in liability with respect thereto.

**9.3    Incidental and Consequential Damages.** Losses covered under this Article 9 shall include any and all incidental and consequential damages resulting in whole or in part from Grantee's acts or omissions. Nothing in this Agreement shall constitute a waiver or limitation of any rights that any Indemnified Party may have under applicable law with respect to such damages.

**9.4    LIMITATION ON LIABILITY OF CITY.** CITY'S OBLIGATIONS UNDER THIS AGREEMENT SHALL BE LIMITED TO THE AGGREGATE AMOUNT OF GRANT FUNDS ACTUALLY DISBURSED HEREUNDER. NOTWITHSTANDING ANY OTHER PROVISION CONTAINED IN THIS AGREEMENT, THE APPLICATION DOCUMENTS OR ANY OTHER DOCUMENT OR COMMUNICATION RELATING TO THIS AGREEMENT, IN NO EVENT SHALL CITY BE LIABLE, REGARDLESS OF WHETHER ANY CLAIM IS BASED ON CONTRACT OR TORT, FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES, INCLUDING LOST PROFITS, ARISING OUT OF OR IN CONNECTION WITH THIS

CCSF-COH_309175

AGREEMENT, THE GRANT FUNDS, THE GRANT PLAN OR ANY ACTIVITIES PERFORMED IN CONNECTION WITH THIS AGREEMENT.

## ARTICLE 10
## INSURANCE

**10.1 Types and Amounts of Coverage.** Without limiting Grantee's liability pursuant to Article 9, Grantee shall maintain in force, during the full term of this Agreement, insurance in the following amounts and coverages:

(a) Workers' Compensation, in statutory amounts, with Employers' Liability Limits not less than one million dollars ($1,000,000) each accident, injury, or illness.

(b) Commercial General Liability Insurance with limits not less than one million dollars ($1,000,000) each occurrence Combined Single Limit for Bodily Injury and Property Damage, including Contractual Liability, Personal Injury, Products and Completed Operations, and

(c) Commercial Automobile Liability Insurance with limits not less than one million dollars ($1,000,000) each occurrence Combined Single Limit for Bodily Injury and Property Damage, including Owned, Non-Owned and Hired auto coverage, as applicable.

**10.2 Additional Requirements for General and Automobile Coverage.** Commercial General Liability and Commercial Automobile Liability insurance policies shall:

(a) Name as additional insured City and its officers, agents and employees.

(b) Provide that such policies are primary insurance to any other insurance available to the Additional Insureds, with respect to any claims arising out of this Agreement, and that insurance applies separately to each insured against whom claim is made or suit is brought, except with respect to limits of liability.

**10.3 Additional Requirements for All Policies.** All policies shall be endorsed to provide at least thirty (30) days' advance written notice to City of cancellation of policy for any reason, nonrenewal or reduction in coverage and specific notice mailed to City's address for notices pursuant to Article 15.

**10.4 Required Post-Expiration Coverage.** Should any of the insurance required hereunder be provided under a claims-made form, Grantee shall maintain such coverage continuously throughout the term of this Agreement and, without lapse, for a period of three (3) years beyond the expiration or termination of this Agreement, to the effect that, should occurrences during the term hereof give rise to claims made after expiration or termination of the Agreement, such claims shall be covered by such claims-made policies.

**10.5 General Annual Aggregate Limit/Inclusion of Claims Investigation or Legal Defense Costs.** Should any of the insurance required hereunder be provided under a form of coverage that includes a general annual aggregate limit or provides that claims investigation or legal defense costs be included in such general annual aggregate limit, such general annual aggregate limit shall be double the occurrence or claims limits specified above.

**10.6 Evidence of Insurance.** Before commencing any operations under this Agreement, Grantee shall furnish to City certificates of insurance, and additional insured policy endorsements, in form and with insurers satisfactory to City, evidencing all coverages set forth above, and shall furnish complete copies

CCSF-COH_309176

of policies promptly upon City's request. Before commencing any operations under this Agreement, Grantee shall furnish to City certificates of insurance and additional insured policy endorsements with insurers with ratings comparable to A-, VIII or higher, that are authorized to do business in the State of California, and that are satisfactory to City, in form evidencing all coverages set forth above. Failure to maintain insurance shall constitute a material breach of this Agreement.

**10.7  Effect of Approval.**  Approval of any insurance by City shall not relieve or decrease the liability of Grantee hereunder.

**10.8  Insurance for Subcontractors and Evidence of this Insurance.**  If a subcontractor will be used to complete any portion of this agreement, the Grantee shall ensure that the subcontractor shall provide all necessary insurance and shall name the City and County of San Francisco, its officers, agents, and employees and the Grantee listed as additional insureds.

10.9  The Workers' Compensation policy(ies) shall be endorsed with a waiver of subrogation in favor of the City for all work performed by the Grantee, its employees, agents and subcontractors.

10.10  Notwithstanding the foregoing, the following insurance requirements are waived or modified in accordance with the terms and conditions stated in Appendix J. Insurance.

## ARTICLE 11
## EVENTS OF DEFAULT AND REMEDIES

**11.1  Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Agreement:

(a)    **False Statement.**  Any statement, representation or warranty contained in this Agreement, in the Application Documents, in any Funding Request or in any other document submitted to City under this Agreement is found by City to be false or misleading.

(b)    **Failure to Provide Insurance.**  Grantee fails to provide or maintain in effect any policy of insurance required in Article 10.

(c)    **Failure to Comply with Applicable Laws.**  Grantee fails to perform or breaches any of the terms or provisions of Article 16.

(d)    **Failure to Perform Other Covenants.**  Grantee fails to perform or breaches any other agreement or covenant of this Agreement to be performed or observed by Grantee as and when performance or observance is due and such failure or breach continues for a period of ten (10) days after the date on which such performance or observance is due.

(e)    **Cross Default.**  Grantee defaults under any other agreement between Grantee and City (after expiration of any grace period expressly stated in such agreement).

(f)    **Voluntary Insolvency.**  Grantee (i) is generally not paying its debts as they become due, (ii) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy, insolvency or other debtors' relief law of any jurisdiction, (iii) makes an assignment for the benefit of its creditors, (iv) consents to the appointment of a custodian, receiver, trustee or other

CCSF-COH_309177

officer with similar powers of Grantee or of any substantial part of Grantee's property or (v) takes action for the purpose of any of the foregoing.

(g)    **Involuntary Insolvency**. Without consent by Grantee, a court or government authority enters an order, and such order is not vacated within ten (10) days, (i) appointing a custodian, receiver, trustee or other officer with similar powers with respect to Grantee or with respect to any substantial part of Grantee's property, (ii) constituting an order for relief or approving a petition for relief or reorganization or arrangement or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy, insolvency or other debtors' relief law of any jurisdiction or (iii) ordering the dissolution, winding-up or liquidation of Grantee.

**11.2   Remedies Upon Event of Default**. Upon and during the continuance of an Event of Default, City may do any of the following, individually or in combination with any other remedy:

(a)    **Termination**. City may terminate this Agreement by giving a written termination notice to Grantee and, on the date specified in such notice, this Agreement shall terminate and all rights of Grantee hereunder shall be extinguished. In the event of such termination, Grantee will be paid for Eligible Expenses in any Funding Request that was submitted and approved by City prior to the date of termination specified in such notice.

(b)    **Withholding of Grant Funds**. City may withhold all or any portion of Grant Funds not yet disbursed hereunder, regardless of whether Grantee has previously submitted a Funding Request or whether City has approved the disbursement of the Grant Funds requested in any Funding Request. Any Grant Funds withheld pursuant to this Section and subsequently disbursed to Grantee after cure of applicable Events of Default shall be disbursed without interest.

(c)    **Offset**. City may offset against all or any portion of undisbursed Grant Funds hereunder or against any payments due to Grantee under any other agreement between Grantee and City the amount of any outstanding Loss incurred by any Indemnified Party, including any Loss incurred as a result of the Event of Default.

(d)    **Return of Grant Funds**. City may demand the immediate return of any previously disbursed Grant Funds that have been claimed or expended by Grantee in breach of the terms of this Agreement, together with interest thereon from the date of disbursement at the maximum rate permitted under applicable law.

**11.3   Remedies Nonexclusive**. Each of the remedies provided for in this Agreement may be exercised individually or in combination with any other remedy available hereunder or under applicable laws, rules and regulations. The remedies contained herein are in addition to all other remedies available to City at law or in equity by statute or otherwise and the exercise of any such remedy shall not preclude or in any way be deemed to waive any other remedy.

## ARTICLE 12
## DISCLOSURE OF INFORMATION AND DOCUMENTS

**12.1   Proprietary or Confidential Information of City**. Grantee understands and acknowledges that, in the performance of this Agreement or in contemplation thereof, Grantee may have access to private or confidential information that may be owned or controlled by City and that such information may contain proprietary or confidential information, the disclosure of which to third parties may be damaging to City. Grantee agrees that all information disclosed by City to Grantee shall be held in confidence and used only in the performance of this Agreement. Grantee shall exercise the same standard of care to protect such

CCSF-COH_309178

information as a reasonably prudent nonprofit entity would use to protect its own proprietary or confidential data.

**12.2  Sunshine Ordinance.** Grantee acknowledges and agrees that this Agreement and the Application Documents are subject to Section 67.24(e) of the San Francisco Administrative Code, which provides that contracts, including this Agreement, Grantee's bids, responses to Requests for Proposals (RFPs) and all other records of communications between City and persons or entities seeking contracts, shall be open to inspection immediately after a contract has been awarded. Nothing in such Section 67.24(e) (as it exists on the date hereof) requires the disclosure of a private person's or organization's net worth or other proprietary financial data submitted for qualification for a contract or other benefit until and unless that person or organization is awarded the contract or benefit. All information provided by Grantee that is covered by such Section 67.24(e) (as it may be amended from time to time) will be made available to the public upon request.

**12.3  Financial Projections.** Pursuant to San Francisco Administrative Code Section 67.32, Grantee has on or before the date hereof provided to City financial projections, including profit and loss figures, for the Project. For the term of the Agreement, Grantee, upon request shall within 90 days after the end of the Grantee's fiscal year provide to City annual financial statements for the Project certified by the Grantee as complete and accurate and audited by an independent accounting firm. The Grantee acknowledges and agrees that the financial projections and audited financial statements shall be public records subject to disclosure upon request.

**ARTICLE 13**
**ASSIGNMENTS AND SUBCONTRACTING**

**13.1  No Assignment by Grantee.** Grantee shall not, either directly or indirectly, assign, transfer, hypothecate, subcontract or delegate all or any portion of this Agreement or any rights, duties or obligations of Grantee hereunder without the prior written consent of City. This Agreement shall not, nor shall any interest herein, be assignable as to the interest of Grantee involuntarily or by operation of law without the prior written consent of City. A change of ownership or control of Grantee or a sale or transfer of substantially all of the assets of Grantee shall be deemed an assignment for purposes of this Agreement.

**13.2  Agreement Made in Violation of this Article.** Any agreement made in violation of Section 13.1 shall confer no rights on any person or entity and shall automatically be null and void.

**13.3  Subcontracting.** If Appendix I lists any permitted subgrantees, then notwithstanding any other provision of this Agreement to the contrary, Grantee shall have the right to subcontract on the terms set forth in this Section. If Appendix I is blank or specifies that there are no permitted subgrantees, then Grantee shall have no rights under this Section.

(a)    **Limitations.** In no event shall Grantee subcontract or delegate the whole of the Grant Plan. Grantee may subcontract with any of the permitted subgrantees set forth on Appendix I without the prior consent of City; provided, however, that Grantee shall not thereby be relieved from any liability or obligation under this Agreement and, as between City and Grantee, Grantee shall be responsible for the acts, defaults and omissions of any subgrantee or its agents or employees as fully as if they were the acts, defaults or omissions of Grantee. Grantee shall ensure that its subgrantees comply with all of the terms of this Agreement, insofar as they apply to the subcontracted portion of the Grant Plan. All references herein to duties and obligations of Grantee shall be deemed to pertain also to all subgrantees to the extent applicable. A default by any subgrantee shall be deemed to be an Event of Default hereunder. Nothing contained in this Agreement shall create any contractual relationship between any subgrantee and City.

CCSF-COH_309179

(b)    **Terms of Subcontract.** Each subcontract shall be in form and substance acceptable to City and shall expressly provide that it may be assigned to City without the prior consent of the subgrantee. In addition, each subcontract shall incorporate all of the terms of this Agreement, insofar as they apply to the subcontracted portion of the Grant Plan. Without limiting the scope of the foregoing, each subcontract shall provide City, with respect to the subgrantee, the audit and inspection rights set forth in Section 6.6. Upon the request of City, Grantee shall promptly furnish to City true and correct copies of each subcontract permitted hereunder.

**13.4   Grantee Retains Responsibility.** Grantee shall in all events remain liable for the performance by any assignee or subgrantee of all of the covenants terms and conditions contained in this Agreement.

**ARTICLE 14**
**INDEPENDENT CONTRACTOR STATUS**

**14.1   Nature of Agreement.** Grantee shall be deemed at all times to be an independent contractor and is solely responsible for the manner in which Grantee implements the Grant Plan and uses the Grant Funds. Grantee shall at all times remain solely liable for the acts and omissions of Grantee, its officers and directors, employees and agents. Nothing in this Agreement shall be construed as creating a partnership, joint venture, employment or agency relationship between City and Grantee.

**14.2   Direction.** Any terms in this Agreement referring to direction or instruction from the Agency or City shall be construed as providing for direction as to policy and the result of Grantee's work only, and not as to the means by which such a result is obtained.

**14.3   Consequences of Recharacterization.**

(a)    Should City, in its discretion, or a relevant taxing authority such as the Internal Revenue Service or the State Employment Development Division, or both, determine that Grantee is an employee for purposes of collection of any employment taxes, the amounts payable under this Agreement shall be reduced by amounts equal to both the employee and employer portions of the tax due (and offsetting any credits for amounts already paid by Grantee which can be applied against this liability). City shall subsequently forward such amounts to the relevant taxing authority.

(b)    Should a relevant taxing authority determine a liability for past services performed by Grantee for City, upon notification of such fact by City, Grantee shall promptly remit such amount due or arrange with City to have the amount due withheld from future payments to Grantee under this Agreement (again, offsetting any amounts already paid by Grantee which can be applied as a credit against such liability).

(c)    A determination of employment status pursuant to either subsection (a) or (b) of this Section 14.3 shall be solely for the purposes of the particular tax in question, and for all other purposes of this Agreement, Grantee shall not be considered an employee of City. Notwithstanding the foregoing, if any court, arbitrator, or administrative authority determine that Grantee is an employee for any other purpose, Grantee agrees to a reduction in City's financial liability hereunder such that the aggregate amount of Grant Funds under this Agreement does not exceed what would have been the amount of such Grant Funds had the court, arbitrator, or administrative authority had not determined that Grantee was an employee.

CCSF-COH_309180

## ARTICLE 15
## NOTICES AND OTHER COMMUNICATIONS

**15.1  Requirements.** Unless otherwise specifically provided herein, all notices, consents, directions, approvals, instructions, requests and other communications hereunder shall be in writing, shall be addressed to the person and address set forth below and shall be (a) deposited in the U.S. mail, first class, certified with return receipt requested and with appropriate postage, (b) hand delivered or (c) sent via facsimile (if a facsimile number is provided below):

|  |  |
|---|---|
| If to the Agency or City: | **SAN FRANCISCO ARTS COMMISSION**<br>**401 VAN NESS AVE #325**<br>**SAN FRANCISCO, CA 94102**<br>Attn: **ROBYNN TAKAYAMA** |
| If to Grantee: | **COALITION ON HOMELESSNESS**<br>**468 TURK STREET**<br>**SAN FRANCISCO, CA 94102** |

**15.2  Effective Date.** All communications sent in accordance with Section 15.1 shall become effective on the date of receipt. Such date of receipt shall be determined by: (a) if mailed, the return receipt, completed by the U.S. postal service; (b) if sent via hand delivery, a receipt executed by a duly authorized agent of the party to whom the notice was sent; or (c) if sent via facsimile, the date of telephonic confirmation of receipt by a duly authorized agent of the party to whom the notice was sent or, if such confirmation is not reasonably practicable, the date indicated in the facsimile machine transmission report of the party giving such notice.

**15.3  Change of Address.** From time to time any party hereto may designate a new address for purposes of this Article 15 by notice to the other party.

## ARTICLE 16
## COMPLIANCE

**16.1  RESERVED**

**16.2  Nondiscrimination; Penalties.**

(a)  **Grantee Shall Not Discriminate.** In the performance of this Agreement, Grantee agrees not to discriminate against any employee, City and County employee working with such Grantee or subgrantee, applicant for employment with such Grantee or subgrantee, or against any person seeking accommodations, advantages, facilities, privileges, services, or membership in all business, social, or other establishments or organizations, on the basis of the fact or perception of a person's race, color, creed, religion, national origin, ancestry, age, height, weight, sex, sexual orientation, gender identity, domestic partner status, marital status, disability or Acquired Immune Deficiency Syndrome or HIV status (AIDS/HIV status), or association with members of such protected classes, or in retaliation for opposition to discrimination against such classes.

(b)  **Subcontracts.** Grantee shall incorporate by reference in all subcontracts the provisions of Sections 12B.2(a), 12B.2(c)-(k), and 12C.3 of the San Francisco Administrative Code and shall require all subgrantees to comply with such provisions. Grantee's failure to comply with the obligations in this subsection shall constitute a material breach of this Agreement.

CCSF-COH_309181

(c)    **Non-Discrimination in Benefits.** Grantee does not as of the date of this Agreement and will not during the term of this Agreement, in any of its operations in San Francisco or where the work is being performed for the City or elsewhere within the United States, discriminate in the provision of bereavement leave, family medical leave, health benefits, membership or membership discounts, moving expenses, pension and retirement benefits or travel benefits, as well as any benefits other than the benefits specified above, between employees with domestic partners and employees with spouses, and/or between the domestic partners and spouses of such employees, where the domestic partnership has been registered with a governmental entity pursuant to state or local law authorizing such registration, subject to the conditions set forth in Section 12B.2(b) of the San Francisco Administrative Code.

(d)    **Condition to Contract.** As a condition to this Agreement, Grantee shall execute the "Chapter 12B Declaration: Nondiscrimination in Contracts and Benefits" form (Form CMD-12B-101) with supporting documentation and secure the approval of the form by the San Francisco Contract Monitoring Division.

(e)    **Incorporation of Administrative Code Provisions by Reference.** The provisions of Chapters 12B and 12C of the San Francisco Administrative Code are incorporated in this Section by reference and made a part of this Agreement as though fully set forth herein. Grantee shall comply fully with and be bound by all of the provisions that apply to this Agreement under such Chapters of the Administrative Code, including the remedies provided in such Chapters. Without limiting the foregoing, Grantee understands that pursuant to Sections 12B.2(h) and 12C.3(g) of the San Francisco Administrative Code, a penalty of fifty dollars ($50) for each person for each calendar day during which such person was discriminated against in violation of the provisions of this Agreement may be assessed against Grantee and/or deducted from any payments due Grantee.

**16.3  MacBride Principles--Northern Ireland.** Pursuant to San Francisco Administrative Code Section 12F.5, City urges companies doing business in Northern Ireland to move towards resolving employment inequities, and encourages such companies to abide by the MacBride Principles. City urges San Francisco companies to do business with corporations that abide by the MacBride Principles. By signing below, the person executing this agreement on behalf of Grantee acknowledges and agrees that he or she has read and understood this section

**16.4  Tropical Hardwood and Virgin Redwood Ban.** Pursuant to § 804(b) of the San Francisco Environment Code, City urges all grantees not to import, purchase, obtain, or use for any purpose, any tropical hardwood, tropical hardwood wood product, virgin redwood or virgin redwood wood product.

**16.5  Drug-Free Workplace Policy.** Grantee acknowledges that pursuant to the Federal Drug-Free Workplace Act of 1989, the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited on City premises. Grantee and its employees, agents or assigns shall comply with all terms and provisions of such Act and the rules and regulations promulgated thereunder.

**16.6  Resource Conservation; Liquidated Damages.** Chapter 5 of the San Francisco Environment Code (Resource Conservation) is incorporated herein by reference. Failure by Grantee to comply with any of the applicable requirements of Chapter 5 will be deemed a material breach of contract. If Grantee fails to comply in good faith with any of the provisions of Chapter 5, Grantee shall be liable for liquidated damages in an amount equal to Grantee's net profit under this Agreement, or five percent (5%) of the total contract amount, whichever is greater. Grantee acknowledges and agrees that the liquidated damages assessed shall be payable to City upon demand and may be offset against any monies due to Grantee from any contract with City.

CCSF-COH_309182

**16.7  Compliance with ADA.** Grantee acknowledges that, pursuant to the ADA, programs, services and other activities provided by a public entity to the public, whether directly or through a Grantee or contractor, must be accessible to the disabled public. Grantee shall not discriminate against any person protected under the ADA in connection with all or any portion of the Grant Plan and shall comply at all times with the provisions of the ADA.

**16.8.  Requiring Minimum Compensation for Employees.**

(a)     Contractor agrees to comply fully with and be bound by all of the provisions of the Minimum Compensation Ordinance (MCO), as set forth in San Francisco Administrative Code Chapter 12P (Chapter 12P), including the remedies provided, and implementing guidelines and rules. The provisions of Sections 12P.5 and 12P.5.1 of Chapter 12P are incorporated herein by reference and made a part of this Agreement as though fully set forth. The text of the MCO is available on the web at www.sfgov.org/olse/mco. A partial listing of some of Contractor's obligations under the MCO is set forth in this Section. Contractor is required to comply with all the provisions of the MCO, irrespective of the listing of obligations in this Section.

(b)     The MCO requires Contractor to pay Contractor's employees a minimum hourly gross compensation wage rate and to provide minimum compensated and uncompensated time off. The minimum wage rate may change from year to year and Contractor is obligated to keep informed of the then-current requirements. Any subcontract entered into by Contractor shall require the subcontractor to comply with the requirements of the MCO and shall contain contractual obligations substantially the same as those set forth in this Section. It is Contractor's obligation to ensure that any subcontractors of any tier under this Agreement comply with the requirements of the MCO. If any subcontractor under this Agreement fails to comply, City may pursue any of the remedies set forth in this Section against Contractor.

(c)     Contractor shall not take adverse action or otherwise discriminate against an employee or other person for the exercise or attempted exercise of rights under the MCO. Such actions, if taken within 90 days of the exercise or attempted exercise of such rights, will be rebuttably presumed to be retaliation prohibited by the MCO.

(d)     Contractor shall maintain employee and payroll records as required by the MCO. If Contractor fails to do so, it shall be presumed that the Contractor paid no more than the minimum wage required under State law.

(e)     The City is authorized to inspect Contractor's job sites and conduct interviews with employees and conduct audits of Contractor

(f)     Contractor's commitment to provide the Minimum Compensation is a material element of the City's consideration for this Agreement. The City in its sole discretion shall determine whether such a breach has occurred. The City and the public will suffer actual damage that will be impractical or extremely difficult to determine if the Contractor fails to comply with these requirements. Contractor agrees that the sums set forth in Section 12P.6.1 of the MCO as liquidated damages are not a penalty, but are reasonable estimates of the loss that the City and the public will incur for Contractor's noncompliance. The procedures governing the assessment of liquidated damages shall be those set forth in Section 12P.6.2 of Chapter 12P.

(g)     Contractor understands and agrees that if it fails to comply with the requirements of the MCO, the City shall have the right to pursue any rights or remedies available under Chapter 12P (including liquidated damages), under the terms of the contract, and under applicable law. If, within 30

CCSF-COH_309183

days after receiving written notice of a breach of this Agreement for violating the MCO, Contractor fails to cure such breach or, if such breach cannot reasonably be cured within such period of 30 days, Contractor fails to commence efforts to cure within such period, or thereafter fails diligently to pursue such cure to completion, the City shall have the right to pursue any rights or remedies available under applicable law, including those set forth in Section 12P.6(c) of Chapter 12P. Each of these remedies shall be exercisable individually or in combination with any other rights or remedies available to the City.

(h)    Contractor represents and warrants that it is not an entity that was set up, or is being used, for the purpose of evading the intent of the MCO.

(i)    If Contractor is exempt from the MCO when this Agreement is executed because the cumulative amount of agreements with this department for the fiscal year is less than $25,000, but Contractor later enters into an agreement or agreements that cause contractor to exceed that amount in a fiscal year, Contractor shall thereafter be required to comply with the MCO under this Agreement. This obligation arises on the effective date of the agreement that causes the cumulative amount of agreements between the Contractor and this department to exceed $25,000 in the fiscal year.

**16.9  Limitations on Contributions**. Through execution of this Agreement, Contractor acknowledges that it is familiar with section 1.126 of the City's Campaign and Governmental Conduct Code, which prohibits any person who contracts with the City for the rendition of personal services, for the furnishing of any material, supplies or equipment, for the sale or lease of any land or building, or for a grant, loan or loan guarantee, from making any campaign contribution to (1) an individual holding a City elective office if the contract must be approved by the individual, a board on which that individual serves, or the board of a state agency on which an appointee of that individual serves, (2) a candidate for the office held by such individual, or (3) a committee controlled by such individual, at any time from the commencement of negotiations for the contract until the later of either the termination of negotiations for such contract or six months after the date the contract is approved. Contractor acknowledges that the foregoing restriction applies only if the contract or a combination or series of contracts approved by the same individual or board in a fiscal year have a total anticipated or actual value of $50,000 or more. Contractor further acknowledges that the prohibition on contributions applies to each prospective party to the contract; each member of Contractor's board of directors; Contractor's chairperson, chief executive officer, chief financial officer and chief operating officer; any person with an ownership interest of more than 20 percent in Contractor; any subcontractor listed in the bid or contract; and any committee that is sponsored or controlled by Contractor. Additionally, Contractor acknowledges that Contractor must inform each of the persons described in the preceding sentence of the prohibitions contained in Section 1.126. Contractor further agrees to provide to City the names of each person, entity or committee described above.

**16.10  RESERVED**

**16.11  Prohibition on Political Activity with City Funds**. In accordance with S. F. Administrative Code Chapter 12.G, no funds appropriated by the City and County of San Francisco for this Agreement may be expended for organizing, creating, funding, participating in, supporting, or attempting to influence any political campaign for a candidate or for a ballot measure (collectively, "Political Activity"). The terms of San Francisco Administrative Code Chapter 12.G are incorporated herein by this reference. Accordingly, an employee working in any position funded under this Agreement shall not engage in any Political Activity during the work hours funded hereunder, nor shall any equipment or resource funded by this Agreement be used for any Political Activity. In the event Grantee, or any staff member in association with Grantee, engages in any Political Activity, then (i) Grantee shall keep and maintain appropriate records to evidence compliance with this section, and (ii) Grantee shall have the burden to prove that no funding from this Agreement has been used for such Political Activity. Grantee agrees to

CCSF-COH_309184

cooperate with any audit by the City or its designee in order to ensure compliance with this section. In the event Grantee violates the provisions of this section, the City may, in addition to any other rights or remedies available hereunder, (i) terminate this Agreement and any other agreements between Grantee and City, (ii) prohibit Grantee from bidding on or receiving any new City contract for a period of two (2) years, and (iii) obtain reimbursement of all funds previously disbursed to Grantee under this Agreement.

**16.12 Preservative-treated Wood Containing Arsenic.** Grantee may not purchase preservative-treated wood products containing arsenic in the performance of this Agreement unless an exemption from the requirements of Chapter 13 of the San Francisco Environment Code is obtained from the Department of the Environment under Section 1304 of the Code. The term "preservative-treated wood containing arsenic" shall mean wood treated with a preservative that contains arsenic, elemental arsenic, or an arsenic copper combination, including, but not limited to, chromated copper arsenate preservative, ammoniacal copper zinc arsenate preservative, or ammoniacal copper arsenate preservative. Grantee may purchase preservative-treated wood products on the list of environmentally preferable alternatives prepared and adopted by the Department of the Environment. This provision does not preclude Grantee from purchasing preservative-treated wood containing arsenic for saltwater immersion. The term "saltwater immersion" shall mean a pressure-treated wood that is used for construction purposes or facilities that are partially or totally immersed in saltwater.

**16.13 RESERVED**

**16.14 Protection of Private Information.** Grantee has read and agrees to the terms set forth in San Francisco Administrative Code Sections 12M.2, "Nondisclosure of Private Information," and 12M.3, "Enforcement" of Administrative Code Chapter 12M, "Protection of Private Information," which are incorporated herein as if fully set forth. Grantee agrees that any failure of Grantee to comply with the requirements of Section 12M.2 of this Chapter shall be a material breach of the Agreement. In such an event, in addition to any other remedies available to it under equity or law, the City may terminate the Agreement, bring a false claim action against the Grantee pursuant to Chapter 6 or Chapter 21 of the Administrative Code, or debar the Grantee.

**16.15 Public Access to Meetings and Records.** If the Grantee receives a cumulative total per year of at least $250,000 in City funds or City-administered funds and is a non-profit organization as defined in Chapter 12L of the San Francisco Administrative Code, the Grantee shall comply with and be bound by all the applicable provisions of that Chapter. By executing this Agreement, the Grantee agrees to open its meetings and records to the public in the manner set forth in Sections 12L.4 and 12L.5 of the Administrative Code. The Grantee further agrees to make good-faith efforts to promote community membership on its Board of Directors in the manner set forth in Section 12L.6 of the Administrative Code. The Grantee acknowledges that its material failure to comply with any of the provisions of this paragraph shall constitute a material breach of this Agreement. The Grantee further acknowledges that such material breach of the Agreement shall be grounds for the City to terminate and/or not renew the Agreement, partially or in its entirety.

**16.16 Consideration of Criminal History in Hiring and Employment Decisions.**

(a)     Contractor agrees to comply fully with and be bound by all of the provisions of Chapter 12T "City Contractor/Subcontractor Consideration of Criminal History in Hiring and Employment Decisions," of the San Francisco Administrative Code (Chapter 12T), including the remedies provided, and implementing regulations, as may be amended from time to time. The provisions of Chapter 12T are incorporated by reference and made a part of this Agreement as though fully set forth herein. The text of the Chapter 12T is available on the web at www.sfgov.org/olse/fco. A partial listing of some of Contractor's obligations under Chapter 12T is set forth in this Section. Contractor is required to comply

CCSF-COH_309185

with all of the applicable provisions of 12T, irrespective of the listing of obligations in this Section. Capitalized terms used in this Section and not defined in this Agreement shall have the meanings assigned to such terms in Chapter 12T.

(b)    The requirements of Chapter 12T shall only apply to a Contractor's or Subcontractor's operations to the extent those operations are in furtherance of the performance of this Agreement, shall apply only to applicants and employees who would be or are performing work in furtherance of this Agreement, shall apply only when the physical location of the employment or prospective employment of an individual is wholly or substantially within the City of San Francisco, and shall not apply when the application in a particular context would conflict with federal or state law or with a requirement of a government agency implementing federal or state law.

(c)    Contractor shall incorporate by reference in all subcontracts the provisions of Chapter 12T, and shall require all subcontractors to comply with such provisions. Contractor's failure to comply with the obligations in this subsection shall constitute a material breach of this Agreement.

(d)    Contractor or Subcontractor shall not inquire about, require disclosure of, or if such information is received base an Adverse Action on an applicant's or potential applicant for employment, or employee's: (1) Arrest not leading to a Conviction, unless the Arrest is undergoing an active pending criminal investigation or trial that has not yet been resolved; (2) participation in or completion of a diversion or a deferral of judgment program; (3) a Conviction that has been judicially dismissed, expunged, voided, invalidated, or otherwise rendered inoperative; (4) a Conviction or any other adjudication in the juvenile justice system; (5) a Conviction that is more than seven years old, from the date of sentencing; or (6) information pertaining to an offense other than a felony or misdemeanor, such as an infraction.

(e)    Contractor or Subcontractor shall not inquire about or require applicants, potential applicants for employment, or employees to disclose on any employment application the facts or details of any conviction history, unresolved arrest, or any matter identified in subsection 16.16(d), above. Contractor or Subcontractor shall not require such disclosure or make such inquiry until either after the first live interview with the person, or after a conditional offer of employment.

(f)    Contractor or Subcontractor shall state in all solicitations or advertisements for employees that are reasonably likely to reach persons who are reasonably likely to seek employment to be performed under this Agreement, that the Contractor or Subcontractor will consider for employment qualified applicants with criminal histories in a manner consistent with the requirements of Chapter 12T.

(g)    Contractor and Subcontractors shall post the notice prepared by the Office of Labor Standards Enforcement (OLSE), available on OLSE's website, in a conspicuous place at every workplace, job site, or other location under the Contractor or Subcontractor's control at which work is being done or will be done in furtherance of the performance of this Agreement. The notice shall be posted in English, Spanish, Chinese, and any language spoken by at least 5% of the employees at the workplace, job site, or other location at which it is posted.

(h)    Contractor understands and agrees that if it fails to comply with the requirements of Chapter 12T, the City shall have the right to pursue any rights or remedies available under Chapter 12T, including but not limited to, a penalty of $50 for a second violation and $100 for a subsequent violation for each employee, applicant or other person as to whom a violation occurred or continued, termination or suspension in whole or in part of this Agreement.

CCSF-COH_309186

**16.17 Food Service Waste Reduction Requirements**. Grantee agrees to comply fully with and be bound by all of the provisions of the Food Service Waste Reduction Ordinance, as set forth in San Francisco Environment Code Chapter 16, including the remedies provided, and implementing guidelines and rules. The provisions of Chapter 16 are incorporated herein by reference and made a part of this Agreement as though fully set forth. This provision is a material term of this Agreement. By entering into this Agreement, Grantee agrees that if it breaches this provision, City will suffer actual damages that will be impractical or extremely difficult to determine; further, Grantee agrees that the sum of one hundred dollars ($100) liquidated damages for the first breach, two hundred dollars ($200) liquidated damages for the second breach in the same year, and five hundred dollars ($500) liquidated damages for subsequent breaches in the same year is reasonable estimate of the damage that City will incur based on the violation, established in light of the circumstances existing at the time this Agreement was made. Such amount shall not be considered a penalty, but rather agreed monetary damages sustained by City because of Grantee's failure to comply with this provision.

**16.18 Sugar-Sweetened Beverage Prohibition**. Contractor agrees that it will not sell, provide, or otherwise distribute Sugar-Sweetened Beverages, as defined by San Francisco Administrative Code Chapter 101, as part of its performance of this Agreement.

**16.19 Compliance with Other Laws**. Without limiting the scope of any of the preceding sections of this Article 16, Grantee shall keep itself fully informed of City's Charter, codes, ordinances and regulations and all state, and federal laws, rules and regulations affecting the performance of this Agreement and shall at all times comply with such Charter codes, ordinances, and regulations rules and laws.

## ARTICLE 17
## MISCELLANEOUS

**17.1 No Waiver**. No waiver by the Agency or City of any default or breach of this Agreement shall be implied from any failure by the Agency or City to take action on account of such default if such default persists or is repeated. No express waiver by the Agency or City shall affect any default other than the default specified in the waiver and shall be operative only for the time and to the extent therein stated. Waivers by City or the Agency of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by the Agency or City of any action requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

**17.2 Modification**. This Agreement may not be modified, nor may compliance with any of its terms be waived, except by written instrument executed and approved in the same manner as this Agreement.

**17.3 Administrative Remedy for Agreement Interpretation**. Should any question arise as to the meaning or intent of this Agreement, the question shall, prior to any other action or resort to any other legal remedy, be referred to the director or president, as the case may be, of the Agency who shall decide the true meaning and intent of the Agreement. Such decision shall be final and conclusive.

**17.4 Governing Law; Venue**. The formation, interpretation and performance of this Agreement shall be governed by the laws of the State of California, without regard to its conflict of laws principles. Venue for all litigation relative to the formation, interpretation and performance of this Agreement shall be in San Francisco.

**17.5 Headings**. All article and section headings and captions contained in this Agreement are for reference only and shall not be considered in construing this Agreement.

CCSF-COH_309187

**17.6  Entire Agreement.** This Agreement and the Application Documents set forth the entire Agreement between the parties, and supersede all other oral or written provisions. If there is any conflict between the terms of this Agreement and the Application Documents, the terms of this Agreement shall govern. The following appendices are attached to and a part of this Agreement:

Appendix A, Definition of Eligible Expenses
Appendix B, Grant Plan
Appendix C, Approved Budget and Budget Narrative
Appendix D, Invoice
Appendix E, Expense Report (Template)
Appendix F, Disbursement Schedule
Appendix G, Final Reports
Appendix H, Interests in Other City Contracts
Appendix I, Permitted Subgrantees
Appendix J, Insurance Waiver (If no Insurance Waiver, delete this)

**17.7  Certified Resolution of Signatory Authority.** Upon request of City, Grantee shall deliver to City a copy of the corporate resolution(s) authorizing the execution, delivery and performance of this Agreement, certified as true, accurate and complete by the secretary or assistant secretary of Grantee.

**17.8  Severability.** Should the application of any provision of this Agreement to any particular facts or circumstances be found by a court of competent jurisdiction to be invalid or unenforceable, then (a) the validity of other provisions of this Agreement shall not be affected or impaired thereby, and (b) such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and shall be reformed without further action by the parties to the extent necessary to make such provision valid and enforceable.

**17.9  Successors; No Third-Party Beneficiaries.** Subject to the terms of Article 13, the terms of this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their successors and assigns. Nothing in this Agreement, whether express or implied, shall be construed to give any person or entity (other than the parties hereto and their respective successors and assigns and, in the case of Article 9, the Indemnified Parties) any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

**17.10  Survival of Terms.** The obligations of Grantee and the terms of the following provisions of this Agreement shall survive and continue following expiration or termination of this Agreement:

| | | | |
|---|---|---|---|
| Section 6.4 | Financial Statements. | Article 12 | Disclosure of Information and Documents |
| Section 6.5 | Books and Records. | | |
| Section 6.6 | Inspection and Audit. | Section 13.4 | Grantee Retains Responsibility. |
| Section 6.7 | Submitting False Claims; Monetary Penalties | Section 14.3 | Consequences of Recharacterization. |
| Section 6.8 | Ownership of Results. | | |
| Article 7 | Taxes | This Article 17 | Miscellaneous |
| Article 9 | Indemnification and General Liability | | |
| Section 10.4 | Required Post-Expiration Coverage. | | |

**17.11  Further Assurances.** From and after the date of this Agreement, Grantee agrees to do such things, perform such acts, and make, execute, acknowledge and deliver such documents as may be reasonably

CCSF-COH_309188

necessary or proper and usual to complete the transactions contemplated by this Agreement and to carry out the purpose of this Agreement in accordance with this Agreement.

**17.12  Cooperative Drafting.** This Agreement has been drafted through a cooperative effort of both parties, and both parties have had an opportunity to have the Agreement reviewed and revised by legal counsel.  No party shall be considered the drafter of this Agreement, and no presumption or rule that an ambiguity shall be construed against the party drafting the clause shall apply to the interpretation or enforcement of this Agreement.

CCSF-COH_309189

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first specified herein.

**CITY**

**SAN FRANCISCO ARTS COMMISSION**

By: _____
Thomas DeCaigny
Director of Cultural Affairs

Approved as to Form:

Dennis J. Herrera
City Attorney

By: _____
Lauren Curry
Deputy City Attorney

**GRANTEE:**

By signing this Agreement, I certify that I comply with the requirements of the Minimum Compensation Ordinance, which entitle Covered Employees to certain minimum hourly wages and compensated and uncompensated time off.

I have read and understood paragraph 16.3, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encouraging compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

**COALITION ON HOMELESSNESS**

By: _____

Print Name:  JACK RICE

Title: DEVELOPMENT DIRECTOR

City Supplier Number:

Grant No.: **18ACIPSJ03**

CCSF-COH_309190

### Appendix A—Definition of Eligible Expenses

The term "Eligible Expenses" shall mean expenses incurred and paid by Grantee during the term of this Agreement in implementing the terms of the Grant Plan.

All Eligible Expenses *must* be:

(a)  paid by Grantee prior to the submission of the final Funding Request. An initial disbursement of Grant Funds will be made in advance, but the remaining balance of the grant is available on a reimbursement basis only;

(b)  direct out-of-pocket expenses incurred by Grantee or its officers, directors and employees; and

(c)  within the scope of the applicable Budget line item.

Eligible Expenses shall *include:*

(1)  net salaries, wages and artistic or consultant fees;

(2)  rent or related fees for equipment, performance or meeting halls or studios;

(3)  artistic supplies;

(4)  advertising and publicity costs; and

(5)  in the case of Creative Space grants: capital improvement expenses.

Eligible Expenses shall specifically *exclude*:

(1)  personal or business-related costs or expenses related to meals or catering;

(2)  any costs or expenses which are prohibited under the terms and conditions of any federal or state grant supplying all or any portion of the Grant Funds;

(3)  penalties, late charges or interest on any late payments; and

(4)  taxes or other amounts withheld from wages or salaries which have not actually been paid by Grantee during the term of this Agreement or which relate to periods before or after the term of this Agreement.

CCSF-COH_309191

## Appendix B– Grant Plan

The following summarizes the plan proposed by the Grantee in proposal materials, including a workplan and timeline. The Grant Plan includes those details outlined in the application, except those ineligible as outlined in Appendix A or as specified by Agency staff.

**Organization:** COALITION ON HOMELESSNESS
**Grant No.:** 18ACIPSJ03
**Grant Term:** July 1, 2018 to June 30, 2019

**Outcome:** Invest in a vibrant arts community.

**Summary:** San Francisco Arts Commission funds will support a collaboration between artist/organizer Leslie Dreyer and the Coalition on Homelessness to develop a visual and story-based archive of the belongings stolen from homeless residents during the City's sweeps, documenting the loss of cherished personal items alongside articles necessary for survival. She will design workshops with homeless residents to help them develop stories and artwork contextualizing the objects within the archive. Participants will develop documentary, artistic and advocacy skills to steer right to rest and right to personal belongings campaigns.

| Activity | Outputs | Completed by: |
|---|---|---|
| 1. Conduct a 4-week workshop intensive with homeless residents including story-based strategy, creative writing, intro to photo/video, interview techniques | 4 workshops<br>10 participants | October 2018 |
| 2. Participants will spend two months in the field introducing the project in the encampments, interviewing and photographing residents, and helping them fill out claim forms to retrieve confiscated items. | 8 sessions,<br>15 participants,<br>40 stories recorded<br>40 claim forms completed | January 2019 |
| 3. Visual design strategy workshop using documentary content | 4 workshops<br>15 partcipants | March 2019 |
| 4. Public installation of the collective works produced | 1 event<br>20 participants<br>3 local, 1 national, and 1 international news stories | May 2019 |
| 5. Reflection / Evaluation / Strategy Session where participants and team discuss and evaluate their collaborative work and strategize future potential and direction for the project. | 1 meeting<br>15-20 participants<br>1 artist/trainer<br>90% of participants gained creative, advocacy & leadership skills<br>50% of participants get more involved in COH's Right to Rest campaigns | June 2019 |
| 6. Submit SFAC final report. | 1 Final Report | July 30, 2019 |

CCSF-COH_309192

## Appendix C—Approved Budget and Budget Narrative

**Organization:** Coalition on Homelessness
**Grant No.:** 18ACIPSJ03
**Grant Term:** July 1, 2018 to June 30, 2019

| Coalition on Homelessness | | | |
|---|---|---|---|
| **FY 18/19 BUDGET & NARRATIVE** | | | **7/1/18 - 6/30/19** |
| **Personnel:** | | FTE | |
| Position/Title: | Human Rights Organizer | 0.08 | $ 3,000 |
| Explanation: | $17/hour at 176 hours = $35,360 annually | | |
| | | | |
| | **Subtotal PERSONNEL:** | | **$ 3,000** |
| **Fringe Benefits:** | | | |
| Position/Title: | | | |
| Explanation: | | | |
| | **Subtotal FRINGE BENEFITS:** | | $ - |
| **OPERATING EXPENSES:** | | | |
| **Fees /Honorariums: Administrative** | | | |
| Explanation: | | | |
| **Commissions, Fees, & Honorariums: Artistic** | | | |
| Explanation: | Lead artist ($8,800), $100 honorarium for 5 artist facilitators | | $ 9,300 |
| **Fees / Honorariums: Technical & Production** | | | |
| Explanation: | | | |
| **Advertising & Marketing** | | | |
| Explanation: | | | |
| **Equipment Rental** | | | |
| Explanation: | | | |
| **Facilities / Space Rental** | | | |
| Explanation: | | | |
| **Insurance** | | | |
| Explanation: | | | |
| **Internet & Website** | | | |

CCSF-COH_309193

| | | | |
|---|---|---|---|
| Explanation: | | | |
| **Office Supplies** | | | |
| Explanation: | | | |
| **Production & Exhibition Costs** | | | |
| Explanation: | | | |
| **Program Costs** | | | |
| Explanation: | Participant stipends, supplies, and transportation | $ | 5,700 |
| **Professional Services** | | | |
| Explanation: | | | |
| **Software and Hardware** | | | |
| Explanation: | | | |
| **Other Expenses** | | | |
| Explanation: | | | |
| | **Subtotal OPERATING EXPENSES:** | $ | 15,000 |
| **SUBCONTRACTORS:** | | | |
| Name: | | | |
| Explanation: | | | |
| | **Subtotal SUBCONTRACTORS:** | $ | - |
| **ADMIN / INDIRECT** | | | |
| | Maximum allowed is 10 percent of the total grant award | $ | 2,000 |
| | **Subtotal ADMIN / INDIRECT:** | $ | 2,000 |
| **TOTAL PROPOSED GRANT BUDGET:** | | $ | 20,000 |

CCSF-COH_309194

## Appendix D--Invoice

Date: _____

Re:   **Grant Category: FY2018-2019 Artists and Communities in Partnership - Social Justice**

**Arts Commission Resolution No.** 0507-18-155    **Grant No.** 18ACIPSJ03
**Grantee:**          **Coalition on Homelessness**
Payee Address:        468 Turk Street
                      San Francisco, CA 94102

Pursuant to Section 5.3 of the Grant Agreement (the "Grant Agreement") between the undersigned ("Grantee") and the City and County of San Francisco, Grantee hereby requests a disbursement of Grant Funds as follows:

Disbursement No. (1st, 2nd, 3rd etc. )                        _____

Maximum Amount of Grant Funds Specified in Section 5.1 of the Grant    $20,000
Agreement:

Total of All Grant Funds Disbursed Prior to this Request:       $_____

Amount of this Disbursement:                                   $_____

Balance of Grant Funds Available After this Request            $_____

Grantee certifies that:
(a)  The total amount of Grant Funds requested will be/have been used to pay Eligible Expenses, as described in Appendix A.
(b)  Reimbursable funds were expended within the eligible grant window. If project activities continued beyond the grant window, an extension request has been filed with Community Investments staff.
(c)  Final documentation of expenses includes true and correct copies of all required documentation of these Eligible Expenses.
(d)  Grantee has not defaulted on the grant; and
(e)  The undersigned is an Officer of Grantee authorized to execute this Funding Request on behalf of Grantee.

Signed: _____    Title: _____

Print name: _____           Phone: _____

Do not write below this line, for staff use only:

Invoice number:_____    _____    Date received: _____    Final Report: _____

Approved by: _____    _____    _____

G-100 (9-15)                      D-1                      **June 15, 2018**

CCSF-COH_309195

By signing this Agreement, I certify that I comply with the requirements of the Minimum Compensation Ordinance, which entitle Covered Employees to certain minimum hourly wages and compensated and uncompensated time off.

I have read and understood paragraph 16.3, the City's statement urging companies doing business in Northern Ireland to move towards resolving employment inequities, encouraging compliance with the MacBride Principles, and urging San Francisco companies to do business with corporations that abide by the MacBride Principles.

**Coalition on Homelessness**

By _____ _Rice_

Print Name    JACK RICE

Title    DEVELOPMENT
         DIRECTOR

CCSF-COH_309196

## Appendix E – Expense Report / Schedule 1

The following is an itemized list of Eligible Expenses for which Grant Funds are requested:

**PERSONNEL**

| Payee | Amount | Description |
|-------|--------|-------------|
|       |        |             |
|       |        |             |
|       |        |             |
|       |        |             |

**OPERATING EXPENSES**

| Payee | Amount | Description |
|-------|--------|-------------|
|       |        |             |
|       |        |             |
|       |        |             |
|       |        |             |

**SUBCONTRACTORS**

| Payee | Amount | Description |
|-------|--------|-------------|
|       |        |             |
|       |        |             |
|       |        |             |
|       |        |             |

The following are attached as part of this Schedule 1:

    (1)    an invoice for each item of Eligible Expense for which Grant Funds are requested;

    (2)    the front and the back of canceled checks or other written evidence documenting the payment of each invoice;

    (3)    for Eligible Expenses which are wages or salaries, payroll registers containing a detailed breakdown of earnings and withholdings, together with both sides of canceled payroll checks evidencing payment thereof (unless payment has been made electronically).

CCSF-COH_309197

**Appendix F – Disbursement Schedule**

**Organization:** Coalition on Homelessness
**Grant No.:** 18ACIPSJ03
**Grant Term:** July 1, 2018 to June 30, 2019

The Grant shall be paid in two disbursements outlined below. An initial advance will be disbursed upon completion of required paperwork, including execution of the Grant Agreement and satisfactory submission of all necessary compliance documentation, contracts, and prior grant reports. The Interim and/or Final Invoice must be accompanied by an appropriate report and include Appendix E Expense Report, third party proof of payments, and any relevant compliance documentation.

|  | Due Date | Amount |
|---|---|---|
| **Initial Disbursement:**<br>Upon receipt of signed grant agreement, SFAC will advance 75 percent of the award amount to the grantee. | July 1, 2018 | $15,000 |
| **Final Invoice:**<br>Upon approval of final Invoice that reflects expenditures to date and proof of payment(s), and the required final report, SFAC will disburse the final 25 percent of the award amount to the grantee. | July 30, 2019 | $5,000 |
| **Total Grant Amount:** |  | $20,000 |

CCSF-COH_309198

## Appendix G – Final Reports, Offset and Default Policies

**Grantees must submit a satisfactory final report and supporting documentation within thirty (30) days of the end of the grant window.** If a final report and supporting documentation is not received within that period, the grantee will have breached the Grant Agreement and be considered in default. It is the grantees responsibility for timely submission: a reminder will not necessarily be sent toward the end of the grant period. The most up-to-date report forms are always available for download at the Community Investments website: *http://www.sfartscommission.org/information-for/grantees*

**Offset Policy**
The following policy was adopted by the San Francisco Arts Commission (SFAC) by Resolution No. 0306-17-050 on March 6, 2017. This policy applies to late submissions under SFAC grant agreements. The purposes of this policy are 1) to provide Grantees with the SFAC's procedures for handling events of default concerning late submissions -under a grant agreement; and 2) to reduce the number of events of default.

A. **Grant Agreement Requirements:**

1. Grantees are required to comply with all submission requirements in a prompt and timely manner including invoices, reports, images, and financial documentation as required by SFAC and as identified in a Grantee's executed grant agreement according to the timelines set forth in such agreement.

2. Grantees who fail to adhere to the timelines for a period of ten (10) days after the submission due date are in default under the grant agreement.

3. If a Grantee is in default, the grant agreement provides that SFAC may:
   a. terminate the grant agreement;
   b. withhold grant funds not yet disbursed;
   c. offset against all or any portion of undisbursed grant funds; and
   d. demand the immediate return of any grant funds.

B. **Late Submission:** Late submission is defined as the submission of all required documents at any time beyond 5 p.m. of the due date. If the required submission (due) date is not on a regular business day (i.e., Saturday or Sunday) or falls on a County-established/recognized holiday, then a submission is deemed late if not received by 12:00 PM Monday, or subsequent workday (following a holiday).

C. **Complete Submissions:** A submission requirement is defined to be satisfactorily met when all required documents are received by SFAC, in full and with all required supporting documentation.

D. **Offset Schedule:** For each instance in which a grantee fails to comply with submission requirement due dates SFAC will offset undisbursed grant funds as follow:

   a. $50/day: For <u>each</u> business day a submission is late during the first calendar week beyond the submission requirements deadline.
   b. $100/day: For <u>each</u> business day a submission is late during the second calendar week beyond the submission requirements deadline.
   c. $250/day: For <u>each</u> business day a submission is late during the third calendar week beyond the submission requirements deadline.

   If a Grantee fails to meet submission requirements within three (3) calendar weeks beyond the submission deadline, the program director shall place the grantee in default, and may

CCSF-COH_309199

institute additional remedies under the grant agreement, up to and including immediate return of grant funds and/or contract termination as provided by the grant agreement.

E.   Offsets will be applied to a Grantee's indirect expenses line item.  If no such line item exists for a particular grantee, the offset will be applied to a line item at the discretion of the senior program officer.

**Opportunities to Cure an Event of Default:**

1.  **Extension Requests:** If a Grantee anticipates being unable to meet submission requirements, SFAC will provide Grantee with a cure period subject to the following conditions:

    a.   Grantee must submit a written extension request to SFAC no later than 15 days before the submission requirement due date (Extension Request).

    b.   Extension Requests must specifically reference:
        i.   the required document(s) for which an extension is requested;
        ii.  the proposed date by which SFAC will receive the document(s); and
        iii. the rationale for the Extension Request.

    c.   Submission of an Extension Request does not constitute approval of the request. The program officer will receive and act on submitted requests.

    d.   SFAC will notify the Grantee of the outcome of Grantee's submitted request within two (2) business days of receipt.

    e.   Allowable length of extension, if approved:  Extension Requests shall be for no more than 30 calendar days beyond the regularly scheduled due date.  No additional extensions beyond the initial approved extension will be granted for a specific submission requirement.

**Default Policy**
If a final report and required documentation is not received within three weeks of the due date, the grantee will have breached the Grant Agreement and be considered in default. Grantees in default will be ineligible to apply to Community Investments until an adequate final report and supporting documentation is received, plus three years. In addition, any remaining balance on the grant in default will be dissolved. In those cases when there are outstanding reports for a project for which an individual artists and an associated organization may have received grant support for different project phases, both artist and organization will be held accountable and in default.

**Grantee Appeal Process:**
If a Grantee does not agree with an imposed offset or default, an appeal may be submitted to the Arts Commission per the SFAC appeals policy.  However, appeals will only be considered for an instance in which a Grantee claims the imposition of an offset or default was not done in accordance with the grant agreement and this Policy.

    a.   Mere disagreement with an imposed offset does not constitute grounds for an appeal.
    b.   An imposed offset may not be appealed in cases in which a late submission has occurred and a Grantee failed to submit an Extension Request.

CCSF-COH_309200

**Appendix H--Interests In Other City Contracts**

| City Department or Commission | Date of Contract | Amount of Contract |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CCSF-COH_309201

## Appendix I--Permitted Subgrantees

None

CCSF-COH_309202