January 21, 2025

**VIA ECF**

Hon. Donna M. Ryu, Chief United States Magistrate Judge
United States District Court, Northern District of California Oakland
Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Re:   Discovery Letter re: Notice of Physical Inspection of Property
       <u>Coalition on Homelessness, et al., v. City and County of San Francisco, et. al.</u>, Case No. 4:22-cv-05502-DMR

Dear Judge Ryu,

The parties write pursuant to the Court's Standing Order ¶ 14 regarding a discovery dispute over Plaintiffs' Notice of Physical Inspection of Property ("Inspection Notice") of the San Fransisco Department of Public Works Operation Yard ("DPW Yard"), served on December 16, 2024. Defendants (the "City") objected to the inspection in its entirety by written response ("Response"). The Inspection Notice and Response are attached together as **Exhibit A**. The parties met and conferred by telephone on January 13, 2025 and conferred by email both before and after that meeting. The City has offered to permit an inspection of 30 minutes with other limitations, as described below, but Plaintiffs assert that the proposed limitations are not appropriate under Fed. R. Civ. P. 34(a)(2).

Upcoming case management deadlines: close of fact discovery (Mar. 10, 2025), close of expert discovery (Apr. 14, 2025), case management conference (Apr. 2, 2024), last day to hear dispositive motions (May 8, 2025), pretrial conference (July 9, 2025), and trial (July 28, 2025).

**Plaintiffs' Position**: Plaintiffs seek to inspect and photograph the DPW Yard, in particular, the areas for the receipt and storage of items "bagged and tagged," as well as corresponding records, policies and procedures, and processes governing the receipt, storage, and retrieval of such items.

The physical premises of the DPW Yard are relevant: even when the City purportedly bags and tags property, individuals cannot retrieve the property from the DPW Yard due to either malfeasance or nonfeasance (or both) of City personnel in failing to preserve property at the Yard, and/or failing to maintain it in a manner such that property can be located for return to individuals who come to claim it. *See, e.g.*, TAC, ¶¶ 140-41, 160-63 & pp. 63, 65. These allegations are powerfully supported by numerous declarations of witnesses who have been thwarted in their efforts to retrieve their belongings from the Yard. *See, e.g.,* Castano Decl., Dkt. 9-4 at p. 5, ¶ 10; Martinez Decl., Dkt. 9-4, at p. 22, ¶ 10; Bryant Decl., Dkt. 9-6, at p. 4, ¶ 6; Jones Decl., Dkt. 9-6, at pp. 52-53, ¶ 8. Whether the process at the DPW yard is an adequate post-seizure opportunity to retrieve seized property is legally relevant to Plaintiff's due process claims. For its party, the City argues that the retrieval process at the DPW yard is adequate, but has not rebutted any of Plaintiffs' declarations, notwithstanding the immaterial comments in its

1

footnote. *See* Amended Answer, Dkt. 198, at 52; Dkt. 45 at 13; Dkt. 45 at 8 (citing declaration of Darryl Dilworth Decl. ¶ 8); *see also* Khaled Shehadeh Decl. ¶ 20, Dkt. 143-93.

Plaintiffs are entitled to inspect the DPW Yard to test whether the City properly stores bagged and tagged items at the DPW Yard; whether it has in place systems and operations that enable it to receive, store, track, and retrieve them so that when a person comes to retrieve their belongings, they can be found and returned to them. If these systems are not in place, and items cannot be retrieved to be returned, from the point of view of the property owner, the result is no different than if the property had been destroyed at the point of seizure. (Except, of course, that the person has also had to endure a fruitless trip to the Yard.) Unrebutted evidence to date suggests that the City's systems for storage and retrieval of property are either seriously deficient or non-existent.

Having established the relevance of an inspection under Rule 34, the "heavy burden of clarifying, explaining, and supporting its objections" to the inspection shifts to the City. *Fratus v. Cnty. of Contra Costa*, No. 14-cv-05533, 2015 WL 4538076, at *2–3 (N.D. Cal. July 27, 2015). The City cannot do so. First, a deposition of a City worker is insufficient because testimony cannot replace a physical observation of the size of the space allocated for items, the condition of the storage area, the physical tagging process, and how and where the forms are physically stored in relation to the bagged and tagged items. Inspection of a "process" is authorized by FRCP 34(a)(2) and relevant caselaw. *See, e.g.*, *Panolam Indus. Int'l, Inc. v. F & F Composite Grp. Inc.*, No. 07-cv-1721, 2009 WL 3837141, at *1 (D. Conn. Nov. 12, 2009); *Eirhart v. Libbey-Owens-Ford Co.*, 93 F.R.D. 370, 372 (N.D. Ill. 1981); Jay E. Grenig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery and Disclosure § 9:12 (4th ed.) ("Fed. R. Civ. P. 34(a) also permits the observation of machinery, work practices, or manufacturing operations on a party's premises.").

Second, the City's two claims of burden—interference with DPW yard operations and safety concerns—are unpersuasive. The City cannot seriously propose that "taking [one or two] take DPW employees away from their regular duties for three hours" is an undue burden in the context of the serious constitutional deprivations that led the Court to issue its preliminary injunction. Equally unconvincing is the City's observation that the inspection would be "in and around the path of large vehicles and trucks." The City should have no trouble protecting a small group of people from these vehicles; DPW is, in fact, in the business of protecting workers from vehicles during its routine "street repair, building repair, and street cleaning" operations. This claim is also belied by the City's permitting a television news crew to film and broadcast the storage process at the DPW yard.[1] Not only did the news crew interview a DPW worker for his explanation of the purported retrieval process, but also publicly broadcasted the exterior of the containers and other parts of the DPW yard. Plaintiffs do not object to maintaining photographs taken during the inspection as "Attorneys' Eyes Only."

<u>Plaintiffs' Final Proposed Compromise and City's response</u>: Plaintiffs propose that three people—an investigator/photographer, an attorney, and an expert—conduct the inspection on

---

[1] Lauren Toms, *Items from SF Homeless Encampments Being Closely Watched as Sweeps Ramp Up*, CBS NEWS BAY AREA (Aug. 1, 2024), https://www.cbsnews.com/sanfrancisco/news/sf-homeless-sweeps-items-seized-closely-watched-rising-enforcement/ ("Edgar Garcia of the San Francisco Department of Public Works shows CBS News Bay Area belongings that were stored following a homeless encampment sweep, August 1, 2024.").

January 22, 2025 for no longer than three hours. Plaintiffs would inspect and photograph the containers where property is stored, the immediate surrounding areas, and the processes by which property is received, logged, stored, and retrieved. Plaintiffs would inspect and photograph, the systems and operations used by City employees to catalog, track, place, and retrieve seized items, such as whether these are paper files kept in a file cabinet or computerized files maintained in an electronic database, the placement of items in a particular bin, shelf, or room in the Yard, the processes by which the City determines that items that have not been claimed in a certain amount of time can be discarded, and the processes used by City employees to search for and locate items when an individual comes to claim them. Plaintiffs do not seek to seize or collect any individual document or take any testimony, but are entitled to a brief demonstration of how these operations are carried out, and identification of the *types* of records used or accessed by City employees in these operations. The City has demanded that the inspection be limited to two people, and that Plaintiffs be limited viewing the storage containers themselves, refusing to permit Plaintiffs to inspect any other areas or any of the *processes* for receipt, logging, storage, and retrieval of possessions that take place at the Yard, notwithstanding the clear language of FRCP 34(a)(2). The City has also demanded that the visit be limited to only 30 minutes, with a proposal to "meet and confer" on the spot if Plaintiffs' desire an additional 30 minutes, which Plaintiffs view as unworkable and unjustified.

**Defendant's Position:** Plaintiffs' demand for a burdensome inspection of the DPW Operations Yard and its processes should be rejected for several reasons. The Yard and its processes are not "relevant to any party's claim or defense" and not "proportional to the needs of the case." Even if they were, documentary evidence and DPW employee testimony has been and will be provided, rendering any visit unnecessary and needlessly burdensome. Despite this, Defendants offered a reasonable inspection of the Yard, but Plaintiffs refused to compromise.

The DPW Operations Yard does much more than just store bag-and-tagged items. It is the nerve center for most of DPW's operations across the City and County of San Francisco (the "City"), including street repair, building repair, and street cleaning. Bag-and-tagged items are stored in five shipping containers and an additional storage area that comprise a small portion of the Yard. Plaintiffs were permitted to have two individuals access the Yard, visually inspect the storage containers where bag-and-tagged items are stored, and take photographs of the containers, including their insides. The DPW Operations Yard is a working yard with large vehicles and trucks frequently coming and going. And Plaintiffs' two representatives would not be the only people present for any inspection. They would be accompanied by defense counsel and a defense investigator, and one or two DPW employees. The areas where Plaintiffs' representatives and City employees would have to stand and congregate and move around to inspect and photograph the storage containers would be in and around the path of large vehicles and trucks. Defendants also offered a reasonable time, up to 30 minutes to an hour, for the inspection of the storage containers. Inspecting and photographing six storage containers will not reasonably require more than an hour. There is no need to take DPW employees away from their regular duties for three hours. CBS News's visit to the Yard was no more than approximately 30 minutes, and consisted of no more than two individuals. Defendants' offer would have provided Plaintiffs access to, and the opportunity photograph, the storage containers shown in the CBS News video Plaintiffs cite, *plus more*.

Defendants' offer was more than reasonable given the dearth of any relevance to Plaintiffs' claims in this case. "Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 659 (C.D.

Cal. 2005) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir.1978)). Here, there is no need for an inspection of the DPW Operations Yard at all.

The "complaint guides the parties' discovery." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *see also O'Campo v. Chico Crossroads*, No. CV S-10-1100-KJM-CMK, 2011 WL 5241351, at *3 (E.D. Cal. Oct. 31, 2011) ("The only issues properly before the court to determine are those actually raised in the complaint" (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011))). And the Third Amended Complaint ("TAC") contains no allegation that any individual plaintiff or Coalition member has encountered any issues recovering bag-and-tagged property due to any aspect of their storage (as opposed to not having their items bagged-and-tagged in the first instance). The clear gravamen of the TAC concerns the alleged summary destruction of property without bagging-and-tagging; it does not address the storage of bagged-and-tagged items at DPW's Operation Yard.

Plaintiffs cite Paragraphs 140 and 141 of the TAC, but those two conclusory paragraphs about the alleged experience of unspecified non-party "unhoused individuals" is insufficient to state a claim or justify an inspection of the DPW Operations Yard. *See, e.g., Jacobs v. Winkleblack*, No. 17-cv-067900, 2018 WL 827960, at *4-5 (N.D. Cal. Feb. 12, 2018) ("To comply with Rule 8," a plaintiff "must at a minimum lay out each . . . procedural due process claim he asserts and, for each one" "[i]dentify what the precise property deprivation was and when it happened," and "what caused the deprivation."). "[A] plaintiff seeking discovery cannot rely upon vague or conclusory allegations in its complaint as a basis" for discovery. *Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 2184304, at *3 (S.D. Cal. May 11, 2015) (finding "allegations in support of [plaintiff's] claims are conclusory" and "cannot serve as the basis for discovery aimed at fishing for a possible claim" (citations omitted)).

Plaintiffs also cite certain paragraphs from declarations they filed with their motion for preliminary injunction, but none of the cited assertions are in the TAC and none provide any support for Plaintiffs' baseless assertion that the Yard is so deficient that it amounts to no post-deprivation remedy. In fact, none of the declarants claim they went to the Yard within 90 days of their property being bagged and tagged or that their bag-and-tagged items, if any, were stolen from the Yard or lost by DPW.[2]

Indeed, no plaintiff—remaining or previously dismissed—has alleged they suffered any injury as a result of any aspect of the DPW Operations Yard and thus no plaintiff—remaining or previously dismissed—has standing for any claim concerning the retrieval of bag-and-tagged items from the DPW Operations Yard. And even if a plaintiff had standing, a physical inspection of the DPW Operations Yard would still be beyond the scope of discovery because there would still be no claim concerning the DPW Operations Yard by any plaintiff or Coalition member in the complaint, over two years since they filed suit. *See O'Campo*, 2011 WL 5241351, at *3 (rejecting inspection of entire facility where disabled plaintiff's complaint only concerned barriers in the restroom even though plaintiff had standing to challenge additional barriers not in the complaint). Any such allegation of the DPW Operations Yard losing bag-and-tagged property would also fail to state a claim upon which relief can be granted. *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (holding a government official's negligent act causing unintended loss of life, liberty, or property does not implicate due process clause); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (state tort remedies were sufficient post-deprivation remedy that satisfied procedural due process where prison lost prisoner's package when the normal procedure for receipt of mail packages were not followed).

---

[2] And at least one of the declarations on which Plaintiff rely, that of Toro Castaño, was not even prepared for this lawsuit, belying Plaintiffs' contention their actual claims in this lawsuit concern the DPW Operations Yard. (ECF No. 295-14, Castaño Depo. Tr. at 187:1-191:15.) Mr. Castaño is also no longer a plaintiff because he lacked standing. (*See* ECF No. 281 at 23-24.) And has been noted previously, once Plaintiffs' declarants have been deposed, the credibility of the assertions in their declarations have been called into serious doubt. (*See, e.g.*, ECF No. 257 (withdrawing a declaration pending before the Court following the declarant's deposition).)

Moreover, the information Plaintiffs purport to be seeking has been and will be available—and more easily available—through depositions and documents. Defendants have produced, and are producing on a periodic basis, bag and tag intake forms (completed when items are bag-and-tagged) and printouts of the bag and tag log (which is an excel spreadsheet that tracks items bag-and-tagged). Defendants have produced photographs of inside the storage containers. Plaintiffs have deposed Jonathan Vaing—the Assistant Superintendent of the DPW bureau primarily concerned with cleaning streets, curbs, and other City rights-of-way, including DPW employees who work with Healthy Streets Operation Center ("HSOC") operations, and who drafted and presented DPW's bag-and-tag training (ECF No. 238-1, Vaing Decl.)—about DPW's storage of bag-and-tagged items. Plaintiffs asked him to "walk through that process" for storing and retrieving bag-and-tagged items "step by step." (Vaing Depo. Rough Tr. at 145:4-150:19.) Plaintiffs will also be deposing Edgar Garcia, who is the Operations Supervisor for Special Projects at DPW, and is "responsible for overseeing the logging, storing, maintaining, and returning of property stored by DPW under the bag and tag policy" (ECF No. 238-8, Garcia Decl.). The City also offered to make available a 30(b)(6) witness to testify about the logging, storing, maintaining, and returning of items bag-and-tagged by DPW, in lieu of a burdensome physical inspection of the DPW Operations Yard—which offer Plaintiffs rejected.

There is simply no need for a physical inspection of the DPW Operations Yard. Should the Court be inclined to grant Plaintiffs an inspection of the Yard anyway, the Court should nevertheless deny Plaintiffs' request for "demonstrations" of DPW's operations. Plaintiffs are not entitled to any such demonstrations. "Rule 34 does not require a party to perform tests or demonstrations for a requesting, opposing party." *L.H. v. Schwarzenegger*, No. S.-06-2042 LKK GGH, 2008 WL 782734, at *5 (E.D. Cal. Mar. 20, 2008) (citing *Sperberg v. Firestone Tire and Rubber Co.*, 61 F.R.D. 80 (N.D. Ohio 1973)) (rejecting plaintiffs request that defendants "demonstrate how [their] database systems work and perform requested queries"); *see also Garcia v. Cnty. of Riverside*, No. ED CV 13-616-JGB (SPx), 2017 WL 11917348, at *3-4 (C.D. Cal. Aug. 9, 2017) (rejecting plaintiff's request "to require one of the County's agents to demonstrate how the County's equipment or database queries operate" and agreeing "with the finding in *L.H.* that nothing in Rule 34 authorizes the court to require defendants to perform a demonstration of their equipment or perform requested queries").


/s/_William S. Freeman_
Attorney for Plaintiffs


/s/_Edmund T. Wang___
Attorney for Defendants