**REDACTED VERSION OF DOCUMENT PROVISIONALLY FILED UNDER SEAL**

1  DAVID CHIU, State Bar #189542
   City Attorney
2  YVONNE R. MERÉ, State Bar #173594
   Chief Deputy City Attorney
3  EDMUND T. WANG, State Bar #278755
   KAITLYN M. MURPHY, State Bar #293309
4  MIGUEL A. GRADILLA, State Bar #304125
   JOHN H. GEORGE, State Bar #292332
5  STEVEN A. MILLS, State Bar #328016
   Deputy City Attorneys
6  City Hall, Room 234
   1 Dr. Carlton B. Goodlett Place
7  San Francisco, California 94102-4682
   Telephone:     (415) 554-3857 (Wang)
8                 (415) 554-6762 (Murphy)
                  (415) 554-3870 (Gradilla)
9                 (415) 554-4223 (George)
                  (415) 355-3304 (Mills)
10 Facsimile:     (415) 554-4699
   E-mail:        edmund.wang@sfcityatty.org
11                kaitlyn.murphy@sfcityatty.org
                  miguel.gradilla@sfcityatty.org
12                john.george@sfcityatty.org
                  steven.mills@sfcityatty.org
13
   Attorneys for Defendants
14 CITY AND COUNTY OF SAN FRANCISCO, et al.

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 COALITION ON HOMELESSNESS; TORO          Case No. 4:22-cv-05502-DMR (LJC)
   CASTAÑO; SARAH CRONK; JOSHUA
18 DONOHOE; MOLIQUE FRANK; DAVID            **DEFENDANTS' NOTICE OF MOTION AND**
   MARTINEZ; TERESA SANDOVAL;               **PARTIAL MOTION TO DISMISS THE THIRD**
19 NATHANIEL VAUGHN,                        **AMENDED COMPLAINT**

20          Plaintiffs,                     Hearing Date:    February 27, 2025
                                            Time:            1:00 p.m.
21      vs.                                 Place:           Courtroom 4 – 3rd floor
                                                             1301 Clay Street
22 CITY AND COUNTY OF SAN                                    Oakland, CA 94612
   FRANCISCO, et al.,
23                                          Trial Date:      July 28, 2025
            Defendants.
24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 3

    I.        INTRODUCTION ....................................................................................... 3

    II.      PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS ......................... 3

    III.    LEGAL STANDARDS ................................................................................. 4

    IV.   ARGUMENT ............................................................................................... 6

         A.     Coalition Lacks Standing For Its Own Individual Claims. ......................... 6

               1.     Coalition Did Not Lose Any Property Because Of The City's Conduct. ........................................................................................... 6

               2.     Coalition's New Allegations Do Not Support Organizational Standing. ....................................................................................... 9

               3.     Evidence Contradicts The Organizational Standing Allegations ... 12

    V.     CONCLUSION .......................................................................................... 15

1

## **TABLE OF AUTHORITIES**

**Federal Cases**

*3C, LLC v. Rokita*
No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) ....................15

*Apartment of Ass'n of Greater Los Angeles v. City of Los Angeles*,
No. 21-55623, 2022 WL 3369526 (9th Cir. Aug. 16, 2022) ......................................................7

*Ariz. All. for Retired Ams. v. Mayes*
117 F.4th 1165 (9th Cir. 2024) ...............................................................................6, 9, 10, 11

*Berezovsky v. Moniz*
869 F.3d 923 (9th Cir. 2017) ..................................................................................................8

*City of Grants Pass v. Johnson*
603 U.S. 520 (2024).............................................................................................................3, 10

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983)..................................................................................................................11

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013).............................................................................................5, 11, 12, 13

*F.D.A. v. Alliance for Hippocratic Med.*
602 U.S. 367 (2024)......................................................................................................9, 10, 11

*Fleck & Assocs., Inc. v. City of Phoenix*
471 F.3d 1100 (9th Cir. 2006) ................................................................................................6

*Freedom From Religion Found., Inc. v. Weber*
951 F. Supp. 2d 1123 (D. Mont. June 25, 2013) .................................................................15

*Gill v. Whitford*
585 U.S. 48 (2018)...................................................................................................................7

*Guatay Christian Fellowship v. Cnty. of San Diego*
670 F.3d 957 (9th Cir. 2011) ..................................................................................................7

*Havens Realty Corporation v. Coleman*
455 U.S. 363 (1982)...........................................................................................................9, 10

*Hodgers-Durgin v. De La Vina*
199 F.3d 1037 (9th Cir. 1999) ..............................................................................................11

*Holohan v. Massanari*
246 F.3d 1195 (9th Cir. 2001) ................................................................................................7

*Jones v. L.A. Cent. Plaza LLC*
74 F.4th 1053 (9th Cir. 2023) .................................................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*
  511 U.S. 375 (1994)........................................................................................4, 5

*Lavan v. City of Los Angeles*
  693 F.3d 1022 (9th Cir. 2012) ....................................................................6

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014) ....................................................................5

*Longoria v. Pinal Cnty.*
  873 F.3d 699 (9th Cir. 2017) ......................................................................8

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992)............................................................5, 8, 10, 11

*Mabe v. San Bernadino Cnty.*
  237 F.3d 1101 (9th Cir. 2001) ....................................................................8

*Murthy v. Missouri*
  603 U.S. 43 (2024)........................................................................................5

*Nicholson v. City of Los Angeles*
  935 F.3d 685 (9th Cir. 2019) ......................................................................7

*Nielsen v. Thornell*
  101 F.4th 1164 (9th Cir. 2024) ..................................................................10

*Pierce v. Ducey*
  965 F.3d 1085 (9th Cir. 2020) ..................................................................10

*Plumhoff v. Rickard*
  572 U.S. 765 (2014)......................................................................................7

*Rios v. Cnty. of Sacramento*
  562 F. Supp. 3d. 999 (E.D. Cal. 2021) ......................................................8

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004) ....................................................................5

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016)..................................................................................5, 7

*Steel Co. v. Citizens for a Better Env't*
  523 U.S. 83 (1998)........................................................................................8

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
  368 F.3d 1053 (9th Cir. 2004) ....................................................................7

*Thole v. U.S. Bank N.A.*
  590 U.S. 538 (2020)....................................................................................10

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ...................................................................................................8

*United States v. Baker*
    58 F.4th 1109 (9th Cir. 2023) ......................................................................................6

*United States v. Texas*
    599 U.S. 670 (2023) ..............................................................................................8, 10

*Warth v. Seldin*
    422 U.S. 490 (1975) ...............................................................................................6, 7

*Wright v. SEIU Local 503*
    48 F.4th 1112 (9th Cir. 2022) ......................................................................................7

**Constitutional Provisions**
U.S. Const.
    Article III ..........................................................................................................7, 10
    Amend. IV ..................................................................................................3, 4, 6, 7, 8
    Amend. XIV, § 1 [Due Process Clause] .......................................................3, 4, 6, 7, 8

Cal. Const.
    Article I, § 7(a) ...........................................................................................................
    Article I, § 13 ...............................................................................................................4
    Article I, § 15 ...............................................................................................................4

**Federal Statutes**
42 U.S.C. § 1983 ................................................................................................................7

**Rules**
Fed. R. Civ. P.
    Rule 11 ..........................................................................................................................8
    Rule 12(b)(1) ...............................................................................................................1, 4
    Rule 12(b)(6) .................................................................................................................1

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on February 27, 2025, at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco," the "City," or "Defendants") will and hereby do move this Court to dismiss all claims brought by Plaintiff Coalition on Homelessness ("Coalition") in its individual capacity pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, the City moves the Court to dismiss the claims brought by the Coalition for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Coalition does not allege that its property has been taken or destroyed or that it has been deprived of any due process.

The City bases its motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declaration of Steven Mills in support, the pleadings and papers submitted in this action, and such other argument or evidence that may be presented to the Court.

1   Dated:  January 23, 2025

2                                          DAVID CHIU
                                           City Attorney
3                                          YVONNE R. MERÉ
                                           EDMUND T. WANG
4                                          KAITLYN MURPHY
                                           MIGUEL A. GRADILLA
5                                          JOHN H. GEORGE
                                           STEVEN A. MILLS
6                                          Deputy City Attorneys

7
                                    By:  s/Steven A. Mills
8                                          STEVEN A. MILLS

9
                                           Attorneys for Defendants
10                                         CITY AND COUNTY OF SAN FRANCISCO; SAN
                                           FRANCISCO POLICE DEPARTMENT; SAN
11                                         FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                                           SAN FRANCISCO DEPARTMENT OF
12                                         HOMELESSNESS AND SUPPORTIVE HOUSING;
                                           SAN FRANCISCO FIRE DEPARTMENT; SAN
13                                         FRANCISCO DEPARTMENT OF EMERGENCY
                                           MANAGEMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Court's Order granting in part and denying in part the City's[1] motion to dismiss the Second Amended Complaint found that the Coalition on Homelessness ("Coalition") lacked organizational standing to bring Fourth Amendment, Due Process, and related state law claims in its own right. Plaintiffs amended their complaint to add allegations directed toward Coalition's organizational standing to justify its individual claims. These allegations create more problems than they solve because Coalition has already admitted in the course of litigation that it has not had its property taken and makes no plausible allegations to the contrary. Under traditional rules applicable to property claims, Coalition does not have standing and its individual claims must be dismissed. Because Coalition does not have standing under the traditional rules applicable to its claims, Coalition bases its claims on the fact that the City's displacement of encampments hinders Coalition's ability to obtain and retain members. But displacement is lawful following *Grants Pass* and none of Coalition's new injuries are cognizable in the property-based claims it seeks to raise in its own right. While the claims can be dismissed based on dispositive legal questions, the facts behind Coalition's allegations underscore myriad issues with traceability and redressability that cannot satisfy the demanding standing requirements for systematic injunctive relief. Accordingly, the Court should grant the City's motion and dismiss Coalition's individual claims once and for all.

## II.    PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS

Plaintiffs commenced this lawsuit on September 27, 2022. (ECF No. 1.) Following *Grants Pass*, the City filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the allegations in the complaint combined with the evidence developed through discovery demonstrate that the Plaintiffs do not have standing. (ECF No. 242.) On December 4, 2024, the Court granted the City's motion in part finding that Toro Castaño and Nathaniel Vaughn did not have standing for any claims, that Teresa Sandoval lacked standing for her disability claims, that all Plaintiffs failed to establish standing for state-created danger claims, and that the Coalition did not establish

---

[1] Plaintiffs sued the City and County of San Francisco and five of its departments (collectively referred to as the "City").

organizational standing. The Court declined to address the City's arguments to dismiss the Individual Plaintiffs' property claims on standing grounds because it found that Coalition had associational standing to bring those claims. The Court granted leave to amend and instructed Plaintiffs to "**plead their best case**." *Id.* at 38.

On December 18, 2024, Plaintiffs filed the TAC. (ECF No. 289.) The TAC now contains only four property-based claims: violation of the Fourth Amendment and state law corollary under Article I, Section 13 of the California Constitution (1-2) and violation of the Due Process clause and corollary under Article I, Sections 7(a) and 15 of the California Constitution (3-4). Only five Individual Plaintiffs remain: Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, and Teresa Sandoval. As to Coalition, Plaintiffs added new allegations concerning activities it claims the City interfered with, including its ability to retain and recruit members, as well as allegations about the scope of its membership. (TAC ¶¶ 22-24.) The City timely moved to dismiss the TAC on January 2, 2025, on the grounds that organizational standing is legally and factually deficient, that the Individual Plaintiffs lack standing because each and every one is housed, and that Coalition lacks associational standing based on new allegations and jurisdictional discovery narrowing its relevant membership. (ECF No. 295.) Plaintiffs moved to consolidate the motion with summary judgment and sought an extension of time to respond. (ECF No. 296.) The City opposed, arguing that Plaintiffs' administrative motion was an improper substantive motion and that the City's motion to dismiss based on a new complaint, new facts, and new allegations was proper. (ECF No. 297.) On January 9, 2025, the Court denied the City's motion to dismiss without prejudice with an instruction that the City could file a motion only as to organizational standing because it had already found associational standing sufficient at the pleading stage. (ECF No. 298.) At the Court's invitation, this motion follows to address the claims related to organizational standing and Coalition's particular claims.

## III.    LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction" whose power "is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant may seek dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The City raises facial and factual attacks on Coalition's allegations of organizational standing for the property-based claims in the TAC.

"[I]n a facial attack, the challenger asserts that the allegations . . . are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Standing allegations must satisfy the plausibility requirement. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n.1 (9th Cir. 2023). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "may review evidence beyond the complaint without converting" a factual attack "into a motion for summary judgment." *Id.* "It is to be presumed that a cause lies outside this limited jurisdiction. . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 378 (citations omitted). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014) (citation omitted). "Where, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence," to survive. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

To meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Injury in fact requires a showing of "'*an invasion of a legally protected interest*' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted) (emphasis added). For equitable relief, the "threatened injury must be *certainly* impending to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up) (emphasis added & in original). A "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2. Coalition's claim to organizational standing to support systemic injunctive relief does not satisfy this demanding standard.

IV.    **ARGUMENT**

A.    **Coalition Lacks Standing For Its Own Individual Claims.**

As the Court's prior order on standing recognized, Coalition can invoke this Court's jurisdiction through either organizational standing for injuries that it experienced in its own capacity or associational standing on behalf of its members. At the Court's invitation, this motion only concerns Coalition's organizational standing. Because Coalition admits that it has not lost any property and makes no allegations that it will lose property with the requisite immediacy, Coalition lacks standing on that basis. Coalition's theory for standing based on new allegations related to the hinderance of its membership and activities do not change the result. None of those are traditionally cognizable in Fourth Amendment and Due Process claims. The factual record on a factual attack also underscores dispositive issues with traceability and redressability. Coalition's claims in its own capacity must be dismissed.

1.    **Coalition Did Not Lose Any Property Because Of The City's Conduct.**

Standing requires a cognizable legal right that can be redressed by the Court. The "standing analysis is the same for organizations as it is for individuals," *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1173, n.2 (9th Cir. 2024), and "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The TAC does not allege that the City unlawfully seized or destroyed any of its property and Coalition has already admitted that it has not had its property destroyed in discovery. (Declaration of Steven A. Mills ("Mills Decl."), Ex. A at 28:14-4 ["Plaintiff Coalition . . . has not had its property destroyed by Defendants."].)[2] Under traditional Fourth Amendment and Due Process standards, Coalition has no standing for its claims as an individual plaintiff. *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (standing for Fourth Amendment claims exists where there is a "reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized") (citing *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027-29 (9th Cir. 2012)); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1104-05 (9th Cir. 2006) (recognizing that corporation had no standing because it did not have a

---

[2] All exhibit references are to the Mills Declaration.

cognizable privacy interest at issue); *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (holding plaintiff lacked standing for due process claim absent injury resulting from the due process violation); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011) (recognizing that "procedural due process claims ripen only when it is clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred, thereby warranting a federal court's consideration of the question of whether the deprived party received the process to which it was due"); *Wright v. SEIU Local 503*, 48 F.4th 1112, 1120-21 (9th Cir. 2022) (recognizing that standing for prospective injunctive relief requires showing that plaintiff "was accorded a procedural due process right to protect [the plaintiff's] interests and that [the plaintiff] has concrete interests that are threatened"); *Apartment of Ass'n of Greater Los Angeles v. City of Los Angeles*, No. 21-55623, 2022 WL 3369526, at *2 (9th Cir. Aug. 16, 2022) (affirming dismissal of Due Process and Fourth Amendment claims where there was no injury from conduct at issue). This is sufficient to end the standing analysis.

To the extent that Coalition is seeking to base its standing on injuries to hypothetical third parties, that also fails as a matter of law to support standing for an individual claim. Article III "normally bars litigants from asserting the rights or legal interests of others[.]" *Warth*, 422 U.S. at 509; *Spokeo*, 578 U.S. at 339 (recognizing that "[p]articularization is necessary to establish injury in fact"); *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (recognizing that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury"). This rule ensures that "plaintiffs possess such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional [or statutory] questions." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004) (cleaned up). In the context of seizure claims, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citation omitted) (recognizing that the rights of one individual cannot "enhance . . . Fourth amendment rights" of another in a Section 1983 civil suit). Courts routinely dismiss individual Fourth Amendment claims premised on injuries experienced by third parties. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 (9th Cir. 2019) (recognizing that plaintiffs would not have standing to

raise Fourth Amendment injury of other); *Longoria v. Pinal Cnty.*, 873 F.3d 699, 711 (9th Cir. 2017) (dismissing Fourth Amendment claims brought by family members); *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (dismissing claim where search and seizure was based on other individual's rights). The same result applies to Due Process claims stemming from property deprivations. *Berezovsky v. Moniz*, 869 F.3d 923, 927 n.2 (9th Cir. 2017) (finding no standing where "due process argument seeks to vindicate the association's property rights, not his own, and so he lacks standing to raise this argument" (citing *Lujan*, 504 U.S. at 560)). Thus, injuries to other third parties cannot confer standing on Coalition for its individual claims.

Coalition's attempt to allege injuries to "the organization's preexisting core activities" fails as a matter of law because none of Coalition's newly alleged "injuries" are traditionally cognizable in a Fourth Amendment or Due Process claim for injunctive relief. A cognizable concrete injury is "'traditionally' [one] recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (citation omitted). And the Supreme Court has "stressed that the alleged injury must be legally and judicially cognizable" which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (cleaned up). The failure to allege any cognizable Fourth Amendment or Due Process injury that can be redressed under these circumstances underscores that Coalition's claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction," and therefore must be dismissed for lack of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted). Indeed, in authority cited in the TAC, a court went as far as dismissing an organization's unlawful seizure and due process claims in the homelessness context with a Rule 11 warning where the organization did not allege that its property had been taken or that it had been denied any process. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d. 999, 1010, 1013, 1015 (E.D. Cal. 2021). Thus, it is apparent that Coalition's bid for organizational standing is far removed from the law to justify a federal controversy in its own right for any property-based claims. In light of the foregoing, the Court should dismiss the claims for lack of standing, or alternatively, failure to state a claim if any harm justifies standing in Coalition's own right.

1

### 2. Coalition's New Allegations Do Not Support Organizational Standing.

2

3       Lacking any property destruction on its own behalf, Coalition alleges a new conclusory theory

4   that the City has harmed Coalition's pre-existing core activities.[3] Specifically, the TAC alleges that the

5   City injures Coalition by "[p]reventing the Coalition from helping unhoused people and members

6   navigate the homeless services system"; "[d]epleting the Coalition's supply of basic necessities more

7   quickly"; "making it harder for the Coalition to do its public education work"; "[h]arming the

8   Coalition's core activities of building coalitions of unhoused people . . . by causing a reduction in

9   participation of homeless people in Coalition's sponsored events"; and "[u]ndermining the Coalition's

10  ability to provide leadership and advocacy training services to unhoused people so they can effectively

11  participate in coalition-building and advocacy." (TAC ¶¶ 22-24.) This fails for three reasons.

12      First, the failure to allege any traditionally-recognized injury as described above renders

13  *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), as well as *Arizona Alliance*'s "pre-

14  existing core activities" standard derived from *Havens*, inapplicable. *Havens* is "an *unusual* case" that

15  should not be extended "beyond its context." *F.D.A. v. Alliance for Hippocratic Med.*, 602 U.S. 367,

16  395 (2024) (emphasis added). That context involved "whether a housing counseling organization . . .

17  had standing to bring a [statutory] claim under the Fair Housing Act against" a business that provided

18  false information to the counseling organization that directly impaired its ability to provide counseling

19  services. *Id.* The claim was for statutory damages—not the systemic injunctive relief Coalition seeks

20  here on constitutional claims. *Havens*, 455 U.S. at 377. Notably, the FHA conferred "on all 'persons' a

21  legal right to truthful information about available housing"—meaning the organization had a

22  redressable statutory cause of action for a cognizable injury directly caused by false information. *Id.* at

23  373. Unlike *Havens*, Coalition has no applicable statutory or constitutional right and has no direct

24  injury related to a cognizable right that is redressable. "A 'telling indication of the severe

25

26

27      [3] Despite the Court's prior order finding that Coalition's diversion of resource allegations were
    insufficient as a matter of law (ECF No. 281 at 18-19), Coalition still alleges the theory. (TAC ¶¶ 168-
28  178). To the extent Coalition intended to re-new this theory, it fails for the same reasons, and further
    underscores its intention to now manufacture standing where it never existed.

constitutional problem' with [Coalition's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." *Texas*, 599 U.S. at 677 (citations omitted).[4]

Second, even assuming some injury to pre-existing core activities can be sufficient outside of *Havens*' unusual statutory context, the TAC's allegations fail to sufficiently allege organizational standing. Three of the five alleged activities "public education," "advocat[ing] and lobby[ing] for legislation," and "advocacy training" to engage in "advocacy" (TAC ¶ 24(c)-(e))—are precisely the type of functions that do not count as "activities" as a matter of law. *Ariz. All.*, 117 F.4th at 1177 (explaining "public advocacy" and "public education" do not support organizational standing).

As to the remaining activities, the TAC does not sufficiently allege traceability or redressability. Taken to its logical conclusion, Coalition is requesting that the City stop dispersing encampments so that Coalition can leverage unlawful encampments to build its base and provide more services (including passing out tents). (*See, e.g.*, TAC ¶ 24.) But displacement is legal under valid anti-camping laws following *Grants Pass*, and there is no authority suggesting that Coalition's continued resistance confers standing. *Cf. Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020) (recognizing that "'injury to the interest in seeing that the law is obeyed' is not concrete" to confer standing). Moreover, traceability and redressability are also "substantially more difficult to establish" in cases like this where Coalition suggests that it *may* obtain more members and *may* provide more services where that "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," to become a member or accept services in the first place. *Lujan*, 504 U.S. at 562 (citations omitted);

---

[4] "Courts sometimes make standing law more complicated than it needs to be." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Adopting Coalition's sweeping reading of the core activity test authorizes "organizations in America [to] have standing to challenge almost every [] policy that they dislike. . . . [and] *Havens* does not support such an expansive theory of standing." *Hippocratic Medicine*, 602 U.S. at 395. Even the Ninth Circuit recognized these limits before *Arizona Alliance* overruled its organizational precedents. It noted that "[c]ourts must remain wary of sprawling or multipronged mission statements that would allow an organization to have near limitless standing to sue. Otherwise, we run the risk of allowing organizations to bootstrap almost any politically fraught case onto their expansive mission statement and race to the courthouse, . . .. That is precisely the outcome that Article III seeks to avoid." *Nielsen v. Thornell*, 101 F.4th 1164, 1170 (9th Cir. 2024) (citation omitted). Since the "standing analysis is the same for organizations as it is for individuals," *Ariz. All.*, 117 F.4th at 1173, n.2, there is no reason to fashion a new test outside of the one already dictated by Article III that will expand an organization's ability to sue based on sprawling core-activities and mission statements unmoored from the contours of a traditional claim.

*Hippocratic Medicine*, 602 U.S. at 383 (recognizing that plaintiffs may not rely upon "distant (even if predictable) ripple effects" to establish standing). Nor can injuries supposedly caused by the seizure of other peoples' property satisfy Coalition's burden because the Bag & Tag policy contemplates the City temporarily taking the same items lawfully. (ECF No. 65 at 8-9.) Plaintiffs agree that the Bag & Tag policy is constitutional and permits the seizure and removal of property (such as phones and computers) so long as the property is appropriately handled (*i.e.* bagged and tagged or disposed of if it meets certain criteria). (*Id.* at 42.) Coalition's conclusory allegations do not plausibly establish that the requested relief (compliance with the Bag & Tag policy) will redress the alleged harms since even if devices were properly bagged and tagged, Coalition would still face the same alleged injury if members did not have access to those devices while they were bagged and tagged. Whether that individual then obtains their property and reaches out to the Coalition or consents to its outreach adds to the hypothetical contingencies that may result in an injury. But standing fails where the possible future injury is based on hypothetical contingencies or speculation. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983); *Clapper*, 568 U.S. at 410; *Lujan*, 504 U.S. at 564; *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999).

Finally, the TAC fails to "plead *facts* showing that [Coalition's] core activities are directly affected by the [City's] conduct." *Ariz. All.*, 117 F.4th at 1172 (emphasis added). Instead, it rests on conclusory and unsupported allegations, most of which also rely upon the actions or responses of hypothetical third parties. For example, Coalition's alleges, without any supporting facts or examples, that people's fear of losing property and shifted priorities have caused them to stop engaging with Coalition's advocacy and education activities (TAC ¶ 24(c)-(d)) and that after losing property, they come to Coalition to get supplies (*Id.* ¶ 24(b)). Nor does the TAC provide a single example of a "Homeless Verification" form being unlawfully destroyed (or even allege that occurred), a Coordinated Entry application delayed or affected by the City's unlawful conduct, or a single "basic necessity" (whatever those necessities may be) that has been prematurely depleted. Furthermore, there are no allegations that this is presently happening to satisfy the demanding requirements for standing that an injury to Coalition be certainly impending. Rather, Coalition's pleading that it *intentionally* diverted its own resources to combat the City's alleged practice undermines the plausibility of any

claim to standing because the face of the TAC admits that Coalition caused shifts in its own missions and activities. This is insufficient to satisfy plausibility and Coalition's burden to demonstrate its standing. As a matter of law, Coalition "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm . . . ." *Clapper*, 568 U.S. at 402. Organizational standing fails and Coalition will have no authority to expand it here.

### 3.   Evidence Contradicts The Organizational Standing Allegations.

In addition to the pleading deficiencies, the TAC's allegations are undermined by the record that contradict the plausibility of Coalition's allegations. Coalition publicly holds itself out as an advocacy organization that has fought for human rights of the homeless for decades. (Exs. B-D; Ex. E, Cronk Depo. Tr. at 93:7-17.) As to their diversion of resources, Coalition represents that it diverted resources from its core mission in 2021 to combat the City's practices and that the City's practices prevented Coalition from building up its membership. (TAC ¶¶ 24, 168-178.) To the contrary, the evidence shows the City financially supported Coalition's efforts to monitor and document Bag & Tag operations well before 2021 and that the Coalition gained members by messaging around the City's conduct. Coalition was *already* monitoring the City's alleged property destruction as early as 2016 according to Coalition's own annual report. (Ex. B at 2, 4, 6; Ex. C at 2, 6; Cronk Depo. Tr. at 103:21-104:5.) The City financially sponsored Coalition's Stolen Belonging project through an art grant, with the goal of monitoring "sweeps" and having "50% of participants get more involved in" Coalition's campaigns. (Ex. F at 1, B-1.) But since 2016, Coalition was already "collaborating with the legal community to take legal action to halt the practice of the city and state destroying homeless people's property." (Ex. B at 7.) Coalition's own public records show that in 2019 Coalition intended to "use legal, legislative and create tactics to bring attention to and remedy the City's violations." (Ex. C at 7.) In a public ███████████████████████████████, Coalition █████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ (Ex. G, COH00974421.) This strongly suggests an intent to manufacture standing through Coalition where it did not exist by diverting resources and

business activities in support of counsel.[5] It is readily apparent Coalition's central mission has always been advocacy against the City, including monitoring property destruction and litigation. Coalition's own strategy document ███████████████████████████ from 2021 also underscores that the organization ███████████████████████████████████████████████ ██████████████████████████████████████. (Exs. K-L.) That strategic focus belies a suggestion that the City interfered with any core activity.[6] *See, e.g.*, *Clapper*, 568 U.S. at 406 (recognizing that attorneys and various legal organizations cannot "manufacture standing").

Furthermore, Coalition's allegations that the City "make[s] it much more difficult for the Coalition to stay in contact with or to maintain and secure new active members" (TAC ¶¶ 24, 24a) is unsupported by the record, which shows Coalition's own strategic decision-making and lack of documentation has led to the variability of its membership. Coalition's Executive Director admitted in 2021 that ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ (Ex. N, COH00873981-82.) Internal and external factors are also divisive. Dialogue in 2020 among Coalition's Human Rights Workgroup made clear that homeless people ██ ████████████████████████ (Ex. O, COH00897441.) An evaluation of Coalition's work in 2022 shows ███████████████████████████████████████████████████ ██████████████████████████████ (Ex. P, COH00742780-86, 742800-841.) Coalition's Executive Director also admitted that ███████████████████████ (Ex. Q)

---

[5] Records also show that LCCR and the ACLU ████████████████ ████████ (Exs. H-I.) In 2021, LCCR specifically ████████████████████ ████████████████ (Exs. I-J.)

[6] Coalition's claim that the City has affected the Street Sheet newspaper by decreasing participation and submission (TAC ¶ 24(c)) is directly contradicted by Coalition's 2022 draft annual report boasting that Coalition experienced an ██████████████████████████ ██████████ (Ex. M, COH00738209.)

identified in the TAC as being an "active member" who has "help[ed] lead the Coalition's human rights working group" (TAC ¶ 181) is ██████████ —highlighting the impact third parties have on traceability and redressability. (Ex. R.) Going one step further, records also underscore myriad organizational challenges facing staff, including ████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████ (Ex. S, COH00714800-801.)

The suggestion that Coalition cannot connect with individuals on the street because of City-sponsored displacement ignores that there has been a reduction in homelessness because of shelter increases. (Ex. T at 2-3; Ex. U, COH01262155.) Coalition's claimed members were not invisible on the streets either. Take Castaño for instance. He illegally camped in the open for weeks with a market and self-created safe needle exchange after protesting the community outside of a public library. (Ex. V, Castaño Depo. Tr. at 204:8-206:20, 207:22-208:5, 245:11-247:1, 247:8-248:7, 252:3-253:5, 253:17-254:24; Exs. W-X.) A public Google search identified Cronk and Donohoe's encampment, authenticated by Cronk as demonstrating where she lived for months, and where Coalition found them to make a declaration for this very lawsuit. (Cronk Depo. Tr. at 221:9-223:23, 225:8-11, 225:25-226:2, 230:8-10, 241:17-243:5, 244:7-9; Ex. Y-Z; Ex. AA, Donohoe Depo. Tr. at 29:14-25, 30:21-31:1.) While the TAC revolves around the contention that phone and emails are the primary means of communication with members (TAC ¶ 24) Coalition's own documents refute this. Again, Coalition ███████████████████████████████████████████████████████. (Ex. P, COH00742780-86.) Coalition's allegations also ignore the realities of third parties being able to pay for, keep, and charge a phone, none of which is the result of the challenged conduct. Homeless individuals often obtain more than one phone from federal programs and often cycle through them because they break, get disconnected, or get stolen. (Castaño Depo. Tr. at 125:24-126:18, 127:2-14; Ex. BB, Vol. I, Frank Depo Tr. at 62:3-63:9, 64:16-18; Ex. CC, Martinez Depo. Tr. at 27:12-19, 28:6-23, 35:11-36:5, 36:12-16, 198:18-199:8.)

Coalition's claim to future injury to justify standing for injunctive relief is also discredited by its jurisdictional disclosures in this case that have substantially narrowed the individuals Coalition relies upon to establish standing. Following the filing of the TAC and its new theory for standing,

Coalition knowingly identified the ten individual members that it "intends to offer to establish standing OR support any other part of the claims brought by the Coalition on Homelessness." (Ex. DD.) Based on Coalition's verified description of these individuals, all but one is apparently housed and not subject to the practices that the Coalition complains of. (*Id.* (noting that James Reem is unhoused but failing to indicate that any other individual is unhoused).) And the one that appears to be unhoused was not affiliated with Coalition when the lawsuit was commenced and is irrelevant to the standing inquiry. *See, e.g.*, *3C, LLC v. Rokita*, No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) (holding that entity that was not a member when the case commenced could not support standing); *Freedom From Religion Found., Inc. v. Weber*, 951 F. Supp. 2d 1123, 1131 (D. Mont. June 25, 2013) (rejecting information of members that postdate filing of the lawsuit). The plaintiffs and former plaintiff Castaño who have been identified as members have disclaimed any intent to be homeless in the future and disclaim that they are storing property on the street. (Cronk Depo. Tr. at 158:3-159:6, 239:9-14; Martinez Depo. Tr. at 55:20-25, 56:8-9, 100:25-101:16; Vol. I, Frank Depo Tr. at 53:18-54:18, 56:16-57:2, 112:4-7; Donohoe Depo. Tr. at 43:21-44:13, 45:11-13, 58:5-16, 5:23-59:1, 59:13-22, 169:4-170:17; Castaño Depo. Tr. at 315:15-317:24). How any of these individuals can support an injury for organizational standing for injunctive relief is speculative and based on myriad hypothetical contingencies, including them losing their housing, rejecting services to prevent homelessness in the first place, storing property on the public right of way in violation of valid anti-camping ordinances, and maintaining affiliation with Coalition. (*See, e.g.*, ECF No. 281 at 23.) Given the record, Coalition cannot carry its demanding standing burden for injunctive relief. The Court must dismiss Coalition's organizational standing theory without leave to amend once and for all.

## V.    CONCLUSION

The City requests that the Court grant its motion without leave to amend. Plaintiffs were already given leave to plead their best case. Having failed to do so as to Coalition's organizational claims, further amendment is futile.

1

Dated:  January 23, 2025

2

3                                           DAVID CHIU
                                            City Attorney
4                                           YVONNE R. MERÉ
                                            EDMUND T. WANG
5                                           KAITLYN MURPHY
                                            MIGUEL A. GRADILLA
6                                           JOHN H. GEORGE
                                            STEVEN A. MILLS
7                                           Deputy City Attorneys

8
                                     By:  s/Steven A. Mills
9                                           STEVEN A. MILLS

10                                          Attorneys for Defendants
                                            CITY AND COUNTY OF SAN FRANCISCO; SAN
11                                          FRANCISCO POLICE DEPARTMENT; SAN
                                            FRANCISCO DEPARTMENT OF PUBLIC WORKS;
12                                          SAN FRANCISCO DEPARTMENT OF
                                            HOMELESSNESS AND SUPPORTIVE HOUSING;
13                                          SAN FRANCISCO FIRE DEPARTMENT; SAN
                                            FRANCISCO DEPARTMENT OF EMERGENCY
14                                          MANAGEMENT

15

16

17

18

19

20

21

22

23

24

25

26

27

28