**EXHIBIT F**

**TO**

**SUPPLEMENTAL DECLARATION OF STEVEN A. MILLS IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

```
 1                 UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3   - - - - - - - - - - - - - - - -
 4   COALITION ON HOMELESSNESS;    )
 5   TORO CASTANO; SARAH CRONK;    )
 6   JOSHUA DONOHOE; MOLIQUE       )
 7   FRANK; DAVID MARTINEZ;        )
 8   TERESA SANDOVAL;              )
 9   NATHANIEL VAUGHN,             )  CASE NO.
10              Plaintiffs,        )  4:22-cv-05502- DMR(LJC)
11   v.                            )
12   CITY AND COUNTY OF SAN        )
13   FRANCISCO, et al.,            )
14              Defendants.        )
15   - - - - - - - - - - - - - - - -
16
17       REMOTE VIDEOTAPED DEPOSITION OF CARLOS WADKINS
18                 MONDAY, JANUARY 27, 2025
19
20
21         BEHMKE REPORTING AND VIDEO SERVICES, INC.
22                BY:  SHANNA GILBERT, CSR NO. 12951
23                  550 CALIFORNIA STREET, SUITE 820
24                   SAN FRANCISCO, CALIFORNIA 94104
25                                    (415) 597-5600
```

1  THE WITNESS: It is difficult to give an exhaustive
2  list. The work varied greatly from week to week or from
3  day to day based on what needs arose in the
4  organization.
5  BY MR. GEORGE:
6     Q.  Does this paragraph accurately describe how you
7  conducted outreach to people?
8     A.  Yes, accurately.
9     Q.  And it says that you spoke to people living in
10 homeless encampments, in their vehicle or in shelters;
11 is that correct?
12    A.  That is correct.
13    Q.  And do you recall doing that?
14    A.  I do.
15    Q.  And did you go physically in person to do that?
16    A.  I did.
17    Q.  How many people would you usually talk to when
18 you went out to do outreach like that on a typical day?
19    A.  It is difficult to say and it varied. In terms
20 of street outreach, depending on the neighborhood, it
21 could be -- it could be a matter of how many people are
22 in that area, which is unknown until we're there. So,
23 you know, we could spend a little bit of time walking
24 around an area and only see two to five people, or there
25 could be a couple camps there, and it would be a larger

1  BY MR. GEORGE:
2      Q.  You can answer.
3      A.  I don't recall.  I shouldn't just say that
4  blankly.  I don't recall if any other methods were
5  pitched or executed, and I was not around for the
6  entirety of that survey period.  I was only around for
7  the end of it, so there may have been focus groups or
8  non in-person surveys or whatever else before.  I cannot
9  speak to that.  My time working on it was in-person
10 surveys.
11     Q.  Were there any surveys that you did at your
12 time at Coalition that were -- of unhoused people
13 specifically -- that were not conducted in person?
14     Sorry.  I didn't hear that.
15     A.  Not that I remember.
16     Q.  Would you say that most of the survey
17 communications at the Coalition, that you were aware of
18 at least, were conducted in person?
19     A.  Yes.
20     MS. SIKORA:  Objection; speculation.
21 BY MR. GEORGE:
22     Q.  And why were they conducted in person, to the
23 best of your understanding?
24     A.  Honestly, I can't even really think of another
25 way we would do them.  You're saying opposed to like a

1  digital or on the phone survey?
2      Q.   Exactly.
3      A.   That would not make a lot of sense to get an
4  accurate understanding of what unhoused people were
5  going through.  And it would have been very difficult
6  logistically to pull off that kind of survey.
7      Q.   You conducted interviews for the report that
8  you authored on HSOC; is that correct?
9      A.   I don't know.  Interviews were conducted by
10 several people.  I don't know if I did any myself.
11     Q.   Do you recall specifically any interviews that
12 you did for that specific report?
13     A.   I do not.
14     Q.   Do you recall anyone else conducting interviews
15 for that report?  And by that report I mean the one --
16 the one that is referenced in Paragraph 15.
17     A.   Yes.
18     Q.   What do you recall?
19     A.   I recall that Kelley Cutler performed some
20 interviews.  I recall that other volunteers and staff
21 members and part of the working group were asked to
22 conduct interviews.  I don't remember what that yielded.
23 And I recall that one human rights work group member
24 named Ally -- I do not know her last name -- was able to
25 conduct some interviews.  I don't remember if they made

```
 1    STATE OF CALIFORNIA    )
 2                           ) ss.
 3    COUNTY OF PLACER       )
 4
 5         I hereby certify that the witness in the
 6    foregoing deposition, CARLOS WADKINS, was by me duly
 7    sworn to testify to the truth, the whole truth, and
 8    nothing but the truth, in the within-entitled cause;
 9    that said deposition was taken at the time and place
10    herein named; that the deposition is a true record of
11    the witness's testimony as reported by me, a duly
12    certified shorthand reporter and a disinterested person,
13    and was thereafter transcribed into typewriting by
14    computer.
15         I further certify that I am not interested in
16    the outcome of the said action, nor connected with, nor
17    related to any of the parties in said action, nor to
18    their respective counsel.
19         IN WITNESS WHEREOF, I have hereunto set my hand
20    this 1st day of February, 2025.
21
22                    [signature]
23
24                    SHANNA GILBERT, CSR NO. 12051
25                    STATE OF CALIFORNIA
```