

February 14, 2025

**Via ECF**
Hon. Donna M. Ryu, Chief United States Magistrate Judge
United States District Court, Northern District of California

     Re:    Discovery Letter re: Questioning of Deposition Witness
               <u>Coalition on Homelessness, et al., v. City and County of San Francisco, et. al.</u>,
               <u>Case No. 4:22-cv-05502-DMR</u>

Dear Judge Ryu,

     The parties write pursuant to the Court's Standing Order ¶ 14 regarding a discovery dispute concerning the limits of acceptable deposition questioning of non-party declarant witnesses. Defendants disagree that the parties are at an impasse. Based on questions asked during the January 31, 2025 deposition of Pauline Wise, Plaintiffs request the Court enter a protective order requiring that questioning into such witness's personal lives be limited to questions reasonably related to the circumstances set forth in their declarations, or relevant to their capacity to observe or recall those events.

     Ms. Wise, who was represented by counsel for Plaintiffs for purposes of the deposition, became ill during the deposition and was unable to continue. A sampling of the questions and answers asked of Ms. Wise is attached as **<u>Exhibit A</u>**. Defendants object to the inclusion of Exhibit A, which is not permitted by the Court's Standing Order, ¶ 14. Plaintiffs believe Exhibit A is permitted by the Standing Order, and that a listing of these questions, even without responses thereto (no objections were asserted) is essential to convey the extent of their intrusiveness. Counsel for the parties discussed this issue at the conclusion of the deposition, and met and conferred by telephone on February 7, 2025.

     Upcoming case management deadlines: close of fact discovery (Mar. 10, 2025), close of expert discovery (Apr. 14, 2025), case management conference (Apr. 2, 2024), last day to hear dispositive motions (May 8, 2025), pretrial conference (July 9, 2025), and trial (July 28, 2025).

     **<u>Plaintiffs' Position</u>**: Plaintiffs' trial witness list includes non-party witnesses whose declarations concerning the seizure of their property by the City have been filed in this action. Defendants have taken the depositions of a number of these witnesses, and additional depositions are scheduled. At several of these depositions, defense counsel has probed extensively into the personal habits, associations, and finances of the witnesses. Aside from isolated instructions not to answer clearly improper questions (which are the subject of a separate, contemporaneous discovery letter), counsel for Plaintiffs have not prevented this questioning, and have seldom objected.

**American Civil Liberties Union Foundation of** *Northern California*

FRESNO • SACRAMENTO • SAN FRANCISCO
39 Drumm St. San Francisco, CA 94111
TEL (415) 621-2493 • FAX (415) 255-1478 • TTY (415) 863-7832 • WWW.ACLUNC.ORG

Non-party Pauline Wise has executed a seven-paragraph declaration covering 23 lines of text, in which she described two takings that occurred when she was unhoused in February 2023, after the Court had issued its preliminary injunction. *See* ECF 130-43. During one incident, she described being awoken abruptly, being told "we needed to get the hell out of here," having her tent shredded with a knife by a DPW worker, and having heirloom possessions taken. *Id.* ¶¶ 3-5. She stated that she saw a worker put her mother's pearls in his pocket, telling her that "they belong to the City now." *Id.* ¶ 5.

During approximately 70 minutes of questioning, counsel for the City asked several hundred questions concerning the witness's private life and personal affairs, but not one question about the incidents set forth in her declaration. She was asked detailed questions about every address she had ever lived at in four different cities; all of her family members, living and deceased; her financial situation at every stage of her life; what drugs she purchased with an inheritance she received in 2009; and her subsequent history of "5150 holds," which was apparently known to the City. Except for an instruction not to answer the question about drug purchases in 2009, she answered every question. At one point, asked about a former boyfriend against whom she had obtained a stay-away order, the witness broke down in tears and needed a break. Plaintiffs' counsel then asked that the City's counsel be "considerate of the witness's emotional state" and "vigilant for questions that don't seem to be relevant to the case." When questioning resumed, still on subjects other than the witness's declaration, after 46 minutes, the witness reported that she was experiencing a migraine, asked for a break, and retreated to the rest room, where she proceeded to vomit. Plaintiffs' counsel did not seek to terminate the deposition, but the witness, returning, stated on the record that she was unable to continue.

During and after the deposition, counsel for the City repeatedly stated that if Plaintiffs would take Ms. Wise off their trial witness list, the City would not require the deposition to continue. Whether intended by the City or not, these events have caused counsel for Plaintiffs to be concerned that witnesses with testimony damaging to the City might be intimidated by extended, intrusive questioning from continuing to participate in the case.

Plaintiffs of course do not object to legitimate, even intense, cross-examination concerning a witness's perception, memory, and truthfulness. Plaintiffs recognize that few of the questions asked by the City, standing alone, would seem objectionable, and note that defense counsel's demeanor was not hostile during the questioning. But a ceaseless stream of irrelevant and highly personal questions, posed to a fragile witness who is clearly in distress, cumulatively exceeded the bounds of legitimate inquiry.

The Supreme Court has emphasized that while "deposition-discovery rules are to be accorded a broad and liberal treatment … the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Non-party fact witnesses should not be subjected to an extensive grilling about their

American Civil Liberties Union Foundation of Northern California

FRESNO • SACRAMENTO • SAN FRANCISCO
39 Drumm St. San Francisco, CA 94111
TEL (415) 621-2493 • FAX (415) 255-1478 • TTY (415) 863-7832 • WWW.ACLUNC.ORG

personal lives as the price of offering relevant evidence in a lawsuit. "By virtue of being named as a witness or appearing for a deposition, a person's entire life is not opened up for inspection by the attorneys for the litigants." *Cuthbertson v, Excel Inds.,* 179 F.R.D. 599, 604 (D. Kan. 1998) (granting protective order against questions to non-party witness about personal drug use). Even a party should not be subjected to irrelevant questions concerning their personal life. *Highlander Holdings v. Fellner,* 2020 WL 3498174 at *10 (S.D. Cal. June 29, 2020) ("…[T]he court does not look favorably on Mr. Molnar's questioning about defendant Fellner's first wife's or children's name, how many times he has been married … or trivial details of Mr. Fellner's 40-year-old conviction … [M]any of the questions at the deposition did not seem to serve any purpose other than forcing Mr. Fellner to discuss uncomfortable or personal topics ….") *See also, Smooth v. Biomat USA,* 2024 WL 4504436 at *6 (E.D. La. May 21, 2024), where the court granted in part a motion for protective order: "The Court … finds that asking Smooth whether he had 'ever' been arrested, spent time in prison, filed for bankruptcy, or used TurboTax is not proportional to this personal injury litigation."

Plaintiffs' last compromise position: Plaintiffs offered to agree to continue the deposition if Defendants would focus their questioning on matters reasonably related to the incidents set forth in Ms. Wise's declaration. Defense counsel declined the offer.

**Defendants' Position:**

Defendants disagree that the parties are at an impasse. Plaintiffs request limiting Ms. Wise's and unidentified witnesses' depositions to "questions reasonably related to the circumstances set forth in their declarations, or relevant to their capacity to observe or recall those events." Defendants generally agree and do not believe they have asked Ms. Wise any questions that did not meet Plaintiffs' request. Defendants requested Plaintiffs provide specific examples of what categories of questions they believe would be prohibited by their request, but they have not done so. Because Plaintiffs intend to file this letter, Defendants include their position but disagree that a letter is necessary. Defendants' final proposal is that they be permitted to finish Ms. Wise's deposition or Plaintiffs agree they will not call her at trial.

Plaintiffs have no basis to limit Ms. Wise's deposition. The Federal Rules allow "a party or deponent to move to . . . limit a deposition" only "if 'it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.'" *Est. of Risher v. City of Los Angeles*, 2019 WL 4452964, at *2 (C.D. Cal. July 16, 2019) (quoting Fed. R. Civ. P. 30(d)(3)(A)). If that standard is met, "[t]he court . . . may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B). "[T]he power to halt or limit examination is sparingly used" and there is no basis to invoke it here. *McGowan v. Cty. of Kern*, 2016 WL 7104170, at *4 (E.D. Cal. Dec. 5, 2016). Plaintiffs have not shown that Ms. Wise's deposition has been conducted in bad faith or in an unreasonably annoying, embarrassing, or oppressive manner. *Methode Elecs., Inc. v. Finisar Corp.*, 205 F.R.D. 552, 554 (N.D. Cal. 2001) ("A party seeking to limit discovery must make a 'strong showing' for limitation, and a particular and specific need for the protective order.").

Plaintiffs assert Defendants asked irrelevant questions and argued "while no one question is abusive," "the cumulative effect of all of them on a witness known by your office to

American Civil Liberties Union Foundation of Northern California

FRESNO • SACRAMENTO • SAN FRANCISCO
39 Drumm St. San Francisco, CA 94111
TEL (415) 621-2493 • FAX (415) 255-1478 • TTY (415) 863-7832 • WWW.ACLUNC.ORG

have a history of mental health issues was clearly too much for her, and is more than any witness in this case should be subjected to." But Defendants need to question Ms. Wise because Plaintiffs intend to offer her as a trial witness and therefore Defendants need to understand the claims she will raise, the basis for those claims, and any information relevant for impeachment, including inconsistencies between her declaration and later testimony. Ms. Wise's sworn declaration contains several claims, including that she was (at the time of signing) "involuntarily homeless," that she had been homeless on and off for about 15 years, that DPW disposed of a tablet, phone, and laptop that she had "just purchased" and needed to "keep in contact with her family," and that DPW workers smashed her father's guitar and stole her mother's jewelry. ECF No. 13-43, ¶¶ 2-6. Each of the categories of information Defendants sought are directly relevant to Ms. Wise's accusations of misconduct and sworn statements.[1]

For example, Plaintiffs highlight questions about Ms. Wise's family and her communications with them (*e.g.*, "Q. When was the last time that you communicated with one of your family members? A. I don't communicate with my family members."). These are directly relevant to her statement that she "cannot keep in contact with my family without the" phone, laptop, and tablet she says DPW discarded. ECF No. 130-43, ¶ 6. Defendants' questions about her phones and where she obtained them are directly relevant to her claim that "[t]hey also took my laptop, tablet, and phone – I had just purchased." *Id.* Questions about the tents she has had while living in the City and where she obtained them bear directly on whether DPW improperly disposed of the tents she says were destroyed. *Id.*, ¶¶ 3, 6. Defendants' questions about her housing and homelessness history bear directly on her claim that she "ha[s] been homeless on and off for 15 years." *Id.*, ¶ 2. Because Ms. Wise claimed to be "involuntarily homeless" and claimed to have purchased expensive electronics, Defendants' questions about her financial situation and employment history, including the significant inheritance received from her mother's estate, are relevant. Likewise, questions regarding her parents' deaths and what she inherited bear on her claims that the City destroyed items her parents bequeathed her. *Id.*, ¶¶ 4-5. Defendants also respectfully asked, and did not unnecessarily dwell on, questions regarding Ms. Wise's memory and mental state, including a history of hospitalizations and memory loss. In short, the questions Plaintiffs' now object to sought relevant information. The strong relationship between the questions and Ms. Wise's allegations readily distinguishes them from the questions in the cases Plaintiffs' rely on.

Defendants questions were relevant, but even if they were not, "the mere fact that more than one irrelevant question is asked, or even that a series of irrelevant questions is asked does not, by itself, constitute annoyance or oppression contemplated by (30)(d)(3)." *Est. of Risher*, 2019 WL 4452964 at *2. Thus, "[t]he relevance of deposition questions is an improper ground for a motion under Rule 30(d)(3)." *Est. of Risher*, 2019 WL 4452964 at *2. If Plaintiffs contend a question is irrelevant, "the proper procedure" is for "the examination to proceed, with the testimony being taken subject to the objections." *Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012, at *6 (D. Ariz. Mar. 14, 2013).

"It is not the embarrassment or annoyance caused by unfavorable answers that is the

---

[1] On February 6, 2025, Plaintiffs provided an annotated rough transcript in which they highlighted the questions they deem irrelevant. Most were not objected to at the deposition.

American Civil Liberties Union Foundation of Northern California

FRESNO • SACRAMENTO • SAN FRANCISCO
39 Drumm St. San Francisco, CA 94111
TEL (415) 621-2493 • FAX (415) 255-1478 • TTY (415) 863-7832 • WWW.ACLUNC.ORG

controlling criterion under Rule 30(d)(3), but the *manner* in which the interrogation is conducted that is the basis for refusing to proceed." *Est. of Risher*, 2019 WL 4452964 at *2 (cleaned up, emphasis added). The manner in which counsel questioned Ms. Wise is nothing like those cases in which court have terminated or limited depositions. Counsel did not raise his voice, act belligerently, or even repeat the same questions unnecessarily. Ms. Wise required several breaks to compose herself—all of which Defendants' counsel readily provided. If the Court has any doubt about the manner in which the Defendants will readily provide the videotape for the Court's review.

Ms. Wise's deposition was only 81 minutes, but in that time she contradicted many her declaration's claims, including confirming she never had the tablet she claimed to have purchased ("Q: Have you ever had a tablet, like an iPad? A. No."); she has not had a laptop in "probably 10 years" and had not had a phone for "three years" despite claiming to have "just purchased" a laptop and phone in April 2023; she has not been in contact with any family members since 2015 despite claiming in 2023 she needed the allegedly discarded devices to "keep in contact with her family"; and she was unfamiliar with the phrase "involuntarily homeless" when she signed her declaration and was actually in City-provided shelter at that time. Those contradictions bear on the credibility of the specific claims she alleges and of her credibility as a witness overall, and are not a basis to limit the deposition.

Defendants only seek to depose Ms. Wise because Plaintiffs intend to call her at trial. Limiting Defendants' opportunity to depose Ms. Wise therefore will not protect her from the discomfort of being confronted with her prior inconsistent testimony since she will still have to answer questions about these same issues at trial. Plaintiffs' request simply means Defendants will go into their cross-examination of Ms. Wise at trial less prepared and deprived of their right to defend against the allegations.

Finally, Plaintiffs' request is untimely. "[M]ost district courts have interpreted [Rule 30(d)(3)] to mean an objecting party must seek a court order 'immediately.'" *Shreves v. Frontier Rail Corp.*, No. 1:19-CV-03012-SMJ, 2021 WL 6206635, at *2 (E.D. Wash. Mar. 23, 2021). Waiting several days after the deposition, as Plaintiffs have done, is not "immediate" and a basis for denial. *Id.* (denying Rule 30(d) motion as untimely where party filed motion to terminate 10 days after deposition). Plaintiffs' request to limit depositions beyond Ms. Wise's is also plainly improper—they are permitted to move to limit "during a deposition," not before—and have offered nothing to support a motion to limit questions to unidentified witnesses. Fed. R. Civ. P. 30(d)(3)(A); *Methode Elecs.*, 205 F.R.D. at 554 ("specific need" required).

For the above reasons, the Court should deny Plaintiffs' request and order Ms. Wise to sit for the remainder of her deposition or exclude her testimony at trial.

*/s/ William S. Freeman*
Attorneys for Plaintiffs

*/s/ John H. George*
Attorneys for Defendants