**REDACTED VERSION OF DOCUMENT PROVISIONALLY FILED UNDER SEAL**

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-3857 (Wang)
                (415) 554-6762 (Murphy)
                (415) 554-3870 (Gradilla)
                (415) 554-4223 (George)
                (415) 355-3304 (Mills)
Facsimile:      (415) 554-4699
E-mail:         edmund.wang@sfcityatty.org
                kaitlyn.murphy@sfcityatty.org
                miguel.gradilla@sfcityatty.org
                john.george@sfcityatty.org
                steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    May 8, 2025<br>Time:            1:00 p.m.<br>Judge:           Hon. Donna M. Ryu<br>Place:           Courtroom 4 – 3rd floor<br>                 1301 Clay Street<br>                 Oakland, CA 94612<br><br>Trial Date:      July 28, 2025 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION .............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 4

INTRODUCTION ................................................................................................................ 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

    I.    The Court Lacks Subject Matter Jurisdiction Over All Claims. ............................. 5

        A.    The Court Lacks Jurisdiction Over The Two Individual Plaintiffs. ........... 5

        B.    The Court Lacks Jurisdiction Over Coalition. ............................................ 8

            1.    Coalition Has No Associational Standing ........................................ 8

                a.    Coalition Cannot Carry Its Burden At The First Prong. ...... 9

                    i.    Coalition Lacks The Indicia of Membership. .......... 9

                    ii.    No Claimed Individual Member Has Standing ...... 11

                b.    Coalition Cannot Carry Its Burden At The Third Prong .... 14

            2.    Coalition Lacks Organizational Standing. ..................................... 16

                a.    Coalition Did Not Lose Any Property. ............................... 16

                b.    *Hippocratic Medicine* Bars Coalition's Theory Of Standing And There Is No Evidence To Support An Erroneous Extension. ...................................................... 16

    II.    Plaintiffs Cannot Obtain The Equitable Relief They Seek. .................................. 19

        A.    Adequate Legal Remedies Bar Equitable Relief. ...................................... 19

        B.    Plaintiffs Cannot Demonstrate Immediate Irreparable Harm. .................. 20

    III.    Plaintiffs' Claims Fail On The Merits. .................................................................. 20

        A.    Coalition Cannot Bring A Section 1983 Claim On Behalf Of Members. . 20

        B.    The Evidence Does Not Support Plaintiffs' Claims. ................................. 21

            1.    Members' Claims Are Time-Barred. .............................................. 22

            2.    Plaintiffs' Fourth Amendment Claim Fails .................................... 22

                 a.    There Is No Evidence Of A Timely Predicate Violation For Any Individual Plaintiff Or Identified Coalition Member. .......................................................................... 22

                b.    Coalition Cannot Establish A Fourth Amendment Claim. 25

            3.    Plaintiffs Cannot Establish Due Process Claims ........................... 26

            4.    There Is No Evidence To Support Plaintiffs' *Monell* Theories ..... 30

                 a.    There Is No Evidence Of Improper Custom ..................... 30

b.    There Is No Evidence Of A Failure To Train ....................31

c.    There Is No Evidence The City Is Deliberately Indifferent33

CONCLUSION...................................................................................................34

# TABLE OF AUTHORITIES

**Federal Cases**

*3C, LLC v. Rokita*
  No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) ........................13

*A.B. v. Haw. State Dep't of Educ.*
  30 F.4th 828 (9th Cir. 2022) ................................................................................................21

*A.H. v. Sacramento Cnty. Dep't Child, Fam. & Adult Serv.*
  No. 2:21-cv-00690-KJM-JDP, 2022 WL 866421 (E.D. Cal. Mar. 23, 2022) ........................26

*Aguayo v. Richardson*
  473 F.2d 1090 (2d Cir. 1973) ...............................................................................................21

*Am. Unites for Kids v. Rousseau*
  985 F.3d 1075 (9th Cir. 2021) .................................................................................................9

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...............................................................................................................5

*Arizona Alliance for Retired Americans v. Mayes*
  117 F.4th 1165 (9th Cir. 2024) .............................................................................................17

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) ..................................................................................................6

*Ass'n of Christian Sch. Int'l v. Stearns*
  678 F. Supp. 2d 980 (C.D. Cal. 2008),
  aff'd 362 F. App'x. 640 (9th Cir. 2010) ...............................................................................15

*Associated Gen. Contrs. of Am. v. Cal. DOT*
  713 F.3d 1187 (9th Cir. 2013) .................................................................................................9

*Baker v. Carr*
  369 U.S. 186 (1962)...........................................................................................................5, 16

*Baldwin Cnty. Welcome Ctr. v. Brown*
  466 U.S. 147 (1984)...............................................................................................................22

*Bayer v. Neiman Marcus Grp., Inc.*
  861 F.3d 853 (9th Cir. 2017) ..................................................................................................8

*Bell v. Williams*
  108 F.4th 809 (9th Cir. 2024) ...............................................................................................33

*Bella v. Chamberlain*
  24 F.3d 1251 (10th Cir. 1994) ..............................................................................................22

*Berezovsky v. Moniz*
  869 F.3d 923 (9th Cir. 2017) ................................................................................................16

*Berry v. Hennepin Cnty.*
    No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797 (D. Minn. July 22, 2024) .............................6

*Bone v. Univ. of N.C. Health Care Sys.*
    678 F. Supp. 3d 660 (M.D.N.C. 2023) ............................................................................15, 23

*Brewster v. Beck*
    859 F.3d 1194 (9th Cir. 2017) ...............................................................................................25

*Cal. Rest. Ass'n v. City of Berkeley*
    89 F.4th 1094 (9th Cir. 2024) ................................................................................................12

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) .................................................................................................15

*Campbell v. Miller*
    373 F.3d 834 (7th Cir. 2004) .................................................................................................20

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .................................................................................................................5

*Cetacean Cmty. v. Bush*
    386 F.3d 1169 (9th Cir. 2004) ...............................................................................................26

*Chamber of Com. of the U.S. v. EPA*
    642 F.3d 192 (D.C. Cir. 2011) ...............................................................................................12

*Christie v. Iopa*
    176 F.3d 1231 (9th Cir. 1999) ...............................................................................................29

*City of Canton, Ohio v. Harris*
    489 U.S. 378 (1989) ...............................................................................................................32

*City of Grants Pass v. Johnson*
    603 U.S. 520 (2024) ...................................................................................................5, 19, 23

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ...............................................................................................6, 8, 19, 20

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ..........................................................................................................6, 18

*Clemmons v. City of Long Beach*
    379 F. App'x 639 (9th Cir. 2010) ..........................................................................................31

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, No. 14-CV-953 (GK), 2016 WL 7376847
    (D.D.C. Dec. 19, 2016) .....................................................................................................14, 15

*Cobine v. City of Eureka*
    250 F. Supp. 3d 423 (N.D. Cal. 2017) ..................................................................................34

*Coleman v. Quaker Oats Co.*
    232 F.3d 1271 (9th Cir. 2000) ...............................................................12

*Connick v. Thompson*
    563 U.S. 51 (2011).......................................................................31, 32, 33

*Davis v. City of Ellensburg*
    869 F.2d 1230 (9th Cir. 1989) .............................................................29

*Doe by & through Tanis v. Cnty. of San Diego*
    576 F. Supp. 3d 721 (S.D. Cal. 2021) ..............................................31, 33

*Dougherty v. City of Covina*
    654 F.3d 892 (9th Cir. 2011) ...........................................................22, 29

*Dunklin v. Mallinger*
    No. C-11-01275 JCS, 2013 WL 1501446 (N.D. Cal. Apr. 10, 2013),
    aff'd, 611 F. App'x 436 (9th Cir. 2015) ...............................................31

*Dusenbery v. United States*
    534 U.S. 161 (2002).............................................................................27

*Enrico's, Inc. v. Rice*
    730 F.2d 1250 (9th Cir. 1984) .............................................................20

*F.D.A. v. All. for Hippocratic Med.*
    602 U.S. 367 (2024)........................................................16, 17, 18, 19

*Fleck & Assocs., Inc. v. City of Phoenix*
    471 F.3d 1100 (9th Cir. 2006) .............................................................16

*Flores v. Cnty. of Los Angeles*
    758 F.3d 1154 (9th Cir. 2014) .............................................................33

*Freedom From Religion Found., Inc. v. Weber*
    951 F. Supp. 2d 1123 (D. Mont. 2013)................................................13

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*
    284 F.3d 575 (5th Cir. 2002) ...............................................................15

*Guatay Christian Fellowship v. Cnty. of San Diego*
    670 F.3d 957 (9th Cir. 2011) ...............................................................16

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*
    397 F.3d 1217 (9th Cir. 2005) .............................................................10

*Havens Realty Corporation v. Coleman*
    455 U.S. 363 (1982)........................................................................16, 17

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*
    599 U.S. 166 (2023)..............................................................................21

*Hindu Am. Found., Inc. v. Kish*
  No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296 (E.D. Cal. Aug. 30, 2023) .......................11

*Hodgers-Durgin v. De La Vina*
  199 F.3d 1037 (9th Cir. 1999) ...................................................................................................6

*Hudson v. Palmer*
  468 U.S. 517 (1984)...................................................................................................................26

*Hunt v. Wash. State Apple Advert. Comm'n*
  432 U.S. 333 (1977)...................................................................................................9, 14, 15

*Hyun Ju Park v. City & Cnty. of Honolulu*
  952 F.3d 1136 (9th Cir. 2020) .................................................................................................34

*Janiec v. City of Glendora*
  842 F. App'x 129 (9th Cir. 2021) ............................................................................................30

*Jarvis v. Regan*
  833 F.2d 149 (9th Cir. 1987) .....................................................................................................8

*Jessen v. Cnty. of Fresno*
   808 F. App'x 432 (9th Cir. 2020) ...........................................................................................33

*Jett v. Dallas Indep. Sch. Dist.*
  491 U.S. 701 (1989)...................................................................................................................30

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. and Rehab. Servs.*
  958 F.2d 1018 (10th Cir. 1992) ...............................................................................................15

*Klein v. City of Beverly Hills*
  865 F.3d 1276 (9th Cir. 2017) .................................................................................................22

*Knife Rights, Inc. v. Vance*
  802 F.3d 377 (2d Cir. 2015) .....................................................................................................21

*Larez v. Holcomb*
  16 F.3d 1513 (9th Cir. 1994) ...................................................................................................14

*Lavan v. City of Los Angeles*
  693 F.3d 1022 (9th Cir. 2012) ...........................................................................................23, 33

*Lewis v. Cont'l Bank Corp.*
  494 U.S. 472 (1990).....................................................................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
  572 U.S. 118 (2014)...................................................................................................................21

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992).........................................................................................................5, 6, 18

*Maryland v. Macon*
    472 U.S. 463 (1985)......................................................................................25

*Merritt v. Cnty. of Los Angeles*
    875 F.2d 765 (9th Cir. 1989) ........................................................................31

*Monell v. Department of Soc. Svcs.*
    436 U.S. 658 (1978)................................................................................. *passim*

*Moran v. Selig*
    447 F.3d 748 (9th Cir. 2006) .......................................................................29

*Morgan v. Komers*
    151 F. App'x 546 (9th Cir. 2005) ................................................................22

*Mueller v. Auker*
    700 F.3d 1180 (9th Cir. 2012) .....................................................................14

*Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*, No. 24-2356
    (JDB), 2024 WL 4817122 (D.D.C. Nov. 18, 2024) ....................................11

*Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*
    176 F.R.D. 329 (C.D. Cal. 1997) .................................................................11

*Nat'l Res. Def. Council, Inc. v. EPA*
    507 F.2d 905 (9th Cir. 1974) .......................................................................11

*National Council of La Raza v. Cegavske*
    800 F.3d 1032 (9th Cir. 2015) .....................................................................12

*Nelsen v. King Cnty.*
    895 F.2d 1248 (9th Cir. 1990) .......................................................................6

*Nelson v. Pima Comty. Coll.*
    83 F.3d 1075 (9th Cir. 1996) .........................................................................5

*Nnebe v. Daus*
    644 F.3d 147 (2d Cir. 2011) ........................................................................21

*O'Shea v. Littleton*
    414 U.S. 488 (1974)................................................................................19, 20

*Or. Advoc. Ctr. v. Mink*
    322 F.3d 1101 (9th Cir. 2003) .......................................................................9

*Or. Moms Union v. Brown*
    540 F. Supp. 3d 1008 (D. Ore. 2021) ...........................................................9

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
    861 F. Supp. 2d 1170 (D. Haw. 2012)..........................................................14

*Pavao v. Pagay*
   307 F.3d 915 (9th Cir. 2002) ................................................................................14

*Plumhoff v. Rickard*
   572 U.S. 765 (2014)..............................................................................................16, 25

*Price v. Sery*
   513 F.3d 962 (9th Cir. 2008) ................................................................................31

*Proctor v. District of Columbia*
   531 F. Supp. 3d 49 (D.D.C. 2021) .......................................................................6

*Rakas v. Illinois*
   439 U.S. 128 (1978)..............................................................................................25

*Reed v. City of Emeryville*
   No. 21-cv-02781-WHO, 2021 WL 1817103 (N.D. Cal. May 6, 2021)....................34

*Rent Stabilization Ass'n of City of New York v. Dinkins*
   5 F.3d 591 (2d Cir. 1993) ....................................................................................15

*Rios v. Cnty. of Sacramento*
   562 F. Supp. 3d 999 (E.D. Cal. 2021) ..............................................................6, 25

*San Luis Obispo Cnty. Homeless Union v. Cnty. of San Luis Obispo*
   No. 2:24-cv-00616-AB-MAA, 2024 WL 2107723 (C.D. Cal. Apr. 24, 2024) ........34

*Sanchez v. City of Fremont*
   No. 24-cv-02584-AM, 2024 WL 2031633 (N.D. Cal. May 6, 2024)......................34

*Sanchez v. Cnty. of San Diego*
   464 F.3d 916 (9th Cir. 2006) ................................................................................21

*Shipp v. Schaaf*
   379 F. Supp. 3d 1033 (N.D. Cal. 2019) ...............................................................27

*Soldal v. Cook Cnty.*
   506 U.S. 56 (1992)................................................................................................23

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020) ................................................................................20

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*
   770 F.3d 1282 (9th Cir. 2014) ..............................................................................14

*Spokeo, Inc. v. Robins*
   578 U.S. 330 (2016).........................................................................................5, 16

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998)................................................................................................19

*Sullivan v. City of Berkeley*
  383 F. Supp. 3d 976 (N.D. Cal. 2019) ...............................................................27, 28

*Swi-Co Constr., Inc. v. Amco Ins. Co.*
  No. C 10-3122 PJH, 2011 WL 13269710 (N.D. Cal. Sept. 19, 2011)........................19

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
  368 F.3d 1053 (9th Cir. 2004) ....................................................................................8

*Thomas v. Cook Cnty. Sheriff's Dep't*
  604 F.3d 293 (7th Cir. 2010) .............................................................................21, 31

*Today's Fresh Start, Inc. v. Los Angeles Cnty. Office of Educ.*
  57 Cal.4th 197 (2013) ...............................................................................................21

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ..................................................................................................16

*Trevino v. Gates*
  99 F.3d 911 (9th Cir. 1996) ......................................................................................30

*UFCW Local 751 v. Brown Grp, Inc.*
  517 U.S. 544 (1996)..................................................................................................21

*United States v. Bell*
  716 F. App'x 696 (9th Cir. 2018) .............................................................................25

*United States v. Dixon*
  901 F.3d 1322 (11th Cir. 2018) ................................................................................23

*United States v. McLaughlin*
  525 F.2d 517 (9th Cir. 1975) ....................................................................................25

*United States v. Nordling*
  804 F.2d 1466 (9th Cir. 1986) ..................................................................................25

*United States v. Sanchez-Gomez*
  584 U.S. 381 (2018)...............................................................................................7, 12

*United States v. Stallings*
  28 F.3d 58 (8th Cir. 1994) ........................................................................................23

*United States v. Sullivan*
  797 F.3d 623 (9th Cir. 2015) ....................................................................................23

*United States v. Taketa*
  923 F.2d 665 (9th Cir. 1991) ....................................................................................26

*United States v. Texas*
  599 U.S. 670 (2023)..................................................................................................17

*Vanegas v. City of Pasadena*
  46 F.4th 1159 (9th Cir. 2022) ............................................................................... 33

*Vasquez v. City of Santa Paula*, No. 13-CV-07726-CBM (AJWx)
  2015 WL 12734071 (C.D. Cal. Mar. 11, 2015) ..................................................... 31

*Vote.Org v. Callanen*
  39 F.4th 297 (5th Cir. 2022) ................................................................................. 21

*Wallingford v. Bonta*
  82 F.4th 797 (9th Cir. 2023) ................................................................................... 5

*Warth v. Seldin*
  422 U.S. 490 (1975) ................................................................................................ 8

*Webcor-Obayashi Joint Venture v. Zurich Am. Ins. Co.*
  No. 19-CV-07799-SI, 2022 WL 464176 (N.D. Cal. Feb. 15, 2022) ..................... 13

*Wheeler v. City of Santa Clara*
  894 F.3d 1046 (9th Cir. 2018) .............................................................................. 22

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*
  No. 21-cv-04435-EMC, 2021 WL 5964594 (N.D. Cal. Dec. 16, 2021) ................. 34

*Wright v. SEIU Local 503*
  48 F.4th 1112 (9th Cir. 2022) .............................................................................. 16

*Zinermon v. Burch*
  494 U.S. 113 (1990) .............................................................................................. 27

**State Cases**
*Ryan v. Cal. Interscholastic Fed'n - San Diego Section*
  94 Cal. App. 4th 1048 (2001) .............................................................................. 21

**Constitutional Provisions**
U.S. Const.
  Art. III ....................................................................................................... *passim*
  Amend. IV .................................................................................................. *passim*
  Amend. XIV .................................................................................... 1, 25, 26

Cal. Const.
  Art. I, § 7(a) ...................................................................................................... 1
  Art. I, § 13 ................................................................................................... 1, 21
  Art. I, § 15 ........................................................................................................ 1

**Federal Statutes**
42 U.S.C.
  § 1983 ...................................................................................................... *passim*

**State Statutes & Codes**

Cal. Corp. Code
§ 5310(a) ........................................................................................................9

Cal. Pen. Code
§ 647(e) .........................................................................................................6

**Rules**

Fed. R. Civ. P.
Rule 3 ...........................................................................................................22
Rule 30(e) .....................................................................................................10
Rule 56 .............................................................................................1, 12, 28

**Other Authorities**

9th Cir. Model Civil Jury Instr. 9.19 .......................................................14

**Other References**

15 James William Moore, et al., Moore's Federal Practice § 101.60 (3d ed. 2024) ....................11

Charles A. Wright et al., Federal Practice & Procedure, § 1552 (3d ed. 2024)............................21

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Notice is hereby given that on May 8, 2025, at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco; San Francisco Police Department; San Francisco Department of Public Works; San Francisco Department of Homelessness and Supportive Housing; San Francisco Fire Department; and San Francisco Department of Emergency Management (collectively "Defendants" or "the City") will and hereby do move this Court for summary judgment against Plaintiffs Coalition on Homelessness ("Coalition"), Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, and Teresa Sandoval (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 56 on the First Cause of Action under the Fourth Amendment to the U.S. Constitution, the Second Cause of Action under Article I, Section 13 of the California Constitution, the Third Cause of Action under the Fourteenth Amendment to the U.S. Constitution, the Fourth Cause of Action under Article I, Sections 7(a), 15 of the California Constitution, and the Prayer for Relief. The motion is based on the following grounds:

1. The City is entitled to summary judgment against Plaintiffs on all claims because the Court lacks subject matter jurisdiction over each Plaintiff since Plaintiffs lack standing or otherwise have moot claims.

   a. The City is entitled to summary judgment against Plaintiffs Frank, Martinez, and Sandoval on all claims because each of these Plaintiffs have settled their claims. Dismissal of these claims is forthcoming. Alternatively, the City is entitled to summary judgment because Plaintiffs lacked standing when this case commenced or have claims that are now moot.

   b. The City is entitled to summary judgment against Plaintiffs Cronk and Donohoe on all claims because each of these Plaintiffs lacked standing when this case commenced or have claims that are now moot.

   c. The City is entitled to summary judgment against Coalition on all claims because Coalition cannot establish organizational standing as a matter of law and there is no evidence to support organizational standing.

d.    The City is entitled to summary judgment against Coalition for all claims brought on behalf of Coalition's "members" because Coalition cannot establish associational standing as a matter of law and there is no evidence to support associational standing.

2.    The City is entitled to summary judgment against Plaintiffs because the Court lacks subject matter jurisdiction pursuant to the political question doctrine.

3.    The City is entitled to summary judgment against Plaintiffs on all claims for equitable relief because Plaintiffs have adequate remedies at law and there is no evidence of immediate irreparable harm to support the Prayer for Relief.

4.    The City is entitled to summary judgment against Coalition on the First and Third Causes of Action because Coalition cannot bring derivative Section 1983 claims on behalf of members.

5.    The City is entitled to summary judgment on Plaintiffs' First and Third Causes of Action for *Monell* liability to the extent any alleged violations are barred by the applicable statute of limitations.

6.    The City is entitled to summary judgment on Plaintiffs' First and Third Causes of Action for *Monell* liability because there is no evidence that a municipal policy or custom caused any constitutional violation;

7.    The City is entitled to summary judgment on Plaintiffs' Second and Fourth Causes of Action based on state law because those claims rise and fall with their federal counterparts.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the declarations filed along with the Motion, the attached exhibits, all pleadings and records on file in this action, and evidence presented to the Court in support of this Motion.

1    Dated:  April 3, 2025

2                                          DAVID CHIU
                                           City Attorney
3                                          YVONNE R. MERÉ
                                           EDMUND T. WANG
4                                          KAITLYN MURPHY
                                           MIGUEL A. GRADILLA
5                                          JOHN H. GEORGE
                                           STEVEN A. MILLS
6                                          Deputy City Attorneys

7
                                       By: _s/Steven A. Mills_____
8                                          STEVEN A. MILLS

9                                          Attorneys for Defendants
                                           CITY AND COUNTY OF SAN FRANCISCO; SAN
10                                         FRANCISCO POLICE DEPARTMENT; SAN
                                           FRANCISCO DEPARTMENT OF PUBLIC WORKS;
11                                         SAN FRANCISCO DEPARTMENT OF
                                           HOMELESSNESS AND SUPPORTIVE HOUSING;
12                                         SAN FRANCISCO FIRE DEPARTMENT; SAN
                                           FRANCISCO DEPARTMENT OF EMERGENCY
13                                         MANAGEMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This case began with a bang, but should end in a whimper. Of the seven original Individual Plaintiffs, just two permanently-housed Plaintiffs remain—Sarah Cronk and Joshua Donohoe. Coalition claimed to have thousands of past and present members, but now bases its case on just *ten*— most of them housed, and several of whom have settled their own individual claims. Plaintiffs amassed a trove of declarations to seek preliminary injunction, but their mountain of "evidence" has shrunk to a molehill as many declarants' claims have not withstood scrutiny. The Defendants[1] seek summary judgment, and respectfully ask this Court to grant it for the following reasons.

First, the Court lacks subject matter jurisdiction over Plaintiffs' claims. The Coalition, with no property destruction of its own, has no concrete injury and cannot establish associational standing through any of the ten claimed members as each lacks standing. Coalition, whose amorphous and undefined "membership" is but a fiction, lacks the requisite indicia of membership and the claims require individual participation, which defeats associational standing. Coalition's organizational standing fares no better in the wake of recent Supreme Court decisions. While Coalition's political goals may be laudable, there is no basis to adjudicate them here.

The injunctive relief Plaintiffs seek is unjustified. First, even assuming that Plaintiffs could overcome the significant standing and substantive hurdles, adequate legal remedies exist and so Plaintiffs have no right to the equitable remedies they seek. Second, Plaintiffs have not identified any alleged violations in the past two years, and thus cannot show a sufficient risk of future irreparable harm necessary to enter injunctive relief. And even if Coalition could assert a Section 1983 claim on another's behalf (it cannot), neither it nor the other Plaintiffs carry their burden to establish the elements of any of their remaining claims. Finally, Plaintiffs lack admissible evidence to show any of the other necessary elements for municipal liability on the theories they allege—deliberate indifference, a pattern and practice, and a failure to train—particularly where the City provides storage

---

[1] Plaintiffs sued the City and County of San Francisco and five of its departments (collectively referred to as the "City").

and shelter, trains employees, and has bagged and tagged thousands of items over the past few years. Judgment should be entered for the City on all claims.

## LEGAL STANDARD

To prevail on summary judgment, the moving party need only point out "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmovant then must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Comty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction Over All Claims.

Three Plaintiffs remain in the case: two individuals and one organization.[2] None support jurisdiction. "The constitutional requirement that federal courts resolve 'only actual, ongoing cases or controversies' applies 'through all stages of federal judicial proceedings[.]'" *Wallingford v. Bonta*, 82 F.4th 797, 800 (9th Cir. 2023) (citation omitted).  Summary judgment is required since the Court lacks jurisdiction.[3]

### A.    The Court Lacks Jurisdiction Over The Two Individual Plaintiffs.

To meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Injury in fact requires the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)

---

[2] Plaintiffs Teresa Sandoval, Molique Frank, and David Martinez have settled all their claims brought against the City. (*See* ECF Nos. 336, 344, 348.) They no longer have a live controversy.

[3] "Homelessness is complex. Its causes are many. So may be the public policy responses required to address it." *City of Grants Pass v. Johnson*, 603 U.S. 520, 560 (2024). Based on the Supreme Court's admonishment, the Court's jurisdiction is also limited by the political question doctrine since there are no manageable standards to resolve the issues this litigation presents. *Baker v. Carr*, 369 U.S. 186, 210, 217 (1962).

(citation omitted). Standing for equitable relief is demanding since injuries based on contingencies or speculation are insufficient as a matter of law. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Lujan*, 504 U.S. at 564; *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999). A "threatened injury must be certainly impending to constitute injury in fact." (ECF No. 281 at 22.) Standing "ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569, n.4 (emphasis altered) (citation omitted). The analysis is "individualized" and "must consider all the contingencies that may arise . . . before the future harm will ensue." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251-52 (9th Cir. 1990). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Furthermore, "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff." *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001); *Hodgers-Durgin*, 199 F.3d at 1041 (no standing if injury is "contingent upon respondents' violating the law"). Courts routinely find that the fear of being homeless and possibly subjected to a hypothetical deprivation of rights in an unlawful encampment is insufficient to support jurisdiction. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021); *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *5-6 (D. Minn. July 22, 2024); *Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021). That approach is sound since a "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2.

Plaintiffs Cronk and Donohoe, a cohabitating couple, cannot establish that they had standing when this case was filed because the evidence does not show that the claimed threat of unlawful property destruction was "certainly impending" in September 2022. (ECF No. 281 at 22.) Their theory is based entirely on the unwarranted assumption that the City would destroy their property without a reasonable constitutional basis to do so. Cities are able to lawfully regulate the public right of way, including by prohibiting lodging. Cronk and Donohoe were prohibited from lodging on public property under state law. *See, e.g.*, Cal. Pen. Code § 647(e). There are also many lawful circumstances where the City may discard property kept on the right of way pursuant to the City's Bag & Tag Policy,

which Plaintiffs agree is constitutional. (Ex. 1, CCSF-COH_000385 § 3 [third revision effective February 8, 2022]; ECF No. 65 at 42:27-28.) For instance, the City may lawfully discard items comingled with hazardous materials and contraband consistent with policy and constitutional requirements. Thus, their assertion that they faced an imminent risk of unlawful property destruction is entirely speculative and based on a long line of contingencies within their control.

Demanding standards also apply when a risk of future harm hinges on the plaintiff violating criminal laws to justify standing. Plaintiffs' pre-litigation conduct underscores the point. Leading up to the lawsuit, ████████████████████████████████████████████████ ███████████████ (Declaration of Sarah Locher ("Locher Decl.") ¶ 6b; Declaration of Lisa Rachowicz ("Rachowicz Decl.") ¶ 6.) And on June 23, 2022, Cronk and Donohoe turned down a tiny home and were *voluntarily* homeless, and thus lodging on public property in violation of California law. (Ex. 2, Donohoe Depo. 185:23-24, 186:4-9, 192:12-16, 193:10-194:12; *see also* Declaration of Louis Bracco ("Bracco Decl.") ¶¶ 3-7 [identifying storage programs].) During the time Cronk and Donohoe voluntarily lodged in violation of state law, they ████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ (Declaration of Steven Mills ("Mills Decl."), Ex. 2, Donohoe Depo. 228:19-229:20, 230:18-233:7, 233:22-235:15, 236:5-237:3, 238:19-239:12; Ex. 3, Cronk Depo. 134:1-6, 134:19-137:24.) Their future injuries included a speculative chain of contingencies within their control, including rejecting resources available to avoid homelessness, staying on the right of way in violation of valid laws, unlawfully keeping property in the right of way, and failing to keep their encampment and property free of illegal contraband. The Court recognized these same contingencies in dismissing Plaintiff Sandoval's ADA claim and the same logic applies here. (ECF No. 281 at 23.) Cronk and Donohoe lacked standing when this lawsuit was filed.

Alternatively, Cronk and Donohoe's claims are moot. "[I]t is not enough that a dispute was very much alive when suit was filed." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Plaintiffs "must continue to have a personal stake in the outcome of the lawsuit." *Id.* at 478 (cleaned up). "A case that becomes moot at any point . . . is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018). Cronk and Donohoe have no personal stake in this

litigation since they face no concrete risk of harm. They have been housed in City-funded programs for the vast duration of this case, confirming the lack of imminent harm at the time of filing and that they could have avoided the harm they claim by accepting housing. Each also disclaimed any intention of being homeless and storing property on the street in the future. (Ex. 3, Cronk Depo. 158:3-159:6, 239:9-14; Ex. 2, Donohoe Depo. 43:21-44:13, 45:11-13, 58:23-59:1, 59:13-22.) Even in the context of mootness, courts must "assume that '[litigants] will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct." *Sanchez-Gomez*, 584 U.S. at 391 (citation omitted). Any future harm to them is based on "[s]peculative contingencies," that "afford no basis for finding the existence of a continuing controversy . . . as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (citation omitted); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). For all of the contingent and speculative reasons already highlighted, Cronk and Donohoe cannot overcome mootness.[4]

## B.    The Court Lacks Jurisdiction Over Coalition.

Coalition bases its standing on injuries to its members (associational standing) and injuries to itself (organizational standing). Its evidence falls short under either theory.

### 1.    Coalition Has No Associational Standing.

Litigants typically cannot "assert[] the rights or legal interests of others[.]" *Warth v. Seldin*, 422 U.S. 490, 509 (1975). This ensures "plaintiffs possess such a personal stake" to assure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004) (cleaned up). Nevertheless, "[e]ven in the absence of injury to itself, an association *may* have standing solely as the representative of its members." *Warth*, 422 U.S. at 511 (emphasis added). To have associational standing, an organization must have members. And even then, organizations *may* sue only "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

---

[4] Adequate legal remedies obviate the "capable of repetition, yet evading review" exception in a case like this where damages are available. *Lyons*, 461 U.S. at 109.

participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Summary judgment is required since Coalition lacks the requisite indicia of membership, no member has standing, and the claims require individual participation. The evidence fails at the first and third prongs.

### a. Coalition Cannot Carry Its Burden At The First Prong.

Coalition must demonstrate it has members who "have standing to sue in their own right" by making "specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Associated Gen. Contrs. of Am. v. Cal. DOT*, 713 F.3d 1187, 1194 (9th Cir. 2013) (citation omitted). It claims standing based on ten individuals they claim as "members." (Ex. 4, Plts. Resp. to Defs. 2d Set of Interrogs. ["Plts. 2d Rog Resp."], No. 17.) There is no evidence to support Coalition's standing through any of them.

### i. Coalition Lacks The Indicia of Membership.

"Implicit in the first prong of [associational standing] is the requirement that an organization must generally have 'members' to bring suit on their behalf." *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Ore. 2021). Coalition has elected, pursuant to California law█████████████████████ ███████████████████████████████████ (Ex. 5, Coalition Depo. 26:25-27:2; Ex. 6, COH01508327 at ██████████████████████████ *see also* Cal. Corp. Code § 5310(a).) Coalition does not track its "membership" and in turn does not have a comprehensive way to even know who it claims to represent. (Ex. 5, Coalition Depo. 71:17-25, 73:4-20.) Coalition even admits that people it claims as "members" may not know they are members. (*Id*. at 96:18-25.)

Because Coalition is not a formal membership organization it must establish the requisite indicia of membership, which considers whether purported members: (i) elect the organization's leadership, (ii) serve as the organization's leadership, and (iii) finance the organization's activities, including the costs of litigation. *Hunt*, 432 U.S. at 344-45. These requirements help ensure the organization is "sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096-98 (9th Cir. 2021) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)). Coalition has no evidence to satisfy this inquiry. Neither Coalition nor its members are funding

1  this litigation. (Coalition Depo. 101:5-102:3.)[5] Coalition's ███████████████████

2  ██████████████████████████████████████████████████████████████ (Ex. 6,

3  COH01508327.) Coalition's Board, which did not include any unhoused member, had the authority to

4  vote on whether to bring this litigation and members do not have voting rights to pick board members.

5  (Ex. 5, Coalition Depo. 79:25-80:7.) Coalition's ████████████████████████████

6  ████████████████████████████████████. (Ex. 8, COH01471481 at 491.)

7  ██████████████████████████ (*id.*) and Coalition cannot establish when it last hired an

8  unhoused staff member. (Ex. 5, Coalition Depo. 82:15-18.) No documentation beyond the manual sets

9  forth members' rights, (*Id.* at 92:7-12), and Coalition was aware ██████████████████

10  █████████████████ (Ex. 9, COH00897439-444.)

11      Coalition's purported "core members" also have myriad ill-defined understandings of their

12  control, influence, and basis for "membership." [6] Some only provided volunteer services, most have

13  never participated in any meetings, none voted for this litigation, and many are unaware of having any

14  control over Coalition. (Ex. 5, Coalition Depo. 92:7-12.; Ex. 3, Cronk Depo. 94:15-17, 96:18-97:9,

15  98:9-15, 98:24-103:6; Ex. 2, Donohoe Depo. 198:24-200:12, 201:7-202:12, 205:1-6; Ex. 10, Martinez

16  Depo. 115:2-25, 116:20-119:16; Ex. 11, Brown Depo. 149:9-150:24;[7] Ex. 12, Orona Depo. 179:20-

17  180:10; Ex. 13, Melodie Depo. 122:14-126:8; Ex. 14, Bryant Depo. 181:7-9; 182:8-183:24; Ex. 15,

18  Reem Depo. 85:11-86:2, 96:24-98:10; Ex. 16, Stephenson Depo. 56:17-24, 66:3-24). Coalition

19  acknowledged some of the members it identified for standing are in a ████████████████████

20

---

21  [5] Records from discovery show Coalition was not the influence behind the litigation. Coalition represented ████████████████████████████████████████████████████████████

22  ████████████████████████████████████ (Ex. 22, COH00974421.)

23  [6] Coalition ██████████████████████████████████████████████████ (Ex. 5, Coalition Depo. 27:5-7), including ██████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████ (*Id.* at 27.) Membership is not limited to homeless individuals or those at risk of becoming homeless. (*Id.* at 78:3-18.)

26  [7] Brown denied being a member and was surprised Coalition considered her one (Ex. 11, Brown Depo. 153:17-24) before attempting to contradict her testimony via an improper errata, which

27  the Court should disregard. *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005) (holding a witness cannot use an errata to contradict testimony and avoid summary

28  judgment because "Rule 30(e) is to be used for corrective, and not contradictory, changes").

█████████████████████████████ (Ex. 6, Coalition Depo. 74:24-75:13, 110:24-112:4, 153:5-19.) This kind of passive involvement cannot support associational standing. *See Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*, No. 24-2356 (JDB), 2024 WL 4817122, at *2 (D.D.C. Nov. 18, 2024) ("a platitude like a claim to serve as a 'voice' for [the member group] falls far short of showing that any particular [member] can actually influence . . . activities, and the invitation to share stories . . . [is] not enough for membership"); *Hindu Am. Found., Inc. v. Kish*, No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296, at *5-7 (E.D. Cal. Aug. 30, 2023) (large constituency with unclear influence insufficient); *see also* 15 James William Moore, et al., Moore's Federal Practice § 101.60 (3d ed. 2024) ("[A]n organization . . . may not claim associational standing merely by virtue of the fact that it represents, or claims to represent, the interests of a group of people.").

Nor is there evidence Coalition had prior consent to assert claims on behalf of members, which would be required to assert standing on their behalf. Consent is a fundamental component of representation. *See, e.g.*, *Nat'l Res. Def. Council, Inc. v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974) (dismissing claim after acknowledging that there had been "no allegation or showing on the record . . . members have either requested to be represented or consented to be represented" by the organization); *Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 344 n.16 (C.D. Cal. 1997) ("an organization only has associational standing when it has a clear mandate from its membership to take the position asserted in the litigation"). Coalition admits it does not have any agreement or authority to actually represent members in this case. (Ex. 5, Coalition Depo. 84:16-86:1; Ex. 17, Plts. Resp. to Defs. 1st RFA ("Pltf. RFA Resp."), No. 17.) It also admits it never discussed remedies with its members, including whether any homeless member wanted to seek damages. (Ex. 5, Coalition Depo. 102:7-103:21.) Tellingly, Coalition's claimed members did not know that Coalition asserted they were at risk of future property destruction. (Ex. 12, Orona Depo. 181:16-24; Ex. 11, Brown Depo. 150:25-151:10, 153:21-24; Ex. 14, Bryant Depo. 50:13-51:21; Ex. 13, Melodie Depo. 32:14-2, 121:24-122:13; Ex. 5, Coalition Depo. 142:22-25.) Summary judgment must be granted.

### ii.    No Claimed Individual Member Has Standing.

Despite alleging it has had thousands of members, Coalition only identifies ten claimed "members" to support standing: Toro Castaño, Shyhyene Brown, Couper Orona, Sarah Cronk, Joshua

Donohoe, David Martinez, "Melodie," Todd Bryant, James Reem, and Sarah Stephenson. (Ex. 4, Plts. 2d Rog Resp., No. 17.) The Court lacks jurisdiction over all of them.

First, the individuals identified in the Third Amended Complaint (ECF No. 289, "TAC") (Castaño, Orona, and Brown) do not have standing.[8] Castaño released his claims and the Court already determined he lacks standing. (ECF No. 281 at 24.) All three were housed when Coalition filed this case, remain housed now, and disclaimed any intent to store items on the right of way.  (Ex. 12, Orona Depo. 21:8-24:17, 120:2-122:25, 185:17-187:1; Ex. 11, Brown Depo. 24:18-29:24, 56:19 -61:16; Ex. 18, Castaño Depo. 38:19-40:19, 315:18-317:24; Locher Decl. ¶¶ 6a, 6e; Rachowicz Decl. ¶¶ 5-6; Declaration of Jason Adamek ("Adamek Decl.) ¶¶ 2-7a-b ███████████████ ████████████████ ) As with the Individual Plaintiffs, any injury to these three was contingent on numerous events, including them leaving housing, moving to the right of way in violation of valid laws, keeping their property in a condition that it is not hazardous, and having their property seized without adequate time. Those "speculative chain of possibilities" cannot support standing. (ECF No. 281 at 22.)

Next, the individuals not identified in the TAC (Cronk, Donohoe, Martinez, Melodie, Bryant, Stephenson, and Reem) do not have standing. These individuals should not be considered for Coalition's standing because Courts cannot consider theories not raised in a complaint. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000). Even so, Cronk and Donohoe cannot support jurisdiction for the reasons discussed *supra* §I.A.[9] Martinez also settled, is housed, and has disclaimed any intent to be homeless or store property on the street. (Ex. 10, Martinez Depo. 55:20-25, 56:8-9, 100:25-101:16; Locher Decl. ¶ 6d; Rachowicz Decl. ¶ 6; ████████████

---

[8] To preserve the City's prior pleading challenge, only members named in the complaint can support standing. *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) is not based on the plausibility standard and was wrongly decided. *See, e.g.*, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1116 (9th Cir. 2024) (Baker, J., concurring) (recognizing the "continuing vitality of *Cegavske* is an open question").

[9] Mootness does not change the result. *See, e.g.*, *Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 207 (D.C. Cir. 2011) ("If [the organizational plaintiff] ha[d] standing, it is only because at least one of [its members] ha[d] standing, and if the claims of [the members] are moot, then [the organization's] claims are moot as well."). That makes sense because there is no "freestanding exception to mootness outside of the class action context." *Sanchez-Gomez*, 584 U.S. at 387. "[C]ourts may not 'recognize . . . or 'create *de facto* class actions at will.'" *Id.* at 389.

Bryant lacks standing because, like Castaño, Brown, and Orona, he was housed when this case commenced, has been housed since, disclaimed any intent to be homeless and store property on the street, and ██████████████ (Ex. 14, Bryant Depo. 23:25-29:10; ECF No. 9-6 at 4-1; ██████ ██████; Locher Decl. ¶ 6g; Rachowicz Decl. ¶ 6.) Melodie lived in one of three vehicles since 2018, has not camped on the street, and leaves her property inside of her three vehicles or private storage units instead of the street. (Ex. 13, Melodie Depo. 35:20-39:6, 40:22-42:11, 43:10-44:10, 47:3-25; Locher Decl. ¶ 6j.) Setting aside that the TAC does not concern the vehicularly unhoused, Melodie is not included in written discovery responses concerning property destruction despite being known to Coalition since 2008. (Ex. 19, Plts. Resp. to Defs. 1st Set of Interrogs. ["Plts. 1st Rog Resp."], Nos. 4-7, 10.) Any injury to her is based on the same speculative chain of hypotheticals already deemed insufficient. Finally, Stephenson and Reem are irrelevant to the standing inquiry because Coalition does not claim they were "members" when this case commenced. (Ex. 4, Plts. 2d Rog Resp., No. 17); *3C, LLC v. Rokita*, No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) (holding entity that was not a member when case commenced could not support associational standing); *Freedom From Religion Found., Inc. v. Weber*, 951 F. Supp. 2d 1123, 1131 (D. Mont. 2013) (rejecting members that postdate filing of the lawsuit). Coalition also did not disclose any injuries to them in the TAC or in written discovery.[10] Stephenson did not live in San Francisco when this case was commenced, Reem was housed, and he has property storage. (Ex. 16, Stephenson Depo. 24:2-14, 27:5-18, 102:13-16; Ex. 15, Reem Depo. 23:11-21, 31:20-33:6, 42:19-43:24; *see also* Locher Decl. ¶ 6f.; Adamek Decl. ¶ 7d.) Under those circumstances, neither had standing. Coalition cannot carry its burden to show associational standing and judgment must be granted.

---

[10] (Ex. 19, Plts. 1st Rog Resp., Nos. 4-7, 10.) Federal Rule of Civil Procedure 37(c)(1) forecloses Plaintiffs from relying on evidence in opposition they did not disclose in their discovery responses to the City's discovery requests. *See, e.g.*, *Webcor-Obayashi Joint Venture v. Zurich Am. Ins. Co.*, No. 19-CV-07799-SI, 2022 WL 464176, at *8 (N.D. Cal. Feb. 15, 2022); *Pentalpha Macau Com. Offshore Ltd. v. Reddy*, No. C 03-5914 MMC, 2005 WL 2989273, at *4 (N.D. Cal. Nov. 3, 2005).

### b.    Coalition Cannot Carry Its Burden At The Third Prong.

Coalition must prove that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (dismissing claim where association "cannot satisfy the third requirement").[11] Summary judgment is required because the claims and remedies both require individual participation.

Since the parties agree the written Bag & Tag Policy is constitutional (TAC ¶ 237; ECF No. 65 at 42:27-28), individual involvement is required to evaluate Plaintiffs' assertion that the City destroys property in violation of the policy. The Bag & Tag Policy, and Constitution, authorizes DPW to discard certain items, for example those that are abandoned, soiled, or those co-mingled with hazardous material, and also permits differing types of advance notice depending on the circumstance. (Ex. 1, CCSF-COH_000385.) Coalition bears the burden of establishing the *absence* of the lawful exceptions that would allow seizure of a members' property. *See Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir. 1994) (plaintiffs carry the burden to demonstrate property was "seized unreasonably in violation of the Fourth Amendment"); *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002); *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012); Ninth Cir. Model Civil Jury Instructions, 9.19. For Coalition to satisfy its burden, members must be involved so the parties can inquire into what property was destroyed, its condition, whether the member abandoned their property or consented to it being discarded, any health and safety hazards that would factor into bagging and tagging, and what notice was provided under the particular circumstances. These inquiries are not tangential; they are at the heart of Plaintiffs' claims. "[M]ultiple variations, specific to individual members" of this kind are "not susceptible to judicial treatment as 'systematic policy violations that . . . make extensive individual participation unnecessary.'" *Spinedex Physical Therapy USA Inc.*, 770 F.3d at 1293 (citation omitted); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 861 F. Supp. 2d 1170, 1191-92 (D. Haw. 2012) (due process required individual participation).

---

[11] As explained *infra* §III.A, whether this prong is prudential is an open question for the Supreme Court. *See., e.g.*, *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, No. 14-CV-953 (GK), 2016 WL 7376847, at *14 (D.D.C. Dec. 19, 2016) (recognizing "the fact that both associational and third party standing have been labelled prudential in the past, does not establish what will happen in the future"). While the Court is bound by the inapt prudential label in the interim, the label should be overruled.

Coalition admits the person whose property was destroyed is the person best situated to testify about its condition, and therefore Coalition did not perform its own investigation into claims of property destruction. (Ex. 5, Coalition Depo. 283:22-284:2.) Coalition's witnesses have admitted to not knowing the Bag & Tag Policy, meaning their conclusory legal assertions that property was improperly discarded have no basis. (Ex. 2, Donohoe Depo. 158: 4-6; 161:22-162:16; Ex. 11, Brown Depo. 80:15-82:20). Because firsthand knowledge of the circumstances of each alleged unlawful destruction resides with the claimed members—not Coalition—and is necessary to carry Plaintiffs' burden of proof, individual participation is required and Coalition cannot prove otherwise.

Ultimately, these individualized inquiries are far removed from the pure facial challenge to a statute that *Hunt* contemplated. Even then, "[t]he relief sought is only half of the story. . . ." *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993); *Cmty. Fin. Servs. Ass'n of Am.*, 2016 WL 7376847, at *6 (allowing associational standing in all injunctive cases "is plainly precluded by the Court's holding in *Hunt*"). "When the claims require an 'ad hoc factual inquiry' for each member represented by the association, the organization does not have associational standing." *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 986 (C.D. Cal. 2008), aff'd 362 F. App'x. 640 (9th Cir. 2010); *see also Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (finding fact-specific tort claims required individual participation even though the case sought injunctive relief); *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. and Rehab. Servs.*, 958 F.2d 1018, 1022 (10th Cir. 1992) (reversing associational standing because it ignored the factual inquiries necessary to establish the claim). Because Coalition seeks systemic relief, it does not have standing "beyond the injuries actually incurred by those members." *Bone v. Univ. of N.C. Health Care Sys.*, 678 F. Supp. 3d 660, 704 (M.D.N.C. 2023); *California v. Azar*, 911 F.3d 558, 582-83 (9th Cir. 2018) ("Injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." (cleaned up)). Establishing the scope of the members' genuine injuries to support systemic relief is unavoidable. Prudence and law compel judgment in the City's favor.

### 2.    Coalition Lacks Organizational Standing.

#### a.    Coalition Did Not Lose Any Property.

Standing requires a cognizable legal right the Court can redress. Coalition has not had its own property destroyed and has no standing under the historical standards for property-based claims.[12] (Ex. 19, Plts. 1st Rog Resp., No. 10.) To the extent Coalition bases its standing on injuries to third parties, that fails. "Particularization is necessary to establish injury in fact[.]"*Spokeo*, 578 U.S. at 339. Courts historically dismiss property claims premised on injuries experienced by third parties. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citation omitted) (recognizing that the rights of one cannot "enhance . . . Fourth amendment rights" of another); *Berezovsky v. Moniz*, 869 F.3d 923, 927 n.2 (9th Cir. 2017) (no standing where "due process argument seeks to vindicate the association's property rights, not his own"). Thus, Coalition's standing fails as a matter of law.

#### b.    *Hippocratic Medicine* Bars Coalition's Theory Of Standing And There Is No Evidence To Support An Erroneous Extension.

Coalition's disclaiming of any traditionally-recognized injury for these property-based claims renders *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982) inapplicable. The Supreme Court has admonished that *Havens* is "an unusual case" that should not be extended "beyond its context." *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Its context as a statutory claim for damages under the FHA matters since the FHA conferred "on all 'persons' a legal right to truthful information about available housing"—meaning the organization had its own redressable statutory cause of action for a cognizable injury directly caused by the dissemination of false information to the organization's employees carrying out counseling services. *Havens*, 455 U.S. at

---

[12] *See, e.g.*, *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (Fourth Amendment standing exists where there is a "reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized"); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1104-05 (9th Cir. 2006) (lacking cognizable privacy interest at issue); *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011) (recognizing that "procedural due process claims ripen only when it is clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred"); *Wright v. SEIU Local 503*, 48 F.4th 1112, 1120-21 (9th Cir. 2022) (requiring showing plaintiff "was accorded a procedural due process right . . . and that [plaintiff] has concrete interests that are threatened"). While there are aspects of Fourth Amendment standing that are not jurisdictional (*see infra* §III.B.2b), Article III requires an in invasion of a legally protected interest that is actual, concrete, and particular. Historical tradition is the touchstone, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), and as shown above, the Fourth Amendment historically applies to the person particularly searched or seized.

373, 377. Coalition has no applicable statutory or constitutional right and has no cognizable injury of its own that is redressable. An alternative reading authorizes "organizations in America [to] have standing to challenge almost every [] policy that they dislike," which is unsupported by Article III. *Hippocratic Med.*, 602 U.S. at 395. "[T]he lack of historical precedent" is "[a] 'telling indication of the severe constitutional problem' with [Coalition's] assertion of standing . . . ." *United States v. Texas*, 599 U.S. 670, 677 (2023) (citation omitted).

Even if some direct injury to a core activity is sufficient to demonstrate standing outside *Havens*' statutory context, and no law in the Ninth Circuit permits that following *Hippocratic Medicine*,[13] Coalition has no evidence to support an injury to its own core activities under the demanding standard for equitable relief. Coalition asserts several harms to its "principal activities" caused by the City's allegedly unlawful property destruction, but completely fails to support its burden to establish these harms with evidence. (TAC ¶¶ 23-24 (claiming unlawful destruction required replacing "homeless verification" forms and buying necessities like tents and socks and alleging numerous harms resulting from Coalition's inability to contact people whose phones and computers were unlawfully destroyed.) As a threshold matter, Coalition was not prevented from engaging in the very activities it says were harmed. Coalition's own ███████████████████████████ ███ underscores that Coalition ████████████████████████████████████ ██████████████████████████████████████████████████████████. (Ex. 20, COH00832298-300; *see* TAC ¶ 24(c)-(e).) Coalition admits that its employees have been monitoring "sweeps" as part of their job responsibilities since 1995. (Ex. 5, Coalition Depo. 44:8-23; Ex. 3, Cronk Depo. 103:21-104:5.) And the direct services Coalition claims were principal activities (completing homeless verifications, assisting with Coordinated Entry applications, and purchasing and giving out other items) were anything but. Coalition's ███████████████████████████ ██████████████████████ (Ex. 8, Coalition Depo., Ex. 145, COH01471483.) The same ████████████████████████████████████████████████████████████

_____

[13] The pre-existing core activity test in *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024) was vacated and cannot justify organizational standing. Coalition expressly waived any reliance on diversion or resources. (*See* ECF No. 304 at 21.)

██████████████████████████████████████████████████████ (Ex. 8,

Coalition Depo., Ex. 145, COH01471490, COH01471493-94 (emphasis added).)

Notably, Coalition's written discovery fails to identify a single instance of a Coalition provided service being frustrated or item being destroyed. (Ex. 21, Plts. Resp. to Defs. 3rd Set of Interrogs., No. 19.) Coalition does not know how many verification forms the City "illegally" destroyed and would have to rely upon inadmissible hearsay from others because it has no personal knowledge. (Ex. 5, Coalition Depo. 188:3-189:3.) Coalition also did not preserve homeless verification forms throughout this litigation because "that was kind of a newer development later on" in the course of litigation, meaning it was not relevant to justify standing before they filed this lawsuit. (*Id*. at 183:4-11.) Similarly, Coalition does not record who it assists with Coordinated Entry, does not know the number of people it has assisted, and has no tracking of the number of individuals it has assisted who have been unable to complete the Coordinated Entry process because of the City's alleged unlawful conduct. (*Id*. at 127, 166:9-14, 169:12-18, 170:20-25.) The only incident that allegedly took place concerns a deceased member and is based on a friend's inadmissible hearsay telling that individual the City took his property. (*Id*. at 170:20-173:14.) No other evidence based on personal knowledge has been provided. Nor are there records of who received a tent or any donation from Coalition, and Coalition has not purchased tents to donate since the first few months of the pandemic. (*Id*. at 127:6-7, 196:17:22, 198:7-13, 206:9-12.) And it never purchased socks and could only recall purchasing sleeping bags twice a few years ago. (*Id*. at 194:17-24; 195:20-25; 197:2-8.) Coalition does not track the destruction of property it gives out and only has inadmissible hearsay to claim it was unlawfully destroyed. (*Id*. at 207:11-25, 208:13-210:24.)

In light of the evidence, Coalition cannot establish causation or redressability. "[W]hen (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,'" standing is "substantially more difficult to establish." *Hippocratic Med.*, 602 U.S. at 382. That is because Courts cannot "rely on speculation about the unfettered choices made by independent actors not before the courts," *Clapper*, 568 U.S. at 414 n.5 (cleaned up), whose "legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562 (citation omitted). All of Coalition's injuries are premised on unidentified third parties using services, becoming members, and

complying with valid laws. Displacement is also lawful following *Grants Pass* and because the Bag and Tag policy is Constitutional, there are instances where property can be lawfully discarded. Even if property is bagged and tagged, Coalition faces the same injuries where individuals do not have access to their property or choose to not pick it up. Furthermore, many of the



(Ex. 22, COH00873981-82.)

(Ex. 23, COH00742780-86, 742800-841; Ex. 24, COH01502341-342)

. (Ex. 25, COH00714800-801.) Redressability is entirely speculative under these circumstances.[14]

After nearly two and a half years of litigation, it is apparent Coalition has never had standing for injuries in its own right. Dismissal is appropriate for lack of subject matter jurisdiction where a litigant's claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted). Thus, summary judgment is appropriate.

## II.    Plaintiffs Cannot Obtain The Equitable Relief They Seek.

Even if Plaintiffs have standing, their prayer for equitable relief fails as a matter of law. *See, e.g.*, *Swi-Co Constr., Inc. v. Amco Ins. Co.*, No. C 10-3122 PJH, 2011 WL 13269710, at *10 (N.D. Cal. Sept. 19, 2011) (granting summary judgment on plaintiff's prayer for relief). Plaintiffs have an adequate remedy at law and do not identify wrongful conduct in the past two years.

### A.    Adequate Legal Remedies Bar Equitable Relief.

Plaintiffs cannot establish "the inadequacy of remedies at law" to justify equitable relief. *Lyons*, 461 U.S. at 103 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)); *Sonner v. Premier*

---

[14] "[A] plaintiff who suffers injuries caused by the government still may not be able to sue because the case may not be of the kind 'traditionally redressable in federal court.'" *Hippocratic Med.*, 602 U.S. at 381, n.1 (citations omitted).

*Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020) (recognizing the doctrine "safeguard[s] the constitutional right to a trial by jury in federal court"). "Damages are a normal, and adequate, response to an improper search or seizure . . . ." *Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir. 2004). The remedies here are barred since the legality of a pattern and practice can be determined in a suit for damages. *See, e.g.*, *Lyons*, 461 U.S. at 111; *O'Shea*, 414 U.S. at 490-93, 502-04.

**B.    Plaintiffs Cannot Demonstrate Immediate Irreparable Harm.**

Plaintiffs cannot show a recent history of alleged violations to justify equitable relief. "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. "Past wrongs are not enough . . . ." *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984). Although the City served discovery requiring Plaintiffs to exhaustively identify the instances of property destruction that support their claims, Plaintiffs did not identify any from the past two years. (Ex. 19, Plts. 1st Rog Resp., No. 4.) Plaintiffs' initial response, served in June 2023, relied exclusively on declarations filed by May 2023. (*Id.*) Plaintiffs supplemented their response one year later in August 2024, to add only the single instance raised by Cronk from January 5, 2023. (Ex. 26, Plts. Suppl. Resp. to Defs. 1st Set of Interrogs., No. 4.) Plaintiffs are bound by their responses and do not contend the City destroyed the property of any person experiencing homelessness in the second half of 2023, all of 2024, or through the close of fact discovery in 2025. *See supra* n.10. As to the due process claims based on the DPW Storage Yard ("Yard"), Plaintiffs were required to identify every instance where they contend a person was unable to obtain their property from the Yard. (Ex. 21, Plts. 3rd Rog Resp., No. 22.) No instances were identified past September 2022. (*Id.*) Therefore, Plaintiffs lack the ability to argue any person was unable to obtain their property from the Yard since the last quarter of 2022 through the close of fact discovery in 2025. Such a significant gap is sufficient to show equitable relief is not appropriate as a matter of law.

**III.    Plaintiffs' Claims Fail On The Merits.**

**A.    Coalition Cannot Bring A Section 1983 Claim On Behalf Of Members.**

Coalition cannot bring a suit under Section 1983 on behalf of its members as an association. By its plain terms, Section 1983 only makes a defendant "liable *to the party injured*" by a "deprivation of

any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). "[U]sing traditional tools of statutory interpretation," Coalition cannot show the "legislatively conferred cause of action encompasses" the claims it brings. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (cleaned up). The Supreme Court "consistently refuse[s] to read § 1983's 'plain language' to mean anything other than what it says." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 177 (2023). "Neither [the] language nor the history . . . [of Section 1983] suggests that an organization may sue . . . for the violations of rights of members." *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973); *accord Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (recognizing organization cannot bring Section 1983 claim on behalf of members); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (same); *Vote.Org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022). Allowing Coalition to bring a Section 1983 claim contravenes the plain meaning of the law because the City would be *liable to* Coalition as a party that did not suffer its own injury. Coalition's Section 1983 claim therefore fails as a matter of law.[15]

## B.    The Evidence Does Not Support Plaintiffs' Claims.

Plaintiffs bring unlawful seizure and due process claims under federal and state laws governing deprivations of property. Plaintiffs' state law claims fall with their federal counterparts.[16] With respect

---

[15] Whether Coalition can state a claim as a matter of law is analytically distinct from the associational standing inquiry. *See* Charles A. Wright et al., Federal Practice & Procedure, § 1552 (3d ed. 2024) ("Absent statutory authority, however, an association is not the appropriate party for bringing suit to assert the personal rights of its members."). Indeed, the Supreme Court recognized that its "'prudential' branch of standing," is "a doctrine not derived from Article III" and that its labels are "inapt." *Lexmark.*, 572 U.S. at 126 (cleaned up). The Ninth Circuit has interpreted *Lexmark* as "suggesting that, in many cases, 'third-party standing' is really an issue of whether the party has a cause of action under a statute[.]" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 841 (9th Cir. 2022) (citation omitted). Associational standing is a "strand" of the same representative standing. *UFCW Local 751 v. Brown Grp, Inc.*, 517 U.S. 544, 557 (1996); *see also Hippocratic Med.*, 602 U.S. at 398 (Thomas, J., concurring) ("Associational standing, however, is simply another form of third-party standing.").

[16] The Fourth Amendment and Article I, Section 13 of the California Constitution overlap. *See generally Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 929 (9th Cir. 2006). Like in *Sanchez*, the case law "provides no support for the hypothesis that Article I § 13 of the California Constitution provides greater protection than the Fourth Amendment in the context of this case." *Id.* at 930. The same is true of the due process claims. *Today's Fresh Start, Inc. v. Los Angeles Cnty. Office of Educ.*, 57 Cal.4th 197, 212 (2013). There are minor differences which are not relevant here since the City's motion is not based on an argument that Plaintiffs failed "to establish a property or liberty interest" in the seized items. *See, e.g.*, *Ryan v. Cal. Interscholastic Fed'n - San Diego Section*, 94 Cal. App. 4th 1048, 1069 (2001).

to the federal claims, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Plaintiffs must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). The evidence does not support any constitutional violation, a custom to support any theory of liability, or any deliberate indifference.

### 1. Members' Claims Are Time-Barred.

The statute of limitations for a Section 1983 claim is two years from accrual. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). All claims accrued when Plaintiffs' property was seized. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017) (accruing based on seizure); *Morgan v. Komers*, 151 F. App'x 546, 548 (9th Cir. 2005) (accruing based on the deprivation). Since the lawsuit commenced on September 27, 2022, instances prior to September 27, 2020 cannot serve as a predicate for liability. The only timely violations asserted in the TAC concern Donohoe, Cronk, and Martinez. All other violations outside of the complaint are untimely and the City is entitled to summary judgment on Coalition's claims that rely on those untimely alleged predicate violations. Fed. R. Civ. P. 3; *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.")

### 2. Plaintiffs' Fourth Amendment Claim Fails.

#### a. There Is No Evidence Of A Timely Predicate Violation For Any Individual Plaintiff Or Identified Coalition Member.

Before moving to evidence of a pattern or practice, a *Monell* Plaintiff must first demonstrate their own predicate violation. Plaintiffs cannot point to any evidence of a seizure of their own property that was unlawful. "In analyzing [Plaintiffs'] Fourth Amendment claim, we begin by identifying when the 'seizure' occurred." *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests

in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (citation omitted). "The term 'possessory interest' means '[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner'; or '[a] present or future right to the exclusive use and possession of property.'" *United States v. Dixon*, 901 F.3d 1322, 1338-39 (11th Cir. 2018) (citation omitted). The government's interference with an individual's possessory interests in property must be reasonable under the circumstances. *Soldal v. Cook Cnty.*, 506 U.S. 56, 61-62 (1992). This requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (citation omitted). While momentarily unattended property cannot be immediately and summarily destroyed, governments can "act *immediately* to remove and destroy threats to public health and safety." *Lavan*, 693 F.3d at 1029, n.8.[17] Plaintiffs carry the burden of demonstrating any seizure was unreasonable. *See supra* §I.B1.b.

Since Coalition is proceeding on behalf of its members, it does not have standing "beyond the injuries actually incurred by those members." *Bone*, 678 F. Supp. 3d at 704. That substantially narrows the pool of relevant alleged violations. The unsettled violations disclosed in the TAC and written discovery with a specific date concern Cronk and Donohoe, who are both Individual Plaintiffs. While Coalition discloses violations concerning Orona, Brown, and Bryant, they are time-barred for the reasons discussed *supra* §III.B.1. They also fail to the extent they lack any specificity concerning when and where the seizures occurred. Peeling back those layers, the remaining predicate violations fail.

---

[17] While *Lavan* found that homeless residents "occup[ing] the sidewalks of Skid Row pursuant to a settlement agreement" had protected interests in their unabandoned property in *mobile shelters and carts*, it did not create a right to store property on the street and provided no standard to discern protected property from unprotected property (*e.g.* trash, hazards, abandoned property). *Lavan*, 693 F.3d at 1024. To the extent it applies outside of that narrow context, *Lavan* is irreconcilable with *Grants Pass*, inconsistent with the requirements of the Fourth Amendment, and should be overruled. *See, e.g.*, *Soldal*, 506 U.S. at 62 n.7 ("In holding that the Fourth Amendment's reach extends to property as such, we are mindful that the Amendment does not protect possessory interests in all kinds of property."); *United States v. Stallings*, 28 F.3d 58, 61 (8th Cir. 1994) (holding unattended bag in field in which individual "had no possessory interest with no apparent means of restricting access to it" was not protected).

**June 23, 2022 Incident:** Any destruction of Cronk and Donohoe's property on June 23, 2022 was not unreasonable as a matter of law. Cronk and Donohoe complain about property lost during a pre-planned HSOC resolution at 13th and Folsom Streets near Target where the City provided 72-hour advance written notice. (Ex. 2, Donohoe Depo. 185:14-191:6; Ex. 27, CCSF-COH_203056-59.) They were camped on a median abutting two roadways. (*See* Ex. 3, Cronk Depo. 221:9-223:23, 225:8-11, 225:25-226:2, 230:8-10, 241:17-243:5, 244:7-9; Ex. 28, Cronk Depo. Ex. 6; Ex. 29 Cronk Depo. Ex. 10.) Donohoe confirmed they were also provided "a few hours" to move belongings that day. (Ex. 2, Donohoe Depo. 190:24-191:6.) Because this was a pre-planned and noticed operation, the Fourth Amendment permits the City to completely abate the nuisance created on its rights of way by discarding items left behind, which would include all of the items Cronk and Donohoe allege they lost. Donohoe also testified the City offered him and Cronk a tiny home but they did not take it. They also did not ask DPW or the HOT team for assistance bagging and tagging items. (*Id*. at 192:12-16, 193:19-195:7.) Cronk and Donohoe also kept the majority of their items, undermining any suggestion the City *summarily* destroyed their property. Instead, Donohoe testified they lost clothes during the operation that were stored in trash bags while they discussed a shelter option they ultimately rejected hours later. (*Id*. at 187:18-189:21.) Under these circumstances, Plaintiffs cannot establish that any seizure was unreasonable, or at a minimum, cannot establish that discarding their items was intentional as opposed to merely negligent.

**September 12, 2022 Incident:** Cronk authenticated what Donohoe and Cronk's encampment looked like at 13th and Folsom street: their tent, set up on a median, abutted two roadways and had no clearance for people to walk. (*See* Ex. 3, Cronk Depo. 221:9-223:23, 225:8-11, 225:25-226:2, 230:8-10, 241: 17-243:5, 244:7-9; Ex. 28, Cronk Depo. Ex. 6; Ex. 29 Cronk Depo. Ex. 10.) Donohoe testified Cronk was in a makeshift shower when DPW workers took clothes, boots, and food that were stored outside of their tent in bags or containers. (Ex. 2, Donohoe Depo. 212:21-214:5.) Their clothes were generally kept in trash bags. (*See, e.g.*, *id*. at 188:18-189:2.) Donohoe attempted to section off trash to the side in the gutter, however, given the position of their encampment, items would only be in a roadway. (Ex. 28, Cronk Depo. Ex. 6; Ex. 29 Cronk Depo. Ex. 10.) According to Orona, who was familiar with how Cronk and Donohoe lived at this location, they were "messy." (Ex. 12, Orona Depo.

149:11-13, 151:2-152:9.) Donohoe and Cronk will not be able to establish that their items stored outside of a tent on one of two streets was erroneously discarded given this evidence. Messy items in a right of way are an obstruction to traffic and can be lawfully seized. *See generally Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (recognizing exigency related to public safety and movement of traffic).

**January 5, 2023 Incident:** Donohoe testified that he began living with Cronk at a shelter on January 4 or 5, 2023. They did not observe the alleged property destruction on January 5, 2023. Donohoe testified they left their property with an individual named Manny and when they returned about a day later, the items were gone and Manny told them he left property behind to avoid interacting with law enforcement. (Ex. 2, Donohoe Depo. 61:9:24, 119:13-125:12.) Under these circumstances, the property was abandoned and lawfully seized as a matter of law. *See, e.g.*, *Maryland v. Macon*, 472 U.S. 463, 469 (1985) (recognizing no seizure where there was voluntary transfer of possessory interest); *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986) (recognizing a "person[] who voluntarily abandon[s] property lack[s] standing to complain of its search or seizure"); *United States v. McLaughlin*, 525 F.2d 517, 519 (9th Cir. 1975) (holding that discarding contraband from a moving vehicle constituted abandonment); *see also United States v. Bell*, 716 F. App'x 696, 697 (9th Cir. 2018) (affirming abandonment where wife left property on sidewalk and walked away).

### b.    Coalition Cannot Establish A Fourth Amendment Claim.

Coalition expressly disclaimed any property destruction on its own behalf. (Ex. 19, Plts. 1st Rog Resp., No. 10.) This is fatal to its Fourth Amendment claim. *Rios*, 562 F. Supp. 3d at 1015 (dismissing organization's claim where its own property was not seized because "[a]n unreasonable search or seizure is an element of any § 1983 claim").[18] Coalition cannot bootstrap the seizure of another person's, including a member's, property into its own claim. "Fourth Amendment rights are personal rights which, . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted); *Plumhoff*, 572 U.S. at 778 (same). This long-standing prohibition on vicarious claims, although referred to as "standing," is a merits question distinct from Article III

---

[18] Because Coalition's Fourteenth Amendment claim depends on the seizure and destruction of property (*see* TAC ¶¶ 266-270), it too fails in the absence of any destruction of Coalition property.

jurisdictional standing. *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991) ("Fourth amendment standing is quite different, however, from 'case or controversy' determinations of article III standing. Rather, it is a matter of substantive fourth amendment law."); *A.H. v. Sacramento Cnty. Dep't Child, Fam. & Adult Serv.*, No. 2:21-cv-00690-KJM-JDP, 2022 WL 866421, at *2 (E.D. Cal. Mar. 23, 2022) (citing *Rakas* to dismiss mother's claim for search of daughter "[a]s an unreasonable search or seizure is an essential element of a § 1983 claim").

Like any other plaintiff with Article III standing (if the Court finds it), Coalition must establish each element of its claim; and because Fourth Amendment "standing" is an element of the claim, Coalition's associational standing is not determinative of the merits. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) ("if a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must ask whether a statute has conferred 'standing' on that plaintiff"). Even if Coalition could rely on violations of its members' rights to support its own claim, none of the individuals Coalition claims as members can establish their own Fourth Amendment claim (*supra*, §§ I.A.; I.B.1.a.ii.; III.B.), and therefore Coalition has no member's claim on which it can rely for its own.

### 3.    Plaintiffs Cannot Establish Due Process Claims

The City is entitled to judgment on Plaintiffs' Due Process claims for three reasons. First, Plaintiffs' failure to establish an unreasonable seizure and property destruction dooms their claims because their Due Process claims are contingent on alleged unlawful seizure. TAC ¶ 270.

Second, the availability of post-deprivation remedies—government claims and actions for damages—are fatal to Plaintiffs' claims. "[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 531 (1984). Although such remedies may not suffice "where a deprivation of property is caused by conduct pursuant to established state procedure," *id.* at 532, Plaintiffs do not have evidence showing an established procedure of summary destruction. (*Infra*, § III.B.4.a.) Plaintiffs also fail to present evidence identifying and establishing what "state procedure" is at issue and caused the deprivation. The City has multiple types of operations (Ex. 30, Defs. 2d Suppl. Resp. Plts. 1st Interrogs., No. 10) with different notice requirements depending on the immediacy of the response. (Ex. 1, CCSF-

COH_000385 § 4.) Plaintiffs agree these are constitutional, but fail to show which "state procedure" caused their deprivation. That is imperative since "the necessity of quick action by the State or the impracticality of providing any predeprivation process may mean that a postdeprivation remedy is constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 129 (1990) (cleaned up).

Third, Plaintiffs cannot show the City failed to provide notice before their property was removed, or that the City did not provide them an opportunity to recover stored property. Due process is satisfied when the City provides prior notice to encampment occupants to remove their belongings and informs them which items would be stored versus discarded, and by giving a post-seizure opportunity to retrieve stored property. *See Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976, 981-83 (N.D. Cal. 2019) (finding Berkeley's notice policy provided due process); *Shipp v. Schaaf*, 379 F. Supp. 3d 1033, 1037-38 (N.D. Cal. 2019) (same for Oakland's policy); (Ex. 1, CCSF-COH_000385 § 3; Ex. 30, Defs. 2d Suppl. Resp. Plts. 1st Interrogs at 41-43.) The Bag & Tag Policy calls for 72-hours' written notice in advance of a pre-planned HSOC resolution and 30 minutes advance oral notice for reactive responses to a request for service. (Ex. 1, CCSF-COH_000385 § 4.) Although Plaintiffs' failure to sustain their burden to show a lack of notice is sufficient to grant the City's motion, the evidence is clear that for Plaintiffs' claimed instances of unlawful destruction, notice was provided, which defeats any due process claim. (Ex. 27, CCSF-COH_203055 (72-hour notice of June 23, 2022 operation); Ex. 31, CCSF-COH_496242 (same for Jan. 5, 2023 operation in area where Cronk and Donohoe camped)[19]).

Whether Plaintiffs actually saw the notice has no bearing on whether due process was provided. *Dusenbery v. United States*, 534 U.S. 161, 169-70 (2002) (cleaned up) (no "actual receipt of notice" is required so long as the effort was "reasonably calculated to apprise a party of the pendency of the action.") As Peter Rincon, a SF Homeless Outreach Team member responsible for posting notice testified, every effort is made to post multiple written notices (in English and Spanish), hand

---

[19] Cronk's allegations regarding the January 5, 2023 incident (Ex. 26 at 6 (Plts' Supp. Resp. to Rog. No. 10)) are insufficient to create a genuine material issue regarding whether the City even discarded her property at all—she says she was not present for several hours and returned to her property missing, but relies only on inadmissible hearsay statements from unidentified individuals to conclude the City discarded her property. (*Id.*)

them to people, provide verbal notice of what is on the written notice, and answer questions. (Ex. 32, Rincon Depo. 56:3-10, 82:1-83:16, 64:19-25.) Nor would a failure to prove 72-hour notice create a triable issue on Plaintiffs' Due Process claims. So long as a person "receive[s] notice and a reasonable opportunity to pack up their belongings before the City collected any remaining unattended property," due process is provided. *Sullivan*, 383 F. Supp. 3d at 984. Here, Plaintiffs' evidence does not show that they were provided insufficient time to gather and remove their belongings on the dates of the incidents at issue, or that the City departed from the minimum of 30-minutes' notice provided before any property is collected. (Ex. 31, CCSF-COH_496242; Ex. 27, CCSF-COH_203055.) In fact, City workers provided ample time for Plaintiffs to pack up and move. (Ex. 27; Ex. 31; Ex. 3, Cronk Depo. 219:23-220:2 (provided "[a] few hours" to move during September 2022 event).)

Finally, Plaintiffs' complaint includes a fleeting allegation that individuals are unable to retrieve property from the Yard even when the City bags and tags it. (*See, e.g.*, TAC ¶¶ 140-141.) The facts require judgment in the City's favor on this theory.

DPW has a process to track, store, and retrieve bagged and tagged items. When the need to bag and tag arises, a call goes to the radio room to create a CMMS request and assign the request to a laborer; that laborer photographs and collects the items and brings them to the storage yard, where staff place the items in one of several large shipping containers, fill out a triplicate intake form, and affix both a copy of the intake form and a colored tag to the property. (Ex. 33, Garcia Depo. 40:21-42:9, 70:11-73-18, 113:3-25; Ex. 34, CCSF-COH_681715 [CMMS Services Requests for Bag and Tag from 2022-2025].)[20] The color of the affixed tag changes monthly. (*Id*.) DPW tracks bagged and tagged items on CMMS and in a spreadsheet. (Ex. 33, Garcia Depo. 136:3-138:17; Ex. 35, CCSF-COH_016893 [2020]; Ex. 36, CCSF-COH_344557 [2021]; Ex. 37, CCSF-COH_016894 [2022]; Ex. 38, CCSF-COH_016895 [2023]; Ex. 39, CCSF-COH_356951 [2024]; Ex. 40, CCSF-COH_713830 [2025]; Ex. 34, CCSF-COH_681715.) The policy requires DPW to store items for 90 days (or 14 days for bulky items). (Ex. 1, CCSF-COH_000385, §6.)  Staff move items from one shipping container to

---

[20] The DPW laborer notifies the property owner of the bag and tag and how to recover their items, either in writing if the property is unattended or orally if the owner is present. (Ex. 30, Defs. 2d Suppl. Resp. Plts. 1st Interrogs, No. 15.)

another at the end of each month and discard items from the last container, ensuring items are not discarded early. (Ex. 33, Garcia Depo. 41:6-42:9, 76:9-79:14.) When someone comes to retrieve an item, they contact the yard security guard who gathers information to share with the radio room; the radio room looks through CMMS to find a matching request and contacts the storage team to collect the items; when the radio room does not have a matching request, the storage team speaks with the person get more detailed information to run the search again. (Ex. 33, Garcia Depo. 159:6-169:9.)

Plaintiffs' evidence that this process prevents people from retrieving bagged and tagged items is insufficient as a matter of law. Plaintiffs identified six paragraphs from their complaint and four declarations (Castano, Martinez, Bryant, Jones) filed with their motion for a preliminary injunction in September 2022. (Ex. 19, Plts. 1st Rog Resp., No. 22.) Again, FRCP 37(c)(1) forecloses them from relying on evidence they failed to disclose. Plaintiffs' unverified complaint "cannot be considered as evidence" at this stage. *Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006). The declarations fare no better. None of the declarations are from a plaintiff with standing, and therefore none constitute the predicate violation required for *Monell*. *Dougherty*, 654 F.3d at 900 (explaining *Monell* requires plaintiff to prove she "possessed a constitutional right of which she was deprived"). And three of these declarations could not demonstrate a violation even if true because they do not establish the person sought to timely collect their belongings. A person who unsuccessfully attempts to retrieve items outside the 14- or 90-day window has shown no violation. Although the City's discovery requests called for information about the date that the property was taken and the date the individual sought to recover it, only one of the declarations (Jones) confirm the declarant sought to recover items within the appropriate window. (Ex. 21, Plts. 3rd Rog Resp., No. 22 [citing Castano Decl., ECF No. 9-4 at p. 5, ¶ 10; Martinez Decl., ECF No. 9-4, at p. 22, ¶ 10; Bryant Decl., ECF No. 9-6, at p. 4, ¶ 6; Jones Decl., ECF No. 9-6, at pp. 52-53, ¶ 8].) "[S]canty facts and little detail" do not provide the specifics necessary to state a *Monell* claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989)).  Jones' lone declaration is not evidence of a custom or practice. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."). It also cannot be a predicate violation because Jones is not a member.

### 4.    There Is No Evidence To Support Plaintiffs' *Monell* Theories

Plaintiffs allege two theories of *Monell* liability: improper custom or practice and failure to train. Summary judgment in the City's favor is appropriate on both.

### a.    There Is No Evidence Of Improper Custom

Plaintiffs admit the City's written bag and tag is lawful, but argue the City's practice or custom is inconsistent with its written policy. (ECF No. 65 at 42.) Generally, a "practice or custom" theory requires showing that the decisions of "those officials who have the power to make official policy on a particular issue . . . caused the deprivation of rights at issue . . . by acquiescence in a longstanding practice or custom." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Coalition admits that there are occasions where DPW followed the Bag & Tag Policy (Ex. 17, Pltf. RFA Resp., No. 20; Ex. 41, COH01492478) and as described above in §II.A.2, Plaintiffs discovery responses do not identify any instances of alleged constitutional violations in the past two years. This significant gap in their records prevents a finding of any practice or custom sufficiently frequent and consistent to support a *Monell* claim especially given the volume of interactions between City personnel and persons experiencing homelessness. Records show 2,382 HSOC resolutions since June 2020 (Ex. 42, CCSF-COH-573455), 1,302 JFO operations since May 24, 2023 (Ex. 43, CCSF-COH-573456), and 184,104 311 complaints related to encampments since January 2020. (Ex. 44, CCSF-COH-573454). In context Plaintiffs' evidence is insufficient to show a pattern or practice.

This is especially true of Plaintiffs' claims regarding the storage yard, which rely on unverified allegations in the complaint and four declarations. Even if credited, the declarations collectively do not show sufficient violations to state a *Monell* claim given the thousands of bag and tags in the timeframe. (Ex. 34, CCSF-COH_681715.) *Janiec v. City of Glendora*, 842 F. App'x 129, 131-32 (9th Cir. 2021) (unpublished) (affirming summary judgment in favor of defense where evidence showed 19 citations in ten months); *Trevino*, 99 F.3d at 918 (affirming lack of a policy or custom because "two

incidents [is] not sufficient to establish [a] custom"); *Clemmons v. City of Long Beach*, 379 F. App'x 639, 641 (9th Cir. 2010) ("two prior occasions is insufficient to withstand summary judgment").[21]

### b.    There Is No Evidence Of A Failure To Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a claim: (1) "the existing training program" must be inadequate "'in relation to the tasks the particular [employees] must perform'" (2) the city officials must have been deliberately indifferent "'to the rights of persons with whom the [employees] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (citation omitted). The evidence fails Plaintiffs at each prong.

Plaintiffs have no evidence that the training for the employees who handled their property was inadequate. Rather, the City's training on constitutional policies defeats a failure to train claim.[22] DPW has had a constitutional bag and tag policy throughout the litigation. (*See, e.g.*, Ex. 1, CCSF-COH_000385). It also had PowerPoint training on that policy. (*See, e.g.*, Ex. 45, CCSF-COH_437437 [PowerPoint training]; Ex. 46, CCSF-COH_666191 [training tracker]; Ex. 47, CCSF-COH_356886-CCSF-COH_356949 [bag and tag training logs]; Ex. 48, Brandon Depo. 226:20-227:20.) Staff receive

_____

[21] This is especially true where Plaintiffs have not indicated the portion of the bag and tag policy DPW allegedly ignored. Plaintiffs do not explain whether one declarant was unable to retrieve items because they were discarded too early, or because the associated paperwork contained incorrect information, or because the radio room did not look for the declarant's property. In order for the complaints of others to show a pattern or practice, it must show the same type of violation. *See, e.g.*, *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010) ("In applying the different theories of liability recognized under *Monell*, we have always required plaintiffs to show that their injuries were caused by the policies or practices complained of."). Plaintiffs have no such evidence.

[22] *See, e.g.*, *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (granting summary judgment on failure to train where defendant trained on lawful written policy); *Doe by & through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 739 (S.D. Cal. 2021) (granting summary judgment where the evidence showed a full day of training reinforced by penalties for violations with a refresher twice a year); *Vasquez v. City of Santa Paula*, No. 13-CV-07726-CBM (AJWx), 2015 WL 12734071, at *2 (C.D. Cal. Mar. 11, 2015) (granting summary judgment with evidence of qualification four times per year and roll call training on a weekly basis regarding various issues including training); *Dunklin v. Mallinger*, No. C-11-01275 JCS, 2013 WL 1501446, at *25 (N.D. Cal. Apr. 10, 2013), aff'd, 611 F. App'x 436 (9th Cir. 2015) (training every two years after an initial presentation defeated claim).

this training at least quarterly, and each receive a copy of the presentation. (Ex. 33, Garcia Depo. 89:25-90:5; Ex. 49, Martinez Depo. 31:14-32:1.)  DPW also trains on aspects of the policy at weekly team meetings—Sup II meetings for supervisors and Tailgate meetings for general laborers. (Ex. 48, Brandon Dep. 60:11-18, 63:2-4, 251:2-9; Ex. 50, Shehadeh Depo. 65:12-66:20, 145:18- 146:25.) Those trainings are memorialized in meeting minutes and sign-in sheets.[23] Employees can and do ask questions during these meetings. (*See, e.g.*, Ex. 56, CCSF-COH_1067218; Ex. 49, Martinez Depo. 24:18-25:13, 36:18-25; Ex. 57, Jackson Depo. 38:21-39:16.). Employees also ask their supervisor's questions in real time out in the field. (*See, e.g.*, Ex. 58, Graham Depo. 21:21-22:14.)  The DPW crews that staff HSOC resolutions (Hot Spot and Reactionary) typically have supervisors with them on-site. (Ex. 59, Vaing Depo. 84:3-7; Ex. 48, Brandon Depo. 24:19-25:2; 29:13-19; 33:16-20; Ex. 58, Graham Depo. 19:17-20:21, 83:2-7.) Not a single DPW employee Plaintiffs deposed testified they had not received bag and tag training. That the City did not include additional training or more detail on how to apply the bag and tag policy in any given situation cannot support a failure-to-train claim. *Monell* "does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States." *Connick*, 563 U.S. at 68.

No reasonable fact finder could find the City deliberately indifferent to the known or obvious consequences of a failure to train. The Supreme Court held that where employees are "familiar with the general" "constitutional limits," the fact they "were not trained about" a "particular" or "specific" scenario does not establish deliberate indifference. *Connick*, 563 U.S. at 67. It is not enough to assert a particular employee "may be unsatisfactorily trained," nor that "an injury or accident could have been avoided if an officer had had better or more training." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," which requires that "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, [and] the policymakers choose to retain

---

[23] *See, e.g.*, Ex. 51, CCSF-COH_1052008; Ex. 52, CCSF-COH_1050231; Ex. 53, CCSF-COH_629544; Ex. 54, CCSF-COH_264237-264362 [additional bag and tag training logs]; Ex. 55, CCSF-COH_266618 [same].

that program." *Connick*, 563 U.S. at 61 (cleaned up). Even when "[w]ith the benefit of hindsight, we can poke holes in the training program and find areas that might deserve greater attention, . . . those narrow gaps do not demonstrate deliberate indifference to a known risk" because "[i]n constructing the training program, the City could reasonably expect [its employees] to connect the dots between different training modules when those subjects intersect in real-world situations." *Bell v. Williams*, 108 F.4th 809, 824-26 (9th Cir. 2024) (reversing failure to train claim as a matter of law); *see also Jessen v. Cnty. of Fresno*, 808 F. App'x 432, 435 (9th Cir. 2020) (finding "no evidence the need for more or different training was so obvious" where "the record evidence demonstrates that the [defendants] received training regarding barricaded subject incidents").

There is also insufficient evidence that any alleged failure to train "actually caused the constitutional harm or deprivation of rights." *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014). For instance, a failure to train on how to handle bulky items in Section 6 of the Bag & Tag Policy could not cause a misapplication of how to handle smaller items such as jewelry. Plaintiffs lack evidence connecting their alleged harm to any parallel training inadequacy. Plaintiffs made the strategic choice not to bring a claim against any DPW employee directly for a specific alleged instance of property instruction. But that does not mean that they can simply bring the same claims against the City itself. Imposing *Monell* liability here "would unduly threaten the County with respondeat superior liability," *Doe by & through Tanis*, 576 F. Supp. 3d at 741 (citation omitted), and "would extend *Monell* liability far beyond the circumstances in which the Supreme Court has sanctioned it." *Bell*, 108 F.4th at 824-26.

### c.    There Is No Evidence The City Is Deliberately Indifferent

Plaintiffs' novel claims are not based on well-established rights. *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022) (absent a showing of "well-established" rights, there can be no deliberate indifference). Plaintiffs invoke *Lavan*, 693 F.3d at 1024, but *Lavan* is materially different since the residents had settlement rights to store possessions on the street, including their admittedly unabandoned mobile shelters and carts the city summarily destroyed. Those circumstances are far removed from those here.

The City is also not deliberately indifferent to Plaintiffs' property rights given their access to City shelters and storage. Deliberate indifference looks to the alternatives considered and "other measures" taken. *See Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1143 n.3 (9th Cir. 2020). The City has taken other measures to safeguard Plaintiffs' property by providing housing and storage. ███████████████████████████████████████████████████████████ ██████████████████████████████ (Locher Decl. ¶ 6a-6j; Ex. 15, Reem Depo. 31:11-19, 50:4-5; *see also* Adamek Decl. ¶¶ 2-7.) In addition, the City provides a storage program for some items such as clothing and legal documents. (Bracco Decl. ¶¶ 3-7; Ex. 60, CCSF-COH_713877-78; Ex. 61, CCSF-COH_713875-76.) Courts regularly find that municipalities are not deliberately indifferent to unhoused individuals' rights when municipalities provide or offer housing, storage, or services.[24] The same reasoning bars a finding of deliberative indifference to the property rights here.

## CONCLUSION

For the reasons set forth herein, there is no triable issue of fact with respect to any of Plaintiffs' claims.  Accordingly, summary judgment should be entered in favor of the City.

---

[24] *See Sanchez v. City of Fremont*, No. 24-cv-02584-AM, 2024 WL 2031633, at *6-7 (N.D. Cal. May 6, 2024) (no deliberate indifference where city provided shelter and "extensive services" and plaintiff was offered a "paid storage locker"); *San Luis Obispo Cnty. Homeless Union v. Cnty. of San Luis Obispo*, No. 2:24-cv-00616-AB-MAA, 2024 WL 2107723, at *2 (C.D. Cal. Apr. 24, 2024) ("[T]he County has gone to some lengths to repair vehicles and assist individuals with paperwork and welfare and social services so that they can relocate: these efforts belie the suggestion of deliberate indifference."); *Reed v. City of Emeryville*, No. 21-cv-02781-WHO, 2021 WL 1817103, at *6 (N.D. Cal. May 6, 2021); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017); *cf. Where Do We Go Berkeley v. Cal. Dep't of Transp.*, No. 21-cv-04435-EMC, 2021 WL 5964594, at *13 (N.D. Cal. Dec. 16, 2021) (recognizing that "Defendants' continued efforts (or not) in this regard [regarding alternative housing] may be important to the analysis").

Dated:  April 3, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:  s/Steven A. Mills
        STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT