**REDACTED VERSION OF DOCUMENT PROVISIONALLY FILED UNDER SEAL**

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-3857 (Wang)
                (415) 554-6762 (Murphy)
                (415) 554-3870 (Gradilla)
                (415) 554-4223 (George)
                (415) 355-3304 (Mills)
Facsimile:      (415) 554-4699
E-mail:         edmund.wang@sfcityatty.org
                kaitlyn.murphy@sfcityatty.org
                miguel.gradilla@sfcityatty.org
                john.george@sfcityatty.org
                steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO VACATE OR DISSOLVE THE PRELIMINARY INJUNCTION**<br><br>Hearing Date:　May 8, 2025<br>Time:　　　　　1:00 p.m.<br>Judge:　　　　　Hon. Donna M. Ryu<br>Place:　　　　　Courtroom 4 – 3rd floor<br>　　　　　　　　1301 Clay Street<br>　　　　　　　　Oakland, CA 94612<br><br>Trial Date:　　　July 28, 2025 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION AND MOTION ...................................................................................1

INTRODUCTION ........................................................................................................................3

PROCEDURAL POSTURE .........................................................................................................4

LEGAL STANDARD...................................................................................................................8

ARGUMENT ................................................................................................................................9

    I.      The Court Lacks Jurisdiction Over The Remaining Individual Plaintiffs. ............10

    II.     The Court Lacks Jurisdiction Over Coalition. .......................................................13

          A.     Organizational Standing Was Overruled After The Preliminary
                Injunction Issued And New Evidence Does Not Support It. .....................13

          B.     Associational Standing Does Not Save Coalition's Claim. .......................17

               1.     Coalition Cannot Justify Associational Standing At The Third
                      Prong As A Matter Of Law..............................................................18

                     a.     Section 1983 Claims Require Individual Participation As
                            A Matter Of Law..............................................................18

                     b.     The Fourth Amendment Claims Require Individual
                            Participation. ........................................................................19

               2.     Coalition Cannot Show It Has Members With Standing. ................21

                     a.     Coalition Lacks The Indicia of Membership. ....................21

                     b.     No Claimed Individual Member Has Standing.................24

CONCLUSION.............................................................................................................................26

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*3C, LLC v. Rokita*
No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) .......................26

4

*A.B. v. Haw. State Dep't of Educ*.
30 F.4th 828 (9th Cir. 2022) ......................................................................................................18

5

6

*Aguayo v. Richardson*
473 F.2d 1090 (2d Cir. 1973) ....................................................................................................19

7

*Am. Unites for Kids v. Rousseau*
985 F.3d 1075 (9th Cir. 2021) ...................................................................................................22

8

9

*Arizona Alliance for Retired Americans v. Mayes*
117 F.4th 1165 (9th Cir. 2024) .........................................................................................6, 8, 15

10

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001) .....................................................................................................11

11

12

*Ass'n of Christian Sch. Int'l v. Stearns*
678 F. Supp. 2d 980 (C.D. Cal. 2008), *aff'd* 362 F. App'x. 640 (9th Cir. 2010) ......................21

13

*Associated Gen. Contrs. of Am. v. Cal. DOT*
713 F.3d 1187 (9th Cir. 2013) ...................................................................................................21

14

15

*Baker v. Carr*
369 U.S. 186 (1962).....................................................................................................................10

16

*Bayer v. Neiman Marcus Grp., Inc.*
861 F.3d 853 (9th Cir. 2017) .....................................................................................................13

17

18

*Berry v. Hennepin Cnty*.
No. 20-cv-2189 (ECT/JFD)
2024 WL 3495797 (D. Minn. July 22, 2024) ...........................................................................11

19

20

*Bone v. Univ. of N.C. Health Care Sys*
678 F. Supp. 3d 660 (M.D.N.C. 2023) ......................................................................................21

21

22

*Cal. Rest. Ass'n v. City of Berkeley*
89 F.4th 1094 (9th Cir. 2024) ....................................................................................................24

23

24

*California v. Azar*
911 F.3d 558 (9th Cir. 2018) .....................................................................................................21

25

*Chamber of Com. of the U.S. v. EPA*
642 F.3d 192 (D.C. Cir. 2011) ...................................................................................................25

26

27

28

*City of Grants Pass v. Johnson*
603 U.S. 520 (2024)..................................................................3, 6, 8, 10, 13

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983)...................................................................................9

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013)...........................................................................10, 15

*Cmty. Fin. Servs. Ass'n of Am. v. Fed. Deposit Ins. Corp.*
Case No. 14-CV-953 (GK), 2016 WL 7376847 (D.D.C. Dec. 19, 2016) ..........................20, 21

*Coalition on Homelessness v. City & Cnty. of San Francisco*
90 F.4th 975 (9th Cir. 2024), *opinion withdrawn by* 106 F.4th 931 (9th Cir. 2024)..................5

*Credit Suisse First Boston Corp. v. Grunwald*
400 F.3d 1119 (9th Cir. 2005) .......................................................................8

*East Bay Sanctuary Covenant v. Trump*
932 F.3d 742 (9th Cir. 2018) ........................................................................9

*F.D.A. v. All. for Hippocratic Med.*
602 U.S. 367 (2024)...........................................................................4, 6, 14, 15, 18

*Fleck & Assocs., Inc. v. City of Phoenix*
471 F.3d 1100 (9th Cir. 2006) .....................................................................14

*Freedom From Religion Found., Inc. v. Weber*
951 F. Supp. 2d 1123 (D. Mont. 2013).............................................................26

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*
284 F.3d 575 (5th Cir. 2002) ......................................................................21

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*
397 F.3d 1217 (9th Cir. 2005) .....................................................................24

*Havens Realty Corporation v. Coleman*
455 U.S. 363 (1982)...............................................................................15

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*
599 U.S. 166, 177 (2023)........................................................................18, 19

*Hindu Am. Found., Inc. v. Kish*
No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296 (E.D. Cal. Aug. 30, 2023) ......................23

*Hodgers-Durgin v. De La Vina*
199 F.3d 1037 (1999)..............................................................................11

*Hollingsworth v. Perry*
570 U.S. 693 (2013)...............................................................................14

*Hunt v. Wash. State Apple Advert. Comm'n*
   432 U.S. 333 (1977) ................................................................................17, 18, 21, 22

*Jarvis v. Regan*
   833 F.2d 149 (9th Cir. 1987) ...............................................................................13

*Johnson v. City of Grants Pass*
   72 F.4th 868 (9th Cir. 2023) ..............................................................................5, 6

*Jones v. Las Vegas Metro. Police Dep't,*
   873 F.3d 1123 (9th Cir. 2017) .............................................................................19

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. and Rehab. Servs.*
   958 F.2d 1018 (10th Cir. 1992) ...........................................................................21

*Karnoski v. Trump*
   926 F.3d 1180 (9th Cir. 2019) ...............................................................................9

*Knife Rights, Inc. v. Vance*
   802 F.3d 377 (2d Cir. 2015) ................................................................................19

*Larez v. Holcomb*
   16 F.3d 1513 (9th Cir. 1994) ...............................................................................20

*Lewis v. Cont'l Bank Corp.*
   494 U.S. 472 (1990).............................................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014).............................................................................................18

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992)..........................................................................9, 10, 11, 15, 16

*Mariscal-Sanoval v. Ashcroft*
   370 F.3d 851 (9th Cir. 2004) .................................................................................8

*Martin v. City of Boise*
   920 F.3d 584 (9th Cir. 2019) ..............................................................................5, 6

*Moreland v. Las Vegas Metro. Police Dep't*
   159 F.3d 365 (9th Cir. 1998) ...............................................................................19

*Mueller v. Auker*
   700 F.3d 1180 (9th Cir. 2012) .............................................................................20

*Murthy v. Missouri*
   603 U.S. 43 (2024)................................................................................................9

*Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*
   No. 24-2356 (JDB), 2024 WL 4817122 (D.D.C. Nov. 18, 2024) .........................23

*Nat'l Coal. Gov't of Union of Burma v. Unocal, Inc.*
  176 F.R.D. 329 (C.D. Cal. 1997) .................................................................23, 24

*Nat'l Res. Def. Council, Inc. v. EPA*
  507 F.2d 905 (9th Cir. 1974) .................................................................23

*National Council of La Raza v. Cegavske*
  800 F.3d 1032 (9th Cir. 2015) .................................................................24

*Nelsen v. King Cnty.*
  895 F.2d 1248 (9th Cir. 1990) .................................................................10

*Nicholson v. City of Los Angeles*
  935 F.3d 685 (9th Cir. 2019) .................................................................19

*Nnebe v. Daus*
  644 F.3d 147 (2d Cir. 2011) .................................................................19

*Or. Advoc. Ctr. v. Mink*
  322 F.3d 1101 (9th Cir. 2003) .................................................................22

*Or. Moms Union v. Brown*
  540 F. Supp. 3d 1008 (D. Ore. 2021) .................................................................21

*Pavao v. Pagay*
  307 F.3d 915 (9th Cir. 2002) .................................................................20

*Pentalpha Macau Com. Offshore Ltd. v. Reddy*
  No. C 03-5914 MMC, 2005 WL 2989273  (N.D. Cal. Nov. 3, 2005).................................................................26

*Plumhoff v. Rickard*
   572 U.S. 765 (2014) .................................................................19

*Proctor v. District of Columbia*
  531 F. Supp. 3d 49 (D.D.C. 2021) .................................................................11

*Rakas v. Illinois*
   439 U.S. 128 (1978).................................................................19

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agriculture*
  415 F.3d 1078 (9th Cir. 2005) .................................................................9

*Rent Stabilization Ass'n of City of New York v. Dinkins*
  5 F.3d 591 (2d Cir. 1993) .................................................................20

*Rios v. Cnty. of Sacramento*
  562 F. Supp. 3d 999 (E.D. Cal. 2021) .................................................................11

*Salazar v. Buono*
  559 U.S. 700 (2010).................................................................8

*Sharp v. Weston*
   233 F.3d 1166 (9th Cir. 2000) ............................................................................. 8

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*
   770 F.3d 1282 (9th Cir. 2014) ....................................................................... 18, 20

*Spokeo, Inc. v. Robins*
   578 U.S. 330 (2016) ...................................................................................... 9, 14

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998) ............................................................................................ 17

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
   368 F.3d 1053 (9th Cir. 2004) .......................................................................... 17

*TransUnion LLC v. Ramirez*
   594 U.S. 413 (2021) .......................................................................... 3, 9, 10, 14

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*
   517 U.S. 544 (1996) ........................................................................................ 18

*United States v. Baker*
   58 F.4th 1109 (9th Cir. 2023) ......................................................................... 14

*United States v. Sanchez-Gomez*
   584 U.S. 381 (2018) .......................................................................... 12, 13, 25

*United States v. Texas*
   599 U.S. 670 (2023) .................................................................................. 10, 15

*Vote.Org v. Callanen*
   39 F.4th 297 (5th Cir. 2022) ........................................................................... 19

*Warth v. Seldin*
   422 U.S. 490 (1975) .................................................................................. 14, 17

*Webcor-Obayashi Joint Venture v. Zurich Am. Ins. Co.*
   No. 19-CV-07799-SI, 2022 WL 464176 (N.D. Cal. Feb. 15, 2022) .................. 26

**Federal Statutes**

42 U.S.C.
   § 1983 ................................................................................................ 4, 18, 19
   § 1988 ............................................................................................................. 19

**Rules**

Federal Rule of Civil Procedure
   Rule 12(h)(3) ..................................................................................................... 9
   Rule 17(a)(1) ................................................................................................... 19
   Rule 30(e) ........................................................................................................ 24

Rule 37(c)(1) ................................................................................................................26
Rule 54(b) ...............................................................................................................1, 8

**State Statutes and Codes**

California Corporation Code
§ 5310(a) ...............................................................................................................22

California Penal Code
§ 647(e) .................................................................................................................11

**Other References**

15 James William Moore, et al., Moore's Federal Practice § 101.60 (3d ed. 2024) ....................23

Ninth Cir. Model Civil Jury Instructions, 9.19 ..............................................................20

# NOTICE OF MOTION AND MOTION

TO ALL PLAINTIFFS AND THEIR COUNSEL OF RECORD:

Notice is hereby given that on May 8, 2025, at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco; San Francisco Police Department; San Francisco Department of Public Works; San Francisco Department of Homelessness and Supportive Housing; San Francisco Fire Department; and San Francisco Department of Emergency Management (collectively "Defendants" or "the City") will and hereby do move this Court to vacate or dissolve the preliminary injunction in this case (ECF No. 65), as since modified, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure because of significant changes in the law and facts since the preliminary injunction issued. Specifically, the City moves this Court to vacate or dissolve the preliminary injunction because the Court lacks Article III jurisdiction over Plaintiffs Coalition on Homelessness, Sarah Cronk, Joshua Donohoe, Molique Frank, David Martinez, and Teresa Sandoval.

The City bases its motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the declarations filed along with the Motion, the attached exhibits, all pleadings and records on file in this action, and evidence presented to the Court.

//
//
//
//
//
//
//
//
//
//
//

Dated:  April 3, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By: _/s/Steven A. Mills_____
STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT

1

**INTRODUCTION**

2    Plaintiffs have fundamentally misunderstood their burden to justify federal jurisdiction since

3  this case's inception. This case started on the mistaken assumption that municipalities could not

4  leverage valid anti-camping laws to ensure safe and accessible streets without adequate offers of

5  shelter. Plaintiffs secured a preliminary injunction based on that mistaken belief and codified the

6  City's Bag & Tag Policy into a constitutional standard for purposes of the Eighth and Fourth

7  Amendments. Following the issuance of the injunction, the Supreme Court confirmed what has

8  historically been known. "Many cities across the American West face a homelessness crisis. The

9  causes are varied and complex, the appropriate public policy responses perhaps no less so." *City of

10 Grants Pass v. Johnson*, 603 U.S. 520, 525-28 (2024) ("*Grants Pass*"). Anti-camping ordinances are a

11 valid public policy response to homelessness and municipalities can leverage them to keep their rights

12 of way safe and accessible. A different result "interfer[es] with 'essential considerations of

13 federalism,' taking from the people and their elected leaders difficult questions traditionally 'thought

14 to be the[ir] province.'" *Id* at 556 (citation omitted).

15    The result under the Fourth Amendment should be no different: "*plaintiffs* must demonstrate

16 standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v.

17 Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added). The only remaining basis for the preliminary

18 injunction is Plaintiffs' Fourth Amendment claim. However, this Court lacks subject matter

19 jurisdiction over Plaintiffs' Fourth Amendment claim and so the preliminary injunction must be

20 vacated or dissolved. Of the seven original Individual Plaintiffs, just two permanently-housed

21 Plaintiffs remain—Sarah Cronk and Joshua Donohoe. The Coalition on Homelessness ("Coalition")

22 claimed to have thousands of past and present members, but now bases its case on just *ten*—most of

23 them housed, and several of whom have settled their own individual claims.

24    Cronk and Donohoe lacked standing when this case commenced because they cannot prove

25 that in September 2022 they were subject to imminent unlawful property destruction under the

26 heightened requirements to invoke federal jurisdiction for injunctive relief. Now that they have

27 permanent housing, they cannot possibly have a live dispute because they have no personal stake to

28 seek the systemic injunctive relief the preliminary injunction provides.

Coalition fares no better in its strained bid for systemic injunctive relief. When this case commenced, Coalition premised jurisdiction exclusively on its diversion of resources and the Court found Coalition had standing for all claims based on that injury. The Supreme Court summarily rejected that theory of standing following the issuance of the preliminary injunction. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("*Hippocratic Medicine*"). Because the admonishment is clear, Coalition has disclaimed *any* reliance on a diversion of resources to support its standing in this case. (ECF No. 304 at 21.) Having experienced no property destruction, Coalition has no other basis to be in federal court in its own right.

With no injury to itself to justify organizational standing, Coalition cannot turn to associational standing to bring claims on behalf of its members as a *de facto* class action. That result is limited by the separation of powers rooted in the Constitution. Section 1983 does not permit associations to bring claims on behalf of their members as matter of law. It is also well established that Fourth Amendment rights cannot be vicariously asserted and there is no exception for advocacy organizations. Even then, the new evidence developed in discovery following the issuance of the preliminary injunction shows that Coalition is not a membership organization that can invoke claims on behalf of its members and Coalition has no "member" with standing in its own right to justify injunctive relief.

Based on these substantial changes to the law and the record before the Court, it is clear this case falls far outside of the Court's limited jurisdiction. Plaintiffs have no likelihood of success on the merits and the preliminary injunction must be vacated or dissolved.

**PROCEDURAL POSTURE**

Plaintiffs commenced this lawsuit and moved for a preliminary injunction on September 27, 2022. (ECF Nos. 1, 9.) By December 23, 2022, the Court enjoined the City's anti-camping ordinances that safeguarded the public rights of way and required the City to comply with its Bag & Tag Policy. (ECF No. 65.) The Court did not make any findings in its Order as to Plaintiffs' standing for any claim or remedy. The City appealed the preliminary injunction. (ECF No. 88.) The appeal argued that the

injunction exceeded the scope of the Eighth Amendment, was overbroad, and improperly elevated the City's policy to a constitutional standard in violation of the limits of Article III.

During the appeal, the City moved to dismiss the Individual Plaintiffs for lack of standing. (ECF No. 112.) Rather than address the merits of the motion, the Court found that "[t]he Coalition on Homelessness unquestionably has standing to pursue all forms of relief sought through this lawsuit" without analysis of the claims or the elements of associational standing (including the standing of individual members). (ECF No. 128.) The case proceeded in the district court and on appeal.

On September 5, 2023, the Ninth Circuit issued an order confirming that a person was "not involuntarily homeless if that person declined a specific offer of available shelter or otherwise have access to such a shelter or the means to obtain it." (ECF No. 186.) This order was a fundamental shift in this litigation that confirmed the City could lawfully enforce its valid anti-camping ordinances against individuals who were voluntarily homeless. Notably, the public record before the Court demonstrated that Individual Plaintiffs Sarah Cronk and Joshua Donohoe were voluntarily homeless because they did not accept a tiny cabin prior to this case being commenced. (ECF No. 9-4 at pp. 15-16, ¶¶ 8-12, ECF No. 9-4 at pp. 11-13, ¶¶ 8-11; ECF No. 1, Compl. ¶ 38.) Other individuals identified in the complaint, including Plaintiffs Molique Frank, Toro Castano, and Nathaniel Vaughn, as well as Coalition's members Shyhyene Brown and Couper Orona, were already housed when the case commenced in September 2022. Thus, all of these individuals lacked standing to challenge any of the laws or the City's practices from the day Plaintiffs moved for the preliminary injunction.

Circumstances continued to rapidly evolve. By January 10, 2024, Plaintiffs confirmed for the first time that they were relying on associational standing for each claim, including their Fourth Amendment claim. *See, e.g.*, ECF No. 201. The next day on January 11, 2024, the Ninth Circuit issued an opinion. *See, e.g.*, *Coalition on Homelessness v. City & Cnty. of San Francisco*, 90 F.4th 975 (9th Cir. 2024), *opinion withdrawn by* 106 F.4th 931 (9th Cir. 2024). The panel determined that the City waived its challenge under the Eighth Amendment that the limited geographic scope of resolutions and time-limited nature of one of the City's laws and distinguished the City's operations from *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), and *Johnson v. City of Grants Pass*, 72 F.4th 868 (9th Cir. 2023). Because these arguments required factual development, the Ninth Circuit declined to consider

1    them in the first instance. The Ninth Circuit's opinion did not address standing or its jurisdiction.

2    However, on January 12, 2024—the day after the panel issued its opinion and entered judgment—the

3    Supreme Court granted cert to review the issues implicated in *Johnson* and *Martin*. On January 17,

4    2024, the City moved for a stay in the district court pending the Supreme Court's decision in *Grants*

5    *Pass*, and argued that there was no prejudice to Plaintiffs because they lacked standing. (ECF No. 204

6    at 10-11.) The City also sought a stay in the Ninth Circuit. (Appeal Dkt. No. 96.)

7        On February 23, 2024, the Court issued an order granting a stay pending resolution of *Grants*

8    *Pass* and confirmed that the Court would not address standing in the context of the present stay

9    motion. (ECF No. 222.) As the parties and Court know, the Supreme Court in *Grants Pass* affirmed

10   the validity of enforcement actions against people experiencing homelessness who lack access to

11   shelter. The Supreme Court also issued an opinion in *F.D.A. v. Alliance for Hippocratic Medicine*, 602

12   U.S. 367, 394 (2024), during the same term, which effectively overruled the diversion of resources

13   theory that was the only basis for organizational standing that Coalition had asserted to date. The

14   parties presented these issues in their July 31, 2024 Joint Case Management Statement filed following

15   the decision in *Grants Pass*. (ECF No. 230.) With standing questions looming, the Court issued an

16   order on Plaintiffs' motion to enforce the preliminary injunction on the Fourth Amendment claim,

17   requiring the City to provide more training. (ECF No. 231.) At the August 7, 2024 hearing, the Court

18   recognized that the City intended to file a motion to dismiss Plaintiffs' claims for lack of standing. To

19   streamline the process, the Court invited Plaintiffs to file a motion seeking leave to amend. Plaintiffs

20   expressly declined the invitation. (ECF No. 236.)

21       The City promptly filed a motion to dismiss and motion for judgment on the pleadings, arguing

22   the allegations in the complaint combined with the evidence developed through discovery thus far

23   demonstrate that the identified individuals in the case do not have standing since they are all housed,

24   that Coalition's organizational standing relied upon overruled law, and that associational standing

25   failed because no identified member had standing since they, like the Individual Plaintiffs, were all

26   housed. (ECF No. 242.) After the City filed its motion, the Ninth Circuit issued an opinion in *Arizona*

27   *Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024). That opinion overruled the

28   Ninth Circuit's organizational standing precedent and kept open whether organizational plaintiffs

could have standing based on interference to their preexisting core activities. On December 4, 2024, the Court issued its order on the motion. (ECF No. 281.) The Court acknowledged that it "has not previously analyzed the merits of San Francisco's arguments challenging the standing of any Plaintiff." (ECF No. 250 at 3.) It found that Castaño (the only member with a specific injury articulated in the complaint) and Vaughn did not have standing for any claims, that Sandoval lacked standing for her disability claims, and that all Plaintiffs failed to establish standing for state-created danger claims. The Court declined to address the City's arguments to dismiss the Individual Plaintiffs' Fourth Amendment property claims on standing grounds because it found that Coalition had associational standing to bring those claims based on its allegation that Coalition has thousands of members such that it "is relatively clear" there are members that were injured. Coalition was given leave to amend in the light of the viability of a pre-existing core activity test. (*Id.* at 38.)

Within weeks, Plaintiffs filed their Third Amended Complaint ("TAC") on December 18, 2024. (ECF No. 289.) Only five Individual Plaintiffs remained: Cronk, Donohoe, Frank, Martinez, and Sandoval. Plaintiffs did not seek to re-allege the dismissed claims for Castaño and Vaughn. (ECF No. 288.) As to Coalition, Plaintiffs added new allegations concerning activities it claims the City interfered with, including its ability to retain and recruit members, as well as allegations concerning the scope of its membership. (TAC ¶¶ 22-24.) Two days after Plaintiffs filed the TAC, Coalition responded to the City's discovery requests and identified only ten members that it plans to rely upon for its claim to associational standing: Castaño, Cronk, Donohoe, Martinez, Shyhyene Brown, Shanna Couper Orona, Sarah Stephenson, James Reem, "Melodie," and Todd Bryant. Since none of these individuals can establish standing, and since Coalition's organizational standing allegations were still deficient, the City moved to dismiss again for lack of jurisdiction. (ECF No. 295.) Plaintiffs erroneously moved to consolidate briefing with summary judgment. (ECF No. 296.) The City opposed, arguing that standing can be raised at any time, and that Plaintiffs' new allegations and evidence undermined the Court's prior standing analysis. (ECF No. 297.) On January 9, 2025, the Court denied the City's motion because the City "[i]nexplicably [has] filed a motion to dismiss that not only challenges organizational standing but also takes another swing at associational standing and

individual standing." (ECF No. 298.) The City was only permitted to renew its motion as to organizational standing. (*Id*.)

By January 23, 2025, the City renewed its partial motion to dismiss within the boundaries of the Court's order. (ECF No. 301.) Coalition disclaimed reliance on any diversion of resources in light of the evidence presented and is exclusively proceeding on interference to their pre-existing core activities. (ECF No. 304 at 21.) The Court took the motion under submission (ECF No. 315) and fact discovery closed on March 10, 2025. Since the motion was filed, the Ninth Circuit has vacated the pre-existing core activity test pending resolution of *Arizona Alliance en banc*. (ECF No. 338.) The Court has not ruled on the City's motion to dismiss, the City has not answered the TAC, and Defendants now seek summary judgment following the completion of discovery. The City's motion for summary judgment renews the City's standing arguments based on the factual record developed following *Grants Pass*. Since the legal landscape and facts have significantly changed since this litigation commenced two and a half years ago, the City moves to vacate or dissolve the preliminary injunction on the basis that the Court lacks jurisdiction.

## LEGAL STANDARD

"[S]ound judicial discretion may call for modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtained at the time of its issuance have changed, or new ones have arisen." *Mariscal-Sanoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004) (internal citation omitted); *see also Salazar v. Buono*, 559 U.S. 700, 714–15 (2010) (plurality) ("Because injunctive relief is 'drafted in light of what the court believes will be the future course of events . . . a court must never ignore significant changes in the . . . circumstances underlying an injunction lest the decree be turned into an instrument of wrong.'" (citation omitted)). Therefore, Rule 54(b) permits parties to seek to vacate or dissolve a preliminary injunction at any time before final disposition. *See* Fed. R. Civ. P. 54(b); *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) ("[T]here is no time limit on a motion to vacate or dissolve a preliminary injunction.").

The party seeking to dissolve a preliminary injunction must show that a "[1] significant change in facts or law [2] warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). Once the former showing has been made, courts look to the "same criteria that

govern the issuance of a preliminary injunction" to determine if dissolution is warranted. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 & n.14 (9th Cir. 2019) (the traditional criteria in favor of a preliminary injunction look to (1) a likelihood of success on the merits; (2) irreparable harm; (3) the balance of the equities; and (4) the public interest).

"Where, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence," to justify injunctive relief. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). As Plaintiffs have no personal stake in the litigation, this Court has no jurisdiction and there can be no preliminary injunction. *See Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agriculture*, 415 F.3d 1078, 1104 (9th Cir. 2005) (holding that as there was no standing, there can be no likelihood of success to support a preliminary injunction). Rather, the preliminary injunction should be dissolved. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 763 n.6 (9th Cir. 2018) (holding that courts "have a continuing obligation to assure our jurisdiction" and that if "facts develop" in a manner that eliminates standing, the "'court shall dismiss the action'" (quoting Fed. R. Civ. P. 12(h)(3)).

## ARGUMENT

No Plaintiff can establish standing to support injunctive relief over a Fourth Amendment claim, which is the only remaining claim supporting the preliminary injunction. Article III "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. To meet the "irreducible constitutional minimum" of standing, a plaintiff must have (1) suffered an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Injury in fact requires a showing of "'an invasion of *a legally protected interest*' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 559-560) (emphasis added); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The Supreme Court has "stressed that the alleged injury must be legally and judicially cognizable" which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other

words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (cleaned up). For injunctive relief, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Courts are not free to "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 424-25.

This case is no exception. The legal and factual landscape has rapidly changed and confirms that Plaintiffs have no standing for injunctive relief granted through the preliminary injunction. After a dismissal order and several settlements, only two Individual Plaintiffs remain: Sarah Cronk and Joshua Donohoe. (*See, e.g.*, ECF Nos. 281, 336, 344, 348.) These Individual Plaintiffs lacked standing when the case was filed. They also have no ongoing personal stake in the litigation because they are permanently housed and disclaim any intent to be homeless with property stored on the street. Reliance on Coalition cannot change the result. Coalition's organizational standing has been overruled and is unsupported by the newly developed factual record. Associational standing cannot be invoked as a matter of law and fails since each identified member, including the remaining Individual Plaintiffs, lack standing. The preliminary injunction must be vacated or dissolved.[1]

## I.    The Court Lacks Jurisdiction Over The Remaining Individual Plaintiffs.

As the Court has explained, a "threatened injury must be certainly impending to constitute injury in fact." (ECF No. 281 at 22.) Standing "ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569, n.4 (emphasis altered) (citation omitted). The analysis is "individualized" and "must consider all the contingencies that may arise . . . before the future harm will ensue." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251-52 (9th Cir. 1990). "'[S]ome day' intentions— without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504

---

[1] The Court's jurisdiction is also limited by the political question doctrine since there are no manageable standards to resolve the issues this litigation presents. *Baker v. Carr*, 369 U.S. 186, 210, 217 (1962). Since resolving these political questions is precluded by the limits of Article III following *Grants Pass*, Plaintiffs have no likelihood of success on the merits and the preliminary injunction should be dissolved.

U.S. at 564 (citation omitted). Furthermore, "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff." *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 (1999) (no standing if injury is "contingent upon respondents' violating the law"). Courts routinely find that the fear of being homeless and possibly subjected to a hypothetical deprivation of rights in an unlawful encampment is insufficient to support jurisdiction. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1012-13 (E.D. Cal. 2021); *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *5-6 (D. Minn. July 22, 2024); *Proctor v. District of Columbia*, 531 F. Supp. 3d 49, 61 (D.D.C. 2021). That approach is sound since a "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2.

Plaintiffs Cronk and Donohoe, a cohabitating couple, cannot establish that they had standing when this case was filed because the evidence does not show their claimed threat of unlawful property destruction was "certainly impending" in September 2022. (ECF No. 281 at 22.) Their theory is based entirely on the unwarranted assumption that the City would destroy their property without a reasonable constitutional basis to do so. Cities are able to lawfully regulate the public right of way, including by prohibiting lodging. Cronk and Donohoe were prohibited from lodging on public property under state law, which *Grants Pass* confirmed the City can lawfully enforce. *See, e.g.*, Cal. Pen. Code § 647(e). There are also many lawful circumstances where the City may discard property kept on the right of way pursuant to the City's Bag & Tag Policy, which Plaintiffs agree is constitutional. (Declaration of Steven Mills ("Mills Decl."), Ex. 1, CCSF-COH_000385 § 3 [third revision effective February 8, 2022]; ECF No. 65 at 42:27-28.)[2] For instance, the City may lawfully discard items comingled with hazardous materials and contraband consistent with policy and constitutional requirements. Thus, Cronk and Donohoe's assertion that they faced an imminent risk of unlawful property destruction is entirely speculative and based on a long line of contingencies within their control, including deciding to engage in unlawful lodging.

---

[2] All exhibit references are to the Mills Declaration concurrently filed with this Motion.

Demanding standards also apply when a risk of future harm hinges on the plaintiff violating the law to justify standing. Plaintiffs' pre-litigation conduct underscores the point. Leading up to the lawsuit, between ███████████████████████████████████████████████████████ (Declaration of Sarah Locher ("Locher Decl.") ¶ 6b-6c; Declaration of Lisa Rachowicz ("Rachowicz Decl.") ¶6.) And on June 23, 2022, Cronk and Donohoe turned down a tiny home and were *voluntarily* homeless, and thus lodging on public property in violation of California law. (Ex. 2, Donohoe Depo. 185:23-24, 186:4-9, 192:12-16, 193:10-194:12). Their property was stored in the public right of way as part of their unlawful lodging and despite City-provided storage for certain items. (*See* Ex. 3, Cronk Depo. 221:9-223:23, 225:8-11, 225:25-226:2, 230:8-10, 241:17-243:5, 244:7-9; Ex. 4, Cronk Depo. Ex. 6; Ex. 5 Cronk Depo. Ex. 10; Declaration of Louis Bracco ¶¶ 3-7.) During the time Cronk and Donohoe voluntarily lodged in violation of state law, they ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ (Ex. 2, Donohoe Depo. 228:19-229:20, 230:18-233:7, 233:22-235:15, 236:5-237:3, 238:19-239:12; Ex. 3, Cronk Depo. 134:1-6, 134:19-137:24.) Separate from their violation of anti-lodging laws, under the Bag & Tag Policy, the City could lawfully discard any property comingled with drugs or needles. Their future injuries included a speculative chain of contingencies within their control, including rejecting resources available to avoid homelessness, staying on the right of way in violation of valid laws, unlawfully keeping property in the right of way, and failing to keep their encampment and property free of illegal contraband. The Court recognized these same contingencies in dismissing Plaintiff Sandoval's ADA claim and the same logic applies here. (ECF No. 281 at 23.) Cronk and Donohoe lacked standing when this lawsuit was filed.

Alternatively, Cronk and Donohoe's claims are now moot based on the new evidence identified through discovery. "[I]t is not enough that a dispute was very much alive when suit was filed." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (cleaned up). Plaintiffs "must continue to have a personal stake in the outcome of the lawsuit." *Id.* at 478. "A case that becomes moot at any point . . .  is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018). Cronk and Donohoe have no personal stake in this litigation since they face no concrete risk of harm. They have been housed in City-funded programs for the vast duration of this

case, confirming the lack of imminent harm at the time of filing and that they could have avoided the harm they claim by accepting housing. Each also disclaimed any intention of being homeless and storing property on the street in the future. (Ex. 3, Cronk Depo. 158:3-159:6, 239:9-14; Ex. 2, Donohoe Depo. 43:21-44:13, 45:11-13, 58:23-59:1, 59:13-22.) Even in the context of mootness, courts must "assume that '[litigants] will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct." *Sanchez-Gomez*, 584 U.S. at 391 (citations omitted). Any future harm to them is based on "[s]peculative contingencies," that "afford no basis for finding the existence of a continuing controversy . . . as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (citation omitted); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). For all of the contingent and speculative reasons already highlighted, Cronk and Donohoe cannot overcome mootness.[3]

## II.    The Court Lacks Jurisdiction Over Coalition.

Coalition bases its standing on injuries to itself (organizational standing) and injuries to its members (associational standing). The law and factual record developed since the injunction was appealed do not justify either theory of standing. Coalition cannot be used to support the existing injunction.

### A.    Organizational Standing Was Overruled After The Preliminary Injunction Issued And New Evidence Does Not Support It.

Coalition began this case on the faulty premise that it could divert its resources away from its core activities to manufacture Article III standing. The Supreme Court summarily put an end to that theory of standing during the stay pending resolution of *Grants Pass*. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by

---

[3] The City has multiple types of operations that address homelessness. (Ex. 6, Defs. 2d Suppl. Resp. Plts. 1st Interrogs., No. 10; Ex. 1, CCSF-COH_000385 § 4.) The City has produced evidence in this case showing 2,382 HSOC resolutions since June 2020 (Ex. 7, CCSF-COH-573455), 1,302 JFO operations since May 24, 2023 (Ex. 8, CCSF-COH-573456), 184,104 311 complaints related to encampments since January 2020, (Ex. 9, CCSF-COH-573454), and thousands of bag and tags in the timeframe. (Ex. 10, CCSF-COH_681715). Despite discovery requests to identify every instance of property destruction, Plaintiffs do not contend the City destroyed the property of any person experiencing homelessness in the second half of 2023, all of 2024, or through the close of fact discovery in 2025. (Ex. 11, Plts. 1st Rog Resp., No. 4.; Ex. 12, Plts. Suppl. Resp. to Defs. 1st Set of Interrogs., No. 4.)

expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *Hippocratic Med.*, 602 U.S. at 394. Because the Supreme Court's rejection of any diversion of resources was clear, Coalition has expressly abandoned any reliance on that theory: "The Coalition does not rely on its pre-litigation costs or 'diversion of resources'—for litigation purposes or otherwise—as a basis for standing in this case." (ECF No. 304 at 21.) As Coalition admits, "diversion of resources" provides no basis for this Court's jurisdiction.

With diversion of resources removed from this litigation, there is no basis for Coalition to have standing in its own right for abstract injuries that it has not suffered. The Supreme Court cautioned that a cognizable concrete injury is "'traditionally' [one] recognized as providing a basis for a lawsuit in American courts." *TransUnio*n, 594 U.S. at 414 (citation omitted). Standing also "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The claim that formed the basis of the preliminary injunction concerned deprivations of property under the Fourth Amendment; yet, Coalition admitted in discovery that the City has *never* taken its property. (Ex. 11, Plts. Resp. to Defs. 1st Set of Interrogs. ["Plts. 1st Rog Resp."], No. 10.) Under the traditional standards applicable to claims of this nature, Coalition has no standing.[4] Coalition cannot base its standing on injuries to third parties to justify its own organizational standing. "Particularization is necessary to establish injury in fact[.]" *Spokeo*, 578 U.S. at 339. A different interpretation of the Article III case and controversy requirement would authorize "organizations in America [to] have standing to challenge almost every [] policy that they dislike." *Hippocratic Med.*, 602 U.S. at 395. But "Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (citation omitted).

*//*

---

[4] *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (Fourth Amendment standing exists where there is a "reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized"); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1104-05 (9th Cir. 2006) (lacking cognizable privacy interest at issue).

Given the fact that Coalition has not been deprived of property, *Havens Realty Corporation v. Coleman,* 455 U.S. 363, 379 (1982), provides no basis for standing here. The Supreme Court has admonished that *Havens* is "an unusual case" that should not be extended "beyond its context." *Hippocratic Med*., 602 U.S. at 395. Its context as a statutory claim for damages under the FHA matters since the FHA conferred "on all 'persons' a legal right to truthful information about available housing"—meaning the organization had its own redressable statutory cause of action for a cognizable injury directly caused by the dissemination of false information to the organization's employees carrying out counseling services. *Havens*, 455 U.S. at 373, 377. Coalition has no applicable statutory or constitutional right and has no cognizable injury of its own that is redressable. "[T]he lack of historical precedent" is "[a] 'telling indication of the severe constitutional problem' with [Coalition's] assertion of standing . . . ." *Texas*, 599 U.S. at 677 (citation omitted).

Even if some direct injury to a preexisting core activity can be a predicate for Coalition's standing on constitutional claims, and no law in the Ninth Circuit permits that following *Hippocratic Medicine*,[5] causation and redressability are lacking to justify Coalition's bid for systemic injunctive relief. Causation "must not be too speculative or too attenuated." *Hippocratic Med*., 602 U.S. at 383. "[W]hen (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,' standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id*. at 382. "When the plaintiff is an unregulated party, causation 'ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well.'" *Id.* Courts cannot "rely on speculation about the unfettered choices made by independent actors not before the courts," *Clapper*, 568 U.S. at 414 n.5 (cleaned up), whose "legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562 (citation omitted).

Coalition is an unregulated party because it has never had its property destroyed. Coalition's novel theory for standing is premised on purported harms to unhoused people whose property is allegedly destroyed in an unlawful manner. But since the City's alleged practice is regulating third

---

[5] The pre-existing core activity test in *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024), was vacated and cannot justify organizational standing.

parties, standing is "substantially more difficult to establish" under Coalition's novel theory. *Lujan*, 504 U.S. at 562. Proving the point, Coalition claims that it may obtain more members and may provide more services through this litigation. However, compliance with the City's constitutional Bag & Tag Policy does not address Coalition's harm: it does not compel membership or require individuals to use Coalition services.

As the City's pending motion to dismiss and motion for summary judgment show, there is no evidence to justify any other injury to Coalition as would be required to support the preliminary injunction. Coalition's ████ confirms that Coalition ████████████████ ████████ (Ex. 13, Coalition Depo., Ex. 145, COH01471483), and Coalition admits that its employees have been monitoring "sweeps" as part of their job responsibilities since 1995. (Ex. 14, Coalition Depo. 44:8-23; Ex. 3, Cronk Depo. 103:21-104:5.) Coalition's very own ████████ ████████ from 2021 underscores that Coalition ████████████████████ ████████████████████████████ ████████████████████████(Ex. 15, COH00832298-300.) While Coalition ████████████████████████ ████████████████████████████████ Ex. 13, Coalition Depo., Ex. 145, COH01471490, COH01471493-94 (emphasis added), there is no admissible evidence to show these have ever been interfered with. Coalition does not know how many verification forms the City "illegally" destroyed and would have to rely upon inadmissible hearsay from others because it has no personal knowledge. (Ex. 14, Coalition Depo. 188:3-189:3.) Nor are there records of who received a tent or any donation from Coalition, and Coalition has not purchased tents to donate since the first few months of the pandemic. (*Id*. at 127:6-7, 196:17:22, 198:7-13, 206:9-12.) And Coalition never purchased socks and could only recall purchasing sleeping bags twice a few years ago. (*Id*. at 194:17-24, 195:20-25, 197:2-8.) Coalition does not track the destruction of property

//

//

//

//

1    it gives out and only has inadmissible hearsay to claim it was unlawfully destroyed. (*Id.* at 207:11-25,

2    208:13-210:24.) [6]

3          After nearly two and a half years of litigation, it is apparent Coalition has never had standing

4    for injuries in its own right. Dismissal is appropriate for lack of subject matter jurisdiction where a

5    litigant's claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining

6    jurisdiction or where such a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a*

7    *Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted). Coalition's bid to justify this case is no

8    exception and the preliminary injunction must be vacated to the extent it is premised on organizational

9    standing.

10         **B.    Associational Standing Does Not Save Coalition's Claim.**

11         Associational standing cannot justify the preliminary injunction now that Coalition's

12   organizational standing has been foreclosed. Litigants typically cannot "assert[] the rights or legal

13   interests of others[.]" *Warth*, 422 U.S. at 509. This ensures "plaintiffs possess such a personal stake" to

14   assure "that concrete adverseness which sharpens the presentation of issues upon which the court so

15   largely depends for illumination of difficult constitutional questions." *Thinket Ink Info. Res., Inc. v.*

16   *Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004) (cleaned up). Nevertheless, "[e]ven in the

17   absence of injury to itself, an association *may* have standing solely as the representative of its

18   members." *Warth*, 422 U.S. at 511 (emphasis added). To have associational standing, an organization

19   must have members. And even then, organizations *may* sue only "when: (a) its members would

20   otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the

21   organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

22   participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432

23   U.S. 333, 343 (1977). The preliminary injunction must be dissolved because the claims require

24   ──────────────────────────────

25   [6] Many of the "injuries" Coalition complains of are the product of its own doing, including ███████████████████████████████████████ (Ex. 16,
     COH0087398 1-82, ███████████████████████████████████████

26   ███████████████████████████████████████ (Ex. 17,
     COH00742780-86, 742800-841; Ex. 18, COH01502341-342) and other staffing factors such as

27   "[t]urnover," having individuals "[n]ot well educated abou████████████████████████████████

28   ████████████████ caused its claimed injuries. (Ex. 19, COH00714800-801.)

individual participation, Coalition lacks the requisite indicia of membership, and no "member" has standing.

### 1. Coalition Cannot Justify Associational Standing At The Third Prong As A Matter Of Law.

Coalition must prove that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit" to show associational standing. *Hunt*, 432 U.S. at 343; *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (dismissing claim where association "cannot satisfy the third requirement"). The Supreme Court recognized that its "'prudential' branch of standing," is "a doctrine not derived from Article III" and that its prudential labels are "inapt." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 127 n.3 (2014) (citation omitted). The Ninth Circuit has interpreted *Lexmark* as "suggesting that, in many cases, 'third-party standing' is really an issue of whether the party has a cause of action under a statute[.]" *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 841 (9th Cir. 2022) (citation omitted). Associational standing is a "strand" of the same representative standing. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996); *see also Hippocratic Med.*, 602 U.S. at 398 (Thomas, J., concurring) ("Associational standing, however, is simply another form of third-party standing."). Coalition cannot carry its burden here because Section 1983 requires individual participation as a matter of law, Fourth Amendment claims cannot be vicariously asserted by a member organization, and the claims and remedies otherwise require individual participation.

### a. Section 1983 Claims Require Individual Participation As A Matter Of Law.

Coalition cannot bring a suit under Section 1983 on behalf of its members as an association. By its plain terms, Section 1983 only makes a defendant "liable *to the party injured*" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). "[U]sing traditional tools of statutory interpretation," Coalition cannot show the "legislatively conferred cause of action encompasses" the claims it brings. *Lexmark*, 572 U.S. at 127 (cleaned up). The Supreme Court "consistently refuse[s] to read § 1983's 'plain language' to mean anything other than what it says." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166,

177 (2023) (citation omitted). "Neither [the] language nor the history . . . [of Section 1983] suggests that an organization may sue . . . for the violations of rights of members." *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973); *accord Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (recognizing organization cannot bring Section 1983 claim on behalf of members); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (same); *Vote.Org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022). Allowing Coalition to bring a Section 1983 claim contravenes the plain meaning of the law because the City would be *liable to* a party that did not suffer its own injury. Coalition's Section 1983 claim therefore fails as a matter of law.

### b.    The Fourth Amendment Claims Require Individual Participation.

There is no basis for Coalition to invoke Fourth Amendment claims on behalf of its members even if Section 1983 was not an independent bar. By its terms, the Fourth Amendment guarantees "[t]he right of the people to be secure in *their* persons, houses, papers, and effects." (emphasis added). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted); *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citation omitted) (recognizing that the rights of one cannot "enhance . . . Fourth amendment rights" of another in Section 1983 action). A litigant cannot raise the Fourth Amendment violations of an absent individual who is not a party to the proceedings. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 (9th Cir. 2019); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017) (holding that the wrong party was named where Fourth Amendment rights are personal rights). There are narrow rule and statutory based exceptions. *See, e.g.*, Fed. R. Civ. Proc. 17(a)(1) (enumerating exceptions to the real party in interest requirement); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (acknowledging that survivors of a decedent may assert claims on the decedent's behalf under 42 U.S.C. § 1988 and recognizing that the suing party bears the burden showing it applies). Given the historically entrenched practice of requiring the participation of the individual who has been searched or seized, Coalition cannot bring a Fourth Amendment claim on behalf of its members as a matter of law.

A close examination of the particular claims here within their context proves the point. Because the parties agree the written Bag & Tag Policy is constitutional (TAC ¶ 237; ECF No. 65 at

42:27-28), individual involvement is required to evaluate Plaintiffs' assertion that the City destroys property in violation of the policy. The Bag & Tag Policy, and Constitution, authorizes DPW to discard certain items, for example those that are abandoned, soiled, or those co-mingled with hazardous material, and also permits differing types of advance notice depending on the circumstance. (Ex. 1, CCSF-COH_000385.) Coalition bears the burden of establishing the *absence* of the lawful exceptions that would allow seizure of a member's property. *See Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir. 1994) (plaintiffs carry the burden to demonstrate property was "seized unreasonably in violation of the Fourth Amendment"); *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002); *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012); Ninth Cir. Model Civil Jury Instructions, 9.19. For Coalition to satisfy its burden, members must be involved so the parties can inquire into what property was destroyed, its condition, whether the member abandoned their property or consented to it being discarded, any health and safety hazards that would factor into bagging and tagging, and what notice was provided under the particular circumstances. These inquiries are not tangential; they are at the heart of Plaintiffs' claims. "[M]ultiple variations, specific to individual members" of this kind are "not susceptible to judicial treatment as 'systematic policy violations that . . . make extensive individual participation unnecessary.'" *Spinedex Physical Therapy USA Inc.*, 770 F.3d at 1293 (citation omitted).

Notably, Coalition cannot invoke these property rights on its own. Coalition admitted in the course of discovery that the person whose property was destroyed is the person best situated to testify about its condition, and therefore Coalition did not perform its own investigation into claims of property destruction. (Ex. 14, Coalition Depo. 283:22-284:2.) Coalition's witnesses have admitted to not knowing the Bag & Tag Policy's requirements, meaning their conclusory legal assertions that property was improperly discarded has no basis. (Ex. 2, Donohoe Depo. 158:4-6; 161:22-162:16; Ex. 20, Brown Depo. 80:15-82:20). Because firsthand knowledge of the circumstances of each alleged unlawful destruction resides with the claimed members—not Coalition—and is necessary to carry Plaintiffs' burden of proof, individual participation is required and Coalition cannot prove otherwise.

Ultimately, these individualized inquiries are far removed from the pure facial challenge to a statute that *Hunt* contemplated. Even then, "[t]he relief sought is only half of the story. . . ." *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993); *Cmty. Fin. Servs.*

*Ass'n of Am. v. Fed. Deposit Ins. Corp.*, Case No. 14-CV-953 (GK), 2016 WL 7376847, at *6 (D.D.C. Dec. 19, 2016) (allowing associational standing in all injunctive cases "is plainly precluded by the Court's holding in *Hunt*"). "When the claims require an 'ad hoc factual inquiry' for each member represented by the association, the organization does not have associational standing." *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 986 (C.D. Cal. 2008), *aff'd* 362 F. App'x. 640 (9th Cir. 2010); *see also Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (finding fact-specific tort claims required individual participation even though the case sought injunctive relief); *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. and Rehab. Servs.*, 958 F.2d 1018, 1022 (10th Cir. 1992) (reversing associational standing because it ignored the factual inquiries necessary to establish the claim). Because Coalition seeks systemic relief, it does not have standing "beyond the injuries actually incurred by those members." *Bone v. Univ. of N.C. Health Care Sys*, 678 F. Supp. 3d 660, 704 (M.D.N.C. 2023); *California v. Azar*, 911 F.3d 558, 582-83 (9th Cir. 2018) ("Injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." (cleaned up)). Establishing the scope of the members' genuine injuries to support systemic relief is unavoidable. Coalition has not justification for its associational claims and the injunction cannot be supported on this basis.

### 2.    Coalition Cannot Show It Has Members With Standing.

Coalition must demonstrate it has members who "have standing to sue in their own right" by making "specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Associated Gen. Contrs. of Am. v. Cal. DOT*, 713 F.3d 1187, 1194 (9th Cir. 2013) (citation omitted). It claims standing based on ten individuals they claim as members. (Ex. 21, Plts. Resp. to Defs. 2d Set of Interrogs. ["Plts. 2d Rog Resp."], No. 17.) But the evidence identified through discovery confirms that Coalition has no membership sufficient to justify Article III standing and no member can support jurisdiction.

### a.    Coalition Lacks The Indicia of Membership.

"Implicit in the first prong of [associational standing] is the requirement that an organization must generally have 'members' to bring suit on their behalf." *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Ore. 2021). Coalition has elected, pursuant to California law, ███████████

1  ███████████████████████████████████████████ (Ex. 14, Coalition Depo. 26:25-27:2; Ex. 23,

2  COH01508327 at ████████████████████████ *see also* Cal. Corp. Code § 5310(a).)

3  Coalition does not track its "membership" and in turn does not have a comprehensive way to even

4  know who it claims to represent. (Ex. 14, Coalition Depo. 71:17-25, 73:4-20.) Coalition even admits

5  that people it claims as "members" may not know they are members. (*Id.* at 96:18-25.)

6       Because Coalition is not a formal membership organization it must establish the requisite

7  indicia of membership, which considers whether purported members: (i) elect the organization's

8  leadership, (ii) serve as the organization's leadership, and (iii) finance the organization's activities,

9  including the costs of litigation. *Hunt*, 432 U.S. at 344-45. These requirements help ensure the

10 organization is "sufficiently identified with and subject to the influence of those it seeks to represent as

11 to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985

12 F.3d 1075, 1096-98 (9th Cir. 2021) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir.

13 2003)). Coalition has no evidence to satisfy this inquiry. Neither Coalition nor its members are funding

14 this litigation. (Coalition Depo. 101:5-102:3.)[7] Coalition's ████████████████████████

15 ███████████████████████████████████████████. (Ex.

16 23, COH01508327.) Coalition's Board, which did not include any unhoused member, had the

17 authority to vote on whether to bring this litigation and members do not have voting rights to pick

18 board members. (Ex. 14, Coalition Depo. 79:25-80:7.) Coalition's ██████████████

19 ███████████████████████████████████. (Ex. 13,

20 COH01471481 at 491.) ████████████████████ (*id.*) and Coalition cannot

21 establish when it last hired an unhoused staff member. (Ex. 14, Coalition Depo. 82:15-18.) No

22 documentation beyond the manual sets forth members' rights, (*Id.* at 92:7-12), and Coalition was

23 aware ████████████████████████████████. (Ex. 24, COH00897439-444.)

24 //

25

26

27 [7] Records from discovery show Coalition was not the influence behind the litigation. Coalition represented that ████████████████████████████████ (Ex. 22, COH00974421.)

28

Coalition's purported "core members" also have myriad ill-defined understandings of their control, influence, and basis for membership.[8] Some only provided volunteer services, most have never participated in any meetings, none voted for this litigation, and many are unaware of having any control over Coalition. (Ex. 14, Coalition Depo. 92:7-12.; Ex. 3, Cronk Depo. 94:15-17, 96:18-97:9, 98:9-15, 98:24-103:6; Ex. 2, Donohoe Depo. 198:24-200:12, 201:7-202:12, 205:1-6; Ex. 25, Martinez Depo. 115:2-25, 116:20-119:16; Ex. 20, Brown Depo. 149:9-150:24; Ex. 26, Orona Depo. 179:20-180:10; Ex. 27, Melodie Depo. 122:14-126:8; Ex. 28, Bryant Depo. 181:7-9; 182:8-183:24; Ex. 29, Reem Depo. 85:11-86:2, 96:24-98:10; Ex. 30, Stephenson Depo. 56:17-24, 66:3-24.) Coalition acknowledged some of the members it identified for standing are in a ████████████████ ██████████████████████████████ (Ex. 14, Coalition Depo. 74:24-75:13, 110:24-112:4, 153:5-19.) This kind of passive involvement cannot support associational standing. *See Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*, No. 24-2356 (JDB), 2024 WL 4817122, at *2 (D.D.C. Nov. 18, 2024) ("a platitude like a claim to serve as a 'voice' for [the member group] falls far short of showing that any particular [member] can actually influence . . . activities, and the invitation to share stories . . . [is] not enough for membership"); *Hindu Am. Found., Inc. v. Kish*, No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296, at *5-7 (E.D. Cal. Aug. 30, 2023) (large constituency with unclear influence insufficient); *see also* 15 James William Moore, et al., Moore's Federal Practice § 101.60 (3d ed. 2024) ("[A]n organization . . . may not claim associational standing merely by virtue of the fact that it represents, or claims to represent, the interests of a group of people.").

Nor did Coalition have prior consent to assert claims on behalf of members, which would be required to assert standing on their behalf. Consent is a fundamental component of representation. *See, e.g.*, *Nat'l Res. Def. Council, Inc. v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974) (dismissing claim after acknowledging that there had been "no allegation or showing on the record . . . members have either requested to be represented or consented to be represented" by the organization); *Nat'l Coal. Gov't of*

---

[8] Coalition ████████████████████████████ (Ex. 14, Coalition Depo. 27:5-7), including ████████
████████████████████████████████████████████████████████████ (*Id.* at 27.) Membership is not limited to homeless individuals or those at risk of becoming homeless. (*Id.* at 78:3-18.)

*Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 344 n.16 (C.D. Cal. 1997) ("an organization only has associational standing when it has a clear mandate from its membership to take the position asserted in the litigation"). Coalition admits it does not have any agreement or authority to actually represent members in this case. (Ex. 14, Coalition Depo. 84:16-86:1; Ex. 31, Plts. Resp. to Defs. 1st RFA ("Pltf. RFA Resp."), No. 17.) It also admits it never discussed remedies with its members, including whether any homeless member wanted to seek damages. (Ex. 14, Coalition Depo. 102:7-103:21.) Tellingly, Coalition's claimed members did not know that Coalition asserted they were at risk of future property destruction. (Ex. 26, Orona Depo. 181:16-24; Ex. 20, Brown Depo. 150:25-151:10, 153:21-24;[9] Ex. 28, Bryant Depo. 50:13-51:21; Ex. 27, Melodie Depo. 32:14-2, 121:24-122:13; Ex. 14, Coalition Depo. 142:22-25.) Coalition cannot invoke associational standing as a matter of law based on these facts presented. With no basis to do so, and no individual plaintiff to support the Court's jurisdiction, there is no likelihood of success to support any injunction.

**b.    No Claimed Individual Member Has Standing.**

Despite alleging it has had thousands of members in connection with the initial motion for preliminary injunction, Coalition only identifies ten claimed "members" to support standing: Toro Castaño, Shyhyene Brown, Couper Orona, Sarah Cronk, Joshua Donohoe, David Martinez, "Melodie," Todd Bryant, James Reem, and Sarah Stephenson. (Ex. 21, Plts. 2d Rog Resp., No. 17.) The Court lacks jurisdiction over all of them and therefore they cannot support injunctive relief.

First, the individuals identified in the TAC (Castaño, Orona, and Brown) do not have standing.[10] Castaño released his claims and the Court already determine he lacks standing. (ECF No. 281 at 24.) All three were also housed when Coalition filed this case, remain housed now, and disclaimed any intent to store items on the right of way. (Ex. 26, Orona Depo. 21:8-24:17, 120:2-

---

[9] Brown denied being a member and was surprised Coalition considered her one (Ex. 20, Brown Depo. 153:17-24) before attempting to contradict her testimony via an improper errata, which the Court should disregard. *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (holding a witness cannot use an errata to contradict testimony and avoid summary judgment because "Rule 30(e) is to be used for corrective, and not contradictory, changes").

[10] To preserve the City's prior pleading challenge, only members named in the complaint can support standing. *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) is not based on the plausibility standard and was wrongly decided. *See, e.g.*, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1116 (9th Cir. 2024) (Baker, J., concurring) (recognizing the "continuing vitality of *Cegavske* is an open question").

122:25, 185:17-187:1; Ex. 20, Brown Depo. 24:18-29:24, 56:19 -61:16; Ex. 32, Castaño Depo. 38:19-40:19, 315:18-317:24; Locher Decl. ¶¶ 6a, 6e; Rachowicz Decl. ¶¶ 5-6; Declaration of Jason Adamek ("Adamek Decl.) ███████████████████████████████████████ As with the Individual Plaintiffs, any injury to these three was contingent on numerous events, including them leaving housing, moving to the right of way in violation of valid laws, keeping their property in a condition that it is not hazardous, and having their property seized without adequate time. Those "speculative chain of possibilities" cannot support standing. (ECF No. 281 at 22.)

Next, the individuals not identified in the TAC (Cronk, Donohoe, Martinez, Melodie, Bryant, Stephenson, and Reem) do not have standing. These individuals should not be considered for Coalition's standing because Courts cannot consider theories not raised in a complaint. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000). Even so, Cronk and Donohoe cannot support jurisdiction for the reasons discussed *supra* § I.[11] Martinez also settled, is housed, and has disclaimed any intent to be homeless or store property on the street. (Ex. 25, Martinez Depo. 55:20-25, 56:8-9, 100:25-101:16; Locher Decl. ¶ 6d; Rachowicz Decl. ¶ 6; ████████████████ Bryant lacks standing because, like Castaño, Brown, and Orona, he was housed when this case commenced, has been housed since, disclaimed any intent to be homeless and store property on the street, and ███████████ (Ex. 28, Bryant Depo. 23:25-29:10; ECF No. 9-6 at 4-1; Adamek ██████; Locher Decl. ¶ 6g; Rachowicz Decl. ¶ 6.) Melodie has lived in one of three vehicles since 2018, has not camped on the street, and leaves her property inside of her three vehicles or in a private storage unit instead of the street. (Ex. 27, Melodie Depo. 35:20-39:6, 40:22-42:11, 43:10-44:10, 47:3-25; Locher Decl. ¶ 6j.) Setting aside that the TAC does not concern the vehicularly unhoused, Melodie is not included in written discovery responses concerning property destruction despite being known to Coalition since 2008. (Ex. 11, Plts. 1st Rog Resp., Nos. 4-7, 10.) Any injury to her is based on the same speculative chain of hypotheticals already deemed insufficient. Finally, Stephenson and Reem

---

[11] Mootness does not change the result. *See, e.g.*, *Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 207 (D.C. Cir. 2011) ("If [the organizational plaintiff] ha[d] standing, it is only because at least one of [its members] ha[d] standing, and if the claims of [the members] are moot, then [the organization's] claims are moot as well."). That makes sense because there is no "freestanding exception to mootness outside of the class action context." *Sanchez-Gomez*, 584 U.S. at 387. "[C]ourts may not 'recognize . . . or "create *de facto* class actions at will.'" *Id.* at 389.

are irrelevant to the standing inquiry because Coalition does not claim they were "members" when this case commenced. (Ex. 21, Plts. 2d Rog Resp., No. 17); *3C, LLC v. Rokita*, No. 1:23-cv-01115-JRS-MKK, 2024 WL 4348299 (S.D. Ind. Sept. 29, 2024) (holding entity that was not a member when case commenced could not support associational standing); *Freedom From Religion Found., Inc. v. Weber*, 951 F. Supp. 2d 1123, 1131 (D. Mont. 2013) (rejecting members that postdate filing of the lawsuit). Coalition also did not disclose any injuries to them in the TAC or in written discovery.[12] The evidence also shows Stephenson did not live in San Francisco when this case was commenced, Reem was housed, and he has property storage. (Ex. 29, Stephenson Depo. 24:2-14, 27:5-18, 102:13-16; Ex. 30, Reem Depo. 23:11-21, 31:20-33:6, 42:19-43:24; *see also* Locher Decl. ¶ 6f.; Adamek Decl. ¶ 7d.) Under those circumstances, neither had standing.

Left with the record developed after two and a half years of litigation, Coalition cannot carry its burden to show associational standing. The injunction must be dissolved.

## CONCLUSION

For the reasons set forth above, the City respectfully requests that the Court grant its motion and vacate or dissolve the preliminary injunction.

//
//
//
//
//
//
//
//
//

---

[12] (Ex. 11, Plts. 1st Rog Resp., Nos. 4-7, 10.) Federal Rule of Civil Procedure 37(c)(1) forecloses Plaintiffs from relying on evidence in opposition they did not disclose in their discovery responses to the City's discovery requests. *See, e.g.*, *Webcor-Obayashi Joint Venture v. Zurich Am. Ins. Co.*, No. 19-CV-07799-SI, 2022 WL 464176, at *8 (N.D. Cal. Feb. 15, 2022); *Pentalpha Macau Com. Offshore Ltd. v. Reddy*, No. C 03-5914 MMC, 2005 WL 2989273, at *4 (N.D. Cal. Nov. 3, 2005).

1

Dated:  April 3, 2025

2                                         DAVID CHIU
                                          City Attorney
3                                         YVONNE R. MERÉ
                                          EDMUND T. WANG
4                                         KAITLYN MURPHY
                                          MIGUEL A. GRADILLA
5                                         JOHN H. GEORGE
                                          STEVEN A. MILLS
6                                         Deputy City Attorneys

7

8                                  By:  s/Steven A. Mills
                                          STEVEN A. MILLS
9
                                          Attorneys for Defendants
10                                        CITY AND COUNTY OF SAN FRANCISCO; SAN
                                          FRANCISCO POLICE DEPARTMENT; SAN
11                                        FRANCISCO DEPARTMENT OF PUBLIC WORKS;
                                          SAN FRANCISCO DEPARTMENT OF
12                                        HOMELESSNESS AND SUPPORTIVE HOUSING;
                                          SAN FRANCISCO FIRE DEPARTMENT; SAN
13                                        FRANCISCO DEPARTMENT OF EMERGENCY
                                          MANAGEMENT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28