# EXHIBIT 32

# TO

# DECLARATION OF STEVEN MILLS IN SUPPORT OF DEFENDANTS' MOTION TO VACATE OR DISSOLVE THE PRELIMINARY INJUNCTION

**In The Matter Of:**

*Coalition on Homelessness, et al. v.*
*City and County of San Francisco, et al.*

---

*Toro Castano*
*October 9, 2024*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California 94104*
*(415) 597-5600*

Original File 43437Castano_nl.txt
**Min-U-Script®**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - -

COALITION ON HOMELESSNESS, et al.,

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

CASE NO. 4:22-cv-05502-DMR

- - - - - - - - - - - - - - - - - -

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PURSUANT TO PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF TORO D. CASTAÑO

WEDNESDAY, OCTOBER 9, 2024

BEHMKE REPORTING AND VIDEO SERVICES, INC.

BY: SUZANNE I. ANDRADE, CSR NO. 10682

550 CALIFORNIA STREET, SUITE 820

SAN FRANCISCO, CALIFORNIA 94104

(415) 597-5600

V-a-f-i-a-d-e-s. And I don't remember his roommate's name.

Q. And do you know if there was a cross street that you lived next to at 864 Rolf Street that can be identified?

A. There -- I'm sure there was. I couldn't identify it.

Q. Was the unit at 864 Rolf Street next to any landmarks?

A. Yes. There was a large park across the highway from there.

Q. And what was the name of that park?

A. I don't recall.

Q. Any other stores or business names that pop out as being in close proximity to the location at 864 Rolf Street?

A. There was a Little Caesars Pizza. What else was there? I can't remember what else.

Q. Are you currently housed?

A. Yes, I'm in a shelter.

Q. And what shelter are you staying at?

A. 33 Gough.

Q. And how long have you been at the shelter at 33 Gough?

A. About six months.

Q. Were you in a shelter before that location at 33 Gough?

A. Yeah.

Q. And what shelter were you at?

A. Before that, Monarch Hotel, the International Hostel, and Next Door, Polk and Geary.

Q. Do you know roughly how long you stayed at the Monarch?

A. Very briefly.

Q. Do you know when that was?

A. When was it? No, I don't remember when.

Q. And was that more than six months?

A. It was very brief.

Q. Less than a month?

A. Yes.

Q. Less than a week?

A. I don't recall.

Q. And then I believe you said the International Hostel?

A. Mm-hmm.

Q. And do you know when you were staying at the International Hostel?

A. After the Monarch? I'm not sure exactly when.

Q. Do you know how long you were staying there?

A. That was brief also. That was maybe a week or

two.

Q. And then I believe the last one was Next Door; is that correct?

A. Yes.

Q. And do you know when you were living at Next Door?

A. I believe it was around December twenty twenty -- let's see -- December twenty -- 2023? Is that right? Or maybe it's 2022.

It's December, but I don't remember the year.

Q. And do you know when you stopped staying at Next Door?

A. It was when my CAAP benefits ran out. You could look that up.

Q. Do you know how many months you were staying at Next Door?

A. At least two months. I don't recall exactly.

Q. Is 33 Gough city housing?

A. Yes.

Q. Did the City help you get into that housing?

A. I don't -- maybe peripherally. It was Arial she's the social worker with HSH.

Q. But Arial connected you to 33 Gough?

A. Yes.

Q. Are there any program rules that you have to

BY MR. MILLS:

Q. Do you know what a jury trial is?

A. I think so, yeah.

Q. Is it your understanding that this case will be presented to a jury?

A. No, I don't believe so. I was told otherwise.

Q. Do you think that the City should be entitled to a jury?

MR. NTIM: Objection --

THE WITNESS: I'm not a lawyer --

MR. NTIM: -- calls for --

THE WITNESS: -- yeah.

MR. NTIM: -- legal opinion.

BY MR. MILLS:

Q. Do you intend to be homeless in San Francisco in the near future?

A. That's a weird question.

Q. Do you intend to be homeless in San Francisco in the near future?

A. I don't understand that question. That's bizarre to me.

Q. Do you have any plans to be unsheltered on the streets of San Francisco?

A. That's crazy. Why would I make plans for that?

Q. To the extent you lose your current shelter,

would you return to the streets to camp?

A. I -- I don't know. I would go wherever I could.

Q. Would you try to conform your conduct to the anti-camping laws?

MR. NTIM: Objection; calls for speculation.

THE WITNESS: I don't know.

BY MR. MILLS:

Q. Would you try to avoid interactions with DPW by not keeping a camp in a condition where they will try to resolve it?

MR. NTIM: Same objection; incomplete hypothetical.

BY MR. MILLS:

Q. You can answer.

A. I can't imagine that I would, but it's a bizarre question. I don't really understand it.

Q. To the extent you lose your current housing shelter, would you try to get another one?

A. Of course. I don't want to be out on the street.

Q. If you were told that you had 72 hours to break up an encampment, would you listen to that notice and move?

MR. NTIM: Objection; calls for speculation, incomplete hypothetical.

BY MR. MILLS:
Q. You can answer the question.
A. I don't -- I don't know. I have no idea.
Q. If you received notice that an HSOC resolution was going to take place within 72 hours --
A. I don't know all the context. I don't know all -- you know, I don't know.
Q. Just --
A. It depends --
Q. -- assuming you received a notice 72 --
(Reporter clarification.)
BY MR. MILLS:
Q. We have to ask the question, and then you can answer. And I get you might predict where I'm going, but we've got to let that happen, and we will get out sooner.
A. Okay.
Q. To the extent you receive a 72-hour notice that an HSOC resolution is going to be coming within the next 72 hours, would you move your belongings or -- would you move your belongings?
MR. NTIM: Same objections.
THE WITNESS: I don't know. I -- I'm very principled, and I am motivated by my conscience.
BY MR. MILLS:

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN FRANCISCO )

I hereby certify that the witness in the foregoing deposition, TORO D. CASTAÑO, was by me duly sworn to testify to the truth, the whole truth and nothing but the truth, in the within-entitled cause; that said deposition was taken at the time and place herein named; and that the deposition is a true record of the witness's testimony as reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting by computer.

I further certify that I am not interested in the outcome of the said action, nor connected with nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of October, 2024.

Reading and Signing was:

_x_ requested ___ waived ___ not requested

SUZANNE I. ANDRADE, CSR NO. 10682