# EXHIBIT 22

To

Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

# In The Matter Of:

*Coalition on Homelessness, et al. v*
*City and County of San Francisco, et al.*

---

*Samuel B. Dodge - 30(b)(6)*
*March 10, 2025*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California  94104*
*(415) 597-5600*

Original File 44217Dodge_NL.txt
Min-U-Script® with Word Index

Case 4:22-cv-05502-DMR   Document 366-28   Filed 04/17/25   Page 3 of 5

Coalition on Homelessness, et al. v  
City and County of San Francisco, et al.

Samuel B. Dodge - 30(b)(6)  
March 10, 2025

Page 81

1 photograph of the posted notice documented anywhere?
2 A. As I sit here today, I don't know for sure.
3 But I believe that there's been some e-mails, and HSH
4 may have documented it in some -- in some way,
5 formalized the request with Heluna Health in some way.
6    But had a number of conversations with the ERT
7 staff, which do most of the noticing almost exclusively,
8 and with the manager over the HOT Team for Heluna Health
9 about it.
10 Q. Thank you.
11    And is it the practice that photographs are
12 required of every posted pre-resolution notice?
13 A. No. Often, there'll be many notices for one
14 location, but I want to really just document that the
15 notice is the correct notice and describing the correct
16 location. So -- yeah.
17 Q. So you would not expect to see a photograph in
18 that e-mail of every notice that they posted for a
19 particular encampment resolution?
20 A. No. I would want to see one example of a
21 notice for each location. At each location, they have
22 multiple notices.
23 Q. Is there a written policy about where the
24 notices have to be posted?
25 A. Sorry. There are -- as I sit here today, I can

Page 82

1 recall certain language and different advice in e-mails
2 that is in a conspicuous, visible location, eye level.
3    Various times over this work, over the many
4 years, we've kind of experimented with posting a notice
5 on, you know, improvised structures or, you know, on
6 walls in the area, or poles or stuff. But sometimes
7 posting on -- on an improvised structure is -- it's not
8 the best practice. It can be a little bit intrusive.
9 And better to give verbal notice with people and really
10 have a discussion and post a written notice in a sort of
11 conspicuous visible area in proximity to the encampment
12 activity rather than on tarps or tents or wooden
13 structures, or whatever. Or, you know, vehicles.
14 Q. Thanks.
15    Other than information in e-mails, is there any
16 other written policy document about where to post the
17 notice?
18 A. Well, as I sit here today, I can't recall the
19 exact -- any exact ones, but that doesn't mean that they
20 don't exist.
21 Q. Okay. Is there any -- well, let me actually
22 ask you: Is there anyone else within the City who would
23 better know whether or not there was a written policy
24 about where to post the notices?
25    ATTORNEY MILLS: Objection; vague, ambiguous, calls

Page 83

1 for a legal opinion.
2    THE WITNESS: You know, Pedro Rincon -- I think you
3 may be familiar with him. He's a longtime ERT staff
4 member and does a lot of the noticing in a very
5 consistent, high quality way. So I think, you know, if
6 there was to be a staff member involved with this who
7 would know in detail, I'm sure he would.
8    BY ATTORNEY KASHYAP:
9 Q. Thank you.
10    Is there any written policy about how
11 frequently the notice has to be posted for a particular
12 sweep or sweep location -- or encampment resolution
13 location?
14    ATTORNEY MILLS: Objection, vague, ambiguous,
15 compound.
16    THE WITNESS: As I sit here today, I don't know of
17 any, like, particular, like every 50 feet or 20 feet or
18 something like that. I believe the request is for it to
19 be, you know, highly visible and posted in a way that
20 people could see it that would be affected.
21    But there is a second part of the noticing
22 which is like, you know, having discussions with anyone
23 that may be present at the time of outreach and posting
24 that I think is actually much -- that is also very
25 important and really to help alert people to the

Page 84

1 situation so they can follow up and read the notice and
2 understand exactly what's going to be happening.
3    BY ATTORNEY KASHYAP:
4 Q. Thank you.
5    And those conversations are only going to take
6 place with people who are present at the encampment at
7 the time that the outreach workers come by; is that
8 fair?
9 A. Yeah, I think it's kind of the totality.
10 But -- that is fair.
11    ATTORNEY KASHYAP: If we could please have what's
12 labeled as Tab 19 on the screen and in the chat.
13    This will be Exhibit 1383.
14    ZOOM TECHNICIAN: You said 19; is that correct?
15    ATTORNEY KASHYAP: That's right. Thank you.
16    ZOOM TECHNICIAN: I'm not seeing that in my
17 download. What's the rest of the name of the document?
18    ATTORNEY KASHYAP: It ends with the phrase
19 "Arielle P Map." I can also drop it in the chat right
20 now.
21    ZOOM TECHNICIAN: I see it here.
22    ATTORNEY KASHYAP: Let's see here. Thank you.
23    So this will be 1383.
24    (Deposition Exhibit 1383 was marked for
25 identification.)

Case 4:22-cv-05502-DMR   Document 366-28   Filed 04/17/25   Page 4 of 5

Coalition on Homelessness, et al. v
City and County of San Francisco, et al.

Samuel B. Dodge - 30(b)(6)
March 10, 2025

Page 85

BY ATTORNEY KASHYAP:
Q. And, Mr. Dodge, go ahead and familiarize yourself with this again, and then I have just a couple quick questions about it.
ATTORNEY MILLS: Yeah, it looks like -- yeah, scroll.
THE WITNESS: (Examines document.)
BY ATTORNEY KASHYAP:
Q. Thank you, Mr. Dodge.
Do you recognize this type of document?
A. Yes.
Q. And what is it?
A. So sometimes the areas that HSOC is operating in can be hard to describe simply by block base or address. And so this was a way to help with -- the Outreach Team with when they're noticing so that they could have an idea about the areas that would be -- where the request is for the outreach and noticing to occur.
Q. Thank you.
I'm going to direct your attention to the bottom of page 2, the map that's labeled January 31, 2023, that -- you got it.
Now, this is a little harder in a remote deposition, because I can't just hand you a pen and ask

Page 86

you to do this. But I think the PDF tool allows you to do this.
Mr. Dodge, could you mark on this map where you would expect the notices to be posted under HSOC's practices, the notices -- the 72-hour notices?
And you can just put an X or something, if the PDF will allow you to do that.
A. Here's the 100 block. Somewhere right here. See this both sides of the screen.
(Writes on document.)
One in there. One in there.
(Writes on document.)
It's often, this time, activity somewhere in the middle here.
(Writes on document.)
Something like that.
But as they were outreaching this area, (indicating), the -- wherever the activity was more concentrated so that they could -- as they were discussing with people, they could refer back to a written document so that the people could, you know, reference it as they prepare.
Q. Thank you.
And let me ask one more question, and then I'll note for the record what you've done here.

Page 87

Let's say that the outreach workers got to this location, and there weren't actually any unhoused folks encamped on the highlighted blocks.
Would this still be where you'd expect them to put notices up of the 72 hours' advance notice?
ATTORNEY MILLS: Objection; incomplete hypothetical.
THE WITNESS: January 1st -- or January 23, I would be really surprised if there wasn't any. I mean, I could see maybe on Eddy, if there was no encampment activity at all, maybe.
BY ATTORNEY KASHYAP:
Q. Sure. And I understand that you're operating off of, you know, knowledge of this area, knowledge of people's practices.
But I guess what I'm asking you is, for purposes of my question, is: If they got there and, in this highlighted area, there weren't any people encamped -- let me first ask the question: Would you still expect them to post notice of a scheduled HSOC resolution?
ATTORNEY MILLS: Objection; vague, ambiguous, incomplete hypothetical.
BY ATTORNEY KASHYAP:
Q. Mr. Dodge, you can answer.
Would you expect them to post notice?

Page 88

A. Yes.
Q. Okay. And then would the additional fact, for the purposes of this hypothetical, that there was no one there change where you have labeled the places that you would expect notice to be posted?
ATTORNEY MILLS: Objection; vague, ambiguous, calls for speculation, incomplete hypothetical.
BY ATTORNEY KASHYAP:
Q. You can answer, Mr. Dodge.
A. You know, I do rely on their professionalism and extensive experience to lend their best ideas and practices. But for me and my experience, yes, these are the locations that I would expect notices to be posted.
Q. Thank you.
ATTORNEY KASHYAP: So I'll just note for the record that on Exhibit 1383, the witness has marked, using red kind of circles and ovals, the places that he would expect the notices posted.
We can go ahead and put this down. Thank you.
BY ATTORNEY KASHYAP:
Q. And, Mr. Dodge, is it correct that the City's practice is to post one notice in English and one notice in Spanish at each of the locations that a notice is posted?
ATTORNEY MILLS: Objection; vague, ambiguous,

Case 4:22-cv-05502-DMR    Document 366-28    Filed 04/17/25    Page 5 of 5
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
Samuel B. Dodge - 30(b)(6)
March 10, 2025

Page 109

1    Some of this is notes of things that were
2    covered verbally in the meeting, and some of it are sort
3    of ongoing placeholders, information that, you know,
4    sometimes can be dated.
5  Q. Thank you.
6      I'm going to direct your attention to the
7    section that -- under "HSOC Prior Operation." It starts
8    on the first page and then spills over to the second
9    page.
10     Do you see that section there?
11     Are these the notes that reflect what happened
12   at the prior day's HSOC encampment resolutions?
13 A. Yes. They sometimes, you know, are incomplete
14   a bit, but it's an attempt of the HSOC manager to write
15   down some notes from the discussion that happened about
16   what took place the previous day.
17 Q. Thank you.
18     I'm going to direct your attention to the
19   paragraph that begins "HSOC PM."
20     The first clause says: "Polk Street corridor
21   for re-encampment prevention..."
22     Mr. Dodge, are you familiar with where the Polk
23   Street corridor is?
24 A. Yes.
25 Q. Okay. And what is your understanding of the

Page 110

1    term "re-encampment prevention" as it's used here?
2  A. These are basically just the HSOC operations,
3    the same sort of operations where, you know, sequestered
4    shelter allocation, and noticing, and outreach. But
5    it's meant to describe a location that is returned to
6    regularly, you know, because it gets re-encamped quite a
7    lot.
8        So, I mean, I think it's -- it's just a
9    description of -- that this is a place that HSOC, at
10   this time period, is engaged in returning to multiple
11   times a week, or in the A.M. and P.M.
12 Q. Thank you.
13     And then continuing that same sentence, it then
14   says: "...all alleys still clear so shifted to 200
15   Taylor with 2 tents lots of debris and a chop shop."
16     So, first, is the 200 block of Taylor within
17   the Polk Street corridor?
18 A. No, it is not.
19 Q. Okay. And so would this be an example where
20   the HSOC Team went outside the noticed area to conduct a
21   response to an encampment?
22     ATTORNEY MILLS: Objection; calls for speculation.
23     THE WITNESS: This is an example of, you know -- of
24   HSOC being at the noticed location and it being -- work
25   being completed there, and then continuing to operate

Page 111

1    together, interdepartmentally, to address some issues
2    that are quite difficult for departments to address by
3    themselves.
4        So "chop shop" is, you know, slang here for,
5    like, a stolen bicycle operation, where people may be
6    deconstructing a series of bicycles. And there is a law
7    on the books for, you know, code and DPW's
8    responsibility around addressing chop shops. But, of
9    course, they need the assistance of SFPD to be effective
10   and safe in those situations.
11     And there is also, you know, reported here some
12   encampment activity. And it's all sort of happening at
13   once, and just this is an ongoing situation.
14     To this day, it's a -- it's a location,
15   200 Taylor, between Ellis and Eddy, down Taylor, that is
16   against a senior living facility, a senior supportive
17   housing facility. And the blocked sidewalks there
18   create a lot of problems with the busy street that
19   people are needing to walk out into and services nearby,
20   with GLIDE and others. So it's -- yes, it's a situation
21   that I'm pretty familiar with.
22     BY ATTORNEY KASHYAP:
23 Q. Thank you.
24     And am I right that the people at encampments
25   on the 200 block of Taylor would not have received

Page 112

1    advance written notice that the HSOC Team was coming
2    that afternoon?
3  A. Yes, that's correct.
4  Q. And is there any, to your knowledge, official
5    HSOC policy around this type of work outside the noticed
6    area?
7      ATTORNEY MILLS: Objection; vague, ambiguous.
8      THE WITNESS: So, again, I just want to go back to
9    the fact that HSOC is really made up of all these
10   departments. They have the policies and procedures that
11   they need to follow, and staff and contracts from those
12   departments. And so there's a lot of policies and
13   procedures that each department have when encountering
14   any of these situations like a chop shop or blocked
15   sidewalks, including, you know, the bag-and-tag policy
16   for Public Works and, you know, the idea of granting
17   people a certain amount of time, you know, warnings, and
18   stuff for the PD and their processes, kind of that's
19   outlined in that departmental memo that -- or bulletin
20   that we went over earlier.
21     BY ATTORNEY KASHYAP:
22 Q. Sure.
23     I guess what I -- maybe my question was not
24   clear.
25     What I'm asking about is: Is there any written