# EXHIBIT 23

## To
## Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

# In The Matter Of:

*Coalition on Homelessness, et al. v*
*City and County of San Francisco, et al.*

---

*David Lazar, 30(b)(6)*
*March 3, 2025*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California 94104*
*(415) 597-5600*

Original File 44179Lazar,30(b)(6)_NL.txt
Min-U-Script® with Word Index

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 3 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 57

1 arrest custodially, in a custodial setting. If they're
2 not, then there's a determination made as to what they
3 take and what may get disposed of or bagged and tagged.
4    BY ATTORNEY KATOVICH:
5 Q. Just to make sure I'm clear, if a person is in
6 a custodial setting, then there's a determination made
7 about what could be bagged and tagged?
8    ATTORNEY WANG: Objection; vague.
9    BY ATTORNEY KATOVICH:
10 Q. I'm not sure I understand exactly what you
11 were -- the two scenarios you were describing.
12 A. Yeah. There are two paths that Public Works
13 will take.
14    One is the person's property needs to be bagged
15 and tagged so that hopefully the individual, within that
16 window, will go back to Public Works and seize it -- not
17 seize it, but take their stuff back.
18    The other path, that if it's hazardous in
19 nature or -- basically hazardous in nature, the Public
20 Works Department may elect to discard it.
21 Q. And those two paths might occur if a person is
22 in custody, correct?
23 A. Yes.
24    ATTORNEY WANG: Uh --
25    THE WITNESS: Sorry.

Page 58

1    ATTORNEY WANG: Just objection; vague as to
2 "custody."
3    But go ahead.
4    BY ATTORNEY KATOVICH:
5 Q. Under what circumstances is an unhoused
6 person's property seized when they are cited?
7    ATTORNEY WANG: Objection; vague.
8    Go ahead.
9    THE WITNESS: Well, if they have -- if they have
10 been -- "cited" is a broad term. Can you -- would you
11 mind being more specific?
12    BY ATTORNEY KATOVICH:
13 Q. If a person is cited and released and they are
14 not taken into custody by SFPD, under what circumstances
15 would their property be seized?
16    ATTORNEY WANG: Objection; vague.
17    But go ahead.
18    THE WITNESS: Well, I'm going to make the assumption
19 you're talking about an illegal lodging, that's what the
20 citation is for?
21    BY ATTORNEY KATOVICH:
22 Q. Are there other citations that a person might
23 be given?
24 A. Yes.
25 Q. So all citations.

Page 59

1 Q. Under what circumstances would a person who is
2 given a citation -- an unhoused person given a citation
3 would their property be seized?
4 A. Well, the circumstance specifically is the
5 violation of 647(e) of the California Penal Code as it
6 relates to illegal lodging. In that case, that
7 encampment, structure, tarp, tent would be seized as
8 evidence, and it would be collected by Public Works and
9 bagged and tagged.
10 Q. Is that the only citation -- the only offense
11 for which a citation would result in seizure of
12 property?
13    ATTORNEY WANG: Objection; vague.
14    THE WITNESS: No. There could be a whole host of
15 crimes in which a person's property would be seized as
16 evidence.
17    BY ATTORNEY KATOVICH:
18 Q. Are there any other offenses where property
19 seized as evidence of that offense is given to another
20 department or agency?
21    ATTORNEY WANG: Objection; vague.
22    Go ahead.
23    THE WITNESS: I'm not sure I understand your
24 question.
25    BY ATTORNEY KATOVICH:

Page 60

1 Q. You said that in -- for 647(e), evidence of
2 that offense is seized by DPW, correct?
3 A. Yes.
4 Q. ==Are there other offenses where evidence of that==
5 ==offense is seized by another City department outside of==
6 ==SFPD?==
7 A. ==And outside of Public Works?==
8 Q. ==It could include Public Works as well.==
9 A. ==Not that I can think of. Because if it's==
10 ==evidence in a crime other than a structure or a tent,==
11 ==we're going to collect that evidence.==
12    So if I understand your question correctly, the
13 answer is no. Hopefully I understand your question
14 correctly.
15    You want to try it again? You want to ask it
16 another way?
17 Q. We'll come back to it.
18    Is SFPD required to call DPW to bag and tag
19 property when an unhoused person is arrested?
20    ATTORNEY WANG: Objection; incomplete hypothetical,
21 vague.
22    Go ahead.
23    THE WITNESS: Yes.
24    BY ATTORNEY KATOVICH:
25 Q. Every time?

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 4 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 61

1  A.  You're going to have to repeat your question
2  because it's very broad.  I'm sorry.  I just want to
3  be -- I want to give you the best, most accurate answer.
4  Can you -- would you mind being more specific?  Or I can
5  answer the question that you've given me.
6  Q.  When SFPD arrests an unhoused person, do they
7  always call DPW to come and bag and tag the property of
8  that person who is arrested?
9      ATTORNEY WANG: Objection; vague, incomplete
10 hypothetical.
11     Go ahead.
12     THE WITNESS: Not always.
13     BY ATTORNEY KATOVICH:
14 Q.  Under what circumstances would they not call
15 DPW to bag and tag the items?
16 A.  When there's very little to no property and/or
17 the property needs to be seized as evidence.
18 Q.  And that would be property that is -- would be
19 seized as evidence by SFPD, correct?
20 A.  Yes.
21 Q.  And if I understood your earlier answers, that
22 would be any property seized as evidence except for
23 tents or structures that are evidence of illegal
24 lodging, correct?
25 A.  Yes.

Page 62

1  Q.  So evidence of illegal lodging is the only
2  evidence that is seized by DPW, correct?
3      ATTORNEY WANG: Objection; asked and answered,
4  vague.
5      Go ahead.
6      THE WITNESS: Yes.
7      BY ATTORNEY KATOVICH:
8  Q.  And evidence of illegal lodging is the only
9  evidence that is seized by any department outside of
10 SFPD?
11     ATTORNEY WANG: Same objections.
12     Go ahead.
13     THE WITNESS: Based on the questions -- based on
14 your question, I'm going to say to the best of my
15 knowledge, to the best of my knowledge at this moment.
16     BY ATTORNEY KATOVICH:
17 Q.  Does SFPD take items that are going to be
18 bagged and tagged by DPW to SFPD stations?
19 A.  They're not allowed to according to our current
20 policy.
21 Q.  And were they previously allowed to?
22 A.  Yes.
23 Q.  And when did that change?
24 A.  To the best of my knowledge, at least with this
25 latest directive that was written last year.

Page 63

1  Q.  Under the previous directive, under what
2  circumstances would SFPD take items that are to be
3  bagged and tagged by DPW to an SFPD station?
4  A.  If I recall specifically, it had to do with
5  maybe a delay in response by Public Works, if my
6  recollection is correct.
7  Q.  And currently, SFPD officers are not permitted
8  to take items that are to be bagged and tagged to SFPD
9  stations, correct?
10 A.  Yes.
11 Q.  Does SFPD provide any instructions to DPW about
12 what to do with property of arrestees that it bags and
13 tags?
14     ATTORNEY WANG: Objection; beyond the scope, vague.
15     Go ahead.
16     THE WITNESS: It is Public Works' decision and role
17 to determine what happens with property.  That doesn't
18 mean that there's not a conversation that happens
19 between police officers and Public Works about the
20 property that they have in front of them.  But the
21 ultimate decision is with Public Works.
22     BY ATTORNEY KATOVICH:
23 Q.  Is property that DPW takes custody of
24 subsequent to an arrest treated any differently than
25 other property that DPW takes custody of?

Page 64

1      ATTORNEY WANG: Objection; vague.
2      THE WITNESS: You'd have to ask them.
3      BY ATTORNEY KATOVICH:
4  Q.  DPW, not SFPD, would determine whether or not
5  the property of an arrestee can be discarded, correct?
6  A.  Yeah -- oh.
7      ATTORNEY WANG: Sorry.  Objection; incomplete
8  hypothetical.
9      Go ahead.
10     THE WITNESS: Yes.
11     BY ATTORNEY KATOVICH:
12 Q.  And DPW, not SFPD, would determine whether and
13 how the property of an arrestee is stored, correct?
14     ATTORNEY WANG: Objection; incomplete hypothetical.
15     Go ahead.
16     THE WITNESS: Yes, yes.  If they're seizing it, yes.
17     BY ATTORNEY KATOVICH:
18 Q.  What written documentation is provided to an
19 unhoused individual who is cited or arrested when their
20 property is bagged and tagged?
21 A.  I don't know.
22 Q.  Is SFPD required to call DPW to take custody of
23 evidence of illegal lodging?
24 A.  Yes.
25 Q.  So every time that SFPD enforces illegal

Case 4:22-cv-05502-DMR    Document 366-29    Filed 04/17/25    Page 5 of 10

Coalition on Homelessness, et al. v
City and County of San Francisco, et al.

David Lazar, 30(b)(6)
March 3, 2025

Page 65

1 lodging, they instruct DPW to take custody of evidence
2 of illegal lodging, correct?
3 A. Well, you know, I'm going to say that the onlys
4 and the every times really lock us into -- you know,
5 it's going to lock me into answers.
6     Let me just say that the policy of the SFPD is
7 to call Public Works to help clean and clear up an
8 encampment, and if that involves the taking of a tent or
9 tarp or structure to be bagged, it's evidence, but it's
10 to be bagged and tagged.
11     Public Works makes a determination on what they
12 feel is garbage or debris or hazardous, and they'll
13 collect that as well.
14     I'm not saying in all circumstances. I'm not
15 saying every time. I'm not saying only. But what I'm
16 saying is that is the protocol. That's the policy and
17 procedures. The department and officers shall follow
18 our procedures.
19 Q. Do SFPD protocols, procedures, and other
20 requirements require SFPD officers to seize tents or
21 structures as evidence of illegal lodging?
22 A. No.
23 Q. Does it require SFPD to instruct DPW to seize
24 tents and structures as evidence of illegal lodging?
25 A. Yes.

Page 66

1 Q. Does SFPD provide DPW with any instructions
2 about what DPW should do with that evidence of illegal
3 lodging?
4 A. Public Works knows their job, and I'm sure
5 there are conversations that officers in Public Works
6 have at the scene of the encampment just to make sure
7 that everyone's on the same page. But the police
8 officers and Public Works must follow their policies.
9 Q. Is there any SFPD policy that requires or
10 instructs SFPD officers to provide instructions to DPW
11 about what to do with evidence of illegal lodging?
12 A. Well, I'd have to reference the department
13 notice to verify whether or not that is the case, but as
14 I have stated here this morning, Public Works makes
15 determinations about property. And if you want me to
16 reference it, I will, the department notice.
17 Q. And it's DPW, not SFPD, that decides whether
18 evidence of illegal lodging should be bagged and tagged
19 or discarded, correct?
20 A. Yes.
21 Q. Does DPW need SFPD's permission to return
22 bagged-and-tagged evidence to its owner?
23 A. No, not that I -- no.
24 Q. Does SFPD ever retrieve evidence from DPW?
25     ATTORNEY WANG: Objection; vague.

Page 67

1     Go ahead.
2     THE WITNESS: Not that I'm aware.
3     BY ATTORNEY KATOVICH:
4 Q. Are you aware of SFPD ever attempting to
5 retrieve evidence from DPW?
6     ATTORNEY WANG: Same objections.
7     Go ahead.
8     THE WITNESS: No.
9     BY ATTORNEY KATOVICH:
10 Q. Has the District Attorney's Office ever asked
11 SFPD to turn over evidence of illegal lodging?
12     ATTORNEY WANG: Objection; beyond the scope.
13     Go ahead.
14     THE WITNESS: Not that I'm aware.
15     BY ATTORNEY KATOVICH:
16 Q. Has the District Attorney's Office ever asked
17 SFPD to turn over photographs or body-worn camera
18 footage representing evidence of illegal lodging?
19     ATTORNEY WANG: Same objections.
20     Go ahead.
21     THE WITNESS: I would be speculating by saying yes,
22 and that is their job, is to ask us for evidence related
23 to any case that they may be moving forward on.
24     BY ATTORNEY KATOVICH:
25 Q. But you're not aware of any situations where

Page 68

1 they have asked for the physical tent or structure as
2 evidence of an illegal lodging --
3     ATTORNEY WANG: Same --
4     BY ATTORNEY KATOVICH:
5 Q. -- case?
6     ATTORNEY WANG: Sorry. Same objections.
7     THE WITNESS: Yeah, not that I recall.
8     BY ATTORNEY KATOVICH:
9 Q. To the best of your knowledge, has a tent or
10 structure ever been introduced as evidence in
11 prosecuting a case?
12     ATTORNEY WANG: Objection; calls for speculation,
13 beyond the scope.
14     THE WITNESS: Not that I'm aware.
15     BY ATTORNEY KATOVICH:
16 Q. What written documentation is provided to
17 unhoused individuals whose property is bagged and tagged
18 as evidence?
19     ATTORNEY WANG: Objection; calls for speculation.
20     Go ahead.
21     THE WITNESS: I'm not sure what they give them,
22 whether Public Works -- Public Works most likely gives
23 them a form, but I'm speculating. There's -- I'm
24 sure -- well, I'm not sure what instructions that
25 they're given.

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 6 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 69

 1  BY ATTORNEY KATOVICH:
 2  Q. Does SFPD provide any documentation?
 3  A. Not that I'm aware.
 4  Q. Aside from evidence of illegal lodging, does
 5  SFPD discard any other crime evidence because it poses a
 6  health or safety risk?
 7     ATTORNEY WANG: Quickly, just objection; beyond the
 8  scope, vague.
 9     Okay. Go ahead.
10     THE WITNESS: No.
11     BY ATTORNEY KATOVICH:
12  Q. And aside from evidence of illegal lodging,
13  does SFPD allow any other crime evidence to be destroyed
14  by another City agency?
15     ATTORNEY WANG: Same objections.
16     Go ahead.
17     THE WITNESS: No.
18     ATTORNEY KATOVICH: I'm going to introduce a
19  document into evidence. This is actually a previously
20  marked exhibit, 1042.
21     (Previously marked Deposition Exhibit 1042 was
22     presented.)
23     BY ATTORNEY KATOVICH:
24  Q. Take a moment to look this over and let me know
25  if it looks familiar to you.

Page 70

 1  A. (Examines document.)
 2     Yes.
 3  Q. Is this the protocol on processing property
 4  consistent with DPW's bag-and-tag policy that's
 5  currently in force?
 6  A. Yes.
 7  Q. Who drafted this department notice?
 8     ATTORNEY WANG: Objection to the extent it calls for
 9  attorney-client privileged information.
10     But go ahead.
11     THE WITNESS: Yeah, well, usually -- well, I would
12  say that this is a partnership between the SFPD and this
13  City Attorney's Office.
14     BY ATTORNEY KATOVICH:
15  Q. And who approved this notice?
16  A. The Chief of Police signs off on all department
17  notices.
18  Q. Do you see the date that this was published is
19  September 12th, 2024, correct?
20  A. Yes.
21  Q. Why was this department notice revised in
22  September of 2024?
23     ATTORNEY WANG: Objection to the extent it -- I
24  advise you not to reveal any information, sort of,
25  communicated by our office to the department.

Page 71

 1  But otherwise, if you can answer, go ahead.
 2     THE WITNESS: I don't know.
 3     BY ATTORNEY KATOVICH:
 4  Q. If you look at the first sentence of this
 5  department notice it says: "The purpose of this
 6  Department Notice is to outline policy and procedures
 7  for processing property for removal or collection, or
 8  property subject to an incident of arrest of a homeless
 9  subject."
10     Does this notice apply to all property for
11  removal of collection regardless of who the owner of
12  that property is?
13     ATTORNEY WANG: Objection; vague.
14     Go ahead.
15     THE WITNESS: No.
16     BY ATTORNEY KATOVICH:
17  Q. Whose property does it apply to?
18  A. It applies to unhoused individuals.
19  Q. How does SFPD determine whether a person whose
20  property they encounter for removal or collection is
21  unhoused?
22  A. They -- they ask specific questions to an
23  individual.
24  Q. And if, based on those questions, they
25  determine that a person is not unhoused, a different

Page 72

 1  protocol or general order would apply to their property?
 2  A. In most cases.
 3  Q. In what cases would that not apply?
 4  A. Well, a person could be housed but still set up
 5  an encampment. They could have a tent, a structure, a
 6  tarp, a bunch of items and still be housed in an SRO or
 7  anywhere. We would still follow this procedure because
 8  of the spirit of it.
 9  Q. And so is it fair to say that this protocol
10  would apply to any property for removal or collection
11  found in an encampment?
12  A. Yes.
13  Q. Regardless of the individual owner's housing
14  status?
15  A. Yes.
16  Q. And this department notice also governs all
17  property of a homeless arrestee, correct?
18  A. Yes.
19  Q. And does this department notice also govern how
20  personal property that's evidence of a crime should be
21  handled?
22     ATTORNEY WANG: Objection; vague, incomplete
23  hypothetical.
24     Go ahead.
25     THE WITNESS: Not all evidence.

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 7 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 73

    BY ATTORNEY KATOVICH:
Q.  What evidence does it govern?
A.  I believe it just governs evidence other -- it
only -- it only involves evidence of illegal lodging as
reflected on the bottom paragraph of this notice that
you've given me.
Q.  And is that the paragraph that begins:
"Officers seizing personal property that is evidence of
a crime, other than illegal lodging, from an individual
who is arrested shall refer to DGO 6.02 and issue the
individual a property receipt"?
A.  Yes.
Q.  And that paragraph goes on to say that:
"Officers seizing personal property that is evidence of
an illegal lodging violation should note in the incident
report that the evidence was captured on BWC," correct?
A.  Yes.
Q.  And this protocol requires officers seizing --
officers enforcing an illegal lodging violation to
capture evidence of that violation on body-worn camera,
correct?
A.  Yes.
Q.  Why is that?
A.  Because we use the body-worn camera often to
capture evidence, capture statements, capture things

Page 74

that we witness. But it's also a good tool to be used
because that illegal lodging item is being taken by
Public Works, so we're going to show that we did have
knowledge, we're aware of it and had our hands on it
before it was taken away.
Q.  And would that body-worn camera footage be used
to substantiate the enforcement of illegal lodging?
    ATTORNEY WANG:  Objection; vague, incomplete
hypothetical.
    Go ahead.
    THE WITNESS:  It could be.
    BY ATTORNEY KATOVICH:
Q.  Under what circumstances could it be?
    ATTORNEY WANG:  Same objections.
    THE WITNESS:  Well, if the District Attorney
prosecuted a case of illegal lodging, it would be used
as evidence, given over as discovery, maybe used in a
preliminary hearing or a trial.
    BY ATTORNEY KATOVICH:
Q.  And would that be the only evidence that's
given over in that circumstance?
A.  No.
Q.  What else would be given over?
A.  Witness testimony.
Q.  Anything else?

Page 75

    ATTORNEY WANG:  Objection; incomplete hypothetical.
    Go ahead.
    THE WITNESS:  An incident report.
    BY ATTORNEY KATOVICH:
Q.  Anything else?
A.  Maybe photographs.
Q.  Does this department notice require officers to
take photographs of evidence of illegal lodging?
A.  No.
Q.  I'm going to turn your attention to the second
page under "Procedure and How to Contact DPW."
    Under No. 4, do you see that it says:  "Members
shall photograph and document the property in the
report"?
A.  Yes.
Q.  Does that apply to evidence of illegal lodging?
A.  Well, it doesn't -- the previous paragraph on
property of arrested person, it talks about evidence
related to body-worn camera.
    But the way that I interpret this portion that
you've pointed out to me is that -- well, it also
mentions photograph, I will say that.  So they shall
photograph and document the property in a report, which
is interesting because it's not referenced in the first
paragraph that I was referring to.

Page 76

Q.  So looking back at No. 3 on that list, it says:
"DPW will assess and process the property accordingly,"
and then subpart (a):  "DPW will take custody of what
the arresting officer(s) deems as evidence supporting
the arrest.  Property shall be listed in the arrest
report as evidence."
    And No. 4 says:  "Members shall photograph and
document the property in the report."
    Do you understand this to require officers to
take photographs of evidence of illegal lodging?
A.  Yeah.  I misspoke.  I actually did.  Because I
didn't believe that they were required to do so because
I was just referencing the first page of this policy.
    But I'm glad you pointed out that it appears
that, in addition to the body-worn cameras as evidence,
it also appears in this department notice that they have
to also -- officers shall photograph and document the
property in the report.  So they, for some reason, have
to do both.
Q.  And you don't know why they have to do both?
A.  No.  And it actually doesn't make any sense to
me, but it is the policy of the department, because the
body-worn camera would actually capture everything if
used correctly.  And -- but that being said, this
provides an extra protection on making sure that

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 8 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 117

1  place before 24-114 came into force?
2  A.  Yes.
3  Q.  And 24-114 replaced this department notice?
4  A.  Yes.
5  Q.  And this Department Notice 20-167 was in place
6  from December 15th, 2020, until July 8th, 2024, correct?
7  A.  Yes.
8  Q.  How did this version of the department notice
9  of the protocol for processing homeless property,
10 consistent with DPW's bag-and-tag policy, differ from
11 the two that we were just talking about?
12 A.  I do not know.  I'd have to analyze it.  And
13 usually when I see a new policy, I try to completely
14 forget the prior policy so I don't mix it all up.
15 Q.  Did you review this or other department
16 policies in preparation for this deposition?
17 A.  I did.
18 Q.  Which policies did you review?
19 A.  I reviewed 20-167, 24-114, 24-140, and the
20 policies related to illegal lodging -- enforcement of
21 illegal lodging.
22 Q.  And do you recall, based on your review in
23 preparation for today's deposition, what the difference
24 is between 20-167 and the department notice currently in
25 force on protocol for processing property?

Page 118

1  A.  No, I didn't analyze it that closely.
2  Q.  Do you recall any differences?
3  A.  No.
4  Q.  So in 20-167, the -- under the first heading
5  here, "Unattended Property vs. Abandoned Property," this
6  paragraph describes "Temporarily unattended property,"
7  which it says, "is different from abandoned property,
8  which may be immediately discarded.  In determining if
9  property is abandoned, officers should evaluate the
10 facts and circumstances surrounding the items."
11     Based on looking at this paragraph, did this
12 policy -- did this version of the protocol require SFPD
13 members to determine the status of property?
14 A.  Yes.
15 Q.  And currently, under 24-140, officers are not
16 supposed to determine the status of property, correct?
17 A.  Correct.
18 Q.  And why did that change?
19 A.  I don't know why.
20 Q.  Who made that change?
21 A.  I don't know who.
22 Q.  From December 15th, 2020, until July 8th, 2024,
23 is it fair to say that SFPD officers were directed to
24 make a determination about whether property they
25 encountered was unattended or abandoned, and if property

Page 119

1  was abandoned, ensure that that property was immediately
2  discarded?
3  A.  Yes.
4      ATTORNEY WANG:  You need to read the whole thing.
5      THE WITNESS:  I may need to read the whole --
6      ATTORNEY WANG:  Take your time.
7      THE WITNESS:  Yeah.  Again, it's a five year old --
8  four and a half -- four year old policy, and I should
9  just take a quick read at it so I can answer your
10 questions accurately.
11     BY ATTORNEY KATOVICH:
12 Q.  Just to be clear, this policy was in force up
13 until July 8, 2024, correct?
14 A.  Yes.
15 Q.  Do you want to take a moment to read this?
16 Would that help you answer questions about it?
17 A.  Yes.
18 Q.  Okay.  Why don't you do that.
19 A.  (Examines document.)
20     ATTORNEY WANG:  You'll need a couple minutes.  We
21 can go off the record.
22     ATTORNEY KATOVICH:  If we could go off the record
23 that would be great.  Thank you.
24     (Recess taken from 1:14 p.m. to 1:16 p.m.)
25     THE REPORTER:  It's 1:16.

Page 120

1      BY ATTORNEY KATOVICH:
2  Q.  Chief Lazar, have you now had a chance to read
3  this Department Notice 20-167?
4  A.  Yes.
5  Q.  And based on your review of this notice, is it
6  your understanding that this department notice
7  instructed SFPD members to determine whether property
8  was unattended or abandoned?
9  A.  Yes.
10 Q.  And if the SFPD officer determined that
11 property was abandoned, what were they required to do?
12 A.  If the property -- if they determined the
13 property was abandoned, they evaluate the facts, and
14 then they have to make some determinations.  There's a
15 third party that was guarding it, in which case it
16 wasn't abandoned.  And then if that's -- you know, if
17 that's not the case, then Public Works is called for a
18 removal or recovery -- removal of the property.
19 Q.  Under this version of the policy, it was SFPD,
20 not Public Works, that was determining that property was
21 abandoned, correct?
22     ATTORNEY WANG:  Objection; incomplete hypothetical.
23     Go ahead.
24     THE WITNESS:  Well, it didn't -- it doesn't
25 necessarily say that.  It say -- it just gives

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 9 of 10
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
David Lazar, 30(b)(6)
March 3, 2025

Page 137

1  A.  I don't know.
2  Q.  Taking a look at the third page of this
3  document, there's a list here. And the notice says:
4  "Items that will be discarded and not stored consistent
5  with DPW's Procedure 16.05.08," and then it lists out a
6  number of categories of documents.
7      Are these categories of documents taken
8  directly from DPW's procedures?
9  A.  I don't know. I have to look at DPW's
10  procedures that you just handed to me. I have to read
11  and compare.
12  Q.  You don't know anything about the process of
13  creating this department notice and whether the items
14  listed here in this department notice were provided by
15  DPW?
16  A.  I do not know.
17  Q.  Looking at item (c) it says: Furniture,
18  mattresses, sheds, rolling structures, and bulky items
19  "will be discarded and not stored consistent with DPW's
20  procedure"; is that correct?
21  A.  Yes.
22  Q.  And is it your understanding that from --
23  during the period of time that this department notice
24  was in force, DPW was not storing furniture, mattresses,
25  sheds, rolling structures, and bulky items?

Page 138

1      ATTORNEY WANG: Objection; beyond the scope, calls
2  for speculation.
3      Go ahead.
4      THE WITNESS: Just based on this directive, yes.
5      BY ATTORNEY KATOVICH:
6  Q.  And would officers use this list of items that
7  would be discarded and not stored by DPW to make
8  determinations about whether or not they should call DPW
9  to pick up items?
10  A.  Yes.
11  Q.  And so if there was an item on this list,
12  how -- what would they do?
13      ATTORNEY WANG: Objection; vague.
14      THE WITNESS: They would call Public Works and ask
15  them to come out and pick these items up.
16      BY ATTORNEY KATOVICH:
17  Q.  And that would be to pick them up to discard
18  them?
19      ATTORNEY WANG: Objection; vague, calls for
20  speculation.
21      Go ahead.
22      THE WITNESS: According to this policy, they would
23  be discarded.
24      BY ATTORNEY KATOVICH:
25  Q.  What other San Francisco Police Department

Page 139

1  department notices, protocols, or guidance relate to
2  DPW's bag-and-tag policy?
3      ATTORNEY WANG: Objection; vague.
4      Go ahead.
5      THE WITNESS: There's the current department notice
6  is used as our guide, 24-140.
7      BY ATTORNEY KATOVICH:
8  Q.  And are there other department notices that
9  reference the DPW bag-and-tag policy?
10  A.  There may -- there may under the current
11  illegal lodging policy. I'd have to reference it.
12      ATTORNEY KATOVICH: I'll provide you a document that
13  was previously marked as 1039, Exhibit 1039.
14      (Previously marked Deposition Exhibit 1039 was
15  presented.)
16      BY ATTORNEY KATOVICH:
17  Q.  Take a moment to look at this document.
18  A.  (Examines document.)
19  Q.  Is this the current department notice on
20  "Enforcement of Laws to Address Lodging, Encampments on
21  Public Streets, Sidewalks, Plazas, or Other Public or on
22  Private Property or Blocking Access to Those Areas"?
23  A.  Yes.
24  Q.  Is this the department notice that you were
25  just referring to?

Page 140

1  A.  Yes. I wanted to see if there may be a
2  reference to that in here.
3      But I am -- I don't know, I have to go through
4  it to see if there's a reference.
5  Q.  This department notice did not change SFPD's
6  procedures around seizure of tents or structures as
7  evidence of illegal lodging, correct?
8  A.  Correct, because we have the guiding -- well,
9  we have -- the document about bag and tag was written --
10  the current document was written after this document was
11  written.
12  Q.  That's the Department Notice 24 --
13  A.  -126.
14  Q.  -- -140?
15  A.  Oh, yeah. Sorry. 24-140, which was prepared
16  on September 12th, 2024.
17  Q.  And 24-140 is the department notice that
18  requires officers to -- that explains how officers are
19  to treat evidence of illegal lodging, correct?
20  A.  No.
21  Q.  Which department notice instructs officers how
22  to treat evidence of illegal lodging?
23  A.  Oh, I didn't hear the word "evidence." I'm
24  sorry. I thought you said it's the department notice
25  that instructs us on how to deal with illegal lodging or

Case 4:22-cv-05502-DMR   Document 366-29   Filed 04/17/25   Page 10 of 10

Coalition on Homelessness, et al. v
City and County of San Francisco, et al.

David Lazar, 30(b)(6)
March 3, 2025

Page 141

1  how to address illegal lodging, which is in 24-126.
2     This 24-140 has to do with our policies related
3  to bag and tag.
4  Q.  And it also instructs officers how to handle
5  evidence of illegal lodging, correct?
6  A.  Yes.
7  Q.  I want to turn your attention in this
8  department notice to --
9  A.  Which one?  I'm sorry.
10 Q.  I'm sorry, the 24-126, the enforcement of laws
11 to address lodging, encampments on public streets.
12    And I'm going to turn your attention to page 4
13 out of 5 in the bottom right and to the section that
14 addresses California Penal Code 148(a).
15 A.  Mm-hmm.
16 Q.  The paragraph that follows that heading
17 "California Penal Code 148(a)" says that:  "This section
18 (misdemeanor) prohibits any person from willfully
19 resisting, delaying, or obstructing any public officer
20 or peace officer, including DPW, DPH, and HSH personnel,
21 who is discharging or attempting to discharge an
22 official duty, including the enforcement of any law.
23 For example, during joint operations Members may cite an
24 individual for violating Penal Code 148(a), where the
25 City has complied with other local laws and the

Page 142

1  individual refuses to comply."
2     What is meant by "the City has complied with
3  other local laws"?
4     **ATTORNEY WANG:** Objection; beyond the scope.
5     Go ahead, to the extent you know.
6     **THE WITNESS:** I do not know.
7     **BY ATTORNEY KATOVICH:**
8  Q.  Do you know what other local laws this is
9  referring to?
10    **ATTORNEY WANG:** Objection; beyond the scope.
11    Go ahead.
12    **THE WITNESS:** I would be speculating to say that
13 maybe it has to do with cleaning up.  The City has
14 complied with cleaning up debris and trash or is
15 required to do so, but I'm just speculating.  I don't
16 know -- at the moment, I do not know what that last
17 sentence clearly means, but I do know what 148(a) means
18 and how to enforce it.
19    **BY ATTORNEY KATOVICH:**
20 Q.  And if you -- to enforce 148 -- would it be
21 appropriate to enforce 148(a) if DPW were not complying
22 with its own bag-and-tag policy?
23    **ATTORNEY WANG:** Objection; beyond the scope, calls
24 for a legal conclusion, vague, incomplete hypothetical.
25    **THE WITNESS:** I do not understand your question.

Page 143

1  You can definitely repeat it.  Let's see if --
2     **BY ATTORNEY KATOVICH:**
3  Q.  Let's say that at an encampment resolution DPW
4  is -- has taken an individual's property and is in the
5  process of discarding that property in violation of its
6  own bag-and-tag policy and the individual is attempting
7  to prevent the DPW officer from taking that property.
8     In that situation, would it be appropriate to
9  enforce 148(a) against the individual who is trying to
10 take their property back from DPW?
11    **ATTORNEY WANG:** Objection.  Same objections.
12    Go ahead.
13    **THE WITNESS:** The answer is yes.  And the onus would
14 rest on the Public Works employee as to whether their
15 work was lawful or within the procedures, et cetera.
16 But based on its face, yes.
17    **BY ATTORNEY KATOVICH:**
18 Q.  So if the Public Works employee told SFPD that
19 they were complying with their procedures and the
20 bag-and-tag policy, then SFPD would conclude that it was
21 appropriate to -- it could be appropriate to enforce
22 148(a)?
23    **ATTORNEY WANG:** Objection.  Same objections.
24    Go ahead.
25    **THE WITNESS:** Yes.

Page 144

1     **BY ATTORNEY KATOVICH:**
2  Q.  And SFPD doesn't make its own independent
3  determination about whether or not the DPW employee is
4  complying with its own policies?
5     **ATTORNEY WANG:** Same objections.
6     **THE WITNESS:** We -- yeah, we may.  We may make that
7  determination based on our own knowledge of their rules
8  and our observations.
9     **BY ATTORNEY KATOVICH:**
10 Q.  And are SFPD officers who are involved in HSOC
11 activities, are they provided with DPW's bag-and-tag
12 policy?
13    **ATTORNEY WANG:** Objection; calls for speculation.
14    **THE WITNESS:** I'd have to find out.
15    **BY ATTORNEY KATOVICH:**
16 Q.  Do you know if they are trained on DPW's
17 bag-and-tag policy?
18    **ATTORNEY WANG:** Same objections.
19    Go ahead.
20    **THE WITNESS:** I don't know, but I would have to find
21 out.
22    **BY ATTORNEY KATOVICH:**
23 Q.  And in this section that we just read, the
24 example provided is "during joint operations."
25    Does that refer to HSOC operations?