# EXHIBIT 42

## To

## Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

# In The Matter Of:

*Coalition on Homelessness, et al. v  
City and County of San Francisco, et al.*

*Leslie Chin Fong  
February 18, 2025*

*Behmke Reporting and Video Services, Inc.  
550 California Street, Suite 820  
San Francisco, California  94104  
(415) 597-5600*

Original File 44115Fong_NL.txt  
Min-U-Script® with Word Index

Case 4:22-cv-05502-DMR   Document 366-48   Filed 04/17/25   Page 3 of 4
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
Leslie Chin Fong
February 18, 2025

Page 57

1  the Police Department respond in order to facilitate
2  tent or other property removal?
3  A.  Can you repeat that, please?



17     Then, generally, how much time would you give
18  someone?
19  A.  It depends.  And it's different every
20  operation.
21  Q.  What would it depend on?
22  A.  Someone -- mm...
23     Okay.  So the question is, how much time before
24  PD gets involved?
25  Q.  Before you would ask PD to get involved.

Page 58



4     So how long would I wait before I ask PD to get
5  involved?
6     And I said, "It depends on the situation."
7     And you asked, "What does it depend on?"
8     It's really difficult for me to come up with a
9  very specific scenario.
10  Q.  What is the least amount of time you would give
11  someone before asking PD to step in?
12  A.  Hmm.  So, for me, what I view PD's role as is
13  not necessarily to enforce that the unhoused individuals
14  move their belongings, but more so that they are
15  assisting if DPW -- if they're -- if DPW is being
16  interfered with.  So I guess we're talking about a very
17  specific case where someone is deciding that they do not
18  want to move.
19     Again, I don't have a very specific time, but I
20  have been under the impression that if the location has
21  been noticed for 72 hours, there's not -- there's no
22  minimum time we can start immediately.
23     Does that happen?  Not often.  But if we are
24  going to a location that was not noticed, I've been
25  under the impression that 30 minutes.

Page 59

1  Q.  And how often are you at locations that are not
2  noticed?
3  A.  It happens.  I don't know how often, how many
4  times.
5  Q.  Under what circumstances are you at a
6  non-noticed location?
7  A.  Like, if we're done with -- if the areas that
8  were noticed are cleaned and there's a nearby
9  encampment, like around the corner, we may address that
10  area.
11  Q.  And who decides whether you go to that
12  non-noticed location?
13  A.  I may speak with David Nakanishi about it.
14  Yeah.
15  Q.  And between you and David, who makes the final
16  decision?
17  A.  David.
18  Q.  When someone at -- going back to an encampment
19  resolution.
20     When someone says they don't allow their
21  property to be removed, do you typically talk to the
22  person first?
23  A.  It depends on every situation, but I would say,
24  typically, yes.
25  Q.  And how do you try to talk to them?

Page 60

1  A.  I just try to explain why we're there, that
2  there are resources being offered, that DPW is going to
3  clean.
4  Q.  And who makes the decision if someone is
5  actively interfering with DPW?
6  A.  DPW.
7  Q.  You mentioned before that you would call PD if
8  someone was interfering; is that correct?
9  A.  Can you repeat that again?
10  Q.  Yeah.
11     You mentioned earlier that you have called PD
12  to intervene when someone was interfering.
13  A.  Mm-hmm.  Yes.
14  Q.  Is that correct?
15  A.  Yes, I have done that before.
16  Q.  Is it correct to say that you, as incident
17  commander, sometimes make a decision that someone is
18  interfering?
19  A.  No.  I'd say, ultimately, it's on each agency
20  and the individuals in the agency who deem that they
21  need assistance from PD.
22  Q.  And who makes the decision that someone should
23  be cited and arrested for interfering?
24     ATTORNEY GRADILLA: Objection; lacks foundation.
25     THE WITNESS: Who makes the decision -- your

Case 4:22-cv-05502-DMR   Document 366-48   Filed 04/17/25   Page 4 of 4

Coalition on Homelessness, et al. v
City and County of San Francisco, et al.

Leslie Chin Fong
February 18, 2025

Page 61

1  question is, who makes the decision on who gets cited
2  and who interferes?
3      BY ATTORNEY HERLITZ-FERGUSON:
4  Q.  Mm-hmm.
5  A.  Okay.  I mean, cited for what?
6  Q.  For interfering.
7  A.  Oh.
8      ATTORNEY GRADILLA: Same objection.
9      THE WITNESS: I don't -- I don't know, actually.  Or
10 I don't know who makes the decision on whether someone
11 gets cited or not.
12     BY ATTORNEY HERLITZ-FERGUSON:
13 Q.  Have you ever filled out a citizen's arrest
14 form?
15 A.  No.
16 Q.  What role do you play, as incident commander,
17 in providing medical care?
18 A.  I am a paramedic, so if it's the -- I can't
19 remember how many times, but at least one time it has
20 happened where it's an emergent case, such as an
21 overdose and someone isn't breathing.  I will provide
22 the initial medical care, but will call -- will contact
23 dispatch for an ambulance or for 911 resources.
24 Q.  How frequently do you feel that you're using
25 your paramedic training in your role as incident

Page 62

1  commander?
2  A.  Not very often.
3  Q.  Do you tell unhoused individuals that they have
4  to move their belongings within a certain amount of
5  time?
6      (Outside noise.)
7      ATTORNEY FREEMAN: Could you get someone to control
8  the noise?
9      ATTORNEY GRADILLA: Take a break?
10     ATTORNEY FREEMAN: I'm just observing we have a lot
11 of outside noise coming from somewhere.  Is there some
12 way to control that?
13     ATTORNEY GRADILLA: Yes.  But do you want to go off
14 the record or...
15     ATTORNEY HERLITZ-FERGUSON: Yes.  Let's take a
16 five-minute.
17     THE REPORTER: It is 12:02.
18     (Recess taken from 12:02 p.m. to 12:03 p.m.)
19     THE REPORTER: It's 12:03.
20     BY ATTORNEY HERLITZ-FERGUSON:
21 Q.  I'll restate my question.
22     Do you tell unhoused individuals that they have
23 to move their belongings by a certain time?
24 A.  I tell them that DPW is there to clean, that
25 there are resources available, but, yes, they do need to

Page 63

1  move so that DPW can clean.
2  Q.  And how much time do you give them to move
3  their belongings before DPW starts cleaning?
4  A.  It depends.
5  Q.  What does it depend on?
6  A.  Each operation.  I really am not able to say
7  how much time they're given.
8  Q.  If an individual comes up to you at the start
9  and asks, "When do I have to move my stuff by," what do
10 you say?
11     ATTORNEY GRADILLA: Objection; calls for
12 speculation.
13     You can answer.
14     THE WITNESS: If someone asks me, "How much time do
15 I have," I -- I generally answer with, "As soon as you
16 can."
17     BY ATTORNEY HERLITZ-FERGUSON:
18 Q.  Do you allow them to move all of their
19 belongings?
20 A.  If they want the items, yes.
21 Q.  Are there any belongings you do not let
22 individuals take with them?
23 A.  I guess I can piggyback on that.  I did want to
24 clarify a little bit on that last question.
25     I'm -- I'm not -- I'm not the one that's making

Page 64

1  the call on what they can or cannot take, but DPW has
2  the ultimate say on whether certain items can be on the
3  sidewalk or not.
4  Q.  And are there any belongings that you don't let
5  people take with them?
6  A.  Again, I don't not allow the clients to take
7  the items.
8  Q.  Let me clarify.
9      ==Are there any belongings that you advise==
10 ==clients to not take with them?==
11 ==A.  I mean, generally, this is done pretty -- like,==
12 ==a team with DPW.  Again, they have the ultimate say and==
13 ==the knowledge of their own policies and protocols.  But,==
14 ==like, if someone has a large mattress or large==
15 ==furniture, I would advise them and say that they==
16 ==probably wouldn't be able to take that.==
17 Q.  And what is your understanding for why they
18 would probably not be able to take that?
19 A.  I don't know DPW's specific protocol or policy
20 on that.
21 Q.  And do individuals ever ask you specifically
22 for more time?
23 A.  Yes.  Sometimes.
24 Q.  And under what circumstances do individuals get
25 more time to pack?