# EXHIBIT 45

To

Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

# In The Matter Of:

*Coalition on Homelessness, et al. v*
*City and County of San Francisco, et al.*

---

*Peter Rincon*
*February 19, 2025*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California  94104*
*(415) 597-5600*

Original File 44121Rincon_NL.txt
Min-U-Script® with Word Index

Case 4:22-cv-05502-DMR    Document 366-51    Filed 04/17/25    Page 3 of 6
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
Peter Rincon
February 19, 2025

Page 49

1  policy. Those are not our documents. We don't get that
2  training. That's for their workers, DPW, Department of
3  Public Waste [sic].
4  Q. So it's fair to say you have never --
5  A. It's fair to say I've never seen this in my
6  life until you handed it to me.
7  Q. Is it fair to say you've never been trained on
8  this policy?
9  A. I -- why should I? It's not our policy. I
10 don't work for DPW. That's for DPW workers from their
11 policy to be trained for that.
12 Q. Is it fair to say that you have not been
13 trained on this policy?
14     MR. GEORGE: Objection. Form. Asked and answered.
15     THE WITNESS: I don't work for DPW. I outreach.
16     BY MS. FERGUSON:
17 Q. Is it your understanding that no one from ERT
18 has been trained on this policy?
19 A. A hundred percent.
20 Q. Thank you.
21    I'd like to go back to page 2 of 4. Do you see
22 where it says "Pre-Removal notice shall be provided in
23 writing to individuals who are present and posted
24 conspicuously on or near the personal property that will
25 be removed"?

Page 50

1     MR. GEORGE: Are you just asking if he sees that?
2     MS. FERGUSON: Yeah.
3     MR. GEORGE: Okay.
4     THE WITNESS: I see this.
5     BY MS. FERGUSON:
6  Q. Does that statement describe one of your
7  responsibilities as an Outreach Specialist?
8     MR. GEORGE: Objection. Form.
9     THE WITNESS: It's saying, (as read): "Pre-removal
10 notice shall be provided in writing to individuals who
11 are present and posted conspicuously or" -- "on or near
12 the personal property that will be removed. This notice
13 shall be" -- I've never seen this now. This is -- is
14 this on the notification -- this wording verbatim?
15    BY MS. FERGUSON:
16 Q. I'm just asking about that first sentence if
17 that reflects --
18 A. We post it so the client can clearly see it,
19 and we hand it to them if they're there. That's what
20 the question is -- to asking me if that's what we do and
21 our position is; right?
22 Q. Correct.
23 A. Okay. I answered that question already.
24 That's what we do. We hand it to them and post it so
25 they can see it conspicuously so they can visualize it.

Page 51

1  Q. Thank you.
2     What is your understanding of where you should
3     post based on?
4        MR. GEORGE: Objection. Form.
5        THE WITNESS: Wherever it can be visible for the
6     client.
7        BY MS. FERGUSON:
8  Q. Did you undergo any training about what visible
9  posting is?
10 A. I believe it's common sense to where it be's --
11 where it puts something that would -- somebody, a human
12 being, with their eyes would visualize something posted.
13 Q. Did anyone give you specific instructions about
14 where and how to post?
15 A. Only to make sure it's visible, and if they're
16 there, hand it to them.
17 Q. And who gave you that instruction?
18 A. My supervisor, our director.
19 Q. Is your supervisor the same as the director?
20 Or two different --
21 A. No. Veronica Marin is my supervisor. Jose
22 Torres is my director.
23 Q. And they both gave you that instruction?
24 A. Yes.
25 Q. How?

Page 52

1     MR. GEORGE: Objection. Form.
2     THE WITNESS: Verbally, I believe.
3     BY MS. FERGUSON:
4  Q. Do you remember specifically what they said?
5  A. No.
6  Q. Do you remember when this was?
7  A. I cannot recall. I've been doing it for three
8  and a half years. I can't recall.
9  Q. Was it within the last six months? Within --
10 A. Nothing's changed, so therefore, I've been
11 doing it the same way I've been told the first time, is
12 make sure it's visual for the client. Leave one for
13 them if they want it.
14 Q. Anything else?
15    MR. GEORGE: Objection. Form.
16    THE WITNESS: No.
17    MS. FERGUSON: I'd like to present you with
18 Plaintiff's Exhibit 1221.
19    (Whereupon, Exhibit 1221 was marked for
20    identification.)
21    BY MS. FERGUSON:
22 Q. Have you seen a document like this before?
23 A. Yes.
24 Q. How many times?
25 A. Well, okay. ERT, we are assigned to do it,

Case 4:22-cv-05502-DMR   Document 366-51   Filed 04/17/25   Page 4 of 6
Coalition on Homelessness, et al. v                                                                    Peter Rincon
City and County of San Francisco, et al.                                                           February 19, 2025

Page 53

1  like you've asked, once a week. I do it every other
2  week. There's four of us on a team, so I do it every
3  other week. However, ERT gets this sent to us every
4  week, which has a map of the whole week's allocations of
5  where HSOC is going to be for the prior week.
6  Q. Do you know who creates this document?
7  A. I cannot say who does.
8  Q. Do you know who you received this document
9  from?
10 A. I believe it's -- it's -- would be DEM and HSA.
11 Q. Can you explain what this document shows?
12 A. It shows a map.
13 Q. What does it show a map of?
14 A. Of a location.
15 Q. What else?
16    MR. GEORGE: Objection. Form.
17    THE WITNESS: That's all I see. Of locations,
18 streets, addresses.
19    BY MS. FERGUSON:
20 Q. When you receive a document like this before
21 your posting shift --
22 A. Mm-hmm.
23 Q. -- how do you use this document?
24 A. I use that as a visual of where to -- what to
25 print, and that other document for the -- the

Page 54

1  notification document, this wording I put there.
2  Q. Looking at the map on this first page --
3  A. Yes.
4  Q. -- where would you physically post the notices?
5    MR. GEORGE: Objection. Form. Incomplete
6  hypothetical.
7    THE WITNESS: Wherever the clients' camp is and
8  where it's visual.
9    BY MS. FERGUSON:
10 Q. How many notices do you post?
11    MR. GEORGE: Objection. Form.
12    THE WITNESS: As many as I need to.
13    BY MS. FERGUSON:
14 Q. How do you know how many you need to?
15 A. I take a look at the location to see if I need
16 to go from front to back to a street or from one side of
17 the freeway to the other, and I notify each ends
18 visually.
19 Q. Looking at this map, could you mark --
20 A. I could not.
21 Q. Why not?
22 A. Because these are streets on this map, and
23 there's a highway there, and the streets are under those
24 highway. You can't mark under that.
25 Q. So where on this map would you mark?

Page 55

1  A. I wouldn't mark anything. I would go to those
2  locations via Google Maps.
3  Q. And then what?
4  A. I would notify whomever is there at those said
5  locations that are on that printed document you have
6  there in front of you.
7  Q. Would you put notices on any physical objects?
8  A. No.
9    MR. GEORGE: Objection. Form.
10    THE WITNESS: Only near the camp.
11    BY MS. FERGUSON:
12 Q. Where near the camp?
13 A. Wherever I could put it.
14 Q. Can you give me examples?
15 A. Anywhere I can put it where it's visual.
16 Q. Would you put it on a post?
17 A. A light pole, a fence.
18 Q. Where else?
19    MR. GEORGE: Objection. Form.
20    THE WITNESS: Wherever it's visual, ma'am.
21    BY MS. FERGUSON:
22 Q. Assuming you were going out to this location,
23 how many notices would you bring with you?
24 A. Enough.
25 Q. Could you provide an estimate?

Page 56

1  A. Enough. I bring at least 40 every time of each
2  location, Spanish and English.
3  Q. Is that 40 in English and 40 in Spanish?
4  A. Yes.
5  Q. And --
6  A. I hand out as many as I can. That's why I
7  bring that many, depending on how many folks are at that
8  said location, besides posting other ones on visual
9  spots that clients can see that are not there at their
10 spots.
11 Q. Is it fair to say that you bring English and
12 Spanish notices to each location you go to?
13 A. Yes, for a.m. and p.m. locations, both have
14 Spanish and English versions of that document.
15 Q. Once you post at a location, do you ever go
16 back and put up more notices?
17 A. No.
18 Q. Do you take photos of the notices that you
19 post?
20 A. Every time.
21 Q. Do you take photos of each and every notice
22 that you post?
23 A. Only the ones that I post, yes.
24 Q. And are you required to take photos of each and
25 every one?

Case 4:22-cv-05502-DMR   Document 366-51   Filed 04/17/25   Page 5 of 6
Coalition on Homelessness, et al. v
City and County of San Francisco, et al.
Peter Rincon
February 19, 2025

Page 57

1  A. Yes, of the ones that I post.
2  Q. And who requires you to do that?
3  A. My director.
4  Q. And how soon after you post it are you required
5  to take a photo?
6     MR. GEORGE: Objection. Form.
7     THE WITNESS: Immediately.
8     BY MS. FERGUSON:
9  Q. And has that always been a requirement?
10 A. Yes.
11    MR. GEORGE: Objection. Form.
12    BY MS. FERGUSON:
13 Q. Do you send a photo of every notice you post?
14 A. Yes.
15 Q. And who do you send it to?
16 A. I send that in an email that has my director
17 and DEM and HSA attached to it.
18 Q. Does this mean that the City should have a
19 photo of every notice that you've posted?
20 A. Yes.
21    MR. GEORGE: Objection. Form. Foundation. Calls
22 for speculation.
23    BY MS. FERGUSON:
24 Q. Have you ever forgotten to take a photo of a
25 notice you posted?

Page 58

1  A. No.
2  Q. Has someone else ever forgotten to take a
3  photo?
4     MR. GEORGE: Objection. Calls for speculation.
5     THE WITNESS: I couldn't tell you if they -- if I
6  didn't do it, I couldn't tell you.
7     MS. FERGUSON: I'd like to present you with
8  Exhibit 1222.
9     (Whereupon, Exhibit 1222 was marked for
10    identification.)
11    BY MS. FERGUSON:
12 Q. Do the documents in this image generally
13 reflect the type of notices you post?
14    MR. GEORGE: Objection. Form. Calls for
15 speculation.
16    THE WITNESS: They look like this form that's
17 sitting in front of us.
18    BY MS. FERGUSON:
19 Q. Can you identify the dates noticed here?
20 A. Hardly. What does that say? January 12, '23?
21 Okay. What was your question?
22 Q. Do you see any other dates?
23 A. January 26th.
24 Q. Is it common to have notices from different
25 dates posted at the same time?

Page 59

1     MR. GEORGE: Objection. Calls for speculation.
2     THE WITNESS: Only if those dates pertain to
3  operations that are twice in one week of those
4  locations.
5     BY MS. FERGUSON:
6  Q. So looking here, and you mentioned the first
7  notice is from January 12th, 2023, and the second was
8  from January 26th, 2023 --
9  A. Okay.
10 Q. -- have you seen something like this before
11 where two notices are up for different weeks?
12    MR. GEORGE: Objection.
13    THE WITNESS: What is your question that you're
14 asking, though? If I've seen two different dated
15 location notifications at once?
16    BY MS. FERGUSON:
17 Q. At the same site at the same time?
18 A. Only if they're for the operations being done
19 at that location twice in that one week.
20 Q. Have you ever taken down old notices?
21 A. I believe they are to be took down so the new
22 notifications could be put up so people don't get
23 misinterpreted for what date the HSOC is actually going
24 to be there.
25    I take them down and put up new notifications

Page 60

1  if there's any old that I can visually see so no one's
2  misunderstanding the information they see on the wall.
3  Q. When do you take down previous notices?
4     MR. GEORGE: Objection. Form.
5     THE WITNESS: I can't recall when. Do you have a
6  specific date?
7     BY MS. FERGUSON:
8  Q. Is it your practice to take down previous forms
9  when you are posting new forms?
10 A. Yes.
11 Q. Do you see that as your responsibility?
12 A. Yes.
13    MR. GEORGE: Objection. Form.
14    BY MS. FERGUSON:
15 Q. Mr. Rincon, earlier, we talked about notice --
16 the notice looking different than it does today.
17    Are you aware of when the notice form changed?
18 A. I cannot recall.
19 Q. Do you recall any conversations that you had
20 with your supervisor about the notice form being
21 changed?
22    MR. GEORGE: Objection. Form.
23    THE WITNESS: No, we don't -- we get that -- they
24 get that information, if you need that, from DEM. And
25 if they do get that information of anything changing

Case 4:22-cv-05502-DMR   Document 366-51   Filed 04/17/25   Page 6 of 6

Coalition on Homelessness, et al. v
City and County of San Francisco, et al.

Peter Rincon
February 19, 2025

Page 81

1  A.  I know.  I can't recall specifically.
2  Q.  Have you ever encountered an individual who was
3    allowed to go to shelter with more than two bags of
4    property?
5  A.  I can't recall that.  It's two bags is two
6    bags.  That's transport.  They can only carry two bags
7    per client.
8  Q.  Has it -- have you seen transport?
9  A.  You'd have to ask transport.
10 Q.  I'm just asking --
11 A.  I haven't seen that.  I've seen two bags go
12   with each client.
13 Q.  Okay.  So your testimony is that you have not
14   witnessed with your own eyes someone going into
15   transport with more than two bags of property?
16 A.  I have not witnessed people going to transport
17   with more than two bags of property.
18 Q.  Now I'd like to just clarify my understanding
19   with respect to the posting notice.
20 A.  Yes.
21 Q.  I'd like to go back to Plaintiff's
22   Exhibit 1221.
23      So if you look at the bottom map, it's dated
24   January 31st, '23.  Okay.  So let's just say you get
25   this map.  You're responsible for posting notice here.

Page 82

1    You show up with your 40 notices in each language and
2    there are no encampments and no individuals present.
3    Where would you put up these notices?
4       MR. GEORGE:  Objection.  One second.
5       Objection.  Form.  Incomplete hypothetical.
6       THE WITNESS:  On each end of each street, of a
7    street in each corner.
8       BY MS. FERGUSON:
9  Q.  Could you physically mark on that map where you
10   would put it?
11 A.  Let me look at this map for a moment, please.
12 Q.  Sure.  Take your time.
13 A.  How about you go from each end of Willow and
14   post it on each corner of Willow from one end to the
15   other, also Eddy and the in-between street right there
16   where it's highlighted.  Those locations on each end
17   would get posted.
18 Q.  Could you physically put x marks?
19 A.  Yes, I will.
20 Q.  Thank you so much.
21 A.  Right here.
22 Q.  And so you show up, you have 40 in each
23   language.  How many would you put up?
24 A.  You just said no one was there.  So I wouldn't
25   put up -- I would put up two on each corner:  Spanish,

Page 83

1    English; Spanish, English; Spanish English; Spanish,
2    English and wouldn't leave none else because you just
3    said that there was no one at our location.  If I have,
4    in fact, pulled up to a location and no one is there, I
5    would still post it.
6  Q.  Okay.  And say we're talking about the same
7    hypothetical and there are five people.
8  A.  Yes.
9  Q.  Would it be the case you would put the postings
10   in the same spots and then give out five notices?
11 A.  Yes.
12      MR. GEORGE:  Objection.  Form.  Incomplete
13   hypothetical.
14      THE WITNESS:  Yes, I would still hand them notices
15   and still notify those exact locations and still post
16   them -- if the client wants me to hand it to them.
17      BY MS. FERGUSON:
18 Q.  And if there were -- so we assumed there were
19   no physical encampments.  If there was one encampment in
20   the middle of Eddy Street, how would that change how
21   many you post?
22      MR. GEORGE:  Objection.  Form.  Incomplete
23   hypothetical.
24      THE WITNESS:  It wouldn't change.  I would still
25   notify all those other locations.

Page 84

1       BY MS. FERGUSON:
2  Q.  You would put the same number?
3  A.  In every location, as well as the client that
4    you said.  If, hypothetically, it was one tent, I would
5    still hand that individual and go to those other
6    locations and still notify if there was no other people
7    there.
8  Q.  Okay.  So is it fair to say that the number of
9    individuals present is what changes how many notices?
10 A.  No, it does not change.
11 Q.  It does not change?
12 A.  No.
13 Q.  What time does a morning resolution typically
14   finish?
15 A.  11:00 a.m.
16 Q.  Have you ever participated in a resolution
17   that's wrapped up sooner?
18 A.  What do you mean wrapped up sooner?  If we
19   wrapped up sooner, that means we were at a resolution
20   and we just got done early.
21 Q.  Yes.  Have you ever been at a resolution that
22   you were done early at?
23 A.  Yes.
24 Q.  What happens if the team finishes earlier?
25      MR. GEORGE:  Objection.  Form.