# EXHIBIT 122

## To
## Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

1   EMERY CELLI BRINCKERHOFF ABADY
    WARD & MAAZEL LLP
2   Zoe Salzman, *admitted pro hac vice*
3   600 Fifth Avenue
    New York, New York
4   Telephone: (212) 763-5000
    zsalzman@ecbawm.com
5
6   *Attorneys for Plaintiffs*
7
                    **UNITED STATES DISTRICT COURT**
8                **NORTHERN DISTRICT OF CALIFORNIA**
                        **OAKLAND DIVISION**
9

10  COALITION ON HOMELESSNESS, et al.,        Case No. 4:22-cv-05502-DMR

11                          Plaintiffs,        **DECLARATION OF CARLOS**
                    v.                         **WADKINS**
12
    CITY AND COUNTY OF SAN FRANCISCO,
13  et al.,
                                               **Judge:** The Hon. Donna M. Ryu
14                          Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Carlos Wadkins, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a graduate student at the UC Santa Cruz and former employee of Coalition on Homelessness ("the Coalition"), a plaintiff in this case.  .If called upon to testify, I could and would testify to the truth of the facts in this declaration competently.

2.    From January 2021 to May 2022, I worked at the Coalition on as a human rights organizer.  My goal was to build networks of support for unhoused people, connect them to public and social service programs, and help provide for their basic survival needs.  The goal of this work was about helping unhoused people improve their quality of life and advocating for dignified shelter, water and hygiene access, and permanent housing solutions in San Francisco. My work with the Coalition included outreach to unhoused community members. This involved meeting unhoused people at tent encampments, at their vehicles, and in shelters. I gave unhoused people referrals and spoke with them about resources I could connect them to.

3.    During my time at the Coalition, I distributed Know Your Rights material, the Street Sheet which contained resources and how to join the Coalition's workgroup meetings, a variety of flyers and pamphlets (about the Street Sheet, campaigns, resources, and services like inclement weather shelters), and my contact information during outreach.

4.    From limited resources, I would distribute supplies like tents, harm reduction kits, sleeping bags, hand sanitizer, socks, gloves, and water.

5.    Some of the other services and referrals I provided to homeless people included housing access via coordinated entry appointments, shelter access through calls to the Homeless Outreach Team ("HOT"), ensuring someone was "document ready" to provide necessary information needed for services, informing people on how to replace necessary documents like identification, completing homeless verification forms to ensure a person qualified for services, filling out administrative claims, providing follow up and support when an unhoused person had a dispute with police or private security, directing people to legal assistance to address quality of life tickets, and helping them get access to wash services and food.

6. The City's taking of unhoused people's belongings made my work to build community and resource networks and provide services to unhoused people much more difficult.

7. Providing referrals, developing membership, informing people of their rights and resources, often required follow up. Due to the City displacing and destroying belongings across the City, I struggled to locate our base and members. The City frequently destroyed unhoused people's phones and laptops, making it impossible to follow up with them electronically. It was also harder to find people in person. And once an encampment is destroyed, so too are the social ties and community built. People would understandably not remain in the same location because of fear of getting swept and their belongings taken again. The City would repeatedly target the same areas especially larger encampments where I would expect to locate people previously.

8. Other times, I would direct another Coalition member to follow up with a person, but they could not be able to located due to the City's sweeps. Also, I would make calls to the Homeless Outreach Team for unhoused people to access shelter but unhoused people would often report that calls to the HOT team failed because they were swept before HOT would arrive.

9. The City also destroyed unhoused people's vital records and paperwork necessary to access services. We try to keep copies of homeless verification forms to replace taken ones for this very reason, but we do not have copies of all the forms, records, and paperwork unhoused people need to access services. Artists and writers have been subject to sweeps where their supplies were taken, limiting their ability to submit to Coalition sponsored events and publications like the Street Sheet. Due to rampant property destruction including phones and laptops and constant displacement, we were limited to what training offerings we could make as people needed to stay with their belongings rather than attend a training.

10. Due to the City's repeated property destruction, there was a growing unmet need for basic supplies that the Coalition would provide. I would field calls to coordinate donations and reach out to our donor and mutual aid networks to get more donations. The City's property destruction, particularly of basic necessities, is also traumatizing and inhibits our ability to engage someone in crisis to connect them in services or engage in larger campaigns.

2

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Felton, California on February 5, 2025.

_____
Carlos Wadkins