**REDACTED VERSION OF DSOCUMENT PROVISIONALLY FILED UNDER SEAL**

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-3857 (Wang)
(415) 554-6762 (Murphy)
(415) 554-3870 (Gradilla)
(415) 554-4223 (George)
(415) 355-3304 (Mills)
Facsimile: (415) 554-4699
E-mail: edmund.wang@sfcityatty.org
kaitlyn.murphy@sfcityatty.org
miguel.gradilla@sfcityatty.org
john.george@sfcityatty.org
steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

[Additional Counsel on next page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: May 8, 2025<br>Time: 1:00 p.m.<br>Judge: Hon. Donna M. Ryu<br>Place: Courtroom 4 – 3rd floor<br>1301 Clay Street<br>Oakland, CA 94612<br><br>Trial Date: July 28, 2025 |

WARREN METLITZKY, State Bar #220758
JESSICA ELAINE LANIER, State Bar #303395
NATHAN THEOBALD, State Bar #328837
CONRAD METLITZKY KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     (415) 343-7103 [Metlitzky]
               (415) 343-7100 [Lanier & Theobald]
Facsimile:     (415) 343-7101
E-mail:        wmetlitzky@conmetkane.com
               jlanier@conmetkane.com
               ntheobald@conmetkane.com

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

I. The Court Should Not Consider Undisclosed Allegations Of Unlawful Conduct. .1

II. Summary Judgment Is Required Because The Court Lacks Subject Matter Jurisdiction. ...........................................................................................................3

A. Individual Plaintiffs Do Not Support Jurisdiction. ......................................3

B. Coalition Fails To Justify Jurisdiction. ........................................................5

1. Coalition Fails To Establish Associational Standing. .......................5

a. Coalition Lacks The Requisite Indicia Of Membership. .....5

b. No Coalition "Member" Supports Jurisdiction. ...................6

c. Coalition Fails *Its* Burden At The Third Prong. ..................8

2. Coalition Fails To Establish Organizational Standing. ....................8

III. Plaintiffs Have Not Shown They Are Entitled to Equitable Relief. ......................11

IV. There Is No Dispute Of Material Fact Regarding Plaintiffs' Constitutional Claims. .................................................................................................................11

A. Coalition Cannot Bring Derivative Section 1983 Claims And Members' Claims Are Time-Barred. ............................................................................11

B. Plaintiffs Have Not Shown Their Own Fourth Amendment Violations....12

C. Plaintiffs Fail To Establish A Dispute Regarding Alleged Due Process Violations. .............................................................................................14

D. Plaintiffs Fail to Establish A Dispute Regarding *Monell* Liability............15

1. No Material Dispute of An Unlawful Custom. ..............................15

2. No Material Dispute Of A Failure to Train. .................................16

3. No Material Dispute Of Deliberate Indifference To Plaintiffs' Rights. ....................................................................................17

CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarez v. Hill*
667 F.3d 1061 (9th Cir. 2012) ....................4

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*
2025 WL 820782 (N.D. Cal. Mar. 14, 2025)....................9

*Anti Police-Terror Project v. City of Oakland*
477 F. Supp. 3d 1066 (N.D. Cal. 2020) ....................16

*Arizona Alliance for Retired Americans v. Mayes*
117 F.4th 1165 (9th Cir. 2024) ....................9

*Associated Gen. Contrs. of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*
713 F.3d 1187 (9th Cir. 2013) ....................6

*Baker v. Carr*
369 U.S. 186 (1962)....................5

*Banks v. Booth*
468 F. Supp. 3d 101 (D.D.C. 2020)....................16

*Bayer v. Neiman Marcus Grp., Inc.*
861 F.3d 853 (9th Cir. 2017) ....................4

*Bell v. Williams*
108 F.4th 809 (9th Cir. 2024) ....................16

*Berry v. Hennepin Cnty.*
No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797 (D. Minn. July 22, 2024)....................5, 15

*Brady v. Maryland*
373 U.S. 83 (1963)....................16

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*
130 F.4th 757 (9th Cir. 2025) ....................11

*Cetacean Cmty. v. Bush*
386 F.3d 1169 (9th Cir. 2004) ....................12

*City of Canton v. Harris*
489 U.S. 378 (1989)....................16

*City of L.A. v. Lyons*
461 U.S.95 (1983)....................4, 11

*Clapper v. Amnesty Int'l*
568 U.S. 398 (2013)....................9, 10

*Coleman v. Quaker Oats Co.*
232 F.3d 1271 (9th Cir. 2000) ....................8, 15

*Connick v. Thompson*
563 U.S. 51 (2011)....................16

*Doe v. City of San Diego*
35 F. Supp. 3d 1233 (S.D. Cal. 2014)....................16

*Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*
2018 WL 5879810 (N.D. Cal. Nov. 7, 2018) ....................2

*F.D.A. v. All. for Hippocratic Med.*
602 U.S. 367 (2024)....................9, 10

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*
374 F.3d 840 (9th Cir. 2004) ....................3

*Freedom Found. v. Int'l Bhd. of Teamsters Loc. 117*
2024 WL 5252228 (9th Cir. Dec. 31, 2024)....................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000)....................4

*Garcia v. City of L.A.*
2020 WL 6586303 (C.D. Cal. Sept. 15, 2020) ....................8, 11, 12

*Get Loud Arkansas v. Thurston*
2024 WL 4142754 (W.D. Ark. Sept. 9, 2024)....................9

*Gordon v. Cnty. of Orange*
6 F.4th 961 (9th Cir. 2021) ....................15

*Havens Realty Corporation v. Coleman*
455 U.S. 363 (1982)....................8, 9

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................6

*In re Navy Chaplaincy*
697 F.3d 1171 (D.C. Cir. 2012)....................3

*In re Zappos.com, Inc.*
888 F.3d 1020 (9th Cir. 2018) ....................3

*Index Newspapers LLC v. City of Portland*
474 F. Supp. 3d 1113 (D. Ore. 2020) ....................3

*Jarvis v. Regan*
833 F.2d 149 (9th Cir. 1987) ....................4

*Johnson v. Warden*
No. 2:23-CV-00908-JDP (PC), 2024 WL 170147 (E.D. Cal. Jan. 16, 2024)............................17

*K.J.P. v. Cnty. of San Diego*
621 F. Supp. 3d 1097 (S.D. Cal. 2022)..............................................................................16

*Keenan v. Allan*
91 F.3d 1275 (9th Cir. 1996) ..........................................................................................11

*Kenney v. Fruit of the Earth, Inc.*
2023 WL 3565076 (S.D. Cal. Apr. 3, 2023)........................................................................11

*Key v. Qualcomm Inc.*
129 F.4th 1129 (9th Cir. 2025) ..........................................................................................2

*La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*
2008 WL 11411732 (C.D. Cal. Aug. 18, 2008).....................................................................6

*La Union Del Pueblo Entero v. Abbott*
2024 WL 4488082 (W.D. Tex. Oct. 11, 2024).......................................................................9

*Larez v. Holcomb*
16 F.3d 1513 (9th Cir. 1994) ..........................................................................................13

*Lavan v. City of L.A.*
693 F.3d 1022 (9th Cir. 2012) ...........................................................................3, 5, 17

*Learning Tech. Partners v. Univ. of the Incarnate Word*
2016 WL 344881 (N.D. Cal. Jan. 28, 2016).........................................................................2

*Levald, Inc. v. City of Palm Desert*
998 F.2d 680 (9th Cir. 1993) ..........................................................................................12

*Levine v. Johanns*
2006 WL 8441742 (N.D. Cal. Sept. 6, 2006) ........................................................................3

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992).......................................................................................................10

*Lukovsky v. City & Cnty. of San Francisco*
535 F.3d 1044 (9th Cir. 2008) ........................................................................................12

*March for Our Lives Idaho v. McGrane*
697 F. Supp. 3d 1029 (D. Idaho 2023) ...........................................................................6, 9

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012) ............................................................................................3

*Mi Familia Vota v. Fontes*
129 F.4th 691 (9th Cir. 2025) ...........................................................................................7

*Mills v. City of Covina*
921 F.3d 1161 (9th Cir. 2019) ....................................................................................12

*Miranda v. City of Cornelius*
429 F.3d 858 (9th Cir. 2005) ......................................................................................13

*Monell v. Department of Soc. Svcs.* ...........................................................................1, 15, 18

*N.B. ex rel. Peacock v. Distr. of Columbia*
682 F.3d 77 (D.C. Cir. 2012).........................................................................................3

*Naser v. Met. Life Ins. Co.*
2013 WL 4017363 (N.D. Cal. July 31, 2013).................................................................2

*Native Vill. of Nuiqsut v. BLM*
9 F.4th 1201 (9th Cir. 2021) .........................................................................................4

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*
210 F.3d 1099 (9th Cir. 2000) ....................................................................................14

*O'Shea v. Littleton*
414 U.S. 488 (1974)....................................................................................................11

*Ollier v. Sweetwater Union High Sch. Dist.*
768 F.3d 843 (9th Cir. 2014) .........................................................................................1

*OPM v. AFGE*
-- S.Ct. --, 2025 WL 1035208 (2025) ..........................................................................9

*Oregon Advocacy Center v. Mink*
322 F.3d 1101 (9th Cir. 2003) ...................................................................................5, 6

*Pitts v. Terrible Herbst, Inc.*
653 F.3d 1081 (9th Cir. 2011) .......................................................................................5

*Pottinger v. Miami*
720 F. Supp. 955 (S.D. Fla. 1989) .................................................................................5

*Price v. Sery*
513 F.3d 962 (9th Cir. 2008) .......................................................................................16

*Ramirez v. U.S. Immigr. and Customs Enf't*
338 F. Supp. 3d 1 (D.D.C. 2018).................................................................................3, 5

*Recchia v. City of L.A. Dep't of Animal Servs.*
889 F.3d 553 (9th Cir. 2018) .......................................................................................13

*Roe v. City of New York*
151 F. Supp. 2d 495 (S.D.N.Y. 2001) ............................................................................3

*Rucker v. City of Oakland*
39 F.3d 1188, 1994 WL 594798 (9th Cir. Oct. 31, 1994) ....................12

*S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Justice*
Case 2024 WL 5153170 (D.S.C. Dec. 18, 2024)....................9

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009)....................6, 7

*Tanner-Brown v. Haaland*
105 F.4th 437 (D.C. Cir. 2024)....................8

*Torres v. United States Dep't of Homeland Sec.*
411 F. Supp. 3d 1036 (C.D. Cal. 2019) ....................4

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021)....................3, 6, 8

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) ....................15

*United States v. Howard*
480 F.3d 1005 (9th Cir. 2007) ....................4

*United States v. Sanchez-Gomez*
584 U.S. 381 (2018)....................4

*Wallace v. Kato*
549 U.S. 384 (2007)....................12

*WildEarth Guardians v. U.S. Dep't of Agric.*
795 F.3d 1148 (9th Cir. 2015) ....................9

*Yesue v. City of Sebastopol*
2024 WL 4876953 (N.D. Cal. Nov. 22, 2024) ....................9

**Constitutional Provisions**

U.S. Const.
Article III ....................11, 12
Amend. IV ....................8
Amend. XIV, § 1....................8

**Federal Statutes**

42 U.S.C. § 1983....................6, 8, 9, 11, 12, 13

**Rules**

Fed. R. Civ. P. 37(c)(1)....................2

## INTRODUCTION

This case, which is not and never has been a class action, boils down to two individuals and a political advocacy group without actual members. None of these three Plaintiffs have standing. Cronk and Donohoe are permanently housed—disproving any deliberate indifference to their rights—and their vague, unsubstantiated and attenuated fears of future property destruction cannot support jurisdiction. The Coalition also lacks standing. Its claimed organizational injuries do not exist and, regardless, find no support in case law. Similarly, its attempt to rely on associational standing fails for several independent reasons. Coalition lacks the indicia of members, its few identified "members" cannot support jurisdiction, and those "members'" participation is necessary in this case.

Plaintiffs fare no better on the merits. Even at this late stage, Plaintiffs fail to meet their burden to show even a single identifiable *predicate* constitutional violation, relying instead on alleged violations not properly identified in discovery. Rather, they start (and end) their argument with *Monell*, contending the City has an unconstitutional custom or practice. That puts the cart before the horse. Plaintiffs still have not provided—and the Court and City still lack—basic information about the dates, times, and locations of operations Plaintiffs allege support their predicate claims, as well as specific provisions of the Bag & Tag Policy the City allegedly violated. Rather, the undisputed record shows no Plaintiff experienced *unlawful* property destruction. As for *Monell*, the record reflects that the City trains extensively on its Bag & Tag Policy, and there is no widespread custom of actual property destruction in violation of the constitution. The Court should enter judgment for the City.

## ARGUMENT

### I. The Court Should Not Consider Undisclosed Allegations Of Unlawful Conduct.

Mandatory disclosure avoids exactly the "surprise" and "ambush" Plaintiffs create here. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). Plaintiffs' Opposition relies on (1) new facts and declarations not properly disclosed, and (2) allegations of unlawful conduct not identified as unlawful in written discovery. There have been 2,382 HSOC resolutions since June 2020 and 1,302 JFO operations since May 24, 2023. Mot. 30:8-20. This case is not—and cannot be—about each one. Even if the Court accepts that Coalition may proceed on behalf of its members (it should not, *see infra*), the City needs to know which *specific* instances—of the thousands that occurred—

Plaintiffs rely on. Plaintiffs do not deny their obligation to identify *every* unlawful instances of property destruction with specificity. ECF Nos. 350-24, at 20; 350-31, at 4. And yet the Opposition relies on undisclosed incidents. The Verner-Crist and Illa Declarations contain only undisclosed incidents. Herring's Declaration relies on incidents absent from interrogatory responses and not disclosed in his report. In fact, the overwhelming majority of Plaintiffs' relied-upon instances are not in their written discovery responses. Citing *one single case*, Plaintiffs contend they are excused from supplementing interrogatories because they produced documents and the City deposed witnesses. Opp. 10:13-16. This is a classic "ambush," which Northern District courts routinely reject.[1]

Complete responses to the City's interrogatories are critical. In depositions, observers confirmed that just producing a document concerning an operation did not necessarily indicate unlawful destruction. Ex. 64, Illa Depo. 151:13-23; Ex. 65, Verner-Crist Depo. 134:11-20.[2] Plaintiffs also forbade observers—*based on privilege*—from identifying which of the many operations will actually be at issue during trial (Ex. 65 at 130:23-133:5), and admit they observed the City complying with the Bag & Tag Policy. ECF No. 350-22, No. 20. Thus, the City cannot assume violations at each operation and can only rely on Plaintiffs' written responses to identify which of the thousands of operations are at issue. Plaintiffs cannot rely on strategically (and deliberately) withheld information. All undisclosed evidence[3] must be excluded. Fed. R. Civ. P. 37(c)(1); *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025) (sanctions are "self-executing" and "automatic").

[1] *See Naser v. Met. Life Ins. Co.*, 2013 WL 4017363, at *6 (N.D. Cal. July 31, 2013) (failure deprives party of meaningful deposition); *Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*, 2018 WL 5879810, at *2 (N.D. Cal. Nov. 7, 2018) (non-disclosure prevents "engag[ing] in greater discovery"); *Learning Tech. Partners v. Univ. of the Incarnate Word*, 2016 WL 344881, at *3 (N.D. Cal. Jan. 28, 2016) (deposition no substitute).

[2] All exhibit references are to the Declaration of Steven Mills in Support of the Reply.

[3] Plaintiffs did not disclose incidents from Reem (ECF No. 366-21), Stephenson (ECF No. 366-22), Melodie (ECF No. 366-20), Verner-Crist (ECF No. 366-3), Illa (ECF No. 366-5), and Herring (ECF No. 366-2) in written discovery. ECF Nos. 350-24, at 20; 350-31, at 4. Herring and Cutler (ECF No. 366-129) were withdrawn as fact witnesses (compare ECF Nos. 350-66 with 350-67) and Ducharme (ECF No. 366-47) was never disclosed. *See* ECF No. 350-67.

**II. Summary Judgment Is Required Because The Court Lacks Subject Matter Jurisdiction.**

**A. Individual Plaintiffs Do Not Support Jurisdiction.**

Cronk and Donohoe have always lacked standing because any future injury is too attenuated. Plaintiffs argue "'[s]ubstantial risk,' not 'certainly impending' harm is all that is needed" (Opp. 10:23-24), but Plaintiffs are mistaken. "[A] material risk of future harm can satisfy the concrete-harm requirement," only when "the risk of harm is sufficiently imminent *and* substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (emphasis added). Even if "certainly impending" and "substantial risk" are different tests, injuries relying upon an "attenuated" and "speculative chain of possibilities" are insufficient. ECF No. 281 at 23; Mot. 6:1-18.

The opposition's cases recognize "standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (finding standing based on lawful conduct); *Roe v. City of New York*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001) (same); *cf. Lavan v. City of L.A.,* 693 F.3d 1022, 1031 (9th Cir. 2012) (not recognizing right to leave possessions in public). Here, Cronk and Donohoe lack standing because their claimed injury relies on engaging in illegal lodging. Recognizing that, Cronk and Donohoe try to create a factual dispute about their housing status,[4] but provide no evidence disputing that they rejected a tiny home and were illegally lodging on public property when this case began. Mot. 6:25-7:18. They also offer no evidence that they would have been subjected to property destruction if they acted lawfully or accepted available services. Nor do they meaningfully dispute the multiple contingencies within their control that would allow them to avoid property destruction. Mot. 7:6-23; ECF No. 281 at 23.[5]

[4] The City's declarations based on business records concerning their housing status are appropriate because they "could be presented in an admissible form at trial." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). The City produced all housing and benefit data relevant to members. Plaintiffs distort the CAAP Director's testimony. He testified people discontinue benefits for different reasons so he would have to speculate about particular individuals. ECF No. 366-152 at 103:7-108:23. Plaintiffs speculation about being unhoused again is inadmissible. FRE 602, 701.

[5] This case is distinguishable from those Plaintiffs cite where there were no hypothetical contingencies related to prohibited conduct. *See generally Levine v. Johanns*, 2006 WL 8441742 (N.D. Cal. Sept. 6, 2006) (intent to consume food); *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) (use of data already happening); *In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) (undisputed plaintiffs subject to process); *N.B. ex rel. Peacock v. Distr. of Columbia*, 682 F.3d 77 (D.C. Cir. 2012) (continuing to seek coverage); *Index Newspapers LLC v. City of Portland*, 474 F. Supp. 3d 1113 (D. Ore. 2020) (continuing dispersal of protest observers).

Alternatively, their claims are moot because Cronk and Donohoe are permanently housed and disclaim any future intention to be homeless or store property on the street. Mot. 7:24-8:12. In passing, they argue their injuries are capable of repetition, yet evade review. Opp. 24:19-22. Not so. "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). Moreover, "Plaintiffs implicitly acknowledge that the case is moot by arguing . . . an *exception* to mootness." *Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). Plaintiffs cannot show the elements for a mootness exception, which "applies only in exceptional situations," *City of L.A. v. Lyons*, 461 U.S.95, 109 (1983), and exists "only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018). There is no assertion the challenged action is too short to be fully litigated and Plaintiffs "have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity" without relying on "[s]peculative contingencies." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). Here, it is speculative to claim Cronk and Donohoe—who are permanently housed—will once again illegally lodge on the street. Courts must "assume that '[litigants] will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct." *Sanchez-Gomez*, 584 U.S. at 391.

Contrary to the opposition's contention that an ongoing policy precludes mootness (Opp. 24), the "existence of an ongoing policy is insufficient to establish that a plaintiff challenging that policy has standing to attack all its future applications." *Bayer*, 861 F.3d at 868. The Supreme Court rejected the "functional class action" approach Plaintiffs invoke here since there is no "freestanding exception to mootness outside of the class action context," and "courts may not 'recognize . . . or "create *de facto* class actions at will.'" *Sanchez-Gomez*, 584 U.S. at 387, 389-90.[6] Reliance on the inherently transitory

[6] Plaintiffs rely on *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019), which quotes *United States v. Howard*, 480 F.3d 1005, 1010 (9th Cir. 2007), and involved pretrial confinement. *Howard* has been limited to criminal pretrial proceedings, *Alvarez v. Hill*, 667 F.3d 1061, 1065 (9th Cir. 2012), and *Sanchez-Gomez* rejected the reasoning underpinning *Howard*.

nature of homelessness to reach the same result also misses the mark since the "inherently transitory" exception to mootness "does not apply outside of the class action context." *Ramirez v. U.S. Immigr. and Customs Enf't*, 338 F. Supp. 3d 1, 35 (D.D.C. 2018); *see, e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (class action); *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989) (same). The court should disregard Herring's irrelevant opinion about the transitory nature of homelessness (which another court excluded) because he [REDACTED] *Berry v. Hennepin Cnty.*, No. 20-cv-2189 (ECT/JFD), 2024 WL 3495797, at *23 (D. Minn. July 22, 2024); Ex. 66, Herring Depo. 48:18-49:1, 272:20-273:14. Plaintiffs' claim that the "inherently transitory exception is not limited to class actions," relies on *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1117-18 (9th Cir. 2003), but that case is premised on reasoning disavowed by the Supreme Court in *Sanchez-Gomez* and is no longer good law. Summary judgment must be granted.[7]

**B. Coalition Fails To Justify Jurisdiction.**

**1. Coalition Fails To Establish Associational Standing.**

**a. Coalition Lacks The Requisite Indicia Of Membership.**

Coalition's evidence fails to establish associational standing. The indicia of membership include whether members elect Coalition's leadership, serve on its leadership, and finance its activities (including litigation). Mot. 9:21-28. Being a "voice" and allowing individuals to share their stories is not enough. *Id.* at 11:2-10. Coalition does not dispute *any* of the key facts showing it lacks the requisite indicia: (1) its "members" are not funding this litigation; (2) members cannot elect directors; (3) [REDACTED] (4) [REDACTED] (5) Coalition cannot identify when an unhoused member last selected a staff member; (6) its "membership" is so amorphous "members" may not know they are members; (7) many identified "members" never participated in any meeting; (8) many "members" are unaware of any rights or control they purportedly have; (9) "members" had no idea Coalition was invoking their

[7] The political question doctrine is an independent bar. Mot. 5:26-28. Since it is a "function of the separation of powers" it cannot be waived, *Baker v. Carr*, 369 U.S. 186, 210 (1962), and Plaintiffs' argument concerns waiver on appeal. *Lavan v. City of L.A.,* 693 F.3d 1022 (9th Cir. 2012) sets no standards and was wrongly decided. Mot. 23:23-28.

rights to justify this lawsuit; (10) Coalition has no agreement to represent individuals; and (11) it did not discuss remedies with members. Mot. 9:10-11:1; 9:19-20, 10:11-18, 10:26-28;11:18-25.

Coalition's authority shows why associational standing fails on these undisputed facts. *Mink* supports the City's position that representative suits require statutory authority because, in that case, Congress authorized, funded, and intended to confer standing. *Mink*, 322 F.3d at 1105, 1110; *see also Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 336-37 (1977) (state created the agency charged with duty to protect the industry); *TransUnion*, 594 U.S. at 425 (respecting Congress' decision to confer cause of action). Unlike *Mink*, Coalition does not have statutory authority under Section 1983 (*see infra* § IV.A), or pre-litigation agreement from "members" to sue, even though consent is essential to associational standing. Mot. 11:12-20. Coalition's remaining cases do not compel a different result. *See, e.g.*, *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1042 (D. Idaho 2023) (taking allegations as true); *La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*, 2008 WL 11411732, at *4 (C.D. Cal. Aug. 18, 2008) (members made decisions by vote and consensus). Nor does its evidence. Coalition claims that it was "hearing from [its] members" that Coalition "needed to do something" about property destruction and that members "brought up the idea of doing a lawsuit," and "petitioned" Coalition to bring the suit. But those oral statements are inadmissible hearsay (FRE 801), and belied by the identified "members'" sworn testimony confirming they were unaware of this suit and Coalition's concession that it has no agreements to represent them. Unrefuted evidence shows [redacted] [redacted] ECF No. 349-10, COH00974421; Exs. 67-68. Summary judgment must be granted.

**b. No Coalition "Member" Supports Jurisdiction.**

Associations must establish "at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Associated Gen. Contrs. of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194-95 (9th Cir. 2013). Since Coalition's membership is not limited to homeless individuals at risk of property destruction (ECF No.

350-10 [78:3-18]), it *must* identify a member. *Summers*, 555 U.S. at 498-99.[8] Coalition has failed to establish its standing based on of the identified members (Castaño, Brown, Orona, Cronk, Donohoe, Martinez, "Melodie," Bryant, Reem, and Stephenson). Mot. 11:27-13:21.

Coalition abandoned reliance on Castaño and Orona by not responding to the City's motion and the opposition concedes Brown testified she was not a member (Opp. 19:3-4), foreclosing reliance on her. Mot. 10:26-28. Even then, Brown was housed when this case commenced so any injury to her was speculative (ECF No. 281 at 22) and remains so since she is housed and disclaimed any intent to store items outside. Mot. 12:3-10. Cronk and Donohoe lacked standing or have moot claims, as discussed *supra* § II.A. Martinez settled his claims and Coalition cannot continue to litigate on his behalf, and provides no authority holding otherwise. *Summers*, 555 U.S. at 494; Mot. 12:26-28. Additionally, Martinez, who "guesse[d]" he was a member, lacked standing when this case commenced and the opposition does not show otherwise. ECF No. 366-11 [118:2-11]. Bryant and Melodie, as the only other "members" as of the case's filing, lack standing. Coalition asserts, without evidence, that Bryant was not housed, but his testimony and declaration establish otherwise. Mot. 13:1-4. In fact, consistent with his testimony, Bryant had a [redacted], not just an offer of housing, when the case was filed. Ex. 69; ECF No. 349-15 at 24:25-25:1. He also disclaimed any future intention to be homeless or store property outside. Mot. 13:1-4. Similarly, Coalition does not deny Melodie has three vehicles and private storage where she kept property, that it was her practice to not put items outside, or that there is no evidence she lost property before the lawsuit was filed. Mot. 13:4-11. Plaintiffs also lack evidence of a pattern and practice of property destruction as to the vehicularly unhoused. Coalition also fails to explain how Melodie was going to be injured with the requisite immediacy given her circumstances. Finally, Coalition concedes Reem and Stephenson were not members when the case commenced and cites no authority allowing reliance on people who could not support standing when the case began. Regardless, neither could support standing because Stephenson was not

[8] *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ignored *Summers* and is inapposite since, unlike there where every member was subject to the alleged conduct, Coalition admits not all members are at risk of property destruction.

a resident of San Francisco and Reem was housed when this case commenced. Mot. 13:11-21. The opposition ignores the argument that they cannot support standing

**c. Coalition Fails *Its* Burden At The Third Prong.**

Coalition's arguments fail to support their burden to show individual member's participation is not required to prove its claims. Coalition fails to explain how it will establish a member's unlawful seizure claim without their involvement, particularly where *plaintiffs* have the burden to prove each exception that allows property seizures. Opp. 21-22 (only addressing pattern and practice evidence and providing no response to the individuality of due process claims); *infra* § IV (addressing burden). Plaintiffs' own witness list including member-witnesses shows their involvement is necessary. Coalition is also wrong that its participation increases the litigation's efficiency by streamlining witness contacts. Even if it were the City's burden to disprove efficiency (it is not), the evidence refutes Coalition. Plaintiffs' counsel disclaimed representation of every non-party homeless person listed in their disclosures and has failed to assist in locating nearly every one for depositions. Ex. 70, Dec. 4, 2024 Hrg. Tr. 13:1-14:17; Mills Decl. ¶ 30, Exs. 71-76. To the extent Donohoe and Cronk are members with standing for systemic relief, Coalition's involvement is redundant and necessarily inefficient, *see Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024). Coalition, for the reasons explained *infra* § IV.A-B, is wrong that it can assert Section 1983 claims on others' behalf and that *Garcia v. City of L.A.*, 2020 WL 6586303 (C.D. Cal. Sept. 15, 2020), was correctly decided.

**2. Coalition Fails To Establish Organizational Standing.**

Coalition cannot support its burden to establish organizational standing for several reasons. Its admission that its property was not destroyed defeats standing because it lacks the traditional concrete harm "specified by the Constitution itself"—interference with a property or due process right. *TransUnion*, 594 U.S. at 425; U.S. Const. amends. IV & XIV, § 1. Because Coalition cannot establish traditional standing for property-based rights, it invokes *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), but the case is no help. Coalition does not address *Havens*' unusual statutory context where, unlike here, the organization had a cognizable statutory right to sue for *damages*. Mot. 16:13-17:6. Extending *Havens* to injunctive relief, as Coalition requests, would be error. Since the City filed its motion, the Supreme Court rejected nine non-profits' organizational standing where the district

court relied upon *Havens* and perceptible impairment to missions and services.[9] Coalition's constitutional claims are far outside *Havens*' unusual context and perceptible impairment is too "attenuated" to support standing. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013).

Even if some perceptible interference to a core business activity or mission[10] justifies standing outside of *Havens*' statutory context (it does not), none of Coalition's "injuries" survive summary judgment.[11] Coalition's sprawling theory identifies four activities: (1) the provision of services; (2) the provision of supplies; (3) education services; and (4) training services. First, there is insufficient evidence these are "core business activities," *Hippocratic Med*., 602 U.S. at 395, because, as Coalition admits, they are a "very limited" part of Coalition's overall work (Mot. 17) and Coalition's "primary activity" of "community organizing" differentiates it from organizations providing direct services as their core activity (ECF No. 366-7, 69:2-70:1). Coalition also has not shown the City's allegedly unlawful conduct has "interfered with" or "imped[ed]" their ability to engage in the four activities. *Hippocratic Med*., 602 U.S. at 395. Coalition does not identify a single instance of a homeless verification form, educational material, or Coalition-provided item being discarded in violation of the Bag & Tag policy, let alone to such a degree that its services were impeded *prior* to the lawsuit. Nor does Coalition identify a single admissible incident (either before or since filing) where an individual:

[9] *See OPM v. AFGE*, -- S.Ct. --, 2025 WL 1035208 (2025), staying *Am. Fed'n of Gov't Emps*., *AFL-CIO v. United States Off. of Pers. Mgmt*., 2025 WL 820782, at *7 (N.D. Cal. Mar. 14, 2025) (incorporating *Am. Fed'n of Gov't Emps*., *AFL-CIO v. United States Off. of Pers. Mgmt*., 2025 WL 660053, at *8-13 (N.D. Cal. Feb. 28, 2025) (evaluating *Hippocratic Med.*, *Havens*, and interference)).

[10] Frustration of a mission "does not work to demonstrate standing." *F.D.A. v. All. for Hippocratic Med*., 602 U.S. 367, 393 (2024). More so here where "community organizing" is Coalition's "primary activity," it always monitored the City's conduct, and used this very litigation to focus on education, coalition building, advocacy, and teach-ins. Mot. 17:15-24.

[11] Plaintiffs' cases are inapposite. *See Freedom Found. v. Int'l Bhd. of Teamsters Loc. 117*, 2024 WL 5252228 (9th Cir. Dec. 31, 2024) (relies on *Arizona Alliance*); *S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Justice*, Case 2024 WL 5153170 (D.S.C. Dec. 18, 2024) (on appeal and relies on diversion and confirms no derivative § 1983 claim); *Get Loud Arkansas v. Thurston*, 2024 WL 4142754 (W.D. Ark. Sept. 9, 2024) (*directly* regulated); *La Union Del Pueblo Entero v. Abbott*, 2024 WL 4488082 (W.D. Tex. Oct. 11, 2024) (same); *Yesue v. City of Sebastopol*, 2024 WL 4876953 (N.D. Cal. Nov. 22, 2024) (does not mention *Hippocratic Medicine*); *March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128 (D. Idaho 2024) (standing based on diversion); *WildEarth Guardians v. U.S. Dep't of Agric*., 795 F.3d 1148 (9th Cir. 2015) (standing for procedural right only).

could not be contacted because their devices were unlawfully destroyed[12]; did not attend Coalition training due to property destruction; or did not become a member due to the same. Coalition, disavowing the allegations it made just a few months ago (TAC ¶ 23(b)), concedes it has not been purchasing socks, tents, or sleeping bags. Opp. 14:4-5. Coalition's *distribution* of these donated items is irrelevant as that activity (even it was a "core business activity") cannot be impacted by the alleged unlawful conduct. The distribution is necessarily limited by the number of donated items and the reason a person seeks a donated item (which Coalition does not track or have admissible evidence of) has no effect on whether Coalition distributes it. ECF No. 350-10, 207:11-22. Contrary to the unsupported allegations, Street Sheet circulation actually declined because of Covid, as Coalition admits. Ex. 78, Coalition Depo. 78:24-79:2, 99:7-11, 226:21-228:3.

Ultimately, Coalition's opposition confirms that its theory is too attenuated and lacks admissible "specific facts" needed to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Coalition provides no evidence or argument to justify the *imminence* of any injury when this case commenced to support injunctive relief.[13] It also ignores black letter law that standing is "substantially more difficult to establish" where, as here, government action is regulating third parties, *Hippocratic Med.*, 602 U.S. at 382, because Courts cannot "rely on speculation about the unfettered choices made by independent actors not before the courts." *Clapper*, 568 U.S. at 414 n.5 (cleaned up); *Lujan*, 504 U.S. at 562.

---

[12] This is consistent with Coalition's outreach director's testimony that they contact members in person ("the best way") and doing so by phone "would not make a lot of sense" (Ex. 77, Wadkins Depo. 24:6-25:12; 44:22-45:6) and Coalition's statement that many unhoused members have no phone (ECF No. 9-3, ¶ 7).

[13] The City objects to irrelevant evidence post-dating commencement. *See* ECF Nos. 366-14; 366-22; 366-131; 366-132; 366-136; 366-138; 366-139; 366-141. The City objects to inadmissible hearsay. *See* ECF Nos. 366-107 [COH01527254]; 366-121; 366-122; 366-123; 366-135; 366-7 [220:23-221-25, 248:1-13, & 228:4-18]. The City objects to irrelevant and prejudicial misrepresentations. *See* ECF Nos. 366-10 [142:14-143:3 (did not provide tent)]; 366-7 [229:6-20 (flyers not training)]; 366-10 [101:18-102:11 (advisement is not medicine)]; 366-41 [83:17-25 (same)]; 366-52 [170:6-8, 170:22-171:7, 172:10-19 (no property destruction)]; 366-53 [29:24-30:24, 131:20-132:3 (same)]. The City objects that Friedenbach (366-130) and Wadkins (366-129) offer improper lay opinion and legal conclusions. *See* Friedenbach Decl. ¶ 5 ¶¶ 18, 23-26, 28, 36, 37, 38, 40, 42, 43, & ¶ 27; Wadkins Decl. ¶¶ 7, 8; 366-142 ¶ 12. The City also objects both are based on inadmissible hearsay and lack personal knowledge. Friedenbach Decl. ¶¶ 32-33, 35, 37, 40, 41; Wadkins Decl. ¶¶ 7, 8, & 9.

## III. Plaintiffs Have Not Shown They Are Entitled to Equitable Relief.

The equitable claims fail for two reasons. *First*, Plaintiffs provide no evidence they lack an adequate legal remedy—a predicate to equitable relief. Mot. 19-20. "*Plaintiffs* bear the burden to establish that they lack an adequate damages remedy." *Kenney v. Fruit of the Earth, Inc.*, 2023 WL 3565076, at *3 (S.D. Cal. Apr. 3, 2023). Plaintiffs suggest that they do not need to show a lack of an adequate legal remedy because they allege systemic violations, but that is incorrect. *See O'Shea v. Littleton*, 414 U.S. 488, 504 (1974) (failing to show inadequate legal remedy despite systemic discrimination); *Lyons*, 461 U.S. at 111 (practice addressable in legal suit). *Second*, Plaintiffs fail to show a genuine dispute of material fact regarding the immediacy of irreparable injury to *them*. They inappropriately cite swaths of their brief (Opp. 32) and expect the City and Court to find the examples of harm *Plaintiffs* recently suffered.[14] *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (courts do not "scour the record" since nonmovant must identify evidence with "reasonable particularity"). New "violations," most of which do not involve Plaintiffs or members, cannot be considered (*supra* §I-II).

## IV. There Is No Dispute Of Material Fact Regarding Plaintiffs' Constitutional Claims.

### A. Coalition Cannot Bring Derivative Section 1983 Claims And Members' Claims Are Time-Barred.

Statutory construction bars Coalition's Section 1983 claim on behalf of members as a matter of law. Mot. 20:27-21:13. This is analytically distinct from associational standing and a second (and independent) hurdle a Section 1983 plaintiff must clear. *Id*. at 21:17-23. Coalition concedes this argument by avoiding its merits. The Court's prior order addressing associational standing does not change the result. That order did not analyze the text or legislative history of Section 1983 on the merits. Nor did *Garcia*, 2020 WL 6586303. Even if arguments under Section 1983 and Article III were the same (they are not), the Court's order is not controlling at summary judgment. *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, 130 F.4th 757, 763 (9th Cir. 2025). Since the only analysis before the Court now shows that nothing in the text or history of Section 1983 permits associations to sue on behalf of members as a matter of law, summary judgment is required.

[14] The Court previously criticized Plaintiffs' practice of citing generic facts without precise application to the law, which they repeat here. Ex. 79, Aug. 24, 2023 Hrg. Tr. 20:8-16; 22:3-17.

The opposition does not dispute that the statute of limitations for Section 1983 actions is two years for seizures. Nor does it dispute that Cronk and Donohoe are the only remaining members in the complaint with timely predicate claims, or produce evidence to rely upon any other member prior to this case commencing. Mot. 22:10-20.[15] Plaintiffs' passing argument about admissibility of pattern and practice evidence is irrelevant (Opp. 25:9-15) and Ninth Circuit law establishes that equitable claims fail with legal remedies. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993). To the extent Plaintiffs assert that no case concerns a pattern and practice, they do not explain why that is relevant; the specific legal theory is analytically irrelevant. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008); *Wallace v. Kato*, 549 U.S. 384, 391 (2007); *see also Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) (failure to train barred with seizure).

**B. Plaintiffs Have Not Shown Their Own Fourth Amendment Violations.**

None of the three Plaintiffs (Coalition, Cronk, Donohoe) provided evidence to show a genuine issue of material fact that they experienced an unconstitutional seizure.[16] An *element* of Coalition's claim is the seizure of its own property (*i.e.* Fourth Amendment standing), which has not occurred. Mot. 25:19-26:14. The opposition does not dispute this, but appears to rely on *Garcia*, 2020 WL 6586303, at *5, for the ability to bootstrap its members' claims as its own (Opp. 22). *Garcia* incorrectly held the element of Fourth Amendment standing was satisfied where associational standing existed, but the court (and thus Coalition) conflates two distinct concepts—a substantive element and Article III standing. *See* Mot. 25:25-26:6. Just because a plaintiff has Article III standing does not mean it has established an element of its claim. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (Article III satisfied, but dismissed for lack of merits "standing"). Coalition's claim fails.

Plaintiffs wrongly contend the City has the burden to show the reasonableness of any seizure under the constitutional policy. Opp. 26. *Plaintiffs* have the burden to prove unreasonableness,

[15] It unclear if Plaintiffs rely on Bryant. He filed his own lawsuit (Exs. 80-81) so reliance on him is barred by the rule precluding claim splitting. *Rucker v. City of Oakland*, 39 F.3d 1188, 1994 WL 594798 (Table), at *2 (9th Cir. Oct. 31, 1994).

[16] Plaintiffs did not deny state law Claims 3 and 4 fall with their federal counterparts.

including the absence of exceptions.[17] Mot. 14. Plaintiffs ignore the Ninth Circuit's jury instructions, misconstrue *Larez v. Holcomb*, and rely on wrongly-decided cases. *Larez v. Holcomb*, 16 F.3d 1513, 1517 (9th Cir. 1994) (distinguishing criminal cases where government has the burden from § 1983 action, where plaintiff "at all times had the ultimate burden of proving . . . she had been seized unreasonably," including because no exception applied); *Miranda v. City of Cornelius*, 429 F.3d 858, 862-63 (9th Cir. 2005) (incorrectly allocating burden based on cite to criminal case); *Recchia v. City of L.A. Dep't of Animal Servs*., 889 F.3d 553, 558 (9th Cir. 2018) (same).

Plaintiffs are also wrong that there is only one reasonable basis (abandonment) to lawfully destroy property. "Plaintiffs acknowledge that the policy itself i[s] constitutional," and that it contains several *per se* reasonable bases to dispose of items, including trash, hazardous items, items co-mingled with hazards, contraband, perishables, and abandoned property. ECF Nos. 65 at 42; *see* 350-6, § 3. Since Plaintiffs must prove the unreasonableness of each seizure, they must establish the absence of each conceded reason property may be destroyed. They did not.

Cronk and Donohoe do not create a genuine dispute as to whether their allegedly destroyed property was not (or did not appear to be) trash, soiled, hazardous, co-mingled with hazards, or abandoned. The pair put two incidents of destruction at issue in this case (June and Sept. 2022) and Cronk relies on an additional January 2023 incident. Mot. 24-25. Neither dispute that during these times they stored property they claim was destroyed outside their tent in the narrow right of way (including the road as shown in photographs), stored some of that property in open trash bags (near trash bags containing trash), and kept drugs and needles with their property. Nor do they provide evidence or law that their property was not properly determined to be abandoned when allegedly

[17] This largely renders Plaintiffs' evidence of wrongful seizures irrelevant because they cite evidence of property destruction, but not evidence that the destruction was unlawful. *See, e.g.*, ECF Nos. 366-3 [Verner-Crist Decl.] ¶¶ 10, 16, 25-26, 32, 44, 75-78, 84-85, 90, 95-06, 110, 118, 124, 167-170; 366-5 [Illa Decl.] ¶¶ 6, 10, 13-14; 366-8 [Cronk Depo.] 109:7-111:6; 116:14-125:7; 165:1-18; 183:9-185:6; 186:3-15; 200:14-204; 366-10 [Castano Depo.] 114:11-20; 366-12 [Donohoe Dep. Tr.] 141:20-24; 170:19-174:18; 187:13-189:18; 366-13 [Friedenbach Depo.] 87:11-90:23; 366-16 [Evans Depo.] 179:20-181:5; 185:20-186:14; 213:10-214:16; 217:6-17; 233:6-234:21; 238:20-239:7; 366-19 [Bryant Depo. 168:5-18; 366-21 [Reem Depo.] 39:5-15; 77:24-78:1; 116:21-24; 173:19-23; 366-22 [Stephenson Depo.] 92:15-94:12, 126:3-9; 366-23 [Dubose Depo.] 72:15-74:18; 366-24 [Stromer Depo] 72:15-74:18, 120:2-18; 366-20 [Barkely Depo.] 103:21-105:11; 366-52 [Horkey Depo.] 117:1-20; 366-53 [Ducharme Depo.] 44:22-24, 47:11-17, 56:24-57:5, 60:1-61:2, 65:2-11; 366-145 [Evans Nov. 5, 2021 Decl.] ¶ 26; 366-146 [Evans Nov. 29, 2022 Decl.] ¶¶ 9-10, 15, 20.

destroyed in January 2023 (or that the *City* destroyed it) having transferred possession to a third party who then abandoned the scene. Judgment for the City must be granted. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (where "nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins").

**C. Plaintiffs Fail To Establish A Dispute Regarding Alleged Due Process Violations.**

Plaintiffs' due process claims depend on the unlawful destruction of their property as a result of inadequate advance notice and the inability to collect property from the Yard. No genuine dispute exists as to either. Coalition relies on three "members" (Reem, Stephenson, and Bryant) concerning the Yard (Cronk and Donohoe make no claim). Opp. 6. The Court should not consider them since each lacks standing, the allegations are not in the complaint, and Coalition failed to disclose these in written discovery. Mot. 29. Regardless, they do not survive. [redacted] Ex. 82, Reem Depo. 137:13-138:1, Reem and Stephenson's cited testimony has nothing to do with the Yard (ECF Nos. 366-21 [161:16-165:1]; 361-22 [124:3-6]), and neither Stephenson nor Bryant provide evidence DPW ever stored the items they claim, or that any failure at the Yard led to property loss (ECF Nos. 366-22 [92:15-94:12 (property she walked away from was missing; called Yard and was allegedly told it was not there)]; 366-19 [60:5-61:5 (providing no date, property, or other detail)]).

Claims based on lack of notice fare no better. Coalition does not assert (let alone provide evidence) any of its ten "members" did not receive notice of City operations within the statute of limitations (or were subject to "roving removal"). Further, no Plaintiff provides evidence to show they lost property as a result of a lack of notice. Cronk and Donohoe do not dispute sufficient notice in September 2022. They contend the written notices for the June 23, 2022 and January 5, 2023 resolutions were too far away. Not so. The June notice specifically notices a resolution at the intersection of 13th and Folsom where the pair lived (and where Cronk knew was a "hotspot" subject to repeated cleaning). ECF 350-32; Ex. 83, Cronk Depo. 164:11-21. According to Cronk, they lived near 13th and Harrison next to the corner where notice was posted in January 2023. Ex. 83 at 235:22-236:14; ECF No. 350-36. Since both moved into shelter at least a day before the incident and were not present (ECF No. 352-6, 121:19-125:12), there is no admissible evidence further oral notice was not provided (Plaintiffs' claim that oral notice is always insufficient is un supported by their cases).

**D. Plaintiffs Fail to Establish A Dispute Regarding *Monell* Liability.**

**1. No Material Dispute of An Unlawful Custom.**

Plaintiffs' references to Herring's report and other evidence are insufficient to show a custom of property violations so widespread they are de facto policy. Herring's report cannot create a triable issue of fact because [redacted] . Ex. 66, Herring Depo. 53:1-6. Plaintiffs do not tie any alleged policy violations to a constitutional standard. Even as to the City's policies, Herring cannot show a widespread violation [redacted] *id*. at 129:25-130:10, acknowledges [redacted] *Id*. at 131:16-132:6. None of his survey questions show [redacted]. *Id*. at 115:17-116:3; 83:6-24. Herring admits his opinion [redacted] *Id*. at 148:4-12; 141:10-13. Unsupported opinions like this led another court to criticize Herring's opinions, *Berry*, 2024 WL 3495797, at *24, and his statistics that "fail to account for many [pertinent] factors . . . are not enough to take this case to trial." *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1283 (9th Cir. 2000). Plaintiffs' remaining evidence is similarly sporadic and unmoored from the constitutional standard. Much of their evidence is based on inadmissible hearsay[18] and evidence of property destruction without sufficient detail to explain why that property destruction was unlawful.

Plaintiffs' cases do not support finding a triable issue of fact.[19] The City has had thousands of interactions with unhoused people and their property. Mot. 30:18-20. None of Plaintiffs' cases concern

[18] *See, e.g*., ECF Nos. 366-8 [Cronk Depo.] 166:14-125:7; 366-12 [Donohoe Depo.] 99:16-100:8, 100:23-102:25, 119:15-124:14, 189:3-190:16; 366-22 [Stephenson Depo.] 92:15-94:12; 366-23 [Dubose Depo.] 72:15-74:18; 366-53 [Ducharme Depo.] 35:6-36:12; 45:14-52:7; 89:2-16; 110:5-111:3; 366-145 [Evans Nov. 5, 2021 Decl.] ¶ 26; 366-146 [Evans Nov. 29, 2022 Decl.] ¶ 6. Herring is used as is little more than a conduit for hearsay. ECF No. 366-2 [Herring Rep.] at pp. 46-56, Appx. C.

[19] *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (county was not liable and did not involve property); *Trevino v. Gates*, 99 F.3d 911, 919-20 (9th Cir. 1996) (no liability because record showed "varied and inconsistent *ad hoc*" practice and did not involve property); *K.J.P. v. Cnty.*

a similar scope or frequency and therefore are inadequate to show a custom of specific constitutional violations so widespread that it constitutes the de facto City policy officials acquiesced in.

**2. No Material Dispute Of A Failure to Train.**

Plaintiffs ignore the most recent binding authority on failure to train, *Bell v. Williams*, 108 F.4th 809 (9th Cir. 2024), which was decided nearly a decade after any case Plaintiffs cite. Opp. 31-32. *Bell* reversed a failure to train claim where the employees received training when hired and additional annual trainings "which *sometimes* touch on topics related" to the issues in the case. *Bell,* 108 F.4th at 824-25 (emphasis added). The Ninth Circuit contrasted *Bell* with *City of Canton v. Harris*, 489 U.S. 378 (1989), where the Supreme Court recognized a failure to train when the department armed officers without *any* training, since the showing in *Bell* that employees received "some degree of training" was enough. *Bell,* 108 F.4th at 825. The Court compared *Bell* to *Connick v. Thompson*, 563 U.S. 51 (2011), another case the City cited and Plaintiffs ignore, where a prosecutor's office was not liable for failure to train on *Brady* obligations "despite any shortcomings in the . . . training program," since prosecutors had the necessary tools based on their "general familiarity with the *Brady* rule." *Bell,* 108 F.4th at 825.

DPW's bag and tag training exceeds those found acceptable in *Bell* and *Connick*. Every employee who bags and tags is trained. Plaintiffs do not (and cannot) argue otherwise.[20] Staff receive formal trainings at least four times a year in addition to further refreshers (Mot. 31:17-32:12) even though the policy itself (which Plaintiffs admit is constitutional) only calls for training new employees and an annual refresher. ECF No. 350-6 (§ 8); ECF No. 65 at 42:27-43:1. Nor did Plaintiffs identify anything incorrect in DPW's current training. *Compare* Opp. 32 (arguing the City "fail[s] to train City

*of San Diego*, 621 F. Supp. 3d 1097, 1126 (S.D. Cal. 2022) (did not involve property and concerned complaints about the same employee); *Doe v. City of San Diego*, 35 F. Supp. 3d 1233, 1239 (S.D. Cal. 2014) (same); *Banks v. Booth*, 468 F. Supp. 3d 101 (D.D.C. 2020) (did not involve property and expert's opinion was uncontested); *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066 (N.D. Cal. 2020) (did not involve property and city failed to present evidence).

[20] *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) does not support Plaintiffs' opposition because the Court affirmed summary judgment *in favor* of the city since there was "nothing in the record . . . that evinces the deliberate indifference that *Harris* requires for a free-standing failure-to-train claim," and *Price* did not accept Plaintiffs' argument about a "conscious" choice. Opp. 31.

workers on [1] providing notice, [2] handling unattended and attended property, [3] determining what constitutes an immediate health and safety risk, and [4] allowing people to retrieve bagged and tagged property)[21] *with* ECF No. 350-50 training slides on notice [p. 7-15], handling unattended and attended property [p. 16-48], determining what constitutes an immediate health and safety risk [p. 19-21], and allowing people to retrieve bagged and tagged items [p. 49-50]. Instead, Plaintiffs' theory reduces to a demand for more detail and oversight, but none of their cases require that.[22] As with *Bell*, the "training program . . . covered the relevant topics with reasonable specificity" and DPW "could reasonably expect [employees] to connect the dots." *Bell*, 108 F.4th at 825.

Plaintiffs do not meet their burden on causation. *Johnson v. Warden*, No. 2:23-CV-00908-JDP (PC), 2024 WL 170147, at *2 (E.D. Cal. Jan. 16, 2024) ("Not every bad act . . . necessarily implicates a failure to train."). Plaintiffs' claim that perceived training failures "caused property destruction," has no citation whatsoever. Opp. 32. A scattershot list of complaints early in their brief is not enough.

**3. No Material Dispute Of Deliberate Indifference To Plaintiffs' Rights.**

The City presented evidence Plaintiffs' property and due process rights were not well-established and the City offers shelter and homeless storage programs. Mot. 33-34. Plaintiffs do not dispute key elements of the City's argument and their assertion that the City was deliberately indifferent because it did not discipline, investigate, and supervise employees is factually incorrect.

Plaintiffs do not dispute that deliberate indifference requires a well-established right. Nor do they identify any case other than *Lavan* as the source of the well-established right here. Opp. 26 n.24. *Lavan* was based on a stipulated practice of summary destruction without any notice and did not address the issues in this case, including whether the amount of notice was adequate and whether the City properly determined items were abandoned. *Lavan*, 693 F.3d at 1024. Plaintiffs attempt to distinguish the City's cases as state-created danger case is ineffective because deliberate indifference

---

[21] There are areas of the bag and tag policy on which Plaintiffs do not allege the City failed to train: how to identify abandoned vs. temporarily unattended items; how to treat items that are perishable, contraband, trash, or abandoned; and how to store bagged and tagged items. ECF No. 350-6 (§§1.d, 3.e, 6.) At a minimum, the City's motion should be granted as to these portions.

[22] Plaintiffs claim other agencies have not been trained on the bag and tag policy, citing two depositions. Opp. 7 n.4. They misstate. ECF No. 366-36 (Peoples Depo. 114:3-115:14 [identifying information sharing]); 366-38 (Brandon Depo. 73:10-74:4 [lacking personal knowledge]). Plaintiffs have no legal authority premising liability on failure to train one City department on another's policy.

is an element of state-created danger and *Monell* claims. Plaintiffs offer no law holding the analysis is different. Nor do Plaintiffs' dispute the City offers shelter and a storage program, instead, arguing that these services are temporary. Opp. 26 n.24. But whether the programs are temporary has not impact on the deliberate indifference analysis.

Finally, Plaintiffs rely on an incorrect statement of fact. Opp. 26:11-19. Plaintiffs argue the City failed to discipline or investigate alleged bag and tag violations, but ignore evidence of just such investigations and discipline. *See, e.g*., Ex. 84, Vaing Depo. 53:15-54:20 (explaining Deputy Director instructed him to investigate complaints and take corrective action); Ex. 85, CCSF-COH_075814 (investigation from 2022); Ex. 86, CCSF-COH_070901 (verbal counseling in 2022); Ex. 87 Dilworth Depo. 28:14-30:10 (verbal counseling in 2024); Ex. 88, CCSF-COH_437220 (release in 2024); Ex. 89, CCSF-COH_437238 (release in 2024); Ex. 90, CCSF-COH_437249 (dismissal in 2024). Plaintiffs also claim the City did "not observe[] workers in the field," Opp. 26, where the evidence shows "ninety percent of the time there's either a [Supervisor I or II] physically present with laborers at the encampment resolution." ECF No. 350-36 (Vaing Depo. 84:3-7). None of the evidence Plaintiffs' cite contradict these undisputed facts.[23] Nor does any of their evidence show deliberate indifference by DPW's relevant final-policymaker Carla Short. Plaintiffs' arguments are therefore unsupported.

## CONCLUSION

For the reasons set forth above and in the City's Motion, there is no triable issue of fact with respect to any of Plaintiffs' claims. Summary judgment must be entered in favor of the City.

---

[23] Plaintiffs' cases do not concern scattered, statistically-infrequent complaints of the disparate policy violations alleged here. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir.1986) (record silent as to what action officials took after being informed); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (official stated he would not discipline officer); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027-28 (9th Cir. 2015) (one employee was a serial offender and city should have known investigation was necessary); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1372 (9th Cir. 1998) (failure to discipline after being sued).

Dated: April 24, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys

By: s/Steven A. Mills
STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT

WARREN METLITZKY
JESSICA ELAINE LANIER
CONRAD METLITZKY KANE LLP

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT