**EXHIBIT 8**

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3  - - - - - - - - - - - - - - - - - -
 4  COALITION ON HOMELESSNESS,        )
 5  et al.,                           )
 6              Plaintiffs,           )
 7  vs.                               )  CASE NO.
 8  CITY AND COUNTY OF SAN            )  4:22-cv-05502-DMR
 9  FRANCISCO, et al.,                )
10              Defendants.           )
11  - - - - - - - - - - - - - - - - - -
12
13
14
15              VIDEOTAPED DEPOSITION OF
16                 LARRY D. ACKERMAN
17               THURSDAY, MARCH 6, 2025
18
19
20
21          BEHMKE REPORTING AND VIDEO SERVICES, INC.
22             BY:  SUZANNE I. ANDRADE, CSR NO. 10682
23                550 CALIFORNIA STREET, SUITE 820
24                SAN FRANCISCO, CALIFORNIA 94104
25                        (415) 597-5600
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10          Videotaped deposition of LARRY D. ACKERMAN,
11   taken on behalf of Defendants, at 39 Drumm Street,
12   Third Floor, San Francisco, California, commencing at
13   10:36 A.M., THURSDAY, MARCH 6, 2025, before Suzanne I.
14   Andrade, Certified Shorthand Reporter No. 10682,
15   pursuant to Notice.
16
17
18
19
20
21
22
23
24
25
```

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFFS AND THE DEPONENT:
 3        EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
 4        BY:  VASUDHA TALLA, ATTORNEY AT LAW
 5        1 Rockefeller Plaza, 8th Floor
 6        New York, New York  10020
 7        Telephone:  (212) 763-5000
 8        Email:  vtalla@ecbawm.com
 9   -AND-
10        AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
11        NORTHERN CALIFORNIA
12        BY:  JOHN H. DO, ATTORNEY AT LAW
13        39 Drumm Street
14        San Francisco, California  94111
15        Telephone:  (415) 621-2493
16        Email:  jdo@aclunc.org
17
18   FOR DEFENDANTS:
19        CITY AND COUNTY OF SAN FRANCISCO
20        OFFICE OF THE CITY ATTORNEY
21        BY:  EDMUND WANG, DEPUTY CITY ATTORNEY
22        1390 Market Street, 7th Floor
23        San Francisco, California  94102
24        Telephone:  (415) 554-3857
25        Email:  edmund.wang@sfcityatty.org
```

```
 1  APPEARANCES - CONTINUED:
 2  ALSO PRESENT:
 3        KYLE FRIEND, VIDEO OPERATOR
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1        THE REPORTER:  Sorry.
 2        THE WITNESS:  Oh, I'm sorry.  I'm sorry.
 3        THE REPORTER:  State the question.
 4        ATTORNEY WANG:  Sure.
 5   BY ATTORNEY WANG:
 6        Q.   So my understanding of the prior testimony was
 7   that if DPW disagrees with someone about whether an item
 8   is trash or discardable, that it would be wrong for DPW
 9   to take that item and discard it.
10        A.   Yes.
11        Q.   What if that item is a needle?
12             If DPW --
13        A.   Yeah.
14        Q.   -- thinks a needle is trash and wants to
15   discard it, but someone wants to keep it, would you
16   consider that wrong for DPW to then throw away that
17   needle?
18        A.   Yes.
19        Q.   And the same thing for an item that -- I'll
20   avoid the word "soiled," so let me start over.
21             An item that has human waste or other bodily
22   fluids on it, if DPW wants to discard that item, but an
23   individual disagrees and wants to keep it, would it be
24   wrong for DPW to discard that item?
25        A.   In my opinion, yes.  And my opinion does not
```

1  necessarily reflect what the written policy is, but it
2  is my opinion.  If a person wants to keep something,
3  they should be allowed to keep it.  And that's what
4  we're here about.
5      Q.  And does your understanding of what's right and
6  wrong, your opinion that you just discussed, does
7  that -- what's the word I'm looking for -- does that
8  determine the incidents and events that you identified
9  in your declaration as being wrongful conduct by City
10 employees?
11     A.  Because of the pause, I forgot the first part
12 of the question.
13     Q.  Sure.  Let me -- let me try it a different way.
14         And we'll look at it later, but, just
15 generally, in your declaration in this case, you have
16 identified instances where you believe City employees
17 have wrongfully taken someone's property, correct?
18     A.  Yes.
19     Q.  And when you use the word "property" or when
20 you decide which incidents and events to identify for
21 the court as being something that was wrongful, is that
22 based on your understanding of what DPW can and cannot
23 do?
24     A.  Oh, I see.  Well, I would say no -- it's based
25 more on the property ownership issue.

1      Q.    And what is the "property ownership issue"?
2            What do you mean by that?
3      A.    When someone claims that this item belongs to
4  me and I want it, that's their property.
5      Q.    Okay.
6      A.    And if the DPW disrespects that and takes it
7  away and discards it, yeah, that's -- that's what I'm
8  fighting about.
9      Q.    Okay.  And it -- that is regardless of what
10 that property or item might be?
11     A.    True.
12     Q.    Okay.  The item --
13     A.    But the trivial item -- or situations that
14 you've postulated is not the usual.  Okay?  We're
15 talking larger, much more valuable, more intrinsic value
16 items.
17     Q.    What kind of items?
18     A.    Bedding, clothes, personal hygiene items,
19 tents, a chair to sit on, artwork, books, writing
20 materials.  Okay?  I can go on and on.  All the things
21 that a people uses carrying out their life.
22     Q.    If the bedding has, let's say, I don't know,
23 some sort of human waste or bodily fluids on it, but
24 someone wants to keep it, for understandable reasons,
25 your understanding is it would be wrong for DPW to throw

```
 1   away that item?
 2       A.   I think it would be unconstitutional and
 3   inhumane.
 4       Q.   Okay.
 5       A.   Yeah.
 6       Q.   And then if -- in this -- if we -- DPW comes
 7   across a tent that has, inside of it, needles, your
 8   understanding is that it would be wrong for DPW to throw
 9   away that tent rather than store it for someone; is that
10   right?
11       A.   Well, what do you call this kind of argument?
12   That's like a red dog, red flag.  I -- your use of
13   needles is -- is pandering to the general dislike and
14   disgust with needles and their association with drug
15   use.  So I don't appreciate the question as phrased.
16   All right?
17            If someone wants to keep that tent that's full
18   of used needles, they should be allowed to keep that
19   tent, period.
20       Q.   Understood.
21       A.   Okay?
22       Q.   And I'm not trying to get in an argument with
23   you.  I --
24       A.   Okay.
25       Q.   -- am trying to --
```

```
 1  STATE OF CALIFORNIA     ) ss.
 2  COUNTY OF SAN MATEO     )
 3           I hereby certify that the witness in the
 4  foregoing deposition, LARRY D. ACKERMAN, was by me duly
 5  sworn to testify to the truth, the whole truth and
 6  nothing but the truth, in the within-entitled cause;
 7  that said deposition was taken at the time and place
 8  herein named; and that the deposition is a true record
 9  of the witness's testimony as reported by me, a duly
10  certified shorthand reporter and a disinterested person,
11  and was thereafter transcribed into typewriting by
12  computer.
13           I further certify that I am not interested in
14  the outcome of the said action, nor connected with nor
15  related to any of the parties in said action, nor to
16  their respective counsel.
17           IN WITNESS WHEREOF, I have hereunto set my
18  hand this 17th day of March, 2025.
19  Reading and Signing was:
20  __X__ Requested    ____ Waived    ____ Not Requested
21
22
23
24        SUZANNE I. ANDRADE, CSR NO. 10682
25        STATE OF CALIFORNIA
```