# EXHIBIT 1

Talla Declaration

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                      OAKLAND DIVISION
 4
 5   - - - - - - - - - - - - - - - - - -
 6   COALITION ON HOMELESSNESS; SARAH  )
 7   CRONK; JOSHUA DONOHOE; MOLIQUE    )
 8   FRANK; DAVID MARTINEZ; TERESA     )
 9   SANDOVAL,                         )
10            Plaintiffs,              )
11   vs.                               )  CASE NO:
12   CITY AND COUNTY OF SAN            )  4:22-cv-05502-DMR
13   FRANCISCO; et al.                 )
14            Defendants.              )
15   - - - - - - - - - - - - - - - - - -
16                      CONFIDENTIAL
17           REMOTE VIDEOTAPED DEPOSITION OF
18                  CHRIS HERRING, PH.D.
19                 MONDAY, APRIL 14, 2025
20
21         BEHMKE REPORTING AND VIDEO SERVICES, INC.
22            BY: JOHN FAHRENWALD, CA CSR 14369, RPR
23                550 CALIFORNIA STREET, SUITE 820
24                SAN FRANCISCO, CALIFORNIA 94104
25                              (415) 597-5600
```

```
 1   large part of that opinion in the final report, then it
 2   would be the 80 hours.  And then -- give me a moment again.
 3              It would be maybe -- it would be another
 4   hundred hours.
 5        Q.   Your best estimate on the number of hours you
 6   spent preparing your expert report in this case is 180
 7   hours; is that correct?
 8        A.   Yeah, 80 hours up until -- yes.  Yes, I think that
 9   sounds right.
10        Q.   What's your best estimate of the number of hours
11   you spent preparing for your deposition after you completed
12   your final report?
13        A.   In preparing for this deposition?  Say eight
14   hours.
15        Q.   During finalizing your report, have you done more
16   substantive research related to this case?
17             MS. KASHYAP:  Objection.  Vague.
18             You can answer.
19             THE WITNESS:  Directly for this case, I followed
20   up with counsel on seeing if there were more recent examples
21   of the shifting calls -- excuse me -- and notices of HSOC.
22   There was something that came up in my expert report towards
23   the end when I submitted it, and I was given a further week
24   of, again, HSOC notices and calls that I have evaluated
25   since then.
```

```
 1        Q.    (BY MS. MURPHY:) Do you recall what that week was?
 2        A.    It was the first week of January 2025, so it began
 3   on January 2nd.
 4        Q.    If plaintiffs are not successful in this lawsuit,
 5   meaning they don't win at trial, do you still intend to
 6   recover your fees from them?
 7        A.    Yes.
 8        Q.    Have you invoiced plaintiffs to request payment
 9   for any of the work you've done on the case so far?
10        A.    I invoiced Latham Watkins when they were counsel
11   on this case.  That is why I was a able to say with more
12   certainty on the 80 hours.  But I have not invoiced the new
13   counsel yet.
14        Q.    Do you remember the amount of that first invoice?
15        A.    I believe it was something in the ballpark of
16   $17,000.
17        Q.    And did you receive payment for it, or is it
18   outstanding?
19        A.    I did receive payment for that, although I would
20   say -- well -- and now I'm questioning the hours, because I
21   kind of worked backwards.  But part of that was also
22   covering expenditures for one of the trips I took to make
23   observations, which probably would have been about maybe
24   2,500 of that, so . . .
25        Q.    Did you have anyone helping you prepare your
```

```
 1        Q.   Did you want to review any evidence of photographs
 2   showing posted notices in coming to your opinions in this
 3   case?
 4             MS. KASHYAP:  Objection.  Form.
 5                Go ahead.
 6             THE WITNESS:  I'm -- it was definitely something I
 7   considered.  But with the limited time and the other points
 8   of evidence, it didn't seem a priority.
 9        Q.   (BY MS. MURPHY:) So it didn't seem a priority to
10   you to consider whether there were photographs showing that
11   the City provided advance written notice for HSOC
12   resolutions; is that fair?
13             MS. KASHYAP:   Objection.   Form.
14             THE WITNESS:   No.   I mean, I clearly saw that they
15   were putting up HSOC resolutions in various places.  I
16   didn't have the bandwidth to do sort of an analysis that
17   would at the time made sense.  As you see I -- we have the
18   analysis of where HSOC shifted their operations outside of
19   the zones that were designated, which I also observed, which
20   we would assume would not have included the notices posted.
21                  In a subsequent analysis on the new January
22   week where I looked at those notices, I then did ask and get
23   indications of where those notices would be posted, because
24   once I realized that shift was occurring, then I thought it
25   would be useful to look at what the City is recording as
```

```
 1   posting notices to further confirm that.  So I did ask and
 2   receive that in this January time period.  But in this
 3   section, I did not.
 4        Q.   (BY MS. MURPHY:) Would reviewing photographs
 5   showing posted advance notices for HSOC resolutions in
 6   February of 2025 have assisted you to make any of the
 7   judgments you reached in this case?
 8             MS. KASHYAP:  Objection.  Form.  Lacks foundation.
 9             THE WITNESS:  No.  I don't -- not in -- it does
10   not undermine any of the claims or conclusions I came to in
11   this report which was looking at specific instances where
12   the notices, you know, were not seen, were not adequately,
13   you know, envisioned by the people there or within these
14   shifting locations.  Also, the cases of where I saw the
15   notices where the operation wasn't carried out.  I mean,
16   there were notices in those cases.
17             So I think my analysis stands as is without.
18   But, yes, as you will see in the analysis in January,
19   that -- looking at notices in the cases of the shifts can
20   also be useful.
21        Q.   (BY MS. MURPHY:) So for the four instances in the
22   week of February 3rd through February 9th, 2025, where you
23   state that posted notices appear to be absent, you actually
24   don't know whether notices were, in fact, posted for those
25   resolutions.  Right?
```

1                MS. KASHYAP:  Objection.  Form.  And calls for a
2      legal conclusion.
3                THE WITNESS:  I'll leave that to, you know, the
4      judge.  To me, if one of every five, almost one of every
5      four operations goes outside the notice, that is certainly
6      significant.  It shows more than just a minor deviation or,
7      say, a mistake.  It does seem to be more common than that.
8           Q.   (BY MS. MURPHY:) Do you have an opinion about the
9      total percentage of HSOC resolutions that you contend
10     exceeded the boundaries of the noticed area?
11               MS. KASHYAP:  Objection.  Form.
12               THE WITNESS:  Total numbers outside of the -- the
13     analysis was just done for this month.  So we would need to
14     look at others beyond that to answer that question.  So no.
15          Q.   (BY MS. MURPHY:) Do you know who selected the
16     month of October 2024 as the one you would review for this
17     section of your report?
18          A.   I had asked, after experiencing this, to receive
19     data that could give an indication of this.  And this was
20     provided by counsel.  I then requested again a more updated
21     version at a later date and received that for this first
22     week of January.
23          Q.   And you didn't analyze the data for the first week
24     of January 2025 in your report.  Right?
25               That's something you've done after submitting the

```
 1   report?
 2        A.   That's correct.
 3        Q.   Did you specifically request data for the month of
 4   October 2024, or was that the month that counsel chose to
 5   give you on their own?
 6             MS. KASHYAP:  Objection.  Form.
 7             THE WITNESS:  I did not request specifically
 8   October.  I forget if this was -- I often ask for like most
 9   recent, which is the cause of the January one.  But, no, I
10   did not ask specifically for this month.
11        Q.   (BY MS. MURPHY:) Did you ever look at other months
12   to analyze whether the month of October 2024 happened to be
13   the highest number of shifts at any point prior to that
14   date?
15             MS. KASHYAP:  Objection.  Form.
16             THE WITNESS:  I did not.  I asked for the more
17   recent ones to see if this is a -- you know, continuing or
18   more common trend.
19        Q.   (BY MS. MURPHY:) I'm going to ask you some
20   questions about your opinion that notice is not reasonably
21   visible to encampment residents, which I think starts on
22   page 39 of your report.  Let me know when you're ready.
23        A.   Yes, I am here.
24        Q.   What, if any, special expertise do you have in
25   determining where a notice would be most visible?
```