# EXHIBIT 26

Talla Declaration

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3     - - - - - - - - - - - - - - - - - -
 4     COALITION ON HOMELESSNESS,         )
 5     et al.,                            )
 6                    Plaintiffs,         )
 7     vs.                                ) CASE NO:
 8                                        ) 4:22-cv-05502-DMR
 9     CITY AND COUNTY OF SAN             )
10     FRANCISCO, et al.,                 )
11                    Defendants.         )
12     - - - - - - - - - - - - - - - - - -
13
14
15                  DEPOSITION OF ISRAEL GRAHAM
16                   THURSDAY, JANUARY 30, 2025
17
18
19
20
21            BEHMKE REPORTING AND VIDEO SERVICES, INC.
22                BY:  SUZANNE I. ANDRADE, CSR NO. 10682
23                    550 CALIFORNIA STREET, SUITE 820
24                    SAN FRANCISCO, CALIFORNIA  94104
25                                      (415) 597-5600
```

1      ATTORNEY TALLA:  Then let me mark as Exhibit 1132
2  this document.
3           (Deposition Exhibit 1132 was marked for
4           identification.)
5      ATTORNEY TALLA:  Okay.  And so Exhibit 1132 --
6           Is that right, 1132?
7      THE REPORTER:  Yes.
8  BY ATTORNEY TALLA:
9      Q.   Exhibit 1132 is the advanced notice for the
10 resolution that occurred on this date, August 6, 2024.
11           Do you see behind Best Buy and 16th and Folsom
12 on this advanced notice?
13     A.   No.
14     Q.   Did you decide to clean behind Best Buy and
15 16th and Folsom?
16     A.   No.
17     Q.   Did someone tell you to clean behind Best Buy
18 and 16th and Folsom?
19     A.   Most likely.
20     Q.   And who was that person?
21     A.   It will be the incident commander or Dave --
22 Dave -- Dave's department.
23     Q.   Dave's department, you said, correct?
24     A.   Yeah, the Department of Emergency.
25     Q.   Department of Emergency Management, correct?

1  A. Yeah, yeah. Yes.
2  Q. And as part of this CMMS report, there are a
3  number of pictures, correct?
4  A. Yes.
5  Q. Okay. And according to this CMMS report, were
6  any of these items bagged and tagged?
7  ATTORNEY MURPHY: Object to form.
8  THE WITNESS: I can't -- I don't recall. But by the
9  looks of the pictures, it looks pretty bad. But, no, I
10 don't recall.
11 BY ATTORNEY TALLA:
12 Q. And when you say "it looks pretty bad," what
13 are you referring to?
14 A. Just all the debris outside on the sidewalk.
15 Q. Do you see tents depicted in these photographs?
16 A. I believe so.
17 Q. And do you see carts depicted in these
18 photographs?
19 A. No.
20 Q. Okay. I'm going to direct your attention the
21 page at the bottom that says page 2213.
22    Do you see that?
23 A. Yeah. Yes.
24 Q. And there are five photographs on this page,
25 correct?

```
 1        A.    Yes.
 2        Q.    Do you recognize this location?
 3        A.    Yes.
 4        Q.    Where is this location?
 5        A.    Best Buy.
 6        Q.    Is this behind the Best Buy?
 7        A.    Yes.
 8        Q.    Okay.  This area was not a location that had
 9   advanced notice of an encampment removal, correct?
10        ATTORNEY MURPHY:   Object to form.
11        THE WITNESS:   I don't know.
12   BY ATTORNEY TALLA:
13        Q.    It certainly wasn't listed -- this location was
14   not listed on the notice that I showed you in Exhibit
15   1132, correct?
16        A.    Yeah.
17        Q.    It was not listed, correct?
18        A.    No.
19        Q.    Okay.  So now I'm going to play a video that
20   was produced to Ms. Murphy yesterday.
21        A.    Okay.
22        ATTORNEY MURPHY:   I will note my same objection to
23   the use of Exhibit 1133 and concerns about the
24   timeliness of Plaintiffs' production.  I will allow the
25   witness to answer questions, but I hope it doesn't
```

1  happen again.
2      ATTORNEY TALLA:  All right.  You'll have to bear
3  with me because this is on my laptop.
4          And so I'm going to mark this exhibit as
5  Exhibit 1133.  I can follow up with you after this
6  deposition about how best to transfer it to make it part
7  of this record.
8          (Deposition Exhibit 1133 was marked for
9          identification.)
10 BY ATTORNEY TALLA:
11     Q.   But do you recognize, based on this initial
12 image of the video, what location this is?
13     A.   Best Buy.  Behind Best Buy.
14     Q.   Okay.  And I'll represent to you that this is a
15 video that was taken on August 6th, 2024.  I'm going to
16 try to make this a little bit brighter.
17          Okay.  Can you see that okay?
18     A.   Oh, yeah.
19     Q.   Okay.  All right.  I'm also going to try to
20 play this for you.  Let me play it through once, and you
21 can just watch it.
22          (Video played.)
23 BY ATTORNEY TALLA:
24     Q.   Okay.  So we just finished watching the video
25 one time through.

```
 1        ATTORNEY MURPHY:  Can I pause for a minute?  Does
 2   this video have sound?
 3        ATTORNEY TALLA:  It does.  And I will play it with
 4   sound, but --
 5        ATTORNEY MURPHY:  That's fine.  I just want the
 6   record to reflect the witness was allowed to watch the
 7   video without sound.
 8        ATTORNEY TALLA:  Great.
 9   BY ATTORNEY TALLA:
10        Q.   Did you see yourself depicted in the video we
11   just watched?
12        A.   Yes.
13        Q.   And were you the person who was holding a red
14   shovel?
15        A.   Yes.
16        Q.   And did the video depict you and other DPW
17   workers removing things and placing them on a truck to
18   be discarded?
19        A.   Yes.
20        Q.   Did you decide when to begin discarding the
21   items at that location?
22        A.   I don't recall.
23        Q.   Would there have been any other person who
24   would have told you to begin discarding the items at
25   that location?
```

1    A.    Could have been Fire or the incident commander.
2    Q.    Are there occasions in which the incident
3    commander tells you to begin discarding items at a
4    resolution?
5    A.    No.  We might talk about it and come up with a
6    time, a given time on top of the three-day notice that
7    they already had.  They should have been moved.  So by
8    that time we get there, it's like, okay, you guys might
9    have advanced notice, advanced time, you know.
10   Sometimes it could just be a simple debris removal also,
11   you know.  And then the people can take whatever they
12   want.
13   Q.    You've acknowledged that this particular
14   location was not part of the advanced notice locations?
15       ATTORNEY MURPHY:  Object to form.
16       THE WITNESS:  No, I don't -- I don't know.  I was
17   just doing what I was asked.
18   BY ATTORNEY TALLA:
19   Q.    And who asked you to clean at this location?
20   A.    Most likely the incident commander or the
21   Department of Emergency.
22   Q.    And did they tell you when to begin cleaning at
23   this location?
24   A.    I don't recall.
25   Q.    Okay.  I'm going to play it with sound now

1   and...
2           (Video played.)
3   BY ATTORNEY TALLA:
4       Q.  So let me just pause it for a second.  There's
5   a very high-pitched something happening there.  So --
6       A.  Mm-hmm.
7       Q.  -- apologies.  But also, try to listen because
8   there is sound.  And I can get this closer to you.
9       A.  Okay.  Okay.
10      ATTORNEY MURPHY:  Looks like it's buffering.
11      ATTORNEY TALLA:  Yeah.  Let me just know if it...
12          Did it stop?
13      THE WITNESS:  It's buffering right now still.  It's
14  buffering a couple of seconds.
15          (Video played.)
16  BY ATTORNEY TALLA:
17      Q.  Okay.  Thank you.
18          Do you recognize the other DPW workers in that
19  video?
20      A.  Yes.
21      Q.  Who are those people?
22      A.  Herbert Ruth, Scott Branch, Daniel Trayer, and
23  Greg Shivers.
24      Q.  And was there a woman there in the video?
25      A.  Yes.

1    Q.   Okay.  Was that woman asking to have her
2  belongings not discarded?
3    A.   No, not that I know of.
4    Q.   Did you hear her say, "I need that cart"?
5    A.   Yes, I heard her say something about a cart.
6    Q.   You heard her say --
7    A.   Yeah.  Yeah.
8    Q.   -- "I need that cart," correct?
9    A.   I heard her say something about a cart to move
10 some items.
11   Q.   And was there any reason why she was not
12 allowed to keep that cart?
13        ATTORNEY MURPHY:   Object to the form; misstates
14 testimony.
15        THE WITNESS:   It could have -- possibly she already
16 had another cart.
17 BY ATTORNEY TALLA:
18   Q.   Is there a policy or rule that says that if an
19 unhoused person has one cart, they can't have another?
20   A.   No.  But -- no, not that I know of.
21   Q.   Did you see DPW workers placing a suitcase on
22 the back of the truck?
23   A.   Yes.
24   Q.   Okay.  And was that suitcase discarded?
25   A.   Most likely.

```
 1        Q.   And why was that suitcase discarded?
 2        ATTORNEY MURPHY:  Object to form.
 3        THE WITNESS:  It was probably given consent to
 4   discard.  Nobody was there.  I mean, the lady -- if it
 5   was belonged to the lady or the lady wanted it, she
 6   could have -- she could've took it.
 7   BY ATTORNEY TALLA:
 8        Q.   And if she was there asking for it, should she
 9   have been given that suitcase?
10        ATTORNEY MURPHY:  Object to form.
11        THE WITNESS:  Well, she was there.
12   BY ATTORNEY TALLA:
13        Q.   And did she ask for the suitcase?
14        A.   Most likely no.
15        Q.   Did you see anything depicted in the video that
16   was a violation of the bag-and-tag policy?
17        ATTORNEY MURPHY:  Object to form.
18        THE WITNESS:  No.
19        ATTORNEY TALLA:  Okay.  I'm going to mark this as
20   Exhibit 1133.
21        THE REPORTER:  -34.
22        ATTORNEY TALLA:  1134, right.
23            (Deposition Exhibit 1134 was marked for
24            identification.)
25        ATTORNEY TALLA:  So this one I believe comes from
```

1  produced yesterday.
2      ATTORNEY MURPHY:  And same objection to the prior
3  photographs exhibits.
4          (Deposition Exhibit 1136 was marked for
5          identification.)
6  BY ATTORNEY TALLA:
7      Q.  Okay.  The first photograph depicts a tent,
8  correct?
9      A.  Mm-hmm.  Yes.
10     Q.  Okay.  And the second photograph depicts the
11 interior of the tent, correct?
12     A.  Yes.
13     Q.  And the third photograph depicts the interior
14 of a tent, correct?
15     A.  Yes.
16     Q.  Okay.  And the fourth picture depicts DPW
17 workers breaking down a tent, correct?
18     A.  Yes.
19     Q.  Do you recognize yourself in the fourth
20 photograph?
21     A.  Yes.
22     Q.  And which one are you?
23     A.  The one with the red hat.
24     Q.  I'm going to represent that this -- these
25 photographs were taken on December 9th, 2024.

```
 1              Do you recall breaking down this tent?
 2        A.    Yes.
 3        Q.    Did you look inside the tent before you broke
 4   it down?
 5        A.    Yes.
 6        Q.    And what did you conclude about whether the
 7   tent was attended or unattended or abandoned?
 8        A.    I believe the tent was abandoned.
 9        Q.    And what about the exterior or the interior of
10   the tent or any other circumstances led you to the
11   conclusion that it was abandoned?
12        A.    The tent was soiled.  It was sitting in urine.
13   There was drug paraphernalia on the inside, some
14   need- -- I believe there was a needle in there.
15        Q.    And according to your practice, you would have
16   taken photographs of those items that you just listed,
17   correct?
18        A.    Yes.
19        Q.    And then did you discard this item?  Did you
20   discard this tent?
21        A.    I'm pretty sure.
22        Q.    And did you discard the items inside the tent?
23        A.    Possibly.
24        Q.    Is there a possibility that you bagged and
25   tagged the items inside the tent?
```

```
 1       A.    Anything's possible.
 2       Q.    If you had bagged and tagged the items inside
 3  the tent, would you have created a CMMS report for that
 4  bag-and-tag?
 5       A.    I should have.
 6       ATTORNEY TALLA:  Okay.  I'm going to show you an
 7  exhibit marked 1136.
 8       THE REPORTER:  -37.
 9       ATTORNEY TALLA:  I'm always one behind.  I'm sorry.
10  Okay.
11            (Deposition Exhibit 1137 was marked for
12            identification.)
13       ATTORNEY TALLA:  For the record, I am handing
14  Mr. Graham an excerpt from an incident report.  The
15  incident report number is 230637231, and the Bates
16  numbers that are part of this Exhibit 1137 are a Bates
17  number ending in -198691 and -198692.  And there's some
18  redactions on the exhibit that I've provided to
19  Mr. Graham.
20  BY ATTORNEY TALLA:
21       Q.    Okay.  So, Mr. Graham, have you -- do you ever
22  receive copies of incident reports from the
23  San Francisco Police Department?
24       A.    No.
25       Q.    Okay.  So have you ever seen this type of
```