June 10, 2025

**VIA ECF**
Hon. Donna M. Ryu, Chief United States Magistrate Judge
United States District Court, Northern District of California

Re: Defendants' Response to Plaintiffs' Letter re: Defendants' Trial Exhibit List (ECF No. 392)
*Coalition on Homelessness v. City and County of San Francisco*, No. 4:22-cv-05502-DMR

Dear Judge Ryu,

We write to respond to Plaintiffs' improper letter, filed June 9, 2025. ECF No. 392.

*First*, the Court should deny Plaintiffs' letter for their failure to engage in any meet and confer–a process that likely would have resolved, or at least clarified, the supposed dispute.[1]

Civil Local Rule 7-11 requires a threshold meet and confer for administrative relief and a sworn declaration explaining why a stipulation could not be reached. Rather than follow these procedures, Plaintiffs unilaterally filed their June 9, 2025 "letter" without attempting to meet and confer. Plaintiffs did not even acknowledge receipt of the City's Trial Exhibit List, which the City served on Friday, June 6, only thirty-five minutes after Plaintiffs served their own "updated" Trial Exhibit List. Since last Friday, Plaintiffs remained strategically silent on this issue, while repeatedly corresponding with the City on other pretrial matters. The City shares an interest in knowing exactly what issues will be relevant at trial and reducing the size of its exhibit list, and stands ready to do so if Plaintiffs adhere to the local rules and join a meet and confer.

*Second*, the size of the City's exhibit list is the result of Plaintiffs' own failure to exhaustively identify the dates, times, and locations where it contends the City's conduct violated either the Fourth or Fourteenth Amendment. This is precisely why a meet and confer was necessary.[2] Plaintiffs' position is that at trial they are not limited to the instances of alleged misconduct identified in their discovery responses, or even the broader set of instances identified in their summary judgment motion. Instead, Plaintiffs argue the Court should allow them to establish at trial that the City violated the Fourth or Fourteenth Amendment in *any* operation in a roughly five-year period from September 2020 to February 2025 so long as either party produced *any* evidence about that event in discovery—regardless of whether Plaintiffs previously disclosed their contention that the City's conduct at that date, time, and location was unlawful. Although the City objected to this approach, its motion is still outstanding and the City must prepare for trial under the contingency that the Court allows Plaintiffs to present evidence of previously undisclosed incidents.

Plaintiffs continued to expand the scope of their claims with draft pretrial filings, where for instance, Plaintiffs now claim Patrick Dubose is a Coalition member despite (a) his express

---

[1] Promptly after Plaintiffs filed their letter, the City invited them to withdraw the letter and meet and confer. Plaintiffs declined.

[2] The City's May 29 email moving back the exhibit list exchange date four days (from June 2 to June 6) explained as much to Plaintiffs: "Our working list of exhibits is quite voluminous (more than 10,000), and we need a few more days to winnow this down to a more manageable number, which will conserve the resources of both parties. (Candidly, a key reason for the volume is the lack of clarity and certainty concerning the incidents at issue.)" This goal was accomplished. The City's June 6 exhibit list included fewer than half the exhibits on the list the City would have otherwise served on June 2.

testimony to the contrary, (b) Coalition's failure to designate him as such in interrogatories and initial disclosures, and (c) their failure to rely upon him as a member at summary judgment. Plaintiffs also identify new documents on their own exhibit list that apparently relate to instances they intend to assert were unlawful for the first time at trial. If Plaintiffs are willing to stipulate that they will not object to the introduction of documents responsive to any allegedly unlawful incident they raise at trial because the document was not on the City's exhibit list, then the City can significantly reduce the number of documents on its list. Unfortunately, Plaintiffs have refused to meet and confer to discuss such a solution.

In contrast to the ever-increasing sprawl of Plaintiffs' claims as we near trial, the City has taken pains to narrow what is at issue. The City's exhibit list is responsive to Plaintiffs' growing contentions. In fact, over the past several weeks following discovery and the summary judgment hearing, the City has combed through the record—and through Plaintiffs' draft Trial Exhibit List—to identify any date that could possibly be a component of Plaintiffs' case in chief based on their novel theory that they can invoke any instance of property destruction or lack of notice without relevant disclosure in discovery. The City then conservatively identified produced records roughly corresponding with those dates, including reasonable ranges where Plaintiffs' incidents do not offer a clear location, date, or time. It is these documents that comprise the bulk of the City's exhibit list. For example, 1,733 exhibits—40 percent of the City's exhibits—are photographs and videos taken by or memorandums written by ACLU investigator Dylan Verner-Crist. This is not the full universe of documents he produced, which was 2,694 records. The City spent significant effort and time limiting its designation of Mr. Verner-Crist's records to only those that seemingly correspond to the incidents identified in Plaintiffs' own trial exhibits served on June 2.

More than thirty percent of the City's remaining exhibit list are compilations of routine business records (HSOC Notes, Notices, Templates, Schedules, etc.) regarding City encounters with persons experiencing homelessness. The City could have substantially reduced the number of exhibits in these categories if Plaintiffs identified which of the City's operations they will argue were unlawful.

- 832 exhibits—approximately twenty percent—are photographs or emails proving 72-hour advance notice of an HSOC resolution, which refute Plaintiffs' allegations that no advance notice was posted. Because Plaintiffs have not yet identified the full scope of the dates, times, and locations where they contend the City provided inadequate notice, the City does not know which of these hundreds of photographs will be required for it to defeat Plaintiffs' contentions.
- 302 of the City's exhibits—approximately seven percent—are HSOC notes, which memorialize activity at a particular day's HSOC or JFO operations. These records show that the City's conduct at each operation complied with the law by documenting where operations took place and the circumstances presented by City employees. Again, unless Plaintiffs limit the dates, times, and locations they contend involved unlawful conduct, the City cannot limit its own responsive exhibit list without risking the entirely predictable circumstance where there are documents produced in discovery that would defeat Plaintiffs' claims, but where Plaintiffs object to the City introducing it at trial because the City guessed wrong when it came to what incidents are at issue.
- 208 of the City's exhibits–approximately five percent—are schedules of HSOC and JFO operations during the five-year period at issue, as well as Templates where City employees designate on maps where HSOC operations were to take place. The City could remove many of these documents if Plaintiffs properly disclosed the dates, times, and

location of the events at issue.

      For over two years, the City has attempted to ascertain from Plaintiffs which specific incidents of alleged unlawful property destruction and alleged deficient notice Plaintiffs plan to put at issue at trial. Yet, less than two months from the first day of trial, Plaintiffs remain unwilling to make this essential clarification. Accordingly, the City respectfully requests the Court order the parties to meet and confer regarding the City's exhibit list and limit Plaintiffs to presenting at trial alleged instances of non-compliance that they identified in their verified discovery responses.

Very truly yours,

DAVID CHIU
City Attorney

s/*Kaitlyn Murphy*
Counsel for Defendants