June 11, 2025

**VIA ECF**
Hon. Donna M. Ryu, Chief United States Magistrate Judge
United States District Court, Northern District of California

Re:	Discovery Letter re: Plaintiffs' Request for Information to Ensure Compliance with the Preliminary Injunction
*Coalition on Homelessness, et al. v. City and County of San Francisco, et. al.*, 22-cv-05502

Dear Judge Ryu,

Following the Court's direction at the May 8, 2025 hearing, the parties write pursuant to the Court's Standing Order ¶ 14 regarding Plaintiffs' request for records and disclosures on the City's new encampment response model. The parties met-and-conferred multiple times by email and by video and telephone on April 30 and June 4, 2025. On March 26, 2025, Plaintiffs sought the following from Defendants:

1. Any PPT presentations, playbooks, game scenarios, or other written material that describe the work undertaken by the Neighborhood-Based Response Teams, DPW, and SFPD, including: whether notice and of what kind (written, oral) will be provided in advance of the teams' activities, the role of the respective City agencies on these teams or on other activities relating to unhoused individuals, their belongings, or encampments, and the circumstances under which the DPW bag and tag policy will (or will not) be applied; and

2. On a recurring basis, any daily or weekly written reports or written material describing if and when DPW and SFPD clear encampments, remove unhoused individuals' belongings outside of an HSOC encampment resolution (whether attended, unattended, or abandoned), and bag and tag property. This would include CMMS reports coded "encampment" or "bag and tag," SFPD incident reports relating to enforcement of Cal. Penal Code § 647(e), San Francisco Police Code §168, and San Francisco Police Code § 169 against unhoused individuals that include either of the following terms in the narrative section of the incident report: "property" or "tent, and SFPD incident reports relating to enforcement of Cal. Penal Code § 148(a) that include in the narrative section of the incident report the term "homeless" and either of "property" or "tent."

Plaintiffs maintain that the production of targeted, limited information is critical to ensure Defendants are complying with the preliminary injunction to abide by the City's Bag and Tag policy and not engage in the unlawful destruction of unhoused people's belongings. The City contends Plaintiffs have failed to show they are entitled to the demanded records, the demand is unnecessarily burdensome, and it is premature and procedurally improper. Upcoming case management deadlines: pretrial conference (July 9, 2025), and trial (July 28, 2025).

**Plaintiffs' Position**:
Following the Court's issuance of the preliminary injunction in this case, the parties stipulated to Court ordered productions to ensure compliance with the injunction. The City was to provide (1) advance notice of preplanned encampment resolutions, and (2) ongoing disclosures of records like CMMS records and SFPD incident reports that concern unhoused

people's property.  Dkt. Nos. 129, 235.  The stipulation and court order were premised on the City's HSOC model whereby the City would typically conduct at least two encampment resolutions every business day on delineated streets or blocks.

Curiously timed days after fact discovery closed, Defendants announced an apparent major change to the City's strategy for addressing encampments. On March 26, 2025, the City issued a press release (available at https://www.sf.gov/news-mayor-lurie-launches-integrated-neighborhood-street-teams-on-coordinated-response-to-street-conditions-as-part-of-the-breaking-the-cycle-directive) announcing "a new street team response model" where "neighborhood-based operations will address encampments and unsafe behavior with urgency across San Francisco" "while the Citywide Team will deploy resources to high-need areas, preventing displacement and public safety issues before they escalate."  At the same time, the City drastically reduced the number of HSOC resolutions.  Perhaps by design, the new model precludes meaningful opportunities to monitor the City's compliance.  Rather than provide notice, where Plaintiffs can engage unhoused people in advance, observe the City's operations, and follow up with unhoused people afterwards, Plaintiffs are merely informed that multiple City agencies, including DPW and SFPD, meet every day at 8:00 a.m. at 1145 Market Street.  From there the City goes out to *any neighborhood city wide* to address encampments.  Moreover, these unnoticed operations now occur seven days a week, a significant expansion of operations.

In light of this major policy change, additional information on the new model is warranted. Plaintiffs have been largely unable to monitor the City's new operations, but from the limited observations made, the City still engages in removing unhoused people's property, potentially violating the bag and tag policy.  Publicly available CMMS reports evince apparent unlawful property destruction at operations conducted pursuant to the new model.  However, publicly available CMMS reports alone are insufficient to meaningfully monitor compliance, particularly without the advance notice requisite for in-person observation. The reports frequently are missing information or photographs necessary to assess compliance.

Informed by and made after Plaintiffs reviewed public records and made multiple attempts to track the City's new unnoticed operations with little success, the requests seek discrete documents tailored to monitor preliminary injunction compliance.  (1) **Guidance and training documents** would specify how the City operations are planned in advance, where City agencies go, what notice is required, and to what extent the City removes encampments and/or confiscates property during these operations.  Playbooks and game scenarios would confirm the intended reach and scope of the operations.  (2) **Ongoing disclosures** of documents that record the City's actual daily operations, such as daily notes, CMMS reports, and SFPD incident reports, would provide Plaintiffs with information of where the City actually operated to address encampments, the basis of the dispatch, and the stated resolution of the operation. CMMS reports, if completed, purport to record whether property was destroyed or bag and tagged and the basis for destruction, sometimes with photos.  Relevant SFPD incident reports report whether property was taken attendant to an arrest or for evidence.  Now without any meaningful advance notice, this after-the-fact information is critical for Plaintiffs to investigate an operation after it has occurred, such as interviewing witnesses shortly afterwards who can provide information not otherwise found in CMMS or SFPD reports. Notice is also integral to the preliminary injunction,

bag and tag policy, and preventing 4th Amendment violations. Without notice, now unhoused people are less likely to be able to relocate or protect their belongings.

Defendants' complaint that the requests are broad stem from Defendants' refusal to answer Plaintiffs' simple questions on what records exist for this new model.  Plaintiffs had to craft their request based on testimony from two deponents after the close of fact discovery who confirmed that the City planned to drastically change its operations, and that numerous high-level meetings involving multiple City agencies had occurred prior to the close of fact discovery—including PPT presentations and "scenarios" describing how agencies would engage with encampment removal. Plaintiffs asked the City to confirm what documents had been created regarding this new model, and to confirm what types of daily records of operations are created on an ongoing basis. While the City originally agreed to inquire about whether such information exists by May 9, it has not done so. Specifically, the City would not inquire or disclosure whether there are daily or weekly notes that memorialize the City's operations, ending the meet and confer process.  Such records exist and were readily disclosed for HSOC operations.

"All federal courts are vested with inherent powers enabling them to . . . ensure obedience to their orders." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1136 (9th Cir. 2001); *see also* 28 U.S.C. § 1651.  This includes the production of documents, certifications, and ongoing disclosures.  *See, e.g., Fraihat v. U.S. Immigr. & Customs Enf't*, 2020 WL 2758553, at *4 (C.D. Cal. May 15, 2020); *Parties v. Johnson,* 2017 WL 7512896, at *4 (D. Ariz. May 25, 2017); *Hernandez v. Barr*, 2019 WL 13019923, at *2 (C.D. Cal. Mar. 25, 2019). Given the wide-reaching change in policy that increases the likelihood of noncompliance, Plaintiffs request that Court exercise that power here.

Contrary to Defendants' assertion, Plaintiffs' requests have remained the same. The City's cited language in the CMC statement was Plaintiffs' explanation on relevance and what we expect the requested records to show. Dkt. No. 373 at 6.  Nonetheless as **a final compromise position**, Plaintiffs further narrow their requests to the production of discrete documents that Defendants in deposition have confirmed likely exist: **guidance and training documents**, including Powerpoint presentations, playbooks, and game scenarios; **CMMS reports** coded "encampment" or "bag and tag"; and **SFPD incident reports** relating to Cal. Penal Code § 647(e), San Francisco Police Code §168, and San Francisco Police Code § 169 that include "property" or "tent," in the narrative section, and relating to Cal. Penal Code § 148(a) that include in the narrative section term "homeless" and either of "property" or "tent."
And if Defendants continue to refuse to provide meaningful notice to physically monitor the City's operations, Plaintiffs' final position also includes **ongoing disclosures** on a weekly basis of any **daily or weekly written reports** or written material describing when and where the City clears encampments, removes unhoused individuals' belongings outside of an HSOC encampment resolution (whether attended, unattended, or abandoned), and bags and tags property.  Plaintiffs are unable to narrow the ongoing disclosures of written reports request because the City has refused to inquire what records exist despite agreeing to do so a month ago.

**Defendants' Position**:
Discovery is closed. The Court should deny Plaintiffs' unsupported and untimely demand for new documents, which are not necessary for Plaintiffs to determine whether the City is

3

complying with its remaining obligation under the preliminary injunction, especially where they would impose considerable burdens on the City and Plaintiffs have not shown how they have used the materials they already possess to monitor compliance.

*First*, Plaintiffs have not shown need. The documents Plaintiffs demand are unnecessary for them to monitor compliance with what remains of the injunction. The remaining injunction only requires the City to comply with the Bag & Tag policy based on the Court's Fourth Amendment findings. It does not require anything with respect to Fourteenth Amendment questions of adequate notice. ECF No. 65 at 44 n.18 ("The question of adequate notice under the Fourteenth Amendment is not before the court at this time"). The injunction therefore provides Plaintiffs no basis for records they seek, the majority of which concern notice.

The sole requested records that have any relationship to how the City handles property are the CMMS records, which document DPW's response to service calls. Plaintiffs already received several months' worth of post-discovery CMMS records via a Public Records Act request.[1] The City also agreed to provide an update to these records in an effort to avoid this very discovery dispute. The other requested documents either have nothing to do with whether DPW disposed of property consistent with its policy (*e.g.*, PowerPoints, playbooks), or at best contain duplicative and far less specific information (*e.g.*, police reports that just refer to DPW handling an arrestee's property). These documents, which are not contained in a single database like CMMS, are also significantly more burdensome for the City to search for, collect, and produce. Although Plaintiffs' explanation of why they need CMMS records to monitor compliance is superficial and inadequate, they don't even attempt to explain how the remaining records they demand would show unlawful destruction of an unhoused person's property.

Plaintiffs' statement demonstrates the inadequacy of their position. They acknowledge that they have access to "publicly available CMMS reports," and that those public reports show "unlawful property destruction." But, Plaintiffs insist they need the City to produce CMMS records containing unspecific "missing information" and photos to confirm what they say they already know from the public documents. The City denies Plaintiffs' unfounded accusation—despite having received several months' worth of CMMS records with photos and fulsome information in response to their Public Records Act request, Plaintiffs offer no evidence to support their claim. Regardless, Plaintiffs have obtained the very CMMS records they demand via the Public Records Act and the City has offered to provide an update to those records.

Plaintiffs' statement is incorrect that they lack up-to-date information about where City operations will be conducted. The City continues to provide notice to counsel under the Court Order Regarding Ongoing Discovery to Assess Compliance (ECF No. 235). Plaintiffs do not contend the City has violated that order, or seek reconsideration of the part of it that specifically ended the ongoing production of documents on March 10, the fact discovery cutoff (*id.* at 6).

*Second*, the burden of forcing the City to search for and produce the voluminous requested materials—just weeks before trial and while the parties are preparing their pre-trial

---

[1] DPW completed its production in response to Plaintiffs' records request in mid-May, including CMMS records for the time period February 14, 2025 (the deadline for new facts to be offered at trial) to April 24, 2025.

filings—far outweighs the marginal benefit of them to Plaintiffs. Plaintiffs agree they cannot use any of the requested documents at trial, and so can only use them to support a further motion to enforce the injunction. During the parties' most recent meet and confer, Plaintiffs stated a motion to enforce is not imminent and they would not even confirm they had reviewed the DPW records they received to assess compliance. This whole exercise appears to be, at most, of infinitesimal utility, yet comes at when the parties are extremely busy preparing for trial, which is less than seven weeks away. The Court should not indulge Plaintiffs' unnecessary fishing expedition when, even if Plaintiffs were actually reviewing the thousands of CMMS entries and other documents they received, the only outcome is a theoretical motion to enforce that, if filed today, would not be decided before trial.

Plaintiffs' request also seeks to unilaterally reset multiple heavily-negotiated stipulations and Court orders that addressed the exact issue here—what documents are necessary to ensure compliance with the injunction. *See* ECF Nos. 129, 235. Plaintiffs now seek far more than those orders ever required the City to produce even during discovery. Plaintiffs are incorrect that those orders required the City to produce CMMS records. The only DPW documents the orders required to be regularly produced were DPW bag and tag logs, which Plaintiffs do not seek now. *See* ECF Nos. 129, ¶ 10 ("**DPW Data**: On a periodic basis, Defendants shall produce bag and tag logs of unhoused individuals' personal property."), 235, ¶ 7 (same).

*Third*, Plaintiffs' request for relief is premature because the parties are not at an impasse. On March 26, 2025, more than two weeks after fact discovery closed (March 10), Plaintiffs demanded the huge swath of documents, purportedly to monitor compliance with the Preliminary Injunction, but without any explanation as to why anything demanded was necessary to do so. The City asked Plaintiffs why they were entitled to such documents and on April 1, Plaintiffs threatened to raise the issue to the Court, but still offered no justification for their enormous post-cutoff demand. The City promptly responded and offered several dates to meet and confer. Plaintiffs ignored the offer and sat silently for nearly a month, at which point they again demanded production and made clear they intended to inappropriately raise the non-dispute in the May 1 case management statement. The parties met and conferred and the City committed to determining whether certain documents existed, but Plaintiffs then changed their demand entirely, seeking instead the "[1] number and identity of City agencies participating in the 'new' model, [2] whether City operations are planned in advance and require advance written notice, and [3] whether the City removes encampments and/or confiscates property during these operations." ECF No. 373 at 6. On May 8, the Court ordered the parties to meet and confer and directed Plaintiffs to identify "exactly what you need, and why, so, if it's about compliance, that it is really tailored to that." 5/8/25 Hrg. Tr. 82:10-15. The parties met and conferred, but Plaintiffs (now having abandoned the case management request) refused to narrow their burdensome original requests at all, and failed to identify why, specifically, any particular item requested was necessary to monitor Fourth Amendment compliance (*e.g.*, because it showed what DPW did with a particular item and why). Despite this, the City agreed to consider Plaintiffs' request and determine what it could provide. Plaintiffs rejected this and prematurely declared an impasse.

**The City's Final Offer**: Although the City disputes the necessity for monitoring, it last and best offer is to provide Plaintiffs an updated version of the CMMS reports Plaintiffs previously obtained via their records request.

Respectfully submitted,

/s/ John Do
Attorney for Plaintiffs

/s/John George
 Attorney for Defendants