DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-3857 (Wang)
(415) 554-6762 (Murphy)
(415) 554-3870 (Gradilla)
(415) 554-4223 (George)
(415) 355-3304 (Mills)
Facsimile: (415) 554-4699
E-mail: edmund.wang@sfcityatty.org
kaitlyn.murphy@sfcityatty.org
miguel.gradilla@sfcityatty.org
john.george@sfcityatty.org
steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

[Additional Counsel on next page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 4:22-cv-05502-DMR (LJC)

**NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

Hearing Date: August 14, 2025
Time: 1:00 p.m.
Place: Courtroom 4 – 3rd floor
1301 Clay Street
Oakland, CA 94612

Trial Date: July 28, 2025

WARREN METLITZKY, State Bar #220758
JESSICA ELAINE LANIER, State Bar #303395
NATHAN THEOBALD, State Bar #328837
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7103 [Metlitzky]
(415) 343-7100 [Lanier & Theobald]
Facsimile: (415) 343-7101
E-mail: wmetlitzky@conmetkane.com
jlanier@conmetkane.com
ntheobald@conmetkane.com

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
NOTICE OF MOTION AND MOTION TO STAY ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 3
INTRODUCTION ........ 3
RELEVANT BACKGROUND AND PROCEDURAL HISTORY ........ 4
LEGAL STANDARD ........ 9
ARGUMENT ........ 9
I. A Stay Does Not Harm Plaintiffs ........ 9
II. San Francisco Will Suffer Hardship If Required to Try the Case While the Ninth Circuit Decides Whether Federal Courts Have Jurisdiction ........ 11
III. The Ninth Circuit's Decision Will Determine One of the Most Fundamental Questions ........ 12
CONCLUSION ........ 12

# TABLE OF AUTHORITIES


## Federal Cases

*City of Grants Pass v. Johnson*
603 U.S. 520 (2024)....................4, 5

*CMAX, Inc. v. Hall*
300 F.2d 265 (9th Cir. 1962)....................9

*East Bay Sanctuary Covenant v. Trump*
No. 18-CV-06810-JST, 2019 WL 1048238 (N.D. Cal. Mar. 5, 2019)....................10

*F.D.A. v. All. for Hippocratic Med.*
602 U.S. 367 (2024)....................5

*Fed. Trade Comm'n v. Lending Club Corp.*
No. 18-CV-02454-JSC, 2020 WL 4898136 (N.D. Cal. Aug. 20, 2020)....................11

*Grundstrom v. Wilco Life Ins. Co.*
No. 20-CV-03445-MMC, 2023 WL 8429789 (N.D. Cal. Dec. 4, 2023)....................11

*Kuang v. United States Dep't of Def.*
No. 18-CV-03698-JST, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019)....................9

*Landis v. N. Am. Co.*
299 U.S. 248 (1936)....................9, 11, 12

*Matera v. Google Inc.*
No. 15-CV-04062-LHK, 2016 WL 454130 (N.D. Cal. Feb. 5, 2016)....................12

*Meras Eng'g, Inc. v. CH2O, Inc.*
No. C-11-0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013)....................11

*Nguyen v. Marketsource, Inc.*
No. 17-CV-02063-AJB-JLB, 2018 WL 2182633 (S.D. Cal. May 11, 2018)....................12

*Robledo v. Randstad US, L.P.*
No. 17-CV-01003-BLF, 2017 WL 4934205 (N.D. Cal. Nov. 1, 2017)....................12

## Constitutional Provisions

U.S. Const.,
Article III....................12
Amend. IV....................4
Amend. XVIII....................4, 52

## Federal Statutes

28 U.S.C. § 1292(a)(1)....................9

## State Statutes & Codes

Cal. Pen. Code § 148(a)....................4

**Rules**

Fed. R. Civ P., Rule 12(b)(1) ........................................................................................................6

**Other References**

Sydney Johnson, *San Francisco Mayor Daniel Lurie Plans to Cut 1,400 Jobs in City Budget Proposal*, KQED (May 30, 2025), *available at* https://www.kqed.org/news/12041773/san-francisco-mayor-daniel-lurie-plans-to-cut-1400-jobs-in-city-budget-proposal ...................................................11

**NOTICE OF MOTION AND MOTION TO STAY**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT, on August 14, 2025 at 1:00 p.m., or as soon thereafter as this matter may be heard in the United States District Court for the Northern District of California, 1301 Clay Street, 3rd Floor, Courtroom 4, before the Honorable Donna M. Ryu, Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco" or the "City") will and hereby do move this Court for an order staying proceedings, pending the Court of Appeals for the Ninth Circuit's resolution of the City's pending interlocutory appeal of this Court's denial of the City's motion to dissolve the preliminary injunction.

This motion is based on the need—as the City faces a historic budget challenge—to avoid an enormous waste of taxpayer resources trying a case for the benefit of two permanently-housed individuals and an organization whose only identified members who could support standing are also housed or otherwise not at imminent risk of being subject to alleged unlawful property destruction. The requested stay poses no harm to Plaintiffs, avoids substantial harm to San Francisco, and conserves both Court and taxpayer resources. San Francisco therefore requests the Court stay all deadlines in the scheduling order until no fewer than 14 days after the Ninth Circuit resolves the pending appeal.

/ / /

/ / /

/ / /

The motion is based on the notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted, and any other matters the Court deems appropriate.

Dated: June 13, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys

By: s/John H. George
JOHN H. GEORGE

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT

WARREN METLITZKY
JESSICA ELAINE LANIER
CONRAD METLITZKY KANE LLP

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case involves two permanently-housed individual plaintiffs—Sarah Cronk and Joshua Donohoe—and one organizational plaintiff, the Coalition on Homelessness ("Coalition"). Plaintiffs chose the most difficult possible path to jurisdiction. They could have sued for damages, in which case their concrete injury would likely have been clear. Instead, they seek only equitable relief and therefore saddled themselves with the ongoing requirement to demonstrate imminent harm from the alleged misconduct. In other words, Plaintiffs face the insurmountable burden to show that the unlawful destruction of property in homeless encampments where no Plaintiff currently resides or has an intention of residing causes them certainly impending harm. Now, just weeks before trial is scheduled to begin, the question of jurisdiction over Plaintiffs' claims is before the Ninth Circuit. This Court should stay this action pending the Ninth Circuit's decision and avoid the continuing and accelerating waste of enormous sums of taxpayer money and resources where the Ninth Circuit is set to decide whether the case belongs in federal court at all.

Each stay factor—harm to the non-moving party, hardship to the moving party, and the preservation of judicial resources—strongly supports a stay of all proceedings in this case. First, Plaintiffs will not, and cannot, be harmed by a stay. Cronk and Donohoe are permanently housed and each of the remaining eight people Coalition argues they can rely on for its standing (even though Coalition has no right to invoke these claims as a matter of law) cannot support jurisdiction because they are housed and not at risk of certainly impending harm given their individualized circumstances. Because none are at risk of the alleged misconduct, none will be harmed by a stay.

Second, although San Francisco is not required to show hardship given the lack of harm to Plaintiffs, the City will be forced to waste enormous public resources without a stay. Trial is not only a large financial burden, but it requires taking significant time from and placing significant burdens on the dozens of public servants who are expected to testify. The parties' collective witness lists identify 25 current City employees as potential witnesses. If the Ninth Circuit determines the Court lacks jurisdiction, the City's massive outlay and the burden on its employees will have been for naught.

Waiting the likely modest time for the Ninth Circuit to decide whether the case is properly in this Court is a small, and harmless, way to avoid the risk of squandering public resources at a time when the City can ill-afford to do so.

Finally, because the Ninth Circuit is set to decide an elemental question—can this case even be maintained in federal court—its decision will necessarily clarify the relevant issues.

This Court should stay all proceedings pending the Ninth Circuit's decision.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On September 27, 2022, seven Individual Plaintiffs and the Coalition filed a complaint against San Francisco alleging, among other things, that the City's enforcement of its ordinances restricting aspects of sleeping, lodging, and camping on public property was in violation of the Eighth Amendment's prohibition on cruel and unusual punishment and that the City had an unlawful practice of disposing of homeless persons' property in violation of the City's bag and tag policy and the Fourth Amendment. ECF No. 1. Plaintiffs sought only equitable relief. *Id.* Coalition, which did not allege that any of its own property was seized, alleged that its diversion of resources in response to the City's unlawful conduct gave it standing for its claims. *Id.* at ¶¶ 173-183.

Shortly after filing their complaint, Plaintiffs moved for a preliminary injunction on their Eighth and Fourth Amendment claims, which the Court granted on December 23, 2022. ECF No. 65. The Court enjoined San Francisco "from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, [five specific] laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property," and from "violating San Francisco's bag and tag policy as embodied in DPW Procedure No. 16-05-08 (REV 03)." *Id.* at 50. San Francisco appealed the Court's preliminary injunction order. ECF No. 88.

While the preliminary injunction appeal was pending, the City moved to dismiss the Individual Plaintiffs' claims for lack of standing. ECF No. 112. The Court denied the motion without addressing the Individual Plaintiffs' standing because the Court found that "[t]he Coalition on Homelessness unquestionably has standing to pursue all forms of relief sought through this lawsuit." ECF No. 128.

In January 2024, following the Supreme Court's decision to hear the appeal in *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024), the City moved to stay proceedings pending the Supreme

Court's opinion in that case. ECF No. 204. In that motion, the City argued Plaintiffs would suffer no harm from a stay because they lacked standing. *Id.* The Court granted the City's motion for a stay, but did not address standing. ECF No. 222.

In June 2024, the Supreme Court issued its decision in *Grants Pass* and overturned the Ninth Circuit precedent on which Plaintiffs' Eighth Amendment claims relied. The same term, the Supreme Court also rejected the diversion-of-resources basis for organizational standing that Plaintiffs alleged in their complaint. *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). Once the stay was lifted, the Court invited Plaintiffs to seek leave to amend, which they declined. ECF No. 236. The City filed a motion to dismiss for lack of jurisdiction and judgment on the pleadings arguing, among other things, that the Individual Plaintiffs lacked standing and that their claims were moot because they were all housed. ECF No. 242. The City argued Coalition lacked standing because the diversion-of-resources theory supporting its organizational standing allegations was invalid following *F.D.A. v. All. for Hippocratic Med.* and that it failed to allege associational standing. *Id.* The Court granted in part and denied in part the City's motion. ECF No. 281. The Court found that it lacked jurisdiction over Plaintiffs' disability and state-created danger claims because no Plaintiff had standing to pursue them. *Id.* But the Court did not address whether each Individual Plaintiff had standing for the property destruction claims because it concluded the Coalition had alleged associational standing for those claims, accepting as true all allegations in the complaint, and Coalition was not required at the pleading stage to identify the members on whom Coalition based its associational standing.[1] *Id.* The Court granted Coalition leave to amend to allege facts supporting organizational standing and it filed the Third Amended Complaint ("TAC") on December 18, 2024 (ECF No. 289).

At the same time, the Court granted in part Plaintiffs' motion to enforce the injunction and ordered the City to update its training materials, provide additional ongoing training to employees, and provide periodic updates to the Court and Plaintiffs' counsel on those trainings. ECF Nos. 231, 241.

[1] The Court did address Plaintiffs Toro Castaño's and Nathaniel Vaughn's standing for their property-based claims and concluded both lacked standing because they settled their claims with the City before filing the present action. All their claims were dismissed and they did not attempt to amend. ECF No. 281 at 23-25.

On December 20, 2024, the Coalition responded to the City's interrogatories and identified ten claimed members that it relies on for associational standing: Cronk, Donohoe, Toro Castaño, David Martinez, Shyhyene Brown, Shanna Couper Orona, Sarah Stephenson, James Reem, "Melodie," and Todd Bryant. ECF No. 350-9 at 10-11. With the benefit of this new information disclosed in discovery, the City timely moved to dismiss the TAC under Rule 12(b)(1) for lack jurisdiction because none of the identified individuals had standing and thus could not support the Coalition's associational standing. ECF No. 295. The City's motion also argued the Coalition failed to establish organizational standing and that, because the Coalition lacked standing, the Court should examine the Individual Plaintiffs' standing and dismiss the entire action for lack of jurisdiction. The City's motion, which introduced evidence to show each named individual lacked standing, was a factual attack on Plaintiffs' standing. *Id.* Immediately after the City filed the motion to dismiss the TAC, Plaintiffs filed an administrative motion asking the Court to defer consideration of the motion until summary judgment. ECF No. 296. On January 9, 2025, a week after the City filed its motion to dismiss and before Plaintiffs opposed, the Court denied the City's motion to dismiss and only allowed the City to re-file and move to dismiss on the basis of Coalition's organizational standing. ECF No. 298. The Court disallowed the City from filing a 12(b)(1) motion challenging the Coalition's associational standing or the Individual Plaintiffs' and ruled those could only be challenged "at summary judgment or trial." *Id.* Accordingly, on January 21, 2025, the City filed a renewed motion to dismiss that only challenged the Coalition's organizational standing, but underscored the weakness of associational standing. ECF No. 301. On June 9, 2025, the Court granted the City's motion in its entirety, finding that "even if organizational standing exists, Coalition cannot pursue its own claims against the City because it did not allege that the organization itself suffered an unlawful seizure or deprivation of property without due process." ECF No. 391 at 5.

The City continued to investigate the Plaintiffs' claims and standing through the end of fact discovery and discovered facts showing no Plaintiff has standing or a live case or controversy

supporting the Court's exercise of jurisdiction. The only remaining Individual Plaintiffs[2], Cronk and Donohoe, have been housed since 2023, are permanently-housed now, have no intention of becoming homeless again, and have no intention of storing property on the public right of way. ECF No. 349-4 (Locher Decl.) ¶¶ 6b, 6c; ECF No. 349-7 (Cronk Depo.) 158:3-159:6, 239:9-14; ECF No. 349-6 (Donohoe Depo.) 43:21-44:13, 45:11-13, 58:23-59:1, 59:13-22. At most, they have said that if they suffer a job loss and other financial setbacks—none of which are imminent—they may again be on the street. As for the other eight people Coalition relies on for its standing, none have standing in their own right.

- **Castaño** released his claims and the Court already determined he lacks standing. ECF No. 281 at 24. He is also Redacted Redacted. ECF No. 350-23 (Castaño Depo.) 38:19-40:19, 315:18-317:24; ECF No. 349-4 (Locher Decl.) ¶¶ 6a, 6e; ECF No. 349-3 (Rachowicz Decl.) ¶¶ 5-6. Coalition also abandoned reliance on him at summary judgment and dropped him from its witness list. *See* ECF No. 366 at 19:3-4.
- **Brown** and **Orona** are similarly Redacted when Coalition filed this case, and disclaimed any intent to store items in public. ECF No. 349-13 (Orona Depo.) 21:8-24:17, 120:2-122:25, 185:17-187:1; ECF No. 350-16 (Brown Depo.) 24:18-29:24, 56:19 -61:16. Coalition also disclaimed reliance on Orona at summary judgment, Brown disclaimed being a Coalition member in her deposition, and Plaintiffs dropped Brown from their witness list. *See* ECF No. 366 at 19:3-4.
- **Martinez**, like Castaño, has settled his claims, is housed, and has disclaimed any intent to be homeless or store property on the street. ECF Nos. 390; 350-15 (Martinez Depo.) 55:20-25, 56:8-9, 100:25-101:16; Locher Decl. ¶ 6d; Rachowicz Decl. ¶ 6.
- **Bryant** too was Redacted, and disclaimed any intent to be homeless and store property in public. ECF No. 349-15

[2] As noted above, Plaintiffs Castaño's and Vaughn's claims were dismissed. Plaintiffs Frank, Martinez, and Sandoval each settled with the City and dismissed their claims with prejudice. ECF No. 390. The only remaining Individual Plaintiffs are Cronk and Donohoe.

(Bryant Depo.) 23:25-29:10; 9-6 at 4-1; ECF No. 349-2 (Adamek Decl.) ¶ 7c; Locher Decl. ¶ 6g; Rachowicz Decl. ¶ 6.

- **Melodie** has Redacted Redacted Redacted and thus is not subject to any imminent alleged misconduct. ECF No. 349-14 (Melodie Depo.) 35:20-39:6, 40:22-42:11, 43:10-44:10, 47:3-25; Locher Decl. ¶ 6j.

- Finally, Coalition acknowledges **Stephenson** and **Reem** were not Coalition members when this case commenced, and Coalition acknowledged that it is precluded from relying on new members that post-date the filing of the lawsuit. ECF No. 350-9 at 10-11; 5/8/2025 Hrg. Tr. 37:18-22. Additionally, Stephenson Redacted Redacted and Reem Redacted Redacted so as not to expose it to any harm. ECF Nos. 350-21 (Stephenson Depo.) 24:2-14, 27:5-18, 102:13-16; 349-16 (Reem Depo.) 23:11-21, 31:20-33:6, 42:19-43:24; *see also* Locher Decl. ¶ 6f.; Adamek Decl. ¶ 7d.

Supported by what it learned in discovery, and because no Plaintiff could establish jurisdiction or demonstrate that the preliminary injunction continued to be necessary to prevent immediate irreparable injuries, the City moved to dissolve or vacate the preliminary injunction which remained in effect. ECF No. 353. Plaintiffs, as with the previous motion to dismiss, immediately requested the Court indefinitely defer any consideration of the motion to dissolve the preliminary injunction. ECF No. 360. The Court, before any opposition to the City's motion to dissolve was filed, "denied" it. ECF No. 365. On June 12, 2025, the Court denied the City's summary judgment motion and, necessarily, provided its reasoning for a denial of the motion to dissolve the preliminary injunction. ECF No. 400 at 7 ("[T]he court denied without prejudice the City's motion to vacate because it was largely duplicative of portions of the motion for summary judgment and was therefore dependent on the outcome of the summary judgment motion."). The City timely appealed the Court's refusal to

dissolve the injunction to the Ninth Circuit. ECF No. 376; *see* 28 U.S.C. § 1292(a)(1). Trial is scheduled to begin on July 28, 2025. ECF No. 270.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). To weigh the competing interests, courts examine three factors: "[1] the possible damage which may result from the granting of a stay; [2] the hardship or inequity which a party may suffer in being required to go forward; and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 268. When, as here, a party seeks to stay proceedings (as opposed to an order or judgment) pending an interlocutory appeal, the *Landis* test applies. *Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) ("*Landis* applies to the decision to stay *proceedings*, regardless whether the stay is based on a direct appeal or an independent case.").

## ARGUMENT

### I. A Stay Does Not Harm Plaintiffs

Here, the first factor—possible damage from a stay to the non-moving party—weighs heavily in favor of a stay. Plaintiffs will not be harmed by postponing trial until after the Ninth Circuit resolves the City's appeal. The Plaintiffs are only seeking equitable relief, specifically, "a permanent injunction enjoining and restraining Defendants from seizing and disposing of *homeless individuals*' property in a manner that violates" the Constitution. ECF No. 289 (Third Amended Complaint) at 92. But, none of the Plaintiffs are homeless and thus none can benefit from the very injunction they seek. Cronk and Donohoe have not lived on the street since 2023 and have been *permanently* housed since last year. ECF No. 349-4 (Locher Decl.) ¶¶ 6b, 6c. Each has also disclaimed any intention of living on the street or storing any property in public. ECF No. 349-7 (Cronk Depo.) 158:3-159:6, 239:9-14;

ECF No. 349-6 (Donohoe Depo.) 43:21-44:13, 45:11-13, 58:23-59:1, 59:13-22. Nether Cronk nor Donohoe will be affected in any way by a stay in this case.

Coalition, an organization, is not homeless, never has been, and does not contend its property has been unlawfully destroyed. It therefore cannot be affected, let alone harmed, by a stay. To the extent Coalition relies on claimed members for its own standing and claims, they too are housed, disclaim an intention to store items outside, and suffer no harm from a stay. Coalition identified ten claimed members on whom its standing is based—Castaño, Cronk, Donohoe, Martinez, Orona, Bryant, Brown, Stephenson, Reem, and Melodie. ECF No. 350-9 at 10-11. Even assuming these individuals are members for purposes of associational standing (a point the City disputes), none are at risk of property destruction such that they must receive a permanent injunction to protect their property. Nine have City-provided shelter or permanent housing. *See supra* p.8-9. The sole claimed member who does not have City-provided housing was not a member at the time the case was filed and therefore cannot support Coalition's standing (as conceded on the record), stores belongings in private storage, does not claim to have experienced any unlawful destruction in nearly a year of being unhoused (showing just being unhoused does not mean a person is at imminent risk of harm), and has been offered housing by the City 15-20 times but consistently rejects each offer, holding out for his preferred housing. ECF No. 349-16 (Reem Depo.) 23:11-21, 31:20-33:6, 42:19-43:24.

Further, even if Plaintiffs have standing (which they do not), the preliminary injunction as well as the Court's subsequent order providing for additional training and compliance updates will remain in effect for the duration of any stay. *See East Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2019 WL 1048238, at *2 (N.D. Cal. Mar. 5, 2019) ("Plaintiffs are unlikely to suffer harm if the Court stays these proceedings because the preliminary injunction preventing Defendants from enforcing the Rule will remain in place."). That order requires the City to comply with its current Bag & Tag policy—a policy Plaintiffs agree is Constitutional. ECF No. 65 at 42-43. Accordingly, no Plaintiff, or any of Coalition's identified alleged members, will be harmed by a stay.

## II. San Francisco Will Suffer Hardship If Required to Try the Case While the Ninth Circuit Decides Whether Federal Courts Have Jurisdiction

"Under *Landis*, a party seeking a stay need make such a showing of hardship and inequity only if the party opposing the stay first demonstrates that there is a fair possibility that a stay will cause it injury." *Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-CV-02454-JSC, 2020 WL 4898136, at *2 (N.D. Cal. Aug. 20, 2020) (cleaned up); *see Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at *4 (N.D. Cal. Jan. 14, 2013) ("Before Defendant is obligated to show a clear case of hardship . . . Plaintiffs must first make out a fair possibility that they will be harmed by the stay."). As set out above, Plaintiffs cannot demonstrate that staying the proceedings until the Ninth Circuit resolves the interlocutory appeal will injure them. The City therefore need not make a showing of hardship or inequity. Even so, such hardship is plainly present because "both parties, in the absence of a stay, may be required to unnecessarily expend time and resources." *Grundstrom v. Wilco Life Ins. Co.*, No. 20-CV-03445-MMC, 2023 WL 8429789, at *4 (N.D. Cal. Dec. 4, 2023). "[C]ourts have recognized such 'wasted' effort constitutes hardship under *Landis*." *Id*. Here, the Ninth Circuit could very well decide the case should be dismissed for want of jurisdiction. That would obviously dispose of this entire action, rendering all effort and the significant costs of trial—financial and otherwise—wasted. This waste is particularly abhorrent now, as the City faces a budget deficit of nearly one billion dollars, has had to take significant steps to close the deficit (including layoffs), and must ensure all available public funds are safeguarded. *See* Sydney Johnson, *San Francisco Mayor Daniel Lurie Plans to Cut 1,400 Jobs in City Budget Proposal*, KQED (May 30, 2025), *available at* https://www.kqed.org/news/12041773/san-francisco-mayor-daniel-lurie-plans-to-cut-1400-jobs-in-city-budget-proposal. Even if the Ninth Circuit determines the Court has jurisdiction over some or all parties and claims, waiting for that decision before trying the case will allow the parties to try the case with the guidance of such a decision and, for example, not waste limited trial time focusing on issues the Ninth Circuit has already decided. In short, although San Francisco need not show any harm, staying the case will avoid the significant harm of spending limited public funds and public servants' time and effort on a trial that could be declared entirely invalid. *See Lending Club*, 2020 WL 4898136 at *3 (finding "many cases emphasize the expenditure of party and judicial resources as grounds for

granting a stay" and collecting cases); *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017)*;* ("Denying the stay at this juncture risks forcing the parties to expend resources that could have been avoided."); *Nguyen v. Marketsource, Inc.*, No. 17-CV-02063-AJB-JLB, 2018 WL 2182633, at *7 (S.D. Cal. May 11, 2018) ("granting a stay will conserve judicial resources that would otherwise be unnecessarily expended").

**III. The Ninth Circuit's Decision Will Determine One of the Most Fundamental Questions**

The final factor—the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay—also weighs strongly in favor of a stay here. The Ninth Circuit, in deciding the City's appeal, will decide an elemental, potentially dispositive question in the case; that is, whether federal courts have jurisdiction. This decision could hardly be more important to simplifying the case. If the Ninth Circuit finds a lack of jurisdiction, the case will be dismissed. If not, the case will go forward, but with the benefit of any clarification on standing provided by the Ninth Circuit, and, as explained above, without any prejudice to Plaintiffs from a stay. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (third *Landis* factor supports stay because "regardless of which path the U.S. Supreme Court ultimately takes, [the decision] may provide substantial guidance as to what statutory violations (if any) confer Article III standing").

Here, each of the relevant factors weighs heavily in favor of staying this case until the Ninth Circuit decides the City's interlocutory appeal. Plaintiffs will not be affected, let alone harmed, by a stay. San Francisco, despite not needing to establish hardship, will have to expend significant time and public resources if the case is not stayed and face a significant risk that they will be wasted. Finally, the Ninth Circuit will be deciding one of the most fundamental questions in the case.

**CONCLUSION**

For the reasons stated above, the Court should stay all proceedings until 14 days after the Ninth Circuit resolves the City's appeal.

Dated: June 13, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys

By: s/John H. George
JOHN H. GEORGE

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT

WARREN METLITZKY
JESSICA ELAINE LANIER
CONRAD METLITZKY KANE LLP

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT