UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,<br><br>          Plaintiffs,<br><br>          vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>          Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**JOINT PRETRIAL STATEMENT**<br><br>Hearing Date:     July 9, 2025<br>Time:               1:00 p.m.<br>Place:              Hon. Donna M. Ryu<br>                    Courtroom 4—3rd Floor<br>                    1301 Clay Street<br>                    Oakland, CA 94612<br><br>Trial Date:        July 28, 2025 |

Plaintiffs Sarah Cronk, Joshua Donohoe, and the Coalition on Homelessness and Defendants City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, and San Francisco Department of Emergency Management (collectively "San Francisco," or the "City") submit this Joint Pretrial Statement pursuant to the Third Amended Case Management and Pretrial Order for Court Trial dated June 29, 2024, and the Order Modifying The Third Amended Case Management and Pretrial Order for Court Trial dated June 9, 2025.  (ECF Nos. 270, 389).

**I.      The Action (Pretrial Order § (5)(c)(1)(a))**

**A.      Substance of the Action (Pretrial Order § (5)(c)(1)(a)(i))**

This case arises under 42 U.S.C. § 1983. Plaintiffs allege that Defendants are liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for their employees' violations of the Fourth Amendment and the Fourteenth Amendment's Due Process Clause, as well as analogous provisions in the California Constitution.

Plaintiffs contend that, for many years, Defendants have engaged—through their employees in the Department of Emergency Management ("DEM"), the Department of Public Works ("DPW"), the San Francisco Police Department ("SFPD"), the San Francisco Fire Department ("SFFD"), and other agencies—in a pattern and practice of unlawfully seizing and destroying the belongings of unhoused people in San Francisco. Further, Plaintiffs contend Defendants' employees have failed to provide either adequate pre-deprivation notice to unhoused people before taking their belongings or adequate post-deprivation notice or process that allows unhoused individuals to retrieve property that the City has taken into custody. Plaintiffs also assert that while DPW adopted a "bag and tag" policy that governs the manner in which DPW workers must handle unhoused individuals' belongings, DPW has failed to apply the policy in a constitutionally appropriate manner and has failed to adequately train its workers on the policy, leading to unlawful property destruction. On December 23, 2022, Court issued a preliminary injunction requiring Defendants to comply with the DPW "bag and tag" policy. *See* Dkt. 65. Defendants deny Plaintiffs' contentions.

Four causes of action remain in the Third Amended Complaint ("TAC"). (ECF No. 289).

1.      First Cause of Action – 42 U.S.C. § 1983 – Property Destruction: Unreasonable Search and Seizure Under the Fourth Amendment to the U.S. Constitution, alleged by all Plaintiffs against Defendants City of San Francisco, SFPD, and DPW.

2.      Second Cause of Action – Article I, § 13 of the California Constitution – Property Destruction: Unreasonable Search and Seizure, alleged by all Plaintiffs against Defendants City of San Francisco, SFPD, and DPW.

3.      Third Cause of Action – 42 U.S.C. § 1983 – Violation of Procedural Due Process Under the Fourteenth Amendment to the U.S. Constitution, alleged by all Plaintiffs Against all Defendants.

4.      Fourth Cause of Action – Article I, §§ 7(a), 15 of the California Constitution – Violation of Procedural Due Process, alleged by all Plaintiffs against all Defendants.

The parties agree Plaintiffs' first and second claims are analyzed under the same legal standard and that Plaintiffs' third and fourth claims are analyzed under the same legal standard.

The City's deadline to answer the TAC is June 23, 2025 because the Court granted the City's partial motion to dismiss the TAC on June 9, 2025. (ECF No. 391).

The City contends Plaintiffs cannot carry their burden as to each element of their claims and the City's defenses, as identified in its Responses to Plaintiffs' Third Set of Interrogatories, are:

- Plaintiffs lack standing for the claims they allege and the relief they seek;

- Plaintiffs consented to the seizure of property or abandoned their property;

- Plaintiffs have unclean hands;

- Plaintiffs waived the claims they allege and the relief they seek;

- Plaintiffs are estopped from bringing the claims they allege and the relief they seek and/or their claims and relief are barred by the doctrine of res judicata;

- Plaintiffs' claims are barred because state law provides a remedy for the alleged destruction of personal property by a government employee. *See Hudson v. Palmer*, 468 U.S. 517 (1984);

- Plaintiffs engaged in claim splitting which bars their claims and the relief they seek;

- Plaintiffs' claims are barred by the statute of limitations;

- The relief Plaintiffs seek is barred by the separation of powers doctrine;

- Defendants are not separate and distinct legal entities and thus are not proper parties to this litigation;

- Plaintiffs' claims are moot;

- Plaintiffs' claims and the relief they seek are barred by the California Government Code;

- The relief Plaintiffs seek would compel an improper allocation of taxpayer funds;

- Plaintiffs are not the real party in interest for the claims they seek to invoke;

- Plaintiffs released their claims;

- Plaintiffs' claim for injunctive relief is barred by the doctrine of laches, or alternatively, any injunctive relief should be denied to the extent Plaintiffs unduly delayed in seeking injunctive relief;

- Plaintiffs' claim for injunctive relief is barred because Plaintiffs have adequate remedies at law and the failure to seek damages infringes on Defendants' Seventh Amendment right to a jury trial. *See O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); and

- Plaintiffs cannot carry the burden to establish their property-based claims, including that any seizure of property was unreasonable and unjustified.

**B.    Relief Prayed (Pretrial Order § (5)(c)(1)(a)(ii))**

Plaintiffs seek the following relief in the TAC:

**<u>Declaratory Relief:</u>**

a. Declare that Defendants' ongoing seizure and destruction of the personal property of unhoused people violates the Fourth and Fourteenth Amendments to the U.S. Constitution; Article I, §§ 7(a) and 13 of the California Constitution;

b. Declare that Defendants have failed to appropriately train staff to seize property from unhoused people only in conformance with the Fourth and Fourteenth Amendments to the U.S. Constitution; Article I, §§ 7(a), and 17 of the California Constitution;

**<u>Injunctive Relief:</u>**

a. Grant a permanent injunction enjoining and restraining Defendants from seizing and disposing of homeless individuals' property in a manner that violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 7(a) and 13 of the California Constitution;

b. Issue a mandatory order compelling Defendants to take protective measures, including adequately training staff, to ensure any seizing of property conform with the Fourth and Fourteenth Amendments to the U.S. Constitution; Article I, §§ 7(a), 13, and 17 of the California Constitution;

**Other Relief:**

a. Order Defendants to pay for Plaintiffs' attorneys' fees and costs; and

b. Grant Plaintiffs such further relief as the Court deems just and proper.

The City denies Plaintiffs are entitled to any of the requested relief.

## II.     The Factual Basis of the Action (Pretrial Order § (5)(c)(1)(b))

### A.     Undisputed Facts (Pretrial Order § (5)(c)(1)(b)(i))

The following facts are undisputed for purposes of this litigation and the parties stipulate as follows:

**DPW**

1.      DPW has approximately 1,800 budgeted positions.

2.      DPW is divided across several bureaus. The DPW employees responsible for implementing the Bag & Tag Policy all work within the Bureau of Street and Environmental Services ("BSES").

3.      BSES itself is further divided into teams. As of February 14, 2025, the teams with responsibility for implementing the Bag & Tag Policy included: Zone, Hot Spot, Special Projects, and Reactionary.

4.      As of December 2024, the Zone, Hot Spot, Special Projects, and Reactionary teams in addition to BSES Supervisors totaled 107 active employees in addition to seven employees on leave.

**Bag and Tag**

5.      DPW's Bag and Tag Log lists property belonging to homeless people that is bagged and tagged by DPW. See e.g., CCSF-COH_016893 [Defendants' Trial Exhibit (DX) 1829], CCSF-COH_344557 [DX-1830], CCSF -COH_016894 [DX-1831]; CCSF-COH_357329 [DX-1832], CCSF-COH_356951 [DX-1833].

6.     DPW's general practice is for employees to complete the Homeless Property Information Form for bagged and tagged property when they arrive at the DPW Storage Yard at 2323 Cesar Chavez Street with the property.

7.     DPW's general practice is for employees to place colored tags on property seized for bagging and tagging when the property arrives at the DPW storage yard.

8.     DPW's Special Projects team tracks all bagged and tagged property, including property DPW picks up from SFPD police stations, on the same yearly Bag and Tag Log.

9.     DPW Procedure No. 16-05-08 (REV 3) [the "Bag & Tag Policy] is DPW's current written policy regarding the removal and temporary storage of personal items collected from public property and has been in effect since February 8, 2022. CCSF-COH_000385 [DX-3980].

**Notice**

10.    The City's general practice is for members of the Homeless Outreach Team ("HOT") or the Encampment Resolution Team ("ERT") to have responsibility for posting 72-hour advance written notice of HSOC Encampment Resolutions.

**Joint Field Operations**

11.    In 2022, the City launched the Joint Field Operation ("JFO"). JFO is a multi-departmental effort that operated seven days per week in set geographic zones, generally within the Tenderloin, between the hours of 9:00 a.m. and 1:00 p.m.

12.    SFPD, DPW, HSH, SFFD, and/or DEM are City departments that may participate in JFOs. Not all of these agencies were present at each JFO.

**HSOC Encampment Resolutions**

13.    SFPD, DPW, HSH, SFFD, and/or DEM typically participate in the Healthy Streets Operation Center ("HSOC") operations.

14.    Members of the Homeless Outreach Team ("HOT") also participate in HSOC and regularly attend resolutions. HOT members are employees of a City contractor.

15.     Between the date Plaintiffs filed their complaint and February 14, 2025, Defendants typically conducted two HSOC encampment resolutions every weekday (one AM and one PM), excluding holidays.

16.     The following statistics represent the number of HSOC operations within certain periods of time:

a.      Between July 11, 2020 and February 15, 2025, the City performed 2382 HSOC operations. CCSF-COH_573455 [DX-1813].

b.      Between September 27, 2020 and February 15, 2025, the City performed 2279 HSOC operations. CCSF-COH_573455 [DX-1813].

c.      Between September 27, 2022 and February 15, 2025, the City performed 1296 HSOC operations. CCSF-COH_573455 [DX-1813].

17.     Pursuant to a court order (Dkt. Nos. 129 and 235), the City continues to provide Plaintiffs' counsel and Plaintiff Coalition on Homelessness advance notice of Healthy Street Operations Center ("HSOC") encampment resolutions.

**CMMS**

18.     DPW's BSES uses an information management system called Computerized Maintenance Management System ("CMMS") to open, close, and document service orders, including orders related to homeless encampments and bag and tag.

**SFPD**

19.     On December 15, 2020, SFPD published Department Notice 20-167 "Protocol for Processing Homeless Property consistent with DPW's 'Bag & Tag' Policy." CCSF-COH_199465 [DX-8].

20.     On July 8, 2024, SFPD published Department Notice 24-114 "Protocol for Processing Property Consistent with DPW's 'Bag & Tag' Policy" which was an update to Department Notice 20-167. CCFS-COH_263648 [DX-1524].

21. On September 12, 2024, SFPD published Department Notice 24-140 "Protocol for Processing Property Consistent with DPW's 'Bag & Tag' Policy," which superseded Department Notice 24-114. CCSF-COH_716684 (Plaintiffs' Trial Exhibit PX) PX-4].

22. When DPW bags and tags property belonging to a homeless person who was arrested from an SFPD station, DPW's general practice is to list the police station address as the address for the item(s) on DPW's Bag and Tag log.

**Storage Yard**

23. DPW stores items it bags and tags at the DPW Storage Yard at 2323 Cesar Chavez. It has stored bagged and tagged material at this location at all times relevant to this litigation.

24. If a person comes to the DPW Storage Yard to retrieve property that DPW bagged and tagged and DPW cannot locate the individual's property, DPW offers that individual a government claim form.

25. If a person comes to the DPW Storage Yard to retrieve their property and DPW cannot locate an entry for the property in DPW's electronic records, DPW typically does not conduct a manual or visual search for the property in the containers storing bagged and tagged property.

**Defendants**

26. The San Francisco Police Department ("SFPD") is an agency of the City and County of San Francisco.

27. The San Francisco Department of Public Works ("DPW") is an agency of the City and County of San Francisco.

28. The San Francisco Department of Homelessness and Supportive Housing ("HSH") is an agency of the City and County of San Francisco.

29. The San Francisco Fire Department ("SFFD") is an agency of the City and County of San Francisco.

30. The San Francisco Department of Emergency Management ("DEM") is an agency of the City and County of San Francisco.

31.     Between the date Plaintiffs filed their complaint and February 14, 2025, DEM employed the director of the Healthy Streets Operations Center ("HSOC").

32.     Between the date Plaintiffs filed their complaint and February 14, 2025, the Director of the Department of Emergency Management directly supervised the HSOC director.

**B.     Stipulations (Pretrial Order § (5)(c)(1)(b)(ii))**

The Parties stipulate as follows for the purpose of this litigation:

**Stipulations Regarding Authenticity**

33.     The parties stipulate to the authenticity of, but not the truth of the contents of, the following evidence for trial purposes absent good cause:

    a.   Any records produced by the parties in this action.

    b.   Any records produced by third parties subject to subpoenas in this action.

    Good cause includes, but is not limited to, issues related to the document's completeness (*e.g.*, missing or incomplete pages) or information that brings into question whether the document was created by the party or third-party that produced it.

**Stipulations To Admit Certain Trial Exhibits**

34.     The parties stipulate to the admissibility of any exhibit listed in the Joint Pretrial Statement without an objection from a party and jointly move the Court to pre-admit them.

35.     The Parties jointly request that the Court take judicial notice of "the existence of the documents" but "not the truth of the matters stated in them," as to the SF Superior Court orders disclosed as Plaintiffs exhibits 434-443, *Hodges v. Hertz Corp*., 351 F. Supp. 3d 1227, 1233 (N.D. Cal. 2018).

**Stipulations Regarding Creation of Certain Exhibits**

36.     Defendants generally met on a daily and weekly basis Monday through Friday to discuss HSOC operations, including HSOC encampment resolutions and JFOs. The HSOC Manager, or an individual covering for the HSOC Manager, created notes on a regular basis that reflected the content of their conversation. CCSF-COH_425491 [DX-612]; CCSF-COH_425563 [DX 617]; CCSF-COH_570526 [DX 659]; CCSF-COH_426217 [DX 737]; CCSF-COH_426223 [DX 738].

37.     As part of the process of scheduling an HSOC resolution, Defendants create a schedule that describes the location and area of the pre-planned HSOC resolution. CCSF-COH_426992 [DX-1651]; CCSF-COH_426986 [DX-1653]; CCSF-COH_199011 [DX-1672]; CCSF-COH_263850 [DX-1703]; CCSF-COH_308739 [DX-1707].

38.     As part of the process of scheduling an HSOC resolution, employees of HSH or DEM create a Google map "template" of the planned locations and area of the HSOC resolution. The area of the planned HSOC resolution location and area is highlighted in yellow on the Google map.  These templates are then provided to the HOT Team for noticing. CCSF-COH_428265 [DX-1738]; CCSF-COH_429869 [DX-1761]; CCSF-COH_428950 [DX-1778]; CCSF-COH_429394 [DX-1796]; CCSF-COH_428692 [DX-1800].

39.     Generally, during an HSOC resolution or a JFO, members DEM, the SFFD Incident Commander, HSH, DPW, and the HOT team text message chain in which they exchange information regarding the HSOC resolution and JFO underway. The participants in each chain have varied over time and across operations.

### Stipulations Regarding Dismissed Claims

40.     The parties agree that organizational standing and associational standing are distinct. In the wake of the Court's dismissal of the organizational standing claim, Plaintiffs agree they will not seek to prove organizational standing at trial, including diversion of resources and impact on core activities. Nothing in this stipulation limits Plaintiffs' ability to introduce evidence relevant to all elements of COH's associational standing, such as evidence related to COH's indicia of membership or whether the interests COH seeks to protect are germane to the organization's purpose. Based on the Court's prior order finding that associational standing does not require harm to COH itself, organizational harms such as diversion of resources and impact on core activities are not relevant at trial. Nothing in this stipulation waives or limits COH's right to appeal the organizational standing decision or the Defendants' right to appeal the associational standing decision.  Based on these stipulations, Defendants will remove Vickery from their witness list and update their exhibit list to remove documents only relevant to organizational standing.

III.    **Disputed Legal Issues (Pretrial Order § 5(c)(1)(c))**

The parties dispute essential elements of each of Plaintiffs' four claims as well as whether Plaintiffs have standing sufficient to support this Court's continuing jurisdiction. Their legal arguments regarding those issues are set forth in their respective Trial Briefs.

IV.    **Trial Preparation (Pretrial Order § 5(c)(1)(d))**

   A.    **Witnesses to be Called (Pretrial Order § 5(c)(1)(d)(i))**

Plaintiffs' witness list is attached as Exhibit A.

The City's witness list is attached as Exhibit B.

   B.    **Estimate of Trial Time (Pretrial Order § 5(c)(1)(d)(ii))**

**Plaintiffs' Statement:**

Plaintiffs anticipate completing its case-in-chief in 25 hours (direct and adverse direct of witnesses it will call live in its case-in-chief, as set forth in its Trial Witness List at Exhibit **A**), and requests an additional ten hours for cross-examination of Defendants' witnesses. Allocating at least 35 hours of trial time to Plaintiffs is warranted because Plaintiffs bear the burden of proof for all elements of their substantive Fourth and Fourteenth Amendments claims, as well as to prove Defendants' liability under *Monell.* The latter requires Plaintiffs to demonstrate not only a widespread and longstanding custom of unconstitutional conduct, but also Defendants' deliberate indifference and failure to train. Finally, Defendants challenge the standing of Plaintiffs, requiring testimony to prove standing for their claims.

As set forth in Plaintiffs' opposition for summary judgment and the subsequent joint discovery letter, *see* Dkts. 366, 387, all of the evidence that Plaintiffs seek to introduce at trial regarding unlawful property destruction was disclosed to Defendants during discovery. That includes the identify and substance of testimony Karina Ioffee, who was disclosed to Defendants on Plaintiffs' likely trial witness list dated January 24, 2025 as an "[i]nvestigator who monitored property destruction and displacement of unhoused people," and who was deposed by Defendants on March 4, 2025 regarding her observations of Defendants' encampment removal operations. Plaintiffs will respond more fully to Defendants in the motion *in limine* briefing.

The City's witness list is overloaded with numerous witnesses that have no relevant testimony to the remaining claims in the case, and that the City did not identify as testifying on these topics until they served initial disclosures *one business day* before the fact discovery cut-off or after the cut-off. The City's failure to disclose these witnesses' topics of testimony and refusal to permit discovery on these issues will be the subject of a motion *in limine*.

In addition, Plaintiffs have designated approximately 890 pages of deposition testimony for introduction in its case-in-chief, as set forth in IV.C.1, *infra*. Since this is a bench trial, Plaintiffs propose that—instead of taking up trial time by reading the deposition testimony into the record—the deposition designations be filed with the Court and their relevance be set forth in posttrial proposed Findings of Fact and Conclusions of Law. Deposition designations should not count against a party's trial time. The purpose of trial time limits is to limit the burden on the Court and the parties of taking live witness testimony. There is no similar burden associated with deposition designations. That the City obtained a smaller amount of relevant deposition testimony should not deny the Court the benefit of the evidence Plaintiffs gathered through depositions. If the designations are relevant and helpful to the trier of fact, they should be considered.

**Defendants' Statement:**

They City is unable to confidently estimate the number of hours it needs for trial because it still does not know which incidents Plaintiffs contend are at issue—neither the specific predicate acts upon which Plaintiffs themselves intend to rely for their underlying Section 1983 claims nor the other *specific* acts Plaintiffs contend constitute an unconstitutional pattern or practice under *Monell*.

The scope of the trial will be determined entirely by whether the Court limits Plaintiffs to the incidents Plaintiffs alleged were unlawful during discovery. As the Court is aware, Plaintiffs' opposition to the City's summary judgment motion (and now Plaintiffs' exhibit list) purport to argue more incidents as unlawful than what Plaintiffs identified in their supplemental discovery responses or depositions. The opposition relied on incidents that Plaintiffs never identified to the City or never contended were unlawful or that lack any specificity as to when, where or what constitutes allegedly unlawful conduct. Pretrial practice has not narrowed the dispute. The number of incidents Plaintiffs

contend were *unlawful* continues to grow:  Plaintiffs' exhibit list includes documents indicating they will contend even *more* seizures were unlawful than they identified in their summary judgment opposition.  For example, they include multiple exhibits related to another of Plaintiffs' investigators, Karina Ioffee, who was not cited in Plaintiffs' opposition or interrogatory responses.  Like the other witnesses who observed City resolutions, at her deposition she could not (or would not) say whether any particular seizure was unlawful or violated the bag and tag policy.

In this posture, the trial is set to be an evidentiary ambush and the City intends to move in limine to seek to exclusion, or at a minimum clarification, of the dates, times, and locations Plaintiffs claim at issue. If the City is forced to respond on-the-fly at trial to *whatever* incident Plaintiffs bring up—regardless of whether Plaintiffs previously disclosed their contention that the conduct was unlawful—the City is unable to provide a meaningful estimate of trial time.  However, if Plaintiffs are only permitted to present evidence of the seizures identified in their interrogatory response number five were unlawful, the City estimates it can pare down its witness list to complete its case in the 20 hours that the Court initially contemplated.

Regardless of the specific number of hours the Court gives the parties to present at trial, the parties should receive equal time.  There is no basis for Plaintiffs to receive additional time over the City and an order which provided for unequal time would prejudice the City.  The amount of time the City needs to present its defense is directly proportional to the amount of time Plaintiffs' spend building their case because the City needs to respond to the evidence Plaintiffs present. While Plaintiffs bear the burden of proof on the elements of their claims, it will take the City equal if not more time on the record to present its own witnesses and documents refuting Plaintiffs claims. Additionally, although the City preserves the issue for appeal, it acknowledges that the Court held at least in the context of the summary judgment motion that the City does bear a burden in this case to demonstrate the applicability of an exception to the Fourth Amendment's prohibition on warrantless seizures. (ECF No. 400 at 17-18.)

The City does not object to Plaintiffs' proposal that deposition designations be filed with the Court rather than read onto the record during trial. However, the City maintains that deposition

designations should count against a party's trial time at a rate of 2 minutes per page (25 lines) to account for the uneven number of pages designated between the parties. To hold otherwise would effectively be to enlarge Plaintiffs' trial time by another name.

The City disagrees with Plaintiffs' contentions regarding the City's witness list and will respond in its opposition to the motion *in limine* Plaintiffs' reference.

Other than the proposed stipulations and agreed facts contained in this Statement, the City has not identified any other reductions in time the Parties can accomplish through proposed stipulations, agreed statements of facts, or expedited means of presenting testimony and exhibits, but will work collaboratively with Plaintiffs if such opportunities arise.

### C.    Use of Discovery Responses (Pretrial Order § 5(c)(1)(d)(ii))
#### 1.    Deposition Designations

The Court's Pretrial Order required the parties to include in their joint pretrial statement which witnesses are likely to testify by deposition designation and how long their testimony will be. (ECF No. 3890).

Both parties designated excerpts from depositions that they intend to present at trial, other than solely for impeachment or rebuttal, and have exchanged designations. Plaintiffs' list of deposition designations is attached as Exhibit C. The City's list of deposition designations is attached as Exhibit D. The parties will submit highlighted copies of the deposition transcripts, including yellow highlighting for Plaintiffs' designations, green highlighting for the City's designations, and orange highlighting for joint designations with their pre-trial filings on June 30, 2025.

Below the parties identify the witnesses they intend to call via deposition designation in their case in chief and the estimated number of pages designated based on 25 lines per page.  This list does not include an estimated length for counter-designations as the parties are still finalizing counter-designations.

Plaintiffs designated the deposition testimony of City employees, including:  (1) City and County of San Francisco (Rule 30(b)(6) designee DiJaida Durden) (11.3 pages); (2) City and County of San Francisco (Rule 30(b)(6) designee Jonathan Vaing) (32 pages); (3) City and County of San

Francisco (Rule 30(b)(6) designee David Lazar) (60.8 pages); (4) City and County of San Francisco (Rule 30(b)(6) designee Samuel Dodge) (6.6 pages); (5) Jonathan Vaing (12.7 pages); (6) Mark Roumbanis (11 pages); (7) Kenny Bruce (28.8 pages); (8) Corey Jackson (13.7 pages); (9) Samuel Peoples (26.2 pages); (10) Edgar Garcia (32.3 pages); (11) Khaled Shehadeh (13.2 pages); (12) Darryl Dilworth (30.7 pages); (13) Brittany Brandon (27.3 pages); (14) Israel Graham (44.1 pages); (15) Herbert Ruth (55 pages); (16) Alvaro Castro (67 pages); (17) Joel Martinez (49.7 pages); (18) Arthur Cervantes (19.8 pages); (19) David Nakanishi (33.8 pages); (20) Mark Mazza (14.5 pages); (21) Wayman Young (41 pages); (22) Dennis Hoang (47.6 pages); (23) Leslie Fong (17.3 pages); (24) Brandon Cunningham (25.4 pages); (25) Arielle Piastunovich (34.8 pages); (26) Pedro Rincon (7.5 pages); (27) Allison Horky (56.8 pages); and (28) Shannon Ducharme (68.4 pages). Plaintiffs estimate the deposition designations in its case in chief will amount to roughly 890 pages at 25 lines per page.

The City designated 16 individuals to appear via depo designation, including:

- Individual Plaintiffs Sarah Cronk (25.04 pages) and Joshua Donohoe (30.08 pages);
- Coalition Corporate Representative (25.6 pages) and/or Employees Jennifer Friedenbach (17.4 pages) and Lukas Illa (22.2 pages);
- ACLU Investigators Dylan Verner-Crist (2.24 pages) and Karina Ioffee (18.28 pages); and
- Alleged Coalition Members Toro Castano (32.24 pages), David Martinez (24.76 pages), Melodie (18.4 pages), Todd Bryant (4.96 pages), Shyhene Brown (16.68 pages), Shanna Orona Couper (14.84 pages), Sarah Stephenson (7.6 pages), and James Reem (21.04 pages); and
- Coalition Observers: Larry Ackerman (1.48 pages) and Christin Evans (5.72 pages).

The City estimates the deposition designations in its case in chief will amount to roughly 288.56 pages at 25 lines per page. The City renews its request that the Court count the time used for deposition designations against the total trial time of the party requesting its admission and proposed a rate of 2 minutes per page (25 lines).

2. **Plaintiffs' Designation of Defendants' Discovery Responses**

Plaintiffs seek to introduce and admit the following excerpts from Defendants' discovery responses, other than solely for impeachment or rebuttal. The responses below are attached as Exhibit E:

- Defendants' Responses to Plaintiffs' First Set of Requests for Admission, Nos. 15, 16, 17, 19, 21, 30 (Plaintiffs' Trial Exhibit 10)
- Defendants' Second Supplemental Response to Plaintiffs' First Set of Interrogatories, Nos. 9, 16 (Plaintiffs' Trial Exhibit 11)

3. **Defendants' Designation of Plaintiffs' Discovery Responses**

The City intends to present at trial, other than solely for impeachment or rebuttal, the following discovery responses. For each of reference the City include the full text of each of the following responses as Exhibit F.

a. **Plaintiffs' Interrogatory Responses**

- Plaintiffs' responses to Interrogatory Nos. 4, 5, 6, 10, 13, 14 (June 22, 2023)
- Plaintiffs' supplemental responses to Interrogatory Nos. 4, 5, 10, 14 (August 26, 2024)
- Plaintiffs' responses to Interrogatory Nos. 17, 18 (December 20, 2024)
- Plaintiffs' responses to Interrogatory Nos. 19, 20, 22, 23, 24, 25 (March 10, 2025)

b. **Plaintiffs' Request for Admission Responses**

- Plaintiffs' responses to Requests for Admission Nos. 1, 2, 3, 10, 11, 14, 15, 17, 18, 20, 21, 26, 31, 32 (March 10, 2025).

c. **Plaintiffs' Initial Disclosures**

- Plaintiffs Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) (December 28, 2022)
- Plaintiffs' Fourth Amended Initial Disclosures and Amended Likely Trial Witness List (February 14, 2025)

### d.       Plaintiffs' Privilege Log

- Plaintiffs' Amended Privilege Log, entries for COH01212278 and COH01397330 (March 17, 2025)

## V.       Trial Alternatives and Options (Pretrial Order § 5(c)(1)(e))

### A.       Settlement Discussions (Pretrial Order § 5(c)(1)(e)(i))

The parties have had several in-person settlement conferences with Judge Lisa Cisneros, the most recent of which was in March 2025.  The parties have scheduled a final settlement conference for June 30, 2025.

### B.       Amendments and Dismissals (Pretrial Order § 5(c)(1)(e)(ii))

The Court previously dismissed all claims alleged by Plaintiffs Toro Castano and Nathaniel Vaughn. The City also settled all claims with Plaintiffs Teresa Sandoval, David Martinez, and Molique Frank and they have dismissed their claims. The Plaintiffs remaining for trial are: Sarah Cronk, Joshua Donohoe, and the Coalition on Homelessness.

The Court granted the City's partial motion to dismiss Plaintiffs' Third Amended Complaint finding Plaintiff Coalition on Homelessness lacked organizational standing. (ECF No. 391). The Court did not grant leave to amend. The City's answer is due June 23, 2025.

## VI.      Miscellaneous (Pretrial Order § 5(c)(1)(f))

### A.       Exhibit List Meet and Confer

On June 9, 2025, Plaintiffs filed a letter seeking to have the Court require the City to narrow its exhibit list. (ECF No. 392). The City responded the next day. (ECF No. 393). The Court's orders required the parties to meet and confer in good faith to seek to reach an agreement on this issue, and in the event they could not, to address the dispute in the joint pretrial statement. (ECF No. 394). The parties held a meet and confer on this issue on June 13, 2025 and June 16, 2025. Below the parties set out the scope of their remaining disputes.

#### 1.       Plaintiffs' Position

Pursuant to the Court conference on June 17, 2025, Plaintiffs will provide categorical objections to the voluminous exhibits on Defendants' trial exhibit list, including notices, notes, templates, schedules, text messages, and other types of records. Plaintiffs do not waive their right to

object to exhibits on an individualized basis upon receiving adequate advance notice at trial of the exhibits and documents that Defendants seek to admit. Plaintiffs also offered Defendants stipulations regarding certain business records that are created and maintained in a routine manner, and the parties agreed to certain stipulations set forth in II.B, *supra*.

## 2.    Defendants' Position

The majority of documents on the City's exhibit list are routine business records of City activities related to the issues in this case, including: notices, notes, templates, and schedules. The City intends to use these records in two ways. First, regardless of Plaintiffs' case, the City would likely seek to enter into evidence a handful of exemplars in each of these categories. Second, depending on which dates, times, and locations Plaintiffs ultimately put at issue, the City would like to enter into evidence the specific notes, notices, and schedules that concern the dates, times, and locations Plaintiffs put at issue to rebut Plaintiffs' testimony. However, because Plaintiffs take the position that at trial they can argue at trial *any* City operation was unlawful so long as any record related to that operation was introduced during discovery, the City cannot safely remove any records within these categories before trial. The volume of documents on the City's exhibit list then is directly proportional to the volume of operations that Plaintiffs reserve the right to raise. If Plaintiffs are willing to stipulate that they will not raise concerns about a City operation on a certain date or date range, then the City could remove from its exhibit list all of the routine business records related to that date range. During the June 13 meet and confer the City proposed five ways it could narrow its exhibit list with further information from Plaintiffs.

- #1: The City offered that if Plaintiffs would identify the dates, times, and locations of incidents they will rely on at trial, the City could remove records from its exhibit list of operations from outside those date ranges;

- #2: The City offered that if Plaintiffs agreed that they would not object to the City introducing at trial documents that are not on the City's exhibit list so long as the documents relate to a date, time, or location Plaintiffs' allege the City engaged in

1   unlawful conduct during Plaintiffs' case in chief, the City could remove a significant

2   volume of records from its exhibit list;

3   • #3: Plaintiffs removed from their witness list several persons experiencing

4   homelessness, including Toro Castano and Shyhyene Brown. However, even though

5   these individuals are no longer on Plaintiffs' witness list, the City still does not know

6   whether Plaintiffs intend to use their observers to offer evidence that the City's seizure

7   of Castano's or Brown's property was unlawful. The City offered if Plaintiffs agree that

8   their observer witnesses (who did not have their own property taken) would not testify

9   about property destruction related to an individual from Plaintiffs' likely witness list

10  that Plaintiffs removed from their actual trial witness list (e.g., Castano and Brown)

11  then the City could remove any records concerning alleged property destruction linked

12  to those witnesses; and

13  • #4: Given the Court's ruling on the Motion to Dismiss, the City offered that if Plaintiffs

14  agree not to introduce any evidence of harm to the Coalition including harm to its core

15  activities or diversion of resources, then the City would remove any exhibits on its list

16  designed to rebut those theories of standing.

17  • #5: The city also offered to agree to stipulations that would remove the need for

18  compilation documents, such as the volume of notices and schedules produced.

19      The parties reached a stipulation on the City's fourth proposal, as reflected above. The parties

20  also reached an agreement on stipulations in line with the City's fifth proposal regarding compilation

21  documents (HSOC Notes, HSOC Schedules, and HSOC Templates), which will result in the City's

22  ability to withdraw a modest number of exhibits. However, Plaintiffs have not accepted any of the

23  City's first three proposals, which had the potential to help narrow the exhibits at issue for trial more

24  significantly.

25      **B.    Orders or Instructions Regarding Trial Administration**

26      The Parties request the Court enter orders or instructions on the following issues regarding trial

27  administration:

28
https://ecbalaw-
my.sharepoint.com/personal/jxu_ecbawm_com/documents/onedriv
e desktop/filing/2025-06-20 joint pretrial statement - final.docx

*Disclosure of the Order of Evidence*: The City requests the Court order that: (1) by 9AM two business days prior, each party shall disclose the names of any witnesses it may call on that day of trial and identify any exhibits to be entered through that witness, and (2) by 12PM one business day prior, the opposing party shall identify any exhibits to be entered through that witness as party of the party's case in chief (excluding exhibits used purely for impeachment or to refresh recollection). Plaintiffs do not oppose this request but reserve the right to alter the order of witnesses as needed to accommodate changes in schedule or other unanticipated changes. The City further proposes that at the time Plaintiffs disclose the name of any witness they may call at trial (9AM two business days prior to the expected testimony) Plaintiffs also disclose the date, time, and location of any alleged unlawful activity that they plan to elicit from the witness so that the City can properly identify the business records it will need to refute the witness's allegations which it shall disclose by 12PM (one business day prior.

*Streamlining the Presentation of Live Testimony*: Several individuals appear on the trial witness lists for both parties.  The Parties jointly request the Court issue an order that for those witnesses: after Plaintiffs' complete their direct examination of the witness the City be permitted to exceed the scope of Plaintiffs' direct examination and conduct their full direct examination of the witness during the time typically used for cross-examination to streamline the presentation of evidence at trial and reduce the likelihood of a witness being recalled to testify again during the City's case in chief.

*Sequestration of Witnesses*: Defendants invoke Federal Rule of Evidence 615 and request the Court exclude from the courtroom any individual who appears on either party's witness list and who has not yet testified or who has testified but is subject to recall, excluding: Plaintiffs Cronk and Donohoe; one officer or employee of Plaintiff Coalition on Homelessness and each Defendant entity. Plaintiff opposes the request to the extent it applies to its expert witnesses, Dr. Chris Herring and Dr. Ben King, who should be permitted to attend trial even before they have testified.  Defendants would object to experts remaining in the Courtroom outside of their own testimony. The only purpose of experts observing testimony from other witnesses would be to gather new information to inform their

own testimony to the Court, which is plainly prohibited by Rule 26 of the Federal Rules of Civil Procedure, which requires all of an expert's opinions to be contained in their report. Fed. R. Civ. Proc. 26(a)(2).

*Timekeeping*: The Parties ask the Court's preference for how time will be kept at trial.

*Witness Availability:* The Court has indicated it will permit eight days of trial beginning on Monday July 28, but that "trial days likely will not all be contiguous." (ECF No. 270). Given summer holiday schedules and the uncertainty of the dates of trial, the City anticipates that some witnesses may have limited availability during the window of trial and request that the Court permit the parties to call those witnesses out of sequence to accommodate their travel schedules. Defendants will send Plaintiffs via email a list of the dates that City employees listed on Plaintiffs' live trial witness list are unavailable and work collaboratively on scheduling their testimony. To date, the City has not received any trial subpoenas from Plaintiffs and there are no employees who are unavailable for the entirety of the two weeks reserved for trial. Plaintiffs have not yet been informed which, if any, of Defendants' trial witnesses have travel schedules that conflict with trial. Plaintiffs cannot consent without further information about the witnesses that have conflicting travel schedules, which could effectively interrupt and delay large portions of Plaintiffs' case-in-chief. The trial date has been set for over six months, allowing witnesses (especially people currently employed by the City and within the City's control) ample notice to accommodate trial.

Dated: June 20, 2025

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

By: */s/ Vasudha Talla*
Vasudha Talla
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*

Nisha Kashyap
Andrew Ntim
LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

John Thomas H. Do
William S. Freeman

Larissa Grijalva
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

Scout Katovich
AMERICAN CIVIL LIBERTIES UNION
*Attorneys for Plaintiffs*


DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:     /s/ *Kaitlyn Murphy*
        KAITLYN MURPHY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT


WARREN METLITZKY
JESSICA ELAINE LANIER
CONRAD METLITZKY KANE LLP

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT