# EXHIBIT E TO

# JOINT PRETRIAL STATEMENT

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-3857 (Wang)
              (415) 554-6762 (Murphy)
              (415) 554-3870 (Gradilla)
              (415) 554-4223 (George)
              (415) 355-3304 (Mills)
Facsimile:    (415) 554-4699
E-mail:       edmund.wang@sfcityatty.org
              kaitlyn.murphy@sfcityatty.org
              miguel.gradilla@sfcityatty.org
              john.george@sfcityatty.org
              steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**<br><br>Trial Date:          July 28, 2025 |

**Plaintiff's Exhibit Markers**
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
Case #: **4:22-cv-05502-DMR**
PLNTF EXHIBIT NO. **10**
Date Admitted:_____
Mark B. Busby, Clerk
By:_____, Deputy Clerk

object that this request has no timeframe and will limit its response to the time it provides these responses in March 2025. Subject to the foregoing and as so interpreted: Denied.

**REQUEST FOR ADMISSION NO. 15**:

Admit that DPW does not provide Homeless Persons with written notice of whether and where they may pick up their property when DPW bags and tags the Homeless Persons' attended property.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**:

Defendants object that this request is directed to Department of Public Works. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance where DPW has bagged and tagged attended property would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants object that this request has no timeframe and will limit its response to the time it provides these responses in March 2025. Subject to the foregoing and as so interpreted: DPW admits that its general practice is to provide oral notice of where and when a person may pick up their items from the DPW Storage yard when the items are attended and that its general practice is to leave written posted notice when the items are unattended. However, DPW denies that a person with attended property has never been provided written information on where and when to pick up their items.

**REQUEST FOR ADMISSION NO. 16**:

Admit that DPW does not provide Homeless Persons with a copy of the Homeless Property Information form when their property is bagged and tagged.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16**:

Defendants object that this request is directed to Department of Public Works. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1)

especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants object that this request has no timeframe and will limit its response to the time it provides these responses in March 2025. Subject to the foregoing and as so interpreted: Admit.

**REQUEST FOR ADMISSION NO. 17**:

Admit that DPW does not provide Homeless Persons with written notice regarding whether and where they may pick up their property when DPW bags and tags that property after Homeless Persons are issued citations or arrested.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17**:

Defendants object that this request is directed to Department of Public Works. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object that this request has no timeframe and will limit its response to the time it provides these responses in March 2025. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants will interpret this request to ask whether, on all occasions where DPW bags and tags property after Homeless Persons are issued citations or arrested, the City does not provide that individual written notice of where they may pick up their property. Subject to the foregoing and as so interpreted: DPW admits that its general practice is to provide oral notice of where and when a person may pick up their items from the DPW Storage yard when the items are attended and that its general practice is to leave written posted notice when the items are unattended. However, DPW denies that a person with attended property has never been provided written information on where and when to pick up their items.

**REQUEST FOR ADMISSION NO. 18**:

Admit that You do not advise Homeless Persons to separate any medications, medical devices, personal identification or legal documents from items to be bagged and tagged, as required by DPW's Bag and Tag Policy section (2)(b).

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**:

Defendants object to this request as misstating the bag and tag policy to the extent it implies such advisement is required outside the context of an HSOC resolution. It is not. Plaintiffs' definition of "Bag and Tag Policy" encompasses multiple revisions to the policy without differentiation. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants object that this request has no timeframe and will limit their response to procedure at the time they provide these responses. Subject to the foregoing and as so interpreted: Deny.

**REQUEST FOR ADMISSION NO. 19**:

Admit that, prior to January 2025, You did not advise Homeless Persons to separate any medications, medical devices, personal identification or legal documents from items to be bagged and tagged, as required by DPW's Bag and Tag Policy section (2)(b).

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**:

Defendants object that this request is directed to the San Francisco Fire Department and Department of Public Works. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object to this request as misstating the bag and tag policy to the extent it implies such advisement is required outside the context of an HSOC resolution. It is not. Plaintiffs' definition of "Bag and Tag Policy" encompasses multiple revisions to the policy without differentiation. Subject to the foregoing and so interpreted: Admit.

**REQUEST FOR ADMISSION NO. 20**:

Admit that You do not request Homeless Persons sign an acknowledgement indicating that You have provided an advisement to separate any medications, medical devices, personal identification or legal documents from items to be bagged and tagged, as required by DPW's Bag and Tag Policy section (2)(b).

/ / /

**RESPONSE TO REQUEST FOR ADMISSION NO. 20**:

Defendants object that this request is directed to Department of Public Works and the Fire Department. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object to this request as misstating the bag and tag policy to the extent it implies such advisement is required outside the context of an HSOC resolution. It is not. Plaintiffs' definition of "Bag and Tag Policy" encompasses multiple revisions to the policy without differentiation. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants object that this request has no timeframe and will limit their response to procedure at the time they provide these responses. Subject to the foregoing and as so interpreted: Deny.

**REQUEST FOR ADMISSION NO. 21**:

Admit that, prior to January 2025, You did not request Homeless Persons sign an acknowledgement indicating that You have provided an advisement to separate any medications, medical devices, personal identification or legal documents from items to be bagged and tagged, as required by DPW's Bag and Tag Policy section (2)(b).

**RESPONSE TO REQUEST FOR ADMISSION NO. 21**:

Defendants object that this request is directed to Department of Public Works and the Fire Department. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object to this request as misstating the bag and tag policy to the extent it implies such advisement is required outside the context of an HSOC resolution. It is not. Plaintiffs' definition of "Bag and Tag Policy" encompasses multiple revisions to the policy without differentiation. Subject to the foregoing and as so interpreted: Admit.

**REQUEST FOR ADMISSION NO. 22**:

Admit that You do not have any signed copies of the "Advisement to Owner (or Designee)" depicted in Dkt. No. 292-2 at 44.

following cleaning and there is no permanent removal), staff will provide the owner or the owner's designee with a reasonable amount of time (approximately 30 minutes) to collect and move their belongings out of the public right of way, taking into account any special needs that individuals may have and the volume of belongings." Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants object that this request has no timeframe and will limit its response to the time it provides these responses in March 2025. Subject to the foregoing and as so interpreted: Deny.

**REQUEST FOR ADMISSION NO. 28**:

Admit that the collective amount of the settlements that You have paid to individuals alleging that the City destroyed property taken from a Homeless Encampment exceeds $100,000.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28**:

Defendants object that this request is directed to the San Francisco City Attorney's Office. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object that this request has not timeframe. Defendants will interpret this request to include all settlements on government claims or any type of lawsuit alleging property destruction since the City's charter was enacted. Subject to the foregoing and as so interpreted: Admit.

**REQUEST FOR ADMISSION NO. 29**:

Admit that You have engaged in widespread destruction of property belonging to unhoused people.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29**:

Deny.

**REQUEST FOR ADMISSION NO. 30**:

Admit that SFPD's practice is to give DPW tents or tarps seized as evidence of a violation of Anti-Lodging Laws.

/ / /

**RESPONSE TO REQUEST FOR ADMISSION NO. 30**:

Defendants object that this request is directed to San Francisco Police Department. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object that this request has no timeframe and will limit its response to DPW's policy and standard procedure at the time it provides these responses. Defendants further object to this request because the phrase "Anti-Lodging Laws" because Plaintiffs define it to refer to eleven different code sections. Defendants also object to this request because it seeks a general answer regarding conduct where there may be variation over time and responding for each instance would be disproportionate to the needs of the case in violation of Federal Rules of Evidence 36 and 26(b)(1) especially where Plaintiffs have not identified the bates number of any document regarding a specific instance of conduct they have in mind. Defendants will interpret this request to ask whether, on all occasions SFPD gives DPW tents or tarps seized as evidence of a violation of Penal code Section 647(e). Subject to the foregoing and as so interpreted: SFPD admits that it calls DPW to take custody of items that the arresting officer(s) seem evidence supporting an arrest for a violation of Penal Code Section 647(e). However, SFPD does not "give" tents or tarps to DPW.

**REQUEST FOR ADMISSION NO. 31**:

Admit that DPW is not required to seek SFPD permission to destroy tents or tarps seized as evidence of a violation of Anti-Lodging Laws.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31**:

Defendants object that this request is directed to Department of Public Works. All other department defendants lack sufficient knowledge or information to respond to this request and deny it on that basis. Defendants object that this request has no timeframe and will limit its response to DPW's policy and standard procedure at the time it provides these responses. Defendants further object to this request because the phrase "Anti-Lodging Laws" because Plaintiffs define it to refer to eleven different code sections. Defendants object that this request exceeds the bounds of Federal Rule of Civil Procedure 36 because it seeks information that is not within the scope of Rule 26(b)(1) since whether or not DPW is required to seek SFPD permission to destroy tents or tarps it bags and tags is irrelevant to the claims alleged. Because the information is irrelevant, asking Defendants to investigate

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-3857 (Wang)
               (415) 554-6762 (Murphy)
               (415) 554-3870 (Gradilla)
               (415) 554-4223 (George)
               (415) 355-3304 (Mills)
Facsimile:     (415) 554-4699
E-mail:        edmund.wang@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               miguel.gradilla@sfcityatty.org
               john.george@sfcityatty.org
               steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Trial Date:     July 28, 2025 |
|---|---|

**Plaintiff's Exhibit Markers**
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
Case #: **4:22-cv-05502-DMR**
PLNTF EXHIBIT NO. **11**
Date Admitted:_____
Mark B. Busby, Clerk
By:_____, Deputy Clerk

purpose of cleaning the public property. In doing so, they do not invoke the threat of a criminal citation for a failure to comply and they do not ask an individual to leave permanently, only while cleaning is underway. DPW staff also seek to provide an individual sufficient time to remove their property when such a request is made, based on the circumstances of the interaction. DPW generally does not ask someone to move unless there are health or safety issues or the public right of way is inaccessible. When individuals are asked to move temporarily, DPW staff provide them time to move their belongings and inform them that unremoved items will be bagged and tagged or discarded in accordance with DPW policy. BSES crew perform similar work in the context of JFO outreach in the Tenderloin area.

DPW employees do not invoke the threat of a criminal citations when they encounter a person experiencing homelessness, regardless of whether that individual refuses to leave. BSES crew members are not law enforcement officers.

**HSH**: Neither HSH or its ERT provider, Heluna Health, has an enforcement role. ERT takes minimal steps when a person experiencing homelessness refuse to leave the site. ERT may try to encourage people verbally and talk about the need for street cleaning etc, but they are not empowered to compel anyone leave a site and ERT staff are well aware of such conduct occurring.

**SFFD**: See SFFD's response to Interrogatory Nos. 2 and 7.

**INTERROGATORY NO. 9**:

Describe in detail all steps Your personnel, including SFPD, DPW, SFFD, and HOT team members, take during the course of Sweep Operations when interacting with Homeless Persons who have disabilities and/or special needs, including all steps personnel take to determine whether Homeless Persons with whom they interact have one or more disabilities or special needs, and how personnel record, report or memorialize the existence of such disabilities or special needs, including all facts, Databases, and information on which You rely.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9**:

Defendants incorporate into this response the preliminary statement and general objections set forth above. Defendants object to this Interrogatory on the grounds of the attorney-client privilege and/or work product doctrine, and the right to privacy under the U.S. and California Constitutions.

Defendants object to this Interrogatory as compound because it contains two or more subparts that are not logically or factually subsumed within and necessarily related to the primary question. (See caselaw regarding compound Interrogatories cited in response to Interrogatory No. 1.) Specifically, this Interrogatory contains two requests: one seeking to have Defendants "describe in detail" all steps their employees take when they encounter a person with disabilities and a second seeking to have Defendants identify "all facts, Databases, and information" on which they relied to answer part one. Having given Plaintiffs an opportunity to withdraw and redraft this Interrogatory, which Plaintiffs declined, Defendants will treat this Interrogatory as two Interrogatories toward the agreed total of 50 Interrogatories per side. Defendants object to the phrase "disabilities and/or special needs" as vague and ambiguous. Defendants will interpret this phrase to mean when an individual has expressly informed a San Francisco employee at the encampment resolution that they have a legal disability cognizable under the ADA that requires an accommodation and directly requests a specific accommodation. Defendants object that the phrase "Sweep Operations when interacting with Homeless Persons" is vague, overbroad, pejorative, and disparaging. Defendants object to this Interrogatory as overbroad because it seeks information from San Francisco without exhaustive reference to any division, department, or office. San Francisco has more than 150 divisions, departments, and agencies. Defendants have made a good faith effort to determine the divisions, departments, or offices likely to have responsive information and its response is limited to: SFPD, DPW, HSH, and SFFD. This Interrogatory also seeks information not relevant to any claim or defense at issue or proportional to the needs of the case. This Interrogatory is further overbroad because it seeks "all" steps related to a broad topic. Defendants face additional prejudice from this overbroad Interrogatory is because Plaintiffs seek information for a time frame in excess of five years. San Francisco will respond for the time period beginning January 1, 2020.

      Subject to and without waiving the foregoing objections, and as so interpreted, Defendants state as follows: The policies set forth in the City and County of San Francisco Employee Handbook apply to employees across all departments, which includes a Policy Regarding the Treatment of Co-Workers and Members of the Public to treat individuals with courtesy and respect.

**SFPD**: SFPD complies with all obligations under the General Orders and any applicable Department Notices and/or Bulletins including but not limited to: Department General Order 5.23, Department Bulletin 21-063, and Department Notice 22-085.

**DPW**: DPW stores and discards items left behind pursuant to its policy for the removal and temporary storage of personal items collected from public property, known as its "bag and tag" policy, set forth in Procedure No. 16-05-08 Removal and Temporary Storage of Personal Items Collected From Public Property. The current revision of this policy is REV 3. DPW incorporates its bag and tag policy into this response by reference. The bag and tag policy applies at all times. Employees are trained to comply with all aspects of the policy, including the provisions around providing sufficient time for persons with special needs to move their items.

In the context of an HSOC resolution, by the time DPW starts their work, individuals at the resolution location have already had 72 hours to move their belongings. If an individual requests additional time to move, DPW provides. it. Outside the context of an HSOC resolution, when DPW employees arrive to a work location the staff will provide the owner or the owner's designee with a reasonable amount of time, approximately 30 minutes, to collect and move their belongings out of the public right of way, taking into account any special needs that individuals may have. "Special needs" in this context includes any disabilities that would prevent a person from moving their items in the time provided and about which the person has alerted DPW. DPW employees implementing the bag and tag policy have no obligation to ask whether a person they encounter had a disability and/or requires an accommodation, however employees use any information a person voluntarily provides about whether they have a disability or need an accommodation in assessing how to interpret a "reasonable amount of time" as the phrase is used in the bag and tag policy. Where an individual requests additional time on the basis of a disability, DPW provides it. Because the number of variations of what could fall within the ambit of "special needs" is so large, it is not possible for DPW to describe each such circumstance here.

DPW may also offer to assist the individual by handing out garbage bags or offering to discard any items the individual no longer wants. In that circumstances DPW will tell the person that they can leave behind anything they no longer want and DPW will take care of discarding it for them.

When any items are bagged and tagged, DPW staff provide information about when and where to retrieve the items to the owner. If no owner is present or comes forward, a written notice is posed in the immediate vicinity of the removal. (See e.g., CCSF-COH_000249-CCSF-COH_000250.) When an owner or their designee is present DPW may provide the same information orally. DPW has stored bagged and tagged items in the same location for years and individuals generally know where to come to claim bagged and tagged property even without notice. Those bag and tag logs are collected in a centralized excel spreadsheet maintained by the Special Projects team.

Outside the context of an HSOC resolution, a BSES crew member's regular work assignments, for example, responding to complaints through 311, may require them to respond to a location where a person with a disability is present although that fact is not always clear from the request for service itself. DPW generally try to clean around the individual and/or his or her belongings. If the situation requires, DPW may ask the individual to temporarily relocate for the purpose of cleaning the public property. If the person requests an accommodation, for example, additional time to move their property because of a disability, DPW staff will make reasonable efforts to honor the request where public health and safety permit. DPW staff seek to provide an individual sufficient time to remove their property when such a request is made, based on the unique circumstances of the interaction. When individuals are asked to move temporarily, DPW staff provide them time to move their belongings and inform them that unremoved items will be bagged and tagged or discarded in accordance with DPW policy as set forth in No. 16-05-08 Removal and Temporary Storage of Personal Items Collected From Public Property.

DPW tracks its service orders in the CMMS database. The City will produce to Plaintiffs CMMS entries coded as "Encampment" or "Bag and Tag" for the period of January 2020 through February 14, 2025 and incorporates those documents by reference into this response. DPW employees are not required to create any paperwork unique to their interactions with a person who has disabilities separate and apart from the paperwork they create in response to any other kind of service order. To the extent any of a DPW employees notes or photographs indicate a person they encountered had a disability, that information would be accessible through the CMMS database.

By cleaning and greening the City sidewalks and public rights of way DPW employees are serving the members of the City community with disabilities and/or special needs, especially those with mobility-based concerns to ensure that public rights of way are equally accessible to them. The City has received complaints about encampments blocking the right of way through the Mayor's Office on Disability, which are tracked in a spreadsheet. The City will produce the spreadsheet tracking complaints from January 2020 through July 2024.

**HSH**: On the day of the resolution, the incident commander and ERT assess and ask each person engaged (if possible) whether they present with disabilities or mobility issues. Information is recorded in our grid (i.e., a Microsoft form that is transferred from mobile device input to an excel spreadsheet that HSH and DEM jointly manage described above) in response to the prompt: "does this person present with disabilities?" This is a yes/no data field plus a space for notes to be entered. This data is mainly used for the purposes of ensuring that individuals are appropriately matched to shelter (e.g., a client in a wheelchair would not be placed in an upper bunk bed) and to provide linkage to appropriate services as necessary.

When a person is seen or known to have mental health issues, HSOC team members from DPH who are present at the resolutions will step in and try to engage the individual. The ERT supervisor, who is often in the field, is also a licensed clinician and can intervene and assess client needs as needed.

**SFFD**: See SFFD's response to Interrogatory Nos. 2 and 7.

***

Defendants' answered Interrogatory No. 9 prior to the dismissal of disability related claims in this case. Accordingly, responding to Interrogatory No. 9 is no longer relevant or proportional to the needs of the case.

**INTERROGATORY NO. 10**:

List and describe in detail every Sweep Operation You have conducted, including for each Sweep Operation the date, time, and location; the identity of all Your enforcement personnel participating in the Sweep Operation; the amount and timing of any prior notice given; the identity of any persons allegedly offered specific and available shelter, and which if any persons so offered

DPW also uses documentation to ensure that employees follow the bag and tag policy, including information in CMMS, homeless property information forms, and spreadsheets tracking homeless property information forms.  DPW Supervisor II's also prepare weekly reports for their own management covering the work their team accomplished that week. *See e.g.*, CCSF-COH_077850; CCSF-COH_075183; CCSF-COH_075376; CCSF-COH_074501. In order to prepare these reports supervisors also review their employees work performance, which provides another opportunity to review compliance with the bag and tag policy and provide education on the policy as necessary.

Although DPW does not have the funds to provide bonuses to incentivize employees who comply with the bag and tag policy, it does praise those employees who go above and beyond as an incentive to comply with the policy. Where necessary, employees who fail to comply with a city policy are subject to progressive discipline beginning and a verbal and/or written warning all the way through termination for cause. DPW has provided corrective action around the bag and tag policy from informal instruction through termination and/or separation. (See e.g., CCSF-COH_437220-CCSF-COH_437436.)

In combination all of these methods demonstrate to employees that compliance with the bag and tag policy is important to the department, which further incentivizes compliance with the policy.

**SFFD**: See SFFD's response to Interrogatory Nos. 2 and 7.

**INTERROGATORY NO. 16**:

List all facilities where property belonging to Homeless Persons has been or is stored, including the dates during which each facility has operated, the square footage devoted to storage of belongings, the amount of property stored at those facilities at any given time, and the amount of property successfully collected by unhoused people from these facilities, including all facts, Databases, and information on which You rely.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16**:

Defendants incorporate into this response the preliminary statement and general objections set forth above. Defendants object to this Interrogatory on the grounds of the attorney-client privilege and/or work product doctrine, and the right to privacy under the U.S. and California Constitutions. Defendants object to this Interrogatory as compound because it contains two or more subparts that are

not logically or factually subsumed within and necessarily related to the primary question. (See caselaw regarding compound Interrogatories cited in response to Interrogatory No. 1.) Specifically, this Interrogatory contains eight requests: one seeking to have Defendants "list all facilities where property belonging to homeless persons has been or is stored, including the date for each location, a second seeking to have Defendants identify "the square footage devoted to storage" at each location, a third seeking to have Defendants identify "the amount of property stored at those facilities at any given time," a fourth seeking to have Defendants identify "the amount of property successfully collected by unhoused people from these facilities," a fifth seeking to have Defendants identify "all facts, Databases, and information" they relied on in responding to part one, a sixth seeking to have Defendants identify "all facts, Databases, and information" they relied on in responding to part two, a seventh seeking to have Defendants identify "all facts, Databases, and information" they relied on in responding to part three, and an eighth seeking to have Defendants identify "all facts, Databases, and information" they relied on in responding to part four. Having given Plaintiffs an opportunity to withdraw and redraft this Interrogatory, which Plaintiffs declined, Defendants will treat this Interrogatory as eight Interrogatories toward the agreed total of 50 Interrogatories per side. Defendants object to this Interrogatory as overbroad because it seeks information from San Francisco without exhaustive reference to any division, department, or office. San Francisco has more than 150 divisions, departments, and agencies. Defendants have made a good faith effort to determine the divisions, departments, or offices likely to have responsive information and its response is limited to DPW. This Interrogatory is further overbroad because it seeks "all" facts related to a broad topic. This Interrogatory also seeks information not relevant to any claim or defense at issue or proportional to the needs of the case. Defendants face additional prejudice from this overbroad Interrogatory is because Plaintiffs seek information for a time frame in excess of five years. San Francisco will respond for the time period beginning January 1, 2020. Defendants object that the term "amount of property" is undefined, overly broad and vague because it fails to "describe with reasonable particularity each item or category of items to be inspected." Rule 34(b)(1)(A).

Subject to and without waiving the foregoing objections, and as so interpreted, Defendants state as follows: DPW BSES stores property it has bagged and tagged at its Public Work Operations

1  Yard at 2323 Cesar Chavez Street and has done so since at least January 1, 2020. The Public Work
2  Operations yard has several storage cages and/or containers used to house bagged and tagged property.
3  The number of storage containers have grown over time. Defendants will produce photographs of
4  these storage areas and incorportes those photographs into this response. Plaintiffs' counsel and expert
5  also performed a site inspection where they took photographs of this area and Defendants incorporate
6  any photographs or notes Plaintiffs or their expert took as well. DPW's storage cage is approximately
7  12 feet by 12 feet by 30 feet. It also has three storage containers that measure approximately 8 feet by
8  8 feet by 30 feet, and recently purchased an additional two storage containers that measure
9  approximately 8 feet by 8 feet by 20 feet. The dimensions of DPW's storage space is not a limiting
10 factor on the department's ability to comply with its own bag and tag policy. In the event the volume
11 of property bagged and tagged exceeded the currently available storage area, DPW would find
12 additional storage area to house the property.

13     DPW will also return property to the owner if that individual comes to the storage area to claim
14 it within the allotted timeframe and can provide a sufficiently specific description of the details related
15 to his or her request. The bag and tag log contains information about the date, time, and location of
16 where the property was taken, as well as a brief description of the property itself and, if it is available,
17 the name of the individual who was identified as owning the property. A person who presents at the
18 DPW storage area and is able to provide the matching information is able to retrieve the stored
19 property. That collection may be located in the excel spreadsheet, but even if it is not, a person could
20 determine whether the property had been collected by a person by looking at the property that
21 remained in the Public Work Operations Yard within 90 days of the collection and comparing that
22 property to a specific claim. CMMS records may also reflect when property is claimed from the bag
23 and tag storage area.

24     In addition to the storage described above, Defendants are aware that pursuant to contracts with
25 the City, there are storage locations available to anyone experiencing homelessness that allow a secure
26 location to store certain items. The first is the Sixth Street Homeless Storage Facility located at 74 6th
27 St., San Francisco, CA 94103 and it is available Monday to Friday from 8:30 am to 5:00 pm. The
28 Sixth Street Homeless Storage Facility accepts clothes, shoes, and documents. The second is the

Bryant Homeless Storage Facility located at 680 Bryant St., San Francisco, CA 94107 and is available Monday to Friday from 9:00 a.m. to 4:00 p.m. The Bryant Homeless Storage Facility accepts clothes, shoes, and documents. Information concerning the amount of property stored is in the possession, custody, and control of those providers. However, Defendants have produced documents related to these programs. (*See, e.g.*, CCSF-COH_349920.)

**INTERROGATORY NO. 17**:

Describe in detail all facts, Databases, and information on which You rely to determine, monitor, or assess the proportion of property belonging to Homeless Persons that Your personnel destroys or discards, that is stored for later retrieval, and that is ultimately recovered by Homeless Persons who own the property, including what notice is given to unhoused people regarding property storage and property collection.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17**:

Defendants incorporate into this response the preliminary statement and general objections set forth above. Defendants object to this Interrogatory on the grounds of the attorney-client privilege and/or work product doctrine, and the right to privacy under the U.S. and California Constitutions. Defendants object to this Interrogatory as compound because it contains two or more subparts that are not logically or factually subsumed within and necessarily related to the primary question. (See caselaw regarding compound Interrogatories cited in response to Interrogatory No. 1.) Specifically, this Interrogatory contains two requests: one seeking to have Defendants "describe in detail all facts, databases, and information" on which they rely "to determine, monitor, or assess the proportion of property belonging to homeless persons" that Defendants destroy or discard, that is stored for later retrieval, or that is ultimately recovered and a second seeking to have Defendants identify "what notice is given to unhoused people regarding property storage and property collection." Having given Plaintiffs an opportunity to withdraw and redraft this Interrogatory, which Plaintiffs declined, Defendants will treat this Interrogatory as two Interrogatories toward the agreed total of 50 Interrogatories per side. Defendants object to this Interrogatory as overbroad because it seeks information from San Francisco without exhaustive reference to any division, department, or office. San Francisco has more than 150 divisions, departments, and agencies. This Interrogatory also seeks