**Exhibit E**

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3       Before The Honorable Donna M. Ryu, Magistrate Judge

4

5   COALITION ON HOMELESSNESS,    )
    et al.,                       )
6                                 )
             Plaintiffs,          )
7                                 )
    vs.                           )   No. C 22-05502-DMR
8                                 )
    CITY AND COUNTY OF SAN        )
9   FRANCISCO, et al.,            )
                                  )
10            Defendants.         )
    _____)

11

12                              Oakland, California
                                Tuesday, March 4, 2025
13

14   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 1:03 - 1:21 = 18 MINUTES
15

16  APPEARANCES:

17  For Plaintiffs:
                            Emery Celli Brinckerhoff Abady
18                           Ward & Maazel LLP
                            One Rockefeller Plaza
19                          Eighth Floor
                            New York, New York 10020
20                  BY:  VASUDHA TALLA, ESQ.

21                          ACLU Foundation of Northern
                             California
22                          39 Drumm Street
                            San Francisco, California
23                           94111
                    BY:  WILLIAM S. FREEMAN, ESQ.
24

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

*Echo Reporting, Inc.*

2

1   For Defendants:

2                           San Francisco City Attorney's
                              Office

3                           One Dr. Carlton B. Goodlett
                              Place
                          Suite 234

4                           San Francisco, California
                              94102

5                     BY:  KAITLYN M. MURPHY, ESQ.

6   Transcribed by:             Echo Reporting, Inc.
                          Contracted Court Reporter/

7                           Transcriber
                          echoreporting@yahoo.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Tuesday, March 4, 2025</u>                              <u>1:03 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4            THE CLERK:  Calling Civil Case C-22-5502-DMR,

5  Coalition on Homelessness, et al. versus City and County of

6  San Francisco, et al.

7      Counsel, please state your appearances, starting with

8  the Plaintiffs' counsel first.

9            MR. FREEMAN (via Zoom):  Good afternoon, your

10 Honor.  William Freeman for the Plaintiffs, and I apologize

11 for having been on the wrong link.

12           THE COURT:  Mr. Freeman.

13           MS. TALLA (via Zoom):  Good afternoon.  Vasudha

14 Talla on behalf of the Plaintiffs.

15           THE COURT:  Ms. Talla.

16           MS. MURPHY (via Zoom):  Kaitlyn Murphy for

17 Defendants, your Honor.

18           THE COURT:  Ms. Murphy, good afternoon to you.

19     So, both sides have some colleagues in the -- in the

20 audience, but I learned from Ms. Murphy and -- and Ms. Talla

21 that they are -- that those individuals, Mr. Do, Mr.

22 Gradilla, and Ms. Kashyap, are not going to be arguing

23 today.  So, I'm going to leave them in the audience unless

24 there's a reason to elevate someone.  That way our -- our

25 Zoom boxes stay -- you know, don't get too small.  Does

4

1 anyone need to be elevated of the people that I just

2 mentioned?

3          MR. FREEMAN:  I don't think so, your Honor.

4          THE COURT:  Ms. Murphy?

5          MS. MURPHY:  No.  Thank you.

6          THE COURT:  Okay.  All right.  Then let's go ahead

7 and move forward.

8      This is our -- the hearing on two joint discovery

9 letters, but I just want to start with a quick status

10 report.  Could you please tell me what is the status of the

11 Plaintiff's non-expert deposition -- oh, sorry --

12 depositions of Plaintiffs' witnesses who are non-experts?

13 So, how many have been taken, how many left to go?

14          MR. FREEMAN:  I think I'll defer to Ms. Talla on

15 that because I don't have the running count.  I -- I can say

16 that we are -- everything is getting very compressed, as you

17 might imagine, in advance of the fact discovery cutoff on

18 March 10th, but we're making excellent progress.

19          THE COURT:  Okay.

20          MS. TALLA:  Good afternoon, your Honor.  If I'm

21 understanding the question correctly, the Plaintiffs have

22 noticed 26 fact witness depositions.  We've taken I think 22

23 of those already, and there are four more of those that have

24 not yet been taken but are scheduled to be taken this week.

25 And then we are taking a 30(b)(6) deposition of the City for

5

1  which the City has designated four witnesses to testify as

2  their 30(b)(6) deponents, and those are being taken this

3  week, and then next Monday our final day of discovery.

4      So, that's the status of the depositions that

5  Plaintiffs have noticed.

6          THE COURT:  Okay.  I should have -- I -- I think I

7  was confused -- confusing in the way I asked it.  Of the

8  kinds of depositions that are at issue today, I'm just

9  wondering how far along we are.  So, these are Plaintiffs'

10 witnesses.

11     So, Ms. Murphy, maybe I should direct this to you.

12         MS. MURPHY:  I can jump in on that one.  My rough

13 sense is that there's three folks in this category who've

14 yet to be deposed.

15         THE COURT:  Okay.

16         MS. MURPHY:  Otherwise, I think we're barely over

17 12.  I don't know if it's quite 24, for the folks who have

18 been deposed so far.

19         THE COURT:  All right.  Great.  Thank you.

20     So, it sounds like you are well on the way to being

21 done with these.  I reviewed the deposition transcripts that

22 you submitted and also portions of the video of Ms. Wise's

23 (phonetic) deposition.  And, for the most part, it seems

24 like these depositions are going relatively smoothly.  So,

25 the job is to just keep it going and get it done.

6

1    I especially set this hearing so that I could give you

2 a quick ruling on the two joint discovery letters and so you

3 have that information and can get the rest of these

4 depositions across the finish line.

5    So, I'm -- I'm just going -- I -- I read everything.

6 I, you know, reviewed cases.  I've taken a look at all the

7 depositions, as I said, and most of the Wise video.  So, I

8 don't need or -- and I'm not asking for argument.  I just

9 wanted to set this so I could tell you what my rulings are.

10 Okay.

11    So, the first one has to do with questions about drug

12 use.  So, the law is that instructions not to answer

13 deposition questions based on privacy an be appropriate in

14 federal cases, and the court use a balancing test to

15 evaluate the privacy interest versus the need for the

16 information.  So, cases recognize that drug use in general

17 is not probative of credibility or truthfulness unless

18 there's a showing that the witness was under the influence

19 of drugs or was using drugs at the time of a particular

20 occurrence such that it may have affected that person's

21 ability to perceive things accurately or know what was going

22 on.

23    So, in general, these are the areas that I find are --

24 where I'm finding that the relevance of the information

25 about drug use outweighs the privacy interest.  So, drug use

7

1 can be relevant to whether there were drugs in tents or

2 encampments at times of particular sweeps that may have

3 justified the City's disposal of certain property.

4     So, you know, don't ask were there ever any drugs in

5 the encampments since 2019 or have you ever used drugs since

6 2020, but if there's a question about, you know, you're

7 saying that your stuff got swept and your things were thrown

8 away or you saw your neighbor's stuff get thrown away on X

9 date, you know, were there drugs in -- in the tents that --

10 or in your tent, if that's where things were thrown away

11 from, or your neighbor's tent if that was the subject of the

12 disposal.

13     It's also -- drug use can be relevant to the witness's

14 credibility at the time of the sweep and alleged disposal.

15 So, you can also ask whether the deponent used drugs in the

16 period one month before and one month after a specific

17 alleged destruction of property.  So, that is relevant to

18 credibility and their ability to perceive the incident at

19 issue.  It's also relevant to the likelihood of them having

20 drugs in the area at the time of the sweep.  So, for both of

21 those reasons, I think questions in that time period about

22 drug use are relevant and outweigh the privacy interests.

23     So, you can also ask about drug use at the time the

24 declarations were prepared and reviewed and signed, and I

25 think you're already doing this to some extent.  But, of

8

1    course, on the day of a deposition, you -- you're allowed to

2    ask about whether they're under -- you know, have you used

3    anything that would affect their ability to testify

4    truthfully and accurately.

5         So, as to the assertion of the Fifth Amendment and the

6    potential for adverse inference, in a civil case you can't

7    get an adverse inference where there's an assertion of the

8    Fifth Amendment unless you can show there's a substantial

9    need for the information.  It can't be gotten in some other

10   less intrusive way.

11        There's no one-size-fits-all answer.  So, I would have

12   to adjudicate the question of adverse inference on a case-

13   by-case basis.  But, in general, if somebody asserted the

14   Fifth Amendment on a question that  falls outside the scope

15   that I just told you about, then it's really likely that I'm

16   not going to find an adverse inference because there won't

17   be a substantial need for the information that's being

18   sought.

19        So, I just want to put that out there.  That's how I

20   view the Fifth Amendment interacting with this issue.

21        So, are there any questions about the areas of

22   questioning on drug use that are -- I'm allowing?

23             MR. FREEMAN:  None from the Plaintiffs, your

24   Honor.  That seems clear to me.

25             MS. MURPHY:  (Zoom glitch.)

1          THE COURT:  All right.  So, let's move on to the
2    Wise deposition.  As I said, I -- I reviewed the transcript
3    and -- and portions of the video.  There was nothing
4    inappropriate about the manner in which Mr. George was
5    asking questions.  He was using an appropriate tone, and
6    Plaintiff does not complain about that.  But I am concerned
7    that some questions went beyond the bounds of what I would
8    consider, you know, very thorough examination and amounted
9    to overkill in certain sensitive areas that were either
10   highly attenuated relevance or not really relevant at all.
11        So, for example, there were lots of questions about MS.
12   Wise's parents, their deaths.  So, dad died in 1999.  You
13   know, is that 25 years ago?  And mom in 2006, nearly 20
14   years ago.  There's questions about their estates, about
15   what happened with the money she got from selling mom's
16   house in West Virginia in 2009 and what she spent it on.
17   That seems completely irrelevant and completely, you know,
18   little or no relevance to -- the issue about her mother's
19   pearls and her father's guitar, there are far more relevant
20   questions one could ask about that, and they really haven't
21   been asked.
22        There's extended questioning about her housing history
23   spanning many many years and going back to things like, you
24   know, What street did you live on in Las Vegas, and she
25   testified she left Las Vegas, you know, 10 years ago.

10

1      To the extent that the Defense is claiming that those

2  kinds of questions are relevant to testing her statement and

3  her declaration that she's been involuntarily homeless for

4  15 years, Eighth Amendment is out of the case.  So, it's not

5  really at issue, and to the extent Defense wants to set it

6  up as potential impeachment at trial on the question of

7  involuntary homelessness and what she put in the

8  declaration, she already said, I don't know what that means.

9  I didn't use that term.  So, you already have the -- have

10  the impeachment.  It doesn't -- it's pretty tangential,

11  nonmaterial, not very good impeachment to begin with, but it

12  certainly doesn't justify going on and on and on about

13  housing and -- for a homeless person.

14      There were extended questions about her romantic

15  partners over the years.  I have no idea what that was about

16  or how that was relevant.  These are just examples.

17          MS. MURPHY:  May I respond to those, your Honor?

18  I understand it's not going to change your ruling, but I --

19  I do think it matters because the City's position is that

20  those questions are relevant to the factual information in a

21  declaration.  If I could --

22          THE COURT:  Her declaration, okay, it's -- it's

23  one page long.  It's -- it's double spaced.  I know -- so I

24  know, you know, you wrote in your letter, Well, this is

25  relevant to her claims about her -- her mother's pearls and

11

1  her father's guitar or that she's involuntarily homeless.

2  It is the most attenuated relevance.  And -- and, so, I have

3  concerns that -- it's one thing -- I don't want to stop you

4  from doing a thorough examination that's on point, but when

5  -- you know, I'm just expressing a concern that it go so far

6  out on the fringes in areas that were clearly sensitive and

7  upsetting that I really didn't understand, you know, why

8  time was being spent on them.  It was going nowhere.  And

9  there were plenty of times -- for example, you know, if

10 there's questions about, Where did you get the money to --

11 you know, there -- there were some -- some direct questions

12 abut, What family are you in contact with, because she talks

13 about, I need this to be in contact with my family.  Okay.

14      So, you got that with some pretty clear admissions but

15 then went on to ask about everybody's cousin and on and on

16 and on.  It's not a great use of time, and it -- you know,

17 it was upsetting.  There were questions about -- let me see.

18 Yeah, it would have been fine to ask about, Where did you

19 get the money to buy this tablet or these -- these devices.

20 She actually said she didn't have one.  So, that kind of

21 took care of that.  But -- but to ask about, you know, what

22 she inherited, what money she had in 2009 and what she spent

23 it on, that is not relevant to how she had money or whether

24 she's had money in 2023, and it's in a -- a pretty sensitive

25 area, what I'd consider to be within, you know, a private

12

1  area that has to be -- you know, has to do with people's

2  personal finances.

3        So, Ms. Murphy, I -- I read the letter.  I -- you know,

4  you all had the chance to make the argument about why these

5  are relevant, and we can go back and forth on how very

6  attenuated it is.  One could say, okay, well, it's sort of

7  -- you can draw some kind of line of relevance, but -- but

8  I'm just telling you in my ruling it's so attenuated that I

9  had concerns that it was overkill.

10       So, what I'm going to do -- and this is just about Ms.

11  Wise.  I mean, you're almost done -- we're just talking

12  about Ms. Wise.  I -- she should complete her deposition,

13  but I'm going to put a 45 time -- minute time limit on it

14  because her declaration is really short.  She's already been

15  deposed for what I counted to be an hour and 25 minutes.

16  So, that's the time on the record.  I took out the time for

17  breaks.  So, 45 minutes more, not including breaks, and

18  that's more than enough time to finish relevant questions on

19  the --

20            MS. MURPHY:  May I respond, your Honor?

21            THE COURT:  You may respond.

22            MS. MURPHY:  I would request a total of up to four

23  hours to complete Ms. Wise's depo.  The reason is, one, the

24  45-minute time restriction isn't something Plaintiffs have

25  requested.  And, two, the parties have --

13

1          THE COURT:  It's what I'm imposing because of what
2     I saw in the deposition.

3          MS. MURPHY:  Understood.

4          THE COURT:  You know, rather than cut out -- it's
5     the -- it's the best way of making sure that the questions
6     are focused.  I'm not doing this in general.  This is really
7     about Wise.  And --

8          MS. MURPHY:  Understood.

9          THE COURT:  -- having seen, you know, how the time
10    was spent, you know, let's just get down to it.  Forty-five
11    minutes should be plenty to get down to it and finish
12    because you already had -- you know, you've got -- you've
13    gotten a lot of information that goes to what she put in her
14    deposition -- in her declaration.

15         MS. MURPHY:  My only other concerns are that based
16    on the deposition protocol between the parties, every
17    deposition counts for four hours, meaning 240 minutes.  So,
18    I would just request if the Court is limiting the amount of
19    time the City can use to depose Ms. Wise, then we're not
20    counted against the full 240 minutes for her deposition
21    under the protocol.

22         THE COURT:  Is it really an issue?  I mean --

23         MS. MURPHY:  I don't -- I don't know, truthfully,
24    your Honor, at this point.  I haven't done the math on the
25    City's end.  We are in a negotiation on Plaintiffs' end, and

14

1  I do think it -- it would matter for their claims if they
2  had questions for her.
3          THE COURT:  Okay.  Well, I'm not -- I'm going to
4  hold that issue in abeyance.  I mean, you know, if it's an
5  issue, if it really comes down to two hours, let me know.
6  But I -- I really hope it doesn't, and I really hope you can
7  work it out.  That's not a lot of time.
8      Okay.  But this is just meant to -- you know, if she
9  had a longer declaration, if there was more at issue, then
10 maybe we'd talk about more time.  But, given how very short
11 it is and, you know, what -- what I read about how far
12 afield things were going, let's jut get it done.
13          MS. MURPHY:  Am I understanding correctly then
14 that Plaintiffs don't intend to offer Ms. Wise for testimony
15 for any incidents beyond the two disclosed in her
16 declaration?
17          THE COURT:  Well, that's a good point.  Mr.
18 Freeman?
19          MR. FREEMAN:  As far as I know, your Honor, no.
20 We have no -- no intention to -- to offer her for any other
21 incidents.
22          THE COURT:  Okay.  But if she is going to testify
23 about more or if you -- you know, either -- well, you should
24 find out, and if there's more, than I would allow more time
25 for sure.

15

1          MR. FREEMAN:  We understand that, your Honor.  And
2    I can represent to the Court that we don't think there is
3    more.  If -- if that should happen, we'll let the Defendants
4    know.
5          THE COURT:  Okay.  Great.  Okay.  So, that's what
6    I've got.  Any questions about my rulings?
7          MR. FREEMAN:  None from the Plaintiffs, your
8    Honor.
9          THE COURT:  All right.
10          MS. MURPHY:  I did want to alert you to one
11    brewing discovery dispute.  I believe we reached an impasse
12    on Monday.  You'll receive the letter soon.  I just didn't
13    want it to be a surprise since we saw you.  This is about
14    Plaintiffs' request that one of the pending depositions be
15    conducted in writing versus in -- in person with everyone in
16    the same room.
17          THE COURT:  Okay.  In writing because of somebody
18    with a disability or --
19          MR. FREEMAN:  Yes, your Honor.
20          THE COURT:  Okay.  Well, I guess I'll -- I guess
21    I'll see what it is.
22      All right.  Anything further?
23          MS. MURPHY:  None from Defendants.
24          MR. FREEMAN:  Nothing, your Honor.
25          THE COURT:  Okay.  Well, thanks for the heads up,

16

1  Ms. Murphy, and thank you all.

2      We are concluded.

3          ALL:  Thank you.

4          THE CLERK:  This court is now adjourned.

5      (Proceedings adjourned at 1:21 p.m.)

17

<u>CERTIFICATE OF TRANSCRIBER</u>

1
2
3      I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.
14
15
16
17        Echo Reporting, Inc., Transcriber
18           Friday, June 13, 2025
19
20
21
22
23
24
25