EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　　Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS OPINIONS OF DR. KATHY PEZDEK**<br><br>**Judge:** The Hon. Donna M. Ryu |

## INTRODUCTION

To streamline the trial, and to eliminate irrelevant evidence, the Court should exclude the City's proposed memory expert Dr. Kathy Pezdek. Dr. Pezdek's testimony on general principles concerning human memory should be excluded because it is not relevant to any issue in this case and will not assist the trier of fact; it is apparently offered to support the City's argument that its witnesses are more reliable than Plaintiffs' witnesses, a purpose that Dr. Pezdek herself admits is a "misapplication" of her work. In a bench trial the Court is well-equipped to decide the claims without this witness; striking Dr. Pezdek will also shorten the length of the trial.

## FACTS

Dr. Pezdek is a professor of psychology at Claremont Graduate University and is offered by Defendants as an expert concerning "the fallibility of event memory in general," based on principles concerning "cognitive processing and memory for events." Freeman Decl. Ex. A (Defs.' Rule 26 Expert Disclosure, 3/10/25 ("Def. Disclosure")), at 1. As set forth in her (undated) expert report, Dr. Pezdek proposes four basic opinions: (1) that "much of what is retained in memory is actually information about [an] event … that was ascertained after the event and then used to 'construct memory for the event;" (2) that the "construction" of memories is based on "schemas" that "provide a mental framework that summarizes broad patterns of what we have learned to expect to happen in a situation" but may lead to unreliable memory "if a specific episode of an event did not include a feature of the schema for that event;" (3) that memory for the "gist" of an event "persists longer that memory for detail" about the event;" and (4) that due to "inattentional blindness," people "frequently do not notice even personally relevant objects that are in plain sight." Freeman Decl. Ex B (Expert Report of Kathy Pezdek, Ph.D. ("Pezdek Rep.")), at 4-13.

In her deposition, Dr. Pezdek repeatedly admitted that the principles she would testify to "would apply to all the witnesses in this case, no matter whether they're witnesses for the City or witnesses for the Plaintiffs[.]" Freeman Decl. Ex. C, Pezdek Deposition ("Pezdek Dep.") at 29:2-6, 33:4-10). In this regard, "City officials aren't advantaged in their memory over regular

civilians." *Id.* at 49:22-50:4. She admitted that she is "almost always precluded from giving expert opinion testimony about the memory ability of any particular eyewitness as an individual," and that such exclusion is "a general principle that applies to my testimony." *Id.* at 52:24-53:5.

Dr. Pezdek has never before testified in a civil case; all of her prior disclosed expert testimony has been concerned with the reliability of eyewitness identifications, in which she testified on behalf of a criminal defendant. *See id.* at 45:17-46:9. That issue is not present in this case.

Dr. Pezdek has not met any of the witnesses in the case and will not testify as to any individual's cognitive ability, because, as she testified, to do so she would have had to meet with them. *Id.* at 41:11-15. She repeatedly confirmed that she was not being presented for the purpose of commenting on the truthfulness or credibility of any witness. *E.g., id.*, at 100:14-19, 103:21-24, 112:4-5, 112:13-16. She agreed that any argument that a witness's testimony was unreliable based on their "schema" for an event would be "misapplication of what I've said." *Id.* at 118:11-119:5.

Notwithstanding this last admission, it appears from Dr. Pezdek's report and deposition testimony that the City intends to "misapply" Dr. Pezdek's opinions by offering them to impugn the reliability of the testimony of Plaintiffs' witnesses and bolster the credibility of its own witnesses. Dr. Pezdek was provided by the City's attorneys with dozens of declarations and deposition transcripts of the testimony of fact witnesses from both sides, but in giving examples in her report of how her principles related to the testimony of witnesses in the case, she referred to multiple unhoused persons and observers for the Plaintiffs, and only one City official. Even more troubling, Dr. Pezdek uniformly criticized Plaintiffs' witnesses, suggesting their memories might be unreliable—notably, without having interviewed or examined a single unhoused person. For example, she opined that because several witnesses had developed a "schema" of being fearful and distrustful of City workers, that "schema, which lacks details and specificity, may have informed [the witness'] memories of the events [they] experienced…." *Id.* at 113:15-

17. By contrast, Dr. Pezdek praised the testimony of the only City worker she mentioned in her report—again, having never examined anything other than deposition testimony—observing that her "schema for a 'sweep' … was more detailed and therefore would likely result in more specific memories of the events she experienced…." Pezdek Rep. at 8-9.

## LEGAL STANDARD

The proponent of expert testimony bears the burden of proving admissibility. *Jonnie Homyk v. Chemocentryx, Inc.*, No. 21-cv-0334, 2025 WL 1547625, at *3 (N.D. Cal. May 30, 2025) (quoting *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)). Under Federal Rule of Evidence 702, expert testimony is admissible only if the proponent demonstrates that it is "more likely than not that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

"[A]ll admitted expert testimony" must be "both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Expert testimony is relevant if "the knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (cleaned up). Expert testimony is reliable where the underlying knowledge of the testimony has a "reliable basis in the knowledge and experience of the relevant discipline." *Id.* (cleaned up). "Scientific evidence is reliable when the principles and methodology used by an expert are grounded in the methods of science." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). In assessing reliability, courts consider several factors, including "whether the theory or technique employed by the expert is generally accepted in the scientific community; (2) whether it's been subjected to peer review and publication; (3) whether it can be and has been tested; and (4) whether the known or potential rate of error is

acceptable." *Id.* (cleaned up) (quoting *Daubert v. Merrell Dow Pharms.*, Inc., 43 F.3d 1311, 1316 (9th Cir. 1995)).

The Court should exclude "unreliable nonsense opinions" and "junk science" that fail to meet the requirements of Federal Rule of Evidence 702's reliability requirement. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013); *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), overruled on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (cleaned up). While the "focus of the reliability inquiry is on the principles and methodology an expert uses in forming her opinions rather than the expert's conclusions," the court "must also consider whether, for a given conclusion, there is simply too great an analytical gap between the data and the opinion proffered." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (cleaned up). That is because "both unsound methods and unjustified extrapolations from existing data can require the Court to exclude an expert." *Id.* at 1112; *see, e.g.*, *In re Roundup Prods. Liab. Litig.*, 737 F. Supp. 3d 893, 896-97 (N.D. Cal. 2024) (excluding the testimony of a doctor of toxicology and research professor on reliability grounds where he "generally dithered or doubled down without offering any coherent reasons why he remained persuaded by his original position," suggesting "an unreliable results-oriented approach rather than an objective analysis of the literature").

## ARGUMENT

The Court should exclude Dr. Pezdek's opinion testimony because it is irrelevant and will be unhelpful to the trier of fact. Defendants seek to offer Dr. Pezdek to opine on general principles concerning human memory—principles that, she admitted in deposition, apply equally to all witnesses in this case, including unhoused persons and City workers and officials. As such, it cannot conceivably assist a trial judge who has deep experience in judging witness' memory and credibility, and who will be assisted by the cross-examination of all fact witnesses by experienced counsel. But beyond that, in giving examples of the application of her principles to the facts of this case, Dr. Pezdek has unfavorably compared the reliability of Plaintiffs' fact

4

witnesses to that of witnesses offered by the City—something that she herself admits is a misuse of her work.

"The admissibility of this type of expert testimony [regarding reliability of eyewitness identification] is strongly disfavored by most courts." *U.S. v. Sims*, 617 F.2d 1371, 1375 (9th Cir. 1980) (collecting cases). Courts routinely exclude expert testimony regarding memory in general because it does not provide the trier of fact with information they do not already know based on their everyday experiences. *E.g., United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996) ("It is common knowledge that memory fades with time."); *United States v. Redwood,* 216 F.Supp.3d 890, 897 (N.D. Ill. 2016) (jurors "already know that a witness's ability to perceive something could be affected by whether or and for how long the witness could see or hear it, and whether the witness was focused or distracted.") In addition, any weaknesses or unreliability of memory on the part of the witness can be "easily expose[d] through cross-examination and closing arguments" of counsel. *Labansat,* 94 F.3d at 530.

In light of these principles, the testimony of Dr. Pezdek is not relevant to any material issue in this case, will not assist the trier of fact, and serves only to prolong the trial.

Dr. Pezdek herself admitted that the only opinions she can offer relate to the fallibility of memory in general. The subjects of her opinions are well within the knowledge and experience of this Court as the trier of fact. Moreover, to the extent that the City may try to insinuate that the memories of its witnesses are more trustworthy than those of unhoused persons, Dr. Pezdek has admitted that this would be a "misapplication" of her theories. As a result, the introduction of Dr. Pezdek's opinions can only result in wasted time, irrelevant testimony, and confusion.

In *United States v. Rincon*, 28 F.3d 921, 925-26 (9th Cir. 1994), the Ninth Circuit affirmed a district court's decision to exclude Dr. Pezdek's proffered testimony on eyewitness identification, even though it appeared to be relevant to the issues in the case (eyewitness identification in a bank robbery case), because it would tend to confuse or prejudice the jury and the applicable principles were already the subject of jury instructions. Not only does the same issue of confusion or prejudice exist here, but in addition, the proffered testimony is not relevant

because the identity of the persons who confiscated and destroyed unhoused persons' belongings is not in issue. The City hardly denies that the persons described by Plaintiffs' witnesses as having taken their belongings were City employees; the only question in issue is whether the actions of those employees were permissible.

## CONCLUSION

For the foregoing reasons, the testimony of Dr. Pezdek should be excluded.

Dated: June 20, 2025

Respectfully submitted,

By: /s/ Vasudha Talla

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Vasudha Talla, SBN 316219
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
vtalla@ecbawm.com
zsalzman@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

By: /s/ Nisha Kashyap

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: /s/ John Thomas H. Do

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: */s/ Scout Katovich*

AMERICAN CIVIL LIBERTIES UNION
Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*