EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS OPINIONS OF DR. F. RAMZI ASFOUR** <br><br> Final Pretrial Conference: July 9, 2025 <br> Time: 1:00 p.m. <br> Trial Date: July 28, 2025 <br> Courtroom: Courtroom 4, 3rd Floor <br> Judge: Hon. Donna M. Ryu |

## INTRODUCTION

To streamline the trial, and to eliminate irrelevant evidence, the Court should exclude the City's infectious disease expert Dr. F. Ramzi Asfour. Dr. Asfour's opinions on infectious disease risk should be excluded because they are irrelevant and unreliable. In a bench trial, the Court is well-equipped to decide the claims without Dr. Asfour; striking Dr. Asfour will also shorten the length of the trial.

## FACTS

Dr. Ramzi Asfour, an infectious disease physician with no experience working in homeless encampments, should be precluded from testifying about supposed infectious disease risks posed by homeless encampments and items at encampments that lack any support in the literature, are based on nothing more than speculation, do not meaningfully advance any issue in the case, and only prolong the trial. *See* Katovich Decl. Ex. A, Report of Dr. F. Ramzi Asfour ("Asfour Rep."). Dr. Asfour's opinions fall into two categories. Dr. Asfour's primary opinion "is that unhoused people suffer from a variety of infections . . . to a greater extent than . . . the general public in the United States." Katovich Decl. Ex. B, Deposition Transcript of Dr. F. Ramzi Asfour ("Asfour Dep.") at 42:23-25. Within this broad opinion, Dr. Asfour offers opinions about the prevalence among and risks to unhoused people of five specific types of infections *See id.* at 42:25-44:10; Asfour Rep. at 5-11. In the second category, Dr. Asfour offers opinions on the risk of transmission of infectious disease from encampments "to the local community," Asfour Rep. at 8, including "risks related to storage of items that are found in encampments, including risks to the workers that are charged with having contact with those items." Asfour Dep. at 44:11-14.

## LEGAL STANDARD

The proponent of expert testimony bears the burden of proving admissibility. *Jonnie Homyk v. ChemCcentryx, Inc.*, No. 21-cv-0334, 2025 WL 1547625, at *3 (N.D. Cal. May 30, 2025) (quoting *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)). Under Federal Rule of Evidence 702, expert testimony is admissible only if the proponent demonstrates that it is "more likely than not that (a) the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

"[A]ll admitted expert testimony" must be "both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Expert testimony is relevant if "the knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (cleaned up)). "In assessing whether the proffered expert testimony 'will assist the trier of fact' . . . [, the Court] must look to the governing substantive standard." *Daubert v. Merrell Dow Pharms., Inc*, 43 F.3d 1311, 1320 (9th Cir. 1995) (*Daubert II*). Expert testimony is reliable where the underlying knowledge of the testimony has a "reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona*, 750 F.3d at 1044 (cleaned up). "Scientific evidence is reliable when the principles and methodology used by an expert are grounded in the methods of science." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). In assessing reliability, courts consider several factors, including "whether the theory or technique employed by the expert is generally accepted in the scientific community; (2) whether it's been subjected to peer review and publication; (3) whether it can be and has been tested; and (4) whether the known or potential rate of error is acceptable." *Id.* (cleaned up) (quoting *Daubert II*, 43 F.3d at 1316).

While the "focus of the reliability inquiry is on the principles and methodology an expert uses in forming her opinions rather than the expert's conclusions," the court "must also consider whether, for a given conclusion, there is simply too great an analytical gap between the data and the opinion proffered." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (cleaned up). That is because "both unsound methods and unjustified extrapolations from existing data can require the Court to exclude an expert." *Id.* at 1112; *see, e.g. In re Roundup Prods. Liab. Litig.*, 737 F.

Supp. 3d 893, 896-97 (N.D. Cal. 2024) (excluding the testimony of a doctor of toxicology and research professor on reliability grounds where he "generally dithered or doubled down without offering any coherent reasons why he remained persuaded by his original position," suggesting "an unreliable results-oriented approach rather than an objective analysis of the literature").

## ARGUMENT

### I. Dr. Asfour's Testimony Should Be Excluded

#### A. Dr. Asfour's Opinions on Infectious Disease Risk Are Not Relevant

Dr. Asfour's first category of opinions—on infectious disease risks to unhoused individuals—is irrelevant and should be excluded. The parties' experts agree that unhoused people living in encampments may face increased health risks, including because they lack access to adequate sanitation. *See* Katovich Decl. Ex. C, Rebuttal Report of Dr. Ben King at 1-3; Asfour Rep. at 15-16. While widely accepted in the scientific community and a critical issue to the lives and health of unhoused individuals, Dr. Asfour's opinions on this subject are not "relevant to the task at hand." *Daubert II*, 43 F.3d at 1315. Infectious disease susceptibility and transmission among unhoused individuals has no bearing on the property destruction and notice issues in this case.[1] If the City is arguing that intentional property destruction is a valid means of furthering an objective of eliminating "diseased" homeless encampments, Dr. Asfour's opinions are still irrelevant because he asserts that any assessment should be individualized, that not all encampments are alike, and that an object should not be presumed to be contaminated simply because it is in an encampment. *See* Asfour Dep. at 66:25-67:20; 152:3-12. Because his opinions do not "assist the trier of fact to understand the evidence or to determine a fact in issue" related to property seizure and destruction or notice, these opinions are irrelevant and should be excluded. Fed. R. Evid. 702(a); *see also Daubert*, 509 U.S. at 591.

Dr. Asfour's second category of opinions, about the risks of infectious disease transmission to City workers and the local community from encampments, also does not "logically advance[] a

---

[1] Indeed, as Dr. Asfour testified, this opinion concerns "infectious diseases of the homeless encampments themselves that has nothing to do with the objects stored or storing of objects." Asfour Dep. at 191:10-13.

material aspect of the proposing party's case" and should be excluded as irrelevant. *Daubert II*, 43 F.3d at 1315. Dr. Asfour's opinions about the existence of mere non-zero probabilities of infectious disease transmission from encampments to workers or the community do not assist the trier of fact in determining whether a property seizure occurred, whether notice was posted, or even whether destruction of an item was reasonable. As Dr. Asfour testified, he is "not offering opinions on how to handle individual items," what is an "immediate health or safety risk," or what should be done with potentially contaminated belongings, including whether they should be destroyed. Asfour Dep. at 189:11-24; 205:25-206:17. And while Dr. Asfour offers opinions about the risks of infections being non-zero, he has not made and is not offering opinions about "actual risk assessments in any of those infections." Asfour Dep. at 52:1-3. Testimony that merely opines that "risk" exists—untethered to any quantum of risk or immediacy of risk or assessment of how a City worker should respond in the face of such risk—does not help resolve the issues in the case—i.e., whether City workers were justified in destroying the belongings of unhoused individuals.

### B. Dr. Asfour's Opinions on Infectious Disease Transmission Risk from Encampments Are Unreliable

Dr. Asfour's opinions on the risks of infectious disease transmission to City workers and the local community from encampments are also excludable because they are unsupported by the scientific literature and evidence in this case. *See Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961-62 (N.D. Cal. 2025) (*citing Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)) ("[T]rial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable."). Throughout his report, Dr. Asfour attempts to tie documented risks of infection among unhoused individuals to "risks to the local community," without explanation or support. Asfour Rep. at 9. None of the articles cited by Dr. Asfour identify instances of transmission of infectious disease from encampments to City workers or the surrounding housed community and Dr. Asfour admitted in his deposition testimony that he was not aware of any. Asfour Dep. at 122:5-9; *see also id.* at 47:22-25 ("I did not come across any peer-reviewed literature or good quality data suggesting -- strongly evidencing transmission from homeless encampments to the general

4

population."); 49:25-50:2 ("I don't know of studies showing spillover of airborne respiratory disease definitively into the community"); 48:22-49:9 (describing Typhus outbreak where "[i]t is certainly possible, although they didn't prove . . . that some of the people who weren't experiencing homelessness who got typhus . . . got it because of . . . the homeless encampments"); 85:5-21 (admitting he was not aware of studies that discuss the risk of transmission of any of the diseases discussed in his report to City employees who interact with encampments). Nor are Dr. Asfour's opinions on the transmission of infectious disease from encampments to City workers or the general public supported by facts outside the scientific literature. Indeed, Dr. Asfour testified that he was unaware of any situation in which a City worker in San Francisco, or elsewhere, had contracted an infectious disease due to work related to homeless encampments. *See id.* at 125:6-14. Without any literature or evidence showing transmission of infectious disease from encampments to workers, Dr. Asfour's opinions lack sufficient "support for every necessary link" in his theory. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606 (9th Cir. 2002) (upholding district court's exclusion of expert testimony where expert's "conclusion simply did not follow from his analysis").

Dr. Asfour's opinions as to the risk of infectious disease posed specifically by unhoused people's belongings are equally unsupported and, therefore, unreliable. Dr. Asfour admitted that he was unable to find any studies on the risk of infectious disease spreading from unhoused individuals' belongings, likely because "the absolute risk is not very high with proper handling." *Id.* at 80:19-81:19; *see also id* at 87:9-13 (risk of transmission of airborne diseases from handling unhoused people's property is close to zero with appropriate handling); 112:9-13 ("in terms of human urine to city workers, the risk of [disease transmission] is low, very low . . . I would say almost zero"). Even when Dr. Asfour opines that "bloodborne infections may be transmitted by contaminated needles and shared injection drug paraphernalia," Asfour Rep. at 9, he must concede that he is not aware of any member of the general public or any City worker in San Francisco or elsewhere being infected with a blood-borne illness from a homeless encampment. Asfour Dep. at 123:13-23. Dr. Asfour also did not base this opinion on review of any needlestick logs or other

5

information about the prevalence of needlestick injuries. *Id.* at 129:22-130:17. The admitted lack of studies or data showing any spread of infectious disease from unhoused people's belongings to workers renders Dr. Asfour's opinion to the contrary "inherently unreliable" and "speculative." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014). "[T]here is simply too great an analytical gap between the data and the opinion proffered" for it to be admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## CONCLUSION

For the foregoing reasons, the testimony of Dr. Asfour should be excluded.

Dated: June 20, 2025                                  Respectfully submitted,

By: */s/ Vasudha Talla*

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Vasudha Talla, SBN 316219
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
vtalla@ecbawm.com
zsalzman@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

By: */s/ Nisha Kashyap*

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: /s/ John Thomas H. Do

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: /s/ Scout Katovich

AMERICAN CIVIL LIBERTIES UNION
Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*
