EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS OPINION OF DR. TIMUR DURRANI** <br><br> Final Pretrial Conference: July 9, 2025 <br> Time: 1:00 p.m. <br> Trial Date: July 28, 2025 <br> Courtroom: Courtroom 4, 3rd Floor <br> Judge: Hon. Donna M. Ryu |

## INTRODUCTION

To streamline the trial, and to eliminate irrelevant evidence, the Court should exclude the City's proposed occupational hazards expert Dr. Timur Durrani. Dr. Durrani's opinions about occupational risks to City workers should be excluded because they are irrelevant: this is a Fourth and Fourteenth Amendment case, not a workers' compensation case. His opinions are also unreliable and lack scientific foundation. In a bench trial, the Court is well-equipped to decide the claims without this witness; striking Dr. Durrani will also shorten the length of the trial.

## FACTS

Dr. Timur Durrani, an occupational and environmental medicine physician who does not work in homeless encampments and has no scholarship related to unhoused people or homeless encampments, should be precluded from testifying about occupational risks he claims City workers face in and around encampments: those opinions are irrelevant to the claims of property destruction and notice (and the City's defenses), and based on nothing more that Dr. Durrani's unsupported assertions. *See* Katovich Decl. Ex. A, Report of Dr. Timur Durrani ("Durrani Rep.") at 1-3; Katovich Decl. Ex. B, Deposition Transcript of Dr. Timur ("Durrani Dep.") at 45:9-17; 59:4-21. Dr. Durrani's principal opinion is that "workers conducting street cleaning and property removal, particularly of encampments and related places of human habitation in public spaces, are at risk for occupational injury." Durrani Rep. at 4. Dr. Durrani's expert report sets out related opinions about six categories of occupational hazards that he claims City workers face while working in and around encampments: (1) physical injury from slips, falls, trips, or physical contact with people, animals, or objects; (2) contracting infectious diseases for which people experiencing homelessness are at increased risk; (3) exposure to chemicals; (4) exposure to thermal hazards; (5) threats of violence; and (6) animal bites. *See id.* at 4-7.

Dr. Durrani's opinions conclude only "that there are dangers and/or hazards . . . City workers face in conducting street cleaning and property removal, particularly of encampments." Durrani Rep. at 7. His opinions do not address the magnitude of potential risk, whether City workers have in fact been exposed to or injured from these hazards, or whether or how the risks

can be mitigated. *See* Durrani Dep. at 164:5-8 ("the question that this [report] focuses on are what are the risks -- what are the increased risks that they would face in doing this work, as comparing to not doing this work"). For example, Dr. Durrani opines that workers conducting street cleaning and property removal are at risk of physical injury from slips and falls, based on his observations that workers mount and descend truck beds and walk on spray cleaning, despite there being no record of any such injury actually occurring. *See* Durrani Rep. at 4; Durrani Dep. 126:9-127:1; 183:3-184:1; *see also id.* 228:8-12 ("do we have any documentation of a worker getting ill from [chemicals], thankfully no. . . . But there is -- the hazard exists. And because of their presence there, the risk exists.").

## LEGAL STANDARD

The proponent of expert testimony bears the burden of proving admissibility. *Jonnie Homyk v. ChemoCentryx, Inc.*, No. 21-cv-0334, 2025 WL 1547625, at *3 (N.D. Cal. May 30, 2025) (quoting *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)). Under Federal Rule of Evidence 702, expert testimony is admissible only if the proponent demonstrates that it is "more likely than not that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

"[A]ll admitted expert testimony" must be "both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Expert testimony is relevant if "the knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (cleaned up). "In assessing whether the proffered expert testimony 'will assist the trier of fact' . . . [, the Court] must look to the governing substantive standard." *Daubert v. Merrell Dow Pharms., Inc*, 43 F.3d 1311, 1320 (9th Cir. 1995) (*Daubert II*). Expert testimony is reliable where the underlying knowledge of the

testimony has a "reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona*, 750 F.3d at 1044 (cleaned up). "Scientific evidence is reliable when the principles and methodology used by an expert are grounded in the methods of science." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). While the "focus of the reliability inquiry is on the principles and methodology an expert uses in forming her opinions rather than the expert's conclusions," the Court "must also consider whether, for a given conclusion, there is simply too great an analytical gap between the data and the opinion proffered." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1112 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (cleaned up). That is because "both unsound methods and unjustified extrapolations from existing data can require the Court to exclude an expert." *Id.* at 1112; *see, e.g.*, *In re Roundup Prods. Liab. Litig.*, 737 F. Supp. 3d 893, 896-97 (N.D. Cal. 2024) (excluding the testimony of a doctor of toxicology and research professor on reliability grounds where he "generally dithered or doubled down without offering any coherent reasons why he remained persuaded by his original position," suggesting "an unreliable results-oriented approach rather than an objective analysis of the literature").

## ARGUMENT

### I. Dr. Durrani's Testimony Should Be Excluded

#### A. Dr. Durrani's Occupational Risk Opinions are not Relevant

The entirety of Dr. Durrani's opinions about occupational risks to City workers should be excluded as "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Dr. Durrani's report does not explain how his opinions relate to any element of the Fourth or Fourteenth Amendment claims remaining in the case; when asked at his deposition, he was unable to articulate any connection. Durrani Dep. at 283:18-284:5 ("Q. And so how does your report apply to the claims in this case? A. Well, . . . My report addresses the risks that workers face when handling and addressing the encampments. Q. And how does that apply to the claims in this case? A. I'm not sure."). There is no workers' compensation or other claim related to worker injury in this case and Defendants have never

articulated a defense related to occupational injuries. Opinions about potential occupational risks faced by City workers simply by virtue of working in and around encampments do not help answer questions about whether City workers' seizures are lawful, and therefore do not meet the requirement that they "logically advance[] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315.

The relevance of Dr. Durrani's opinions to the issues in this case is further attenuated by the fact that Dr. Durrani's opinions about occupational risks are not limited to worker activities associated with handling unhoused people's property or providing notice of encampment operations. Many, like the risk of physical injury presented by having to mount and step down from a truck bed, *see* Durrani Rep. at 4, are risks inherent to *many* jobs involving manual labor, whether performed at encampments or otherwise. Others are at best tenuously related to homeless encampments, but irrelevant to the propriety of City workers' handling of unhoused people's property or notice. For example, he opines that workers conducting street cleaning and property removal face increased risks of thermal exposure, animal bites, and violence simply because, he asserts, these risks are present at encampments *See* Durrani Rep. at 6-7; Durrani Dep. at 249:17-250:1. But he provides no explanation, or evidence, as to how handling property or providing notice are connected to these alleged risks. Absent any connection to activities related to handling property or providing notice, these opinions lack "a valid connection to the pertinent inquir[ies]" in the case and should be excluded. *Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 624 (N.D. Cal. 2022) (cleaned up).

### B.  Dr. Durrani's Opinions are Unreliable

In addition to being irrelevant to the case, Dr. Durrani's opinions about occupational risks must be excluded because "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Durrani's opinions about infectious disease risk posed to DPW workers are pure conclusions without any evidentiary support. He claims support for this opinion by citing scientific literature documenting infectious disease prevalence and outbreaks among unhoused people. *See*

Durrani Rep. at 4. Yet none of the literature discusses the risk of infectious disease to *individuals that work among unhoused people* (such as health workers, social workers, police officers, or DPW workers), or documents the *transmission of diseases from unhoused people living in encampments to workers*. *See* Durrani Rep. at 4 n.1. His conclusions are also not supported by facts in this case. Dr. Durrani could identify no records he reviewed showing actual disease transmission to workers in encampments. Durrani Dep. at 220:7-221:21.[1]

Dr. Durrani's opinion about the risks of chemical exposure is equally flimsy. Dr. Durrani opines that workers are at risk of exposure to certain chemicals, including drugs of abuse and their metabolites and chemicals such as TCEP (a flame retardant found in items including furniture, building insulation, and electronics, which "can be gradually released from products treated with TCEP into indoor environments"). *See* California Office of Environmental Health Hazard Assessment, *Tris(2-chloroethyl) Phosphate (TCEP)*, https://www.p65warnings.ca.gov/fact-sheets/tris2-chloroethyl-phosphate-tcep. Dr. Durrani identified the chemicals he claims pose this risk based on a single study that identified these chemicals in effluent associated with homeless encampments in Las Vegas. *See* Durrani Rep. at 6 n.2 (citing Daniel Gerrity, et al, *Characterizing the Chemical and Microbial Fingerprint of Unsheltered Homelessness in an Urban Watershed*, Sci Total Environ. 840 (2022) 156714, doi: 10.1016/j.scitotenv.2022.156714); Durrani Dep. at 224:11-225:7.[2] Dr. Durrani concludes that City workers who work at encampments are at risk from these chemicals, without any discussion or explanation of the route of exposure or concentration

---

[1] The "needle stick log" records identified by Dr. Durrani do not provide a reliable basis for his opinion that workers engaged in property removal at encampments face an increased risk of infectious disease. Rather, these records appear to document needle sticks, but not infection, involving a variety of City workers in various contexts and settings, mostly unrelated to homelessness and property collection. *See* Katovich Decl. Ex. D (CCSF-COH_713829) (log showing needlesticks primarily involving housed individuals being treated by medical workers); Katovich Decl. Ex. E (CCSF-COH_681720) (log appearing to show 5 DPW needle stick incidents in 2020 and 2021 with no indication that any are related to homeless encampments); Durrani Dep. at 186:6-192:12 (discussing CCSF-COH_713829).

[2] While Dr. Durrani opines that workers face a risk of exposure to TCEP at encampments, the article which he relied upon to identify this risk actually found lower concentrations of TCEP in effluent associated with encampments and Dr. Durrani was unable to explain why there would be a greater risk of exposure to TCEP in encampments than elsewhere. Durrani Dep. 238:18-247:13.

1  that would be necessary to present a health risk to workers and ignores that, as he admitted, drugs
2  of abuse like methamphetamine cannot be absorbed by a worker wearing impermeable gloves.
3  Durrani Dep. 230:19-21. The Court should exclude this "opinion evidence that is connected
4  to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

5        Dr. Durrani's opinions about other risks fare no better. His opinion about increased risk of
6  exposure to burning material is based solely on the fact that fires have occasionally been reported
7  to occur at encampments in other contexts, absent any evidence that workers conducting street
8  cleaning and property removal have ever been present during a fire or exposed to burned materials.
9  *See* Durrani Rep. at 6-7; Durrani Dep. at 249:17-250:1. To the extent Dr. Durrani is offering expert
10 testimony about risks faced by firefighters who respond to fires at encampments, *see* Durrani Dep.
11 at 294:24-295:20, this testimony is completely unrelated to the claims and facts of the case and
12 should be excluded. If his opinion is about thermal risk to workers engaged in property removal,
13 it should be excluded as "inherently unreliable" because it "do[es] not rest on a sufficient factual
14 foundation." *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961–62 (N.D. Cal. 2025) (citation
15 omitted). Similarly, Dr. Durrani's opinion that workers face a risk of animal bites is based on his
16 observation of a person with an animal at the encampment resolution he visited and SFPD records
17 showing that 11 animal bites involving encampment residents or community members—not city
18 workers, let alone workers handling property or notice—were reported to have occurred in
19 encampments over an unknown period of time. Durrani Rep. at 7; Durrani Dep 256:24-259:24.
20 His opinion about the risk of violence likewise appears to be extrapolated from the threats of
21 violence faced generally by public health field-workers and one worker's testimony about being
22 sprayed by mace on one occasion. *See* Durrani Rep. at 7; Durrani Dep. at 256:2-23 (unable to
23 identify other support for his report's description of attacks on workers that *may* have been
24 committed by unhoused people). Such "speculative testimony is inherently unreliable." *Ollier v.*
25 *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014). While the City may argue
26 at trial that their encampment removal operations are necessitated by fire, animals, or other
27 conditions, Dr. Durrani—an occupational health physician with no professional experience or
28

research specific to unhoused people or homeless encampments, *see* Katovich Decl. Ex. C, Curriculum Vitae of Dr. Timur Durrani—is not the witness through whom such testimony should be presented.

### a. Dr. Durrani's February 25, 2025 Visit and Related Opinions Should Be Excluded

Dr. Durrani bases his expert opinions in part on a site visit to observe an HSOC encampment resolution on February 25, 2025, eleven days after the Court-ordered deadline for new facts to be offered at trial. *See* Dkt. 264.[3] Dr. Durrani's observations from this visit, including information learned from conversations with City workers, are central to his opinions and specifically cited in his report as a basis for his opinions on physical injury and exposure to infectious disease. Durrani Rep. at 3-5. Because the visit took place after the deadline for new facts, information gleaned by Dr. Durrani during this visit cannot be offered at trial. To allow otherwise would permit Defendants to circumvent by way of expert testimony the Court's scheduling order and the parties' agreed-upon deadline for the facts that may be presented at trial. To the extent Dr. Durrani's opinions are not excluded in their entirety, at minimum, he should be precluded from providing expert testimony based on observations or information learned at the February 25, 2025 visit.

### CONCLUSION

For the foregoing reasons, the testimony of Dr. Durrani should be excluded.

Dated: June 20, 2025

Respectfully submitted,

By: /s/ *Vasudha Talla*

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Vasudha Talla, SBN 316219
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*

---

[3] Defendants did not seek an extension of this date in order to accommodate Dr. Durrani's site visit and no good cause appears to exist to have done so. Dr. Durrani testified that he decided to conduct a site visit before February 2025. Durrani Dep. 113:20-114:4.

|  |  |
|---|---|
| 1 | Bianca Herlitz-Ferguson, *pro hac vice* |
| 2 | 1 Rockefeller Plaza, 8th Floor |
|   | New York, NY 10020 |
| 3 | Telephone: (212) 763-5000 |
|   | vtalla@ecbawm.com |
| 4 | zsalzman@ecbawm.com |
|   | vprasad@ecbawm.com |
| 5 | bherlitz-ferguson@ecbawm.com |

By: */s/ Nisha Kashyap*

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: */s/ John Thomas H. Do*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: */s/ Scout Katovich*

AMERICAN CIVIL LIBERTIES UNION
Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*

8

PLAINTIFFS' MOTION TO EXCLUDE EXPERT WITNESS OPINION OF DR. TIMUR DURRANI
CASE NO. 4:22-cv-05502-DMR