# EXHIBIT J

# TO

# DECLARATION OF NATHAN THEOBALD IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE OBSERVER TESTIMONY REGARDING ALLEGED UNLAWFUL PROPERTY LOSS

# In The Matter Of:

*Coalition on Homelessness, et al. v.*
*City and County of San Francisco, et al.*

*Toro Castano*
*October 9, 2024*

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California  94104*
*(415) 597-5600*

Original File 43437Castano_nl.txt
**Min-U-Script®**

```
                                                                    1

 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3

 4     - - - - - - - - - - - - - - - - - -

 5     COALITION ON HOMELESSNESS,           )

 6     et al.,                              )

 7                     Plaintiffs,          )   CASE NO.

 8     vs.                                  )   4:22-cv-05502-DMR

 9     CITY AND COUNTY OF SAN               )

10     FRANCISCO, et al.,                   )

11                     Defendants.          )

12     - - - - - - - - - - - - - - - - - -

13

14

15       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16              PURSUANT TO PROTECTIVE ORDER

17         VIDEOTAPED DEPOSITION OF TORO D. CASTAÑO

18               WEDNESDAY, OCTOBER 9, 2024

19

20

21            BEHMKE REPORTING AND VIDEO SERVICES, INC.

22               BY:  SUZANNE I. ANDRADE, CSR NO. 10682

23                   550 CALIFORNIA STREET, SUITE 820

24                   SAN FRANCISCO, CALIFORNIA  94104

25                             (415) 597-5600
```

2

1
2
3
4
5
6
7
8
9
10          Videotaped deposition of TORO D. CASTAÑO,
11  taken on behalf of Defendants, at 39 Drumm Street, Third
12  Floor, San Francisco, California, commencing at
13  10:07 A.M., WEDNESDAY, OCTOBER 9, 2024, before Suzanne
14  I. Andrade, Certified Shorthand Reporter No. 10682,
15  pursuant to Notice.
16
17
18
19
20
21
22
23
24
25

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFFS:
 3        LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE
 4        SAN FRANCISCO BAY AREA
 5        BY:  ANDREW NTIM, ATTORNEY AT LAW
 6        131 Steuart Street, Suite 400
 7        San Francisco, California  94105
 8        Telephone:  (415) 543-9444
 9        Email:  antim@lccrsf.org
10   - AND -
11        AMERICAN CIVIL LIBERTIES UNION FOUNDATION NORTHERN
12        CALIFORNIA
13        BY:  WILLIAM S. FREEMAN, ATTORNEY AT LAW
14        39 Drumm Street
15        San Francisco, California  94111
16        Telephone:  (415) 621-2493
17        Email:  wfreeman@aclunc.org
18
19
20
21
22
23
24
25
```

4

```
 1  APPEARANCES OF COUNSEL (CONTINUED):
 2  FOR DEFENDANTS:
 3        CITY AND COUNTY OF SAN FRANCISCO
 4        OFFICE OF THE CITY ATTORNEY
 5        BY:   STEVEN A. MILLS, DEPUTY CITY ATTORNEY
 6              JOHN H. GEORGE, DEPUTY CITY ATTORNEY
 7        1390 Market Street, Sixth Floor
 8        San Francisco, California  94102
 9        Telephone:  (415) 355-3304
10        Email:  steven.mills@sfcityatty.org
11                john.george@sfcityatty.org
12
13  ALSO PRESENT:
14        KYLE FRIEND, BEHMKE VIDEOGRAPHER
15
16
17
18
19
20
21
22
23
24
25
```

                                                                  10

1                WEDNESDAY, OCTOBER 9, 2024; 10:07 A.M.
2          THE VIDEO OPERATOR:  Here begins Media No. 1 in the
3    deposition of Tora -- Toro Castaño in the matter of
4    Coalition on Homelessness, et al., versus City and
5    County of San Francisco, et al., in the U.S. District
6    Court, Northern District of California, Case No.
7    4:22-cv-05502-DMR.
8            Today's date is Wednesday, October 9th, 2024.
9    The time on the video monitor is 10:07 a.m.
10           The video operator today is Kyle Friend,
11   employed by Behmke Reporting and Video Services, Inc.
12           This video deposition is taking place at
13   39 Drumm Street, San Francisco, California 94111, and
14   was noticed by Steven Mills, Deputy City Attorney for
15   the City and County of San Francisco.
16           Counsel, please voice-identify yourselves and
17   state who you represent.
18       MR. MILLS:  Thanks.  So Steven Mills on behalf of
19   the defendants, with my colleague John George.
20       MR. NTIM:  And Andrew Ntim on behalf of the
21   plaintiffs, with my colleague Bill Freeman.
22       THE VIDEO OPERATOR:  The court reporter is Suzanne
23   Andrade, Certified Shorthand Reporter, contracted by
24   Behmke Reporting and Video Services, Inc.
25           Would the reporter please swear in the witness.

```
                                                                   11
 1                    TORO D. CASTAÑO,
 2   after having been duly administered the oath to tell the
 3   truth, the whole truth, and nothing but the truth,
 4   testified as follows:
 5       THE WITNESS:  I do.
 6                       EXAMINATION
 7   BY MR. MILLS:
 8       Q.   All right.  So hello, Mr. Castaño.  We haven't
 9   met.  My name is Steven Mills.  I am counsel for the
10   defendants in this lawsuit.  So it's a pleasure to meet
11   you here in person.
12            Before we begin, can you just state your full
13   name and spell it on the record?
14       A.   Sure.  Toro Dutch Castaño, T-o-r-o, D-u-t-c-h,
15   C-a-s-t-a-n-o.
16       Q.   Great.  Thank you.
17            And is this your first deposition, or have you
18   ever given a deposition before?
19       A.   I've never given one.  I've attended one.
20       Q.   Okay.  So, because it's the first one, I'm just
21   going to set some ground rules because I know that these
22   are not a typical experience for everybody, and they're
23   a little different than how we do conversations on the
24   day-to-day.
25            So our court reporter here is going to be
```

1  take an item out of the camp that you did not want them
2  to take?
3      A.   It sounds plausible.  People stole stuff all
4  the time.
5      Q.   How often would things be stolen?
6      A.   Often.
7      Q.   Almost daily?
8      A.   Yes.
9      Q.   And did you take any steps to try to prevent
10 items from being stolen?
11     A.   No.  I took steps afterwards, but no -- I mean,
12 other than the normal precautions.
13     Q.   What are the normal precautions you're
14 referring to?
15     A.   Locking things up, not leaving things out.
16     Q.   Did you have, like, dresser drawers or cabinets
17 that you were able to leave things locked in at that
18 encampment?
19     A.   I had a crate that everything fit into that had
20 two sections that locked.  There's a video of it.  I
21 think you were -- you were given the video.
22     Q.   And then you meant -- I heard you testify about
23 needle exchange.
24          So would people get to come and just place
25 needles in the encampment?

208

1    A.    They put them in Sharps boxes.
2    Q.    How many Sharps boxes did you have?
3    A.    I had a large one and a medium size one.
4    Q.    So two?
5    A.    Yes.
6    Q.    And can you describe roughly the size or
7    dimensions of the large needle box?
8    A.    I couldn't, but it's standard.
9    Q.    And what's standard to you?
10   A.    I'm not sure what the measurements are.
11   Q.    With your hands, can you kind of give me a best
12   estimate of how wide that box was?
13   A.    Maybe this wide (indicating).
14   Q.    And how tall?
15   A.    Maybe that tall (indicating).
16   Q.    And what about the smaller one; can you do the
17   same activity?
18   A.    Probably about like this size (indicating).
19   Q.    And how would those get, like, replaced or
20   emptied?
21   A.    I would dispose of them according to whatever
22   the protocols were.  It was difficult during the
23   pandemic; not everything was open.  But I didn't just
24   throw them away.
25   Q.    Did you seek those Sharps bins from City

252

1    Q.   Would you use glitter?
2    A.   Oh, yeah, definitely.
3    Q.   Are you a heavy glitter user?
4    A.   Not heavy.
5         But I used American cheese slices once.
6    Someone donated, like, 300 of them.
7    Q.   And that was perishable cheese?
8    A.   Yeah.
9    Q.   And what did you do with that cheese?
10   A.   I spelled out an obscene word.
11   Q.   And did you do that in this camp?
12   A.   Yeah, I think so.
13   Q.   What was the obscene word?
14   A.   I think it said "fuck you" or something like
15   that.
16   Q.   And what did you do with the cheese after it
17   was left out?
18   A.   I swept it up and put it in the dumpster.
19   Q.   Do you know how long you kept the cheese out?
20   A.   About a week.
21   Q.   Were you trying to telegraph that message to
22   anyone in particular?
23   A.   No.  It was a message of resistance.
24   Q.   And who were you sending a message of
25   resistance to?

253

1    A.    Neighbors.
2    Q.    Your neighbors in the Castro?
3    A.    The people directly across the street.
4    Q.    Is that a library across the street?
5    A.    Yeah.
6    Q.    Do you know if the library was open during this
7  time?
8    A.    Depends on what day it was.
9    Q.    Is there a daycare there?
10   A.    No.  Not in the library, no.
11   Q.    Do you see any other items that we haven't gone
12  over on Exhibit 30 --
13   A.    No.
14   Q.    -- 32?
15         Sorry.  Chicken scratch.  Okay.
16         Mr. Castaño, I'm going to mark our next
17  exhibit, which is going to be Exhibit 33.
18   A.    Okay.
19         (Deposition Exhibit 33 was marked for
20         identification.)
21   THE WITNESS:  Whoa.  When was this?
22  BY MR. MILLS:
23   Q.    So, Mr. Castaño, I've just handed you
24  Exhibit 33.  I will represent that, again, this is
25  another photo taken from a 311 complaint.  This one is

278

1  A.  I don't remember how I found out his name.
2  Q.  Is it on a uniform?
3  A.  No.
4  Q.  A tag, like a name tag?
5  A.  No.  They never wore their -- they never wore
6  anything like that.
7  Q.  Were you given a property receipt for a bag and
8  tag?
9  A.  Not for the computer.  For the tent, yes.
10 Q.  Were they done bagging and tagging your items
11 when the compactor caught on fire?
12 A.  I don't know.  I don't think they ever did.
13 Q.  Do you know when in the, like, continuum of
14 time the compactor caught on fire?
15 A.  I don't know.  It would have been the same time
16 I got arrested, though.  The time would be noted on the
17 incident report, because it caught fire just as they put
18 the handcuffs on me -- or exploded, rather.
19 Q.  And you said earlier that you settled a claim
20 related to this day; is that correct?
21 A.  Yes.
22 Q.  Do you know what you were settling?
23 A.  I'm not sure what you mean.
24 Q.  Did you have a lawsuit that was being settled?
25 A.  No.  It didn't go that far but approached it.

279

1        MR. MILLS:  So I am going to mark as Exhibit 39 our
2   next exhibit.
3            (Deposition Exhibit 39 was marked for
4            identification.)
5   BY MR. MILLS:
6        Q.   So, Mr. Castaño, if you could take a moment to
7   look at the document and let me know when you're done.
8        A.   (Examines document.)
9             Mm-hmm.
10       Q.   Have you seen this document before,
11  Mr. Castaño?
12       A.   I don't recall.  But it's got my signature on
13  it, so I probably did.
14       Q.   And I will represent that the document is
15  titled "Property Damage Only Release."
16            And, Mr. Castaño, are you saying that the
17  signature on page 2 is your signature?
18       A.   Yeah.  I believe it's digital.
19       Q.   And is that dated January 6th, 2021?
20       A.   Yes.
21       Q.   And did you work with anybody at the Lawyers
22  Committee for Civil Rights of the San Francisco Bay Area
23  to enter into this property damage only release?
24       A.   I was working with Larissa.  I don't remember
25  her last name.

280

1    Q.    And who is Neda Shahram?
2    A.    She works at LCCR.
3    Q.    And I want to take you to the first page.
4          Do you see that it is settling an incident
5    occurring on or about August 21st, 2020?
6    A.    Yes.
7    Q.    So would that be the incident where your laptop
8    was destroyed?
9    A.    Yes.
10   Q.    And where the compactor caught on fire?
11   A.    Yes.
12   Q.    And I want to read the first sentence of that
13   paragraph.
14         It says:  "...the undersigned, and each of
15   them, hereby release and discharge the City, all agents,
16   employees, departments, commissioners, and officers
17   thereof, of and from claims or causes of action for
18   property damages heretofore sustained, suspected or
19   unsuspected, in law or in equity, of every kind and
20   character, we or either of us have, or our successors,
21   assigns, heirs, executors or administers --
22   administrators may hereafter have against them..."
23         Mr. Castaño, were you aware when you signed
24   this that you were releasing a claim against the City
25   and County of San Francisco related to that August 21st,

332

1  STATE OF CALIFORNIA            )
2                                 ) ss.
3  COUNTY OF SAN FRANCISCO        )
4           I hereby certify that the witness in the
5  foregoing deposition, TORO D. CASTAÑO, was by me duly
6  sworn to testify to the truth, the whole truth and
7  nothing but the truth, in the within-entitled cause;
8  that said deposition was taken at the time and place
9  herein named; and that the deposition is a true record
10 of the witness's testimony as reported by me, a duly
11 certified shorthand reporter and a disinterested person,
12 and was thereafter transcribed into typewriting by
13 computer.
14          I further certify that I am not interested in
15 the outcome of the said action, nor connected with nor
16 related to any of the parties in said action, nor to
17 their respective counsel.
18          IN WITNESS WHEREOF, I have hereunto set my
19 hand this 21st day of October, 2024.
20 Reading and Signing was:
21 _x_ requested    ___ waived    ___ not requested
22
23                       *[signature: Suzanne Andrade]*
24
25          SUZANNE I. ANDRADE, CSR NO. 10682