DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-3857 (Wang)
            (415) 554-6762 (Murphy)
            (415) 554-3870 (Gradilla)
            (415) 554-4223 (George)
            (415) 355-3304 (Mills)
Facsimile:  (415) 554-4699
E-mail:     edmund.wang@sfcityatty.org
            kaitlyn.murphy@sfcityatty.org
            miguel.gradilla@sfcityatty.org
            john.george@sfcityatty.org
            steven.mills@sfcityatty.org

WARREN METLITZKY, State Bar #220758
JESSICA ELAINE LANIER, State Bar #303395
NATHAN D. THEOBALD, State Bar #328837
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile:  (415) 343-7101
E-mail:     wmetlitzky@conmetkane.com
            jlanier@conmetkane.com
            ntheobald@conmetkane.com

Attorneys for Defendants

CITY AND COUNTY OF SAN FRANCISCO, et. al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE; <br><br>　　Plaintiffs, <br><br>　　vs. <br><br>CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br>　　Defendants. | Case No. 4:22-cv-05502-DMR (LJC) <br><br> **DEFENDANTS' TRIAL BRIEF** <br><br> Judge:　　　Hon. Donna M. Ryu <br> Action Filed:　September 27, 2022 <br> Trial Date:　July 28, 2025 |

# INTRODUCTION

Plaintiffs Coalition on Homelessness ("Coalition") and two individuals, Sarah Cronk and Joshua Donohoe, bring section 1983 claims on behalf of themselves and Coalition's members against San Francisco and seek injunctive relief to reshape the City's policy surrounding the maintenance of public areas. To succeed, Plaintiffs must: (1) establish Article III standing; (2) demonstrate they have no adequate legal remedy; (3) substantiate their right to invoke section 1983 and the Fourth and Fourteenth Amendments; (4) show that their own alleged predicate seizures were unreasonable; (5) prove that their predicate due process claims had insufficient notice and post-deprivation remedies; (6) establish an unlawful custom or practice rising to the level of deliberate indifference; (7) prove an unlawful failure to train that is deliberately indifferent; and (8) show that a permanent injunction should issue. Because Plaintiffs cannot meet any of these requirements, they cannot succeed at trial.

# STATEMENT OF RELEVANT FACTS

San Francisco commits significant resources to engage with people experiencing homelessness ("PEH"), including providing shelter, homelessness prevention, and crisis intervention. At issue in this case is a portion of the City's response: service requests and HSOC and JFO engagements, during which the City conducts outreach; offers services; removes property as needed; and cleans the right of way, for the benefit of all citizens, visitors, and businesses in San Francisco. Before scheduled HSOC engagements, the City provides 72-hours advance written notice and sends teams to offer pre-resolution services. In non-HSOC operations, the City generally provides at least 30-minutes oral notice before handling PEH property. Since January 2020, San Francisco has recorded nearly 200,000 responses, coming into contact with untold hundreds of thousands of individual pieces of property on the street.

The City's Department of Public Works ("DPW"), which is responsible for maintaining rights-of-way, promulgated the Bag and Tag Policy, balancing PEH's property rights with the strong public interest in maintaining safe and healthy streets. All parties agree that the Policy, which provides for the disposal of certain property while permitting the storage of other property, is constitutional. In the field, DPW is tasked with making particularized determinations as to what property can and should be discarded (*i.e.*, is the property hazardous, soiled, contraband, garbage, infested, abandoned, comingled with drugs, etc.). DPW provides training, both formal and informal, scheduled and responsive, on the

Bag and Tag Policy to its workers who might need to apply the Policy. If property is bagged and tagged, DPW staff provide instructions (orally or written if the property was unattended) to retrieve the property and store it for at least 90 days (14 days for bulky items).

## THE CLAIMS AND APPLICABLE LAW

### A. Each Remaining Plaintiff Lacks Standing and/or Its Claims Are Moot.

To have Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) is redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And to obtain injunctive relief, a plaintiff must face "a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). "'[S]ome day' intentions . . . do not support a finding of the 'actual or imminent' injury[.]" *Lujan*, 504 U.S. at 564.

#### 1. Sarah Cronk and Joshua Donohoe Have No Article III Standing.

At trial, Cronk and Donohoe will be unable to carry their burden to show they faced a certainly impending threat of unlawful property disposal at the time this case was commenced. Moreover, Cronk and Donohoe, who are housed, face no "real and immediate threat of repeated injury" to justify injunctive relief. Any theory that Donohoe may lose his employment, lose their housing, and then return to the street is speculative and cannot justify standing for injunctive relief. *See Doe v. San Diego Unified Sch. Dist.*, 2022 WL 16984502, at *4 (S.D. Cal. Nov. 16, 2022) (potential "vaccine mandate" was "too speculative" to seek injunctive relief); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."). Similarly, Cronk and Donohoe's claims are moot. As Cronk and Donohoe face, at most, "[s]peculative contingencies" surrounding future harm, there is "no basis for finding the existence of a continuing controversy . . . as required by article III." *Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (citation omitted). Nor is there any applicable exception; the capable-of-repetition exception "applies only in exceptional situations," and as Cronk and Donohoe can seek damages for any future (highly speculative and contingent) property loss, such claims do not "evade review." *See Vegas Diamond Props., LLC v. FDIC*, 669 F.3d 933, 936 (9th Cir. 2012).

2.     **Coalition on Homelessness Has No Article III Associational Standing.**

To establish associational standing, organizations must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Coalition cannot satisfy the first and third prongs.

Coalition has no members or indicia of membership, a necessary predicate. Jennifer Friedenbach will testify that Coalition's supposed unhoused members do not elect Coalition's leadership, pay dues, serve on Coalition's leadership, or finance Coalition's activities, and they did not vote for this litigation. *See id.* at 344–45; *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 379–80 (2024) ("[T]he standing doctrine serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action."). At most, Coalition purports to advocate on behalf of PEH writ large. This does not confer Article III standing. *See* Moore's Federal Practice § 101.60 (3d ed. 2024) ("[A]n organization . . . may not claim associational standing merely by virtue of the fact that it represents, or claims to represent, the interests of a group of people."); *Nat'l Ass'n of Advocs. v. Gemini Trust Co., LLC*, 2024 WL 4817122, at *2 (D.D.C. Nov. 18, 2024).

Even if there are sufficient indicia of membership, the remaining identified members on whom Coalition relies (Cronk, Donohoe, David Martinez, Todd Bryant, Sarah Stephenson, James Reem, and Melodie) have no Article III standing. *See* ECF No. 350 at 11–13. It is not enough to assert that "there is a statistical probability that some of those members are threatened with concrete injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Rather, Plaintiffs must "identify members who have suffered the requisite harm" in order to bring claims on their behalf. *Id.* at 499. The Court will likely hear these members at trial; none will be able to show standing or justify equitable relief.

Members' individual participation is also required, which alone defeats Coalition's standing. Where organizations seek equitable relief for claims that involve "multiple variations, specific to individual members," there can be no associational standing. *See Spinedex Phys. Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014). Here, individual participation is required to determine if each assertion of unlawful property disposal was unreasonable. It is Plaintiffs'

burden in a section 1983 case to establish that any alleged seizure was unreasonable, including the absence of exceptions. *See infra* § D.1.b. Each individual must participate so that the parties can inquire into, *inter alia*: the destroyed property and its condition; whether the member abandoned their property or consented to its disposal; whether any health and safety hazards were present; and what notice was provided. *Cf. Willis v. Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) (affirming the denial of class certification for lack of commonality and agreeing that "each sweep is different"). Tellingly, Plaintiffs intend to call Coalition's members to testify about this exact information.

### B. Plaintiffs Cannot Obtain Equitable Relief as Legal Remedies Are Adequate and There is No Immediate Irreparable Harm.

Where "monetary damages provide[] an adequate remedy," courts may not grant injunctive relief. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020). "Plaintiffs bear the burden to establish that they lack an adequate damages remedy before they can obtain equitable relief." *EpicentRx, Inc. v. Carter*, 2023 WL 4339679, at *3 (S.D. Cal. May 10, 2023); *see Sonner*, 971 F.3d at 844. Plaintiffs cannot make this showing because monetary damages—the traditional and recognized legal remedy for unlawful seizures—are an adequate remedy. *See Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir. 2004) ("Damages are a normal, and adequate, response to an improper search or seizure[.]"). A plaintiff cannot escape this fundamental requirement by alleging an unlawful practice or custom—this does not relieve the plaintiff of its burden to prove an inadequate legal remedy. *See O'Shea*, 414 U.S. at 504 (failing to show inadequate legal remedy despite systemic discrimination); *L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (alleged pattern of unconstitutional conduct addressable in legal suit). Moreover, because Plaintiffs are housed or have storage, "[t]he equitable remedy is unavailable" because there is "no showing of any real or immediate threat that the plaintiff will be wronged again." *Id*. at 111; *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

### C. Coalition's Rights Were Not Violated, and It Cannot Bring Vicarious Claims.
#### 1. Section 1983 Does Not Permit Coalition to Assert Others' Injuries.

Section 1983 provides a cause of action only to the person whose rights were violated. 42 U.S.C. § 1983 ("Every person who . . . subjects, or causes to be subjected, any . . . person . . . to the

deprivation of any rights, privileges, or immunities . . . shall be liable to **the party injured**[.]") (emphasis added). This statutory right is "personal to those purportedly injured," and an organization cannot "assert the rights of its members." *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Sup'rs*, 737 F.2d 155, 160 (2d Cir. 1984); *Vote.Org v. Callanen*, 39 F.4th 297, 304–05 (5th Cir. 2022) (same). This is consistent with black letter law. *See Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999) (no section 1983 Fourteenth Amendment claim based on harm to another as a plaintiff "'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Plaintiffs are foreclosed from asserting anyone else's constitutional rights under section 1983.

### 2. Coalition Cannot Bring Fourth or Fourteenth Amendment Claims on Anyone Else's Behalf.

Fourth and Fourteenth Amendment "rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34, 150 (1978) (citation omitted); *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014); *Lee v. Cnty. of Kern*, 2007 WL 3341593, at *2 (E.D. Cal. Nov. 8, 2007) (citing *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948)). Instead, a plaintiff must show an unreasonable seizure of **its own property**. *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1015 (E.D. Cal. 2021) (dismissing organization's claim because "[a]n unreasonable search or seizure is an element of any § 1983 claim"). This long-standing prohibition on vicarious claims is distinct from Article III standing. *See United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991). Accordingly, Coalition and its observers cannot assert the constitutional rights of others.

### D. Plaintiffs Cannot Prove any Necessary Predicate Constitutional Violation.

To establish a section 1983 claim, a plaintiff must prove a predicate violation of their individual rights. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). Even if Coalition could use associational standing to invoke another person's Fourth or Fourteenth Amendment rights under section 1983 (it is doubly prevented by section 1983 and each Amendment's protection of only personal rights), Coalition is limited to using violations of only its members' rights as the necessary predicate violations. *See Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing *solely as the representative of its members*."); *Bone v. Univ. of N.C. Healthcare Sys.*, 678 F. Supp. 3d

660, 702–03 (M.D.N.C. 2023) (recognizing "the standing of the association itself is merely 'coterminous' with that of its injured members" (collecting cases)). To the extent Coalition is acting on behalf of its members, those *members*' violations are what must be shown to establish a predicate violation (just as if the member itself had sued). *See Patel*, 648 F.3d at 971 ("[T]he conduct deprived *the plaintiff* of a federal constitutional or statutory right"). At trial, Cronk and Donohoe may testify to the three alleged predicates set out in ECF No. 350 at 24–25, and their testimony will establish that any property disposal was reasonable, including that such property appeared abandoned and/or was stored in trash bags, co-mingled with hazardous materials, or posed a threat to public safety.

### 1. Plaintiffs Cannot Prove Their Fourth Amendment Rights Were Violated.
#### a. There is No Unfettered Right to Store Items in the Right of Way.

Plaintiffs can establish a Fourth Amendment violation only if they establish the City unlawfully interfered with a recognized property interest. There is no precedent establishing a right to store all one's belongings in public. *Cf. Grants Pass v. Johnson*, 603 U.S. 520, 525–28 (2024). The only potentially relevant precedent concerns the *unnoticed and summary* disposal of limited categories of property. *See Lavan v. L.A.*, 693 F.3d 1022, 1025, 1033 (9th Cir. 2012) (declining to create a "right to use public sidewalks as personal storage facilities" and concerning only personal shelters and carts that were summarily seized without notice); *Garcia v. L.A.*, 11 F.4th 1113, 1117 (9th Cir. 2021) (concerning only the seizure of "bulky" items without notice); *Recchia v. L.A.*, 889 F.3d 553, 558 (9th Cir. 2018) (concerning seizure of birds without notice). Absent controlling precedent concerning the storage of property in public areas following advance written or oral notice, Plaintiffs cannot show that the City unlawfully interfered with a cognizable property interest.

#### b. Plaintiffs Have the Burden to Establish Each Alleged Unlawful Seizure Was Unreasonable and That No Exceptions Apply.

The Fourth Amendment protects only against unreasonable seizures. Reasonableness depends "upon the facts and circumstances of each case," including "what was known" to the agents at the time. *Miranda v. Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (quoting *Cooper v. California*, 386 U.S. 58, 59 (1967)); *Recchia*, 889 F.3d at 560. This inquiry requires balancing "the nature and quality of the

intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests[.]" *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015).

Plaintiffs must prove by a preponderance of the evidence that the seizures at issue were unreasonable, including that an exception making disposal reasonable does not apply.[1] *Larez v. Holcomb*, 16 F.3d 1513, 1517–18 (9th Cir. 1994) (plaintiffs carry the burden to demonstrate property was "seized unreasonably in violation of the Fourth Amendment"); *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002); *Mueller v. Auker*, 700 F.3d 1180, 1193 (9th Cir. 2012); Ninth Cir. Model Civil Jury Instructions, 9.19 ("[I]n order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that this exception does not apply").  Here, Plaintiffs must establish, for example: when a seizure occurred; what property was seized; who owned the property; that the property was not immediately disposable because it was co-mingled with contraband or waste, posed a health or safety risk, was abandoned, or the City had permission to dispose of it; that sufficient notice to move the property was not given such that disposal was unreasonable; and that the property was not blocking the right of way, impeding traffic, blocking emergency exits, or rendering sidewalks inaccessible. *See, e.g.*, *Miranda*, 429 F.3d at 864; *Rodriguez v. San Jose*, 930 F.3d 1123, 1138 (9th Cir. 2019); *cf. Berman v. Parker*, 348 U.S. 26, 32 (1954) (government interest in protecting the "public safety, public health, morality, peace and quiet, law and order").  And while the Bag and Tag Policy does not define the limits of Fourth Amendment reasonableness, any conduct within the Policy is reasonable because all parties agree the Policy is constitutional.

### c. Cronk and Donohoe Cannot Show Unreasonable Seizures.

At trial, Cronk and Donohoe cannot establish that they were the subject of an unreasonable seizure of their property, including because they will testify that their property was often stored in trash bags, co-mingled with hazardous materials, and blocked the public right-of-way and that they received notice and sufficient time to move before any property was disposed of.

---

[1] The warrant requirement does not apply to seizures outside of the criminal context. *See South Dakota v. Opperman*, 428 U.S. 364, 370 n.5 (1976).

        **d.**        **Coalition Cannot Show Any Identified Member's Property Was Unreasonably Seized.**

As set out above, Coalition cannot establish a predicate violation based on the alleged seizure of another's property. Even if Coalition can rely on alleged violations of its members' property interests, Plaintiffs cannot establish such violations as Coalition's members' claims are either time barred, undisclosed, lack sufficient foundation, or were reasonable seizures under the circumstances.

        **2.**        **Plaintiffs Cannot Prove Predicate Violations of the Fourteenth Amendment.**

The Fourteenth Amendment requires that the government take "reasonable steps" to "announce its intentions and give the property owner a chance to argue against the taking." *W. Covina v. Perkins*, 525 U.S. 234, 240 (1999); *Clement v. Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).

As an initial matter, "the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 531 (1984). As discussed above, the availability of money damages is an adequate postdeprivation remedy, and the adequacy of damages is not affected by the fact that Plaintiffs allege an unlawful custom or practice. *See supra* § B.

Nonetheless, Plaintiffs cannot prove that they received insufficient notice or that the DPW Yard lost property. Due process is satisfied when the City provides prior notice to encampment occupants to remove their belongings, informs them which items would be stored, and gives a post-seizure opportunity to retrieve stored property. *See Sullivan v. Berkeley*, 383 F. Supp. 3d 976, 981–83 (N.D. Cal. 2019); *Shipp v. Schaaf*, 379 F. Supp. 3d 1033, 1037–38 (N.D. Cal. 2019). The City's witnesses, such as David Nakanishi, will testify that the City provides 72-hour advance written notice before pre-planned encampment resolutions, engaging with PEH at those encampments, and provides at least 30-minutes advance oral notice before responding to a request for service. Whether Plaintiffs actually saw a notice is of no import. *See Dusenbery v. United States*, 534 U.S. 161, 169–70 (2002) (no "actual receipt of notice" required if the effort was "reasonably calculated to apprise a party of the pendency of the action" (cleaned up)). As to Plaintiffs' claims regarding the DPW Yard, Plaintiffs will not (and cannot) present evidence of any predicate violation relating to property storage and retrieval at the Yard, nor can Plaintiffs present a custom or practice involving property retrieval.

### E. Plaintiffs Cannot Prove an Unlawful, Longstanding Practice or Custom.

A "practice or custom" theory requires showing that "those officials who have the power to make official policy on a particular issue . . . caused the deprivation of rights at issue . . . by acquiescence in a longstanding practice or custom." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The City's witnesses, like David Nakanishi and Darryl Dilworth, will testify that the City engages with PEH daily, amounting to many thousands of interactions, with each interaction involving unique circumstances and particularized assessment about whether property should be lawfully discarded (*i.e.*, is the property hazardous, abandoned, garbage, comingled with illicit substances, soiled, infested, etc.) consistent with the City's long-recognized interest in maintaining the health, safety, and welfare of its streets for its residents, both housed and unhoused. Such unique variations foreclose a custom or practice. *See Black Lives Matter L.A. v. L.A.*, 113 F.4th 1249, 1264 (9th Cir. 2024) (a custom or practice requires "a pattern of similar constitutional violations"); *Willis*, 943 F.3d at 885 (agreeing "each sweep is different").

### F. Plaintiffs Cannot Prove a Failure to Train Under *Monell*.

A failure-to-train theory is the "most tenuous" under *Monell*. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a claim: (1) "the existing training program" must be inadequate "in relation to the tasks"; (2) the city must be deliberately indifferent; and (3) the inadequacy must have "'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989) (citation omitted). The City's witnesses, like Jonathan Vaing, will show the City regularly trains its property-handling employees on the Bag and Tag Policy through formal trainings, weekly team meetings, and field discussions, among other trainings. This is fatal to Plaintiffs' case. *See Connick*, 563 U.S. at 68; *Bell v. Williams*, 108 F.4th 809, 824–26 (9th Cir. 2024).

### G. Plaintiffs Cannot Prove the City Was Deliberately Indifferent to Their Fourth and Fourteenth Amendment Rights.

"[D]eliberate indifference is a stringent standard of fault[.]" *Connick*, 563 U.S. at 61. Deliberate indifference looks to the alternatives considered and "other measures" taken. *See Park v. City & Cnty.*

*of Honolulu*, 952 F.3d 1136, 1143 n.3 (9th Cir. 2020); *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (no deliberate indifference where there were "many affirmative efforts to remedy the problem"). The City's evidence will show that the City commits hundreds of millions of dollars to its homelessness response, provides thousands of beds for PEH, makes available safe storage programs, and regularly trains and, as necessary, disciplines staff on the Bag and Tag Policy. Plaintiffs cannot meet the stringent standard for deliberate indifference.

**H.    Even if Plaintiffs Prevail on the Merits, no Permanent Injunction Should Issue.**

Succeeding on the merits is not enough for a permanent injunction to issue. *See Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1145 (C.D. Cal. 2011). Rather, a permanent injunction is not warranted if monetary damages fairly compensate, nor may a permanent injunction issue if it would not serve the public interest. *See id.* at 1145, 1148 (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)). Where an injunction "disrupts services or diverts resources" from public health, a permanent injunction is not warranted. *See id.*; *Stormans*, 586 F.3d at 1139; *Love v. Chicago*, 1998 WL 60804, at *13 (N.D. Ill. Feb. 6, 1998) ("[A]n injunction that impairs the City's ability to clean and maintain its public ways is contrary to the public interest."). Neither is such injunction warranted if the municipality would "respect [a] declaratory judgment" instead. *Poe v. Gerstein*, 417 U.S. 281, 281 (1974). As Plaintiffs' claims are redressable by damages and as any permanent injunction would severely handicap the City in selecting and allocating the best use of limited services and resources to respond to the homelessness crisis, no permanent injunction is warranted.

**I.    Any Permanent Injunction May Extend Only to Plaintiffs in this Case.**

Federal courts may provide relief only to "claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts . . . to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "Injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification." *California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018) (cleaned up). Therefore, any permanent injunction may extend only to Plaintiffs and—if this Court finds that Coalition succeeds on its claims purportedly brought on behalf of its members (it should not)— Coalition's identified members.

DATED: June 20, 2025

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys

*/s/ Nathan D. Theobald*\*
NATHAN D. THEOBALD

WARREN METLITZKY
JESSICA ELAINE LANIER
NATHAN D. THEOBALD
**CONRAD | METLITZKY | KANE LLP**

Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO, et al.

**\*Pursuant to L.R. 5-1(h)(3), the e-filing attorney attests that each of the other Signatories have concurred in the filing of this document.**