EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Zoe Salzman, *pro hac vice*
Vasudha Talla, SBN 316219
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
zsalzman@ecbawm.com
vtalla@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

*Attorneys for Plaintiffs*

*Additional Counsel Appear on Signature Page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS; SARAH CRONK; JOSHUA DONOHOE, <br><br> Plaintiffs. <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS; SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT, <br><br> Defendants. | CASE NO. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' TRIAL BRIEF** <br><br> Final Pretrial Conference: July 9, 2025 <br> Time: 1:00 p.m. <br> Trial Date: July 28, 2025 <br> Courtroom: Courtroom 4, 3rd Floor <br> Judge: Hon. Donna M. Ryu |

1

Pursuant to the Court's pretrial orders (Dkts. 270, 389), Plaintiffs submit this Trial Brief.

## I. Evidence To Be Presented at Trial

As outlined in their opposition to the City's motion for summary judgment (Dkt. 367 at 1-9), Plaintiffs' Trial Exhibit List (Dkt. 416), and Plaintiffs' Trial Witness List (Dkt. 415-1), Plaintiffs intend to present evidence and testimony of the following kind to prove their Fourth and Fourteenth Amendment claims, and Defendants' liability under *Monell*.

**Notice.** Through the testimony of observers,[1] unhoused witnesses,[2] expert Dr. Chris Herring, and current City employees,[3] and the introduction of photos, videos, and other records, Plaintiffs will prove that the City does not post any written notice in advance of encampment removal operations, including Joint Field Operations ("JFO") and "roving" encampment clearings that can range up to miles away from areas that received advance written notice. Further, Plaintiffs will prove that the City frequently fails to post the required written notice in advance of preplanned HSOC encampment resolutions and that notice is inadequate because the City frequently posts insufficient number of notices to cover a large area.

**Property Destruction.** Through the testimony of observers, unhoused witnesses, experts Dr. Chris Herring and Dr. Ben King, and current and former City employees[4] and workfare participants[5], and the introduction of photos, videos, and other records, Plaintiffs will prove that

---

[1] "Observer" witnesses include Christin Evans, Carlos Wadkins, Lukas Illa, Dylan Verner-Crist, Karina Ioffee, Shanna Couper Orona, and Jennifer Friedenbach.

[2] "Unhoused witnesses" include Sarah Cronk, Joshua Donohoe, Melodie, Todd Bryant, Corey Barkley, Krystle Erickson, Patrick Dubose, Sarah Stephenson, James Reem, Elizabeth Stromer, and David Martinez.

[3] The current City employees that Plaintiffs intend to call in their case-in-chief as live witnesses are listed in their Trial Witness List. *See* Dkt. 415-1 at 10-13. Plaintiffs have also designated the deposition testimony of City employees that they intend to introduce in their case-in-chief. *See* Dkt. 415-3 (Plaintiffs' Deposition Designations).

[4] Kaki Marshall and Adrinna Malone are former City employees that Plaintiffs intend to call regarding their personal observations of property destruction and their interactions with City officials regarding property destruction.

[5] Jimmy Don Wheeler is a workfare participant that, while working for DPW, was instructed to engage in property destruction during encampment removal.

the City routinely seizes and destroys homeless individuals' property without a warrant in violation of the Fourth Amendment. While DPW adopted a "bag and tag" policy ("BTP") that governs the manner in which DPW workers must handle property, DPW has failed to apply the policy in a constitutionally appropriate manner, and has failed to adequately train its workers on the policy, leading to unlawful property destruction. Further, Plaintiffs will show that DPW exploits language in the BTP that allows it to discard "personal belongings [that] are co-mingled or littered with needles, human waste or other health risks" to trash everything, including items that do *not* fall within this category, claiming needles are present when they are not. The majority of DPW's bag and tags are done at the request of SFPD and consist of tents purportedly seized as "evidence" or in an arrest, *not* because DPW applied the BTP on its own to attended or unattended property. Excluding police data shows DPW bags and tags little property.

**Inadequate Opportunity and Process to Retrieve Seized Property.** Through the testimony of observers, unhoused witnesses, expert Dr. Chris Herring, and current City employees, and the introduction of photos, videos, and other records, Plaintiffs will prove that Defendants do not provide individuals with adequate notice or information about how they can retrieve property: (1) when the City bag and tags attended property, it does not provide written information on the retrieval process; (2) when the City bags and tags unattended property, it rarely posts a notice informing the owner how to retrieve it; (3) when DPW bags and tags tents seized as "evidence," neither it nor SFPD provides retrieval information. This nonexistent and inadequate notice means individuals attempting to reclaim belongings at the Yard lack written documentation and almost never get them back, even when they travel to or call the Yard. In addition, the few individuals that receive written documentation still frequently do not get their property back. The inability to retrieve property is a predictable result of DPW's practices, which include a failure to complete the required intake form in the field, disorganized storage and transportation of bagged and tagged property, disorganization and break-ins at the Yard, and listing the property of multiple individuals picked up at the same location as a single entry on the bag and tag log with the same tag number and color. The City relies on incomplete information when searching for property at the Yard, and will not conduct a manual search. City records show that individuals regularly are unable to

retrieve their property at the Yard, and in 2024, DPW discarded most bagged and tagged items.

**Training.** Through the testimony of expert Dr. Ben King, current City employees, and the introduction of City records, Plaintiffs will prove that Defendants do not train the relevant City employees on the necessary standards to avoid violations of the Fourth and Fourteenth Amendments, and have been deliberately indifferent to the need to do so. First, Defendants train only DPW employees on the bag and tag policy and do not train members of other City agencies that make key decisions affecting unhoused people's property, including SFFD (which directs the resolution and determines jointly with DPW whether to discard an item and whether it poses an immediate health and safety risk) and SFPD and DEM (which determine how much time people have to remove their items and instruct DPW to begin clearing encampments). Second, as the Court held, the training of DPW workers was inadequate at the time of the Court's order enforcing the motion for a preliminary injunction. *See* Dkt. 231 at 10 ("short of demonstrating meaningful training of City workers on the bag and tag policy."). Third, the training of DPW workers remains inadequate notwithstanding revised training curriculum. DPW workers—both general laborers and supervisors—have little to no understanding of the trainings they attend, ask no questions, and do not know basic terms or how to handle unattended items, perishable items, bulky items, health or safety risks, medications, "special needs," or "contraband." DPW supervisors also engaged in or observed improper property destruction, including just hours after attending a BTP training, further demonstrating the inadequacy of the training. DPW supervisors have been long aware of property handling practices that resulted in inappropriate property destruction. And DPW still has no special training on, or uniform practice for, identifying public health or safety risks.

DPW supervisors—fully aware of the training deficiencies identified by this Court—do not take steps to ensure their workers comply with the BTP. DPW's only policy for tracking compliance with the BTP is for supervisors to "spot check" a limited type of DPW documentation regarding bagged and tagged property, but that effort was abandoned after February 2024. "Spot checking" *bagged and tagged* property also excludes the more critical review of what was *discarded*. The majority of supervisors also do not spend any meaningful time in the field to monitor compliance with the BTP. Nor have supervisors investigated why people cannot obtain

their items from the Yard.

Finally, despite being on notice of BTP violations and allegations of property destruction since at least 2016, the City has disciplined only a handful of people sporadically since 2022 for violations of the BTP, the majority of which arose from external complaints.

## II.    Legal Claims and Other Issues

The Court's order denying summary judgment ("MSJ Order"), Dkt. 400, outlines the legal claims to be tried, as well as other legal issues that may arise during pretrial proceedings or trial.

### A.  *Monell* Liability

Plaintiffs allege that Defendants are liable under 42 U.S.C. § 1983 because they have deprived individuals of their rights under the Fourth and Fourteenth Amendments. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)). A municipality may be liable under § 1983 where the "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Monell*, 436 U.S. at 694). To prove a claim for municipal liability based on a policy, custom, or practice, a plaintiff must "demonstrate that an 'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008)).

Plaintiffs proceed under both "custom" and "failure to train" theories of *Monell* liability. With respect to the former, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). With respect to the latter, a plaintiff must show: (1) deprivation of a constitutional right; (2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [the defendants] are likely to come into contact"; and 3) that the constitutional injury would have been avoided had the municipality properly trained the officers. *Blankenhorn v. City*

*of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)) (first alteration in original); *Rodriguez*, 891 F.3d at 802. The Court found sufficient evidence to defeat summary judgment on both theories of *Monell* liability. MSJ Order at 39, 42.

Coalition's associational standing does not preclude a § 1983 claim. MSJ Order at 32 (citing cases); *Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cnty.*, 477 F. Supp. 2d 1246, 1249-52 (S.D. Fla. 2007); *Gonzalez ex rel. Doe v. Albuquerque Pub. Sch.*, No. 05-cv-580, 2006 WL 1305032, at *4 (D.N.M. Jan. 17, 2006).

While Plaintiffs must show that a constitutional violation occurred within the two-year limitations period prior to filing of this lawsuit to sustain *Monell* liability, MSJ Order at 33, that "predicate violation" may be sustained by Plaintiffs Cronk or Donohoe, *id.*, or any Coalition member or other constituent of Coalition. *See Oregon Advoc. Ctr. v. Mink*, No. 02–cv-339, 2002 WL 35578910, at *2 (D. Or. May 10, 2002) (after bench trial on Section 1983 case brought by association on behalf of criminal defendants who were unfit to stand trial, court found violations of defendants' due process rights based on evidence of "clients experiencing significant delays in obtaining transfer and treatment"), *aff'd*, 322 F.3d 1101, 1122 & n.13 (9th Cir. 2003) (noting district court's findings of Oregon State Hospital's "significant, ongoing violations of substantive and procedural due process" and "sufficiently pervasive, systemic and consistent pattern of injury"). The Court held factual disputes exist as to whether Cronk and Donohoe's property was seized without legal justification and whether Defendants provided advance notice. MSJ Order at 19-21, 24, 33-35. Moreover, relevant events that occurred prior to the two-year limitations period are admissible evidence of a custom and deliberate indifference, including notice to the City of unconstitutional conduct by its employees. MSJ Order at 30 n.19.

### B. Fourth Amendment

Defendants violate the Fourth Amendment violation when they unreasonably seize property during encampment removal operations, and their summary destruction of that property in the field or later at the Yard. "The Fourth Amendment protects individuals from unreasonable government seizures of their property, even when that property is stored in public areas." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021) (citing *Recchia v. City of Los Angeles*

*Dep't of Animal Servs.*, 889 F.3d 553, 558 (9th Cir. 2018)); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012) (Fourth Amendment protects homeless individuals from seizure and summary destruction of unabandoned but temporarily unattended personal property).

In warrantless seizures such as the ones here, Defendants bear the burden to demonstrate that an exception to the warrant exception applies. *Larez v. Holcomb*, 16 F.3d 1513, 1517 (9th Cir. 1994) (defendant bears burden of demonstrating consent or warrant exceptions); *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005); *Recchia*, 889 F.3d at 558. Defendants cannot establish that an exception applies that justifies seizure of the property. *Lavan*, 693 F.3d at 1032; *Recchia*, 889 F.3d at 558-60. Even if some legitimate exigency required the City to move items from a certain area, it does not justify the City's destruction of those items. *Lavan*, 693 F.3d at 1030; *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) (while "vehicles that jeopardize public safety and the efficient movement of vehicular traffic" could be seized, the "exigency that justified the seizure vanished once the vehicle arrived in impound"); *United States* v. *Jacobsen*, 466 U.S. 109, 124-25 & n.25 (1984).

Coalition may bring a Fourth Amendment claim even though its own property has not been seized. MSJ Order at 31-32; *Garcia v. City of Los Angeles*, No. 19-cv-6182, 2020 WL 6586303, at *3 (C.D. Cal. Sept. 15, 2020) (finding that organization had associational standing to pursue its members' Fourth Amendment rights) (collecting cases). Defendants' argument that "vicarious" claims cannot be brought under the Fourth Amendment rests on caselaw primarily involving searches, not seizures, and in the posture of suppression motions where the aims of the exclusionary rule are different than those presented in a civil case seeking injunctive relief.

**C. Fourteenth Amendment**

Defendants violate the Fourteenth Amendment through the following practices: (1) the City's failure to provide advance notice of encampment closures, (2) the City's failure to provide constitutionally adequate notice, and (3) the City's inadequate post-deprivation remedies. "[T]he government may not take property like a thief in the night; rather it must announce its intentions and give the property owner a chance to argue against the taking." *Lavan*, 693 F.3d at 1032. To establish a due process claim, Plaintiffs must show a deprivation of a constitutionally protected

1  property interest and a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Even the temporary deprivation of a significant property interest, such as a vehicle impound or the seizure of a homeless person's belongings, requires due process. *See Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008) (due process violated by vehicle tows even though seizure was temporary and vehicle was retrievable); *Kincaid v. City of Fresno*, No. 06-cv-1445, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006).

Defendants' roving encampment removals without any advance notice *alone* violates due process. Providing oral notice upon the City's arrival is inadequate. *Mathews v. Eldridge*, 424 U.S 319, 348 (1976); *Mitchell v. City of Los Angeles*, No. 16-cv-1750, 2016 WL 11519288, at *5 (C.D. Cal. Apr. 13, 2016); *Kincaid*, 2006 WL 3542732, at *37. It is meaningless for unattended property, and insufficient for those present, especially since the City routinely begins trashing even as people are packing. *People of City of Los Angeles Who Are Un-Housed v. Garcetti*, No. 21-cv-6003, 2023 WL 8166940, at *16 (C.D. Cal. Nov. 21, 2023); *Denver Homeless Out Loud v. Denver*, 514 F. Supp. 3d 1278, 1292 (D. Colo. 2021), *vacated on other grounds and remanded*, 32 F.4th 1259 (10th Cir. 2022) (morning-of notice "did not afford homeless individuals sufficient time to remove their property from designated areas" and individuals who were away "risk having all of their property seized"); *Mitchell*, 2016 WL 11519288, at *5 (significant risk of erroneous deprivation when City gave plaintiffs a moment's warning).

The City also does not provide constitutionally adequate notice that is "reasonably calculated, under all the circumstances, to apprise interested parties." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). The City has provided incorrect notice stating bulky items would not be bagged and tagged; notice is posted haphazardly and inconsistently across large areas; and unhoused individuals are not given sufficient time to move their belongings.

Finally, post-deprivation remedies are inadequate because Defendants' practices do not offer individuals a meaningful opportunity or process to retrieve bagged and tagged property. Nor does the *Hudson/Parratt* doctrine apply where, as here, property deprivation occurs "pursuant to established state procedure, rather than random and unauthorized action." Dkt. 281 at 26 (citing

*Hudson v. Palmer*, 468 U.S. 517, 532 (1984)); *see Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

### D. Entitlement to Equitable Relief

Plaintiffs are entitled to equitable relief because they do not have adequate remedies at law and they can demonstrate irreparable harm. On the former, Plaintiffs challenge an ongoing pattern and practice of destroying property in violation of a City policy and the Constitution for which damages are an inadequate remedy. Dkt. 281 at 26-27. On the latter, constitutional violations, if proven, are a form of irreparable harm for which equitable relief is appropriate.

### E. Standing

Plaintiffs have standing to bring claims for injunctive relief. "[A]llegations of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Standing is established "if each step in the causal chain is *plausible*, even if the chain of events leading from defendant's conduct to plaintiff's injury is not immediate." *Levine v. Johanns*, No. 05-cv-4764, 2006 WL 8441742, at *8 (N.D. Cal. Sept. 6, 2006) (emphasis added) (in the Ninth Circuit, required degree of likelihood is a "credible threat of harm," "reasonable probability of harm" or "an increased risk of harm."). While past harm may be considered as evidence in evaluating the likelihood of future injury, a plaintiff can demonstrate that future injury is likely without having suffered past harm. *Id.* at *9 (N.D. Cal. Sept. 6, 2006).

#### 1. Associational Standing

Coalition satisfies associational standing because: (1) its members have standing, (2) it seeks to protect interests germane to its purpose, and (3) the case does not require participation of all individual members. *Hunt v. Washington State Apple Advertising Commission* refused to "exalt form over substance." 432 U.S. 343, 345 (1977); Dkt. 281 at 9-14; Dkt. 400 at 9.

In assessing the first prong, "formal" membership is not required as long as "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)). Coalition meets that standard because it identifies with and "serve[s] a specialized

segment" of the community, the unhoused and unsheltered population in San Francisco, who are the primary beneficiaries of its activities. *Mink*, 322 F.3d at 1111. In addition to having a specialized constituency, Coalition has a deliberately informal membership structure that suffices as "indicia" of membership under *Hunt* and *Mink*. The challenges homeless people face are analogous to those faced by the disabled constituents in *Mink*. *See La Asociacion de Trabajadores de Lake Forest*, No. 07-cv-250, 2008 WL 11411732, at *4 (C.D. Cal. Aug. 18, 2008) (day laborer organization had standing despite "amorphous" membership structure because it demonstrated "activities and participation by members in working toward a common purpose"); *March for Our Lives Idaho*, 697 F. Supp. 3d 1029, 1042 (D. Id. 2023) ("student-led organization" had standing "[d]espite not alleging a formal membership" because its "constituents" included "hundreds of supporters and volunteers" "who guide the organization's priorities and activities").

There is no requirement that Coalition identify particular injured members by name where, as here, "it is clear and not speculative that a member of a group will be adversely affected" by Defendants' widespread custom of property destruction and lack of notice to the Coalition's members. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025) (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015)). Even so, Coalition will present testimony at trial from its members at the time of the filing of the complaint who faced a substantial risk of constitutional violations: Sarah Cronk, Joshua Donohoe, Melodie, Todd Bryant, and David Martinez. All were homeless at the time of the Complaint, and all suffered property destruction within two years prior to the complaint being filed.

Even if, at some point after the filing of the complaint, Cronk, Donohoe, Melodie, Bryant, or Martinez no longer faced a substantial risk of being subjected to Defendants' unconstitutional conduct, the capable of repetition yet evading review and inherently transitory exceptions to mootness apply. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011); *Powers v. McDonough*, 713 F. Supp. 3d 695, 719–20 (C.D. Cal. 2023); *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989). In addition, "plaintiffs with mooted individual claims [can] maintain those individual claims for injunctive relief where they challenge an ongoing government policy," as Plaintiffs do here. *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1056

(C.D. Cal. 2019). Finally, any temporary loss of standing on mootness grounds can be cured by James Reem and Sarah Stephenson, individuals that became Coalition members after the filing of the complaint. *Garcia v. City of Los Angeles*, No. 19-cv-6182, 2023 WL 11056759, at **5 (C.D. Cal. May 23, 2023) ("[W]here a case is rendered moot by a temporary loss in standing, the plaintiff may cure the jurisdictional defect.").

Finally, individual participation by Coalition members is not required for either the claim to be tried—because determination of a custom does not turn on individualized defenses—or the relief requested. *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (individualized proof unnecessary for injunctive relief).

### 2. Individual Standing

Cronk and Donohue have standing. MSJ Order at 28. They were unsheltered when the complaint was filed, and sufficient facts exist to show they faced a "substantial risk" of future property destruction: the City destroyed their property many times, including *after* the lawsuit. Post-filing events do not render their claims moot because there is a substantial likelihood that they may become unhoused again, like many other people who have lived in permanent housing, and thereafter must live on the street with their belongings—placing them at risk of Defendants' encampment removal operations and custom of property destruction. *Berry v. Hennepin Cnty.*, No. 20-cv-2189, 2023 WL 8066870, at *4 (D. Minn. Nov. 21, 2023).

### III. Relief Sought

Plaintiffs seek declaratory relief regarding the Fourth and Fourteenth Amendment claims, and analogous state constitutional claims. *See* Third Amended Complaint at 89-90, Dkt. 289. Plaintiffs seek prohibitory permanent injunctive relief that enjoins and restrains Defendants from seizing and disposing of homeless individuals' property in a manner that violates the federal and state constitutions, as well as mandatory injunctive relief requiring Defendants to take protective measures, including adequate training and policies that more clearly instruct relevant City employees on applicable standards. Plaintiffs also seek the appointment of a monitor paid for by Defendants to ensure compliance.

Dated: June 20, 2025

Respectfully submitted,

By: */s/ Vasudha Talla*

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Zoe Salzman, *pro hac vice*
Vasudha Talla
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
One Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
zsalzman@ecbawm.com
vtalla@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

By: */s/ Nisha Kashyap*

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
Chloë Dominique Smith SBN 352170
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: */s/ John Thomas H. Do*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
Larissa Grijalva SBN 352930
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: */s/ Scout Katovich*

AMERICAN CIVIL LIBERTIES UNION
Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*
*Coalition on Homelessness, Sarah Cronk, Joshua Donohoe*

# **ATTESTATION**

I, Vasudha Talla, am the ECF user whose user ID and password authorized the filing of this document. Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document have concurred in this filing.

Dated: June 20, 2025             By: */s/ Vasudha Talla*