EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF BENJAMIN KING, PH.D. MPH** <br><br><br> **Judge:** The Hon. Donna M. Ryu |

## I. Introduction

Defendants mischaracterize Dr. Ben King's expert opinions and Plaintiffs' legal claims in their motion to exclude his opinions on the City's policies and practices for identifying and handling immediate health or safety risks. They also ignore Dr. King's stated bases for these opinions, including his decades of experience in the field of public health and specific expertise and peer-reviewed publications on environmental health issues related to homelessness. Dr. King's opinions meet the requirements for admissible expert testimony: they are relevant to whether the City unlawfully destroys nonhazardous property and are the reliable product of Dr. King's application of his specialized knowledge and accepted public health methodologies to voluminous records, testimony, and firsthand observations in this case.

Dr. King is undisputably qualified to offer his opinions. Dr. King is an epidemiologist who, unlike the City's experts, works directly with unhoused communities, has significant experience working with federally funded agencies that provide coordinated homelessness services, and has studied public health and homelessness for decades, most recently leading 13 systematic reviews of the association between homelessness and health risks. ECF No. 429-2 ("King Rep.") ¶ 2; ECF No. 421-4 ("Rebuttal Rep.") at 1; Ex. A ("King Dep.") at 58:6-60:21; 62:5-65:5; 159:16-163:8.[1] Drawing on this substantial expertise, Dr. King offers four opinions. First, he examines the lack of clear definitions and objective standards in the City's Bag & Tag Policy (BTP) and training materials, which, Dr. King opines, "do not provide a standardized process for evaluating public health and safety risks in the field, vests untrained city workers with an excessively discretionary role, and fails to align with public health principles." King Rep. ¶ 2. His second and third opinions assess how these deficiencies in the policy and training materials play out in the City's practices. He opines that his in-person observations "confirmed that these deficiencies in the 'Bag and Tag' policy and training result in City workers making superficial and inappropriate assessments of whether property is an 'immediate health and safety risk,'" and that the "CMMS reports prepared by City workers do not contain sufficient details about the property being assessed for disposal

---

[1] Exhibits are attached to the Declaration of Scout Katovich dated June 27, 2025.

and the reasons for disposal to conclude that the property was appropriately evaluated and did, in fact, present an immediate health or safety risk." *Id.* His fourth opinion is that "a revised 'Bag and Tag' policy is necessary," *id.*, to address these deficiencies, *id.* at 17, and "incorporate[] clearly defined health and safety risk criteria, mandatory assessments by trained public health personnel, and improved training for City personnel," *id.* at 1.

**I.   Dr. King's Opinions Are Relevant**

Defendants mischaracterize Dr. King's opinions when they claim those opinions relate only to a *facial* attack to the constitutionality of the BTP. *See* Def. Mot. to Exclude ("Br.") at 3. Dr. King's opinions concern "the City's policies *and practices* related to seizing and discarding items." King Rep. ¶ 2 (emphasis added).

Dr. King does not "interpret" the BTP's "plain meaning," *contra* Br. at 3; he opines that the City has a practice of destroying unhoused people's property without public health justification. *See, e.g.*, King Rep. ¶ 47 (observing "DPW staff were not conducting substantive health and safety risk assessments before discarding property"); *id.* ¶ 49 ("The absence of a standardized health risk assessment process or clear documentation of hazardous conditions calls into question the legitimacy of these claims [that items were destroyed because they posed immediate health or safety risks] and whether they meet public health standards."); *id.* ¶ 54 (DPW worker testimony "suggests that DPW workers do not apply a consistent framework for evaluating health or safety risks, instead applying their own judgment about what constitutes hazardous materials that is at times untethered from policy, common public health terminology, definitions or best practices."). Defendants' assertion that the BTP is "meant to be a tool for frontline City sanitation workers" demonstrates exactly why it is relevant: City workers' misinterpretation and misapplication of this policy lead to Fourth and Fourteenth Amendment violations. Br. at 3.

Unlike *In re Twitter, Inc. Securities Litigation*, No. 16-CV-05314-JST, 2020 WL 9073168, at *8 (N.D. Cal. Apr. 20, 2020), where the court excluded irrelevant expert testimony because it responded to an argument the court separately excluded at trial, Dr. King's opinions are not offered to rebut or advance an excluded, or even potentially excludable, argument. *See* Br. at 4. Even if

the Court were to grant Defendants' motion to exclude evidence or the argument that the BTP is unlawful (and it should not), Dr. King's opinions would remain equally relevant. Dr. King does not offer any legal opinion that the BTP is unlawful or that it could not be constitutionally applied. *See* Ex. A, King Dep. 91:1-25. Rather, he asserts that the BTP has proven insufficient to prevent property destruction without any valid health or safety justification.[2]

Dr. King's opinions will "help the trier of fact to understand the evidence," including City testimony and documentation purporting to justify property destruction on "health and safety" grounds. Fed. R. Evid. 702(a). As the Court recognized in its summary judgment ruling, factual disputes about whether the City discarded items that "included non-hazardous materials that should have been bagged and tagged rather than destroyed" remain to be decided at trial. ECF No. 400 at 25-26. Likewise, City workers' lack of training on and understanding of what constitutes an immediate health or safety risk are relevant to whether the City's failure to adequately train its employees on the BTP constitutes deliberate indifference. *Id.* at 41. Dr. King's expertise, including his assessment of whether the terms of the policy vest excessive discretion in inadequately trained City workers to determine whether items constitute health and safety threats, thus "will logically advance[] . . . material aspect[s] of the proposing party's case" and should be admitted. *Daubert v. Merrell Dow Pharms., Inc*, 43 F.3d 1311, 1315 (9th Cir. 1995). His opinions on policy changes that would address deficiencies that cause property destruction will likewise assist in determining pertinent issues, including Plaintiffs' failure to train *Monell* theory. *See* ECF No. 400 at 39-40.

**II.   Dr. King's Opinions are Reliable**

**A.   Dr. King's Opinions Are Grounded in Reliable Methodology.**

Defendants misleadingly cherry-pick a few lines of deposition testimony to suggest Dr. King's opinions lack any discernable methodology. *See* Br. at 4. Not so. As Dr. King testified, all

---

[2] Defendants' other cases do not support exclusion. *See Eline v. Town of Ocean City, Maryland*, 7 F.4th 214, 223 (4th Cir. 2021) (upholding "in light of our deferential standard of review" exclusion of expert testimony that did not address exact issue necessary to show substantial government interest in ordinance); *United States v. Garcia*, No. 18-CR-00466-BLF, 2021 WL 4691310, at *12 (N.D. Cal. Oct. 7, 2021) (excluding "wide-ranging historical testimony" on gang alliances and rivalries as improper shortcut to proving guilt in criminal case).

his opinions are grounded in his knowledge and experience in epidemiology and public health, including experience teaching environmental health terminology and frameworks, his familiarity with OSHA standards and trainings, his decades of experience working in health care settings, and his experience leading a team of researchers conducting 13 systematic literature reviews on associations between homelessness and health risks. King Tr. at 147:4-153:17; 156:19-159:4. Each opinion is also based on his review of City policies, training materials, CMMS reports, and deposition testimony from this case. *Id.* And he specifically drew on various methodologies commonly used in public health and epidemiology, including "diagnostic validation methodology," saturation, environmental toxicology, and health assessment and response planning methodologies such as HAZWOPER. *Id.* at 151:7-21; 153:20-154:10; 158:15-159:4. This more than suffices. *See Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1007 (2024) (Where expert offers specialized or technical testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind the testimony.") (cleaned up).

Contrary to the City's assertions, Dr. King also explained how he applied these methodologies to materials in this case to reach his conclusions. For example, in formulating his opinion concerning the CMMS reports, he employed a methodology known as "saturation," commonly used in qualitative reviews. Ex. A, King Dep. at 151:7-12. Dr. King explained that, by applying this methodology, he was able to confidently conclude that he had "collect[ed] enough information [to] have a stable understanding of what exists in those reports" and had sufficient data to reach his conclusions about patterns and themes. *Id.* at 152:3-9.

In addition to being derived through specialized knowledge and methodologies accepted in his field, Dr. King's opinions rest on ample factual foundations. Dr. King's report clearly identifies documents, deposition testimony, and in-person observations undergirding specific conclusions. *See, e.g.*, King Rep. ¶ 37 & n.18 (identifying specific pages of deposition testimony that, along with reviewed training materials, support his conclusion that "the training provided to DPW workers does not adequately prepare DPW workers to identify, assess, or handle items that

pose an immediate health or safety risk"); ¶ 45 (detailing observations, deposition testimony and policies supporting conclusion that the City does not consistently follow guidance to ensure safe removal of hazardous materials). This is a far cry from *United States v. Cerna*, where the only identified bases for the excluded expert opinion were generic "'training and experience,' 'conversations with other officers,' and 'reviewing documentaries,'" descriptions "so general that it is impossible to tell how [the expert's] ultimate opinion was extrapolated, much less whether it was properly extrapolated." No. 08-cr-0730, 2010 WL 11627594, at *7 (N.D. Cal. Dec. 17, 2010).

Defendants' incorrectly claim that Dr. King's opinions about the BTP's "co-mingling" provision are unreliable because he does not "tie his critique to any data or other source other than himself." Br. at 5. This is false. As Dr. King testified, his "past experience teaching environmental health terminology and frameworks; . . . understanding of occupational health and safety language[,] . . . experience working in the health care setting" for decades all represent specialized expertise that informs his "conclusion is that the policy itself is written with terms that would not normally be used in the context of environmental health or public health instruction." King Tr. at 147:17-148:7; *see also id.* at 201:4-202:25 (describing hazard identification and risk assessment frameworks informing comingling opinion). "In light of his extensive experience, and his reliance on sources trusted by others in the field," Dr. King's opinion on the policy's "co-mingled" provisions is reliable. *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1270 (9th Cir. 2024).[3]

### B. Dr. King's Opinions Do Not Invade the Court's Role.

Defendants' accusation that Dr. King's opinions "invade the role of the factfinder" is little more than a repackaging of their unpersuasive arguments on relevance and methodology. No independent ground for exclusion exists. Dr. King does not opine on the ultimate issue and in a "bench trial with the Court sitting as factfinder, there [i]s little, if any, danger that any expert

---

[3] Dr. King is nothing like the so-called "marriage expert" in *Perry v. Schwarzenegger*, who held no relevant degrees, whose publications had not been peer-reviewed, and whose work lacked the "intellectual rigor characteriz[ing]" his field. 704 F. Supp. 2d 921, 946-51 (N.D. Cal. 2010). Unlike the expert in *Siqueros v. General Motors LLC*, 16-cv-07244, 2022 WL 74182 at *13 (N.D. Cal. Jan. 7, 2022), who asserted a causal relationship between engine repair rates and an oil consumption defect without ruling out alternative causes, Dr. King does not claim that the BTP's imprecise definitions are the *sole* cause of property destruction, only that they are a factor.

witness would 'attempt to instruct the [factfinder] on the law, or how to apply the law to the facts of the case.'" *Cascadia Wildlands v. Scott Timber Co.*, 618 F. Supp. 3d 1038, 1052 (D. Or. 2022), *aff'd*, 105 F.4th 1144 (9th Cir. 2024); *see also* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

Nor are Dr. King's opinions that discuss OSHA's HAZWOPER guidance impermissible legal conclusions. Br. at 7. Unlike *In re Twitter*, 2020 WL 9073168, at *9, Dr. King opines not on whether OSHA standards required any particular action in this case, but rather contrasts the City's haphazard approach with the "evidence-based safety protocols" reflected in HAZWOPER. *See* King Rep. ¶ 30; *id.* ¶ 31 (opining that a policy that includes "clear criteria guided by regulatory standards *like* the HAZWOPER framework" would be more "effective") (emphasis added); ¶¶ 23, 24 (citing OSHA definitions, without any discussion of regulation requirements).

Defendants disingenuously argue that Dr. King's opinions require no specialized knowledge. Br. at 5-6. But Dr. King's opinion about City workers discarding property without "conducting substantive health and safety risk assessments," King Rep. ¶ 47, sometimes while "fail[ing] to follow proper procedures, creating new safety risks in the process," *id.* ¶ 45, incorporates his specialized knowledge of appropriate health and safety assessments and procedures for handling hazardous materials. *See also* Ex. A, King Dep. at 215:7-13 (referring to specialized framework of "structured assessment of risk based on the identification of the hazard characterization of the site and then assessment of risk based on severity and probability of the hazard"). Defendants' position that "untrained laymen" are the arbiters of health and safety risk assessments is contradicted by their own use of occupational health experts, Dr. Durrani and Dr. Asfour.

And, as to the CMMS reports, as Dr. King testified, his opinion is grounded not only in his experience and expertise in environmental health, occupational health and safety, and health care settings, but also an assessment of whether "public health procedures, such as HAZWOPER guidelines or other occupational health and safety guidelines, were being documented in th[e] reports." Ex. A, King Dep. at 149:21-150:5. Unlike *Pooshs v. Phillip Morris USA, Inc.*, which

excluded public health expert testimony "purporting to 'interpret' what the authors of . . . documents had in mind when they wrote them," Dr. King is not testifying about the City workers' state of mind, nor "testify[ing] solely as a summarizer of documents." 287 F.R.D. 543, 553 (N.D. Cal. 2012) (cleaned up). Rather, he offers opinion that the reports fail to show consistent documentation of health risk assessments, meet basic reporting standards, and include sufficient information to evaluate whether items in fact posed a health risk, "information [that] is within Dr. [King's] area of expertise." *Id.* *In re Twitter*'s exclusion of an accountant expert opinion based on his review of "internal Twitter documents and deposition testimony" is distinguishable because that expert did not have any "specialized knowledge or expertise." 2020 WL 9073168, at *9; *see also* Br. at 6.[4] Dr. King's specialized knowledge in health and safety assessments and procedures for handling hazardous materials and experience working with unhoused communities will help the Court "intelligently comprehend" what these reports do—and do not—show. This is relevant to the City's anticipated use of these records to justify their destruction of property and to Plaintiffs' allegations that workers are inadequately trained and that review of CMMS reports is not a meaningful way to assess compliance.

### C. Dr. King's Policy Recommendation Opinions Are Admissible.

Dr. King's opinion that revised terms "would strengthen the ability of HSOC operations to . . . produce a standardized and more effectively documented approach to assessing health and safety risks" is admissible. King Tr. at 153:6-9. Contrary to Defendants' claims, Dr. King's opinion is based on the deficiencies detailed throughout his report and represent "constructive recommendations based on [his] experience, training, and what I understand the process outcomes to be." King Tr. at 245:16-22. And unlike *In re Twitter*, where an expert who admitted he was "not familiar with data cleaning and retrieval procedures" was excluded from testifying on that topic, 2020 WL 9073168, at *11, Dr. King is deeply familiar with the "expert guidance on public health and hazards" that his opinion recommends a new policy incorporate. King Rep. ¶ 66.

---

[4] *United States v. Brown* is also inapposite. 871 F.3d 532, 539 (7th Cir. 2017) (upholding exclusion of expert testimony on use of force because it "came too close to the line drawn in Rule 704(b), which prohibits expert opinion about a criminal defendant's state of mind").

# CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

Dated: June 27, 2025

Respectfully submitted,

By: /s/ Vasudha Talla

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Vasudha Talla, SBN 316219
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
vtalla@ecbawm.com
zsalzman@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

By: /s/ Nisha Kashyap

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: /s/ John Thomas H. Do

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman SBN 82002
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: */s/ Scout Katovich*

AMERICAN CIVIL LIBERTIES UNION
Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*