1
2
3
4
5
6

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

7
8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

10
11
12
13
14
15
16
17

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 4:22-cv-05502-DMR <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' *MOTION IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE CITY'S WRITTEN BAG AND TAG POLICY IS UNLAWFUL** <br><br><br> **Judge:** The Hon. Donna M. Ryu |

18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The City's Motion in Limine No. 5 ("Br."), Dkt. 427, to exclude evidence or argument that the City's written bag and tag policy is unlawful is frivolous and should be denied. The dispositive question before the Court is whether the City complies with the *Constitution*. Plaintiffs have brought a *Monell* claim challenging the City's "custom or practice," not a written policy. The Bag and Tag Policy ("BTP") is, nonetheless, relevant to this inquiry in three ways. *First*, the City has interpreted, expanded, and applied the terms of the BTP in a manner that results in Constitutional violations, including its construction of provisions related to health and safety risks and of provisions on advance written notice. *Second*, as Plaintiffs have alleged from the initial Complaint to this day, the City continually violates the BTP, and that conduct also violates the Constitution. *E.g.*, Dkt. 289 at 4. Third, the City's violations of the BTP are violations of a court order which goes to the appropriate remedy. *See Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986) (noting "the difficulties inherent in monitoring compliance with the court's orders" and the parties' "established record of resistance to prior state and federal court orders").

Stated another way, the BTP lays out minimum standards of conduct that, if accurately applied and consistently followed, could protect the property rights of unhoused individuals. But an acceptable policy, while necessary to establish the framework for Constitutional compliance, is not, by itself, sufficient if the City is willing to abuse, or simply ignore, its provisions. Plaintiffs' extensive evidence of the City's violations necessitates tightening and strengthening the BTP to protect Plaintiffs' rights.

## II.    THE CHALLENGED EVIDENCE SHOULD BE ADMITTED.
### A.    Dr. King's Opinions Regarding the BTP's Misinterpretation and Misapplication are Relevant.

The City misinterprets Dr. King's opinions when it claims they "conflict[] with Plaintiffs' judicial admissions." Br. at 2. That misinterpretation is based on an out-of-context snippet of text from Dr. King's report—i.e., that "a revised 'Bag and Tag Policy is necessary . . . . " *Id.* Dr. King has not opined that the BTP is unlawful. Rather, Dr. King opines that the BTP has proven insufficient to prevent unlawful conduct because the City has misapplied it, and failed to

1

properly train on it, because it "lack[s] clear definitions and objective standards for the factors that are used to justify disposal of property, do[es] not provide a standardized process for evaluating public health and safety risks in the field, [and] vest[s] untrained city workers with an excessively discretionary role." Ex. A (King Rep.) at 1.[1] Because of the City's willingness to exploit the terms of the BTP, "City workers mak[e] superficial and inappropriate assessments of whether property is an 'immediate health and safety risk.'" *Id.* To guard against future misinterpretation and misapplication, Dr. King recommends that the BTP "incorporate[] clearly defined health and safety risk criteria, mandatory assessments by trained public health personnel, and improved training for City personnel." *Id.*

Evidence supporting Dr. King's opinions and demonstrating that the City misunderstands, exploits, and misapplies several undefined or ill-defined terms in the BTP is relevant to whether the City's practices violate the Constitution. DPW supervisors who oversee the Healthy Street Operations Center ("HSOC") resolutions, train general laborers on the BTP, and direct general laborers on whether to bag and tag or discard items do not know basic definitions ("soiled," "bulky items," "special needs") within the BTP or what should be bagged and tagged. Dkt. 400 at 5, 41 ("MSJ Order"); Dkt. 366 at 8:6-22 (outlining evidence presented by Plaintiffs at summary judgment). Terms like "contraband," "health and safety hazard," "soiled," and "comingled" are undefined, permitting DPW to adopt overbroad interpretations and discard anything, rather than only the items that are truly "co-mingled or littered with needles, human waste or other health risks." PX-1 at § 3(a). That includes items that do *not* fall within this category, claiming needles are present when they are not, or discarding an entire tent or item when it merely touches "food" or a "needle." Dkt. 366 at 4:24-5:7 (detailing evidence).

**B.    Dr. Herring's Opinion Regarding the Inaccessibility of the Yard is Relevant.**

The City seeks to exclude one opinion offered by Dr. Herring: that the location of the DPW Maintenance Yard is "not easily accessible" to people seeking to retrieve their belongings. Br. at 2. But Dr. Herring's statement is not an opinion regarding the constitutionality *per se* of

---

[1] All exhibits are attached to the declaration of Larissa Grijalva dated June 27, 2025.

1   the location of the Yard. It is simply that the Yard's location is one of many factors relating to

2   the City's practices that contribute to the persistent inability of unhoused individuals to

3   successfully retrieve bagged and tagged items. The City fails to mention Dr. Herring's report

4   also listed other factors: the Yard's limited hours of operation; the fact that even during those

5   posted hours, operations are not consistently maintained; the City's failure to give the paperwork

6   necessary to enable them to identify their possessions; and the City's scattered and disorganized

7   storage practices. Ex. B, (Herring Rep.) at 50-57.

8   **C.**      **<u>Failure to Provide Pre-Clearing Notice During Any City Operation is Relevant.</u>**

9          The City improperly seeks a preemptive legal ruling from the Court that "routine cleaning

10  operations" and "respon[ses] to 311 service requests" do not require advance written notice under

11  the Constitution. Br. at 1, 3. Plaintiffs never agreed that the City can mislabel operations to

12  circumvent the advance written notice required by the *Constitution* when the City's activity

13  (however denominated) results in a seizure or deprivation of personal property. Under the City's

14  logic, it would be required to comply with the Constitution only during planned HSOC operations

15  but not during *ad hoc* removals of encampments and personal belongings conducted by only one

16  or two City agencies. That is not the law. Discovery has confirmed that, apart from the noticed

17  HSOC resolutions that are the focus of the BTP, Defendants engage in unnoticed property removal

18  under the guise of "roving" sweeps outside the HSOC-noticed zones, and miscategorize those

19  operations under the BTP to avoid providing advance written notice. Dkt. 366 at 2:1-9 (detailing

20  evidence Plaintiffs submitted at summary judgment); Ex. C, Cunningham Dep. 35:18-37:17.

21         Plaintiffs are not precluded from arguing that removal of personal property—regardless of

22  whether the City characterizes that activity as "shifting" from noticed to unnoticed locations,

23  reencampment prevention, response to 311 requests, or something else—requires advance written

24  notice to comply with the Constitution. The evidence shows that, again, the City routinely abuses

25  BTP provisions to use them as a pretext to remove property without the required advance notice,

26  in violation of the Fourth and Fourteenth Amendments. *See* Dkt. 400 at 24-25 (citing *Lavan v. City*

27  *of L.A.*, 693 F.3d 1022, 1032 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2855 (2013). Particularly in

28

3

1  a non-jury trial, the Court is more than capable of determining whether any proffered evidence

2  concerning notice is relevant and the Court should not exclude an entire category of potential

3  evidence in advance of trial, before Plaintiffs have had the opportunity to lay a foundation and

4  establish relevance.[2]

5     **D.     DPW Testimony is Relevant to Show Failure to Comply with BTP.**

6        The City also improperly seeks to exclude the admission of a DPW worker, Herbert Ruth,

7  Jr., stating that he "never issued an advisement form." Br. at 3. The basis for this exclusion

8  request is that under the BTP, providing an advisement form is the job of HSOC, not DPW. Br.

9  at 3.  This request encapsulates the absurdity of the broad exclusion the City seeks. If Plaintiffs

10 seek to establish that no one from the City provides such forms, they can present Mr. Ruth's

11 admission together with other evidence. The City can counter that it is not Mr. Ruth's job and

12 offer (if it exists) the testimony of someone who does provide advisements. Moreover, the City's

13 ongoing failure to comply with the BTP's provision on advisements is relevant to deliberate

14 indifference and supports the need for additional remedial measures in a permanent injunction.

15 *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) ("[A] district court is permitted to

16 order 'relief that the Constitution would not of its own force initially require if such relief is

17 necessary to remedy a constitutional violation.'").

18 **III.    CONCLUSION**

19       Plaintiffs should be allowed to present the full range of evidence establishing that the

20 City's customs and practices are unconstitutional, including that the City routinely violates,

21 ignores, and abuses the BTP's terms and the BTP has not proven sufficient to deter the City's

22 unlawful conduct.

23

24

25

---

26 [2] Pre-emptive exclusion of any evidence relating to the City's failure to give "advisement
27 concerning medications, medical devices, and personal identification" fails for the same reason:
   there is no way for the Court, in advance, to rule on incomplete hypothetical situations. Br. at 1
28 (quoting Murphy Decl. ¶ 5).

4

Dated: June 27, 2025

Respectfully submitted,

By: /s/ Vasudha Talla

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
Vasudha Talla, SBN 316219
Zoe Salzman, *pro hac vice*
Vivake Prasad, *pro hac vice*
Bianca Herlitz-Ferguson, *pro hac vice*
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Telephone: (212) 763-5000
vtalla@ecbawm.com
zsalzman@ecbawm.com
vprasad@ecbawm.com
bherlitz-ferguson@ecbawm.com

By: /s/ Nisha Kashyap

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Nisha Kashyap SBN 301934
Andrew Ntim SBN 347084
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
nkashyap@lccrsf.org
antim@lccrsf.org

By: /s/ John Thomas H. Do

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
John Thomas H. Do, SBN 285075
William S. Freeman, SBN 82002
Larissa Grijalva, SBN 352930
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org
wfreeman@aclunc.org

By: /s/ Scout Katovich

5

1                                AMERICAN CIVIL LIBERTIES UNION

2                                Scout Katovich, *pro hac vice*

                                 425 California Street

3                                Suite 700

                                 San Francisco, CA 94104

4                                212-549-2500

                                 skatovich@aclu.org

5

6                                *Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28