EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
Vasudha Talla (SBN 316219)
1 Rockefeller Plaza, 8th Floor
New York, New York
Telephone: (212) 763-5000
vtalla@ecbawm.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COALITION ON HOMELESSNESS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 4:22-cv-05502-DMR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 REGARDING DISMISSED OR UNALLEGED CLAIMS**<br><br>**Judge:** The Hon. Donna M. Ryu |

Plaintiffs do not seek to prove dismissed or unalleged claims; the evidence is relevant to the remaining claims. *Contra* Motion in Limine No. 3 ("Br."), Dkt. 425. "[E]vidence that was relevant to the dismissed claims, and is also relevant to the claims now before the Court, is admissible." *Hernandez v. City of Los Angeles*, No. 19-cv-00441, 2022 WL 16551705, at *6 (C.D. Cal. Aug. 1, 2022); *see also, e.g., Bagdasaryan v. Bayview Loan Servicing LLC*, No. 14-cv-6691, 2017 WL 11633143, at *5 (C.D. Cal. Jan. 13, 2017). Defendants cite no cases.

**I.     THE SFPD'S ROLE IN ENCAMPMENT CLEARING IS RELEVANT**

SFPD's policies and practices are relevant and admissible notwithstanding the dismissal of the Eighth Amendment claim because SFPD plays a key role in property seizure.[1] SFPD participates in HSOC and JFO operations, and other encampment clearing. *See, e.g.*, Ex. A, Young Dep. at 210:19-212:10; Ex. B, Lazar 30(b)(6) Dep. at 44:2-8.[2] Dr. Herring found the few instances that DPW bagged and tagged property occurred primarily because SFPD seized tents as "evidence," *not* because DPW applied the BTP on its own. Dkt. 366 at 5:11-6:3. DPW will not remove any property unless SFPD is present. *See* Ex. C, Vaing 30(b)(6) Dep. at 34:18-25. SFPD determines how much time people are given to move. *See* Ex. D, Hoang Dep. at 35:11-16. Between December 2020 and July 2024, "SFPD officers were directed to make a determination about whether property they encountered was unattended or abandoned, and if property was abandoned, ensure that that property was immediately discarded[.]" Ex. B, Lazar 30(b)(6) Dep. at 118:22-119:3, 120:2-123:11.

Notwithstanding SFPD's central role, SFPD is not trained on the BTP (Ex. D, Hoang Dep. at 35:1-6) and SFPD did not develop the additional training it promised the Court (Ex. A, Young Dep. at 255:22-256:14). Between December 2020 and July 2024, SFPD Notice 20-167 incorrectly

---

[1] This section responds to both sections 1 and 4 of MIL 3, since both concern the SFPD.

[2] All exhibits are attached to the declaration of Zoe Salzman dated June 27, 2025.

instructed officers that DPW would not store "bulky items." PX-8 at 3; Ex. B, Lazar 30(b)(6) Dep. at 117:5-7, 137:2-138:23.

Given SFPD's central role, SFPD policies that explain how SFPD is supposed to handle property, including in the context of enforcing laws against unhoused people (*e.g.* PX-2, PX-5, PX-6, PX-7, PX-9), are relevant.[3] Incident reports showing how DPW immediately destroys property seized by SFPD are also relevant (*e.g.* PX-126, PX-128, PX-209), as are photos attached thereto (which may show the condition of the property), especially since there may be no other documentation given that DPW does not always create a CMMS report when SFPD is involved, and SFPD policy requires officers to "document in their report why the items were discarded." *See* Ex. E, Brandon Dep. at 110:1-18; PX-3 at 2 and PX-8 at 2. Equally relevant is testimony showing SFPD is involved in property destruction despite not been trained on the BTP. *E.g.* Ex. D, Hoang Dep. 35:1-6 (SFPD Sgt. Hoang: "I've never seen their bag-and-tag policy."); *id.* at 36:13-16.

Proof contrasting how SFPD handles *other* evidence (Br. at 4) shows SFPD does not treat homeless persons' property like actual evidence; SFPD's purpose is to clear the streets, not prove a criminal case. SFPD's seizure of so-called "evidence" of illegal lodging is nothing but a cover for the City's practice of property destruction. SFPD takes photos and videos to prove illegal lodging. Ex. D, Hoang Dep. at 95:11-96:6, 97:10-98:7; Ex. B, Lazar 30(b)(6) Dep. 64:22-24, 73:18-75:6. SFPD does not need the tents it seizes, so it gives them to DPW and allows DPW to immediately discard them or send them to the Yard and discard them after 90 days. *E.g.*, PX-10,

---

[3] Contrary to Defendants' suggestion, SFPD's policies on "Enforcement of Laws and Ordinances for Individuals Experiencing Homelessness Sitting, Lying, or Sleeping on Public Property" specifically address handling property. See PX-5; *see also, e.g.*, PX-9 at 4 (directing SFPD to "request the DPW to 'bag and tag' the encampment as evidence of a crime" and attach photographs of the encampment to the incident report); PX-7 (same); PX-6 at 4 (officers "shall request DPW to respond and seize the tent as evidence" and, if individual is placed under custodial arrest, "shall request DPW to bag and tag the encampment"); PX-5 (same).

at Response No. 30; PX-18 at 3; Ex. B, Lazar 30(b)(6) Dep. at 66:1-23; Ex. C, Vaing 30(b)(6) Dep. at 132:8-133:9. The City has *never* retrieved such "evidence" for a criminal case. Ex. C, Vaing 30(b)(6) Dep. at 133:24-134:13; Ex. A, Young Dep. at 170:21-23, 228:3-11. SFPD does not "allow any other crime evidence to be destroyed by another City agency[.]" Ex. B, Lazar 30(b)(6) Dep. at 69:4-17, 60:1-6; Ex. D, Hoang Dep. at 46:6-9, 98:8-103:4, 60:4-10; Ex. A, Young Dep. at 173:18-21; PX-162. SFPD property receipts do not contain the Yard address or the CMMS/service order number that DPW needs to locate seized property. Ex. D, Hoang Dep. at 79:6-21. Evidence about the SFPD's role in property destruction is relevant and admissible.

## II. THE BTP REQUIRES ADDITIONAL TIME FOR DISABILITIES

Evidence concerning the time people with disabilities are given to pack and move is relevant. The BTP requires City workers to "provide the [property] owner or the owner's designee a reasonable amount of time (approximately 30 minutes) to collect and move their belongings. . . *taking into account any special needs that individuals may have*." PX-1 (BTP) at §2(b) (emphasis added); PX-11, at Supplemental Response to Interrogatory No. 9 ("special needs" includes disabilities). The City's failure to comply shows insufficient notice in violation of the Fourteenth Amendment. *See* Dkt. 400 at 34-35 ("MSJ Order").

Evidence that City workers "still do not know how to apply the bag and tag policy, even months after the City updated its training materials and protocols," including testimony that DPW Supervisor Israel Graham "did not know what the term 'special needs' meant as it is used in the policy" is also relevant to the *Monell* failure to train claim and to deliberate indifference. MSJ Order at 41 (citing Graham Dep.); *see also* Ex. F, Castro Dep. at 46:8-47:13, 48:11-17, 49:15-21 (unaware of "special needs" in BTP); Ex. G, Horky Dep. at 66:10-14, 92:22-24 (not aware of "any kind of formalized disability accommodations process for HSOC"); Ex. H, Piastunovich Dep. at 45:25-46:2 (not aware of "any training in terms of what 'special needs' refers to"); Ex. E, Brandon

Dep. at 253:13-16 (could not recall "any training or guidance on what to do if a person at an HSOC resolution has a disability"); Ex. I, Ruth Dep. at 109:2-7 ("There's no rules. I mean, there's nothing inside the policy that says anything about that [coming across people with disabilities].").

Likewise, a lack of accommodations in City housing is relevant, since Defendants argue that Cronk and others were voluntarily homeless. *See* MSJ Order at 21-22 ("The record contains facts supporting that Cronk left shelters or housing due to circumstances beyond her control. . . Cronk has epilepsy, which requires that she have 'a railing or . . . place to sit down' when she takes a shower . . ." (citing Cronk Dep. at 71:20-25, 72:23-73:8)).

### III. EVIDENCE OF PROPERTY DESTRUCTION IS RELEVANT AND ADMISSIBLE NOTWITHSTANDING SETTLEMENT OR DISMISSAL

Evidence of Martinez's property destruction is admissible notwithstanding his individual settlement because it is relevant to Plaintiffs' *Monell* pattern and practice claim. *See, e.g.*, *Malone v. Potter*, No. 07-CV-5530, 2009 WL 10672523, at *7–8 (C.D. Cal. Feb. 25, 2009) (holding evidence of settled claims admissible to show defendant "had a discriminatory or retaliatory motive for taking the subsequent actions that are at issue in this case"); *Rivera v. Smith's Food & Drug Ctr., Inc.*, No. 07-CV-37, 2009 WL 10701794, at *1 (D. Mont. Mar. 5, 2009) (holding settlements did not bar plaintiff "from referring to the incidents out of which the settled claims arose for the purpose of establishing context and pattern and practice"). Castano's property destruction is similarly admissible to prove pattern and practice, notwithstanding that Castano was dismissed as a plaintiff. *See, e.g.*, *Hernandez*, 2022 WL 16551705, at *6. Christin Evans personally observed and documented with photos and video the destruction of Castano's property. PX-114-PX-117; Dkt. 9-3 at 1-26, Evans Decl. ¶ 26. Her testimony is as admissible with respect to him as it is with respect to her observations of property destruction experienced by unhoused witnesses who were never named plaintiffs. *See* MSJ Order at 29.

### CONCLUSION

The Court should deny Defendants' Motion in Limine No. 3.

| | |
|---|---|
| Dated: June 27, 2025 | Respectfully submitted, |
| | By: /s/ Vasudha Talla |
| | EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP |
| | Vasudha Talla, SBN 316219 |
| | Zoe Salzman, *pro hac vice* |
| | Vivake Prasad, *pro hac vice* |
| | Bianca Herlitz-Ferguson, *pro hac vice* |
| | 1 Rockefeller Plaza, 8th Floor |
| | New York, NY 10020 |
| | Telephone: (212) 763-5000 |
| | vtalla@ecbawm.com |
| | zsalzman@ecbawm.com |
| | vprasad@ecbawm.com |
| | bherlitz-ferguson@ecbawm.com |
| | By: /s/ Nisha Kashyap |
| | LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA |
| | Nisha Kashyap SBN 301934 |
| | Andrew Ntim SBN 347084 |
| | 131 Steuart Street, Ste. 400 |
| | San Francisco, CA 94105 |
| | Telephone: (415) 543-9444 |
| | nkashyap@lccrsf.org |
| | antim@lccrsf.org |
| | By: /s/ John Thomas H. Do |
| | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA |
| | John Thomas H. Do, SBN 285075 |
| | William S. Freeman SBN 82002 |
| | 39 Drumm Street |
| | San Francisco, CA 94111 |
| | Telephone: (415) 293-6333 |
| | jdo@aclunc.org |
| | wfreeman@aclunc.org |
| | By: /s/ Scout Katovich |
| | AMERICAN CIVIL LIBERTIES UNION |

Scout Katovich, *pro hac vice*
425 California Street
Suite 700
San Francisco, CA 94104
212-549-2500
skatovich@aclu.org

*Attorneys for Plaintiffs*