**EXHIBIT C**

**TO**

**DECLARATION OF EDMUND T. WANG IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT WITNESS OPINIONS OF DR. KATHY PEZDEK**

```
 1                  UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                       OAKLAND DIVISION
 4   - - - - - - - - - - - - - - - - - -
 5   COALITION ON HOMELESSNESS,        )
 6   et al.,                           )
 7                Plaintiffs,          )
 8   vs.                               )  CASE NO.
 9   CITY AND COUNTY OF SAN            )  4:22-cv-05502-DMR
10   FRANCISCO, et al.,                )
11                Defendants.          )
12   - - - - - - - - - - - - - - - - - -
13
14
15                    REMOTE DEPOSITION OF
16                     KATHY PEZDEK, Ph.D.
17                    MONDAY, APRIL 7, 2025
18
19
20
21          BEHMKE REPORTING AND VIDEO SERVICES, INC.
22             BY:  SUZANNE I. ANDRADE, CSR NO. 10682
23                 550 CALIFORNIA STREET, SUITE 820
24                 SAN FRANCISCO, CALIFORNIA  94104
25                         (415) 597-5600
```

```
 1   APPEARANCES OF COUNSEL (VIA VIDEOCONFERENCE):
 2   FOR PLAINTIFFS:
 3        AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
 4        NORTHERN CALIFORNIA
 5        BY:  WILLIAM S. FREEMAN, ATTORNEY AT LAW
 6             LARISSA GRIJALVA, ATTORNEY AT LAW
 7        39 Drumm Street
 8        San Francisco, California  94111
 9        Telephone:  (415) 293-6393
10        Email:  wfreeman@aclunc.org
11                lgrijalva@aclunc.org
12
13   FOR DEFENDANTS AND THE DEPONENT:
14        CONRAD METLITZKY KANE
15        BY:  JESSE LANIER, ATTORNEY AT LAW
16             WARREN METLITZKY, ATTORNEY AT LAW
17        217 Leidesdorff Street
18        San Francisco, California  94111
19        Telephone:  (415) 469-1719
20        Email:  jlanier@conmetkane.com
21                wmetlitzky@conmetkane.com
22
23   ALSO PRESENT:
24        KYLE FRIEND, ZOOM TECHNICIAN
25
```

```
 1   would apply to people in general in those circumstances.
 2        Q.   Would you agree that the principles that you're
 3   talking about would apply to all the witnesses in this
 4   case, no matter whether they're witnesses for the City
 5   or witnesses for Plaintiffs?
 6        A.   Yes.
 7        Q.   A couple more questions about compensation.
 8             In your expert report, you state that you're
 9   being compensated for your research and writing at the
10   rate of $300 an hour, correct?
11        A.   Yes.
12        Q.   Is that your standard rate for expert
13   engagements, consulting engagements?
14        A.   Yes.
15        Q.   You're also being compensated at the basis of
16   $2,000 per day spent in deposition or trial; is that
17   correct?
18        A.   Yes.
19        Q.   Is that also your standard rate?
20        A.   It varies -- that varies slightly by county,
21   but -- it varies by county.
22        Q.   What's the lowest and the highest that you
23   currently would charge for a day of testimony?
24        A.   A thousand dollars in L.A. County, $2,000 in
25   whatever county Portland, Oregon, is.
```

```
 1   details that pertain to a particular event.  And those
 2   are what are more vulnerable to suggestibility.
 3       Q.   We'll get back to that a little bit later.
 4            But is that a principle that applies generally
 5   across all witnesses in this case?
 6       A.   Yes, yes.
 7       Q.   It's a universal that would apply to all
 8   people?
 9       A.   Everything in my report is a principled memory
10   that would apply to the general population.
11       Q.   Let's -- again referring to the first page of
12   Exhibit 1410, one of your general research interests is
13   visual memory.
14            Can you explain what that is, please.
15       A.   Yeah.  That's memory for things that we see.
16            So I study memory.  There are all kinds of
17   memories.  I focus on memory for things that you see.
18   Face memory, those are faces that you see.  Event memory
19   are events that you see.  That's what --
20       Q.   So --
21       A.   -- I mean by that category.
22       Q.   I'm sorry.  I didn't mean to interrupt you.
23            So visual memory can be compartmentalized into
24   face memory and event memory?  Is that -- did I get that
25   right?
```

```
 1   vita.  My vita is more current.  I haven't uploaded some
 2   of those here.
 3         ATTORNEY FREEMAN:  Would you -- Mr. Friend, would
 4   you show Dr. Pezdek Tab 6, which is Appendix A, a list
 5   of cases in which you've testified?  We'll mark that as
 6   Exhibit 1412.
 7             (Deposition Exhibit 1412 was marked for
 8             identification.)
 9   BY ATTORNEY FREEMAN:
10       Q.   Dr. Pezdek, this was attached to your expert
11   report.  It's a one-pager.  Take a look at it.
12            Is that a complete list of cases in which you
13   have testified either at trial or deposition in the past
14   four years?
15       A.   Yes, up to the time that I submitted this
16   report.  I have since testified in two other trials.
17       Q.   Okay.  Well, why don't we -- let's get those
18   listed.
19            Could you tell me the information about those
20   two that you've recently testified?
21       A.   Yes.  I'd have to consult another file to give
22   you more specific information, names of cases and case
23   number and so forth.  Maybe do that at a break?
24       Q.   Yeah.  We'll ask the -- the City will ask
25   Ms. Lanier to provide that to us supplementally so that
```

```
 1    Exhibit 1412 involve testimony about event memory?
 2         A.   No.
 3         Q.   There are some case numbers that are blank.
 4              What is the significance of that?
 5         A.   I just -- I just didn't record the case number.
 6    I didn't have it in my file.
 7         Q.   Can you tell me which of these cases on
 8    Exhibit 1412 resulted in trial testimony?
 9         A.   These are all cases in which I've testified.
10         Q.   No.  I understand that.  But there's a
11    difference between testifying in a pretrial deposition
12    and testifying in court; and that's what I'm trying to
13    get at.
14         A.   Oh.  They're all in court.
15         Q.   These are cases you testified in court?
16         A.   All of them, yes.
17         Q.   Okay.  Are there other cases in which you
18    testified in a pretrial deposition but did not testify
19    in court within the last four years?
20         A.   I don't believe so.
21         Q.   Are these all criminal cases?
22         A.   Yes.
23         Q.   Other than -- the case that we're involved in
24    now is a civil case.
25              Are there any other cases that you've been
```

```
 1  involved in in the last four years that involve -- that
 2  are civil cases?
 3       A.   Not that I believe.  Not that I -- I don't
 4  believe so, no.
 5       Q.   And in your history as a testifying witness,
 6  are there any other cases that you've testified in that
 7  are civil cases, not criminal?
 8       A.   Yes, there are.  Yes.
 9       Q.   Do you recall any of those?
10       A.   No.  I can't give you references to those, no.
11       Q.   Let me go back to your list of publications.
12  And we'll take the one from your CV because you said
13  that's the more complete one.  That's -- can you take a
14  look at that?
15           I'm trying to remember -- make sure I get right
16  the exhibit number.  Well, it's your CV, which is
17  Exhibit 1410.
18           Are there any of the articles on that -- or
19  publications in that list that are particularly relevant
20  to the testimony you expect to offer in this case?
21       ATTORNEY LANIER:  Can I ask that Mr. Friend please
22  scroll down a little bit further in this exhibit so we
23  can see a more complete of the list of journal articles.
24       THE WITNESS:  Yeah, but wait.  Slower, slower.
25           I don't know how to answer that question
```

```
 1   without going through it.  I mean, go back up to the top
 2   of the list, because the most current are first.
 3           To some extent, almost all of these articles
 4   refer to different aspects of memory and eyewitness
 5   memory.  The second publication has to do with event
 6   memory for an officer-involved shooting by police
 7   officers and civilians.  That would certainly be
 8   relevant.
 9           Surveillance video identifications are not so
10   relevant.  So that would be not the next couple of
11   papers.
12           There aren't any -- the article about police
13   officers have no advantage over civilians, I think
14   that's relevant if you consider certain eyewitnesses to
15   be not police officers in this case but officials.
16   BY ATTORNEY FREEMAN:
17       Q.  Let me ask you about that for a second.
18   Because in this case, we have San Francisco employees.
19       A.  Yes.
20       Q.  Some police officers, one fire department
21   officer, DPW employees.
22           Would you agree with the statement that City
23   employees don't have any advantage over homeless persons
24   in terms of their ability to recall events?
25       A.  You put in homeless people.  I -- I don't know
```

1  if there are any special characteristics of memory for
2  homeless people, but I would certainly say the City
3  officials aren't advantaged in their memory over
4  civilians, over regular civilians.
5      Q.   Thank you.
6           Go ahead.  I interrupted your flow on
7  discussing the articles in 1410 that would be
8  particularly relevant to your testimony.
9      A.   Okay.  Scroll down, Mr. -- is it Friends?
10 Mr. Friends, is it?  Okay.  Scroll down.  Give me the
11 next screen, kind of fill the next screen.
12          The study on elevated stress would be relevant.
13 We're certainly talking about people observing stressful
14 situations in some --
15     Q.   Let me make sure that I understand which one
16 that is.
17     A.   Second from the bottom here, Pezdek, Abed,
18 Cormia, "Elevated stress impairs the accuracy of
19 eyewitness memory but not the accuracy-confidence
20 relationship."
21     Q.   Thank you.
22     A.   Laypeople's beliefs about memory probably not
23 so relevant, but it may be depending on what way our
24 discussion goes.
25          Can I see the next screenful of shots --

```
1    screenful of publications?
2         You want me to keep going through this?
3         Q.  Well, yes.  You don't have to mention each one.
4    What I'm interested in finding out is -- well, let me
5    ask this question, Dr. Pezdek.
6         You listed in the footnotes to your report a
7    number of publications.
8         Are those the ones that you believe are most
9    relevant to your testimony?
10        A.  Yes.
11        Q.  Are there other articles or publications in
12   this exhibit, 1410, that you also believe are
13   particularly relevant to your testimony that are not
14   listed in your report?
15        A.  No.
16        Q.  Thank you.
17            I take it you've been -- during the course of
18   your career, you have been qualified by a court as an
19   expert in one or more areas?
20        A.  Yes.
21        Q.  What areas have you been qualified in?
22        A.  Well, people use different words, but it's
23   basically eyewitness memory and identification.
24        Q.  Have you ever been offered as an expert but not
25   qualified by the Court, in whole or in part?
```

```
 1   were important to your opinions?
 2        A.   Well, relate -- well, not -- related to memory
 3   for particular events.
 4        Q.   Did you review any videos of deposition
 5   testimony?
 6        A.   No.
 7        Q.   Would reviewing videos have assisted you to
 8   make any of the judgments you've reached in this case?
 9        A.   No.
10        Q.   And again, I know I've asked this question in a
11   slightly different form.
12             But do you intend to offer any opinion on the
13   truthfulness or reliability of the testimony of any
14   person or witness in this case?
15        A.   No.
16        Q.   Now, are you aware that the factfinder in this
17   case is not a jury, but it's actually Judge Ryu?
18        A.   Yes.
19        Q.   How do you believe your testimony would assist
20   Judge Ryu in making factual determinations in the case?
21        A.   I don't know this judge, and I don't know how
22   much she knows about memory.  But if she's not current
23   in the literature, she is likely to have misconceptions
24   about how eyewitness memory works, how people remember
25   events.
```

1           And I'm hoping that the information that I
2   present would be useful to her in making realistic
3   assessments about the kinds of things that people are
4   likely to remember well or not.
5       Q.   I notice that you used the word "likely" a
6   couple of times in that answer, and it occurs a lot in
7   your report.
8           What do you mean when you say "likely"?
9       A.   Well, there, I'm talking about probability,
10  which in fact relates to everything that we do in life
11  from my point of view.
12          So I'm talking about not what I know will
13  happen in the future, not what I know the judge will
14  think, not what I know the judge knows; but it's my way
15  of reflecting that I'm just -- I'm estimating that based
16  on what I know about circumstances.  It's more probable.
17      Q.   You say it's more probable than not when you
18  use the term "likely"?
19      A.   Yes.
20      Q.   Okay.  So, you know, if we're on a scale of one
21  to a hundred, are you saying greater than 50 percent?
22      A.   Usually I use the word "likely" when I mean
23  something significantly more than that.  It's -- has a
24  higher probability of occurrence.
25      Q.   In other words, higher probability than 50

```
 1            I guess specifically defining it, "likely" just
 2   means anything between a 51 percent chance of occurrence
 3   and a hundred percent chance of occurrence in that very
 4   big window of 49 percent.
 5            But when I use it casually in my -- in my
 6   speech or when I write and use that term, I generally am
 7   referring to something that has a probability of
 8   occurrence that's quite a bit higher than 51 percent.
 9       Q.   Thank you.
10            Do you believe your testimony will alert
11   Judge Ryu to things that she could not figure out for
12   herself?
13       ATTORNEY LANIER:   Objection; argumentative.
14   BY ATTORNEY FREEMAN:
15       Q.   You may answer.
16       A.   I don't know enough about her to make that
17   determination.
18       Q.   Do you believe your testimony will inform
19   Judge Ryu about the credibility of any witness?
20       A.   My testimony does not relate to the credibility
21   of any witness.  So, no, it's not relevant to my
22   testimony.
23       Q.   Let's now go back to Exhibit 1409, which is
24   your expert report.
25            If you'd put that up on the screen.  There it
```

```
 1   judgments of the truthfulness of any of the witnesses in
 2   this case.
 3   BY ATTORNEY FREEMAN:
 4       Q.    How do you expect Judge Ryu to use your
 5   opinions, if she does, in evaluating the evidence in
 6   this case?
 7           ATTORNEY LANIER:   Argumentative, asked and answered.
 8           THE WITNESS:   Well, I have answered the question
 9   already.   I think she is going to listen to the evidence
10   that's presented, particularly in terms of what people
11   tend to remember, what people tend to not remember and
12   at what level, and make a determination as to which
13   kinds of memories are more likely to be -- to reflect
14   what actually happened and which ones are not.
15           And then possibly, because I'm talking about
16   how memory works for most people in general, come up
17   with an understandable reason why honest people could
18   be -- could still make mistakes in memory.
19   BY ATTORNEY FREEMAN:
20       Q.    I want to go back to the fact that in your
21   report, you have referenced a number of witnesses for
22   the plaintiffs and suggested reasons why their memory
23   might not be reliable.
24           By the way, if that's not correct, you can
25   correct me.   That's my impression of what you've said.
```

```
 1  STATE OF CALIFORNIA   )  ss.
 2  COUNTY OF SAN MATEO    )
 3             I hereby certify that the witness in the
 4  foregoing deposition, KATHY PEZDEK, Ph.D., was by me
 5  duly sworn to testify to the truth, the whole truth and
 6  nothing but the truth, in the within-entitled cause;
 7  that said deposition was taken at the time and place
 8  herein named; and that the deposition is a true record
 9  of the witness's testimony as reported by me, a duly
10  certified shorthand reporter and a disinterested person,
11  and was thereafter transcribed into typewriting by
12  computer.
13             I further certify that I am not interested in
14  the outcome of the said action, nor connected with nor
15  related to any of the parties in said action, nor to
16  their respective counsel.
17             IN WITNESS WHEREOF, I have hereunto set my
18  hand this 10th day of April, 2025.
19  Reading and Signing was:
20  ____ Requested    ____ Waived    __X__ Not Requested
21
22          [signature]
23
24          SUZANNE I. ANDRADE, CSR NO. 10682
25          STATE OF CALIFORNIA
```

# ERRATA SHEET

NAME OF CASE: *Coalition on Homelessness, et al. v. City and County of San Francisco, et al.*, No. 4:22-cv-05502-DMR
DATE OF DEPOSITION: April 7, 2025
NAME OF DEPONENT: Kathy Pezdek, Ph.D.

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| 33 | 9 | "Everything in my report is a principled memory…" SHOULD BE "Everything in my report is a principle of memory…" | Transcription error |
| 63 | 20-22 | "My testimony does not relate to the credibility of any witness." SHOULD BE "My testimony does not relate to the credibility of any specific witness." | Misstatement |
| 71 | 12 | "…that as just memories at the top and more detailed…" SHOULD BE "…that as gist memories at the top and more detailed… | Spelling error |

_____
Kathy Pezdek, Ph.D.