**EXHIBIT P**

**TO**

**DECLARATION OF STEVEN MILLS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE REGARDING SHELTER AVAILABILITY (ECF NO. 418)**

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                       OAKLAND DIVISION
 4    - - - - - - - - - - - - - - - - - -
 5    COALITION ON HOMELESSNESS,         )
 6    et al.,                            )
 7                  Plaintiffs,          ) CASE NO.
 8    vs.                                ) 4:22-cv-05502-DMR
 9    CITY AND COUNTY OF SAN             )
10    FRANCISCO, et al.,                 )
11                  Defendants.          )
12    - - - - - - - - - - - - - - - - - -
13      THIS TRANSCRIPT AND ITS EXHIBITS CONTAIN INFORMATION
14       SUBJECT TO A PROTECTIVE ORDER AND SHALL BE TREATED
15             AND USED ONLY IN ACCORDANCE THEREWITH
16
17            CONFIDENTIAL - ATTORNEYS' EYES ONLY
18               DEPOSITION OF DAVID NAKANISHI
19                 FRIDAY, FEBRUARY 7, 2025
20
21          BEHMKE REPORTING AND VIDEO SERVICES, INC.
22              BY:  SUZANNE I. ANDRADE, CSR NO. 10682
23                  550 CALIFORNIA STREET, SUITE 820
24                  SAN FRANCISCO, CALIFORNIA 94104
25                                       (415) 597-5600
```

```
 1   APPEARANCES OF COUNSEL:
 2   FOR PLAINTIFFS:
 3       AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
 4       NORTHERN CALIFORNIA
 5       BY:  JOHN H. DO, ATTORNEY AT LAW
 6       39 Drumm Street
 7       San Francisco, California 94111
 8       Telephone:  (415) 621-2493
 9       Email:  jdo@aclunc.org
10   - AND -
11       EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
12       BY:  VASUDHA TALLA, ATTORNEY AT LAW
13       600 Fifth Avenue, 10th Floor
14       New York, New York 10020
15       Telephone:  (212) 763-5075
16       Email:  vtalla@ecbawm.com
17
18   FOR DEFENDANTS AND THE DEPONENT:
19       CITY AND COUNTY OF SAN FRANCISCO
20       OFFICE OF THE CITY ATTORNEY
21       BY:  STEVEN MILLS, DEPUTY CITY ATTORNEY
22       1390 Market Street, 7th Floor
23       San Francisco, California 94102
24       Telephone:  (415) 355-3304
25       Email:  steven.mills@sfcityatty.org
```

```
 1  working on the people trying to go into shelter.
 2      Q.   I'm sorry.  You're saying removal of items
 3  would -- and I didn't follow...
 4      A.   If that was happening, usually I'm with the
 5  people that are accepting shelter.  So I wouldn't --
 6  really wouldn't have been paying attention to that.
 7  Because that's the role of then DPW, the incident
 8  commander, others.  It wasn't -- my job was to help
 9  support ERT.
10      Q.   What was their role?
11      A.   Whose role?
12      Q.   You said the incident commanders and it was
13  DPW's role.
14           What role are you referring to?
15      A.   Well, dealing with any of the items that were
16  left behind.
17      Q.   Did you inform individuals of any type of
18  property limitation?
19      A.   Absolutely.
20      ATTORNEY MILLS:  Objection; vague and ambiguous.
21      THE WITNESS:  For people accepting shelter, we were
22  very clear on what they could or could not bring to
23  shelter.  So that included items they couldn't bring as
24  well as the amount of items that would be allowed.
25           We also tried to educate them on -- each site
```

1  sometimes had specific requirements, like no weapons, or
2  you might go through a metal detector.  We would inform
3  them so that they weren't surprised when they got on the
4  site, because then they would tend to not accept the
5  shelter.
6  BY ATTORNEY DO:
7     Q.    What about individuals who were not accepting
8  shelter; did you inform them of any type of property
9  limitation?
10       ATTORNEY MILLS:  Objection; vague, ambiguous.
11       THE WITNESS:  So the -- my understanding of what HOT
12  Team's role was was to educate everyone on what the
13  options were.  So helping them understand what the --
14  what shelter options are.
15           There were times that people had very limited
16  or were unclear on what the options were.  Just as an
17  example, someone might just assume that the only option
18  for shelter was congregate shelter, some of the large
19  ones, like Next Door, Sanctuary.  They were very aware
20  that there's metal detectors limits, but they may not
21  have been aware of at that time Safe Sleep as an option,
22  the noncongregate shelters, like Navigation.
23           So part of I saw our job was to educate them on
24  what the options are, what we had to offer them in the
25  moment.

1  BY ATTORNEY DO:
2     Q.   You offered transportation of some form to
3  shelter, correct?
4     A.   Yeah.  Early on, it was really through taxi
5  scrip.  We generally told them that they needed to
6  have -- they need to use our transportation.
7          Occasionally, if we were very close to a
8  shelter, we would let them know that they could walk
9  there themselves or get themselves there themselves.
10 But we usually wouldn't let them go until we knew a
11 referral was sent.
12    Q.   Would you have that referral even if an
13 individual did not -- had more than two bags of
14 belongings?
15    A.   You know, I think there were times, frankly,
16 that we tried to push the system a little bit because
17 there were some sites that had a little bit more
18 leniency.
19         But we usually let the individual know that two
20 bags is all that you're allowed.  You can try to get
21 these items -- other items in.  There's a good chance
22 you're not going to be able to get them in.
23    Q.   Would you offer transportation to shelter even
24 if an individual had more than two bags?
25    A.   So within reason.  So if they had two large

```
 1  people that ask for a house or an apartment.  So I
 2  think...
 3  BY ATTORNEY DO:
 4      Q.   This was -- this couple was not asking for a
 5  house or an apartment, correct?
 6      ATTORNEY MILLS:  Objection; lacks foundation,
 7  incomplete hypothetical, and vague as to time.
 8      THE WITNESS:  So when I read this, it's unclear that
 9  the couple specifically is asking for a couple's bed.
10           We do have couples that will accept individual
11  slots especially at Navigation.  It was a common
12  practice that HSH would work on initially accepting a
13  couple and then moving them to a couple's bed when it
14  became available.
15           The fact that it says would consider a couple's
16  bed tells me that they probably declined everything and
17  that they're saying that maybe if there was a couple's
18  bed, we would take it.  It's hard to know if they --
19  it's hard to know what actually happened here.
20           And I will state this was before I think I was
21  in place, because I wouldn't have written it this way.
22  This looks like something that my predecessor did.
23  BY ATTORNEY DO:
24      Q.   During your tenure at both ERT and HSOC,
25  San Francisco has never had sufficient shelter space for
```

1  the number of unhoused people in the city, correct?
2      ATTORNEY MILLS:  Objection; vague, ambiguous,
3  irrelevant, incomplete hypothetical.
4      THE WITNESS:  So I would say in my experience with
5  HSOC, both as the ERT supervisor and in my current
6  capacity as the manager, that the only times -- which
7  was a small number -- that the individuals we
8  encountered we didn't have adequate shelter spots for
9  them, we would suspend operations, or we would shift to
10 just leaving them in place and doing cleaning.  So...
11 BY ATTORNEY DO:
12     Q.  I appreciate the answer, but the question was:
13 It's your understanding that San Francisco has a
14 shortfall of shelter beds when compared to the number of
15 unhoused people, correct?
16     ATTORNEY MILLS:  Objection; vague, ambiguous, calls
17 for speculation, incomplete hypothetical.
18     THE WITNESS:  Assuming everyone on the street wants
19 shelter, which is not the case, I would say yes, there
20 is not -- the numbers don't match.
21 BY ATTORNEY DO:
22     Q.  San Francisco has a wait list for a shelter
23 currently, correct?
24     A.  Actually, I do not know because HSH changes
25 their process.  So I know in the family system, I

```
 1   believe there's a wait list.
 2              It's also a challenge on -- which has been a
 3   point of contention -- of how many unhoused folks and
 4   what condition they're in has also been a problem for
 5   years.
 6              So whether they're marginally sheltered but not
 7   permanently housed, on the street, those things are all
 8   points of contention.
 9              So, in my experience, there are many people
10   that it doesn't matter if I offered them a house;
11   they're not going to go inside, they're not going to
12   take it.
13       Q.   If you look under -- sorry.
14              Does San Francisco offer houses to unhoused
15   folks?
16       ATTORNEY MILLS:   Objection; vague and ambiguous.
17       THE WITNESS:   Not that I'm aware of.
18   BY ATTORNEY DO:
19       Q.   But going to the second page under "Bayview,"
20   it says:  "Iowa/22nd..."  It says:  "Re-Encampment
21   Prevention support need from Bayview Station."
22              Does this re-encampment prevention support mean
23   anything to you?
24       ATTORNEY MILLS:   Objection; vague and ambiguous.
25   And I'd note that the witness already testified that he
```

```
 1   STATE OF CALIFORNIA      )
 2                            ) ss.
 3   COUNTY OF SAN MATEO      )
 4           I hereby certify that the witness in the
 5   foregoing deposition, DAVID NAKANISHI, was by me duly
 6   sworn to testify to the truth, the whole truth and
 7   nothing but the truth, in the within-entitled cause;
 8   that said deposition was taken at the time and place
 9   herein named; and that the deposition is a true record
10   of the witness's testimony as reported by me, a duly
11   certified shorthand reporter and a disinterested person,
12   and was thereafter transcribed into typewriting by
13   computer.
14           I further certify that I am not interested in
15   the outcome of the said action, nor connected with nor
16   related to any of the parties in said action, nor to
17   their respective counsel.
18           IN WITNESS WHEREOF, I have hereunto set my
19   hand this 19th day of February, 2025.
20   Reading and Signing was:
21   ____ Requested    ____ Waived    __X__ Not requested
22
23                    [signature]
24
25           SUZANNE I. ANDRADE, CA CSR NO. 10682
```