# EXHIBIT 1

## SETTLEMENT AGREEMENT

### PREAMBLE

1.      This Settlement Agreement ("Agreement") is entered into by and among Coalition on Homelessness ("Coalition") ("Plaintiff"), on the one hand, and City and County of San Francisco ("City"), San Francisco Police Department ("SFPD"), San Francisco Department of Public Works ("DPW"), San Francisco Department of Homelessness and Supportive Housing ("HSH"), San Francisco Fire Department ("SFFD"), and San Francisco Department of Emergency Management ("DEM") (together, "Defendants" or the "City"), being all the parties in the action entitled *Coalition on Homelessness, et al. v. City and County of San Francisco, et al.,* Case No. 22-cv-05502-DMR (LJC), (the "Litigation"), which is currently pending in the United States District Court for the Northern District of California ("District Court"), and which is the subject of an appeal bearing case number 25-3005 ("Appeal") in the Ninth U.S. Circuit Court of Appeals ("Court of Appeals"). Contemporaneously with this Agreement, Plaintiffs Sarah Cronk and Joshua Donohoe will enter into separate Agreements with Defendants to release all claims against Defendants in exchange for certain consideration, as more fully set forth in those agreements, which are contingent on the final approval of this Agreement.

2.      The Agreement is subject only to Defendants obtaining any formal approvals of this Agreement as required by law. The date on which the Agreement has been (1) executed by Plaintiffs and (2) approved as to form by attorneys for all parties shall be referred to as the Initial Execution Date. The San Francisco City Attorney agrees to recommend approval of this Agreement to any persons or bodies whose approval is required, and to take all necessary steps to submit an ordinance approving this Agreement to the San Francisco Board of Supervisors ("Supervisors") no later than July 29, 2025.

1

3.     Immediately upon the Initial Execution Date, the Parties will jointly notify the District Court and the Court of Appeals that a settlement has been agreed to pending final approval by the City, will jointly request that the District Court set a Case Management Conference for a date no later than September 12, 2025 for the Parties to provide an update on the progress of obtaining final approval by the City, and will jointly request a stay of all proceedings in the Litigation and the Appeal.

4.     Upon final approval of this Agreement of Settlement, the Parties will dismiss with prejudice all pending claims in the District Court and withdraw all pending appeals in the Court of Appeals.

## I.     NATURE, FORM, DURATION, AND ENFORCEABILITY OF AGREEMENT

1.     This Agreement shall be entered as a Stipulated Judgment of the District Court, and enforceable by the District Court.

2.     The Parties agree to abide by the terms of this Agreement from and after the Initial Execution Date, until and unless the Agreement is rejected by the Supervisors or Mayor.

3.     The term of the Agreement shall be five years from the date the Agreement is signed by all Plaintiffs and approved as to form by counsel for the City ("Term"), and the Agreement shall be enforceable from and after that date, subject to formal approval of the Agreement as required by law.

4.     The Court shall retain jurisdiction to enforce the Stipulated Judgment pursuant to the procedures set forth in Section IX.

## II.     RELEASE

1.     The parties agree the following release will be effective upon execution of the Agreement: for good and valuable consideration, the sufficiency of which is hereby admitted and

acknowledged, Plaintiff Coalition, individually and on behalf of its administrators, assigns, and members (hereinafter referred to individually and collectively as "Releasor"), hereby agrees to fully and forever release and discharge the City and County of San Francisco, San Francisco Police Department, San Francisco Department of Public Works, San Francisco Department of Homelessness and Supportive Housing, San Francisco Fire Department, San Francisco Department of Emergency Management, together with its elective and/or appointive boards, agents, servants, employees, consultants, departments, commissioners, officials, and officers (hereinafter referred to individually and collectively as "San Francisco"), from any and all claims, actions, causes of action, liabilities, damages, demands, attorneys' fees, expenses and costs (including without limitation court costs) of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, which have existed or may have existed, or which do exist, or which hereafter shall or may exist, and which (1) are alleged or set forth or attempted to be set forth in the pleadings on file in the Litigation, or (2) arise out of or are in any way related to any of the transactions, occurrences, practices, policies, acts or omissions set forth or alleged in any of the pleadings in the Action (hereinafter referred to collectively as the "Claims").

2.      This release does not affect the right to bring claims that accrue after the Agreement is executed by the Parties.

3.      Releasor represents and warrants that it has not assigned or transferred, or agreed to assign or transfer, or attempted to assign or transfer, to any third party or entity (including without limitation any insurer) any interest in any of the Claims. Releasor agrees to defend, indemnify and hold harmless City against any loss, expense or liability, including without limitation reasonable attorneys' fees, arising from any breach of the foregoing.

3

4.   Releasor certifies that it has read Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasor hereby waives application of Section 1542 of the Civil Code. Releasor understands and acknowledges that, as a consequence of this waiver of Section 1542, even if Releasor should eventually suffer additional or further loss, damages or injury arising out of or in any way related to any of the events which gave rise to the Claims, or any of them, Releasor will not be permitted to make any further claims against Defendants to recover for such loss, damages or injury. Releasor acknowledges that it intends these consequences even as to claims for personal injury or property damage that may exist as of the date of this Agreement but which Releasor does not know exists, and which, if known, would materially affect Releasor's decision to execute this Agreement, regardless of whether Releasor's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

5.   Releasor acknowledges that, in executing this Agreement, it is acting on their own, independent judgment informed by its legal counsel. Releasor acknowledges having read this Agreement and having been advised by its attorneys as to its meaning and effect. Releasor acknowledges and warrants that its execution of this Agreement is free and voluntary.

### III.    MINIMUM STANDARDS RE PERSONAL PROPERTY OF UNHOUSED PERSONS

1.   DPW will adhere to its existing Bag and Tag Policy (REV 03) ("Policy") unless and until the Policy is revised, withdrawn, or otherwise amended.

2.      The City may revise, withdraw, or amend the Policy at any time, so long as any future policy and associated practices conform to the minimum standards set forth in **Attachment A** hereto ("Standards").

3.      The Standards will govern City's handling of personal property ("Property") encountered in the public right of way ("Operations") if the City revises, withdraws, or otherwise amends the Policy.  For the avoidance of doubt, Attachment A does not apply to vehicles or their contents.

4.      Attachment A is an integral part of this Agreement and is fully incorporated herein by this reference.

5.      At least thirty days prior to revising or rescinding the Policy, City shall provide written notice to Plaintiffs' attorneys setting forth the proposed revisions, so that Plaintiffs may comment on them.

6.      The City has no obligation to accept Plaintiffs' comments regarding any changes to the Policy.

7.      In the event Plaintiffs believe that such revisions materially breach the Standards, Plaintiffs may raise such alleged material breach with the Court as a Dispute under the procedures set forth in Section IX.

8.      The Standards set forth in this Agreement cannot be used in any other litigation for any purpose or to establish any fact.

9.      The parties make no representation in this Agreement as to the merits of any Parties' claim or defense.

10.     In the event of a change in controlling law that a Party believes affects the legality or necessity of any portion of the Standards, any Party may seek to amend the Standards

accordingly by informing the other Parties in writing of the change(s) requested. If the Parties are unable to agree, the dispute will be submitted to the Court under the procedures set forth in Section IX.

### IV.    CITY'S DOCUMENTATION OF OPERATIONS

1.      The City shall provide Plaintiffs with (1) 48 hours advance written notice of the date, time, and location of a Healthy Streets Operations Center ("HSOC") resolution; and (2) at least 24 hours advance written notice of the date, time, and location where DPW will convene with City workers from other departments to begin planning or conducting responses to 311 calls for service that are coded as "encampment" or "bag and tag".

2.       For the sake of clarity, the provision for 24 hours advance written notice is intended to give Plaintiffs notice of DPW morning "huddles" or equivalent multi-department meetings that may be convened on a routine basis with DPW employees who will engage with unhoused persons' Property.

3.      The City shall, each time DPW participates in an HSOC resolution or responds to a call for service coded as "encampment" or "bag and tag": (1) take a photograph of the scene before DPW begins its operation; (2) take photographs sufficient to show what property generally was discarded, if any, during the operation, (3) photograph all tents, mattresses and complete bicycles located at the site; (4) document the reason(s) for the disposal of items (for example, in a drop-down menu in CMMS); and (5) complete a CMMS service order (or similar electronic record) corresponding to the operation.

4.      Notwithstanding the above requirement, to the extent a DPW employee believes that under the circumstances photographing items in question would jeopardize their safety or the

safety of others, they will not be required to take a photograph, but instead would document the circumstance in CMMS (or similar electronic record).

5.      The failure to take a photograph required in this section in connection with a single HSOC resolution or service call response is not sufficient, standing alone, to invoke the dispute resolution procedures set forth in Part IX.

## V.      PRODUCTION OF RECORDS BY CITY

1.      On a quarterly basis, City shall provide to Plaintiffs' counsel, without awaiting a request, the following: (1) record(s) showing the dates and times of HSOC resolutions; (2) database entries and associated photographs for HSOC resolutions and service orders coded "Encampment" and "Bag and Tag"; (3) bag and tag logs and intake forms; and (4) bag and tag training materials and records of attendance (with the names of specific employees redacted) as set forth in Section VII.

## VI.      ACCESS TO DPW YARD

1.      The City agrees to allow Plaintiffs' counsel and their designee(s) access to the location where bagged and tagged items are stored (presently 2323 Caesar Chavez Street) once monthly, upon 24 hours' written notice to Defendants' counsel.

2.      The number of Plaintiffs' representatives is limited to two.

3.      The length of Plaintiffs' access is limited to 60 minutes and does not include the right to question any City employees.

## VII.      TRAINING

1.      At least annually, the City will train all DPW personnel who participate in the handling or disposition of Property concerning its policies and procedures related to the handling

of Property, including the Standards set forth in Attachment A to the extent the Policy is withdrawn, modified, or otherwise amended.

2.  The City will train all such DPW personnel who are newly hired within two weeks of their start date.

3.  The City will maintain all records of its training materials and attendance records for the term of the Agreement.

4.  The City will make its training materials available to Plaintiffs' counsel at the time of execution of this Agreement and thereafter whenever the materials are revised, and agrees to receive any suggestions that Plaintiffs' counsel may offer with respect to such materials. In addition, upon the approval of this Agreement, the City will provide a copy of this Agreement (including Attachment A) to the heads of the following departments: DEM, SFPD, SFFD, DPH, and HSH.

## VIII.  ATTORNEYS' FEES

1.  Defendants agree to pay Plaintiffs the following sum in attorneys' fees and costs ("Fees"): Two Million Eight Hundred Twenty-Eight Thousand Dollars ($2,828,000.)

2.  Defendants shall pay those Fees in the following manner:

Bank: JPMorgan Chase

Wire Routing: 021000021

Checking Account: 675507518

Account Name: American Civil Liberties Union

Foundation of Northern California Inc

3.      Except for payment of the above amount, Releasor understands and acknowledges that both Releasor and the City shall bear their own legal expenses and costs incurred in connection with prosecuting or defending against the Action and any of the Claims.

### IX.    DISPUTE RESOLUTION PROCEDURES

1.      The following dispute resolution procedures may only be invoked by the Parties.

2.      The Parties shall seek to resolve disputes concerning compliance with the Agreement ("Disputes") exclusively through the procedures set forth in this Section and agree to do so collaboratively to the maximum extent possible.

3.      In the case of individual instances of alleged unlawful destruction of Property ("Alleged Taking"), a minimum of ten unresolved Alleged Takings occurring within a ninety-day period is required to constitute a Dispute.

4.      Any Plaintiff may raise a Dispute on behalf of and with the active participation of a San Francisco resident who has been the subject of an Alleged Taking, regardless of whether the person who is aggrieved is a member of the Coalition on Homelessness.

5.      Active participation requires a sworn statement or declaration by the San Francisco resident under penalty of perjury setting forth details concerning the Alleged Taking, and an appearance by the resident upon request by the Magistrate Judge to discuss the Alleged Taking.

6.      To initiate a Dispute concerning the alleged destruction of property, the ten Alleged Takings must be supported by the sworn statements or declarations of at least seven San Francisco residents.   The remaining three Alleged Takings may be supported by sworn statement or declaration of an individual observer.

7.      With respect to each Alleged Taking, Plaintiffs' counsel shall provide the pertinent details of the Alleged Taking, including the name of the person allegedly aggrieved; the date, time,

and location where the alleged property destruction occurred; and a list of all property that the person alleges was destroyed.

8.      To the extent Plaintiffs or their counsel possess any records or declaration establishing or tending to show that the individual actually owned or possessed the items at issue, this information shall also be provided to the City.

9.      Plaintiffs' counsel shall provide this required information to the City within 10 business days of the Alleged Taking.

10.      To the extent Plaintiffs' counsel possess a sworn statement or declaration concerning an Alleged Taking, they must provide it to the City within the earlier of 5 business days of learning of the Alleged Taking or 3 business days of the statement's or declaration's execution.

11.      The City shall investigate and provide Plaintiffs with the applicable CMMS documentation ("City's Initial Response") within 5 business days from the date when it receives from Plaintiffs' counsel either information concerning an Alleged Taking or sworn statement or declaration concerning an Alleged Taking.

12.      If Plaintiffs request additional information ("Plaintiffs' Additional Request"), such as body worn camera footage, the City shall have up to 15 business days after the request to provide the additional information ("City's Additional Response"), which may be provided as "Confidential" or "Highly Confidential - Attorneys' Eyes Only" under the Stipulated Protective Order For Litigation Involving Highly Sensitive Confidential Information (ECF No. 127) if the video meets the requirements for the designation in Section 2 of the Order.

13.      Within 10 business days of the City's Initial Response or Additional Response, if Plaintiffs make an Additional Request, Plaintiffs shall respond as to whether they believe the information provided in response to the Alleged Taking is satisfactory.

14.    With respect to all Disputes (including a Dispute based on ten or more Alleged Takings), the Party raising the Dispute shall promptly provide the other Parties with a written Notice of Dispute including all pertinent facts and any action it wishes the other Party to take to resolve the Dispute.

15.    The other Parties shall respond in writing within 10 business days.

16.    The Party that initiated the Dispute shall reply within 10 business days of receipt of the response as to whether it believes the response is satisfactory.

17.    In the event a Dispute is not resolved by these procedures, the Party initiating the Dispute may ask the Magistrate Judge assigned to the case to convene a meet and confer.

18.    Any facts submitted to the Magistrate Judge, whether by the Party presenting the Dispute or the Party responding to the Dispute, shall be supported by a declaration submitted under penalty of perjury.

19.    If, within 30 calendar days of such request, the Dispute remains unresolved, the Party may file a motion with the District Court for such relief as it may deem appropriate to resolve the dispute.

20.    Any deadline set forth in this dispute resolution procedure may be modified by stipulation of counsel for the City and Plaintiffs.

X.    **ADDITIONAL TERMS**

1.    The Parties intend this Agreement to be a final and complete resolution of all disputes between and among the Parties with respect to the Litigation.

2.    This Agreement compromises claims that are contested and it shall not be deemed an admission by any Party as to the merits of any claim or defense.

3.    This Agreement was negotiated in good faith by the Parties and reflects a

settlement that was reached voluntarily after consultation with competent legal counsel.  The Parties agree that this Agreement is a fair, adequate and reasonable resolution of all claims and defenses set forth in the Litigation.

4.      This Agreement constitutes the full and entire agreement among the Parties with regard to the subject thereof and supersedes any prior promises, representations, or warranties (oral or otherwise) made by any Party. No Party shall be liable or bound to any other Party for any prior or contemporaneous representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Agreement.

5.      This Settlement Agreement shall not be amended or modified orally. It may only be amended or modified by a writing signed by the Parties or their authorized representatives.

6.      In connection with any Dispute arising under this Agreement, counsel for the Parties shall direct all communications and information ("Communications") to each other as follows:

To Plaintiffs:

John Thomas H. Do (jdo@aclunc.org)
William S. Freeman (wfreeman@aclunc.org)
ACLU Foundation of Northern California
39 Drumm St.
San Francisco, CA 94111

Nisha Kashyap (nkashyap@lccrsf.org)
Lawyers' Committee for Civil Rights of the San Francisco Bay Area
131 Steuart Street, Suite 400
San Francisco, CA 94105

To Defendants:

John George (john.george@sfcityatty.org)
Kaitlyn Murphy (kaitlyn.murphy@sfcityatty.org)
Deputy City Attorneys
San Francisco City Attorney's Office
1390 Market Street, 7th Fl.
San Francisco, CA 94102

7.      Email transmission is required for all Communications and may be supplemented by U.S. Mail. Email transmission shall be considered sufficient for purposes of all Communications U.S. Mail alone shall not be considered sufficient.

8.      In the event of any change to identity(ies) of the person(s) designated by any Party to receive Communications, that Party shall promptly notify the other Parties of such change.

9.      Nothing contained in this Agreement, and no action taken by any Party hereto with regard to this Agreement, shall be construed as an admission by any Party of liability or of any fact that might give rise to liability for any purpose whatsoever.

10.     The headings herein are for convenience only and shall not affect the interpretation or construction of this Agreement.

11.     Each Counsel executing the Settlement Agreement or any of its exhibits on behalf of any Party hereby warrants that he or she is fully authorized to enter into, and to execute, this Agreement, subject to the approvals identified in Paragraph 2 of the Preamble.

12.     The Parties acknowledge that it is their intent to consummate this Agreement; they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement; and they agree to undertake their best efforts, including all steps and efforts that may become necessary, to accomplish the terms and conditions of this Agreement.

13.     This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Parties shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of California, without giving effect to that State's choice of law principles.

14.     For the purpose of construing or interpreting this Agreement, the Agreement is deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

15.     This Agreement may be executed in one or more counterparts. All executed counterparts, and each of them, shall be deemed to be one and the same instrument.

16.     If any provision of this Settlement Agreement is held to be invalid, its invalidity shall not affect any other provision or application of this Settlement Agreement to the extent that such other provision or application can be given effect without the invalid provision or application, and to this end, the provisions of this Settlement Agreement are declared and understood to be severable.

IN WITNESS WHEREOF, the Parties affix their signatures hereunder.

APPROVED AS TO FORM:

Date:

_____
VASUDHA TALLA
Emery Celli Brinckerhoff Abady Ward &
Maazel LLP
WILLIAM S. FREEMAN
American Civil Liberties Union Foundation
Of Northern California

Counsel for Plaintiff

Date:

_____
JOHN H. GEORGE
Deputy City Attorney
Counsel for Defendants

BY THE PARTIES:


Date:

_____
                        JENNIFER FRIEDENBACH
                        Executive Director
                        Coalition on Homelessness


**[Attachment A follows on next page]**

15

15.     This Agreement may be executed in one or more counterparts. All executed counterparts, and each of them, shall be deemed to be one and the same instrument.

16.     If any provision of this Settlement Agreement is held to be invalid, its invalidity shall not affect any other provision or application of this Settlement Agreement to the extent that such other provision or application can be given effect without the invalid provision or application, and to this end, the provisions of this Settlement Agreement are declared and understood to be severable.


IN WITNESS WHEREOF, the Parties affix their signatures hereunder.



APPROVED AS TO FORM:


Date: July 16, 2025

:    _____
VASUDHA TALLA
Emery Celli Brinckerhoff Abady Ward &
Maazel LLP
WILLIAM S. FREEMAN
American Civil Liberties Union Foundation
Of Northern California

Counsel for Plaintiff


Date: July 17, 2025

_____
JOHN H. GEORGE
Deputy City Attorney
Counsel for Defendants


14

BY THE PARTIES:

Date: July 17, 2025

_____
JENNIFER FRIEDENBACH
Executive Director
Coalition on Homelessness

[Attachment A follows on next page]

**Attachment A to Settlement Agreement**

**Minimum Standards re Property**

1. <u>Advance Notice</u>
   - The City will provide 48 hours advance written notice for an HSOC resolution.
   - When responding to all non-HSOC calls for service, the City agrees:
     - In the case of attended property, to provide oral notice no less than 1 hour before removing the property, that the property will be subject to the procedures described below, except where property is seized as evidence of a crime or in connection with an arrest. At the time of giving such oral notice, the City will also provide written notice confirming the substance of the oral notice.
     - In the case of unattended property, as that term is defined below, to leave written notice on or as close as reasonably practicable to the unattended property. Beginning 4 hours from the time notice is provided, property within 25 feet of the written notice will be subject to the procedures described below.
     - Regardless of its status as unattended, property will be immediately subject to the procedures described below if a City employee reasonable determines the property:
       - Does not leave a 48-inch path of travel on a sidewalk or other walkway;
       - Is physically located on a street or other roadway; or
       - Presents an immediate health or safety risk.
   - The City agrees to publicly post 311 data showing areas with the highest number of illegal lodging complaints.

2. <u>Distinguishing Abandoned, Unattended, and Attended Property</u>
   - Property is abandoned where a DPW employee reasonably determines it is not accompanied by objectively reasonable signs of ownership based on the totality of the circumstances, or where a property owner has affirmatively stated they do not want the property.
     - DPW agrees to include in its training on any bag and tag policy that examples of abandoned property include a broken tent sitting by itself on a sidewalk with no other belongings, a bag of clothes open and strewn across a sidewalk, or items that are broken, disheveled, or show other signs of neglect.
   - Items that are not abandoned are either unattended or attended property.

16

- o Property is attended where an employee reasonably determines the property owner or someone who has been designated by the owner is present at any point during the Operation.
- o Property is unattended where no owner or designee is present but the employee reasonably determines the property is not abandoned because it is accompanied by objectively reasonable signs of ownership based on the totality of the circumstances. An employee must take into account all facts and circumstances when they determine whether property is unattended.
- o DPW agrees to include in its training that factors to consider include whether the tent contains personal belongings or items that are being stored in an orderly manner (i.e., packed up, wrapped or covered).

3. <u>How to Treat Property</u>
- o Following the applicable notice periods provided for in Section 1, DPW shall treat property according to the below provisions.
- o Abandoned Property
  - ▪ DPW can immediately discard (and does not need to bag and tag) items it reasonably determines are abandoned property.
- o Unattended Property
  - ▪ DPW shall bag and tag items that are unattended property, or leave the property where it is located. DPW personnel shall be trained to take extra precautions concerning property that may be medications, medical equipment, legal or identification documents, and items likely to have sentimental value such as photos or urns.
  - ▪ DPW can immediately discard (and does not need to bag and tag) unattended property whenever it reasonably concludes based on the totality of the circumstances, the items:
    - (1) present an immediate health or safety risk,
    - (2) are perishable,
    - (3) are contraband or illegal, or
    - (4) are trash, garbage, or debris.
  - ▪ If property is co-mingled or littered with needles, human waste, or other health or safety risks, staff may dispose of the entire pile of property and are not required to sort through and attempt to remove the health or safety risks.
    - o DPW agrees to offer as training/guidance (but not a decisive factor) that employees may consider whether items are physically touching as evidence of whether or not they are comingled.

17

- o Attended Property
    - ▪ With respect to attended property, following the expiration of the above notice period, DPW will assess whether the remaining property is abandoned or should be bagged and tagged or discarded pursuant to the disposal criteria pertaining to unattended property set forth above.
    - ▪ DPW reserves the right to discard an item a person wants to keep if DPW reasonably concludes based on the totality of the circumstances that the item (1) presents an immediate health or safety risk; or (2) is trash, garbage, or debris and the person has not removed the item by the allotted time.

4. <u>Storage of Bagged and Tagged Property</u>
    - o DPW will store bulky items it bags and tags for no fewer than 14 days.
    - o DPW will store non-bulky items it bags and tags for no fewer than 60 days.

5. <u>Notice of Property That Is Bagged and Tagged</u>
    - o DPW will provide individuals whose property is bagged and tagged written notice stating: (1) that their items were bagged and tagged, (2) how long the items will be stored, and (3) the location where the items can be retrieved. If the property owner is not present, the employee shall post the notice where the property was taken when practical to do so, and where it is not, shall post the notice as close as practicable. All notices posted or provided to individuals must contain the service order number for the "bag and tag" that DPW creates for the bagged and tagged item.

6. <u>Retrieval Of Bagged and Tagged Items</u>
    - o The City will maintain a process for tracking and storing bagged and tagged items.
    - o The City will maintain a process for individuals to retrieve their bagged and tagged items.
    - o These processes shall include (a) a method for tracking the location where property was bagged and tagged and a general description of the bagged and tagged property; (b) a storage facility that takes reasonable steps to protect the bagged and tagged items from destruction or theft; (c) a process by which individuals may contact DPW to determine whether their property has been bagged and tagged; and (d) a process by which employees search for property at the storage location both by using the CMMS system and by searching the Special Projects Excel Spreadsheet if the use of the CMMS system does not result in locating the property.

- o Where staffing levels allow, the City is willing to permit the opportunity for individuals to call with requests about bagged and tagged items during certain business hours provided the individual is able to provide the City with their name; the date the property was bagged and tagged; the location where the property was taken including a street address or cross streets; and a description of the items. During those hours the City would agree to check the CMMS database for any such records.

7. <u>Training</u>
   - o The City will train all DPW employees who are responsible for carrying out the bag and tag policy on the policy. The City agrees its training will comply with the terms of Section VI of the MOU.
   - o Any City worker who will make determinations on what constitutes "immediate health or safety risks" as part of the bag and tag policy shall receive training on how to identify such items.
   - o DPW agrees to keep the effective version of the Bag & Tag policy on its website for the duration of the settlement.
   - o DPW agrees to film a bag and tag training and make it available to all City employees.