DOCUMENT SEALED PURSUANT TO ECF NO. 509

DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
EDMUND T. WANG, State Bar #278755
KAITLYN M. MURPHY, State Bar #293309
MIGUEL A. GRADILLA, State Bar #304125
JOHN H. GEORGE, State Bar #292332
STEVEN A. MILLS, State Bar #328016
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:      (415) 554-3857 (Wang)
                (415) 554-6762 (Murphy)
                (415) 554-3870 (Gradilla)
                (415) 554-4223 (George)
                (415) 355-3304 (Mills)
Facsimile:      (415) 554-4699
E-mail:         edmund.wang@sfcityatty.org
                kaitlyn.murphy@sfcityatty.org
                miguel.gradilla@sfcityatty.org
                john.george@sfcityatty.org
                steven.mills@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 4:22-cv-05502-DMR (LJC)<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Hearing Date:    February 27, 2025<br>Time:            1:00 p.m.<br>Place:           Courtroom 4 – 3rd floor<br>                 1301 Clay Street<br>                 Oakland, CA 94612<br><br>Trial Date:      July 28, 2025 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT ........................................................................................ 1

    A.      The Court Authorized The City's Pending Motion. .................................. 1

    B.      Coalition Lacks Standing Under Traditional Rules. .................................. 1

        1.      Organizational Standing Does Not Change The Result. ................ 2

            a.      *Hippocratic Medicine* Limits Coalition's Standing. ............ 2

            b.      Causation Is Too Speculative And Attenuated. .................. 7

            c.      Coalition's Core Activities Are Not Redressable. ............... 8

            d.      Coalition Does Not Demonstrate Actual and Imminent Injuries Through Its Deficient Evidentiary Showing. .......... 9

    C.      Resolving The Motion To Dismiss Is Appropriate. .................................... 14

    D.      Coalition Conceded That It Does Not State A Claim. .............................. 15

III.    CONCLUSION ..................................................................................... 15

1

## TABLE OF AUTHORITIES

**Federal Cases**

*American Title Ins. Co. v. Lacelaw Corp.*
   861 F.2d 224 (9th Cir. 1988) ....................................................................3

*Ariz. All. for Retired Ams. v. Mayes*
   117 F.4th 1165 (9th Cir. 2024) ..................................................... *passim*

*Barnum Timber Co. v. United States EPA*
   633 F.3d 894 (9th Cir. 2011) ....................................................................8

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ..................................................................................5

*Bowen v. Energizer Holdings, Inc.*
   118 F.4th 1134 (9th Cir. 2024) ..............................................................14

*Bruce v. United States*
   759 F.2d 755 (1985) ................................................................................14

*City of Grants Pass v. Johnson*
   603 U.S. 520 (2024) ..................................................................................9

*Clapper v. Amnesty Int'l USA*
   568 U. S. 398 (2013).................................................................2, 7, 9, 12, 15

*Ellenberger v. Alphabet Inc.*
   Case No. 4:20-cv-04877 SBA, 2021 WL 4808590 (N.D. Cal. July 19, 2021).........................15

*Food & Drug Admin v. All. for Hippocratic Med.*
   602 U.S. 367 (2024).................................................................3, 5, 7, 8, 10

*Freedom Foundation v. Int'l Bhd of Teamerstesr Local 117*
   No. 23-3946, 2024 WL 5252228 (9th Cir. Dec. 31, 2024).........................................6

*Get Loud Arkansas v. Thurston*
   Case No. 5:24-CV-5121, 2024 WL 4142754 (W.D. Ark. Sept. 9, 2024)...................................6

*Gonzalez v. Gorsuch*
   688 F.2d 1263 (9th Cir. 1982) ................................................................8

*Havens Realty Corp. v. Coleman*
   455 U.S. 363 (1982).................................................................3, 4, 5, 10

*Jones v. L.A. Cent. Plaza LLC*
   74 F.4th 1053 (9th Cir. 2023) ................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994)..................................................................................4

*La Union Del Pueblo Entero v. Abbott*
Case No. 5:21–CV–0844–XR, 2024 WL 4488082 (W.D. Tex. Oct. 11, 2024) ........................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................7, 8, 11

*March for Our Lives Idaho v. McGrane*
Case No. 1:23-cv-00107-AKB, 2024 WL 4226912 (D. Idaho Sept. 17, 2024) ........................5

*Ocean Advocates v. U.S. Army Corps of Engr's*
402 F.3d 846 (9th Cir. 2005) ...............................................................................................8

*Rios v. Cnty. of Sacramento*
562 F. Supp. 3d. 999 (E.D. Cal. 2021) ..............................................................................15

*Rosales v. United States*
824 F.2d 799 (9th Cir. 1987) .............................................................................................14

*S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Justice*
Case No. 0:22-cv-1338-JDA-PJG, 2024 WL 5153170 (D.S.C. Dec. 18, 2024) ...............6, 9, 15

*Skaff v. Meridien N. Am. Beverly Hills LLC*
506 F.3d 832 (9th Cir. 2007) .............................................................................................11

*Steel Co. v. Citizens for a Better Env't*
523 U.S. 83 (1998) ............................................................................................................15

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .........................................................................................................1, 4

*United States v. Texas*
599 U.S. 670 (2023) ...........................................................................................2, 4, 9, 15

*Warth v. Seldin*
422 U.S. 490 (1975) .............................................................................................................2

*WildEarth Guardians v. U.S. Dep't of Agric.*
795 F.3d 1148 (9th Cir. 2015) ............................................................................................8

*Yesue v. City of Sebastopol*
No. 22-cv-06474-KAW, 2024 WL 4876953 (N.D. Cal. Nov. 22, 2024) ...............................5

**Constitutional Provisions**
U.S. Const.
Article III ....................................................................................................1, 4, 8, 14
Amend. I ..........................................................................................................................6

**Federal Statutes**
42 U.S.C.
§ 1983 ...................................................................................................................6, 9, 15
§§ 3601, et seq. [Fair Housing Act of 1968] ...............................................................3, 4

**Rules**

9th Cir. L.R.
Rule 36-3(a) .................................................................................................................6

Fed. R. Evid.
Rule 401 ....................................................................................................................11
Rule 403 ....................................................................................................................12
Rule 701 ....................................................................................................................10
Rule 704 ....................................................................................................................10
Rule 802 ....................................................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Traditional restrictions on Article III standing show that Coalition does not have standing where its own property rights are not at issue. Coalition admits that its property has not been destroyed so the Court does not have jurisdiction for claims brought in its own right. Coalition's effort to manufacture standing through indirect harm to five sprawling "core" activities that are contingent upon speculative and attenuated harms to third parties does not change the result. Those injuries are traditionally not redressable in federal court. The Supreme Court's admonition that organizational standing is unusual dictates that it must not be extended outside of its statutory context. Even if Coalition has identified some harm that establishes its standing, it ignored the City's argument that it failed to state a claim. The failure to address the argument concedes the futility of Coalition's organizational injuries in its own right. They must be dismissed once and for all.

## II.    ARGUMENT

### A.    The Court Authorized The City's Pending Motion.

Coalition's argument that the City's motion is improper ignores that the Court authorized it. ECF No. 298. Moreover, Coalition's contention that the Court already found Coalition has associational standing misses the mark. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted). Coalition's claim on behalf of its members is distinct from Coalition's claim that it has been injured in its own right. Coalition offers no authority that individual member standing justifies organizational standing. Additionally, Coalition's claim that the City improperly raises associational standing is wrong. The City's prior motion argued that the new organizational standing allegations and new evidence undermined Coalition's associational standing. ECF Nos. 295; 297. The Court declined to address those. ECF No. 298. To the extent Coalition argues associational standing here, the City's denied motion should be revived.

### B.    Coalition Lacks Standing Under Traditional Rules.

The opposition fails to show that Coalition has standing under traditional rules. Coalition does not deny that the "standing analysis is the same for organizations as it is for individuals," *Ariz. All. for*

*Retired Ams. v. Mayes*, 117 F.4th 1165, 1173, n.2 (9th Cir. 2024) ("*Arizona Alliance*"), and "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Coalition's standing requires an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U. S. 398, 409 (2013) (cleaned up). For injunctive relief, Coalition's "threatened injury must be *certainly* impending to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Id.* at 409 (cleaned up) (emphasis added & in original). The "alleged injury must be legally and judicially cognizable" which "requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally redressable in federal court." *United States v. Texas*, 599 U.S. 670, 676 (2023) (cleaned up).

Coalition's standing for systemic injunctive relief for the property-based claims is far removed from historical practice to justify standing. There are traditional standards that govern standing for the unlawful seizure and due process claims at issue here. ECF No. 300-4 at 6-8. Those standards require deprivations of property interests with the requisite immediacy and dictate that Coalition cannot base its own standing on injuries to third parties. *Id.* The opposition effectively concedes that Coalition cannot satisfy the standards by failing to address them altogether. Indeed, Coalition disregards that the TAC does not allege that Coalition has been deprived of any property as well as its own admission that its property has not been destroyed. ECF No. 301-3. Nor does Coalition dispute that the TAC alleges no future deprivation of Coalition's property. Under the traditional rules applicable to property claims, Coalition lacks standing.

### 1. Organizational Standing Does Not Change The Result.

#### a. *Hippocratic Medicine* Limits Coalition's Standing.

Because Coalition has not had its property destroyed, the TAC turns to a diversion-of-resources theory and injuries to Coalition's pre-existing activities. Both are legally and factually deficient. Notably, Coalition's opposition now disclaims *any* reliance on diversion despite Coalition's express allegations and prior declaration to the contrary. *See* TAC ¶¶ 168-178; ECF No. 9-3 at 3-10, ¶¶ 11-22. Despite the Court's prior order finding that Coalition's diversion allegations were insufficient

(ECF No. 281 at 18-19), Coalition doubled-down in the TAC even though it removed other dismissed theories. TAC ¶¶ 168-178. The failure to remove them is significant: "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). "Coalition's pleading that it *intentionally* diverted its own resources to combat the City's alleged practice undermines the plausibility of any claim to standing because the face of the TAC admits that Coalition caused shifts in its own missions and activities" to react to policies it disagreed with as part of its public advocacy. ECF No. 300-4 at 11-12. Coalition also does not deny the evidence showing that it was looking for ways to support impact litigation and the inference that it diverted in furtherance of that. *Id*. Organizations cannot manufacture standing in this way because that authorizes "organizations in America [to] have standing to challenge almost every [] policy that they dislike." *Food & Drug Admin v. All. for Hippocratic Med.,* 602 U.S. 367, 395 (2024) ("*Hippocratic Medicine*").

Coalition's late attempt to establish direct injuries to its preexisting activities also fails as a matter of law for the property-based claims at issue here. Coalition concedes that *Havens* is "an *unusual* case" and that it carefully has not been extended "beyond its context." *Hippocratic Med*., 602 U.S. at 395 (emphasis added); *Ariz. All.*, 117 F.4th at 1176 (holding "we must comply with the Supreme Court's admonition that *Havens Realty* is an 'unusual case' that should not be expanded beyond its unique context"). The opposition admits that *Havens* concerned "racial steering practices in violation of the Fair Housing Act." ECF No. 304 at 4:6. Given the Supreme Court's admonition that *Havens* was unusual, that context matters. The claim was for statutory damages under the FHA—not the systemic injunctive relief Coalition seeks here on constitutional claims tied to hypothetical third parties. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377 (1982). Notably, the FHA conferred "on all 'persons' a legal right to truthful information about available housing"—meaning the organization had a redressable cognizable injury. *Id*. at 373. Thus, when the organization's *employees* were provided false information about apartment availability, the defendant *directly* affected and interfered

with the organization's ability to provide counseling services. Coalition points to no applicable right here and has no direct injury.[1]

Rather than offer any analytical reasoning to expand *Havens* to justify standing for systemic injunctive relief based on five sprawling core activities that *may* be indirectly harmed through the rights of third parties, Coalition argues that "[n]o case has limited *Havens* in such a way." ECF No. 304 at 6. Coalition misunderstands its burden. "Federal courts are courts of limited jurisdiction" and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377-78 (1994) (citations omitted). Coalition has "the burden of establishing the contrary." *Id.* at 378. The fact that Coalition points to no historical precedent to justify standing for systemic injunctive relief for the constitutional claims at issue is a "'telling indication of the severe constitutional problem' with [Coalition's] assertion of standing to bring this lawsuit." *Texas*, 599 U.S. at 677 (citations omitted).

Even if some direct injury to a pre-existing core activity is sufficient outside *Haven*'s unusual statutory context, the TAC fails to satisfy that novel test. Coalition fails to overcome that three of its five core activities—"public education," "advocat[ing] and lobby[ing]," and "advocacy training" to engage in "advocacy" (TAC ¶ 24(c)-(e))—are functions that *Arizona Alliance* rejected as "core activities" as a matter of law. *Ariz. All.*, 117 F.4th at 1177 (finding "'public advocacy' and 'public education' functions" are not core activities that can support standing). While Coalition's opposition attempts to explain how its advocacy, public education, lobbying, coalition building, outreach, and training were impaired by the displacement of homeless people and destruction of their property, *Arizona Alliance* is unequivocal that the Coalition must show that a "challenged governmental action *directly* injures the organization's pre-existing core activities." *Id.* at 1170 (emphasis added). With or without the City's alleged property destruction, Coalition can still engage in those activities. The

---

[1] Coalition argues that it is not required to allege an informational injury. ECF No. 304 at 21. But this misses the point. The informational injury in *Havens* that was akin to a retailer who sues a manufacture for selling defective goods to the retailer was the necessary common law analog to the statutory (FHA) injury that permitted Congress to create a statutory injury for an FHA violation without running afoul of Article III. *See TransUnion*, 594 U.S. at 424, 427. Coalition does not and cannot identify any historical common law analog for the alleged core activity injuries it claims to have suffered here.

1  undisputed evidence shows it continued to do all of those activities in tandem with its intentional

2  diversion of resources to monitor and challenge the City's practices. ECF No. 300-4 at 12-13.

3         As to Coalition's remaining core activities, the City explained that Coalition failed to "plead

4  *facts* showing that [Coalition's] core activities are *directly* affected by the City's conduct" with the

5  requisite immediacy. *Ariz. All.*, 117 F.4th at 1172 (emphasis added). "Factual allegations must be

6  enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

7  555 (2007); *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n.1 (9th Cir. 2023) (applying

8  plausibility to standing). Instead, Coalition relied upon conclusory allegations. For instance, Coalition

9  failed to identify any instance of a homeless person not getting services due to property destruction,

10 any homeless person not engaging with the Coalition due to property destruction even though that

11 person wanted to, any instance of Homeless Verification being discarded or Coordinated Entry

12 application delayed, or a single basic necessity provided by Coalition being prematurely depleted.

13 Appreciating that the allegations in the TAC are entirely conclusory, Coalition's opposition does not

14 rely upon a single one. Instead, it tries to bootstrap in its allegations through the conclusory

15 Friedenbach Declaration, which provides no more support for standing than the insufficient TAC

16 allegations. But the Court does not need to reach the facts because Coalition's pleading fails. For the

17 reasons discussed *infra* § II.B.d, Coalition's sprawling theory also fails on the facts.

18        The novel precedent Coalition relies on is inapposite for myriad reasons. First, Coalition relies

19 on non-binding district court cases within this circuit that depend on the now-overruled diversion of

20 resources theory. For instance, *March for Our Lives Idaho v. McGrane*, Case No. 1:23-cv-00107-

21 AKB, 2024 WL 4226912, at *6 (D. Idaho Sept. 17, 2024) held that "the Ninth Circuit precedent

22 interpreting *Havens Realty* before [*Hippocratic Medicine*] remains binding on this Court." But *Arizona*

23 *Alliance* overruled that precedent three days later. Similar reasoning plagues *Yesue v. City of*

24 *Sebastopol*, No. 22-cv-06474-KAW, 2024 WL 4876953 (N.D. Cal. Nov. 22, 2024). It focuses

25 extensively on the frustration of the organization's mission and drain on its resources with no mention

26 of *Hippocratic Medicine*, *Arizona Alliance*, core activities, or directness. *See id.* at *4. Nor does it

27 address any of the dispositive legal issues raised by the City in this motion.

28

Second, the out-of-circuit authority is not based on the controlling standards in this circuit. They also underscore why Coalition's attenuated and speculative claims based on *indirect* harm fail. *Get Loud Arkansas v. Thurston*, Case No. 5:24-CV-5121, 2024 WL 4142754 (W.D. Ark. Sept. 9, 2024) and *La Union Del Pueblo Entero v. Abbott*, Case No. 5:21–CV–0844–XR, 2024 WL 4488082 (W.D. Tex. Oct. 11, 2024) concern injuries far more direct and less sprawling than those alleged here. Both are voting cases where state laws directly regulated the businesses by making their particular voter activities unlawful under state law. As explained *infra* § II.B.b, direct regulation is more likely to satisfy the standing requirements compared to the indirect regulation through third parties. *S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Justice*, Case No. 0:22-cv-1338-JDA-PJG, 2024 WL 5153170, at *6 (D.S.C. Dec. 18, 2024) relies upon diversion that has been overruled. Notably, while the court found organizational standing, it dismissed the Section 1983 claim because the organizations did not allege that they were deprived of their own constitutional or statutory rights and instead premised their injuries on rights of third parties. *Id.* at *11. That supports the City's argument here that the property injuries must be particular to Coalition, and be recognized as cognizable property injuries, in order to establish standing and plead a Section 1983 claim in its own right.

Third, an unpublished, non-precedential Ninth Circuit decision does not control on whether the core activities test applies to Coalition's claim for injunctive relief tethered to sprawling and indirect injuries to core activities. *See* Ninth Circuit Rule 36-3(a). Coalition cites to *Freedom Foundation v. Int'l Bhd of Teamerstesr Local 117*, No. 23-3946, 2024 WL 5252228, at *1-2 (9th Cir. Dec. 31, 2024) to suggest that organizational standing exists for constitutional claims for injunctive relief. *Freedom Foundation* involved a First Amendment challenge to unions' rejection of forms supplied by the plaintiff organization to help employees revoke union dues. The divided panel found that the organization had standing against the unions under the core activities test for damages and injunctive relief because the unions rejected forms mailed by the organization. It nevertheless found that the organization failed to state a claim. The organization's direct injury to its own speech is far removed from the circumstances here, where Coalition claimed injuries to multiple core activities that are indirect and contingent upon the conduct of third parties not before the Court.

### b.    Causation Is Too Speculative And Attenuated.

Even if some direct injury to a preexisting core activity can be a predicate for Coalition's standing, causation is lacking. Coalition "must show a sufficiently close and predictable link between the challenged action and [Coalition's] injury-in-fact." *Ariz. All.*, 117 F.4th at 1173. Causation "must not be too speculative or too attenuated." *Hippocratic Med.*, 602 U.S. at 383. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *Id.* at 382. "By contrast, when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone else,' standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* "When the plaintiff is an unregulated party, causation 'ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well.'" *Id.*  Courts cannot "rely on speculation about unfettered choices made by independent actors not before the courts," *Clapper*, 568 U.S. at 414 n.5, whose "legitimate discretion the courts cannot presume either to control or to predict." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).

Coalition is an unregulated party. The TAC does not allege that Coalition's property is being discarded and the opposition confirms that the alleged direct harm is to "unhoused people" whose property is allegedly unlawfully destroyed. Since the City's alleged practice is regulating third parties, standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562. Coalition's claims that it *may* obtain more members and *may* provide more services depends on third parties desiring to engage. ECF No. 300-4 at 10-11. It also relies upon the speculative assumption that homeless individuals will violate valid anti-camping laws and keep their property on the street such that it is not properly discardable. Neither the TAC nor Coalition's evidence identify a single instance where a member was lost or where a service was not provided due to the alleged unlawful destruction. Nor has Coalition alleged or offered any persuasive evidence that this will imminently occur. "The chain of causation is simply too attenuated" and Coalition "may not rely on "distant (even if predictable) ripple effects." *Hippocratic Med.*, 602 U.S. at 383, 391; *Ariz. All.*, 117 F.4th at 1177 ("harm must directly and actually affect the organization's 'core' activities"). Coalition also does not contest any of the evidence that the

City submitted showing Coalition's own strategic choices, litigation, and lack of formal membership hindered its organizational success. ECF No. 300-4 at 13-14.

Rather than address that its injuries are based upon the conduct of independent actors, Coalition claims that the existence of multiple causes does not defeat standing. Its authority based on *direct* injuries to the plaintiff outside of the organizational framework is inapposite.[2] Coalition's failure to address that its injuries turn on harms to third parties not before the Court is a material failure. Having failed to do so, Coalition does not meet its standing burden.

**c.    Coalition's Core Activities Are Not Redressable.**

Coalition's opposition erroneously suggests that causation and redressability always merge. "There is a close relation between the requirement of power to redress a claimed injury and the requirement of a causal link between the injury asserted and the relief claimed. . . . The two requirements, however, do diverge." *Gonzalez v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (citation omitted). "Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury." *Id.* "[A] plaintiff who suffers injuries caused by the government still may not be able to sue because the case may not be of the kind 'traditionally redressable in federal court.'" *Hippocratic Med.*, 602 U.S. at 381, n.1 (citations omitted). For an injury to be redressable, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (cleaned up).

There is no historical precedent showing that the purported injuries to preexisting core activities are typically redressable through the constitutional claims at issue. Coalition does not offer a single controlling authority on point for these property-based claims. That is because the property rights at issue are personal rights that are historically incapable of being vicariously asserted consistent with Article III. ECF No. 300-4 at 7-8. Coalition's own authority shows these organizational injuries

---

[2] *See, e.g.*, *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (recognizing "requirements for causation and redressability are relaxed" in the specific context where a procedural right is involved); *Ocean Advocates v. U.S. Army Corps of Engr's*, 402 F.3d 846, 860 (9th Cir. 2005) (recognizing that standing cannot "rely on conjecture about the behavior of other parties" but finding that organization's challenge to oil refinery dock on behalf of its members "is not tenuous or abstract" given the link to the dock); *Barnum Timber Co. v. United States EPA*, 633 F.3d 894, 900 (9th Cir. 2011) (recognizing "claim to diminished [property] value does not depend on the unpredictable actions of third parties").

are not redressable through Section 1983 because it only provides a remedy to those deprived of a constitutional right. *S.C. State Conf. of NAACP*, 2024 WL 5153170 at *11. The absence of precedent is highly probative of the problems with redressability here. *Texas*, 599 U.S. at 677. Setting aside the dearth of authority, redressing Coalition's claimed injuries is speculative. Displacement is legal following *Grants Pass*. Nor does compliance with the City's constitutional Bag & Tag policy address Coalition's harm: it does not compel attendance at Coalition training or require individuals to become members or use Coalition services. ECF No. 304-8. Further, because the policy is constitutional, there are instances where property can be lawfully discarded. *Id.* And even if property is bag and tagged, Coalition faces the same injuries where individuals do not have access to their property or choose to not pick it up. Further, to the extent causation and redressability are flip sides of the same coin as Coalition suggests, the Court is not free to "rely on speculation about unfettered choices made by independent actors not before the courts." *Clapper*, 568 U.S. at 415 n.5. Coalition fails to carry its burden on redressability.

### d.    Coalition Does Not Demonstrate Actual and Imminent Injuries Through Its Deficient Evidentiary Showing.

Coalition's opposition focuses on five preexisting core activities: (1) Coalition's ability to assist unhoused people navigate the unhoused system; (2) Coalition's ability to provide basic necessities to unhoused people; (3) Coalition's ability to educate unhoused people about their rights; (4) Coalition's work to provide education and training services to unhoused people; and (5) Coalition's public advocacy. For the reasons previously stated, these are not adequate as a matter of law. They also fail on the facts.

First, Coalition's suggestion that providing homeless services and basic necessities is a "core" activity is belied by Coalition's records. Coalition's Volunteer Manual states that Coalition "engages in community organizing as its primary activity." Supp. Mills Decl., Ex. A. The same manual states that "we provide a very *limited* number of services in-house and active referrals to other agencies," including, "Citation Defense," "STREET SHEET vendor program," "Homeless verifications," and "Shelter + Care applications (*limited* cases only)." *Id.* (emphasis added). Notably, Coalition's website does not advertise any of these *limited* services, and as far as donating basic necessities is concerned,

Coalition's website directs individuals to donate items to Community Thrift Store (not Coalition). Supp. Mills Decl., Exs. B-D. Nor does Coalition's undated "Help, Hope and Opportunity for Unhoused Neighbors" guide promote Coalition's limited services either. *See* ECF No. 304-11. Instead, it solicits individuals to "[s]ubscribe to Coalition on Homelessness action alerts" and encourages people to "Learn More About Causes and Solutions to Homelessness." *Id.* Thus, Coalition's own evidence underscores that its core activities are advocacy and public education, which are not a basis for standing under *Arizona Alliance*, 117 F.4th at 1177.[3]

Second, Coalition claims that the City harms its ability to provide services to homeless people. Coalition provides no evidence that the City ever destroyed a Homeless Verification form (lawfully or not) or prevented an individual from gaining access to Coordinated Entry or Coalition. The Friedenbach and Wadkins Declarations are riddled with inadmissible legal conclusions, improper lay opinion, opinions on ultimate issues, and lack foundation.[4] The only evidence Coalition submits is a Homeless Verification form with the date redacted and photos of "binders containing all the forms" Coalition has completed. ECF No. 304-17. The face of the photographs show that the binders are from 2024. ECF No. 304-17. This demonstrates nothing about how Coalition's limited services were injured prior to commencing this case. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills LLC*, 506 F.3d 832, 838 (9th

---

[3] Coalition's sweeping arguments stretch the core activity test beyond its breaking point. Adopting Coalition's interpretation, which includes every non-core or primary activity, authorizes "organizations in America [to] have standing to challenge almost every [] policy that they dislike. . . . [and] *Havens* does not support such an expansive theory of standing." *Hippocratic Med.*, 602 U.S. at 395; *Ariz. All.*, 117 F.4th at 1175 ("Looking at indirect impacts. . . instead of direct interference with the organization's core activities [] could allow an organization to challenge virtually anything, including policies that only affect the organizations intangible social interests.").

[4] The City objects to both. Wadkins and Friedenbach offer improper lay opinion and legal conclusions on ultimate issues in violation of Federal Rule of Evidence (FRE) 701 and 704. *See* Wadkins Decl. ¶ 7 (opining on causation and destruction of "social ties"), ¶ 8 (opining on causation and trauma); Friedenbach Decl. ¶ 5 (opining on core activities and customs), ¶¶ 18, 23-26, 28, 36, 37, 38, 40, 42, 43 (opining on legality of seizures, widespread destruction, and causation), & ¶ 27 (opining on health impacts). Both are based on inadmissible hearsay under FRE 802. Friedenbach Decl. ¶ 35 (offering third party invoices for truth), ¶ 37 (hearing about destruction), ¶ 38 (homeless peoples' fear), & ¶ 40 (hearing about refusal to attend events); Wadkins Decl. ¶ 7 (homeless peoples' fear), and ¶ 8 (reports about sweeps and homeless peoples' reports about HOT team). They also lack personal knowledge under FRE 602. Friedenbach Decl. ¶¶ 32-33, 37, 40, & 41; Wadkins Decl. ¶¶ 7, 8, & 9.

Cir. 2007).[5] Wadkins, who was a human rights organizer from January 2021 to May 2022, testified to the limited nature of the work of doing maybe one to three verifications a week, and confirms that Coalition kept copies and the forms were easily reproduced. ECF No. 304-7 at 128:2-12; 129:16-130:4; Wadkins Decl. ¶ 2. All of this was done in tandem with Coalition's diversion of its activities to monitor and document the City's practices. ECF No. 300-4 at 12-13. Furthermore, neither Friedenbach or Wadkins declare that Coalition was doing these verifications on the street instead of in their office, especially given that copies of the documents were being made, nor do they say who they send them to and whether they would be accepted. Destruction of Homeless Verifications and failed outreach to Coalition also turn on the independent conduct of third parties. With no admissible evidence that this has even occurred, or will occur with the requisite immediacy given the limited nature of the service, Coalition does not satisfy its burden.

Third, Coalition claims that the City's conduct impacts the Coalition's ability to provide basic necessities. Coalition offers no admissible evidence, based on personal knowledge, that the City ever destroyed a basic necessity provided by Coalition. Regardless, Coalition does not assert that it will continue to supply basic necessities and that those supplies are imminently at risk of being destroyed. Its own submission shows it was a response to COVID. *Compare* ECF No. 303-5, COH01502348 *with* ECF Nos. 303-5 & 303-6. A "high degree of immediacy" is required where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2. Coalition also does not explain how this is cognizable within the organizational standing test contemplated in *Arizona Alliance* since Coalition does not assert that it is prohibited from engaging in this preexisting activity. Whether a tent that Coalition may furnish gets destroyed is also based on numerous recognized contingencies (ECF No. 281 at 22-23) and third parties' compliance with valid anti-camping laws: conduct the Court cannot control or predict. *Lujan*, 504. U.S. at 562.

Fourth, Coalition claims the City impairs its ability to distribute "Know Your Rights" literature and that unlawful destruction impairs homeless persons' ability to contribute to the Street Sheet. But

---

[5] The City objects that Coalition submits other evidence that is irrelevant under FRE 401 for showing it had standing when this case commenced. *See* ECF Nos. 303-3 (2024 data); 303-7 (2023 & 2024 evaluation); 304-13 (news article from 2023); 304-14 (schooling from 2024); 304-19 (including invoices post-dating the case).

public education is not a core activity within *Arizona Alliance* and is an activity that Coalition

continues to engage in. In fact, the dissemination of this information was part of its ███████

████████████████████ in bringing this lawsuit. ECF No. 300-11. Notably, the Friedenbach

Declaration admits that Coalition has no way of knowing whether its materials were actually

destroyed, let alone unlawfully so. Friedenbach Decl. ¶ 37. Instead, it relies upon inadmissible hearsay

from Coalition staff, volunteers, members, and unhoused people that various property was destroyed.

The scattershot declaration lumps observations with hearsay and makes it impossible[6] to distinguish

between the two, leaving the Court to speculate as to whether the injury is "concrete, particularized,

and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable

ruling." *Clapper*, 568 U.S. at 409 (cleaned up). That speculation does not satisfy Coalition's burden.

Similarly, Coalition has no admissible evidence that its circulation of the Street Sheet even declined

faced with conceded admissions celebrating its success. ECF No. 300-12, COH00738209. To prove

that circulation declined, it improperly relies upon cherry-picked invoices from between January 2020

to December 2024, a period marked by a global pandemic, massive economic decline, and a reduction

of all print media. ECF No. 304-19; ECF No. 303-5 at COH01502352; 305-6 at COH01525916. This

sampling is an inadmissible compilation of hearsay statements that turn on myriad factors such as the

relevance of the content and engagement during COVID. The figures also show *increases* before and

after the commencement of the lawsuit, underscoring the speculative nature of the claim. Injuries to

the Street Sheet are also based on third parties' independent decisions to engage with the publication

in the first place—something the Court again cannot control or predict.

Fifth, Coalition claims that the City has impacted its training and education services "because

of the City's custom and practice of illegal property destruction, many unhoused people also are now

fearful of losing their property if they leave it unattended to participate in Coalition trainings and

education opportunities, such as the Free School." Friedenbach Decl. ¶ 38. This is an improper legal

and lay opinion. In any event, education is an activity rejected by *Arizona Alliance*, 117 F.4th at 1177.

Coalition does not offer any admissible evidence about what its education and training looked like

---

[6] The City objects under FRE 403 on the grounds that it is confusing and prejudicial.

before the lawsuit commenced. Whether people want to participate in Coalition training and education services is contingent upon third parties doing so in the first place—an activity the Court cannot presume. And the training in 2024 is hybrid, meaning it is hosted online and in person such that homeless people can bring their property with them or participate from the street, showing myriad hypothetical scenarios. Furthermore, the TAC alleges that Coalition's membership is not limited to unhoused individuals (TAC at ¶ 22) and its own evidence that it does attach concerning attendance shows that its housed observers and staff are participants. *Compare* ECF No. 303-3 *with* Mills Supp. Decl., Ex. E. How unhoused people have participated and would participate to justify injunctive relief is entirely lacking. The injury is also not redressable since there is no viable remedy to increase participation beyond unadorned speculation.

Finally, Coalition claims that the City harms its ability to build up its membership and conduct advocacy. But advocacy is not a core activity within *Arizona Alliance*, 117 F.4th at 1177. Nor does Coalition identify any admissible evidence of a member not being able to engage with Coalition as a result of the City's unlawful destruction of their property. While Coalition relies heavily on testimony from individual plaintiffs that they have lost laptops and phones, Coalition does not advance any evidence that these individuals could not access Coalition. In fact, Coalition ignores the evidence showing that individual plaintiffs were accessible in their encampments, including to prepare a declaration for this litigation. ECF No. 300-4 at 14. Coalition's employee responsible for coordinating and engaging in outreach confirmed that outreach is done in person—not by phone—so that it is effective. Mills Supp. Decl., Ex. F at 24:9-16; ECF No. 304-7 at 25:6-12. He also confirmed that Coalition's surveys of homeless people were conducted in person and doing them by phone "would not make a lot of sense to get an accurate understanding of what unhoused people were going through" and "would have been very difficult logistically to pull off." Ex. F at 44:16-45:6. Coalition also ignores the evidence that homeless individuals often obtain more than one phone from federal programs and often cycle through them because they break, get disconnected, or get stolen by third parties. ECF No. 300-4 at 15. Coalition also ignores its own record admitting that its own lack of membership structure imposes difficulty, that it has failed to connect with homeless people, that people are off the street due to housing, that turnover has harmed its ability to achieve its own goals,

and that a core active member is "hecka flakey." *Id*. at 13-14. These underscore the difficulties of relying upon the independent choices of third parties to establish standing to satisfy causation or redressability: an argument Coalition completely ignores. In light of the record presented, Coalition fails to demonstrate organizational standing.

### C.    Resolving The Motion To Dismiss Is Appropriate.

Coalition's contention that the Court cannot address organizational standing on a motion to dismiss because there are disputed factual issues intertwined with the merits misses the mark. Coalition offers no authority that resolving standing for its desired systemic injunctive relief pursuant to the standard Article III test is inappropriate. At bottom, Coalition concedes that the TAC does not allege that its personal property has been destroyed or will be destroyed with the requisite immediacy to plausibly establish its standing. Given the conceded pleading deficiency, there is no dispute of fact to resolve. In any event, "[b]ecause the standing issue is independent from the merits determination, it [is] proper for the district court to make factual findings and to decide the jurisdictional issue in this case." *Bruce v. United States*, 759 F.2d 755, 758 (1985). To the extent Coalition claims that the Court cannot resolve this motion at all, that is belied by Coalition's only authority. In *Bowen v. Energizer Holdings, Inc*., 118 F.4th 1134, 1139 (9th Cir. 2024), the Ninth Circuit recognized that on a factual attack courts generally can make factual findings. However, when the factual attack is intertwined, courts must "construe disputed issues of fact in favor of the nonmovant" under the summary judgment standard. While the City disagrees that standing is intertwined with the merits, the *undisputed* record presented shows that Coalition has not had its property destroyed so there are no genuine disputes of fact to preclude dismissal. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) (recognizing court should "grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law").

Furthermore, Coalition ignores the unique exception authorizing dismissals for lack of subject matter jurisdiction. As the City explained, dismissal is appropriate for lack of subject matter jurisdiction where a litigant's claims "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted). Coalition offers no

historical precedent that justifies systemic injunctive relief for property-based claims in its own right and "[a] 'telling indication of the severe constitutional problem' with [Coalition's] assertion of standing to bring this lawsuit 'is the lack of historical precedent' supporting it." *Texas*, 599 U.S. at 677 (citations omitted); *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d. 999, 1010, 1013, 1015 (E.D. Cal. 2021) (dismissing organizational claim with Rule 11 warning where organization's property was not taken and it was not denied process). In addition to Coalition not having property destroyed, the City identified undisputed evidence from a public #StoptheSweeps meeting that Coalition was helping lawyers find a plaintiff for the very practice underpinning this litigation, as well as communications showing that Coalition's counsel was having difficulty finding plaintiffs for their intended impact litigation against the City. Coalition's opposition failed to address the merits of the City's position that "[t]his strongly suggests an intent to manufacture standing through Coalition where it did not exist" (ECF No. 300-4 at 12-13)—and instead contends that its pre-litigation work is *irrelevant* with no legal support. That again ignores that the Supreme Court has recognized that human rights and legal organizations cannot "manufacture standing" where injury is not certainly impending. *See, e.g.*, *Clapper*, 568 U.S. at 402, 406, 417. Since Coalition's claim is immaterial, made for the purpose of obtaining jurisdiction, and wholly insubstantial, it must be dismissed for lack of jurisdiction.

D.     **Coalition Conceded That It Does Not State A Claim.**

Alternatively, the City moved to dismiss for failure to state a claim since Coalition does not allege a deprivation of its property. ECF No. 300-4 at 8. Coalition did not address this argument and "has effectively conceded the merits of the motion to dismiss." *Ellenberger v. Alphabet Inc.*, Case No. 4:20-cv-04877 SBA, 2021 WL 4808590, at *3 (N.D. Cal. July 19, 2021) (collecting cases). Its own authority demonstrates that organizations cannot state Section 1983 claims based on harms to third parties. *S.C. State Conf. of NAACP*, 2024 WL 5153170 at *11. Thus, Coalition fails to state a claim.

III.    **CONCLUSION**

For the foregoing reasons, the City requests that the Court grant its motion to dismiss. Having been afforded an opportunity to plead its best case, and having failed to do so, Coalition's futile claim in its own right must be dismissed without leave to amend.

Dated:  February 13, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
EDMUND T. WANG
KAITLYN MURPHY
MIGUEL A. GRADILLA
JOHN H. GEORGE
STEVEN A. MILLS
Deputy City Attorneys


By:  s/Steven A. Mills
    STEVEN A. MILLS

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO; SAN
FRANCISCO POLICE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE HOUSING;
SAN FRANCISCO FIRE DEPARTMENT; SAN
FRANCISCO DEPARTMENT OF EMERGENCY
MANAGEMENT