# EXHIBIT 143

## To

## Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                      OAKLAND DIVISION

 4

 5   - - - - - - - - - - - - - - - - -

 6   COALITION ON HOMELESSNESS,       )

 7   et al.,                          )

 8               Plaintiffs,          )  CASE NO.

 9   vs.                              )  4:22-cv-05502-DMR

10   CITY AND COUNTY OF SAN           )

11   FRANCISCO, et al.,               )

12               Defendants.          )

13   - - - - - - - - - - - - - - - - -

14      THIS TRANSCRIPT AND ITS EXHIBITS CONTAIN INFORMATION

15        SUBJECT TO A PROTECTIVE ORDER AND SHALL BE TREATED

16              AND USED ONLY IN ACCORDANCE THEREWITH

17

18             DEPOSITION OF BRANDON CUNNINGHAM

19                 TUESDAY, FEBRUARY 25, 2025

20

21           BEHMKE REPORTING AND VIDEO SERVICES, INC.

22               BY:  SUZANNE I. ANDRADE, CSR NO. 10682

23                    550 CALIFORNIA STREET, SUITE 820

24                    SAN FRANCISCO, CALIFORNIA 94104

25                                       (415) 597-5600
```

```
 1   incident commander telephone to David Nakanishi.
 2           Do you see that?
 3      A.   Mm-hmm.
 4      Q.   It says:  "Good morning."
 5      A.   Mm-hmm, yes.
 6      Q.   Okay.  Is that the type of text you would
 7   generally send?
 8      A.   Yes.
 9      Q.   Okay.  And why are you sending this type of
10   text?
11      A.   So this isn't just to David Nakanishi.
12      Q.   Correct, it's not.
13      A.   It's the whole text thread.
14      Q.   It's the whole chain.
15      A.   Yeah, yeah, yeah.
16           So, generally, this would be a way to sort of
17   timestamp and record-keep what we're doing, where we
18   are, and what we're dealing with prior to the
19   resolution.
20      Q.   And it says here:  "One tent, one structure,
21   both abandoned."
22           Do you see that?
23      A.   I do.
24      Q.   Okay.  And how did you decide -- or why did you
25   characterize these -- this tent and the structure as
```

1  abandoned?
2      A.  Nobody was there.  So it doesn't change how we
3  go about it as far as DPW.  Maybe I should have used the
4  word "vacant."
5          But for me, it's just nobody -- there's a tent
6  or structure, and nobody's there.  So I generally use
7  the word "abandoned."  Maybe there's a better verbiage I
8  should use.
9      Q.  And then if you flip to the second -- the next
10 page, which is 5805 --
11     A.  Mm-hmm.
12     Q.  -- there are a number of photographs, correct?
13     A.  Yes.
14     Q.  Okay.  And are these the type of photographs
15 you generally take at a resolution?
16     A.  Yes.
17     Q.  And why are you taking these photographs?
18     A.  Again, trying to keep recordkeeping.  Just
19 making sure we can see what we're addressing.  So all
20 tents, all structures, all debris.
21         I'll try to make note of anything else.  Maybe
22 if there's drug paraphernalia, along those lines, stuff
23 that we're dealing with, just to have a kind of
24 recordkeeping of the before and after.
25     Q.  Have you ever been given instructions on what

1  Q. Okay. And who decides where to go outside the
2  noticed location?
3  A. I do.
4  Q. And do you consult with other people when
5  making that determination, or is it your determination
6  alone?
7  A. Sometimes I'll consult with David. Other times
8  I'll just make the choice.
9  Q. Okay. And how do you choose which locations to
10 shift to outside of the noticed locations?
11 A. Mm-hmm. So Division between Folsom and Howard,
12 which is the street that runs under the freeway there,
13 is probably about two blocks from 14th and Stevenson;
14 same with Duboce and Woodward is just literally around
15 the corner.
16        So Division Street often becomes very heavily
17 encamped, given that it is under a freeway, all the way
18 from Mission going all the way past Potrero to San Bruno
19 Ave., basically.
20        So that's an area that is always kind of on my
21 radar, if I'm on -- if I'm in that area, to kind of
22 check to see if there's anything worth addressing.
23 Q. So, to be more specific, does distance from the
24 noticed location play any factor in how you choose where
25 to shift to?

```
 1       A.   Yes, it does.
 2       Q.   Okay.  And are there any limits to how far you
 3  might travel away from the noticed location to do the
 4  re-encampment prevention?
 5       A.   Not necessarily.  I mean, my look on it is
 6  it's -- we're trying to be efficient with our time.  So
 7  while I guess we could shift to, say, somewhere in the
 8  Bayview from where we are, that also requires moving,
 9  like I said, ten vehicles, all these people and shifting
10  out to a whole different area, which could take time
11  with traffic, et cetera, et cetera.
12            So that is factor in how I choose other areas
13  that need to be addressed in the area.
14       Q.   And are there a certain number of tents that
15  need to be present in order for you to shift the HSOC
16  team to go address that next location?
17       A.   There's no minimum or maximum, no.
18       Q.   Okay.  So are there instances in which you've
19  shifted the HSOC Team to a new location based on one
20  tent?
21       A.   Yes.
22       Q.   So let's flip to the page that ends 5816.  So
23  the second text on the page is from the HSOC Incident
24  Commander, and it says:  "Division clear between Folsom
25  and Howard.  X0 remaining," correct?
```