# EXHIBIT 146

## To
## Declaration of Vasudha Talla in Opposition to Defendants' Motion for Summary Judgment

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                      OAKLAND DIVISION
 4   - - - - - - - - - - - - - - - -
 5   COALITION ON HOMELESSNESS,       )
 6   et al.,                          )
 7              Plaintiffs,           )
 8   v.                               )  CASE NO.
 9   CITY AND COUNTY OF SAN           )  4:22-cv-05502-DMR (LJC)
10   FRANCISCO, et al.,               )
11              Defendants.           )
12   - - - - - - - - - - - - - - - -
13    THIS TRANSCRIPT AND ITS EXHIBITS CONTAIN INFORMATION
14     SUBJECT TO A PROTECTIVE ORDER AND SHALL BE TREATED
15           AND USED ONLY IN ACCORDANCE THEREWITH
16
17           CONFIDENTIAL - ATTORNEYS' EYES ONLY
18             REMOTE DEPOSITION OF JASON ADAMEK
19              WEDNESDAY, FEBRUARY 12, 2025
20
21           BEHMKE REPORTING AND VIDEO SERVICES, INC.
22             BY: VALERIE E. RASMUSSEN, CSR NO. 8900
23                  550 CALIFORNIA STREET, SUITE 820
24                  SAN FRANCISCO, CALIFORNIA 94104
25                                     (415) 597-5600
```

```
 1  correct?
 2      A    It's fair to say.
 3      Q    So you have no idea whether ▮▮▮▮▮▮
 4  discontinuance was willful; correct?
 5      MR. MILLS:  Objection.  Vague and ambiguous.
 6      THE WITNESS:  I don't know.  What do you mean
 7  "willful"?
 8           I don't know.  I don't know why -- so, yeah.
 9  That kind of covers everything.
10  BY MR. PRASAD:
11      Q    Okay.  And you have no idea whether the
12  discontinuance was due to any fault of ▮▮▮▮▮▮;
13  correct?
14      A    I don't know the reason.
15      Q    Right.  So you simply don't know the
16  circumstances of why ▮▮▮▮▮▮ lost her benefits; is
17  that right?
18      A    That's correct.
19      Q    Now, according to your declaration, ▮▮▮▮▮▮
20  was receiving benefits from June 2021 through September
21  2022.  Again in November 2022.  Again from August 2023
22  to August 2024.  And again from October 2024 to November
23  2024.  True?
24      A    That's what it says.  That's correct.
25      Q    So that means she wasn't receiving benefits in
```

```
 1  October 2022; correct?
 2      A    Based on that, I would say that's correct.
 3      Q    And she wasn't receiving benefits from December
 4  2022 to July 2023; correct?
 5      A    Say it again.  What's the time frame?  December
 6  2023.
 7      Q    December 2022 to July 2023.
 8      A    December 2022 to -- what's the second date you
 9  said?
10      Q    July 2023.
11      A    Oh, no she received --
12      MR. MILLS:  Misstates the document.
13      THE WITNESS:  She received benefits in November.
14  BY MR. PRASAD:
15      Q    Right.
16      A    Oh, wait.  Sorry.
17           Yeah, correct.
18      Q    Okay.  And she wasn't receiving benefits in
19  September 2024; correct?
20      A    Right.
21      Q    So between June 2021 and November 2024, it's
22  fair to say there were approximately 10 months when she
23  went without CAAP benefits; correct?
24      A    Based on this limited information, I
25  could -- yeah, that's -- you know, I could reasonably
```

```
 1  say that.  Although, she may have applied for fair
 2  hearing, and those benefits would have continued while
 3  she's appealing.  So I can't -- there may have been some
 4  months where she's actually receiving some aid
 5  pending --
 6      Q   Well, you stated -- actually, withdrawn.
 7          And the fact that she received benefits from
 8  June 2021 through November 2024 with those 10 months of
 9  interruptions, suggests that she was broadly eligible
10  for benefits during that time; correct?
11      MR. MILLS:  Objection.  Misstates testimony.  Calls
12  for speculation.
13      THE WITNESS:  That she was what again?
14  BY MR. PRASAD:
15      Q   Eligible for benefits during that time.
16      MR. MILLS:  Objection.  Misstates testimony.  Calls
17  for speculation.  Incomplete hypothetical.
18      THE WITNESS:  Yeah, I can't say for sure.  She may
19  have committed fraud, and we have certain sanction
20  periods for fraud.  But, in general, clients serve a
21  30-day sanction if they're not in compliance.  So I
22  don't know her discontinuance, either.  As I stated
23  before, if it's eligibility related, she may have moved
24  out of the county, moved back, there's no sanction
25  period.
```

```
 1  BY MR. PRASAD:
 2      Q    Fair to say that for most of the time between
 3  June 2021 and November 2024, she was eligible for and
 4  received CAAP benefits; correct?
 5      MR. MILLS:  Objection.  Incomplete hypothetical.
 6  And privacy.
 7      THE WITNESS:  All I can say is what I have written
 8  there, that she received benefits during those time
 9  frames.
10           On the other time frames where she was not on
11  aid, I can't say if she was eligible or not.
12      MR. MILLS:  I'd like the record to just note a
13  privacy objection for all of the questions about
14  specific client-benefit questions.
15  BY MR. PRASAD:
16      Q    And do you know why ▇▇▇▇▇▇▇ faced those gaps
17  in benefit, Mr. Adamek?
18      A    I don't know.
19      Q    And you didn't look into those gaps when
20  preparing this declaration; correct?
21      A    No.  Yeah, I did not.
22      Q    Okay.  Do you know if ▇▇▇▇▇▇▇ was unhoused
23  during any of those gaps in benefits?
24      A    No.
25      MR. MILLS:  Objection.  Vague and ambiguous.
```

```
 1        THE WITNESS:  No, I don't know anything about her.
 2   BY MR. PRASAD:
 3        Q    And so you don't know, for example, if
 4   ███████ was continuously housed between June 2021 and
 5   November 2024, despite being eligible for CAAP during
 6   some of those months?
 7        MR. MILLS:  Objection.  Vague and ambiguous.
 8        THE WITNESS:  I don't.
 9        MR. MILLS:  Calls for speculation.
10        THE WITNESS:  I don't know her case.  I don't know
11   beyond what I have written there.
12   BY MR. PRASAD:
13        Q    Are you aware that ███████ testified last
14   week in this case that at some point in 2023 she was
15   living unhoused on the streets for more than six months?
16        MR. MILLS:  Objection.  Misstates testimony.
17        THE WITNESS:  I don't know anything about that.
18   BY MR. PRASAD:
19        Q    Would that testimony surprise you?
20        A    Well, my nature is not to be surprised by
21   anything.
22        Q    Put another way, you're not surprised by that;
23   is that right?
24        MR. MILLS:  Objection.  Misstates testimony.
25        THE WITNESS:  Well, it's getting into kind of my
```

```
 1  personality.  I'm just not -- I'm in this business.
 2  I've been in this business for 25 years so I've heard a
 3  lot of things and seen a lot of things.  And things, you
 4  know, don't surprise -- they don't -- you know -- I
 5  don't know -- when you say "surprised," I don't know --
 6  if someone came in here with a loaded gun and they
 7  started shooting in the office, I'd probably be
 8  surprised.  So there's certain circumstances where I
 9  might be surprised.  But in terms of someone's story,
10  you know, being discontinued from benefits is not
11  surprising to me.
12  BY MR. PRASAD:
13      Q   So you're not surprised, correct, to clarify
14  that answer?
15      MR. MILLS:  Objection.  Misstates testimony.
16  BY MR. PRASAD:
17      Q   It's a yes-or-no question, Mr. Adamek.
18      A   Yeah, can you -- can you say actually what
19  happened, and I'll tell you if I'm surprised.
20      Q   I'm just asking you that question based on
21  what --
22      A   I don't remember what it was that you said,
23  like the specific circumstance that happened to this
24  individual.  Can you repeat it.
25      Q   I asked you, Mr. Adamek, if it would surprise
```

```
 1  you that [redacted] testified that during this period
 2  between June 2021 and November 2024 she was unhoused and
 3  living on the streets of San Francisco for more than six
 4  months?
 5       A    No, that would not surprise me.
 6       MR. MILLS:  And just late objection.  Misstates
 7  [redacted] testimony.
 8  BY MR. PRASAD:
 9       Q    Now, if that's true, [redacted] case
10  demonstrates that a person receiving CAAP can still be
11  at risk of becoming homeless if their benefits are
12  discontinued; correct?
13       MR. MILLS:  Objection. Argumentative. Misstates
14  testimony.
15       THE WITNESS:  Say that again.  I'm sorry.
16  BY MR. PRASAD:
17       Q    If it's true that [redacted] was living on the
18  streets for six months, for six months at some point
19  between June 2021 and November 2024, that demonstrates
20  that a person who receives CAAP can still be at risk of
21  becoming homeless if their benefits are discontinued;
22  right?
23       MR. MILLS:  Objection.  Mischaracterizes testimony.
24  Incomplete hypothetical.  Calls for speculation.
25       THE WITNESS:  Well, I don't know those six months
```

```
 1   your declaration.
 2        MR. PRASAD:  If Mr. Headrick could please bring that
 3   to the front.  Thank you.
 4        Q    Point C of your declaration references someone
 5   named ███████; correct?
 6        A    Yes.
 7        Q    And your declaration states that ███████ is
 8   not an active client; correct?
 9        A    Yes, that's what it says.
10        Q    And that's because his benefits were
11   discontinued on December 31, 2024?
12        A    That is what I wrote.
13        Q    And his benefits were -- appear to have been
14   terminated just a month or so after they were issued,
15   according to your declaration; is that right?
16        A    That's what it says.
17        Q    And so that indicates that the termination of
18   his benefits had nothing to do with a failure to renew;
19   correct?
20        MR. MILLS:  Objection.  Misstates the document.
21   Incomplete hypothetical.  Calls for speculation.
22        THE WITNESS:  I don't know.  I mean, maybe -- what I
23   have written here says recently issued in November and
24   December.  Prior discontinuance was receiving benefits
25   from April -- March 2023, July 2023, November 2024 ...
```

```
 1  BY MR. PRASAD:
 2      Q    But you don't know if that was the case here;
 3  right?
 4      A    I have no idea.
 5      Q    And you have no idea whether the discontinuance
 6  was the fault of ▮▮▮▮▮▮▮▮; correct?
 7      A    Well, when you say "fault," he may have moved
 8  out of the county.  That's not his fault.  I don't know.
 9      Q    But you don't --
10      A    He may have gotten a job.  It doesn't mean he's
11  at fault.  You know, people discontinue for different
12  reasons.  So I don't know.
13      Q    Well, to put it another way, you don't know the
14  circumstances of why ▮▮▮▮▮▮▮ lost his benefits;
15  right?
16      A    That's right, I have no idea.
17      Q    Now, according to your declaration, ▮▮▮▮▮▮▮
18  experienced a cycle where he got benefits and lost them
19  multiple times; correct?
20      MR. MILLS:  Objection.  Misstates the document.
21      THE WITNESS:  I'll just stick with what's written
22  here.  So, yeah, he received benefits from April 2022,
23  through March 2023.  And July 2023 through November
24  2024.
25  ///
```

```
 1  what I have written there.
 2      Q    And do you know if ████████ is currently
 3  housed?
 4      A    Again, I don't know anything beyond what I
 5  wrote there.
 6      Q    So you do not know whether receiving CAAP in
 7  the months listed here prevented ████████ from
 8  experiencing cycles of homelessness at a later time;
 9  correct?
10      MR. MILLS:  Objection.  Vague.  Ambiguous.  Calls
11  for speculation.
12      THE WITNESS:  I don't know.  I don't know any
13  relationship between the two.
14  BY MR. PRASAD:
15      Q    Between what two?
16      A    Him being on aid or not being on aid; him
17  experiencing homelessness or not experiencing
18  homelessness.  I don't know of any connection.
19      Q    So you don't know if there's a connection
20  between receiving CAAP and later experiencing
21  homelessness; correct?
22      A    No, I have -- there may not be a relationship
23  at all between those two things.
24      MR. PRASAD:  Now, Mr. Headrick, if you could please
25  scroll up just a little to paragraph 7.  Actually, I
```

```
 1   BY MR. PRASAD:
 2       Q   Yeah.  Fair to say, Mr. Adamek, that the CAAP
 3   program has nothing to do with whether ███████████,
 4   ███████, and ████████ remain in their current
 5   housing; correct?
 6       MR. MILLS:  Objection.  Assumes facts not in
 7   evidence.  Incomplete hypothetical.  Calls for
 8   speculation.
 9       THE WITNESS:  If they're not on CAAP, they're not
10   our clients; therefore, we have no -- people -- we
11   don't -- I mean, are you insinuating that CAAP goes out
12   and tries to contact people who aren't our clients or
13   work with people that are not our clients?  I'm not
14   understanding the questioning.
15   BY MR. PRASAD:
16       Q   I'm asking you a simple question, which is
17   whether CAAP has anything to do with their housing
18   status?
19       MR. MILLS:  Objection.  Vague.  Ambiguous.
20   Incomplete hypothetical.
21       THE WITNESS:  If they're not on CAAP, then, no, we
22   have nothing to do with their housing status.
23       MR. PRASAD:  All right.  We can take this exhibit
24   down.  And I'd like to now -- actually, I apologize,
25   Mr. Headrick.  If we could go back to that for a second.
```

```
 1  If we could go back to the last exhibit.
 2      Q    I'd like to direct your attention, Mr. Adamek,
 3  to paragraph 7A.
 4      A    Okay.
 5      Q    Now, your declaration states that ███████████,
 6  ███████████, David Martinez, and ███████████ are
 7  active clients with benefits; correct?
 8      A    Yes.
 9      Q    Now, are you aware what benefits each of those
10  individuals are receiving?
11      A    No.
12      Q    Did you look into that for the purpose of this
13  declaration?
14      A    No.
15      Q    And are you aware of what type of housing these
16  individuals are in?
17      A    No.
18      Q    Do you know if any of them are staying in
19  shelters at this time?
20      A    I don't know.
21      MR. MILLS:  Objection.  Vague and ambiguous.
22      THE WITNESS:  I don't know.
23  BY MR. PRASAD:
24      Q    So other than the fact they're enrolled in
25  CAAP, fair to say you don't know anything about their
```

```
 1  housing situation?
 2      A    That's correct.
 3      Q    And you don't know what challenges any of them
 4  might face in maintaining their CAAP benefits; correct?
 5      MR. MILLS:  Objection.  Vague.  Ambiguous.
 6      THE WITNESS:  Yeah, I don't know their
 7  circumstances, so I don't know what challenges they have
 8  in their lives.
 9      MR. PRASAD:  Okay.  Now, Mr. Headrick, with
10  apologies, I'd like to show the witness what I've marked
11  to the court reporter as Tab 4.  And we can mark that as
12  Plaintiffs' Exhibit 1199.
13      MR. MILLS:  That was 1199?
14      MR. PRASAD:  This new one is 1199.
15      MR. MILLS:  Thanks.
16      MR. PRASAD:  And if you could please scroll through
17  that for all of us to see.  Thank you.
18          (Exhibit 1199 was marked for identification and
19  is attached hereto.)
20  BY MR. PRASAD:
21      Q    Mr. Adamek, do you recognize this document?
22      A    Not to my knowledge.
23      Q    Is this one of the declarations you reviewed
24  prior to preparing your declaration in this case?
25      A    No, I don't think so.
```

```
 1        THE WITNESS:  I can say I don't have any information
 2   about their cases to -- all I know is what they wrote.
 3   BY MR. PRASAD:
 4        Q    At least two of those four individuals,
 5   ███████ and ███████, claim to have experienced
 6   homelessness after losing CAAP benefits; correct?
 7        MR. MILLS:  Objection.  Misstates testimony.
 8   Compound.
 9        THE WITNESS:  I don't remember that.  You'd have to
10   bring me up the document.  I don't remember if that's
11   what -- exactly what they stated.
12   BY MR. PRASAD:
13        Q    Do you recall we discussed ███████
14   testimony in which she claimed to have experienced six
15   months of homelessness during a three-year stretch in
16   which she had CAAP for several months?
17        A    I remember you saying that.
18        Q    And do you recall ███████ declaration
19   whereby he claimed to have lost his CAAP benefits for a
20   period of time?
21        A    Yes, I remember that.
22        Q    Okay.  So based on those experiences, is it
23   fair to say that, sitting here today, you cannot
24   guarantee Plaintiffs -- or witnesses in this case --
25   with housing through CAAP, won't become homeless in the
```

```
 1  near future?
 2       MR. MILLS:  Objection.  Incomplete hypothetical.
 3  Assumes facts not in evidence.  Vague.  Ambiguous.
 4       THE WITNESS:  If a client is on CAAP, it's possible
 5  they could discontinue for failure to comply or not meet
 6  eligibility criteria.
 7            Is that what you're asking?
 8  BY MR. PRASAD:
 9       Q    And then they could lose their shelter
10  placement and become homeless; is that accurate?
11       MR. MILLS:  Objection.  Incomplete hypothetical.
12  Calls for a legal conclusion.  Assumes facts not in
13  evidence.  Vague and ambiguous.
14       THE WITNESS:  As I stated before, someone that
15  discontinues, and they don't file an appeal, they're not
16  eligible to use a CAAP-specific bed; but that doesn't
17  mean they can't access other beds in the city.  So they
18  may or may not be at risk of sleeping on the street.  I
19  don't know.
20  BY MR. PRASAD:
21       Q    Well, to put it another way, successfully
22  obtaining CAAP in one six-month period is no guarantee
23  that one would successfully obtain it, and the next
24  six-month period remain sheltered; correct?
25       A    Correct.
```